IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION, )
AMGEN USA INC., AMGEN )
MANUFACTURING LIMITED, IMMUNEX )     C.A. No. 06-259-KAJ
RHODE ISLAND CORPORATION, )
)
                        Plaintiff, )
    v. )
)
ARIAD PHARMACEUTICALS, INC., )
)
                        Defendant. )
)

## DEFENDANT ARIAD PHARMACEUTICALS, INC.'S OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED, AND FAILURE TO JOIN INDISPENSABLE PARTIES

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Counsel for Defendant
ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 277-1010

Dated:  June 14, 2006
170440.1

TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDING........................................... 1

III.  SUMMARY OF ARGUMENT ........................................................................ 2

IV.   STATEMENT OF FACTS ............................................................................... 3

      A.  The '516 Patent ..................................................................................... 3

      B.  ARIAD'S Letter Announcing Issuance of the '516 Patent ......................... 4

      C.  Litigation Between ARIAD and Eli Lilly and Company .......................... 4

      D.  The Allegations Of Amgen's Complaint ............................................... 7

V.    ARGUMENT ................................................................................................ 7

      A.  This Court Lacks Subject Matter Jurisdiction Because There Is No Actual
          Controversy Between The Parties ........................................................... 7

      1.  The Federal Circuit Requires A "Reasonable Apprehension" Of An Imminent
          Suit To Maintain A Declaratory Relief Action ....................................... 7

      2.  Amgen Has No "Reasonable Apprehension" That It Imminently Will Be Sued
          On The '516 Patent ............................................................................. 8

      3.  Even If There Were Declaratory Judgment Jurisdiction, This Court Should
          Decline Jurisdiction Here .................................................................... 12

      B.  Amgen's Complaint Should Be Dismissed For Failure To State A Claim ............... 13

      C.  The Complaint Should Be Dismissed For Amgen's Failure To Join The Patent
          Owners, Who Are Indispensable Parties ................................................ 14

VI.   CONCLUSION............................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937)................................................................................... 7

*BP Chemicals Ltd. v. Union Carbide Corp.,*
    4 F.3d 975 (Fed. Cir. 1993)................................................................. 8, 12

*Brillhart v. Excess Ins. Co. of Am.,*
    316 U.S. 491, 62 S. Ct. 1173 (1942)..................................................... 12

*Classic Golf Co. v. Karsten Manufacturing Co.,*
    231 USPQ 884 (N.D. Ill. 1986) .............................................................. 16

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996).................................................................. 12

*Fernandez-Montes v. Allied Pilots Ass'n,*
    987 F.2d 278 (5th Cir.1993) .................................................................. 13

*International Medical Prosthetics Research Associates, Inc. v. Gore Enterprise*
    *Holdings, Inc.,*
    787 F.2d 572 (Fed. Cir. 1986)............................................................... 14

*Kost v. Kozakiewicz,*
    1 F.3d 176 (3d Cir.1993) ....................................................................... 13

*Leeds v. Meltz,*
    85 F.3d 51 (2d Cir.1996)........................................................................ 13

*Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.,*
    483 F. Supp. 49 (S.D.N.Y. 1979) .......................................................... 17

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir.1997).................................................................... 13

*Papasan v. Allain,*
    478 U.S. 265 (1986)............................................................................... 13

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
    57 F.3d 1051 (Fed. Cir. 1995)...................................................... 8, 9, 10

*Rheodyne, Inc. v. Ramin,*
    201 USPQ 667 (N.D. Cal. 1978) ........................................................... 16

Page(s)

*Ristvedt-Johnson, Inc. v. Peltz,*
    No. 91 C 3273, 1991 WL 255691 (N.D. Ill. Nov. 18, 1991) ............................... 13

*Shell Oil Co. v. Amoco Corp.,*
    970 F.2d 885 (Fed. Cir. 1992) ........................................................... 9, 10

*Spectronics Corp. v. H.B. Fuller Co., Inc.,*
    940 F.2d 631 (Fed. Cir. 1991) .......................................................... 7, 12

*Super Sack Manufacturing Corp. v. Chase Packaging Corp.,*
    57 F.3d 1054 (Fed. Cir. 1995) ........................................................... 8, 11

*Suprex Corp. v. Lee Scientific, Inc.,*
    660 F. Supp. 89 (W.D. Pa. 1987) ................................................. 15, 16, 17

*Tol-O-Matic, Inc. v. Proma Produkt-Und Marketing Gesellschaft m.b. H.,*
    690 F. Supp. 798 (D. Minn. 1987) ......................................................... 15

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,*
    140 F.3d 478 (3d Cir.1998) ................................................................. 13

*Viam Corp. v. Iowa Export-Import Trading Co.,*
    35 USPQ2d 1505 (C.D. Cal. 1995) ......................................................... 15

*Wilton v. Seven Falls Co.,*
    515 U.S. 277, 115 S. Ct. 2137 (1995) .................................................... 12

*Zumbro, Inc. v. California Natural Products,*
    861 F. Supp. 773 (D. Minn. 1994) ......................................................... 15

**Statutes**

Federal Rule of Civil Procedure 12(b)(1) ..................................... 1, 2, 11

Federal Rule of Civil Procedure 12(b)(6) .................................. 1, 2, 13, 14

Federal Rule of Civil Procedure 12(b)(7) ................................. 1, 3, 15, 17

Federal Rule of Civil Procedure 19(a) ............................................ 16

Federal Rule of Civil Procedure 19(b) ............................................ 16

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    §1357 (2d ed.1997) ......................................................................... 13

## I.    PRELIMINARY STATEMENT

Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") has never threatened to sue plaintiffs Amgen, Inc. and its related entities (collectively, "Amgen") for infringement of U.S Patent No. 6,410,516 ("the '516 patent"). Indeed, ARIAD has said next to nothing about the '516 patent to Amgen. Nevertheless, Amgen has filed a Complaint seeking a declaratory judgment of non-infringement and invalidity of all 203 claims in the '516 patent. This patent is owned by Harvard University ("Harvard"), the Massachusetts Institute of Technology ("MIT"), and the Whitehead Institute—all of which retain substantial rights in the patent, and none of which has been joined as a defendant—and is licensed exclusively to ARIAD. By this motion, ARIAD seeks to dismiss all counts of Amgen's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).[1]

## II.    NATURE AND STAGE OF THE PROCEEDING

On April 20, 2006, Amgen filed its Complaint For Declaratory Judgment Of Patent Invalidity And Non-Infringement. (D.I. 1.) The Complaint contains two counts: The first seeks a declaration of invalidity of each claim of the '516 patent. The second seeks a declaration that Amgen does not infringe any valid claim of the '516 patent through any activities related to its products Enbrel and Kineret. This motion is ARIAD's first response to the Complaint.

---

[1] We note that all 203 claims of the '516 patent are at issue in two pending reexamination proceedings before the United States Patent and Trademark Office (the "PTO"), one initiated by Eli Lilly & Company, the other by Bawa Biotechnology Consulting, LLC. The PTO has merged these reexaminations, which will be handled as a single proceeding. No office action on the merits has yet occurred. ARIAD filed a request for reexamination of a single claim of the '516 patent on April 7, 2006, which was denied on May 5, 2006. (Allen Decl. ¶ 8.)

## III.   **SUMMARY OF ARGUMENT**

1.     The Complaint should be dismissed because the Court lacks subject matter jurisdiction under Rule 12(b)(1).  There is no "actual controversy" between the parties to support a declaratory judgment action.  The controlling legal test requires some action by ARIAD that creates a reasonable apprehension in Amgen that it will face an imminent infringement suit on the '516 patent.  ARIAD has done nothing to create any reasonable apprehension of suit.  ARIAD has made no threats.  The parties have engaged in no licensing discussions.  Quite to the contrary, ARIAD has made it clear that it has no current plans to assert the '516 patent against Amgen and has not even performed an analysis of whether Amgen has any products that infringe the '516 patent.  Even if there were declaratory judgment jurisdiction here—which there plainly is not—this Court should exercise its discretion to decline such jurisdiction, as no goals of the Declaratory Judgment Act would be advanced by this action.

2.     The Complaint should be dismissed under Rule 12(b)(6) because Amgen does not—and cannot—plead sufficient facts to state a declaratory judgment claim. Indeed, Amgen has pled no facts in its Complaint regarding any actions by ARIAD, let alone actions that could cause Amgen any reasonable apprehension that it will be sued on the '516 patent.  Amgen offers only a single, purely conclusory sentence, containing no explanation whatsoever, to "support" its claim of reasonable apprehension: "ARIAD's actions cause the Amgen Entities reasonable apprehension that ARIAD will assert, among other things, that the Amgen Entities infringe one or more claims of the '516 patent through activities related to the Enbrel® and/or Kineret® products."  This self-serving allegation—which is both unsupported and unsupportable—is insufficient to state a claim for declaratory relief.

2

3.     The Complaint should be dismissed under Rule 12(b)(7) because Amgen has failed to join the owners of the '516 patent—Harvard, MIT, and the Whitehead Institute. These educational institutions are indispensable parties as the actual owners of the property rights claimed in the '516 patent, especially given that Amgen seeks a declaration of non-infringement and invalidity of all claims of the '516 patent. Of course, there is no mystery as to why Amgen did not name these educational institutions as defendants: None of them is subject to personal jurisdiction in Delaware.[2]

## IV.    **STATEMENT OF FACTS**

### A.    **The '516 Patent**

In 2002, the PTO issued the '516 patent jointly to Harvard, MIT, and the Whitehead Institute based on a collaborative research effort by a team of esteemed scientists.[3] This team, which included two Nobel Laureates, identified and characterized the activity of a signaling agent, which they named Nuclear Factor Kappa B ("NF-$\kappa$B"), and devised various methods to modulate its activity to affect the expression of proteins implicated in certain disease states. The inventors' pioneering work in this area—of which the '516 patent is only the latest example—has provided the foundation for new approaches to treating certain diseases, particularly various forms of cancer.

---

[2] It should be noted that the present motion is timely despite the entry on the Court's docket indicating that ARIAD was required to respond to the Complaint by June 12. The Complaint was served upon ARIAD's registered agent on April 24, making May 15 the original response deadline. (D.I. 4.) On May 12, the parties filed a stipulated order, which the Court entered, extending that deadline by 30 days, hence to June 14. (D.I. 10.) It appears that the clerk calculated the 30 days from the filing of the stipulation, rather than from the date on which ARIAD's response was originally due.

[3] The '516 patent is attached as Exhibit 1 to the Complaint.

ARIAD is the exclusive licensee of the '516 patent, and is based in Cambridge, Massachusetts. (Allen Decl. ¶ 2.)[4]  The assignees, Harvard University, the Massachusetts Institute of Technology, and the Whitehead Institute, are also all based in Cambridge, Massachusetts. (*Id.*)  ARIAD's relationship with the assignee and inventors dates back to its founding in 1991, when ARIAD first licensed NF-κB technology from them. (Ex. B at 33–35.)

### B.    ARIAD'S Letter Announcing Issuance of the '516 Patent

When the '516 patent issued on June 25, 2002, ARIAD sent out a mass mailing to approximately 50 pharmaceutical companies, including Amgen. (Allen Decl. ¶ 6.)  This letter announced the issuance of the '516 patent, generally described the technology of the patent, and attached a term sheet for non-exclusive *research* licenses. (*Id.* & Ex. D.)  The letter did not identify any specific products falling within the claims of the '516 patent, and made no demands on the recipients. (*Id.*)  The last paragraph of the letter, just above the signature of ARIAD's Senior Vice President Fritz Casselman, read:  "Please contact me if you are interested in obtaining a license or if you have any questions.  We look forward to working with you and enabling your research." (*Id.*)  Amgen did not respond to this letter, and ARIAD never had any other communication with Amgen regarding the '516 patent prior to the filing of the present action. (Allen Decl. ¶¶ 6, 7.)

### C.    Litigation Between ARIAD and Eli Lilly and Company

On June 25, 2002, ARIAD filed a lawsuit in the District of Massachusetts alleging that Eli Lilly and Company ("Lilly") was infringing the '516 patent by making, using, and selling the drugs Evista and Xigris. (Allen Decl. ¶ 3.); *see ARIAD Pharmaceuticals,*

---

[4] The accompanying Declaration of Laurie A. Allen, Esq. is cited herein as "Allen Decl."  All exhibits are attached to Ms. Allen's declaration.

4

*Inc. et al., v. Eli Lilly & Co.*, No. 1:02-cv-11280-RWZ (D. Mass.) (J. Zobel).  Lilly counterclaimed, alleging that the asserted claims of the '516 patent were not infringed and were invalid and unenforceable.  (*Id.*)  On May 4, 2006, a jury returned a verdict finding that the '516 patent was valid and infringed by Lilly and awarded damages in the amount of approximately $65.2 million, based on the jury's determination of a reasonable royalty rate of 2.3% to be paid by Lilly to the co-plaintiffs for U.S. sales of Evista and Xigris from filing of the lawsuit on June 25, 2002, through February 28, 2006.  The jury awarded further damages on an ongoing basis, in amounts to be determined, equal to 2.3% of U.S. sales of Evista and Xigris through the year 2019, when the '516 patent expires.  (*Id.*)  The district court has scheduled a bench trial to address Lilly's equitable defenses for August 7-9, 2006.  (*Id.*)  This is the only action in which ARIAD has asserted the '516 patent.  (*Id.*)

The jury trial commenced on April 10, 2006, and was attended by Amgen's in-house counsel Siegmund Gutman.  (*Id.* ¶ 4).  During trial—*and in the presence of Mr. Gutman*—ARIAD's founder and Chief Executive Officer, Dr. Harvey Berger, testified that ARIAD did not have any current plans to enforce the '516 patent against any company other than Lilly and had not undertaken the analysis of any products other than Lilly's to determine whether they fell within claims of the '516 patent.  For example, Dr. Berger testified as follows:

> Q.    How many of these companies do you remember thinking had NF-kappa B products at the time?
>
> A.    We never did that analysis.  You know, in order [to] do that analysis, you would have to look specifically at the individual products and how the use of that product relates to the claims of a patent, and we hadn't then done it nor have we done it since. We have focused on Eli Lilly.

(Ex. B at 90.)  And again later:

> Q.  Before you sent the letters out to all of these companies that we've seen in this document, and you didn't test any of their products –
>
> A.  No, we didn't.
>
> Q.  – to see if they reduce NF-kappaB activity?
>
> A.  No we didn't.

(*Id.* at 96–97.)

Dr. Berger also gave testimony during the trial concerning a 2001 Board of Directors of meeting at which there had been a presentation on the prospects for "NF-$\kappa$B Patent Licensing." (Ex. C at 7.)  The presentation slides included a list of "Marketed and Late-Stage Products," including Amgen's drug Kinaret and Immunex's drug Enbrel.[5] (*Id.* at 10.)  Dr. Berger explained that the purpose of this information was to explain to the Board—not all of whose members have extensive experience in pharmaceuticals—the utility of NF-$\kappa$B and its potential role in various classes of products.  (Ex. B at 91–93.) Dr. Berger rejected the repeated attempts of Lilly's counsel to portray this list as one of intended litigation targets,[6] reiterating again that "We have not done the analysis or evaluation of any of the products on this list, because you have to look at the claims, look at the specifications and look at the actual drug." (*Id.* at 95.)  Moreover, this Board presentation had been kept confidential within ARIAD up until the time it was produced as part of confidential discovery in the Lilly litigation, and ARIAD has never formed or

---

[5] Amgen Inc. acquired Immunex after the 2001 Board presentation.

[6] So persistent was Lilly's counsel in this regard that the Court intervened, observing:  "I think you can keep asking the same question and the witness keeps giving you the same answer, which is not the one you're looking for, so maybe we can just skip over the next one." (*Id.* at 96.)

communicated to Amgen any belief that Kinaret (or Enbrel, for that matter) is covered by the '516 patent. (Allen Decl. ¶¶ 4, 5, 7.)

### D.    The Allegations Of Amgen's Complaint

Amgen's Complaint seeks a declaration that "(i) each of the claims of the ['516 patent] is invalid and (ii) the Amgen Entities have not before and do not now directly or indirectly infringe any claim of the '516 patent based on activities related to the Enbrel® or Kineret® products." (Complaint ¶2.) In support of its invocation of the Declaratory Judgment Act, Amgen relies on just a single conclusory allegation, which is both vague and lacks any supporting facts or circumstances: "ARIAD's actions cause the Amgen Entities reasonable apprehension that ARIAD will assert, among other things, that the Amgen Entities infringe one or more claims of the '516 patent through activities related to the Enbrel® and/or Kineret® products." (Complaint ¶ 18.)

## V.    **ARGUMENT**

### A.    **This Court Lacks Subject Matter Jurisdiction Because There Is No Actual Controversy Between The Parties**

#### 1.    **The Federal Circuit Requires A "Reasonable Apprehension" Of An Imminent Suit To Maintain A Declaratory Relief Action**

The existence of an actual controversy is a necessary prerequisite for Article III jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937); *Spectronics Corp. v. H.B. Fuller Co., Inc.*, 940 F.2d 631, 633–34 (Fed. Cir. 1991). Without an actual controversy, the court has no discretion to decide the case and is compelled to dismiss the action. *Spectronics Corp.*, 940 F.2d at 634.

The test for determining whether an actual controversy exists has two prongs, both of which must be satisfied. There must be both: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the

declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052 (Fed. Cir. 1995) (quoting *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993)).  The purpose of the two-part test is to determine whether the need for judicial attention is real and immediate, in which case federal courts have jurisdiction, or whether it is "prospective and uncertain of occurrence," in which case they do not. *Super Sack Manufacturing Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); see also *BP Chemicals*, 4 F.3d at 977.

### 2.   Amgen Has No "Reasonable Apprehension" That It Imminently Will Be Sued On The '516 Patent

Amgen has failed to meet the first prong of the requisite test because it simply cannot demonstrate any threats or other action by ARIAD creating a reasonable apprehension that ARIAD will imminently assert the '516 patent against Amgen.  "The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the *objective* circumstances support such an apprehension." *Phillips Plastics*, 57 F.3d at 1053–54 (emphasis added).  ARIAD has not taken any action that would create a reasonable apprehension on Amgen's part that it imminently faces suit.

To see how far ARIAD's actions are from meeting the standard for "reasonable apprehension," it is instructive to compare them to the facts of other cases in which no such reasonable apprehension was held to arise.  The Federal Circuit has repeatedly held that a patentee may express the view that specific products are covered by its patent, and initiate or engage in licensing negotiations concerning those products, all without

triggering the ability to bring a declaratory action.  In *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), for example, the patentee had contacted Phillips, stated that specific fasteners  made by Phillips were covered by the patent, and invited Phillips to take a license.  57 F.3d at 1052.  When Phillips expressed the view that the patent was invalid because of certain prior art, the patentee applied to have the patent reissued, with Phillips participating in the reissue procedure as a protester.  The patentee then wrote to Phillips again, enclosing a copy of the reissued patent, renewing the offer of a license, and later requesting that Phillips provide sales and pricing information so it could determine a reasonable licensing proposal.  *Id*.  When Phillips at this point filed a declaratory judgment action, the court dismissed the suit, concluding that while a "reasonable apprehension of suit" does not require that the patentee "be poised on the courthouse steps, a patentee's attempt to conduct license negotiations is a commercial activity.  [This] activity was not a threat of suit, and did not create a justiciable controversy."  *Id*.

Similarly, in *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992), the patentee Amoco had engaged in lengthy license negotiations with Shell during which it made repeated references to Shell's actions as "falling within," "covered by," or "under" Amoco's patent, and when the parties had reached an impasse, responded affirmatively to Shell's statement, "I assume you will enforce your patent?"  970 F.2d at 886–87.  The Federal Circuit upheld the dismissal of Shell's ensuing declaratory judgment action, holding that Amoco "took no action against Shell; it made no assertive contact concerning the patent; it issued no threats."  *Id*. at 889.  Whether an actual controversy exists depends on either "an express charge of infringement" or on a totality of the

circumstances that "objectively appear[s] to compel acceptance of offered terms," neither of which was present. *Id.*

If the facts of *Phillips Plastics* and *Shell Oil* did not justify a declaratory relief action, then the contacts between ARIAD and Amgen do not even raise a colorable claim. In each of those cases, the patentee had identified specific products of the declaratory plaintiff as falling within the claims of its patent, and conducted negotiations based on the assumption that the plaintiff was required to purchase a license to continue making those products. Here, ARIAD has never communicated to Amgen that it believes any of Amgen's products fall within the claims of the '516 patent. The letter that ARIAD sent to Amgen—as part of a mass mailing of identical letters to 50 other companies for the purpose of announcing the issuance of the '516 patent in 2002—did not say a word about present or past infringement. Quite the contrary, it discussed only the possibility of entering into a non-exclusive *research license* under which Amgen would conduct "internal pharmaceutical research" to *develop* a product using the patented technology. (Ex. D). This focus was further underscored by Mr. Casselman's valedictory expression of desire to "enable[e] your research." (*Id.*)

Indeed, far from having reason to fear that ARIAD has painted a target on its back, Amgen is in fact privy to strong evidence that ARIAD has no current awareness of any activity on Amgen's part infringing the '516 patent. A mere two months ago, Amgen's in-house counsel Siegmund Gutman sat through the examination of ARIAD's CEO Dr. Berger during the Lilly litigation, where Dr. Berger testified specifically and repeatedly that ARIAD has not assessed the products of any companies other than Lilly

10

to determine whether they fall within the claims of the '516 patent.  (Ex. B at 90:7–91:3; 95:9–95:14.)

Amgen may point to the mention of Enbrel and Kinaret in the (previously confidential) presentation of ARIAD's Board of Directors *in 2001* as evidence that ARIAD views it as a potential target.  A review of Dr. Berger's testimony and the Board presentation itself (*see supra* pp. 6–8) shows otherwise, however, and reveals that any such argument by Amgen would constitute grasping at straws.  The *most* that can be inferred from the passing mention of these drugs is that ARIAD views them as products that *may* be worth evaluating *in the future* to consider whether they warrant the initiation of licensing negotiations with Amgen.  This conclusion is further corroborated by the supporting declaration of Laurie Allen, ARIAD's Chief Legal Officer, in which she states that, to this day, ARIAD has yet to evaluate any of Amgen's products for purposes of determining whether they fall within the claims of the '516 patent.  Given that the breaking off of actual adversarial licensing negotiations based on an assertion of patent coverage has been held insufficient to create a reasonable apprehension of suit, the mere prospect of a patentee's future coverage analysis manifestly falls far short of the mark. *See Super Sack Manufacturing Corp.*, 57 F.3d at 1058 (federal courts lack jurisdiction when litigation is "prospective and uncertain of occurrence").

As there are no facts suggesting that Amgen faces any threat of an imminent infringement suit based on the '516 patent, this action should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

11

### 3. Even If There Were Declaratory Judgment Jurisdiction, This Court Should Decline Jurisdiction Here

It is well-settled that, even where there is an actual controversy, it is within the court's sound discretion to decline declaratory judgment jurisdiction over it. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S. Ct. 1173, 1176 (1942); *Spectronics*, 940 F.2d at 634. "[A]s long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, the court has broad discretion to refuse to entertain a declaratory judgment action." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed. Cir. 1996). "The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chemicals*, 4 F.3d at 977. Here, even if this Court somehow were to find that jurisdiction exists, it should exercise its discretion to decline that jurisdiction.

In the complete absence of any overt or implied threat by ARIAD, or any licensing discussions between the parties, or any pattern by ARIAD of suing on the '516 patent, there is no reason for this Court to exercise its discretion to retain jurisdiction. No goals of the Declaratory Judgment Act would be advanced by this action, particularly given that ARIAD has not even analyzed whether Amgen's products infringe the '516 patent—a fact of which Amgen is well aware. Amgen has, quite simply, jumped the gun by filing this case, without ever having a conversation with ARIAD about the '516 patent. (Allen Decl. ¶ 5–7.)

**B.    Amgen's Complaint Should Be Dismissed For Failure To State A Claim**

Amgen's Complaint should also be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the plaintiff's allegations, and not to resolve disputed facts or decide the merits of the case. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In analyzing a motion to dismiss under this rule, the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). The court, however, is not required to credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation.").[7] A plaintiff cannot parrot a statute or legal principle and escape dismissal of its complaint by merely making a self-serving allegation that the defendant does what the statute or law prohibits. *See Ristvedt-Johnson, Inc. v. Peltz*, No. 91 C 3273, 1991 WL 255691, at *4–5 (N.D. Ill. Nov. 18, 1991) (complaint dismissed where plaintiff merely repeated language of the statute, with

---

[7] *See also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996) (affirming dismissal of § 1983 action and noting that "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

respect to defendant's induced infringement, but failed to assert any facts to support allegation).[8]  (Attached as Tab 1 hereto)

Amgen's Complaint should be dismissed because the only basis for declaratory relief consists of a one-line conclusory statement alleging that ARIAD has caused Amgen "reasonable apprehension." (Complaint ¶18.)  Amgen should not be allowed to maintain jurisdiction merely by invoking the magical words, "reasonable apprehension."  Amgen does not, and cannot, allege in its Complaint that ARIAD has directly or indirectly threatened to sue Amgen for infringement of the '516 patent with respect to Enbrel or Kineret—or any other product, for that matter.  Nor does Amgen plead any facts that could imply a reasonable apprehension from the totality of circumstances.  *See International Medical Prosthetics Research Associates, Inc. v. Gore Enterprise Holdings, Inc.*, 787 F.2d 572, 576, n.8 (Fed. Cir. 1986) (the declaratory plaintiff had not amended its complaint to "specify...the basis for jurisdiction, i.e., facts showing a justiciable controversy, and notice of the case to be tried should be found in the complaint.").  This conclusory pleading is insufficient to survive dismissal under Rule 12(b)(6).

### C.    The Complaint Should Be Dismissed For Amgen's Failure To Join The Patent Owners, Who Are Indispensable Parties

ARIAD is not the owner of the '516 patent, but rather its exclusive licensee. Harvard, MIT, and the Whitehead Institute are the owners of the patent, and retain a number of substantial rights, including (1) the right to practice the patent (Ex. A at 7, ¶ 2.7); (2) the right to distribute patented products to third parties for noncommercial purposes (*Id.*); (3) the right to develop further inventions based on the patent for which ARIAD may then negotiate a separate license (*Id.* at ¶ 2.5); (4) the right to prosecute and

---

[8]A copy of this decision is attached to this Memorandum behind tab 1

maintain patent applications in the same family of patents (*Id.* at ¶6.1); (5) the right to sue alleged infringers after six months if ARIAD has not already done so (*Id.* at 12, ¶ 7.4); (6) the right to refuse assignment of ARIAD's rights to third parties (*Id.* at 14, Art. XI); and (7) the right to receive royalty payments from ARIAD. (*Id.* at 8, ¶ 4.1).  In fact, the patentees' rights are so significant that upon commencement of a declaratory judgment action alleging invalidity or non-infringement of the '516 patent against ARIAD, the patentees, at their option, may take over the defense of the litigation at their own expense. (*Id.* at 12, ¶ 7.5).

Given the patent owners' retention of substantial rights in the '516 patent, the patent owners are indispensable parties to this lawsuit.  *See Viam Corp. v. Iowa Export-Import Trading Co.*, 35 USPQ2d 1505, 1507 (C.D. Cal. 1995) ("It is well-established that 'a patent owner who has retained substantive rights in a patent that is the subject of an exclusive license is an indispensable party.'") (citing *Tol-O-Matic, Inc. v. Proma Produkt-Und Marketing Gesellschaft m.b. H.*, 690 F. Supp. 798, 801 (D. Minn. 1987)). Because Amgen has failed to join these indispensable parties, this Court should dismiss the action under Rule 12(b)(7).  *See Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 94 (W.D. Pa. 1987) (dismissing declaratory action against patent licensee where court lacked personal jurisdiction over university that owned patent); *Viam Corp.*, 35 USPQ2d at 1507 (dismissing declaratory action against Italian patent owner and its U.S. exclusive distributor where court lacked personal jurisdiction over Italian company); *Zumbro, Inc. v. California Natural Products*, 861 F. Supp. 773, 783 (D. Minn. 1994) ("a patent holder—even one who holds a patent with another party—is an indispensable party in a declaratory judgment action challenging a patent's validity and enforcement."); *Tol-O-*

*Matic Inc.*, 690 F. Supp. at 801 & n.2 ("a patent owner who has retained substantive rights in a patent that is the subject of an exclusive license is an indispensable party."); *Rheodyne, Inc. v. Ramin*, 201 USPQ 667 (N.D. Cal. 1978) (dismissing entire declaratory action against co-owners and licensees of patent where court found it lacked personal jurisdiction over co-owners); *Classic Golf Co. v. Karsten Manufacturing Co.*, 231 USPQ 884, 886 (N.D. Ill. 1986) ("Generally, the patent owner is an indispensable party to a declaratory judgment action.").

In *Suprex*, the court held that the university patent owner was a *necessary party* under Rule 19(a) because the university claimed an interest in the validity of the patent and its absence "as a practical matter, impair[ed] the university's ability to defend the patent in later litigation, due to collateral estoppel implications." *Id*. at 93.  The court further determined that the university patent owner was also an *indispensable party* under Rule 19(b):

> First, a judgment of patent invalidity in the university's absence would be prejudicial.  Such a judgment would devalue the university's asset, reduce royalties now accruing and severely restrict or even destroy the university's ability to develop and market the...technology. Second, the prejudice to the absent patent owner cannot be lessened through the "shaping of relief" because no declaratory, injunctive or compensatory relief would be granted under the existing complaint if the patent's validity were not questioned...Third, a judgment rendered without the university may not be adequate.  Plaintiff argues that [the technology] was not invented by Dr. Lee and the university, and that the university's patent is invalid due to prior art.  The main thrust of plaintiff's complaint is to stop enforcement of the university patent and to free plaintiff in its efforts to market its [product].  A judgment against the university's licensee will not accomplish this goal.

*Id*.

This same reasoning applies here.  First, invalidity of the '516 patent would devalue the universities' assets, reduce royalty payments, and could prevent the universities from exploiting and marketing this patented technology.  Second, this prejudice cannot be minimized since Amgen's Complaint seeks a declaration of invalidity of all of the patent claims.  Third, because Amgen alleges that the '516 patent is invalid due to prior art, the inventors and the patentees will be critical to these issues.

Moreover, as the court in *Suprex* recognized, allowing the case to proceed without the patent holders leads to "the pernicious effect of offensive collateral estoppel."  *Id.* at 94:

> If this Court were to determine in the absence of the licensors that the [patent] is invalid for some reason, it would as a practical matter impair or impede their ability to protect their asserted interest in the patent.  Prejudice to the licensors would result from the collateral estoppel effect of a judgment by which, due to the terms of the exclusive license, they may be equitably bound.

*Id.* (quoting *Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.*, 483 F. Supp. 49, 52–53 (S.D.N.Y. 1979).  Therefore, this Court should dismiss the Complaint pursuant to Rule 12(b)(7) because Amgen has failed to join the owners of the '516 patent, who are indispensable parties.

## VI.    **CONCLUSION**

For all of the foregoing reasons, ARIAD respectfully requests that the Court grant its motion to dismiss Amgen's Complaint for a declaratory judgment of invalidity and non-infringement.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:  (302) 654-1888
Facsimile:   (302) 654-2067
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD PHARMACEUTICALS, INC.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199

Dated: June 14, 2006
170440.1

18

# TAB 1

Not Reported in F.Supp.                                                                    **Page 1**
Not Reported in F.Supp., 1991 WL 255691 (N.D.Ill.)
**(Cite as: 1991 WL 255691 (N.D.Ill.))**
▷

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
RISTVEDT-JOHNSON, INC., a Tennessee
corporation, and Cummins-Allison
Corporation, an Indiana corporation, Plaintiffs,
v.
Nelson PELTZ, an individual, and Peter W. May, an
individual, Defendants.
No. 91 C 3273.

Nov. 18, 1991.

*MEMORANDUM OPINION AND ORDER*

ANN C. WILLIAMS, District Judge.

**\*1** Plaintiffs Ristvedt-Johnson, Inc. ("Ristvedt") and
Cummins-Allison Corp. ("Cummins") originally
brought a suit against Brandt, Inc. ("Brandt"), a
corporation owned by Nelson Peltz ("Peltz") and Peter
W. May ("May"), for patent infringement. *See
Ristvedt-Johnson, Inc. v. Brandt, Inc.,* No. 88 C 3834.
The plaintiffs now bring this action, claiming that the
defendants, based upon their status as directors and
sole shareholders of Brandt, induced Brandt to infringe
upon the plaintiffs' patent in violation of 35 U.S.C. §
271(b). Pursuant to Federal Rule of Civil Procedure
12(b)(6), the defendants now move to dismiss the
complaint for lack of personal jurisdiction and a failure
to state a claim for which relief can be granted. For
the reasons stated below, the Court grants the
defendants' motion to dismiss.

*Background*
Based upon the allegations in the plaintiffs' complaint,
Ristvedt owns U.S. Patent Nos. 4,098,280; 4,234,003;
4,444,212; 4,531,531; 4,549,561; and 4,731,043.
These patents were issued to Ristvedt for their coin
handling machines and coin sorters. Ristvedt
exclusively licenses the rights to these patents to
Cummins. The plaintiffs already have brought an
action against Brandt for infringing upon these patents.
[FN1] In the instant case, the plaintiffs allege that
Peltz and May induced these infringements in violation
of 35 U.S.C. § 271(b).

The plaintiffs allege that Peltz and May own 100% of
Brandt's outstanding stock and are two of the three

directors of the corporation. They further allege that
Peltz and May have been paid substantial management
fees by Brandt and that they "control the business" by
reviewing monthly business reports summarizing
monthly operations, pre-approving capital expenditures
greater than $25,000, and occasionally meeting with
Brandt's president to discuss Brandt's budget, product
development, sales promotions, engineering projects,
international developments, and Brandt's patent
infringement litigation with Ristvedt.

The plaintiffs also allege that Peltz and May have not
left Brandt with sufficient assets to satisfy the damages
sought by the plaintiffs in this suit. Brandt was sold in
1984 and, as noted above, Peltz and May became its
sole shareholders in 1988. The plaintiffs allege that
since Peltz and May began controlling Brandt, the
corporation has incurred losses of $1.1 million in 1986,
$4.3 million in 1987, $2.5 million in 1988, and $1.0
million in 1990.

The plaintiffs claim that the defendants used their
positions and control as the owners and directors of
Brandt, to induce Brandt to infringe on Ristvedt's
patents. The plaintiffs also assert that Peltz and May
induced Brandt to infringe upon their patents by
directing officers of Brandt to copy plaintiffs' patented
products. The defendants now move to dismiss this
case, pursuant to Federal Rule of Civil Procedure
12(b)(6), for lack of personal jurisdiction and a failure
to state a claim for which relief can be granted.

*Discussion*
A. *The Motion to Dismiss for Lack of Personal
Jurisdiction*

**\*2** This court only has personal jurisdiction over an
out-of-state defendant if an Illinois court could assert
such jurisdiction. *Young v. Colgate-Palmolive Co.,*
790 F.2d 567, 569 (7th Cir.1986). In this case, the
plaintiffs claim that this court has personal jurisdiction
over the defendants under the Illinois long-arm statute,
110 Ill.Rev.Stat. ¶ 2-209(1982). Defendants argue
that this Court does not have jurisdiction over them
because they are protected by the fiduciary shield
doctrine, one of the limitations placed upon the Illinois
long-arm statute by the Illinois Supreme Court.

The fiduciary shield doctrine prohibits personal
jurisdiction over an individual when that individual's
contact with the forum state is limited to acts
performed as a representative or fiduciary of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          **Page 2**
**(Cite as: 1991 WL 255691, \*2 (N.D.Ill.))**

corporation. *State Security Insurance Co. v. Frank B. Hall & Co., Inc.*, 530 F.Supp. 94, 97 (N.D.Ill.1981); *Olinski v. Duce*, 155 Ill.App.3d 441, 443-44, 508 N.E.2d 398, 400 (1st Dist.1987). This doctrine protects the defendant from defending a suit brought against him personally "in a forum in which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F.Supp. 126, 133 (N.D.Ill.1989). The court's inquiry into the applicability of the fiduciary shield doctrine thus focuses on whether the defendant's actions advanced personal, rather than employer, interests. *Torco Oil Co.*, 730 F.Supp. at 134.

This determination cannot be made mechanically. It is well established that the fiduciary shield exception is an equitable principle intended to be applied with discretion. *Id.*; *Washburn v. Becker*, 186 Ill.App.3d 629, 542 N.E.2d 764 (1989). While the applicability of the doctrine must be considered on a case-by-case basis, Illinois Courts have carved out several standard exceptions to the doctrine. In this case, the plaintiffs respond to the defendant's invocation of the fiduciary shield doctrine, citing the most common exception to the doctrine--that the corporation is merely the "alter-ego" of the defendants.

At this early stage of the litigation, the plaintiffs only need to establish a prima facie case of jurisdiction in the case. *Ameritech Mobile Communications, Inc. v. Cellular Communications Corp.*, 664 F.Supp. 1175, 1177 (N.D.Ill.1987). As long as the plaintiffs' allegations are not "patently without merit," the plaintiff's claim of jurisdiction will stand. *Torco Oil Co.*, 730 F.Supp. at 136. Application of the alter ego exception can only be refused "where no facts are alleged supporting a finding that the corporation is a sham ... or where the supporting evidence is so manifestly insufficient that the alter ego argument is not even minimally viable." *Id.*

In *Kula v. J.K. Schofield & Co., Inc.*, the court found that the evidence presented by the plaintiff did not meet the minimum standard of viability required to establish personal jurisdiction. 668 F.Supp. 1126 (N.D.Ill.1987) . In that case, the plaintiff alleged that the corporation at issue was the alter ego of the defendant because the defendant was the chairman of the board, chief executive officer, and sole shareholder of the corporation. *Id.* at 1129. The court determined, however, that these allegations did not suffice to defeat the defendant's assertion of the fiduciary shield doctrine. The court noted that being a member of management or holding a controlling position in a corporation did not nullify the protection of the equitable doctrine. *Id.* The court further noted that corporate officers, directors, and shareholders, were "separate and distinct" from the corporation. *Id.* The *Kula* court therefore refused to pierce the fiduciary shield based upon these allegations since the plaintiff had not alleged any other facts in his complaint suggesting that the corporation was merely a shell. *Id.* at 1130.

**\*3** Like *Kula*, the plaintiffs in this case allege that the fiduciary shield doctrine should be pierced because the defendants are the sole shareholders of Brandt, and they actively engage in the management and control of Brandt. As established in *Kula*, the defendants' sole ownership of Brandt stock and their involvement in the management of Brandt do not, without additional evidence, suffice to establish that the corporation is actually the alter ego of the defendants. The plaintiffs' claims that the defendants prepared business reports and met periodically with Brandt's president to discuss the business of Brandt do not provide the requisite additional evidence to support the plaintiffs' alter ego argument. These actions can be considered managerial tasks which, as alleged, do not suggest that the defendants were acting in their personal interest rather than in the interests of the corporation.

The plaintiffs claim that their allegation that Brandt lacked sufficient assets also provides sufficient proof that Brandt was merely the alter ego of Ristvedt and Cummins. This Court recognizes that inadequate capitalization can provide a basis for piercing the fiduciary shield, *see Torco Oil Co.*, 730 F.Supp. at 138, however, this allegation, is not sufficient here. Even assuming this claim is true, the plaintiffs do not suggest that Brandt's alleged undercapitalization came about by the design of the defendants in an attempt to benefit themselves personally. Given this omission and the lack of allegations showing that the defendants performed their managerial tasks or used their positions as sole shareholders of the corporation to directly benefit their interests rather than Brandt's, the Court finds that the plaintiffs have not met their burden of proving that this Court has personal jurisdiction over the defendants.

B. *The Motion to Dismiss for Failure to State a Claim*

The Court must also dismiss the case for a failure to state a claim for which relief could be granted. It is well settled that a complaint cannot be dismissed for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
(Cite as: 1991 WL 255691, *3 (N.D.Ill.))

failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Furthermore, the Federal Rules of Civil Procedure generally do not require the claimant to set out these facts in detail. *Id.* at 47. Rather, the plaintiff is only required to provide "a short and plain statement of the claim" that gives the defendant fair notice of that claim and the grounds upon which it rests. *Id.*

However, as the defendants suggest, the modern requirement of mere notice pleading does not affect the requirement that the plaintiff allege every essential element to show the violations of law claimed. As the Supreme Court stated in *United States v. Employing Plasterers Ass'n.,* it is when "a bona fide complaint is filed that charges *every element necessary to recover*" that summary dismissal for failure to state a claim cannot usually be justified. 347 U.S. 186, 189 (1953) (emphasis added).

*4 In § 271(b) actions, corporate officers who are found to have actively assisted in their corporation's infringement of a patent may be held personally liable for inducing infringement regardless of whether the circumstances require the court to disregard the corporate entity and consider the corporation the alter ego of the defendant corporate officers. *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990). The defendants properly assert that to establish a § 271(b) claim, the plaintiffs must establish "that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.* (emphasis in original); *see Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988); *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1468-69 (Fed.Cir.1990). To properly allege that the infringer knowingly induced infringement, the plaintiffs must demonstrate that the defendants possessed specific intent to encourage their corporation's supposed infringement and not merely that the defendants had knowledge of the acts alleged to constitute inducement. *Manville Sales Corp.,* 917 F.2d at 553.

Even construing the allegations in the complaint liberally, as Federal Rule of Civil Procedure 12(b)(6) requires, this Court finds that the allegations in the plaintiffs' complaint are so deficient that they fail to demonstrate that the plaintiffs could have a valid § 271(b) claim. For example, the plaintiffs fail to allege any facts showing how the defendants induced Brandt to infringe upon Ristvedt's patents as required under *Manville.* Instead, the plaintiffs merely assert that the defendants induced Brandt to infringe upon Ristvedt's patents. Plaintiffs' Complaint at ¶¶ 6, 8. This bald assertion, without the allegation of any facts supporting it, plainly does not meet the pleading requirements of the Federal Rules of Civil Procedure. Moreover, the plaintiffs' reliance upon their allegations that the defendants owned and controlled Brandt are also factually insufficient to demonstrate a valid claim under § 271(b). The plaintiffs fail to allege any way in which the defendants used their supposed ownership and control over Brandt to induce the corporation to infringe upon Ristvedt's patents.

The plaintiffs also do not properly allege the second *Manville* requirement that the defendants intended to induce Brandt to infringe upon Ristvedt's patents. As already noted, regardless of the brevity of the assertion, the plaintiffs are nevertheless required to allege each element of their claim. In this case, the plaintiffs have failed to explicitly allege that the defendants had the requisite intent to induce Brandt. Furthermore, even if intent could be inferred from other allegations in the plaintiffs' complaint, *see Cannon v. University of Chicago,* 648 F.2d 1104, 1110 (7th Cir.1981), the plaintiffs' other allegations, such as that the defendants induced Brandt or that they owned and controlled Brandt, do not suggest the requisite intent on the part of the defendants to induce Brandt to infringe on Ristvedt's patents.

*5 As required under Federal Rule of Civil Procedure 12(b)(6), this Court recognizes that we must not dismiss a case for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot establish a valid claim for relief. *See Conley,* 355 U.S. at 45-46. In this case, the plaintiffs' allegations are so factually insufficient that they do not even suggest how or when the defendants induced Brandt or that the defendants intended to induce Brandt to infringe on the plaintiffs' patents as required to prove a § 271(b) violation. Because this Court does not have proper jurisdiction over the defendants and the plaintiffs present a claim for which no relief can be granted, the Court grants the defendants' motion to dismiss.

## Conclusion

For the reasons stated above, the Court grants the defendants' motion to dismiss for lack of personal jurisdiction and failure to state an actionable claim.

FN1. *Ristvedt-Johnson, Inc. v. Brandt, Inc.,* No. 88-3834.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    **Page 4**
**(Cite as: 1991 WL 255691, *5 (N.D.Ill.))**

 Not Reported in F.Supp., 1991 WL 255691 (N.D.Ill.)

    Motions, Pleadings and Filings (Back to top)

. 1:91CV03273 (Docket) (May. 28, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2006, the attached **DEFENDANT ARIAD PHARMACEUTICALS, INC.'S OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED, AND FAILURE TO JOIN INDISPENSABLE PARTIES** was served upon the below-named counsel of record at the address and in the manner indicated:

Melanie K. Sharp, Esquire                                   HAND DELIVERY
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Marcus E. Sernel, Esquire                                   VIA FEDERAL EXPRESS
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

J. Drew Diamond, Esquire                                   VIA FEDERAL EXPRESS
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800


                                                  */s/ John G. Day*
                                                  _____
                                                  John G. Day