# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation,

Plaintiffs,

v.

ARIAD PHARMACEUTICALS, INC., a Delaware corporation,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-259

## PLAINTIFFS' OPPOSITION TO ARIAD'S MOTION TO STAY DISCOVERY PENDING ADJUDICATION OF ITS MOTION TO DISMISS

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213)680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: August 10, 2006

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ...................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDING / STATEMENT OF FACTS ...............2

III.  ARGUMENT ......................................................................................................4

     A.    It Is Well Within This Court's Discretion to Deny ARIAD's Second
          Request As Other Courts Have Done Under Similar Circumstances. ......................4

     B.    ARIAD's Bare Allegations Do Not Establish "Good Cause" For a Stay. ...............5

     C.    A Stay in This Case Would Prejudice Amgen. .......................................................7

IV.   CONCLUSION...................................................................................................9

# TABLE OF AUTHORITIES

## Federal Cases

*Coca-Cola Bottling Co. of Lehigh Valley v. Grol,*
  1993 U.S. Dist. LEXIS 3734, at *6-7 (E.D. Pa. 1993) ....................................................... 5

*Continental Illinois Bank & Trust Co. v. Caton,*
  130 F.R.D. 145 (D. Kan. 1990) ............................................................................................ 6

*Evans v. Yum Brands, Inc.,*
  326 F. Supp. 2d 214 (D.N.H. 2004) ................................................................................. 4, 5

*Feldman v. Flood,*
  176 F.R.D. 651 (M.D. Fla. 1997) ......................................................................................... 5

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
  824 F.2d 953 (Fed. Cir. 1987) .............................................................................................. 2

*Gray v. First Winthrop Corp.,*
  133 F.R.D. 39 (N.D. Cal. 1990) ........................................................................................... 4

*In re WRT Energy Securities Litig.,*
  No. 96 Civ. 3610, -3611 (JFK), 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996) ...................... 5

*Osan Limited v. Accenture LLP,*
  No. CV 2005-5048(SJ)(MDG), 2006 WL 1662612 (E.D.N.Y. June 13, 2006) ................. 5

*People With AIDS Health Group, et al. v. Burroughs Welcome Co.,*
  No. 91-0574, 1991 WL 221179 (D.D.C. Oct. 11, 1991) ............................................. 4, 5, 6

*Skellerup Indus. Ltd. v. City of Los Angeles,*
  163 F.R.D. 598 (C.D. Cal. 1995) ......................................................................................... 6

*Standard Chlorine of Delaware, Inc. v. Sinibaldi,*
  821 F. Supp. 232 (D. Del. 1992) .......................................................................................... 4

*Telesca v. Long Island Housing Partnership,*
  2006 WL 1120636 (E.D.N.Y. Apr. 27, 2006) ..................................................................... 6

*Twin City Fire Ins. Co. v. Employers Ins. Of Wausau,*
  124 F.R.D. 652 (D. Nev. 1989) ............................................................................................ 5

*U.S. v. County of Nassau,*
  188 F.R.D. 187, 188 (E.D.N.Y. 1999) ................................................................................. 6

*Willemijn Houdstermaatschaapij BV v. Appollo Computer, Inc.,*
  707 F. Supp. 1429 (D. Del. 1989) ........................................................................................ 4

065028.1001

## TABLE OF AUTHORITIES (CONTINUED)

*Worldcom Techs., Inc. v. Intelnet Int'l, Inc.,*
    No. 00-2284, 2002 WL 1971256, (E.D. Pa. Aug. 22, 2002) ............................................. 5


**Rules**

Fed. R. Civ. P. 26(a)(1) ................................................................................................................ 2

Fed. R. Civ. P. 26(c) .......................................................................................................... 1, 5, 6

DB02:5462225.1                                                                                    065028.1001

## I.    SUMMARY OF ARGUMENT

This Court already rejected ARIAD's request to stay discovery. ARIAD previously indicated to the Court in connection with the parties' proposed scheduling order that it would seek a stay of discovery. At the July 12 scheduling conference, this Court responded unambiguously: "*I'm not staying discovery.*" D.I. No. 35 at 3.

ARIAD then let sixteen more days go by before attempting to confer with Amgen about this issue, and waited a total of twenty-six days – until literally the twenty-third hour of the day its discovery responses were due – to file a motion that simply repeats the same arguments that were previously argued and rejected. And then, in contravention of this Court's prior ruling, ARIAD sought to capitalize on its delay and effectively granted itself a stay by refusing, in light of the instant motion, to substantively respond to the discovery that is now overdue. This, however, is just one example of the steps ARIAD has taken from the outset of this action to frustrate Amgen's desire to move this case along, particularly in view of the Court's scheduling order. Amgen respectfully requests that the Court again deny ARIAD's request for a stay.

As ARIAD acknowledged in its opening brief, the Court has broad discretion to deny requests such as ARIAD's renewed motion, and there are several reasons why the Court should do so again. First, there are many examples in the case law of district courts having exercised their discretion to deny motions to stay in situations just like this. Second, ARIAD has not met its burden of demonstrating good cause for a stay of discovery under Fed. R. Civ. P. 26(c). Neither ARIAD's filing of its motion to dismiss nor its bare allegations of "burden" and "expense" in responding to Amgen's discovery requests justify a stay. Moreover, it is disingenuous for ARIAD to assert that Amgen will not be prejudiced by a further delay of discovery given the deadlines set forth in the Court's scheduling order.

Discovery must not be held hostage while ARIAD engineers one postponement after another to try to avoid litigating the merits of Amgen's case. ARIAD has offered no justification for its request that the Court reverse its July 12th ruling denying ARIAD's request for a stay.

## II.    NATURE AND STAGE OF THE PROCEEDING / STATEMENT OF FACT

Plaintiffs filed this Declaratory Judgment suit in April 2006 to remove the cloud of uncertainty created by ARIAD's express and implied threats of litigation over its '516 patent. As detailed in Amgen's Opposition to ARIAD's Motion to Dismiss (D.I. No. 21), Amgen had an objectively reasonable apprehension of being sued by ARIAD. Notwithstanding ARIAD's assertion that it was unsuspectingly "dragged" into this suit (ARIAD's Opening Brief at 1), Amgen's apprehension was eminently reasonable in light of ARIAD's actions, and Amgen appropriately initiated this litigation to secure "relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (describing purpose of Declaratory Judgment Act).

ARIAD, however, has repeatedly taken steps to disrupt and impede the progress of this case, including:

- Seeking an extension of thirty days to respond to the Complaint;

- Refusing to answer the Complaint and instead waiting until the last day of its extension to move to dismiss it on three separate grounds;

- Requesting delay of the Rule 16 conference pending its Motion to Dismiss;

- Seeking a one week extension to file its reply in support of its Motion to Dismiss;

- Requesting to delay the exchange of Rule 26(a)(1) initial disclosures pending resolution of a motion to stay discovery;

- Sitting for nearly an entire month on Amgen's proposed protective order – the provisions of which were already substantially agreed to by ARIAD in another litigation – and after finally meeting and conferring, insisting on an additional eleven days before providing further feedback;

2

- Postponing by three weeks the scheduled hearing on its own Motion to Dismiss; and

- Refusing to provide any substantive responses to any of Amgen's discovery requests.

While some of ARIAD's actions might be reasonable standing alone, they are, in the aggregate, telling of ARIAD's true objective. While Amgen has bent over backwards to accommodate all of ARIAD's requests to date, it cannot countenance ARIAD's present attempt to exacerbate this delay by seeking to stay discovery altogether.

ARIAD initially advised this Court in July of its intent to request a stay of discovery pending resolution of its Motion to Dismiss. D.I. No. 26, at 1, ¶1 ("The Defendant intends to move to stay discovery pending the resolution of its pending Motion to Dismiss for Lack of Subject Matter Jurisdiction . . . ."). At the July 12, 2006 conference, this Court denied ARIAD's request.   Following this denial, ARIAD's counsel later in the conference requested the opportunity to further confer with Amgen's counsel on this issue and to have the opportunity to re-raise the issue with the Court if needed. *Id.* at 14-15. Instead of following up immediately, ARIAD was silent for sixteen more days, after which time ARIAD finally sent a letter requesting a meet and confer. Following the meet and confer, ARIAD waited until 11:00 PM on the day its discovery responses were due, August 7, to file the instant motion. Despite this nearly month-long delay, ARIAD's motion simply rehashes the same arguments it previously articulated to the Court.

ARIAD used its contemporaneously filed Motion to Stay as an excuse to not answer Amgen's initial document requests and interrogatory responses, instead providing only objections to each and every request. Chief among these was the boilerplate objection that Plaintiffs' requests were "premature in light of ARIAD's pending motion to dismiss, as set forth in the papers supporting ARIAD's motion to stay discovery." By withholding its responses

3

during the pendency of this motion, ARIAD granted itself an impermissible *de facto* stay in violation of Delaware case law. *See Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 261 (D. Del. 1992) (motion to stay discovery does not allow a party to "no longer obey basic discovery rules" and "unless and until it is granted a stay, [a party] should be required to conduct discovery as if no motion had been filed at all") (quoting *Willemijn Houdstermaatschaapij BV v. Appollo Computer, Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989)). Thus, despite the fact that expert reports are due in early January of next year, and despite this Court's previous ruling that discovery was to proceed, ARIAD has unilaterally brought this case to a screeching halt.

## III.   ARGUMENT

### A.   It Is Well Within This Court's Discretion to Deny ARIAD's Second Request As Other Courts Have Done Under Similar Circumstances.

As ARIAD admits, the Court has broad discretion when ruling on a motion under Rule 26(c). There are many examples of decisions in which district courts have exercised their discretion to deny requests to stay discovery pending dispositive motions. *See, e.g., Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 226 (D.N.H. 2004) (party's confidence that it would prevail on dispositive motion, and desire to avoid expense associated with discovery, did not justify stay); *People With AIDS Health Group, et al. v. Burroughs Welcome Co.*, No. 91-0574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991) (attached as Exhibit A) (mere allegations that resources will be conserved, and bald assertion that motion to dismiss would likely be granted, not sufficient to justify stay); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (merely filing motion to dismiss not sufficient to justify stay; "such a notion is directly at odds with the need for expeditious resolution of litigation"). Many decisions also express the view that motions to stay discovery are disfavored. *See, e.g., Evans*, 326 F. Supp. 2d at 226 (noting that courts "generally frown on motions to stay discovery and deny them in the absence of

4

compelling reasons"); *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. 00-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002) (attached as Exhibit B) ("Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.") (quoting *Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, 1993 U.S. Dist. LEXIS 3734, at *6-7 (E.D. Pa. 1993) (attached as Exhibit C)); *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (same). The Court is well within its discretion to deny ARIAD's request for a stay.

## B.     ARIAD's Bare Allegations Do Not Establish "Good Cause" For a Stay.

To be eligible for a stay under Rule 26(c), ARIAD has the burden of demonstrating good cause for this Court to issue an "order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). The requisite cause did not exist when this Court denied ARIAD's motion for a stay on July 12, and nothing has transpired since then that might otherwise favor the issuance of a stay.

It is black-letter law that merely filing a dispositive motion does not constitute good cause for an order to stay discovery. *See, e.g., Evans*, 326 F. Supp. at 226 ("A defendant's confidence that it will prevail on a dispositive motion does not in and of itself justify holding discovery in abeyance."); *In re WRT Energy Securities Litig.*, No. 96 Civ. 3610, -3611 (JFK), 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996), at *1 (attached as Exhibit D) (stay is "by no means automatic" when dispositive motion filed); *People With AIDS*, 1991 WL 221179 at *1 ("[A] pending motion to dismiss is not ordinarily a situation that in and [of] itself would warrant a stay of discovery") (citing *Twin City Fire Ins. Co. v. Employers Ins. Of Wausau*, 124 F.R.D. 652 (D. Nev. 1989)); *Osan Limited v. Accenture LLP*, No. CV 2005-5048(SJ)(MDG), 2006 WL 1662612, at *1 (E.D.N.Y. June 13, 2006) (attached as Exhibit E) ("The pendency of a dispositive

5

motion is not, in itself, an automatic ground for a stay.").[1]  ARIAD is, thus, required to come forward with something *more* than simply the desire to avoid discovery during the pendency of its motion.

ARIAD's self-serving, unsupported characterizations of Amgen's discovery requests as "costly, burdensome, and prying," "extremely broad," and "highly burdensome" also do not suffice.  *See, e.g., Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) ("The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements."); *Continental Illinois Bank & Trust Co. v. Caton*, 130 F.R.D. 145, 148 (D. Kan. 1990 ("[B]are assertions that discovery will be unduly burdensome or that it should be stayed pending dispositive motions that will probably be sustained, are insufficient to justify the entry of an order staying discovery generally.") (cited in *People With AIDS*, 1991 WL 221179, at *1).  All civil litigation imposes some burden and expense on the litigants.  But the standard under Rule 26(c) is "*undue* burden or expense." ARIAD has not even alleged, let alone attempted to show, that the number or scope of Amgen's discovery requests is unusually or unduly large or especially burdensome.  Indeed, ARIAD's initial Rule 34 request in its litigation against Eli Lilly contained 83 document requests, twenty-one more than Amgen has served on ARIAD.  Moreover, ARIAD is in a position to respond to at least some of Amgen's discovery requests with little to no effort by virtue of its ongoing '516 patent re-examination proceedings and its '516 patent infringement litigation against Lilly

---

[1]  Cases cited in ARIAD's opening brief confirm this proposition as well.  *Telesca v. Long Island Housing Partnership*, 2006 WL 1120636 (E.D.N.Y. Apr. 27, 2006) ("It is black letter law that the mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay.") (case cited in ARIAD's opening brief at 4, 6); *U.S. v. County of Nassau*, 188 F.R.D. 187, 188 (E.D.N.Y. 1999) ("[T]he mere filing of a dispositive motion—even one attacking the jurisdiction of the district court—does not warrant the issuance of a stay under Rule 26(c).  There must be more.") (case cited in ARIAD's opening brief at 4, 5).

(where it undoubtedly responded to similar, if not identical, document requests and interrogatories). It is hard to imagine that ARIAD does not have readily available sets of responsive documents that could be immediately produced in this case.

ARIAD's argument that Amgen's discovery requests are unduly burdensome appears to have been crafted solely for purposes of its motion to stay. This is borne out by the fact that ARIAD already had Amgen's discovery requests in hand at the July 12, 2006 scheduling conference, but never made one mention -- either at the scheduling conference or in their meet and confer -- of any undue burden or expense involved in responding to them. There is simply no "good cause"[2] to stay discovery in this case.

### C.    A Stay in This Case Would Prejudice Amgen.

ARIAD's assertion that its requested stay will not affect the schedule in this case is disingenuous. At a minimum, since ARIAD has delayed the hearing on its Motion to Dismiss until September 11, 2006, a stay will shave an additional five weeks off the discovery period, impeding Amgen's ability to prepare for and conduct fact and expert discovery within the allotted discovery time. And unless this Court resolves ARIAD's Motion to Dismiss on the same day of the oral argument, the delay will be even longer. ARIAD simply cannot predict or control the length of the stay or how it will impact the case schedule, despite its empty assurance of a "short stay." Furthermore, despite ARIAD's assertion that discovery will "resume promptly" once this Court rules on the Motion to Dismiss, ARIAD has already previewed its intent to *further* delay the discovery process by, without cause, challenging the propriety of Amgen's discovery requests. *See* ARIAD's Opening Brief at 7 n. 1 (ARIAD is "almost certain" to raise

---

[2]    With respect to the merits of the pending Motion to Dismiss, Amgen has already briefed that issue at length, *see* D.I. No. 21, and respectfully submits that ARIAD's professed confidence in the strength of its motion is ill-founded.

7

disputes over the scope of Amgen's discovery requests). ARIAD's delay tactics underscore the need to get the discovery process underway now in order to meet the January 2007 deadline for initial expert reports. There is substantial discovery (document productions, thirteen inventor depositions, etc.) to be taken before initial expert reports are due in January and the delay resulting from a stay, compounded by ARIAD's past dilatory conduct, will serve to prejudice Amgen's efforts to, among other things, prepare its initial expert reports.

8

## IV.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that this Court reaffirm its earlier ruling denying ARIAD's request for a stay of discovery by denying ARIAD's current Motion to Stay Discovery.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
(312)861-2000

Robert G. Krupka, P.C.
Drew Diamond
KIRKLAND & ELLIS LLP
South Figueroa Street
Los Angeles, CA  900017-5800
(213)680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex Corporation,*
*Amgen USA Inc., Amgen Manufacturing, Limited, and*
*Immunex Rhode Island Corporation*

DATED:  August 10, 2006

9

# Exhibit A

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 221179 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

▷
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
PEOPLE WITH AIDS HEALTH GROUP, *et al.*, Plaintiffs,
v.
BURROUGHS WELLCOME CO., Defendant.
**Civ. A. No. 91-0574.**

Oct. 11, 1991.

*ORDER*

<u>JOHN GARRET PENN</u>, District Judge.
**\*1** This matter is before the Court on Defendant's Motion to
Stay Discovery and Defendant's Motion to Reconsider.
Upon consideration of the motions, any opposition thereto
and the entire record, the Court concludes that defendant's
motion to stay discovery should be denied and that defend-
ant's motion to reconsider should be granted. The Court fur-
ther concludes that a status conference is scheduled for Oc-
tober 28, 1991.

I Defendant's Motion To Stay Discovery

Defendant argues that under <u>Fed.R.Civ.P. 26(c)</u> the Court
should exercise it discretion and stay discovery pending res-
olution of defendant's motion to dismiss. Plaintiffs oppose
defendant's motion contending that defendant has failed to
meet its burden. *See <u>Twin City Fire Ins. Co. v. Employers
Ins. of Wausau, 124 F.R.D. 652 (D.Nev.1989)</u>* ("the burden
is on the party seeking relief to show some plainly adequate
reason for the order.... [A] pending motion to dismiss is not
ordinarily a situation that in and in itself would warrant a
stay of discovery"). Relying on *Maljack Production, Inc. v.
Motion Picture Association of America*, No. 90-1121, *slip
op.*, (D.D.C. Oct. 3, 1990), defendant argues that a stay
should be granted pending resolution of its motion to dis-
miss.

The party seeking to stay discovery has the burden of justi-
fication. However, defendant has failed to demonstrate bey-
ond mere allegations that resources will be conserved by
granting the stay. Further, defendant makes a bald assertion
that its motion to dismiss will be granted. These are mere

assertions that have not been substantiated by defendant.
However, "bare assertions that discovery will be unduly
burdensome or that it should be stayed pending dispositive
motions that will probably be sustained, are insufficient to
justify the entry of an order staying discovery generally."
<u>Continental Illinois Bank & Trust Co. v. Caton, 130 F.R.D.
145, 148 (D.Kan.1990)</u>.

Therefore, the Court concludes that defendant's motion to
stay discovery should be denied.

II Defendant's Motion To Reconsider

By a previous Order, the Court converted Defendant's Mo-
tion to Dismiss to a Motion for Summary Judgment. *See* Or-
der, July 23, 1991. Defendant has filed a Motion to Recon-
sider that Order. In defendant's present motion, defendant
has withdrawn its motion to dismiss based on a failure to
state a claim upon which relief can be granted. *See* Motion
to Reconsider at 2, n. 1. Therefore, defendant's motion to
dismiss is based on <u>Fed.R.Civ.P. 12(b)(1)</u> (lack of jurisdic-
tion over the subject matter). Specifically, defendant alleges
that jurisdiction is lacking because of the absence of a justi-
ciable case or controversy as required to support an action
for declaratory judgment.

Therefore, the Court concludes that defendant's motion to
reconsider should be granted.

Accordingly, it is hereby

ORDERED that defendant's motion to stay discovery is
denied; and it is further

ORDERED that defendant's motion to reconsider is granted;
and it is further

**\*2** ORDERED that a status conference in the present action
is scheduled for October 28, 1991, at 9:30 a.m.

D.D.C.,1991.
People With Aids Health Group v. Burroughs Wellcome
Co.
Not Reported in F.Supp., 1991 WL 221179 (D.D.C.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                              Page 2
Not Reported in F.Supp., 1991 WL 221179 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**


• 1:91cv00574 (Docket) (Mar. 18, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
WORLDCOM TECHNOLOGIES, INC. and MCI Telecom-
munications Corp.,
v.
INTELNET INT'L, INC., Associated Business Telephone
Systems Corp., Dominic Dalia and Michael Dalia.
**No. CIV.A. 00-2284.**

Aug. 22, 2002.

*MEMORANDUM*

GILES.
**\*1** Plaintiffs Worldcom Technologies Incorporated
(hereinafter "Worldcom") and MCI Telecommunications
Corporation (hereinafter "MCI") allege breach of contract
(Counts I, II, V), Quantum Meruit (Count III), unjust en-
richment (Count IV), Fraud (Count VI), and negligent and
intentional misrepresentation (Count VII) against defend-
ants Intelnet International Inc. (hereinafter "Intelnet"), As-
sociated Business Telephone Systems Corporation
(hereinafter "ABTS"), and Michael and Dominic Dalia
(hereinafter "the Dalia's") in their individual capacities,
arising from a contract by which the plaintiffs provided tele-
communication services to the defendants.

Defendants Michael and Dominic Dalia jointly have filed a
12(b)(2) motion to dismiss, contending that this court does
not have personal jurisdiction over them in their individual
capacities. The Dalia's have also filed a Joint Motion for
Protective Order and Motion to Bifurcate Claims, arguing
that discovery on the alter ego issue will only be necessary
if plaintiffs sustain their claims against Intelnet/ABTS, the
companies to which the Dalia's are alleged to be alter egos.
Thus, they argue, discovery should be deferred pending a
determination by the court as to whether corporate liability
exists in the first instance. For the reasons that follow, both
motions are denied.

*I. BACKGROUND*

ABTS is a corporation organized under the laws of New Jer-
sey, with its principal place of business located in same.

Dominic Dalia is an officer, director, and the sole sharehold-
er of ABTS. Michael is an officer and director of ABTS. In-
telnet is a corporation organized under the laws of Delaware
and has its principal place of business in New Jersey.
Dominic Dalia is an officer, director, and shareholder of In-
telnet. Michael Dalia is an officer and director of Intelnet.
On January 23, 2002, this court gave leave to plaintiffs to
amend their complaint, filed on May 3, 2000 against ABTS
and Intelnet, to add as defendants the Dalia's in their indi-
vidual capacities.[FN1]

> FN1. Plaintiffs argue that because the issue of
> whether the court has personal jurisdiction over the
> Dalia's was raised initially, and tangentially, during
> oral argument before Judge Bechtle in regard to the
> motion to amend the complaint, that the issue had
> already been resolved in favor of granting jurisdic-
> tion when this court granted plaintiffs' motion to
> amend. This is not the case.

The amended complaint alleges that on January 4, 1993,
ABTS and MCI executed a written Agreement for Telecom-
munications Services ("MCI Agreement"). Pursuant to that
Agreement, MCI provided services to both ABTS and Intel-
net. In addition, on March 27, 1998, Intelnet and Worldcom
entered into a service agreement ("Worldcom Agreement").
Worldcom provided services to Intelnet pursuant to that
agreement. Plaintiffs allege that, despite having provided
services and making repeated requests for payment, ABTS
and Intelnet have failed to pay for the telecommunications
services provided under those agreements. Moreover, the
amended complaint alleges that the Dalia's should be held
liable for the breaches related to these contracts, in that this
court should treat the Dalia's as the "alter egos" of ABTS
and/or Intelnet.

In addition to the "alter ego" allegations, the amended com-
plaint alleges that the Dalia's individually committed fraud
and/or negligent misrepresentation by misrepresenting and/
or concealing material information concerning Intelnet to
MCI/Worldcom. The amended complaint alleges that in fall
1998, at a meeting in New York City, the Dalia's sought to
combine the MCI Agreement and Worldcom Agreement in-
to one agreement between Intelnet and Worldcom. At that
time, it is alleged that the Dalia's did not disclose that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

money was allegedly owed to MCI under the MCI agreement. Further, the Dalia's allegedly advised plaintiffs repeatedly that as a result of a business deal with ITT Corporation, they expected that Intelnet would be able to deliver more than $1 million in monthly revenues to Worldcom.

Further, the amended complaint references a November 1998 meeting that took place at Intelnet's offices in New Jersey. The meeting's participants included Dominic Dalia, but not Michael Dalia, as well as other representatives of Intelnet and MCI/Worldcom. The amended complaint alleges that during the meeting, Dominic Dalia and other Intelnet representatives presented misleading financial information regarding the financial status of Intelnet, in an effort to induce MCI/Worldcom to maintain its relationship with Intelnet. This included failing to advise MCI/Worldcom that Intelnet had allegedly at that time defaulted on a $15 million loan from Prudential Securities. Finally, although no specific dates are provided, the amended complaint alleges that the Dalia's misrepresented that Intelnet was entitled to credits that would offset the monies due under the MCI Agreement. The amended complaint makes no reference to any meetings that took place in Pennsylvania, nor does it reference any specific telephone calls or letters that were placed or received in Pennsylvania.

*II. DISCUSSION*

**\*2** For purposes of deciding whether to grant a motion to dismiss, the court must accept as true the plaintiff's version of the facts, and draw all inferences from the pleadings, affidavits, and exhibits in the light most favorable to the plaintiff. *Guardi v. Desai,* 151 F.Supp.2d 555, 558-59 (E.D.Pa.2001); *Dimark Mktg., Inc. v. Louisiana Health Serv. & Indem. Co.,* 913 F.Supp. 402, 405 (E.D.Pa.1996); *Cinalli v. Kane,* 191 F.Supp.2d 601, 610 (E.D.Pa.2002).

Pursuant to Rule 12(h)(1) of the Federal Rules of Civil procedure, the defendant bears the burden of raising the defense of lack of personal jurisdiction. *D & S Screen Fund II v. Ferrari,* 174 F.Supp.2d 343, 345 (E.D.Pa.2001) (citing *National Paintball Supply, Inc. v. Cossio,* 996 F.Supp. 459, 460 (E.D.Pa.1998)). Once the defense is raised, however, the burden shifts to the plaintiff to show that jurisdiction is proper. *D & S Screen Fund,* 174 F.Supp.2d at 345. To meet

this burden and survive a motion to dismiss, the plaintiff need only establish a prima facie case of jurisdiction by providing "sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant." *National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.,* 785 F.Supp. 1186, 1189 (W.D.Pa.1992) (quoting *Bowers v. NETI Technologies, Inc.,* 690 F.Supp. 349, 355 (E.D.Pa.1988)); *see also Mellon Bank (East) PSFS v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992).

Rule 4(e) of the Federal Rules of Civil Procedure permits a court to exercise personal jurisdiction over a non-resident defendant to the extent that the laws of Pennsylvania permit. Pennsylvania's long-arm statue, allows for jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat.Ann. § 5322(b) (1981). This court's jurisdiction is coextensive with the due process clause of the United States Constitution. *Grand Entertainment Group, Ltd. v. Star Media Sales,* 988 F.2d 476, 481 (3d Cir.1993) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984)).

The Supreme Court has provided a two prong test to define the due process limits of exercising personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**\*3** First, the defendant must have made constitutionally sufficient minimum contacts with the forum state. *Id.* at 474. A court can satisfy this minimum contacts requirement under either one of two theories, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), both of which require an examination of "the relationship among the forum, the defendant and the litigation," *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). "General jurisdiction is invoked when the plaintiff's cause of action arises from the defendant's non-forum related activities." *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 690, n. 2 (3d Cir.1990). To establish general jurisdiction, the plaintiff must show that the defendant has maintained continuous and systematic contacts with the forum. *Helicopteros,* 466 U.S. at 415; *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir.2001). In the alternative, a court may invoke specific

Westlaw.

jurisdiction when "there are no continuous and systematic contacts, but a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Guardi v. Desai,* 151 F.Supp.2d at 558-59 (quoting *Helicopteros,* 466 U.S. at 414). To establish specific jurisdiction, the plaintiff must show that the defendant has minimum contacts with the forum such that he or she "should reasonably anticipate being haled into court there." *Worldwide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In the instant case, the plaintiffs concede that this court cannot exercise general jurisdiction over defendants Michael and Dominic Dalia. Therefore, the issue before the court is whether minimum contacts exist such that specific jurisdiction over the Dalia's may be established.

If constitutionally sufficient minimum contacts exist, the court may consider the second prong to determine whether subjecting the defendant to personal jurisdiction comports with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S. at 476 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The factors that courts look to in this fairness analysis include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Worldwide Volkswagon,* 444 U.S. at 292. In analyzing this second prong, the defendant bears the burden of presenting a compelling case that would make exercising jurisdiction over him or her unfair or burdensome. *Guardi v. Desai,* 151 F.Supp.2d at 561.

### A. The Dalias' Corporate Contacts with Pennsylvania

*4 Individuals performing acts while in their corporate capacity are not subject to the personal jurisdiction of the courts in that state where the acts took place. *Elbeco Inc. v. Estrella de Plato, Corp.,* 989 F.Supp. 669, 676

(E.D.Pa.1997) (citations omitted). While the third circuit has not decided this issue, this district has recognized an exception to this general rule so that personal liability may attach for torts that are committed in the corporate capacity. *D & S Screen Fund,* 174 F.Supp.2d at 347; *United Products Corp., v. Admiral Tool & Mfg. Co.,* 122 F.Supp.2d 560, 562 (E.D.Pa.2000); *Huth v. Hillsboro Ins. Management, Inc.,* 72 F.Supp.2d 506, 511 (E.D.Pa.1999) (citations omitted). Courts that recognize this exception apply a case-by-case approach by applying three factors to determine if the officer's corporate contacts should be considered: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the nature and extent of the officer's role in the alleged tortious conduct. *D & S Screen Fund,* 174 F.Supp.2d at 347; *United Products Corp.,* 122 F.Supp.2d at 562.

#### 1. The Dalia's Role in the Corporate Structure

In the instant case, it is undisputed that the Dalia's played a major role in the corporate structure of ABTS and Intelnet. Dominic Dalia was the president and CEO of both companies and oversaw all of the operations of the corporations. Further, Michael Dalia was an officer and the executive vice president of ABTS and an officer, director, and executive vice president of Intelnet.

#### 2. The Dalia's Corporate Contacts in Pennsylvania

Further, plaintiffs have submitted considerable evidence outlining the Dalia's corporate contacts with Pennsylvania. The ABTS/Intelnet account with MCI was overseen by MCI'S Philadelphia branch, located in Bala Cynwyd, Pennsylvania. Michael and Dominic Dalia had regular contact with this office, which serviced the ABTS/Intelnet account for MCI and billed and collected for MCI's charges to ABTS/Intelnet. Further, the Dalia's directed on behalf of ABTS/Intelnet a nationwide sales campaign which resulted in ABTS and Intelnet providing telephone service to Pennsylvania residents. Pennsylvania residents paid Intelnet for their telephone service, and Dominic and Michael Dalia thereby derived revenue from business conducted in Pennsylvania.[FN2]

    FN2. In support of these allegations, plaintiffs have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 4
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

submitted the following pieces of evidence:

1. A letter from Michael Dalia dated March 11, 1997, sent to Doug Ingerson, in Philadelphia, acknowledging that the corporate defendant's account with MCI was handled through MCI's Philadelphia branch located in Bala Cynwyd, Pennsylvaia. (Letter, Pl.App.Doc. # 71, Ex. 18.)

2. A July 31, 1996 letter from Susan Barry, MCI's strategic account manager of the Philadelphia branch, to Michael Dalia, describing the effective contract rates between Intelnet and MCI. (Letter, Pl.App., Doc # 71, Ex. 9). Although the letter was written by Barry in Philadelphia to Michael Dalia in New Jersey, it is still a significant Pennsylvania contact when viewed in light of Susan Barry's testimony that Michael Dalia asked her to write the letter on MCI letterhead for his account records. (Deposition of Susan Barry, Pl.App. Doc. # 71, Ex. 6, at 122).

3. A letter dated November 7, 1997, from Catherine Holland, MCI's Senior Strategic Accounts Manager, to Michael Dalia. (Letter, App.2, Ex. 16). Here again, Michael Dalia requested this letter on MCI stationary via fax to Philadelphia two days earlier. (Fax, Pl.App.Doc. # 71, Ex. 16). Further, Michael Dalia sent a reply letter to the Philadelphia branch in which he confirmed that Intelnet understood that it would not receive any additional discounts from MCI until they entered into a definite agreement to increase Intelnet's minimum volume requirement. (Letters, Pl.App.Doc. # 71, Ex. 16).

4. Various letters dated between March, 17 1997 and December 1998, from Michael Dalia to MCI's Philadelphia branch discussing billing and credit matters. (Letters, Pl.App.Doc. # 71, Ex. 18). These letters relate to the subject matter of the lawsuit as one of the plaintiff's claims is to collect unpaid bills owed by Intelnet. (Amended Complaint, ¶ 27).

5. Evidence that each month after receiving their monthly bill, ABTS and Intelnet would send credit memos to Lori Jones at MCI's Philadelphia branch office in which they detailed the credits that they claimed that they were owed on their monthly bill. (Credit memos, Pl.App. Doc. # 71, Ex. 19; Depos-

ition of Michael Dalia, Pl.App. Doc. # 71, Ex. 3, at 830-35) (hereinafter "Dep. of M. Dalia"). Although the letters were written by Lea Sellito, each letter was copied to Michael Dalia. (Credit memos, Pl.App.Doc. # 71, Ex. 19). These memos also relate to the subject matter of the lawsuit in that the defendant's counterclaim alleges that the plaintiffs owe the defendants these claimed credits. (Defendant's ninth, eleventh, and fourteenth affirmative defense).

6. Intelnet applied to the Pennsylvania Public Utilities Commission "seeking authority to operate as a reseller of intrastate telecommunications services ... within the entire Commonwealth of Pennsylvania." (Application, Pl.App.Doc. # 71, Ex. 20). Michael Dalia had a significant role in this application as it stated that all correspondence and communications pertaining to the application should be directed to him (*Id.* at 2).

7. Intelnet's service of providing long distance services to Costco Wholesale members throughout the country. (Plaintiffs' memorandum in opposition to defendant's motion, at 16) (hereinafter "Plaintiffs' Opp."). Many of the Costco members who were provided these long distance services had Pennsylvania phone numbers and area codes such as 215, 610, 412, 717, and 784. (List of Costco members and phone numbers, Pl.App.Doc. # 71, Ex. 21). The Dalia's oversaw this service as they oversaw all of the day to day operations of Intelnet. (Deposition of Dominic Dalia, Pl.App.Doc. # 71, Ex. 2, at 16) (hereinafter "Dep. of D. Dalia"); (Dep. of M. Dalia, Pl.App.Doc. # 71, Ex. 3, at 8; Dep. of V. Oberholtzer, Pl.App.Doc. # 71, Ex. 4, at 50).

8. Several trips Dominic Dalia made to Philadelphia to meet with Frank Hadley and Terry Connel, members of Philadelphia's "MCI team." (Dep. of D. Dalia, Pl.App.Doc. # 71, Ex. 2, at 51, 52).

9. Numerous checks sent and signed by Dominic Dalia in 1996, 1997, and 1998, before payments were defaulted, to MCI's Philadelphia office to pay ABTS and Intelnet's bills. (Signed checks,

Not Reported in F.Supp.2d                                                                      Page 5
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Pl.App.Doc. # 71, Ex. 13).

10. A letter dated November, 30 1998, from
Dominic Dalia to Robert Vetera, Director of Cor-
porate Credit at MCI Worldcom, in which he refer-
enced his business relationship with ITT as well as
his hopes of setting up a separate business plan
with ABTS. Although the letter was addressed to
Vetera in Oklahoma, copies were sent to MCI em-
ployees such as Robert Simons and Thomas
Sweeney at MCI's Philadelphia branch. (Letter,
Pl.App.Doc. # 71, Ex. 14). This letter also relates
to the subject matter of the lawsuit in that the
plaintiff's have alleged that the Dalia's fraudulently
concealed financial information relating to Intel-
net's business relationship with ITT. (Amended
complaint ¶ 11).

In *Elbeco,* the individual defendants made an ongoing series
of telephone and mail misrepresentations to a Pennsylvania
shirt manufacturing corporation over the course of one year,
as well as two personal visits to Pennsylvania. 989 F.Supp.
at 677. From that, the court concluded that there were
"sufficient minimum contacts for [the] Court to exercise
specific jurisdiction over the individual defendants." *Id.* In
*Beistle,* the individual defendant called Pennsylvania several
times and made several business ventures to Pennsylvania to
promote his products. 914 F.Supp. at 96. Further, the de-
fendant distributed his corporation's catalogue in
Pennsylvania. *Id.* Based on this information, the court found
that the defendant's "contacts with Pennsylvania are more
than sufficient to permit this court to exercise jurisdiction
over him personally." *Id.* at 97. *But see Graco Children's
Products, Inc. v. Draco Corporation, Inc., 1995 WL
299023, *3 (E.D.Pa.1995)* (finding insufficient contacts
where there was no evidence that the defendant entered
Pennsylvania during the relevant time period). Plaintiffs
have presented considerable evidence outlining the Dalia's
corporate contacts with Pennsylvania consisting of various
letters and memos addressed to Pennsylvania, business ven-
tures to Pennsylvania, and services provided to
Pennsylvania residents. Therefore, viewing the facts in the
light most favorable to the plaintiffs, the court finds that suf-
ficient facts exist to establish that the Dalias had extensive
corporate contacts with Pennsylvania.

*3. The Dalias' Role in the Alleged Tortious Conduct*

**\*5** Plaintiffs have alleged that both Michael and Dominic
Dalia induced the plaintiffs to continue to provide telecom-
munications services to Intelnet and ABTS by intentionally
misrepresenting their financial status and fraudulently con-
cealing material information relating to Intelnet's business
relationship with the ITT Corporation. (Amended Com-
plaint at ¶¶ 59-99). By their own admissions, Michael and
Dominic Dalia oversaw the day-to-day operations of their
company. (Dep. of D. Dalia, Pl.App.Doc. # 71, Ex. 2, at 16;
Dep. of M. Dalia, Pl.App.Doc. # 71, Ex. 3, at 8). Further-
more, Vernon Oberholtzer, Intelnet's CFO, testified that
Dominic was a "strong CEO and has his hand in almost
everything and pretty much controls everything," and Mi-
chael "ran the operations side of the business, which was al-
most everything concerning the business on a day-to-day
basis." (Dep. of V. Oberholtzer, Pl.App.Doc. # 71, Ex. 4, at
47, 48). It follows that, given the Dalia's positions, they
would have played a major role in any tortious activity that
was committed by ABTS or Intelnet. *Accord Beistle,* 914
F.Supp. at 96-97 ("The complaint alleges that Downey per-
sonally, and in his individual capacity, engaged in the un-
lawful copying of Beistle protected materials. Under these
circumstances, Downey should not be able to use a corpor-
ate shield to protect himself from suit in this forum, and we
will consider his business contacts in connection with our
analysis."). Thus, this court must consider the Dalia's cor-
porate contacts with Pennsylvania

The Dalia's corporate contacts with Pennsylvania must be
considered in determining whether to exercise personal jur-
isdiction over them. In their briefs and exhibits, the
plaintiffs have presented considerable evidence that the
Dalia's played a major role in the corporate structure of
ABTS and Intelnet, had extensive contacts with
Pennsylvania, and played a large role in the alleged tortious
conduct.[FN3]

> FN3. Plaintiffs assert two additional arguments in
> support of establishing personal jurisdiction over
> the Dalia's: first, that the Dalia's are the alter egos
> of ABTS and Intelnet, and second, that the Dalia's
> are subject to personal jurisdiction under 42
> Pa.C.S.A. § 5322(a)(4) for committing a tort out-

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Page 6

side the Commonwealth which caused harm in the Commonwealth. Because this court has found that the Dalia's corporate contacts with Pennsylvania suffice to establish personal jurisdiction, these additional arguments will not be addressed.

### B. Fair Play and Substantial Justice

Exercising personal jurisdiction over the Dalia's comports with "traditional notions of fair play and substantial justice." *Burger King,* 471 U.S. at 476 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Dalia's argue that it will be unfair to require them to litigate this case along with the parallel litigation that is currently ongoing in New Jersey state court. The court disagrees. All parties in both cases have agreed that the depositions being conducted can be used in either this case or the New Jersey case, thus joining the Dalia's here will not cause them to under go any additional deposition expense. Further, the New Jersey court has permitted WorldCom to amend its claim to add the same claims against the Dalia's as WorldCom alleges here. The Dalia's are represented in that case by Carl Poplar, Esq., who also represents them here. Thus the Dalia's will have the expense of personal counsel whether or not they are joined here. Thus, the exercise of personal jurisdiction over the Dalia's comports with fair play and substantial justice.

### C. Dalia's Joint Motion for Protective Order and Motion to Bifurcate Claims

\*6 The Dalia's argue, in a separate motion, that plaintiffs seek discovery which is overly burdensome as it pertains to the alter ego allegations of the amended complaint.

Under Fed.R.Civ.P. 26(c), this court has the power to enter a protective order on a showing of "good cause" in order to protect a party from annoyance, embarrassment, oppression or undue burden or expense. "Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Coca-Cola Bottling Co. of Lehigh Valley v. Grol,* 1993 U.S. Dist. LEXIS 3734, at \*6, \*7 (E.D.Pa.1993). "Good cause" requires a

showing of a "particular need for protection." *Pearson v. Miller,* 211 F.3d 57, 72 (3d Cir.2000). Defendants must "demonstrate that disclosure will cause a defined and serious injury" by pointing to "substantiated specific examples." *Doe v. Provident Mutual Life and Accident Ins. Co.,* 176 F.R.D. 464, 469 (E.D.Pa.1997).

Defendants argue that they should not be required to answer the pending alter ego discovery because it is overly burdensome and will cause unnecessary delay. Defendants give no specifics in support of this argument other than to list examples of the discovery requests that they claim to be unreasonable. The court finds that, on their face, these discovery requests are not overly burdensome or likely to cause unnecessary delay.

Defendants further assert that a protective order is necessary because the alter ego discovery will only become relevant if plaintiffs prevail on the merits of the claim against Intelnet and ABTS. This is also the Dalia's principal argument in support of its motion to bifurcate the alter ego claims.

The court disagrees. Delaying discovery on the alter ego issues will only further compound the delays and expense already incurred in this case, filed over two years ago. The Dalia's proposed scheme will result in two stages of discovery and two trials, which is both inefficient and unnecessary. Further, as already discussed, the Dalia's are incurring the same expense associated with alter ego discovery and litigation in the New Jersey case. Finally, further delay creates the risk of prejudice to plaintiffs in the form of lost evidence, fading memories, and potentially dissipating assets to pay any judgment that plaintiffs might secure.

The Dalia's also seek to bifurcate the alter ego issues from the case under Fed.R.Civ.P. 42(b).[FN4] "Courts order separate trials [under Rule 42(b) ] only when 'clearly necessary.' This is because 'a single trial will generally lessen the delay, expense and inconvenience to the parties and the courts.' The movant has the burden to show prejudice." *Corrigan v. Methodist Hospital,* 160 F.R.D. 55, 56-57 (E.D.Pa.1995) (citations omitted). "The mere possibility of some prejudice does not justify separate trials where such prejudice is not substantial and there are strong countervailing considerations of economy." *Id.* at 57 (citing *Tri-R Systems v. Fried-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

*man & Son,* 94 F.R.D. 726-27 (D.Colo.1982).

FN4. Rule 42(b) provides:
Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

As discussed *supra,* the Dalia's argument that depositions and litigation on the alter ego claims may not be necessary if ABTS and Intelnet prevail on the merits does not outweigh the harm that plaintiffs would suffer if bifurcation were granted and plaintiffs prevailed against Intelnet and ABTS.

*7 The Dalia's further argue that they will be prejudiced in front of a jury if the alter ego claims are not bifurcated, or that at the least, a jury would be confused if the alter ego claims were asserted in conjunction with the claims against ABTS and Intelnet. The court disagrees.

### III. CONCLUSION

For the foregoing reasons, Michael and Dominic Dalia's joint 12(b)(2) motion to dismiss, and joint motion for a protective order and to bifurcate claims are denied.

An appropriate order follows.

### ORDER

AND NOW, this ____ day of August 2002, upon consideration of Defendants Michael Dalia and Dominic Dalia's Joint Motion to Dismiss, pursuant to F.R.C.P. 12(b)(2), and the arguments of the parties, it is hereby ORDERED that the Motion is DENIED.

Upon consideration of Defendants Michael Dalia and Dominic Dalia's Joint Motion for Protective Order and Mo-

tion to Bifurcate Claims, and the arguments of the parties, it is further ORDERED that the Motion is Denied.

E.D.Pa.,2002.
Worldcom Technologies, Inc. v. Intelnet Int'l, Inc.
Not Reported in F.Supp.2d, 2002 WL 1971256 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:00cv02284 (Docket) (May. 03, 2000)

END OF DOCUMENT

# Exhibit C

LEXSEE 1993 U.S. DIST. LEXIS 3734

**COCA–COLA BOTTLING COMPANY OF THE LEHIGH VALLEY, Plaintiff v. JOSEPH F. GROL, MARK W. KOVACS, PETER J. KEARNEY, AND STEFKO DISTRIBUTING COMPANY, INC., d/b/a CATY BEVERAGE CO., Defendants**

CIVIL ACTION NO. 92–7061

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*1993 U.S. Dist. LEXIS 3734*

**March 3, 1993, Decided
March 8, 1993, Filed; March 9, 1993, Entered**

**DISPOSITION:** [*1] Defendant Kearney's motion is DENIED in its entirety.

**COUNSEL:** For COCA-COLA BOTTLING COMPANY OF THE LEHIGH VALLEY, PLAINTIFF: ALAN M. BLACK, BLACK, MC CARTHY, EIDELMAN, FEINBERG, ANEWALT & KERCHER, P.C., 22 N. SEVENTH STREET, CORPORATE PLAZA, 6TH FL., ALLENTOWN, PA 18101, USA. DAMON E. DUNN, WILSON P. FUNKHOUSER, LEVIN & FUNKHOUSER, LTD., 55 WEST MONROE STREET, SUITE 2410, XEROX CENTRE, CHICAGO, IL 60603, USA. LAWRENCE R. LEVIN, LEVIN & FUNKHOUSER, LTD., 55 WEST MONROE STREET, STE. 2410, XEROX CENTRE, CHICAGO, IL 60603, USA.

For JOSEPH F. GROL, DEFENDANT: QUINTES D. TAGLIOLI, 512 HAMILTON STREET, STE. 302, ALLENTOWN, PA 18101, USA. For PETER J. KEARNEY, DEFENDANT: FAUSTINO MATTIONI, 399 MARKET STREET, 2ND FLOOR, PHILADELPHIA, PA 19106, USA. For STEFKO DISTRIBUTING COMPANY, INC. d/b/a CATY BEVERAGE CO., DEFENDANT: WILLIAM R. THOMPSON, KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, 1401 WALNUT STREET, 8TH FLOOR, PHILA, PA 19102, USA.

**JUDGES:** Huyett, 3rd

**OPINIONBY:** DANIEL H. HUYETT, 3RD

**OPINION:**

**MEMORANDUM**

HUYETT, J.

MARCH 3, 1993

Plaintiff filed a complaint in this action on December 9, 1992 alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C. § 1961* [*2] et seq. and various state law causes of action. The complaint essentially alleges that two of Plaintiff's former managers, Defendant Joseph F. Grol and Defendant Mark W. Kovacs, and two of Plaintiff's customers, Defendant Peter J. Kearney and Defendant Stefko Distributing Company, engaged in a pattern of racketeering activity through numerous schemes to siphon off Plaintiff's assets.

On December 23, 1992 Plaintiff served notices of depositions and subpoenas for documents on First Lehigh Bank, Northeastern Bank, Merchants Bank, Meridian Bank, American Travel Related Services, Inc., and First Valley Bank. Plaintiff made the document subpoenas returnable on February 1–3, 1993 and the subpoenas state that "no deponent need appear if records are produced on or before" the return dates of the subpoenas. Plaintiff also mailed copies of the notices of depositions and subpoenas to all Defendants. n1 On February 1, 1993 Defendant Kearney filed a motion for a protective order to quash the subpoenas or to stay discovery until the Court resolves Defendant Kearney's motion to dismiss Plaintiff's complaint pursuant to *Federal Rule of Civil Procedure 12(b)(6)* for failure to state a claim upon which [*3] relief can be granted. Defendant Kearney raises five grounds in support of his motion, each of which the Court rejects, and therefore will deny Defendant Kearney's motion in its entirety.

n1 Neither the movant, Defendant Kearney, nor Plaintiff, has complied with Local Rule 24(b)

1993 U.S. Dist. LEXIS 3734, *3

which requires them to set forth verbatim the relevant parts of the notices and subpoenas at issue. The Court is relying on statements made in the motion and Plaintiff's response.

Defendant Kearney claims that the notices of depositions are invalid because Plaintiff served them before Defendant Kearney was properly served with the complaint. Plaintiff served Defendant Kearney with the summons and complaint by mail pursuant to *Federal Rule of Civil Procedure 4(c)(2)(C)(ii)* on December 14, 1992. Because Plaintiff did not receive an acknowledgment of service within twenty days after the date of mailing, Plaintiff caused Defendant Kearney to be personally served on December 28, 1992. Any party may take the deposition of any person after the commencement [*4] of the action. *Fed. R. Civ. P. 30(a)*. This action commenced on December 9, 1992 when Plaintiff filed the complaint. *Fed. R. Civ. P. 3*. The depositions were scheduled for February 1–3, 1993, well after the commencement of the action. Plaintiff did not need to obtain leave of the Court because the depositions were not scheduled "prior to the expiration of 30 days after service of the summons and complaint upon any defendant . . . ." *Fed. R. Civ. P. 30(a)*. The Rules authorized Plaintiff to compel nonparties to produce documents. *Fed. R. Civ. P. 34(c)*. Plaintiff properly served Defendant Kearney with notice of the subpoenas on the nonparties by mail. See *Fed. R. Civ. P. 45(b)(1), 5(b)*. The notices of depositions and subpoenas are not invalid. Finally, a party or person seeking a protective order has the burden of showing good cause. *Fed. R. Civ. P. 26(c)*. Defendant Kearney has failed to show good cause because he has failed to show that he suffered any prejudice from the fact that Plaintiff served the notices of depositions before Defendant Kearney was served with the complaint.

Defendant Kearney claims that the notices of depositions are invalid because Plaintiff served them before [*5] making the disclosures required under section 4:01(a) of the Civil Justice Expense and Delay Reduction Plan (Plan) adopted in this district. Defendant Kearney claims that the disclosures made by Plaintiff on January 18, 1993 were incomplete. According to the Plan, "a party may not seek discovery from any source before making the disclosures under subdivision (a)(1) . . . ." Plan § 4:01(b). First, Plaintiff did not violate the Plan because Plaintiff made disclosures on January 18, 1993, before the February 1, 1993 return date on the subpoenas. Second, Defendant fails to provide the Court with a copy of the disclosures provided by Plaintiff. Without seeing the disclosures, the Court will not rely on Defendant's conclusory allegation that the disclosure was "defective in that it gave no meaningful description of the documents, data, compilations

and tangible things." Def. Mem. at 1. Third, Defendant Kearney has failed to show that he suffered any prejudice from Plaintiff's alleged noncompliance with section 4:01(a)(1).

Next, Defendant Kearney argues that the Court should stay discovery in this action because he has filed a motion to dismiss for failure to state a claim upon which relief [*6] can be granted pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. A federal court has broad inherent power "to exercise appropriate control over the discovery process." *Herbert v. Lando, 441 U.S. 153, 177 (1979)*. A court should not automatically stay discovery pending a motion to dismiss under Rule 12(b). Had the drafters of the Federal Rules of Civil Procedure wanted an automatic stay of discovery pending a motion to dismiss they could have so provided. *Moran v. Flaherty, No. 92–3200, 1992 WL 276913 (S.D.N.Y. Sep. 25, 1992); Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990)*. Rather, the decision whether to stay discovery pending a decision on a motion to dismiss is left to the sound discretion of the court. *Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209, 211 (S.D.N.Y. 1991)*. Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems. Requests to stay discovery are rarely [*7] appropriate where resolution of the motion to dismiss will not dispose of the entire case. In deciding whether to stay discovery pending a motion to dismiss a court must balance the harm produced by delay against the possibility that the motion will be granted and entirely eliminate the need for such discovery. *Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988)*.

Where there is a motion to dismiss for failure to state a claim upon which relief can be granted, the court should take a preliminary look at the allegedly dispositive motion to see whether it is a challenge as a matter of law or to the sufficiency of the allegations. See *Hachette Distribution, Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991)*. Where the motion merely addresses the sufficiency of the complaint, "resolution of the pending motion is not necessarily dispositive because the pleadings may be amended to correct the deficiencies." *Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988)*

A preliminary look at Defendant Kearney's motion to dismiss reveals [*8] that, on the whole, Defendant Kearney challenges the sufficiency of the allegations of the complaint. Plaintiff's response to the motion to dismiss reveals that the dispute is over what a plaintiff must prove in a RICO action compared to what a plaintiff must

1993 U.S. Dist. LEXIS 3734, *8

plead in a complaint. In this situation, the motion may not be dispositive because even if granted, Plaintiff may be able to amend the complaint. In addition, the Court notes that the other defendants do not seek a stay of discovery nor have they made dispositive motions. Thus, even if the Court granted Defendant Kearney's motion, the action would continue. See *Hachette 136 F.R.D. at 358–9.* Moreover, Plaintiff seeks discovery from third parties, not Defendant Kearney, and the discovery sought is limited, not a "fishing expedition" as Defendant Kearney contends. Based upon all of these factors, then, a stay of discovery pending a decision on Defendant Kearney's motion to dismiss is unwarranted.

Defendant Kearney further states that he has been advised that the FBI is conducting an ongoing criminal investigation into the facts relating to "the Coca–Cola situation." Def. Mem. at 3. He argues that [*9] a stay of discovery is particularly appropriate where as here, a private litigant may be a "stalking horse" for government prosecutors who are using a civil action to circumvent the discovery limitations of criminal procedure. *Sharjah Inv. Co. (UK) Ltd. v. P.C. Telemart, Inc., 107 F.R.D. 81, 83 n.2 (S.D.N.Y. 1985).* First, Defendant Kearney has failed to provide the Court with any evidence that the FBI is conducting a criminal investigation. Second, he has failed to show that the government is using Plaintiff's civil action to circumvent any limitations of criminal discovery.

Finally, Defendant Kearney argues that the deposition notices are "overly broad and inquire into matters which are not relevant, and are designed for the purpose of harassing, annoying, embarrassing, or oppressing the defendant." Def. Mem. at 3. A party moving for a protective order under Rule 26(c) must make a strong showing of "good cause" by demonstrating a particular need for protection. *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).* First, Defendant Kearney has failed to provide the Court with copies of the notices of deposition [*10] at issue as required by Local Rule 24(b). Second, a party cannot rely on conclusory statements that the discovery is broad, not relevant, and harassing to show good cause under Rule 26(c). Defendant Kearney states that the depositions request the banks to produce documents relating to eleven persons and fail to provide account numbers. Plaintiff's discovery request is directed to third parties, not to Defendant Kearney. Defendant Kearney cannot realistically claim that he needs protection from these notices of depositions and subpoenas directed to the third parties. See *Howard v. Galesi, 107 F.R.D. 348, 350 (S.D.N.Y. 1985).* Finally, Defendant Kearney has failed to show that the discovery will harass, annoy, oppress, or embarrass him.

For the foregoing reasons, the Court will deny Defendant Kearney's motion in its entirety. An order follows.

Daniel H. Huyett, 3rd, Judge

**ORDER**

HUYETT, J.

MARCH 3, 1993

Upon consideration of Defendant Kearney's Motion for Protective Order to Quash Or At Least Stay Notices of Deposition For February 1, 1993, Plaintiff's response, and for the reasons stated in the foregoing memorandum, Defendant Kearney's motion [*11] is DENIED in its entirety.

IT IS SO ORDERED.

Daniel H. Huyett, 3rd, Judge

# Exhibit D

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1996 WL 580930 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
In re WRT ENERGY SECURITIES LITIGATION.
**No. 96 CIV. 3610 (JFK), 96 CIV. 3611 (JFK).**

Oct. 9, 1996.

*MEMORANDUM OPINION AND ORDER*
KEENAN, District Judge:
*1 Defendants move for a stay of discovery pending the outcome of their motions to dismiss the amended consolidated class action complaint in this securities law action. The motions to dismiss, which are not yet filed, are currently scheduled to be fully submitted in January 1997. For the reasons stated below, Defendants' motions for a stay of discovery are granted in part and denied in part.[FN1]

Under Federal Rule of Civil Procedure 26(c), the Court is authorized to stay discovery "for good cause shown." While discovery may in a proper case be stayed pending the outcome of a motion to dismiss, the issuance of a stay is by no means automatic. *See Moran v. Flaherty,* No. 92 Civ. 3200 (PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."); *In re Chase Manhattan Corp. Secs. Litig.,* No. 90 Civ. 6092 (LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991) (same).

Without intending to opine on the ultimate viability of Plaintiffs' securities law claims, a preliminary review of the complaint does not lead the Court to the conclusion that this action is a mere "strike suit" or that it was filed to enable Plaintiffs to embark on the proverbial "fishing expedition" to uncover information. The seventy-three page complaint contains numerous specific factual allegations contradicting such a characterization. Therefore, the Court cannot conclude on the present record before it that dismissal of the complaint is inevitable. *See In re Chase Manhattan,* 1991 WL 79432, at *1; *Burka v. New York City Transit Auth.,* 110 F.R.D. 661, 668 (S.D.N.Y. 1986); *Howard v. Galesi,* 107 F.R.D. 348, 350-51 (S.D.N.Y. 1985). Moreover, even if the Court were to grant the motions to dismiss, it would likely grant Plaintiffs leave to replead given this early stage

of the litigation and that Plaintiffs have amended the complaint only once to date, apparently of their own volition. *See In re Chase Manhattan,* 1991 WL 79432, at *1 (citing *Howard,* 107 F.R.D. at 350 n.4).

In view of the foregoing, the Court declines to stay document discovery. With respect to depositions, however, the Court believes it would be more prudent for the parties to await a decision on the motions to dismiss before proceeding to this next stage of discovery. Should any issues arise during discovery that the parties are unable in good faith to resolve among themselves, the parties may contact Magistrate Judge Francis, who will be supervising discovery.

SO ORDERED.

> FN1. Although the letter motion for a stay of discovery was made by the underwriter defendants, Oppenheimer & Co., Inc. and Schroder Wertheim & Co., Inc., the remainder of the defendants have joined in that application.

S.D.N.Y.,1996.
In re WRT Energy Securities Litigation
Not Reported in F.Supp., 1996 WL 580930 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:96cv03611 (Docket) (May. 15, 1996)
• 1:96cv03610 (Docket) (May. 15, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1662612 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
OSAN LIMITED, Plaintiff,
v.
ACCENTURE LLP, et al., Defendants.
**No. CV 2005-5048(SJ)(MDG).**

June 13, 2006.

Domenick Patrick Leonardi, Mohen & Treacy LLP, Locust Valley, NY, Laurie B. Horvitz, Finkelstein & Horvitz, P.C., Betheseda, MD, Thomas P. Mohen, Mohen & Treacy LLP, Locust Valley, NY, for Plaintiff.
Christopher C. Posteraro, Craig S. Primis, John Caviness O'Quinn, Kirkland & Ellis, Washington, DC, Joseph Serino, Jr., Kirkland & Ellis, New York, NY, for Defendants.

*ORDER*

MARILYN D. GO, Magistrate Judge.
**\*1** Defendants Accenture LLP, Accenture Ltd. t/a Accenture eDemocracy Services, Accenture Inc., Meg T. McLaughlin, and Clifford S. Jury ("Defendants") have requested, in their letter dated January 20, 2006 (ct.doc.38), a stay of discovery pending the Court's decision on defendants' motion to dismiss. Plaintiff Osan Limited ("Osan"), in its letter dated January 27, 2006 (ct.doc.39), opposed defendants' application. For the following reasons, this application is granted in part and denied in part without prejudice.

*DISCUSSION*

A party seeking a stay of discovery pursuant to Fed.R.Civ.P. 26(c) bears the burden of showing good cause. *Telesca v. Long Island Hous. P'ship, Inc.*, No. CV 05-5509, 2006 WL 1120636, at \*1 (E.D.N.Y. Apr. 27, 2006); *Spencer Trask Software & Info. Servcs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y.2002). The pendency of a dispositive motion is not, in itself, an automatic ground for a stay. *Id.* Rather, a court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case. *Hachette Distribution, Inc. v. Hudson County News Co. Inc.*, 136 F.R.D. 356, 358 (E.D.N.Y.1991). Factors to be considered include: whether

the motion to dismiss has substantial grounds, *Johnson v. New York Univ. School of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y.2002) (citing *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y.1991)); "the type of motion and whether it is a challenge as a 'matter of law' or to the 'sufficiency' of the allegations; the nature and complexity of the action; ... the posture or stage of the litigation; [and] the expected extent of discovery ..." *Hachette Distribution, Inc.*, 136 F.R.D. at 358.

This Court has preliminarily reviewed the papers submitted by both parties with respect to defendants' motion to dismiss plaintiff's causes of action for common law fraud, breach of fiduciary duty, conspiracy, unjust enrichment and promissory estoppel. While defendants may have substantial arguments for dismissal of several of the claims, this Court is doubtful that defendants will succeed in dismissing the entire lawsuit. Defendants' attempt to characterize plaintiff's claims for unjust enrichment and promissory estoppel as barred by the Asset Purchase Agreement is strained, particularly in light of defendants' contention that plaintiff cannot be the third party beneficiary of that agreement. Even if defendants prevail in their argument regarding the insufficiency of the allegations for common law fraud in the current complaint, the insufficiencies may very well be cured by allowing plaintiff to file an amended complaint. *Rajbhandari v. Shah*, No. 02 Civ. 8778, 2006 WL 74393, at \*6 (S.D.N.Y. Jan. 11, 2006) (motion to dismiss fraud claim granted and complaint dismissed with leave to replead where plaintiff failed to comply with Fed.R.Civ.P. 9(b)); *see also, Carlucci v. Owens-Corning Fiberglas Corp.*, 646 F.Supp. 1486 (E.D.N.Y.1986).

**\*2** As to the posture of this lawsuit, plaintiff filed the complaint in the District Court for the District of Columbia on August 2, 2004, and apparently, no discovery occurred pending adjudication of defendants' motions to transfer venue and to dismiss. Defendants' motion to transfer venue was granted on September 30, 2005, and this case was transferred on October 21, 2005 without determination of the motion to dismiss. At an initial conference held before me on January 11, 2006, I directed the parties to complete automatic disclosures by February 4, 2006 and fact discovery by September 30, 2006.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1662612 (E.D.N.Y.)
(Cite as: Slip Copy)

Page 2

Plaintiff states that as of January 27, 2006, "[n]o depositions have yet been noticed, and no written discovery request has been propounded." See ct. doc. 39 at 5. Since no discovery demands have been made, the Court cannot determine with certainty whether plaintiff's discovery will be "wide-ranging and broad ... [and] would impose a substantial burden on defendants." See ct. doc. 38 at 3. While discovery is often an onerous process, defendants have failed to prove that they will be unduly burdened by having to respond to plaintiff's requests for interrogatories and production of documents, especially where plaintiff has yet to serve any formal demands for such.

Defendants argue that they "will be put in the position of conducting discovery without the knowledge of what claims they must ultimately defend." *See* ct. doc. 38 at 4. Since plaintiff's claims arise from the Asset Purchase Agreement between several defendants and election.com, Inc. ("Election") and plaintiff's release of certain secured assets of Election, the dismissal of one or more of plaintiff's claims will not significantly affect the scope of discovery, if at all. Moreover, plaintiff states that it may, after discovery, seek to add additional defendants if given the opportunity to do so.[FN1] Since the limitations period may soon expire as to plaintiff's claim for breach of fiduciary duty,[FN2] this is a factor that weighs against a stay given the preference of courts that claims be asserted and adjudicated on the merits. Cf. *Henderson v. United States,* 517 U.S. 654, 658 n. 5 (1996) (noting that Rule 4(m) "permits a district court to enlarge the time for service 'even if there is no good cause shown' ") (quoting Advisory Committee Notes on 1993 Amendments to Fed.R.Civ.P. 4).

> FN1. See Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss (ct.doc.25) (notifying Court of intent to amplify the pleadings should the Court deem the current pleading to be insufficient, and include additional derivative contract claims) and letter dated February 17, 2006 (ct.doc.42) (additional defendants may be added).

> FN2. Under New York State law, actions for damages from breach of fiduciary duty are governed by the three-year limitations period. *See Cooper v.*

*Parsky,* 140 F.3d 433, 440-441 (2d Cir.1998).

On the other hand, plaintiff has indicated it intends to conduct a large number of depositions. Conducting depositions before determination of any motion by plaintiff to amend the complaint and join additional defendants may not make sense as joinder of new parties may trigger the need to redepose certain individuals.

In sum, after weighing the relevant factors, I find defendants have not established good cause to warrant a stay of all discovery pending the Court's ruling on defendants' motion to dismiss. Accordingly, the parties are ordered to proceed with written discovery without prejudice to allow the parties to make future applications to seek a stay as necessary. Depositions are currently stayed without prejudice to an application to proceed with them after at least three (3) months from the date of this order.

*CONCLUSION*

**\*3** For the foregoing reasons, defendants' motion for a stay is granted in part and denied in part without prejudice pending determination of defendants' motion to dismiss plaintiff's complaint.

SO ORDERED.

E.D.N.Y.,2006.
Osan Ltd. v. Accenture LLP
Slip Copy, 2006 WL 1662612 (E.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 374355 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Reply Brief in Support of Motion to Dismiss (Jan. 19, 2006)
• 2006 WL 374354 (Trial Motion, Memorandum and Affidavit) Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss (Jan. 9, 2006)
• 2005 WL 3779129 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Brief in Support of Motion to Dismiss (Dec. 16, 2005)
• 1:05cv05048 (Docket) (Oct. 27, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on August 10, 2006, I caused to be electronically filed a true and correct copy of the foregoing, Plaintiffs' Opposition To Ariad's Motion To Stay Discovery Pending Adjudication Of Its Motion To Dismiss, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John G. Day, Esquire
> Ashby & Geddes
> 222 Delaware Avenue, 17th Floor
> Wilmington, DE 19801

I further certify that on June 28, 2006, I caused a copy of the foregoing, Plaintiffs' Opposition To Ariad's Motion To Stay Discovery Pending Adjudication Of Its Motion To Dismiss , to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL (by agreement of counsel)**
Morgan Chu, Esquire
David I. Gindler, Esquire
Amir A. Naini, Esquire
Christopher M. Newman, Esquire
Elizabeth L. Rosenblatt, Esquire
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276

_____
Melanie K. Sharp (No. 2501)