# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware Corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-259-KAJ |
| v. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ARIAD'S MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF AUTHORITIES

## Cases

*APCC Services, Inc. v. Sprint Communications Co., L.P.,*
297 F. Supp. 2d 90 (D.D.C. 2003) ............................................................................... 14

*Arrowhead Indus. Water, Inc v. Ecolochem, Inc.,*
846 F.2d 731 (Fed. Cir. 1988) .................................................... 2, 3, 8, 9, 10, 11

*BP Chemicals Ltd. v. Union Carbide Corp.,*
4 F.3d 975 (Fed. Cir. 1993) ...................................................................................... 7

*Capo, Inc. v. Dioptics Medical Products, Inc.,*
387 F.3d 1352 (Fed. Cir. 2004) .................................................... 7, 8, 10, 11

*Caterpillar Inc. v. Lewis,*
519 U.S. 61 (1996) ..................................................................................................... 5

*Catlin v. United States,*
324 U.S. 229 (1945) ................................................................................................... 5

*Citizen Electronics Co., Ltd. v. Osram GmbH,*
377 F. Supp. 2d 149 (D.D.C. 2005) ......................................................................... 9

*EMC Corp. v. Norand Corp.,*
89 F.3d 807 (Fed. Cir. 1996) .................................................................................. 7, 8, 9

*Firestone Tire & Rubber Co. v. Risjord,*
449 U.S. 368 (1981) ................................................................................................... 5

*George E. Warren Corp. v. U.S.,*
341 F.3d 1348 (Fed. Cir. 2003) ................................................................................ 9

*Graco Children's Products, Inc. v. Regalo Intern. LLC,*
1999 WL 553478, No. Civ. A. 97-6885, at *8 (E.D. Pa. July 29, 1999) ........................... 6

*Hurst v. City of Dover,*
2006 WL 2347707, No. Civ. A. 04-083-KAJ, at *2 (D. Del. Mar. 21, 2006) ............... 5, 6

*In re Buspirone Patent Litigation,*
210 F.R.D. 43 (S.D.N.Y. 2002) ............................................................................... 6

*Intel Corp. v. Commonwealth Scientific and Indus. Res. Org.,*
455 F.3d 1364 (Fed. Cir. 2006) ................................................................................ 5

i

*Japan Gas Lighter Ass'n v. Ronson Corp.*,
    257 F. Supp. 219 (D.N.J. 1966) ................................................................. 9

*Jervis B. Webb Co. v. Southern Systems, Inc.*,
    742 F.2d 1388 (Fed. Cir. 1984) ............................................................ 7, 8

*Koken v. Pension Benefit Guar. Corp.*,
    381 F. Supp. 2d 437 (E.D. Pa. 2005) ....................................................... 5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................. 9

*Matter of Magic Restaurants, Inc.*,
    202 B.R. 24 (D. Del. 1996) ...................................................................... 5

*Md. Casualty Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) ................................................................................. 9

*Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*,
    370 F.3d 1354 (Fed. Cir. 2004) ............................................................. 15

*Microchip Tech., Inc. v. Chamberlain Group, Inc.*,
    441 F.3d 936 (Fed. Cir. 2006) ......................................................... 7, 8, 9

*Mobil Oil Corp. v. W.R. Grace & Co.*,
    334 F. Supp. 117, (S.D. Tex. 1971) ........................................................ 6

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
    161 F. Supp. 2d 355 (D.N.J. 2001) ......................................................... 6

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
    57 F.3d 1051 (Fed. Cir. 1995) .......................................... 9, 10, 11, 13

*Shell Oil Co. v. Amoco Corp.*,
    970 F.2d 885 (Fed. Cir. 1992) ..................................................... 7, 10, 11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................... 9

*Swift v. Chambers County Comm'n*,
    514 U.S. 35 (1995) ................................................................................. 14

*Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*,
    395 F.3d 1324 (Fed. Cir. 2005) ............................................................... 9

*Vanguard Research, Inc. v. Peat, Inc.*,
    304 F.3d 1249 (Fed. Cir. 2002) ....................................................... 10, 11

*Wembley, Inc. v. Superbra Cravats, Inc.*,
    315 F.2d 87 (2d Cir. 1963) ........................................................................................ 8

**Statutes**

28 U.S.C. § 1292(b) ................................................................................ 5, 6, 7, 14, 16

28 U.S.C. § 2201 ............................................................................................................ 7

35 U.S.C. § 200 ........................................................................................................... 13

35 U.S.C. § 203(a) ................................................................................................ 13, 14

DB02:5552993.1                                                                                              065028.1001

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiffs (collectively referred to as the "Amgen Entities" or "Amgen") filed a Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement on April 20, 2006. ARIAD then filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim for which Relief May Be Granted, and Failure to Join Indispensable Parties on June 14, 2006. After briefing of the motion to dismiss, the Court heard oral argument on this motion on September 11, 2006. The Court ruled from the bench, denying ARIAD's motion to dismiss, and also denied ARIAD's pending motions to stay discovery and to quash a subpoena served by Amgen on Eli Lilly. ARIAD filed the instant motion on September 25, 2006.

## II.    SUMMARY OF ARGUMENT

Having failed to convince the Court to dismiss, ARIAD seeks another bite at the apple via an interlocutory appeal. ARIAD now contrives a disputed legal question -- a purported divergence of Federal Circuit case law as to establishing subject matter jurisdiction in a patent declaratory judgment action -- in an attempt to justify the extraordinary relief it seeks. As Amgen demonstrates below, however, that law has been consistently articulated and applied for over two decades. The purported divergence in the law cited by ARIAD actually reflects the consistent application of well-established legal standards to different sets of facts. And the Bayh-Dole Act, contrary to ARIAD's latest argument, does nothing to highlight this purported divergence. In fact, no tension exists between the Bayh-Dole Act and the Federal Circuit's declaratory judgment jurisdiction case law.

Moreover, inconsistent with its argument that there exists a divergence, ARIAD applies these well-established standards and attempts to characterize its statements and actions as insufficient to justify Amgen's reasonable apprehension. But to do so, ARIAD ignores the facts found by this Court to be most critical in giving rise to that apprehension, and wrongly seeks to

1

recharacterize all of its statements and actions as mere "licensing discussions" when some of them cannot possibly fit this label.

ARIAD also argues that its drug research program will collapse if the Court does not exercise its discretion and grant its certification motion. ARIAD's stated preference to focus its resources on its drug development as opposed to litigation flies in the face of the litigation it has commenced against both Lilly and the United States Patent and Trademark Office and its threats to sue Amgen. The allegation of ARIAD's now limited resources lacks any supporting evidence and does not justify the extraordinary relief of an interlocutory appeal.

ARIAD's motion does not put forth a proper ground for an interlocutory appeal, and Amgen respectfully requests that it be denied.

## III. STATEMENT OF FACTS

This Court held oral argument on September 11, 2006 and delivered its opinion on ARIAD's motion to dismiss immediately afterward. The Court noted that it was applying the Federal Circuit's two-prong test for Declaratory Judgment Act jurisdiction, and that the Court had "look[ed], as I'm required to, at the totality of the circumstances." D.I. 70 at 75. It noted that no dispute existed as to the second prong because "Amgen is engaged in acts, taking concrete action which would qualify under the two-prong test for declaratory judgment act jurisdiction the Federal Circuit has set forth," and that the only dispute concerned the first prong of the test. [1] *Id.* at 74-75. As to the first prong, the Court found that "there is an objectively

---

[1]  Despite its prior acquiescence, ARIAD now attempts for the first time to drum up a dispute concerning this prong of the test, arguing that "ARIAD was silent on whether any of Amgen's activities related to Enbrel or Kineret 'could constitute infringement'" and that Amgen failed to "submit any evidence whatsoever to satisfy its burden on this prong." D.I. 74 at 16 n.8. The point of the "present activity" prong of the two-part test, however, is simply to "establish that Plaintiff has a true interest to be protected by the declaratory judgment." *Arrowhead Indus. Water, Inc v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). There is no dispute that Amgen is already engaged in the sale of the Enbrel® and Kineret® products. *See, e.g.*, D.I. 24, Declaration of Frank

reasonable apprehension of suit . . . sufficient to sustain jurisdiction." *Id.* at 75. In doing so, the

Court carefully weighed all of the evidence cited by the parties:

- The letters ARIAD sent to Amgen before the issuance of the '516 patent, while they may not themselves be sufficient to create a reasonable apprehension of suit, show that ARIAD was "out there looking to see that their rights are respected." *Id.* at 75-76. The letters also reflect a conscious effort by ARIAD "to make sure Amgen knows ARIAD is serious about its patent rights without uttering any magic words that would land them in Court." *Id.* at 76-77.

- Upon issuance of the '516 patent, ARIAD immediately contacted Amgen regarding the patent and sued Eli Lilly for infringement. *Id.* at 76. Amgen "rightly noted" that this factored into a reasonably objective observer's perception of ARIAD's intentions. *Id.*

- The subsequent telephone call from Mr. Casselman, a lawyer, to Mr. Ungemach, like ARIAD's prior letters, reflected a conscious effort to get as close as possible to the line of threatening suit without actually crossing it. *Id.* at 77. Mr. Casselman was a savvy businessman who understood the Declaratory Judgment Act pitfalls. *Id.*

- ARIAD attorney, Patricia Carson, made the comment attributed to her by Paul Cantrell—that "Enbrel is on the list." *Id.* at 78. She made the comment "in the context in which Mr. Cantrell describes with specificity." *Id.*

- Patricia Carson's comment was "fairly understood [by a reasonably objective observer] as a statement that there are other players out there and they can expect enforcement efforts." *Id.* As the Court put it, it was "rightly viewed as an assertion that Amgen was in the batter's box. That when they got finished pitching an infringement action at Lilly, the next one that was going to be called in was Amgen." *Id.* at 78.

- Due to the delay between her comments and the filing of this suit, the Court might have ruled differently on the subject matter jurisdiction but for the public disclosure of "the list" in ARIAD's board presentation during the Eli Lilly trial, which the Court found to be "highly significant." *Id.* at 78-79.

- Dr. Berger's trial testimony with respect to those slides reflects a "savvy businessperson" who knew the potential consequences of directly stating that

---

Ungemach ¶¶ 3-4. The "present activity" prong does not require Amgen to show that the use or sale of the products constitutes infringement. *See Arrowhead*, 846 F.2d at 738 ("It is at best incongruous to require that one seeking a declaration of noninfringement prove its process or product is the 'same as' or 'identical' to the patented process or product.").

ARIAD intended to sue companies besides Lilly. *Id.* at 79. The Court considered this testimony, but found that "the slides themselves speak more loudly . . . than Dr. Berger's careful testimony." *Id.*

- The slides identified Amgen as one of the "lead players" in the "market of products likely to be covered by [ARIAD's] patent rights," and identified both the Enbrel and Kineret products (along with the Xigris product over which ARIAD had already sued Lilly for infringement). *Id.* at 79-80.

- The fact that Amgen's products appeared in these slides alongside the product over which ARIAD had already sued Lilly, taken together with Patricia Carson's comment and the various prior communications between ARIAD and Amgen, was enough to show that "ARIAD was serious about its patent rights" and "for a reasonably objective company in Amgen's position to say they're going to sue us." *Id.* at 80-81.

- The tone of the interactions and statements by ARIAD "shows that this is a field in which . . . ARIAD feels it has rights and feels that the enforcement of those rights is important, and that it has the intention of enforcing those rights. In other words, there is a tone to the totality and the tone is, overall, one that a reasonably objective observer would perceive to be threatening enforcement action." *Id.* at 81-82.

- The Court noted that it had discretion whether to exercise jurisdiction, but decided "not [to] decline to exercise that jurisdiction because of the reexamination that is still in process because of the efforts of ARIAD to overturn the initial decision." *Id.* at 82.

The Court's thorough fact-finding traced the well-settled Federal Circuit law on declaratory judgment jurisdiction and correctly found jurisdiction here.

DB02:5552993.1

065028.1001

## IV.    ARGUMENT

Section 1292(b) permits interlocutory appeals only in rare circumstances. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (noting "Congress' design to reserve interlocutory review for 'exceptional' cases"); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13 (1981) (noting the "exceptional circumstances for which [§1292(b)] was designed"); *Matter of Magic Restaurants, Inc.*, 202 B.R. 24, 26 (D. Del. 1996) ("[A] district court shall entertain an appeal of an interlocutory judgment only where the appellant establishes that exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment.")   Indeed, the Federal Circuit has very recently commented that "the denial of a motion to dismiss for lack of subject-matter jurisdiction on other grounds is generally not subject to interlocutory review." *Intel Corp. v. Commonwealth Scientific and Indus. Res. Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006) (*citing Catlin v. United States*, 324 U.S. 229, 236 (1945) ("[D]enial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable.")); *see also id.* at 1371 (district court's finding of reasonable apprehension of suit "not properly reviewable on interlocutory appeal").

To qualify for certification, a party must show that the Order at issue "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (bracketed material inserted); *see Hurst v. City of Dover*, 2006 WL 2347707, No. Civ. A. 04-083-KAJ, at *2 (D. Del. Mar. 21, 2006) (Exhibit 2).   The moving party bears the burden of demonstrating that all three factors are present. *See, e.g., Koken v. Pension Benefit Guar. Corp.*, 381 F. Supp. 2d 437, 441 (E.D. Pa. 2005).   The test cannot be satisfied merely by alleging that the District Court "erred in the application of existing

5

law to the facts of the case." *Hurst*, 2006 WL 2347707 at *2. Instead, "the difference of opinion must arise out of ***genuine doubt as to the correct legal standard.***" *Id.* (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355, 360 (D.N.J. 2001)) (emphasis added); *see also Graco Children's Products, Inc. v. Regalo Intern. LLC*, 1999 WL 553478, No. Civ. A. 97-6885, at *8 (E.D. Pa. July 29, 1999) ("The Order [at issue] was based on well-settled principals [sic] of law and the application of that law to the specific facts of this case. Therefore, the issue does not reach the threshold for certification under Section 1292(b).") (Exhibit 1); *In re Buspirone Patent Litigation*, 210 F.R.D. 43, 50-51 (S.D.N.Y. 2002) (disagreement with application of settled law to given set of facts not appropriate basis for invocation of section 1292(b)); *Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117, 132 (S.D. Tex. 1971) ("Once the facts are developed, all that remains is plaintiff's disagreement with this Court's application of settled legal principles to the facts of the case. Such a discretionary ruling is not within the limited class of cases set out in 28 U.S.C. § 1292(b) for certification.") (citing authorities). If the District Court concludes that the movant has met its heavy burden that all three of the required criteria are present, then it may (not must) certify an immediate appeal if in its discretion the extraordinary remedy of an interlocutory appeal is warranted.

6

**A.    The Questions Presented By ARIAD Are Not Properly Subject To Certification Pursuant To 28 U.S.C. § 1292(b).**

**1.    The Controlling Legal Standards Are Well-Settled.**

The standard for establishing declaratory judgment jurisdiction in a patent case has been firmly grounded in controlling Federal Circuit precedent for over 20 years. ARIAD is wrong when it suggests that this law is in flux and diverges into two lines of cases. The Federal Circuit intones the same legal standards for determining Declaratory Judgment Act jurisdiction in 2006 that it previously articulated in 1996 and 1986 and all of the years in between. *See, e.g., Jervis B. Webb*, 742 F.2d at 1398-99; *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996); *Microchip Tech., Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, 942 (Fed. Cir. 2006).

The Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The purpose of the Act is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1354 (Fed. Cir. 2004) (citing *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993)). In accordance with Article III of the Constitution, the Act requires the existence of an "actual controversy" as a prerequisite to subject matter jurisdiction. *Capo*, 387 F.3d at 1355 (citing *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 887 (Fed. Cir. 1992)).

In patent cases, the "actual controversy" requirement is evaluated using a two-pronged test requiring both: (1) a threat or other action by the patentee whereby the declaratory plaintiff has a reasonable apprehension that he will be sued for infringement; and (2) activity by the

7

declaratory plaintiff that constitutes the alleged infringement or active preparation to conduct such activity. *Capo*, 387 F.3d at 1355. The test is objective and is applied to the facts existing when the complaint is filed. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). The first prong of the test looks to the defendant's conduct, and asks whether that conduct "indicate[s] defendant's intent to enforce its patent." *Id.* An express charge of infringement is sufficient to end the inquiry. *Id.* Alternatively, when the defendant's conduct falls short of an express charge of infringement, one must consider the totality of the circumstances (*i.e.*, all statements and conduct of the patentee) in determining whether the first prong of the test is satisfied. *Id.* Under this totality of the circumstances analysis, reasonable apprehension may be found even in the complete absence of any communication between the parties. *Id.* The second prong of the test looks to plaintiff's conduct, which "must be such as to establish that plaintiff has a true interest to be protected by the declaratory judgment." *Id.* Put another way, the plaintiff "must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." *Id.*

These standards are neither new nor unsettled. The Federal Circuit has noted and applied the two-prong test for determining Declaratory Judgment Act jurisdiction in patent cases at least as early as 1984. *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1398-99 (Fed. Cir. 1984). It has repeated the test innumerable times over the past two decades. *See, e.g., EMC Corp.*, 89 F.3d at 811; *Microchip Tech., Inc.*, 441 F.3d at 942. The same standards can even be found in case law going back more than forty years. *See, e.g., Wembley, Inc. v. Superba Cravats, Inc.*, 315 F.2d 87, 89 (2d Cir. 1963) (determining existence of justiciable controversy in patent case requires consideration of the nature of the threat made against plaintiff, and whether plaintiff is engaged in manufacturing, using or selling the invention or has immediate intention

8

and ability to do so); *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966) (declaratory judgment action in patent case must be based on plaintiff's "reasonable apprehension" of an infringement suit) (cited in *Arrowhead*, 846 F.2d at 736).[2]

ARIAD wrongly asserts that the question of this Court's declaratory judgment jurisdiction "implicates a tension in Federal Circuit case law." (ARIAD's Br. at 18) Tellingly, Ariad fails to mention any such "tension" in either of the two briefs it filed in support of its motion to dismiss. The fallacy of ARIAD's afterthought argument is apparent from the lack of a single decision addressing this issue in an interlocutory appeal. In reality, there is no "tension" in the case law, and there are not "two lines" of divergent legal authority. The cases ARIAD cites simply involve different, and readily distinguishable, sets of facts, and apply fully consistent legal principles to these facts:

- In *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), all of the patentee's statements regarding the plaintiff's potentially infringing activities were made during the course of licensing discussions. Noting that the offer of a license does not create an actual controversy and that an actual controversy does not normally arise during ongoing negotiations, the Court found that no justiciable controversy existed. *Id.* at 1053-54.

---

[2]  To the extent ARIAD is attempting to argue that the existence of an "actual controversy" hinges on whether a patent infringement suit is "imminent" (ARIAD's Brief at 16), it is incorrect. As stated in the *Teva Pharmaceuticals* case cited by ARIAD, the "imminence" requirement relates to the "Article III mandate that [the plaintiff's] *injury in fact be 'concrete,' and 'actual or imminent,'* not conjectural or hypothetical.'" *Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In other words, the imminence that is constitutionally required is the imminence of the injury to the plaintiff, as opposed to the imminence of the filing of a lawsuit by the defendant. *See, e.g., Arrowhead*, 846 F.2d at 736-37 (holding that an "imminent suit" is not required for declaratory judgment jurisdiction). ARIAD's own brief acknowledges that the defendant need not be "poised on the courthouse steps" in order for jurisdiction to exist, and quotes cases stating that the required "immediacy" relates to the adversity of the parties' legal interests. (ARIAD's Br. at 16-17 (citing *Md. Casualty Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) and *Citizen Electronics Co., Ltd. v. Osram GmbH*, 377 F. Supp. 2d 149, 157 (D.D.C. 2005)). Indeed, even if ARIAD might try to create a dispute between *Teva* and prior precedent, the law of the Federal Circuit is clear that the earlier issued precedent is controlling. *George E. Warren Corp. v. U.S.*, 341 F.3d 1348, 1351-52 (Fed. Cir. 2003) (prior decisions of a Federal Circuit panel are binding on subsequent panels unless and until overturned en banc).

- In *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992), again, all of the patentee's allegedly threatening statements were made during the course of licensing discussions, and were found to be no more than the "mere[] 'jawboning' which typically occurs in licensing negotiations." *Id.* at 889. Additionally, the Court gave weight to the fact that these discussions were initiated by the plaintiff rather than the patentee. The Court declined to find a justiciable controversy where a patentee approached by a possible infringer does no more than "assert its best arguments in [licensing] discussions." *Id.*

- *Capo, Inc. v. Dioptics Medical Prods., Inc.*, 387 F.3d 1352 (Fed. Cir. 2004), is not in any way inconsistent with the above cases -- it ***didn't even involve*** any licensing negotiations or offers, and the decision gives no indication that the patentee asserted that its statements or conduct constituted mere licensing attempts. Contrary to ARIAD's assertion that the Court in *Capo* "did not discuss or distinguish cases such as *Phillips Plastics* and *Shell Oil*" (ARIAD's Brief at 20), the Court in *Capo* acknowledged the *Shell Oil* case and the principle that mere "jawboning" and aggressive negotiation may not lead to an actual controversy. 387 F.3d at 1356. However, it then noted that the patentee's statements in *Capo* "were *not* aimed at negotiation, but at impeding a competitor's commercial activity." *Id.* It then found that the statements gave rise to a reasonable apprehension of suit. *Id.*

- Similarly, *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), ***did not involve*** any licensing negotiations or offers, and the patentee did not assert that its statements or conduct constituted mere licensing attempts. The Court found an objectively reasonable apprehension of suit based on the patentee having sued the plaintiff for misappropriation of trade secrets regarding the same technology and informing third parties that the plaintiff was using its technology without a license. *Id.* at 1255.

- Finally, as in the previous two cases, *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), ***did not involve*** any licensing negotiations or offers, and the patentee did not assert that its statements or conduct constituted mere licensing attempts. The Court found an objectively reasonable apprehension of suit based on the patentee having sued a third party on the same patent; notified plaintiff's customer that plaintiff was "not licensed to use our process"; sent a written demand to plaintiff that it cease the allegedly infringing activities; and represented to the Court in separate legal proceedings that plaintiff's activities constituted infringement. *Id.* at 737.

As is clear from the above summaries, ARIAD's argument that the latter three cases are "in tension" with the first two, and the implication that these are divergent lines of authority that need to be "harmonize[d]" by the Federal Circuit (ARIAD's Brief at 20-21), is simply not borne

out by a careful review of the decisions. That the cases reached opposite results simply reflects the different *facts at issue*: *Phillips* and *Shell Oil* revolved around statements made during the course of licensing negotiations, while the *Capo*, *Vanguard*, and *Arrowhead* cases did not.[3]

### 2.   ARIAD Simply Disagrees With The Court's Application Of Settled Law To The Facts Of This Case.

ARIAD's assertion that its conduct "should be controlled by the *Phillips Plastics* line of cases" is not really an argument about which law should apply. Instead, ARIAD is just rearguing the facts by claiming that its statements and actions were part of ongoing licensing negotiations with Amgen. But ARIAD's new story that this is all about licensing discussions is undermined by its prior position that there were *no* licensing discussions ever ongoing between the parties.[4]

ARIAD's request for certification ultimately rests upon its disagreement with the Court's fact-finding and credibility determinations. Contrary to ARIAD's arguments in its motion, the totality of the circumstances proffered by Amgen and considered by the Court included much

---

[3]   In fact, nothing in the *Capo*, *Vanguard*, and *Arrowhead* cases suggests that the plaintiffs even *contended* that their actions had anything to do with licensing negotiations.

[4]   Compare ARIAD's new position that its statements and actions were part of on-going licensing discussions—*see, e.g.*, ARIAD's Br. at 3 (arguing that "[t]here can be no case or controversy where the patent holder (or its exclusive licensee) initiates licensing discussions and does nothing to break off those discussions or withdraw the offer of a license—the exact situation here"); *id.* at 5 ("ARIAD never broke off licensing discussions with Amgen nor withdrew its offer of a license."); *id.* at 12 (arguing that "ARIAD had never broken off licensing negotiations with Amgen or otherwise indicated that a license was no longer on the table"); *id.* at 22 ("ARIAD sought to enter into a license agreement with Amgen and never broke off those discussions or withdrew the offer of a license."); *id.* at 24 (arguing that there is nothing in the record "indicating that ARIAD intended to break off licensing negotiations with Amgen")—with its contradictory previous position that there were no licensing discussions between ARIAD and Amgen—*see, e.g.,* D.I. 14 at 2, "[t]he parties have engaged in *no licensing discussions*."; *see also id.* at 12 (noting the "complete absence of . . . any licensing discussions between the parties" and asserting that "Amgen has . . . jumped the gun by filing this case, without ever having a conversation with ARIAD about the '516 patent"); D.I. 31 at 9 (asserting that in the four years preceding this suit, "the subjects of Enbrel®, Kineret®, the '516 patent, or NF-κB never once came up" between the parties").

11

more than what might be characterized as licensing discussions. Indeed, this Court specifically noted in ruling from the bench that the communications that could arguably be characterized as licensing discussions (*i.e.* the letters from ARIAD to the Amgen Entities) might not alone have supported a finding of jurisdiction. D.I. 70 at 76.

ARIAD conveniently ignores critical facts cited by this Court in its denial of ARIAD's motion -- *e.g.,* the threat of ARIAD litigation counsel Pat Carson that "Enbrel is on the list" or the fact that the list was then shown to Amgen at the Lilly trial -- that cannot possibly be characterized as mere licensing negotiations. ARIAD fails to explain how the statement of Pat Carson can possibly be considered an attempt to license the '516 patent. Rather than address this key fact, ARIAD all but ignores it in the argument section of its brief. Similarly, with respect to the slides presented at the Lilly trial in April 2006, ARIAD admits that the slides can be read as supporting the inference that "ARIAD had concluded that Amgen practices the '516 patent and wanted to be prepared to sue if and when necessary." (ARIAD's Brief at 24) Accordingly, since, as it apparently concedes, ARIAD did *more* than simply attempt to license the '516 patent, it is a wholly irrelevant exercise to debate whether ARIAD would have been subject to declaratory judgment jurisdiction if it had not done so.

Put simply, ARIAD's attempt to cloak its disagreements about this Court's fact finding with legal window dressing cannot justify an immediate appeal in this case.

### 3.    The Bayh-Dole Act Is Irrelevant

The Bayh-Dole Act does not support Ariad's contrived divergence in the Federal Circuit case law governing declaratory judgment jurisdiction in a patent case. There is no tension between the Bayh-Dole Act and the standards for establishing a reasonable apprehension of suit, as evidenced by ARIAD's dearth of supporting authority to illustrate any tension. The Bayh-Dole Act encourages public dissemination of government funded inventions by imposing

12

licensing obligations on entities who have exclusive rights to those inventions if the entities failed to commercialize their exclusive rights. *See* 35 U.S.C. §200. ARIAD admits that the Bayh-Dole Act merely imposes patent "licensing" obligations on those entities. *See, e.g.,* ARIAD's Brief at 18 (Act "contemplates *licensing* of inventions") (emphasis added). The Bayh-Dole Act does not require universities or their licensees to *enforce* patents through litigation or to make threats to do so. Indeed, ARIAD concedes that the Act exemplifies the policy of "[e]ncouraging parties *not* to resort to litigation, but instead to effect the orderly transfers and permissions for intellectual property rights through voluntary commercial agreements rather than judicial action."[5] *Id.* at 17.

The fact that the Bayh-Dole Act encourages licensing as opposed to litigation or enforcement of patents is telling, because, as discussed *supra*, it is settled law that "the offer of a patent license does not create an actual controversy," and that "to create an actual controversy there must be more than ongoing license negotiations." *Phillips*, 57 F.3d at 1053. A patentee who has done no more than attempt to license its patent would avoid Declaratory Judgment Act jurisdiction whether or not its licensing efforts were undertaken pursuant to the Bayh-Dole Act. In any event, ARIAD does not contend, nor could it, that the Bayh-Dole Act somehow forced Pat Carson to make the threat she did, so this is really just a theoretical exercise that cannot properly be the subject of an interlocutory appeal.

The reason why there is an "absence of authority on the interaction between the Bayh-Dole Act and the Declaratory Judgment Act" (ARIAD's Brief at 3) is because there is no tension between these legal doctrines. ARIAD's attempt to create tension where none exists simply has no basis and cannot create a divergence in the law to justify an interlocutory appeal.

---

[5]    In any event, ARIAD could easily remove any purported tension by giving up the exclusivity of its license. *See* ARIAD Br. at 18 (citing 35 U.S.C. § 203(a)).

065028.1001

**B.    Even If ARIAD Could Meet The Legal Test For Certification Pursuant To 28 U.S.C. § 1292(b), This Court In Its Discretion Should Deny Certification.**

ARIAD is correct that *if* it meets its burden to establish the legal test for certification pursuant to 28 U.S.C. § 1292(b) -- which it has not as discussed above -- then this Court *may* in its discretion certify the issue for possible appellate review. *See Swift v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995). But as even ARIAD's own cases acknowledge, this discretion should not be exercised lightly, as "[t]he party seeking interlocutory review has the burden of persuading the Court that the 'circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *APCC Services, Inc. v. Sprint Communications Co., L.P.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003)(citations omitted). ARIAD does not identify any extraordinary circumstances that justify the exercise of discretion to grant its request for certification.

ARIAD bases nearly its entire argument for exercising this court's discretion on allegations (unsupported by any evidence) that this case will divert ARIAD's resources from bringing its late stage cancer drug to market. Tellingly, ARIAD never raised this purportedly dire financial situation while urging this Court to exercise its discretion to decline jurisdiction. If ARIAD is truly in such dire straits, why is this issue being raised with the Court for the first time now?

ARIAD provides no evidence in support of its new plea that its drug may not get approved and patients may die if certification is not granted. If the drug is as promising as ARIAD suggests, then it will proceed through its fast-track process and receive FDA approval. And even assuming that ARIAD lacks resources to bring the drug to market, others could step in to shepherd this drug to market if it is such a potential blockbuster, as successful pharmaceutical companies often do for cash-strapped drug companies.

14

ARIAD's claim that it lacks the financial wherewithal to litigate this case is belied by its ongoing litigations. ARIAD has filed not one but two lawsuits relating to the '516 patent. It acknowledges its case against Lilly, but fails to mention its lawsuit against the United States Patent and Trademark Office seeking to halt the reexamination of the patent. Not only has ARIAD filed those lawsuits, but it also successfully fought Lilly's motion to stay that litigation pending the resolution of the reexamination proceedings before the PTO. ARIAD cannot now complain that it has to litigate one case after it has filed two of its own and threatened to sue Amgen.

Furthermore, ARIAD's argument that it will conserve its resources if certification is granted also makes little sense. Since certification of an appeal *does not* stay[6] the proceedings in this Court, the effect of granting certification would serve to *increase* ARIAD's litigation costs, not decrease them (at least during the 12-18 months it would typically take to obtain an appellate ruling).

If ARIAD has any real concerns about its resources to get its drug approved, then its solution is to grant Amgen a covenant not to sue. ARIAD and its counsel know very well that a properly-tailored "covenant not to sue deprives a court of declaratory judgment jurisdiction." *Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1369 (Fed. Cir. 2004). Failing that, however, this Court has already found that Amgen has established declaratory judgment jurisdiction over this case, and ARIAD has set forth no compelling reason to allow an appeal of that ruling now.

---

6    If ARIAD were to subsequently seek a stay, that motion would have even less merit than the instant one. The whole purpose of the Declaratory Judgment Act would be subverted were this Court to grant a stay and permit ARIAD to further delay resolution of the patent infringement issues relating to Amgen's products.

## V.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that this Court deny ARIAD's

request for certification pursuant to 28 U.S.C. § 1292(b).

Date: October 10, 2006

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex
Corporation, Amgen USA Inc., Amgen
Manufacturing, Limited, and Immunex Rhode
Island Corporation.*

16

065028.1001

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on October 10, 2006, I caused to be electronically filed a true and correct copy of the foregoing Memorandum in Opposition to ARIAD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b), with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John G. Day, Esquire
> Ashby & Geddes
> 222 Delaware Avenue, 17th Floor
> Wilmington, DE 19801

I further certify that on October 10, 2006, I caused a copy of the foregoing Memorandum in Opposition to ARIAD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b), to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL (by agreement of counsel)**
Morgan Chu, Esquire
David I. Gindler, Esquire
Amir A. Naini, Esquire
Christopher M. Newman, Esquire
Elizabeth L. Rosenblatt, Esquire
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Melanie K. Sharp (No. 2501)