IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware Corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>ARIAD PHARMACEUTICALS, INC., a Delaware corporation,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 06-259-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**APPENDIX OF EXHIBITS TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ARIAD'S MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(B)**

# EXHIBIT 1

Case 1:06-cv-00259-MPT     Document 90-2     Filed 10/10/2006     Page 2 of 14

Not Reported in F.Supp.2d                                                                                                              Page 1
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Graco Children's Products, Inc. v. Regalo Intern. LLCE.D.Pa.,1999.Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
GRACO CHILDREN'S PRODUCTS, INC., Plaintiff,
v.
REGALO INTERNATIONAL LLC, Defendant.
**No. CIV. A. 97-6885.**

July 29, 1999.

### MEMORANDUM

KELLY.

**\*1** Currently before the Court is Defendant Regalo International LLC's ("Regalo") Motion for Reconsideration of the Court's Order disqualifying Mr. Frederick Tecce ("Tecce") as Regalo's attorney. This Court held oral argument on June 24, 1999, and after reviewing Regalo's Memorandum in Support of its Motion, and Plaintiff Graco Children's Products Incorporated's ("Graco") response thereto, Regalo's Motion for Reconsideration is denied.

### BACKGROUND

On December 13, 1993, Graco filed a civil action alleging that playyards sold by Century Products Company ("Century Products") infringe Graco's U.S. Patent No. 4,811,437 (the "'437 patent"). Century Products denied infringement and challenged the validity and enforceability of the '437 patent on several grounds.

On December 5, 1995, after a sixteen-day trial, the jury found that Century Products had infringed the '437 patent under the doctrine of equivalents and awarded Graco $2,100,000 in lost profit damages. Tecce represented Century Products in the prior '437 patent litigation with Graco, including the appeal and the resulting Settlement Agreement.

On November 10, 1997, Graco brought the instant patent litigation against Regalo, alleging infringement of the '437 patent and seeking injunctive relief and monetary damages. On April 13, 1998, Regalo's original counsel in this action withdrew from representation and Tecce entered his appearance on Regalo's behalf. The following June, Graco purchased certain assets and liabilities of Century Products. These assets related to Century Products' infant care products business including its car seat, car seat stroller, infant carriers and playyard product lines. As a result of this purchase, the newly acquired assets and product lines were formed into the Century Products Division of Graco ("Century Products Division"). Tecce is now, in effect, defending the same patent against the interests of the client he represented in the prior litigation.

On October 20, 1999, Graco filed a Motion to Disqualify Tecce asserting that, as a result of Graco's purchase of certain of Century Products assets and Tecce's prior representation of Century Products, Tecce represented a competitor of Graco and its Century Products Division in an infringement action that is substantially related to the instant action. Upon review of the parties' briefs and supplements, and after hearing oral argument on the issue, this Court granted Graco's Motion and ordered Tecce to remove himself from the current litigation. Tecce now seeks the Court's reconsideration of the said Order.

### STANDARD

"The United States Court of Appeals for the Third Circuit has held that '[t]he purpose of a motion of reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.' " *Cohen v. Austin,* 869 F.Supp. 320, 321 (E.D.Pa.1994) (citing *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986)); *Drake v. Steamfitters Local Union No. 420,* No. CIV.A.97-585, 1998 WL 564486, at \*3 (E.D.Pa.Sept. 3, 1998). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993) (citing *Dodge v. Susquehanna Univ.,*

Case 1:06-cv-00259-MPT    Document 90-2    Filed 10/10/2006    Page 4 of 14

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

796 F.Supp. 829, 830 (M.D.Pa.1992)). It is not sufficient for the Defendant to simply express his/her dissatisfaction with the Court's decision, for this does not present a proper basis for reconsideration. *See Glendon Energy Co. v. Borough of Glendon, 836 F.Supp. 1109, 1122 (E.D.Pa.1993).* In this case, Plaintiffs contend that reconsideration is warranted to correct a clear error of law, to prevent manifest injustice, and because new evidence exists. I shall begin my analysis with a discussion of the clear error of law and manifest injustice issues. [FN1]

> FN1. For purposes of clarity and efficiency, both issues will be addressed together. Regalo's arguments regarding clear error and manifest injustice are not mutually exclusive, in that, both hinge on the argument that no conflict exists. I am confident in my decision and remain unpersuaded by Regalo's argument that Graco seeks a tactical advantage in seeking disqualification. I granted the Motion to Disqualify because I found that there was a conflict of interest and disqualification was the means to cure such conflict. As I am now forced to justify my decision, I am doing so in a manner that will serve, not only as the method of clarifying any confusion that may exist as a result of my Order disqualifying Mr. Tecce, but also as quasi-reconsideration of that same Order. Although I do not believe that the Motion to Reconsider should be granted as a matter of law, I am utilizing this Memorandum as a manifestation of any "reconsideration" that I have done in the privacy of my chambers as a matter of fact.

A. *Clear Error of Law and Manifest Injustice:* [FN2]

> FN2. Although, it appears that Regalo's position is simply that it does not agree with the Court's decision, it raises such discontent under the notion that the Court committed clear error of law, or in the alternative, a manifest injustice.

*2 Regalo asserts that the "record provides no basis in law or logic to allow Graco to cloak itself in the identity of a separate, distinct and independent corporate entity for its own personal gain." Regalo represents to the Court that it is, at the least, "at a complete loss to understand the basis for the disqualification of Mr. Tecce." [FN3] Although not addressed in the Order at issue here, the Court is compelled to discuss the reason for it's decision to disqualify Tecce. Regalo believes that, as a matter of law, there is no conflict present and that this argument raises the issue that the law was improperly or incorrectly applied.

> FN3. During oral argument, counsel for Tecce stated: "I have no reservation in stating to the court ... and I apologize when I said in my brief, in a sense that I'm baffled by why that order should be entered. I personally remain baffled...." (Tr. at 38-39, June 24, 1999).

Regalo contends that Century Products is a separate and distinct entity from Graco or Graco's unincorporated Century Products Division. The basis of this argument comes from Regalo's notion that Tecce formerly represented Century Products, a Delaware Corporation having no right, title or interest in the '437 Patent. Regalo further contends that the sale of certain assets does not mean that the corporate structure and independent identity of the corporation itself has changed or disappeared. Thus, according to Regalo, Century Products is Tecce's former client, and it continues to exist as a corporate entity having no interest in this lawsuit. However, on June 16, 1998, Century Holding Company [FN4] sold the Century Products Unit of Century Products Company as an ongoing business entity with physical assets, intangible property, such as trademarks and contract rights, and associated good will to Graco as the acquiring subsidiary of Rubbermaid Inc. Graco argues that as a result of Graco's acquisition of these assets, it should be considered Tecce's "former client." [FN5]

> FN4. Century Holding Company is the sole stockholder of Century Products Company.
>
> FN5. Graco contends that it is the successor-in-interest to Century Products' interests and rights under the November 21, 1996 Settle-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

ment Agreement and Exchange of Release between and among Century Products Company, Century Holding Company, and Graco.

The decision to disqualify a competent lawyer, freely chosen by a party, is of serious concern to the Court. "[E]thical questions cannot be resolved by a scientific application of principles and precedents because '[n]o code of ethics could establish unalterable rules governing all possible eventualities.' " *Fed. Deposit Ins. Corp. v. Amundson, et al.* 682 F.Supp. 981, 985 (citing *Black v. State of Mo.*, 492 F.Supp. 848, 861 (W.D.Mo.1980)(citing *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 215 (N.D.Ill.1975), *modified on other grounds,* 532 F.2d 1118 (7th Cir.1976))). A district court, in exercising its discretionary power, should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller,* 624 F.2d 1198, 1201(3d Cir.1980). "The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." *Cohen v. Oasin,* 844 F.Supp. 1065, 1067 (E.D.Pa.1994)(citing *Commercial Credit Business Loans, Inc. v. Martin,* 590 F.Supp. 328, 335-36 (E.D.Pa.1984)). However, any doubts as to the existence of a violation of the rules should be resolved in favor of disqualification. *See International Business Mach. Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir.1978).

***3** The United States District Court for the Eastern District of Pennsylvania recognizes the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania as the standards for professional conduct that attorneys appearing before this court must comply with. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,* 808 F.Supp. 1200, 1203 (E.D.Pa.1992). Rule 1.9 of the Pennsylvania Rules of Professional Conduct states the following:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after full disclosure of the circumstances and consultation.

When analyzing an attorney disqualification issue based on prior representation, the court should focus, not on whether the relationship at issue is "in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry into the potential conflict ...' " *Ramada Franchise System, Inc. v. Hotel of Gainsville Assoc.,* 988 F.Supp. 1460, 1463 (N.D.Ga.1997)(citing *Glueck v. Jonathan Logan, Inc.,* 653 F.2d 746, 749 (2d Cir.1981) (citations omitted)). Therefore, it is not the adverse interest of a client (in the traditional sense) at stake. *Id.; Marshall v. State of New York Div. of State Police,* 952 F.Supp. 103, 108 (N.D.N.Y.1997). Neither party rebuts the fact that Century Products was a former client of Tecce's. Clearly, an attorney-client relationship existed between them.[FN6] Thus, it is the job of this Court to decide whether or not the attorney-client relationship passed to Graco's Century Division when Graco purchased Century Products' assets.

> FN6. If the moving party is able to meet the burden of showing that an attorney-client relationship exists, and that the prior representation was "substantially related" to the current litigation, the court will make an irrebuttable presumption that relevant confidential information was disclosed during the former period of representation. *Ramada Franchise,* 988 F.Supp. at 1463; *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1028 (5th Cir.), *cert. denied,* 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981).

1. *Attorney-Client Relationship:*

The authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation. *Id.; Commodity Futures Trading*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00259-MPT    Document 90-2    Filed 10/10/2006    Page 6 of 14

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Comm'n v. Weintraub, 471 U.S. 343, 349, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). "The right to assert the attorney client privilege is an incident of control of the corporation and remains with the corporation as it undergoes mergers, takeovers, and name changes." Id.; NCL Corp. v. Lone Star Bldg. Ctrs., Inc., 144 B.R. 170, 174 (S.D.Fla.1992). Other courts have found that assignees of most or all of a corporation's assets could assert the corporation's attorney-client privilege. Id. at 1464; In re Financial Corp. of Am., 119 B.R. 728 (Bankr.C.D.Cal.1990)(holding that the authority to assert the corporation's attorney-client privilege passes with the transfer of substantially all of the corporation's assets and liabilities). In In re Crescent Beach Inn, 37 B.R. 894 (Bankr.D.Me.), the court suggested that the issue of whether or not a successor entity could invoke the attorney-client privilege should be interpreted in light of the surrounding circumstances. Ramada Franchise, 988 F.Supp. at 1464; Crescent Beach, 37 B.R. at 896.

**\*4** My decision to grant Graco's Motion to Disqualify was made in significant part because of the circumstances surrounding Graco's purchase of Century Products assets. Graco submits that the assets that it purchased, while not all of Century Products assets, were those pertaining to the accused product in the prior litigation. Graco purchased certain assets and liabilities relating to its infant care products business including its car seat, car seat stroller, infant carriers and playyard product lines. The agreement included the purchase of Century Products' operations in Canton, Macedonia, and Twinsburg, all in Ohio, and in Mexico along with working capital and brand names. The '437 Patent at issue in the prior and current litigation is for Graco's travel playpen, or "foldable playyard." Graco Children's Products, Inc. v. Century Products Company, Inc., No. CIV.A.93-6710, 1996 WL 421966, at \*1 (E.D.Pa. July 23, 1996). When Graco purchased the assets that it did from Century Products (i.e., those relating to infant playyard product lines), it purchased assets that were directly relevant in the prior litigation. I believe that Tecce's representation in the prior litigation was in the interest of those assets that Graco has in its possession now. Therefore, while it is not evident just how much, or what percentage of Century Products assets were transferred, it is my belief that the purchase gave Graco the authority to assert the attorney client privilege.[FN7] As far as the current litigation involves the '437 Patent, and as a result of Graco's purchase of the assets involved in the previous case involving the validity of that patent, I find that the right to assert the attorney-client privilege does pass to Graco.

> [FN7]. The privilege should be limited to confidences regarding Century Products' previous representation involving infant playyard product lines.

2. *Substantial Relationship:*

The next phase of our analysis is the "substantial relationship" inquiry. To perform a "substantial relationship" analysis under Rule 1.9, a court must first examine the nature and scope of the present lawsuit against the former client. Brennan v. Independence Blue Cross, 949 F.Supp. 305, 308 (E.D.Pa.1996), *See also* INA Underwriters Ins. Co. v. Nalibotsky, 594 F.Supp. 1199, 1206 (E.D.Pa.1984). Clearly, the nature and scope of the current litigation is similar to that of the former litigation. Both cases are patent infringement actions initiated by Graco involving the same '437 Patent. Tecce's representation in the former litigation assisted Century Products in defending against Graco's charges of infringement on the '437 patent. Graco asserts that there can be no doubt that the two cases involve the same subject matter and thus, the cases are sufficiently similar, if not, identical. Again, simply because both cases involve the same patent, notwithstanding the fact that the same defenses are being raised by Tecce in the current litigation (i.e., the validity and enforceability of the '437 Patent), this Court finds that the nature of the present lawsuit is very similar to past one involving Century Products.

**\*5** Next, the court must inquire whether "[i]n the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" Nablitosky, 594 F.Supp. at 1206. The Court must decide whether the client may have disclosed confidences to his at-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00259-MPT    Document 90-2    Filed 10/10/2006    Page 7 of 14

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

torney which could be relevant to the present action, and if so, could any such confidences be detrimental to the former client in the current litigation.

In Realco Servs., Inc., v. Holt, 479 F.Supp. 867 (E.D.Pa.1979), the court stated that a lawyer "might have acquired" substantially related information in issue if:
(a) the lawyer and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

*Id.* at 871-72. Tecce has been unable to sufficiently counter Graco's arguments in support of disqualification. I have the discretion to grant or deny a Motion to Disqualify and I have decided to do so under the notion that a conflict does exist. Throughout the hearings on this issue, the Court has been open to review evidence of specific confidences that may preclude Tecce's representation of Regalo in this matter. However, it is not necessary to find specific examples to justify disqualification. Under the "substantial relationship" inquiry, the Court needs only to find the possibility of disclosure; and the Court is not required to inquire into whether actual confidences were disclosed. Ramada Franchise, 988 F.Supp. at 1463; Dodson v. Floyd, 529 F.Supp. 1056, 1060 (N.D.Ga.1981). Graco has alleged that Tecce "might have acquired" certain confidences, the disclosure of which would certainly have an adverse impact on Graco's Century Division (i.e., Tecce's former client in this regard). Tecce's time records devoted to the previous litigation indicate that he spent 379 hours in two months working on preparation for the trial. This Court believes-and Graco correctly asserts-that it can be inferred that Tecce obtained and has control over information that is adverse to Graco's Century Division. This is enough to satisfy the second prong of the substantial relationship test, however, it does not stand alone.

3. *The Settlement Agreement in the Prior Litigation:*

The Comment to Rule 1.9 of the Pennsylvania Rules of Professional Conduct instructs the following:

When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.... The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

*6 Perhaps most important in the disqualification of Tecce is the fact that the previous litigation involved a confidential settlement agreement. This settlement agreement is the "specific transaction" that should warrant attorney disqualification. Both parties in this litigation have referred to Paragraph 8 of the Settlement agreement in arguing the issue of disqualification. At oral argument, counsel for Graco clarified that Paragraph 8 of the Settlement Agreement states that "Century will refrain from using the information gathered or obtained in the aforementioned action, to cooperate with other parties attacking the validity and/or enforceability of the '437 Patent, or for any other purpose whatsoever." (Tr. at 40, June 24, 1999). Regalo argues that this paragraph of the Settlement Agreement is the only paragraph that has any relevance to this case. Regalo asserts that it was agreed that Century would refrain from using information gathered or obtained to attack the validity of the patent, and that because validity was taken out of the case, no conflict exists pursuant to any settlement provisions.FN8

> FN8. Both parties have suggested that an amicable means of settling this issue would come from Regalo's withdrawal of any of its defenses as to the validity and enforceability in return for Graco's withdrawal of its Motion to Disqualify. However, no agreement of this sort ever emerged and Regalo has not yet taken the validity issue out of the case.

Graco counters this by referencing that not only had Century agreed to refrain from using such information to attack the validity of the patent, but Century was to refrain from using such information "for any other purpose whatsoever." Tecce was privy to the Settlement Agreement, was involved in its negotiations, and therefore was bound by its terms pursuant to the attorney-client relationship that existed. It "[i]s

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00259-MPT   Document 90-2   Filed 10/10/2006   Page 8 of 14

Not Reported in F.Supp.2d                                                                                                                   Page 6
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

well settled that a district court has jurisdiction to enforce a settlement agreement entered into by parties to a case pending before the court." Lawrence v. Birmingham Township, No. CIV.A.89-2096, 1991 WL 8877, at *2 (E.D.Pa. Jan. 25, 1991); Pugh v. Super Fresh Food Markets, Inc., 640 F.Supp. 1306, 1307 (E.D.Pa.1986); Rosso v. Foodsales, Inc. 500 F.Supp. 274, 276 (E.D.Pa.1980). "Such jurisdiction is founded on the policy that favors the amicable adjustment of disputes and the avoidance of costly and time-consuming litigation." Id.; Pugh, 640 F.Supp. at 1307. I will not ignore the policy behind Rule 1.9, and I will not undermine the importance of the settlement process by allowing Tecce's continued representation of Regalo.[FN9]

> FN9. While I have given the essential reasons for granting Graco's Motion to Disqualify, I find that other considerations lead to disqualification. Specifically, Tecce was: (a) involved in confidential meetings where sensitive business information was reviewed for the previous trial; (b) active in the entire trial and participated in all areas of trial preparation; (c) preparation for the appeal.

The United States Court of Appeals for the Third Circuit has stated the reasons for prohibiting an attorney from representing adverse interests in the same or substantially related litigation. In *In Re Corn Derivatives Antitrust Litig.,* 748 F.2d 157,162 (3d Cir.1984), the Third Circuit explains:

It is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.

*7 In granting Graco's Motion to Disqualify, I believe that I was following the interest of this Circuit and preventing exactly what Rule 1.9 provides protection from.[FN10] Therefore, no error of law was committed or needs to be corrected, and as a result, no manifest injustice exists.[FN11]

> FN10. Although Graco submitted adequate evidence of a conflict, it should not go unsaid that my decision to grant the Motion to Disqualify was also motivated by the fact that an appearance of impropriety exists. Such impropriety stems from the same evidence that has been discussed previously.

> FN11. My conclusion that there is no manifest injustice here stems from the basic notion that, in allowing Tecce to proceed with his representation in this litigation, an injustice could manifest itself later in the proceedings. Again, I granted the Motion to Disqualify to avoid such a manifestation of injustice (i.e., to avoid attorney-client confidences between Tecce and his former client that may have an adverse effect on Graco's Century Products Division and Graco-two entities that do not exist independent of each other).

B. *Existence of New Evidence:*

On October 26, 1998, the first oral argument on the disqualification issue was held. Regalo contends that since that argument, "new evidence" has been identified. The new evidence included a specific agreement by counsel for Graco to withdraw the Motion for Disqualification. Regalo claims that they never had time to fully address that agreement prior to the Court's disqualification Order, nor has Graco's counsel ever been required to address the reason why he allegedly abandoned the agreement. Regalo argues that fundamental fairness requires that both sides be given the opportunity to address this evidence.

Regalo also asserts that further new evidence concerning the settlement process has arisen since the prior hearing. In arguing this, Regalo contends that the record contains further evidence that Graco has not approached this litigation in good faith, but rather, has merely sought to gain by a war of attrition what it could not gain on the merits of the case. Regalo asks, "[w]hat other explanation could there be when each time that Defendant effectively agreed to Plaintiff's settlement demands, the demand was changed?" (Def.['s] Reply Mem. in Supp. of its Mot.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00259-MPT    Document 90-2    Filed 10/10/2006    Page 9 of 14

Not Reported in F.Supp.2d                                                                                                     Page 7
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

for Recons. at 3).

This Court is unable to distinguish between the two pieces of evidence that have been addressed by Regalo. Both, independent of each other, relate to settlement negotiations regarding the disqualification issue. Both parties have represented to the Court that there was a possibility that the issue would be settled, however, it is clear that this is not the case. While I acknowledge that Regalo has made several attempts to settle this matter, Graco has appeared reasonable in its attempts at settling the issue as well. As the Court understands the situation, while both parties contemplated settlement, Graco offered certain stipulations that were not anticipated by Regalo, and as a result, Regalo asserts that Graco does not intend to settle the issue, but rather to harass the opposition.

During the June, 1999 oral argument, Graco explained that the stipulations that were asked for in order to settle the matter, all requested specific recitals from Regalo that they understood what claims could not be raised later. In sum, Graco asserts that it and the Graco Century Products Division, may have a legal claim against Tecce for breach of the Settlement Agreement. The stipulations sought by Graco during settlement negotiations were to prevent any potential waiver on its part regarding the possible action pending against Tecce. The Court accepts Graco's reasons for adding the stipulations to the negotiations, and will not conclude that this is new evidence for purposes of Regalo's Motion for Reconsideration. I believe that Graco has sufficiently shown that it has made good faith efforts to settle this case, and in light of the fact that I do believe that a conflict of interest exists, I will not consider the stipulations or any part of the settlement negotiations as "new evidence."

**\*8** Therefore, for the reasons stated above, Regalo's Motion for Reconsideration will be denied.

C. *Certification of Appealability:*

In the event that this Court denied the Motion for Reconsideration, and in light of the fact that it has denied the Motion, Regalo seeks to have the disqualification Order certified for immediate appeal pursuant to 28 U.S.C. § 1292(b). Regalo's request for certification is denied.

In *Richardson-Merrell v. Kohler,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), the United States Supreme Court held that "orders disqualifying counsel in civil cases ... are not collateral orders subject to appeal as 'final judgements.' " *Richardson-Merrell,* 472 U.S. at 440. The Supreme Court's holding applies to all orders disqualifying counsel, thus limiting the appealability of disqualification orders.

However, Section 1292(b) provides that a district court may certify an order for appeal if it concludes that the Court's decision to disqualify involves (1) a controlling question of law as to which there is substantial ground for difference of opinion and (2) that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). None of the issues discussed above involve controlling question of law as to which there is substantial ground for difference of opinion. The Order granting disqualification was based on well-settled principals of law and the application of that law to the specific facts of this case. Therefore, the issue does not reach the threshold for certification under Section 1292(b). *See Decora Inc. v. DW Wallcovering, Inc.,* 901 F.Supp. 161, 165, (S.D.N.Y.1995). Since there exist no controlling questions of law as to which there is substantial ground for difference of opinion, and considering that an immediate appeal from the Order would only serve to delay, rather than advance the ultimate termination of the litigation, the Motion for Certification is denied.

*CONCLUSION*

Accordingly, for the reasons stated herein, and for those stated regarding the prior Order disqualifying counsel for Regalo, the Motion for Reconsideration is denied. The Motion for Certification pursuant to 28 U.S.C. § 1292(b) is also denied.

An appropriate Order follows.

*ORDER*

AND NOW, this day of July, 1999, upon consideration of Defendant Regalo International LLC's Motion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for Reconsideration of the Court's Order disqualifying Mr. Frederick Tecce as Regalo's attorney, and Plaintiff Graco Children's Products, Incorporated's response thereto:

1. It is hereby ORDERED that the Motion for Reconsideration is DENIED.

2. Regalo International LLC's Motion for Certification pursuant to 28 U.S.C. § 1292(b) is also DENIED.

E.D.Pa.,1999.
Graco Children's Products, Inc. v. Regalo Intern. LLC
Not Reported in F.Supp.2d, 1999 WL 553478 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:97cv06885 (Docket) (Nov. 10, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,D. Delaware.

Jerry A. HURST, Plaintiff,

v.

CITY OF DOVER, et al., Defendants.

No. Civ.A. 04-083-KAJ.

March 21, 2006.

Jerry A. Hurst, Arlington, VA, pro se.

W. Michael Tupman, Department of Justice, Dover, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

I. INTRODUCTION

**\*1** Plaintiff Jerry A. Hurst ("Hurst") brings this civil rights action pursuant to 42 U.S.C. § 1983. He also raises supplemental state claims. Hurst appears *pro se* and on March 1, 2004, was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915. (D.I.4). Hurst seeks compensatory and punitive damages, attorney's fees, an award of his costs of suit, unspecified injunctive and declaratory relief, and such other relief as the Court deems appropriate.

On January 24, 2006, I reviewed and screened the complaint pursuant to 42 U.S.C. § 1915. In doing so, I dismissed as frivolous the claims brought against Warden Rick Kearney and the Sussex Correctional Institute, and the malicious prosecution claims brought in Counts IV and VII. I also dismissed as malicious the intentional and/or negligent exposure to tuberculosis claim found in Count V, as Hurst had previously raised that claim in Civil Case No. 03-362-KAJ. That claim was brought against the Sussex Correctional Institute, which has since been dismissed as a defendant. *See Civil No.* 03-362-KAJ

Now before me is Hurst's Motion to Alter or Amend Judgment pursuant to Fed.R.Civ.P. 59(e) and Motion for Certification of an Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b). (D.I.6.) Hurst asks me to reconsider my Memorandum Order (D.I.5) of January 24, 2006 dismissing the above claims.

II. STANDARD OF REVIEW

The standard for obtaining relief under Rule 59(e) is high. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A motion for reconsideration may be granted if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999).

A motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. *See Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). Motions for reargument or reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990). Reargument, however, may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA,* 735 F.Supp. at 1241 (D.Del.1990) (citations omitted); *See also* D. Del. LR 7.1.5.

III. DISCUSSION

Hurst seeks reinstatement of the defendants and claims I dismissed in my screening order of January 24, 2006. He does not argue that there was an intervening change in the controlling law or that new evidence has come to light. Rather he appears to argue the need to correct a clear error of law or fact or to prevent manifest injustice.

**\*2** Having considered Hurst's motion, I will not disturb my screening order. None of the arguments

raised by Hurst persuade me that my interpretation of the law was erroneous, or that I wrongly understood the factual assertions on which I relied, or that the application of the law to the allegations in the complaint was incorrect. In short, Hurst has not demonstrated any of the grounds necessary to warrant reconsideration and, therefore, his motion is denied. Moreover, upon a further review of the claims dismissed, I find that allowing amendment of the dismissed claims would be futile. See *Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002)*; *Borelli v. City of Reading,* 532 F.2d 950, 951-52 (3d. Cir.1976).

### IV. INTERLOCUTORY APPEAL

Hurst also asks that I certify this matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). He asserts that certification could "materially advance the ultimate determination" of the litigation in this case and Civil Case No. 03-362-KAJ, which is also pending in this district court. Additionally, he contends that there are several "controlling question of law as to which there is substantial ground for difference of opinion" and that an interlocutory appeal would be in the interest of judicial economy.

Under 1292(b), I may certify an order for interlocutory appeal if "(1) it involves a 'controlling question of law;' (2) there is 'substantial ground for difference of opinion' with respect to that question; and (3) immediate appeal 'may materially advance the ultimate termination of the litigation.'" 28 U.S.C. § 1292(b)). A "controlling question of law" includes "every order which, if erroneous, would be reversible error on final appeal" *Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir.1974)*. A party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b). *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F.Supp.2d 355, 360 (D.N.J.2001)*. "The difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (citing *Hulmes v. Honda Motor Co., Ltd., 936 F.Supp. 195, 207 (D.N.J.1996)*).

Hurst contends that there are several controlling questions of law as to which there is substantial ground for difference of opinion. The gist of Hurst's argument is that I erred in the application of existing law to the facts of the case. His disagreement with my ruling is insufficient for certification of an interlocutory appeal. Further, Hurst has not persuaded me that prompt appellate resolution "may materially advance the ultimate termination of the litigation." The screening order merely dismissed those claims that are legally and factually frivolous within the meaning of 28 U.S.C. § 1915, but it allowed Hurst to proceed with claims that may be cognizable under state and federal law. Finally, if Hurst still wishes, he will have the opportunity to appeal when the I enter final judgment in this case. Therefore, his request to certify an appeal pursuant to 28 U.S.C. § 1292(b) is denied.

### V. CONCLUSION

**\*3** Accordingly, IT IS HEREBY ORDERED Hurst's Motion to Alter or Amendment Judgment and Motion for Certification of an Interlocutory Appeal (D.I.6) is denied.

D.Del.,2006.
Hurst v. City of Dover
Slip Copy, 2006 WL 2347707 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:04cv00083 (Docket) (Feb. 5, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I, Melanie K. Sharp, Esquire, hereby certify that on October 10, 2006, I caused to be electronically filed a true and correct copy of the foregoing Appendix of Exhibits to Memorandum in Opposition to ARIAD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b), with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John G. Day, Esquire
> Ashby & Geddes
> 222 Delaware Avenue, 17th Floor
> Wilmington, DE 19801

I further certify that on October 10, 2006, I caused a copy of the foregoing Appendix of Exhibits to Memorandum in Opposition to ARIAD's Motion for Certification Pursuant to 28 U.S.C. § 1292(b), to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

> **BY E-MAIL (by agreement of counsel)**
> Morgan Chu, Esquire
> David I. Gindler, Esquire
> Amir A. Naini, Esquire
> Christopher M. Newman, Esquire
> Elizabeth L. Rosenblatt, Esquire
> Irell & Manella LLP
> 1800 Avenue of the Stars, Suite 900
> Los Angeles, CA  90067-4276

> _____/s/ Melanie K. Sharp_____
> Melanie K. Sharp (No. 2501)