**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION ) ) ) ) ) ) Plaintiff, ) ) vs. ) ) ARIAD PHARMACEUTICALS, INC. ) ) Defendant. ) ) | C.A. No. 06-259-KAJ |

**DEFENDANT ARIAD PHARMACEUTICALS, INC.'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
Facsimile:  (302) 654-2067

*Counsel For Defendant*
*ARIAD Pharmaceuticals, Inc.*

Of Counsel:

IRELL & MANELLA LLP
Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Dated: October 17, 2006

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................1

II.    ARGUMENT ....................................................................................2

    A.    The Standards Governing Section 1292(b) Certification Are
          Flexible, and ARIAD Has Met Its Burden.................................2

    B.    This Case Raises At Least Three Questions Of Law Relating To
          The Legal Standards Governing Declaratory Judgment
          Jurisdiction..............................................................................5

        1.    The Proper Application of *Phillips Plastics* Is An
              Important Question Of Law As To Which There Is
              Substantial Ground For Difference Of Opinion...........................5

        2.    The Interaction Between The Bayh-Dole Act And The
              Declaratory Judgment Act Raises An Important
              Question Of Law As To Which There Is Substantial
              Ground For Difference Of Opinion. .............................................10

        3.    This Case Also Raises A Substantial Question Of Law
              As To Whether The Standard Governing Declaratory
              Judgment Jurisdiction Is Wholly Objective. ...............................12

    C.    Amgen's Arguments Against Discretionary Certification Are
          Unpersuasive............................................................................13

III.    CONCLUSION ...............................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*APCC Svcs., Inc. v. AT&T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003) ............................................................ 5

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ............................................................. 6, 7

*Boim v. Quranic Literacy Inst.*,
291 F.3d 1000 (7th Cir. 2002) ............................................................. 11

*BP Chems., Ltd. v. Union Carbide, Corp.*,
4 F.3d 975 (Fed. Cir. 1993) ............................................................. 13

*Burt on Behalf of McDonnell Douglas Corp. v. Danforth*,
742 F. Supp. 1043 (E.D. Mo. 1990) ............................................................. 3

*Capo, Inc. v. Dioptics Medical Products, Inc.*,
387 F.3d 1352 (Fed. Cir. 2004) ............................................................. 5, 6, 7

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
95 F.3d 959 (10th Cir. 1996) ............................................................. 12

*Caterpillar v. Lewis*,
519 U.S. 61 (1996) ............................................................. 4

*Catlin v. United States*,
324 U.S. 229 (1945) ............................................................. 5

*Chase Manhattan Bank v. Iridium Africa Corp.*,
324 F. Supp. 2d 540 (D. Del. 2004) ............................................................. 11

*Coffman v. Breeze Corp.*,
323 U.S. 316 (1945) ............................................................. 13

*DeMelo v. Woolsey Marine Indus., Inc.*,
677 F.2d 1030 (5th Cir. 1982) ............................................................. 3

*Electric Bond & Share Co. v. SEC*,
303 U.S. 419 (1938) ............................................................. 13

*Electronics for Imaging, Inc. v. Coyle*,
394 F.3d 1341 (Fed. Cir. 2005) ............................................................. 13

Page(s)

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996) ............................................................ 9

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) .............................................................. 4, 5, 14

*Graco Children's Prods., Inc. v. Regalo Int'l LLC*,
    1999 WL 553478 (E.D. Pa. July 21, 1999) ...................................... 4

*Green v. Fund Asset Mgmt. L.P.*,
    245 F.3d 214 (3rd Cir. 2001) ....................................................... 11

*Hewitt v. Joyce Beverages of Wisconsin, Inc.*,
    721 F.2d 625 (7th Cir. 1983) ......................................................... 3

*Hurst v. City of Dover*,
    2006 WL 2347707 (D. Del. Mar. 21, 2006) ................................... 4

*In re Buspirone Patent Litigation*,
    210 F.R.D. 43 (S.D.N.Y. 2002) ..................................................... 4

*In the Matter of Magic Restaurants, Inc.*,
    202 B.R. 24 (D. Del. 1996) ........................................................... 5

*Indium Corp. of Am. v. Semi-Alloys, Inc.*,
    781 F.2d 879 (Fed. Cir. 1985) ..................................................... 12

*Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*,
    455 F.3d 1364 (Fed. Cir. 2006) ..................................................... 5

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3rd Cir. 1974) ................................................... 3, 14

*Lamie v. U.S. Trustee*,
    540 U.S. 526 (2004) ..................................................................... 2

*Mobil Oil Corp. v. W.R. Grace & Co.*,
    334 F. Supp. 117 (S.D. Tex. 1971) ............................................... 3

*Morris v. Rumsfeld*,
    420 F.3d 287 (3rd Cir. 2005) ..................................................... 11

*Oppedahl & Larson v. Network Solutions, Inc.*,
    3 F. Supp. 2d 1147 (D. Colo. 1998) ............................................ 12

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*,
    161 F. Supp. 2d 355 (D.N.J. 2001) ............................................... 4

Page(s)

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
    57 F.3d 1051 (Fed. Cir. 1995) ................................................................ passim

*PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*,
    81 F.3d 1412 (5th Cir. 1996) .................................................................. 3

*Shell Oil v. Amoco Corp.*,
    970 F.2d 885 (Fed. Cir. 1992) ............................................................... 5, 6

*St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*,
    664 F. Supp. 824 (S.D.N.Y. 1987) ....................................................... 4

*Vanguard Research, Inc. v. Peat, Inc.*,
    304 F.3d 1249 (Fed. Cir. 2002) ............................................................. 6

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990) ............................................................. 2

*Vectra Fitness, Inc. v. TNWK Corp.*,
    162 F.3d 1379 (Fed. Cir. 1998) ............................................................. 11

**Statutes**

28 U.S.C. § 2201 .......................................................................................... 13

35 U.S.C. § 1295 .......................................................................................... 11

35 U.S.C. § 203(a) ....................................................................................... 11

37 C.F.R. § 401.14(i) ................................................................................... 11

37 C.F.R. § 401.14(k)(1) ............................................................................. 11

37 C.F.R. § 401.14(k)(4) ............................................................................. 11

**Other Authorities**

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    *Federal Practice and Procedure* § 3929 (2d ed. 1996) ............................ 3

# I.    **INTRODUCTION**

Amgen's objections to immediate appellate review of this Court's jurisdictional ruling reveal this litigation for what it is: a blatant attempt by a dominant drug company to exert extreme pressure on a much smaller innovative company by creating a burden of millions of dollars in litigation expenses to extract an unfair business advantage.

Amgen has not shown that it will suffer any harm from immediate appellate review. Rather, Amgen appears to concede that immediate appellate review could result in a dispositive jurisdictional ruling terminating this litigation.

Nor has Amgen demonstrated the absence of any ground for difference of opinion regarding this Court's ruling. Indeed, Amgen's description of the case law, and its new-found recognition of the importance of permitting licensing discussions, highlights that there is a substantial ground for difference of opinion as to the jurisdictional question raised in this case.

Amgen's primary argument for denying certification is Amgen's view that this case does not raise a legal question. Yet Amgen has not disputed that certification under section 1292(b) is frequently granted to review jurisdictional rulings or that, because ARIAD is not disputing the Court's fact finding for purposes of this motion, this case necessarily involves questions of law that will be subject to *de novo* review. Accordingly, this case falls squarely within the class of cases appropriate for immediate appellate review.

Because this Court's jurisdictional ruling raises important and disputed questions of law, and because it will be subject to *de novo* appellate review, either now or many years down the line, and because all of the statutory criteria are satisfied, this Court should certify its jurisdictional ruling for immediate appeal. ARIAD should not be forced to grant Amgen significant and wholly undeserved business concessions to extract itself from the onerous financial burdens of litigation based on a non-existent, manufactured controversy specifically designed to extract such a windfall. Nor should ARIAD's future

customers face the potential of delay in receiving life-saving therapies for late-stage cancer based on Amgen's overly restrictive view of when section 1292(b) certification is available. This Court has discretion to grant certification for immediate appeal and should do so.

## II.    ARGUMENT

### A.    The Standards Governing Section 1292(b) Certification Are Flexible, and ARIAD Has Met Its Burden.

Amgen's opposition to certification centers around its contention that even when all statutory requirements for certification are met, certification is nonetheless appropriate only in "exceptional" cases. According to Amgen, even when a case raises a significant legal question as to whether the facts of a case justify relief, certification is barred if other aspects of the applicable legal standards are settled. As discussed at greater length herein and in its opening memorandum, ARIAD has amply demonstrated that the controlling standards in this case are anything but well settled; indeed, Amgen's own opposition underscores the lack of settled law that addresses precisely the questions ARIAD raises.

But even if this were not the case, Amgen's suggestion that section 1292(b) certification is only available in a narrower class of cases than those actually specified in section 1292(b) defies long-established principles of statutory interpretation. When Congress enacts legislation, courts have no ground to interpret such legislation in a manner that alters its terms. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citations omitted); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990) (same).

As the leading treatise on civil procedure makes clear, the standards for certification and acceptance of an appeal under 28 U.S.C. § 1292(b) are flexible by design:

> The flexible approach to § 1292(b) is far superior to blind adherence to a supposed need to construe strictly any permission to depart from the final judgment rule. The statute is not limited by its language to 'exceptional' cases. Flexibility is justified in part because the statute itself was suggested and drafted by judges who were concerned with avoiding the rigors of the final judgment rule.

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3929 (2d ed. 1996). This flexibility is embodied in the broad discretion given the district court to grant certification, "relying on the criteria specified in the statute." *Id.*

Nothing in the language of the statute excludes from the category of "controlling questions of law" non-discretionary rulings on whether a particular legal standard has been satisfied on the facts of a particular case. *Cf. Mobil Oil Corp. v. W.R. Grace & Co.*, 334 F. Supp. 117 (S.D. Tex. 1971) (denying certification *of discretionary order* severing and transferring patent action against certain defendants). Rather, a "controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3rd Cir. 1974).

Indeed, courts frequently certify and accept interlocutory orders for review not because the governing legal principles were unsettled, but because there existed substantial grounds for difference of opinion on how those principles were to be applied to the case at hand. *See, e.g., PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412 (5th Cir. 1996) (whether district was alter ego of state and thus not a citizen for purposes of diversity jurisdiction); *Hewitt v. Joyce Beverages of Wisconsin, Inc.*, 721 F.2d 625 (7th Cir. 1983) (decertification of class action); *DeMelo v. Woolsey Marine Indus., Inc.*, 677 F.2d 1030 (5th Cir. 1982) (whether party had minimal contacts with state for personal jurisdiction); *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3rd Cir. 1974) (grant of class action status); *see also Burt on Behalf of McDonnell Douglas Corp.*

- 3 -

*v. Danforth*, 742 F. Supp. 1043 (E.D. Mo. 1990) (which state's choice of law rules applied); *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 664 F. Supp. 824 (S.D.N.Y. 1987) (whether party was citizen of state for purposes of diversity jurisdiction).[1]

Amgen's argument that the class of cases appropriate for interlocutory review is narrower than the statute specifies is based on statements taken out of context or misquoted from the relevant authorities. While *Caterpillar v. Lewis*, 519 U.S. 61, 74 (1996), states that Congress intended to reserve interlocutory review for "exceptional" cases, the Supreme Court made clear that such cases are "exceptional" only in the sense that most interlocutory orders cannot satisfy the statutory requirements for certification. *Id.* at 74 n.10 ("Section 1292(b) provides for interlocutory appeals from otherwise not immediately appealable orders, if conditions specified in the section are met, the district court so certifies, and the court of appeals exercises its discretion to take up the request for review."). In contrast, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981),

---

[1] In arguing that the questions ARIAD raises are inappropriate for certification, Amgen relies heavily on *Hurst v. City of Dover*, 2006 WL 2347707 (D. Del. Mar. 21, 2006). That case, however, is inapposite, as there the request for certification was based on nothing more than a pro se plaintiff's dispute with the Court that some of his claims were "legally and factually frivolous." *Hurst*, 2006 WL at *2. *Hurst*, as well as the other cases Amgen cites, stand primarily for the uncontroversial principle that "[a] party's disagreement with the district court's ruling does not constitute 'a substantial ground for a difference of opinion' within the meaning of 1292(b)." *Id.*; *cf. Graco Children's Prods., Inc. v. Regalo Int'l LLC*, 1999 WL 553478 (E.D. Pa. July 21, 1999) (denying certification of grant of motion to disqualify counsel). In contrast, this motion is not based on a disagreement with the Court's factual findings or discretionary application of law to the facts, but rather on a fundamental ambiguity in the law the Court applied. In contrast, the other cases Amgen cites involved no real legal issues or grounds for questioning the law that was applied; moreover, the motion was more often than not found not to satisfy the other statutory requirements of section 1292(b). *See, e.g., In re Buspirone Patent Litigation*, 210 F.R.D. 43 (S.D.N.Y. 2002) (motion not timely filed, no substantial grounds for difference of opinion, issue was not "controlling," and appeal would not materially advance ultimate termination of litigation); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 355 (D.N.J. 2001) (purported legal questions were "manufactured," and there were no substantial grounds for dispute and "no possibility" that immediate review would avoid trial).

upon which Amgen also relies, states that *mandamus relief* is available only in "exceptional" cases, not that section 1292(b) certification is so limited. *Id.* at 378 n.13.[2]

Further, where, as here, "proceedings that threaten to endure for several years depend on an initial question of jurisdiction," certification may be appropriate "even if there is a relatively low level of uncertainty." *APCC Svcs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101, 107 (D.D.C. 2003). In any event, as set forth below, ARIAD has shown that the legal questions at issue offer substantial grounds for dispute and have not been resolved by the existing law.

**B.    This Case Raises At Least Three Questions Of Law Relating To The Legal Standards Governing Declaratory Judgment Jurisdiction**

**1.    The Proper Application of *Phillips Plastics* Is An Important Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion.**

In its opening brief, ARIAD identified a tension in Federal Circuit case law between the broad statement of law contained in *Capo, Inc. v. Dioptics Medical Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004), that declaratory jurisdiction exists any time "there has been a direct charge of infringement" and ongoing activity of the type charged to infringe, and the earlier holding of *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), that "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastics*, 57 F.3d at 1053; *see also Shell Oil v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992) (noting that if patentee "wanted to continue to negotiate a license," its statement that it intended to enforce its patents was

---

[2] Amgen's reliance on *Intel Corp. v. Commonwealth Scientific & Indus. Research Org.*, 455 F.3d 1364 (Fed. Cir. 2006), is also misplaced. That case involved an appeal under the collateral order doctrine, not section 1292(b), and the Court did not address whether the secondary question relating to reasonable apprehension of suit was appropriate for section 1292(b) certification, finding only that it was not sufficiently intertwined with the sovereign immunity question to justify review in that appeal. *Id.* at 1371. *Catlin v. United States*, 324 U.S. 229 (1945), cited in *Intel*, preceded Congress's enactment of section 1292(b). *In the Matter of Magic Restaurants, Inc.*, 202 B.R. 24 (D. Del. 1996), dealt with the district court's interlocutory review of bankruptcy court decisions.

"necessary" and could not be construed as a threat to sue). The *Capo* court's unqualified statement of law, relied on by the Court at hearing, (Tr. at 15-16,) does not take into account the fact that there can be no meaningful license negotiations if the patent owner does not communicate that the potential licensee *needs* a license, which necessarily implies that ongoing activities infringe the patent. Nor can meaningful negotiations take place if the patent owner disavows any intent ultimately to enforce its patents in the event no agreement can be reached.

ARIAD never asserted that the *outcomes* of *Capo, Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), and *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731 (Fed. Cir. 1988), were irreconcilably in conflict with those of *Phillips Plastics* and *Shell Oil*. Indeed, ARIAD's motion expressly sought to distinguish the facts of these cases on the same grounds that Amgen now does. (*Compare* D.I. 74 at 20-21 *with* D.I. 89 at 9-10.)[3] ARIAD agrees with Amgen's current position that these cases *should be regarded as* reconcilable on the theory that the statements found in the former line of cases to be threatening were made outside any context of good-faith licensing efforts.[4] The reason ARIAD maintains that there is tension in the case law is that decisions such as *Capo* and *Arrowhead* contain broad formulas of law that do not, on their face, reflect the limitation imposed by *Phillips Plastics* and *Shell Oil*. If those formulas were expressly limited in their application to circumstances in which no licensing negotiations had been proposed or were underway,

---

[3] When ARIAD stated that *Capo* did not discuss or distinguish *Shell Oil* or *Phillips Plastics*, it was referring to the part of the opinion containing the broad statement of law the Court had quoted at hearing. (D.I. 74 at 20.) ARIAD itself cited the passage from *Capo* that distinguishes *Shell Oil* on its facts, pointing out that this showed the lack of any intent on the *Capo* court's part to overturn the rule of law announced in *Phillips Plastics*. (*Id.* at 20-21.) The crucial point is that the court's language in *Capo* raises, without directly addressing, a question as to whether "a direct charge of infringement" that takes place as part of "proposed or ongoing license negotiations" nevertheless gives rise to a justiciable controversy.

[4] *See* D.I. 74 at 20 (describing *Capo* and other cases as "*seemingly* in tension" with *Phillips Plastics*) (emphasis added).

there would be no tension.  But Amgen certainly did not agree, in opposing ARIAD's motion to dismiss, that *Capo* and *Arrowhead* should be so limited.  Quite to the contrary, Amgen proffered ARIAD's licensing overtures—such as the licensing letters and telephone call between ARIAD's Fritz Casselman and Amgen's Frank Ungemach—in support of their claimed apprehension of suit.  More importantly, in its ruling on this case, the Court did not treat *Capo* as though it were limited in scope by *Phillips Plastics*.

Following the formula expressed in *Capo*, the Court treated numerous facts that were undisputedly attempts on ARIAD's part to initiate licensing negotiations as factors contributing to a finding of declaratory jurisdiction, on the ground that their "tone" conveyed the sense that "ARIAD feels it has rights and feels that the enforcement of those rights is important, and that it has the intention of enforcing those rights."  (Tr. at 81-82.)  If Amgen's current construction of the law is correct, the conveying of such a message as part of a proposal for licensing negotiations should not, as a matter of law, have been treated as providing support for the exercise of declaratory jurisdiction.  Unlike *Capo*, here the Court did not make any finding that ARIAD's licensing proposals were aimed at anything other than good-faith negotiations, and there is accordingly a question of law whether their "tone"—even accepting the Court's factual finding that this tone was one that a reasonable observer would perceive to be threatening enforcement action— could properly be used to support a finding that there was a justiciable controversy.[5]

---

[5] Amgen attempts to manufacture a contradiction in ARIAD's position concerning the presence or absence of ongoing licensing efforts.  (D.I. 89 at 11 n.4.)  There is no dispute that ARIAD, in its letters and in phone call by Mr. Casselman (which ARIAD was not aware of at the time of filing its motion to dismiss because Mr. Casselman had left the company), offered a license and sought to initiate licensing discussions with Amgen.  (*See* Tr. (D.I. 75-I) at 75:21-76:1)  ("ARIAD was certainly within its rights to contact potential licensees and let them know about their rights and suggest that potential licensees take a look at those patents.").  Amgen never refused this offer, saying it would "need to review it" before making a decision.  (Ungemach Decl. (D.I. 24) ¶ 16.)  ARIAD's offer of a license and proposals to negotiate thus remained open and ongoing.  What ARIAD pointed out in the passages cited by Amgen was that—because Amgen never expressed affirmative interest and ARIAD never pressed them—there were never any concrete discussions of license terms, making it difficult to understand how Amgen could feel threatened by the low-key overtures that had been made.  The question whether ARIAD's attempts to license are properly described as "discussions" or not is a red herring, because the

The same is true of the key—and, for purposes of this motion, undisputed—facts that heavily influenced the Court's decision. The Court ruled that it was the internal 2001 Board presentation, which the Court found to be "highly significant," that tipped the scales in favor of exercising jurisdiction. (D.I. 75-I at 78-79.) Further, the Court made clear that it was the contents of the slides themselves, and not anything said about them at trial in 2006, that it regarded as dispositive. (*Id* at 79.) The statements made in these slides were not in themselves licensing negotiations, as they were prepared for ARIAD's Board, not for a potential licensee. Amgen only became aware of them because its counsel was present in the courtroom when Lilly's counsel chose to use them during the cross-examination of Dr. Berger at the Lilly trial.

The slides provide the foundation for ARIAD's Board of Directors to understand the NF-kB pathway, ARIAD's proposed licensing program, and the process of entering into licensing negotiations with potential licensees. The presentation itself was entitled "Licensing and Partnering," not "ARIAD Litigation Strategy." And while the Court chose to discount Dr. Berger's trial testimony concerning these slides on the ground that he was a "savvy businessperson," the Court refrained from making any finding that the slides themselves had been drafted to hide ARIAD's true intentions from its own Board. *Id.* Amgen now appears to recognize that the 2001 slide presentation can provide a basis for jurisdiction only if it is construed as something that took place *outside* the "course of licensing negotiations." (D.I. 89 at 11 & n.3.) But where does the course of negotiations start if not with the process of deciding to negotiate? And how does that process continue unless the patent holder educates its Board on the status of those negotiations and the available alternatives (as well as their consequences) if negotiations fail?

Even accepting the Court's findings as to the inferences that can reasonably be drawn from the slide presentation on its face, there is a serious question of law as to

_____

*Phillips Plastics* rule applies not only to cases where actual discussions are taking place, but to those where there are *proposed* licensing negotiations as well. *Phillips Plastics*, 57 F.3d at 1053.

whether, under *Phillips Plastics*, statements made as part of a company's internal discussion of the prospects for licensing (as well as alternatives if licensing efforts fail) can be treated differently from a proposal to enter into negotiations with a prospective licensee. If the same message that can be delivered to a prospective licensee without creating a controversy cannot be delivered to one's own Board without doing so, it is difficult to see how the proposed negotiations contemplated in *Phillips Plastics* can ever come to pass.

Amgen mischaracterizes ARIAD's position as "apparently conced[ing]" that the slides can be read as showing that ARIAD did more than simply attempt to license the '516 patent. (D.I. 89 at 12.) What ARIAD said was that *even if* one ignores Dr. Berger's testimony, the *most* one could infer from the slides was that ARIAD thought Amgen practiced the patent and wanted to be prepared to sue "if and when necessary" were Amgen to refuse to take a license. (D.I. 74 at 24.) ARIAD did *not* concede that this would amount to something *more* than attempting to license the patent—to the contrary, the entire thrust of ARIAD's argument is that license negotiations may not bear fruit unless reinforced by an expression of preparedness by ARIAD to enforce its patent rights. (*See* D.I. 74 at 18-19) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996) ("The threat of enforcement . . . is the entire source of the patentee's bargaining power.")). This is precisely why the courts in the numerous cases cited by ARIAD held statements of this nature do *not* give rise to a case or controversy. (*Id.* at 23-24 & n.13).

Moreover, even if the Board presentation is somehow construed as a set statements not part and parcel of proposed licensing negotiations, there remains a serious question of law as to the proper scope of *Phillips Plastics.* As noted above, the proposed licensing negotiation that ARIAD initiated in 2002 was never refused or taken off the table. This Court certainly did not hold that ARIAD's overtures had been insincere or that the possibility of such negotiations had "broken down." Given this context, there arises the question as to how *Phillips Plastics* applies when proposed negotiations have

not broken down but the declaratory judgment plaintiff receives messages—such as Pat Carson's alleged statement or the Board slides—outside the context of a negotiation and claims that these messages would give rise to a reasonable apprehension of suit. None of the cases Amgen cites in which there are no licensing negotiations answers this question.

Amgen is thus wrong in asserting that the present motion merely disagrees with the Court's fact finding. (D.I. 89 at 11.)  While ARIAD has pointed out that Amgen's counsel made incorrect statements upon which the Court relied, (D.I. 74 at 12 & n.5), ARIAD has assumed that the facts are as found by the Court.  Accordingly, we have assumed for purposes of this motion, contrary to fact, that Ms. Carson did not dispute making the "Enbrel is on the list" statement, and we have assumed (although there is no evidence in the record to support this assumption) that Amgen's in-house counsel saw slide 41 during the Lilly trial.  Even assuming these facts, and accepting the Court's finding—contrary to her express denial—that Ms. Carson did make the statement attributed to her, that merely places this case in the category about which Federal Circuit law is unclear.

### 2. The Interaction Between The Bayh-Dole Act And The Declaratory Judgment Act Raises An Important Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion.

Amgen admits that the Federal Circuit has never addressed the relationship between the licensing obligations imposed by the Bayh-Dole Act and the scope of declaratory judgment jurisdiction. (D.I. 89 at 12-13.)  From this absence of authority, Amgen concludes that "the Bayh-Dole Act is irrelevant." (*Id.* at 12.)

Amgen is mistaken.  The obligations of the Bayh-Dole Act raise several important questions of law that affect the outcome of this case.  First, where one party has a statutory and contractual obligation to license a patent, as ARIAD does here, should a court weigh a Board presentation describing licensing possibilities as the decisive factor that tips the balance in favor of jurisdiction?  Doing so creates a clear risk of chilling

- 10 -

licensing activity:  Managers seeking to fulfill their obligations under the Bayh-Dole Act will have difficulty advising their Boards regarding licensing strategies if they must consider whether their advice could prompt an unwanted and unanticipated declaratory judgment action.  This type of chilling effect undermines Congress's purpose in enacting the Bayh-Dole Act, which was to promote investment in research by granting patent protection for inventions derived from federally funded research and encouraging licensing of such patents for commercial purposes.  *See, e.g.*, 35 U.S.C. § 203(a); 37 C.F.R. §§ 401.14(i), (k)(1), (k)(4).

In addition, in ruling on ARIAD's motion to dismiss, this Court made clear that it regarded with considerable skepticism ARIAD's licensing efforts, suggesting that they may have been mere preludes to litigation.  (D.I. 89 at 75-77.)  It is an important question of law whether, in the Bayh-Dole context, such an adverse inference is permissible.

Moreover, the absence of controlling authority on these questions does not mean that there is no substantial ground for difference of opinion.  It means merely that these matters raise questions of first impression.  Courts often certify cases for interlocutory appeal when faced with an issue of first impression.  *See, e.g.*, *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1381-82 (Fed. Cir. 1998); *Morris v. Rumsfeld*, 420 F.3d 287, 289-90 (3rd Cir. 2005); *Green v. Fund Asset Mgmt. L.P.*, 245 F.3d 214, 220 (3rd Cir. 2001); *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002); *see also Chase Manhattan Bank v. Iridum Africa Corp.*, 324 F. Supp. 2d 540, 545 (D. Del. 2004).  Because the Federal Circuit has exclusive jurisdiction over patent appeals under 35 U.S.C. § 1295, it will ordinarily be the case that a substantial ground for difference of opinion arises in patent cases due to the absence of appellate authority or uncertainty as to the application of existing authority, rather than conflicts among appellate courts.

**3.   This Case Also Raises A Substantial Question Of Law As To Whether The Standard Governing Declaratory Judgment Jurisdiction Is Wholly Objective.**

Amgen argues that the test for whether an "actual controversy" exists between the parties giving rise to declaratory judgment is "objective." (D.I. 89 at 8.)  While it is clear that there is an objective element to the "reasonable apprehension" test—in that the declaratory judgment plaintiff's apprehension of suit must be reasonable—it appears that Amgen is taking the broader position that declaratory judgment jurisdiction may arise even if the plaintiff makes no showing whatsoever that it suffered any apprehension of suit. (D.I. 89 at 7-8.)  Amgen must take this position for this case to proceed because, as ARIAD has pointed out (D.I. 74 at 7-11, 22-24), Amgen chose not to submit any evidence whatsoever that it in fact had any apprehension prior to filing this action.

There is substantial ground for difference of opinion as to whether the standard for declaratory judgment jurisdiction is wholly objective.  While many cases say that it is not *sufficient* to demonstrate that the declaratory judgment plaintiff was under a subjective apprehension of suit, there is no substantial body of case law supporting the far broader notion that subjective apprehension by a declaratory judgment plaintiff is wholly unnecessary in order for a declaratory judgment suit to proceed.  Indeed, the Federal Circuit has made clear that "[t]he 'reasonable apprehension of suit' test requires *more than* the nervous state of mind of a possible infringer; it requires that the objective circumstances support *such an apprehension.*"  *Phillips Plastics Corp.*, 57 F.3d at 1053-54.  *See also Oppedahl & Larson v. Network Solutions, Inc.*, 3 F. Supp. 2d 1147, 1164 (D. Colo. 1998) ("It is *not sufficient* for a plaintiff to allege a subjective apprehension of future injury.   Rather, *a plaintiff must have* an objectively reasonable apprehension of harm.") (citing *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) and *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 882 (Fed. Cir. 1985)) (emphasis added).

- 12 -

Allowing jurisdiction only upon a showing that a reasonable person would suffer apprehension of suit,[6] without the plaintiff demonstrating that it actually suffered any apprehension, would be contrary to the requirement of both Article III and the Declaratory Judgment Act that there be an "actual controversy" between the parties and that the dispute not be hypothetical. *See Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy...where the issue is actual and adversary...and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen."); *Electric Bond & Share Co. v. SEC*, 303 U.S. 419, 443 (1938) ("Defendants are not entitled to invoke the Federal Declaratory Judgment Act in order to obtain an advisory decree upon a hypothetical state of facts."); 28 U.S.C. § 2201 (providing discretionary jurisdiction in cases of "actual controversy"). This question also supports certification of this case for interlocutory appeal.

## C.    Amgen's Arguments Against Discretionary Certification Are Unpersuasive

Finally, Amgen attempts to diminish the importance of the discretionary factors ARIAD urges in support of certification on the ground that ARIAD should have raised them in its original motion to dismiss. This argument is without merit, as Amgen has failed to cite any authority holding that harms of the type ARIAD will suffer in the event that certification is denied are relevant to the decision whether to decline to exercise jurisdiction in the first place. *Cf. Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) ("When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute...in the usual circumstance the declaratory judgment is not subject to dismissal.") (citation omitted); *BP Chems., Ltd. v. Union Carbide, Corp.*, 4 F.3d 975, 981 (Fed. Cir. 1993) (district court may decline to exercise

---

[6] As ARIAD has made clear, it does not agree that under the facts of this case any reasonable person could have had a reasonable apprehension of suit.

declaratory judgment jurisdiction only if the exercise of jurisdiction "would not afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.").

By contrast, in exercising discretion when deciding whether to certify a matter for interlocutory appeal, the Court may consider the harm that a party or third parties could suffer in the event that review is delayed. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13 (1981) (noting that section 1292(b) certification is proper recourse in "situations in which a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation"); *cf. Katz*, 496 F.2d at 756 (noting that policies favoring appeal under section 1292(b) include "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense").

Amgen also asserts, without foundation, that ARIAD has not provided evidence that this lawsuit will undermine its ability to bring its groundbreaking cancer drugs to market. To the contrary, ARIAD has presented substantial evidence of its limited size and financial resources and the strain that litigation of this action would place on those resources.[7] ARIAD has also shown that its lead product candidate, AP23573, is entering its last phase of clinical trials prior to FDA approval, and that siphoning off its resources at this crucial stage to pay the costs of a protracted (and unanticipated) patent litigation would inevitably burden ARIAD's efforts to bring this product to market. Given the stakes, no greater showing is necessary.

---

[7] Incredibly, Amgen asserts that "[s]ince certification of an appeal does not stay the proceedings in this Court, the effect of granting certification would serve to increase ARIAD's litigation costs, not decrease them (at least during the 12-18 months it would typically take to obtain an appellate ruling)." (D.I. 89 at 15). Amgen ignores the fact that ARIAD can and will seek a stay of the case in the event the Court grants certification. *See* 28 U.S.C. § 1292(b) (allowing for stays pending appeal). Moreover, even in the absence of a stay, the cost of filing and arguing an appeal pales in comparison with the enormous prospective costs of pursuing a full-blown patent litigation, from discovery through trial, *all* of which could potentially be avoided by interlocutory appeal. Nor does the fact that ARIAD is defending its patent in a reexamination or budgeted to sue one company mean that ARIAD has similar reserves to fund litigation against Amgen, the merits of which litigation it has never investigated.

Amgen's suggestion that interlocutory appeal should be denied because Amgen now claims that it will act as a benevolent "shepherd" (D.I. 89 at 14) who is willing to bankroll ARIAD's final clinical trials for AP23573 is as disingenuous as it is self-serving. The Court should not permit Amgen to cause ARIAD the significant financial hardship that would result from years of patent litigation simply so that Amgen can exploit the very hardship it has created to obtain an upside stake in AP23573. To do so would allow Amgen to take undeserved advantage of more than a decade of cutting-edge research by ARIAD scientists that is now on the verge of being realized in a commercial product with enormous potential for health benefits. Nor should Amgen be permitted to bully ARIAD into granting it a covenant not to sue simply to extricate itself from litigation it never sought.

The Declaratory Judgment Act was crafted to ensure that a party confronting a genuine, concrete threat of suit would not be prevented from seeking to clarify its rights. It was not intended to allow a large company to bully a smaller rival into granting undeserved commercial concessions in order to free itself of the financial burdens of patent litigation that it never threatened to initiate.

## III.  CONCLUSION

For the foregoing reasons, ARIAD respectfully requests that the Court certify its order denying ARIAD's motion to dismiss for appeal pursuant to 28 U.S.C. § 1292(b).

ASHBY & GEDDES

/s/ John G. Day
Steven J. Balick (I.D. No. 2114)
John J. Day (I.D. No. 2403)
Tiffany Geyer Lydon (I.D. No. 3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
Telephone:   (302) 654-1888
Facsimile:    (302) 654-2067

Counsel for Defendant
Ariad Pharmaceuticals, Inc.

- 15 -

Of Counsel:

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199

Dated:  October 17, 2006
174270.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2006, the attached **DEFENDANT**

**ARIAD PHARMACEUTICALS, INC.'S REPLY MEMORANDUM OF LAW IN**

**SUPPORT OF ITS MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C.**

**§ 1292(b)** was served upon the below-named counsel of record at the address and in the manner

indicated:

| | |
|---|---|
| Melanie K. Sharp, Esquire<br>Young Conaway Stargatt & Taylor LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391 | <u>BY HAND and VIA ELECTRONIC MAIL</u> |
| Marcus E. Sernel, Esquire<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, IL 60601-6636 | <u>VIA ELECTRONIC MAIL</u> |
| J. Drew Diamond, Esquire<br>Kirkland & Ellis LLP<br>777 South Figueroa Street<br>Los Angeles, CA 90017-5800 | <u>VIA ELECTRONIC MAIL</u> |

*/s/ John G. Day*
_____
John G. Day