# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware Corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-259-KAJ |
| v. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ARIAD PHARMACEUTICALS, INC.'S RENEWED MOTION TO DISMISS FOR FAILURE TO NAME NECESSARY AND INDISPENSABLE PARTIES OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDING.................................................1

II.   SUMMARY OF ARGUMENT .................................................................1

III.  STATEMENT OF FACTS .....................................................................3

IV.   ARGUMENT......................................................................................6

    A.    ARIAD'S RENEWED MOTION TO DISMISS SHOULD BE DENIED
        AS AN UNTIMELY MOTION FOR REARGUMENT .......................................6

    B.    IF CONSIDERED ON THE MERITS, ARIAD'S RENEWED MOTION
        TO DISMISS SHOULD BE DENIED. ....................................................8

        1.    The Court Properly Found that ARIAD Has Been Granted All
             Substantial Rights In The '516 Patent and that the Institutions Are
             Not Necessary Parties. ............................................................8

        2.    Even If Necessary, The Institutions Are Not Indispensable Parties
             And This Case Can Proceed In Their Absence...........................14

        3.    If Necessary And Indispensable Parties, The Institutions Are
             Subject To Personal Jurisdiction In Delaware. ...........................19

    C.    THIS CASE WAS PROPERLY BROUGHT IN DELAWARE AND
        SHOULD NOT BE TRANSFERRED...................................................20

        1.    Amgen's Choice of Forum Is Entitled to Deference. ................................22

        2.    The Other Relevant Factors Militate Against Transfer..............................23

             (a)    Private Interest Factors. ................................................23

             (b)    Public Interest Factors..................................................26

V.    CONCLUSION................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Ace Capital v. Varadam Foundation,*
   392 F. Supp. 2d 671 (D. Del. 2005)...................................................................... 20, 21, 27

*Affymetrix, Inc. v. Synteni, Inc.,*
   28 F. Supp. 2d 192 (D. Del. 1998)................................................................................ 28

*Allergan, Inc. v. Alcon Labs., Inc.,*
   No. C.A. 02-1682-GMS, 2003 WL 473380 (D. Del. 2003) ........................................ 28

*Argos v. Orthotec LLCD,*
   304 F. Supp. 2d 591 (D. Del. 2004)........................................................................ 24, 25

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.,*
   434 F.3d 1336 (Fed. Cir. 2006).............................................................................. 10, 11

*BAE Systems v. Eclipse Aviation Corp.,*
   224 F.R.D. 581 (D. Del. 2004) .......................................................................... 21, 24, 25

*Brambles USA, Inc. v. Blocker,*
   735 F. Supp. 1239 (D. Del. 1990).................................................................................. 7

*Brunswick Corp. v. Precor Inc.,*
   No. 00-691-GMS, 2000 WL 1876477 (D. Del. 2000)................................................... 28

*Cf. Vaupel Textilmaschinen KG v. Meccanica,*
   944 F.2d 870 (Fed. Cir. 1991).................................................................................... 12

*Chase Manhattan Bank v. Freedom Card, Inc.,*
   265 F. Supp. 2d 445 (D. Del. 2003).............................................................................. 27

*Coleman v. State Farm Mutual Auto. Ins. Co.,*
   No. Civ.A. 03-485-KAJ, 2004 WL 758338 (D. Del. 2004) ................................... 21, 23

*Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.,*
   142 F.3d 1266 (Fed. Cir. 1998)....................................................................... 14, 15, 18

*Datex-Ohmeda Inc. v. Hill-Rom Services, Inc.,*
   185 F. Supp. 2d 407 (D. Del. 2002)............................................................................. 28

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.,*
   42 F. Supp. 2d 385 (D. Del. 1999)................................................................................. 7

*Dex Products, Inc. v. Houghteling,*
   No. C 05-05126 SI, 2006 WL 1751903 (N.D. Cal. 2006)..................................... 14, 16

*E.I. Dupont de Nemours & Co. v. Diamond Shamrock Corp.,*
   522 F. Supp. 588 (D. Del. 1981) ................................................................................ 28

*Erbamont v. Cetus Corp.,*
   720 F. Supp. 387 (D. Del. 1989) ...................................................................... 15, 18

*Gardiner v. Virginia Islands Water & Power Auth.,*
   145 F.3d 635 (3d Cir. 1998) .......................................................................... 15, 18

*General Signal Corp. v. Applied Materials, Inc.,*
   No. Civ. A. 94-461-JJF, 1995 WL 469620 (D. Del. 2004) ............................. 22

*HFTP Investments, L.L.C. v. ARIAD Pharmaceuticals, Inc.,*
   752 A.2d 115 (Del. Ch. 1999) ......................................................................... 21

*In re Cambridge Biotech Corp.,*
   186 F.3d 1356 (Fed. Cir. 1999) ...................................................................... 15

*In re TCW/Camil Holding L.L.C.,*
   No. 03-10717, 03-53929, 03-1154-SLR, 2004 WL 1043193 (D. Del. 2004) ................. 21

*Intuitive Surgical, Inc. v. Computer Motion, Inc.,*
   214 F. Supp. 2d 433 (D. Del. 2002) ................................................................ 12

*Motorola Inc. v. PC-TEL, Inc.,*
   58 F. Supp. 2d 349 (D. Del. 1999) .................................................................. 27

*Nilssen v. Everbrite, Inc.,*
   No. Civ.A. 00-189-JJF, 2001 WL 34368396 (D. Del. 2001) ......................... 28

*Paige v. Philadelphia Housing Auth.,*
   No. Civ. A. 99-CV-497, 2002 WL 500677, at *8 (E.D. Pa. Mar. 28, 2002) .................... 14

*Pirelli Cable Corp.,*
   988 F. Supp. 424 (D. Del. 1998) ...................................................................... 7

*Praxair, Inc. v. ATMI, Inc.,*
   No. Civ. 03-1158-SLR, 2004 WL 883395 (D. Del. 2004) ......................... 24, 25

*Rossman v. State Farm Mutual Automobile Ins. Co.,*
   832 F.2d 282 (4th Cir. 1987) ......................................................................... 19

*Rude v. Westcott,*
   130 U.S. 152 (1889) ........................................................................................ 12

*Sony Electronics, Inc. v. Orion IP, LLC,*
   No. C.A. 05-255(GMS), 2006 WL 680657 (D. Del. 2006) ........................... 28

iii

*Speedplay, Inc. v. Bebop, Inc.*,
    211 F.3d 1245 (Fed. Cir. 2000) ......................................................... 11

*SRU Biosystems v. Hobbs*,
    No. Civ. 05-201-SLR, 2005 WL 2216889 (D. Del. 2005) ............................. 20, 22, 24, 25

*Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*,
    No. Civ. 04-852-SLR, 2005 WL 735880 (D. Del. 2005) ................................. 28

*Szabo v. CSX Transp., Inc.*,
    No. Civ.A. 05-4390, 2006 WL 263625 (E.D.Pa. 2006) .................................. 21

*Textron Innovations Inc. v. Toro Co.*,
    No. Civ.A. 05-486 GMS, 2005 WL 2620196 (D. Del. 2005) ........................... 24

*The Capital Group Cos., Inc. v. Armour*,
    No. Civ.A. 422-N, 2004 WL 2521295 (Del. Ch. 2004) .................................. 19

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*,
    No. Civ. A. 04-360 JJF, 2005 WL 441077 (D. Del. 2005) ................................ 22, 23, 25

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891) ..................................................................... 12

**Statutes**

28 U.S.C. § 1292(b) .......................................................................... 1, 21

28 U.S.C. § 1404(a) .......................................................................... 4

## I.     NATURE AND STAGE OF THE PROCEEDING

Plaintiffs (collectively referred to as the "Amgen Entities" or "Amgen") filed a Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement on April 20, 2006.  Amgen assented to ARIAD's request for a 30-day extension to answer or otherwise plead, and ARIAD then filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim for which Relief May Be Granted, and Failure to Join Indispensable Parties on June 14, 2006.  After full briefing of the motion to dismiss, the Court heard oral argument on the original motion to dismiss on September 11, 2006. Ruling from the bench, the Court denied ARIAD's motion to dismiss, and also denied ARIAD's pending motions to stay discovery and to quash a subpoena served by Amgen on Eli Lilly.   ARIAD has now filed follow-on motions to both aspects of the already-denied original motion to dismiss:  (1) a motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) with respect to the issue of whether this Court has subject matter jurisdiction, and (2) the instant "Renewed Motion to Dismiss" that renews ARIAD's indispensable party arguments from its original motion to dismiss, and alternatively seeks to transfer the case to the District of Massachusetts.

## II.     SUMMARY OF ARGUMENT

This Court properly denied ARIAD's motion to dismiss at the September 11 hearing.  In reaching its decision, the Court carefully considered ARIAD's 38 pages of briefing and nearly two hours of oral argument.  The Court dismissed the motion without prejudice and left open a narrow window for reconsideration if "some further evidence … would come to light that would demonstrate something different on this record than what I think I'm seeing right now." D.I. 70 at 82-83.  ARIAD's Renewed Motion to Dismiss repeats the same, already-rejected arguments and merely pays lip service to meeting the

1

Court's exception for reconsideration.   In reality, ARIAD's "Renewed Motion" is a motion for reargument, filed after the 10-day window for such motions, and should be denied as untimely without consideration of the merits.

If the merits of the Renewed Motion are considered, the Court should deny the Renewed Motion for the same reasons that it denied ARIAD's first motion to dismiss. This Court properly found that ARIAD **has** been granted all substantial rights in the '516 patent, and thus this action can proceed against ARIAD alone.   ARIAD has substantial rights evidencing a complete transfer -- the right to indulge infringement (via sub-licensing), the right to sue, and the right to defend declaratory judgment actions, among others.   Indeed, as the Court noted in denying ARIAD's motion to dismiss, the Institutions agreed that ARIAD can defend declaratory judgment actions on its own.

Even if this Court were to reverse course and find that the Institutions have retained substantial rights, this merely means that the Institutions are necessary parties -- not that the Institutions are indispensable and that the action must be dismissed.   ARIAD conflates the concepts of necessary parties and indispensable parties.   As Amgen demonstrated in opposition to ARIAD's motion to dismiss, the Institutions are not indispensable parties -- their interests are adequately represented by ARIAD in this action just as they have been in many other proceedings involving the '516 patent.

Furthermore, even if ARIAD proves that the Institutions are both necessary and indispensable, the Institutions are subject to personal jurisdiction in Delaware and, therefore, can be joined as parties if required.   The Institutions are subject to personal jurisdiction because they consented in their agreement with ARIAD to be joined in litigation in **any** forum in which ARIAD brings suit.   Delaware was an eminently

foreseeable forum in which ARIAD might choose to sue for an action relating to the '516 patent -- and so the Institutions must have foreseen this possibility.

ARIAD's motion to transfer the case to the District of Massachusetts should also be denied. Amgen, a Delaware corporation, has properly brought this action in Delaware against ARIAD, also a Delaware corporation, and this choice should not be disturbed. ARIAD cannot be heard to complain about defending a suit in this Court when it seeks to gain the benefits of Delaware law through its incorporation here. The other public and private interest factors that courts look at to evaluate transfer -- convenience of the parties and witnesses, location and availability of documents and witnesses, etc. -- do not overcome the heavy presumption in favor of respecting Amgen's choice to sue ARIAD in their state of incorporation.

## III.    STATEMENT OF FACTS

Although ARIAD purports to present "a more complete factual record" to support its Renewed Motion, it does not even include a factual section in its brief in violation of Delaware Local Rule 7.1.3(c)(1)(E). ARIAD's omission is telling: it presents no new facts. Instead, it simply makes the same arguments about the same provisions of the Exclusive License Agreement that were already considered by the Court. ARIAD has done nothing more than exhume and repackage these previously-rejected arguments despite having had nearly a full month to gather any "further evidence … that would demonstrate something different on this record" (D.I. 70 at 82-83), and despite having obviously taken the opportunity to contact and work with the Institutions to attempt to locate any such available "further evidence."

To the extent that "facts" can be gleaned from ARIAD's arguments, these facts were presented by ARIAD in its prior briefing and at oral argument and weighed by the

Court. In reaching its decision denying ARIAD's motion to dismiss, this Court carefully considered extensive briefing and argument regarding the relevant provisions of ARIAD's Exclusive License Agreement. This Court correctly concluded:

> What I'm seeing right now is the grant of substantially all rights associated with the patent. That is, ARIAD has the right to sublicense, ARIAD has the right to enforce, ARIAD has the contractual right to be the sole representative in a DJ action.[1]

At the heart of ARIAD's Renewed Motion to Dismiss is the contention that the Institutions are necessary and indispensable parties because they have retained substantial rights in the '516 patent.[2] In its Opening Memorandum of Law in Support of its Renewed Motion to Dismiss, ARIAD articulates four points in support of this contention. ARIAD already presented the facts and arguments in support of each point in prior briefing and at oral argument.

ARIAD made its first point -- that the Institutions are necessary and indispensable parties because they retained the right to "indulge" infringement[3] -- in both the prior briefing and at the September 11 hearing. D.I. 14 at 14-15; D.I. 31 at 16-17; D.I. 70 at 43:25-45:15; 68:4-8. ARIAD bases its argument upon Sections 7.4 and 7.7 of the Exclusive License Agreement; the same provisions that were previously presented to this Court.[4]

---

[1] D.I. 70 at 83:2-7.

[2] D.I. 84, Defendant ARIAD Pharmaceuticals, Inc.'s Opening Memorandum of Law in Support of its Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a) [hereinafter "ARIAD's Brief"], at 9-19.

[3] ARIAD's Brief at 9-11.

[4] These facts were also briefed and argued by Amgen at the September 11, 2006 hearing. D.I. 21 at 25, 27-28; D.I. 70 at 48:15-49:13.

ARIAD's second point – that the Institutions are necessary and indispensable parties because they retained the right to control ARIAD's assignments of rights[5] -- has also already been vetted with this Court. D.I. 14 at 14-15; D.I. 31 at 17. This point relies upon Section XI of the Exclusive License Agreement, which was already presented to this Court in briefing and at the hearing.[6]

ARIAD's third point is that the Institutions are necessary and indispensable parties because they retained other key rights, but ARIAD concedes that these rights are "not … individually dispositive."[7]   In support of this point, ARIAD cites several provisions of the Exclusive License Agreement, the entirety of which was already before the Court.   All of the provisions of the Agreement upon which ARIAD relies were specifically called out in previous briefing or could have been if ARIAD thought they were important. D.I. 14 at 14-15; D.I. 21 at 26.

ARIAD's fourth point -- that the Institutions' right to take over a declaratory judgment action in certain circumstances does not change their status as necessary and indispensable parties[8] -- merely rehashes ARIAD's arguments about Section 7.5 of the Exclusive License Agreement.   Again, these arguments have already been before this

---

[5]    ARIAD's Brief at 11-12.

[6]    This fact was also briefed and argued by Amgen at the September 11, 2006 hearing. D.I. 21 at 26-27; D.I. 70 at 49:3-13.

[7]    ARIAD's Brief at 12-15.

[8]    ARIAD's Brief at 15-19.

court in both the briefing and at the September 11, 2006 hearing.[9]  D.I. 14 at 15; D.I. 31 at 18; D.I. 70 at 68:12-70:14.

ARIAD's new declaration from MIT's Lita Nelsen introduces no new facts that support its motion.  ARIAD does not even attempt to identify any new supporting facts from the Nelsen Declaration.  Ms. Nelsen actually supports *Amgen's* position by making clear that (a) ARIAD now even controls the prosecution of the licensed patents and (b) Section 7.5 of the License Agreement undermines ARIAD's claim that the Institutions would be prejudiced if this action went forward against ARIAD alone.  D.I. 86 at ¶¶ 18, 21.  Aside from these statements, Ms. Nelsen adds nothing new to the analysis.

## IV.    ARGUMENT

### A.    ARIAD'S RENEWED MOTION TO DISMISS SHOULD BE DENIED AS AN UNTIMELY MOTION FOR REARGUMENT

ARIAD's Renewed Motion to Dismiss simply regurgitates arguments that were previously presented to and rejected by this Court.  This is really a motion for reargument masquerading as a "Renewed Motion to Dismiss."  Since ARIAD filed outside the 10-day window for such motions, and does not even attempt to satisfy this Court's narrow exception for filing a new motion, it should be denied as untimely and moot.

Pursuant to Delaware Local Rule 7.1.5, "a motion for reargument shall be served and filed within 10 days after the filing of the Court's opinion or decision."  While the decision to grant a motion for reargument lies within the discretion of district courts, such

---

[9]    This fact was also briefed and argued by Amgen at the September 11, 2006 hearing. D.I. 21 at 25-26; D.I. 70 at 46:20-48:14.  Additionally, with respect to this section, this Court stated that "[t]he language specifically pointed out to me as the replacement language for 7.5 in the agreement that effectively assigns these rights does note that there is some reservation of right if ARIAD fails to do reasonable things to defend a DJ action, but it appears to me that that amended language was intended to, and the legal effect is it in fact does, strengthen ARIAD's position to be enforcing and defending the rights associated with this patent all by itself, without anybody else in the mix." D.I. 70 at 83:8-16.

motions should only be granted sparingly. *See Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 42 F. Supp. 2d 385, 419 (D. Del. 1999). Reargument should not be granted where it would merely "allow wasteful repetition of arguments already briefed, considered and decided." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990); *see also Pirelli Cable Corp.*, 988 F. Supp. 424, 445-46 (D. Del. 1998) ("This procedural mechanism should not be abused to allow a never ending polemic between litigants and the Court."). As demonstrated in the Statement of Facts above, ARIAD's Renewed Motion merely presents a "wasteful repetition of arguments already briefed, considered and decided," and does so two weeks after the deadline for filing a motion for reargument.

The Court denied ARIAD's original motion to dismiss with a detailed explanation of its reasoning citing the relevant provisions of the Exclusive License Agreement, but did so without prejudice and defined the circumstances that would justify a renewed motion:

> That brings me to the last issue. That is, do I have the right parties in front of me? And I am going to deny the motion to dismiss without prejudice on this point. It may be that there is some further evidence that would come to light that would demonstrate something different on this record that what I think I'm seeing right now....
>
> ....
>
> Now, I just note I'm doing that without prejudice because it's possible, it's just possible that I missed something or there is something out there that hasn't been put in front of me, and I recognize I don't have the other parties to this agreement in front of me. I don't have like MIT, Whitehead and other folks in here, and who is to say I won't....

D.I. 70 at 82-83. As demonstrated in the Statement of Facts, ARIAD does not even attempt to identify "further evidence" or "something different" or something the Court "missed" to justify its motion -- it simply recycles the same arguments about the same

contractual provisions.  The declaration of Ms. Nelsen only underscores the lack of anything new, as she merely echoes the arguments that ARIAD has already made and this Court has already rejected.  Amgen respectfully suggests that ARIAD has not come close to meeting either the letter or the spirit of the Court's "without prejudice" denial.

Because ARIAD's Renewed Motion does not satisfy the Court's narrow exception justifying a renewed motion, it is an untimely motion for reargument under Delaware Local Rule 7.1.5 and should be denied on this basis.

### B.    IF CONSIDERED ON THE MERITS, ARIAD'S RENEWED MOTION TO DISMISS SHOULD BE DENIED.

This Court properly denied ARIAD's motion to dismiss ruling that the Institutions are not necessary parties because they transferred all substantial rights to ARIAD.  The Court correctly ruled that this declaratory judgment action can proceed against ARIAD alone, just as contemplated in the Agreement between ARIAD and the Institutions.  The Renewed Motion presents the same arguments based upon the same evidence and should meet the same fate for the same reasons.

But even if ARIAD can clear this necessary party hurdle the second time around -- which it cannot -- then ARIAD still fails to meet its burden to prove that the Institutions are *indispensable* parties.  In fact, the Institutions are dispensable since ARIAD can fully represent their interests in this case.  Finally, even if this Court were to find that the Institutions are indispensable, the Institutions can be joined: personal jurisdiction is proper over the Institutions, who consented to jurisdiction here through their Agreement with ARIAD.

### 1.    The Court Properly Found that ARIAD Has Been Granted All Substantial Rights In The '516 Patent and that the Institutions Are Not Necessary Parties.

8

ARIAD's main argument is the contention that it does not have the exclusive right to indulge infringement. ARIAD's Brief at 3-4 (¶¶ 2-4); *id.* at 9-11. ARIAD argues that it did not receive this right because the Institutions have a residual right to sue. But, as ARIAD concedes, the Institutions' ability to sue for infringement only kicks in if and when ***"ARIAD has elected not to act."*** *Id.* at 10. Since the initial decision to sue lies with ARIAD, and since ARIAD can circumvent a suit through its unrestricted sublicensing right, the Institutions merely retain the "right" to exercise whatever enforcement authority ARIAD chooses to give them. The Court considered these specific rights[10] and correctly concluded that ARIAD has all substantial rights: "What I'm seeing right now is the grant of substantially all rights associated with the patent. That is, ARIAD has the right to sublicense, ARIAD has the right to enforce, ARIAD has the contractual right to be the sole representative in a DJ action." D.I. 70 at 83.

That ARIAD -- and not the Institutions -- has the right to indulge infringement is clear from the various options available to ARIAD:

- Under Section 2.8, which gives ARIAD the right to "enter into sublicenses for the privileges and licenses hereunder," ARIAD can approach a third party and negotiate a sublicense. ARIAD admits that under this provision it "generally has the right to grant sublicenses to any third party covering past or future activities." ARIAD's Brief at 11. The only limitations on this authority that ARIAD has pointed out are that licensed products sold or used in the United States shall be manufactured substantially in the United States, and that MIT's consent is required in order for ARIAD to receive non-cash payments in consideration for any sublicense. ARIAD's

---

[10] D.I. 14 at 15 (noting the Institutions' "right to sue alleged infringers after six months if ARIAD has not already done so"); D.I. 21 at 27 (noting that the Institutions' residual right to sue was unimportant in light of ARIAD's sublicensing rights, and that ARIAD's right to sue and ability to sublicense gave it the sole power to indulge infringement); D.I. 31 at 16-17 (ARIAD's argument in reply that the Institutions retained the right to indulge infringement because of their "exclusive right to sue" if ARIAD decides not to and because ARIAD's sublicensing authority is curtailed in that circumstance).

9

Brief at 13; *see also id.* at 12 (admitting that these limitations are "not … dispositive").

- Alternatively, ARIAD might choose to sue the infringer. Section 7.2 of the Agreement gives ARIAD "the right … to prosecute at its own expense any such infringement of the Patent Rights." D.I. 86 at Ex. B § 7.2. ARIAD can proceed as the sole plaintiff in such a suit, or alternatively can choose to add the Institutions as plaintiffs. *Id.* ARIAD can choose to litigate such a suit to its conclusion, or if ARIAD chooses to enter into a settlement, consent judgment or voluntary final disposition, the Institutions may not unreasonably withhold their consent. *Id.* The Institutions are thus in essentially the same position as the assignor in *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006), whom the Federal Circuit agreed had only an "insignificant" right to participate in lawsuits, having retained only the ability to participate monetarily and not the right to make decisions on litigation strategy. *Id.* at 1342.

- Even if ARIAD elects not to sue, it can preempt the possibility of suit by the Institutions by granting a sublicense at any point before or during the six-month window specified in Section 7.4. According to that provision of the Agreement, the Institutions may only sue if ARIAD has elected not to sue within six months of being notified of alleged infringement or, prior to six months, has notified the Institutions of its intention not to bring suit. *See* D.I. 70 at 48-49.

ARIAD then has a fourth option: it can choose to **allow** the Institutions the option of bringing their own infringement suit. But it is obvious from the various options outlined above that ARIAD has complete control over whether the Institutions ever get to exercise this "right." That is, ARIAD gets to decide both whether a putative infringer will be sued at all, and if so, who will be a party to such a suit. What ARIAD calls the "crucial right" of the Institutions to bring suit, then, is nothing more than the "right" to sue an alleged infringer if and only if ARIAD chooses to allow them to do so. An assignor's residual right to sue is of minimal significance where, as here, the assignor does not retain supervisory or veto power over the assignee's ability to sublicense. *Aspex*, 434 F.3d at 1342; *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir.

2000) (assignors' right to sue if the assignee chose not to was "illusory," where, as here, the assignee could "render that right nugatory by granting the alleged infringer a royalty-free sublicense.").

Section 7.7 of the Agreement, which ARIAD describes as a restriction on ARIAD's sublicensing rights, does not change the analysis. ARIAD acknowledges that Section 7.7 only applies "when MIT or Whitehead has filed suit." ARIAD's Brief at 11; *see also* D.I. 86 at ¶ 13 (Section 7.7 applies "[i]n the case of a suit by MIT or the Whitehead Institute"). As discussed in detail above, the Institutions can only sue if and when ARIAD decides to let them do so. Thus, ARIAD decides whether Section 7.7 ever kicks in. Up until the point at which ARIAD allows the Institutions to exercise the ability to sue, ARIAD retains its unrestricted sublicensing authority, as well as its ability to sue on its own, and Section 7.7 does not apply. Thus, Section 7.7 does not limit ARIAD's right to indulge infringement.

ARIAD's focus on its right to assign is misplaced.[11] In fact, ARIAD is simply wrong when it asserts that ARIAD's rights "must include ... the unfettered right to freely assign the Agreement" in order for all substantial rights to have been transferred. ARIAD's Brief at 5. The Federal Circuit has, in fact, noted that limitations on the ability to assign are "not controlling" where the assignee has a "virtually unfettered right to sublicense," which ARIAD undeniably has. *Aspex*, 434 F.3d at 1342.

---

[11] Again, the parties already briefed the issue of the right to assign. D.I. 14 at 15 (noting that ARIAD had "the right to refuse assignment of ARIAD's rights to third parties); D.I. 21 at 26-27 (citing Federal Circuit caselaw to the effect that the right to consent to an assignment is not a substantial right in light of an unrestricted right to sublicense); D.I. 31 at 17 (replying to Amgen's argument). ARIAD repeats the same arguments here -- ARIAD cites the same three Federal Circuit cases and adds only one new cite to a 1989 district court decision. *Compare* D.I. 31 at 17 *with* ARIAD's Brief at 12.

ARIAD's reliance upon rights retained by the Institutions that it acknowledges are "not … individually dispositive" is similarly unavailing. ARIAD's Brief at 12-14. These rights are not significant and do not change the analysis:

- The right to practice the invention non-commercially is not a substantial right.[12] *See Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 440 (D. Del. 2002).

- The responsibility for "prosecution, filing and maintenance of all Patent Rights" is not a substantial right.[13] *Cf. Vaupel Textilmaschinen KG v. Meccanica*, 944 F.2d 870, 875 (Fed. Cir. 1991) (licensor's retained right to obtain patents in other countries did not prevent finding that all substantial rights were transferred). Moreover, as ARIAD acknowledges, the Institutions are required to afford ARIAD the opportunity to participate in this process and, in any event, the Institutions have given ARIAD the lead on patent prosecution matters. ARIAD's Brief at 13; D.I. 86 at ¶ 6.

- The fact that Licensed Products leased or sold in the United States must be manufactured substantially in the United States, and that ARIAD must obtain written consent in order to receive payment in consideration for sublicenses in a form other than cash, are so insignificant that ARIAD did not even mention these provisions of the Agreement in either of its two previous briefs.

- The fact that MIT receives royalties under the License Agreement is not a substantial right.[14] *Vaupel*, 944 F.2d at 875 (citing *Rude v. Westcott*, 130 U.S. 152, 162-63 (1889) (retention of portion of "sales, royalties, or settlements, or other sources" does not limit the assignment of patent)).

- The fact that ARIAD's license can be terminated if it fails to use commercially reasonable efforts to develop or license the intellectual property covered by the Agreement is not a substantial right. *Vaupel*, 944 F.2d at 875 (termination provisions "entirely consistent with an assignment"; assignment "may be either absolute, or by way of mortgage and liable to be defeated by non-performance of a condition subsequent") (citing *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891)). Again, this

---

[12] ARIAD already made, and Amgen responded to, this argument in the first round of briefing. D.I. 14 at 14; D.I. 21 at 26.

[13] ARIAD already made this argument in the first round of briefing. D.I. 14 at 14-15.

[14] ARIAD already made this argument in the first round of briefing. D.I. 14 at 15.

argument is so insignificant that ARIAD did not even raise it in the first round of briefing.

Thus, these rights are no more compelling in the aggregate than they are individually.

Finally, ARIAD spends nearly *five pages* of its brief discussing a single, one-sentence provision of the License Agreement, Section 7.5.  *See* ARIAD's Brief at 15-19.  Section 7.5 contemplates that ARIAD alone can defend declaratory judgment actions just like this one.  ARIAD's extensive protestation about Section 7.5 while questioning whether the provision has "any relevance to the indispensable party analysis at all" is revealing: ARIAD clearly understands that Section 7.5 is consistent with the notion that the parties intended to transfer all substantial rights.[15]  This Court correctly found that Section 7.5 supports the conclusion that all substantial rights have been transferred to ARIAD.  D.I. 70 at 83 (finding that the amendment to Section 7.5 "was intended to, and the legal effect is it in fact does, strengthen ARIAD's position to be enforcing and defending the rights associated with this patent all by itself, without anybody in the mix").

ARIAD's Renewed Motion offers nothing more than the same arguments that its original motion did.  Amgen respectfully requests that the Court find (again) that the Institutions are not necessary parties[16] and deny ARIAD's Renewed Motion on this basis.

---

[15]  In highlighting Section 7.5 as a key provision in its original memorandum of law, ARIAD argued that "the patentees' rights are so significant that upon commencement of a declaratory judgment action ... the patentees, at their option, may take over the defense of the litigation at their own expense."  D.I. 14 at 15.  As Amgen later pointed out, however,  Section 7.5 was amended such that the Institutions *cannot* intervene in such a suit unless ARIAD "fails to take reasonable steps to defend" it.  D.I. 21 at 26.  Now that it is clear that ARIAD, rather than the Institutions, is in the driver's seat with respect to defending such litigation, ARIAD attempts to recast this right as meaningless and irrelevant.

[16]  As stated in Amgen's opposition to ARIAD's motion to dismiss, even if MIT and Whitehead are found to be necessary parties, this same conclusion should not apply to Harvard, because

>   2.    **Even If Necessary, The Institutions Are Not Indispensable Parties And This Case Can Proceed In Their Absence.**

Even if the Institutions are necessary parties -- which they are not -- they are dispensable under Rule 19(b) because ARIAD can fully represent their interests, as is contemplated by the license agreement and as ARIAD has done in all previous actions pertaining to the '516 patent.

If a party cannot be joined under Rule 19(a), Rule 19(b) provides that "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus being regarded as indispensable." The party raising the defense of failure to join an indispensable party has the burden to show that the presence of the party who is not joined is necessary for a just adjudication. *See Paige v. Philadelphia Housing Auth.*, No. Civ. A. 99-CV-497, 2002 WL 500677, at *8 (E.D. Pa. Mar. 28, 2002) (Exhibit 1). Although ARIAD argues that an "exclusive licensee without all substantial rights cannot be the sole defendant in a declaratory judgment action" (ARIAD's Brief at 19), courts have allowed exclusive licensees without all substantial rights to be the sole defendants in declaratory judgment actions. *See Dainippon Screen Manufacturing Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272-73 (Fed. Cir. 1998); *Dex Products, Inc. v. Houghteling*, No. C 05-05126 SI, 2006 WL 1751903, at *5-7 (N.D. Cal. 2006) (Exhibit 2). Likewise here, even if ARIAD is found to lack all substantial rights, the analysis under 19(b) must be applied *before* it can be concluded that the Institutions are indispensable parties.

---

Harvard transferred an even greater number of rights than MIT or Whitehead did, notably retaining *no* rights to bring an infringement action, intervene in a declaratory judgment action, or consent to an assignment of rights. D.I. 21 at 30 n.67.

The question whether a party is indispensable turns on, *inter alia*, whether a judgment rendered in a party's absence would be prejudicial to that party or the existing parties and whether a judgment in the party's absence would be adequate. *Gardiner v. Virginia Islands Water & Power Auth.*, 145 F.3d 635, 641 (3d Cir. 1998); *see also* D.I. 21 at 28-30.[17] The prejudice to an absent party is mitigated where that party's interests are "adequately protected by those who are present." *Dainippon*, 142 F.3d at 1272; *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1373 (Fed. Cir. 1999) (no prejudice when the interests of the present and absent parties were aligned).

That the Institutions' interests are adequately protected by ARIAD in this case is undeniable, for several reasons.  First, the Institutions have contractually agreed to allow ARIAD to represent them (and thus to protect their interests) in actions just like this one. An absent party suffers no prejudice if it has previously indicated that it entrusts another party to handle its litigation.  *See Erbamont v. Cetus Corp.*, 720 F. Supp. 387, 394 (D. Del. 1989).  The license agreement between ARIAD and the Institutions specifically contemplates ARIAD bringing and defending suits on its own.  D.I. 86 at Ex. D § 2.3.1 (amended version of Section 7.5 of the Agreement).  In fact, through the second amendment to the license agreement, the Institutions ceded even greater rights to ARIAD to defend a declaratory judgment on its own.  *Compare id. with* D.I. 86 at Ex. B § 7.5 (original version of Section 7.5 of the Agreement).  As noted above, this Court has

---

[17]  This list of factors is not exhaustive.  Courts also consider the degree to which this prejudice might be avoided by the shaping of relief and whether the plaintiff would have an alternate remedy if the action is dismissed, two points not addressed by ARIAD.  *See Gardiner*, 145 F.3d at 640.  The shaping of relief carries little weight in the context of declaratory patent litigation "because the relief sought in such a suit does not depend upon the patentee's presence in court." *Dainippon*, 142 F.3d at 1272-73.  Whether a party is indispensable under Rule 19(b) is a question of regional circuit law. *Id.* at 1269.

already concluded that the second amendment was specifically intended to -- and did -- "strengthen" ARIAD's ability to act in the Institutions' stead. D.I. 70 at 83. The only right retained by the Institutions in this regard was the ability to intervene and take over defense of a declaratory judgment action if ARIAD "fails to take reasonable steps to defend the action in a timely manner." D.I. 86 at Ex. D § 2.3.1. As Ms. Nelsen indicated, this eliminates any risk of prejudice to the Institutions as the result of a declaratory judgment action that proceeds with ARIAD as the sole defendant. D.I. 86 at ¶ 21 (describing Section 7.5 of the Agreement as specifically designed "[t]o prevent ARIAD from folding its cards and terminating the litigation on grounds that provide no benefit to the Institutions, without the involvement of the Institutions in the decision-making process").

Second, ARIAD and the Institutions have shared counsel in all proceedings regarding the '516 patent -- a clear demonstration that both parties believe that their interests are aligned. *See Dex Products*, 2006 WL 1751903 at *6. ARIAD and the Institutions have been represented by common counsel in the recent infringement action against Lilly, in litigation against the United States Patent and Trademark Office brought in the Eastern District of Virginia and in reexamination proceedings before the U.S. Patent and Trademark Office. Even in this motion, the Institutions (namely the licensing office that represents them) have not made an appearance through separate counsel.

Third, ARIAD and the Institutions share a common financial interest in enforcing the '516 patent and maintaining its validity. ARIAD concedes that the parties have the overriding mutual interest "in maintaining the validity of the patent and in proving that the patent is infringed." ARIAD's Brief at 20. The argument that these interests might

16

diverge simply because this is a declaratory judgment action because of the alleged risk that ARIAD might settle on terms unfavorable to the Institutions is unconvincing.  One basic flaw in this argument is that it is purely hypothetical -- neither ARIAD nor Ms. Nelsen ever actually asserts that ARIAD's interests differ from the Institutions' in this case.  *See id.* at 21 (stating generically that "a licensee may have an interest in engaging in a business relationship with its litigation opponent that is unrelated to the intellectual property rights covered by the licensee's agreement with its university licensor"); D.I. 86 at ¶ 19 (referring to a generic "licensee" who "may" not view the financial reward to be worth the cost of declaratory judgment litigation, and might be "potentially" more amenable to settling on unfavorable terms).

The argument is also flawed because, contrary to ARIAD's position, the filing of a declaratory judgment action does not create any heightened risk that ARIAD will settle on terms that are unfavorable to the Institutions.  ARIAD, which has broad sublicensing authority under the Agreement, has the same ability to strike a side deal in conjunction with a low-cost sublicense before a declaratory judgment suit is filed that it has after one is filed.  That is, ARIAD could become aware of an alleged infringer, decide that the financial rewards to be gained through an infringement suit are not worth the cost of litigation, and proceed to reach an agreement with the alleged infringer on terms that "do not reflect the true value" of the intellectual property and do not provide the maximum potential benefit to the Institutions.  *See* ARIAD's Brief at 21; D.I. 86 at ¶ 19.  The Institutions have entrusted ARIAD with the defense of declaratory judgment actions, prosecution of patent applications, and sublicensing of the '516 patent.  The vague claim

of some hypothetical divergence of interests does not support a claim of prejudice that renders them indispensable.

The Institutions have had multiple opportunities to appear and present any substantial showing of prejudice if ARIAD defends this action. They have failed to do so, because there is no such prejudice. To the contrary, the Institutions have repeatedly affirmed their trust in allowing ARIAD to represent their interests and in agreeing to allow ARIAD to defend cases just like this one. Moreover, neither MIT's declarant nor ARIAD has explained why the Institutions cannot simply join in the action voluntarily if they are so concerned about the risk of ARIAD not looking out for their interests. *See Dainippon*, 142 F.3d at 1272 (absent party's "opportunity to intervene may be considered in calculating [any] prejudicial effect"); *Erbamont*, 720 F. Supp. at 394 ("If either company thought it would be prejudiced, it could voluntarily join this action.").

The second indispensable party consideration -- whether a judgment in the Institutions' absence would be adequate -- also supports a finding that the Institutions are dispensable parties. Because the Institutions are in contractual privity with ARIAD, they will be bound by any ruling in this case, thereby obviating the concern under Rule 19(b) as to whether this judgment would be adequate. *See Gardiner*, 145 F.3d at 642 n.6 (citing *Moore's Federal Practice*, § 132.01) (parties in privity are bound by rulings made in their absence); *see also Erbamont*, 720 F. Supp. at 394-95 (as part of analysis under 19(b), finding that there was a "strong possibility" of claim and issue preclusion based on a license agreement). ARIAD argues that the Institutions would be prejudiced if bound by this ruling, but this statement degenerates into the simple truth that any party on the losing side of a case is "prejudiced" by losing. The relevant inquiry is whether the

Institutions would be prejudiced by not being parties to the case, not whether they would be prejudiced by a finding of invalidity or non-infringement of the '516 patent.

Consequently, even if the Institutions are necessary parties under Rule 19(a), they are not indispensable under Ruule 19(b) and do not need to be joined to this litigation.

### 3. If Necessary And Indispensable Parties, The Institutions Are Subject To Personal Jurisdiction In Delaware.

Even if this Court finds that the Institutions are necessary and indispensable parties, this suit can proceed in Delaware because this Court has personal jurisdiction over the Institutions.[18]  As an initial matter, one of the Institutions, Whitehead, is a Delaware corporation, and thus clearly subject to suit in this forum.  *See Reach & Associates, P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003).  The other two institutions, MIT and Harvard, are subject to jurisdiction in Delaware through their consent, as expressed in their Exclusive License Agreement.

A non-resident party may consent to personal jurisdiction by contract.  *The Capital Group Cos., Inc. v. Armour*, No. Civ. A. 422-N, 2004 WL 2521295, at *1 (Del. Ch. 2004) (Exhibit 3).  The Institutions, specifically MIT and Harvard, have consented to participate in suit ***anywhere in the United States****, see, e.g.,* D.I. 86 at Ex. B. §§ 7.2 and 7.6, so participation in a suit in ARIAD's state of incorporation, as well as that of Whitehead, should come as no real surprise.  Courts have found parties to have consented to personal jurisdiction under similar factual situations.  *See Rossman v. State Farm Mutual Automobile Ins. Co.*, 832 F.2d 282, 286 (4th Cir. 1987) (finding that a

---

[18]  In the event the Court finds the Institutions to be necessary and indispensable and that the parties have not consented to jurisdiction in Delaware, Amgen requests discovery with respect to the personal jurisdiction issue.  Amgen made this request in its opposition to ARIAD's original motion. D.I. 21 at 28 n.62.

non-resident company could be haled into the forum state on the basis of a contractual provision specifically promising to defend suits in any part of its policy territory, which covered the entire United States). Tellingly, although Amgen made this argument in its opposition to ARIAD's original motion to dismiss (D.I. 21 at 31-32), neither ARIAD nor the Institutions disputed that the Institutions have consented to personal jurisdiction in Delaware.

### C.    THIS CASE WAS PROPERLY BROUGHT IN DELAWARE AND SHOULD NOT BE TRANSFERRED.

Faced with the Court's denial of its original motion to dismiss, ARIAD now alternatively seeks -- nearly six months after this suit was filed -- to transfer this case to the District of Massachusetts. But this motion should also be denied. Amgen (a Delaware corporation) has brought suit against another Delaware corporation (ARIAD) to clear the air once and for all relating to ARIAD's threats of patent infringement relating to the '516 patent. ARIAD cannot overcome the heavy presumption in favor of Amgen's choice of forum, especially where that forum is the state in which ARIAD is incorporated.

As an initial matter, ARIAD largely ignores the procedural burden it faces in seeking to transfer. This Court has broad discretion to determine whether to transfer venue. *SRU Biosystems v. Hobbs*, No. Civ. 05-201-SLR, 2005 WL 2216889, at *3 (D. Del. 2005) (Exhibit 4). Because "a plaintiff's choice of forum is accorded substantial weight," however, a defendant has the burden of establishing that "the balance of convenience of the parties and witnesses *strongly favors*" the transferee forum. *Ace Capital v. Varadam Foundation*, 392 F. Supp. 2d 671, 673 (D. Del. 2005) (emphasis added). Moreover, "a transfer is not to be liberally granted." *Coleman v. State Farm*

*Mutual Auto. Ins. Co.*, No. Civ. A. 03-485-KAJ, 2004 WL 758338, at *1 (D. Del. 2004) (Exhibit 5). Therefore, defendants "must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for the court to transfer venue. *Ace*, 392 F. Supp. 2d at 673-74. ARIAD cannot show that litigating in Delaware would pose a "unique or unusual burden" on their operations, especially when it has litigated in this State before.[19]

Additionally, ARIAD's delay in moving to transfer militates against transfer. A delay in filing a motion to transfer venue "in conjunction with [a] defendant's failure to show a clear case of convenience supports [a] court's decision to deny the motion to transfer venue." *Szabo v. CSX Transp., Inc.*, No. Civ.A. 05-4390, 2006 WL 263625, at *2 (E.D. Pa. 2006) (Exhibit 6) (denying as untimely motion to transfer filed five months after the filing of the complaint); *see also BAE Systems v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 589 (D. Del. 2004) (denying transfer where defendant answered the complaint, filed the motion at bar, and filed a motion to dismiss or stay pending arbitration); *In re TCW/Camil Holding L.L.C.*, No. 03-10717, 03-53929, 03-1154-SLR, 2004 WL 1043193, at *2 (D. Del. 2004) (Exhibit 7) (denying transfer where defendant had answered complaint and filed a motion to dismiss and a motion for judgment on the pleadings, and where parties had exchanged initial disclosures). Much water has already passed under the bridge in this case: ARIAD's motion to dismiss has been briefed (and the briefing on its related motion for certification under 28 U.S.C. § 1292(b) is also complete), initial disclosures have been exchanged, initial discovery and discovery

---

[19]  ARIAD cannot claim surprise about being sued in Delaware since it has previously been subject to suit in this State. *See HFTP Investments, L.L.C. v. ARIAD Pharmaceuticals, Inc.*, 752 A.2d 115 (Del. Ch. 1999). Even in the face of prior litigation in this State, ARIAD has chosen to continue to enjoy the benefits and protections of Delaware's corporate laws.

responses have been served, third party discovery has occurred, the Court held two teleconferences and one in-court hearing, and the Court ruled on ARIAD's motion to dismiss and various discovery-related issues. If ARIAD wanted to bring a motion to transfer venue, it should have moved in the alternative with its June 14, 2006 motion to dismiss, just like it has done with the instant motion.

ARIAD cannot meet its heavy burden to transfer this case from its place of incorporation, and its too little, too late request to transfer should be denied.

### 1.    Amgen's Choice of Forum Is Entitled to Deference.

This Court has made clear that a plaintiff's choice of forum is of "paramount consideration" in a transfer analysis. *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360 JJF, 2005 WL 441077, at *2 (D. Del. 2005) (Exhibit 8). Even if a plaintiff chooses to litigate away from its principal place of business, the deference normally afforded the plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *See id.*; *SRU Biosystems*, 2005 WL 2216889 at *2. A plaintiff's incorporation in a particular state is a "rational and legitimate reason" for it to choose to litigate in that state. *Trilegiant*, 2005 WL 441077 at *2; *see also General Signal Corp. v. Applied Materials, Inc.*, No. Civ. A. 94-461-JJF, 1995 WL 469620, at*1 (D. Del. 2004) (Exhibit 9) ("[I]t is not the forum shopping of Plaintiff that brings the parties to Delaware, but the Defendant's decision to incorporate here."). Since Amgen has sued in the state in which it is incorporated,[20] ARIAD's assertion that Amgen's choice of forum should be "devalued" and that ARIAD's burden is lessened because Amgen did not file this case in California is therefore legally

---

[20]    Two other plaintiffs -- Amgen USA Inc. and Immunex Rhode Island Corporation -- are also Delaware corporations.

incorrect. ARIAD's related argument that Amgen's choice of forum is not entitled to full deference because Delaware allegedly has "no connection with the facts of the lawsuit" is factually incorrect: Amgen sells Enbrel® and Kineret® in Delaware, acts that serve as the basis for ARIAD's threats of infringement litigation. Thus, there is absolutely no basis on which to "devalue" Amgen's choice of forum, and the full burden remains on ARIAD to show that the balance of convenience and the interests of justice strongly favor transfer. *Trilegiant*, 2005 WL 441077 at *2; *see also Coleman*, 2004 WL 758338 at *1 ("Unless the balance is strongly in favor of transfer, the plaintiff's choice of forum should prevail.").

### 2.    The Other Relevant Factors Militate Against Transfer.

In addition to the fact that Amgen's choice of forum is entitled to deference as the "paramount consideration," and that acts forming the basis for Amgen's noninfringement claim have occurred in this forum, several other factors cut against ARIAD's position.

### (a)    Private Interest Factors.

With respect to the other private interest factors, ARIAD has not demonstrated that these interests "strongly favor" transfer. Amgen obviously elected to file suit in Delaware and is not inconvenienced by litigating here as opposed to in Massachusetts. Furthermore, Amgen's Cambridge, Massachusetts facility has nothing to do with the products at issue or the accused activities (Duggan Decl. ¶ 2), and there are no relevant witnesses at Immunex's Rhode Island facility.[21] Regarding the alleged travel burden on ARIAD, ARIAD's attempt to paint itself as a small, impoverished local company is

---

[21]    Moreover, ARIAD's assertion that any "former employees at Amgen's Rhode Island facility … are far more likely to be subject to the subpoena power of the District of Massachusetts than they are to be subject to the subpoena power of the District of Delaware" (ARIAD's Brief at 33) is simply unsupported speculation.

dubious: ARIAD had the resources to take on major pharmaceutical company Eli Lilly,

hiring New York-based law firm Kaye Scholer LLP to represent it in that case.  It also

recently sued the USPTO in the Eastern District of Virginia, again hiring New

York-based counsel.  And it is represented by Los Angeles-based counsel in this case.

ARIAD clearly has the resources to engage in litigation and is willing and able to pay for

travel costs when it wants to.  Furthermore, ARIAD's stated preference to litigate in

Massachusetts must be balanced against this Court's repeated pronouncements that a

company cannot seek to reap the benefits of incorporation in this state and then

effectively renounce its place of incorporation when faced with litigation here.  *See*

*Textron Innovations Inc. v. Toro Co.*, No. Civ. A. 05-486 GMS, 2005 WL 2620196, at *2

(D. Del. 2005) (Exhibit 10) ("[H]aving received the benefits of Delaware incorporation,

[defendant] cannot now complain that another corporation has chosen to sue it here.");

*SRU Biosystems*, 2005 WL 2216889 at *3 (defendants' complaints about litigating in

Delaware were outweighed by the benefits and protections defendant enjoyed as a limited

liability company in Delaware); *BAE Systems* 224 F.R.D. at 589 (denying transfer while

noting that "both parties are incorporated in Delaware and, therefore, are citizens of

Delaware"); *Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395 at *2

(D. Del. 2004) (Exhibit 11) ("By availing themselves of the advantages of Delaware's

corporate laws, defendants have voluntarily exposed themselves to the risk of suit in

Delaware. Consequently, as a matter of law and contrary to defendants' assertions,

Delaware is both parties' 'home turf.'"); *Argos v. Orthotec LLCD*, 304 F. Supp. 2d 591,

598 (D. Del. 2004) ("Given Orthotec's choice for incorporation, the court finds that it

voluntarily exposed itself to the possibility of litigation in Delaware.  Orthotec cannot

now attempt to shield itself from litigation in this forum by arguing that no conduct occurred in Delaware, that no injury was felt in Delaware, and that deposition and trial in Delaware would involve additional expense."). Given ARIAD's choice for incorporation, ARIAD has voluntarily exposed itself to suit in Delaware and cannot now attempt to shield itself from litigation in this forum by arguing that it has no operations here.

With respect to the convenience of witnesses and the location of documents, ARIAD's claims are unsubstantiated and carry no weight. To support a motion to transfer based on these considerations, the movant must specifically identify documents and witnesses that would be *unavailable for trial* in Delaware. *See Praxair,* 2004 WL 883395 at *2; *Ace,* 392 F. Supp. 2d at 676 (defendant failed to specify any witnesses who would be unable or unwilling to appear in Delaware, nor any documents that would be too burdensome to ship); *Argos,* 304 F. Supp. 2d at 598 (defendant failed to aver in briefing documents that witnesses would be unavailable for trial); *Trilegiant* 2005 WL 441077 at *2 (location of books, records, and inventor outside Delaware is irrelevant where the defendant does not contend that they could not be produced or would be unavailable in Delaware); *BAE Systems,* 224 F.R.D. at 589 (defendant did not identify witnesses who would be unwilling or unable to appear for trial in Delaware). ARIAD has not done so. To the contrary, it admits that the documents outside Delaware can be produced in Delaware (ARIAD's Brief at 33), a fact which neutralizes any argument about out-of-state documents. And it fails to provide any specific averment of specific witness inconvenience. Thus, these arguments should be disregarded by the Court. *See, e.g., SRU Biosystems Inc. v. Hobbs,* 2005 WL 2216889 at *3 (request for transfer denied

where record was devoid of any evidence of specific problems with witnesses, documents, or business operations posed by litigating in Delaware, the state of both parties' incorporation).

ARIAD's claims regarding the witnesses and documents fail for other reasons as well. As acknowledged by ARIAD, only two of the thirteen inventors are within the subpoena power of the Massachusetts court. *See* ARIAD's Brief at 32. ARIAD can secure the cooperation of Dr. Sharp (an MIT professor) and Dr. Maniatis (a Harvard professor) pursuant to Section 7.6 of the License Agreement. *See* Sharp Decl. Ex. A (testimony of Drs. Sharp and Maniatis confirming place of employment); D.I. 86 at Ex. B § 7.6. (ARIAD could invoke the same provision to secure any necessary documents from the Institutions.) In any event, ARIAD has not indicated that these two inventors had to be compelled to testify in the Lilly trial as opposed to voluntarily appearing to testify. Additionally, two other inventors are within the subpoena power of *this* Court. *See* ARIAD's Brief at 32. Just because ARIAD might prefer to call the two inventors located in Massachusetts does not mean that Amgen will not want to call the two inventors who could be summoned to testify in Delaware. The location of the various inventors thus does not militate in favor of transfer. With respect to the two prosecuting attorneys (Matthew Vincent and Patricia Granahan) and the former ARIAD employee (Fritz Casselman) identified on page 33 of ARIAD's brief, only one of these individuals (Mr. Vincent) testified at the Lilly trial, and it is not clear whether he had to be compelled to testify or did so voluntarily. And it is by no means a given that these individuals will be called to testify at trial in this case.

**(b)     Public Interest Factors.**

The public interest factors also cut against transfer. It is well-established that Delaware has a clear interest in resolving disputes of corporate citizens that have sought the protection of Delaware's laws. *Chase Manhattan Bank v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 451 (D. Del. 2003) ("Clearly this forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws.") (citing *Motorola Inc. v. PC-TEL, Inc.*, 58 F. Supp. 2d 349, 356 (D. Del. 1999)); *Ace*, 392 F. Supp. 2d at 676 ("Delaware has an interest in litigation regarding companies incorporated within its jurisdiction.").

ARIAD largely focuses its public-interest argument on its position that the District of Massachusetts has already dealt with the issues at stake in this case. *See* ARIAD's Brief at 26-30. This is incorrect as well. Amgen is not a party to the Lilly litigation, nor were its products at issue in the Lilly litigation. Despite ARIAD's rhetoric to the contrary[22], Amgen has not had *any* bites at the apple of the '516 patent. Additionally, while resisting the Lilly subpoena, ARIAD admitted that the Lilly action involved different issues than this case, including different infringement and damages issues. *See* Sharp Decl. Ex. B. For ARIAD to argue that this case should be transferred to Massachusetts simply because the '516 patent has been the subject of litigation there before would lead to the absurd result that every case involving the '516 patent would be required to be heard in Massachusetts.

ARIAD failed to cite a single analogous decision that transferred a case based upon a request by a declaratory judgment defendant to transfer a case to a court presiding

---

[22]  *See* ARIAD's Brief at 7 ("Plaintiffs filed suit in Delaware, rather than in Massachusetts … to *relitigate issues* … in the hope that a *second bite at the apple*, before a different judge, might yield a different result.") (emphasis added).

over another action that has no connection to the declaratory judgment plaintiff or the declaratory judgment plaintiff's products.[23]  A more pertinent set of circumstances was at issue in *Sony Electronics, Inc. v. Orion IP, LLC*, No. C.A. 05-255(GMS), 2006 WL 680657 (D. Del. 2006) (Exhibit 12), a declaratory judgment case in which the Court refused to transfer an action brought by several Delaware-incorporated plaintiffs against another Delaware corporation that had previously filed suit on the same patents in another forum, but which prior suit did not involve the plaintiffs or their accused products.  *Id.* at *2.  This Court has even refused to transfer venue even where a related action based upon ***identical products*** and related patents is pending in another jurisdiction before a judge who was familiar with the technology because both the plaintiff and defendant were Delaware corporations.[24]  *Datex-Ohmeda Inc. v. Hill-Rom Services, Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002) ("The Court is persuaded that

---

[23]  The handful of cases that ARIAD cites where patent cases were transferred out of this District reflect very different factual scenarios than are present here.  *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 207 (D. Del. 1998) (defendant-accused infringer requested transfer to the forum in which the plaintiff-patentee previously filed related suit); *Nilssen v. Everbrite, Inc.*, No. Civ.A. 00-189-JJF, 2001 WL 34368396, at *4 (D. Del. 2001) (Exhibit 13) (defendant-accused infringer requested transfer to the forum in which the plaintiff-patentee previously filed related suit); *Brunswick Corp. v. Precor Inc.*, No. 00-691-GMS, 2000 WL 1876477, at *3 (D. Del. 2000) (Exhibit 14) (granting transfer to the forum in which the parties previously litigated the related patent suit and were concurrently litigating another patent suit); *Allergan, Inc. v. Alcon Labs., Inc.*, No. C.A. 02-1682-GMS, 2003 WL 473380, at *2 (D. Del. 2003) (Exhibit 15) (granting transfer to the forum in which the parties previously litigated the related patent suit and were concurrently litigating another patent suit); *Sumito Mitsubishi Silicon Corp. v. MEMC Electronic Materials, Inc.*, No. Civ. 04-852-SLR, 2005 WL 735880, at *1-3 (D. Del. 2005) (Exhibit 16) (granting transfer to the forum in which the parties previously litigated related patent suit); *E.I. Dupont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 589-90 (D. Del. 1981) (granting transfer to the forum in which the parties were concurrently litigating related patent suit).

[24]  ARIAD's argument that the "District of Massachusetts" has become well-versed in the technology and the issues of this case is inaccurate.  At most, the single judge who handled the Lilly trial -- Judge Zobel -- may have become familiar with the four of the 203 claims that were asserted in that case, but this case involves more claims, different products and different issues.

Delaware has an interest in adjudicating this action because it involves two Delaware corporations.").

Finally, ARIAD disingenuously argues that transfer is warranted to "avoid wasting time and resources fighting" and to avoid the "potentially protracted motion practice and discovery" relating to ARIAD's jurisdictional arguments. ARIAD's Brief at 8. But ARIAD has only itself to blame for this protracted motion practice, having now filed three procedural motions all dealing with the same issues.

In the end, ARIAD cannot marshal a compelling argument that this Court should override Amgen's choice to sue ARIAD in ARIAD's state of incorporation, particularly when Amgen is also a Delaware corporation. The public and private interest factors do not "strongly favor" ARIAD's request to transfer to Massachusetts, and thus ARIAD's request must be denied.

## V.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that this Court deny ARIAD's Renewed Motion to Dismiss and alternative request to transfer.

Date: October 20, 2006

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex
Corporation, Amgen USA Inc., Amgen
Manufacturing, Limited, and Immunex Rhode
Island Corporation.*

30

# EXHIBIT 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Joan PAIGE, individually and as parent and natural
guardian of Tisha Paige, an
infant, and Kishia Hanible, individually and as parent
and natural guardian of
Dontay Hanible and Quintral Lowry, infants, on be-
half of themselves and all
other persons similarly situated, Plaintiffs,
v.
PHILADELPHIA HOUSING AUTHORITY, De-
fendant.
**No. CIV.A. 99-CV-497.**

March 28, 2002.

*MEMORANDUM*

GREEN, S.J.

**\*1** Presently before the Court is Defendant Phil-
adelphia Housing Authority's Motion to Dismiss
Plaintiffs Joan Paige's and Kishia Hanible's Second
Amended Class Action Complaint, Plaintiffs' Re-
sponse, Defendant's Reply and Plaintiffs' Sur-reply.
For the reasons set forth below, Defendant's motion
will be denied.

I. FACTUAL AND PROCEDURAL BACK-
GROUND

Presently before the Court is the Second Amended
Class Action Complaint (the "Second Amended
Complaint") filed by Plaintiffs Joan Paige and Kishia
Hanible ("Plaintiffs") [FN1] challenging Defendant
Philadelphia Housing Authority's ("PHA") alleged
non-compliance with federal regulations intended to
protect children residing in rent-subsidized housing
in Philadelphia, Pennsylvania from exposure to lead.
Plaintiff Joan Paige brings this litigation on behalf of
her minor child, Tisha Paige and Plaintiff Kishia
Hanible brings this litigation on behalf of her minor
children, Dontay Hanible and Quintral Lowry. In
their Second Amended Complaint, Plaintiffs contend
that as a result of PHA's failure to comply with the
federal statutes and regulations governing the Section

8 Housing Assistance Payments Program (the "Sec-
tion 8 Program"), codified at 42 U.S.C. § 1437f, their
minor children were exposed to lead-based paint
while residing in Section 8 housing and suffered and
continue to suffer injuries. Plaintiffs seek declaratory,
injunctive and other equitable relief, including medic-
al monitoring on behalf of their minor children and
on behalf of persons who reside, or who formerly
resided, in the privately owned rental units subsidized
through the Department of Housing and Urban De-
velopment's ("HUD") Section 8 Program.

> FN1. Hereinafter, Plaintiffs Joan Paige and
> Kishia Hanible will be collectively referred
> to as "Plaintiffs" unless otherwise indicated.

The Section 8 Program is designed to provide "de-
cent, safe, and sanitary dwellings for families of
lower income." 42 U.S.C. § 1437. Under the pro-
gram, local housing authorities, such as PHA, enter
into annual contribution contracts with HUD. The
housing authority uses the contribution contracts to
enter into contracts with private landlords/owners to
subsidize the rental payments of low income families
who satisfy the criteria for Section 8 housing, such as
Plaintiffs.

However, prior to the Section 8 housing property be-
ing certified as decent, safe and sanitary, the housing
property must meet certain housing quality standards
under the federal regulations governing the local pub-
lic housing authority's administration of the program.
The Lead Based Paint Poisoning Prevention Act, 42
U.S.C. § 4801 *et seq.,* the United States Housing Act
of 1937, 42 U.S.C. § 1437 *et seq.,* and their imple-
menting regulations, require the local housing author-
ity to perform certain acts in order to prevent lead-
based paint exposure in children. Specifically, the
regulations require Section 8 housing units to be in-
spected both initially and annually for the presence of
lead-based paint.

The alleged facts of the above-captioned case are as
follows: Plaintiffs Paige and Hanible moved into Sec-
tion 8 housing units in April of 1994 and August of
1996, respectively. Their units were contaminated

with old, deteriorating paint containing concentrations of lead many times higher than the limit established by HUD, and as a result of their exposure, their children were diagnosed as having lead poisoning and thus identified as having Elevated Blood Lead Levels ("EBL").

Plaintiff Joan Paige originally brought suit against PHA, alleging PHA's violation of the federal lead-based paint regulations, specifically 24 C.F.R. § 982.401(j)(4). Plaintiff alleged that because her child was identified as having an EBL, HUD regulation 24 C.F.R. § 982.401(j)(4) required that HUD conduct a lead inspection of the chewable surfaces of the Section 8 property prior to their occupying the Section 8 unit using an X-ray florescence ("XRF") or other method approved by HUD. Plaintiff further averred that no landlord would agree to rent to her and her minor child since PHA passed the charge for XRF testing onto the landlord. Being unable to pay for the testing herself, Plaintiff Paige alleged that her Section 8 certificate expired for lack of use and that she was decertified from the program, thereby requiring her to pay the entire rent charge for her then current lead-contaminated Section 8 unit. As a result of being unable to pay the unsubsidized rent, Plaintiff Paige was evicted from her Section 8 unit, became homeless and was forced to reside in a shelter. Following the filing of her Complaint, PHA moved to dismiss Plaintiff's Complaint. This Court denied the motion.

*2 Thereafter, Plaintiff Paige sought leave of Court to file a First Amended Complaint in order to add a claim for violation of the Equal Protection Clause of the Fourteenth Amendment. The Court granted leave and Plaintiff filed the first Amended Complaint. The First Amended Complaint included § 1983 claims alleging violations of the: United States Housing Act, Lead Based Paint Poisoning Prevention Act and their implementing regulations; the Fair Housing Act; Section 504 of the Rehabilitation Act; the Americans with Disabilities Act ("ADA"); and the Equal Protection Clause of the Fourteenth Amendment.

PHA moved to dismiss Plaintiff Paige's First Amended Complaint. The Court denied PHA's motion by Memorandum Order, holding that Plaintiff had stated cognizable claims against PHA under §

1983, the Fair Housing Act, the Rehabilitation Act, the ADA, and the Equal Protection Clause of the Fourteenth Amendment.

In September 2000, HUD revised the regulations in the Section 8 Program concerning lead-based paint. Prior to September 2000, the general requirements for testing and inspections for Section 8 housing were embodied in 24 C.F.R. § 982.401, specifically § 982.401(j). Section 982.401(j) provided that in Section 8 units constructed prior to 1978 where children under 6 years old resided, when the housing authority was notified of a child with an EBL, the paint in the house was to be tested using an XRF or by laboratory analysis of paint samples. Following September 15, 2000, HUD replaced 24 C.F.R. § 982.401(j) with 24 C.F.R. Part 35, Subparts A, B, M and R (2000). Now, where the housing authority is notified of a child with an EBL in a Section 8 unit, the housing authority must conduct a "risk assessment" within 15 days of the notification, which includes a visual inspection, limited wipe sampling and any other activity as may be deemed appropriate. See 24 C.F.R. § 35.86.

Following the change in regulations, Plaintiff Paige sought leave to file a Second Amended Complaint to add a new class representative, request a remedy of medical monitoring and plead violations of the amended provisions of the federal lead-based paint regulations. The Court granted Plaintiff leave to file a Second Amended Complaint and on April 6, 2001, Plaintiffs filed their Second Amended Complaint, with Plaintiff Kishia Hanible joining as a plaintiff in the action.

*3 Plaintiffs' specific legal claims in the Second Amended Complaint largely mirror the claims contained in the First Amended Complaint and are brought pursuant to 42 U.S.C. § 1983. Count I alleges claims for violations of the United States Housing Act, the Lead Based Paint Poisoning Prevention Act and their pre and post-September 2000 regulations. Count II alleges a claim for violation of the Fair Housing Act, codified at 42 U.S.C. § 3601, et seq., which prohibits discrimination against the disabled in the rental of housing. Counts III and IV allege claims for discrimination under Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, et seq., and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Title II of the ADA, codified at 42 U.S.C. § 12132, *et seq.,* on the grounds that the minor plaintiffs are disabled and that they have been, or are being, excluded from participation in the Section 8 Program based on their alleged disabilities. Finally, Count V alleges a claim for violations of the Equal Protection Clause of the Fourteenth Amendment, on the ground that PHA treated the putative class members differently than it did non-class members. As individuals and as representatives of the class, Plaintiffs seek the following remedies: (1) a mandatory injunction requiring PHA to enforce the federal lead-based paint regulations; (2) a fund for medical monitoring; (3) an order directing PHA to issue Section 8 housing vouchers to class members and to reimburse the payment of unsubsidized rent to those who lost their Section 8 eligibility and were thus terminated from the Section 8 Program due to PHA's alleged violations of the pre and post-September 2000 regulations; and (4) attorneys fees.

PHA moves to dismiss Plaintiffs' Second Amended Complaint in its entirety largely on the basis that Plaintiffs lack standing to obtain injunctive relief as to the pre and post-September 2000 regulations because the pre-September 2000 regulations have been superceded and because Plaintiffs have failed to allege any harm or any threat of future harm as a result of PHA's non-compliance with the post-September 2000 regulations. PHA also claims that Plaintiffs' Second Amended Complaint should be dismissed because it fails to state a cause of action under the Fair Housing Act, the Rehabilitation Act, the ADA, and the Equal Protection Clause of the Fourteenth Amendment. PHA also seeks dismissal because of Plaintiffs' alleged failure to join the Section 8 landlords as necessary and indispensable parties. Finally, PHA claims that Plaintiffs' remedy of medical monitoring should not be granted because Plaintiffs fail to state a claim upon which relief can be granted. In the alternative, PHA requests that the Court strike averments from the Second Amended Complaint pertaining to a Court-supervised fund because such a fund is inconsistent with class certification under Fed.R.Civ.P. 23(b)(2) and to strike averments pertaining to scienter standards because Plaintiffs have failed to plead the correct scienter standards to satisfy the burden of proof required for culpability under § 1983.

## II. LEGAL STANDARD

**\*4** As a unanimous Supreme Court in *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) decided,

> [g]iven the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. *See Conley, supra,* at 48, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits"). *Id.* at 998-99.

As such, the court must accept as true all well pleaded allegations of fact, and any reasonable inferences that may be drawn from the plaintiff's complaint. *See Nami v. Fauver,* 82 F.3d 63 (3d Cir.1996). Yet, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir.1997) (citations omitted). However, because granting such a motion results in a determination on the merits at an early stage of the plaintiffs' case, the district court "must ... construe the complaint in the light most favorable to the [plaintiff], and determine whether, under any reasonable reading of the pleadings, the [plaintiff] may be entitled to relief." *Colburn v. Upper Darby Twp.,* 838 F.2d 663, 664-65 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

III. DISCUSSION

A. Standing

Article III, § 2 of the United States Constitution limits federal jurisdiction to "Cases" or "Controversies." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). This case or controversy limitation places the burden on the plaintiff to allege that she has " 'such a personal stake in the outcome of the controversy' as to warrant [her] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [her] behalf." *Warth v. Seldin,* 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citing *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)) (footnote omitted). At an "irreducible constitutional minimum," the plaintiff must be able to demonstrate

"(1) [she] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

**\*5** *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing *Lujan,* 504 U.S. at 560-61).

In its Motion to Dismiss, PHA contends that there is no "case or controversy" such that Plaintiffs' claims fail to meet two out of the three elements of standing injury in fact and redressability. [FN2] As to injury in fact, PHA avers that Plaintiffs have not pled facts sufficient to support an inference that Plaintiffs have suffered any injury-in-fact. Specifically, PHA contends that Plaintiffs lack standing to obtain injunctive relief or assert any claims for violation of the current federal housing regulations governing lead-based paint because neither Plaintiff has alleged ongoing harm or threatened future harm as a result of PHA's actions or inactions. (*See* Def.'s Mot. to Dismiss at 10-11.) In response, Plaintiffs assert that they have alleged sufficient past and present statutory and regulatory violations such that the Court can infer that future violations threaten to continue, resulting in continued lead exposures and a compromised ability to

obtain safe, lead-free Section 8 housing. (*See* Pls.' Resp. at 25.)

> FN2. Although PHA does not discuss causation, it explicitly states that it does not concede this element of standing for Article III purposes. (*See* Def.'s Mot. to Dismiss at 11, n. 7.)

Upon review of Plaintiffs' Second Amended Complaint, the Court finds that Plaintiffs have recited allegations which establish injury in fact. Nevertheless, PHA raises an additional argument with respect to Plaintiff Paige which the Court will address. Relying on the Supreme Court's decision in *Lujan v. Defenders of Wildlife,* which held that "some day intentions without any description of concrete plans, or indeed any specification of when the some day will be do not support a finding of the 'actual or imminent' injury [required for Article III standing]," 504 U.S. at 564, PHA argues that Plaintiff Paige lacks standing because she is no longer a Section 8 tenant and the possibility that she may become a Section 8 tenant sometime in the future is insufficient to satisfy the requirement of "actual or imminent" injury. (*See* Defi's Mot. to Dismiss at 12-13.) Although this Court would readily agree that if Plaintiff Paige had never been a resident of or had never applied for Section 8 housing, the facts alleged in the Complaint would be insufficient to establish injury in fact. However, Plaintiff Paige is no longer a Section 8 tenant due to the alleged failure of PHA to comply with federal regulations governing lead-based paint. It seems wholly unfair and contra logic for PHA, who is alleged to be the proximate cause of Plaintiff losing her Section 8 status, to now use the loss of that status as a means to prevent Plaintiff from seeking redress. Accordingly, both the Paige and Hanible plaintiffs have sufficiently averred the injury in fact element of standing.

As to redressability, PHA contends that Plaintiffs' requested relief would not redress the harms of which Plaintiffs complain. (*See* Def.'s Mot. to Dismiss at 10.) Specifically, PHA contends that an injunction cannot provide Plaintiffs redress and advances the same arguments as posed regarding Plaintiffs' failure to establish injury in fact, namely, that injunctive re-

Not Reported in F.Supp.2d                                                                      Page 5
Not Reported in F.Supp.2d, 2002 WL 500677 (E.D.Pa.)
**(Cite as: 2002 WL 500677 (E.D.Pa.))**

lief will not provide redress to Plaintiff Paige because she is no longer a resident of Section 8 housing. Moreover, PHA avers that because Plaintiff Hanible did not allege that she ever paid unsubsidized rent, neither reimbursements nor vouchers will redress her injuries. (*See* Def.'s Mot. to Dismiss at 14-15.)

**\*6** Despite PHA's arguments, the Court finds that Plaintiffs sufficiently aver that the injuries suffered by them are redressable. Plaintiffs successfully claim that if PHA is required to abide by the regulations, lead-free Section 8 housing will become available to them. Since Plaintiffs have successfully averred the elements of standing, the Court will not dismiss Plaintiffs' Second Amended Complaint on this basis.

B. Injunctive Relief

PHA also attacks Plaintiffs' claims for injunctive relief on the following three grounds: (1) 24 C.F.R. § 982.401(j) was repealed, and thus, the Court cannot enforce compliance with that regulation through an injunction; (2) an injunction enforcing the post-September regulations based on PHA's pre-September conduct would be a retroactive application of law and even though Plaintiffs invoke the current regulation, 24 C.F.R. Part 35 (2000) as a source of injunctive relief, because their cause of action arises under PHA's conduct prior to the effective date of this regulation, any application of this regulation would also be a retroactive application of the law; and (3) Plaintiffs cannot cite any current regulation as a source for injunctive relief because they have failed to plead that PHA violated any current regulations. (*See* Def.'s Mot. to Dismiss at 15-16.) Plaintiffs respond by averring that they are not seeking retroactive relief. Rather, Plaintiffs assert that the relief requested seeks compliance with regulations in their current form.

In light of the notice pleading standard restated by the Supreme Court in *Swierkiewicz, see supra* Part III.A, it is not appropriate for the Court to make preliminary rulings and fashion relief prior to the development of a record which serves as a basis for imposing liability even though the Complaint does set forth allegations which are sufficient to permit the matter to proceed. Therefore, until a more detailed factual record is de-

veloped, the Court cannot decide Plaintiffs' request for injunctive relief. However, Defendant is not precluded from raising this issue again at a later stage, after discovery and the development of a proper record.

C. 42 U.S.C. § 1983

Plaintiffs' claims arise under § 1983. Specifically, Plaintiffs allege that PHA's past and current violations of the United States Housing Act, the Lead Based Paint Poisoning Prevention Act and the federal lead-based paint regulations promulgated pursuant to these statutes have resulted in a violation of their rights under § 1983. Section 1983 imposes liability on anyone who, under color of state law, deprives a person of "any rights, privileges, or immunities secured by the Constitution and [federal] laws." *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Therefore, to seek redress under § 1983, a plaintiff must assert the violation of a federal right, not merely a violation of a federal law. *See id.* (citation omitted).

In determining whether a party has a cause of action under § 1983 arising out of the United States Housing Act, the Lead Based Paint Poisoning Prevention Act and their implementing regulations, a court must apply a two-pronged test: (1) whether Congress has foreclosed such enforcement of the statute in the enactment itself; and (2) whether the statute creates enforceable rights, privileges or immunities within the meaning of § 1983. *See Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). As to the second prong, a court must evaluate whether: (1) the provisions are intended to benefit the plaintiff; (2) the provisions of the statute impose some binding or mandatory obligation on the state entity or whether those obligations are merely precatory in nature; and (3) the interest of the party seeking redress under § 1983 is so vague and amorphous as to be beyond the competence of the judiciary to enforce. *See Blessing,* 520 U.S. at 340-41.

**\*7** PHA avers that Plaintiffs' § 1983 claim fails because Plaintiffs have not alleged that PHA has violated any "specific term" of the current regulations

with respect to Plaintiffs and that the specific HUD regulations upon which Plaintiffs rely as a source of relief, 24 C.F.R. § 982.401(j), is vague and ambiguous and therefore, cannot confer a federal right for § 1983 purposes. PHA asserts that this provision, which is alleged to have required PHA to pay for XRF testing in Section 8 rental houses owned by private landlords, did not expressly state who was responsible for paying for XRF tests, and as such, PHA argues that it could not have made a knowing acceptance of its obligations. PHA, therefore, challenges only the second prong of the test to establish a claim under § 1983. [FN3] Plaintiffs counter, asserting that they have pled violations of the current lead-based paint regulations and that those pleadings are sufficient under the pleading requirements pursuant to Fed.R.Civ.P. 8(a).

> FN3. PHA recognizes that the Court, in its August 9, 2000 Memorandum Opinion, recognized that Plaintiffs may pursue a cause of action under § 1983 because Congress has not specifically foreclosed such a cause of action under the United States Housing Act, the Lead Based Paint Poisoning Prevention Act and their implementing regulations. *See Paige v. Philadelphia Housing Authority,* No. 99-CV-497, 2000 U.S. Dist. LEXIS 11973, at *6-7 (E.D.Pa.2000).

Plaintiffs' arguments are persuasive. Upon review of the Complaint, it is clear that Plaintiffs have alleged violations of practically every statutory provision related to the Section 8 Program, which in sum, allegedly deprives Plaintiffs of decent, safe and sanitary Section 8 housing because they have minor children with EBLs. Accordingly, the Court will deny PHA's motion seeking dismissal of Plaintiffs' § 1983 claim.

D. Fair Housing Act, Rehabilitation Act, Americans with Disabilities Act, and Equal Protection Claim

In Counts II, III, IV, and V of their Complaint, Plaintiffs claim that PHA has violated and continues to violate the Fair Housing Act, the Rehabilitation Act, the ADA and the Equal Protection Clause of the Fourteenth Amendment by charging Section 8 prop-

erty owners and tenants for required housing inspections in violation of 24 C.F.R. § 982.405(e). As a result of PHA's alleged violations of the above-mentioned regulation, Plaintiffs claim that they have been, are being, and are at risk of being victims of housing discrimination and of being otherwise denied the benefits of the Section 8 Program.

PHA argues that Plaintiffs' claims under the Fair Housing Act, the Rehabilitation Act and the ADA should be dismissed because Plaintiffs have failed to allege that they are disabled under those statutes. Specifically, PHA claims that Plaintiffs have failed to allege that the minor Plaintiffs are disabled such that they suffer from a "physical or mental impairment that substantially limits one or more major life activities." *See, e.g.,* 42 U.S.C. § 3602(h); 42 U.S.C. § 12102(2). PHA also asserts that even if the minor Plaintiffs are considered disabled, they fail to state a claim for discrimination by failing to allege specific instances of discrimination where they, as children identified with an EBL, were treated differently than non-EBL children. Finally, PHA argues that Plaintiffs' equal protection claim is misstated and therefore should be dismissed.

**\*8** Despite PHA's attempt to take a "second bite at the apple," the Court finds, as in its previous Memorandum Opinion, that under the liberal notice pleading requirements in federal court, Plaintiffs' allegations are sufficient to support claims against PHA for violations of the Fair Housing Act, the Rehabilitation Act, and the ADA as well as Plaintiffs' discrimination and equal protection claims. Accordingly, the Court will deny PHA's motion to dismiss these claims. Whether there will be facts to substantiate these allegations must be made at a later stage of the proceedings.

E. Failure to Join Indispensable Parties

PHA argues that Section 8 landlords are necessary and indispensable parties to the instant action and Plaintiffs' failure to join them as such requires the dismissal of Plaintiffs' discrimination claims in Counts II, III, IV, and V. (*See* Def.'s Mot. to Dismiss at 37.) Pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, the threshold inquiry is whether a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

party is "necessary." *See Wood & Locker, Inc. v. Doran & Associates, 708 F.Supp. 684, 689 (E.D.Pa.1989)*. A party is necessary if either (1) the present parties will be denied complete relief in the absence of the party to be joined, or (2) the absent party will suffer some loss or be put at risk of suffering such a loss if not joined. *See Fed.R.Civ.P. 19(a)*. If a party is determined not to be "necessary," the party is not "indispensable" to the action. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 404 (3d Cir.1993)*. If the party is found to be necessary, and therefore, should be joined but joinder is not feasible because it would defeat jurisdiction, the court must determine under Fed.R.Civ.P. 19(b) whether "in equity and good conscience" the action should proceed without the absent party or whether the absent party is indispensable and the action should be dismissed. *See Koppers Co. v. Aetna Cas. & Sur. Co., 158 F.3d 170, 175 (3d Cir.1998)* (footnote omitted) (citation omitted). The party raising the defense of failure to join an indispensable party has the burden to show that the person who is not joined is needed for a just adjudication. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1609.

The Court finds that PHA has not met this burden. In the Complaint, Plaintiffs allege that PHA's failure to comply with regulations, namely, their passing on the costs of required housing inspections in Section 8 properties where children with EBLs resided to Section 8 property owners and tenants in violation of 24 C.F.R. § 982.405(e), resulted in Section 8 landlords refusing to rent to them because of the charge associated with renting to those who had minor children with EBLs. (Sec. Am. Compl. ¶¶ 70, 72.) Therefore, PHA's argument, that Section 8 landlords are necessary and indispensable parties, is merely an attempt to shift the thrust of Plaintiffs' discrimination allegations, which are aimed solely at PHA's alleged failure to comply with the federal lead-based paint regulations, to the conduct of the Section 8 landlords. Accordingly, the Court will deny PHA's motion to dismiss Plaintiff's discrimination claims contained in Counts II, III, IV, and V.

### F. Medical Monitoring

*9 Plaintiff requests a mandatory injunction requiring PHA to fund a Court-established and Court-supervised fund for medical monitoring. As pled by Plaintiffs, medical monitoring is one of the remedies sought, but until a record has been developed and there has been a hearing as to the appropriate remedies to be applied, the Court can make no determination as to whether there is or is not liability and what remedies are appropriate. Therefore, at this time, the Court will defer ruling on Plaintiffs' request for medical monitoring.

### G. Court-Supervised Funds

PHA requests that the Court strike Plaintiffs' demand for the establishment of a court-supervised fund on the basis that the fund, which is described by Plaintiffs as a repository for the requested injunctive relief, is nothing more than a transparent attempt to obtain monetary or compensatory damages on a class-wide basis and is therefore, inconsistent with class certification under Rule 23(b)(2). [FN4] Although the Court is aware of the significance of this issue, it is best to resolve this issue in conjunction with class certification. Therefore, I will defer ruling on Plaintiffs' request for court-supervised funds until a ruling is made on class certification, or thereafter.

> FN4. Plaintiffs claim that the court-supervised funds would be for (1) medical monitoring and (2) to reimburse Section 8 tenants who have lost their Section 8 certificates and/or vouchers and have been forced to pay unsubsidized rent. Plaintiffs also request that PHA re-issue Section 8 housing certificates to Plaintiffs and to those who have been terminated from the Section 8 Program. (*See* Sec. Am. Compl. *ad damnum* clause ¶¶ (d)- (g).)

### H. Scienter Standards

Finally, PHA argues that Plaintiffs have pled incorrect scienter standards to satisfy the burden of proof required for culpability under § 1983, and as such, those scienter standards should be stricken from Plaintiffs' Second Amended Complaint. PHA asserts that the appropriate standard by which PHA is to be

Not Reported in F.Supp.2d, 2002 WL 500677 (E.D.Pa.)
**(Cite as: 2002 WL 500677 (E.D.Pa.))**

measured under § 1983 is "deliberate indifference," not "recklessness" "willfulness," "wantonness," "purposefulness" or "negligence" as pled by Plaintiffs. (*See* Sec. Am. Compl. ¶¶ 90, 104, 105.) Plaintiffs do not substantively respond to PHA's claim. Rather, they categorize PHA's argument as a premature Motion for Summary Judgment.

Under the standard recognized by the Supreme Court in *Swierkiewicz, see supra* Part III.A, Plaintiffs are not required to precisely plead the scienter standards at this stage of the litigation. The Court, therefore, will deny PHA's motion to strike the scienter standards in Plaintiffs' Second Amended Complaint and will defer making a determination as to whether the proper scienter standards can be met to a time following the close of discovery.

An appropriate order follows.

### ORDER

**\*10** AND NOW, this _____ March, 2002, upon consideration of Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, Plaintiffs' Response, Defendant's Reply and Plaintiffs' Sur-reply, IT IS HEREBY ORDERED that Defendant's motion is DENIED. IT IS FURTHER ORDERED that Defendant shall file an Answer to Plaintiffs' Second Amended Class Action Complaint within fifteen (15) days. IT IS FURTHER ORDERED that the Deputy Clerk schedule a conference after the aforesaid Answer is filed.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 1751903 (N.D.Cal.)
(Cite as: 2006 WL 1751903 (N.D.Cal.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
DEX PRODUCTS, INC., Plaintiff,
v.
Barbara HOUGHTELING, et al., Defendants.
**No. C 05-05126 SI.**

June 23, 2006.

Robert Lee Sallander, Jr., John Phillip Makin, Green-an Peffer Sallander & Lally LLP, San Ramon, CA, for Plaintiff.

Paul Lawrence Hickman, Technology & Intellectual Property Strategies Group, Palo Alto, CA, Timothy J. Martin, Martin & Henson P.C., Lakewood, CO, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS DEFENDANT HOGHTELING FOR LACK OF
JURISDICTION AND DENYING DEFEND-ANTS' MOTION TO DISMISS OR TRANSFER AS TO
DEFENDANT BASIC COMFORT, INC.**
SUSAN ILLSTON, District Judge.

**\*1** On May 19, 2006, the Court heard argument on defendants' motion to dismiss or transfer. Having considered the arguments of counsel and the papers submitted, and for good cause appearing, the Court hereby GRANTS the motion to dismiss defendant Houghteling for lack of personal jurisdiction, and DENIES the motion to dismiss or transfer as to defendant Basic Comfort, Inc.

**BACKGROUND**
Plaintiff, Dex Products, Inc. ("Dex"), is a producer of "comfort and safety products for infants, toddlers, and older children," including the "Secure Sleeper Ultra," a sleep positioner for infants. Compl. at ¶ 8. Dex filed this declaratory judgment patent action in

December 2005. The patent at issue, U.S. Patent No. 6,877,176 ("the '176 patent"), discloses a cushioned "infant sleep aid that is adapted to elevate the infant's head and torso as well as to maintain the infant in a safe sleeping position." '176 patent, col. 2, lines 30-32. Dex seeks a declaration that it's Secure Sleeper Ultra does not infringe the '176 patent, and that the '176 patent is invalid.

Defendant Barbara Houghteling, a resident of Loveland, Colorado, is the sole inventor and owner of the '176 patent, which issued April 12, 2005. Defendant Basic Comfort, Inc., is a Colorado corporation with it principal place of business in Denver, Colorado. Basic Comfort produces and sells products based upon the '176 patent, and is the exclusive licensee of the '176 patent. Compl. at ¶¶ 3, 11; see also Compl. at Exh. B ("The '176 Patent is exclusively licensed to Basic Comfort, Inc....")

On May 25, 2005, an attorney representing both Houghteling and Basic Comfort contacted plaintiff's counsel by telephone to inform him that plaintiff's Secure Sleeper Ultra might infringe the '176 patent. Compl. at ¶ 13. Later, on November 23, 2005, defendants' counsel sent plaintiff a cease and desist letter, accusing the Secure Sleeper Ultra of infringing the '176 patent. Compl. at ¶¶ 14-15 & Exh. B. On December 12, 2005, plaintiff filed suit in this Court, seeking a declaratory judgment that the '176 patent is invalid, or, in the alternative, that its product does not infringe the '176 patent.

Defendants now move to dismiss, arguing, first, that the Court lacks personal jurisdiction over Houghteling, who they claim is an indispensable party to this lawsuit, and second, that venue is improper. In the alternative, defendants seek to have this action transferred to Colorado. For the following reasons, the Court DENIES defendants' motion.

**LEGAL STANDARD**
**I. Jurisdiction**

The parties agree that Federal Circuit law applies to the question whether personal jurisdiction exists over

Houghteling. *See Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed.Cir.2002)* ("[W]here the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law."). Under Federal Circuit law, "before a federal court can exercise personal jurisdiction over a defendant in a federal question case, the court must determine whether an applicable statute potentially confers jurisdiction by authorizing service of process on the defendant, and whether the exercise of jurisdiction would satisfy the requirements of due process." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349 (Fed.Cir.2002).*

**\*2** The "applicable statute" authorizing service of process is the California long arm statute. *See id. at 1350;* Fed.R.Civ.P. 4(e). Because the California long arm statute is coextensive with the limits of due process, the "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1270 (Fed.Cir.1998).*

Before a court may exercise jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).* A defendant may meet the minimum contacts requirement in one of two ways. First, a court may exercise "general jurisdiction" over a defendant that has "continuous and systematic" contacts with the forum state. *See LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed.Cir.2000).* Second, a court may exercise "specific jurisdiction" where the defendant's contacts with the forum state are "isolated and sporadic" but the cause of action arises out of those contacts. *Id.*

## II. Necessary and Indispensable Party

If the Court lacks personal jurisdiction over Houghteling, it must then decide if Houghteling is a necessary and indispensable party under Federal Rule of Civil Procedure 19. This analysis is conducted under Ninth Circuit law. *See Dainippon Screen Mfg.*

*Co., Ltd. v. CFMT, Inc., 142 F.3d 1266, 1269 (Fed.Cir.1998)* ("Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law...."). 

Courts employ a two-step analysis under Rule 19. First, they must determine if the party is "necessary to the suit." Fed.R.Civ.P. 19(a). A party is necessary if "the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a)(2). The second step is determining whether the party is indispensable. *See* Fed.R.Civ.P. 19(b). This involves a determination "whether in equity and good conscience the action should proceed among the parties before [the Court]." [FN1] *Id.* Defendants bear the burden of persuasion in arguing for dismissal under Rule 19. *See Clinton v. Babbit, 180 F.3d 1081, 1088 (9th Cir.1999).*

> FN1. Rule 19(b) identifies four factors for courts to consider in making this determination: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b).

## III. Venue

The venue in a declaratory judgment action concerning patent infringement and validity is governed by the general venue statute, 28 U.S.C.A. §§ 1391(b)-(c). *U.S. Aluminum Corp. v. Kawneer Co., Inc.,* 642 F.2d 193, 195 (9th Cir.1982). Venue is proper in any judicial district (1) where the defendant resides or (2) where "a substantial part of the events or omissions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

giving rise to the claim occurred." 28 U.S.C.A. § 1391(b). For declaratory judgment actions in patent infringement case, section 1391(b)(2) refers to the district where the allegedly infringing actions took place, not the district where the patent owner resides. *See Kawneer,* 642 F.2d at 195-96.

**\*3** A district court may transfer a civil action either for the convenience of the parties or witnesses or in the interest of justice. 28 U.S.C.A. § 1404(a). However, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986).*

## DISCUSSION

## I. Personal Jurisdiction

Plaintiff rests its claim that personal jurisdiction exists over Houghteling solely upon specific jurisdiction. The Federal Circuit considers three factors in determining whether specific jurisdiction exists: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.' " *Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed.Cir.2001).*

According to plaintiff, specific jurisdiction exists in this case because its noninfringement claim arises out of the phone call and threatening letter that defendants sent to plaintiff in California. Further, plaintiff points to the fact that Basic Comfort sells the "Inclined to Sleep" sleep positioner, a product based on the '176 patent, in California. *See* Saari Decl., ¶ 2 & Ex. A. Plaintiff argues that this litigation is directly related to both of these contacts with California.

The Federal Circuit has long held that a letter threatening litigation is an insufficient basis for asserting personal jurisdiction over a patent holder. *See, e.g., Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1361 (Fed.Cir.2001)* ("We have, however, repeatedly held that the sending of an infringement letter, without more, is insufficient to satisfy the requirements of

due process when exercising jurisdiction over an out-of-state patentee."). In light of this longstanding rule, plaintiff argues that Basic Comfort's sale of a product based on the '176 patent in California is sufficient to confer jurisdiction over Houghteling.

The problem with plaintiff's argument is that it conflates the two defendants. The only action Houghteling has taken in this case was to grant Basic Comfort a license. Pursuant to this license, Basic Comfort chose to market and sell products based on the '176 patent in California. There is no evidence, however, that Houghteling was involved in that decision. Without further evidence of control, plaintiff cannot use Basic Comfort's actions to obtain jurisdiction over Houghteling. *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed.Cir.1998)* ("HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota.").

**\*4** This case is indistinguishable from the Federal Circuit's decision in *Red Wing.* That case involved a patent on an "athletic shoe [with] improved support and stability for the wearer's heel" owned by Hockerson-Halberstadt, Inc. ("HHI"), a Louisiana corporation located in New Mexico. *Id.* at 1357. HHI did not manufacture any product; its sole business was licensing and enforcing the rights associated with its patents. *Id.* The plaintiff, Red Wing Shoe Co., was a footwear manufacturer located in Minnesota. *Id.* Starting in October 1995, HHI sent Red Wing a series of letters suggesting that Red Wing was infringing one of its patents. *Id.* Red Wing then brought a declaratory judgment action against HHI, alleging noninfringement of the patent, and that the patent was invalid and unenforceable. *Id.* HHI moved to dismiss for lack of personal jurisdiction, the district court granted the motion, and the Federal Circuit affirmed.

On appeal, Red Wing based its argument in favor of personal jurisdiction on the three letters from HHI contending that Red Wing was infringing its patent, as well as HHI's licensing activities in Minnesota. *Id.* at 1359. The Federal Circuit specifically noted that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"HHI has thirty-four licensees who sell products in Minnesota. Six of those licensees have stores or are registered to do business in Minnesota." *Id.* Despite these contacts, the Federal Circuit found the combination of these factors insufficient to create personal jurisdiction:

> As this court has stated before, cease-and-desist letters alone do not suffice to justify personal jurisdiction.... Standards of fairness demand that HHI be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights. HHI's three letters alone do not create personal jurisdiction in Minnesota.

> HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota. Indeed, as stated above, the Supreme Court has made clear that contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant.... Red Wing's flawed theory would subject a defendant to nationwide personal jurisdiction if it decides to do business with a company that does business nationwide.

*Id.* at 1361. As *Red Wing* illustrates, the Federal Circuit has found personal jurisdiction lacking in a case where the asserted minimum contacts were almost identical to this case.

Although plaintiff argues that *Red Wing* is inapplicable, the cases it relies on are all easily distinguishable. The primary case that plaintiff relies on involved a patentee that also produced products based upon its patent, then executed licenses with other companies to distribute those products. *See Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 429 (Fed.Cir.1996). In that case, the Federal Circuit found that the patent holder had deliberately placed its products into the "stream of commerce," knowing full well the locations to which the products would be distributed. *See Id.* ("Spal's marketing agreement and practices with Iowa Export establish a regular distribution channel through which Spal purposefully directed its activities."). Defendants also

rely on cases in which the patent holder's contacts with the forum state were far more extensive than the contacts in this case. *See Genetic Implant Sys., Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997) (finding sufficient contacts with Washington State where patent holder had "engaged in a program to develop a market in Washington, including founding teaching centers in Seattle staffed by local periodontists, developing Washington customer lists through the teaching centers, and advertising in publications distributed to potential Washington customers"); *Akro Corp. v. Luker,* 45 F.3d 1541, 1546 (Fed.Cir.1995) (finding that patent holder had sufficient contacts with Ohio based upon exclusive license with Ohio corporation) [FN2]; *see also Red Wing,* 148 F.3d at 1362 (distinguishing *Akro* on basis that it involved exclusive license with a corporation in the forum state).

> FN2. *Akro's* partial reliance on warning letters to establish "minimum contacts" is out of step with other Federal Circuit law. As recently as 2002, the Federal Circuit has held that warning letters and other correspondences alone are not enough to establish personal jurisdiction. *See Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351,1356 (Fed.Cir.2002).

**\*5** Thus, the Court concludes that Houghteling's limited contacts with California are insufficient to create the minimum contacts necessary to subject her to personal jurisdiction, and she is accordingly DISMISSED from this action.

## II. Indispensable Party

In addition to arguing that this Court lacks personal jurisdiction over Houghteling, defendants contend that Houghteling is both a necessary party under Rule 19(a) and an indispensable party under Rule 19(b).

### A. Necessary Party

Where a patent has been exclusively licensed to another party, the patent owner is a necessary party where it retains substantial rights in the patent that would be impaired by adjudication of the lawsuit. *See Dainippon Screen Manufacturing Co., Ltd. v. CFMT,*

*Inc., 142 F.3d 1266,1269 (Fed.Cir.1998) [FN3]; Central Tools, Inc. v. Mitutoyo Corp.,* 381 F.Supp.2d 71, 77 (D.R.I.2005). Defendants argue that Houghtling retained substantial rights in the '176 patent and is therefore a necessary party; this Court agrees.

> **FN3.** Although a Federal Circuit case, the *Dainippon* court applied Ninth Circuit law in its analysis of joinder issues.

According to the Houghteling/Basic Comfort licensing agreement, Houghteling retains the "first opportunity to sue" potential patent infringers, a substantial ownership right. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.,* 240 F.3d 1016, 1018 (Fed.Cir.2001) (holding that exclusive licensee's ability to sue for infringement only after patent owner failed to do so was the "most important" reason why licensee did not possess all substantial rights in the patent); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed.Cir.1991) (requirement that licensee *only notify* patent owner prior to filing infringement suit is a "particularly dispositive" indication that full rights had been transferred). Like the exclusive licensee in *Mentor H/S,* Basic Comfort can only file an infringement suit if Houghteling fails to bring an action within 90 days of being notified that possible infringement exists. License Agreement dated June 1, 2002, ¶ O.

Houghtling's retained rights might be impaired by this litigation because she may be collaterally estopped from re-litigating the validity of the patent in future lawsuits. *See Aguilar v. Los Angeles County,* 751 F.2d 1089, 1093 (9th Cir.1985) (holding that a child was a necessary party to his parents' federal action since a negative decision in parents' proceeding *might* collaterally estop child from re-litigating an important issue in a separate state court action). Whether Houghtling would actually be collaterally estopped from re-litigating the patent's validity is a difficult question [FN4]; however, *Aguilar* requires only that the party may face collateral estoppel issues and that is clearly the case here.

> **FN4.** *See Indep. Wireless Tel. Co. v. Radio Corp. Of Am.,* 269 U.S. 459 (1926) (holding that an absent patent owner may be bound

by the case's result if the patent owner was given the opportunity to participate)

Because Houghtling retained substantial rights in the patent that may be impaired by this litigation, she is a necessary party.

**B. Indispensable Party**

Relying on *Dainippon,* plaintiffs argue that Houghteling is not an indispensable party under the 4-factor Rule 19(b) test. This case is indistinguishable from *Dainippon* except that the patent owner in *Dainippon* was a wholly-owned subsidiary of the exclusive licensee. *Dainippon,* 142 F.3d at 1267. The court deemed this fact "highly relevant" to its decision that the patent owner/subsidiary was not an indispensable party. *Id.; see also Dow Chem. Co. v. Exxon,* 139 F.3d 1470, 1479 (Fed Cir.1998) (finding that patentholding subsidiary of Exxon need not be joined in an infringement suit because subsidiary's interests were "adequately protected" by Exxon, the exclusive licensee). While the parent-subsidiary relationship does not exist in this case, Houghteling and Basic Comfort's interests are nonetheless sufficiently aligned that Houghteling need not be joined.

**\*6** The first Rule 19(b) factor requires consideration of the extent to which a judgment in the patent holder's absence would prejudice the parties. Fed.R.Civ.P. 19(b). "Prejudice to an absent party is mitigated when the interests of that party are 'adequately protected by those who are present.' " *Dainippon,* 142 F.3d at 1272 (quoting *In re Allustiarte,* 786 F.2d 910, 919 (9th Cir.1986)). A patent owner's interests are protected by an exclusive licensee if: (1) the licensee "manifests its obvious concern" over the patents by, for example, contacting suspected infringers and threatening legal action, (2) the patent owner and licensee share a common financial interest in the patent's validity and non-infringement, and (3) the patent owner and licensee share an attorney. *Id.* at 1272.

Each of the above factors is present in this case. Basic Comfort, through counsel, both telephoned Dex to express concern over Dex's possible infringement of the '176 patent and sent Dex a cease-and-desist letter. Compl., ¶¶ 13, 14. Second, as the exclusive, world-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

wide licensee of the rights to the '176 patent, Basic Comfort has an obvious financial incentive to defend against charges of invalidity and non-infringement. License Agreement, ¶ ¶ C, D. Third, as in *Dainippon*, Basic Comfort and Houghteling share the same attorney in this action. Houghteling's interests are further protected by the fact that any settlement agreement between Basic Comfort and Dex requires her consent. Licensing Agreement, ¶ O. So, while Houghteling's relationship with exclusive licensee Basic Comfort is not as close as the parent-subsidiary relationship in *Dainippon*, Houghteling's interests are adequately protected by Basic Comfort.

Although defendants argue that *Central Tools*, not *Dainippon*, is the controlling case, *Central Tools* is factually distinguishable from the current case. First, the patent owner in *Central Tools* granted a *non-exclusive* license to the defendant, thus reducing the defendant's incentive to protect the patent's validity. *Central Tools*, 381 F.Supp.2d at 79. Second, and more importantly, the license provided rights to only one product in a two-product patent claim. *Id. at 77.* Since the licensee had no interest in the second product whatsoever and because the court would have had to invalidate the entire claim (and hence both products) or nothing at all, the patent owner's interest in the second product was not adequately protected. *Id. at 77-78.* Although defendants argue that Houghteling licensed only the "Inclined to Sleep" product, less than the full patent, they fail to indicate which of the '176 patent's 45 claims have been retained by Houghteling. Moreover, since this Court could invalidate the "Inclined to Sleep" claims without invalidating the entire patent, defendants would need to demonstrate that Houghteling, like the patent owner in *Central Tools*, retained a partial interest in an single claim. *See id.* They have not done so.

**\*7** The second Rule 19(b) factor, the Court's ability to shape relief to avoid prejudice, also militates in favor of Dex. In *Dainippon*, the court noted that "the second factor ... is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court." *Dainippon*, 142 F.3d at 1272-73. The court in *Central Tools* did not adopt

this categorical approach. *Central Tools*, 381 F.Supp.2d at 80. Instead, it held that the second Rule 19(b) factor required joinder of the patent owner because the court could not shape its declaratory relief judgment such that it invalidated only part of a patent claim. *Id.* As noted, the issue raised in *Central Tools* is only a problem if Houghteling retained an interest in a partially-transferred claim. There is no evidence that such a partial transfer has taken place.

The third factor, adequacy of judgment, also favors Dex because Dex seeks only declaratory relief. *See Dainippon*, 142 F.3d at 1273 ("The third factor, adequacy of judgment, favors maintenance of the suit in [the patent owner's] absence because a declaration of invalidity or noninfringement would fully serve [the alleged infringer's] interest in ensuring that it is free from claims of patent infringement irrespective of [the patent owner's] absence."); *see also Central Tools*, 381 F.Supp.2d. at 80 (quoting *Dainippon*, 142 F.3d at 1273).

If, as defendants contend, Dex could bring this suit in a Colorado district court, the fourth factor, availability of an alternate forum, would obviously weigh against Dex. "However, the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation." *Dainippon*, 142 F.2d at 1273. Moreover, the fact that the patent owner's interests will be adequately protected by the licensee "strongly compels" the conclusion that the patent owner is not indispensable. *Id.*

Since Houghteling's interest will be adequately protected by Basic Comfort and only the potential availability of an alternative forum weighs in favor of dismissal, this Court concludes that Houghteling is not an indispensable party.

### III. Venue

Defendants argue that the proper venue under 28 U.S.C.A. § 1391(b)(2) is Colorado, not California, because Houghteling resides in Colorado and all the work on the patent and license agreement took place in Colorado. [FN5] This contention, however, is in

opposition to Ninth Circuit law which holds that the proper venue is the district where the alleged infringing acts took place. *See U.S. Aluminum Corp. v. Kawneer Co., Inc.,* 642 F.2d 193, 195 (9th Cir.1982). The alleged infringing acts in this case are Dex's sale of particular baby products. Those sales were made in California, not Colorado. Opp. Mot. at 1:25- 28. This Court therefore concludes that venue is proper. [FN6]

> FN5. Defendants do not argue that venue is improper with regard to Basic Comfort

> FN6. Defendants' reliance on *Jamba Juice Co. v. Jamba Group, Inc.,* 2002 WL 1034040 (N.D. Cal 2002) is misplaced. Although the court in *Jamba Juice* held that the activities of the defendant, not the plaintiff, are the relevant focus of a venue dispute, the defendant in *Jamba Juice* was the alleged infringer while the plaintiff was the trademark owner--the reverse of the situation in this action. *Id.* at 2.

**\*8** Defendants argue in the alternative that this case should be transferred to a federal court in Colorado. Defendants, who cite no cases in support of their position, contend that a trial in this Court would unduly inconvenience Houghteling and Basic Comfort. More specifically, Houghteling, a Colorado resident, and employees of Basic Comfort, a Colorado corporation, would be required to travel to California for the trial. Defendants deem such travel expenses "unduly burdensome and expensive." Def. Mot. at 12. Defendants also assert, with minimal support, that the infringing acts were committed in Colorado, not California.

Defendants' arguments fail to overcome the significant presumption in favor of plaintiff's choice of forum. As several courts have noted, a mere shifting of inconvenience from defendant to plaintiff is not allowed under 28 U.S.C.A. § 1404(a). *See Decker Coal v. Commonwealth Edison Co.,* 805 F.2d at 843 (finding that transfer of case from Montana to Illinois was not appropriate because there were witnesses living in both locations); *see also Shropshire v. Fred Rappoport Co.,* 294 F.Supp.2d 1085, 1095 (N.D.Cal.2003) (rejecting transfer to Central District of California because witnesses resided in both dis-

tricts and inconvenience to plaintiff in the new district was "about the same" as that of the defendant in the Northern District); *A Slice of Pie Prods., LLC v. Wayans Bros. Ent.,* 392 F.Supp.2d 297 (D.Conn.2005) (refusing to transfer litigation from Connecticut to California even though more parties resided in California and only some material events occurred in Connecticut). The location of events giving rise to the action is also an important factor in a court's decision to transfer a case. *Decker Coal,* 805 F.2d at 843.

A shift of venue from California to Colorado would inconvenience Dex "about the same" as the current venue inconveniences Basic Comfort. *See Shropshire,* 294 F.Supp.2d at 1095. Defendants concede that Dex is a California-based corporation that has no greater presence in Colorado than Basic Comfort has in California. Reply Brief at 2 n. 1. In addition, although Houghteling, other likely witnesses and important documents reside in Colorado, other relevant witnesses (such as Dex employees) and key documents reside in California. In other words, Dex and its witnesses would incur approximately the same level of expenses from a change in venue as Basic Comfort and Houghteling currently face. Moreover, the key events giving rise to this action--the sale of allegedly infringing products--took place in California.

The Court therefore concludes that transfer of venue would not be appropriate.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to dismiss Houghteling for lack of personal jurisdiction, and DENIES defendants' motion to dismiss or transfer as to defendant Basic Comfort, Inc. (Docket No. 28).

### IT IS SO ORDERED.

#### Motions, Pleadings and Filings (Back to top)

• 2006 WL 2178359 (Trial Motion, Memorandum and Affidavit) Dex Products Inc.'s Supplemental Brief Regarding Defendants' Licencing Agreement and Moiton to Dismiss (Jun. 9, 2006)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

• 2006 WL 1786788 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff Dex Products Inc.'s Memorandum in Opposition to Defendants' Motion to Dismiss or Transfer (May 5, 2006)Original Image of this Document (PDF)

• 2006 WL 1417728 (Trial Motion, Memorandum and Affidavit) Plaintiff DEX Products Inc.'s Memorandum in Opposition to Defendants Motion to Dismiss or Transfer (Apr. 28, 2006)Original Image of this Document (PDF)

• 2006 WL 1007836 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss under F.R.C.P. 12(b)(3) or Transfer under 28 U.S.C. s1404(a) (Mar. 31, 2006)Original Image of this Document (PDF)

• 2006 WL 729997 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss under F.R.C.P. 12 (b)(3) or Transfer under 28 U.S.C. s 1404(A) (Feb. 7, 2006)Original Image of this Document (PDF)

• 3:05cv05126 (Docket) (Dec. 12, 2005)

• 4:05cv05126 (Docket) (Dec. 12, 2005)

• 2005 WL 4581743 (Trial Motion, Memorandum and Affidavit) Supplemental Brief or Memorandum of Points and Authorities Requested by the Court Addressing Whether Barbara S. Houghteling is An Indispensable Party to This Litigation (2005)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Not Reported in A.2d                                                    Page 1
Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)
**(Cite as: 2004 WL 2521295 (Del.Ch.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
THE CAPITAL GROUP COMPANIES, INC., a Delaware corporation, Plaintiff,
v.
TIMOTHY D. ARMOUR and Nina L. Ritter, individually and as Trustees of the Ritter-Armour Trust, dated August 6, 1991, as amended, Defendants.
**No. Civ.A. 422-N.**

Submitted Oct. 4, 2004.
Oct. 29, 2004.
Decided Oct. 29, 2004.
Revised Nov. 3, 2004.

Catherine G. Dearlove, James H. McMackin, III, Richards, Layton & Finger, P.A., Wilmington, Delaware; William J. Meeske, Latham & Watkins LLP, Los Angeles, California, for the Plaintiff.

David C. McBride, Adam W. Poff, Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware; John Gaims, Amy L. Rice, Gaims, Weil, West & Epstein, LLP, Los Angeles, California, for Nina L. Ritter and Nina L. Ritter as Trustee of the Ritter-Armour Trust.

William M. Lafferty, Morris Nichols Arsht & Tunnell, Wilmington, Delaware, for Timothy D. Armour.

*MEMORANDUM OPINION AND ORDER*
LAMB, Vice Chancellor.

**I.**

**\*1** A Delaware corporation brought this suit against the two trustees of a trust, who are husband and wife, seeking a declaration as to the validity and enforceability of certain contractual stock transfer restrictions alleged to apply to shares of its Class A common stock owned by the trust. [FN1] The two defendants

are parties to a divorce proceeding pending in the Superior Court of California and, in connection with that proceeding, the wife has claimed an interest in the stock now owned by the trust. The corporation seeks to litigate that claim by its complaint in this court.

> FN1. All references to "stock" refer to CGC's Class A common stock, unless otherwise noted.

The contract containing the transfer restrictions at issue stipulates to Delaware as the forum for the resolution of all disputes based on or relating to the contract and expresses the parties' consent to the jurisdiction of this court for the purpose of such suits. The wife has moved to dismiss the complaint, claiming a lack of personal jurisdiction over her. The court concludes that the objecting trustee is bound by the consent to jurisdiction clause in the contract and must defend the action in Delaware. The court also concludes that it may properly exercise jurisdiction with respect to closely related claims asserted against her in her individual capacity.

**II.**

The Capital Group Companies, Inc. ("CGC") is a privately-held Delaware corporation with its principal place of business in Los Angeles, California. The defendants are Timothy Armour and Nina Ritter, husband and wife, who are the trustees of the Ritter-Armour Revocable Trust dated August 6, 1991, as amended (the "Trust"). Armour is an Executive Vice President of Capital Research and Management Company, a subsidiary of CGC, and a director of CGC. Ritter is a resident of California and has no substantial contacts with Delaware, beyond the stock at issue in this suit.

CGC requires all persons purchasing shares of its common stock to become parties to a Stock Restriction Agreement ("SRA") that contains several provisions relevant to this case, including a general restriction on transfer, [FN2] and a right to redeem [FN3] that allows the stock to be repurchased at a formula price [FN4] upon its transfer to a non-authorized

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)

**(Cite as: 2004 WL 2521295 (Del.Ch.))**

transferee. [FN5] In general, the SRA precludes the transfer of stock to any non-employee of CGC (such as Ritter) and allows CGC the right to repurchase shares if they are transferred to a non-employee. The SRA also contains a governing law and jurisdiction provision, essentially a forum selection/consent to jurisdiction clause, stating that all actions relating to the SRA shall be brought in the state courts of Delaware or the district court of Delaware, and that CGC and each stockholder irrevocably submit to the jurisdiction of those courts for those purposes. [FN6]

> FN2. Section 2.1 of the SRA provides, in pertinent part:
> No Stockholder shall sell, assign, transfer (whether by merger, operation of law or otherwise), dispose of or encumber any of the Stockholder's Shares or any interest therein except as specifically provided in this Agreement. Any purported or attempted sale, assignment, transfer, disposition or encumbrance of Shares or any interest therein not in strict compliance with this Agreement shall be void and have no force or effect.

> FN3. SRA § 4.8.1.

> FN4. SRA § 6. The Formula Price would allow the stock held in the Trust to be repurchased at a substantial discount from its estimated value of over $30 million.

> FN5. SRA § 4.2.

> FN6. Section 10.8 of the SRA provides, in pertinent part:
> .... CGC and each Stockholder agree that any action or proceeding based upon or relating to this Agreement shall be brought and maintained exclusively in the courts of the State of Delaware or in the United States District Court of Delaware. CGC and each of the Stockholders hereby irrevocably submit to the jurisdiction of the Courts of Delaware ... for the purposes of any such action or proceeding....

In 1984, Armour and Ritter were married and, in 1989, began buying CGC common stock. All stock

purchased between 1989 through mid-1998 was purchased in Armour's name. In October 1998, for tax planning purposes, and with CGC's consent, the defendants placed the stock owned by Armour into the Trust. In order to comply with the SRA, and to gain CGC's consent to the transfer, the defendants amended the Trust (the "Trust Amendment"), several provisions of which are relevant to the disposition of this case. The Trust Amendment provides that the Trust may not distribute any stock held in the trust without the consent of CGC. [FN7] The Trust Amendment also makes reference to the SRA and provides that, upon revocation of the Trust, if the stock is not immediately transferred to Armour, then CGC has the right to repurchase. [FN8]

> FN7. Trust Amendment Art. IV, § E states, in pertinent part:
> Notwithstanding any trust provision that requires or permits a distribution of trust assets to me made by the Trustee to any trust beneficiary, the Trustee shall not distribute any [stock] to any trust beneficiary without the prior written consent of CGC, which consent may be granted or withheld in CGC's sole and absolute discretion. If CGC gives prior written consent to a transfer, each such Permitted Transferee shall execute and deliver to CGC a Joinder Agreement as a condition of any transfer. Any Transfer of [stock] other than to a Permitted Transferee who has executed and delivered to CGC the required Joinder Agreement shall be a "Non-Authorized Transferee" (as that term is defined in the [SRA] ).

> FN8. Trust Amendment Art. IV, § F states, in pertinent part:
> Upon revocation or termination of the trust, or in the event the trust is amended in a manner inconsistent with the [SRA] as determined by CGC, the Trustee shall promptly either transfer all [stock] to [Armour], if he is living and if such transfer is authorized by the terms of the trust. If such transfer is not so authorized or if [Armour] is not then living, the Trustee shall offer to sell, pursuant to the requirements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and procedures set forth in the [SRA], all [stock] held by the Trustee. If [stock is] to be transferred by the Trustee to [Armour], he shall execute and deliver to CGC a Joinder Agreement as a condition of any transfer. The Trustee shall not distribute or otherwise transfer [stock] to any "Person" (as that term is defined in the [SRA] ) (including a trust beneficiary) without the prior written consent of CGC, which consent may be granted or withheld in CGC's sole and absolute discretion.

**\*2** In connection with transferring the stock to the Trust, in their capacities as trustees, Armour and Ritter signed a so-called Joinder Agreement, [FN9] agreeing to be bound by the SRA. Thereafter, through 2002, again with the consent of CGC, the parties continued to purchase stock in the name of the Trust. In connection with those purchases, the defendants signed so-called Purchaser Representation Letters, [FN10] again agreeing to be bound by the SRA. [FN11] The Trust, as amended, provides that either Ritter or Armour may act on behalf of the Trust, but that only Armour can vote the stock held by the Trust. [FN12]

FN9. The Joinder Agreement states, in pertinent part:
We hereby agree and state that by signing this Joinder Agreement, the trust and each of us individually, in our capacity as trustees of the trust, are parties to, accept all of the obligations of, and are bound by all of the terms of the [SRA] and all of the provisions with respect to A Shares set forth in the trust * * * We understand that all stock certificates that we are acquiring as trustees have a restrictive legend and may not be sold, assigned, pledged or otherwise transferred except in accordance with the provisions of the [SRA] and state and federal securities laws.

FN10. The Purchaser Representation Letter states, in pertinent part:
The Purchaser has read and understood all of the terms of the [SRA] and agrees to accept all of the obligations of, and to be bound by all of the terms of such Agreement with respect to all Stock of the Company presently being purchased or now owned by the Purchaser[.]

FN11. There is considerable dispute as to whether Ritter signed the Joinder Agreement and the Purchaser Representation Letters in her individual capacity, or only as a trustee. This issue is discussed more fully, *infra.*

FN12. Trust Amendment Art. IV, § H.

In June 2003, Armour filed for divorce in California. The stock held in the Trust represents the bulk of the value of the community property from the marriage. In connection with the divorce action, Ritter has asked for an award of a direct or indirect interest in the stock held in the Trust [FN13] and sought, unsuccessfully, to join CGC as a party to the divorce proceeding. [FN14]

FN13. "Ritter believes that continued ownership of the stock is so valuable and beneficial that to receive anything less than an inkind division would result in an unequal division of the community estate." Br. in Support of Mot. and Decl. for Joinder, dated May 27, 2004, filed by Nina L. Ritter in *Armour v. Ritter,* Case No. 390510 (Super. Ct., Los Angeles County, CA June 24, 2004) at 10.

FN14. *Id.* at 4.

On May 5, 2004, CGC filed this action, against the defendants in their capacities as trustee, seeking the following judgment:
a. declaring that the SRA is valid and enforceable;
b. declaring that the award of a record, beneficial or other interest to Ms. Ritter in connection with the California Divorce Action would constitute an unauthorized transfer, such that CGC would be entitled to repurchase or redeem any CGC stock transferred to Ms. Ritter (directly, beneficially or otherwise) in accordance with the SRA and CGC's Certificate of Incorporation. [FN15]

FN15. Compl. p. 9.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)

**(Cite as: 2004 WL 2521295 (Del.Ch.))**

After Ritter moved to dismiss the original complaint, the court granted CGC's motion for leave to file an amended complaint. In the amended complaint, CGC sought the same declaratory relief against the defendants in their capacity as trustees and added claims against Ritter individually. On September 9, 2004, pursuant to Court of Chancery Rule 12(b)(2), Ritter renewed her motion to dismiss for lack of personal jurisdiction.

### III.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the nonresident defendant. [FN16] In determining whether it has personal jurisdiction over a nonresident defendant, the court will generally engage in a two-step analysis. First, was service of process on the nonresident authorized by statute? Second, does the exercise of jurisdiction, in the context presented, comport with due process? [FN17] However, a party may expressly consent to jurisdiction by contract. [FN18] If a party properly consents to personal jurisdiction by contract, a minimum contacts analysis is not required. [FN19] Therefore, if the court concludes that Ritter is bound by the forum selection/consent to jurisdiction clause, then the court can exercise personal jurisdiction over her.

> FN16. *See Plummer & Co. Realtors v. Crisafi,* 533 A.2d 1242, 1244 (Del.Super.1987); *see also Finkbiner v. Mullins,* 532 A.2d 609, 617 (Del.Super.1987) (stating that, on a Rule 12(b)(2) motion, "the burden is on the plaintiff to make a specific showing that this Court has jurisdiction under a long-arm statute.") (citing *Greenly v. Davis,* 486 A.2d 669 (Del.1984)).

> FN17. *LaNuova D & B, S.P.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986).

> FN18. *Hornberger Mgmt. Co. v. Haws & Tingle Gen. Contrs.,* 768 A.2d 983, 987 (Del.Super.2000); *see also Sternberg v. O'Neil,* 550 A.2d 1105, 1109 n. 4 (Del.1988) ("A party may submit to a given court's jur-

isdiction by contractual consent."); *cf. Del Pharm., Inc. v. Access Pharm., Inc.,* 2004 WL 1631355, at *1 (Del. Ch. July 16, 2004) (enforcing a forum selection clause, which designated New York as the exclusive forum for adjudication, to dismiss suit).

> FN19. *Hornberger,* 768 A.2d at 987; *USH Ventures v. Global Telesystems Group, Inc.,* 1998 WL 281250, at *8 (Del.Super. May 21, 1998) (Letter Op.).

In addition, CGC contends that this court has ancillary jurisdiction over Ritter in her personal capacity. Alternatively, CGC argues that Ritter is equitably estopped from disclaiming the burden of the forum selection clause after receiving the benefit of the contract for stock purchases. [FN20]

> FN20. CGC also makes two additional arguments that Ritter is bound by the SRA, neither of which is persuasive.
>
> First, CGC argues that § 1100 of the California Family Code gave Armour the power to consent to personal jurisdiction over Ritter in Delaware. Cal. Fam. C. § 1100(a) states, in pertinent part: "[E]ither spouse has the management and control of the community personal property ... with like absolute power of disposition...." In essence, CGC argues that Section 1100 makes Armour the agent for Ritter by statute. CGC does not, however, cite a single case in which a California court invoked the California statute to allow one spouse to consent to personal jurisdiction for another spouse. The court finds it unnecessary to address this novel issue under California law.
>
> Second, CGC makes the corollary common law argument that Ritter is subject to suit in Delaware because Armour, acting as her agent, consented to jurisdiction in Delaware in suits relating or arising out of the SRA. Delaware law does not, however, recognize a presumption of agency in a marital relationship. *Facciolo v. State, Div. of Revenue,* 358 A.2d 880, 881 (Del.1976). Furthermore, simply because a fiduciary relationship ex-

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)
**(Cite as: 2004 WL 2521295 (Del.Ch.))**

ists between two people does not mean that one may bind the other to contracts with third persons. *William M. Young Co. v. Bacon, 1991 WL 89817, at \*5 (Del.Super. May 1, 1991).* Instead, the party asserting the existence of agency has the burden of proving consent by the principal. *Facciolo, 358 A.2d at 881.* CGC alleges that Armour acted as Ritter's agent in purchasing the stock. CGC further alleges that Armour's status as agent was evidenced by Ritter's consent to the stock purchases and by her regular execution of documents relating to the couple's investment in stock. Even assuming the truth of these allegations, they are insufficient to establish that Armour had the authority to consent to this court having personal jurisdiction over Ritter. Binding Ritter in such a way would go beyond the scope of Ritter's authority. *See, e.g., Facciolo, 358 A.2d at 881* (holding that, even though husband had authority to a prepare tax return for wife, he did not have authority to sign the tax return and she was, therefore, not liable for it).

**\*3** In response, Ritter argues that CGC's dispute is with her personally, and that she never personally consented to the jurisdiction of this court. She asserts that she never read the SRA, the Joinder Agreement, or the Purchaser Representation Letters and that she was completely unaware that she was consenting to jurisdiction by this court. Furthermore, she argues that it would be so burdensome as to be inequitable to force her to litigate this case in Delaware.

A. Consent To The Jurisdiction Of This Court

CGC alleges that Ritter has consented to the jurisdiction of this court in suits against the Trust because she is bound by the forum selection/consent to jurisdiction clause contained in the SRA. Forum selection/consent to jurisdiction clauses are "presumptively valid" and should be "specifically" enforced unless the resisting party "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching." [FN21]

FN21. *M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (U.S.1972); accord Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n. 14 (U.S.1985).*

The Joinder Agreement and Purchaser Representation Letters state that the signatory "carefully read" the SRA and agreed to be bound by its terms. The Trust Amendment also refers to the SRA and provides that the signatory will be bound by its terms. It is not disputed that Ritter signed all these documents in her capacity as trustee. CGC is clearly correct in arguing that, if the court concludes that the amended complaint states a claim for relief against the Trust, this court has jurisdiction over Ritter as trustee.

Ritter argues, however, that she is not bound by the SRA in her individual capacity and that it is only with her individually that CGC has a dispute.

1. A Claim Against The Trust

The amended complaint alleges the existence of a dispute concerning the transfer restrictions of the SRA arising out of the divorce; namely, that Ritter intends to seek an in-kind distribution of the CGC stock in the divorce. The amended complaint sues both Ritter and Armour in their capacities as trustees and seeks a declaration that, as trustees, they cannot transfer the stock, or any interest in the stock, to Ritter individually because such a transfer would violate the SRA. There is no question that the Trust is bound by the Joinder Agreement, the Purchaser Representation Letters and, through these, the SRA. It was the Trust that was party to the contract purchasing the stock, and the stock is held in the name of the Trust. Thus, if the amended complaint states a claim for relief against the Trust, the court has the power to exercise jurisdiction over Ritter as trustee. [FN22]

FN22. Ritter's claim that she did not read the SRA does not mean that the Trust is not bound by it. It is undisputed that Armour signed and knew the contents of the Joinder Agreement, the Purchaser Representation Letters, and the SRA. Nor is it disputed that his signature alone was sufficient to bind the Trust. Ritter also does not dispute that her

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

signature on the documents was sufficient to bind the Trust, whether she read it or not. She only argues that her failure to read the SRA means that it cannot bind her in her individual capacity. Thus, Ritter's contention that she did not read the documents is immaterial to the issue of whether the Trust is bound by the SRA, and equally immaterial as to whether she is bound by the SRA as trustee and properly subject to the jurisdiction of this court.

It should also be noted that Ritter does not claim fraud or collusion by CGC in obtaining Ritter's written consent. Nor does she argue that CGC did not reasonably rely upon evidence of her consent. For these reasons, as between CGC and Ritter in her capacity as trustee, there is no reason to conclude that Ritter has not effectively consented to suit in this jurisdiction in her capacity as trustee.

Ritter argues, however, that CGC has no real dispute with the Trust and that the Trust is not a proper party to this suit, because no meaningful relief can be entered against the Trust that will affect the disposition of the CGC stock in the divorce. This is so, she claims, because the Trust will be revoked as a result of the divorce and the community property contained therein will be distributed to Ritter and Armour without any action on the part of the trustees. In support of this argument, Ritter filed a declaration of her divorce attorney, Bruce Cooperman.

**\*4** The Cooperman Declaration does not adequately support Ritter's position. Instead, it only states that one of the *possible* outcomes of the divorce is an in-kind distribution of the stock held by the Trust. [FN23] The Cooperman Declaration goes on to state that "[i]f the CGC stock was divided in-kind" then "either or both of the parties would revoke the trust." [FN24] He does not say that the Trust will necessarily be revoked, nor does he say that an in-kind distribution is the most likely outcome, only that its revocation is one of the *possible* dispositions of the divorce proceeding. Ritter herself does not say that she would revoke the Trust. On the contrary, she has said that she would favor maintaining the Trust and her beneficial interest in it. [FN25]

FN23. Cooperman Decl. ¶ 7.

FN24. Cooperman Decl. ¶ 9.

FN25. "I am agreeable to continuing the status quo with respect to our stock through such a trust arrangement." Decl. of Nina Ritter ¶ 10.

Thus, the court concludes that the amended complaint properly states a claim for relief against the Trust. The Trust is a party to the SRA and the amended complaint alleges that Ritter is seeking to obtain rights in CGC shares owned by the Trust that are allegedly inconsistent with the terms of the SRA. That claim, although advanced by Ritter in her individual capacity, gives rise to a ripe controversy between CGC and the Trust as owner of the stock. Ritter is properly named as a defendant on that claim in her trustee capacity.

2. Ancillary Jurisdiction

This court also has discretion to exercise jurisdiction over Ritter personally under principles of ancillary jurisdiction. The court may exercise its discretion to litigate a claim for which personal jurisdiction would not otherwise exist where the claim is brought along with other claims for which jurisdiction does exist that are sufficiently related to that claim to warrant prosecution before a single tribunal. [FN26] This exercise of such discretion is consistent with a policy of maximizing judicial economy and efficiency where the substantive due process rights of the parties are not affected. [FN27]

FN26. *Fitzgerald v. Chandler,* 1999 WL 1022065, at \*4 (Del. Ch. Oct. 14, 1999) (asserting jurisdiction over a tort claim, for which personal jurisdiction would not otherwise exist, where the claim was brought along with a contract claim, and the tort claim was sufficiently related to warrant prosecution before a single tribunal); *Technicorp Int'l II, Inc. v. Johnson,* 1997 WL 538671, at \*19 (Del. Ch. Aug. 25, 1997) (asserting personal jurisdiction over corporate director defendants for non-fiduciary type claims that are merely factually related

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)
**(Cite as: 2004 WL 2521295 (Del.Ch.))**

to other claims alleging breaches of fiduciary duties); *Baldwin v. Russell,* 1990 WL 13484, at *1 (Del. Ch. Feb. 7, 1990) (same); *Manchester v. Narragansett Capital, Inc.,* 1989 WL 125190, at *7 (Del. Ch. Oct. 19, 1989)* ("The issue is whether plaintiff's contract claims are sufficiently related to the claims alleging breach of fiduciary duty by the nonresident director defendants so as to require them to appear and defend the contract claims in Delaware.").

FN27. *Fitzgerald,* 1999 WL 1022065, at *4.

As explained earlier in this opinion, this court can exercise jurisdiction over Ritter in her capacity as trustee. In addition, to the extent that the claims affect Ritter in her individual capacity, they are sufficiently related to the claim against her as trustee. All of these claims involve the same alleged facts and seek the same relief; namely a declaration that the SRA is valid and that the Trust cannot transfer the stock to Ritter "directly, beneficially, or otherwise." [FN28] Thus, the factual and legal disputes involved in litigating the claims against Ritter individually will be the same as, or very similar to, the suit against Ritter as a trustee.

FN28. Compl. p. 9.

Moreover, exercise of jurisdiction over Ritter in her personal capacity comports with due process. Since Ritter is subject to this court's jurisdiction on the claim brought against her as trustee, it is not necessary to engage in a comprehensive personal jurisdiction review "from scratch." [FN29] Instead, the inquiry is whether Ritter would be substantively or unfairly prejudiced by this court's exercise of jurisdiction over her personally and, if not, whether judicial economy warrants such an exercise. [FN30]

FN29. *Fitzgerald,* 1999 WL 1022065, at *4.

FN30. *Id.*

**\*5** Ritter would suffer no prejudice if this court were to exercise jurisdiction over her personally in this matter. This court would be deciding whether the Trust can distribute the stock, or an interest in the

stock, to her. Any personal interest she has in the stock is closely related to her interest as a trustee, since the Trust is the owner of the stock. Obviously, all claims will be adjudicated together. The exercise of jurisdiction would also not impose any additional burdens upon Ritter than already flow from the suit against her as a trustee.

The adjudication of CGC's claims by this court will also not offend notions of comity. This court is, of course, mindful that a divorce proceeding is pending in another State's court. However, all this court has been asked to decide is the scope of the property interest that the Trust has in the CGC stock under the terms of the SRA. The SRA is governed by Delaware law and specifically chooses Delaware as the forum to resolve all disputes relating to that agreement. This court sees no likelihood that its decision will interfere with the ability of the California court to resolve the matters at issue in the divorce. On the contrary, this court expects that its judgment will aid the California court in awarding a fair and equitable distribution of property that is also protective of CGC's rights under the SRA, whatever they may prove to be.

B. Equitable Estoppel

As an alternative ground for this court to assert jurisdiction over Ritter, CGC argues that Ritter is equitably estopped from disclaiming the forum selection clause. Specifically, CGC argues that Ritter is trying to assert a contractual right, namely, an ownership interest in the stock held in the Trust, while disclaiming a contractual burden, namely, the forum selection clause contained in the SRA.

In order to find that Ritter is bound by the forum selection clause, it is not necessary to find that she was a party to the SRA. Contractual forum selection clauses have been enforced against third-party beneficiaries and those closely related to the contract. In *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* [FN31] the Third Circuit disregarded the argument that a forum selection clause was not binding against a non-signatory to the underlying contract. The Court first noted that forum selection clauses are "presumptively valid" and have generally been enforced because "those clauses promote stable and depend-

able trade relations." [FN32] The Court also stated that "the law of contracts ... has long recognized that third-party beneficiary status does not permit the avoidance of contractual provisions otherwise enforceable ." [FN33] The Third Circuit concluded that introducing into the common law a third-party beneficiary exception, allowing third-party beneficiaries to reap the benefits of a contract while avoiding its burdens, would be inconsistent with these principles. [FN34]

> FN31. 709 F.2d 190, 202 (3d Cir.1983).

> FN32. *Id.* at 202-03.

> FN33. *Id.* at 203; *accord Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1296 (3d Cir.1996) (stating that third-party beneficiary status does not permit the avoidance of contractual provisions that are otherwise enforceable).

> FN34. *Coastal Steel,* 709 F.2d at 203.

Similarly, in *Hadley v. Shaffer,* [FN35] the District Court of Delaware enforced a forum selection clause against a non-signatory to the contract. In reaching its conclusion, the court followed a three-part inquiry in determining whether a party who does not sign a contract, can be bound by a forum selection clause contained therein. First, is the forum selection clause valid? Second, are the defendants third-party beneficiaries, or closely related to, the contract? Third, does the claim arise from their standing relating to the merger agreement? [FN36]

> FN35. 2003 WL 21960406, (D.Del. Aug. 12, 2003)

> FN36. *Id.* at *4.

### 1. Is The Forum Selection Clause Valid?

**\*6** Forum selection clauses are presumptively valid and have been regularly enforced. [FN37] Generally, forum selection clauses should be enforced so long as enforcement would not place any of the parties at a substantial and unfair disadvantage or otherwise deny a litigant her day in court. [FN38] Therefore, the defendant bears a heavy burden in claiming that forum

selection clause is invalid. As the United States Supreme Court noted in *M/S Bremen,* "it is difficult to see why any such claim of inconvenience should be heard to render [a] forum clause unenforceable" when it is the product of "a freely negotiated private ... commercial agreement [which] contemplated the claimed inconvenience." [FN39]

> FN37. *See, e.g., Dayhoff,* 86 F.3d at 1303; *Coastal Steel,* 709 F.2d at 202.

> FN38. In *M/S Bremen,* 407 U.S. at 18, the United States Supreme Court stated:
> [I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

> FN39. *Id.* at 16.

Ritter has alleged that she will be inconvenienced if she is forced to litigate in this court due to the necessity of hiring local counsel, of traveling back and forth from her home in California, and of being unable to care for her three young children. While the court is not blind to these considerations, they are no greater than any party would face in litigating a case in any non-local forum. Moreover, there is nothing in the record that suggests that these burdens would deny Ritter her "day in court." Because Ritter has not alleged any burden sufficient to overcome the presumption in favor of validity, the court concludes that the forum selection clause is valid.

### 2. Is Ritter Closely Related To The SRA?

CGC does not allege that Ritter is a third-party beneficiary of the SRA. Instead, CGC argues that she is closely related to the SRA. This is a subtle, but important, distinction. [FN40] CGC does not argue that Ritter is a third-party beneficiary because, as Ritter rightfully points out, the SRA expressly excludes third-party beneficiaries. [FN41] Ritter also argues that that she is not closely related to the SRA because she derived no direct benefit from the SRA.

FN40. The Third Circuit defined the difference this way:

Under the third party beneficiary theory, a court must look to the intentions of the parties at the time the contract was executed. Under the equitable estoppel theory, a court looks to the parties' conduct after the contract was executed. Thus, the snapshot this Court examines under equitable estoppel is much later in time than the snapshot for third-party beneficiary analysis. *E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 200 (3d Cir.2001); *cf. Hadley,* 2003 WL 21960406, at *6 (holding that the defendant was "closely related" for the same reasons they were third-party beneficiaries); *Jordan v. SEI Corp.,* 1996 WL 296540 (D. Pa. June 4, 1996) (same).

FN41. Section 10.17 of the SRA provides, in pertinent part:

*No Third Party Beneficiaries.* This Agreement shall not be construed in any manner to constitute a contract for the benefit of or provide any rights to, any Person who is not a Stockholder, any third parties, or any prior creditors of, or any claimants of, the parties hereto.

The doctrine of equitable estoppel prevents a non-signatory to a contract from embracing the contract, and then turning her back on the portions of the contract, such as a forum selection clause, that she finds distasteful. [FN42] As the Fourth Circuit explained:

FN42. *Dupont,* 269 F.3d at 200; *see also Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (3d Cir.1999) (holding non-signatory bound by contract under which it received the direct benefits of lower insurance and the ability to sail under the French flag).

In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause

when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would ... disregard equity." [FN43]

FN43. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir.2000) (internal citation omitted); *see also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (U.S.1974) ("An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause.").

Generally, cases applying this doctrine involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the forum selection clause in the contract. [FN44] In general, a non-signatory is estopped from refusing to comply with a forum selection clause when she receives a "direct benefit" from a contract containing a forum selection clause. [FN45]

FN44. *See, e.g., Tencara Shipyard,* 170 F.3d at 353 (non-signatory derived benefit from contract and could not avoid the arbitration clause contained therein).

FN45. *Int'l Paper,* 206 F.3d at 418; *Tencara Shipyard,* 170 F.3d at 353.

**\*7** Ritter contends that she derived no direct benefit from the SRA. This is incorrect. Originally, the stock was held individually in Armour's name. While Ritter had a community property interest in the stock, she did not have a direct, beneficial interest in the stock. By putting the stock in trust, Ritter gained just such a beneficial interest. Because CGC would not have allowed these transfers without the Trust and Armour agreeing to the SRA, the SRA provided Ritter with a direct benefit. Furthermore, the subsequent purchases of stock were made by the Trust, of which she is a trustee. These subsequent purchases would also not have been allowed without the SRA. Ritter's claim to a community property interest in the stock held in Trust derives from this transfer and these purchases.

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)
**(Cite as: 2004 WL 2521295 (Del.Ch.))**

Therefore, she received a direct benefit from the SRA and the court finds that she is closely related to the SRA.

3. Do The Present Claims Arise From Ritter's Standing Relating To The SRA?

In order for Ritter to be bound by the terms of the forum selection clause, the claims asserted must arise from the SRA. [FN46] They clearly do. This is a suit to enforce the SRA with respect to stock held in the Trust. Therefore, the claims clearly arise from Ritter's standing relating to the SRA.

> FN46. *Hadley,* 2003 WL 21960406, at *6; *see also DuPont,* 269 F.3d at 197.

The court concludes, from this analysis, that Ritter is equitably estopped from asserting that the SRA does not apply to her.

IV.

For all the foregoing reasons, Ritter's motion to dismiss is DENIED. IT IS SO ORDERED.

Not Reported in A.2d, 2004 WL 2521295 (Del.Ch.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3267341 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for Summary Judgment (Nov. 16, 2004)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 4

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
**(Cite as: 2005 WL 2216889 (D.Del.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SRU BIOSYSTEMS, INC., Plaintiff,
v.
Douglas S. HOBBS, James J. Cowan and Coho Hold-
ings, Llc, Defendants.
**No. Civ. 05-201-SLR.**

Sept. 13, 2005.

John G. Day, Steven J. Balick, Ashby & Geddes,
Wilmington, DE, for Plaintiff.

Dale R. Dube, Blank Rome LLP, Wilmington, DE,
for Defendants.

MEMORANDUM ORDER
ROBINSON, J.

**\*1** At Wilmington this 13th day of September, 2005,
having considered defendants' motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I.11)
is denied for the reasons that follow:

1. Introduction. On April 7, 2005, plaintiff SRU
Biosystems, Inc. ("SRU") filed suit pursuant to 35
U.S.C. § 256 against defendants Douglas S. Hobbs
("Hobbs"), James J. Cowan ("Cowan") and CoHo
Holdings LLC ("CoHo"). (D.I.1) Plaintiff seeks to
have Dr. Brian Cunningham added as a named in-
ventor on U.S. Patent No. 6,870,624 ("the '624 pat-
ent") and U.S. Patent No. 6,791,757 ("the '757 pat-
ent"). [FN1] Alternatively, plaintiff seeks a Declarat-
ory Judgment that the patents in suit are unenforce-
able because of the alleged inequitable conduct of the
defendants Hobbs and Cowan, the named inventors,
as well as their attorneys. On May 7, 2005, defend-
ants filed their answer and counterclaims for patent
infringement against SRU. (D.I.7) SRU has denied
the counterclaim. (D.I.8) On July 1, 2005, defendants

moved to transfer the action to the United States Dis-
trict Court for the District of Massachusetts. (D.I.11,
12) Plaintiff filed its opposition to which defendants
have replied. (D.I.15, 16)

    FN1. Collectively referred to as "the patents
    in suit."

2. Background. SRU is a Delaware corporation that
developed and is close to commercializing a bio-
sensor device to be used in the field of diagnostics
and drug research. (D.I. 1 ¶ 10) SRU has over thirty
pending U.S. and foreign patent applications that re-
late to the biosensor concept. Dr. Brian Cunningham
("Cunningham") is a research scientist, one of the
founders of SRU and Chief Technical Officer of
SRU. Cunningham resides in Illinois and has as-
signed all of his inventions to SRU. (Id. at ¶ 7)

3. Hobbs is the president of CoHo and Cowan is a
manager of Coho. Cowan and Hobbs reside in Lex-
ington, Massachusetts. Cowan and Hobbs are named
inventors on the patents in suit and have assigned
their rights in the patents to CoHo. Coho is a limited
liability company organized under the laws of the
State of Delaware with its principal place of business
in Burlington, Massachusetts. (D.I.12, Ex. C, Ex. A)
In addition to Cowan and Hobbs, Coho employs one
other person. Coho does not have a place of business
in Delaware and does no business in the State.
(D.I.12, Ex. C)

4. In October 2000, SRU hired Hobbs as a consultant
to assist Cunningham in the fabrication of the optical
component of a biosensor product. Hobbs continued
as a consultant until June 30, 2001. Cunningham filed
a number of patent applications related to a biosensor
device and assigned those applications to SRU. He
recognized Hobbs as a co-inventor on certain applica-
tions. SRU contends that Hobbs initially agreed to as-
sign his rights to the patents, but has had since re-
fused to do so. [FN2]

    FN2. SRU claims that Hobbs signed a
    Memorandum of Understanding ("MOU")
    memorializing this agreement.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
**(Cite as: 2005 WL 2216889 (D.Del.))**

5. Subsequently, Hobbs and Cowan filed their own applications on a biosensor and assigned those applications to CoHo, but did not name Cunningham as an inventor. Those applications were issued as the patents in suit.

**\*2** 6. Other litigation. In December 2004, SRU filed a lawsuit against Hobbs in Massachusetts state court for breach of contract and unfair competition. (D.I.15, Ex. D) SRU seeks to enforce the terms of the MOU and requests a permanent injunction ordering Hobbs to execute an assignment of the applications to SRU. The initial filings describe the lawsuit as follows:

> This is a case ... involving a claim to determine the use or status of intellectual property. The details are as follows: Defendant Hobbs worked for SRU as a consultant for the development of a novel colorimetric resonant biosensor. Before beginning work as a consultant, Hobbs agreed to keep all information relating to the biosensor technology confidential ... Hobbs executed a MOU in which he agreed to "assign irrevocably and exclusively on a royalty free basis to SRU ... all rights pertaining to the jointly-developed technology as it applies to biochemical and biological testing, sensing and/or detection. Subsequent to signing the MOU, SRU filed numerous patent applications relating to the development of the biosensor technology ... SRU has asked Hobbs to execute an assignment of the applications pursuant to the terms of the MOU, but Hobbs has refused to execute the assignment.
> (D.I.16, Ex. D)

7. On June 29, 2005, the Massachusetts Superior Court entered an interim order directing Hobbs to comply with discovery and deferring decision on the "prosecution bar" issue until a later date. (D.I.15, Ex. G)

8. SRU has also commenced actions against Hobbs, Cowan and CoHo in Federal Court in Canada and in Ontario Superior Court. (D.I.12, Ex. D, E) These lawsuits are pending.

9. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought

for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

10. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

11. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Device Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

**\*3** 12. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)
(Cite as: 2005 WL 2216889 (D.Del.))

manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

13. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

14. Discussion. Defendants submit that transfer is warranted because Massachusetts is the more convenient form and SRU's preferred choice of forum. (D.I.12) Specifically, Massachusetts is the principal place of business for SRU, CoHo and where Hobbs and Cowan reside. Further, all events, witnesses and the execution of the MOU occurred in Massachusetts while, conversely, there is no connection to Delaware. Moreover, because SRU's Massachusetts action involves the same set of events, defendants assert that the court should sua sponte consolidate the two cases as well as the Canadian actions and transfer to the District of Massachusetts.

15. SRU opposes transfer on several grounds. First, it contends that the action at bar and the Massachusetts case involve different patents, different issues and different legal standards. Second, as a Delaware corporation, SRU's choice of forum should be afforded deference. Third, SRU asserts that the motion to transfer is part of a strategy to undermine the litigation.

16. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the District of Massachusetts are insufficient to warrant a transfer. Defend-

ants' complaints about litigating here are outweighed by the fact that CoHo has enjoyed the benefits and protections as a limited liability company in Delaware and that the state has an interest in litigation regarding companies like SRU that are incorporated within its jurisdiction. Moreover, there is nothing of record to reflect any problems with potential witnesses refusing to travel to Delaware for trial. In fact, the record is devoid of any specific problems with witnesses, documents or business operations posed by litigating in Delaware. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose is not overly burdensome.

*4 17. Clearly, the dispute at bar has become a very personal one between the parties. The dispute is now being litigated by four different courts in four different judicial systems, none of which has the authority to consolidate the cases. [FN3] The papers submitted in connection with this matter suggest that neither plaintiff nor defendants are being entirely reasonable in their litigation strategies. Therefore, while the court's conclusion to deny transfer is consistent with its resolution of other transfer motions, the court will reconsider the transfer issue or, alternatively, impose sanctions if it determines that either plaintiff or defendants are abusing the judicial process while pursuing resolution of the lawsuit initiated here.

> FN3. To the extent defendants implicitly argue that the "first-filed rule" applies, the court disagrees. The first-filed rule requires that, where cases are pending in "federal courts of equal rank", *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988), "the court which first had possession of the subject must decide it" while the second filed action should be stayed or transferred to the court where the first filed action is pending. *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941)(quoting *Smith v. McIver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). There are no other federal district court cases pending; therefore, this rule has no applicab-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)

**(Cite as: 2005 WL 2216889 (D.Del.))**

ility.

18. Conclusion. For the reasons stated, defendant's motion to transfer (D.I.11) is denied.

Not Reported in F.Supp.2d, 2005 WL 2216889 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 1171972 (Trial Pleading) Complaint (Apr. 7, 2005)Original Image of this Document (PDF)

• 1:05cv00201 (Docket) (Apr. 07, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 758338 (D.Del.)
**(Cite as: 2004 WL 758338 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Robert Joseph COLEMAN, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, Defendant.
**No. Civ.A. 03-485-KAJ.**

April 1, 2004.

David P. Cline, David P. Cline, Esq., P.A., Wilming-
ton, DE, for Plaintiff.

Donald M. Ransom, Casarino, Christman & Shalk,
P.A., Wilmington, DE, for Defendant.

*MEMORANDUM ORDER*

JORDAN, J.

**\*1** Presently before the Court is Defendant State
Farm Mutual Automobile Insurance Company's
("State Farm") Motion to Transfer Venue (Docket
Item ["D.I."] 3; the "Motion") under 28 U.S.C. §
1404(a) to the United States District Court for the
District of Maryland. This court has jurisdiction pur-
suant to 28 U.S.C. § 1332. For the reasons set forth
below, the Defendant's Motion is DENIED.

**I. FACTS**

The plaintiff in this case is Robert Joseph Coleman, a
citizen of Delaware. (D.I. 1 at ¶ 3.) The Defendant is
State Farm, an Illinois Corporation registered to do
business in Delaware and registered to receive ser-
vice of process in Delaware through its agent, the In-
surance Commissioner of the State of Delaware. (*Id.*
at ¶ 4.) On May 20, 2000, Plaintiff was involved in a
car accident in Maryland. (*Id.* at ¶ 5.) He was driving
Melissa Cox's ("Cox") car when he stopped to make a
left hand turn and was rear-ended by Tammie Hamp-
ton ("Hampton"). (D.I. 4 at 1.) Cox and Hampton
both reside in Maryland. (*Id.* at 1.) At the time of the
accident, Hampton was insured with Nationwide In-

surance Company ("Nationwide") (*Id.* at 1.), and Cox
was insured with State Farm (*Id.*). Nationwide
tendered its policy limits in the amount of $20,000.00
to Plaintiff. (D.I. 4 at 2.) Plaintiff also recovered
$275,000.00 from his personal insurer, Pennsylvania
National Mutual Casualty Insurance Company. (*Id.* at
2.)

Plaintiff sought to recover $100,000.00 from Cox's
underinsured motorist policy with State Farm. (D.I. 1
at ¶ 12, 16.) The policy provided, in part, uninsured/
underinsured motorist coverage with limits in the
amount of $100,000.00. (*Id.* at ¶ 10.) State Farm does
not dispute that Plaintiff qualified as an "insured" un-
der the policy, which Cox contracted for in the State
of Maryland, but State Farm denied his claim. (D.I. 4
at 1-2.) Plaintiff claims that State Farm "exhibit[ed]
unfair insurance practices and bad faith insurance
practice[s]" by failing to pay Plaintiff the benefits of
the policy under which the car he was driving during
the accident was insured. (D.I. 1 at ¶ 17.) Specific-
ally, Plaintiff asserts that because State Farm gave
Plaintiff authority to accept the $20,000.00 liability
limit under the Nationwide policy, Plaintiff is also
entitled to the $100,000.00 liability limit under the
State Farm policy. (D.I.1.) Plaintiff also claims that
as a result of State Farm denying the benefits, he has
suffered physical, mental, emotional, and economic
hardship. (*Id.* at ¶ 18.)

**II. DISCUSSION**

On a motion for transfer of venue under 28 U.S.C. §
1404(a), [FN1] the burden falls upon the movant to
demonstrate that the convenience of the parties, the
convenience of the witnesses, and the interest of
justice are served by transfer. *See Waste Distillation
Technology, Inc. v. Pan American Resources, Inc.,*
*775 F.Supp. 759, 762 (D.Del., 1991)* (movant "bears
the burden of proving that justice requires a substitute
forum and a transfer is not to be liberally granted").
"Because the plaintiff's rational choice of forum
should not be lightly disturbed, a transfer is not to be
liberally granted." *Intel Corp. v. Broadcom Corp.,*
*167 F.Supp.2d 692, 706 (D.Del.2001)* (citing *Shutte
v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 758338 (D.Del.)
**(Cite as: 2004 WL 758338 (D.Del.))**

(internal quotes omitted)). "Unless the balance is strongly in favor of transfer, the plaintiff's choice of forum should prevail." *Shutte,* 431 F.2d at 25.

> FN1. Section 1404(a) provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

**\*2** In *Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir.1995), the Third Circuit set forth examples of several public and private interests a court may consider when analyzing the propriety of transfer. The private interests include the plaintiff's forum preference "as manifested in the original choice," the defendant's preference, and whether the claim arose elsewhere. *Id.* at 879 (citations omitted). The public interest factors include, "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id .* at 879-80.

The only public interest factor of significance raised by the Defendant is the argument that I should grant its Motion because the contract between Cox and State Farm, under which Plaintiff seeks to recover, was entered into in Maryland "with the intention that Maryland law would apply to its interpretation." (D.I. 4 at 9.) This, however, is a choice of law argument and is not alone a sound basis for transfer because this case does not have to be litigated in Maryland in order for Maryland law to be applied.

The "private interests" set forth in *Jumara* do not weigh in favor of transfer. The Plaintiff's choice of forum is rational and would serve the convenience of the parties and witnesses. Plaintiff, all of Plaintiff's treating physicians, and all of the medical documents associated with this case are in Delaware (D.I. 5 at 3). Defendant's medical expert and the adjuster for the Defendant both reside in Delaware. (*Id.*) Defendant's medical expert who conducted an independent medical examination of Plaintiff has his office in

Delaware. (*Id.*). Finally, State Farm is an Illinois corporation, and although Delaware is not its principle place of business, State Farm is registered to do business in Delaware. Thus, State Farm has not demonstrated that it would be more convenient to litigate the case in Maryland, as opposed to Delaware.

State Farm has not carried its burden in establishing that the private and public interests underlying § 1404 warrant transfer. *See Lee v. The Ohio Casualty Ins. Co.,* 445 F.Supp. 189, 192 (D.Del.1978) ("The balance of convenience must be strongly in favor of the movant. If the balance of the factors is equal or is only slightly in favor of the movant, a court should not transfer the case."). Accordingly,

IT IS HEREBY ORDERED that

The Defendant's Motion to Transfer Venue (D.I.3) is DENIED.

Not Reported in F.Supp.2d, 2004 WL 758338 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00485 (Docket) (May. 20, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 6

Not Reported in F.Supp.2d                                                                            Page 1
Not Reported in F.Supp.2d, 2006 WL 263625 (E.D.Pa.)
**(Cite as: 2006 WL 263625 (E.D.Pa.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Alan H. SZABO Plaintiff,
v.
CSX TRANSPORTATION, INC. Defendant.
**No. Civ.A. 05-4390.**

Feb. 1, 2006.

Gregory J. Hannon, Hannon & Joyce, Philadelphia,
PA, for Plaintiff.

John B. Greenlee, Burns White & Hickton, Pitts-
burgh, PA, for Defendant.

*ORDER AND MEMORANDUM*
DUBOIS, J.

*ORDER*

**\*1** AND NOW, this 1st day of February, 2006, upon
consideration of defendants' Motion to Transfer Ven-
ue Pursuant to 28 U.S.C. 1404(a) Change of Venue
(Document No. 7, filed January 11, 2006) and
plaintiff's Response in Opposition to Defendant's Mo-
tion to Transfer Venue (Document No. 8, filed Janu-
ary 23, 2006), IT IS ORDERED, for the reasons set
forth in the attached memorandum, that defendants'
Motion to Transfer Venue Pursuant to 28 U.S.C.
1404(a) Change of Venue is DENIED.

*MEMORANDUM*
Plaintiff Alan H. Szabo, a resident of Bay Village,
Ohio, has filed suit against defendants CSX Trans-
portation, Inc. and Consolidated Rail Corporation, his
former employers. Compl. ¶¶ 1-3, 8. Asserting claims
under the Federal Employers' Liability Act (FELA),
the Federal Safety Appliance Acts, and the Boiler In-
spection Acts, plaintiff alleges that he suffers from
neck injuries which are the result of repeated occupa-
tional trauma. *Id.* ¶¶ 4, 11-12. Defendants filed a mo-
tion to transfer venue to the Northern District of
Ohio. Because defendants have not made the "strong

case for transfer" required in a FELA case, and be-
cause the case, which was filed August 17, 2005, is
scheduled to be tried before a panel of arbitrators on
March 15, 2006, defendants' motion is denied.

Under 28 U.S.C. § 1404(a), a court may transfer a
civil action "to any other district or division where it
might have been brought." Neither party disputes that
this action might have been brought in the Northern
District of Ohio, which is where plaintiff resides.
[FN1]

> FN1. Under FELA's venue provision, 45
> U.S.C. § 56, an action may be brought in
> any district where the defendant was doing
> business at the time the action is com-
> menced. Defendants and plaintiff both agree
> that defendants were doing in business in the
> state of Ohio. Def. Br. at 6; Com pl. ¶ 5-6.

Once a court determines that venue would be proper
in another district, the court must consider "all relev-
ant factors to determine whether on balance the litiga-
tion would more conveniently proceed and the in-
terests of justice be better served by transfer to a dif-
ferent forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d
873, 879 (3d Cir.1995), *citing* 15 Wright, Miller, &
Cooper, Federal Practice and Procedure § 3847 (2d
ed.1986).

Ordinarily, there is a strong presumption in favor of
the forum chosen by plaintiff. *Piper Aircraft Co. v.
Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d
419 (1981); *Bhatnagar v. Surrendra Overseas Ltd.,*
52 F.3d 1220, 1226 n. 4 (3d Cir.1995); *Kielczynski v.
Consolidated Rail Corp.,* 837 F.Supp. 687, 689
(E.D.Pa.1993) ("In assessing a transfer motion, a
court should not lightly disturb plaintiffs' choice of
forum."). When the forum chosen is not the plaintiff's
home forum, and when no operative facts occurred in
the forum, plaintiff's choice is ordinarily given less
weight. *Piper Aircraft,* 454 U.S. at 255-56; *Espen-
laub v. Consolidated Rail Corp.,* 1996 WL 57940, at
\*4 (E.D.Pa. Feb.9, 1996); *Kielczynski,* 837 F.Supp. at
689. However, this analysis must be viewed in light
of the rule that the plaintiff's choice of forum in a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 263625 (E.D.Pa.)
**(Cite as: 2006 WL 263625 (E.D.Pa.))**

FELA case is a "substantial right." *Boyd v. Grand Trunk Western R.R. Co.,* 338 U.S. 263, 266, 70 S.Ct. 26, 94 L.Ed. 55 (1959) (per curiam); *Whigham v. CSX Transp., Inc.,* 2005 WL 441356, at *1 (E.D.Pa. Feb.23, 2005). "In an action under FELA ... the plaintiff's choice of forum should still be given some deference, regardless of the plaintiff's residence or the site of the underlying incident." *Luther v. Consolidated Rail Corp.,* 1999 WL 387075, at *2 (E.D.Pa. May 25, 1999), *quoting Espenlaub, 1996 WL 57940, at *4.*

**\*2** In deciding a motion to transfer venue in a FELA case, courts require the movant to spell out "a clear case of convenience, definitely and unequivocally, and to show a strong case for transfer." *Richards v. Consolidated Rail Corp.,* 1994 WL 586009, at *2 (E.D.Pa. Oct.18, 1994); *Coble v. Consolidated Rail Corp.,* 1992 WL 210325, at *1 (E.D.Pa. Aug.26, 1992). Defendants' convenience argument is that transfer to the Northern District of Ohio is appropriate because (1) plaintiff lives there, (2) plaintiff's medical records and treating physician are "likely" there, and (3) numerous other "likely" witnesses are located there. Def. Br. at 7-8. The Court concludes that defendants have not "definitively and unequivocally" made out the "clear case of convenience" required to grant a motion to transfer venue in a FELA case.

"When arguing for transfer on the basis of witness availability at trial and witness convenience, movant has the responsibility to specify clearly the key witnesses to be called." *Coble, 1992 WL 210325, at *2.* In this case, defendants have only identified one key witness, William Klancher, one of plaintiff's former supervisors, who lives in the Northern District of Ohio. Aff. of William Klancher, Def. Ex. D. Identifying only one key witness who lives in the transferee forum is not sufficient to establish a "clear case of convenience." *See Coble, 1992 WL 210325, at *2.* Furthermore, Mr. Klancher is currently employed by defendants, as are many of the other witnesses defendants expect to call, such as plaintiff's former co-workers. Klancher Aff. ¶ 1. Defendants will presumably be able to obtain testimony from their own employees without resorting to compulsory process. *See Richards, 1994 WL 586009, at * 2; Coble, 1992 WL*

210325, at *2. On this issue, the convenience of defense witnesses is given less weight if the defendant is a transportation company and can easily transport witnesses. *Richards, 1994 WL 586009, at *2; Kielczynski, 837 F.Supp. at 689; Coble, 1992 WL 210325, at *3.*

Aside from the fact that the Northern District of Ohio is the "likely" location of relevant witnesses and documents, defendants have not identified any other factors making the Northern District a more convenient forum. *See Richards, 1994 WL 5896009, at *3.* The Court concludes that defendants have not shown "a clear case of convenience, definitely and unequivocally" to warrant transfer to the Northern District of Ohio.

This conclusion is bolstered by the fact that this case is scheduled to proceed to trial before a panel of arbitrators in this court on March 15, 2006. Transferring the case at this time would only delay its resolution, a factor courts may consider when deciding motions to transfer venue. *See Jones v. BCJ Trucking, Inc.,* 1993 WL 183836, at *5 (E.D.Pa. May 27, 1993) ("[A] delay in proceedings and judicial efficiency must be considered with any transfer of venue."); *Williams v. Consolidated Rail Corp.,* 1987 WL 12778, at *3 (E.D.Pa. June 19, 1987) (declining to transfer case because it "would only delay the resolution of this litigation"). In analyzing this factor, the Court notes that, although defendants raised the defense of improper venue in their Answer filed September 12, 2005, they did not file the motion to transfer venue until January 11, 2006, almost four months after the Answer was filed, and two months after the arbitration hearing was scheduled by Notice dated November 16, 2005. While a delay in filing a motion to transfer venue is, by itself, not determinative, this delay in conjunction with defendants' failure to show a clear case of convenience supports the Court's decision to deny the motion to transfer venue. *See Harris v. Lewis,* 1993 WL 126430, at *5 n.1 (E.D.Pa. Apr. 21, 1993) ("[E]ven if there had been a true year-and-a-half delay in filing this motion, this *alone* would not estop defendant from seeking a transfer.").

**\*3** Therefore, because defendants have not made the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 263625 (E.D.Pa.)
**(Cite as: 2006 WL 263625 (E.D.Pa.))**

required showing for transferring a FELA case, and because transferring this case would delay its ultimate resolution, the Court denies defendants' motion to transfer venue to the Northern District of Ohio.

Not Reported in F.Supp.2d, 2006 WL 263625 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2848790 (Trial Pleading) Answer of Defendants, Consolidated Rail Corporation and CSX Transportation, Inc. (Sep. 9, 2005)Original Image of this Document (PDF)

• 2005 WL 2686438 (Trial Pleading) Complaint (Aug. 17, 2005)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 7

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1043193 (D.Del.)
(Cite as: 2004 WL 1043193 (D.Del.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
In re: TCW/CAMIL HOLDING L.L.C., Debtor.
TCW/CAMIL HOLDING L.L.C., Plaintiff,
v.
FOX HARON & CAMERINI LLP, Defendant.
No. 03-10717, 03-53929, 03-1154-SLR.

April 30, 2004.

MEMORANDUM ORDER

ROBINSON, J.

**\*1** At Wilmington this 30th day of April, 2004, having reviewed defendant's motion to transfer venue and the papers submitted in connection therewith;

IT IS ORDERED that defendant's motion (D.I.18) is denied, for the reasons that follow:

1. On June 17, 2003, plaintiff filed an adversary complaint in the United States Bankruptcy Court for the District of Delaware where plaintiff's bankruptcy case is presently pending. Plaintiff alleges that defendant, who served as its former attorneys, committed legal malpractice in the course of providing legal representation and advice during a pre-bankruptcy International Chamber of Commerce arbitration proceeding arising from a failed joint venture to acquire control of the largest Brazilian producer of rice, Josapar S.A.. [FN1] (D.I. 1, ex. A at ¶ 1) Plaintiff specifically complains that defendant's actions during the arbitration caused it to be responsible under joint and several liability when it otherwise would not have been subjected to this form of liability. [FN2] (Id. at 3) On December 19, 2003, defendant moved to withdraw the reference of the adversary proceeding from Bankruptcy Court. (Id. at 1) The court granted this motion on January 21, 2004. (D.I.6) Trial is scheduled for November 2004. (D.I.14)

FN1. Plaintiff and IRHE Holdings ("IRHE") funded the amounts of $58.75 million and $10.4 million, respectively, into Camil Holding, LLC as part of a joint venture. (D.I. 19, ex. A at 2) Camil is owned by plaintiff and Garial S.A. ("Garial"). (Id.) Through Camil, plaintiff, IRHE, and Garial sought to obtain a majority interest in Josepar S.A.. (D.I. 19 at 3) When the joint venture failed to obtain this interest, IRHE filed the arbitration to force Camil to unwind its $10.4 million investment. (D.I. 1, ex. A at 3)

FN2. In the arbitration proceedings, IRHE obtained a full judgment in its favor, and plaintiff alleges that defendant stipulated to joint and several liability for it, Camil, and Garial. (Id.) IRHE decided to collect judgment from plaintiff alone. As a result, plaintiff asserts that it was forced to file for Chapter 11 bankruptcy protection to preserve its assets.

2. Plaintiff is a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. Defendant is a limited liability partnership registered in the State of New York with offices in New York City.

3. Defendant moves the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. See *Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)*). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Id.* Accordingly, "defendants brought into suit in Delaware must prove that lit-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1043193 (D.Del.)

**(Cite as: 2004 WL 1043193 (D.Del.))**

igating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *See Wesley-Jessen Corp. V. Pilkington Visioncare, Inc., 157 F.R.D. 215 (D.Del.1993).* A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 WL 615175, *5 (D.Del.1999).*

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three factors enumerated in § 1404(a) (i.e., convenience of parties, convenience of witnesses, and interests of justice). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)* (internal quotations and citation omitted). The Third Circuit, in fact, has provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records to the extent that the files could not be produced in the alternative forum. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

*2 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit pre-

cedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as plaintiff is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's "home turf," since it maintains its principal place of business in New York. In this sense, it appears to be more convenient to both the plaintiff and defendant to try the instant litigation in the Southern District of New York. Indeed, this court previously recognized that "when the plaintiff has chosen to bring suit in a district that is not plaintiff's 'home turf' and that has no connection to any acts giving rise to the lawsuit, convenience to the plaintiff is not as great as it would be were plaintiff litigating at or near plaintiff's principal place of business or at the site of activities at issue in the lawsuit." *Burstein v. Applied Extrusion Techs. Inc.,* 829 F.Supp. 8 (D.Del.1992). Moreover, the locus of the alleged legal malpractice occurred in New York because the underlying arbitration was conducted there. The majority of the witnesses with discoverable information also are located in New York, though the court notes that Wilmington, Delaware is only 130 miles from New York City and is easily accessible by plane, train, or automobile. *See Praxair, Inc. v. ATMI, Inc., 2004 WL 883395, *2 (D.Del.2004)* (discussing proximity, transportation, and hotel options between New York City, New York and Wilmington, Delaware). On this basis, the court concludes that the private factors under *Jumara* weigh in favor of transferring the case at bar to the United States District Court for the Southern District of New York.

6. In considering the public interest factors under *Jumara,* the court is strongly persuaded by the fact that defendant argued to both the Bankruptcy Court and this court when it moved to withdraw the reference that the District of Delaware was the most efficient and expeditious forum in which to litigate this matter. Defendant, in fact, stated: "Considerations of judicial economy, expeditiousness of the proceeding, and preservation of debtors' and creditors' resources also support withdrawal of reference [to the District of Delaware]." (D.I. 1 at 7) Given its prior contention, defendant now cannot attempt to turn the table and argue for a transfer to the United States District Court

Not Reported in F.Supp.2d, 2004 WL 1043193 (D.Del.)
**(Cite as: 2004 WL 1043193 (D.Del.))**

for the Southern District of New York. Additionally, the parties have taken significant steps to advance the instant litigation in the District of Delaware. Defendant answered the complaint and filed a motion to dismiss and a motion for judgment on the pleadings prior to filing the motion at bar. The parties likewise exchanged initial disclosures and are set to explore settlement with the magistrate judge. Also, trial is set to occur in six months. Transfer of venue to the United States District Court for the Southern District of New York inevitably will delay this litigation, since that court is one of the largest and busiest courts in the federal system. Furthermore, the court finds that venue in the District of Delaware will facilitate the pending bankruptcy proceeding. The court, therefore, concludes that the public interest factors under *Jumara* favor maintaining venue in the District of Delaware.

**\*3** 7. On balance, the court finds that the public interest factors outweigh the private interest factors. The court, as a result, concludes that defendant fails to prove that litigating in the District of Delaware would pose a unique or unusual burden to merit transfer of venue.

Not Reported in F.Supp.2d, 2004 WL 1043193 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV01154 (Docket) (Dec. 19, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 8

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)
**(Cite as: 2005 WL 441077 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TRILEGIANT LOYALTY SOLUTIONS, INC.
Plaintiff,
v.
MARITZ, INC., Defendant.
**No. Civ.A. 04-360 JJF.**

Feb. 15, 2005.

Jack B. Blumenfeld, and Rodger D. Smith II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Steven Lieberman, Sharon L. Davis, and R. Elizabeth Brenner, of Rothwell, Figg, Ernst & Manbeck, P.C., Washington, D.C., for Plaintiff, of counsel.

Rudolf E. Hutz, and Patricia Smink Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, J. Bennett Clark, Jennifer E. Hoekel, and Marc W. Vander Tuig, of Senniger Powers, St. Louis, Missouri, for Defendant, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Presently before the Court is the Motion To Transfer Under 28 U.S .C. § 1404(a) (D.I.13) filed by Defendant Maritz, Inc. ("Maritz"). For the reasons discussed, Maritz's Motion To Transfer will be denied.

BACKGROUND

Plaintiff Trilegiant Loyalty Solutions, Inc. ("Trilegiant") initiated this lawsuit in this Court alleging patent infringement arising from Defendant Maritz's development and operation of online incentive programs. Trilegiant is incorporated in Delaware, and has its principal place of business in Richmond, Virginia. Maritz is a Missouri corporation with its principal place of business in Fenton, Missouri.

PARTIES' CONTENTIONS

By its motion, Maritz contends that a transfer to the Eastern District of Missouri is appropriate in this case pursuant to the factors identified in *Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir.1995)*. Maritz contends that both the private and public interests favor a transfer to Missouri. With regard to the private interests, Maritz contends that none of the parties has a presence in Delaware, and that transfer to the Eastern District of Missouri would not significantly change the burden Trilegiant already bears by virtue of choosing Delaware. Maritz further contends that party witnesses and potential non-party witnesses appear to be located far from Delaware. Maritz also contends that accused activities likely took place in Missouri and that relevant documents are not likely to be located in Delaware. With regard to the public interests, Maritz contends that none of the interests involved in this lawsuit are unique to Delaware and that Missouri is the more practical venue for this lawsuit. Maritz did not address the following factors: 1) likelihood of an enforcement problem; 2) administrative difficulty in the two fora resulting from court congestion, and 3) familiarity with applicable state law.

In response, Trilegiant claims that its choice to bring suit in Delaware is entitled to substantial deference because Trilegiant chose to litigate in Delaware for several rational and legitimate reasons. Trilegiant contends that it sought the benefits of Delaware law by incorporation in this state. Trilegiant further contends that Magistrate Thyne mediated a previous case that involved two of the three patents in this suit. With regard to the convenience of the parties and witnesses, Trilegiant contends that Delaware is more convenient than Missouri for it and the inventor, Mr. Storey. Trilegiant stresses the Delaware Court has subpoena power over potential third-party Delaware corporations that would make access to documents easier in Delaware than in Missouri.

DISCUSSION

I. Legal Standard

Maritz moves for a transfer to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). Section

1404(a) is the general transfer statute that provides, "For the convenience of the parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Courts in the Third Circuit apply the public and private interest factors outlined in *Jumara v. State Farm Insurance Co.,* 55 F.3d 873 (3d Cir.1995), to decide if they should order a transfer. The private interests outlined in *Jumara* include: (1) Plaintiff's forum preference; (2) Defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records--but only to the extent that the documents may be unavailable for trial in one of the fora. *Id.* at 879 (citations omitted).

**\*2** The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.*

Maritz bears the burden of establishing the need for transfer. *Id.*

II. Analysis

A. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del.

March 26, 2002).

Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Trilegiant's decision to file the instant action in Delaware. Trilegiant is a Delaware corporation. As the Court observed in *Stratos,* a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at *2. Therefore, to prevail on its Motion, Maritz must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

B. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and Maritz has its principal place of business in Missouri, I conclude that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri.

First, I conclude that the convenience of the parties does not favor venue in Missouri over Delaware. Neither party would be unduly burdened by litigating this action in Delaware. *See Pennwalt Corp. v. Purex Inds., Inc.,* 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). Maritz's annual sales approximate $1.4 billion (D.I. 16 App. D) and Trilgiant chose to litigate in Delaware. Therefore, I conclude that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt,* 659 F.Supp. at 290.

Next, although Maritz contends that the books and records necessary to litigate this action are in Missouri, Maritz does not contend that they could not be produced or would be unavailable in Delaware. Therefore, I do not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara,* 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum").

**\*3** Further, party witnesses or witnesses who are employed by Maritz or Trilegiant carry no weight in the

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)
**(Cite as: 2005 WL 441077 (D.Del.))**

"balance of convenience" analysis since each party is able to procure the attendance of its own employees. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998). With respect to Mr. Storey, the inventor of the patents-in-suit and a non-party witness, Maritz does not contend that he would be unavailable for trial in Delaware, and Maritz has provided the Court with no evidence that Mr. Storey, would be unwilling to testify on its behalf. Accordingly, I give little weight to Mr. Storey's status as a non-party witness and residence outside of Delaware.

Finally, although I appreciate the additional expense that Maritz may incur as a result of litigating in Delaware, I find that this hardship is substantially outweighed by the private interest considerations.

C. Whether The Public Interests Strongly Favor Transfer

I also conclude that the public interests do not weigh strongly in favor of a transfer to Missouri. Maritz did not argue that the congestion of the Delaware courts strongly favors a transfer. Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. *Stratos,* 2002 WL 500920 at *2. Therefore, patent rights do not alone give rise to a local controversy or implicate local interests. *Id.* Accordingly, I conclude that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

In addition, I find that the *Jumara* factor that requires examining the difficulty in enforcing a judgment, were Trilegiant to prevail in the Delaware litigation, does not weigh in favor or against a transfer because there has been no dispute in either state over in personam jurisdiction.

CONCLUSION

Based upon Trilegiant's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to Missouri, I conclude that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, I will deny Maritz's Motion.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this 15th day of February 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Transfer (D.I.13) filed by Defendant is *DENIED.*

Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2006 WL 1435848 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Motion to Amend Complaint and Dismiss Defendant's Counterclaims (Apr. 5, 2006)Original Image of this Document (PDF)

• 2006 WL 1204459 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's First Motion to Compel Production of Documents (Mar. 17, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1182436 (Trial Motion, Memorandum and Affidavit) Maritz' Combined Reply in Support of Motion to Dismiss and Response to Plaintiff's Motion to Join Assignee as Co-Plaintiff (Mar. 3, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 809100 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Motion to Compel Production of Documents (Feb. 21, 2006)Original Image of this Document (PDF)

• 2005 WL 2867933 (Trial Motion, Memorandum and Affidavit) Reply to Amended Counterclaim (Sep. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 3987288 (Trial Motion, Memorandum and Affidavit) Maritz' Response to Plaintiff's Second Motion to Compel Production of Documents (Mar. 17, 2005)Original Image of this Document with Appendix (PDF)

• 1:04cv00360 (Docket) (Jun. 8, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 441077 (D.Del.)
**(Cite as: 2005 WL 441077 (D.Del.))**


END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9

Not Reported in F.Supp.                          Page 1
Not Reported in F.Supp., 1995 WL 469620 (D.Del.)
**(Cite as: 1995 WL 469620 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
GENERAL SIGNAL CORPORATION, Plaintiff,
v.
APPLIED MATERIALS, INC., Defendant.
**No. Civ. A. 94-461-JJF.**

June 30, 1995.

Robert W. Whetzel, and Frederick L. Cottrell, Richards Layton & Finger, Wilmington, DE. John E. Kidd, Joseph Ferraro, Michael A. O'Shea, and Jeffrey Sonnabend, Rogers & Wells, New York City. Milton E. Kleinman, General Signal Corp., Stamford, CT, for plaintiff.

Jack B. Blumenfeld, Morris Nichols Arsht & Tunnell, Wilmington, DE, Matthew D. Powers, and Jared Bobrow, Weil Gotshal & Manges, Menlo Park, CA, for defendant.

*MEMORANDUM OPINION*
FARNAN, District Judge.

**\*1** Defendant, Applied Materials, Inc., has filed a Motion to Transfer this action to the Northern District of California, San Jose Division. In support of its application, Applied Materials argues:

(1) A transfer of the case to California will greatly increase the convenience of the parties and witnesses.
(2) A transfer will not inconvenience the Plaintiff, General Signal Corporation.
(3) The interests of justice strongly favor a transfer.
(4) The Law of this district compels a transfer.

Plaintiff, General Signal Corporation, opposes the motion on the grounds that:

(1) Contrary to Defendant's assertion, this district is Plaintiff's "home turf."
(2) Defendant's incorporation in Delaware is a significant factor.
(3) Defendant's list of California-based witnesses is

insufficient to tip the balance of convenience strongly in favor of Defendant.
(4) A transfer will only shift any real inconvenience from the Defendant to Plaintiff.
(5) A review of caseloads and calendar backlogs favor retaining this case in Delaware.

To begin with, the Court notes that the instant motion has been briefed and pending since late November 1994, and the docket sheet reflects no significant activity has occurred since that time. This fact alone could indicate that the interests of justice support a transfer to San Jose. Despite the delay that has resulted from the Court's inability to dispose of the present application until now, the Court is convinced that this dispute can be more efficiently resolved, both in terms of time and cost, if it is litigated in Delaware. Without reservation, the Court believes this matter can be scheduled and tried more quickly in Delaware than in San Jose. Therefore, the Court will turn to a consideration of the other factors relevant to deciding a transfer request under 28 U.S.C. § 1404(a).

*Home Turf Issue*
The Court agrees with Plaintiff's assertion that for purposes of this litigation Delaware is Plaintiff's home turf. Delaware is the closest forum to the Plaintiff's place of business in which jurisdiction could be obtained over Defendant. The fact that Plaintiff's business is not conducted in Delaware and its headquarters is in Connecticut is irrelevant. Plaintiff has the discretion to select a forum close to its principal place of business where Defendant can be found and call that forum its home turf. The Court is reasonably certain that if Defendant would offer to submit to the jurisdiction of the federal court in Connecticut, Plaintiff would accept. The point is that Defendant's argument on the home turf issue implies that Plaintiff went forum shopping and chose Delaware for some reason other than the availability of jurisdiction over the Defendant whose business is centered in California. As the Court has commented in the past, it is not the forum shopping of Plaintiff that brings the parties to Delaware, but the Defendant's decision to incorporate here.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1995 WL 469620 (D.Del.)
**(Cite as: 1995 WL 469620 (D.Del.))**

*Convenience of Witnesses*

As in most transfer motions, the record is replete with assertions concerning the vast number of witnesses who will be inconvenienced if the case is not tried in a district preferred by the movant.   And, as in most cases, the Plaintiff has responded that a transfer on witness inconvenience grounds will merely shift the burden of the inconvenience to Plaintiff.   After considering the positions of the parties on this factor, the Court finds that the Defendant has not demonstrated that the convenience of the witnesses and parties strongly favors a transfer of this action to California. If anything, a transfer would most probably inconvenience the Plaintiff.

*Conclusion*

**\*2** In sum, although Plaintiff could have brought this action in the Northern District of California, San Jose Division, the Court finds that the Defendant has failed to establish that a balancing of the relevant factors under § 1404(a) strongly favor a transfer of this case and, therefore, Defendant's motion to transfer will be denied.   Since this case has languished for an extended period of time, the Court will Order that the parties confer and submit a proposed Rule 16 Scheduling Order no later than July 15, 1995. If the parties are unable to agree upon the various dates normally addressed in such an Order, each party shall submit its own Proposed Order by the July 15 date.

An Order consistent with this Memorandum Opinion has been entered.

*ORDER*

At Wilmington this 30 day of June, 1995, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1. Defendant's Motion to Transfer Case to the Northern District of California, San Jose Division (D.I. 15), is DENIED.

2. The parties shall confer and submit to the Court a Proposed Rule 16 Scheduling Order on or before July 15, 1995.

Not Reported in F.Supp., 1995 WL 469620 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:94cv00461 (Docket) (Sep. 06, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
TEXTRON INNOVATIONS INC., Plaintiff,
v.
THE TORO COMPANY, Defendants.
**No. Civ.A. 05-486 GMS.**

Oct. 14, 2005.

Edmond D. Johnson, The Bayard Firm, Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE, for Plaintiff.

Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE, for Defendants.

*MEMORANDUM*

SLEET, J.

I. INTRODUCTION

**\*1** On July 12, 2005, the plaintiff, Textron Innovations Incorporated ("TII") filed the above-captioned action against The Toro Company ("Toro"), alleging infringement of United States Patent Nos. 6,047,530,6,336,311, and 6,336,312, which are directed to a gang type rotary mower. Presently before the court is Toro's motion to transfer this action to the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). For the following reasons the court will deny the motion.

II. BACKGROUND

On July 12, 2005, TII filed the present patent infringement action involving technology related to the rotary mower used to cut golf course roughs. TII is the subsidiary of Textron Inc., and the assignee of the three patents in suit. (*See* D.I. 6, at 1 n. 1; D.I. 19, at 2.) TII is incorporated in Delaware and maintains its headquarters in Providence, Rhode Island. (D.I. 1 ¶ 3.) Toro is a Delaware corporation that maintains its headquarters in Bloomington, Minnesota. (*Id.* ¶ 4.) Toro's allegedly infringing products are manufactured in Tomah, Wisconsin. (D.I. 6, at 3.)

On August 15, 2005, Toro filed a separate action in Minnesota against Textron, Inc. and Jacobsen, a division of Textron, Inc., alleging that their products infringe two Toro patents relating to hydraulic drive system technology for riding mowers. The following day, Toro filed this motion to transfer venue to the District of Minnesota.

III. DISCUSSION

Pursuant to Section 1404(a), the court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice, ... to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need to transfer, and "the plaintiff's choice of venue [will] not be lightly disturbed." *Truth Hardware corp. v. Ashland Prods., Inc.,* No. C.A. 02-1541 GMS, 2003 WL 118005, at \*1 (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). In other words, "unless the balance of convenience strongly favors a transfer in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

When considering a motion to transfer, the court must determine "whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879. This inquiry requires "a multi-factor balancing test," embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties; the convenience of the expected witnesses; and the location of books and records, to the extent that they could not be produced in the alternative forum. [FN1] *Id* at 879. Among the relevant public interests are: "the enforceability of the

judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80.

> FN1. The first three of these private interest factors collapse into other portions of the *Jumara* analysis. Thus, the court will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192 (D.Del.1998).

**\*2** Upon consideration of the relevant factors, the court finds that Toro has not met its burden of demonstrating that transfer is appropriate. First, the court concludes that convenience of parties factor weighs in favor of maintaining the action in Delaware. The court will afford less deference to TII's choice of Delaware as a forum because it is not its "home turf," or principal place of business. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F.Supp. 759, 764 (D.Del.1991). However, it is not appropriate to disregard a plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum. *See Joint Stock Soc'y v. Heublein, Inc.*, 936 F.Supp. 177, 187 (D.Del.1996). In the present case, the fact that Toro is incorporated in Delaware is a rational and legitimate reason for TII choosing to sue it in Delaware. *See Stratos Lightwave, Inc. v. E20 Communications, Inc.*, No. Civ. A. 01-309-JJF, 2002 WL 500920, at \*2 (D.Del. Mar.26, 2002). Further, having received the benefits of Delaware incorporation, Toro cannot now complain that another corporation has chosen to sue it here. *See id.* Indeed, it is difficult for the court to find any inconvenience to Toro when it has previously chosen this forum in order to litigate its own patent infringement claims against Textron. *See Toro Company v. Textron, Inc.*, 499 F.Supp. 241 (D.Del.1980). Thus, the convenience of the parties weighs in favor of maintaining this action in Delaware.

The court also finds that the location of books and records weighs against granting Toro's motion to transfer. Toro contends that its books and records necessary for litigation are in Minnesota. A court should

consider the location of books and records in its analysis. However, it must only do so to the extent that the files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879. Here, Toro does not suggest that its documents could not be produced in Delaware. Accordingly, this factor does not weigh in favor of the transfer.

Toro also contends that non-party witness convenience weighs in favor of a transfer. According to the briefs, Toro plans to rely on testimony from two original inventors of the patents in-suit, three retired employees, and an employee of a local golf course. The two inventors do not reside within the subpoena power of Delaware or Minnesota. However, they have both stated, in sworn declarations, that they are willing to appear in Delaware for depositions and trial. (D.I. 19, at 3.) Thus, any inconvenience to the inventors weighs in favor of maintaining the action in Delaware.

As for the other witnesses, Toro has elected to rely upon retired and, therefore, "third-party" employees that do not reside within the subpoena power of Delaware. In support of its motion, Toro insists that due to personal circumstances, travel to Delaware is extremely inconvenient for its third-party witnesses. (D.I. 6, at 4-6.) The court is not persuaded by this argument, and finds Toro's reliance on former employees, rather than its current employees, questionable. Further, as this court has previously held, a flight to Delaware is not an onerous task warranting transfer. *Truth Hardware Corp. v. Ashland Prods., Inc.*, No C.A. 02-1541 GMS, 2003 WL 118005, at \*2 (D. Del. Jan 13, 2003). Moreover, Toro has not asserted that the identified witnesses are the only individuals capable of testifying as to the technology of the accused products. Nevertheless, if necessary, TII has agreed to take witness depositions in Minnesota. (*See* D.I. 19, at 23.) For these reasons, the court concludes the convenience of the witnesses does not favor transfer in this case.

**\*3** Finally, the court finds that the public interest factors do not weigh strongly in favor of transfer to Minnesota. First, Toro's pending litigation in Minnesota was filed after TII initiated this lawsuit, and involves different patents. Thus, the court believes

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)
**(Cite as: 2005 WL 2620196 (D.Del.))**

that this is not a relevant consideration in favor of transfer. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 77 F.Supp.2d 505, 513 (D.Del.1999)* (refusing to give "any weight whatso-ever" to a mirror image action filed by the defend-ant). Additionally, the court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer. Finally, it is well settled that patent rights are not considered state or local matters and do not implicate local interests. *Jones Pharma, Inc. v. KV Pharm. Co.,* No. Civ. A. 03-786 JJF, 2004 WL 323109, at * 3 (D.Del. Feb.17, 2004). The court, therefore, finds no strong local interest in litigating in the transferee forum. Accordingly, the court con-cludes that public interest factors do not favor trans-fer in the instant case.

*ORDER*

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:

    1. The defendant's Motion to Transfer the Case to the United States District Court for the District of Minnesota (D.I.5) is DENIED.

Not Reported in F.Supp.2d, 2005 WL 2620196 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3242158 (Trial Pleading) Defendant's Amended Answer and Counterclaims (Nov. 9, 2005)Original Image of this Document (PDF)

• 2005 WL 2603883 (Trial Motion, Memorandum and Affidavit) Plaintiff Textron Innovations Inc.'s Brief in Opposition to Motion to Transfer Venue (Aug. 30, 2005)Original Image of this Document (PDF)

• 2005 WL 2603569 (Trial Pleading) Answer (Aug. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 2603700 (Trial Motion, Memorandum and Affidavit) Toro's Reply to Textron's Brief in Op-position to Motion to Transfer Venue (Aug. 19, 2005)Original Image of this Document (PDF)

• 2005 WL 2603699 (Trial Motion, Memorandum

and Affidavit) Opening Brief Supporting Defendant Toro's 28 U.S.C. § 1404 (a) Motion to Transfer Ven-ue to Minnesota (Aug. 16, 2005)Original Image of this Document (PDF)

• 2005 WL 2385695 (Trial Pleading) Complaint (Jul. 12, 2005)Original Image of this Document (PDF)

• 2005 WL 2912858 (Trial Pleading) Complaint (Jul. 12, 2005)Original Image of this Document (PDF)

• 1:05cv00486 (Docket) (Jul. 12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 11

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PRAXAIR, INC. and Praxair Technology, Inc.,
Plaintiffs,
v.
ATMI, INC. and Advanced Technology Materials,
Inc., Defendants.
**No. Civ. 03-1158-SLR.**

April 20, 2004.

Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiffs.

Robert H. Richards, III, Richards, Layton & Finger, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

**\*1** At Wilmington, this 20th day of April, 2004, having reviewed the motion of defendants to transfer (D.I.12), and the memoranda submitted therewith;

IT IS ORDERED that the motion to transfer (D.I.12) is denied for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present action asserting that defendants infringe U.S. Patent Nos. 5,937,895, 6,007,609, and 6,045,115 (collectively the "Praxair patents"). (D.I.1) On March 8, 2004, defendants filed their answer, denying plaintiffs' claims of infringement and counterclaiming for declaratory judgment of invalidity and noninfringement of the Praxair patents. (D.I.10) A scheduling conference was held on April 8, 2004.

2. Plaintiffs and defendants are Delaware corporations and all parties are headquartered in Danbury, Connecticut. (D.I.1) The Praxair patents relate to a fluid storage and gas dispensing system for fabricating semiconductor devices. Prior to plaintiffs filing the present action, defendants brought suit in the Southern District of New York on defendants' patents, U.S. Patent Nos. 6,101,816 and 6,5343,476 BI (collectively the "ATMI patents"). That suit, filed on July 11, 2003, has subsequently been amended to include state law claims relating to false advertising and unfair competition. Discovery began in the New York litigation in February 2004.

3. Defendants move the court to transfer this matter pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of New York. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2003). A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. *See Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970)*). A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Id.* Accordingly, "[d]efendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. *See Wesley-Jessen Corp. V. Pilkington Visioncare, Inc., 997 F.Supp. 556, 562 (D.Del.1993)*. A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 U.S. Dist. LEXIS 12455, *18 (D.Del.1999).

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a). Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)* (internal quotations and citations omitted). In *Jumara,* the

Third Circuit provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

**\*2** 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as this is the situs of incorporation for all the parties. By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' "home turf." (D.I. 13 at 2, 22)

6. The court is wholly unimpressed by defendants' contentions that Delaware is an inconvenient forum for the parties. First, defendants' contention that proximity to defendants' headquarters should be a factor for this court to consider is disingenuous at best. While the Southern District of New York is certainly closer to the parties' respective headquarters in Danbury, Connecticut, the court takes notice of the fact that there are four district courthouses in Connecticut, all of which are geographically closer to Danbury than the courthouse in Manhattan. If commuting time

to court for the parties's employees were an issue, defendants' own choice of forum is not reflective of that concern. Second, the court is unpersuaded by defendants' myopic assertions that Wilmington would be a difficult place for defendants to litigate their case. The fact that New York City has three airports and a subway system are not compelling factors in the consideration of a motion to transfer venue. (D.I. 13 at 7-8, 22; D.I. 24 at 14-15,) Third, defendants' contentions regarding convenience of the witnesses is similarly unpersuasive. [FN1] The convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something that defendants have not shown to be the case here.

> FN1. Defendants' assert that for certain witnesses located in Florida and Texas, "travel to Wilmington would be less convenient than to New York City, as they would first have to fly into Philadelphia." (D.I. 13 at 22) Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

7. In considering the public interest factors under *Jumara,* the court is similarly unpersuaded by defendants' arguments. First, defendants suggest that transfer would reduce duplicative litigation; this assertion does not bear scrutiny. While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities. As a consequence, a finding of validity or infringement in the New York litigation is not relevant to the case before this court. Moreover, the fact that defendants filed their complaint related to the ATMI patents first has no bearing on the propriety of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**

plaintiffs' decision to bring suit for infringement of the Praxair patents in this court.

8. Finally, the court does not find that New York state has a special interest in the outcome of the litigation. Patent cases are explicitly federal issues and the rights determined thereunder are national in scope. While the location of infringing activity provides a basis for venue under § 1400, the residency of defendants is no less compelling. 28 U.S.C. § 1400. Consequently, defendants have failed to demonstrate that any of the public interest factors under *Jumara* weigh strongly toward transfer.

**\*3** 9. Therefore, the court concludes that defendants have failed to demonstrate that litigating the present case in Delaware presents a unique or undue burden and their motion is denied. (D.I 12)

Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)

### Motions, Pleadings and Filings (Back to top)

• 2006 WL 1813931 (Trial Motion, Memorandum and Affidavit) Praxair's Motion for a Permanent Injunction (May 9, 2006)Original Image of this Document with Appendix (PDF)

• 2006 WL 1182413 (Trial Motion, Memorandum and Affidavit) ATMI's Reply Brief in Support of its Inequitable Conduct Case (Mar. 17, 2006)Original Image of this Document (PDF)

• 2006 WL 1182414 (Trial Motion, Memorandum and Affidavit) ATMI's Reply Brief in Support of its Renewed Motion for Judgment as A Matter of Law (Mar. 17, 2006)Original Image of this Document (PDF)

• 2006 WL 1182415 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Atmi's Motion for A New Trial (Mar. 17, 2006)Original Image of this Document (PDF)

• 2006 WL 1182410 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to ATMP's Motion for Judgment as a Matter of Law (Mar. 2, 2006)Original Image of this Document

(PDF)

• 2006 WL 1182411 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to Atmps Post-Trial Motion Concerning Inequitable Conduct (Mar. 2, 2006)Original Image of this Document (PDF)

• 2006 WL 1182412 (Trial Motion, Memorandum and Affidavit) Praxair's Answering Brief in Opposition to ATMI's Motion for a New Trial (Mar. 2, 2006)Original Image of this Document (PDF)

• 2006 WL 809089 (Trial Motion, Memorandum and Affidavit) Atmi's Reply Brief in Support of its Motion to Compel Production of Documents from Praxair and Uop Based on Waiver of Attorney-Client Privilege and Work Product Immunity (Feb. 3, 2006)Original Image of this Document (PDF)

• 2006 WL 809088 (Trial Motion, Memorandum and Affidavit) Atmi's Amended Opening Brief in Support of its Renewed Motion for Judgment as A Matter of Law (Feb. 1, 2006)Original Image of this Document (PDF)

• 2006 WL 819615 (Trial Motion, Memorandum and Affidavit) Atmi's Amended Opening Brief in Support of its Inequitable Conduct Case (Feb. 1, 2006)Original Image of this Document (PDF)

• 2006 WL 819620 (Trial Motion, Memorandum and Affidavit) Amended Opening Brief in Support of Atmi's Motion for A New Trial (Feb. 1, 2006)Original Image of this Document (PDF)

• 2005 WL 3667341 (Trial Motion, Memorandum and Affidavit) Praxair's Discovery Designations, Atmi's Counter Designations and Objections to Praxair's Discovery Designations and Praxair's Objections to Atmi's Counter Designations (Nov. 4, 2005)Original Image of this Document (PDF)

• 2005 WL 3666787 (Trial Motion, Memorandum and Affidavit) Praxair's Motion to Strike Another New Witness and more New Documents Identified by Atmi and to Preclude Atmi from Relying on them at Trial (Oct. 31, 2005)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 883395 (D.Del.)
**(Cite as: 2004 WL 883395 (D.Del.))**


• 2005 WL 2867905 (Trial Motion, Memorandum and Affidavit) Praxair's Reply Brief in Support of its Motion to Strike the Declarations of Philip Chen and Christopher Jones (Sep. 19, 2005)Original Image of this Document (PDF)

• 2003 WL 24229530 (Trial Pleading) Complaint for Patent Infringement (Dec. 22, 2003)Original Image of this Document (PDF)

• 1:03cv01158 (Docket) (Dec. 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 12

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)
(Cite as: 2006 WL 680657 (D.Del.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SONY ELECTRONICS, INC., Sony Computer Entertainment America, Inc., Sony
Pictures Entertainment, Inc., Sony Connect, Inc.,
Sony Online Entertainment,
Inc., Sony Corporation of America, Sony BMG Music Entertainment, Inc., Sony
Ericsson Mobile Communications (USA), Inc.,
Plaintiffs,
v.
ORION IP, LLC, Defendant.
**No. C.A. 05-255(GMS).**

March 14, 2006.

Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Plaintiffs.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendant.

*MEMORANDUM*

SLEET, J.

**\*1** On November 23, 2004, Orion IP, LLC ("Orion"), a Delaware corporation headquartered in Texas, filed a patent infringement suit in the United States District Court for the Eastern District of Texas against fifteen individual defendants, none of whom are parties to this action. However, on February 10, 2005, Orion amended its complaint to add additional parties, including Sony Corporation of America ("SCA"). On April 7, 2005, SCA responded by filing an answer in the Texas action asserting the affirmative defenses of non-infringement and invalidity as to both patents in suit. Then, on May 2, 2005, SCA and seven other so-called non-SCA plaintiffs filed an action in this court seeking a declaratory judgment of non-infringement and invalidity with respect to the same patents as those asserted against SCA in the Texas action. However, although the patents at issue

are the same, the potentially-infringing products of the non-SCA plaintiffs--their websites--are allegedly different than the accused SCA website. Presently before the court is Orion's motion to either dismiss or stay this case under the first-filed rule, or alternatively, to transfer it to the Eastern District of Texas pursuant to 28 U.S.C.A. § 1404(a) (1993). (D.I.11.)

Generally speaking, the first-filed rule is as simple as its name suggests: "[w]here two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances." *Corixa Corp. v. IDEC Pharm. Corp.,* No. 01-615-GMS, 2002 WL 265094, at *1 (D.Del. Feb.25, 2002). The present case presents a small complication, however, because only one of the plaintiffs in this action is a defendant in the Texas action. But, that complication is not too difficult to overcome because "Civil Procedure Rule 21 permits any claim against a party to be severed and proceeded with separately." *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp.,* 125 F.2d 1008, 1009 (3d Cir.1942). Moreover, "Rule 21 permits a court to sever claims *sua sponte." United States v. AMTRAK,* No. 86-1094, 2004 U.S. Dist. LEXIS 10867, at *21 (E.D. Pa. June 15, 2004). That being the case, and there being no discernable prejudice in severing SCA's claims against Orion, the court will exercise its power to do so. As a result, the court is confronted with a declaratory judgment action by SCA alone, the inverse of which (i.e., an infringement action) was filed about three months earlier in Texas. Therefore, pursuant to the first-filed rule, SCA must be dismissed from this case. *Cf. Triangle Conduit,* 125 F.2d at 1009 (holding that this district was under a duty to enjoin a patent-holding defendant in a declaratory judgment action from pursuing an infringement action in another district against the declaratory judgment plaintiff, even though the infringement action in the other district would proceed against other parties in the absence of the declaratory judgment plaintiff).

**\*2** With SCA out of the case, the court must still decide the fate of the non-SCA plaintiffs. Orion first argues that, like SCA itself, the non-SCA plaintiffs are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)
**(Cite as: 2006 WL 680657 (D.Del.))**

subject to the first-filed rule under the holding of *Corixa,* where this court granted a motion to transfer a patent infringement action, based on the first-filed rule, to a district where a previous declaratory judgment action had been filed, even though one of the plaintiffs in the patent infringement action was not a defendant in the declaratory judgment action. 2002 WL 265094, at *1–*2. However, that plaintiff was a licensee of a defendant in the declaratory judgment action, and could therefore request permission to join that action after the transfer. *Id.* at *2. In this case, the non-SCA plaintiffs cannot be licensees of SCA because SCA is not the patentee. Moreover, the "accused products" in this action are the websites of the non-SCA plaintiffs, which are allegedly different than the SCA website accused in the Texas action. Thus, *Corixa* is distinguishable, and the first-filed rule does not apply to the non-SCA plaintiffs.

Orion's next argument is that the action should be transferred pursuant to § 1404(a). In *Jumara v. State Farm Insurance Co.,* the Third Circuit outlined six private interests and six public interests relevant to such a transfer. The private interests are:

(1) The plaintiff's forum preference as manifested in the original choice;

(2) The defendant's preference;

(3) Whether the claim arose elsewhere;

(4) The convenience of the parties as indicated by their relative physical and financial condition;

(5) The convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

(6) The location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

55 F.3d 873, 879 (3d Cir.1995). Aside from Orion's preference for Texas and the non-SCA plaintiffs' preferences for Delaware, none of the other private interests are particularly relevant. Orion disagrees, and argues that convenience weighs in favor of transfer. Although Texas may indeed be more convenient for Orion, all of the non-SCA plaintiffs (and Orion) are incorporated in Delaware--a fact that certainly weighs against transfer. At best, then, the private interests are a wash.

The public interests outlined in *Jumara* include:

(1) The enforceability of the judgment;

(2) Practical considerations that could make the trial easy, expeditious, or inexpensive;

(3) The relative administrative difficulty in the two fora resulting from court congestion;

(4) The local interest in deciding local controversies at home;

(5) The public policies of the fora; and

(6) The familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. Here, Orion argues that although it and the remaining plaintiffs are all Delaware corporations, the local interest favors Texas because Orion has offices in that state. In *Corixa,* three parties were Delaware corporations, and yet, that fact did not weigh against transferring the case to California because the "patents deal[t] with the treatment of lymphoma, .... [which] has far-reaching implications [beyond Delaware's borders]." 2002 WL 265094, at *4. By the same token, the fact that Orion has offices in Texas does not weigh in favor of transfer where the patents deal with technology used in internationally-accessible websites. Orion also argues that because litigation involving the same patents is already underway in Texas, judicial resources will be saved granting a transfer. Although there may be some efficiency to be gained by consolidating certain aspects of discovery, Orion ignores the possibility that collateral issues specific to any one of the many unrelated parties involved in both cases may create inefficiencies that would not arise if the proceedings remained separate. *See Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 739 (1st Cir.1977) ("Nor are we fully convinced of the propriety of using another customer suit of another manufacturer, which, incidentally, may have very different collateral issues, as a magnet to draw a suit to a jurisdiction where it otherwise should not be."). Moreover, simply because Orion initiated an action in Texas involving one set of parties, it should not be able to "bootstrap itself into staying there" when subsequent litigation arises involving a different set of parties. *Id.*

**\*3** In short, the *Jumara* interests do not weigh in favor of transfer, and therefore, Orion's motion must be denied as to the non-SCA plaintiffs.

*ORDER*

Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)
**(Cite as: 2006 WL 680657 (D.Del.))**

IT IS HEREBY ORDERED THAT:

1. Orion's motion to dismiss (D.I.11) be GRANTED in part and DENIED in part; and

2. The claims of SCA against Orion be SEVERED and DISMISSED.

Not Reported in F.Supp.2d, 2006 WL 680657 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2385656 (Trial Motion, Memorandum and Affidavit) Orion Ip, Llc'S Reply Brief in Support of its Motion to Dismiss, Stay, or Transfer this Action to the Eastern District of Texas (Jul. 29, 2005)Original Image of this Document (PDF)

• 2005 WL 2385533 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Stay or Transfer This Action to the Eastern District of Texas (Jul. 19, 2005)Original Image of this Document (PDF)

• 2005 WL 1307841 (Trial Pleading) Complaint for Delcaratory Judgment (May 2, 2005)Original Image of this Document (PDF)

• 1:05cv00255 (Docket) (May. 02, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 13

Not Reported in F.Supp.2d, 2001 WL 34368396 (D.Del.)
**(Cite as: 2001 WL 34368396 (D.Del.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Ole K. NILSSEN, Plaintiff,
v.
EVERBRITE, INC., Defendant.
**No. Civ.A. 00-189-JJF.**

Feb. 16, 2001.

Donald F. Parsons, Jr., and Mona A. Lee, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Harry J. Roper, Raymond N. Nimrod, John E. Titus, and Jonathon Hill, of Roper & Quigg, Chicago, Illinois, for Plaintiff, of counsel.

Richard K. Herrmann, and Dale R. Dube, of Blank Rome Comisky & McCauley LLP, Wilmington, Delaware. Brian D. Sieve, Michael A. Parks, John F. Paschke, and G. Courtney Holohan, of Kirkland & Ellis, Chicago, Illinois, for Defendant, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.

*1 Presently before the Court is Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (D.I.11). For the reasons stated below, the Court will grant Defendant's motion.

BACKGROUND

Plaintiff Ole K. Nilssen ("Plaintiff") is a Florida resident with his principal place of business in Chicago, Illinois. [FN1] (D.I. 3 at ¶ 3). Plaintiff is engaged in the business of "identifying, formulating plans for developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including gas tube sign power supplies." (D.I. 3 at ¶ 6). Defendant Everbrite, Inc. ("Defendant") is a Wisconsin corporation engaged in the business of making and selling gas tube sign power supplies. (D.I. 3 at ¶ 4, 8). Plaintiff filed the instant action against Defend-

ant on March 22, 2000. (D.I. 1 at 4). In his Amended Complaint, Plaintiff contends that Defendant has been making, using, and selling gas tube sign power supplies, and that this conduct constitutes willful infringement of eight patents that were invented and are owned by Plaintiff. [FN2] (D.I. 3 at ¶ 7, 12-14). On May 12, 2000, Defendant filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I.11).

FN1. Defendant disputes that Plaintiff is a Florida resident, and Defendant has proffered documentary evidence that suggests Plaintiff actually resides in Illinois. Because the Court does not consider this fact determinative to the instant motion, the Court will assume that Plaintiff is a Florida resident. However, the Court will also assume for purposes of this motion that Plaintiff's principal place of business is located in Illinois. This assumption is based on the fact that, in response to Defendant's contention that Plaintiff resides and maintains his principal place of business in Illinois, Plaintiff simply responds: "[d]enied. [Plaintiff] resides in Florida." (D.I. 16 at ¶ 3). The Court construes Plaintiff's failure to deny that his principal place of business is located in Illinois as an implicit admission that this allegation is true. The presumption that Plaintiff's business is located in Illinois is further bolstered by the fact that a number of Plaintiff's current and former employees reside in Illinois. (D.I. 12 at 10; D.I. 27 at 8-9).

FN2. These patents include U.S. Patent No. 4,563,719; U.S. Patent No. 4,663,571; U.S. Patent No. 5,039,919; U.S. Patent No. 5,164,637; U.S. Patent No. 5,214,356; U.S. Patent No. 5,341,067; U.S. Patent No. 5,446,347; and U.S. Patent No. 5,510,680. (D.I. 3 at ¶ 7).

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of

the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiff could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.,* C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). [FN3] These factors also include several public interests:

> FN3. *Jumara* also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id.*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases. *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the

circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

A. Convenience of the Parties

**\*2** The Court concludes that the convenience of the parties due to their relative physical and financial condition weighs slightly in favor of transfer. Defendant's principal place of business is located in Greenfield, Wisconsin, which is less than 100 miles from the federal courthouse in Chicago, Illinois. (D.I. 12 at 6). Although Plaintiff resides in Florida, his principal place of business is located in Illinois and several former and current employees reside in Illinois. Therefore, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because Defendant is a large company--with approximately § 140 million in sales in 1999--that is financially capable of litigating in Delaware. *Motorola Inc. v. PC-Tel, Inc.,* 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505, 510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.,* 2000 WL 1728354, at \*4 (D.Del. Feb. 11, 2000)(quoting *Jumara,* 55 F.3d at 879). A party need not allege that a witness definitely

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368396 (D.Del.)
**(Cite as: 2001 WL 34368396 (D.Del.))**

will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics,* 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

In the instant case, Defendant contends that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene--an employee of Plaintiff, (2) Robert Schneider--a former employee of Plaintiff, (3) two former employees of Defendant, and (4) employees from an Illinois company called Advance Transformer, Inc. ("Advance") (D.I. 12 at 10-11). In response, Plaintiff contends that (1) Defendant's contentions are unavailing because Defendant has failed to explain the nature of these witnesses' testimony, and in several cases, has even failed to name the witnesses, (2) Defendant has failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendant has not alleged that any witnesses actually will be unavailable for trial. (D.I. 27 at 9-10).

**\*3** The Court concludes that Plaintiff's second and third arguments can be summarily rejected. As to Plaintiff's third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiff's second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony, when conducting venue transfer analysis, because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.,* 1997 U.S. Dist. LEXIS 22902, at \*11 n. 4 (D.Del. July 30, 1997). Therefore, the possibility of using videotaped depositions in lieu of trial testimony does not lessen the significance of a witness's unavailability for trial when conducting venue transfer analysis.

Plaintiff's first argument warrants more consideration. Plaintiff notes that one of these allegedly unavailable witnesses, Dale Fiene, is a current employ-

ee of Plaintiff, and should not be considered in the analysis. The Court agrees. Despite Defendant's contention that Mr. Fiene has refused to comply with valid subpoenas in the Northern District of Illinois, the Court will presume that Mr. Fiene's presence will be secured at trial. As a result, the witnesses that the Court will consider will be limited to Mr. Schneider, two former employees of Defendant, and witnesses from Advance.

Plaintiff contends that these potential witnesses do not weigh in favor of transfer because Defendant has failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 27 at 9) (citations omitted). Defendant specifically identifies Plaintiff's former employee, Robert Schneider, and notes that Mr. Schneider's testimony is relevant because he has submitted a number of affidavits to the PTO on Plaintiff's behalf. [FN4] (D.I. 12 at 10). The other witnesses, although not identified by name, have been identified as employees or former employees of either Defendant or Advance. Further, Defendant has indicated the content of their potential testimony: Defendant's own former employees will testify regarding "their knowledge of the allegedly infringing designs" that they gained while employed by Defendant, (D.I. 12 at 11; Exh. H at ¶ 7), and Advance's employees will testify about license agreements between Advance and Plaintiff that are relevant to the issues of a reasonable royalty and prior art of Plaintiff's patents. (D.I. 12 at 11). The Court concludes that such identification of witnesses, especially when fact discovery has yet to take place, is sufficient for purposes of venue transfer analysis . [FN5] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

> FN4. Defendant contends that submissions by Mr. Fiene and Mr. Schneider to the PTO are particularly relevant to Defendant's inequitable conduct claims. (D.I. 12 at 10).

> FN5. The cases cited by Plaintiff, in which the Court refused to afford unnamed witnesses any weight in the analysis, involved situations where the movant merely stated that some witnesses existed that would not

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 34368396 (D.Del.)
**(Cite as: 2001 WL 34368396 (D.Del.))**

be available for trial. (D.I. 27 at 9)(citing *Motorola,* 58 F.Supp.2d at 359; *Sunds Defribator, Inc. v. Durametal Corp.,* 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendant's identification of the witnesses distinguishes the instant case from the cases cited by Plaintiff.

C. Practical Considerations

The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.,* 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

**\*4** In the instant action, Plaintiff has alleged infringement of three patents that are also at issue in the litigation in the Northern District of Illinois. In those Illinois cases, Markman rulings have already been issued and case dispositive motions have already been filed. (D.I. 12 at 12). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to become familiar with three patents, and to render Markman rulings on each of these patents, is a factor that strongly weighs in favor of transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN6] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

FN6. Plaintiff contends that the following facts weigh against transfer: (1) Plaintiff's claim arose in Delaware, and (2) Plaintiff has a legitimate desire to litigate in Delaware in order to quickly resolve the matter. (D.I. 27 at 6, 11-12). The Court recognizes that whether or not a claim arose in a particular forum is a relevant consideration when analyzing the "local interest in local controversies" factor. However, Delaware's only connection to this case is that Defendant sold some of the allegedly infringing products in Delaware. (D.I. 27 at 6 n. 2). Under Plaintiff's theory, any forum in which the allegedly infringing product is sold has an interest in resolving the matter, and this interest would warrant a transfer to that forum. However, Plaintiff's business is located in Illinois and Defendant's business is located in Wisconsin. Thus, the Court concludes that Delaware's interest in resolving the controversy does not weigh against the requested transfer under the circumstances presented in this case.

As to Plaintiff's contention that he desires an expedient resolution to the instant matter, the statistical evidence submitted to the Court reveals that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I. 12, Exh. J at ¶ 4-5). Therefore, the Court considers these statistics insignificant. Furthermore, under the instant circumstances, the Northern District of Illinois is better suited to move the case along quickly due to that court's familiarity with several of the patents at issue. Also, Plaintiff has admitted that the slow pace in the Northern District of Illinois cases is "due to the pace set by the lawyers." (D.I. 27 at 2). Thus, the Court concludes that the relative court congestion of the two fora does not weigh against transfer.

An appropriate Order will be entered.

*ORDER*

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34368396 (D.Del.)

**(Cite as: 2001 WL 34368396 (D.Del.))**

At Wilmington, this 16 day of February, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendant's Motion to Transfer Under 28 U.S.C. § 1404(a) (D.I.11) is *GRANTED.*

Not Reported in F.Supp.2d, 2001 WL 34368396 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00189 (Docket) (Mar. 17, 2000)

END OF DOCUMENT

# EXHIBIT 14

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: 2000 WL 1876477 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
BRUNSWICK CORPORATION Plaintiff,
v.
PRECOR INCORPORATED., Defendant.
**No. 00-691-GMS.**

Dec. 12, 2000.

Robert W. Whetzel, Richards Layton & Finger, of Wilmington, DE, Stephen C. Neal, Linda F. Callison, Jonathan H. Takei and Ricardo Rodriguez of Cooley Godward LLP, Palo Alto, CA, for Plaintiff, of counsel.

Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz of Wilmington, DE, James R. Uhlir, Stephen P. Fricke, Steven V. Gibbons, F. Ross Boundy of Christensen O'Connor Johnson Kindness, Seattle, WA, for Defendants, of counsel.

*MEMORANDUM AND ORDER*
SLEET, J.

**\*1** On August 1, 2000, the plaintiff, Brunswick Corporation, and its division Life Fitness ("Life Fitness") brought this patent infringement action against Precor Incorporated ("Precor"). Life Fitness alleges that Precor is infringing its U.S. Patent No. 6,095,951 (" '951 patent") relating to exercise treadmills. Presently before this court is Precor's motion to transfer this case to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 1404(a). Because the court finds that a transfer would convenience the parties and the witnesses while serving the interests of justice, Precor's motion to transfer is granted.

I. BACKGROUND

A. The parties

Life Fitness and Precor both design, manufacture, and sell exercise equipment and both directly com-

pete with one another in the exercise fitness market. Although both parties are incorporated in Delaware, neither party maintains a physical presence (e.g., offices or facilities) in this state. Life Fitness has its principal place of business in Franklin Park, Illinois and Precor has its principal place of business in Bothell, Washington.

B. Prior Litigation Between the Parties

"Life Fitness and Precor are no strangers to each other, nor to patent litigation." D.I. 7, at 2. In 1994, Precor filed a patent infringement suit against Life Fitness in the United States District Court for the Western District of Washington ("1994 litigation"). At issue in the 1994 litigation were U.S. Patent Nos. 5,599,259, 5,752,897 and certain Claims of U.S. Patent No. 5,382,207 (respectively the " '259, '897, and '207 patents"). The '207 patent is the parent of the '951 patent currently at issue in the case before the court.

In the 1994 litigation, Claims 1-36 of '207 patent were dismissed on summary judgment in February 1996 leaving only claims 37, 38, and 39 at issue. In early September 1999, Life Fitness voluntarily stipulated to the dismissal of the claims for infringement of the '259 and '897 patents as well as Claims 38-39 of the '207 patent. As a result of this stipulation, these claims were dismissed with prejudice in an order dated September 23, 1999. *See Precor Inc. v. Life Fitness,* No. C94-1586C (W.D.Wash. Sept. 23, 1999) (stipulation and order of dismissal). Thus, the only infringement claim remaining for trial related to Claim 37 of the '207 patent. In October 1999, Life Fitness lost at trial as to this one patent claim. The judgment from the 1994 litigation is currently on appeal to the Federal Circuit.

II. DISCUSSION

Pursuant to 28 U.S.C. § 1404(a), the court may transfer this action to "any other district where it might have been brought" when it appears that a change of venue would "convenience" the parties and the witnesses while serving the "interest of justice." 28

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　Page 2
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: 2000 WL 1876477 (D.Del.))**

U.S.C. § 1404(a) (1993). The parties here agree that Life Fitness could have brought this action in the Western District of Washington. *See* 28 U.S.C. S 1391(b)(1) (1993). Moreover, this lawsuit could have initially been filed in Washington because it is a patent infringement matter. *See* 28 U.S.C. § 1400(b). Therefore, the court will next apply the most relevant public and private factors to the facts of the case as directed by the Third Circuit's decision in *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

**\*2** In *Jumara,* the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. 55 F.3d at 879-80; *see also* Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 196- 97 (D.Del.1998). These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *Jumara,* 55 F.3d at 879- 80. [FN1] The court should apply these factors to determine, "on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.* at 883 (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 30-31 (1988)). The burden is on moving party to show that balance of convenience and the interests of justice weighs in favor of transfer. *See Jumara,* at 879.

> FN1. The private interests may include: 1) the plaintiff's original forum preference; 2) the defendant's preference; 3) whether the claim arose elsewhere; 4) the convenience of the parties; 5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Jumara,* 55 F.3d at 879-880. The public interests may include: 1) the enforceability of the judgment; 2) practical considerations that make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at

home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

A. Private Factors

The court concludes that the balance of the private factors tips slightly in favor of transfer. In this case, the court finds the convenience of the parties, the convenience of the witnesses, and the location of records and books to be the most pertinent of the private factors. Although both parties are incorporated in Delaware, Precor maintains its headquarters in the Western District of Washington and Life Fitness in Franklin Park, Illinois. Additionally, neither of the parties, their witnesses, or any of the potentially relevant documents and records are located in Delaware.

Recognizing that the balance of convenience tips toward the Western District of Washington, Precor further argues that Life Fitness will suffer no greater inconvenience in traveling to Washington than Delaware. In contrast, Life Fitness argues that its choice of forum is paramount. The court acknowledges that a plaintiff's choice of the forum is a "paramount" consideration that is not to be "lightly disturbed." *Schutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-80 (3d Cir.1995). In this case, however, the plaintiff's preference for Delaware is not given as much deference because most of the events at issue, that is, the design and manufacture of the exercise equipment, occurred outside of Delaware. *See Britamco Underwriters, Inc. v. Wallace,* 56 F.Supp.2d 542, 545 (E.D.Pa.1999). "[T]he transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen ... a forum where the alleged wrongful activity occurred." *Continental Casualty Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Thus, because the parties are located outside of Delaware, the witnesses as well as the relevant documents and records are located in Washington, and the product at issue was designed and manufactured in Washington, the Western District of Washington is a more convenient forum for the litigation.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)
**(Cite as: 2000 WL 1876477 (D.Del.))**

B. Public Factors and the Interest of Justice

**\*3** Although the private factors tip slightly in favor of the Western District of Washington, the relevant public factors weigh heavily in favor of transfer. Most relevant to the courts inquiry is whether there are practical considerations that would make trial "easy, expeditious, or inexpensive." *Jumara,* 55 F.3d at 879. In this case, there has already been litigation on the '207 patent, a parent patent of the one at issue here, in the Western District of Washington. This matter is on appeal. Moreover, the parties are currently litigating another patent infringement matter involving exercise equipment in the Western District of Washington. [FN2] Where related lawsuits exist, "it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court." *See Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F.Supp.2d 518, (D.N.J.2000)* (citations omitted). Thus, the court finds that transferring this case would promote the interests of justice.

> FN2. The parties disagree as to whether this is a directly related matter.

III. CONCLUSION.

Finding that the balance of convenience and the interests of justice weigh in favor of transfer,

IT IS HEREBY ORDERED that:

1. Precor Incorporated's Motion to Transfer is GRANTED; and

2. This matter shall be TRANSFERRED to the Western District of Washington.

Not Reported in F.Supp.2d, 2000 WL 1876477 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00691 (Docket) (Aug. 01, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 15

Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
**(Cite as: 2003 WL 473380 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ALLERGAN, INC. AND ALLERGAN SALES,
LLC, Plaintiffs,
v.
ALCON LABORATORIES, INC., Alcon Research
Ltd., Alcon Inc., and Bausch & Lomb,
Inc., Defendants.
**No. C.A. 02-1682-GMS.**

Feb. 25, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

I. INTRODUCTION

*1 On December 16, 2002, the plaintiffs, Allergan, Inc. and Allergan Sales, LLC (collectively "Allergan"), filed the above-captioned action seeking a declaratory judgment against the defendants, Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon, Inc., and Bausch & Lomb, Inc. (collectively "Alcon and B & L"). Specifically, Allergan asserts infringement of its U.S. Patent No. 6,465,464 B2 ("the '464 Patent"). The '464 Patent is based on a continuation application of two Allergan patents asserted in a prior California action.

Presently before the court is Alcon and B & L's motion to transfer this action to the Central District of California, Southern Division. For the reasons that follow, the court will grant this motion.

II. BACKGROUND

Both of the plaintiffs are Delaware entities with their principle place of business in Irvine, California. The defendant Alcon Laboratories, Inc. is a Delaware corporation with its principal place of business in Forth Worth, Texas. Alcon Research, Ltd. is a limited partnership organized under the laws of Texas, with Al-

con Laboratories, Inc. as a general partner. Alcon, Inc. is the parent of Alcon Laboratories, and is a Swiss corporation headquartered in Hunenberg, Switzerland. Finally, Bausch and Lomb is a New York corporation, with its principle place of business in Rochester, New York.

On January 9, 2002, Allergan filed suit against Alcon and B & L in the Central District of California asserting infringement of United States Patent Nos. 6,199,415 B1 ("the '415 Patent") and 6,248,741 B1 ("the '741 Patent"). Alcon moved for summary judgment of non-infringement, which the court granted on May 8, 2002. See *Allergan, Inc. v. Alcon Laboratories, Inc.*, 200 F.Supp.2d 1219 (C.D.Cal.2002). B & L subsequently filed a similar motion, which was also granted.

On October 15, 2002, Allergan obtained the '464 patent, which issued as a continuation of the application that led to the '741 patent, which, in turn, is a continuation of the application that led to the '415 patent. The '464 patent is the subject of the current action.

The defendants in the present case filed a "mirror image" declaratory judgment action against Allergan concerning the '464 patent in the Central District of California on December 23, 2002.

III. DISCUSSION

Alcon and B & L move to transfer this action to the District Court for the Central District of California, Southern Division pursuant to 28. U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Central District of California, Southern Division. The court will, therefore, move on with the inquiry as directed by the Third Circuit. See *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

*2 When considering a motion to transfer, the court must determine 'whether on balance the litigation

Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)
**(Cite as: 2003 WL 473380 (D.Del.))**

would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.* This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interests of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendants' preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc., 28 F.Supp.2d 192 (D.Del.1998).*

Upon consideration of these factors, the court finds that the defendants have met their burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relied on the following considerations, among others: (1) while the plaintiffs and several of the defendants are Delaware entities, and should reasonably expect to litigate in the forum, there is little connection between Delaware and this action or the parties; (2) each party either maintains its principle place of business in California, or has facilities there, whereas no party maintains operations in Delaware; (3) the parties are large and international organizations with apparently substantial assets; (4) because the parties are already litigating essentially the same issues in California, travel time and convenience in the aggregate would be substantially increased with a transfer of forum; and (5) any disparity in court congestion is not so great as to weigh against transfer due to the defendants' "mirror image" action currently pending in the Central District of

California, Southern Division. Thus, given the on-going relationship the Central District of California has with the same parties, and the same, or related, patents, the court concludes that the public and private interests are sufficient to tip the balance of convenience strongly in favor of the defendants.

III. CONCLUSION

For the aforementioned reasons, IT IS HEREBY ORDERED that:
   1. The defendants' motion to transfer this case (D.I.6) is GRANTED.
   2. The above-captioned action is hereby TRANSFERRED to the United States District Court for the Central District of California, Southern Division.

Not Reported in F.Supp.2d, 2003 WL 473380 (D.Del.)

   **Motions, Pleadings and Filings (Back to top)**

• 1:02cv01682 (Docket) (Dec. 16, 2002)

END OF DOCUMENT

# EXHIBIT 16

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
**(Cite as: 2005 WL 735880 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

SUMITO MITSUBISHI SILICON CORP., aka
Sumco, and Sumco USA Corp., Plaintiffs,
v.
MEMC ELECTRONIC MATERIALS, INC., De-
fendant.
No. Civ. 04-852-SLR.

March 30, 2005.

Richard D. Kirk, of Morris, James, Hitchens & Willi-
ams LLP, Wilmington, Delaware, for Plaintiffs, R.
Terrence Rader, David T. Nikaido, and Ellen A.
Efros, of Rader, Rishman & Grauer PLLC, Bloom-
field Hills, MI, of counsel.

Patricia S. Rogowski, of Connolly Bove Lodge &
Hutz LLP, Wilmington, Delaware, for Defendant,
Robert M. Evans, Jr., and Marc Vander Tuig, of Sen-
niger Powers, St. Louis, Missouri, of counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

**\*1** On July 13, 2004, plaintiffs Sumitomo Mitsubishi
Silicon Corporation and SUMCO USA Corporation
(collectively "plaintiffs") filed the present action
against defendant MEMC Electronic Materials, In-
corporated. (D.I.1) In response, defendant filed a mo-
tion to dismiss, transfer, or stay plaintiffs' complaint.
(D.I.10) Plaintiffs subsequently filed a first amended
complaint. [FN1] (D . I. 14) Presently before the
court is defendant's motion to dismiss, transfer, or
stay plaintiffs' amended complaint. [FN2] (D.I.19)
For the reasons that follow, the court denies defend-
ant's motion to dismiss or stay plaintiffs' amended
complaint, but grants defendant's motion to transfer
the case to the United States District Court for the
Northern District of California.

> FN1. The amended complaint alleges de-
> fendant monopolized the low defect silicon

wafer market in the United States by enfor-
cing or threatening to enforce the "fraudu-
lently-procured" U.S. Patent No. 5,919,302
("the '302 patent") and United States Patent
No. 6,287,380 ("the '380 patent"). Plaintiffs
also request declaratory judgment that: (1)
none of their products infringe the '302 pat-
ent or the '380 patent; (2) the '302 patent and
the '380 patent are invalid for failure to com-
ply with 35 U.S.C. §§ 101, 102, 103, and
112; (3) the ' 302 patent and the '380 patent
are unenforceable under the doctrine of in-
equitable conduct; and (4) the '302 patent
and the '380 patent are void and unenforce-
able because of defendant's patent misuse.
(D.I. 14 at 22-26)

> FN2. Since plaintiff filed an amended com-
> plaint, its original complaint and all motions
> related to that original complaint (i.e.,
> D.I.10) are moot. The court will only issue a
> ruling on defendant's motion to dismiss,
> transfer, or stay plaintiffs' amended com-
> plaint. The court will consider arguments in
> motions related to the originally filed com-
> plaint only as they pertain to defendant's
> motion to dismiss, transfer, or stay the
> amended complaint.

II. BACKGROUND

Plaintiff Sumitomo Mitsubishi Silicon Corporation is
a Japanese corporation with its principal place of
business in Tokyo, Japan. (D .I. 14 at 4) Plaintiff
SUMCO USA Corporation is a Delaware corporation
with its principal place of business in Fremont, Cali-
fornia. (Id.) Defendant MEMC Electronic Materials,
Inc. is a Delaware corporation with its principal place
of business in St. Peters, Missouri. (Id.) The parties
are leading worldwide producers of electronic grade
silicon wafers for the semiconductor industries. (Id.)

On December 14, 2001, defendant sued the prede-
cessors in interest of plaintiffs [FN3] in the Northern
District of California ("the Northern District Litiga-
tion"). (D.I. 11, ex. 2 at 5; D.I. 14 at 13; D.I. 20 at 3)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
**(Cite as: 2005 WL 735880 (D.Del.))**

On July 15, 2002, defendant filed an amended complaint which alleged that plaintiffs directly infringed and induced infringement of the '302 patent. [FN4] (D.I.11, ex. 1)

> FN3. The predecessors in interest to plaintiffs are Mitsubishi Materials Silicon Corporation, Mitsubishi Silicon America Corporation, Sumitomo Mitsubishi Silicon Corporation, SUMCO USA Corporation and SUMCO USA Sales Corporation. (D.I.11, ex. 6) After a corporate merger in early 2002, the present plaintiffs were formed and defendant amended its complaint accordingly.

> FN4. In the Northern District Litigation, defendant attempted to expand the scope of the litigation to include another patent, the '380 patent, in an effort to preclude plaintiffs from arguing they had a noninfringing alternative to the '302 patent. (D.I.

In the Northern District Litigation, plaintiffs asserted in their amended answer that the '302 patent: (1) was not infringed; (2) was invalid; and (3) was unenforceable because of alleged inequitable conduct by defendant for failure to disclose material prior art to the United States Patent Office. (D.I. 11, ex. 3 at 3-4)

At the conclusion of discovery in the Northern District Litigation, plaintiffs and defendant filed motions for summary judgment: (1) of zero damages (D.I. 11, ex. 2 at 22); (2) of invalidity of the '302 patent (id. at 38); (3) of noninfringement of the '302 patent (id. at 45); (4) that the '302 patent correctly listed all inventors (id. at 46); (5) that the asserted claims read on the accused wafers (id. at 47); and (6) that the '302 patent met the enablement requirements of 35 U.S.C. § 112 (id.). The court granted plaintiffs' motion for summary judgment of zero damages and then struck all remaining motions for summary judgment. (Id. at 46, 51) On April 22, 2004, the court entered a final judgment of noninfringement. (Id. at 61) Defendant appealed the decision to the United States Court of Appeals for the Federal Circuit. (D.I.21, ex. 7)

After the court entered summary judgment, plaintiffs

filed a motion for attorneys' fees, claiming that defendant had commenced the Northern District Litigation without conducting an adequate pre-filing investigation and prosecuted the lawsuit without ever asserting an adequate infringement contention. (D.I. 11, ex. 4 at 2, 14, 19, 20) This motion was denied. (Id., ex. 6 at 7-11)

## III. STANDARD OF REVIEW

**\*2** Under 28 U.S.C. § 1404(a), [FN5] a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 208 (D.Del.1998).

> FN5. Title 28, Section § 1404(a) provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 567 (D.Del.2001); Shutte, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. C.R. Bard, Inc. v. Guidant Corp., 997 F.Supp. 556, 562 (D. Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 WL 1617186 (D.Del. Nov. 28, 2001); Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F.Supp.2d 128, 131 (D.Del.1999). Although trans-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
**(Cite as: 2005 WL 735880 (D.Del.))**

fer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterizes as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

IV. DISCUSSION

**\*3** The facts of this case balance strongly in favor of transfer to the Northern District of California. The Northern District Litigation was filed before the present action. The court in the Northern District Litigation has considered and ruled on many of the issues presented by plaintiffs' amended complaint. In

particular, that court has already considered briefs regarding whether the '302 patent was fraudulently obtained, was invalid under the doctrine of inequitable conduct, or was invalid for patent misuse. [FN6] Furthermore, the court has already considered whether plaintiffs' Samsung wafer infringed the '302 patent. (D.I. 22, exs. 16, 17, 18, 19, 20, 21; D.I. 11, ex. 2 at 46, 61) Finally, the court was presented with several briefs addressing whether the '302 patent was invalid. (D.I.22, exs.19, 20, 21, 22) Thus, all of plaintiffs' contentions relating the '302 patent have already been presented to the court in the Northern District Litigation.

> FN6. As plaintiffs stated in its originally filed complaint, "[a] complete discussion of [defendant's] inequitable conduct is set forth in [plaintiffs'] expert reports, which were filed in the [Northern District Litigation]." (D.I. 1 at 10)

The '380 patent is very similar to the '302 patent. Both the '302 patent and the '380 patent issued from U.S. Patent Application Ser. No. 60/041,845. (D.I.14, exs.A, B) The '302 patent and the '380 patent have similar written descriptions and share many of the same figures. (*Id.*) Consequently, the court's experience with the '302 patent in the Northern District Litigation may well be helpful in resolving many of plaintiffs' arguments regarding the '380 patent.

The court in the Northern District Litigation has three years of experience with this litigation and has already issued several orders regarding infringement of the '302 patent. Its grasp of the facts and issues in connection with the '302 patent, together with the similarity between the '302 patent and the '380 patent, make that court a more appropriate venue for the present matter. In the interests of judicial economy and of avoiding inconsistent rulings, this court transfers the present matter to the Northern District of California.

V. CONCLUSION

For the reasons stated above, the court denies defendant's motion to dismiss or stay this matter, but grants defendant's motion to transfer the case. An appropri-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 735880 (D.Del.)
**(Cite as: 2005 WL 735880 (D.Del.))**

Page 4

ate order shall issue.

## ORDER

At Wilmington this 30th day of March, 2005, consist-
ent with the memorandum opinion issued this same
date;

IT IS ORDERED that:

1. Defendant's motion to dismiss or to stay (D.I.19)
plaintiffs' complaint is denied.

2. Defendant's motion to transfer the present action to
the Northern District of California (D.I.19) is gran-
ted.

Not Reported in F.Supp.2d, 2005 WL 735880
(D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on October 20, 2006 I caused to be electronically filed a true and correct copy of the foregoing, Plaintiffs' Memorandum in Opposition to ARIAD Pharmaceuticals, Inc.'s Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a) with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

I further certify that on October 20,2006 I caused a copy of the foregoing, Plaintiffs' Memorandum in Opposition to ARIAD Pharmaceuticals, Inc.'s Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a), to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL (by agreement of counsel)**
Morgan Chu (mchu@irell.com)
David I. Gindler (dgindler@irell.com)
Amir A. Naini (anaini@irell.com)
Christopher M. Newman (cnewman@irell.com)
Elizabeth L. Rosenblatt (brosenblatt@irell.com)
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com