# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN, INC., IMMUNEX CORPORATION,    )
AMGEN USA INC., AMGEN MANUFACTURING    )
LIMITED, IMMUNEX RHODE ISLAND    )   C.A. No. 06-259-KAJ
CORPORATION,    )
       )
             Plaintiffs,    )
     v.    )
       )
ARIAD PHARMACEUTICALS, INC.,    )
       )
             Defendant.    )

## DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
## REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
## RENEWED MOTION TO DISMISS FOR FAILURE TO NAME NECESSARY
## AND INDISPENSABLE PARTIES OR, IN THE ALTERNATIVE,
## TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: October 27, 2006

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................2

A.    ARIAD's Motion is Timely and Appropriate .............................................2

B.    The Court Should Dismiss This Action Because Plaintiffs Have
      Refused To Join Necessary And Indispensable Parties ...........................4

      1.    The Institutions Are Necessary Parties Because They
            Never Conveyed A De Facto Assignment To ARIAD ................4

            a.    The Institutions have retained the right to
                  "indulge" infringement, while ARIAD's ability
                  to sublicense alleged infringers is restricted ....................4

            b.    The Institutions have retained the right to control
                  ARIAD's assignments of rights ........................................6

            c.    The Institutions' ability to take over sole defense
                  of declaratory judgment actions is an expansion,
                  not a limitation, of their rights ..........................................6

            d.    ARIAD does not have the authority to prosecute
                  infringement actions alone .................................................8

            e.    The Institutions retained other key rights
                  consistent with their intent to retain control over
                  licensed patent rights ........................................................9

      2.    The Court Should Dismiss Because Plaintiffs Have
            Failed To Join Necessary Parties Despite Their
            Assertion That It Is Feasible For Them To Do So ....................11

      3.    The Court Should Dismiss Because ARIAD And The
            Institutions Would Be Prejudiced If The Case Proceeded
            In The Institutions' Absence ....................................................11

            a.    The Institutions and ARIAD do not have
                  identical interests and ARIAD does not represent
                  the Institutions ................................................................11

            b.    The Institutions would be prejudiced by a
                  judgment entered in their absence ....................................12

Page

C.    If This Action Is Not Dismissed, Both Public And Private
      Considerations Overwhelmingly Favor Transferring It To The
      District of Massachusetts ........................................................................ 13

      1.    Plaintiffs Could And Should Have Filed This Action In
            Massachusetts But Deliberately Avoided The
            Appropriate Forum For This Case ............................................. 14

            a.    Plaintiffs' forum choice is not controlling here .............. 15

      2.    The Public's Interests In Justice And Judicial Economy
            Strongly Favor Transfer ............................................................ 17

      3.    The Parties' Interests In Cost Savings, Convenience,
            And Access to Witnesses Strongly Favor Transfer .................... 19

III.    CONCLUSION .................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995)......................................................................... 7

*Am. Calcar Inc. v. Am. Honda Motor Co.*,
   No. 6:05 CV 475, 2006 WL 2792211 (E.D. Tex. Sept. 26, 2006) ........... 16, 17, 18

*APV N. Am., Inc. v. Sig Simonazzi N. Am. Inc.*,
   295 F. Supp. 2d 393 (D. Del. 2002).............................................................. 15, 16

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006)....................................................................... 6

*Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*,
   719 F. Supp. 446 (W.D.N.C. 1989) ............................................................... 17

*Datex-Ohmeda, Inc. v. Hill-Rom Servs,, Inc.*,
   185 F. Supp. 2d 407 (D. Del. 2002)............................................................... 18

*Gardiner v. Virgin Is. Water & Power*,
   145 F.3d 635 (3rd Cir. 1998) ......................................................................... 11

*Gen. Signal Corp. v. Applied Materials, Inc.*,
   No. Civ. A. 94-461-JJF, 1995 WL 469620 (D. Del. June 30, 1995) ..................... 16

*Hall v. Kittay*,
   396 F. Supp. 261 (D. Del. 1975)..................................................................... 15

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
   214 F. Supp. 2d 433 (D. Del. 2002)................................................................ 9

*Kahhan v. City of Fort Lauderdale*,
   566 F. Supp. 736 (E.D. Pa. 1983) .................................................................. 17

*Krupp Int'l, Inc. v. Yarn Indus., Inc.*,
   615 F. Supp. 1103 (D. Del. 1985).............................................................. 15, 16

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
   77 F. Supp. 2d 505 (D. Del. 1999)............................................................. 15, 17

*Mi-Jack Prods., Inc. v. Taylor Group, Inc.*,
   No. 96-C-7850, 1998 WL 89356 (N.D. Ill. Feb. 20, 1998) ................................. 13

Page(s)

*Minstar, Inc. v. Laborde,*
    626 F. Supp. 142 (D. Del. 1985)................................................................... 15, 16

*Multistate Legal Studies, Inc. v. Marino,*
    41 U.S.P.Q.2d 1886 (C.D. Cal. 1996)................................................... 17

*Network Appliance v. Bluearc. Corp.,*
    D. Del. No. 03-714, Transcript of Nov. 19, 2003 Hearing (Ex. Z)................. 15, 16

*Nilssen v. Osram Sylvania, Inc.,*
    No 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001)............................... 19

*Sicom Sys. Ltd. v. Agilent Techs., Inc.,*
    427 F.3d 971 (Fed. Cir. 2005)........................................................................ 8

*Sony Elecs., Inc. v. Orion IP, LLC,*
    No. C.A. 05-255(GMS), 2006 WL 680657 (D. Del. Mar. 14, 2006) ................... 19

*SRU Biosys., Inc. v. Hobbs,*
    No Civ. 05-201-SLR, 2005 WL 2216889 (D. Del. Sept. 13, 2005) ..................... 16

*Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry & Assocs.,*
    454 F. Supp. 418 (S.D.N.Y. 1978) ...................................................... 17

*Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.,*
    No. Civ. A. 04-360 JJF, 2005 WL 441077 (D. Del. Feb. 15, 2005)..................... 16

*Vaupel Textilmaschinen KG v. Meccanica,*
    944 F.2d 870 (Fed. Cir. 1991)........................................................................ 9

*Waterman v. Mackenzie,*
    138 U.S. 252 (1891).................................................................................... 13

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................... 2, 6

**Other Authorities**

9 Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 2367 (2d ed. 1995) ............................................ 3

## I.    INTRODUCTION

Plaintiffs' opposition begins with a lengthy plea that the Court ignore the merits of this renewed motion to dismiss.  In Plaintiffs' view, this Court should pay no attention to the additional factual support and detailed legal analysis demonstrating that Harvard, MIT, and Whitehead (the "Institutions") are necessary and indispensable parties.

This plea belies the weakness of Plaintiffs' position and the strength of ARIAD's arguments.  According to Plaintiffs, they could have just joined the Institutions as defendants in this action, but, of course, they did not for transparent reasons.  Plaintiffs are aware that ARIAD has not budgeted for this unanticipated and uninvited multi-million dollar patent litigation when the company's lead cancer therapy is entering the final stage of clinical trials.  Consequently, Plaintiffs' strategy in fighting these arguments is motivated by their belief that ARIAD will "throw in the towel" and grant Plaintiffs a gratuitous covenant not to sue.  Plaintiffs recognize that the situation would be materially different if three highly respected—and well-endowed—educational institutions were parties to this action.

In an effort to downgrade the substantial rights that the Institutions retain under the license agreement, Plaintiffs resort to mischaracterizing, and proposing untenable interpretations of, the relevant provisions—as well as flat out misrepresenting the testimony of Ms. Lita Nelsen, the Director of MIT's Technology and Licensing Office, who negotiated the ARIAD license agreement on behalf of the Institutions.  In the end, Plaintiffs cannot escape the undisputable fact that the Institutions have retained substantial rights in the patents licensed to ARIAD, including the following:

- The Institutions retain a right to sue alleged infringers, and ARIAD cannot subvert the Institutions' right to sue by sublicensing alleged infringers for past infringement;

- The Institutions retain the absolute right to control ARIAD's assignment of the license agreement, and ARIAD does not have an unfettered right to grant sublicenses in lieu of a fettered right to assign;

- ARIAD can only grant a sublicense that covers a product manufactured in the United States and can only receive monetary consideration in return for the grant of a sublicense;

- The Institutions retain the right to take control of a declaratory judgment action in certain circumstances, which strengthens their default right under the law to intervene in cases involving a patent that they own.

Moreover, Plaintiffs' contention that the Institutions are subject to personal jurisdiction in this District (if accepted as true) means that, as necessary parties, they *must* be joined in this action. *Plaintiffs' failure to join the Institutions requires dismissal of this case.* A case cannot proceed without a necessary party who is subject to personal jurisdiction in the district where the action was filed. On the other hand, if the Institutions are not subject to personal jurisdiction in this District, this case must be dismissed because they are indispensable parties. *Either way, this action must be dismissed.*

Finally, given that there is a substantial question as to whether the Institutions are subject to personal jurisdiction in this District, a solution available to the Court is to transfer the case to the District of Massachusetts. While transferring this case to the District of Massachusetts will not solve the financial issues Plaintiffs have created for ARIAD, it will eliminate the personal jurisdiction issue, allow Plaintiffs' case to be litigated before a judge thoroughly familiar with the patent-at-issue, serve the convenience of the parties and witnesses, and promote the interests of justice.

## II.    ARGUMENT

### A.    ARIAD's Motion is Timely and Appropriate

Plaintiffs mischaracterize this motion as one "for reargument" that does not fit within a narrow "window" left open for reconsideration.[1]   In doing so, Plaintiffs

---

[1] D.I. 95, Plaintiffs' Memorandum in Opposition to ARIAD Pharmaceuticals, Inc.'s Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a), at 6 (referred to hereafter as "Pl. Br.").

mischaracterize the plain meaning of a denial "without prejudice."[2] *See, e.g.,* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2367, at 319 (2d ed. 1995) (dismissal "without prejudice" means "that it permits the initiation of a second action"). If the Court intended to entertain only narrowly-defined reconsideration of the motion already denied, it would not have needed to specify that the denial was "without prejudice," as such reargument is available even for rulings made *with* prejudice.

While the Court did not impose any particular conditions on ARIAD's ability to file a new motion on this issue, it did give two reasons explaining its decision: "Now, I just note I'm doing that without prejudice [1] because it's possible, it's just possible that I missed something or [2] there is something out there that hasn't been put in front of me, and I recognize that I don't have the other parties to this agreement in front of me." (Ex. H at 83.) ARIAD's renewed motion responds to both of these reasons.

In response to the Court's second reason, ARIAD has provided a declaration from Lita Nelsen, the Director of MIT's Technology Licensing Office, articulating for this Court MIT's reasons for retaining substantial rights in the ARIAD license agreement. Ms. Nelsen is uniquely qualified to testify about the rights retained by the Institutions in the license agreement, given that it was based on an MIT standard form and that she personally represented MIT in the negotiations with ARIAD.[3]

In response to the Court's first reason, ARIAD has submitted a brief addressing the license agreement and applicable law in greater detail than was possible in ARIAD's first motion to dismiss—which focused primarily on the issue of declaratory judgment jurisdiction. Contrary to Plaintiffs' assertions, the purpose of ARIAD's renewed motion is to directly address for the Court certain issues that were not fully addressed in reaching

---

[2] D.I. 87, Declaration of Elizabeth L. Rosenblatt, filed concurrently with ARIAD's opening brief, Ex. H, at 83. Exhibits attached to the Rosenblatt Declaration are hereafter referenced by exhibit letter.

[3] D.I. 86, Declaration of Lita Nelsen, filed concurrently with ARIAD's opening brief, ¶ 3 (referred to hereafter as "Nelsen Decl.").

its earlier ruling, as well as relevant testimony from an individual involved in the negotiation of the ARIAD license agreement.

Finally, Plaintiffs also accuse ARIAD of delay in filing its renewed motion to dismiss. ARIAD took the time it needed to marshal the most persuasive presentation of the factual and legal arguments demonstrating that the Institutions are necessary and indispensable parties. Plaintiffs do not (and cannot) argue that they somehow have been unfairly prejudiced by ARIAD's preference for quality over speed.

**B.    The Court Should Dismiss This Action Because Plaintiffs Have Refused To Join Necessary And Indispensable Parties**

**1.    The Institutions Are Necessary Parties Because They Never Conveyed A De Facto Assignment To ARIAD**

Plaintiffs' assertion that Institutions need not be parties to a lawsuit seeking to invalidate the '516 patent is built upon illogical misconstructions of the terms of the license agreement and statements made about those terms in ARIAD's opening brief.

**a.    The Institutions have retained the right to "indulge" infringement, while ARIAD's ability to sublicense alleged infringers is restricted**

Plaintiffs do not dispute that the right to indulge infringement must be transferred in order to vest a licensee with all substantial rights. Instead, Plaintiffs contend that ARIAD has an "unrestricted" right to grant a sublicense to any alleged infringer, and that this right trumps the Institutions' power to sue. (Pl. Br. at 9.) They reach this conclusion only by ignoring and distorting both the language and intent of the license agreement.

As soon as ARIAD becomes aware of any alleged infringement of the patent, two provisions of the license agreement are triggered. First, under Section 7.1, ARIAD is required to "promptly inform" the Institutions of the alleged infringement and any available evidence thereof. (Ex. E at Section 7.1.) In addition, Section 7.4 of the agreement provides that once ARIAD has notice of alleged infringement, a six-month clock starts running. (*Id.* at Section 7.4.) At the end of those six months, the Institutions acquire the sole right to sue the infringer *unless* (1) ARIAD successfully "persuad[es] the

alleged infringer to desist"; or (2) ARIAD begins "diligently prosecuting an infringement action[.]" (*Id.*) Thus, contrary to Plaintiffs' claim that ARIAD has the exclusive right to decide whether to "***allow***" the Institutions to sue, (Pl. Br. at 10, emphasis in original), in reality, ARIAD can only *prevent* them from suing by taking specific courses of action that meet objective standards of success or diligence. Nowhere does Section 7.4 contemplate the possibility that ARIAD might prevent the Institutions from exercising their residual right to sue by other means, including by sublicensing the alleged infringer during the six-month window. To read the agreement as Plaintiffs suggest would circumvent the clear intent of Section 7.4 and render meaningless the provision restricting ARIAD's ability to grant sublicenses to alleged infringers.

In particular, once a third party has been identified as an alleged infringer, ARIAD's ability to grant a sublicense *without* initiating litigation is limited by Section 7.7 to *future* infringement. As Ms. Nelsen explains, Section 7.7 is necessary to preserve the Institutions' right to recover for past infringement of the patent in those instances when ARIAD fails to do. (Nelson Decl. ¶ 13.) Plaintiffs assert, without any support from the language of the agreement, that Section 7.7 takes effect *only* "when MIT or Whitehead has filed suit." (Pl. Br. at 11.) In other words, Plaintiffs seek to construct a clever loophole that would allow ARIAD to use the six-month window under Section 7.4 to grant an infringer a free license for past infringement that would escape the limitations of Section 7.7 because no suit was ever filed. (Pl. Br. at 10–11.)

The creation of such a loophole—which would essentially deny the Institutions the very rights conveyed under Section 7.4—makes little sense in the context of the license agreement. Taken together, Sections 7.4 and 7.7 are designed to preserve the Institutions' right to sue an alleged infringer and recover for past infringement unless ARIAD either persuades the infringer to desist or diligently pursues litigation. If ARIAD could prevent the Institutions from suing an alleged infringer without fulfilling *either* of these requirements, simply by granting a sublicense for past infringement, then

Section 7.4 would be so much wasted ink. As for Section 7.7, there is nothing on its face to suggest that it applies only *after* the Institutions have brought suit, and no plausible reason for inferring such a limitation. Familiar canons of contract interpretation compel the conclusion that the license agreement does *not* grant ARIAD the exclusive right to indulge past infringement.[4]

> ### b. The Institutions have retained the right to control ARIAD's assignments of rights

ARIAD's opening brief cites controlling Federal Circuit authority holding that the right to assign freely without consent of the patent holder is necessary to give a licensee all substantial rights in a licensed patent.[5] Plaintiffs do not address this authority, but seek to sidestep it by citing *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336 (Fed. Cir. 2006), to show that limitations on the right to assign are not controlling in all cases. (Pl. Br. at 11.) The reason those limitations were not seen as controlling in *Aspex* was that the licensee had "virtually unfettered right to sublicense." 434 F.3d at 1342. Plaintiffs seek to characterize ARIAD's sublicensing rights as meeting this description, but as explained above, Sections 7.4 and 7.7 sharply limit ARIAD's ability to grant sublicenses to alleged infringers.

> ### c. The Institutions' ability to take over sole defense of declaratory judgment actions is an expansion, not a limitation, of their rights

In the absence of some contractual provision stating otherwise, any patent holder with substantial rights has the option to intervene in an action concerning its patent.

---

[4] Instead of relying on the language of the agreement to support their position, Plaintiffs manufacture their position from a strained parsing of ARIAD's briefs and Ms. Nelsen's declaration, which note that that Section 7.7 governs the situation in which MIT or Whitehead *has filed suit*. If ARIAD and Ms. Nelson were guilty of imprecision, it is only because they failed to contemplate and rule out the counter-intuitive inference that ARIAD would be free under the agreement to deprive the Institutions of the very benefits for which they clearly bargained.

[5] D.I. 84, Defendant ARIAD Pharmaceuticals, Inc.'s Opening Memorandum of Law in Support of its Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404(a), at 12 (hereafter referred to as "ARIAD's Br.").

*Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995) ("[W]hen a patent owner retains a substantial proprietary interest in the patent and wishes to participate in an infringement action, the court must allow it to do so."). Section 7.5 of ARIAD's license does not limit this preexisting right; rather, it grants the Institutions an *additional* one—to "take over *sole defense*" of a declaratory judgment action if ARIAD fails to take reasonable steps to defend it in a timely manner. (Ex. G at Section 2.3.1, emphasis added.) This provision was included because MIT and Whitehead wanted to ensure that, if necessary, they could not only intervene in the action, but *take control* of it. (Nelsen Decl. ¶ 21.) Without Section 7.5, the Institutions lack that right.

Instead of accepting this *plain English* reading of Section 7.5, Plaintiffs again ignore the express language of the license agreement in favor of their own construction, insisting that absent ARIAD's failure to take reasonable steps, "the Institutions *cannot* intervene in such a [declaratory judgment] suit" *at all*. (Pl. Br. at 13 n.15.)[6]   This contention is bizarre, and Plaintiffs themselves appear not to believe it, as they elsewhere assert that the Institutions can "simply join in [this] action voluntarily if they are so concerned about the risk of ARIAD not looking out for their interests." (*Id.* at 18.) Plaintiffs are thus asking this Court to rule in ways that are logically and legally irreconcilable—that the Institutions lack substantial rights because they are *barred* from intervening in the instant litigation absent ARIAD's dereliction, and yet that it is equitable to proceed because the Institutions can *always* intervene.

Plaintiffs compound their distortion of Section 7.5 by using it to support their claims that the Institutions "have entrusted ARIAD with the defense of declaratory judgment actions," (Pl. Br. at 17), "contemplate[d] that ARIAD alone can defend declaratory judgment actions just like this one," (*id.* at 13), and "contractually agreed to

---

[6] Later in their opposition, Plaintiffs reaffirm their untenable position that the "only right retained" by the Institutions to intervene is if ARIAD fails to properly defend the action. (Pl. Br. at 16.)

allow ARIAD to represent them (and thus to protect their interests) in actions just like this one," (*id.* at 15). In fact, no contractual provision grants ARIAD the right to proceed alone in a declaratory action. The only relevant provision is Section 7.5, and it makes clear the Institutions' *distrust* of ARIAD in the context of a declaratory judgment action, expanding the Institutions' default right of intervention into a right to "intervene *and* take over sole defense" of the action in certain circumstances. (Ex. G at Section 2.3.1, emphasis added.) Plaintiffs have taken the obvious—that neither ARIAD nor the Institutions can *stop* Plaintiffs from suing just ARIAD for declaratory relief—and turned it into artifice—that the Institutions contractually "contemplated" that ARIAD would defend such suits alone. The Court should not indulge Plaintiffs' distortions.

### d. ARIAD does not have the authority to prosecute infringement actions alone

Patent infringement litigation cannot proceed unless all patent owners retaining substantial rights in the patent join as parties in the action. *See Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). For this reason, ARIAD negotiated with the Institutions for their agreement in Section 7.2 that, "in furtherance of" ARIAD's right to sue for infringement of the patent, ARIAD "may include" the Institutions as party plaintiffs in prosecuting an infringement action. (Ex. E at Section 7.2.) Without this provision, ARIAD's ability to sue for infringement would be subject to the Institutions' willingness to be included as plaintiffs in each instance. If, on the other hand, the Institutions had conveyed all their substantial rights to ARIAD, then the Institutions' participation in infringement actions would be unnecessary, and ARIAD would not need this right to include them.

Plaintiffs, however, attempt to persuade the Court that the presence of this provision—required precisely because the Institutions *retained* substantial rights—somehow implies the opposite. Plaintiffs argue that the permissive phrase "may include" in Section 7.2 implicitly authorizes ARIAD to "proceed as the sole plaintiff" in offensive

infringement litigation. (Pl. Br. at 10.) The agreement provides no such thing. The only way to grant ARIAD the absolute right to proceed in its discretion as "sole plaintiff" would be to convey all substantial rights in the patent to it. Section 7.2 manifestly does not do so, nor does the agreement as a whole. Rather, the permissive phrase "may include" simply provides a mechanism for ARIAD to join the Institutions as plaintiffs where the Institutions, for whatever reason, decline to do so on their own.

### e. The Institutions retained other key rights consistent with their intent to retain control over licensed patent rights

Plaintiffs' response to ARIAD's discussion of other key rights retained by the Institutions again obscures the point. The issue is not, as Plaintiffs imply, whether these rights are dispositive on their own. The point is that these rights, taken collectively and considered in context of the substantial and dispositive rights discussed above, show that the Institutions did not convey a de facto assignment to ARIAD.

Plaintiffs attempt to blur the issue by minimizing certain rights discussed in its cited cases while ignoring other dispositive rights in those cases. *See Vaupel Textilmaschinen KG v. Meccanica*, 944 F.2d 870, 875 (Fed. Cir. 1991) (exclusive licensee with dispositive right to sue for all infringement had standing to sue alone even though licensor retained rights to prosecute foreign patent applications, receive infringement damages, and a reversionary interest in case of bankruptcy or termination of production); *Intuitive Surgical, Inc. v. Computer Motion, Inc.*, 214 F. Supp. 2d 433, 440 (D. Del. 2002) (exclusive licensee with dispositive express right to sue had standing even though licensor retained right to practice patent for research and development).

Moreover, to advance their argument that ARIAD "controls" the prosecution of licensed patents, Plaintiffs grossly mischaracterize Lita Nelsen's declaration. (Pl. Br. at 6.) Ms. Nelsen's declaration is clear: "ARIAD has no right to prosecute, or to control the prosecution of, any patent applications falling within the definition of Patent Rights.... Although the Institutions ultimately allowed ARIAD to take the lead in patent

prosecution matters, the Institutions retained the contractual right to control and take over that process, if they so chose." (Nelsen Decl. ¶ 18.) There is no ambiguity here.

Plaintiffs also complain that ARIAD should have previously pointed out that it does not have complete freedom to set sublicensing terms because licensed products must be manufactured substantially in the United States, (Ex. E at Section 2.6), and MIT must consent in writing before ARIAD accepts anything of value in lieu of cash from sublicensees, (*Id.* at Section 2.12). ARIAD simply did not appreciate the importance of these restrictions until it solicited information from Ms. Nelsen. These restrictions are quite significant. They limit the entities to whom ARIAD can grant sublicenses, and they limit the consideration that ARIAD can receive when granting a sublicense.

The purpose of these limitations is two-fold. The "place of manufacture" limitation implements the Institutions' obligations to the National Institutes of Health under the Bayh-Dole Act. (Nelsen Decl. ¶ 16.) The "monetary consideration" limitation prevents ARIAD from favoring its own interests over those of the Institutions. For example, it may be in ARIAD's interest to grant a sublicense to the '516 patent to a third party in exchange for a cross-license from that third party to one of its own patents—with no money changing hands. Indeed, it is entirely conceivable that ARIAD would want to enter into such an agreement to obtain a sublicense from a third party needed to manufacture and sell a product for which no royalty would be owed to the Institutions under the '516 patent. That sort of agreement would be beneficial to ARIAD, but would provide little value to the Institutions. The "monetary consideration" limitation is designed to prevent ARIAD from entering into such agreements, absent the Institutions' consent—which may be withheld for any reason. These restrictions strongly demonstrate that ARIAD does not have virtual ownership of the patent.

2.    **The Court Should Dismiss Because Plaintiffs Have Failed To Join Necessary Parties Despite Their Assertion That It Is Feasible For Them To Do So**

Plaintiffs argue that this Court would have personal jurisdiction over MIT and Harvard if they were defendants in this action. (Pl. Br. at 19–20.)[7] Plaintiffs' argument raises the question of why they have made no attempt to join the Institutions in the first place.

Since the patent owners are necessary parties to this suit under Rule 19(a), Plaintiffs may not argue that they can join the Institutions and then go on to argue that the Institutions are dispensable parties under Rule 19(b). "Only if a party cannot be joined under Rule 19(a), does Rule 19(b) come into play" wherein a court may allow a case to proceed without a necessary party. *Gardiner v. Virgin Is. Water & Power*, 145 F.3d 635, 640 (3d Cir. 1998). Given Plaintiffs' admission that they could join necessary parties but refuse to do so, the Court need not reach Rule 19(b). This case should be dismissed.

3.    **The Court Should Dismiss Because ARIAD And The Institutions Would Be Prejudiced If The Case Proceeded In The Institutions' Absence**

If this Court does examine Rule 19(b), the Court should dismiss the case rather than allow it to proceed in the absence of the Institutions. It is unfair for Plaintiffs to put the Institutions to the Hobson's choice of either being potentially bound by litigation in which they are not participating, or taking on the burden of protracted litigation in a forum in which they are not otherwise subject to personal jurisdiction. Proceeding in Delaware prejudices the Institutions no matter which option they choose.

a.    **The Institutions and ARIAD do not have identical interests and ARIAD does not represent the Institutions**

According to MIT's Lita Nelsen, "infringement actions initiated by a licensee [are] substantially different from declaratory judgment actions defended by a licensee....

---

[7] ARIAD has not argued the issue of personal jurisdiction over the Institutions because the issue will not be squarely before the Court unless Plaintiffs name the Institutions as defendants. No doubt, if the issue does come before this Court, it will be heavily litigated by all parties, and Plaintiffs recognize as much in their call for jurisdictional discovery. (*Id.* at 19 n.18.)

In a declaratory judgment action in which the licensee is an involuntary participant, the risk of divergence of interest is much greater." (Nelsen Decl. ¶ 19.)  Recognizing the potential conflict of interest inherent in declaratory judgment actions, the Institutions limited ARIAD's ability to maintain control.  These limitations undercut Plaintiffs' argument that ARIAD can adequately represent the Institutions' interests in this case.

The instant action is the only time that any party has brought a declaratory judgment suit regarding any of the patent rights covered by the license agreement. Plaintiffs misdirect the Court's attention by pointing out that ARIAD and the Institutions have jointly pursued their patent rights in the U.S. Patent and Trademark Office ("PTO"), jointly filed suit on one occasion against the PTO regarding reexamination of the '516 patent, and jointly prosecuted a single infringement suit on the '516 patent.  (Pl. Br. at 16.)  In those cases, ARIAD was not subject to the contract's limitations regarding declaratory judgment actions.  Whether the interests of ARIAD and the Institutions were aligned in other situations does not impact whether their interests are aligned here.

Plaintiffs' observation that ARIAD and the Institutions have overlapping financial interests is not the relevant legal inquiry.  (*Id.* at 16–17.)  The issue is the extent to which the Institutions' interests differ from ARIAD's in the instant action, not whether there is some overlap in interests.  Again, the Institutions considered the potential divergence of the parties' respective interests in declaratory judgment actions to be serious enough to merit demanding contractual rights that protect them.  (Nelsen Decl. ¶¶ 19–21.) Plaintiffs' attempt to brand such concerns as "purely hypothetical" does not explain why the Institutions went to such lengths to carve out declaratory judgment actions for special treatment in the license agreement.

### b.     The Institutions would be prejudiced by a judgment entered in their absence

Plaintiffs' argument that the Institutions need not be joined in this action because they "will be bound by any ruling in this case, thereby obviating the concern under

Rule 19(b)" is counter-intuitive.  (Pl. Br. at 18.)  This argument is contrary to the entire purpose of Rule 19.  As a foundational point of procedural justice, if a party's interests are being adjudicated and that party's interests are not adequately represented in an action, that party should be joined before the case proceeds.  *Waterman v. Mackenzie*, 138 U.S. 252, 255 (1891).  Here, Plaintiffs assert that the Institutions "will be bound" by a decision in this action as support for Plaintiffs' argument that the Institutions are "dispensable parties."  (Pl. Br. at 18.)  Yet if the Institutions are bound by a decision, then they will be prejudiced if they do not have a voice in the litigation.  *Mi-Jack Prods., Inc. v. Taylor Group, Inc.*, No. 96-C-7850, 1998 WL 89356, at *3 (N.D. Ill. Feb. 20, 1998).

Furthermore, Plaintiffs' plea for a final resolution in this matter rings hollow in the face of their refusal to take steps that would eliminate the possibility of needless appeal of the issues in ARIAD's motion.  Plaintiffs assert that they could show that MIT and Harvard are subject to personal jurisdiction in this Court, but Plaintiffs refuse to join them.  Moreover, there is another forum in Massachusetts where personal jurisdiction would be undisputed and Plaintiffs would be able to pursue the case without argument over the necessary and indispensable parties issues.  If Plaintiffs truly wanted a final disposition in this matter, they would not proceed against ARIAD alone.  Plaintiffs' motivation must lie elsewhere.

**C.    If This Action Is Not Dismissed, Both Public And Private Considerations Overwhelmingly Favor Transferring It To The District of Massachusetts**

The nexus of this dispute is in Massachusetts.  Every necessary party is in Massachusetts.  The bulk of the witnesses identified by Plaintiffs and ARIAD are in Massachusetts, and a related case involving the same patent is pending there.  In contrast, not one single witness, piece of evidence, or party is physically located in Delaware.

Plaintiffs protest that they brought suit in Delaware to "clear the air once and for all relating to ARIAD's threats."  (Pl. Br. at 20.)  At the same time, Plaintiffs doggedly put this case into a procedural posture that ensures protracted motion practice and

substantial issues for appeal. Plaintiffs do not want the patent owners in this case (because they prefer to litigate against a much smaller company with limited money and resources), and they do not want the case to be transferred to the right court (where the Institutions, which have considerable money and resources, would be joined without any personal jurisdiction issues).

**1.     Plaintiffs Could And Should Have Filed This Action In Massachusetts But Deliberately Avoided The Appropriate Forum For This Case**

In a familiar pattern, Plaintiffs attempt to obscure the issue before this Court by focusing on the fact that ARIAD and some (but not all) of the Plaintiffs are incorporated in Delaware. But by aggrandizing these ties to Delaware, Plaintiffs ignore the myriad overwhelming bonds between this dispute and Massachusetts—including the fact that this is rightly a suit between all of the Plaintiffs, ARIAD, *and the Institutions*, all of whom are located in Massachusetts. Massachusetts is the right forum for this dispute.

Contrary to how Plaintiffs would have it, ARIAD has never denied that it is subject to suit in Delaware by virtue of incorporating in the state. (*Cf.* Pl. Br. at 24–25 (inaccurately stating that ARIAD seeks to "renounce its place of incorporation when faced with litigation").) Nor has ARIAD ever denied that Delaware corporations may sue in Delaware courts. (*Cf. Id.* at 22–23 (arguing that case should proceed in Delaware because Amgen's state of incorporation is a "paramount consideration").) Rather, ARIAD argues that, based on the particular circumstances of *this case*, Delaware is not the appropriate location for *this case*. Plaintiffs should have brought suit in Massachusetts, where the parties, witnesses and documents are located.

An array of problems discussed in ARIAD's opening brief—delay, inconvenience for the Court, unavailable witnesses, personal jurisdiction questions, issues for appeal, satellite litigation, judicial inefficiency, duplicative litigation, and risk of inconsistent rulings—all merit transfer, and all stem from Plaintiffs' tactical decision to sue in this District even though Massachusetts is the appropriate forum. Plaintiffs disingenuously

complain of delay and difficulty that are the natural outcome of their strategic maneuvering. (Pl. Br. 21, 29.) Plaintiffs have never disputed that Massachusetts is an appropriate forum for this litigation. This Court should transfer the case.[8]

### a. Plaintiffs' forum choice is not controlling here

Plaintiffs do not dispute that convenience of the parties and witnesses can outweigh Plaintiffs' choice to file suit in the state where some of the Plaintiffs are chartered, but which otherwise has no connection to the litigation. Importantly, Plaintiffs do not challenge ARIAD's support on this point. *See, e.g., Network Appliance v. Bluearc Corp.*, D. Del. No. 03-714, Transcript of Nov. 19, 2003 Hearing (Ex. Z) at 16; *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398–99 (D. Del. 2002); *Krupp Int'l, Inc. v. Yarn Indus., Inc.*, 615 F. Supp. 1103, 1106 (D. Del. 1985); *Minstar, Inc. v. Laborde*, 626 F. Supp. 142, 145–46 (D. Del. 1985); *Hall v. Kittay*, 396 F. Supp. 261, 263–64 (D. Del. 1975).

Nor do Plaintiffs dispute that ARIAD's Delaware charter—a factor not identified in section 1404(a) or *Jumara*—is far from dispositive to this motion. In fact, Plaintiffs do not challenge ARIAD's support on this point either. *See, e.g., Network Appliance*, (Ex. Z) at 16; *APV N. Am., Inc.*, 295 F. Supp. 2d at 398–99; *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 77 F. Supp. 2d 505, 509 & n.6 (D. Del. 1999).

Plaintiffs do, however, reach the legally incorrect conclusion that their forum choice deserves the same deference afforded to *companies who actually have operations in Delaware*.[9] If a plaintiff's reason for suing in Delaware is its charter—its actual

---

[8] Although discovery has just begun in this litigation, Plaintiffs assert that so "[m]uch water has already passed under the bridge in this case" that a motion to transfer should be denied. (Pl. Br. at 21.) Their legal authority for this argument, however, is not relevant to this litigation. Plaintiffs point to cases where extensive judicial resources had already been invested in resolving the underlying litigation, which militated against transfer as a public factor. (*Id.*) In the instant litigation, however, transfer would conserve judicial resources, not expend them. And whatever discovery has occurred in this case can easily be continued in Massachusetts.

[9] Plaintiffs' misapplication of several cases leads them to this incorrect result. (Pl. Br. at 22–23.) In *General Signal*, the home-turf rule applied because Delaware was the closest court to the plaintiff's operations in which personal jurisdiction over the defendants could be properly

operations being elsewhere—then the deference given to that plaintiff's decision to sue in Delaware is substantially reduced. *Krupp*, 615 F. Supp. at 1106 (holding that the "home turf" rule does not apply in such cases); *Minstar*, 626 F. Supp. at 145–46 (same); *accord APV N. Am., Inc.*, 295 F. Supp. 2d at 398–99. Moreover, Plaintiffs' state of incorporation is not dispositive, but must be weighed in light of the facts of the case. *See, e.g., Network Appliance*, (Ex. Z) at 16.

Under the circumstances, Plaintiffs' choice of forum is neither the only consideration nor even a "paramount consideration." Plaintiffs have no operations in Delaware but have chosen to sue here even though two of the patent owners are not subject to personal jurisdiction in this District.[10] Plaintiffs actions are by definition forum shopping, a charge which Plaintiffs have never denied. Thus, Plaintiffs' choice of forum is not entitled to weight.

---

established. *Gen. Signal Corp. v. Applied Materials, Inc.*, No. Civ. A. 94-461-JJF, 1995 WL 469620, *1 (D. Del. June 30, 1995). The comparable court in the instant case would be Massachusetts. The *General Signal* court noted that "it [was] not the forum shopping of Plaintiff that brings the parties to Delaware." *Id.* In the instant case, it is.

Contrary to Plaintiffs' argument, *SRU Biosystems* affirmed that "transfer of an action is usually considered as less inconvenient" when a plaintiff has not sued in a jurisdiction where its operations are based. *SRU Biosys., Inc. v. Hobbs*, No. Civ. 05-201-SLR, 2005 WL 2216889, at *2 (D. Del. Sept. 13, 2005). Unlike the instant case, in *SRU Biosystems*, the defendant sought transfer to a court that had construed a different patent than the one in suit; the defendant also failed to establish any problems related to availability of potential witnesses. *Id.* at *3.

In *Trilegiant*, the court noted numerous factors that supported the plaintiff's choice to sue in Delaware. *Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc.*, No. Civ. A. 04-360 JJF, 2005 WL 441077, at *1–*3 (D. Del. Feb. 15, 2005). In that case, Magistrate Judge Thynge had mediated a previous case that involved two of the three patents in suit. *Id.* at *1. The court noted that because personal jurisdiction was not an issue, enforceability would likewise not be an issue. *Id.* at *3. Further, the defendant, a company approximately 1000 times larger than ARIAD, had neither established that it would be inconvenienced by defending in Delaware nor established which potential third-party witnesses were not under Delaware's subpoena power. *See id.* at *2–*3. In contrast, in the instant litigation, each of these factors weigh in favor of the opposite result, favoring transfer to Massachusetts.

[10] Plaintiffs' argument that the sale of Enbrel and Kineret occurs in Delaware is equally unconvincing. Plaintiffs establish no more of a connection between Delaware and this case than exists in any of the other 50 states. *See, e.g., Am. Calcar Inc. v. Am. Honda Motor Co.*, No. 6:05 CV 475, 2006 WL 2792211, at *3 (E.D. Tex. Sept. 26, 2006) (rejecting the same argument).

### 2. The Public's Interests In Justice And Judicial Economy Strongly Favor Transfer

Plaintiffs' argument that the public's interest "cuts against transfer" simply makes no sense. (Pl. Br. at 27.) The public's interest in the swift, economical, and final resolution of this litigation cannot be served as well in Delaware as it could be in Massachusetts. Proceeding in this District will only result in the use of judicial resources for repetitive and potentially inconsistent litigation marred by jurisdictional disputes and clouded by unnecessary appellate risk.

As ARIAD has noted, transfer addresses each of the public's concerns. Transfer shifts this litigation to a court that has expended resources and grown familiar with many of the same issues. *See, e.g.*, *Am. Calcar Inc. v. Am. Honda Motor Co.*, No. 6:05 CV 475, 2006 WL 2792211, at *2 (E.D. Tex. Sept. 26, 2006) (granting transfer for identical reasons). Transfer eliminates satellite disputes and removes significant issues for appeal, such as whether MIT, Whitehead and Harvard are necessary and indispensable parties (if the case were to proceed in this District without them). *E.g.*, *Multistate Legal Studies Inc. v. Marino*, 41 U.S.P.Q.2d 1886, 1895 (C.D. Cal. 1996) ("Courts have repeatedly held that a change in venue from a forum where there is a difficult question of personal jurisdiction or venue to a district where there are not such uncertainties serves the interests of justice.") (citations omitted). By moving this case, the public's interest in consistent, final rulings is met. Plaintiffs try to dodge the issue by pointing to Delaware's "clear interest in resolving disputes" among its citizens, while ignoring that Massachusetts has that same interest. (Pl. Br. at 27.) Plaintiffs rebut none of the many cases cited by ARIAD in support of transfer on these grounds.[11]

---

[11] *See Mentor Graphics*, 77 F. Supp. 2d at 512; *Multistate Legal Studies*, 41 U.S.P.Q.2d at 1895–96; *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 452–53 (W.D.N.C. 1989); *Kahhan v. City of Fort Lauderdale*, 566 F. Supp. 736, 740 (E.D. Pa. 1983); *Terukuni Kaiun Kaisha, Ltd. v. C.R. Rittenberry & Assocs.*, 454 F. Supp. 418, 423 (S.D.N.Y. 1978).

Plaintiffs also disingenuously argue that "the Lilly action involved different issues than this case." (*Id.*) Plaintiffs themselves acknowledge, however, that this case will share many identical issues with the Lilly litigation, particularly those related to validity, enforceability, and interpretation of the patent. These common issues weigh heavily in favor of transfer. *See, e.g.*, *Am. Calcar*, 2006 WL 2792211, at *2 (granting transfer in parallel circumstances for this reason). The Massachusetts court's familiarity with the technology and patent in suit will likely ease case management and the process of learning about Plaintiffs' products, as well. Plaintiffs offer the straw-man argument that transfer of this case to Massachusetts would warrant transfer of all cases involving the '516 patent to Massachusetts, even though ARIAD has made no such sweeping argument. (Pl. Br. at 27.) At the end of the day, each case must be considered on its own facts. The facts of this case warrant transfer.[12]

Finally, Plaintiffs try to distinguish some of ARIAD's cited cases supporting transfer (while failing even to mention many others) by ignoring both the relevance of the rules of law presented and the factual parallels to the instant litigation. (Pl. Br. at 27–28 & n.23.) Plaintiffs attempt to focus on exceedingly narrow procedural and factual differences. (*Id.*) These differences have no meaningful involvement in the transfer issue. In short, Plaintiffs simply ignore one of the central issues under section 1404(a)— that transfer should serve the public's interest in consistent rulings and finality. ARIAD has shown that, based on the weight of public interest factors alone, this Court should transfer the case to Massachusetts.[13]

---

[12] Plaintiffs also suggest that Judge Zobel is unfamiliar with the bulk of the '516 patent because only four claims were asserted in the Lilly trial. (Pl. Br. at 28 n.24.) This distorts how patents are written, with the same claim limitations appearing repeatedly.

[13] Plaintiffs' citations offered as counter-support are inapposite. In *Datex-Ohmeda, Inc.*, the moving party had nationwide operations, leading the court to conclude that litigating in Delaware was no more of a burden than litigating elsewhere, unlike the instant litigation. *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002). Also, the moving party made no contention that any witnesses were beyond Delaware's subpoena power, and the court specifically found that forum shopping was not an issue in the case. *Id.* Neither of those points applies to the instant litigation—in this case, crucial witnesses are outside

### 3.   The Parties' Interests In Cost Savings, Convenience, And Access to Witnesses Strongly Favor Transfer

All parties in this case have an interest in cost-effective litigation in a forum where the widest range of evidence is available. Yet, not only do Plaintiffs incur additional costs for all sides by bringing this action in the wrong forum, but Plaintiffs confusingly suggest that correcting this problem would be of little benefit. (Pl. Br. at 21, 29.)

Plaintiffs try to support their contention by suggesting that ARIAD has failed to name witnesses deemed unavailable in Delaware. (*Id.* at 25.)[14] Curiously, Plaintiffs make this argument by discussing non-party witnesses identified by ARIAD to be unavailable in Delaware. (*Id.* at 23, 26.) *See also Nilssen v. Osram Sylvania, Inc.*, Civ. A. No. 00-695-JJF, 2001 WL 34368395, at *2 (D. Del. May 1, 2001) (holding that non-party witnesses outside of Delaware's subpoena power are unavailable). Even more puzzlingly, Plaintiffs attempt to down-play the importance of these unavailable witnesses by implying a disinterest in their attendance, despite having themselves identified the same individuals on their own Rule 26(a)(1) witness disclosures. (*Compare, e.g.*, Pl. Br. at 26, *with* Ex. O at A(7, 10–11).)

Plaintiffs further assert that these third-party witnesses could be made available for trial in Delaware. For example, Plaintiffs assume that Nobel Laureate Sharp and National Academy of Sciences Member Maniatis could be compelled to attend trial in Delaware under the ARIAD license agreement. Yet, by its plain terms, the provision to

---

Delaware's subpoena power and Plaintiffs' motive to litigate here is suspect. In *Sony Electronics, Inc.*, the court specifically found that, other than the moving party's desire to litigate elsewhere, no other private factor was implicated by transfer. *Sony Elecs., Inc. v. Orion IP, LLC*, No. C.A. 05-255(GMS), 2006 WL 680657, at *2 (D. Del. Mar. 14, 2006). Again, this is unlike the merits underlying this instant motion.

[14] In a circular fashion, Plaintiffs cite a series of cases, in each one of which the moving party failed to show that any witnesses would be unavailable if transfer was denied. (Pl. Br. at 25.) In stark contrast here, ARIAD has identified numerous key third-party witnesses who would be unavailable in Delaware. (ARIAD's Br. at 32–33.)

which Plaintiffs refer (Section 7.6) applies only in offensive litigation commenced by one of the contracting parties, not in a declaratory judgment action.

Finally, while Plaintiffs summarily conclude that "there are no relevant witnesses at Immunex's Rhode Island facility," where one of the products in suit is manufactured, they offer no support for this proposition. (Pl. Br. at 23.) It seems more than a bit odd that, in an action where Plaintiffs seek a declaration of non-infringement, there are no relevant witnesses at the place where a product in suit is made—which is perhaps the reason that Plaintiffs elected not to bolster this argument with any supporting facts.

## III.    CONCLUSION

For the reasons set forth above, ARIAD respectfully requests that this Court dismiss the present suit or, in the alternative, transfer it to the District of Massachusetts.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: October 27, 2006

174625.1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of October, 2006, the attached **DEFENDANT**

**ARIAD PHARMACEUTICALS, INC.'S REPLY MEMORANDUM OF LAW IN**

**SUPPORT OF ITS RENEWED MOTION TO DISMISS FOR FAILURE TO NAME**

**NECESSARY AND INDISPENSABLE PARTIES OR, IN THE ALTERNATIVE, TO**

**TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)** was served upon the below-named counsel

of record at the address and in the manner indicated:


Melanie K. Sharp, Esquire           <u>BY HAND and ELECTRONIC MAIL</u>
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Marcus E. Sernel, Esquire        <u>VIA FEDERAL EXPRESS and ELECTRONIC MAIL</u>
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

J. Drew Diamond, Esquire        <u>VIA FEDERAL EXPRESS and ELECTRONIC MAIL</u>
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800


*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon