# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

**222 DELAWARE AVENUE**

**P. O. BOX 1150**

**WILMINGTON, DELAWARE 19899**

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

November 2, 2006

The Honorable Kent A. Jordan
United States District Court
844 North King Street
Wilmington, Delaware 19810

**VIA ELECTRONIC FILING**

Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*, C.A. No. 06-259-KAJ

Dear Judge Jordan:

I am writing on behalf of Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") in response to Plaintiffs' demand for Court intervention in the discovery process.

For the reasons discussed below, even if Plaintiffs' demands were justified (which they are not), it is premature for the Court to intervene. These discovery issues are of a nature that can and should be resolved between the parties without involving the Court. ARIAD believes that the parties have been, for the most part, taking constructive steps to resolve disagreements regarding Plaintiffs' document requests and misunderstandings regarding electronic document production issues. To the extent that Plaintiffs disagree with the merits of any of ARIAD's objections, ARIAD respectfully submits that ARIAD's concerns are well justified under the Federal Rules of Civil Procedure.

To date, ARIAD's counsel and Plaintiffs' counsel have repeatedly met and conferred regarding Plaintiffs' sixty-two requests for production. Contrary to Plaintiffs' assertion, ARIAD has agreed to produce all relevant, discoverable documents sought by forty-two of Plaintiffs' requests. (Ex. A.) As to the remainder of Plaintiffs' requests, ARIAD has properly objected that the requests are overbroad or duplicative. Nevertheless, in each instance, ARIAD has invited Plaintiffs to narrow their overbroad requests. (*E.g., id.* at 6.) Plaintiffs have declined to do so.

Plaintiffs now seek this Court's plenary approval of every document request that they have propounded, without so much as even addressing any of the issues raised during the parties' extensive meet-and-confer sessions, or providing the Court with any of the parties' correspondence on this subject. Plaintiffs mislead this Court by stating that ARIAD will only produce "some ill-defined subset" of discoverable documents and that ARIAD's "objections leave unclear what documents will and will not be produced." To the contrary, ARIAD has agreed to produce a clearly and concisely delineated set of *all* properly discoverable documents. (Ex. A.)

Plaintiffs also seek to mislead this Court by stating that ARIAD "outright refuse[s] to produce certain categories of clearly discoverable documents, such as documents … that relate to the products in suit … or the Amgen Entities." This is simply not true. ARIAD has agreed to produce relevant non-privileged documents concerning Enbrel or Kineret, such as non-privileged documents concerning any comparison of the claims of the '516 patent to Enbrel or Kineret. (*E.g.*, Ex. A. at 4.) Plaintiffs' sweeping accusation appears to boil down to disagreement over three of ARIAD's objections to some of Plaintiffs' requests.

The Honorable Kent A. Jordan
November 2, 2006
Page 2

First, many requests are exceedingly overbroad and burdensome. For example, Plaintiffs' request no. 37 demands, regardless of context or content, "All documents relating to or mentioning any of the Amgen Entities." ARIAD has requested that Plaintiffs narrow this demand to conform to the standards reflected in Rule 26(b). Plaintiffs have refused.

Second, many requests (especially request nos. 36 et seq.) are duplicative and cumulative to the extent that they request relevant matter. For example, request no. 41, to the extent it requests discoverable material, is subsumed by request nos. 3, 35, 36, 42, 43, and 61.[1] (Ex. A at 1, 3–5.)

Third, ARIAD has declined to produce duplicate copies of documents that have already been produced to Plaintiffs. This case presents the unusual situation where the vast majority of the documents covered by Plaintiffs' document requests were already collected and produced by ARIAD in its still-pending lawsuit against Eli Lilly & Company ("Lilly"). As the Court will recall, Plaintiffs sought to obtain all of these documents on an expedited basis through a subpoena served upon Lilly, instead of waiting for ARIAD's counsel to review and produce these documents. At the hearing on September 11, the Court lifted the temporary stay it had imposed on this discovery and allowed Plaintiffs to collect all of the requested documents from Lilly, without exception.

Plaintiffs' counsel now has every document produced by ARIAD in the Lilly litigation, along with every other document generated by either party in the Lilly litigation (including pleadings, motions, expert reports, and the like). The only condition imposed by the Court in making its ruling was that the documents would be treated as "attorney's eyes only" under Local Rule 26.2 pending review of the documents by ARIAD's counsel—thus allowing ARIAD's counsel to conduct the same sort of review that ordinarily would be conducted if ARIAD were producing its own documents to Plaintiffs in the first instance.

Plaintiffs misstate to this Court that ARIAD has either "blocked" or moved to "prevent" Plaintiffs' in-house counsel from reviewing documents produced by Lilly. There has, in fact, been no such "refusal to confirm" access. To the contrary, ARIAD has reviewed every hard-copy document produced by Lilly as well as the great majority of the electronic production to which ARIAD has had access. Per the Court's September 11 ruling, ARIAD has screened these documents and informed Plaintiffs on a rolling basis that these documents are available to in-house counsel. (Ex. B.) ARIAD expects to complete its screening of the electronic production to which it has had access in the next several business days.

Plaintiffs have misstated ARIAD's position as a refusal to produce discoverable documents, implying that the Federal Rules of Civil Procedure require ARIAD to collect and produce the documents that Plaintiffs' counsel has already received pursuant to the Lilly subpoena. (E.g., Exs. G at 1, I at 1.)[2] ARIAD has repeatedly corrected Plaintiffs misunderstanding and restated ARIAD's pledge to comply fully with all its discovery obligations. (Exs. H, J, K.)

There has been some delay in the ability of ARIAD's counsel to complete its review of the Lilly production—but not a delay of ARIAD's making. Lilly produced the vast majority of the

---

[1] To the extent that these Requests seek irrelevant material, they are also overbroad and unduly burdensome. For example, request no. 41 seeks "All documents and communications … relating to … ENBREL, and/or KINERET." Plaintiffs have refused to narrow the scope of any of these requests.

[2] See also Fed. R. Civ. P. 26(b)(2)(i) (proscribing discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive").

The Honorable Kent A. Jordan
November 2, 2006
Page 3

requested documents on CD. Over three weeks ago, ARIAD's counsel informed Plaintiffs' counsel that part of Lilly's electronic production was flawed or corrupted. (Exs. C, H.) To summarize:

1.  Documents produced in electronic format must be loaded into a database, such as Concordance, in order to be reviewed. To load documents contained on a CD into a database, there must be "load files" included on the CD, along with the electronic images of the documents. The load files contain indexing information necessary to facilitate review of the documents in the database. Many of the CDs received by ARIAD's counsel did not have load files, in accordance with customary electronic production practice. ARIAD's counsel was eventually able to determine that some of the missing load files were actually contained on other CDs, instead of the CDs on which they should have been located. It took time for ARIAD's counsel to identify this problem and associate the correct load files with the correct CD.

2.  There are some CDs for which complete load files were not produced, either on that CD or any other CD. (*See* Exs. C, D, E, H, J (explaining the problem to Plaintiffs).) While this slowed ARIAD's ability to access the production, ARIAD was able to custom program replacement files and notified Plaintiffs accordingly. (Ex. C at 2.)[3]

3.  Six of the twenty-five CDs that Lilly produced contain corrupted data, which result in "image-link errors." These errors continue to prevent ARIAD (and presumably Plaintiffs) from viewing numerous documents located throughout these six CDs.

Over the past three weeks, ARIAD has tried to address these problems repeatedly with Plaintiffs, and requested that Plaintiffs ask Lilly to remake the six corrupted CDs, since the problems likely resulted from errors in the process Lilly used to make the original CDs. (Exs. C, D, E, H, J.) Plaintiffs' counsel has responded with hyperbole and ad hominem attacks. (*E.g.*, Exs. F, G at 2.)

ARIAD respectfully requests that the Court deny Plaintiffs' demands as premature and direct the parties to resolve these matters themselves. In the alternative, ARIAD respectfully requests that the Court deny Plaintiffs' demand for plenary approval of its document requests, and that the Court order Plaintiffs to assist in a constructive solution to correct problems in electronic production.

Respectfully,

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon

TGL/dmf
Attachments

174793.1
cc:    Melanie K. Sharp, Esquire (by hand and via electronic mail)
       Marcus E. Sernel, Esquire (via electronic mail)
       Erick Ottoson, Esquire (via electronic mail)
       David I. Gindler, Esquire (via electronic mail)

---

[3] Nineteen days after ARIAD informed Plaintiffs of the problem, Plaintiffs provided ARIAD with their own version of the missing "load" files. (Ex. F.) This "assistance" came almost three weeks after ARIAD informed Plaintiffs that ARIAD had programmed its own "load" files to replace the missing ones. (Ex. C at 2.)

# EXHIBIT A

I R E L L  &  M A N E L L A  LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

1800 AVENUE OF THE STARS, SUITE 900

**LOS ANGELES, CALIFORNIA  90067-4276**

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 31, 2006

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

> Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
>         D. Del. Civil Action No. 06-259-KAJ

Dear Marc and Eric:

I am writing to follow up on our discussions yesterday and today regarding ARIAD's responses to Plaintiffs' First Request for Production of documents.  I have set forth below ARIAD's position on the issues raised during our discussions.  In some cases, our positions reflect certain refinements in our thinking, as well as responses to various items left open in our discussions.

**Request No. 1** — ARIAD will produce the requested class of non-privileged documents for (1) the PTO's reexamination of the '516 patent; (2) the Lilly litigation; and (3) ARIAD's lawsuit against the PTO.

**Request No. 3** — ARIAD will produce non-privileged documents that relate to any research, development and testing of products or compounds that ARIAD contends practice, embody, or incorporate the subject matter described by the '516 patent, including documents regarding Lilly's alleged infringing products in the prior litigation or any other third party products.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

**Request No. 4** — ARIAD will produce non-privileged documents that relate to past or present efforts, if any, by ARIAD or its collaborators to develop products based on the subject matter of the '516 patent.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

**Request No. 5** — ARIAD will produce non-privileged documents sufficient to identify persons, if any, who assisted in any research, development and testing of any attempts to develop products based on the subject matter of the '516 Patent.  ARIAD will

1589391.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 2

not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 6 — ARIAD will produce non-privileged documents that relate to the development, if any, by ARIAD, ARIAD's collaborators, or a third party of products or processes that ARIAD contends practice, embody, or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 7 — ARIAD will produce documents that relate to the preparation, filing, and prosecution of the '516 patent as well as the Related Patents.

Request No. 8 — ARIAD will produce non-privileged presentation materials or other documents that reflect the substance of presentations, if any, between ARIAD and third parties regarding the subject matter of the '516 patent, as well as documents sufficient to establish the date of and persons who attended any such presentations. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 11 — ARIAD will produce non-privileged documents, if any, that reflect, demonstrate or identify the priority date for any claim of the '516 patent.

Request No. 12 — ARIAD will produce non-privileged documents that relate to products or processes, if any, that ARIAD contends practice, embody or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 13 — ARIAD will produce non-privileged documents that relate to legal or administrative proceedings concerning the '516 patent or any Related Patents.

Request No. 14 — ARIAD will not produce any documents pursuant to this Request, except to the extent such documents are produced in response to other Requests.

Request No. 16 — ARIAD will produce non-privileged documents sufficient to identify all persons who assisted in any research, development and testing of ARIAD's products or processes, if any, that ARIAD contends practice, embody or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 17 — ARIAD will produce non-privileged documents sufficient to identify all persons who assisted in the development of ARIAD's products or processes, if any, that ARIAD contends practice, embody, or incorporate the subject matter of the '516

I R E L L   &   M A N E L L A   LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 3

patent.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 19 — ARIAD will produce non-privileged documents that relate to the agreement with MIT, Whitehead, and Harvard pursuant to which ARIAD acquired rights to the '516 patent (among other patent rights).  ARIAD will not produce documents that relate to any other licensing arrangement with these institutions, but will notify you if any such documents exist.

Request No. 20 — ARIAD will produce non-privileged documents related to its sublicensing of the '516 patent or the Related Patents.

Request No. 21 — ARIAD will produce non-privileged documents that relate to prior art to the '516 patent.  ARIAD will produce non-privileged documents that relate to prior art to the Related Patents, but only to the extent that such documents are also related to prior art to the '516 patent.

Request No. 22 — ARIAD will produce non-privileged documents that relate to the preparation, filing, and prosecution of the '516 patent and the Related Patents.

Request No. 23 — ARIAD will produce non-privileged documents that relate to communications, if any, that concern prior art to the '516 patent.

Request No. 30 — ARIAD will produce non-privileged opinions or analyses, if any, prepared by or for ARIAD that relate to licenses, grants of rights or sublicenses of the '516 patent or the Related Patents.

Request No. 31 — ARIAD will produce non-privileged documents that relate to any allegation that the '516 patent is invalid or unenforceable, except for expert discovery materials in this case, which will be produced at the time prescribed by and subject to the provisions of the Federal Rules of Civil Procedure and any orders from the Court in this action.

Request No. 32 — ARIAD will produce non-privileged documents that relate to the construction of the claims of the '516 patent, except for such documents required to be disclosed at a later time pursuant to the Court's Scheduling Order.

Request No. 35 — ARIAD will produce non-privileged documents that relate to comparisons, if any, between any claims of the '516 patent and a third party's product or process.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

1589391.

I R E L L  &  M A N E L L A  LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 4

       **Request No. 36** — ARIAD will produce non-privileged documents reflecting any evaluation or analysis performed for the purpose of determining whether ENBREL or KINERET infringes the '516 patent.

       **Request No. 37**— ARIAD stands on its objections to this Request.

       **Request No. 38** — ARIAD will produce non-privileged materials from presentations, if any, made by or to ARIAD regarding ENBREL or KINERET, including presentations, if any, that occurred between ARIAD and any of the Plaintiffs.

       **Request No. 40** — ARIAD stands on its objections.  To the extent that this Request would yield discoverable material, it is duplicative and cumulative to earlier Requests. During our call today, we invited you to narrow this Request, but you declined to do so.  If Plaintiffs provide ARIAD with case law demonstrating that ARIAD should produce all documents covered by this Request, then ARIAD will reconsider the issue.

       **Request No. 41** — ARIAD will produce any non-privileged communications that relate to its litigation with Plaintiffs, ARIAD's litigation with Lilly, and ARIAD's litigation against the PTO.  ARIAD stands on its objections insofar as the Request seeks all non-privileged documents and communications that relate to ENBREL, KINERET, or the Related Patents.

       **Request No. 42** — ARIAD will produce non-privileged documents that relate to its efforts to enforce or license its rights under the '516 patent and the Related Patents.

       **Request No. 43** — ARIAD will produce non-privileged documents that relate to any assertion by any entity that any claim of the '516 patent is invalid or unenforceable.

       **Request No. 44** — ARIAD will produce non-privileged tutorials, presentations, videos or transcripts that explain the subject matter described and/or claimed in the '516 patent.

       **Request No. 45** — ARIAD stands on its objections.

       **Request No. 46** — ARIAD stands on its objections.

       **Request No. 47** — ARIAD stands on its objections.

       **Request No. 48** — ARIAD stands on its objections.

       **Request No. 49** — Insofar as this Request pertain to interrogatories, ARIAD will produce any non-privileged documents referenced in its responses to Plaintiffs' First Set of

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 5

Interrogatories.  Insofar as this Request relates to document requests, we agreed that this Request does not seek any documents not already covered by another Request in Plaintiffs' First Set of Requests for Production of Documents.  Insofar as this Request seeks any other documents, ARIAD stands on its objections.

**Request No. 50** — ARIAD will produce non-privileged documents that relate to any interviews, presentations, demonstrations, or other communications at which any employee of the PTO was present concerning the prosecution or reexamination of the '516 patent or the Related Patents.

**Request No. 52** — ARIAD will produce non-privileged documents, if any, that relate to the valuation and financial appraisal of the '516 patent and any Related Patents.

**Request No. 53** — ARIAD will produce non-privileged documents sufficient to show the amount of and timing of royalties and fees paid by ARIAD to Harvard, MIT, and Whitehead pursuant to the license agreement through which ARIAD acquired its rights under the '516 patent.

**Request No. 54** — ARIAD will produce non-privileged documents sufficient to show the amount of and timing of royalties and fees paid to ARIAD by others for rights under the '516 patent and Related Patents.

**Request No. 55** — ARIAD will produce non-privileged documents, if any, that show projections of licensing or royalty streams to be received by ARIAD in relation to the '516 patent and Related Patents.

**Request No. 56** — ARIAD stands on its objections to this Request.

**Request No. 57** — ARIAD stands on its objections to this Request.

**Request No. 58** — ARIAD stands on its objections to this Request.

**Request No. 59** — ARIAD stands on its objections to this Request.

**Request No. 60** — ARIAD stands on its objections to this Request.

**Request No. 61** — ARIAD will produce non-privileged board meeting minutes, scientific advisory board meeting minutes, and presentations to the board or scientific advisory board to the extent that such documents relate to discussion, identification or consideration of whether any companies, products, or processes infringe the '516 patent. ARIAD will not produce such documents for the Related Patents, but will inform you whether any such documents exist.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 6

**Request No. 62** — ARIAD will produce non-privileged communications with investors, potential investors, analysts, or others in the business community that refer or relate to the '516 patent or any Related Patents.

Please note that:

- ARIAD will not be producing a duplicate copy of documents that have already been produced in response to Plaintiffs' subpoena to Lilly (as we have previously informed you).

- ARIAD will not be producing any documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

- ARIAD will be producing only documents that are within its possession, custody or control.

- ARIAD reserves the right to seek a different level of confidentiality protection than that provided in the protective order with respect to any documents covered by the Requests.

- ARIAD's agreement to produce non-privileged documents is not an admission that any such documents actually exist.

- Where ARIAD has elected to stand on its objections, ARIAD remains willing to consider any proposal that you decide to make to modify the Request and reach an agreement to resolve ARIAD's objections.

- Where we refer to Related Patents, we mean United States patents or published patent applications in the same family as the '516 patent.

If you have any questions, please do not hesitate to contact Ray LaMagna or me.

Very truly yours,

David I. Gindler

1589391.

# EXHIBIT B

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 27, 2006

**VIA E-MAIL**

Erick S. Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

> Re:   *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Erick:

I am writing with respect to our ongoing review of the documents produced by Lilly in response to Plaintiffs' subpoena.

The following documents produced by Lilly in response to Plaintiffs' subpoena may be treated by the parties in accordance with the stipulated protective order recently entered by the Court:  (1) the documents produced to our firm in hard copy format and (2) the documents labeled L-A 0134175 to 0178169.   In providing this information, ARIAD reserves all of its rights and remedies, including those provided by the protective order.

We are continuing our review and will provide updated information on a rolling basis.

Very truly yours,

David I. Gindler

1588254.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 30, 2006

**VIA E-MAIL**

Erick S. Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Erick:

    I am writing with respect to our ongoing review of the documents produced by Lilly in response to Plaintiffs' subpoena.

    The following documents produced by Lilly in response to Plaintiffs' subpoena may be treated by the parties in accordance with the stipulated protective order recently entered by the Court:  Documents labeled L-A 0000001 to 0002466.  In providing this information, ARIAD reserves all of its rights and remedies, including those provided by the protective order.

    We are continuing our review and will provide updated information on a rolling basis.

                Very truly yours,

                David I. Gindler

1589328.

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

November 1, 2006

**<u>VIA E-MAIL</u>**

Erick S. Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:     <u>*Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*</u>

Dear Erick:

      I am writing with respect to our ongoing review of the documents produced by Lilly in response to Plaintiffs' subpoena.

      The following documents produced by Lilly in response to Plaintiffs' subpoena may be treated by the parties in accordance with the stipulated protective order recently entered by the Court:  Documents labeled ADL 0000001 to 0017501.  In providing this information, ARIAD reserves all of its rights and remedies, including those provided by the protective order.

      We are continuing our review and will provide updated information on a rolling basis.

      Very truly yours,

David I. Gindler

1590260.

# EXHIBIT C

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7123
FACSIMILE (310) 203-7199
RLAMAGNA@IRELL.COM

October 12, 2006

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

     Re:    <u>Amgen v. ARIAD</u>

Dear Marc:

As per our teleconference yesterday, I am writing to update you regarding the technical difficulties we have experienced with respect to Eli Lilly's recent discovery production in the above referenced litigation.  As I mentioned, in several respects the technical quality of the production is completely inconsistent with traditional electronic production standards.  As a result, we have experienced considerable delay and expense in processing this atypical production.  Due to these technical deficiencies, we have been unable to mount a functioning database version of a large portion of the discovery that Eli Lilly provided.

As you know, the standard practice when producing documents on a CD is to include two sets of related files—image files and "load" files. The load files have two matched parts—"data" load files and "image" load files.  The data load files contain the information that allow the produced documents to be accurately mounted into a database.  The image load files contain the computer addresses that link the database to the visual image of the document; this allows users to view the related files on the database.  Typically, these load files are also encoded by Bates number, which allows the resulting database to be referenced by Bates number.  With Eli Lilly's production, however, these standard procedures were not followed.

Contrary to traditional discovery practice, Eli Lilly did not include load files on a number of the CDs they produced.  In particular, there are numerous problems with the discovery series that is Bates coded "A-L."  This resulted in added expense and delay on our end in mounting a corresponding database.  Even after extensive efforts to work around this omission, we are unable to fully access the resulting database by Bates range.

For example, the CD that your firm sent to us on September 25, 2006, contains no load files whatsoever, despite being labeled as containing such.  This CD is marked as

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 12, 2006
Page 2

covering Bates range L-A 0000001 to L-A 0002466. Likewise, all of the CDs sent by your firm on October 2, 2006, lack data load files. Half of these CDs from October 2 are also missing the corresponding image load files. The CDs that lack both types of load files are labeled with Bates ranges L-A 0022428 to L-A 0100427, L-A 0106904 to L-A 0119403, and L-A 0119404 to L-A 0131903, respectively. The CDs that only lack data load files are labeled with Bates ranges L-A 0002684 to L-A 0022427, L-A 0131904 to L-A 0134174, and L-A 01400428 to L-A 0106903, respectively.

Our in-house team spent considerable time custom programming a work-around for the missing files in order to load the produced documents into a database. Still, because appropriate load files were not provided by Eli Lilly, this work-around did not allow us to code the files by Bates range. However, as our team worked sequentially through the CDs that Eli Lilly produced, we located some of the missing image load files, which had been inappropriately stored on later disks. That is, these load files had been stored and matched with image files with which they were not associated—the files were on the wrong CDs. We then had to recode the earlier material in order to mount a database. Nevertheless, to this day, we have not been able find any load files whatsoever that match the CD that your office sent us on September 25, 2006, nor have we been able to locate any data load files that match the CDs that were sent on October 2, 2006.

As you can understand, the related review and file reorganization process has put us and our client through considerable effort, delay, and expense. Going forward, however, there is a more critical issue—due to further technical deficiencies in the image load files that Eli Lilly did produce, any resulting database suffers from image-link corruption throughout. These image-link errors are caused when a image load file either contains a missing link, points to a missing image, or uses a corrupted pathway code.

Therefore, we are unable to review portions of the production. Likewise, we are unable to confirm that all of the image files are present on the CDs as required. To fix this problem would require us either to consult an outside expert at considerable time and expense to our client or to have our in-house team manually review each of the individual image links in the L-A data series, again at considerable time and expense to our client.

In order to facilitate the needs of both your client and ours, the most timely and cost efficient way to proceed would be to have Eli Lilly reproduce the error-ridden L-A series production in a standard, error-free format. That is, Eli Lilly should produce a series of electronic media, each of which should contain its own matching and uncorrupted set of data and image load files coded with Bates ranges. This would enable us to quickly mount a database that could be efficiently searched. Furthermore, with proper Bates coding throughout, both your firm and ours would be able to mount uniformly indexed databases. This will facilitate clean communication between the parties as well as with the Court.

# IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 12, 2006
Page 3


If I can be of any assistance is this matter, please feel free to contact me.  Thank you kindly for your time and consideration in this matter.

Sincerely,

Raymond LaMagna

1580173.1 08

# EXHIBIT D

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7123
FACSIMILE (310) 203-7199
RLAMAGNA@IRELL.COM

October 28, 2006

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

     Re:   *Amgen et al. v. ARIAD Pharmaceuticals, Inc.,*
           D. Del. Civil Action No. 06-259-KAJ

Dear Marc:

     I am writing in response to your email of October 27, 2006.

     Thank you kindly for the additional information.  Regrettably, it is not responsive to the problems endemic to Lilly's electronic production.

     Firstly, regarding what you identify as Disks 2 through 7, our technical team has already uncovered the improperly indexed files that you located for us in your email.  These are the so-called "image" load files associated with these disks.  Unfortunately, "data" load files are missing from Disks 2 through 7 altogether.  You will note that your email of October 27, 2006, does not discuss this problem.

     As I discussed with you before, in order for us to address the problem of the missing files, our technical team has attempted to write custom data load files for these disks.  This would allow us to mount the data provided into a database so that it can be reviewed in accordance with Judge Jordan's ruling of September 11, 2006.  Unfortunately, the database that results from our work-around suffers pervasive image-link errors.  This could be caused by 1) errors in the image load files provided by Lilly, 2) errors in the image files themselves, also provided by Lilly, or 3) interoperability problems in the programming designed to work around Lilly's failure to provide the appropriate load files.

     For these disks, I again ask that you obtain from Lilly new versions of Disks 2 through 7 that contain both "image" load files and "data" load files.   In the end, this will best meet both of our shared goals of expediency and cost efficiency.  I am unaware of any efforts by your firm to obtain replacement disks, although we asked you to undertake these efforts some time ago.  Please inform me whether you intend to undertake any such efforts.

1588423.1 05

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 28, 2006
Page 2


Furthermore, you will note that, in accordance with Judge Jordan's ruling, we have already reviewed the most recent production series that Lilly sent and informed you of our findings. This series, Bates coded L-A 0134175 to L-A 0178169, arrived weeks after the other production. This production did, however, contain both data and image load files. As a result, we were able to work through it expeditiously and without error. We can only conclude from this that Lilly is capable of producing appropriately indexed error-free media.

Secondly, regarding what you identify as Disk 1, we are in receipt of the replacement you sent. Assuming that this disk does not suffer from the same deficiencies as its predecessor, we will be able to review it in an appropriate and timely manner. As discussed above, however, our ability to review this material is largely dependent upon receipt of media containing proper "image" and "data" load files. I will alert you if there are any problems with this disk.

Thank you in advance for your time in correcting the shortcomings in the Lilly production. Please notify me when we can expect to receive Lilly's reproduction of the rest of the defective disks.

Sincerely,

Raymond LaMagna

1588423.1 05

# EXHIBIT E

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7123
FACSIMILE (310) 203-7199
RLAMAGNA@IRELL.COM

November 1, 2006

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

     Re:   *Amgen et al. v. ARIAD Pharmaceuticals, Inc.,*
          *D. Del. Civil Action No. 06-259-KAJ*

Dear Marc:

     I am writing in response to your email of October 30, 2006.  We appreciate your sending us data load files that were created by your firm as a replacement for load files that were omitted from Lilly's production four weeks ago.  Unfortunately, as discussed below, these load files have not resolved the pervasive problems that we have been experiencing with Lilly's production.

     Your email fails to address the problems endemic to Lilly's electronic production.  Furthermore, your characterization of the deficiencies in the Lilly production continues to misstate the nature of the problem as I have addressed it to you over the past weeks in my repeated and detailed letters.

     To clarify the problem once again—**the media and/or load files produced by Lilly on what you identify in your letter of October 27, 2006 as Disks 2 through 7 contain corrupted data.**  As a result, any corresponding database suffers from pervasive image-link errors.  **This means that any resulting database is riddled throughout with documents that <u>cannot be viewed</u>**.

     As I explained previously to you by phone and letter, when we received Lilly's production without corresponding load files, our technical support team wrote replacement files in order to correct Lilly's omission.  Nevertheless, the resulting database contained the above discussed image-link errors.  We therefore suspected that **the problem lies with the files that Lilly sent, not just the files that Lilly failed to send.**

     As such, we have repeatedly requested that you have Lilly resend new media with appropriately corresponding load files.  This would resolve any problems.  You have repeatedly declined to assist in this solution.

1590301.1 06

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
November 1, 2006
Page 2


What you have sent me via email is your technical team's own version of a work-around for the load files missing from Lilly's production. As we did with our own work-around, we have mounted a parallel database using your load files. This database still contains the above mentioned image-link errors. **This further confirms that the persistent errors in Lilly's production are caused by corruption in the source media.**

You nevertheless deny that any problem exists despite your being informed of the above situation and despite your sending us corrective replacements for Lilly's other flawed electronic production on October 26, 2006. Worse yet, you have chosen to make inflammatory and unwarranted accusations, including the following statement in your email: "[W]e disagree with [ARIAD's] contention that there is (or there has ever been) anything wrong with the Lilly production CDs. Ariad has everything it needs examine the Lilly production. Your representation that you are continuing to have problems simply is not credible." This is truly regrettable, particularly given that you appear to be relying on information purportedly provided by your IT department, and not on any first-hand knowledge or understanding of the manner in which electronic documents are encoded for viewing.

As I have repeatedly discussed with you by phone and letter, we cannot review documents that we cannot see. Furthermore, both you and your client are likely at a similar disadvantage. I cannot understand why you refuse to assist in resolving this matter by simply asking Lilly to send a new set of CDs. As you know, the last CD and DVD that we have received from Lilly contained flawless data and corresponding load files. As a result, we screened the data contained therein and reported our findings to you within a few short days of having received that production.

Regarding your contention in your email that your technical team resolved these problems "in a matter of minutes," I remind you of your earlier email of October 27, 2006 wherein you acknowledged the initial difficulties with this production. As you recall, on a number of disks, Lilly failed to include any load files whatsoever. As to one of those disks, you have produced to us a replacement complete with appropriate load files (which makes us wonder why we did not receive a non-defective disk in the first place). As to the others (for which you have not produced replacement copies with appropriate load files), you have acknowledged what we originally uncovered on our own—that the incomplete load files that were produced had been erroneously placed on the wrong disks. Although we found these files on our own, it took us hours to do so, not minutes. Furthermore, it took us hours, not minutes, to create replacements for the missing data load files. To do so, each set of control numbers for each data set had to be exported from the image load files (once they had been found) and processed to create replacement data load files. This is a process that can only be done in "minutes" if you start with the appropriate data and image load files provided and identified on each disk. Therefore, I can only assume that you either are mistaken as to the

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
November 1, 2006
Page 3

time required by your technical team to compensate for Lilly's omissions or had available to you properly associated load files that you have not made available to us.

Lilly is capable of and has produced uncorrupted electronic production in this matter. It is possible that the errors in Disk 2 through Disk 7 of the L-A series are merely the result of some minor glitch in their making. No doubt this would be easily resolved by having Lilly burn a new set of CDs with newly created and appropriately corresponding load files.

To resolve this matter, please (1) immediately confirm whether you persist in your refusal to ask Lilly to create a replacement set of CDs; and (2) examine your own corresponding database and confirm or deny the presence of the above mentioned image-link errors

Once again, I await your response on both issues.

Sincerely,

Raymond LaMagna

1590301.1 06

# EXHIBIT F

## LaMagna, Raymond

| | |
|---|---|
| **From:** | Marc Sernel [msernel@kirkland.com] |
| **Sent:** | Monday, October 30, 2006 2:06 PM |
| **To:** | LaMagna, Raymond |
| **Cc:** | Gindler, David |
| **Subject:** | Amgen v. ARIAD -- Lilly CDs |
| **Attachments:** | lilly_load.zip |

Ray,

In response to your letter of Friday, October 28, 2006, we disagree with your contention that there is (or there has ever been) anything wrong with the Lilly production CDs. Ariad has everything it needs to examine the Lilly production. Your representation that you are continuing to have problems simply is not credible. In any event, in view of your professed difficulties, which our IT people find very surprising to say the least, we have created Concordance load files (which we did in a matter of minutes, not hours or days or weeks) for the Lilly production and attach them to this email. I do not intend to continue to ask our IT department to do your work for you. I did so this time in an attempt to move this case forward.

Please confirm that you will now be able to complete the review of the Lilly production documents and notify us by close of business tomorrow (Tuesday) whether there are any documents as to which ARIAD contends Amgen's in-house counsel should not have access.

Thanks -- Marc

```
************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************
```

11/2/2006

# EXHIBIT G

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 12, 2006

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear David:

I write to follow up on our meet and confer call of last evening.

We are in the process of turning around a draft of the protective order based on our discussion last evening, and would expect to be able to get you a draft of this later today. I hope that we are within one iteration of finalizing the protective order so that we can submit it for the Court's signature.

As I mentioned to you on the phone, I disagree with your position that ARIAD does not have to produce its own documents in this case because Amgen may have received copies of some of those documents from Lilly. The Federal Rules do not provide a free pass on discovery just because a third party might also have copies of some of the same documents. Moreover, we would expect that our document requests call for different categories of documents than were produced in the Lilly case, for example documents relating to the Amgen Entities or the products at issue. You cannot credibly contend that whatever sweep for documents was conducted in the Lilly case will be sufficient to capture and produce all documents that will be relevant to this case. We are entitled to receive *all* documents that ARIAD has that are responsive to our document requests. And it is not our burden to guess what additional documents ARIAD might have and then specifically request those -- we have served reasonably-tailored document

## KIRKLAND & ELLIS LLP

October 12, 2006
Page 2

requests[1] and you are under an obligation to locate and produce responsive documents that are in ARIAD's possession, custody or control. Please let me know if you will change your indefensible position on this issue.

Your position with respect to your own document production is even more indefensible in light of your apparent gamesmanship with respect to the Lilly documents. As you know, we produced the documents we received from Lilly pursuant to our subpoena (in the condition we received them from Lilly) over two weeks ago. You indicated only yesterday that you are now having difficulty reviewing the documents because of "problems" with the load and image files that were provided. While I cannot confirm whether your "problems" are of your own making or not -- all I know is that our IT people were apparently able to sort through the problems -- it would appear that you are not devoting the proper time and attention to this task, and instead seeking to delay in-house access to these documents. As I stated last night to you, I cannot fathom how ARIAD would have an objection to the designated Amgen in-house lawyers having access to these documents when it has already provided access to Lilly's in-house lawyers and has already agreed that designated Amgen in-house lawyers may access all documents produced under the protective order that we are finalizing. Accordingly, there is no defensible reason why ARIAD continues to refuse such access and we continue to insist on such access without any further delay. You indicated that it was your desire to resolve this issue as quickly as possible, and I expect you to follow through on that promise. At the very least, please immediately indicate which documents you have reviewed to date and provide us a "rolling" approval of those documents in the Lilly production that Amgen's in-house lawyers can see based on your review.

We also received your interrogatory responses late last evening. Given the three months that you have had to gather information responsive to these interrogatories, however, your responses remain far from complete. We will be preparing a detailed list of the continuing deficiencies with your interrogatory responses and will provide this to you shortly.

Very truly yours,

Marcus E. Sernel

---

[1]    Indeed, despite several requests over the last several months, you still have not articulated the bases for ARIAD's objections to Amgen's First Set of Documents Requests and Interrogatories.

# EXHIBIT H

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 13, 2006

**<u>VIA E-MAIL</u>**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
              D. Del. Civil Action No. 06-259-KAJ

Dear Marc:

      I am writing in response to your letter of October 12, 2006.

      It is apparent from your letter that you did not understand my comments during our telephone conversation on October 11.  We agree that ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  I believe that I spoke nearly those exact words during our telephone conversation.  This case, however, presents the unique situation where all, or the vast majority, of the documents that Amgen has requested were produced in the pending litigation against Lilly.  All of those documents are being produced to you by Lilly.  I do not believe that you want us to produce a second set of those documents to your firm (nor do I believe that we would be obligated to do so, if you made such a request).  As I told you, if there are additional non-privileged discoverable documents that are responsive to Amgen's document requests, but which are not produced in response to Amgen's subpoena to Lilly for all documents that ARIAD produced in the Lilly litigation, ARIAD will produce those documents.

      Turning to the issue of the Lilly documents, since you sent your letter yesterday, we have received an additional 44,000 pages of Lilly production documents on a DVD from your firm.  This series is Bates coded L-A 0134175 to L-A 0178169.  Unlike Lilly's earlier production, this DVD contained both image and data load files that were properly indexed by Bates number. As such, we were able to mount a database within a few short hours of receiving the DVD.  Although we have only examined a small portion of this extensive set of documents, this production does not appear to be corrupted by image-link errors, as has been the case with Lilly's earlier production.

      As Lilly appears to be responding to Amgen's subpoena on a rolling basis, I would appreciate your letting us know whether we have now received all responsive documents

1581460.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 13, 2006
Page 2

from Lilly or whether more documents are forthcoming.  I would also appreciate your informing me when each CD or DVD produced by Lilly was received by your firm.

We certainly understand and share your frustration regarding the prevalent technical errors and omissions in Lilly's earlier production.  Please keep in mind, however, that the source of these omissions and deficiencies is Lilly's failure to respond to Amgen's subpoena with properly formatted electronic media.  Although these problems have stymied our efforts to efficiently review the Lilly production, we are neither the source of this flawed production nor the cause of any ensuing delay.  If we can be of any assistance in helping you to verify and understand the problems we are experiencing with Lilly's production, please let me know.  I would be happy to send for your examination copies of the flawed CDs.  I am sure that your technical team will come to the same conclusion that ours did—the appropriate load files are missing from much of Lilly's production.

As you note in your letter, your technical team in Chicago has been required to address these same problems (or at least we believe that they are the same problems, assuming that there are no differences in the electronic media that Lilly has produced to Amgen and the electronic media that Amgen has produced to Ariad.)  While you claim to have been able to resolve these issues more quickly than we have (although you say very little about the nature of the problems your firm identified, or how long it took your firm to resolve them, or if they have even been completely resolved), please be assured that we have diligently worked to find a solution at our end.  Ray LaMagna has spent a substantial amount of time assisting our technicians and, unfortunately, we have not been able to mount a complete, functioning database from the media received from your office.  Your concerns of impropriety should be directed at Lilly—the apparent source of the problems (unless your firm did something other than supply us with an exact copy of each CD or DVD received from Lilly)—and not at the messenger.

It is certainly true, as you observe, that we did not reject the Lilly production when we first encountered difficulties.  Instead, we made a concerted effort to work around these technical deficiencies before raising the issue with you.  As you know from our recent conversation and follow-up letter, our understanding of the scope of the problems evolved on a daily basis as we worked through the CDs.  We first began to receive the Lilly production from your office around the beginning of this month.  Most of the error-ridden A-L series arrived here eight business days ago.  (The CDs arrived in our office at 5:26 p.m. on October 2, which was Yom Kippur.)

I am sure that you are not trying to delay our efforts by providing us with a flawed production on the one hand while deriding us for delay on the other.  As we discussed on the phone and by letter, there is an expedient, cost-effective way at your disposal to resolve this problem.  Lilly should be perfectly capable of responding to Amgen's subpoena in a way

1581460.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 13, 2006
Page 3

that complies with the required norms of electronic discovery.  The production that we most recently received would appear to confirm that fact.

Please let us know whether Lilly will re-produce the flawed media that we have identified for you.  That way, we can both review the properly indexed and uncorrupted set of files that should have been provided in the first place.

Finally, your letter states that "there is no defensible reason" for ARIAD to refuse Amgen's in-house counsel immediate access to the Lilly production.  We disagree for reasons that we have previously explained.  Judge Jordan agreed with our position at the September 11 hearing:  "[T]his is not going to go beyond counsel's eyes ... until the folks on the ARIAD side have had a chance to vet this and decide whether there are confidentiality designations that need to be put in place that are somehow other or different from the ones that existed in the District of Massachusetts.  In short, [ARIAD] will have [its] shot to make sure it doesn't go past attorney's eye's only level under the protective order we've got until you, on the ARIAD side, have a chance to look at it."  Transcript, at 85-86.

Very truly yours,

David I. Gindler

# EXHIBIT I

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 16, 2006

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear David:

I write in response to the letter received from your colleague Ray LaMagna the night of October 12, as well as to your letter of October 13.

I have reviewed the alleged "technical deficiencies" that you have outlined in your letters. It appears that you are having much more difficulty with these documents than our IT staff had with them. I do not see any problems with this production by Lilly as particularly more significant than other productions I have received. Indeed, we were able to easily resolve any problems and are able to access all of the documents produced by Lilly. In any event, it appears that you have worked through many of the problems you were having, and I hope and expect that you are committing the appropriate resources to try to work through the remaining problems.

I disagree with your statement that we do not want you to produce a copy of ARIAD's production from the Lilly case, as well as with your assertion that ARIAD is not obligated to do so. ARIAD is, in fact, obligated to produce any and all responsive documents in its possession, custody, or control and we expect ARIAD to do so. The delay in your review of the Lilly documents -- whether it be the result of your not wanting to review them or problems with the documents Lilly provided to both of us -- underscores why you must immediately produce documents on behalf of ARIAD. It is fundamentally inconsistent and untenable for you to argue that you do not have to produce documents because Lilly has already produced the same documents, and at the same time contend that you cannot review the Lilly documents because they are corrupted and, as a result, refuse to allow Amgen in-house lawyer access to the Lilly documents. If you are going to continue to delay approving Amgen in-house counsel access to the Lilly documents, then it is imperative that you immediately produce documents on behalf of

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

October 16, 2006
Page 2

ARIAD so as to enable Amgen in-house counsel to access these documents, especially in view of our prior agreement allowing designated Amgen in-house counsel to access all documents produced under the protective order. This agreement also makes your refusal to simply allow Amgen in-house counsel access to the Lilly documents indefensible.

In any event, in the spirit of cooperation, we will reach out to Lilly to see if there is some way to bypass these issues. We will also look into whether Lilly will be producing further documents in response to the subpoena, as you requested. In the meantime, we expect you to continue working through the problems yourself and, as we requested in our October 12, 2006 letter (but to which request you neglected to respond), immediately indicate which documents you have reviewed to date and provide us a "rolling" approval of those documents in the Lilly production that Amgen's in-house lawyers can see based on your review. In response to your question about when we received the documents from Lilly, we received the various CDs and DVDs produced to date on September 25th, September 28th, and October 6th.

Finally, regarding ARIAD's document production responsibilities in general, you purport to "agree that ARIAD has the same responsibility as any other litigant." But I understood from your comments during last Wednesday's meet-and-confer that: (1) ARIAD does not intend to conduct a sweep to gather potentially responsive documents in response to Amgen's document requests (as is done by every litigant in every civil case); and (2) ARIAD is shifting the burden to Amgen to identify any documents in ARIAD's possession that are responsive to Amgen's document requests but were not produced in the Lilly case. As I stated in my prior letter, ARIAD—not Amgen—has the responsibility to look for and produce all of ARIAD's responsive documents. The fact that ARIAD looked for documents in another case (presumably up to four years ago) does not relieve it of those responsibilities in this case.

Very truly yours,

for    Marcus E. Sernel

# EXHIBIT J

0.0 01

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 18, 2006

**<u>VIA E-MAIL</u>**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
              D. Del. Civil Action No. 06-259-KAJ

Dear Marc:

      I am writing briefly to respond to your letter of October 16, 2006.

      Your letter seems to acknowledge that Lilly's electronic media have problems, but then takes the position that the problems really aren't all that difficult to resolve.  We disagree for the reasons that we have already explained in great detail.  If your IT department was able to resolve these problems as quickly as you appear to claim, we would be happy to accept any assistance that they can provide.  As we have told you, we believe that the quickest solution is to have Lilly produce new CDs and DVDs that correct the problems we have described.  We are continuing our efforts to review the documents, notwithstanding the significant technical problems that we are experiencing.  We will start identifying documents that may be shown to in-house counsel shortly, and will continue to do so on a rolling basis.

      Your letter also once again mischaracterizes our position with regard to ARIAD's document production responsibilities.  Here is our position, for third time (at least):  ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  The vast majority of the documents that Amgen has requested were produced in the Lilly litigation.  You have already received copies of those documents—and much more quickly than if ARIAD had to undertake a search for all of the requested documents from scratch.  If there are additional non-privileged discoverable documents that Amgen has requested, but which are not included among the documents produced in the Lilly litigation, ARIAD will produce them.  If you have questions about particular categories of documents that Amgen has requested, I would be pleased to meet and confer with you about them.

1584053.

I R E L L  &  M A N E L L A  LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 18, 2006
Page 2


     I appreciate your informing me of the dates on which you received documents from Lilly in response to Amgen's subpoena.  Please identify the particular date on which each CD, DVD, or hard copy document was received by your firm.

Very truly yours,

David I. Gindler

1584053.

# EXHIBIT K

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 25, 2006

**<u>VIA E-MAIL</u>**

Erick S. Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

Re:    *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Erick:

I am writing in response to your letter of October 24, 2006.

Your understanding of ARIAD's position regarding document production is not correct.  It appears that you are trying to manufacture a dispute where none exists.  I have repeatedly explained our position in writing and during our telephonic meet-and-confer session.  I will try once again.

ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  The vast majority of the documents that Amgen has requested were collected in connection with the Lilly litigation.  It should come as little surprise that there is a substantial overlap between the documents requested by Lilly and the documents requested by Amgen.  We are reviewing the documents that were collected in connection with the Lilly litigation, just as if we were reviewing our client's documents for the very first time in response to Amgen's document requests.  In that regard, there is a significant benefit to Amgen, in that a great deal of leg work in collecting documents has already been done.  We are carefully reviewing these documents for two reasons—first, to determine whether we can identify any documents that Amgen has requested that do not appear to be included among these documents; and second, to determine whether any higher degree of confidentiality than that provided for in the protective order is necessary for any of these documents.

We do not intend to rely exclusively on the document production from the Lilly case to satisfy ARIAD's obligations to respond to Amgen's document requests, even as to the categories of documents that both Lilly and Amgen have requested.  We intend to comply with our obligation to conduct a reasonable search for all discoverable non-privileged documents that Amgen has requested.  There are, of course, a number of categories of documents that Amgen has requested—for example, documents relating to Enbrel and

1586774.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Erick S. Ottoson, Esq.
October 25, 2006
Page 2

Kineret—that were not collected for the Lilly litigation. As to those documents we need to start from scratch. But even as to those categories of documents that both Lilly and Amgen have requested, we intend to satisfy our obligation to conduct a reasonable investigation for all non-privileged discoverable documents and do not intend to rely exclusively upon work performed in connection with the Lilly litigation.

If your specific question is whether ARIAD intends to produce a duplicate copy of documents that Amgen has requested from ARIAD and that Amgen has already received by virtue of its subpoena to Lilly requesting, among other things, all documents that ARIAD produced in the Lilly litigation, the answer is no. I do not understand why you would want two copies of the same document, except possibly to create extra expense for ARIAD, which has much more limited resources than Amgen. I do not believe that there is any ambiguity as to which documents provided in response to the Lilly subpoena were originally produced by ARIAD in the Lilly litigation. If you disagree, please let me know. That being said, we are not simply relying on the work performed in connection with the Lilly litigation to satisfy our obligation to respond to Amgen's document requests. Whether or not the documents requested by Amgen were previously requested by Lilly (and already produced to Amgen in response to its subpoena to Lilly), we are conducting our own review as part of our obligation to respond to Amgen's document requests.

We will not be in a position to produce any additional non-privileged discoverable documents that Amgen has requested, but which are not included among the documents produced in the Lilly litigation, by October 31. We already have our hands full reviewing the many documents produced in the Lilly litigation—and contending with the serious problems with Lilly's production that we have previously described in some detail. We have suggested that you request that Lilly produce another set of its documents with the appropriate load files linked to the appropriate images on the appropriate CDs. We are unaware of any efforts that you have made in that regard, despite your representation that you would do so. In addition, since you appear to claim that your firm has been able to resolve these problems on its own (although your previous correspondence is a bit ambiguous as to whether you have resolved all of these problems), we would welcome any assistance that you can provide. Nevertheless, I can assure you that we are working diligently on these matters. I cannot yet give you an anticipated completion date for ARIAD's document production, but will do so when we are able to provide a meaningful estimate.

I am not able to meet and confer with you this week as to ARIAD's objections to Amgen's document requests, but can do so on Monday, October 30, at 2:30 p.m. PST. I will re-review the parties' correspondence on these issues in advance of our call and will make every effort to be prepared to address the issues at that time. It is not likely that I will send you a letter in advance of that call.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Erick S. Ottoson, Esq.
October 25, 2006
Page 3


As indicated in my previous correspondence, we will inform you, on a rolling basis, as to those documents that can be shown to Amgen's in-house counsel pursuant to the protective order and those documents, if any, that we believe deserve a different level of protection.  We expect to begin this process later in the week.

Finally, you have not responded to the specific inquiry in my October 18 letter regarding when your firm received Lilly's document production in response to Amgen's subpoena.  I do not want to know just the dates on which unidentified "batches" of documents were received.  I want you to inform me of the particular DVDs, CDs, or had copy documents received on each of those dates.  Please provide this information to me without delay.

Very truly yours,

David I. Gindler