# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION<br><br>Plaintiffs,<br><br>v.<br><br>ARIAD PHARMACEUTICALS, INC.,<br><br>Defendant. | )<br>)<br>)  C.A. No. 06-259-KAJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
## OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
## STAY PROCEEDINGS PENDING INTERLOCUTORY APPEAL

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Dated: November 13, 2006

## TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.     SUMMARY OF ARGUMENT ......................................................................... 3

III.    ARGUMENT .............................................................................................. 5

        A.    Proceeding Absent A Stay Would Thwart Judicial Economy
              And Subvert The Purpose Of Certifying The Court's Order For
              Appeal Under Section 1292(b) ...................................................... 5

        B.    Denial Of A Stay Could Irreparably Harm ARIAD And The
              Public But Would Cause No Harm To Plaintiffs ................................... 7

              1.    Proceeding Absent A Stay Could Irreparably Harm
                    ARIAD And The Public ........................................................ 9

              2.    Plaintiffs Will Not Be Prejudiced By A Stay And May
                    Even Benefit, But Proceeding With Parallel Litigation
                    Would Serve Illegitimate Business Goals .................................. 11

IV.     CONCLUSION ........................................................................................... 13

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Texas & Pacific R.R. Co.,*
    392 F. Supp. 1120 (D. La. 1975) ............................................................. 6

*Chase Manhattan Bank v. Iridium Afr. Corp.,*
    324 F. Supp. 2d 540 (D. Del. 2004) .................................................... 5, 6

*Concepcion v. Morton,*
    306 F.3d 1347 (3d Cir. 2002) ............................................................... 5

*Firestone Tire & Rubber Co. v. Risjord,*
    449 U.S. 368 (1981) ............................................................................. 5

*Flying Tiger Line, Inc. v. Cent. States SW. & SE. Areas Pension Fund,*
    1986 U.S. Dist. LEXIS 16895 (D. Del. Dec. 4, 1986) ................................ 5, 6, 7

*In re Data Access Sys. Sec. Litig.,*
    843 F.2d 1537 (3d Cir. 1988) ............................................................... 5

*Katz v. Carte Blanche Corp.,*
    496 F.2d 747 (3d Cir. 1974) ................................................................ 5

*Keystone Bituminous Coal Assn. v. Duncan,*
    771 F.2d 707 (3d Cir. 1985) ................................................................ 5

*Klapper v. Commonwealth Realty Trust,*
    662 F. Supp. 235 (D. Del. 1987) .......................................................... 6

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ............................................................................ 5

*Milleville v. United States,*
    751 F. Supp. 976 (M.D. Fla. 1990) ...................................................... 6

*Nehemiah v. Athletics Congress of U.S.A.,*
    765 F.2d 42 (3d Cir. 1985) .................................................................. 5

*O'Brien v. Avco Corp.,*
    309 F. Supp. 703 (S.D.N.Y. 1969) ...................................................... 6

*Purcell v. Keane,*
    406 F.2d 1195 (3d Cir. 1969) .............................................................. 5

Page(s)

*Saludes v. Ramos*,
   744 F.2d 992 (3d Cir. 1984)................................................................. 5

*San Filippo v. Bongiovanni*,
   961 F.2d 1125 (3d Cir. 1992)............................................................... 5

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................... 2, 5

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   *Federal Practice and Procedure* § 3929, at 398 (2d ed. 1996) .............................. 6

Michael E. Solimine,
   *Revitalizing Interlocutory Appeals in the Federal Courts*,
   58 Geo. Wash. L. Rev. 1165, 1179 (1990) ............................................................ 6

I.    **NATURE AND STAGE OF PROCEEDINGS**

ARIAD Pharmaceuticals, Inc. ("ARIAD") is a small biotechnology company involved in the development of innovative medicines that regulate cell-signaling pathways implicated in cancer. The company's development efforts include drugs that provide targeted and highly potent anti-cancer activity to treat patients with a broad range of solid tumors and blood cancers, as well as the spread of tumors to distant sites. ARIAD's lead product, AP23573, is expected to begin the final phase of clinical trials in early 2007 and, given its potential as a life-saving therapy, has been given "fast-track" designation by the U.S. Food and Drug Administration ("FDA") for the treatment of soft-tissue and bone sarcomas. While ARIAD's future is promising—not only for itself but for the millions of people diagnosed each year with aggressive forms of cancer—its current financial condition is difficult, to say the least. ARIAD has no products on the market, an accumulated deficit of $294.7 million from operations through September 30, 2006, and a current operating loss of $15 million per quarter.

ARIAD is the exclusive licensee of U.S. Patent No. 6,410,516 (the "'516 patent"). The '516 patent is the result of a collaborative research effort by a team of esteemed scientists from Harvard University, the Massachusetts Institute of Technology, and the Whitehead Institute for Biomedical Research, the co-owners of the patent. This team, which included two Nobel Laureates, identified and characterized the activity of a signaling agent, which they named Nuclear Factor Kappa B ("NF-κB"), and devised various methods to modulate its activity to affect the production of proteins involved in certain disease states. The inventors' pioneering work in this area—of which the '516 patent is only the latest example—has provided the foundation for new approaches to treating certain diseases, particularly various forms of cancer.

On April 20, 2006, Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing Limited, and Immunex Rhode Island Corp. (collectively, "Plaintiffs") sued ARIAD, seeking a declaration that their highly successful Enbrel® and Kineret®

products do not infringe the '516 patent. (D.I. 1.) ARIAD moved to dismiss the action on the grounds that, among other things, the court lacked subject matter jurisdiction under the Declaratory Judgment Act because there was no actual case or controversy between the parties. (D.I. 13.) The Court denied ARIAD's motion in a ruling from the bench on September 11, 2006, (D.I. 69), and issued a formal order memorializing its ruling on September 13, 2006 ("September 13 Order") (D.I. 70).

On September 25, 2006, ARIAD moved to certify the September 13 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) on the question of whether the Court has subject matter jurisdiction under the Declaratory Judgment Act. (D.I. 73.) After full briefing and extensive argument, the Court granted certification of the September 13 Order, explaining that the question of subject matter jurisdiction "wasn't an easy call when I made it," that "this is not an area of the law that is perfectly clear," and that the "Bayh-Dole issue which may affect where the line is [with respect to what constitutes permissible licensing conduct] is something I think the Federal Circuit should take [ ] a crack at, if they want." (D.I. 105, Ex. F at 31, 34.)[1]  The Court noted that it viewed the litigation as a "genuine David-and-Goliath thing," and that the adverse effect upon ARIAD of duplicative or wasteful litigation also weighed in favor of certification. (*See id.* at 33.) ARIAD orally moved for a stay of the case pending appellate review. (*Id.* at 9–10.) Plaintiffs requested briefing on the matter of a stay.

The Court stated that it was "inclined to stay" the case pending appellate review of the September 13 Order, but that it would grant Plaintiffs' request to brief the issue. (*Id.* at 35.) The Court ordered ARIAD to "promptly" file a formal motion to stay and indicated that the briefing would proceed in accordance with the local rules, unless the

---

[1] Exhibits referred to solely by exhibit letter are attached to the Declaration Of Elizabeth L. Rosenblatt In Support Of ARIAD Pharmaceuticals, Inc.'s Motion To Stay Proceedings Pending Interlocutory Appeal, filed concurrently herewith.

parties agreed otherwise. The Court further ordered an interim stay of discovery until ARIAD's motion is resolved. (*Id.* at 35–36.)

## II.    SUMMARY OF ARGUMENT

1.    ARIAD respectfully requests that the Court enter an order staying all proceedings in this case pending interlocutory appeal of the September 13 Order. Stays are frequently granted where, as here, a significant issue such as subject matter jurisdiction is certified for interlocutory appeal. The reason is straightforward: If the Federal Circuit finds that there is no subject matter jurisdiction, the case is over. Because the appeal could moot the entire case, permitting litigation to go forward in district court presents the very real possibility of massive and irretrievable waste of Court and party resources. This would thwart the very purpose for which the Court certified its order in the first place—to eliminate the adverse effect of duplicative or wasteful litigation by having the Court of Appeals address a close, case-dispositive question before the parties spend millions of dollars on activities that may turn out to be entirely unnecessary.

2.    While the cost of this litigation may pose little concern for Plaintiffs, who together represent the second-largest biotechnology company in the world, it threatens ARIAD's financial condition—and carries the potential of derailing the company's efforts to bring its lead cancer treatment to market. ARIAD has not minced words about the consequences of unanticipated patent litigation in its public disclosures: "significant expenditures to enforce [our] patent rights, particularly with respect to the pending litigation initiated by Amgen, without generating revenues or accessing additional capital or other funding, could adversely impact our ability to further our clinical programs and our research and development programs at the current levels or at levels that may be required in the future." (Ex. D at 26.)[2] While the grant of a stay would manifestly serve

---

[2] Exhibit D is ARIAD's Form 10-Q for the period ended September 30, 2006, which was filed on November 9, 2006. The filing of the present brief was delayed by one business day in order to include statements and information from Exhibit D.

the interests of justice and judicial economy and conserve the resources of the parties—
without prejudicing anyone's rights—the denial of a stay would harm not only ARIAD,
but also the public at large.

3.    In granting ARIAD's motion to certify the September 13 Order, the Court
recognized that this is a "David-and-Goliath" dispute and that ARIAD does not have the
resources to "absorb the kind of costs that are associated with this kind of litigation."
(D.I. 105, Ex. F at 30.)  The stakes here are enormous:  ARIAD's chief business is the
development of breakthrough anti-cancer drugs, one of which is on the threshold of the
last stage of clinical trials for treatment of soft-tissue and bone sarcoma, a disease for
which there has been no new treatment for over twenty years.  Patients are waiting.  But
because ARIAD is a small company, every dollar spent on unanticipated litigation is a
dollar not spent on its clinical oncology programs.  Thus, the risk of denying a stay is, in
a very real way, the possibly fatal risk of delaying treatment for sarcoma patients.

4.    Finally, a stay will not prejudice Plaintiffs.  In seeking briefing on the stay
issue, Plaintiffs have argued that they face a "cloud of injunction," (D.I. 105, Ex. F at 25),
but ARIAD has not sought an injunction in this case (nor in the Lilly litigation, the only
patent infringement case that it has ever filed).  In light of the four-year time span since
the '516 patent issued, Plaintiffs cannot reasonably argue that now, all of a sudden, they
have an urgent need for relief.  Nor can Plaintiffs argue that denial of a stay would serve
the purpose of the Declaratory Judgment Act by eliminating the "cloud of uncertainty"
that Plaintiffs allege surrounds them with respect to the '516 patent, since the issue on
appeal is whether such a "cloud of uncertainty" (*i.e.*, a justiciable case or controversy)
exists at all.  Plaintiffs simply will not be harmed by a stay.  In fact, Plaintiffs benefit
from the efficiencies of a stay just as ARIAD does.

5.    The granting of a stay will do no harm.  The denial of a stay will cause
certain harm.  The Court should exercise its discretion to stay all proceedings in this case
pending appellate review.

## III.   ARGUMENT

### A.   Proceeding Absent A Stay Would Thwart Judicial Economy And Subvert The Purpose Of Certifying The Court's Order For Appeal Under Section 1292(b)

District courts have broad discretion to stay proceedings as necessary to conserve the resources of both the court and the parties. *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To achieve these goals and further the interests of justice, court proceedings are frequently stayed as a matter of course when a significant issue is certified for interlocutory appeal. *See, e.g., Chase Manhattan Bank v. Iridium Afr. Corp.*, 324 F. Supp. 2d 540, 546 (D. Del. 2004); *Flying Tiger Line, Inc. v. Cent. States SW. & SE. Areas Pension Fund*, 1986 U.S. Dist. LEXIS 16895, at *8 (D. Del. Dec. 4, 1986).[3]

This is hardly surprising: The purpose of certifying an order for interlocutory appeal under section 1292(b) is to resolve a controlling question of law as to which there is substantial ground for difference of opinion, when an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Certification serves the interests of judicial and party efficiency by sending foundational issues to the appellate court at an initial stage, before the district court and parties expend needless resources on issues that may later become moot. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13 (1981) (§ 1292(b) certification is properly used to remedy "situations in which a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation"); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir. 1974) (noting that policies favoring appeal under section 1292(b) include remedying "considerable avoidable wasted trial time and litigation expense"). In cases like this one, in which resolution of the litigation depends on the outcome of the issue on

---

[3] *See also Concepcion v. Morton*, 306 F.3d 1347, 1351–52 (3d Cir. 2002) (noting the district court's grant of a stay pending appeal); *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1126 n.1 (3d Cir. 1992) (same); *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537, 1538 (3d Cir. 1988); *Keystone Bituminous Coal Assn. v. Duncan*, 771 F.2d 707, 710 (3d Cir. 1985); *Nehemiah v. Athletics Congress of U.S.A.*, 765 F.2d 42, 44 (3d Cir. 1985); *Saludes v. Ramos*, 744 F.2d 992, 993 n.2 (3d Cir. 1984); *Purcell v. Keane,* 406 F.2d 1195, 1201 (3d Cir. 1969) (same).

appeal, denial of a stay would thwart the purpose of certification. *See, e.g., Chase*, 324 F. Supp 2d at 546.[4]

Denial of a stay would also thwart judicial economy, because ARIAD's appeal may dispose of the entire case without the need for any further proceedings. (D.I. 105, Ex. F at 30 (if the Federal Circuit agrees with ARIAD regarding subject matter jurisdiction, then "that's the end of the case." )); *see also* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3929, at 398 (2d ed. 1996); *see also Klapper v. Commonwealth Realty Trust*, 662 F. Supp. 235, 236 (D. Del. 1987) (granting stay pending determination by Third Circuit regarding appeal of standing issue); *cf. Flying Tiger*, 1986 U.S. Dist. LEXIS 16895, at *8–9 (staying proceedings when the certified question would determine whether arbitration or litigation would be the proper forum and means of adjudication).

Indeed, certified questions on subject matter jurisdiction provide the paradigmatic example of when a stay should be granted pending interlocutory appeal. *See* 16 Wright et al. § 3929, at 398 & n.72 (citing subject matter jurisdiction as the leading example of when a stay is merited). Courts have long recognized the need to stay proceedings when subject matter jurisdiction questions are certified for appeal. *E.g., O'Brien v. Avco Corp.*, 309 F. Supp. 703, 705 (S.D.N.Y. 1969) (holding that proceedings are properly deferred until subject matter jurisdiction questions are resolved); *Brown v. Texas & Pacific R.R. Co.*, 392 F. Supp. 1120, 1126 (D. La. 1975) (granting stay with certification of subject matter jurisdiction question); *Milleville v. United States*, 751 F. Supp. 976, 980 (M.D. Fla. 1990) (same). Here, the significant issues raised on appeal may result in a ruling that all past or future proceedings in this Court are improper. This Court recognized the

---

[4] As one scholar summarized, "If the order appealed is 'controlling' in any sense of the word," then it would be imprudent "for the trial judge to press on while the appeal is pending." Michael E. Solimine, *Revitalizing Interlocutory Appeals in the Federal Courts*, 58 Geo. Wash. L. Rev. 1165, 1179 (1990) (observing that most certified appeals are accompanied by stays in the proceedings) (footnote omitted).

crucial significance of this predicate issue, ruling that "[t]his is a controlling question of law," (D.I. 105, Ex. F at 30), a point that even Plaintiffs conceded at oral argument (*id.* at 18).

The "close" nature of the matter also highlights the importance of a stay. As the Court noted, subject matter jurisdiction here is "not an easy case." (D.I. 105, Ex. F at 31; *see also id.* at 29 (case is unusually "close question").) The difficult or unpredictable nature of the certified question heightens the uncertainty of the case's outcome. Such uncertainty should be resolved in favor of avoiding unnecessary expense, particularly where, as here, a stay would prevent prejudice to all parties. (*See* section III.B.2, *infra*.)

In contrast, permitting the district court case to proceed in parallel with the appeal would be an enormous waste of Court and party resources. As this Court observed, "I expect [this case] will take a substantial sum of money to try—these patent cases, . . . [t]hey're typically in the millions of dollars in fees and costs. And I don't see anything that would tell me this is any different." (D.I. 105, Ex. F at 30.) The Court's observation is correct: the case has been highly contentious and has consumed considerable resources from both the parties and the Court. As a result, ARIAD has already incurred in excess of $875,000 defending this action. (*See* Berger Decl. at ¶ 12).[5]

The anticipated high cost of continued litigation, and the dispositive nature of the question on appeal, place this case squarely among those in which "[b]efore anything further happens in this case, the [Court of Appeals] should determine the issues raised for interlocutory appeal." *Flying Tiger*, 1986 U.S. Dist. LEXIS 16895, at *9.

**B.    Denial Of A Stay Could Irreparably Harm ARIAD And The Public But Would Cause No Harm To Plaintiffs**

As this Court stated, "I don't want litigation itself to be something that can sink this company. And a suit involving millions of dollars in costs, as patent litigation

---

[5] References to the "Berger Decl." refer to the Declaration of Harvey J. Berger, M.D., filed concurrently herewith.

typically does . . . has the real prospect of having a more than minimal impact on the existence of a startup." (D.I. 105, Ex. F at 33.) In what the Court has recognized as a genuine "David-and-Goliath" dispute (*id*.), there is a real threat that denying a stay would harm both ARIAD and the public.

As the Court noted, ARIAD is a small company that is "not in the position to easily absorb the kind of costs that are associated with this kind of litigation." (D.I. 105, Ex. F at 30.) Specifically, because ARIAD is in the development phase of bringing pharmaceutical products to market but has no currently marketed drugs, its financial condition involves steady losses: for the quarter ending September 30, 2006, ARIAD reported a net loss of $15.2 million. (Berger Decl. ¶ 8–10; Ex. D at 1–2.) Thus, while ARIAD has just over $39 million in cash or equivalents currently available, it has a cash burn rate of approximately $60 million a year and an accumulated deficit of $294.7 million from operations through September 30, 2006. (*See* Berger Decl. ¶ 10–11; Ex. D at 1–2.) Obviously, under these conditions, costs must be carefully contained for ARIAD and its potentially life-saving therapeutic products to succeed. Money devoted to litigation cannot be devoted to developing and bringing to market ARIAD's breakthrough oncology drug, AP23573. Amgen, by contrast, just reported *quarterly* profits of over $1.2 *billion*. (Ex. E at ex. 99.1, p. 1.)

Thus, while Plaintiffs may have the ample financial cushion required to engage in unexpected patent litigation without considering the cost, ARIAD does not. The bulk of ARIAD's resources are dedicated to clinical programs and research designed to bring ARIAD's anti-cancer therapies to market. (*See* Berger Decl. ¶ 8.) Currently, ARIAD is spending over $10 million a quarter on research and development expenses. (*See id*.) Unplanned and unwarranted litigation, therefore, not only harms ARIAD, but also diverts resources away from patients who await the therapies that ARIAD is actively developing.

### 1.    Proceeding Absent A Stay Could Irreparably Harm ARIAD And The Public

Contrary to Plaintiffs' implications (*e.g.*, D.I. 105, Ex. F at 28 (claiming ARIAD has "all these other litigations out there")), ARIAD is not in the business of litigation—it is in the business of saving lives. (*See, e.g.*, Ex. A.) The importance of ARIAD's cancer research work is well recognized and undisputed in this litigation. For example, ARIAD was recently honored by the Sarcoma Foundation of America for ARIAD's groundbreaking cancer therapy known as AP23573, which is the culmination of over twenty years of research involving intracellular signal transduction. (Berger Decl. at ¶¶ 5–6.)[6] AP23573 is expected to begin the last stage of clinical trials (known as "Phase 3") for treatment of soft-tissue and bone sarcoma in early 2007, and is in earlier-stage clinical trials for the treatment of other resistant forms of cancer, including breast, head, neck, lung, prostate, and brain cancers, as well as leukemia and lymphoma. (Berger Decl. ¶ 7; Ex. A, B.) ARIAD's work with AP23573 has returned very promising clinical results, with additional new positive efficacy data in the area of soft-tissue and bone sarcoma announced just a few days ago. (Exs. B, C.)

As AP23573 enters Phase 3 clinical trials in the field of soft-tissue and bone sarcoma, ARIAD's efforts now stand on the brink of success, bringing hope to millions of patients worldwide who suffer from a disease for which there has been no new treatment in over twenty years. AP23573 is so promising in this area that it has been designated as a "fast-track" product by the FDA. Nevertheless, FDA final approval for the drug as a treatment for advanced sarcomas is still a few years away. (Berger Decl. at ¶ 6–7; Exs. B, C at 5.) Thus, the diversion of resources from ARIAD's clinical trials threatens not only ARIAD, but also the lives of patients who cannot afford to wait a

---

[6] AP23573 acts by inhibiting a protein, mTOR (mammalian target of rapamycin), a "master switch" that appears to control a central function in cancer cells. Blocking mTOR creates a starvation-like effect in cancer cells by interfering with cell growth, division, metabolism, and new blood vessel formation. (Berger Decl. at ¶ 5; Ex. C at 5.).

minute longer than necessary for regulatory approval of ARIAD's breakthrough treatments.

ARIAD's public documents demonstrate that the multi-million-dollar spectre of unnecessary and unexpected litigation threatens ARIAD's ability to meet its ongoing clinical obligations with respect to AP23573.    These documents recognize that "significant expenditures to enforce [ARIAD's] patent rights [in the '516 patent], particularly with respect to the pending litigation initiated by Amgen, without generating revenues or accessing additional capital or other funding, could adversely impact [ARIAD's] ability to further [its] clinical programs and [its] research and development programs at the current levels or at levels that may be required in the future." (Ex. D at 26; Berger Decl. at ¶ 13; *see also, e.g.*, Ex. G at 25 (similar statement in earlier form 10-Q); Ex. C at 6 (disclosing to the public and the Securities and Exchange Commission the risk associated with the "timing, scope, cost of . . . litigation . . . concerning our NF-(kappa)B patent portfolio").)  ARIAD did not initiate or anticipate the present litigation, and thus did not set aside any consideration for it in any budget.  (Berger Decl. at ¶ 10; *see, e.g.*, D.I. 105, Ex. F at 29.)  Nevertheless, ARIAD has incurred over $875,000 in legal fees and costs defending this action *thus far*—money that was earmarked for other purposes, such as supporting ARIAD's research and development programs.[7]  (*See* Berger Decl. ¶ 12.)  An oncology company at ARIAD's stage has little cash to spare, and resources that are currently dedicated to clinical programs should not be expended in

---

[7] In addition to its work with AP23573, ARIAD is also engaged in preclinical drug discovery programs, including programs focusing on:

- Drugs to inhibit cancer causing proteins that regulate cell signaling;
- Compounds to target essential cancer pathways, such as cell survival, metastasis or angiogenesis; and
- New mTOR inhibitors, such as bone-targeted compounds to treat primary bone cancers or cancers that have spread to bones.

(Ex. B.)  The present litigation burdens these drug discovery programs in the same way it burdens ARIAD's work with AP23573.

other areas. (*Id.*) In short, every dollar spent on unnecessary litigation is one less dollar available to spend on clinical research and trials. (*See id.*) Thus, the public interest strongly favors a stay.

### 2. Plaintiffs Will Not Be Prejudiced By A Stay And May Even Benefit, But Proceeding With Parallel Litigation Would Serve Illegitimate Business Goals

While proceeding with parallel litigation would be harmful to ARIAD, a stay will not harm any party, and may even benefit all parties. Plaintiffs have assured this Court that any stay pending this appeal will be short-lived. (D.I. 105, Ex. F. at 21 ("[Mr. Pals:] [T]he Federal Circuit will kick this back because it is not subject to interlocutory appeal.").) If Plaintiffs are correct, then any minor delay in ameliorating Plaintiffs' alleged "cloud" of litigation would be inconsequential, considering the scope of the pending litigation. If Plaintiffs are incorrect, however, then they too will benefit from not expending millions of dollars on litigation that may be annulled.

When arguing against a stay at the November 3 hearing on ARIAD's Motion for Certification, Plaintiffs asserted that they wished to emerge as quickly as possible from the "cloud of uncertainty of injunctions and cloud of uncertainty of litigation and damage and so forth." (D.I. 105, Ex. F at 25.) Plaintiffs' protest rings hollow, however, because ARIAD has not sought an injunction in this case (nor in the Lilly litigation, the only patent infringement case that ARIAD has ever filed). (Ex. H at 7.) Therefore, a stay would not prejudice Plaintiffs because it would place no restriction on Plaintiffs' ability to continue selling Enbrel® and Kineret®—just as Plaintiffs have done uneventfully since before the '516 patent issued in June 2002. Indeed, in light of the time elapsed since the '516 patent issued, there can be no urgency to Plaintiffs' call for resolution of this matter.

Plaintiffs' related argument, that immediate progress of these proceedings would serve the purpose of the Declaratory Judgment Act, rings equally hollow. (*E.g.*, D.I. 105, Ex. F at 25 ([Mr. Pals:] "The DJ Act is there so that parties like Amgen can eliminate

this cloud of uncertainty . . . . And a stay in [this] case . . . subverts that policy . . . while we wait.").)    In fact, whether these proceedings are proper under the Declaratory Judgment Act—and whether a "cloud of uncertainty" exists at all—is precisely the question that has been certified for appeal to the Federal Circuit.  ARIAD has argued that it never threatened Plaintiffs or took any action to create a "cloud" of uncertainty at all, and the Court has held that a "substantial ground for difference of opinion" exists with respect to the question of subject matter jurisdiction.  (*Id.* at 32, 34.)  Thus, the Declaratory Judgment Act does not justify persisting with wasteful litigation when a (potentially brief) stay would, among other things, serve the interests of judicial economy, conserve the resources of the parties, and reduce the risk of harm to the public.

Finally, it should be noted that ***Amgen is over fifteen thousand times ARIAD's size***.  (*Compare* Ex. D at 2 (disclosing ARIAD's quarterly revenue of $229,000), with Ex. E at ex. 99.1, p. 1 (disclosing Amgen's quarterly revenue of 3.61 *billion* dollars).)  From this position of staggering financial contrast, Amgen declined ARIAD's offers to license NF-κB technology including the '516 patent, but now insists that an oppressive "cloud" of litigation hovers over Plaintiffs that can only be lifted by one of two remedies: (1) a rush through litigation that promises to be financially arduous for ARIAD, or (2) a gratuitous covenant not to sue (*e.g.*, D.I. 89 at 15).[8]  Because Plaintiffs are not genuinely prejudiced by a delay in litigation, as discussed above, Plaintiffs' insistence on immediate litigation may best be viewed as a strategic tool to extract a covenant not to sue from ARIAD on more favorable terms than those offered in legitimate licensing negotiations. As this Court has justly warned, however, the process itself should not be used as "part of bigger strategic business plans and maneuvers."  (D.I. 105, Ex. F at 33.)

---

[8]  Plaintiffs demand a covenant not to sue notwithstanding that ARIAD has repeatedly stated that it has never completed the infringement analysis that would be necessary to consider such an offer. (*E.g.*, D.I. 15 at ¶ 5.).

## IV.    CONCLUSION

This Court, expressing concern for the conservation of resources and the protection of the parties, has certified the issue of subject matter jurisdiction for appellate review. It would subvert that order if a stay of proceedings pending appeal was denied. Without a stay, the purpose of certifying the question will be lost—judicial and party resources will risk being irreparably squandered. This Court should stay proceedings pending appeal, as courts frequently do when subject matter jurisdiction is questioned by interlocutory appeal.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Dated: November 13, 2006

175129.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2006, the attached **DEFENDANT ARIAD PHARMACEUTICALS, INC.'S OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS PENDING INTERLOCUTORY APPEAL** was served upon the below-named counsel of record at the address and in the manner indicated:

Melanie K. Sharp, Esquire                     <u>BY HAND and ELECTRONIC MAIL</u>
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Marcus E. Sernel, Esquire             <u>VIA FEDERAL EXPRESS and ELECTRONIC MAIL</u>
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601-6636

J. Drew Diamond, Esquire             <u>VIA FEDERAL EXPRESS and ELECTRONIC MAIL</u>
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800


                                        */s/ Tiffany Geyer Lydon*
                                        _____
                                        Tiffany Geyer Lydon