# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware Corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ARIAD PHARMACEUTICALS, INC., a Delaware corporation, )<br><br>Defendant. ) | Civil Action No. 06-259-KAJ |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO ARIAD PHARMACEUTICALS, INC.'S MOTION TO
## STAY PROCEEDINGS PENDING INTERLOCUTORY APPEAL

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals
Marcus E. Sernel
Jamie H. McDole
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

Drew Diamond
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213)680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: December 1, 2006

**TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDING............................................................1

II.   SUMMARY OF ARGUMENT ........................................................................................2

III.  ARGUMENT.....................................................................................................................5

    A.    TO MERIT A STAY PENDING APPEAL, ARIAD MUST CARRY
        THE BURDEN UNDER A STRINGENT FOUR-FACTOR TEST ......................5

    B.    ARIAD FAILS TO MEET ITS BURDEN OF PROVING THAT IT IS
        ENTITLED TO A STAY PENDING APPEAL.......................................................8

        1.    ARIAD is Unlikely to Succeed on the Merits of Its Long-Shot
            Petition, Much Less the Appeal It Requests .................................................8

        2.    ARIAD Has Not and Cannot Show That It Will Be Irreparably
            Injured Absent a Stay Pending Appeal .........................................................9

            (a)    Protecting Its NF-κB Portfolio is Not a Detour From,
                But an Integral Part of, ARIAD's Core Business Model...............11

            (b)    ARIAD is Financially and Substantively Prepared to
                Proceed With Discovery at Little Marginal Expense ...................13

        3.    ARIAD Ignores How a Stay Will Injure Amgen or the Public .................15

            (a)    Amgen and the Public Will Suffer If the Purpose of
                Declaratory Judgment Related to Patents is Subverted .................15

            (b)    Delay of the Case Schedule Will Harm Amgen .............................17

    C.    ARIAD'S SIZE IS IRRELEVANT TO THE TANGIBLE THREAT
        POSED BY ITS CHIEF OFFENSIVE WEAPON, THE '516 PATENT..............19

IV.   CONCLUSION.................................................................................................................21

i

# TABLE OF AUTHORITIES

**Cases**

*19th St. Baptist Church v. St. Peters Episcopal Church,*
    190 F.R.D. 345 (D. Pa. 2000) ...................................................................... 15

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,*
    846 F.2d 731 (Fed. Cir. 1988) ..................................................................... 16

*Board of Educ. v. F.C. ex rel. R.C.,*
    2 F. Supp. 2d (D.N.J. 1998) .......................................................................... 9

*Capo, Inc. v. Dioptics Medical Products, Inc.,*
    387 F.3d 1352 (Fed. Cir. 2004) ................................................................... 17

*Clinton v. Jones,*
    520 U.S. 681 (1997) ............................................................................... 7, 17

*Clontech Labs., Inc. v. Invitrogen Corp.,*
    406 F.3d 1347 (Fed. Cir. 2005) ..................................................................... 8

*Coca-Cola Bottling Co. v. Grol,*
    1993 U.S. Dist. LEXIS 3734, 6-7 (D. Pa. 1993) ............................................ 6

*Cuomo v. United States NRC,*
    772 F.2d 972 (D.C. Cir. 1985) ...................................................................... 7

*Dehoyos v. Allstate Corp.,*
    345 F.3d 290 n.5 (5th Cir. 2003) ................................................................... 8

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.,*
    734 F. Supp. 656 (D. Del. 1990) ................................................................... 9

*Electronics for Imaging, Inc. v. Coyle,*
    394 F.3d 1341 (Fed. Cir. 2005) ................................................................... 15

*EMC Corp. v. Norand Corp.,*
    89 F.3d 807 (Fed. Cir. 1996) ....................................................................... 15

*Ex parte Nat'l Enameling & Stamping Co.,*
    201 U.S. 156 (1906) ...................................................................................... 6

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) ................................................................................... 6, 7

*In re Procter & Gamble Co.,*
    334 F. Supp. 2d 1112 (D. Wis. 2004) ............................................................ 7

*John R. Sand & Gravel Co. v. United States,*
    60 Fed. Cl. 347 (2004) .................................................................................. 7

*Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.,*
    384 F. Supp. 2d 1334 (D. Iowa 2005) ................................................. 7, 9, 10

*Landis v. North American Co.*,
    299 U.S. 248 (1936)........................................................................................... 9

*Minnesota Mining and Mfg. Co. v. Norton Co.*,
    929 F.2d 670 (Fed. Cir. 1991)............................................................................ 16

*Nichols Institute Diagnostics, Inc. v. Scantibodies Clinical Laboratory, Inc.*,
    166 Fed. Appx. 487 (Fed. Cir. 2006)................................................................ 6

*Reed v. Rhodes*,
    549 F.2d 1046 (6th Cir. 1976) ........................................................................... 5

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3rd Cir. 1991) ........................................................................ 6, 9

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    897 F.2d 511 (Fed. Cir. 1991)............................................................................ 6

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996)........................................................................................... 8

**Statutes**

28 U.S.C. § 1292(b) .............................................................................................. passim

FED. R. APP. P. 8 ........................................................................................................ 7

DB02:5642127.1                                                                    065028.1001

## I.    NATURE AND STAGE OF THE PROCEEDING

On April 20, 2006, Plaintiffs (collectively, the "Amgen Entities" or "Amgen") filed a Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement.    Amgen assented to ARIAD's request for a 30-day extension to answer or otherwise plead, and ARIAD then filed, on June 14, 2006, its Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State a Claim for which Relief May Be Granted, and Failure to Join Indispensable Parties ("Original Motion to Dismiss").    The Court heard oral argument on the fully-briefed motion on September 11, 2006.    Ruling from the bench, the Court denied ARIAD's Original Motion to Dismiss, also denying ARIAD's motions to stay discovery and to quash a subpoena Amgen served on Eli Lilly ("Lilly").

ARIAD then filed follow-on motions to both aspects of the already-denied Original Motion To Dismiss:    (1) a motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) with respect to the issue of whether this Court has subject matter jurisdiction, and (2) a "Renewed Motion to Dismiss" that renewed ARIAD's indispensable parties arguments from its Original Motion to Dismiss, and alternatively sought to transfer the case to the District of Massachusetts.    To address ARIAD's failure to comply with ongoing discovery, Amgen filed discovery motions, which were also scheduled for hearing along with ARIAD's two follow-on motions.

On November 3, 2006, the Court heard oral argument on ARIAD's motion to certify. From the bench, the Court granted ARIAD's motion for certification, also granting an interim stay to allow the parties to brief whether this Court should grant a stay pending appeal.    The Court denied all other pending motions without prejudice as moot in light of the interim stay. Amgen files this memorandum in opposition to ARIAD's motion for a stay of these proceedings.

1

## II.    SUMMARY OF ARGUMENT

1.      ARIAD's request that this Court stay this case pending its request for an interlocutory appeal is yet another tactic designed to delay the declaratory justice that Amgen has appropriately sought.  Hoping to capitalize on its smaller relative size, ARIAD asks this Court to relieve it of the purported burden of carrying out what ARIAD has previously characterized as its limited discovery obligations while the Federal Circuit considers its request for an interlocutory appeal.  ARIAD's request should be denied, as it subverts the purpose of the Declaratory Judgment Act and defeats the Amgen Entities' interest in obtaining a prompt resolution of their uncertainty.

2.      ARIAD should not be granted a stay because it cannot satisfy its burden of proving that it is likely to succeed on the merits of its petition, much less an appeal.  Amgen is not aware of any instance where the Federal Circuit has taken an interlocutory appeal on the issue of whether a declaratory judgment plaintiff has met its burden of establishing a reasonable apprehension of suit.  The lack of authority is not surprising because declaratory judgment actions involve fact-specific determinations that are not the types of decisions worthy of interlocutory review.

3.      Moreover, certification would be improper here because the Federal Circuit lacks jurisdiction to hear ARIAD's requested appeal.  Contrary to the alleged myriad of controlling issues relied upon by ARIAD before this Court, the only question ARIAD presented to the Federal Circuit in its petition for leave to appeal related to the Bayh-Dole Act.  The Federal Circuit lacks jurisdiction to hear an appeal on this issue because this Court never substantively decided the effect of Bayh-Dole on Amgen's reasonable apprehension but instead simply threw it "into the mix" when it granted ARIAD's motion to certify.  Even if the Federal Circuit finds that it has jurisdiction, ARIAD's certification request should fail because, this Court properly

based its decision regarding subject matter jurisdiction on more than the activities alleged by ARIAD to be "licensing activities" purportedly implicated under the Bayh-Dole Act. The totality of circumstances included, among other things, ARIAD's patent suit against Lilly, a threatening statement by ARIAD's outside counsel that Amgen's Enbrel® product was "on the list," and ARIAD's list of litigation targets that was published during the Lilly trial. These factors all contributed to Amgen's reasonable apprehension of suit and all weigh against the Federal Circuit reversing this Court's ruling regarding declaratory judgment jurisdiction.

4.      Also weighing against a stay is ARIAD's failure to demonstrate any legitimate need for its requested stay, much less irreparable harm. Not only does ARIAD have more money now than it had when it first asserted the '516 patent against Lilly, but it has the ability to benefit from the efficiencies resulting from its discovery in the *Lilly* matter. The fact is that ARIAD has always found the resources to pursue its various programs, and, for obvious reasons, has never made the dire representations to the investment community that it has made to this Court in its instant motion. ARIAD has demonstrated its availability of resources and its dedication to its NF-κB portfolio through its willingness to spare no expense in asserting and protecting its '516 patent.

5.      The public interest weighs against a stay of this action. ARIAD cannot threaten the marketplace with its patent on the one hand and claim poverty with the other. ARIAD has advised practically the entire pharmaceutical and biotech industries that it believes that they have liability under the '516 patent. ARIAD has shown that it has, can and will muster whatever resources it deems necessary to sue even the largest of companies for infringement of its NF-κB patents. It should not be allowed to use the pretext of size to delay Amgen's right to declaratory justice and continue to cast a shadow over the public. The continued ability of a company like

ARIAD to enforce invalid and unenforceable patents indefinitely not only has a broad negative economic impact but also chills research and development efforts that bring new and innovative therapeutics to the market.

6.    ARIAD failed to carry its burden of proving that the public would be denied new therapeutics due to this lawsuit. The statement in ARIAD's recent 10-Q, that the "litigation initiated by Amgen" *could* "adversely impact" ARIAD's clinical and research programs is belied by the fact that this same statement (minus the litigation-driven Amgen reference) has appeared in ARIAD's disclosures for every year since ARIAD first sued Lilly. In other words, ARIAD has always made it clear that its NF-κB patent portfolio comes first, even, if necessary, to the detriment of its clinical, research, and development programs. Thus, ARIAD has failed to credibly show that it or the public will be harmed by the Court's proper denial of a stay.

7.    The prejudice that Amgen would suffer also weighs against a stay pending appeal. Amgen would have to not only risk that critical documents and testimony could become lost, forgotten, or unavailable, but also grapple with the likelihood that a stay would not only derail the discovery schedule, but, as appears to be ARIAD's strategy, the schedules for claim construction, dispositive briefing, and trial as well thus delaying Amgen's right to remove its cloud of uncertainty regarding the '516 patent.

8.    ARIAD has never denied that it will ultimately assert the '516 patent against Amgen. Indeed, the '516 patent is a tangible menace, and Amgen's right to resolution overcomes the illusory "small company burden" that ARIAD has propped up in an attempt to halt discovery and derail this Court's Scheduling Order. While ARIAD has likened the parties here to "David and Goliath," the story of David and Goliath is one of the earliest historical demonstrations that the weaponry one employs can be more important than one's size or

4

strength.  This case has and continues to focus on the legitimacy and applicability of the '516 patent—ARIAD's chief offensive weapon in its self-declared (and highly-publicized) war against the pharmaceutical and biotechnology industries.  Whether wielded by ARIAD, a company ten times ARIAD's size, or a company one tenth ARIAD's size, the '516 patent continues to hang over Amgen as an ever-present "Damoclean threat."

## III.    ARGUMENT

Since the filing of this suit *over seven months ago*, ARIAD has consistently engaged in dilatory tactics designed to avoid reaching the merits of this case.  Among many other things, ARIAD had effectively granted itself a stay of discovery by providing wholly insufficient responses to Amgen's written discovery requests (one of the other issues before this Court when ARIAD argued its certification motion).  Having realized that it cannot delay this case forever by simply refusing to comply with the Federal Rules, ARIAD now asks this Court to formally sanction the *de facto* stay that ARIAD has defiantly operated under for months.  ARIAD's tactics should not be countenanced.

### A.    TO MERIT A STAY PENDING APPEAL, ARIAD MUST CARRY THE BURDEN UNDER A STRINGENT FOUR-FACTOR TEST

A stay is not merited simply by virtue of a party's application for interlocutory appeal under 28 U.S.C. § 1292(b).  That statute specifically states that an appeal under this section may be permitted "*[p]rovided, however,* [that the] application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.  28 U.S.C. § 1292(b) (emphasis in original).  Congress could have—but chose not to—word this differently.  *See Reed v. Rhodes*, 549 F.2d 1046, 1050 (6th Cir. 1976) ("Congress could have required but did not require the granting of permission for an interlocutory appeal to be accompanied always by a stay of the lower court proceedings.").

5

Thus, "unless otherwise specially ordered," "the case, except for the hearing on the appeal from the interlocutory order, is to proceed in the lower court as though no such appeal had been taken." *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906).

Motions to stay discovery are generally disfavored. *Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, CIV. 1993 U.S. Dist. LEXIS 3734, 6-7 (D. Pa. 1993)  (Ex. 1).  In *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3rd Cir. 1991), the Court of Appeals for the Third Circuit set out to plainly articulate for essentially the first time the standards for considering whether to grant a stay pending appeal: "because this court ordinarily grants or denies a stay pending appeal without opinion, there is little reported authority discussing the standard we apply in entering such orders."  Adopting the United States Supreme Court's articulation of the general standards for stays pending appeal, the Third Circuit identified four factors to consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citing *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)).  The Federal Circuit has adopted the same test and has noted that the test is a flexible one, with the various factors being accorded different weight depending on the situation at hand. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1991); s*ee also Nichols Institute Diagnostics, Inc. v. Scantibodies Clinical Laboratory, Inc.*, 166 Fed. Appx. 487, 488-89 (Fed. Cir. 2006).  For example, if the stay applicant is unlikely to prevail on appeal, the balance of harms addressed by the other factors must more strongly tilt in its favor. *See Standard Havens*, 897 F.2d at 513.  Other jurisdictions have also applied these standards to deny stays of discovery pending appeal. *See John R. Sand & Gravel Co. v. United*

6

*States*, 60 Fed. Cl. 347, 349-350 (2004) (denying stay of proceedings where movants were not likely to succeed on the merits, were unlikely to be irreparably injured absent a stay, and the public interest favored its denial); *see also Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 384 F. Supp. 2d 1334, 1356 (D. Iowa 2005) (same); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (D. Wis. 2004) (denying a stay of discovery pending appeal because, among other reasons, the district court's decision is reviewed for an abuse of discretion making it unlikely that the movant would succeed on the merits of its appeal). ARIAD acknowledged that the four-factor test described above is the proper standard against which its motion to stay should be decided.[1]

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 709 (1997); s*ee also Cuomo* v. *United States NRC*, 772 F.2d 972, 978 (D.C. Cir. 1985) ("On a motion for stay, it is the movant's obligation to justify the court's exercise of such an extraordinary remedy.") In this matter, ARIAD fails to make adequate showings for any of the requisite factors. ARIAD is unlikely to succeed on the merits and cannot show substantial, much less irreparable, harm from proceeding with this case pending appeal. Amgen and the public, in contrast, will be substantially injured not only by increased uncertainty and doubt, but by the potential loss of evidence that could occur during an indeterminate stay and by the broad negative impact an invalid and unenforceable patent has on the economy and research and development. Indeed, even if the Court were to employ a simple balancing test, the harm to

---

[1]    During oral argument on its motion for certification under 28 U.S.C. § 1292(b), when ARIAD first mentioned that it was going to move this Court for a stay pending appeal, ARIAD stated that it was required under FED. R. APP. P. 8 to do so before it could make such a motion to the Federal Circuit. (Sharp Decl., Ex. D [D.I. 105] at p.10.) This Court agreed. *See id.* The above-described four-factor test has been found to be the proper standard for deciding, among others, motions to stay pending the kinds of appeals identified in FED. R. APP. P. 8. *See Hilton*, 481 U.S. 770 at 776 (listing the four factors described above as the factors considered in appeals under Rule 8).

065028.1001

Amgen and the public from halting progression of this case far outweighs the pretextual harms ARIAD has asserted.

**B.    ARIAD FAILS TO MEET ITS BURDEN OF PROVING THAT IT IS ENTITLED TO A STAY PENDING APPEAL**

**1.    ARIAD is Unlikely to Succeed on the Merits of Its Long-Shot Petition, Much Less the Appeal It Requests**

ARIAD has a low likelihood of succeeding on the merits of its petition, much less an appeal.[2]  Indeed, this Court has implied that ARIAD's chances of success are slim.  During the hearing on ARIAD's motion for certification, the Court commented, "I still think I was right." (Sharp Decl., Ex. A at p.31.)  As the law of this case dictates that Amgen is a proper declaratory judgment plaintiff, ongoing discovery will be neither "duplicative" nor "wasteful."

Interestingly, ARIAD did not even present the issue to which the Court was referring— application of reasonable apprehension law to the fact findings made by the Court—to the Federal Circuit in its petition for leave to appeal.  The only issue that ARIAD presented to the Federal Circuit was the Bayh-Dole issue, which, as the Court stated, was simply thrown "into the mix" and that this Court has never considered on the merits.  Thus, the Federal Circuit does not even have jurisdiction over the Bayh-Dole issue ARIAD presented for review.  *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (appellate court does not have jurisdiction over issue presented pursuant to § 1292(b) unless it was "fairly included" within the order that was certified); *see also Dehoyos v. Allstate Corp.*, 345 F.3d 290, 297 n.5 (5th Cir. 2003) (argument raised for first time in interlocutory appeal was "at best, ancillary to Appellants' primary arguments" and therefore was not "fairly included" in appeal); *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1357-58 (Fed. Cir. 2005) (refusing to decide issues because

---

2    Plaintiffs have been unable to locate any Federal Circuit case granting leave for a patent-holder to bring an interlocutory appeal related to declaratory judgment jurisdiction.

065028.1001

litigant "waived these arguments by failing to raise them in a form that required a decision by the trial court").

This Court has already found that declaratory judgment jurisdiction is proper and Amgen is entitled to ongoing and meaningful discovery while the Federal Circuit considers ARIAD's long-shot petition and any fruitless appeal.

### 2. ARIAD Has Not and Cannot Show That It Will Be Irreparably Injured Absent a Stay Pending Appeal

To even merit consideration for a stay, ARIAD must first demonstrate that it will suffer irreparable injury if a stay is denied. *See Republic of Philippines*, 949 F.2d 653 at 658; *cf. Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (before a stay can go forward the petitioner must demonstrate "a clear case of hardship or inequity" if there is "even a fair possibility that the stay for which he prays will work damage [on another party]"); *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 660 (D. Del. 1990) (applying the *Landis* standard and denying stay based on movant's failure to make a showing that a stay was warranted because of hardship or inequity).

In establishing irreparable harm, ARIAD must demonstrate that the harm it will suffer is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Kemin Foods, L.C.*, 384 F. Supp. 2d at 1341. Economic loss does not constitute irreparable harm. *Board of Educ. v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637, 644 (D.N.J. 1998). Here, where the only potential harm ARIAD articulates is financial, ARIAD's arguments fall short. *See id.* (denying stay, in part, because the only asserted loss was financial); *see also Kemin Foods, L.C.*, 384 F. Supp. 2d at 1342 (denying stay, in part, because legal expenses are not sufficient to establish irreparable harm, and financial harms asserted by movant were based on speculation and supposition).

9

In *Kemin Foods, L.C.*, 384 F. Supp. 2d at 1341, "a small company with limited resources," asserted that, if a stay of proceedings were denied, its survival would be threatened by having to divert resources from investment in marketing its drug to meeting the costs of pursuing the litigation. The district court held that "[m]ost importantly, [movant] admitted [] that any harm it may potentially suffer [] will be the result of the litigation expenses incurred. Such legal expenses are not sufficient for purposes of this prong and the Court therefore finds that this prong does not strongly support the grant of a stay." *Id.* at 1342.

In any event, it is disingenuous of ARIAD to claim financial hardship in light of a track record showing that it spares no expense when it comes to enforcement of its NF-κB portfolio. While ARIAD may be correct that it did not plan to have to defend its '516 patent against Amgen *at this particular point in time*, ARIAD cannot argue that it never expected to have to once again defend its primary offensive patent—one that it has already spent over four years and untold millions of dollars asserting against another one of its litigation targets. As defending its main patent is not even a detour from ARIAD's core business, and as ARIAD has already done much of the legwork necessary to defend its patent over the four-year course of the *Lilly* litigation, ARIAD's assertions of unmanageable financial strain are not credible.

In the instant action, any purported harm that ARIAD would suffer from denial of the stay is solely financial and in any event *de minimis*. The facts demonstrate that (1) protecting its NF-κB patent portfolio is central to ARIAD's business; and (2) because it already litigated the '516 patent against Lilly, ARIAD is prepared to carry forward with discovery without incurring significant additional expense.

(a)    **Protecting Its NF-κB Portfolio is Not a Detour From, But an Integral Part of, ARIAD's Core Business Model**

While ARIAD would have this Court believe that Amgen's lawsuit is a peripheral matter that threatens ARIAD's "real" focus of bringing its cancer drug to market, the facts dictate otherwise. This litigation is not a nuisance suit asserted by Amgen to oppress ARIAD—it is a declaratory judgment action related to the legitimacy and applicability of ARIAD's '516 patent, an offensive patent central to ARIAD's business. Indeed ARIAD's NF-κB patent portfolio is an integral part of ARIAD's corporate identity and a key aspect of how ARIAD positions itself in the marketplace:

- ARIAD's CEO, Dr. Harvey Berger, on the same day the verdict was announced in the *Lilly* trial, discussed his company's plans in an interview with CNBC. Dr. Berger was asked, "[a]nd Dr. Berger, you're not done yet. You think you can get royalties from other drug companies as well, correct?" Berger responded, "[w]ell, there's no question that NF-(kappa)B cell-signaling pathway plays an important role in many different diseases, not only ... osteoporosis, but as well as cancer and inflammation ... *pharmaceutical and biotech companies* ***need to pay rent for the use of the intellectual property*.**" (Sharp Decl., Ex. B [5/4/06 CNBC Transcript] at p.2.) (emphasis added).

- ARIAD continues to tout the importance of its NF-κB portfolio to the investment community, stating in an investor webcast on November 29, 2006: "We're delighted with the outcome from the [*Lilly*] jury trial and are excited about the potential of this creating value for us on an ongoing basis and demonstrating the important value of this intellectual property."[3]

- The "Investor Downloads" section of ARIAD's website links to only two documents, one of which is entitled, "NF-κB Highlights." In this document, ARIAD asserts that "[t]he use of many currently marketed drugs and products in development, in addition to the two highlighted in the Lilly litigation, are examples of NF-κB treatment methods which may be covered by our NF-κB patents." (Sharp Decl., Ex. C [NF-κB Highlights] at p.1.)

---

[3]    A transcript of this Webcast is not yet available, but this statement, given on November 29, 2006 by ARIAD at the Lazard Life Sciences Conference, can be found about 24 minutes into the webcast at http://phx.corporate-ir.net/phoenix.zhtml?p=irol-eventDetails&c=118422&eventID=1409508.

11

- ARIAD seeks to associate itself with the NF-κB name. The link "www.NFkB.org" (a mistype of the academic website "www.NF-kB.org") forwards visitors *directly* to ARIAD's homepage at "www.ARIAD.com."

Citing to a self-serving, litigation-driven statement in its most recent 10-Q, ARIAD argues in its brief that the Amgen litigation in particular could "adversely impact" its clinical, research, and development programs. (Br. at 10.) What ARIAD fails to point out is that it has always put its NF-κB program first in its list of priorities, and has consistently disclosed to investors that it will use whatever resources are necessary to enforce and defend its NF-κB patent portfolio, *even at the potential expense of its clinical programs and research and development programs*:

- Long before Amgen initiated this declaratory judgment action, ARIAD had notified the investment community that it was prepared to enforce its patent rights even at the cost of its research, and development programs. In its 10-K for the quarterly period that ended on December 31, 2002, ARIAD stated, "[s]ignificant expenditures to enforce these patent rights without generating revenues or accessing additional capital *could adversely impact our ability to further our research and development programs at the current levels or at levels that may be required in the future.*" (Sharp Decl., Ex. D [3/14/2003 ARIAD 10-K] at p.19.)

- In an August 2005 stock prospectus supplement, ARIAD emphasized that its clinical programs were also at risk due to its NF-κB enforcement program: "Moreover, significant expenditures to enforce these patent rights without generating revenues or accessing additional capital or other funding *could adversely impact our ability to further our clinical programs and our research and development programs at the current levels or at levels that may be required in the future.*" (Sharp Decl., Ex. E [8/1/2005 Stock Prospectus Supplement] at p.7.]

- ARIAD retains expensive (and prominent) attorneys to protect its NF-κB patent franchise. In the *Lilly* litigation, ARIAD hired the New York office of Kaye Scholer LLP. In this litigation, ARIAD has hired counsel from the Los Angeles office of Irell & Manella LLP.

- ARIAD's recent activities in response to the '516 patent reexamination underscore the depths of ARIAD's willingness to expend resources on its NF-κB portfolio when it desires. In response to the most recent PTO office action, for example, ARIAD had no problem engaging not only a technical expert, but two sets of trial counsel to study the patent, a 70 page draft declaration, and a draft

12

065028.1001

response to the office action. (Sharp Decl., Ex. F [Petition for Extension of Time] at p.2-p.3.)  The response and expert declaration that were ultimately filed numbered over 1200 pages.

In its briefing on its certification motion, ARIAD argued that its public filings included no budget for litigation against Amgen.  In reality, *ARIAD's public filings never included a plan or budget for any litigation*, including the lawsuits ARIAD initiated against Lilly and the PTO.

(b)    **ARIAD is Financially and Substantively Prepared to Proceed With Discovery at Little Marginal Expense**

In opposing this action, ARIAD has repeatedly argued that it is a small company with "limited funding, minimal licensing revenue, few sources of additional capital, and no currently marketed products." (ARIAD's Opening Mem. of Law in Support of its Mot. for Cert. Pursuant to 28 U.S.C. 1292(b) at 1).  ARIAD makes the same argument in the instant motion, but with a distasteful twist, going so far as to say that Amgen's litigation could precipitate a diversion of resources that could result in a "fatal … delay [of] treatment for sarcoma patients" (Br. at 4) or could "threaten . . . the lives of patients."  (Br. at 9.)  ARIAD's arguments are unsupported and untrue.  ARIAD provides no evidence that it would be forced to divert the necessary, let alone any, resources away from its clinical programs.  Indeed, despite the spectre of financial ruin summoned up by ARIAD's counsel, Dr. Berger's declaration conspicuously excludes any statements that ARIAD would be unable to adequately fund both its clinical programs and its discovery obligations while the Federal Circuit considers ARIAD's Petition for Permission to Appeal.  As demonstrated above, ARIAD has always been willing to pursue its NF-κB enforcement program to the detriment of its other clinical and research programs.

ARIAD is not now poised at the brink.  Notably, ARIAD actually now has *more* cash, cash equivalents, and marketable securities than it did before it voluntarily sued Lilly in 2002.

13

ARIAD recently ended the third quarter of 2006 with $39.2 million in cash, cash equivalents, and marketable securities. (Sharp Decl., Ex. G [ARIAD Q3 2006 Earnings Conference Call] at p.2.)  On June 30, 2002, just days after ARIAD initiated suit against Lilly, ARIAD had only $35.98 million in cash, cash equivalents, and marketable securities.  (Sharp Decl., Ex. H [6/30/2002 10-Q] at p.1.)  And ARIAD has recently demonstrated its ability to raise capital to fund its litigations, among other things. (Sharp Decl., Ex I [10/26/2006, "Financings Roundup," BioWorld Today] at p.3.)

While awaiting the Federal Circuit's decision on ARIAD's petition, valuable discovery— at minimal burden to ARIAD—can be completed.  ARIAD has been in possession of Amgen's document requests for nearly five months.  Surely ARIAD has not ignored its discovery obligations for the past five months but instead has been preparing to respond to those outstanding requests.  Furthermore, as ARIAD has admitted, "[t]his case presents the unusual situation where the vast majority of the documents covered by [Amgen's] document requests were already collected and produced by ARIAD in its still-pending lawsuit against Eli Lilly & Company ('Lilly')." (Sharp Decl., Ex. J [11/2/2006 Letter to The Honorable Kent A. Jordan] at p.2.)  To the extent that Amgen's document requests overlap with documents ARIAD has previously collected and produced, ARIAD's document production obligations should be minimal.

As ARIAD itself recognizes, its production burden has been greatly eased by Lilly's production of documents to Amgen.  ARIAD's burden in other areas would be similarly mitigated by its ability to build on the fact collection efforts already begun during the *Lilly* litigation. From claim construction to expert reports, from 30(b)(6) to inventor depositions, from

14

interrogatory responses to requests for admission—all would benefit from at least some of the preparatory work that was done before.

Where the burden on the proponent of the stay does not outweigh the harm to the opposing party, even in cases dealing with stays unrelated to appeal, the stay should not be granted. *See 19th St. Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 349-350 (D. Pa. 2000) (stay denied where potential expense to movant outweighed by risks to non-moving party). Here, moving forward with discovery will, as ARIAD acknowledges, cost ARIAD only minimal amounts of time and money. Any discomfort for ARIAD will be far outweighed by the potential harm to Amgen if a stay is granted.

### 3. ARIAD Ignores How a Stay Will Injure Amgen or the Public

#### (a) Amgen and the Public Will Suffer If the Purpose of Declaratory Judgment Related to Patents is Subverted

In the patent context, the central function of the Declaratory Judgment Act is to provide "the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1346 (Fed. Cir. 2005). In seeking to stay discovery in this matter while it attempts to bring the issue of declaratory judgment jurisdiction before the Federal Circuit, ARIAD is attempting to subject Amgen to precisely the kind of delay that the Act was designed to prevent.

If the Declaratory Judgment Act is to have any meaning for Amgen or any other party concerned with ARIAD's marketplace threats regarding the '516 patent, then the Act must entitle Amgen to a reasonably speedy resolution of its claims, rather than the current situation where ARIAD, while perhaps not being allowed to litigate at the *place* of its choosing, is effectively being allowed to delay litigation of its patent infringement claims until the *time* of its choosing. *See EMC Corp. v. Norand Corp.,* 89 F.3d 807, 812 (Fed. Cir. 1996) ("When the patentee takes

steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue….").

This Court agreed to certify its Order on November 3, 2006. Before the Federal Circuit can even begin to consider ARIAD's petition, nearly a month will have passed without any affirmative steps having been taken with respect to Amgen's right to speedy resolution under the Declaratory Judgment Act.[4] By the time the Federal Circuit issues a decision on the threshold question of whether ARIAD may even bring an appeal regarding this Court's assumption of declaratory judgment jurisdiction, several more months will have elapsed.

A review of recent Petitions for Permission to Appeal before the Federal Circuit suggests that the Court of Appeals may take between two and four months to issue a decision on ARIAD's Petition. Thus, it is not out of the question that approximately *one year* will have passed since the filing of the Complaint in this action, and Amgen will be *no closer* to a determination of its legal rights than if the case had never been filed in the first place. In the meantime, ARIAD will continue, without any repercussions, to "brandish its Damoclean threat with a sheathed sword." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 (Fed. Cir. 1988).

Instead of gaining business certainty, Amgen will be forced to wait for ARIAD's procedural wrangling to end while its potential liability grows. *See Minnesota Mining and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991) (Declaratory Judgment Act sought to alleviate the problem of alleged infringers compiling potential liability while awaiting a determination of their rights). Surely this is not what the Federal Circuit had in mind when it

---

[4]    ARIAD filed its Petition for Permission to Appeal with the Federal Circuit on November 17, 2006. Amgen filed its opposition thereto on November 29, 2006.

16

said that patent suits are "particularly adapted to declaratory resolution." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1357 (Fed. Cir. 2004).

A court's refusal to accept a declaratory judgment action (and, by extension, a court's refusal to force all parties to prosecute the action in a timely manner) raises public policy concerns since the public has an interest in knowing whether patents are valid and enforceable. *See Capo*, 387 F.3d at 1358. This makes particular sense since an invalid and unenforceable patent that remains on the books will negatively impact the growth of the national economy and hinder research and development efforts that would otherwise lead to innovation and yield beneficial therapeutics. (Sharp Decl., Ex. K [5/12/2006, "Decision on NF-κB Patent Could Have Broad Implications for Biotech," Science] at p.827); (Sharp Decl., Ex. L [6/2006, "Industry Sweats After Patent Verdict," Nature], at p. 443). Accordingly, if ARIAD can successfully prevent this matter from being litigated while it brings its petition to the Federal Circuit, Amgen will be harmed, the public will be harmed, and the Declaratory Judgment Act will be subverted.

### (b)    Delay of the Case Schedule Will Harm Amgen

Here, Amgen wishes to litigate the validity of the '516 patent, whose roots extend back to patent applications drafted in the mid to late 1980s. Memories can fade. Documents can be lost or misplaced. Witnesses can become unavailable. A stay would prevent Amgen from protecting itself from these very real concerns. *See Clinton v. Jones, 520 U.S.* at 707-708 (denying a stay where delay could lead to loss of evidence).

As a declaratory judgment plaintiff, Amgen has a right to a timely resolution of this matter. Any delay only serves to compound the uncertainty that led Amgen to file suit in the first place. The Declaratory Judgment Act was conceived to provide parties with a means to resolve uncertainty on their own timetable. Amgen filed suit. The Court determined that it had

appropriate subject matter jurisdiction over ARIAD (without need to include the Institutions). The Court issued a case schedule to timely resolve this matter. ARIAD's dilatory tactics have already jeopardized the Court's schedule for expert discovery and the close of fact discovery. Further delay could additionally jeopardize the schedule for claim construction, dispositive motions, and even trial. By refusing to provide meaningful discovery and now seeking formally to stay Amgen's declaratory judgment action, ARIAD is asking for a free pass until it can either maneuver to obtain jurisdiction over Amgen in another forum, or at least derail this suit long enough to allow ARIAD to engage Amgen at the time it had originally targeted Amgen for patent infringement litigation. ARIAD wants to have its cake and eat it too.

ARIAD has also mocked Amgen's contention that it is operating under a "cloud of uncertainty." ARIAD specifically argues that, because it "has not sought an injunction in this case," Amgen's concern regarding the uncertainty of injunctions "rings hollow." To the contrary, ARIAD's careful word choice itself provides cause for concern, as it has carefully avoided saying that it will *never* seek an injunction in this case or another case against Amgen. ARIAD still has the ability to seek an injunction in this case, and it is wholly irrelevant that it has not yet sought that injunction (or that it did not seek an injunction against Lilly). Moreover, in the Declaration of Dr. Harvey Berger submitted with ARIAD's motion to stay, Dr. Berger could have disavowed any intention to seek an injunction, but carefully chose not to. As ARIAD's own calculated choice of words and omissions demonstrate, Amgen's uncertainty is justifiable. This, of course, says nothing of the potential financial liability that Amgen continues to accrue every single day that resolution of this matter is delayed.

A trial date has been set. Discovery needs to be completed. A stay while the Federal Circuit simply considers ARIAD's petition for permission to appeal will delay justice for

18

Amgen—the party operating under the cloud. Indeed, a stay only serves ARIAD's tactical interest in delaying litigation of the '516 patent until ARIAD is ready to engage Amgen on its terms (and ready to exploit the leverage it may gain by subjecting Amgen to an even longer period of uncertainty regarding the '516 patent).

### C.   ARIAD'S SIZE IS IRRELEVANT TO THE TANGIBLE THREAT POSED BY ITS CHIEF OFFENSIVE WEAPON, THE '516 PATENT

ARIAD spends the majority of its brief emphasizing just how small it is relative to Amgen. This mantra is repeated so many times one would think that the law exempts small companies from being declaratory judgment defendants altogether. What ARIAD fails to acknowledge is that declaratory judgment, especially in the patent context, focuses not on the size of the patentee, but on the threat posed by the patentee's assertion of its patent. If a party like Amgen has a reasonable apprehension that a patentee will assert its patent against it, that party is allowed to seek declaratory judgment regardless of the relative size of the patentee. If ARIAD was truly concerned with being sued by larger companies, it would have thought twice prior to throwing down the gauntlet before over 50 companies in the pharmaceutical and biotechnology industries. (Sharp Decl., Ex. M [5/5/2006, "Lilly Loses Patent Case to Ariad," New York Times.])

That ARIAD has limited resources changes nothing. ARIAD had the same "limited" resources when it sued Lilly. Nevertheless, its limitations did not prevent it from convincing a jury to award ARIAD $65.2 million on the issue of '516 patent infringement and to direct Lilly to pay a 2.3% royalty on sales of its Evista® and Xigris® products for the next thirteen years. A patent costs a finite amount to enforce and defend, but can yield potential returns many orders of magnitude larger. The ability to assert a purportedly "broad" patent such as ARIAD's (and the ability to threaten others with suit) gives a patentee power far beyond the size of its market cap.

065028.1001

Indeed, the '516 patent, which ARIAD contends effectively covers an entire biological pathway, has been viewed as placing a chill on basic biology and has been characterized as the type of patent that, if valid, could be an "industry's worst nightmare." (Sharp Decl., Ex. L at p.443).

ARIAD may be small like a "David," but it has already sued Lilly and the U.S. Government, and is pursuing its reexamination with unbridled resources. ARIAD tries to make much of the fact that Amgen's quarterly revenues are fifteen thousand times ARIAD's. But Lilly's quarterly revenues are *sixteen thousand eight hundred* times ARIAD's! (Sharp Decl., Ex. N [11/3/06 Lilly 10-Q] at p.31.) Size does not matter here. ARIAD's status as a smaller company does not reduce the threat to Amgen and does not alter the fact that Amgen is entitled to a speedy resolution of its claims after properly invoking declaratory judgment jurisdiction. ARIAD's purported discomfort in having to proceed forward with this case is far outweighed by the prejudice to Amgen of being prevented from advancing its case toward resolution.

## IV.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that this Court deny ARIAD's

Motion for Stay.

Date: December 1, 2006

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex*
*Corporation, Amgen USA Inc., Amgen*
*Manufacturing, Limited, and Immunex Rhode*
*Island Corporation.*

# EXHIBIT 1

LEXSEE

**COCA-COLA BOTTLING COMPANY OF THE LEHIGH VALLEY, Plaintiff v.
JOSEPH F. GROL, MARK W. KOVACS, PETER J. KEARNEY, AND STEFKO
DISTRIBUTING COMPANY, INC., d/b/a CATY BEVERAGE CO., Defendants**

**CIVIL ACTION NO. 92-7061**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA**

**1993 U.S. Dist. LEXIS 3734**

**March 3, 1993, Decided
March 8, 1993, Filed; March 9, 1993, Entered**

**DISPOSITION:** [*1] Defendant Kearney's motion is
DENIED in its entirety.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff company had
filed suit against defendant individuals and alleged that
the individuals attempted to siphon off the company's
assets. The company served notices of depositions and
subpoenas for documents held by various banks. One
defendant filed a motion to quash the depositions and
subpoenas or to stay discovery until the court resolved
the defendant's motion to dismiss under Fed. R. Civ. P.
12(b)(6).

**OVERVIEW:** The company filed suit against the
individuals for violation of the Racketeer Influenced and
Corrupt Organizations Act, 18 U.S.C.S. §§ 1961 et seq.,
and for various state law violations. The company served
notices of depositions and subpoenas for documents on
several financial institutions. One of the defendants filed
a motion to quash the depositions and subpoenas or at
least stay the deposition until the court ruled on the
individual's motion to dismiss for failure to state a claim
upon which relief could be granted pursuant to Fed. R.
Civ. P. 12(b)(6). The court held (1) the individual's
motion to dismiss was based on the allegation that the
facts plead were insufficient and were not dispositive of
the dispute, (2) the court was not required by Rule
12(b)(6) to rule on the motion before discovery, (3) the
individual did not show good cause under Fed. R. Civ. P.
26(c), by demonstration of a need for protection, (4) the

individual did not provide copies of the notices as
required by U.S. Dist. Ct., E. D. Pa. R. 24(b), (5) the
individual was unable to rely on conclusory statements
that the notices were broad, not relevant, and harassing.

**OUTCOME:** The court denied the motion to quash the
subpoenas and notice of deposition. The court denied the
motion to stay the depositions pending a ruling on the
individual's motion to dismiss.

**CORE TERMS:** discovery, deposition, motion to
dismiss, subpoenas, notice, disclosure, protective order,
good cause, dispositive, failure to state a claim, third
parties, entirety, invalid, criminal investigation, failed to
provide, properly served, civil action, commencement,
circumvent, conducting, scheduled, nonparties, summons,
mail, Local Rule, memorandum

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings >
Complaints > General Overview*
*Civil Procedure > Discovery > Methods > Oral
Depositions*
*Civil Procedure > Discovery > Methods > Requests for
Production & Inspection*
[HN1] Any party may take the deposition of any person
after the commencement of the action. Fed. R. Civ. P.
30(a). The Rules authorized a plaintiff to compel
nonparties to produce documents. Fed. R. Civ. P. 34(c).

*Civil Procedure > Discovery > Protective Orders*
*Civil Procedure > Pretrial Matters > Subpoenas*
[HN2] A party or person seeking a protective order has the burden of showing good cause. Fed. R. Civ. P. 26(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
*Governments > Courts > Authority to Adjudicate*
[HN3] A federal court has broad inherent power to exercise appropriate control over the discovery process. A court should not automatically stay discovery pending a motion to dismiss under Fed. R. Civ. P. 12(b). Had the drafters of the Federal Rules of Civil Procedure wanted an automatic stay of discovery pending a motion to dismiss they could have so provided. Rather, the decision whether to stay discovery pending a decision on a motion to dismiss is left to the sound discretion of the court. Requests to stay discovery are rarely appropriate where resolution of the motion to dismiss will not dispose of the entire case. In deciding whether to stay discovery pending a motion to dismiss a court must balance the harm produced by delay against the possibility that the motion will be granted and entirely eliminate the need for such discovery.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Pleading & Practice > Pleadings > General Overview*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
[HN4] Where there is a motion to dismiss for failure to state a claim upon which relief can be granted, the court should take a preliminary look at the allegedly dispositive motion to see whether it is a challenge as a matter of law or to the sufficiency of the allegations. Where the motion merely addresses the sufficiency of the complaint, resolution of the pending motion is not necessarily dispositive because the pleadings may be amended to correct the deficiencies.

*Civil Procedure > Discovery > Protective Orders*
*Governments > Courts > Rule Application & Interpretation*
[HN5] A party moving for a protective order under Fed. R. Civ. P. 26(c), must make a strong showing of "good

cause" by demonstrating a particular need for protection. A party cannot rely on conclusory statements that the discovery is broad, not relevant, and harassing to show good cause under Rule 26(c).

COUNSEL: For COCA-COLA BOTTLING COMPANY OF THE LEHIGH VALLEY, PLAINTIFF: ALAN M. BLACK, BLACK, MC CARTHY, EIDELMAN, FEINBERG, ANEWALT & KERCHER, P.C., 22 N. SEVENTH STREET, CORPORATE PLAZA, 6TH FL., ALLENTOWN, PA 18101, USA. DAMON E. DUNN, WILSON P. FUNKHOUSER, LEVIN & FUNKHOUSER, LTD., 55 WEST MONROE STREET, SUITE 2410, XEROX CENTRE, CHICAGO, IL 60603, USA. LAWRENCE R. LEVIN, LEVIN & FUNKHOUSER, LTD., 55 WEST MONROE STREET, STE. 2410, XEROX CENTRE, CHICAGO, IL 60603, USA.

For JOSEPH F. GROL, DEFENDANT: QUINTES D. TAGLIOLI, 512 HAMILTON STREET, STE. 302, ALLENTOWN, PA 18101, USA. For PETER J. KEARNEY, DEFENDANT: FAUSTINO MATTIONI, 399 MARKET STREET, 2ND FLOOR, PHILADELPHIA, PA 19106, USA. For STEFKO DISTRIBUTING COMPANY, INC. d/b/a CATY BEVERAGE CO., DEFENDANT: WILLIAM R. THOMPSON, KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS, 1401 WALNUT STREET, 8TH FLOOR, PHILA, PA 19102, USA.

JUDGES: Huyett, 3rd

OPINION BY: DANIEL H. HUYETT, 3RD

OPINION:

**MEMORANDUM**

HUYETT, J.

MARCH 3, 1993

Plaintiff filed a complaint in this action on December 9, 1992 alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 [*2] et seq. and various state law causes of action. The complaint essentially alleges that two of Plaintiff's former managers, Defendant Joseph F. Grol and Defendant Mark W. Kovacs, and two of Plaintiff's customers, Defendant

Peter J. Kearney and Defendant Stefko Distributing Company, engaged in a pattern of racketeering activity through numerous schemes to siphon off Plaintiff's assets.

On December 23, 1992 Plaintiff served notices of depositions and subpoenas for documents on First Lehigh Bank, Northeastern Bank, Merchants Bank, Meridian Bank, American Travel Related Services, Inc., and First Valley Bank. Plaintiff made the document subpoenas returnable on February 1-3, 1993 and the subpoenas state that "no deponent need appear if records are produced on or before" the return dates of the subpoenas. Plaintiff also mailed copies of the notices of depositions and subpoenas to all Defendants. n1 On February 1, 1993 Defendant Kearney filed a motion for a protective order to quash the subpoenas or to stay discovery until the Court resolves Defendant Kearney's motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which [*3] relief can be granted. Defendant Kearney raises five grounds in support of his motion, each of which the Court rejects, and therefore will deny Defendant Kearney's motion in its entirety.

> n1 Neither the movant, Defendant Kearney, nor Plaintiff, has complied with Local Rule 24(b) which requires them to set forth verbatim the relevant parts of the notices and subpoenas at issue. The Court is relying on statements made in the motion and Plaintiff's response.

Defendant Kearney claims that the notices of depositions are invalid because Plaintiff served them before Defendant Kearney was properly served with the complaint. Plaintiff served Defendant Kearney with the summons and complaint by mail pursuant to Federal Rule of Civil Procedure 4(c)(2)(C)(ii) on December 14, 1992. Because Plaintiff did not receive an acknowledgment of service within twenty days after the date of mailing, Plaintiff caused Defendant Kearney to be personally served on December 28, 1992. [HN1] Any party may take the deposition of any person after the commencement [*4] of the action. Fed. R. Civ. P. 30(a). This action commenced on December 9, 1992 when Plaintiff filed the complaint. Fed. R. Civ. P. 3. The depositions were scheduled for February 1-3, 1993, well after the commencement of the action. Plaintiff did not

need to obtain leave of the Court because the depositions were not scheduled "prior to the expiration of 30 days after service of the summons and complaint upon any defendant . . . ." Fed. R. Civ. P. 30(a). The Rules authorized Plaintiff to compel nonparties to produce documents. Fed. R. Civ. P. 34(c). Plaintiff properly served Defendant Kearney with notice of the subpoenas on the nonparties by mail. See Fed. R. Civ. P. 45(b)(1), 5(b). The notices of depositions and subpoenas are not invalid. Finally, [HN2] a party or person seeking a protective order has the burden of showing good cause. Fed. R. Civ. P. 26(c). Defendant Kearney has failed to show good cause because he has failed to show that he suffered any prejudice from the fact that Plaintiff served the notices of depositions before Defendant Kearney was served with the complaint.

Defendant Kearney claims that the notices of depositions are invalid because Plaintiff served them before [*5] making the disclosures required under section 4:01(a) of the Civil Justice Expense and Delay Reduction Plan (Plan) adopted in this district. Defendant Kearney claims that the disclosures made by Plaintiff on January 18, 1993 were incomplete. According to the Plan, "a party may not seek discovery from any source before making the disclosures under subdivision (a)(1) . . . ." Plan § 4:01(b). First, Plaintiff did not violate the Plan because Plaintiff made disclosures on January 18, 1993, before the February 1, 1993 return date on the subpoenas. Second, Defendant fails to provide the Court with a copy of the disclosures provided by Plaintiff. Without seeing the disclosures, the Court will not rely on Defendant's conclusory allegation that the disclosure was "defective in that it gave no meaningful description of the documents, data, compilations and tangible things." Def. Mem. at 1. Third, Defendant Kearney has failed to show that he suffered any prejudice from Plaintiff's alleged noncompliance with section 4:01(a)(1).

Next, Defendant Kearney argues that the Court should stay discovery in this action because he has filed a motion to dismiss for failure to state a claim upon which relief [*6] can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). [HN3] A federal court has broad inherent power "to exercise appropriate control over the discovery process." Herbert v. Lando, 441 U.S. 153, 177 (1979). A court should not automatically stay discovery pending a motion to dismiss under Rule 12(b). Had the drafters of the Federal Rules of Civil Procedure wanted an automatic stay of discovery pending a motion

to dismiss they could have so provided. Moran v. Flaherty, No. 92-3200, 1992 WL 276913 (S.D.N.Y. Sep. 25, 1992); Gray v. First Winthrop Corp., 133 F.R.D. 39, 40 (N.D. Cal. 1990). Rather, the decision whether to stay discovery pending a decision on a motion to dismiss is left to the sound discretion of the court. Chrysler Capital Corp. v. Century Power Corp., 137 F.R.D. 209, 211 (S.D.N.Y. 1991). Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems. Requests to stay discovery are rarely [*7] appropriate where resolution of the motion to dismiss will not dispose of the entire case. In deciding whether to stay discovery pending a motion to dismiss a court must balance the harm produced by delay against the possibility that the motion will be granted and entirely eliminate the need for such discovery. Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988).

[HN4] Where there is a motion to dismiss for failure to state a claim upon which relief can be granted, the court should take a preliminary look at the allegedly dispositive motion to see whether it is a challenge as a matter of law or to the sufficiency of the allegations. See Hachette Distribution, Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991). Where the motion merely addresses the sufficiency of the complaint, "resolution of the pending motion is not necessarily dispositive because the pleadings may be amended to correct the deficiencies." Simpson v. Specialty Retail Concepts, Inc., 121 F.R.D. 261, 263 (M.D.N.C. 1988)

A preliminary look at Defendant Kearney's motion to dismiss reveals [*8] that, on the whole, Defendant Kearney challenges the sufficiency of the allegations of the complaint. Plaintiff's response to the motion to dismiss reveals that the dispute is over what a plaintiff must prove in a RICO action compared to what a plaintiff must plead in a complaint. In this situation, the motion may not be dispositive because even if granted, Plaintiff may be able to amend the complaint. In addition, the Court notes that the other defendants do not seek a stay of discovery nor have they made dispositive motions. Thus, even if the Court granted Defendant Kearney's motion, the action would continue. See Hachette 136 F.R.D. at 358-9. Moreover, Plaintiff seeks discovery from third parties, not Defendant Kearney, and the discovery sought is limited, not a "fishing expedition" as Defendant

Kearney contends. Based upon all of these factors, then, a stay of discovery pending a decision on Defendant Kearney's motion to dismiss is unwarranted.

Defendant Kearney further states that he has been advised that the FBI is conducting an ongoing criminal investigation into the facts relating to "the Coca-Cola situation." Def. Mem. at 3. He argues that [*9] a stay of discovery is particularly appropriate where as here, a private litigant may be a "stalking horse" for government prosecutors who are using a civil action to circumvent the discovery limitations of criminal procedure. Sharjah Inv. Co. (UK) Ltd. v. P.C. Telemart, Inc., 107 F.R.D. 81, 83 n.2 (S.D.N.Y. 1985). First, Defendant Kearney has failed to provide the Court with any evidence that the FBI is conducting a criminal investigation. Second, he has failed to show that the government is using Plaintiff's civil action to circumvent any limitations of criminal discovery.

Finally, Defendant Kearney argues that the deposition notices are "overly broad and inquire into matters which are not relevant, and are designed for the purpose of harassing, annoying, embarrassing, or oppressing the defendant." Def. Mem. at 3. [HN5] A party moving for a protective order under Rule 26(c) must make a strong showing of "good cause" by demonstrating a particular need for protection. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). First, Defendant Kearney has failed to provide the Court with copies of the notices of deposition [*10] at issue as required by Local Rule 24(b). Second, a party cannot rely on conclusory statements that the discovery is broad, not relevant, and harassing to show good cause under Rule 26(c). Defendant Kearney states that the depositions request the banks to produce documents relating to eleven persons and fail to provide account numbers. Plaintiff's discovery request is directed to third parties, not to Defendant Kearney. Defendant Kearney cannot realistically claim that he needs protection from these notices of depositions and subpoenas directed to the third parties. See Howard v. Galesi, 107 F.R.D. 348, 350 (S.D.N.Y. 1985). Finally, Defendant Kearney has failed to show that the discovery will harass, annoy, oppress, or embarrass him.

For the foregoing reasons, the Court will deny Defendant Kearney's motion in its entirety. An order follows.

Daniel H. Huyett, 3rd, Judge

1993 U.S. Dist. LEXIS 3734, *10

**ORDER**

HUYETT, J.

MARCH 3, 1993

Upon consideration of Defendant Kearney's Motion for Protective Order to Quash Or At Least Stay Notices of Deposition For February 1, 1993, Plaintiff's response, and for the reasons stated in the foregoing memorandum, Defendant Kearney's motion [*11] is DENIED in its entirety.

IT IS SO ORDERED.

Daniel H. Huyett, 3rd, Judge