IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, | ) ) ) ) ) |
| Plaintiffs, | ) C.A. No. 06-259-***(MPT) |
| v. | ) ) |
| ARIAD PHARMACEUTICALS, INC., | ) ) |
| Defendant. | ) |

**DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
OPENING MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STAY LITIGATION PENDING CONCLUSION OF
REEXAMINATION PROCEEDINGS IN THE PATENT AND TRADEMARK OFFICE**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant
ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Dated: January 23, 2007

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF LITIGATION ........................................................ 1

II.   SUMMARY OF ARGUMENTS ....................................................................... 3

III.  THE REEXAMINATION PROCEDURE .......................................................... 6

IV.   ARGUMENT ....................................................................................................... 7

      A.    Courts Apply A Liberal Policy In Favor Of Staying
            Litigation Pending Resolution Of Reexamination
            Proceedings ................................................................................................. 7

      B.    This Court Should Exercise Its Discretion To Stay This
            Litigation Until The Conclusion Of Reexamination
            Proceedings ................................................................................................. 9

            1.    A Stay Will Permit The PTO To Simplify The
                  Underlying Issues In The Action .................................................... 9

            2.    A Stay Is Warranted Since The Action Is In Its
                  Early Stages .................................................................................. 12

            3.    Amgen Will Not Suffer Any Prejudice Or Clear
                  Tactical Disadvantage From A Stay ............................................ 14

      C.    This Case Is Different From The Lilly Litigation .................................... 15

V.    CONCLUSION .................................................................................................. 17

<u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Abbott Diabetes Care, Inc. v. DexCom, Inc.*,
  2006 WL 2375035 (D. Del. Aug. 6, 2006) ..................................................... 12, 14

*AK Steel Corp. v. Sollac and Ugine*,
  344 F.3d 1234 (Fed. Cir. 2003).................................................................... 10

*Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*,
  344 F.3d 1186 (Fed. Cir. 2003)..................................................................... 10

*Alloc, Inc. v. Unilin Decor N.V.*,
  2003 WL 21640372 (D. Del. July 11, 2003) ................................................ 7, 8, 13

*Applied Materials, Inc. v. Negevtech, Inc.*,
  2005 WL 1656894 (N.D. Cal. July 14, 2005) ............................................... 16

*ASCII Corp. v. STD Entm't. USA, Inc.*,
  844 F. Supp. 1378 (N.D. Cal. 1994) .......................................................... 7

*Bausch & Lomb Inc. v. Alcon Labs., Inc.*,
  914 F. Supp. 951 (W.D.N.Y. 1996)............................................................. 14

*Broadcast Innovation, L.L.C. v. Charter Comms.*,
  2006 WL 1897165 (D. Colo. July 11, 2006) ............................................... 12

*CNS, Inc. v. Silver Eagle Labs, Inc.*,
  2004 WL 3631121 (D. Minn. Nov. 29, 2004) ............................................. 9, 12

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
  807 F.2d 955 (Fed. Cir. 1986)..................................................................... 12

*Cybor Corp. v. FAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998).................................................................. 10

*Digital Magnetic Sys., Inc. v. Amsley*,
  213 U.S.P.Q. 290 (W.D. Okla. 1982) ......................................................... 7, 9

*E.I. Du Pont de Nemours & Co. v. Cetus Corp.*,
  1990 WL 305551 (N.D. Cal. Dec. 3, 1990)................................................. 11

*Emhart Indus. v. Sankyo Seiki Mfg.*,
  3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) ........................................................... 8, 13

*Gioello Enters. v. Mattel, Inc.*,
  2001 WL 125340 (D. Del. Jan. 29, 2001)................................................... 13

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983)................................................................... 10

Page(s)

*GPAC, Inc. v. D.W.W. Enters., Inc.*,
144 F.R.D. 60 (D.N.J. 1992)................................................................................ 7, 12

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.*,
48 U.S.P.Q.2d (BNA) 1058 (C.D. Cal. 1998) .................................................. 7, 13

*Helifix Ltd. v. Blok-Lok, Ltd.*,
208 F.3d 1339 (Fed. Cir. 2000)............................................................................. 10

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)............................................................................. 15

*Loffland Bros. Co. v. Mid-Western Energy Corp.*,
1985 WL 1483 (W.D. Okla. Jan. 3, 1985) ............................................................ 13

*Lutron Elecs. Co. v. Genlyte Thomas Group, L.L.C.*,
2004 WL 953088 (E.D. Pa. April 30, 2004) ......................................................... 16

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*,
2004 WL 1968669 (S.D. Iowa Aug. 24, 2004)...................................................... 13

*Perricone v. Unimed Nutritional Servs., Inc.*,
2002 WL 31075868 (D. Conn. July 18, 2002) ....................................................... 9

*Softview Computer Prods. Corp. v. Haworth, Inc.*,
56 U.S.P.Q.2d (BNA) 1633 (S.D.N.Y. 2000)............................................... passim

*St. Clair Intellectual Property Consultants v. Sony Corp.*,
2003 WL 25283239 (D. Del. Jan. 30, 2003).......................................................... 15

*Tap Pharm. Products, Inc. v. Atrix Labs., Inc.*,
2004 WL 422697 (N.D. Ill. March 3, 2004) ........................................................... 7

*United Sweetener USA, Inc. v. Nutrasweet Co.*,
766 F. Supp. 212 (D. Del. 1991)............................................................................. 8

*Vitronics Corp. v. Conceptronic, Inc.*,
36 F. Supp. 2d 440 (D.N.H. 1997) ........................................................................ 10

## Statutes

35 U.S.C. § 101........................................................................................................... 1

35 U.S.C. § 102........................................................................................................... 1

35 U.S.C. § 103........................................................................................................... 1

35 U.S.C. § 112..................................................................................................... 1, 10

35 U.S.C. § 132........................................................................................................... 6

35 U.S.C. § 133........................................................................................................... 6

Page(s)

35 U.S.C. § 252 ................................................................................................ 15

35 U.S.C. § 303 .................................................................................................. 6

35 U.S.C. § 305 .................................................................................................. 6

35 U.S.C. § 307 ....................................................................................... 2, 6, 15

**Other Authorities**

MPEP § 2240 ..................................................................................................... 6

MPEP § 2271.01 ................................................................................................ 2

MPEP § 2272 ..................................................................................................... 2

MPEP § 2273 ..................................................................................................... 2

**Rules**

37 C.F.R. § 1.552 .............................................................................................. 6

## I.    NATURE AND STAGE OF LITIGATION

Plaintiffs (collectively, "Amgen") initiated this lawsuit, claiming that U.S. Patent No 6,410,516 (the "'516 patent") is invalid and that Amgen's products, Kineret® and Enbrel®, do not infringe the '516 patent.  Specifically, Amgen's invalidity claim alleges that each of the 203 claims of the '516 patent is invalid for, among other things, "failing to meet the requirements of" 35 U.S.C. §§ 102 and 103, which encompass whether an invention is anticipated or rendered obvious by prior art references.  (D.I. 1 at ¶ 20.) Amgen also alleges invalidity under 35 U.S.C. §§ 101 and/or 112, which together with sections 102 and 103 define the requirements for patentability.  Amgen's non-infringement claim alleges that it does not "directly or indirectly infringe any *valid* claim of the '516 patent through any activities related to the Enbrel® and/or Kineret® products." (emphasis added).  (*Id.* at ¶ 23.)

When Amgen filed suit, merged reexamination proceedings concerning the '516 patent were already pending in the Patent and Trademark Office ("PTO").  These proceedings were initiated by third parties who are not involved in the present litigation: Eli Lilly & Co. ("Lilly"), which is involved in separate litigation with ARIAD regarding the '516 patent ("the Lilly litigation"), and Bawa Biotechnology Consulting ("Bawa"), which has no connection to either the present litigation or the Lilly litigation.   In seeking reexamination of the '516 patent, both Lilly and Bawa argued that the '516 patent was anticipated or rendered obvious by numerous prior art references that had not previously been disclosed to the PTO.  The PTO granted Lilly's request for a reexamination on June 8, 2005, and granted Bawa's request for a reexamination on December 12, 2005, each time finding that the references cited by the requestors raised substantial new questions of patentability for the '516 patent.  (Exs. A, B.)[1]   After merging the two

---

[1] Citations to "Ex__" refer to exhibits to the Declaration Of Elizabeth L. Rosenblatt In Support Of ARIAD Pharmaceuticals, Inc.'s Motion To Stay Litigation Pending Conclusion Of Reexamination Proceedings In The Patent And Trademark Office ("Rosenblatt Decl."), filed concurrently herewith.

reexamination proceedings, the PTO undertook an evaluation of the patentability of all 203 claims of the '516 patent (Ex. C)—just as this Court must do in the present case.

On August 2, 2006, the PTO issued an Office Action in the merged reexamination proceeding. This Office Action contained a non-final rejection of 160 of the 203 claims on anticipation and obviousness grounds, and approved the patentability of the remaining 43 claims. (Ex. D.) The owners of the '516 patent—Harvard University, the Massachusetts Institute of Technology, and the Whitehead Institute for Biomedical Research (collectively, the "Institutions"), who have exclusively licensed the patent to ARIAD—filed a response to this Office Action on November 9, 2006. (Ex E.) This response canceled eight claims (rendering the reexamination moot with respect to those claims) and sought reconsideration with respect to the 152 remaining claims rejected by the PTO. (*Id.*) If the PTO intends to issue a further rejection of any of the remaining 152 claims, a patentability review conference will occur and the PTO will issue a final Office Action, after which the Institutions will be permitted to seek further reconsideration and/or amendment of any remaining rejected claims. MPEP §§ 2271.01, 2272. Depending on the PTO's determination, appeals may follow, *see* MPEP 2273 *et seq.*, or the PTO may issue a certificate identifying which claims are patentable in their original form, which are canceled, and which are amended. 35 U.S.C. § 307(a).

Amgen brought this suit in April 2006, four months before the PTO issued its Office Action. This case has progressed in parallel with the reexamination proceeding, although the reexamination is at a substantially more advanced stage than this litigation. Discovery has been stayed for the bulk of the present litigation, pending the adjudication of ARIAD's motion to dismiss for lack of subject matter jurisdiction (D.I. 13) and subsequent petition to the Federal Circuit for permission to appeal the denial of that motion (D.I. 110). Thus, the only discovery that has taken place has been the exchange of initial disclosures, some written discovery produced by ARIAD, and Lilly's production of ARIAD's documents from the Lilly litigation. (D.I. 37.) Given the lack of

activity in the case, it will not be possible for the parties to meet the current case deadlines.[2]  A new scheduling order will be required.

Also pending is ARIAD's motion to dismiss the present case for failure to name indispensable parties or, in the alternative, to transfer the case to the District of Massachusetts, where the Lilly litigation is pending.  This motion was scheduled to be heard on November 3, 2006, but was denied as moot when the Court granted ARIAD's motion for certification.  In light of the Federal Circuit's denial of the petition for permission to appeal, ARIAD has requested that the Court schedule a hearing for this motion.  (*See* D.I. 112).

## II.    SUMMARY OF ARGUMENTS

1.    ARIAD respectfully requests that the Court stay this litigation pending the outcome of reexamination proceedings involving the '516 patent.  Such stays are common in circumstances like the present one, when they would promote judicial economy, conserve party resources, and avoid duplicative or wasteful litigation.

2.    In the reexamination, the PTO is evaluating, at the request of third parties, whether each of the 203 claims of the '516 patent is anticipated or rendered obvious by a number of references that were not before the PTO during prosecution of the '516 patent.  This process has already resulted in the cancellation of eight claims and the non-final rejection of 152 claims that may ultimately be amended or invalidated.  At the same time, Amgen has asserted that each of the '516 patent's 203 claims is invalid for, among other things, anticipation and obviousness.  Amgen has also asserted that it does not infringe any "valid" claim of the '516 patent by engaging in activities relating to Enbrel® and Kineret®.  Because validity lies at the heart of this litigation, it would be efficient to stay this litigation while the PTO considers validity issues that will have an impact on—and may be wholly determinative of—the merits of this action.

---

[2] Fact discovery is scheduled to close on April 23, 2007, the claim construction hearing is scheduled to take place on September 7, 2007, and trial is scheduled to commence on February 4, 2008.  (*Id*.)

3.    Allowing the PTO to apply its specialized expertise prior to continued litigation has the potential to simplify issues dramatically.  During the stay, the PTO will have the opportunity to express its expert views on the issues of validity at stake in this case.  The experienced specialists at the PTO should have the opportunity to speak to these issues before the parties and the Court expend the substantial time and resources that will be required to navigate discovery, claim construction, motion practice, and trial.

4.    This is particularly true because the PTO can also allow the Institutions to narrow the scope of rejected claims to overcome challenges.  As a result, the reexamination may ultimately determine not only the number of claims in the patent, but also the scope of those claims.  It would make little sense for the parties to spend millions of dollars litigating the validity of patent claims that the PTO may amend or cancel during the reexamination procedure, or engaging in claim construction for claims that are later amended or rejected entirely.  Assuming the '516 patent survives the reexamination, a stay will permit the Court and parties to tailor discovery, expert reports, claim construction, summary judgment, and trial based on the outcome of the reexamination.  In contrast, in the absence of a stay, there is a risk of inconsistent rulings in the litigation and the reexamination, and any resources devoted to the obsolete claims will have been completely wasted.

5.    The burden of proceeding absent a stay is particularly grave for ARIAD, because unlike Amgen, ARIAD must be actively involved in both the present litigation and the reexamination.  Amgen, the second-largest pharmaceutical company in the world, is not a party to the reexamination and bears no responsibilities in connection with it.  ARIAD, on the other hand, is a small company, saddled with the parallel proceedings of reexamination and litigation—neither of which it sought out or initiated. Yet ARIAD's continued participation in these legal proceedings places a financial burden on ARIAD that diverts needed resources away from ARIAD's real mission: developing breakthrough cancer therapies, such as AP23573, ARIAD's treatment for bone and soft tissue sarcomas

that is on the threshold of final-phase clinical trials. These clinical trials are jeopardized by the prospect of continued parallel proceedings. By allowing experienced PTO examiners to rule on the patentability of the claims (and to consider any proposed amendments to the claims) in a proceeding that is considerably less costly than this litigation and is likely to conclude much earlier than this litigation, the Court can avoid serious prejudice to ARIAD.

6.      In contrast, a stay of litigation poses no threat of prejudice to Amgen, which may continue to sell Enbrel® and Kineret®, as it has done with great success since before the '516 patent issued in 2002. This case is still in its very early stages, and discovery has been stayed for much of its duration. Even if the case were to proceed on the current schedule, trial is still over a year away—and a stay will expedite the reexamination process, which is already near completion. Thus, the litigation efficiencies resulting from a stay will benefit both Amgen and ARIAD.

7.      Finally, this case differs dramatically from the Lilly litigation, in which ARIAD opposed Lilly's motion for a stay, which was made on the same day that Lilly filed its reexamination request, long before any decision by the PTO on whether to grant that request. There, as described in greater detail below, both the litigation and the reexamination stood in radically different postures from the present case: The Lilly case had progressed for several years to virtually the end of discovery, and the PTO had not decided whether a reexamination would even take place. Moreover, the Lilly case involved special circumstances not present here (in particular, Lilly's attempt to circumvent a discovery order). This case, in contrast, is an archetypal situation in which a stay should be granted pending reexamination: It is early in discovery and late in the reexamination procedure. Therefore, to conserve judicial resources and avoid wasteful duplication of effort, ARIAD respectfully requests that the Court enter a stay of this action until the conclusion of proceedings before the PTO.

III.    **THE REEXAMINATION PROCEDURE**

"Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art. . . ."  35 U.S.C. § 302.  The PTO may grant the request for reexamination if the cited prior art raises a "substantial new question of patentability" with respect to the subject patent.  35 U.S.C. § 303.

Once the PTO grants a petition for reexamination, the process of reexamination is "conducted according to the procedures established for initial examination under" 35 U.S.C. §§ 132–33.  *See also* 35 U.S.C. § 305.[3]  This means that the PTO reviews the '516 patent using the same procedures that apply to a new patent application, except that the PTO only considers the validity of claims of the '516 patent on the basis of prior art. 37 C.F.R. § 1.552.  As part of the reexamination process, "the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited . . . , or in response to a decision adverse to the patentability of a claim of a patent."  35 U.S.C. § 305. Following reexamination, and after the time for appeal has expired, the PTO will publish "a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable."  35 U.S.C. § 307 (a).

Reexamination of the '516 patent is being performed by the Central Reexamination Unit ("CRU"), which is a special unit of patent examiners with special expertise in patent reexamination.  (Exs. D, F.)  The CRU was established by the PTO in 2005 to enhance the quality and reduce the time of reexaminations so that reexamination could continue to be a "valuable, low-cost alternative to litigation for determining the

---

[3]    The grant of a reexamination petition is not a substantive decision that a patent is invalid, nor is it a conclusion that a *prima facie* case of invalidity exists.  Manual of Patent Examining Procedure § 2240, at 2200-49 (8th ed., Oct. 2005 Rev.) ("MPEP").  Instead, it is simply a decision that the petition presents a substantial new question of patentability.

patentability of the claims in an issued patent." (Ex. F.) When the CRU was created, the PTO announced that the CRU would complete all reexamination proceedings "within a specific time frame, which is expected to be less than two years." (*Id.*) Statistics from the PTO show that average pendency for a reexamination in 2006 was 22.9 months from filing to certificate. (Ex. G.) Lilly filed its reexamination request on April 4, 2005.

## IV.    ARGUMENT

### A.    Courts Apply A Liberal Policy In Favor Of Staying Litigation Pending Resolution Of Reexamination Proceedings

"Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts." *Digital Magnetic Sys., Inc. v. Amsley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982). In light of this legislative intent, the courts have developed "a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entm't. USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994). This is a wise policy, for in the absence of a stay, "the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination." *Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.*, 48 U.S.P.Q.2d (BNA) 1058, 1060 (C.D. Cal. 1998). This potential waste of judicial resources is not simply a theoretical matter: Approximately three-fourths of reexamined patents are either amended or invalidated by the PTO. (Ex. G.)

In addition to conserving judicial resources, a stay pending reexamination provides a number of other important benefits, including utilization of "the PTO's particular expertise in evaluating the prior art." *Alloc, Inc. v. Unilin Decor N.V.*, 2003 WL 21640372, at *2 (D. Del. July 11, 2003). This expertise can play an important role in cases such as this one that involve complex technical issues. *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992) ("The Court is equally impressed that the PTO may be in a better position to evaluate the validity of the '111 patent especially in

view of the prior art references. The requisite technical acumen is better represented in the PTO."). Moreover, reexamination ordinarily serves to clarify or narrow the issues in dispute and streamline the litigation. "If the reexamination proceeding invalidates or narrows a claim or claims, the issues at trial will be simplified. Similarly, if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d (BNA) 1633, 1636 (S.D.N.Y. 2000); *see also Alloc*, 2003 WL 21640372, at *2 ("[I]t is beyond dispute that the court would benefit from the narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation."). A stay will accomplish this narrowing without the danger of inconsistent rulings. *See United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991) ("proceeding with a parallel declaratory judgment action would add to—not subtract from—uncertainty, insecurity, and controversy . . . .").

A host of other efficiencies, including streamlining discovery, encouraging settlement, simplifying trial, and limiting litigation costs, also accompany stays pending reexamination. *See Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (describing efficiencies and granting stay despite moving party's delay in seeking reexamination). These benefits are especially important to ARIAD, a small but promising biotechnology company with a drug poised to begin Phase 3 clinical trials for the treatment of soft tissue and bone sarcomas. (Berger Decl., D.I 108 at ¶¶ 5-7.) As discussed in greater detail in ARIAD's motion to stay pending appeal, the present litigation places ARIAD in a difficult financial situation and diverts money from ARIAD's clinical and development programs. (D.I. 107; Berger Decl., D.I. 108 at ¶¶ 10-13.) This situation is exacerbated by the existence of the parallel, and potentially inconsistent, reexamination proceeding, which ARIAD also did not seek out or initiate.

- 8 -

Given the obvious benefits of a stay pending the conclusion of reexamination proceedings, such stays are "routinely ordered, particularly where discovery has not progressed passed the early stages." *CNS, Inc. v. Silver Eagle Labs, Inc.*, 2004 WL 3631121 (D. Minn. Nov. 29, 2004). A review of the cases reveals that, "[m]ost often, a request for a stay has been denied due to the late stage of the litigation, the fact that discovery was or would be completed, or trial had been set." *Perricone v. Unimed Nutritional Servs., Inc.*, 2002 WL 31075868, *3 (D. Conn. July 18, 2002) (granting stay in case when discovery was in early stages, as distinct from cases in which "protracted and expansive discovery had been expended and trial was imminent"). On the other hand, "in cases such as that before this Court which have not progressed beyond the initial litigation stages . . . the reexamination procedure should be utilized." *Digital Magnetic Sys.*, 213 U.S.P.Q. at 290.

**B.    This Court Should Exercise Its Discretion To Stay This Litigation Until The Conclusion Of Reexamination Proceedings**

In determining whether to grant a stay of litigation pending the conclusion of reexamination proceedings, courts have looked to three factors. One factor requires the court to decide "whether a stay will simplify the issues in question and trial of the case." *Softview*, 56 U.S.P.Q.2d at 1635-36. Another important consideration is the stage of the litigation, including "whether discovery is complete." *Id.* Finally, the court should look to "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Id.* All of these factors strongly favor granting a stay of this litigation.

**1.    A Stay Will Permit The PTO To Simplify The Underlying Issues In The Action**

Because the process of reexamination often covers the same issues that are before a court in a patent validity action, this first factor in the stay analysis is rooted in basic logic: Where reexamination may streamline or even eliminate the central issues before the court, there is no sense in litigating the same matters prior to a decision by the PTO.

*See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (the "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)"). This factor strongly supports the granting of a stay.

The meaning of the claims in the '516 patent will be a fundamental issue in this case. Amgen's invalidity allegations will turn on the interpretation of the patent claims. *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("The first step in any invalidity analysis is claim construction . . .").[4] Similarly, Amgen's claim for a declaration of non-infringement also necessarily turns upon the interpretation of the '516 patent. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) ("An infringement analysis involves two steps. First, the court determines the scope and meaning of the patent claims asserted . . ."). Given that claim interpretation will play a central role in this litigation, it makes no sense to proceed with the case when it is entirely possible that some or even all of the claims of the patent may be amended as a result of reexamination.[5] *E.g.*, *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997) ("The reexamination process could more precisely define the scope of claim 1, or it could leave claim 1 unchanged. Because determining the scope of the disputed claim is central to the resolution of this case, it would be inefficient for the court to expend time and resources engaging in claim construction while the scope of the claim is under review at the PTO.").

---

[4] *See also, e.g., AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1241 (Fed. Cir. 2003) ("an enablement [35 U.S.C. § 112 validity] inquiry typically begins with a construction of the claims"); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) ("The first step of an anticipation analysis is claim construction.").

[5] In the August 2, 2006 Office Action, the PTO made a non-final determination that 43 of the claims of the '516 patent were patentable as issued. (Ex. D.) This determination reduces the probability, but does not eliminate the possibility, that these 43 claims will be amended or rejected or that the patent will be invalidated as a whole. Moreover, many of the claims identified as patentable are dependent upon or share claim terms with claims that were preliminarily rejected, such that their interpretation may be influenced by amendments made in the reexamination.

Moreover, while ARIAD has every confidence that the PTO will reaffirm the validity of the remaining disputed claims of the '516 patent during the reexamination proceedings, ARIAD recognizes that the PTO has already issued an initial Office Action rejecting nearly 80% of the claims of the '516 patent. The '516 patent that emerges from reexamination may be a much-narrowed version of the patent that originally issued. It would be a tremendous waste of time and effort for the parties and the Court to continue the litigation of this action, only to have the PTO issue a final Office Action invalidating some or all of the patent at the end of the day. *See Softview*, 56 U.S.P.Q.2d at 1636 ("if the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims at issue here are invalid, the Court will have wasted time and the parties will have spent additional funds addressing an invalid claim or claims."); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 2004 WL 422697, *2 (N.D. Ill. March 3, 2004) ("There is a significant chance that the PTO will either invalidate this patent or drastically reduce its scope. This creates a very real possibility that the parties will waste their resources litigating over issues that will ultimately be rendered moot by the PTO's findings."). Moreover, any narrowing of the issues (whether through the rejection or amendment of claims in the reexamination) will have an impact throughout the case, including discovery, expert reports, claim construction, summary judgment, and trial. The parties and the Court will benefit from any opportunity to streamline such processes.

In short, the PTO will have an opportunity to consider and opine on issues that will bear on every claim in this litigation. The Court and the parties will benefit from the expert view of the PTO on these issues. *E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, 1990 WL 305551, *4 (N.D. Cal. Dec. 3, 1990) ("The court therefore regards the PTO's reexamination findings of validity for all claims . . . as highly probative on the issues considered and with respect to the prior art considered during reexamination. It thus views plaintiff's burden of proving invalidity as heavier than it would have been in the

absence of the reexamination.") (citations omitted); *see also Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc*., 807 F.2d 955, 961 (Fed. Cir. 1986) (reversing a district court's judgment of invalidity because, *inter alia*, the district court failed "to give any credence to the PTO reexamination proceeding, which upheld the validity of [the relevant] claims").

### 2.    A Stay Is Warranted Since The Action Is In Its Early Stages

Another important consideration on a motion to stay pending reexamination is the relative progression of the litigation itself.  *See, e.g. Softview*, 56 U.S.P.Q.2d at 1636 (granting stay where "although there has been a great deal of activity in this litigation to date, much remains to be done before the case is ready for trial.  Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the *Markman* hearing has not been held and the Pretrial Order has not yet been prepared."); *Broadcast Innovation, L.L.C. v. Charter Comms.*, 2006 WL 1897165, at *8-9 (D. Colo. July 11, 2006) (marshaling cases in which stays were granted in close proximity to trial date and explaining rule that courts also consider the status of summary judgment motions, pretrial orders, and other matters regarding readiness for trial); *GPAC*, 144 F.R.D. at 64–65 (stay appropriate given "relative infancy" of case after 16 months of litigation, including discovery, when additional discovery was required and case was "far from resolution at this juncture").

Where, as here, discovery has only just begun and trial is scheduled to occur in the distant future, a motion to stay should be granted.  *See, e.g. Abbott Diabetes Care, Inc. v. DexCom, Inc.*, 2006 WL 2375035, at *6 (D. Del. Aug. 6, 2006) (factor "weighs in favor of granting the motion" for stay when fact discovery was not complete and trial was scheduled for 14 months away); *CNS, Inc. v. Silver Eagle Labs, Inc.*, 2004 WL 3631121 (D. Minn. Nov. 29, 2004) (staying litigation when discovery had "not progressed past the early stages. . . . the parties have exchanged written discovery, but have not yet taken depositions," noting that "the bulk of the discovery will be sought or pursued after, and

with the benefit of, the reexamination"). This is because the PTO's conclusion is likely to shape the future of this still largely undeveloped litigation. *See Guthy-Renker*, 48 U.S.P.Q.2d at 1060-61 (holding that the "relevant factors weigh heavily in favor of staying the proceedings pending the conclusion of the reexamination" because, among other things, "this case is in its incipient stages" after months of motion practice but no "expensive discovery").

In fact, even where the litigation has progressed significantly, it is not uncommon for a court to grant a stay to avoid the waste of conducting a trial while the PTO considers the validity of the patent-in-suit. *See, e.g.*, *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 2004 WL 1968669, at *5 (S.D. Iowa Aug. 24, 2004) (granting stay eight years after start of litigation when discovery was complete, summary judgment motions were fully briefed, trial scheduled to occur in less than two months, and parties were "most likely well into their trial preparation"); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 1985 WL 1483, *2 (W.D. Okla. Jan. 3, 1985) (granting stay after considerable discovery and pre-trial conference); *Gioello Enters. v. Mattel, Inc.*, 2001 WL 125340 (D. Del. Jan. 29, 2001) (granting stay 18 months into litigation, when summary judgment motions had been filed and trial was scheduled for less than three months away); *Emhart*, 3 U.S.P.Q.2d at 1892 (granting stay 18 months into litigation, after significant discovery had occurred).

Amgen cannot dispute that very little discovery has occurred in this action and that the case is very far from being ready for trial. Other than the parties' exchange of initial disclosures, ARIAD's written responses to a single set of interrogatories and requests for production of documents, and third-party Lilly's subpoenaed production of ARIAD documents from an earlier litigation, there has been no substantive discovery in the case. (Rosenblatt Decl. at ¶¶ 3-4.) In fact, discovery has been stayed for the bulk of the litigation. (Rosenblatt Decl. ¶¶ 2-3.) No expert discovery, claim construction, dispositive motion practice, pretrial practice, or trial preparation has taken place. Thus,

like the first factor, this second factor in the stay analysis firmly supports granting this motion to stay all proceedings until the PTO has rendered a final decision on the reexamination of the '516 patent.

### 3.    Amgen Will Not Suffer Any Prejudice Or Clear Tactical Disadvantage From A Stay

The final consideration in deciding a motion to stay pending reexamination is whether the non-moving party would suffer undue prejudice or a clear tactical disadvantage if the stay were granted. *Softview*, 56 U.S.P.Q.2d at 1635-36; *Abbott Diabetes Care,* 2006 WL 2375035, at *5 (noting that test concerns not mere prejudice, but *undue* prejudice). As discussed below, Amgen faces no such risk.

A stay will not impair Amgen's ability to continue selling its successful Enbrel® and Kineret® products, as it has done, unimpaired, since before the '516 patent issued four and a half years ago. Nor will a stay increase Amgen's financial exposure in this lawsuit. If ARIAD prevails in the litigation, the date of judgment is irrelevant because the '516 patent will remain in force until 2019.

Nor will a stay create a clear tactical disadvantage for Amgen. Quite to the contrary, a stay at this stage would protect Amgen in the event any infringement claims are asserted. This is because Amgen would be liable for an award of damages even if the PTO later determined that the '516 patent is invalid. *See Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 952 (W.D.N.Y. 1996) ("If this Court finds that [the patent] is not invalid and that Alcon has infringed it, and orders Alcon to pay damages to B&L for such infringement, then Alcon would have no ability to recover those damages if at a later date the PTO determined that the . . . patent is invalid"). Moreover, Amgen will benefit from the efficiencies of a stay, because Amgen will not have to squander resources litigating the moving target of claim construction and other issues that may be modified or mooted by the PTO.

Furthermore, a stay would benefit Amgen because its potential infringement liability (if any) may be limited if the claims of the '516 patent are amended as a result of the reexamination process. Under the continuity doctrine, if an amended claim of a reexamined patent is not "substantially identical" to an original claim of that patent, then the patent holder cannot seek damages for any infringement of the amended claim that occurred before the date on which the patent emerged from reexamination. 35 U.S.C. § 252 ("the reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent."); 35 U.S.C. § 307 (applying 35 U.S.C. § 252 to reexamination proceedings). Accordingly, any potential infringement liability could be significantly reduced if the '516 patent substantially changes as a result of reexamination. *See Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) ("If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate.").

### C.    This Case Is Different From The Lilly Litigation

Lilly sought a stay three years into its litigation with ARIAD—and on the same day that Lilly filed its request for reexamination of the '516 patent. In that case, ARIAD successfully opposed Lilly's request for a stay. The present case is entirely different from that one for several reasons.

First, the cases stand in very different postures. As discussed above, the status of the pending litigation is a major factor in whether to grant a stay pending reexamination. The rare cases in which stays are denied—like the Lilly case—are typically cases in which litigation has been progressing for multiple years, discovery is well developed or closed, and trial is imminent (although even in such cases, as demonstrated above, stays are still frequently granted). *See, e.g. St. Clair Intellectual Property Consultants v. Sony Corp.*, 2003 WL 25283239, at *1-2 (D. Del. Jan. 30, 2003) (denying stay pending reexamination when discovery was complete and trial was only weeks away). In such

cases, a stay is more likely to be prejudicial or highly disruptive, as it would have been in the Lilly litigation. Here, in contrast, discovery is barely underway, and trial is set for more than a year from now.

Second, Lilly's request for a stay pending reexamination was part of a particular litigation strategy that involved withholding prior art references in discovery and then seeking to assert them at a later stage in the case. When the court in the Lilly litigation issued an order limiting Lilly to the prior art it disclosed in discovery, Lilly sought to circumvent the order by filing its reexamination request based in part on the withheld references while simultaneously seeking a stay based on that reexamination request. Here, in contrast, ARIAD did not seek reexamination at all. In fact, ARIAD would rather not have had its patents challenged in reexamination. But since the reexamination has been in progress for over a year and a half and is nearing completion, judicial and party economy dictate that a stay is appropriate.

Third, the reexamination has progressed to a different stage now than it had when Lilly sought its stay. Lilly moved to stay the litigation on the same day that it filed its reexamination request. Lilly thus sought a stay based not on a pending reexamination, but on speculation that reexamination of the '516 patent *might* take place, and that such a reexamination *might* have an impact on the validity or scope of some or all of the claims of the patent. Because of the uncertainty involved in such situations, courts will commonly consider whether the PTO has granted a request for reexamination in determining whether or not to grant a stay. *See, e.g. Lutron Elecs. Co. v. Genlyte Thomas Group, L.L.C.*, 2004 WL 953088 (E.D. Pa. April 30, 2004) (granting stay after reexamination declared, after having denied stay based solely on application for reexamination); *Applied Materials, Inc. v. Negevtech, Inc.*, 2005 WL 1656894 (N.D. Cal.

July 14, 2005) (denying stay based on reexamination request without prejudice to renew stay motion if PTO grants reexamination).[6]

## V.    CONCLUSION

To prevent duplicative litigation and potentially wasteful efforts by all parties and the Court, ARIAD respectfully requests that this Court grant its motion to stay all proceedings in this litigation pending the outcome of the reexamination of the '516 patent.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated:  January 23, 2007
177066.1

---

[6] *See also Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069 (N.D. Cal. Dec. 14, 2006) (granting stay after PTO issued its first office action, even though stay was denied when sought at an earlier stage of the reexamination proceeding).