IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANU-FACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C. A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC. | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Melanie K. Sharp, Esquire, Young, Conaway, Stargatt & Taylor, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391.
    Of Counsel: Mark A. Pals, Esquire, Marcus E. Sernel, Esquire, Chicago, IL,
    Robert G. Krupka, Esquire, Drew Diamond, Esquire, Los Angeles, CA.
Counsel for Plaintiffs Amgen Inc., Immunex Corporation, Amgen USA, and Immunex Rhode Island Corp.

John G. Day, Esquire, Steven J. Balick, Esquire, and Tiffany Geyer Lydon, Esquire, Ashby & Geddes, 500 Delaware Avenue, 8th Floor, P.O. Box 1150, Wilmington, DE 19899.
    Of Counsel: Morgan Chu, Esquire, David I. Gindler, Esquire, Elizabeth L.
    Rosenblatt, Esquire, Irell & Manella, LLP, Los Angeles, CA.
Counsel for Defendant Ariad Pharmaceuticals Inc.

March 27, 2007



**Thynge, U.S. Magistrate Judge**

## I.    Introduction

On April 20, 2006, Amgen Inc. and related entities (collectively "Amgen") filed a declaratory judgment action asserting that each claim of U.S. Patent No. 6,410,516 ("'516 patent") is invalid.  The '516 patent is owned by the Massachusetts Institute of Technology ("MIT"), the Whitehead Institute for Biomedical Research ("Whitehead"), and the President and Fellows of Harvard College ("Harvard") (collectively, "Institutions").[1]  ARIAD Pharmaceuticals, Inc. ("ARIAD") is the exclusive licensee[2] of the '516 patent and is the sole defendant in this action.

## II.    Procedural History

On June 14, 2006, ARIAD filed a motion to dismiss for lack of subject matter jurisdiction.[3]  The court conducted a hearing and denied ARIAD's motion without prejudice in a ruling from the bench.[4]  ARIAD promptly filed a motion for certification to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") pursuant to 28 U.S.C. § 1292(b) on September 26, 2006.[5]  The motion was granted on November 14, 2006,[6] and the appellate court subsequently denied ARIAD's petition for permission

---

[1] D.I. 87 Ex. A (Declaration of Elizabeth L. Rosenblatt In Support of Ariad Pharmaceuticals, Inc.'s Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, In the Alternative, To Transfer Pursuant to 28 U.S.C. § 1404(a)).

[2] D.I. 87 Ex. E (Exclusive agreement between the Massachusetts Institute of Technology, Whitehead Institute and Ariad Pharmaceuticals, signed August 19, 1991, herein referred to as the "License Agreement" or the "Agreement").

[3] D.I. 15.

[4] D.I. 70 at 82-83.  Judge Jordan conducted the September 11, 2006 hearing.  His ruling was formalized in an order issued on September 13, 2006.

[5] D.I. 74.

[6] D.I. 104.

to appeal on December 29, 2006.

On October 5, 2006, ARIAD filed a renewed motion to dismiss for failure to name necessary and indispensable parties or, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a).[7] In its opening brief, ARIAD contends that Amgen failed to sue the three institutional owners - MIT, Whitehead, and Harvard - of the '516 patent who exclusively license the patent to ARIAD.[8] ARIAD maintains that because the institutions retain substantial rights in the patent, they are indispensable parties pursuant to Federal Rule of Civil Procedure 19 ("Rule 19") and dismissal is required. In the alternative, ARIAD argues that transfer of the case to the United States District Court for the District of Massachusetts pursuant to 29 U.S.C. § 1404(a) is proper because of convenience of the parties and to avoid future disputes regarding personal jurisdiction.

On October 23, 2006, Amgen filed its opposition to ARIAD's renewed motion to dismiss, in which it contends that ARIAD has all substantial rights in the '516 patent, and thus, has the right to defend the '516 patent in a declaratory judgment action.[9] Amgen also argues that the Institutions are not indispensable parties because their interests are adequately represented by ARIAD: however, if they are necessary and indispensable, the Institutions are subject to personal jurisdiction in Delaware because

---

[7] D.I. 83 (ARIAD's Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, In the Alternative, To Transfer Pursuant to 28 U.S.C. § 1404(a)).

[8] D.I. 84 (Defendant ARIAD Pharmaceuticals, Inc.'s Opening Memorandum of Law in Support of its Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, In the Alternative, To Transfer Pursuant to 28 U.S.C. § 1404(a)).

[9] D.I. 95 (Plaintiffs' Memorandum in Opposition to ARIAD Pharmaceuticals, Inc.'s Renewed Motion to Dismiss for Failure to Name Necessary and Indispensable Parties or, In the Alternative, To Transfer Pursuant to 28 U.S.C. § 1404(a)).

indispensable, the Institutions are subject to personal jurisdiction in Delaware because they consented to be joined in litigation in any forum where ARIAD brings suit. Amgen contends that ARIAD's motion to transfer to the District of Massachusetts should be denied because the action is properly brought in Delaware.

On January 2, 2007, Amgen sought an order requiring ARIAD to file amended pleadings by January 12, 2007. On January 3, 2007, ARIAD asked to deny Amgen's request for the required pleadings, seeking first to obtain a opinion from the court on its renewed motion to dismiss.[10] On January 10, 2007, Amgen requested that ARIAD's veiled attempts to reargue its motion be denied. Following their initial dueling letters to the court, ARIAD submitted a letter purportedly resolving a "critical issue" relating to the pending renewed motion to dismiss. The letter cited a recent Federal Circuit decision, *Propat Int'l Corp. v. Rpost, Inc.*[11] Amgen replied that the *Propat* case merely applied well-settled legal principles which do not negate Judge Jordan's previous ruling on jurisdiction. On January 23, 2007, ARIAD filed a motion to stay the action pending completion of the PTO's re-examination of the '516 patent.[12] The court denied the motion without prejudice.[13]

## III.    Positions of the Parties

In its renewed motion, ARIAD contends that Amgen's failure to name the Institutions as parties warrants dismissal of the case, because it does not possess all

---

[10] D.I. 83.

[11] 473 F.3d 1187 (Fed. Cir. 2007).

[12] D.I. 131 (filed Jan. 23, 2007).

[13] D.I. 143 (Jan. 26, 2007).

3

substantial rights in the '516 patent, and therefore the Institutions must be joined as necessary and indispensable parties under Rule 19.[14]  ARIAD argues that the Institutions exclusively licensed only certain rights in the patent.  On this point, ARIAD contends that it does not have all substantial rights in the '516 patent because its right to sue for infringement is not exclusive, and it has no right to indulge infringement.  In addition, it argues that the Institutions have veto power over its ability to sublicense the patent.  ARIAD contends the Institutions have the right to enter into and control litigation.  Finally, ARIAD argues that dismissal is proper because the Institutions would be bound by litigation to which they are not parties.  Thus, ARIAD maintains that the lack of substantial rights prevents a declaratory action against it without the Institutions as parties.  In the alternative, ARIAD requests the matter be transferred pursuant to 28 U.S.C. § 1404(a) to the District of Massachusetts to eliminate any dispute regarding personal jurisdiction over the Institutions, and to conserve resources because the Massachusetts court is familiar with the prosecution history of the '516 patent.[15]  Finally, ARIAD claims that Amgen's decision to file suit in Delaware is nothing more than "forum shopping" because neither party has operations in Delaware.

Amgen argues that ARIAD's motion should be denied since the court previously determined that the Institutions granted all substantial rights in the '516 patent to ARIAD.[16]  Amgen contends that, even if the Institutions have a residual right to sue,

---

[14] D.I. 84.

[15] ARIAD and the Institutions are in litigation with Eli Lilly in the District of Massachusetts regarding infringement of the '516 patent.

[16] D.I. 95.

4

ARIAD has the right to make the initial determination with respect to litigation, to grant sublicenses and to enforce the patent. Therefore, it suggests that ARIAD has standing to defend a declaratory judgment action alone. Moreover, Amgen claims that if the Institutions are necessary parties, they are not indispensable parties under Rule 19(b) because their interests are adequately protected with ARIAD being the "sole representative in a DJ action."[17] Amgen notes that under the License Agreement the Institutions authorize ARIAD to represent their interests in such actions; ARIAD and the Institutions share counsel in all proceedings relating to the '516 patent; and each party shares a common financial interest in maintaining the validity of the patent.[18] Amgen also contends that should the court find that the Institutions are necessary and indispensable parties, they are subject to personal jurisdiction in Delaware under the License Agreement, wherein they consent to be joined in litigation in any forum. Amgen further maintains that an action in Delaware is proper because Amgen and ARIAD are both Delaware corporations and the heavy presumption in favor of a plaintiff's choice of forum is not overcome by the convenience of the parties and location of documents and witnesses.

---

[17] D.I. 95 at 9. Amgen also points to Section 7.5 of the License Agreement, which states in relevant part, "[i]n the event that a declaratory judgment action alleging invalidity or noninfringement of any of the Patent Rights shall be brought against LICENSEE, M.I.T. (or Whitehead), at its option, shall have the right, within thirty (30) days after commencement of such action, to intervene and take over the sole defense of the action at its own expense," as evidence of the Institutions' intent to transfer all substantial rights to ARIAD and to have ARIAD defend the patent. *Id.* at 13.

[18] D.I. 87 at 16.

5

**IV.    Analysis:**

**Necessary Parties Under Rule 19(a)**

ARIAD contends that Amgen's declaratory judgment action must be dismissed in

the absence of the Institutions because they are necessary parties and the License

Agreement is not an assignment for the purpose of standing.  The court finds that the

Institutions are necessary for standing in light of the License Agreement with ARIAD.

Federal Rule of Civil Procedure 19 controls whether or not a lawsuit requires

dismissal due to a lack of joinder of necessary parties.  "If a party is deemed necessary

under Rule 19(a), but cannot be joined because it is not subject to process, then the

court must consider, by application of Rule 19(b), whether the party is indispensable

and dismissal is appropriate."[19]  According to Rule 19(a), a party is necessary if:

> the person claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's absence may (i)
> as a practical matter impair or impede the person's ability to protect that
> interest or (ii) leave any of the persons already parties subject to a
> substantial risk of incurring double, multiple, or otherwise inconsistent
> obligations by reason of the claimed interest.[20]

Because the Institutions have substantial interests in the patent-in-suit, they are

necessary parties under Rule 19(a).  The Federal Circuit has addressed the issue of

standing with reasonable clarity.  The Patent Act allows a patentee to assert its patent

rights through a claim of infringement.[21]  The Act describes a "patentee" to include "all

---

[19] *Erbamont Inc. v. Cetus Corp.,* 720 F. Supp. 387, 393 (D. Del. 1989) (citing *Field v. Volkswagenwerk AG,* 626 F.2d 293, 300 (3d Cir. 1980)).

[20] Fed. R. Civ. P. 19(a).

[21] 35 U.S.C. §281.

6

successors in title" to that patentee.[22]  Section 100(d) requires "that a suit for infringement of patent rights ordinarily be brought by a party holding legal title to the patent."[23]  Therefore, a mere licensee, who has the right to sue through a license, may not maintain a lawsuit without the patentee.[24]  "The patentee may effect a transfer of ownership for standing purposes if it conveys *all* substantial rights in the patent to the transferee."[25]  The Federal Circuit defines "all substantial rights" as "those rights sufficient for the licensee or assignee to be 'deemed the effective patentee under 35 U.S.C. § 281.'"[26]  Upon complete transfer, the transferee is considered the patent owner with standing to sue in its own name.[27]

The *Propat* court highlights several factors to consider when analyzing if a party has *all* substantial rights to pursue an infringement action without the patent owner. *Propat* suggests analyzing the parties' licensing agreement and their respective ownership, control and economic rights.  In *Propat*, the agreement provided the exclusive right to sue for infringement, but did not assign the right to license or to make, use or sell the licensed products.  The court, therefore, concluded that substantial ownership rights were not transferred.  In the present matter, the Institutions are owners

---

[22] *See Propat Int'l Corp. v. Rpost, Inc.,* 473 F.3d 1187, 1189 (Fed. Cir. 2007) (citing 35 U.S.C. § 100(d)).

[23] *Id.*

[24] *See Abbott Labs. v. Diamedix Corp.,* 47 F.3d 1128, 1132 (Fed. Cir. 1999).

[25] *Propat,* 473 F.3d at 1188 (emphasis added).

[26] *Sicom Systems Ltd. v. Agilent Technologies, Inc.,* 427 F.3d 971, 976 (Fed. Cir. 2005).

[27] *See Id.*

of rights in the '516 patent.[28]  The License Agreement provides ARIAD an exclusive

license with the "right and license to make, have made, use, lease and sell licensed

products and to practice licensed products to the end of the term."[29]  But, the right to

practice, use and distribute tangible patented property for noncommercial research

purposes is reserved by the Institutions.[30]  ARIAD has the right to enter into

sublicenses, however, it may not receive anything of value in lieu of cash for such

licenses without the expressed prior permission of the Institutions.  In addition, ARIAD

may not assign its rights without the prior written consent of the Institutions.  Finally, the

exclusive rights under the License Agreement are subject to further limitations,

including forfeiture.[31]  The ability of the Institutions to terminate the Agreement or make

it non-exclusive is further evidence that they retain significant ownership interests in the

patent.

    Maintenance of the patent is indicative of ownership and the Institutions have

primary responsibility for prosecution, filing and maintenance.  Under the License

Agreement, ARIAD may advise the Institutions on prosecution, and has joined them in

re-examination proceedings before the USPTO.  Unlike *Propat*, where a bare licensee

was never provided the exclusive right to make and use the patent, ARIAD possesses

---

[28] See License Agreement Preamble.

[29] License Agreement Section 2.1.

[30] License Agreement Section 2.7.

[31] The Institutions reserve the right to grant a sublicense if ARIAD fails to do so within six months of a request from a suitable sublicensee.  In addition, ARIAD's failure to pay the license maintenance fees renders the Agreement non-exclusive.  See License Agreement Section 3.2(d) and License Agreement Second Amendment Section 2.3.

8

those rights, and others, *sharing* certain substantive rights with the Institutions.

The *Propat* court found that a patentee's right to veto licensing and litigation decisions constituted a significant restriction on the licensee's interest in the patent.[32] Here, ARIAD has the right, but is not obligated, to prosecute infringement and may include the Institutions as plaintiffs in such actions. Any settlement, consent judgment, or other voluntary final disposition of a suit, however, *requires* consent of the Institutions.[33] Further, the Institutions have the right to intervene in any litigation by taking over sole prosecution or defense after six months, or upon ARIAD's failure to defend a declaratory judgment action alleging invalidity or non-infringement.

*Propat* determined that the retention of substantial proceeds from licensing and sublicensing is consistent with the retention of ownership rights in the patent.[34] In the present action, ARIAD pays the Institutions royalties on its sales and a per year license maintenance fee. Royalties are also due on sales generated by a sublicensee and a percentage of any fee paid to ARIAD by the sublicensee is paid to the Institutions. Retention of a substantial share of the proceeds is consistent with the Institutions retaining ownership rights in the patent.[35]

In *Sicom Systems Ltd. v. Agilent Technologies, Inc.*, the Federal Circuit did an

---

[32] *See Propat,* 473 F.3d at 1191.

[33] *Cf. Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (noting that where the exclusive licensee had complete effective control over litigation decisions and patentee could not veto licensee's decisions, the agreement between the patentee and licensee was a transfer of all substantial rights).

[34] *See Propat,* 473 F.3d at 1191.

[35] *Id.*

9

extensive analysis of five prior opinions which reviewed agreements that transfer all, or fewer than all, substantial patent rights.[36]  In four of the five cases, it found that limitations on the assignment of ownership and litigation rights prevented the licensee to sue on its own behalf.  In the remaining matter, where a patentee retained a reversionary right, only in the event of bankruptcy or "termination of production," did the court determine that *all* ownership rights were transferred.[37]  Similar to the facts in *Sicom*, the Institutions retain sufficient ownership and control "all substantial rights" in the patent that are not transferred to ARIAD.[38]  The License Agreement did not transfer ownership to ARIAD for standing purposes, and therefore, the Institutions are necessary parties under Rule 19(a).

**Indispensable Parties Under Rule 19(b)**

Concluding that the Institutions are necessary parties, the court must determine whether the action can proceed in their absence, which requires an analysis of the four factors under Rule 19(b).  ARIAD argues that Amgen's motion must be dismissed because both Harvard and MIT are outside of the personal jurisdiction of the court, and are therefore, indispensable parties.  ARIAD contends that the analysis should end at FRCP 19(a), because Amgen's purported refusal to join necessary parties requires dismissal.  ARIAD's conclusion is incorrect, because an action "brought by the exclusive

---

[36] 427 F.3d 971 (Fed. Cir. 2005).

[37] *See Vaupel Textilmaschinen KG v. Meccanica,* 944 F.2d 870, 875 (Fed. Cir. 1991).  In *Vaupel*, control of the right to sue for infringement was only subject to the obligation to inform the patentee.

[38] *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 393 (D. Del. 1987) ("the court declines to definitely label" the License Agreement between ARIAD and the Institutions as a license or an assignment since the Agreement falls someplace in the continuum of "these two extremes.").

10

licensee alone can be maintained as long as the licensee joins the patent owner in the course of the litigation."[39]  Although the instant matter is a declaratory judgment action in which ARIAD is the "defendant," it has not answered the complaint and it is presently unknown what its allegations of infringement are.  The court, however, previously found that a case and controversy exists in light of ARIAD's assertions of infringement to Amgen prior to the filing of this action.

Under Rule 19(b), an action may require dismissal if necessary parties are determined to be indispensable.  As a general rule, "a patent owner should be joined, either voluntarily or involuntarily, in any patent infringement suit brought by an exclusive licensee having fewer than all substantial patent rights."[40]  *Independent Wireless Telegraph. Co. v. Radio Corporation of America*, is particularly on point.[41]  There, the United States Supreme Court explains why a patentee has an obligation, either expressed or implied, to join its licensee:

> It seems clear, then, on principle and authority, that the owner of a patent, who grants to another the exclusive right to make, use, or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to his exclusive right by an infringer, or to enjoin infringement of it. Such exclusive licenses frequently contain express covenants by the patent owner and licensor to sue infringers, that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But, without such express covenants, the implied obligation of the licensor

---

[39] *Propat,* 473 F.3d at 1193 *(see also Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.,* 52 F.3d 1026, 1030 (Fed. Cir. 1995)).

[40] *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1347 (Fed. Cir. 2001) (citing *Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1377 (Fed. Cir. 2000)).

[41] 269 U.S. 459 (1926).

11

> to allow the use of his name is indispensable to the enjoyment by the licensee of the monopoly which by personal contract the licensor has given.[42]

The well-established principles of *Independent Wireless* support the Federal Circuit's conclusion that joinder of a patent owner "is required as a matter of statutory standing" and should be so ordered.[43]  In *Abbot Labs*, the court decided against dismissal specifically on its power to make the patentee an involuntary plaintiff in an action involving its licensee.

> That is not to say that if a patentee . . . declines to participate, the action cannot go forward.  A patentee that does not voluntarily join an action prosecuted by its exclusive licensee can be joined as a defendant or, in a proper case, made an involuntary plaintiff if it is not subject to service of process.[44]

The analysis of whether a party is indispensable under Rule 19(b) is conducted by applying Third Circuit law,[45] which involves deciding "whether in equity and good conscience the action should proceed among the parties before [the court]."[46]  "The four factors listed in Rule 19(b) are not exhaustive, but they are the most important considerations in deciding whether to dismiss the action."[47]  When a party is deemed

---

[42] *Id.* at 469.

[43] *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995).

[44] *Id.* at 1133.

[45] *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed.Cir.1998) ("Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law . . . .").

[46] *Id.* at 1272.

[47] *Gardiner v. Virgin Islands Water & Power Authority*, 145 F.3d 635, 640 (3d. Cir. 1998) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1608 at 91 (2d Ed.1986)).  Rule 19(b) identifies four factors to consider when a necessary party is indispensable: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in

necessary under FRCP 19(a) and not subject to process, "[t]he choice between dismissal and continuation turns on a balancing of the interests of the plaintiff, defendants and the patent owner."[48]  ARIAD bears the burden of persuasion for dismissal under Rule 19(b) factors.[49]

The first and second factors are "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties" and to what extent the prejudice can be avoided.[50]  ARIAD argues that it does not have a "perfect identity of interests" with the Institutions, and the chance of prejudice exists because their interests may not align with respect to settlement.[51]  ARIAD generally concludes that if the Institutions are involuntarily joined "the risk of divergence of interest is much greater,"[52] but fails to identify a specific potential conflict.[53]  In *Erbamont*, three patent owners cooperated with each other in a lawsuit and entrusted their licensee with the right to sue for infringement.  The owners could voluntarily join the litigation, therefore, the court found that there was no prejudice.[54]  In the instant matter, ARIAD and the Institutions are cooperating and defending the '516 patent in re-

---

the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."  *Id.* at 640.

[48] *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387, 393 (D. Del. 1989) (citing *Chism* § 21.03 [3], at 21-168).

[49] *See Gardiner,* 145 F.3d at 640.

[50] *Id.* at 641.

[51] *See* D.I. 84 at 21.

[52] D.I. 100 at 12.

[53] This argument directly conflicts with ARIAD's presence in the Eli Lilly matter.

[54] *Erbamont*, 720 F. Supp. at 394.

examination and together have pursued litigation against Eli Lilly in Massachusetts. Under the License Agreement, the Institutions entrust ARIAD with the right to litigate patent infringement matters on their behalf and agree to cooperate and assist in any such litigation. The Institutions have the right to initiate any infringement action or become parties to litigation in which ARIAD is not properly defending the patent, including declaratory judgment actions. As in *Erbamont,* this court fails to see how a judgment could be prejudicial to the Institutions. If the Institutions believe they will be prejudiced, they can voluntarily join this action.[55]

Further, Whitehead is an owner of the '516 patent, is subject to the court's jurisdiction[56] and has "authorized M.I.T. to act as its sole and exclusive agent for the purposes of licensing Whitehead's rights in the Patent Rights."[57] In contrast with the facts in *Vaupel*, where the patent owner contractually disclaimed all interest in pursuing litigation related to the patent, the Institutions agree to cooperate in every respect, in an infringement suit that "any party may institute to enforce the Patent Rights pursuant to this Agreement."[58] Whitehead has not been added as a party to the litigation, and it is presently unknown whether MIT and Harvard will voluntarily join the litigation. Moreover, "Rule 19 makes inappropriate any contention that patent co-owners are *per se* indispensable in infringement suits."[59] A patentee has an obligation to join a lawsuit

---

[55] *See Id.* at 394.

[56] Whitehead is a Delaware corporation and thereby subject to service of process.

[57] License Agreement Preamble.

[58] License Agreement Section 7.6.

[59] *Catanzaro v. Int'l Tel. & Tel. Corp.,* 178 F. Supp. 203, 205 (D. Del. 1974).

in which its exclusive licensee is involved, even if it is not subject to service of process.[60] The Institutions are contractually bound to assist ARIAD in litigation and can join Whitehead as co-owners of the patent. In addition, ARIAD has the right to use "the name of M.I.T. or Whitehead or Harvard as party plaintiffs . . ."[61] in litigation under the Agreement. Therefore, dismissal is not warranted on the basis of prejudice to the Institutions.

Prejudice to Amgen must also be considered. Although ARIAD argues to the contrary, Amgen contends that, since it seeks to invalidate the patent, a declaratory judgment would insulate it from multiple suits covering the same patent claims. Moreover, Amgen suggests that "[u]nder the traditional doctrine of res judicata (claim preclusion), a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."[62] Amgen asserts, with regard to the patent rights under the License Agreement, that the Institutions are in privity with ARIAD and will be bound by any ruling in this case.[63] It suggests that prejudice may be mitigated in a patentee's absence, because this is a declaratory judgment action,[64] and ARIAD's interests are adequately protected.[65] Under a very

---

[60] See Indep. Wireless, 269 U.S. at 469; Abbott Labs, 47 F.3d at 1133.

[61] License Agreement Section 7.2.

[62] Erbamont, 720 F. Supp. at 394.

[63] D.I. 95 at 18 (citing Gardiner v. Virgin Islands Water & Power Authority, 145 F.3d 635, 642 (3d Cir. 1998) ("parties in privity are bound by rulings made in their absence")).

[64] Dainippon, 142 F.3d at 1273 ("the courts ability to shape relief to avoid prejudice, is of little relevance in the context of a patent declaratory judgment suit because the relief sought in such a suit does not depend upon the patentee's presence in court.").

[65] Id. at 1272.

15

similar license agreement, the court in *Erbamont* determined that the concurrent interests in the patent between the patent owners and licensee fall within the definition of privity and that a strong possibility existed for the defendants to successfully assert the doctrines of collateral estoppel or res judicata to preclude any subsequent litigation.[66]  As in *Erbamont*, the License Agreement and the relationship between ARIAD and the Institutions reduces prejudice and risk of additional litigation.  Factors one and two do not require dismissal or transfer.

The third factor is whether a judgment rendered in the absence of Harvard and MIT will be adequate. "The Supreme Court reads this factor as pertaining to the interest of the courts and the public in complete, consistent and efficient settlement of controversies."[67]  ARIAD argues that Massachusetts is a more appropriate forum for judicial economy and avoidance of inconsistent judgments regarding the '516 patent. Amgen points out that it was neither a party in the Eli Lilly litigation, nor were its products at issue.  It emphasizes that "ARIAD admitted that the Lilly action involved different issues of infringement and damages,"[68] which suggests that transfer would not provide judicial efficiency.  The '516 patent was found valid by the Massachusetts court, but under re-examination by the USPTO, presently, a substantial number of its claims at this stage have been found "not patentable.[69]  Continuing this action in Delaware should not create *additional* inconsistencies.  Given this court's history with the case, its

---

[66] *Erbamont*, 720 F. Supp. at 395.

[67] *Id.*

[68] D.I. 95 at 27.

[69] D.I. 147 at 7.

16

review of and decisions on substantial issues, and its entry of an aggressive case management order, dismissal or transfer of the case would not provide a more complete, efficient or consistent resolution or serve the interests of judicial economy.

The fourth factor is whether Amgen will have an adequate remedy if the declaratory judgment action is dismissed for non-joinder of the Institutions. ARIAD argues that, due to the Eli Lilly litigation, the Massachusetts court is the more proper forum because it has personal jurisdiction over all parties and is familiar with the '516 patent claims. On the other hand, Amgen chose Delaware, where it is incorporated, to institute this suit. Amgen is free to pursue the same claims in Massachusetts if the present action is dismissed. However, "the fact that an alternative forum exists does not automatically warrant dismissal of the case given Rule 19(b)'s mandate to consider all of the relevant factors and the equities of the situation."[70]  Considering those relevant factors and equities, the Institutions are not indispensable parties whose absence requires dismissal of this action.

**Motion to Transfer**

ARIAD moves to transfer this matter to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). It argues that both public interest and private convenience are better served by transfer.

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "A plaintiff's choice is entitled to

---

[70] *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F. 3d 1266, 1273 (Fed. Cir. 1998).

17

"paramount consideration"[71] and "[b]ecause a plaintiff's choice of forum is accorded substantial weight . . . a defendant has the burden of establishing that 'the balance of convenience of the parties and witnesses strongly favors' the defendant."[72]  Therefore, ARIAD "must prove that litigating in Delaware would pose a 'unique or unusual burden' on [its] operations" for the court to transfer venue.[73]  "A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state."[74]

The Third Circuit Court of Appeals emphasizes that "there is no definitive formula or list of factors to consider," but directs the analysis[75] to include private concerns[76] and public interests.[77]

First, ARIAD argues that transfer would avoid issues of personal jurisdiction and

---

[71] *Nice Systems, Inc. v. Witness Systems, Inc.*, No. CIV A 06-311-JJF, 2006 WL 2946179, *2 (D. Del. Oct. 12, 2006).

[72] *Ace Capital v. Varadam Foundation,* 392 F. Supp. 2d 671, 673 (D. Del. 2005) (citing *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D. Del. 1981)).

[73] *Id.* citing *C.R. Bard, Inc. v. Guidant Corporation*, 997 F. Supp. 556, 562 (D.Del.1998).

[74] *Stratos Lightwave, Inc. v. E20 Communications., Inc.,* No. CIV.A. 01-309-JJF, 2002 WL 500920 at *7 (D. Del. Mar. 26, 2002).

[75] *Jumara v. State Farm Ins.Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

[76] *Id.* The private interests include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)" (citations omitted).

[77] *Id.* The public interests include: " the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases" (citations omitted).

improve judicial efficiency.  Next, it contends that transfer would eliminate duplication of effort and the potential for inconsistent rulings.  Finally, ARIAD argues that the parties would incur additional costs for travel and face problems with subpoenaing witnesses and their availability for trial if Delaware is the forum.

ARIAD's arguments do not overcome the substantial weight given to the plaintiff's choice of forum.  Although ARIAD argues that transfer to Massachusetts would improve judicial efficiency because the same issues are being addressed in the Eli Lilly litigation, that does not equate to litigation in this court as being duplicative, particularly since, as Amgen notes, other products are involved in the instant matter. Continued re-examination of the patent by the PTO may further impact the case.  In addition, whether a district court's decision is potentially appealable, is not relevant to the analysis of transfer.  Delaware has a substantial interest in maintaining lawsuits brought by its corporate citizens and between Delaware corporations.  ARIAD and Amgen are Delaware corporations, and as such, can reasonably anticipate being hailed into a Delaware court.

ARIAD contends that litigation would be burdensome and inconvenient in Delaware because most of the discoverable documents and a number of witnesses are located in Massachusetts.  ARIAD and Amgen have research and production or corporate facilities close to the district court in Massachusetts, and therefore, ARIAD claims that using these facilities as a home base would reduce litigation costs.[78] ARIAD's arguments are unpersuasive.  ARIAD has not shown that the proposed

---

[78] D.I. 84 at 30.

witnesses would be unavailable for trial in this forum.  Patent litigation is costly, independent of forum choice.  Any incremental transportation costs and related expenses for litigation and trial in Delaware would likely be minimal in comparison. Moreover, counsel for the parties are located in Los Angeles and New York City, making Delaware no less a convenient forum for litigation.  As a result, the private factors do not support transfer to the District of Massachusetts.

In conclusion, ARIAD has not shown that litigation in Delaware would pose a unique or unusual burden.  Therefore, ARIAD's motion for transfer is denied.  Further, since the Institutions are necessary parties under Rule 19(a), and Whitehead is subject to service of process, Amgen is directed to amend its complaint to add Whitehead as a party on or before April 13, 2007.[79]  Within the same time frame, ARIAD shall advise the court whether Harvard and MIT will voluntarily intervene and enter their appearances in this action.

---

[79] Federal Rule of Civil Procedure 15(a).  Amendments.  "A party may amend . . . the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."