# ASHBY & GEDDES

### ATTORNEYS AND COUNSELLORS AT LAW

### 500 DELAWARE AVENUE

### P. O. BOX 1150

### WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

April 11, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware 19810

**VIA ELECTRONIC FILING**

Re:    _Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc._, C.A. No. 06-259-MPT

Dear Judge Thynge:

I write on behalf of ARIAD to respond to Amgen's demand for Court intervention in the discovery process. Amgen's letter is inaccurate and its position is unjustified.

There are so many things wrong with Amgen's letter that it is hard to know where to begin, and as we all know, it takes fewer pages to make sweeping misstatements than it does to set the record straight. We therefore focus on the essentials.

**Document Production**:    Shortly after serving document requests on ARIAD, Amgen served a subpoena upon Lilly requesting production of every document from ARIAD's suit against Lilly for infringement of the '516 patent—including every document that ARIAD produced in that case. Lilly complied with the subpoena in September 2006 without serving a single objection or requesting any extension of time (no doubt because Amgen had coordinated with Lilly before serving the subpoena). As ARIAD has repeatedly told Amgen, ARIAD's document production in the Lilly litigation contains the vast majority of documents that are responsive to Amgen's document requests served upon ARIAD in this case. (_See_ Exs. A-G.) This document production includes confidential inventor notes, confidential licensing materials, confidential internal presentations, and all PTO files. ARIAD would have produced this same material itself, but Amgen's aggressive third-party subpoena preempted ARIAD's doing so. Amgen has thus been in possession of every ARIAD document essential to the prosecution of its claims for more than six months. Amgen's assertion that Lilly's third-party production was the "only" way that Amgen could acquire this material is unfounded rhetoric.

While ARIAD objected to producing a duplicate set of the same documents that Lilly has already produced to Amgen, ARIAD has repeatedly informed Amgen that ARIAD will produce any additional non-privileged discoverable documents that Amgen has requested. (_See_ Exs. A-I.) The parties have met and conferred on several occasions and, to ARIAD's knowledge, have resolved any disagreements concerning ARIAD's objections to particular document requests. (_Compare, e.g._, Ex. J (ARIAD's Oct. 31, 2006 letter confirming agreed upon production), _with_ Ex. H (Amgen's Jan. 27, 2007 response.))

The Honorable Mary Pat Thynge
April 11, 2007
Page 2

ARIAD's production of additional documents has been somewhat modest, on the order of approximately 43,780 pages (compared to Lilly's production of approximately 220,000 pages). This is hardly surprising, given that ARIAD collected and produced all relevant documents in its possession, custody or control during the Lilly litigation. Most of the additional documents produced by ARIAD are publicly available (such as papers from the reexamination proceeding or pending patent applications). ARIAD produced these publicly available documents because Amgen insisted that ARIAD provide them. (*See, e.g.*, Ex. K.)

Amgen complains that ARIAD has "refused" to produce many internal, confidential documents that are not covered by, or that allegedly were created after, the Lilly subpoena. Amgen lists various categories of these document as examples in its letter. However, Amgen neglects to inform the Court that ARIAD has repeatedly informed Amgen that ARIAD does not have any additional documents falling into these categories. (*See, e.g.*, Exs. D-G.) ARIAD cannot produce documents that do not exist.

**Depositions**. Amgen's portrayal of ARIAD as "stonewalling" on depositions is specious. Amgen has served exactly one deposition notice directed to ARIAD—a notice under Rule 30(b)(6) covering a broad range of topics. ARIAD has identified the person who will testify on its behalf—ARIAD's Chief Executive Officer, Dr. Harvey Berger—and has set his deposition for April 17. This date was agreed upon thirty days ago.

The only other depositions that Amgen has sought to conduct are of the named inventors on the '516 patent. There are 13 inventors on the '516 patent. None of them is—or ever was—employed by ARIAD. Only 2 of them are currently employed by Harvard or MIT. The inventors are in many different cities, including Pasadena, CA; Chicago, IL; Baltimore, MD; Bethesda, MD; Cambridge, MA; Milwaukee, WI; and Chapel Hill, NC. Irell & Manella, ARIAD's lead counsel in this litigation, is representing all but one of the inventors who reside in the United States and has been authorized by them to accept service of a subpoena on their behalf.[1] (*See* Exs. L, M.)

One might think that, before serving subpoenas on the inventors, Amgen would consult with ARIAD about selecting convenient deposition dates, given the inventors' work obligations, counsels' schedules, and the logistics of traveling to many different cities. Not Amgen. Instead, Amgen unilaterally served subpoenas without clearing any dates with ARIAD (or allowing ARIAD's counsel to clear those dates with the inventors). Moreover, Amgen scheduled many of the depositions on consecutive days or with only one intervening day, which would make it impracticable for counsel to travel and meet with the witnesses before their depositions.[2] It should hardly come as a surprise to Amgen that none of its arbitrarily selected dates has turned

---

[1] Irell & Manella is also representing one inventor who resides in Germany and one who resides in Australia. They have not authorized Irell & Manella to accept service of United States subpoenas on their behalf. (*See* Ex. M.)

[2] On March 13, 2007, Amgen served subpoenas for Harinder Singh (Chicago, April 2), Jonathan H. Lebowitz (St. Louis, April 4), and Chen-Ming Fan (Delaware, April 6). On March 29, 2007, Amgen served subpoenas for Albert S. Baldwin (Chapel Hill, May 7), Phillip A. Sharp (Boston, May 8), Michael J. Lenardo (DC, May 9), and Ranjan Sen (DC, May 11). Most of the noticed locations are not the deponents' cities of residence.

The Honorable Mary Pat Thynge
April 11, 2007
Page 3

out to be convenient. Nonetheless, Amgen has been given confirmed dates for three of the inventors and it is anticipated that confirmed dates will be provided for the rest of them within a matter of days. (*See* Exs. O-Q.)

**Requests for Admission ("RFAs")**:    ARIAD has not "refused" to provide proper responses to Amgen's First Set of RFAs. ARIAD has responded to the RFAs whenever possible after reasonable inquiry. Many of the RFAs, however, are directed to substantive scientific issues. As to those RFAs, Amgen has frequently failed to provide information on the experimental conditions necessary to enable ARIAD to admit or deny the request (for example, by simply referencing the publication on which the RFA is based). When meeting and conferring with Amgen, ARIAD explained the problems with the RFAs as framed and requested that Amgen provide additional information. Amgen refused. (*See* Ex. R.)

ARIAD has nevertheless committed to further investigating and supplementing its responses directed at scientific issues. This has been an extraordinarily time-consuming process, given that Amgen has served 141 requests, most of which are directed to complex, scientific issues—as well as Amgen's refusal to provide any clarification to any of its requests. (*See* Exs. S, T.) ARIAD has located (or expects to locate) information that will enable it to supplement responses to many requests (although there will still be some requests that ARIAD likely will be unable to admit or deny without further information from Amgen). ARIAD has kept Amgen apprised of its progress and expects to complete supplemental responses shortly.

Of course, Amgen is not entitled to supplemental responses to those requests that essentially ask ARIAD to admit whether activities related to Enbrel and Kineret infringe the '516 patent. This is because "[r]equests that seek legal conclusions are not allowed under Rule 36." *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002). "[D]etermining whether a product or process infringes . . . involves the requirement of claim construction, which is a legal determination within the province of the court. As a result, requests directed towards applying the claims of the patent or requiring application of the claims prior to any Markman ruling are not the application of law to facts relevant to the case, but in reality are requests for legal conclusions and therefore, improper." *Id.* ARIAD's unwillingness to respond to requests directed at infringement is therefore entirely appropriate.

In short, ARIAD has acted responsibly and diligently in responding to Amgen's discovery, and Amgen's letter is highly misleading. Amgen's request for relief should be denied.

Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick

SJB/rg
Attachments
179633.1

The Honorable Mary Pat Thynge
April 11, 2007
Page 4

cc:    David I. Gindler, Esquire (via electronic mail; w/attachments)
       Melanie K. Sharp, Esquire (by hand and via electronic mail; w/attachments)
       Marcus E. Sernel, Esquire (via electronic mail; w/attachments)

# EXHIBIT A

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 13, 2006

**<u>VIA E-MAIL</u>**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
                 D. Del. Civil Action No. 06-259-KAJ

Dear Marc:

      I am writing in response to your letter of October 12, 2006.

      It is apparent from your letter that you did not understand my comments during our telephone conversation on October 11.  We agree that ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  I believe that I spoke nearly those exact words during our telephone conversation.  This case, however, presents the unique situation where all, or the vast majority, of the documents that Amgen has requested were produced in the pending litigation against Lilly.  All of those documents are being produced to you by Lilly.  I do not believe that you want us to produce a second set of those documents to your firm (nor do I believe that we would be obligated to do so, if you made such a request).  As I told you, if there are additional non-privileged discoverable documents that are responsive to Amgen's document requests, but which are not produced in response to Amgen's subpoena to Lilly for all documents that ARIAD produced in the Lilly litigation, ARIAD will produce those documents.

      Turning to the issue of the Lilly documents, since you sent your letter yesterday, we have received an additional 44,000 pages of Lilly production documents on a DVD from your firm.  This series is Bates coded L-A 0134175 to L-A 0178169.  Unlike Lilly's earlier production, this DVD contained both image and data load files that were properly indexed by Bates number. As such, we were able to mount a database within a few short hours of receiving the DVD.  Although we have only examined a small portion of this extensive set of documents, this production does not appear to be corrupted by image-link errors, as has been the case with Lilly's earlier production.

      As Lilly appears to be responding to Amgen's subpoena on a rolling basis, I would appreciate your letting us know whether we have now received all responsive documents

1581460.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 13, 2006
Page 2

from Lilly or whether more documents are forthcoming.  I would also appreciate your
informing me when each CD or DVD produced by Lilly was received by your firm.

We certainly understand and share your frustration regarding the prevalent technical
errors and omissions in Lilly's earlier production.  Please keep in mind, however, that the
source of these omissions and deficiencies is Lilly's failure to respond to Amgen's subpoena
with properly formatted electronic media.  Although these problems have stymied our
efforts to efficiently review the Lilly production, we are neither the source of this flawed
production nor the cause of any ensuing delay.  If we can be of any assistance in helping you
to verify and understand the problems we are experiencing with Lilly's production, please
let me know.  I would be happy to send for your examination copies of the flawed CDs.  I
am sure that your technical team will come to the same conclusion that ours did—the
appropriate load files are missing from much of Lilly's production.

As you note in your letter, your technical team in Chicago has been required to
address these same problems (or at least we believe that they are the same problems,
assuming that there are no differences in the electronic media that Lilly has produced to
Amgen and the electronic media that Amgen has produced to Ariad.)  While you claim to
have been able to resolve these issues more quickly than we have (although you say very
little about the nature of the problems your firm identified, or how long it took your firm to
resolve them, or if they have even been completely resolved), please be assured that we have
diligently worked to find a solution at our end.  Ray LaMagna has spent a substantial
amount of time assisting our technicians and, unfortunately, we have not been able to mount
a complete, functioning database from the media received from your office.  Your concerns
of impropriety should be directed at Lilly—the apparent source of the problems (unless your
firm did something other than supply us with an exact copy of each CD or DVD received
from Lilly)—and not at the messenger.

It is certainly true, as you observe, that we did not reject the Lilly production when
we first encountered difficulties.  Instead, we made a concerted effort to work around these
technical deficiencies before raising the issue with you.  As you know from our recent
conversation and follow-up letter, our understanding of the scope of the problems evolved
on a daily basis as we worked through the CDs.  We first began to receive the Lilly
production from your office around the beginning of this month.  Most of the error-ridden
A-L series arrived here eight business days ago.  (The CDs arrived in our office at 5:26 p.m.
on October 2, which was Yom Kippur.)

I am sure that you are not trying to delay our efforts by providing us with a flawed
production on the one hand while deriding us for delay on the other.  As we discussed on the
phone and by letter, there is an expedient, cost-effective way at your disposal to resolve this
problem.  Lilly should be perfectly capable of responding to Amgen's subpoena in a way

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 13, 2006
Page 3

that complies with the required norms of electronic discovery.  The production that we most recently received would appear to confirm that fact.

Please let us know whether Lilly will re-produce the flawed media that we have identified for you.  That way, we can both review the properly indexed and uncorrupted set of files that should have been provided in the first place.

Finally, your letter states that "there is no defensible reason" for ARIAD to refuse Amgen's in-house counsel immediate access to the Lilly production.  We disagree for reasons that we have previously explained.  Judge Jordan agreed with our position at the September 11 hearing:  "[T]his is not going to go beyond counsel's eyes ... until the folks on the ARIAD side have had a chance to vet this and decide whether there are confidentiality designations that need to be put in place that are somehow other or different from the ones that existed in the District of Massachusetts.  In short, [ARIAD] will have [its] shot to make sure it doesn't go past attorney's eye's only level under the protective order we've got until you, on the ARIAD side, have a chance to look at it."  Transcript, at 85-86.

Very truly yours,

David I. Gindler

# EXHIBIT B

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 18, 2006

**<u>VIA E-MAIL</u>**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
               D. Del. Civil Action No. 06-259-KAJ

Dear Marc:

      I am writing briefly to respond to your letter of October 16, 2006.

      Your letter seems to acknowledge that Lilly's electronic media have problems, but then takes the position that the problems really aren't all that difficult to resolve.  We disagree for the reasons that we have already explained in great detail.  If your IT department was able to resolve these problems as quickly as you appear to claim, we would be happy to accept any assistance that they can provide.  As we have told you, we believe that the quickest solution is to have Lilly produce new CDs and DVDs that correct the problems we have described.  We are continuing our efforts to review the documents, notwithstanding the significant technical problems that we are experiencing.  We will start identifying documents that may be shown to in-house counsel shortly, and will continue to do so on a rolling basis.

      Your letter also once again mischaracterizes our position with regard to ARIAD's document production responsibilities.  Here is our position, for third time (at least):  ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  The vast majority of the documents that Amgen has requested were produced in the Lilly litigation.  You have already received copies of those documents—and much more quickly than if ARIAD had to undertake a search for all of the requested documents from scratch.  If there are additional non-privileged discoverable documents that Amgen has requested, but which are not included among the documents produced in the Lilly litigation, ARIAD will produce them.  If you have questions about particular categories of documents that Amgen has requested, I would be pleased to meet and confer with you about them.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
October 18, 2006
Page 2


I appreciate your informing me of the dates on which you received documents from Lilly in response to Amgen's subpoena.  Please identify the particular date on which each CD, DVD, or hard copy document was received by your firm.

Very truly yours,

David I. Gindler

1584053.

# Exhibit C

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 25, 2006

**VIA E-MAIL**

Erick S. Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

Re:    *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Erick:

I am writing in response to your letter of October 24, 2006.

Your understanding of ARIAD's position regarding document production is not correct.  It appears that you are trying to manufacture a dispute where none exists.  I have repeatedly explained our position in writing and during our telephonic meet-and-confer session.  I will try once again.

ARIAD has the same responsibility as any other litigant to respond to Amgen's document requests.  The vast majority of the documents that Amgen has requested were collected in connection with the Lilly litigation.  It should come as little surprise that there is a substantial overlap between the documents requested by Lilly and the documents requested by Amgen.  We are reviewing the documents that were collected in connection with the Lilly litigation, just as if we were reviewing our client's documents for the very first time in response to Amgen's document requests.  In that regard, there is a significant benefit to Amgen, in that a great deal of leg work in collecting documents has already been done.  We are carefully reviewing these documents for two reasons—first, to determine whether we can identify any documents that Amgen has requested that do not appear to be included among these documents; and second, to determine whether any higher degree of confidentiality than that provided for in the protective order is necessary for any of these documents.

We do not intend to rely exclusively on the document production from the Lilly case to satisfy ARIAD's obligations to respond to Amgen's document requests, even as to the categories of documents that both Lilly and Amgen have requested.  We intend to comply with our obligation to conduct a reasonable search for all discoverable non-privileged documents that Amgen has requested.  There are, of course, a number of categories of documents that Amgen has requested—for example, documents relating to Enbrel and

1586774.

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Erick S. Ottoson, Esq.
October 25, 2006
Page 2

Kineret—that were not collected for the Lilly litigation. As to those documents we need to start from scratch. But even as to those categories of documents that both Lilly and Amgen have requested, we intend to satisfy our obligation to conduct a reasonable investigation for all non-privileged discoverable documents and do not intend to rely exclusively upon work performed in connection with the Lilly litigation.

If your specific question is whether ARIAD intends to produce a duplicate copy of documents that Amgen has requested from ARIAD and that Amgen has already received by virtue of its subpoena to Lilly requesting, among other things, all documents that ARIAD produced in the Lilly litigation, the answer is no. I do not understand why you would want two copies of the same document, except possibly to create extra expense for ARIAD, which has much more limited resources than Amgen. I do not believe that there is any ambiguity as to which documents provided in response to the Lilly subpoena were originally produced by ARIAD in the Lilly litigation. If you disagree, please let me know. That being said, we are not simply relying on the work performed in connection with the Lilly litigation to satisfy our obligation to respond to Amgen's document requests. Whether or not the documents requested by Amgen were previously requested by Lilly (and already produced to Amgen in response to its subpoena to Lilly), we are conducting our own review as part of our obligation to respond to Amgen's document requests.

We will not be in a position to produce any additional non-privileged discoverable documents that Amgen has requested, but which are not included among the documents produced in the Lilly litigation, by October 31. We already have our hands full reviewing the many documents produced in the Lilly litigation—and contending with the serious problems with Lilly's production that we have previously described in some detail. We have suggested that you request that Lilly produce another set of its documents with the appropriate load files linked to the appropriate images on the appropriate CDs. We are unaware of any efforts that you have made in that regard, despite your representation that you would do so. In addition, since you appear to claim that your firm has been able to resolve these problems on its own (although your previous correspondence is a bit ambiguous as to whether you have resolved all of these problems), we would welcome any assistance that you can provide. Nevertheless, I can assure you that we are working diligently on these matters. I cannot yet give you an anticipated completion date for ARIAD's document production, but will do so when we are able to provide a meaningful estimate.

I am not able to meet and confer with you this week as to ARIAD's objections to Amgen's document requests, but can do so on Monday, October 30, at 2:30 p.m. PST. I will re-review the parties' correspondence on these issues in advance of our call and will make every effort to be prepared to address the issues at that time. It is not likely that I will send you a letter in advance of that call.

1586774.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Erick S. Ottoson, Esq.
October 25, 2006
Page 3


As indicated in my previous correspondence, we will inform you, on a rolling basis, as to those documents that can be shown to Amgen's in-house counsel pursuant to the protective order and those documents, if any, that we believe deserve a different level of protection.  We expect to begin this process later in the week.

Finally, you have not responded to the specific inquiry in my October 18 letter regarding when your firm received Lilly's document production in response to Amgen's subpoena.  I do not want to know just the dates on which unidentified "batches" of documents were received.  I want you to inform me of the particular DVDs, CDs, or had copy documents received on each of those dates.  Please provide this information to me without delay.

Very truly yours,

David I. Gindler

1586774.

# EXHIBIT D

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

<table>
<tr><td>840 NEWPORT CENTER DRIVE, SUITE 400<br>NEWPORT BEACH, CA 92660-6324<br>TELEPHONE (949) 760-0991<br>FACSIMILE (949) 760-5200</td><td>1800 AVENUE OF THE STARS, SUITE 900<br><b>LOS ANGELES, CALIFORNIA 90067-4276</b></td><td>TELEPHONE (310) 277-1010<br>FACSIMILE (310) 203-7199<br>WEBSITE: www.irell.com</td></tr>
</table>

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

February 12, 2007

<u>**VIA E-MAIL**</u>

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, California 90017

      Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

    I write in response to your letter dated February 9, 2007, regarding Amgen's document requests. It appears that we have a misunderstanding. To avoid any further confusion, let me make the following clear at the outset: ARIAD's position on discovery issues, as set forth in my letter to Marc Sernel dated October 31, 2006, and in my letter to the Court dated November 2, 2006, has not changed.

    Here is the root of the confusion: In his letter dated January 26, 2007, Marc Sernel identified seven "non-exhaustive" categories of documents the he claims "are included within our document requests but not satisfied by the documents produced from the Lilly subpoena." I do not agree with this position. In fact, I would be surprised if ARIAD has any non-privileged, discoverable documents within the scope of these requests that were not produced in response to the Lilly subpoena (with the possible exception of documents covered by Request No. 38).

    In particular, Marc's letter does not argue that the Lilly production fails to include *any* documents covered by these seven document requests. Rather, Marc simply asserts that these requests are "not satisfied" by the Lilly production. As a result, Marc's letter left me with the impression that Amgen is seeking a broader collection of documents than ARIAD previously agreed to produce. It is for that reason—and that reason alone—that I asked for a further explanation of the relevance of the documents that Amgen is seeking. Moreover, insofar as my letter identifies documents that ARIAD has agreed to produce, I was merely providing a short-hand description of those documents; I was not attempting to take a different position than that set forth in my earlier correspondence. If there are any documents that ARIAD has agreed to produce, but that are not included in the Lilly production, ARIAD will produce them on a rolling basis (to the extent such documents

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
February 12, 2007
Page 2

exist).  I do not yet have a date by which we will complete this process, but I am hopeful it will be in the very near future.

My colleague Betsy Rosenblatt is available to confer with you on February 13 regarding discovery matters.  She will contact you to set up a time.

Very truly yours,

David I. Gindler

1639744

# EXHIBIT E

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

March 20, 2007

**VIA E-MAIL**

Jamie McDole, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

      Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Jamie:

      I write in response to your letter of March 16, 2006 regarding ARIAD's document production and responses to Plaintiffs' Requests for Admissions.

      First, you are correct that ARIAD's production of documents is incomplete.  ARIAD is in the process of collecting and producing documents and has produced documents to Plaintiffs as they have been collected and prepared.  There remain several categories of documents for which collection (both paper and electronic) is continuing.  If documents in those categories exist, they will be produced on a rolling basis, as previous documents have been.  We will produce any remaining responsive documents as quickly as practicable, and expect that ARIAD's production will be complete by March 30, 2007.  As we have explained on the telephone, and as ARIAD's productions thus far should show, ARIAD has no wish to withhold relevant documents or to "stonewall."  Your accusation is untrue and counterproductive.

      It may assist you to know that with respect to several of Plaintiffs' requests, it has become apparent in the course of ARIAD's investigation that no non-privileged documents exist that have not already been produced, either in this litigation or in the Lilly litigation.  In some cases, this may mean that no non-privileged documents exist in the category at all.  In other categories, it may mean that that all known non-privileged documents in the category have already been produced.  These categories include Request Nos: 2, 3, 4, 5, 6, 9, 10, 11, 16, 17, 18, 24, 25, 35, 51, and 61.  Naturally, if our remaining investigation identifies any documents in these categories, we will produce them pursuant to our October 31, 2006 agreement; however, Amgen should not expect the production of any additional documents in these categories.  Nor does this mean that additional non-privileged documents are sure to exist with respect to the remaining categories for which ARIAD has agreed to produce documents—only that ARIAD's investigation with respect to those categories is ongoing.

1658963

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
March 20, 2007
Page 2


          With respect to ARIAD's responses to Plaintiffs' Requests For Admission, I am available to meet and confer on Wednesday after 2:00 p.m. California time, on Thursday after 2:00 p.m. California time, or most times on Friday.

                    Sincerely,

                    Betsy Rosenblatt

# EXHIBIT F

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

March 30, 2007

**VIA FEDEX**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

   Re: *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

  Enclosed are documents bearing Bates numbers ARI 38755-ARI 42352, produced pursuant to Plaintiffs' First Set Of Requests For Production Of Documents And Things To Defendant.

  This set of documents, combined with the roughly 220,000 pages that Amgen secured from Lilly, completes the bulk of ARIAD's production. We are continuing to verify and finalize our internal searches in order to bring this production to a close. We expect that a relatively small number of residual items will continue to be processed and screened for privilege over the next week or so. We will of course supplement our production with any additional non-privileged documents identified in that process.

  In our October 31, 2006 letter, we agreed to notify Amgen if ARIAD possesses certain non-privileged documents, but will decline to produce them on grounds of relevance. We can now confirm in response to Request 19 that there are other licensing arrangements between Harvard, MIT, and/or Whitehead on one hand, and ARIAD on the other, that do not relate to the '516 patent or the Related Patents.

        Sincerely,

        Betsy Rosenblatt

1667294

# EXHIBIT G

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

April 10, 2007

**VIA FEDEX**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

   Re: *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

   Per my letter of March 30, please find documents bearing Bates numbers ARI 42353 to ARI 43784, which are produced pursuant to Plaintiffs' First Set Of Requests For Production Of Documents And Things To Defendant. These documents are designated "Confidential Information" under the Stipulated Protective Order in this case.

   ARIAD's production is substantially, if not entirely, complete. We will continue to verify our internal searches as I described in my March 30 letter. Naturally, if any additional non-privileged responsive documents come to our attention in this process, we will supplement our production accordingly.

   As I noted in my March 20 and March 30 letters and as we have stated on various occasions, no non-privileged documents exist with respect to many of Plaintiffs' document requests. Nevertheless, it is apparent from Plaintiffs' recent letter to the Court that Plaintiffs are not satisfied with ARIAD's production, notwithstanding the 220,000 pages that Plaintiff secured from Lilly and ARIAD's further production of over 40,000 pages. As we have stated on several occasions, ARIAD did not invent the '516 patent, does not practice the '516 patent, and, aside from documents already produced, has not conducted research or infringement analyses regarding products related to the '516 patent. In light of these facts, Plaintiffs' continued insistence on the inadequacy of ARIAD's production is puzzling. To the extent that Plaintiffs believe that specific documents or categories of documents exist that have not been produced, please contact me so that we can address such issues.

       Sincerely,

       Betsy Rosenblatt

1674126

# Exhibit H

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

October 31, 2006

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*,
              D. Del. Civil Action No. 06-259-KAJ

Dear Marc and Eric:

      I am writing to follow up on our discussions yesterday and today regarding ARIAD's responses to Plaintiffs' First Request for Production of documents.  I have set forth below ARIAD's position on the issues raised during our discussions.  In some cases, our positions reflect certain refinements in our thinking, as well as responses to various items left open in our discussions.

      **Request No. 1** — ARIAD will produce the requested class of non-privileged documents for (1) the PTO's reexamination of the '516 patent; (2) the Lilly litigation; and (3) ARIAD's lawsuit against the PTO.

      **Request No. 3** — ARIAD will produce non-privileged documents that relate to any research, development and testing of products or compounds that ARIAD contends practice, embody, or incorporate the subject matter described by the '516 patent, including documents regarding Lilly's alleged infringing products in the prior litigation or any other third party products.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

      **Request No. 4** — ARIAD will produce non-privileged documents that relate to past or present efforts, if any, by ARIAD or its collaborators to develop products based on the subject matter of the '516 patent.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

      **Request No. 5** — ARIAD will produce non-privileged documents sufficient to identify persons, if any, who assisted in any research, development and testing of any attempts to develop products based on the subject matter of the '516 Patent.  ARIAD will

1589391.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 2

not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 6 — ARIAD will produce non-privileged documents that relate to the development, if any, by ARIAD, ARIAD's collaborators, or a third party of products or processes that ARIAD contends practice, embody, or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 7 — ARIAD will produce documents that relate to the preparation, filing, and prosecution of the '516 patent as well as the Related Patents.

Request No. 8 — ARIAD will produce non-privileged presentation materials or other documents that reflect the substance of presentations, if any, between ARIAD and third parties regarding the subject matter of the '516 patent, as well as documents sufficient to establish the date of and persons who attended any such presentations. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 11 — ARIAD will produce non-privileged documents, if any, that reflect, demonstrate or identify the priority date for any claim of the '516 patent.

Request No. 12 — ARIAD will produce non-privileged documents that relate to products or processes, if any, that ARIAD contends practice, embody or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 13 — ARIAD will produce non-privileged documents that relate to legal or administrative proceedings concerning the '516 patent or any Related Patents.

Request No. 14 — ARIAD will not produce any documents pursuant to this Request, except to the extent such documents are produced in response to other Requests.

Request No. 16 — ARIAD will produce non-privileged documents sufficient to identify all persons who assisted in any research, development and testing of ARIAD's products or processes, if any, that ARIAD contends practice, embody or incorporate the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

Request No. 17 — ARIAD will produce non-privileged documents sufficient to identify all persons who assisted in the development of ARIAD's products or processes, if any, that ARIAD contends practice, embody, or incorporate the subject matter of the '516

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 3

patent.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

      **Request No. 19** — ARIAD will produce non-privileged documents that relate to the agreement with MIT, Whitehead, and Harvard pursuant to which ARIAD acquired rights to the '516 patent (among other patent rights).  ARIAD will not produce documents that relate to any other licensing arrangement with these institutions, but will notify you if any such documents exist.

      **Request No. 20** — ARIAD will produce non-privileged documents related to its sublicensing of the '516 patent or the Related Patents.

      **Request No. 21** — ARIAD will produce non-privileged documents that relate to prior art to the '516 patent.  ARIAD will produce non-privileged documents that relate to prior art to the Related Patents, but only to the extent that such documents are also related to prior art to the '516 patent.

      **Request No. 22** — ARIAD will produce non-privileged documents that relate to the preparation, filing, and prosecution of the '516 patent and the Related Patents.

      **Request No. 23** — ARIAD will produce non-privileged documents that relate to communications, if any, that concern prior art to the '516 patent.

      **Request No. 30** — ARIAD will produce non-privileged opinions or analyses, if any, prepared by or for ARIAD that relate to licenses, grants of rights or sublicenses of the '516 patent or the Related Patents.

      **Request No. 31** — ARIAD will produce non-privileged documents that relate to any allegation that the '516 patent is invalid or unenforceable, except for expert discovery materials in this case, which will be produced at the time prescribed by and subject to the provisions of the Federal Rules of Civil Procedure and any orders from the Court in this action.

      **Request No. 32** — ARIAD will produce non-privileged documents that relate to the construction of the claims of the '516 patent, except for such documents required to be disclosed at a later time pursuant to the Court's Scheduling Order.

      **Request No. 35** — ARIAD will produce non-privileged documents that relate to comparisons, if any, between any claims of the '516 patent and a third party's product or process.  ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

I R E L L   &   M A N E L L A   LLP
A REGISTERED  LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 4

**Request No. 36** — ARIAD will produce non-privileged documents reflecting any evaluation or analysis performed for the purpose of determining whether ENBREL or KINERET infringes the '516 patent.

**Request No. 37**— ARIAD stands on its objections to this Request.

**Request No. 38** — ARIAD will produce non-privileged materials from presentations, if any, made by or to ARIAD regarding ENBREL or KINERET, including presentations, if any, that occurred between ARIAD and any of the Plaintiffs.

**Request No. 40** — ARIAD stands on its objections.  To the extent that this Request would yield discoverable material, it is duplicative and cumulative to earlier Requests. During our call today, we invited you to narrow this Request, but you declined to do so.  If Plaintiffs provide ARIAD with case law demonstrating that ARIAD should produce all documents covered by this Request, then ARIAD will reconsider the issue.

**Request No. 41** — ARIAD will produce any non-privileged communications that relate to its litigation with Plaintiffs, ARIAD's litigation with Lilly, and ARIAD's litigation against the PTO.  ARIAD stands on its objections insofar as the Request seeks all non-privileged documents and communications that relate to ENBREL, KINERET, or the Related Patents.

**Request No. 42** — ARIAD will produce non-privileged documents that relate to its efforts to enforce or license its rights under the '516 patent and the Related Patents.

**Request No. 43** — ARIAD will produce non-privileged documents that relate to any assertion by any entity that any claim of the '516 patent is invalid or unenforceable.

**Request No. 44** — ARIAD will produce non-privileged tutorials, presentations, videos or transcripts that explain the subject matter described and/or claimed in the '516 patent.

**Request No. 45** — ARIAD stands on its objections.

**Request No. 46** — ARIAD stands on its objections.

**Request No. 47** — ARIAD stands on its objections.

**Request No. 48** — ARIAD stands on its objections.

**Request No. 49** — Insofar as this Request pertain to interrogatories, ARIAD will produce any non-privileged documents referenced in its responses to Plaintiffs' First Set of

1589391.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 5

Interrogatories. Insofar as this Request relates to document requests, we agreed that this Request does not seek any documents not already covered by another Request in Plaintiffs' First Set of Requests for Production of Documents. Insofar as this Request seeks any other documents, ARIAD stands on its objections.

**Request No. 50** — ARIAD will produce non-privileged documents that relate to any interviews, presentations, demonstrations, or other communications at which any employee of the PTO was present concerning the prosecution or reexamination of the '516 patent or the Related Patents.

**Request No. 52** — ARIAD will produce non-privileged documents, if any, that relate to the valuation and financial appraisal of the '516 patent and any Related Patents.

**Request No. 53** — ARIAD will produce non-privileged documents sufficient to show the amount of and timing of royalties and fees paid by ARIAD to Harvard, MIT, and Whitehead pursuant to the license agreement through which ARIAD acquired its rights under the '516 patent.

**Request No. 54** — ARIAD will produce non-privileged documents sufficient to show the amount of and timing of royalties and fees paid to ARIAD by others for rights under the '516 patent and Related Patents.

**Request No. 55** — ARIAD will produce non-privileged documents, if any, that show projections of licensing or royalty streams to be received by ARIAD in relation to the '516 patent and Related Patents.

**Request No. 56** — ARIAD stands on its objections to this Request.

**Request No. 57** — ARIAD stands on its objections to this Request.

**Request No. 58** — ARIAD stands on its objections to this Request.

**Request No. 59** — ARIAD stands on its objections to this Request.

**Request No. 60** — ARIAD stands on its objections to this Request.

**Request No. 61** — ARIAD will produce non-privileged board meeting minutes, scientific advisory board meeting minutes, and presentations to the board or scientific advisory board to the extent that such documents relate to discussion, identification or consideration of whether any companies, products, or processes infringe the '516 patent. ARIAD will not produce such documents for the Related Patents, but will inform you whether any such documents exist.

1589391.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Eric Ottoson, Esq.
October 31, 2006
Page 6

**Request No. 62** — ARIAD will produce non-privileged communications with investors, potential investors, analysts, or others in the business community that refer or relate to the '516 patent or any Related Patents.

Please note that:

- ARIAD will not be producing a duplicate copy of documents that have already been produced in response to Plaintiffs' subpoena to Lilly (as we have previously informed you).

- ARIAD will not be producing any documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

- ARIAD will be producing only documents that are within its possession, custody or control.

- ARIAD reserves the right to seek a different level of confidentiality protection than that provided in the protective order with respect to any documents covered by the Requests.

- ARIAD's agreement to produce non-privileged documents is not an admission that any such documents actually exist.

- Where ARIAD has elected to stand on its objections, ARIAD remains willing to consider any proposal that you decide to make to modify the Request and reach an agreement to resolve ARIAD's objections.

- Where we refer to Related Patents, we mean United States patents or published patent applications in the same family as the '516 patent.

If you have any questions, please do not hesitate to contact Ray LaMagna or me.

Very truly yours,

David I. Gindler

1589391.

# EXHIBIT I

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

February 7, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636

            Re:     *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

        I am writing to respond to Amgen's demand for immediate production of certain broad categories of documents as enumerated in your letter of January 26, 2007. Specifically, Amgen has demanded immediate production of documents in response to limited versions of Requests No. 3, 4, 5, 8, 38, 50, and 61.

        As ARIAD has stated previously, ARIAD recognizes its discovery obligations and intends to satisfy them in full. But this recognition of responsibility does not render Amgen's overbroad document requests any less objectionable. ARIAD has set forth its objections in detail in its Amended Responses and Objections to Plaintiffs' First Set of Requests For Productions of Documents And Things To Defendant ("Amended Objections"). To facilitate the meet and confer process, we will highlight some of these objections here.

        For example, Requests no. 3, 4, 5, and 8, even as limited in your January 26 letter, are extremely broad, demanding documents unrelated to any party's claim or defense, including documents that do not relate to Amgen, Enbrel®, or Kineret®. Please explain how these Requests are calculated to lead to the discovery of relevant information, and why you believe that the benefits of these requests outweigh the burdens to ARIAD involved in responding to them.

        With respect to Request no. 38, subject to the objections set forth in ARIAD's Amended Objections, ARIAD has agreed to produce non-privileged materials, handouts, and notes from presentations made by or to ARIAD regarding Enbrel® and Kineret® to the extent that such documents exist, are in ARIAD's possession, custody, or control, and have not been produced in this litigation by Lilly. With respect to Request No. 50, ARIAD has agreed to produce file history and other documents of public record disclosed in the prosecution of the '516 patent, subject to the objections set forth in ARIAD's Amended

1637481

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
February 7, 2007
Page 2

Objections and to the extent not already produced by Lilly. With respect to Request No. 61, ARIAD has agreed, again subject objections set forth in its Amended Objections, to produce any existing non-privileged board meeting minutes, scientific advisory board meeting minutes, and presentations to the board or scientific advisory board to the extent that such documents relate to the claims of the '516 patent and have not already been produced in this litigation. ARIAD will produce these documents, to the extent they exist and are not included in the documents that Amgen obtained from Lilly, on a rolling basis when they have been collected.

Very truly yours,

David I. Gindler

# EXHIBIT J

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

January 26, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-*** (MPT)

Dear David:

I write regarding several outstanding discovery issues. Please immediately (1) confirm that all documents produced by Lilly can be reviewed by designated Amgen in-house counsel, and (2) produce all additional documents that are responsive to Amgen's discovery requests.

With respect to point (1), in view of your previous statement to the Court that you were within only a few days of completing your review of all the documents produced by Lilly, we expect that you will have no problem in completing your review by February 2 and informing us by that date if there are any documents for which ARIAD refuses to authorize designated in-house access and, if so, the identity of all such documents. As we have stated several times before, ARIAD has no reasonable basis on which to withhold such access and we must know as soon as possible what ARIAD's final position is so that we can take it up with the Court if necessary.

Regarding point (2), ARIAD has now had ample time to conduct a reasonable search for additional documents that are responsive to Amgen's document requests but which were not included in the Lilly subpoena. Indeed in your letter, dated October 25, 2006, you stated:

> We do not intend to rely exclusively on the document production from the Lilly case to satisfy ARIAD's obligations to respond to Amgen's document requests…There are, of course, a number of categories of documents that Amgen has requested—for example, documents relating to Enbrel and Kineret—that were not collected for the Lilly litigation.

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

January 26, 2007
Page 2

Besides documents relating to Enbrel or Kineret, we are aware of several additional categories of documents that are included within our document requests but not satisfied by the documents produced from the Lilly subpoena.  A non-exhaustive list of such documents includes:

- Documents that relate to any research, development and testing of products or compounds that ARIAD contends practice, embody or incorporate the subject matter described by the '516 patent (Request No. 3);

- Documents that relate to past or present efforts by ARIAD or its collaborators to develop products based on the subject matter of the '516 patent (Request No. 8);

- Documents sufficient to identify persons who assisted in any research, development and testing of any attempts to develop products based on the subject matter of the '516 patent (Request No. 5);

- Documents relating to any presentations to or by ARIAD relating to the subject matter described in the '516 patent (Request No. 8);

- Documents relating to any presentations to or by ARIAD relating to any of the Amgen Entities (Request No. 38);

- Documents relating to any interviews, presentations, demonstrations and other communications at which any employee of the United States Patent and Trademark Office was present concerning the subject matter of the '516 patent (Request No. 50);

- Documents relating to all board and scientific advisory board meeting minutes or presentations that relate to the '516 patent (Request No. 61).

Given your acknowledgment of your discovery obligations with respect to documents not produced from the subpoena to Lilly, we expect that ARIAD can substantially complete its production of any such documents by February 9.

You have never responded to my inquiry, sent on January 5, regarding your representation of the inventors for purposes of discovery in this case.  To reiterate, I asked which of the named inventors your firm represents for purposes of discovery in this case, which of the named inventors you will voluntarily produce for deposition, and for those of the named inventors that your firm is representing, whether you will accept service of documents such as subpoenas.  You had indicated that these issues would be resolved once Ms. Rosenblatt returned from vacation on January 15.  Please let us know by January 31 your answers to the above

## KIRKLAND & ELLIS LLP

January 26, 2007
Page 3

questions.  If you do not confirm your representation by January 31, we will assume that the inventors will not be represented by your firm and will proceed accordingly.

So that discovery in this case is not further delayed, please provide the requested information and documents as soon as possible.

Very truly yours,

for   Marcus E. Sernel

# EXHIBIT K

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Erick S. Ottoson
To Call Writer Directly:
312 861-2408
eottoson@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 27, 2006

VIA E-MAIL

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear David:

I am writing in response to your letter of October 25, 2006.

In response to your question regarding the dates on which we received documents from Lilly, with the exception of the disk labeled "August 17, 2006" we received the disks on the dates with which they are labeled. We did not receive the disk labeled "August 17, 2006" until September 22, 2006.

Regarding the meet and confer, the date and time you proposed is acceptable to us. We will call you at 2:30 p.m. PST on Monday. We expect during the meet and confer that you will be prepared to discuss the objections that ARIAD intends to maintain to our requests and to explain ARIAD's bases for those objections. To facilitate discussion, we provide below some comments on ARIAD's responses to our specific requests. In addition, we fail to see how ARIAD can deny that it has discoverable documents that are responsive to our requests. While we look forward to resolving ARIAD's specific objections, we also would like to discuss ARIAD's failure to produce even the following basic categories of documents: fully-updated U.S. and foreign patent prosecution files relating to the '516 patent and related patents and applications; documents from the reexamination of the '516 patent; documents relating to the Amgen Entities' ENBREL and KINERET products; documents relating to ARIAD's lawsuit against the United States Patent and Trademark Office seeking to halt the reexamination proceedings; demand letters and licensing files relating to the '516 patent and related patents, including documents relating to further discussions with any companies concerning possible licenses under the '516 and related patents and all documents relating to the products to which such discussions were addressed; inventor notebooks through at least 1995; documents relating

London         Los Angeles         New York         San Francisco         Washington, D.C.

# KIRKLAND & ELLIS LLP

October 27, 2006
Page 2

to ARIAD's contractual relationship with Harvard, MIT and the Whitehead Institute; documents establishing the ownership of the '516 patent; documents relating to research and development of products relating to the '516 patent; and documents from litigations involving the '516 patent, including the Lilly litigation.

As we have also provided in the past, some comments we have on ARIAD's objections include:

One recurring issue that runs throughout the objections is ARIAD's objection to producing documents that are publicly available or "are in the possession, custody or control of Plaintiffs or Plaintiffs' counsel, or any person or entity other than ARIAD, and are equally accessible to Plaintiffs through means less burdensome to ARIAD." Similarly, you have refused to produce any documents that you think might have been previously produced to us through the Lilly production. These objections are improper. There are no "public availability" or "a third party already produced them" exceptions to discoverability and production, and in any event, ARIAD cannot possibly know in all cases which documents are in the possession of "Plaintiffs or Plaintiffs' counsel," or to which documents we have access. Moreover, the mere fact that ARIAD possesses a document might be relevant in certain circumstances. Therefore, we ask that ARIAD withdraw these objections entirely.

As for more specific concerns:

**Request No. 1 --** We are entitled to documents from the PTO reexamination proceedings and any other proceedings that directly involve the '516 patent. We also do not understand the justification for arbitrarily limiting ARIAD's production to "publicly-available" pleadings (as opposed to all pleadings), and limiting the production of deposition transcripts to only selected portions of a subset of the available transcripts. Finally, please explain what is vague and ambiguous about the terms "transcripts" and "exhibits" and whether ARIAD is actually withholding documents based on the alleged vagueness/ambiguity.

**Requests No. 3-6 --** Efforts to develop products, compounds, or processes embodying the patented subject matter are relevant, at a minimum, to Amgen's enablement and written description defenses. Whether ARIAD has publicly announced a position as to whether specific compounds or processes are covered by the '516 patent is not the point. With respect to Request Number 4, ARIAD's objection based on third party confidentiality is also improper. ARIAD is free to notify any third parties who may have confidentiality concerns so that they may decide whether to seek relief from the Court.

## KIRKLAND & ELLIS LLP

October 27, 2006
Page 3

**Request No. 7** -- We are entitled to non-privileged documents relating to the preparation, filing and prosecution of the '516 patent. We do not understand the justification for arbitrarily limiting ARIAD's production to only "the file history and other documents of public record disclosed in the prosecution of the '516 patent."

**Request No. 8** -- In addition to presentations by ARIAD to outside entities regarding the '516 patent, which you have agreed to produce, we are also entitled to internal presentations by ARIAD "relating to the subject matter described and/or claimed" in the patent. We are also entitled to documents relating to any presentations *to* ARIAD concerning the patent or the subject matter described or claimed therein.

**Request No. 11** -- We are entitled to all documents that may bear on the issue of the appropriate priority date for each of the claims of the '516 patent, and not simply the prosecution history for this patent. Documents pertaining to whether the inventors had possession of the claimed invention prior to the various filing dates, whether public or confidential, are certainly discoverable.

**Request No. 12** -- To the extent ARIAD has materials covered by this request, they are discoverable. Again, whether ARIAD has publicly announced a position as to whether specific compounds or processes are covered by the patent is not the point.

**Request No. 13** -- We are entitled to documents from the PTO reexamination proceedings and any other proceedings directly involving the '516 patent. ARIAD's objection based on third party confidentiality is also improper. ARIAD is free to notify any third parties who may have confidentiality concerns so that they may decide whether to seek relief from the Court. Finally, please explain what is vague and ambiguous about the terms "any litigation or other legal or administrative proceeding" and whether ARIAD is actually withholding documents on this basis.

**Request No. 14** -- The '516 patent clearly relates to the NF-κB pathway, and thus any other patents or patent applications relating to this subject matter that ARIAD has in its possession, custody or control are discoverable.

**Request No. 16-17** -- Efforts to develop products or processes embodying the patented subject matter are relevant, at a minimum, to Amgen's enablement and written description defenses. We don't understand how you are interpreting a request for documents "sufficient to identify" the persons who assisted in such efforts as calling for privileged information. We also

# KIRKLAND & ELLIS LLP

October 27, 2006
Page 4

don't understand why the requested documents pertaining to "ARIAD's products and/or processes" would not be in ARIAD's possession, custody or control.

**Requests No. 19-20** -- We are entitled to more than just the actual agreements between ARIAD and the Institutions. We are entitled to other documents that relate to those agreements. We are also entitled to all documents pertaining to any other agreements, offers, or grants of rights to the subject matter of the '516 patent (at a minimum).

**Requests No. 21-23** -- Amgen is entitled to prior art, searches and analysis of prior art, and communications regarding prior art, that may be in ARIAD's possession, custody or control. ARIAD's position that it need only produce "the file history and other documents of public record disclosed in the prosecution of the '516 patent" in response to Request No. 21, and can completely ignore Requests 22 and 23, is improper. If ARIAD has prior art that was not disclosed to the PTO, for example, it is required to produce it.

**Request No. 30** -- ARIAD's relevance objection is improper. The documents sought by this request are clearly relevant for damages purposes, at a minimum. To the extent non-privileged documents exist, they must be produced.

**Request No. 31** -- Amgen is entitled to non-privileged documents relating to the invalidity or unenforceability of the claims. If ARIAD has any such documents, it must produce them without regard to Amgen's invalidity/unenforceability contentions.

**Request No. 32** -- Amgen is entitled to non-privileged documents relating to the construction of the claims. We do not understand the justification for arbitrarily limiting ARIAD's production to only "the file history and other documents of public record disclosed in the prosecution of the '516 patent."

**Request No. 35** -- ARIAD's relevance objection is improper. ARIAD's analysis of whether the claims cover other products and processes is obviously relevant to at least the issues of claim construction and anticipation/obviousness in this case, and any non-privileged documents containing such comparisons should be produced.

**Request No. 36** -- The request is not limited to "evaluation or analysis of ENBREL or KINERET." It also includes documents and things "relating to ENBREL or KINERET" generally. We are entitled to any such documents.

# KIRKLAND & ELLIS LLP

October 27, 2006
Page 5

**Request No. 37 --** ARIAD's relevance objection is improper. If ARIAD is in possession, custody or control of documents pertaining to Plaintiffs, we are entitled to them.

**Request No. 38 --** The request is not limited to documents associated with "presentations . . . regarding ENBREL and/or KINERET." It also includes documents associated with presentations relating to "any of the Amgen entities." If ARIAD is in possession, custody or control of documents pertaining to Plaintiffs, we are entitled to them.

**Request No. 40 --** ARIAD's refusal to produce communications relating to the '516 patent, at a minimum, is improper. We are entitled to such communications if they are non-privileged, and are entitled to privilege log entries if you believe they are privileged.

**Request No. 41 --** ARIAD's refusal to produce communications regarding other litigation involving the '516 patent, and communications regarding ENBREL and/or KINERET, is improper. We are entitled to such communications if they are non-privileged.

**Request No. 42 --** We are also entitled to documents relating to any other enforcement efforts that ARIAD may have undertaken in addition to the *Eli Lilly* case.

**Request No. 43 --** This request encompasses invalidity/unenforceability assertions by "any entity," whether or not such assertions are "publicly available" and without regard to the basis for Amgen's contentions in this case. If ARIAD has documents pertaining to such assertions by entities other than Amgen and Eli Lilly and is withholding them, please let us know.

**Request No. 44 --** ARIAD is limiting its response to "tutorials and videos that it has created." The request is not limited to "tutorials and videos" (it also includes "presentations" and "transcripts"), nor is it limited to documents that ARIAD has created (it includes materials created by anyone, if they are now in ARIAD's possession, custody or control).

**Request No. 45 --** We are entitled to the requested documents concerning TNF and/or TNFRs, and don't understand how you could contend otherwise or contend that such materials are not relevant given the products at issue in this case.

**Request No. 46 --** We are entitled to the requested documents concerning IL-1 and/or IL-1Rs, and don't understand how you could contend otherwise or contend that such materials are not relevant given the products at issue in this case.

# KIRKLAND & ELLIS LLP

October 27, 2006
Page 6

**Request No. 47 --** The requested documents regarding cyclosporin A are relevant to Amgen's invalidity defenses and must be produced.

**Request No. 48 --** The requested documents regarding NFAT are relevant to Amgen's invalidity defenses and must be produced.

**Request No. 49 --** If there are non-privileged documents that ARIAD or its counsel have referred to (read, looked at, reviewed, consulted, etc.) or relied upon in preparing discovery responses in this case, we are entitled to them.

**Request No. 50 --** There is no basis for ARIAD to limit its response to "the file history and other documents of public record disclosed in the prosecution of the '516 patent." If there are additional, non-privileged documents that relate to interviews, presentations, demonstrations or other communications at which a PTO employee was present, they are relevant and should be produced.

**Request No. 52 --** The documents sought by this request are relevant, at a minimum, for damages purposes. A valuation or appraisal could also be relevant in other ways, for example, if it contained comments or analysis on the subject matter of the patent. Thus, these documents should be produced.

**Request No. 53-55 --** The documents sought by these requests pertain to royalties, licensing fees, and projected royalty fees. These topics are clearly relevant to damages issues. At a minimum any such documents that pertain directly to the '516 patent must be produced.

**Request No. 56 --** Amgen is not suggesting that ARIAD disclose the identity of testifying experts prior to the deadline for revealing the identity of non-testifying experts. This does not allow ARIAD to refuse to produce any and all documents sent to, received from, or discussed with any experts that have previously testified, however. Moreover, ARIAD has not indicated that it intends to produce any of the requested documents even after the date for disclosure of expert testimony.

**Requests No. 57-60 --** These requests all deal with concepts taken straight out of the '516 patent that are relevant to claims and defenses in this case. There is no basis for ARIAD to withhold the requested documents.

**Request No. 61 --** We don't understand the basis for ARIAD's attempt to limit its response to documents that relate to "the claims" of the patent as opposed to those that relate to

# KIRKLAND & ELLIS LLP

October 27, 2006
Page 7

the patent generally or to ARIAD's discussion, identification or consideration of whether any companies, products or processes might practice the patent. ARIAD's identification or analysis of whether other companies, products or processes might practice the claims is relevant, for example, to claim construction and anticipation/obviousness issues in this case.

**Request No. 62** -- The requested documents are relevant for damages purposes, at a minimum. They could also be relevant inasmuch as they might reflect ARIAD's or others' views of the scope of the '516 patent and what the patent covers, for example.

As made clear above, we reject ARIAD's attempt to arbitrarily limit the scope of what it produces in response to Amgen's document requests. For example, in response to Request No. 27, ARIAD arbitrarily states that it will only produce documents "demonstrating the non-obviousness of the claimed inventions of the patents-in-suit by means of secondary considerations" even though the request includes such documents but is more broadly directed to documents that "support, contradict, or may contradict Ariad's contention that the subject matter of the '516 patent is non-obvious." ARIAD cannot simply produce documents it believes to support its position while withholding those that do not.

We have been over many of these issues before with your colleague Betsy Rosenblatt, but need you to finally take a definitive position as to where you stand on producing the requested documents. We look forward to discussing and hopefully resolving these issues on Monday.

Very truly yours,

Erick S. Ottoson

# EXHIBIT L

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA  90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

January 31, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:      *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

      You have inquired whether our firm is representing the inventors named on the '516 patent.  We are representing all of the inventors except for Louis Staudt and Roger Clerc.

      Very truly yours,

David I. Gindler

1632178

# EXHIBIT M

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

February 5, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:     *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

    I write in response to your letter of February 1, 2007, regarding inventors of the '516 patent.  All of the inventors residing in the United States whom we represent will be made available for deposition in their home locations.  We will accept service of subpoenas for each of them.

           Very truly yours,

David I. Gindler

1633941

# EXHIBIT N

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

April 5, 2007

**VIA E-MAIL**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

    Re:  Amgen Inc. v. ARIAD Pharmaceuticals, Inc.

Dear Drew:

    I am writing in response to your letter dated April 4, 2007, regarding Amgen's request to schedule the depositions of Dr. Baeuerle (who is a resident of Germany) and Dr. Corcorcan (who is a resident of Australia). Your letter states that there has been a "reversal of position" as to whether Drs. Baeuerle and Corcoran would appear for depositions in this case. That is untrue.

    In my letter to Marc Sernel dated January 31, 2007, I stated: "We are representing all of the inventors except for Louis Staudt and Roger Clerc." This letter makes no representation as to whether any inventor would voluntarily appear for a deposition or had authorized our firm to accept service of a subpoena. Nor did Marc understand my letter as suggesting otherwise, as evidenced by his letter dated February 1, 2007, in which he requested that I provide him "information regarding: which of the named inventors you would voluntarily produce for deposition; and whether you would accept service of documents such as subpoenas on behalf of the inventors." I responded as follows in my letter dated February 5, 2007: "All of the inventors residing in the United States whom we represent will be made available for deposition in their home locations. We will accept service of subpoenas for each of them." This letter says nothing about whether inventors residing outside of the United States would voluntarily appear for deposition or authorize our firm to accept service of a subpoena.

    In your April 4 letter, you state that "ARIAD made both named inventors available [for deposition] in its litigation with Lilly." My understanding is that Dr. Baeuerle voluntarily appeared for a deposition in Germany, but that Dr. Corcoran was not deposed. You also state that both inventors have a contractual duty to assist in litigation relating to the '516 patent. Although you do not identify the document that purportedly contains this contractual obligation, I assume that you are referring to the patent assignment executed by

1671682

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
April 5, 2007
Page 2


Drs. Baeuerle and Corcoran.  If that is the case, I do not agree with your characterization of those documents.  Nor do I understand how those documents would entitle you to command residents of Germany and Australia to respond to a United States subpoena.

     In any event, as stated in my April 3 letter, neither Dr. Baeuerle nor Dr. Corcoran has authorized our firm to accept service of a subpoena or any other document.

Very truly yours,

David I. Gindler

1671682

# EXHIBIT O

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California  90017

| Drew Diamond | | |
|---|---|---|
| To Call Writer Directly: | (213) 680-8400 | Facsimile: |
| 213 680-8217 | | (213) 680-8500 |
| ddiamond@kirkland.com | www.kirkland.com | Dir. Fax: 213 808-8043 |

March 29, 2007

**<u>Via E-mail</u>**

Elizabeth L. Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:  ***Amgen et al. v. ARIAD Pharmaceuticals, Inc.***, D. Del. Civil Action No. 06-259-MPT

Dear Betsy:

I write in response to your letters of a few hours ago, in which you propose to postpone several of the depositions that have been calendared for the next several weeks.

First, regarding the depositions for Drs. Fan, LeBowitz, and Singh, the notices you "received" yesterday simply resulted from our filing copies of the subpoenas we served earlier this month.  Contrary to your letter, we have not re-noticed these depositions, and have been willing to accommodate the new dates and location you requested for Drs. Singh and LeBowitz in your original letter of March 22, 2007.

We find it highly objectionable, however, that ARIAD would seek to postpone depositions for next week that have been previously agreed to by the parties.  We noticed Dr. Fan's deposition for April 6, you confirmed that Dr. Fan would be made available on April 6, and we had made arrangements to take Dr. Fan's depositions on that date.  We had similarly prepared to provide a witness in response to ARIAD's Third Notice of Deposition on April 5. For you to seek to unilaterally cancel these depositions at this time, and then turn around and demand that we confirm by the close of business **<u>today</u>** whether the new dates are acceptable, is unprofessional and discourteous.

Your postponement of these depositions, along with the delayed dates for the other depositions that have been noticed, raises serious concerns as to whether ARIAD will act in good faith to complete discovery in the time allotted by the Court.  ARIAD has sought to delay this case at every opportunity, and we are concerned that these latest postponements are just the

Elizabeth L. Rosenblatt, Esq.
March 29, 2007
Page 2


latest part of this strategy to delay.  Now that the Court has denied ARIAD's procedural motions, there is no basis at all to continue your delay tactics.

       Discovery in this case must move forward immediately, and we intend to bring the fact of ARIAD's delay (along with other outstanding discovery issues) to the Court's attention.  Please let us know if any of the noticed inventors are available on dates earlier than those proposed in your letter.  Assuming they are not, we will agree to take them on the proposed dates.

       Sincerely,

       */s/ Drew Diamond*

       Drew Diamond

# EXHIBIT P

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660·6324
TELEPHONE (949) 760·0991
FACSIMILE (949) 760·5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067·4276

TELEPHONE (310) 277·1010
FACSIMILE (310) 203·7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203·7090
FACSIMILE (310) 203·7199
brosenblatt@irell.com

March 29, 2007

**<u>VIA E-MAIL</u>**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

      Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

      Yesterday we received new notices of the subpoenas that were served on Chen-Ming Fan, Jonathan LeBowitz, and Haringder Singh on March 13, 2006. These notices identified the dates on the subpoenas as the dates for which they were originally noticed, rather than the dates proposed in my letter of March 22. As I wrote in that letter, scheduling conflicts exist for the originally noticed dates, so the depositions need to be rescheduled. I also must revise the date proposed for Chen-Ming Fan's deposition in my March 22 letter. Because you have set the first deposition to proceed on April 2, please let us know by the close of business today if the following dates are acceptable to Plaintiffs:

- Chen-Ming Fan: April 20, 2006 in Baltimore, Maryland (where he resides)

- Jonathan LeBowitz: April 24, 2006 in Milwaukee, Wisconsin (where he resides)

- Harinder Singh: April 27, 2006.

      Thank you for your cooperation.

                Sincerely,

                Betsy Rosenblatt

1665774

# EXHIBIT Q

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

March 30, 2007

**VIA E-MAIL**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

      Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

In response to your letter of yesterday afternoon, thank you for confirming that the depositions of Chen-Ming Fan, Jonathan LeBowitz, Harinder Singh, and the 30(b)(6) depositions of Plaintiffs pursuant to the third and first notices of deposition to Plaintiffs will go forward on April 20, April 24, April 27, April 12, and May 3 respectively, per my letters from earlier that day.  The 30(b)(6) deposition of Plaintiffs pursuant to the second notice of Plaintiffs remains scheduled for April 9.  There are no earlier dates on which the inventor depositions may take place.

Also, there is no need for accusations.  Since we had received no response to my earlier letters to you concerning deposition scheduling, we did not know how to interpret your filing of notices reiterating the original date for the inventor depositions.  In the future, such confusion can likely be alleviated through communication.  ARIAD is well aware of the short time frame for discovery set by the Court and is committed to conducting and providing discovery in a timely manner.  These conflicts, however, are unavoidable.

      Sincerely,

      Betsy Rosenblatt

1666136

# EXHIBIT R

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

March 21, 2007

**VIA E-MAIL**

Jamie McDole
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

> Re:  *Amgen, Inc. et al. v. ARIAD Pharmaceuticals, Inc.*,
> Civil Action No. 06-259-MPT (D. Del.)

Dear Jamie:

I write to confirm the substance of our conversation this afternoon regarding ARIAD's responses to Plaintiffs' First Set of Requests for Admission.

First, with respect to ARIAD's "vague and ambiguous" objections, ARIAD confirms that it has not withheld any responses specifically based on those objections.

Second, with respect to requests for which ARIAD responded that it has conducted a reasonable inquiry and cannot admit or deny, we invited Plaintiffs to provide any additional information that would aid in ARIAD's understanding of the requests or assist in ARIAD's inquiry in such a way that might permit ARIAD to admit or deny the requests (for example, greater detail to flesh out an incomplete hypothetical or references that Amgen believes provide information that would allow ARIAD to admit or deny).  During our call, you declined to provide any additional information.

With respect to Request Nos. 108-115 and 124-133, we maintain that the requests improperly call for a legal conclusion regarding claim construction.

We agreed that ARIAD will consider supplementing its responses to address the concerns you explained to us.  ARIAD will serve any supplemental responses by March 28. If these do not address your concerns or if you have any further concerns following any such supplementation, please let me know so that we might address those concerns at that time.

Sincerely,

Betsy Rosenblatt

1660220

# EXHIBIT S

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

March 28, 2007

**VIA E-MAIL**

Jamie McDole
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

Dear Jamie:

I write regarding Plaintiffs' request that ARIAD supplement its responses to Plaintiffs' First Set of Requests for Admission.  In my letter of March 21, 2006, I indicated that ARIAD would serve any supplemental responses by March 28.  ARIAD is considering supplemental responses and is likely to supplement some of its responses based on our meet and confer conversation.  It will take more time, however, for ARIAD to complete this consideration process.  ARIAD expects to serve any supplemental responses by Monday, April 2.

Sincerely,

Betsy Rosenblatt

1664087

# EXHIBIT T

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

April 2, 2007

**VIA E-MAIL**

Jamie H. McDole, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL  60601

Dear Jamie:

   I am writing to follow up on Betsy Rosenblatt's communications with you regarding Plaintiffs' request that ARIAD supplement its responses to Plaintiffs' First Set of Requests for Admission.  Although we expect to provide supplemental responses to certain of the Requests for Admission, it is taking considerably longer than we had hoped to complete that process, principally because of the large number of vague requests directed at highly technical subject matter and your refusal to provide any clarification during your conferences with our firm.  We will provide our supplemental responses as soon as they are complete, which we hope will be by the end of the week.

   Sincerely,

   David I. Gindler

1668778