# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

**500 DELAWARE AVENUE**

**P. O. BOX 1150**

**WILMINGTON, DELAWARE 19899**

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

April 17, 2007

The Honorable Mary Pat Thynge                    <u>VIA ELECTRONIC FILING</u>
United States District Court
844 North King Street
Wilmington, Delaware  19801

Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.,*
       <u>C.A. No. 06-259-MPT</u>

Dear Judge Thynge:

I write on behalf of ARIAD regarding deficiencies in Amgen's responses to ARIAD's interrogatories.  This Court has scheduled a teleconference on April 25, 2007, to address discovery issues that Amgen raised in its letter of April 9, 2007 (D.I. 176), and to which ARIAD responded on April 11, 2007 (D.I. 178).  In light of the aggressive discovery schedule in this case, ARIAD respectfully requests that the Court also address the numerous deficiencies in Amgen's interrogatory responses during the April 25 teleconference.

On February 22, 2007, ARIAD served its First Set of Interrogatories on Amgen.  (*See* D.I. 148.)  Amgen served responses and objections on March 26, 2007.  (Ex. A.)  On April 3, ARIAD sent a letter to Amgen describing the deficiencies in Amgen's responses.  (Ex. B.) Amgen replied on April 6 by dodging the issues—Amgen said not one word in defense of its objections or responses.  Instead, Amgen simply offered to meet and confer to discuss "what the appropriate timeline should be for both parties to provide any possible supplementation to which we might mutually agree." (Ex. C.)

On April 9, ARIAD again contacted Amgen, referring Amgen again to ARIAD's previous, detailed critique of Amgen's responses. (Ex. D.)  The next day, Amgen again deferred committing to supplementing its responses and instead requested to meet and confer by phone. (Ex. E.)  On April 11, ARIAD met and conferred with Amgen, at which point Amgen *again* declined to commit to supplementing its responses.  Amgen followed its meeting with ARIAD by reiterating its open-ended desire "for the parties to meet and confer regarding an appropriate schedule for supplementation." (Ex. F.)

Amgen's apparent refusal to supplement its responses is indefensible, especially considering its acknowledgement that supplementation is appropriate.  Amgen's interrogatory responses are deficient in many respects.  Indeed, Amgen has failed to provide any substantive response at all to several of ARIAD's interrogatories.  These include Interrogatory No. 3 (prior

The Honorable Mary Pat Thynge
April 17, 2007
Page 2

art under § 102(f)), Interrogatory No. 4 (prior art under § 102(g)), Interrogatory No. 7 (grounds for arguing indefiniteness), and Interrogatory No. 12 (willfulness).

Amgen objects to these—and nearly every other interrogatory—on the ground that they are "premature" because ARIAD had not identified the claims it intends to assert. This objection does not hold water, since Amgen purportedly filed this action to seek a declaration that every claim of the '516 patent is invalid and not infringed. Because we presume that Amgen performed the required analysis under Federal Rule of Civil Procedure 11 before filing this action one year ago, it is hard to understand how Amgen can credibly assert this objection. In any event, consistent with the Court's requirement that ARIAD seek leave to assert any infringement counterclaims by April 13, 2007, ARIAD supplemented its interrogatory responses on April 12, 2007, to identify the claims that ARIAD at this point has determined are infringed by Amgen (and Wyeth, Amgen's marketing and promotion partner for Enbrel). Therefore, Amgen should be required to withdraw this objection from every interrogatory and supplement its responses accordingly.

Amgen's responses to several individual interrogatories are also insufficient:

- Amgen has omitted crucial information from its answer to Interrogatory No. 2, which requests specific information about prior art that Amgen contends anticipates the '516 patent under 35 U.S.C. § 102(b). Although Amgen provides an extremely lengthy list of purportedly anticipating substances and conditions (including "low gravity"), Amgen fails to provide any of the specific information requested, and fails to indicate how any of the identified substances or conditions may implicate any claim of the '516 patent. Without the specifically requested information, including the date of the use or sale, the persons involved in such use or sale, or other persons with knowledge, ARIAD cannot evaluate Amgen's claims of anticipation or conduct meaningful discovery about them.

- Interrogatory Nos. 5 and 6 request claim charts identifying, for each item of prior art that Amgen contends anticipates the '516 patent (No. 5) or each combination of prior art that Amgen contends renders the '516 patent obvious (No. 6), "where specifically in such item of PRIOR ART [or combination of items] each element of each allegedly anticipated claim is found." Amgen's response fails to provide any such information, which is critical to evaluating Amgen's claims of anticipation. Amgen also fails to respond to Interrogatory 6's similarly critical request that, for each combination of allegedly invalidating prior art, Amgen identify the motivation to combine the prior art items.

- Interrogatory No. 8 requests that Amgen describe in detail the factual and legal basis (including the identity of all documents and persons) supporting Amgen's contention that any claim of the '516 patent is invalid for lack of enablement or written description under 35 U.S.C. § 1112(1). Amgen's response inexplicably

The Honorable Mary Pat Thynge
April 17, 2007
Page 3

does not identify any documents (other than the '516 patent) or any persons that support this contention. Such information is critical to evaluating and conducting meaningful discovery regarding Amgen's claims of invalidity.

- Interrogatory No. 11 calls for the factual and legal basis for Amgen's contention that it has not infringed the '516 patent. Amgen's response sets forth publicly available information concerning the mechanisms of action of Enbrel and Kineret, but fails to provide any explanation as to how those mechanisms of action lead Amgen to conclude that uses of the drugs do not infringe any of the claims of the '516 patent. A proper response to this interrogatory would include a claim chart with an element-by-element analysis.

- Interrogatory No. 13 requests the identities of five individuals most knowledgeable about mechanisms of action for each of Enbrel and Kineret. Amgen responded with the name of only one individual (the same individual that Amgen also identified in its Initial Disclosures and designated as its 30(b)(6) designee on a related topic). It is not credible that, among all the scientists at Amgen and its affiliated companies, only this one individual has knowledge about the mechanisms of action of these two drugs. Amgen has not even attempted to offer the names of separate individuals for Enbrel and Kineret, even though these drugs were developed by different companies and different laboratories within Amgen's corporate structure.

Amgen's failure to provide adequate responses to ARIAD's interrogatories materially delays discovery. As Your Honor knows, the discovery schedule in this case is very tight, and the parties must conduct depositions in a very short time frame. ARIAD requires the information sought in its interrogatories to notice and prepare for depositions. For this reason, ARIAD respectfully requests that the Court compel Amgen to provide substantive and complete responses to all of ARIAD's interrogatories.

Respectfully,

*/s/ John G. Day*

John G. Day

cc:    David I. Gindler, Esquire (via electronic mail)
Melanie K. Sharp, Esquire (by hand and via electronic mail)
Marcus E. Sernel, Esquire (via electronic mail)

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware Corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ARIAD PHARMACEUTICALS, INC., a Delaware corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 06 259-MPT |

## PLAINTIFFS' RESPONSES AND OBJECTIONS
## TO ARIAD'S FIRST SET OF INTERROGATORIES

Under Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Amgen, Inc.; Immunex Corporation; Amgen USA Inc.; Amgen Manufacturing, Limited; and Immunex Rhode Island Corporation (collectively, "Amgen") respond to Defendant ARIAD Pharmaceuticals, Inc.'s ("ARIAD") First Set of Set of Interrogatories. Each of Amgen's responses is subject to and incorporates Amgen's General Statement and General Objections as detailed below. The following responses are based on Amgen's present state of recollection, knowledge, and belief. They are at all times subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, are subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by Amgen or its attorneys, or further discovery from ARIAD and/or third parties. Amgen reserves the right to supplement these responses.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Please IDENTIFY each item of PRIOR ART constituting a patent or publication.

**RESPONSE TO INTERROGATORY NO. 1:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, each of the following references from the list below are relevant prior art with respect to the claims of U.S. Patent No. 6,410,516 ("the '516 patent"):

- Baeuerle, Biochimica et Biophysica Acta 1072: 63 (1991);

- Baldwin, Proceedings of the National Academy of Sciences of the United States of America 85: 723 (1988);

- Bielinska, Science 250: 997 (1990);

- Brini, European Cytokine Network 1: 131 (1990);

- Colston, Endocrinology 108: 1083 (1981);

- Dew, British Medical Journal 287: 23 (1983);

- Dobrilla, Hepato-Gastroenterology 31: 35 (1984);

- Eck, Molecular and Cellular Biology 13: 6530 (1993);

- Emmel, Science 246: 1617 (1989);

- Griffith, Annals of Surgery 196: 324 (1982);

- Griffith, Journal of Thoracic and Cardiovascular Surgery 88: 952 (1984);

- Hahn, Journal of Clinical Investigations 30: 274 (1951);

- Holick, Proceedings of the National Academy of Sciences of the United States of America 68: 803 (1971);

- Hoyos, Science 244: 457 (1989);

- Jones, Pharmacology & Toxicology 60: 217 (1987);

- King James Bible (1611);

- Kronke, Proceedings of the National Academy of Sciences of the United States of America 81: 5214 (1984);

- Lawson, Nature 230: 228 (1971);

- Lemire, Journal of Immunology 134: 3032 (1985);

- Lemire, Journal of Clinical Investigations 74: 657 (1984);

- Manolagas, Journal of Clinical Endocrinology and Metabolism 63: 394 (1986);

- Manolagas, Osteoporosis International Suppl. 1: 114 (1993);

- Meichle, Journal of Biological Chemistry 265: 8339 (1990);

- Mukaida, Journal of Biological Chemistry 269: 13289 (1994);

- Nagasawa, Journal of Cellural Physiology 109: 181 (1981);

- Norman, Science 173: 51 (1971);

- Physician's Desk Reference (1985);

- Physician's Desk Reference  (1980);

- Physician's Desk Reference  (1970);

- Provvendi, Science 221: 1181 (1983);

- Reed, Journal of Immunology 137: 150 (1986);

- Rigby, Journal of Clinical Investigations 79: 1659 (1987);

- Rigby, Journal of Immunology 135: 540 (1985);

- Rovera, Science 204: 868 (1979);

- Scheinman, Molecular and Cellular Biology 15: 943 (1995);

- Schmidt, Journal of Virology 64: 4037 (1990);

- Schreck, Journal of Experimental Medicine 175: 1181 (1992);

- Semmler, Tetrahedron Letters 40: 4147 (1972);

- Shirakawa, Molecular and Cellular Biology 9: 2424 (1989);

- Siebenlist, Molecular and Cellular Biology 6: 3042 (1986);

- St. Leger, Lancet 1: 1017 (1979);

- Staal, Proceedings of the National Academy of Sciences of the United States of America 87: 9943 (1990);

- Tanaka, Nucleic Acids Research 22: 3069 (1994);

- Tsoukas, Science 224:1438 (1984);

- Weissman, Scientific American 264: 84 (1991).

Amgen also fully incorporates herein by reference the August 2006 First Office Action in '516 patent Reexamination Control No. 90/007,503 (including the prior art listed in it), and in addition, all prior art cited or mentioned in the '516 patent or in its prosecution history. Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's

February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 2:

For PRIOR ART under 35 U.S.C. § 102(b), please specify the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the PERSON who made the use or who made and received the offer, or the PERSON who made the information known or to whom it was made known.

## RESPONSE TO INTERROGATORY NO. 2:

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, methods of using each of the following substances from the list below, having been in public use or on sale in this country

more than one year prior to the effective filing date of the '516 patent application, anticipate at least one claim of the '516 patent:

- 2-Amino-1-methyl-6-phenylimidazo[4,5-b]pyridine (PhIP)
- (Amino)imidazolylcarboxaldehyde derivative
- (kB site) Decoy oligonucleotides
- (S)-armepavine
- [6]-gingerol; casparol
- 0,0'-bismyristoyl thiamine disulfide (BMT)
- 1,2,3,4,6-penta-O-galloyl-beta-D-glucose
- 1,2,4-thiadiazolidine derivatives
- 1-[2-cyano-3,12-dioxooleana-1,9(11)-dien-28-oyl] imidazole
- 15-deoxy-prostaglandin J(2)
- 15-deoxyspergualin
- 17-allylamino-17-demethoxygeldanamycin
- 17-ß estradiol
- 1'-Acetoxychavicol acetate (Languas galanga)
- 1-Bromopropane
- 2',8"-biapigenin
- 2-[(aminocarbonyl)amino]-5-(4-fluorophenyl)-3- thiophenecarboxamides (TPCA-1)
- 20(S)-Protopanaxatriol (ginsenoside metabolite)
- 23-hydroxyursolic acid
- 2-acetylaminofluorene

- 2-amino-3-cyano-4-aryl-6-(2-hydroxy-phenyl)pyridine derivatives

- 2-methoxyestradiol

- 3,4,5-trimethoxy-4'-fluorochalcone

- 3C protease (Poliovirus)

- 4'-demethyl-6-methoxypodophyllotoxin (lignan of Linum tauricum Willd. ssp. tauricum)

- 4-phenylcoumarins (from Marila pluricostata)

- 5-aminosalicylic acid

- 5F (from Pteri syeminpinnata L)

- 5'-methylthioadenosine

- 6(5H)-phenanthridinone and benzamide

- 6-(Methylsulfinyl)hexyl isothiocyanate (Wasabi)

- 6-aminoquinazoline derivatives

- 7,7'-dihydroxy bursehernin

- 7-amino-4-methylcoumarin

- 8-acetoxy-5-hydroxyumbelliprenin (from Asafetida)

- 9-aminoacridine (9AA) derivatives (including the antimalaria drug quinacrine)

- Acetaminophen

- Acetyl-boswellic acids

- ACHP (2-amino-6-[2-(cyclopropylmethoxy)-6- hydroxyphenyl]-4-piperidin-4-yl nicotinonitrile

- Acrolein

- Actinodaphine (from Cinnamomum insularimontanum)

- Activated Protein C (APC)

- Adenosine and cyclic AMP

- Adiponectin

- ADP ribosylation inhibitors (nicotinamide, 3-aminobenzamide)

- Agastache rugosa leaf extract

- Aged garlic extract (allicin)

- AGRO100 (G-quadraplex oligodeoxynucleotide)

- AIM2 (Absent In Melanoma protein) overexpression

- Alachlor

- Alginic acid

- A-Lipoic acid

- ALLnL (N-acetyl-leucinyl-leucynil-norleucynal, MG101)

- Allopurinol

- Alpha-difluoromethylornithine (polyamine depletion)

- Alpha-phenyl-n-tert-butyl-nitrone (PBN)

- Alpha-pinene

- Alpha-zearalenol

- A-melanocyte-stimulating hormone (a-MSH)

- Amentoflavone

- Amino-pyrimidine derivative

- AMP-activated protein kinase

- Amrinone

- Anandamide

- Andrographolide

- Anetholdithiolthione

- Anethole

- Angelica dahurica radix extract

- Angiopoietin-1

- Anthocyanins (soybean)

- Antibiotics

- Anti-CD146 antibody AA98

- Anti-Neu antibody + paclitaxel

- Antithrombin

- Anti-thrombin III

- Antrodia camphorata extract

- APC0576

- Apigenin (4',5,7-trihydroxyflavone) (plant flavinoid)

- Apilimod

- APNE (N-acetyl-DL-phenylalanine-b-naphthylester)

- Apocynin

- Apple juice/extracts

- Arsenic trioxide

- Arnica montana extract (sequiterpene lactones)

- Artemisia capillaris Thunb extract

- Artemisia iwayomogi extract

- Artemisia p7F (5,6,3',5'-tetramethoxy 7,4'-hydroxyflavone)

- Artemisia sylvatica sesquiterpene lactones

- Artemisia vestita

- Artemisinin

- Artemisolide

- Arzanol

- AS602868

- Aspirin, sodium salicylate

- Astaxanthin

- Asteraceae sesquiterpene lactones (enhydrin, tetraludin A, repandins A, B, D, E)

- Astragaloside IV

- Astragalus membranaceus polysaccharide

- AT514 (serratamolide)

- A-tocopherol

- A-torphryl acetate

- A-torphryl succinate

- Atorvastatin

- Atrial Natriuretic Peptide (ANP)

- Atrovastat (HMG-CoA reductase inhibitor)

- Aucubin

- AvrA protein (Salmonella)

- Azidothymidine (AZT)

- Azithromycin

- Baicalein (5,6,7-trihydroxyflavone)

- Bambara groundnut (Vignea subterranean)

- Baoganning

- BAY-11-7082 (E3((4-methylphenyl)-sulfonyl)-2-propenenitrile)

- BAY-11-7083 (E3((4-t-butylphenyl)-sulfonyl)-2-propenenitrile)

- Bee venom (melittin)

- Benfotiamine (thiamine derivative)

- Benidipine

- Benzoimidazole derivative

- Benzyl isothiocyanate

- Beta-amyloid protein

- Beta-carboline

- Beta-Carotene

- Beta-catenin

- Betaine

- Beta-lapachone (a 1,2-naphthoquinone)

- Beta-Phenylethyl (PEITC) and 8-methylsulphinyloctyl isothiocyanates (MSO) (watercress)

- Betulinic acid

- Bifodobacteria

- Bikunin

- Biliverdin

- Bis-eugenol

- Bisphenol A

11

- Black raspberry extracts (cyanidin 3-O-glucoside, cyanidin 3-O-(2(G)-xylosylrutinoside), cyanidin 3-O-rutinoside)

- Black tea

- Blackberry extract

- Blue honeysuckle extract

- Blueberry and berry mix (Optiberry)

- BMD (N(1)-Benzyl-4-methylbenzene-1,2-diamine)

- BMS-345541 (4(2'-Aminoethyl)amino-1,8-dimethylimidazo(1,2-a) quinoxaline) and 4-amino derivatives

- Boronic Acid Peptide

- Bovine serum albumin

- Brazilian green propolis

- Breast cancer metastasis suppressor 1 (BRMS1)

- Bromelain

- Bruguiera gymnorrhiza compounds

- BSASM (plant extract mixture)

- BTEE (N-benzoyl L-tyrosine-ethylester)

- Buchang-tang

- Buddlejasaponin IV

- Bupleurum fruticosum phenylpropanoids

- Buthus martensi Karsch extract

- Butylated hydroxyanisole (BHA)

- BZLF1 (EBV protein)

- C5a

- Cacospongionolide B

- Caffeic Acid Phenethyl Ester (3,4-dihydroxycinnamic acid, CAPE)

- Calagualine (fern derivative)

- Calcitriol (1a,25-dihydroxyvitamin D3)

- Calcium/calmodulin-dependent kinase kinase (CaMKK) (and increased intracellular calcium by ionomycin, UTP and thapsigargin)

- Campthothecin

- Cancer bush (Sutherlandia frutescens)

- Candesartan

- Canine Distemper Virus

- Cannabidiol

- Cantharidin

- Caprofen

- Capsaicin (8-methyl-N-vanillyl-6-nonenamide)

- Capsiate

- Carbaryl

- Carbocisteine

- Carbon monoxide

- Carboplatin

- Cardamomin

- Cardamonin

- Carnosol

- Carvedilol

- Catalposide (stem bark)

- Catechol Derivatives

- Cat's claw bark (Uncaria tomentosa Rubiaceae) Maca

- CD43 overexpression

- CDDO-Me (synthetic triterpenoid)

- Celastrol

- Celecoxib and germcitabine

- Centaurea L (Asteraceae) extracts

- Cepharanthine

- Chalcone

- Cheongyeolsaseuptang

- Chicory root (guaianolide 8-deoxylactucin)

- Chiisanoside

- Chitooligosaccharides

- Chitosan

- Chlamydiae CT441 protease

- Chlorogenic acid

- Chlorophyllin

- Chondrotin sulfate proteoglycan degradation product

- Chorionic gonadotropin

- Chromene derivatives

- CHS 828

- CHS 828 (anticancer drug)

- Cinnamaldehyde, 2-methoxycinnamaldehyde, 2-hydroxycinnamaldehyde

- Clarithromycin

- Cloricromene

- CML-1

- Cobrotoxin

- Cocaethylene

- Cocoa polyphenols

- Commerical peritoneal dialysis solution

- Competitor oligonucleotides

- Compound 5 (Uredio-thiophenecarboxamide derivative)

- Compound A

- Compound K (from Panax ginseng)

- Conophylline (Ervatamia microphylla)

- Cordycepin

- Core protein (Hepatitis C)

- CO-releasing molecules (CORM-2)

- Cornus officinalis extract

- Cortex cinnamomi extract

- Cortisone

- CP Compound (6-Hydroxy-7-methoxychroman-2-carboxylic acid phenylamide)

- CP-1158

- CPU0213

- Cryptotanshinone

- Curcumin (Diferulolylmethane)

- Cyanoguanidine CHS 828

- Cycloepoxydon; 1-hydroxy-2-hydroxymethyl-3-pent-1-enylbenzene

- Cyclolinteinone (sponge sesterterpene)

- Cyclopentones

- Cycloprodigiosin hycrochloride

- Cyclosporin A

- CYL-19s and CYL-26z, two synthetic alpha-methylene-gamma-butyrolactone derivatives

- Cytochalasin D

- Cytomegalovirus

- D609 (phosphatidylcholine-phospholipase C inhibitor)

- DA-9201 (from black rice)

- DA-9601 (Artemisia asiatica extract)

- Danshenshu

- DCIC (3,4-dichloroisocoumarin)

- Decursin

- Dehydroascorbic acid (Vitamin C)

- Dehydroepiandrosterone (DHEA) and DHEA-sulfate (DHEAS)

- Dehydroevodiamine

- Dehydroxymethylepoxyquinomicin (DHMEQ)

- Deoxyspergualin

- Desloratadine

- Dexanabinol

- DFP (diisopropyl fluorophosphate)

- Diamide (tyrosine phosphatase inhibitor)

- Diarylheptanoid 7-(4'-hydroxy-3'-methoxyphenyl)-1-phenylhept-4-en-3-one

- Diaylpyridine derivative

- Dibenzylbutyrolactone lignans

- Diethyldithiocarbamate (DDC)

- Diferoxamine

- Digitoxin

- Dihydroarteanniun

- Dihydroisoeugenol

- Dihydrolipoic Acid

- Dihydroxyphenylethanol

- Dilazep + fenofibric acid

- Diltiazem

- DIM/13C

- Dimethyldithiocarbamates (DMDTC)

- Dimethylfumarate (DMF)

- Dimethylsulfoxide (DMSO)

- Diosgenin

- Dioxin

- Dipyridamole

- Disulfiram

- Diterpenes (synthetic)

- Diterpenoids from Isodon rubescens or Liverwort Jungermannia

- Dobutamine

- Docosahexaenoic acid

- Down Syndrome candidate region 1 protein

- DQ 65-79 (aa 65-79 of the alpha helix of the alpha-chain of the class II HLA molecule DQA03011)

- DTD (4,10-dichloropyrido[5,6:4,5]thieno[3,2- d':3,2- d]-1, 2, 3-ditriazine)

- E1A (Adenovirus)

- E1B (Adenovirus)

- E3-10.4K/14.5K (Adenovirus)

- E3-14.7K (Adenovirus)

- E3330 (quinone derivative)

- E7 (human papillomavirus)

- E-73 (cycloheximide analog)

- Ebselen

- Ecabet sodium

- Eckol/Dieckol (seaweed E stolonifera)

- Edaravone

- Electrical stimulation of vagus nerve

- Emodin (3-methyl-1,6,8-trihydroxyanthraquinone)

- Entamoeba histolytica

- Ent-kaurane diterpenoids (Croton tonkinensis leaves; Isodon excisus)

- EPC-K1 (phosphodiester compound of vitamin E and vitamin C)

- Ephedrae herba (Mao)

- Epigallocatechin-3-gallate (EGCG; green tea polyphenols)

- Epinastine hydrochloride

- Epoxyquinol A (fungal metabolite)

- Epoxyquinone A monomer

- Equol

- Erbin overexpression

- Erbstatin (tyrosine kinase inhibitor)

- Ergosterol peroxide

- Ergothioneine

- Eriocalyxin B

- Erythromycin

- Estrogen (E2)

- Estrogen enhanced transcript

- Ethacrynic acid

- Ethyl-2-[(3-methyl-2,5-dioxo(3-pyrrolinyl))amino]-4-
  (trifluoromethyl)pyrimidine-5-carboxylate

- Ethyl Pyruvate (Glutathione depletion)

- Ethylene Glycol Tetraacetic Acid (EGTA)

- Evans Blue

- Evodiamine (Evodiae Fructus component)

- Extensively oxidized low density lipoprotein (ox-LDL), 4-Hydroxynonenal (HNE)

- Extract of the stem bark of Mangifera indica L.

- Extracts of Ochna macrocalyx bark

- FAK-related nonkinase

- Falcarindol

- Fenoldopam

- Fentanyl

- Fexofenadine hydrochloride

- FHIT (Fragile histidine triad protein)

- Fibrates

- Fisetin

- Fish oil feeding

- FK506 (Tacrolimus)

- FK778

- Flavonoids (Crataegus; Boerhaavia diffusa root; xanthohumol)

- Flavopiridol

- FLICE-Like Inhibitory Protein (FLIP)

- FLN29 overexpression

- Fludarabine

- Flunixin meglumine

- Flurbiprofen

- Flutamide

- Fluvastatin

- fMLP (bacterial peptide)

- Folic acid

- Fomes fomentarius methanol extracts

- Fosfomycin

- Fox1j

- Fructus Benincasae Recens extract

- Fucoidan

- Fungal gliotoxin

- Furonaphthoquinone

- G-120 (Ulmus davidiana Nakai glycoprotein)

- Gabexate mesilate

- Gallic acid

- Gamisanghyulyunbueum

- Gamma-glutamylcysteine synthetase (gamma-GCS)

- Gamma-mangostin (from Garcinia mangostana)

- Gamma-Tocotrienol

- Gangliosides

- Ganoderma lucidum polysaccharides (fungal dried spores or fruiting body)

- Garcinol (from extract of Garcinia indica fruit rind)

- Garcinone B

- Garlic

- Gax (homeobox protein)

- Geldanamycin

- Genipin

- Genistein (tyrosine kinase inhibitor)

- Geranylgeraniol

- Ghrelin

- Gigantol (Cymbidium georingii)

- Gingyo-san

- Ginkgo biloba extract

- Ginkgolide B

- Glabridin

- Gleevec (Imatanib)

- Glimepiride

- Glossogyne tenuifolia

- Glucocorticoids (dexamethasone, prednisone, methylprednisolone)

- Glucorticoid-induced leucine zipper protein (GILZ)

- Glucosamine sulfate

- Glutamine

- Glutathione

- Glycochenodeoxycholate

- Glycyrrhizin

- Gold

- Golli BG21 (product of myelin basic protein)

- Gossypyin

- Grape seed proanthocyanidins

- Green tea

- Guggulsterone

- Gum mastic

- Gumiganghwaltang

- Gymnocladus chinensis Baillon saponin

- Gypenoside XLIX (from Gynostemma pentaphyllum)

- H4/N5 (IkB-like proteins of Microplitis demolitor bracovirus)

- H7

- H8

- Halofuginone

- Harpagophytum procumbens (Devil's Claw) extracts

- HB-EGF (Heparin-binding epidermal growth factor-like growth factor)

- Heat (fever-like)

- Heat shock protein 72

- Heat shock protein-70

- Helenalin (sesquiterpene lactone)

- Hematein (plant compound)

- Hepatitis C virus NS5B

- Hepatocyte growth factor

- Herbal compound 861

- Herbimycin A

- Hesperetin

- Hirsutenone

- Histidine

- HIV-1 protease inhibitors (nelfinavir, ritonavir, or saquinavir)

- HIV-1 Resistance Factor

- HIV-1 Vpu protein

- Honokiol

- HSCO (hepatoma protein)

- Human breast milk

- Hydroquinone (HQ)

- Hydroxyethyl starch

- Hydroxyethylpuerarin

- Hypercapnic acidosis

- Hypericin

- Hyperosmolarity

- Hypochlorite

- Hypoestoxide

- Hypothermia

- Ibuprofen

- ICP27 (HSV-1)

- IkB-like protein A238L (encoded by ASFV)

- IKKb peptide to NEMO binding domain

- IL-10

- IL-11

- IL-13
- Ilimaquinone
- IMD-0354
- Imidazolylquinoline-carboxaldehyde derivative
- Indirubin-3'-oxime
- Indole-3-carbinol
- Indolecarboxamide derivative
- Inhaled isobutyl nitrite
- Inhibitor 22
- Insulin-like growth factor binding protein-3
- Interferon-alpha
- Interleukin 4 (IL-4)
- Interleukin-10
- Intravenous immunoglobulin
- IRFI 042 (Vitamin E-like compound)
- Irisilidone
- Iron tetrakis
- Isoliquiritigenin
- Isomallotochromanol and isomallotochromene
- Isorhapontigenin
- Isovitexin
- Jesterone dimer
- JM34 (benzamide derivative)

- JSH-21 (N1-Benzyl-4-methylbenzene-1,2-diamine)

- JSH-23 (4-Methyl- -(3-phenyl-propyl)-benzene-1,2-diamine

- K1L (Vaccinia virus protein)

- Kaempferol

- Kahweol

- Kamebakaurin

- Kangen-karyu extract

- Kaposi's sarcoma-associated herpesvirus K1 protein

- Kava (Piper methysticum) derivatives

- Ketamine

- Kinase suppressor of ras (KSR2)

- KIOM-79 (combined plant extracts)

- KL-1156 (6-Hydroxy-7-methoxychroman-2-carboxylic acid phenylamide)

- Kochia scoparia fruit (methanol extract)

- KT-90 (morphine synthetic derivative)

- Kushen flavonoids and kurarinone

- Kwei Ling Ko (Tortoise shell-Rhizome jelly)

- Lacidipine

- Lactacystine, b-lactone

- Lactobacillus fermentum phospholipid

- L-ascorbic acid

- Lazaroids

- L-cysteine

- Lead

- Leflunomide

- Leflunomide metabolite (A77 1726)

- Leptomycin B (LMB)

- Leucine-rich effector proteins of Salmonella & Shigella (SspH1 and IpaH9.8)

- Levamisole

- LF15-0195 (analog of 15-deoxyspergualine)

- Licorce extracts

- Ligonberries

- Ligusticum chuanxiong Hort root

- Linoleic acid

- Lithospermi radix

- LLM (N-acetyl-leucinyl-leucynil-methional)

- Losartin

- Lovastatin

- Low gravity

- Low level laser therapy

- Lupeol

- Luteolin

- LY29 and LY30

- LY294,002

- LY294002 (PI3-kinase inhibitor)  [2-(4-morpholinyl)-8-phenylchromone]

- M2L (Vaccinia virus)

- Macrolide antibiotics

- Magnolia ovovata extract

- Magnolol

- Malloapelta B

- Maltol

- Manassantins A and B

- Manganese superoxide dismutase (Mn-SOD)

- Mangiferin

- Manumycin A

- MAST205

- MC159 (Molluscum contagiosum virus)

- MC160 (Molluscum contagiosum virus)

- MEB (2-(4-morpholynl) ethyl butyrate hydrochloride)

- Mediterranean diet (virgin olive oil)

- Mediterranean plant extracts

- Melatonin

- Mercaptopyrazine

- Mesalamine

- Mesuol

- Metals (chromium, cadmium, gold, lead, mercury, zinc, arsenic)

- Methotrexate

- Mevinolin, 5'-methylthioadenosine (MTA)

- Midazolam

- Mild hypothermia

- ML120B (small molecule)

- MNF (IkB-like Myxoma virus)

- Moderate alcohol intake

- MOL 294 (small molecule)

- Molluscum contagiosum virus MC159 protein

- Momordin I

- Monochloramine

- Monochloramine and glycine chloramine (NH2Cl)

- Monomethylfumarate

- Montelukast

- Morinda officinalis extract

- Morphine

- Mosla dianthera extract

- Moxifloxacin

- Mulberry anthocyanins

- Multivalent liposomal antibodies (trastuzumab and rituximab)

- Murr1 gene product

- MX781 (retinoid antagonist)

- MYBBP1a

- Myricetin

- N-(4-hydroxyphenyl) retinamide

- N-acetyldopamine dimers (from P. cicadae)

- N-acetyl-L-cysteine (NAC)

- Nacyselyn (NAL)

- Nafamostat mesilate

- Naringen

- NDPP1 (CARD protein)

- NEF (HIV-1)

- NEMO CC2-LZ peptide

- Neomycin

- N-ethyl-maleimide (NEM)

- Neurofibromatosis-2 (NF-2; merlin) protein

- Nicorandil

- Nicotine

- Nilvadipine

- Nitric oxide

- Nitric oxide-donating aspirin

- Nitrosoglutathione

- Nitrosylcobalamin (vitamin B12 analog)

- NLS Cell permeable peptides (SN50)

- Nobiletin

- Nordihydroguaiaritic acid (NDGA)

- Novel Inhibitor

- NPM-ALK oncoprotein

- NRF (NF-kB repression factor)

- NS1 (Influenza A)

- NS3/4A (HCV protease)

- NS5A (Hepatitis C virus)

- NS5B (Hepatitis C protein)

- NSAIDs

- Nucling

- Ochnaflavone

- Oleandrin

- Oleic acid

- Oligonucleotide decoys

- Omapatrilat, enalapril, CGS 25462

- Omega-3 fatty acids

- Onconase (Ranpirnase)

- Opuntia ficus indica va saboten extract

- Oregonin

- Oridonin (diterpenoid from Rabdosia rubescens)

- Orthophenanthroline

- Overexpressed ZIP1

- Oxidized 1-palmitoyl-2-arachidonoyl-sn-glycero-3-phosphorylcholine (OXPAPC)

- p202a (interferon inducible protein)

- p21 (recombinant)

- p8

- Paeoniflorin

- Paeonol (from Mountain Cortx)

- PAN1 (aka NALP2 or PYPAF2)

- Panduratin A (from Kaempferia pandurata, Zingiberaceae)

- Panepoxydone

- Paromyxovirus SH gene products

- PC-SPES (8 herb mixture)

- Pectin (citrus)

- PEDF (pigment epithelium derived factor)

- Pefabloc (serine protease inhibitor)

- Penetratin

- Pentoxifylline (1-(5'-oxohexyl) 3,7-dimetylxanthine, PTX)

- Pepluanone

- Peptide Aldehydes:

- Peptide nucleic acid-DNA decoys

- Peptide YY

- Pergolide

- Perindopril

- Perrilyl alcohol

- Pervanadate (tyrosine phosphatase inhibitor)

- Petrosaspongiolide M

- Phallacidin

- Phenethylisothiocyanate

- Phenolic antioxidants (Hydroquinone and tert-butyl hydroquinone)

- Phenylarsine oxide (PAO, tyrosine phosphatase inhibitor)

- Phenytoin

- Phomol

- Phyllanthus amarus extracts

- Phyllanthus urinaria

- Phytic acid (inositol hexakisphosphate)

- PIAS1 (protein inhibitor of activatated STAT1)

- PIAS3

- Piceatannol

- Pinosylvin

- Pioglitazone (PPARgamma ligand)

- Piperine

- Pirfenidone

- Pitavastatin

- Pituitary adenylate cyclase-activating polypeptide (PACAP)

- Plagius flosculosus extract polyacetylene spiroketal

- Plant compound A (a phenyl aziridine precursor)

- Platycodi radix extract

- Platycodin saponins

- Plumbagin (5-hydroxy-2-methyl-1,4-naphthoquinone)

- PMC (2,2,5,7,8-pentamethyl-6-hydroxychromane)

- PN-50

- Polymyxin B

- Polyozellin

- Pomegranate fruit extract

- Poncirus trifoliata fruit extract

- POP2

- Pranlukast

- Pravastatin

- Prenylbisabolane 3 (from Croton eluteria Bennett)

- Probiotics

- Prodelphinidin B2 3, 3' di-O-gallate

- Prolyl hydroxylase-1

- Pro-opiomelanocortin

- Prostaglandin 15-deoxy-Delta(12,14)-PGJ(2)

- Prostaglandin A1

- Prostaglandin E2

- Protein-bound polysaccharide (PSK)

- Protein-bound polysaccharide from basidiomycetes

- PS-1145 (MLN1145)

- PS-341 (Bortezomib)

- Psychosine

- PTEN (tumor suppressor)

- PTX-B (pertussis toxin binding protein)

- PYPAF1 protein

- Pyrazolo[4,3-c]quinoline derivative

34

- Pyridine N-oxide derivatives

- Pyridooxazinone derivative

- Pyrithione

- Pyrrole-imidazole polyamides

- pyrrolidine dithiocarbamate (PDTC)

- Pyrrolinedithiocarbamate (PDTC)

- Qingkailing and Shuanghuanglian (Chinese medicinal preparations)

- Quercetin (low concentrations)

- Quinadril (ACE inhibitor)

- Quinazolines

- Quinic acid

- Raf Kinase Inhibitor Protein (RKIP)

- Raloxifene

- Rapamycin

- RASSF1A gene overexpression

- Raxofelast

- Reactive oxygen species

- Rebamipide

- Red ginseng

- Red wine

- Ref-1 (redox factor 1)

- RelA peptides (P1 and P6)

- Rengyolone

- Resiniferatoxin

- Resveratrol

- Retinoic acid receptor-related orphan receptor-alpha

- R-etodolac

- Rg(3), a ginseng derivative

- Rhein

- Rhubarb aqueous extract

- Rhus verniciflua Stokes fruits 36 kDa glycoprotein/ phenolic fraction

- Ribavirin

- Rifamides

- Rifampicin

- Ritonavir

- Rituximab (anti-CD20 antibody)

- Ro106-9920 (small molecule)

- RO31-8220 (PKC inhibitor)

- Rocaglamides (Aglaia derivatives)

- Rolipram

- Ron Tyrosine kinase receptor

- Rosiglitazone

- Rosmarinic acid

- Rotenone

- Rottlerin

- Roxithromycin

- Sabaeksan

- SAIF (Saccharomyces boulardii anti-inflammatory factor)

- Saikosaponin-d

- Saline (low Na+ istonic)

- Salinosporamide A (1, NPI-0052)

- S-allyl-cysteine (SAC, garlic compound)

- Salmeterol, fluticasone propionate

- Salvia miltiorrhoza Bunge extract

- Sanggenon C

- Sanguinarine (pseudochelerythrine, 13-methyl-[1,3]-benzodioxolo-[5,6-c]-1,3-dioxolo-4,5 phenanthridinium)

- Santonin diacetoxy acetal derivative

- Sargassum hemiphyllum methanol extract

- Saucerneol D and saucerneol E

- Sauchinone

- SB203580 (p38 MAPK inhibitor)

- SC236 (a selective COX-2 inhibitor)

- SC-514 (small molecule)

- Schisandra fructus extract

- Scoparone

- Scutellarin

- Scytonemin

- S-diclofenac (2-[92,6-dichlorphenyl-amino]benzeneacetic acid 4-[3H-1,2,dithiol-3-thione-5-y) pheny ester)

- Secretory leukoprotease inhibitor (SLPI)

- Selenomethionine

- Semecarpus anacardiu extract

- Serotonin derivative (N-(p-coumaroyl) serotonin, SC)

- Sesamin (from sesame oil)

- Sesaminol glucosides

- Sesquiterpene lactones (parthenolide; ergolide; guaianolides)

- SH protein (Mumps virus)

- Shen-Fu

- ShenQi compound recipe

- Shigella flexneri OspF protein

- Short chain fatty acids (sodium butyrate, sodium phenylbutyrate, sodium phenylacetate)

- Siah2

- Siegeskaurolic acid (from Siegesbeckia pubescens root)

- Silibinin

- Silica-ceramic

- Silybin

- Silymarin

- Simvastatin

- Sinomenine

- SIRT1 Deacetylase overexpression

- Siva-1

- SM-7368 (small molecule)

- Smilax bockii warb extract (flavenoids)

- Snake venom toxin (Vipera lebetina turanica)

- SOCS1

- Solanum nigrum L. 150 kDa glycoprotein

- Sophorae radix extract

- Sopoongsan

- Sorbus commixta cortex (methanol extract)

- SPC-839

- Sphondin (furanocoumarin derivative from Heracleum laciniatum)

- Spironolactone

- ST2 (IL-1-like receptor secreted form)

- Statins (several)

- Staurosporine

- Stinging nettle (Urtica dioica) plant extracts

- Strawberry extracts

- Styrax japonica terpenes and lignans

- Suberosin

- Sulfasalazine

- Sulfasalazine analogs

- Sulforaphane and phenylisothiocyanate

- Sulindac

- SUN C8079

- Surfactant protein A (SP-A)

- Survanta (Surfactant product)

- Sword brake fern extract

- T-614 (a methanesulfoanilide anti-arthritis inhibitor)

- Tanacetum larvatum extract

- Tansinones (Salvia miltiorrhiza Bunge, Labiatae roots)

- TAT-SR-IkBa; MTS-SR-IkBa

- Taurine + niacine

- Taxifolin

- Tempol

- Tepoxaline    (5-(4-chlorophenyl)-N-hydroxy-(4-methoxyphenyl)    -N-methyl-1H-
  pyrazole-3-propanamide)

- Tetracyclic A

- Tetramethylpyrazine

- Tetrandine (plant alkaloid)

- Tetrathiomolybdate

- Thalidomide (and thalidomide analogs)

- Theaflavin (black tea component)

- THI 52 (1-naphthylethyl-6,7-dihydroxy-1,2,3,4- tetrahydroisoquinoline)

- Thiazolidinedione MCC-555

- Thienopyridine

- Thio avarol derivatives

- Thiopental

- Thymoquinone

- Thymulin

- Tilianin

- Tipifarnib

- Titanium

- TLCK (N-a-tosyl-L-lysine chloromethyl ketone)

- TNAP

- TNP-470 (angiogenesis inhibitor)

- Tobacco smoke

- Tom1 (target of Myb-1) overexpression

- TPCK (N-a-tosyl-L-phenylalanine chloromethyl ketone)

- Trachelospermi caulis extract

- Tranilast [N-(3,4-dimethoxycinnamoyl)anthranilic acid]

- Transdominant p50

- Trichomomas vaginalis infection

- Trichostatin A

- Triclosan plus cetylpyridinium chloride

- Triflusal

- Triglyceride-rich lipoproteins

- Trilinolein

- Tripterygium polyglycosides

- Triptolide (PG490, extract of Chinese herb)

- Troglitazone

- Turmeric (curcumin)

- Tyrphostin AG-126

- U0126 (MEK inhibitor)

- Ubiquitin Ligase Inhibitors

- Uncaria tomentosum plant extract

- Unlabelled H-2K(b) probe

- Ursodeoxycholic acid

- Ursolic acid

- Uteroglobin

- V,C proteins (Sendai virus)

- Valerenic acid/acetylvalerenolic acid

- Vascular endothelial growth factor (VEGF)

- Vasoactive intestinal peptide

- Verapamil

- Vesnarinone

- vIRF3 (KSHV)

- Vitamin B6

- Vitamin C

- Vitamin D (calcitriol)

- Vitamin E and derivatives

- Volatile anesthetic treatment

- Wedelolactone

- Wheat Germ Agglutinin (WGA)

- Withaferin A

- Withanolides

- Witheringia solanacea leaf extracts

- Wogonin (5,7-dihydroxy-8-methoxyflavone)

- Wortmannin (fungal metabolite)

- Xanthium strumarium L. (methanol extract)

- Xanthoangelol D

- Xanthohumol (a hops prenylflavonoid)

- Xanthorrhizol

- Xia-Bai-San

- Xylitol

- Yakuchinone A and B

- Yan-gan-wan

- YC-1

- Yin-Chen-Hao

- YopJ (encoded by Yersinia pseudotuberculosis)

- Younggaechulgam-tang

- Yucca schidigera extract

- Zapotin (from Caimiroa edulis)

- ZAS3 protein

- Zerumbone

- Zinc

- Z-LLL (carbobenzoxyl-leucinyl-leucynil-leucynal, MG132)

- Z-LLnV (carbobenzoxyl-leucinyl-leucynil-norvalinal,MG115)

- Zoledronic acid

- ZUD protein

To the extent any reference cited in Amgen's Response to Interrogatory No. 1 may also constitute evidence of another method that, having been in public use or on sale in this country more than one year prior to the effective filing date of the '516 patent application, anticipates at least one claim of the '516 patent, Amgen fully incorporates by reference herein its Response to Interrogatory No. 1.

Investigation is continuing to determine what other methods, having been publicly used or on sale, are prior art with respect to any claim of the '516 patent. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted

any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

**INTERROGATORY NO. 3:**

For PRIOR ART under 35 U.S.C. § 102(f), please IDENTIFY all PERSONS from whom, and describe in detail the circumstances under which, the invention or any part of it was derived.

**RESPONSE TO INTERROGATORY NO. 3:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid under 35 U.S.C. § 102(f). This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's

products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

**INTERROGATORY NO. 4:**

For PRIOR ART under 35 U.S.C. § 102(g), please IDENTIFY all PERSONS involved in, and describe in detail the circumstances surrounding, the making of the invention before the patent applicants.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that investigation is continuing to determine the full extent to which the claims of the '516 patent are

invalid under 35 U.S.C. § 102(g). This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses when its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

**INTERROGATORY NO. 5:**

For each item of PRIOR ART that YOU contend anticipates any claim of the '516 PATENT, provide a chart that identifies where specifically in such item of PRIOR ART each element of each allegedly anticipated claim is found.

**RESPONSE TO INTERROGATORY NO. 5:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, each of the following references from the list below anticipates and/or renders obvious at least one claim of the '516 patent:

| | |
|---|---|
| Baeuerle, Biochimica et Biophysica Acta 1072: 63 (1991) | Among other things, this article discloses a use of cyclosporin A on T cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Baldwin, Proceedings of the National Academy of Sciences of the United States of America 85: 723 (1988) | Among other things, this article discloses a use of unlabelled H-2K(b) probe on 70Z/3 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1-18, 203. |
| Bielinska, Science 250: 997 (1990) | Among other things, this article discloses a use of oligonucleotide decoys on clone 13 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1-5, 11, 203. |
| Bielinska, Science 250: 997 | Among other things, this article discloses a use of oligonucleotide |

| | |
|---|---|
| (1990) | decoys on Jurkat cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1-9, 11, 203. |
| Brini, European Cytokine Network 1: 131 (1990) | Among other things, this article discloses a use of cyclosporin A on human peripheral blood T lymphocytes that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Colston, Endocrinology 108: 1083 (1981) | Among other things, this article discloses a use of calcitriol on Hs695T cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Dew, British Medical Journal 287: 23 (1983) | Among other things, this article discloses a use of 5-aminosalicylic acid on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Dobrilla, Hepato-Gastroenterology 31: 35 (1984) | Among other things, this article discloses a use of red wine on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Eck, Molecular and Cellular Biology 13: 6530 (1993) | Among other things, this article discloses a use of oligonucleotide decoys on HL-60 cells and human umbilical vein endothelial cells (HUVECs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this |

| | article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
|---|---|
| Emmel, Science 246: 1617 (1989) | Among other things, this article discloses a use of cyclosporin A on Jurkat cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Griffith, Annals of Surgery 196: 324 (1982) | Among other things, this article discloses a use of cyclosporin A and prednisone on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Griffith, Journal of Thoracic and Cardiovascular Surgery 88: 952 (1984) | Among other things, this article discloses a use of cyclosporin A in combination with prednisone and rabbit antithymocyte globulin on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Hahn, Journal of Clinical Investigations 30: 274 (1951) | Among other things, this article discloses a use of cortisone on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-10, 13-15, 17. |
| Holick, Proceedings of the National Academy of Sciences of the United States of America 68: 803 (1971) | Among other things, this article discloses a use of calcitriol on chickens that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Hoyos, Science 244: 457 (1989) | Among other things, this article discloses a use of competitor oligonucleotides on Jurkat cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending |

| | |
|---|---|
| | upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 203. |
| Jones, Pharmacology & Toxicology 60: 217 (1987) | Among other things, this article discloses a use of red wine on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| King James Bible (1611) | Among other things, this article discloses a use of red wine on that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Kronke, Proceedings of the National Academy of Sciences of the United States of America 81: 5214 (1984) | Among other things, this article discloses a use of cyclosporin A on Jurkat cells, subclone 32 that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Lawson, Nature 230: 228 (1971) | Among other things, this article discloses a use of calcitriol by humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Lemire, Journal of Immunology 134: 3032 (1985) | Among other things, this article discloses a use of calcitriol on isolated T cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Lemire, Journal of Clinical Investigations 74: 657 | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results |

| | |
|---|---|
| (1984) | in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Manolagas, Journal of Clinical Endocrinology and Metabolism 63: 394 (1986) | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Manolagas, Osteoporosis International Suppl. 1: 114 (1993) | Among other things, this article discloses a use of 17β-estradiol on LDA 11, MBA-13.2, C3, and MC3T3 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 18. |
| Meichle, Journal of Biological Chemistry 265: 8339 (1990) | Among other things, this article discloses a use of H7 or staurosporine on Jurkat cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Mukaida, Journal of Biological Chemistry 269: 13289 (1994) | Among other things, this article discloses a use of dexamethasone on T98G cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 18. |
| Nagasawa, Journal of Cellural Physiology 109: 181 (1981) | Among other things, this article discloses a use of dexamethasone on MOLT-3 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are |

| | |
|---|---|
| | ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Norman, Science 173: 51 (1971) | Among other things, this article discloses a use of calcitriol on chickens that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Physician's Desk Reference (1985) | Among other things, this article discloses a use of cyclosporine by humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Physician's Desk Reference (1980) | Among other things, this article discloses a use of sulindac by humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Physician's Desk Reference (1970) | Among other things, this article discloses a use of dexamethasone, antibiotics, sulfalazine, vitamin D by humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Provvendi, Science 221: 1181 (1983) | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Reed, Journal of Immunology 137: 150 | Among other things, this article discloses a use of cyclosporin A or dexamethasone on human peripheral blood mononuclear cells |

| | |
|---|---|
| (1986) | (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Rigby, Journal of Clinical Investigations 79: 1659 (1987) | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Rigby, Journal of Immunology 135: 540 (1985) | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Rovera, Science 204: 868 (1979) | Among other things, this article discloses a use of dexamethasone on HL-60 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Scheinman, Molecular and Cellular Biology 15: 943 (1995) | Among other things, this article discloses a use of dexamethasone on HeLa cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 18. |
| Schmidt, Journal of Virology 64: 4037 (1990) | Among other things, this article discloses a use of cyclosporin A on Jurkat cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, |

| | this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
|---|---|
| Schreck, Journal of Experimental Medicine 175: 1181 (1992) | Among other things, this article discloses a use of pyrrolidine dithiocarbamate (PDTC) on Jurkat or Ltk- cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1-9, 11, 18. |
| Schreck, Journal of Experimental Medicine 175: 1181 (1992) | Among other things, this article discloses a use of pyrrolidine dithiocarbamate (PDTC) on 70Z/3 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Semmler, Tetrahedron Letters 40: 4147 (1972) | Among other things, this article discloses a use of calcitriol by humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Shirakawa, Molecular and Cellular Biology 9: 2424 (1989) | Among other things, this article discloses a use of H8 on 70Z/3 and YT cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 18. |
| Shirakawa, Molecular and Cellular Biology 9: 2424 (1989) | Among other things, this article discloses a use of wheat germ agglutinin (WGA) on 70Z/3 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Siebenlist, Molecular and Cellular Biology 6: 3042 | Among other things, this article discloses a use of cyclosporin A on Jurkat cells that results in a decrease in the amount of nuclear |

| (1986) | NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
|---|---|
| St. Leger, Lancet 1: 1017 (1979) | Among other things, this article discloses a use of red wine on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Staal, Proceedings of the National Academy of Sciences of the United States of America 87: 9943 (1990) | Among other things, this article discloses a use of N-acetyl-L-cysteine (NAC) on 293.27.2 cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1-9, 11, 18. |
| Tanaka, Nucleic Acids Research 22: 3069 (1994) | Among other things, this article discloses a use of oligonucleotide decoys on HeLa cells that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 203. |
| Tsoukas, Science 224:1438 (1984) | Among other things, this article discloses a use of calcitriol on human peripheral blood mononuclear cells (PMBCs) that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9. |
| Weissman, Scientific American 264: 84 (1991) | Among other things, this article discloses a use of aspirin on humans that results in a decrease in the amount of nuclear NF-κB able to bind DNA. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least '516 patent independent claim(s) 1, 2, 5-9, 18. |

To the extent that any prior art listed in Amgen's Responses to Interrogatory Nos. 1-4 also anticipates and/or renders obvious at least one claim of the '516 patent, Amgen also fully incorporates herein by reference its Responses to Interrogatory Nos. 1-4.

Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 6:

For each item or combination of items of PRIOR ART that YOU contend renders obvious any claim of the '516 PATENT, provide a chart that identifies where specifically in such item or combination of items each element of each allegedly obvious claim is found, and explain all facts (and IDENTIFY all DOCUMENTS) showing any motivation to combine any such items of PRIOR ART.

## RESPONSE TO INTERROGATORY NO. 6:

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, depending upon the effective filing date for the '516 patent claims and upon how the limitations of those claims are ultimately construed, some or all of the references cited in its Response to Interrogatory No. 5 anticipate and/or render obvious at least one claim of the '516 patent. Accordingly, Amgen fully incorporates by reference herein its Response to Interrogatory No. 5.

Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007,

ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

### INTERROGATORY NO. 7:

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) supporting YOUR contention that any claim of the '516 PATENT is invalid for indefiniteness under 35 U.S.C. § 112(2).

### RESPONSE TO INTERROGATORY NO. 7:

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2. This investigation, which is both complex

and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses when its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 8:

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) supporting YOUR contention that any claim of the '516 PATENT is invalid for lack of enablement or written description under 35 U.S.C. § 112(1).

## RESPONSE TO INTERROGATORY NO. 8:

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, under 35 U.S.C. § 112, ¶ 1, a patent specification must "contain a written description of the invention." The description is only sufficient if it clearly allows persons of ordinary skill in the art to recognize that the applicant invented what is claimed. Accordingly, the patentee's originally filed disclosure must convey to one of skill in the art that the inventor had possession of the full scope of later claimed subject matter at the time of filing. The written description requirement thereby guards against overreaching by requiring the inventors to disclose the full scope of the invention to the public. The specification is the foundation that describes what the claims, properly construed, can validly cover.

The claims of U.S. Patent No. 6,410,516 are invalid for failure to satisfy the written description requirement under 35 U.S.C. § 112, ¶ 1. Claims 1-18, 20-186, 191-202 include the limitation of "the method comprising reducing [or altering] NF-κB activity in the cell...." Claims 19 and 187-190 include the limitation of "reduc[ing] nuclear translocation of NF-κB in the cells." Claim 203 includes the limitation of "introducing a nucleic acid decoy molecule into the cell in an amount sufficient to inhibit expression of the gene [whose transcriptional activity is activated by binding of NF-κB to said gene]." The '516 patent does not provide an adequate description for any of the claimed methods. The '516 patent does not disclose any specific molecules (including "nucleic acid decoy molecules") that can be used in the claimed methods to

reduce NF-κB activity in cells to inhibit the expression of genes regulated by NF-κB (or to reduce nuclear translocation of NF-κB in the cells"). Nor does the '516 patent disclosure, which is general and hypothetical, provide any description of any structure, sequence, or other specific identification of any molecules to do this. Because there is no such disclosure, this description is insufficient to satisfy the written description requirement, as one of ordinary skill in the art would not understand that any of the named inventors were in possession of any method to "reduce NF-κB activity in the cell."

The specification also fails to provide an adequate written description of a method for inhibiting or reducing expression (or reducing nuclear translocation of NF-κB) "… in a cell …." The specification of the '516 patent does not provide any detailed disclosure of any method to reduce NF-κB activity in cells of any type *in vivo* or in any human cells. Moreover, the '516 specification does not even disclose methods for reducing NF-κB activity in cells *in vitro*.

The enablement requirement as set forth in 35 U.S.C. § 112, ¶ 1 requires that the specification set forth "the manner and process of making and using" the invention, "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected to make and use the same." 35 U.S.C. § 112, ¶ 1. To be enabling, the specification must teach one of ordinary skill in the art how to make and use the "full scope" of the claimed invention without "undue experimentation."

The claims of U.S. Patent No. 6,410,516 are invalid for failure to satisfy the enablement requirement under 35 U.S.C. § 112, ¶ 1. Claims 1-18, 20-186, 191-203 relate to methods for inhibiting, selectively inhibiting, or reducing gene expression by "reducing NF-κB activity in the cell," "altering NF -κB activity in the cell, " or "introducing a nucleic acid decoy molecule into the cell." Claims 19 and 187-190 include the limitation of "reduc[ing] nuclear translocation of

NF-κB in the cells." The disclosure of the '516 patent is insufficient to enable one of ordinary skill in the art to practice the claims without undue experimentation. The '516 patent does not include a working example of any of the claimed methods. The assays described in the specification fail to provide sufficient enablement. Furthermore, the '516 patent does not identify, describe, or even suggest any compound or composition, or how to use any compound or composition, either *in vitro* or *in vivo,* to reduce or alter NF-κB activity in cells, reduce nuclear translocation of NF-κB in the cells, or introduce a nucleic acid decoy molecule into the cell.

The '516 patent disclosure is general and hypothetical, and does not contain any working example of things that can be used to reduce NF-κB activity in cells. Because the specification provides no illustrative examples, one of ordinary skill in the art would have been unable to make molecules or use proposed hypothetical mechanisms to reduce NF-κB activity in cells.

The disclosure of the '516 patent also fails to enable one of ordinary skill in the art to inhibit or reduce expression (or reduce nuclear translocation of NF-κB) "… in a cell …." The specification of the '516 patent does not provide any detailed disclosure of any method to reduce NF-κB activity in cells of any type *in vivo* or in any human cells. Moreover, the '516 specification does not even disclose methods for reducing NF-κB activity in cells *in vitro.*

Investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid for lack of written description and/or enablement under 35 U.S.C. § 112, ¶ 1. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses when its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 9:

Describe in detail (including the IDENTITY of all DOCUMENTS and PERSONS upon which YOU will rely to establish) the level of skill of a person of ordinary skill in the art to which the subject matter of the '516 PATENT pertains, and identify all evidence (including all DOCUMENTS) on which YOU will rely to support YOUR contention.

## RESPONSE TO INTERROGATORY NO. 9:

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that the level of skill of a person of ordinary skill in the art to which the subject matter of the '516 purportedly pertains would be a doctorate level degree in biology, chemistry, or related fields and approximately three or so years of post-doctoral training.

Investigation is continuing to determine, among other things, the appropriate level of skill for a person of ordinary skill in the art to which the subject matter of the '516 purportedly pertains. This investigation is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses when its invalidity analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the request is overly broad, unduly burdensome, and

not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

**INTERROGATORY NO. 10:**

Provide YOUR construction of each term in each claim in the '516 PATENT that YOU believe requires construction, and describe in detail any intrinsic or extrinsic evidence that supports that construction.

**RESPONSE TO INTERROGATORY NO. 10:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that investigation is continuing to determine which terms in the claims of the '516 patent might require construction. This investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to

66

assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

**INTERROGATORY NO. 11:**

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) for YOUR contention that YOU have not infringed and are not infringing the '516 PATENT, directly, indirectly, literally, or by the doctrine of equivalents.

**RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen currently responds that, as alleged in the Complaint (and again in more detail in Amgen's Oppositions to ARIAD's multiple Motions to Dismiss), Amgen believes that its two products, Enbrel® and Kineret®, will soon be the target of ARIAD's infringement counterclaims. The Complaint and Amgen's Oppositions to ARIAD's multiple Motions to Dismiss are fully incorporated herein by reference. As of the date of Amgen's response, ARIAD has not yet identified which claims of the 202 claims remaining in

the patent-in-suit are allegedly infringed by Amgen. All 202 claims remaining in the patent-in-suit [which could be asserted by ARIAD] are directed in some manner to "reducing NF-κB activity in the cell."

Amgen believes that it will be able to show that it does not infringe any valid, enforceable claim of the patent-in-suit. However, depending upon the particular '516 patent claims that ARIAD may contend cover Enbrel® and depending upon the particular '516 patent claims that ARIAD may contend cover Kineret® (including, for each, whether the infringement is alleged to have occurred directly, indirectly (*i.e.*, by inducement or contributory infringement), literally, and/or under the doctrine of equivalents), different aspects of the mechanisms of action for Enbrel® or Kineret® may or may not become more or less important. As the relative importance of various aspects of the products' mechanism(s) of action cannot yet be known, Amgen's non-infringement contentions at the present time are based on the mechanisms of action that Amgen believes will be at issue in this case.

Kineret® (anakinra) is a recombinant form of the human interleukin-1 receptor antagonist (IL-1Ra). Kineret® is indicated for use in moderately to severely active rheumatoid arthritis. Kineret® blocks the biological activity of IL-1 by inhibiting IL-1 binding on the outside of the cell to the interleukin-1 type I receptor (IL-1RI) on the cell surface, which is expressed in a wide variety of tissues and organs. IL-1 production is induced in response to inflammatory stimuli and mediates various physiologic responses including inflammatory and immunological responses. IL-1 has a broad range of activities including cartilage degradation by its induction of the rapid loss of proteoglycans, as well as stimulation of bone resorption. The levels of the naturally occurring IL-1Ra in synovium and synovial fluid from rheumatoid arthritis (RA) patients are not sufficient to compete with the elevated amount of locally produced IL-1.

Enbrel® (etanercept) is a recombinant, dimeric fusion protein consisting of the extracellular ligand-binding portion of the human 75 kilodalton (p75) tumor necrosis factor receptor (TNFR) linked to the Fc portion of human IgG1. Enbrel® is indicated for use in moderately to severely active rheumatoid arthritis, psoriatic arthritis, ankylosing spondylitis, chronic, moderate to severe psoriasis, and moderately to severely active polyarticular-course juvenile rheumatoid arthritis. Enbrel binds tumor necrosis factor (TNF) outside of the cell and, thus blocks its interaction with TNF receptors on the cell surface. TNF is a naturally occurring cytokine that is involved in normal inflammatory and immune responses. It plays an important role in the inflammatory processes of rheumatoid arthritis (RA), polyarticular-course juvenile rheumatoid arthritis (JRA), ankylosing spondylitis (AS), chronic psoriasis, and the resulting joint pathology. In addition, TNF plays a role in the inflammatory process of plaque psoriasis. Elevated levels of TNF are found in involved tissues and fluids of patients with RA, AS, psoriatic arthritis, and plaque psoriasis.

Two distinct receptors for TNF, a 55 kilodalton protein (p55) and a 75 kilodalton protein (p75) exist naturally as monomeric molecules on cell surfaces and in soluble forms. Biological activity of TNF is dependent upon binding to either cell surface receptor. Enbrel® is a dimeric soluble form of the p75 TNF receptor that can bind to two TNF molecules. Enbrel® inhibits the binding of TNF on the outside of the cell to the TNF cell surface receptors.

Amgen will produce documents sufficient to show the mechanisms of action for Enbrel® and Kineret®. Amgen identifies Brent Appleton as knowledgeable regarding the mechanisms of action for Enbrel® and Kineret®.

Investigation is being undertaken in an effort to determine additional bases upon which Enbrel® and Kineret® do not infringe any valid, enforceable claim of the '516 patent. This

investigation, which is both complex and time consuming, is ongoing and incomplete. Amgen therefore reserves the right to amend this response, and will provide further supplemental responses as its non-infringement analyses are completed.

Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products, nor has it identified and described its basis for its interpretation of the '516 patent claims. In discovery responses served August 7, 2006, October 11, 2006, and March 7, 2007, ARIAD failed to identify the claims at issue and instead alleged that its infringement investigation of Amgen products is continuing but not yet complete. Pursuant to the Court's February 22, 2007 First Amended Scheduling Order, ARIAD must file any amended pleading to assert infringement counterclaims no later than April 13, 2007, but ARIAD has still not asserted any such counterclaims. Amgen also objects that this interrogatory is premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Moreover, Amgen objects to the extent that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 12:

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) upon which YOU will rely to establish that YOU have not been and are not now willfully infringing the '516 PATENT, directly, indirectly, literally, or by the doctrine of equivalents.

## RESPONSE TO INTERROGATORY NO. 12:

Subject to and without waiving Amgen's General Objections below, which are fully incorporated by reference herein, Amgen specifically objects that this interrogatory is premature because ARIAD has not yet identified the claims of the '516 patent that it intends to assert against any of Amgen's products or asserted that any alleged infringement by Amgen was willful. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts). In addition, Amgen incorporates its Response to Interrogatory No. 11 herein.

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## INTERROGATORY NO. 13:

For each of ENBREL and KINERET, identify the five persons, at least three of whom are YOUR current employees, whom YOU believe are the most knowledgeable regarding the mechanisms of action and interaction with NF-KB signaling.

71

**RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving Amgen's Specific Objections and General Objections below, which are fully incorporated by reference herein, Amgen identifies Brent Appleton as knowledgeable regarding the mechanisms of action for Enbrel® and Kineret®.

Amgen specifically objects that this interrogatory requests information that is not relevant to any claim or defense in this case. Moreover, Amgen objects that this interrogatory assumes facts not in evidence because it assumes that, for each of Enbrel® and Kineret®, there are at least 3 persons at Amgen (and at least 5 persons in all) who are "most knowledgeable" regarding the "mechanism(s) of action" [for each product] *and* [that product's] "interaction" with "NF-KB signaling." (emphasis added). Amgen also objects that this interrogatory is premature to the extent that it seeks information more appropriately sought through expert discovery. Amgen further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Amgen further objects that the terms "ENBREL," "KINERET," and "NF-KB" as defined broadly by ARIAD are vague and ambiguous; that the term "mechanisms of action," "interaction," and "NF-KB signaling," in the context of ARIAD's defined terms, are also vague and ambiguous; and the use of all these terms renders this request overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Amgen also objects that the term "most knowledgeable" is vague and ambiguous in the context of this request. Amgen interprets this request to seek the identity of any person who Amgen is likely to designate to represent the company at deposition or hearing in this matter regarding the mechanisms of action for Enbrel® or Kineret®. Amgen also objects that this interrogatory requires Amgen to respond to separate, multiple interrogatories (including subparts).

Amgen expressly reserves the right to supplement, modify, or amend its response contained herein.

## GENERAL STATEMENT

1.  Amgen's responses are made without in any way waiving or intending to waive, and instead preserve and intend to preserve the following:

    (a)  The right to raise all questions of authenticity, relevancy, materiality, privilege or admissibility with respect to the information provided and the documents identified and/or produced in response to these interrogatories, which may arise in any subsequent proceeding, including the trial of this or any other action;

    (b)  The right to object to the use of the information and/or documents in any subsequent proceeding in any subsequent proceeding, including the trial of this or any other action;

    (c)  The right to make subsequent responses if Amgen uncovers additional information and/or documents called for by these interrogatories as Amgen's investigation of the facts and the evidence pertinent to this action has been completed.

2.  Words and terms used in the foregoing responses shall be construed in accordance with their normal meanings and connotations, and shall in no way be interpreted as terms of art or statutorily defined terms used in the patent laws, and Amgen specifically disavows any such meaning or connotation that might be accorded to such terms unless specifically stated otherwise.

3.  Without waiving the objections set forth below, and subject to the limitations stated above, Amgen has provided the information it believes is responsive and the subject of legitimate discovery that has been uncovered by a reasonable investigation.

4.  Nothing in these responses is an admission by Amgen of the existence, relevance or admissibility of any information, for any purpose, or the truth or accuracy of any statement or characterization contained in any interrogatory.

5.  Amgen's investigation of facts and discovery of information and documents relating to the claims at issue in this action are continuing. Accordingly, Amgen's responses herein are based only on Amgen's current knowledge and reasonable belief. Amgen reserves the right to modify and/or supplement any and all of its responses herein, and to assert additional objections to these interrogatories as necessary and/or appropriate.

6.  Certain analyses are necessarily preliminary to the extent that ARIAD has failed to yet assert any specific patent infringement counterclaims against Amgen or to provide any indication of the constructions it intends to propose related to the limitations of those asserted claims. Amgen reserves the right to modify and/or supplement any and all of its responses herein after such assertions and indications have been made.

7.  Specific objections to an interrogatory are made in each response. In addition to those Specific Objections, Amgen generally objects to the interrogatories as follows, and hereby incorporates these General Objections into each interrogatory response whether or not explicitly referenced.

## GENERAL OBJECTIONS

1.  Amgen objects to each and every interrogatory to the extent that it seeks information, documents and/or things protected from disclosure by the attorney-client privilege, the work-product doctrine and/or the common-interest privilege. Any Specific Objections stated above on the grounds of attorney-client privilege and/or work-product doctrine in now way limit the generality of this objection. Nothing contained in this response is intended to be nor should be considered a waiver of any attorney-client privilege, work-

product protection, trade-secret privilege, the right of privacy, or any other applicable privilege or doctrine, and to the extent that any interrogatory may be construed as calling for disclosure of information, documents and/or things protected by such privileges or doctrines, a continuing objection to each and every such interrogatory is hereby imposed. Amgen will provide a privilege log in accordance with the Amgen's obligations under the Federal Rules of Civil Procedure, the Rules of the United States District Court for the District of Delaware, the Court's Protective Order, the applicable case law and/or in compliance with any agreements reached by the parties

2.  Amgen objects to each and every interrogatory to the extent that is seeks information, documents and/or things not relevant to any claim or defense in this action and to the extent that it seeks to impose requirements or obligations on Amgen in addition to or different from those imposed by the Federal Rules of Civil Procedure and the Court's rules and orders. In responding to each interrogatory, Amgen will provide information as may be required and proper under the Federal Rules of Civil Procedure and the Court's rules and orders.

3.  Amgen objects to each and every interrogatory to the extent that it is overly broad, unduly burdensome, and/or seeks information, documents and/or things not reasonably calculated to lead to the discovery of evidence relevant to any claim or defense in this action.

4.  Amgen objects on the ground that Interrogatories Nos. 1 through 13 are compound, requiring Amgen to respond to separate, multiple interrogatories (including subparts), and constitute an impermissible effort by ARIAD to circumvent the fifty interrogatory limit set forth in Local Rule 26.1(b).

5.  Amgen objects to any interrogatory requiring the identification of "all," "the entire," "any," "each," or "every" person, document or fact, or any similar unrestricted request,

on the ground that it is oppressive and unduly burdensome. In response to such a request, Amgen, unless otherwise noted, will identify those persons believed to have a significant knowledge of said matters, provide such information and/or identify such documents as can be located following a good faith search or inquiry of relevant files and personnel in accordance with the requirements of Rule 33 of the Federal Rules of Civil Procedure.

6.  Amgen objects to each and every interrogatory to the extent it seeks information, documents and/or things of a confidential or proprietary nature to Amgen or to others to whom Amgen is under an obligation of confidentiality. Subject to the other objections and limitations stated herein, Amgen will provide such information and produce such documents and/or things subject to the terms of the Protective Order entered in this action.

7.  Amgen objects to ARIAD's "Definitions" and "Instructions" to the extent that they attempt to impose burdens and requirements upon Amgen that exceed or differ from the requirements of Rules 26, 33, and 34 of the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware, or any order or ruling by the Court in this action.

DATED: March 26, 2007

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on March 26, 2007,  I caused a copy of

Plaintiffs' Responses and Objections to ARIAD's First Set of Interrogatories to be served on the

following counsel of record in the manner indicated below:

### BY HAND DELIVERY & E-MAIL
John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

### BY E-MAIL (by agreement of counsel)

Morgan Chu (mchu@irell.com)
David I. Gindler (dgindler@irell.com)
Amir A. Naini (anaini@irell.com)
Christopher M. Newman (cnewman@irell.com)
Elizabeth L. Rosenblatt (brosenblatt@irell.com)
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276


Melanie K. Sharp (No. 2501)

# EXHIBIT B

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

April 3, 2007

**VIA E-MAIL**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

      Re:    *Amgen Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

      I am writing with respect to Amgen's responses to ARIAD's First Set of Interrogatories. The responses are seriously deficient in a number of respects. We have described the deficiencies below.

      Interrogatory No. 2: This interrogatory requests that Amgen specify, for prior art under 35 U.S.C. § 102(b), the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person who made the use or who made and received the offer, or the person who made the information known or to whom it was made known. Amgen's response is a thirty-eight page list of "substances" that purportedly have "been in public use or on sale in this country more than one year prior to the effective filing date of the '516 patent application, [and] anticipate at least one claim of the '516 patent." Amgen's response, at most, simply provides the identity of "the item offered for sale or publicly used or known." Amgen provides no other information.

      Interrogatory No. 5: This interrogatory requests that Amgen provide, for each item of prior art that allegedly *anticipates* any claim of the '516 patent, a claim chart identifying where specifically in such item of prior art each element of each allegedly anticipated claim is found. Amgen's response does not provide a claim chart of any kind. Rather, Amgen's response is a nine page list of articles, each of which is described in very general terms by a single sentence, followed by a generic statement that the article "anticipates *and/or renders obvious*" certain claims of the '516 patent—even though this interrogatory does not even ask about prior art that allegedly "render obvious" a claim of the '516 patent. Moreover, Amgen's response to Interrogatory No. 5 does not include any of the substances listed in its response to Interrogatory No. 2, all of which (according to Amgen) purportedly anticipate the claims of the '516 patent.

1670344

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
April 3, 2007
Page 2

Interrogatory No. 6:  This interrogatory requests that Amgen provide, for each item or combination of items of prior art that allegedly *render obvious* any claim of the '516 patent, a claim chart identifying where specifically in such item or combination of items each element of each allegedly obvious claim is found, and all facts and documents showing any motivation to combine any such items of prior art.  Amgen essentially provides no response to this interrogatory, other than to reference its response to Interrogatory No. 5—which does not contain the information requested in Interrogatory No. 6 (just as it does not contain the information requested in Interrogatory No. 5).

Interrogatory No. 8:  This interrogatory requests that Amgen describe in detail the factual and legal basis (including the identity of all documents and persons) supporting Amgen's contention that any claim of the '516 patent is invalid for lack of enablement or written description under 35 U.S.C. § 112(1).  Amgen's response inexplicably does not identify any documents (other than the '516 patent) or any persons that support this contention.

Interrogatory No. 13:  This interrogatory requests that Amgen, for each of Enbrel and Kineret, identify the five persons, at least three of whom are currently employed by Amgen, whom Amgen believes are most knowledgeable regarding the mechanisms of action and interaction with NF-KB signaling.  Although this is an eminently reasonable request, intended to elicit information regarding the identity of important witnesses, Amgen has provided no information whatsoever.

Please let us know by the close of  business on April 5, 2007, whether Amgen will serve complete, substantive supplemental responses to these interrogatories not later than the close of business on April 10, 2007.

In addition, we note that Amgen has provided no response at all to Interrogatory No. 10 (regarding construction of claim elements).  Nor has Amgen provided any response to Interrogatory No. 11 (facts supporting non-infringement) or Interrogatory No. 12 (facts supporting no willful infringement), other than a short description of Enbrel and Kineret. While we do not agree with Amgen's position, ARIAD will wait until the close of business on April 20, 2007, to receive complete, substantive responses to these interrogatories.  In the absence of complete, substantive responses to these interrogatories by that date, ARIAD will move to compel.

Very truly yours,

David I. Gindler

# EXHIBIT C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 6, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear David:

I write in response to your series of letters of the past few days.

**Inder Verma subpoena**: Yes, we intend to pursue this deposition. Please let us know whether you will voluntarily produce him for deposition, or whether we will need to seek the assistance of the Court.

**BLAs and INDs for the products-in-suit**: As explained in my letter to you of yesterday, Amgen is in the process of gathering and reviewing relevant documents that are responsive to ARIAD's requests for production, and expect to produce these next week. We anticipate that relevant portions of Amgen's submissions to the FDA will be included in that production.

**Amgen's Objections to Defendant's Third Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6)**: With respect to topics 1, 2, 3, and 7, Amgen maintains its current objections and responses. Amgen has a document retention policy and it will provide a witness to testify as to that policy. To the extent you believe that these topics are broader than this subject matter, please let me know specifically what you believe Amgen is excluding from these topics. While we currently believe anything beyond what we offer for these topics is overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence, we are willing to consider a request for a broader scope of information and are available to meet and confer on this issue.

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

April 6, 2007
Page 2

With respect to topic 4, Amgen maintains its objections and will not provide a witness on this topic. As you are well aware, invention disclosures (including the creation and maintenance of them) are privileged. Moreover, this topic is overbroad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Whether Amgen creates and maintains invention disclosures has no bearing on any issue in this case. If you nonetheless believe ARIAD is entitled to this discovery, please provide your justification and any authority that you believe supports your position.

Amgen stands by its objections to topic 6. The information this topic seeks, to the extent it is not overbroad, is contained in Amgen's Rule 26(a) initial disclosures or interrogatory responses. Beyond the disclosures and responses, this topic is duplicative, unduly burdensome, harassing, and not likely to lead to the discovery of admissible evidence. To the extent Amgen becomes aware of new information, it will supplement its initial disclosures or interrogatory responses consistent with the Federal Rules.

**Identification of witnesses for 30(b)(6) depositions**: We have already identified for you Amgen's designee in response to ARIAD's third 30(b)(6) deposition notice. Amgen's designee in response to ARIAD's first 30(b)(6) deposition notice will be Dr. Brent Appleton.

**Amgen's responses to ARIAD's First Set of Interrogatories**: We are considering the issues you raised in your letter regarding Amgen's interrogatory responses. We are willing to schedule a meet and confer with you at any time during the upcoming week to discuss more fully what you have characterized as deficiencies, what you would consider "complete, substantive" responses, and whether ARIAD is proposing to supplement ARIAD's interrogatory responses to make them "complete and substantive." We can discuss then what the appropriate timeline should be for both parties to provide any possible supplementation to which we might mutually agree.

**ARIAD's continuing refusal to supplement its responses to Amgen's Requests for Admission**: Despite being granted an extension to respond to our Requests for Admission, you ultimately provided us non-responses to the vast majority of them. We detailed our concerns with your deficient non-responses over two weeks ago in a meet and confer, yet you still have not supplemented these non-responses. You have left us no choice but to bring the insufficiency of your responses to the Court's attention.

**KIRKLAND & ELLIS LLP**

April 6, 2007
Page 3

     I would hope that the parties can channel their efforts toward satisfying their discovery obligations as opposed to writing self-serving letters back and forth.  Please let me know if you have any questions.

Very truly yours,

Marcus E. Sernel

# EXHIBIT D

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA  92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA  90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

April 9, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

      Re:    *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

I write in response to your letter dated April 6, 2007, covering a variety of discovery matters.  I have discussed the issues in the order in which they appear in your letter.

**Inder Verma subpoena**:  Dr. Verma will not voluntarily appear for a deposition in this matter.  We do not believe he is subject to discovery in this action.

**Amgen's document production**:  Thank you for confirming that Amgen will produce its documents this week.  We would appreciate receiving them as soon as possible.  Any delay will jeopardize our ability to complete fact discovery by June 13, 2007, the deadline established by the court.

We note that your letter indicates that Amgen's document production will include "relevant portions" of its FDA submissions.  ARIAD is entitled to receive a complete copy of the IND and BLA for Enbrel and Kinaret, not just those portions that Amgen deems to be "relevant."  Please confirm that Amgen will produce complete copies of these submissions.  If Amgen plans to withhold any portion of these submissions, whether for relevance any other reason, please immediately identify the portion that Amgen intends to withhold and the basis for refusing to disclose that information.

**Amgen's objections to ARIAD's third 30(b)(6) deposition notice**:  With respect to topics 1, 2, 3 and 7, we believe that the best course of action is to proceed with the deposition.  If it turns out that Amgen's objections raise issues as to the scope of examination, we can discuss them at or after the deposition.  With respect to topics 4 and 6, we will defer pursuing testimony on these topics pending our receipt and review and Amgen's document production.  Our review of Amgen's documents may enable ARIAD to narrow or eliminate these topics.

1673278

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
April 9, 2007
Page 2


**Amgen's responses to ARIAD's First Set of Interrogatories**:  My April 3 letter describes the deficiencies with Amgen's responses.  I do not believe that there is any additional information that Amgen requires to provide complete responses.  Many of ARIAD's interrogatories on modeled on the requirements for invalidity contentions set forth in the Patent Local Rules utilized in the Northern District of California and the Eastern District of Texas.  Your firm has handled many cases in these jurisdictions, and has no doubt seen contention interrogatories modeled on the requirements of these rules.  If you truly believe it would be helpful to meet and confer on the telephone, I can be available on Tuesday, April 10, at 8:00 a.m. PDT.

**ARIAD's responses to Amgen's First Set of Requests for Admission**:  ARIAD intends to supplement many of its responses to Amgen's First Set of Requests for Admissions.  We regret that we have underestimated the amount of time required to provide these supplemental responses.  Amgen has propounded 141 requests for admission, each of which addresses a substantive scientific issue.  I will give you an update in the next day or two as to the status of our efforts to supplement ARIAD's responses.

Very truly yours,

David I. Gindler

# EXHIBIT E

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 10, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:  *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear David:

I write in response to your recent letters that address various discovery issues.

**Verma deposition**:  You have stated that Dr. Verma will not "voluntarily" appear for deposition.  As you know, Dr. Verma has been <u>subpoenaed</u> to appear for deposition.  Please let us know by tomorrow whether Dr. Verma intends to comply with his obligations pursuant to the subpoena.

**Baeuerle and Corcoran depositions:**  Although you have indicated that you represent these two named inventors of the '516 patent, and both of them were voluntarily offered for deposition by ARIAD in the *Lilly* litigation, you have stated that you will not be producing them for deposition in this case.  I assume that we are at an impasse, but please let us know by tomorrow if there is any reason to meet and confer on this issue before we involve the Court.

**Baldwin, Lenardo, Sen, and Sharp depositions:**  You have not yet informed us whether the dates noticed in the subpoenas of these named inventors are acceptable.  Notices of these depositions were sent out over a week ago.  Please confirm that whether you will be producing these witnesses on the noticed dates, or provide alternate dates on which they are available, by tomorrow.

**Amgen's inequitable conduct allegation**:  I do not understand why you need all of the information requested in your letter in order to determine whether you consent to Amgen's proposed Amended Complaint that I sent for your review.  In any event, I can confirm that

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

April 10, 2007
Page 2


Amgen became aware of the basis for its unenforceability claim after the filing of its original complaint. Amgen believes that discovery should be completed within the schedule set by the Court and that ARIAD will not be prejudiced by inclusion of this claim because, among other things, no depositions have yet been taken.

**Interrogatory responses**: Your citation of the local rules for jurisdictions in California and Texas is confusing to me. As you know, this case is proceeding in the District of Delaware, and I am aware of no authority that indicates the District of Delaware is following the rules of any other jurisdiction. Moreover, I would remind you that your interrogatory responses remain deficient in many of the same respects for which you are complaining about our responses, and you have had our interrogatories for nine months. I would hope that you are willing to discuss tomorrow a reasonable schedule for supplementation of interrogatory responses.

I am available to meet and confer regarding any or all of these issues tomorrow. Please let me know what times work and I will call you to discuss them.


Very truly yours,

*/s/ Marcus E. Sernel*

Marcus E. Sernel

# EXHIBIT F

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 11, 2007

<u>VIA E-MAIL</u>

Amir A. Naini
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT**

Dear Amir:

I write to follow up on our telephone conversation of this morning, as well as some other pending issues.

In response to your questions as to if and when we will be supplementing our interrogatory responses, I want to make very clear that we have not taken the position that we are refusing to supplement our interrogatory responses. In fact, we do anticipate that some supplementation may be appropriate, especially in light of the newly-proposed counterclaims that you sent to us last evening. Since we have only just received those proposed counterclaims, and they have not even been filed with the Court, we are not yet prepared to provide a date certain for supplementation.

As I mentioned to you on the phone and in my prior letters, we think it would make sense for the parties to meet and confer regarding an appropriate schedule for supplementation. You said that you were not prepared on the phone this morning to discuss this, and would need to talk to David Gindler regarding your position. I would suggest that we have a meet and confer to discuss both parties' supplementation of interrogatory responses at a time when you are prepared to fully discuss this issue. I would also suggest this meet and confer cover the other issues raised in my letter of yesterday, including your final position on the Inder Verma deposition, as well as your position on the discovery of the foreign-based inventors.

As for the proposed amended answer and counterclaim that were sent to me late yesterday, please provide us the following information so we can determine our position regarding consent. We would specifically like to know when you became aware of your basis to

London    Los Angeles    New York    San Francisco    Washington, D.C.

# KIRKLAND & ELLIS LLP

April 11, 2007
Page 2

assert the counterclaim you are seeking to add, what additional discovery you believe this counterclaim will require, and whether you believe the case schedule will need to be adjusted to accommodate the addition of this counterclaim. We would also like to know how your proposed addition of Wyeth as a counterclaim defendant in this action will impact these issues.

I look forward to discussing these issues in more detail with you. Please let me know when you (or someone on your team) will be in a position to discuss these issues in detail.

Very truly yours,

Marcus E. Sernel