ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW
500 DELAWARE AVENUE
P. O. BOX 1150
WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

April 20, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware 19810

**VIA ELECTRONIC FILING**

Re: *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*, C.A. No. 06-259-MPT

Dear Judge Thynge:

We are writing on behalf of ARIAD Pharmaceuticals, Inc. ("ARIAD") to request the issuance of a protective order with respect to the subpoena *ad testificandum* issued by Amgen Inc. and related entities ("Amgen") to Inder M. Verma, Ph.D.[1] We respectfully request that this issue be added to the agenda for the April 25, 2007 discovery teleconference in this case, or alternatively, that it be heard at the earliest convenience of the Court and counsel.

The subpoena provides for Dr. Verma to appear for a deposition on May 1, 2007. (Ex. 1.) The sole basis for Amgen's attempt to depose Dr. Verma is his submission of an expert declaration on behalf of the applicants in the pending reexamination of the '516 patent (the patent-in-suit). Although ARIAD has also retained Dr. Verma as an expert consultant in the present litigation, ARIAD has no intention of designating him as a testifying expert in this case—and even if ARIAD were considering the possibility of doing so, ARIAD would have no obligation to make this election until July 7, 2007, as provided in the Amended Scheduling Order (D.I. 37.) If it were appropriate to depose him at all—and it is not, unless and until ARIAD designates him as a testifying expert in this case—the time for his deposition would be during expert discovery, not fact discovery.

Moreover, even if expert depositions do begin by that date, Amgen has not complied with the requirements of the Federal Rules of Civil Procedure for seeking discovery from non-testifying experts. Nor could Amgen do so. For this reason, we respectfully request that the Court issue a protective order foreclosing Amgen from conducting Dr. Verma's deposition unless and until he is designated as a testifying expert in this case.

**Dr. Verma Is a Non-Testifying Expert**. Dr. Verma is a professor of biochemistry at the Salk Institute's Laboratory of Genetics, and one of the nation's leading experts in gene therapy.

[1] Irell & Manella, which is participating in the representation of ARIAD, also represents Dr. Verma, and has separately objected to the subpoena *duces tecum* on Dr. Verma's behalf.

Because of this background, ARIAD retained him to submit an expert declaration on the applicants' behalf in the PTO reexamination proceedings,[2] and subsequently retained him as a technical consultant in the present litigation. ARIAD has no plans to designate Dr. Verma as a testifying expert.

Dr. Verma had no involvement in the development of the invention disclosed and claimed in the '516 patent and, other than his role as an expert consultant in the PTO proceedings and the present litigation, he has no affiliation with ARIAD, the applicants, or the assignees of the patent. He has no firsthand knowledge regarding the background of the '516 patent, and no personal stake in the outcome of this case. Nor is he a percipient witness to any relevant events in this case (and Amgen has not claimed otherwise during the parties' informal attempts to resolve this dispute).

**A Deposition of Dr. Verma Would Violate Federal Rule of Civil Procedure 26(b)(4)(B).** The Federal Rules of Civil Procedure provide that "[a] party may, . . . by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation . . . and who is not expected to be called as a witness at trial only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."[3] Fed. R. Civ. P. 26(b)(4)(B). A showing of exceptional circumstances is not easy to make. *Cf. Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980) (noting that "[a] party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden"); 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2032 (2d ed. 1994) (stating that it is "quite clear" that "since a litigant will not know what facts the opposing party's experts have discovered and what opinions they have formed, it will rarely be possible to make the required showing"). Amgen, however, has not even attempted to make such a showing. Under these circumstances, a deposition of Dr. Verma on May 1 would be a violation of Rule 26(b)(4)(B).

Permitting Amgen to depose Dr. Verma would not only conflict with the explicit requirements of Rule 26(b)(4)(B), but also vitiate its underlying purpose. *See Durflinger v. Artiles*, 727 F.2d 888, 891 (11th Cir. 1984) (explaining that Rule 26(b)(4)(B) "is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation," and finding that the defendants' attempt to obtain a report written by a non-testifying expert for the plaintiff was a violation of this rule); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 2002 WL 1906628, at *2 (D. Del. 2002) (Thynge, J.) (citing *Dayton-Phoenix Group v. Gen. Motors Corp.*, 1997 WL 1764760 (S.D. Ohio 1997) for the

[2] The subject matter of this declaration was expert scientific opinion, not specific facts about the development of the '516 patent.

[3] Rule 35(b) is not implicated here, as it involves testimony about physical or mental examinations of parties or persons in parties' custody.

proposition that one purpose of Rule 26(b)(4)(B) "is to promote fairness, which would not be accomplished by allowing access to the other party's trial preparation"). Since Dr. Verma is a non-testifying expert, permitting Amgen to depose him would unavoidably prejudice us by giving them access to our pretrial preparation.

To avoid such an abuse of the discovery process, we respectfully request that the Court issue a protective order foreclosing Amgen from conducting the deposition of Dr. Verma unless and until he is designated as a testifying expert in this case. As mentioned above, we will be prepared to discuss these issues at the April 25, 2007 teleconference, or at another time of the Court's choosing.

Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick

SJB/dmf
Attachment
179879.1

cc: David I. Gindler, Esquire (via electronic mail; w/ attachment)
Melanie K. Sharp, Esquire (by hand and via electronic mail; w/ attachment)
Marcus E. Sernel, Esquire (via electronic mail; w/ attachment)

# EXHIBIT 1

AO 88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the
UNITED STATES DISTRICT COURT
Southern District of California

Amgen, Inc., a Delaware corporation, et al.

v.

Ariad Pharmaceuticals, Inc., a Delaware corporation, et al.

# SUBPOENA IN A CIVIL CASE

CASE NUMBER: No. 06-259
Case pending in the District of Delaware

TO: Inder M. Verma (c/o David Gindler, Irell & Manella LLP)

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Sheraton San Diego Hotel & Marina, 1380 Harbor Island Dr., San Diego, CA 92101 (or at a location and time agreed upon by the parties) | May 1, 2007 9:00 am |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached.

| PLACE | DATE AND TIME |
|---|---|
| Sheraton San Diego Hotel & Marina, 1380 Harbor Island Dr., San Diego, CA 92101 (or at a location and time agreed upon by the parties) | April 10, 2007 9:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Drew Diamond | 3-29-07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Drew Diamond, SB# 205028, Attorney for Plaintiff (213) 680-8400
Kirkland & Ellis LLP, 777 S. Figueroa St., 37th Floor, Los Angeles, CA 90017

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

If action is pending in district other than district of issuance, state district under case number

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1. The term "'516 patent" shall mean United States Patent No. 6,410,516 (attached as Exhibit A hereto).

2. "Related Patent" shall mean any U.S. or foreign patent or patent application that (i) stems from or claims priority, either directly or indirectly, to U.S. patent application numbers 06/817,441, 07/155,207, 07/162,680, 07/280,173, 07/318,901, 07/341,436, 08/418,266, 06/946,365, 07/791,898, or 08/418,266; or (ii) refers to, describes or claims subject matter described and/or claimed in the '516 patent.

3. "ARIAD" shall mean ARIAD Pharmaceuticals, Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with ARIAD, and persons purporting to act on ARIAD's behalf or on whose behalf ARIAD has acted or acts.

4. "Inventors" refers to the list of named inventors on the face of the '516 patent.

5. "Document" is used in its customary broad sense within the context of the Federal Rules of Civil Procedure and shall mean any written, printed, recorded or graphic matter, computer memory, computer tapes and diskettes, tapes, films, photographs, drawings, or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including without limitation written and electronic communications, letters, correspondence, notes, memoranda of telephone conversations or meetings, diaries, desk calendars, interoffice communications, fax messages, e-mail messages, telegrams, telex

messages, records, studies, bills, receipts, checks, checkbooks, purchase orders, invoices, requisitions, studies, summaries, analyses, statistical and financial statements, charts, graphs, reports, computer printouts, laboratory notebooks, invention disclosure documents, patent applications and drafts thereof, test records, test reports, assignments, licenses, bills of sale, sale of business agreements, market studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers, journals, microfiche, microfilm photographic film, surveys, forms, printed brochures or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.

6. "Relating to" and "regarding" shall mean describing, depicting, summarizing, reflecting, constituting, containing, evidencing, discussing, analyzing, considering, or evaluating.

7. "And," "or," and "and/or" shall mean both the conjunctive and disjunctive and shall serve as an interrogatory for information that would be responsive under a conjunctive reading in addition to all information that would be responsive under a disjunctive reading.

8. The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by a change in tense.

9. "Identify," "identity" or "identification," with respect to a document or thing, shall mean to state the production number or the type or nature of the document (e.g., letter, memorandum, telegram, chart, laboratory report, etc.), the date of its preparation, the identity of the person(s) who prepared the document, the identity of person(s) who signed the document, the sender, the recipient(s) and addressee(s), a description of the subject matter and content, the name and address of any person having possession, custody, or control of the same or a true copy

thereof, and all other means of identifying the document with sufficient particularity so as to satisfy the requirements for its inclusion in a demand or interrogatory for its production pursuant to Federal Rule of Civil Procedure 34.

10. "Identify," "identity" or "identification," with respect to a natural person or company, shall mean to state the name, business address, and telephone number for such person or company and, in the case of natural persons, the person's title.

11. "Person" shall mean any natural person or any business, legal or governmental entity or association, or any other person recognizable at law, and its agents and employees.

12. "Communication" or "communications" shall mean any of the following: (i) any written letter, memorandum, e-mail or other such document; (ii) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or informal; (iii) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal; and (iv) any transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

13. You are requested to search all documents within your possession, custody, or control, wherever located, including, but not limited to, any documents placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf, in order to fully respond to the requests for documents herein.

14. Each request for documents set forth herein seeks production of all documents described, along with any attachments, drafts, non-identical copies, and translations thereof in your possession, custody, or control.

15. Documents from any single file shall be produced in the same order as they were found in such file, including labels, files, folders, and/or containers in which such documents are located in or associated with. If copies are produced in lieu of originals, such copies should be legible and bound or stapled in the same manner as the original. You are also requested to produce all versions of the foregoing documents stored by a computer internally, on disk, on CD-ROM, on tape, or on other memory device.

16. These requests are not limited as to time period unless otherwise stated.

17. If you object to any part of a document request, set forth the basis for your objection and respond to all parts of the document request to which you do not object.

18. If any privilege is claimed as a ground for not producing any document, state (a) the privilege claimed; (b) the author(s) and recipients of documents claimed to be privileged; (c) the date of the privileged communication; and (d) a description of the privileged communication sufficient to apprise Amgen of its privileged nature.

19. Each request for a document contemplates production of the document in its entirety, without abridgement, abbreviation, or expurgation of any sort. If a document responsive to any request herein cannot be produced in full, it shall be produced to the extent possible, with an explanation as to why production of the remainder is not possible.

20. If any documents identified by this Request have been destroyed or discarded, state (a) the nature of the documents; (b) the author(s) and recipient(s) of documents; (c) the date of the document; and (d) a location where a copy of the document may still exist.

## DOCUMENT REQUESTS

1. All documents and things related to the decisions to seek a patent covering the subject matter of the '516 patent and/or any Related Patents, including but not limited to any memoranda, notes of meetings, notes or handouts of presentations, and written communications.

2. All documents and things relating to the preparation, filing and prosecution of the '516 patent and/or any Related Patents.

3. All documents and things that were reviewed, received or maintained in connection with the preparation, filing or prosecution of the '516 patent and/or any Related Patents, including but not limited to any prior art and/or any technical and scientific publications.

4. All documents relating to any litigation or other legal or administrative proceeding, including but not limited to reexamination, opposition, reissue, or interference concerning the '516 patent and/or any Related Patents.

5. All documents and things relating to the decision to assign the rights of the subject matter of the '516 patent and/or any Related Patents to any entity, including but not limited to written policies governing the assignment of such rights, memoranda, and written communications.

6. All documents and things relating to any royalties or compensation or other consideration received by you in connection with the '516 patent and/or any Related Patents, including but not limited to agreements pursuant to which you received such royalties, compensation or other consideration and/or reports showing the receipt of any such royalties, compensation or other consideration and/or any documents promising the payment of such royalties, compensation or other consideration.

7. All documents and things relating to any communications regarding the subject matter discussed in the '516 patent and/or any Related Patents, including but not limited to

communications between any of the Inventors regarding the subject matter discussed in the '516 patent and/or any Related Patents.

8. All documents and things related to the design, research, development, or testing of the subject matter discussed in the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

9. All documents and things relating to (a) conception, (b) reduction to practice, and (c) diligence toward reduction to practice of the subject matter of the claims of the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

10. All documents and things relating to the design, research, development or testing of "decoy molecules" described in col. 37 of the '516 patent, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

11. All documents and things relating to the design, research, development or testing of "specific inhibitor molecules" described in col. 37 of the '516 patent, including but not limited to documentation regarding any attempts to identify, isolate and clone a corresponding gene, if any, research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

12. All documents and things relating to the design, research, development or testing of "dominantly interfering molecules" described in col. 38 of the '516 patent, including but not

limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

13. All documents and things relating to any research, development and testing of any other products and/or classes of compounds that practice, embody or incorporate the subject matter described and/or claimed in the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries..

14. All documents and things relating to tumor necrosis factor (TNF) and/or tumor necrosis factor receptors (TNFRs) as they relate to the subject matter of the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

15. All documents and things relating to interleukin-1 (IL-1) and/or interleukin-1 receptors (IL-1Rs) as they relate to the subject matter of the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

16. All documents and things relating to Enbrel (etanercept), as it relates to the subject matter of the '516 patent and/or any Related Patents, including but not limited to research notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

17. All documents and things relating to Kineret (anakinra), as it relates to the subject matter of the '516 patent and/or any Related Patents, including but not limited to research

notebooks, diaries, calendars, work records, grant proposals, conference presentations, research articles, invention disclosures and summaries.

18. All document and things that explain the subject matter described and/or claimed in the '516 patent and/or any Related Patents, including but not limited to tutorials, presentations, videos and transcripts.

19. All documents and things relating to the nature of the relationship between you and ARIAD with respect to the '516 patent.

20. All documents and things relating to the nature of the relationship between you and Harvard University, Massachusetts Institute of Technology, or the Whitehead Institute with respect to the '516 patent.

21. All documents and things relating to document destruction and/or retention policies at any institution or other entity by which you were employed and/or affiliated from the conception of the alleged inventions of the '516 patent to the present.