## YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. McBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DiPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DiLIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH

JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

———

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: (302) 571-6681
DIRECT FAX: (302) 576-3333
msharp@ycst.com

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DePALMA
MARGARET M. DiBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN

MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. McDERMOTT
TAMMY L. MERCER
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
    (NJ & PA ONLY)
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. McLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

April 23, 2007

**BY CM-ECF**

The Honorable Mary Pat Thynge
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

Re:   Amgen, Inc. et al.  v. ARIAD Pharmaceuticals, Inc.
      C. A. No.: 06-259 (MPT)

Dear Judge Thynge:

    We represent Plaintiffs (collectively referred to as "Amgen") in the above-referenced case, and write in response to ARIAD's April 17, 2007 letter relating to Amgen's interrogatory responses, and ARIAD's April 20 letter relating to discovery of Dr. Inder Verma. For the reasons stated below, Amgen believes the issues raised in ARIAD's April 17 letter are now moot, and the Court should reject ARIAD's arguments to prevent the appropriate discovery sought from Dr. Verma.

    **ARIAD's April 17 letter** -- ARIAD goes to great lengths to take Amgen to task for alleged "numerous deficiencies in Amgen interrogatory responses." Notably missing from ARIAD's letter, however, is *any support* for its statement that it engaged in a meet and confer in accordance with Local Rule 7.1.1. Indeed, no meet and confer ever occurred with respect to the interrogatory responses. A close look at ARIAD's letter and exhibits shows that on several occasions Amgen offered to supplement its interrogatory responses and to meet and confer regarding these issues, but *ARIAD* was not prepared (and refused) to do so. (Exs. C & F to ARIAD's April 17 Letter). In its haste to try to create a discovery issue, and instead of amicably discussing the issues with Amgen, ARIAD filed its letter with the Court. ARIAD's letter should thus not even be considered because of ARIAD's complete failure to comply with the meet and confer requirements of the Local Rules.

065028.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Mary Pat Thynge
April 23, 2007
Page 2

ARIAD's April 17 letter to the Court is also remarkable in view of the fact that ARIAD delayed until April 13 to even accuse Amgen of infringement in this case. In any event, Amgen has now supplemented its interrogatory responses. This supplementation should address any of ARIAD's stated concerns that are ripe for discussion. In addition, now that Amgen has included a counterclaim for willful infringement and damages, Amgen intends to reply to that counterclaim and will provide substantive responses to the corresponding interrogatories at the appropriate time. Therefore, even if the Court is inclined to consider ARIAD's April 17 letter, Amgen believes there is presently nothing left to discuss with respect to the issues raised therein.

**ARIAD'S April 20 letter** -- ARIAD is refusing to produce for deposition Dr. Inder Verma, who was subpoenaed by Amgen because of, among other things, a declaration he filed with the United States Patent Office that pertains to the claims of the '516 patent. In its letter of April 20, ARIAD seeks a protective order from this Court to preclude Dr. Verma's deposition from proceeding. But ARIAD acknowledges that it has no intention of designating Dr. Verma as an expert witness in this case, and thus Amgen's only opportunity to obtain discovery regarding Dr. Verma's declaration with the PTO is now through the vehicle of a fact deposition. ARIAD's attempt to hide Dr. Verma and his publicly-filed declaration from discovery should be rejected.

Amgen served Dr. Verma with a subpoena on March 29, 2007. ARIAD then notified Amgen on April 4, 2007 that Dr. Verma was a consultant for ARIAD in this matter and was being represented by Irell & Manella. Irell served objections to the subpoena on April 9, 2007, and later notified Amgen that Dr. Verma would not comply with the subpoena to appear for deposition.

ARIAD should be required to produce the requested documents and Dr. Verma for a deposition. There is apparently no dispute that ARIAD is in control of the requested documents and has the ability to produce Dr. Verma for a deposition. Indeed, Dr. Verma submitted a declaration in connection with the reexamination of the '516 patent on ARIAD's and the Institutions' behalf (and was likely compensated by ARIAD for having done so). This Court thus has the ability to order ARIAD to produce Dr. Verma for a deposition.

ARIAD's only basis for its request for a protective order is that Dr. Verma is purportedly a consulting expert for ARIAD in this matter. But consulting experts are routinely subject to discovery as to facts and other matters that exist independent of their consultancy. *See Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 2002 WL 1906628, *2 (D. Del. 2002) (Thynge, J.) (recognizing that a party may discover those facts and opinions held by another's consulting expert which were developed before the expert was retained for the particular litigation) (Ex. 1); 8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice & Procedure Civil 2d § 2029 (experts whose information was not acquired to prepare for trial fall outside of Rule 26(B)(4)(B)). The propriety of such discovery is clear when one considers that the work product doctrine forms the basis for shielding consulting experts from discovery. *See Villari v. Terminix Intern., Inc.*, 1988 WL 35905, *1 (E.D. Pa. 1988)

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
April 23, 2007
Page 3

("Federal Rule of Civil Procedure 26(b)(4)(B) describes the scope of work product immunity with respect to information in the hands of an expert retained in anticipation of litigation by a party who does not expect to call the witness at trial.") (Ex. 2). Facts and anything else that was not created in anticipation of litigation are not covered by the work product doctrine. *Atari Corp. v. Sega of America*, 161 F.R.D. 417, 421-22 (N.D. Cal. 1994).

        The public statements made by Dr. Verma in his declaration to the PTO, and his published works relating to NF-κB, comprise facts[1] that fall outside the scope of the work product doctrine and were not made in anticipation of litigation. ARIAD has, in any event, waived any protection to which it may have been entitled under the work product doctrine as a result of the public nature of Dr. Verma's statements. ARIAD cannot use Dr. Verma to make public statements on its behalf and at the same time shield discovery relating to those statements under the work-product doctrine. It is ARIAD's burden to establish the applicability of the work product doctrine to Dr. Verma's statements[2] and it has not and cannot do so. Amgen respectfully requests that the Court deny ARIAD's request for a protective order that seeks to thwart this legitimate discovery.

        **One additional discovery issue** -- ARIAD is refusing to make available for deposition any of the three foreign-based inventors of the '516 patent, despite the facts that (1) all of the '516 patent inventors, including the foreign inventors, are contractually obligated to assist with litigation pertaining to the '516 patent (*see e.g.*, Exs. 3-5),[3] and are thus under ARIAD's and the Institutions' control,  (2) ARIAD's counsel has expressly stated that it represents two of the three inventors (Ex. 6), and (3) these two inventors were voluntarily produced for deposition in the *Lilly* case (Exs. 7-8). Amgen requests that the Court order ARIAD to make the three foreign inventors available for deposition, as they did in the *Lilly* case, at a time and location that is convenient for the inventors.

---

[1]   Harvey Berger, ARIAD's CEO, confirmed the factual nature of Dr. Verma's declaration to the PTO during his recent deposition as an ARIAD 30(b)(6) designee. *See* Berger Dep. Tr. at 293:16-21 (Q: Did Inder Verma provide information to the PTO at ARIAD's request regarding facts surrounding the NF-(kappa)B patent, the '516 patent? MR. GINDLER: You can answer that yes or no. THE WITNESS: Yes.).

[2]   The party claiming work product immunity bears the burden of proving the applicability of the doctrine. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

[3]   Indeed, in the deposition of inventor Chen-Ming Fan taken just this past Friday, Dr. Fan confirmed that he was appearing for the deposition pursuant to his contractual obligations with the Defendants to do so, which are the same obligations found in each of the inventors' assignments. *See* Fan Dep. Tr. at 227:4-25; 228:1-5 (*Q: Do you understand that it's based upon your having signed this that you're here today? A: Yes.*).

# Young Conaway Stargatt & Taylor, LLP

The Honorable Mary Pat Thynge
April 23, 2007
Page 4

Amgen will be prepared to discuss these issues, and any others the Court would like to discuss, during the teleconference on April 25th.

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

MKS:mfd

cc:     Clerk of the Court (Hand Delivery)
      John G. Day, Esquire (via e-mail)
      David I. Gindler, Esquire (via e-mail)

065028.1001

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2002 WL 1906628 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Callaway Golf Co. v. Dunlop Slazenger Group
Americas, Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
CALLAWAY GOLF COMPANY, Plaintiff,
v.
DUNLOP SLAZENGER GROUP AMERICAS,
INC., d/b/a Maxfli, Defendant.
**No. Civ.A. 01-669(MPT).**

Aug. 14, 2002.

*ORDER*
THYNGE, Magistrate J.
**\*1** This discovery dispute arose when Callaway
advised Dunlop that it was withdrawing Dr. Mehta as
its expert and its intent to use Dr. Smits as its
testifying expert. This information was conveyed to
Dunlop on July 22, 2002, a little over a week before
the scheduled deposition of Dr. Mehta. As a result,
Callaway recognized that it was required to provide
an expert report from Dr. Smits and assumed that the
deposition of Dr. Mehta would not proceed. Dunlop
objects to this "substitution" on the basis that the
identification and exchange of expert reports has long
passed, that no expert report has been forthcoming
from Dr. Smits and that such conduct is prejudicial to
the defense. Dunlop also argues that it has the right to
depose Dr. Mehta and inquire into clearly relevant
and discoverable information. Callaway counters that
since it recognizes its obligation to provide an expert
report and will do so, there is no prejudice to Dunlop.
Further, relying on Fed.R.Civ.P. 26(b)(4)(B) and case
law interpreting this rule, Callaway argues that
experts who are initially designated as testifying
experts, but who are later withdrawn, may not be
deposed absent a showing of exceptional
circumstances. *D.I. 180.*

During a telephonic conference on July 29, 2002, this
matter (along with others) was addressed, with
counsel arguing their respective positions. Pursuant
to the court's instructions during the conference,
counsel proceeded thereafter via fax any additional
case law upon which they rely.[FN1]

> FN1. Interestingly, counsel cited the same

cases.

The issue, therefore, is whether under the applicable
civil rules of discovery may a party withdraw an
expert who had been previously identified as a
testifying expert and thereby, prevent the opposing
party from deposing that expert? In essence, what
Callaway is contending is that Dr. Mehta was
converted from a Rule 26(b)(4)(A) expert (an expert
to be relied upon at trial) to a Rule 26(b)(4)(B) expert
(an expert specially retained, but not expected to
testify at trial) and as a result, no discovery may be
obtained from him unless there exists exceptional
circumstances.[FN2]

> FN2. The other provision under rule
> 26(b)(4)(B), that is, as provided under Rule
> 35, is not applicable to this situation.

As pointed out in the parties' submissions, the
relationship between Rule 26(b)(4)(A) and (B) has
been addressed in a number of cases. In *House v.*
*Combined Ins. Co of Amer., 168 F.R.D. 236*
*(N.D.Iowa 1996),* the issue was extensively
discussed. In that matter, after examining the
plaintiff, defendant's designated rebuttal expert, who
was a physician, prepared a report and his deposition
was noticed. In additional, plaintiff's counsel filed a
motion to compel production of his report. Defendant
opposed on the basis that he had decided not to call
the doctor at trial. Defendant had not formally
withdrawn the doctor as an expert and had included
him in defendant's witness list in the pretrial order. In
its analysis, the *House* court identified four interests
weighing against allowing an opposing party to
depose or call at trial a consultant, non-testifying
expert witness.[FN3] In the opinion, the court analyzed
the exceptional circumstances, balancing and
entitlement standards, noting that the consulted-but-
never-designated expert properly falls under the work
product doctrine that protects matters prepared in
anticipation of litigation. However, that court found
that the "practical effect of a Rule 26 designation of
an expert is to make an expert available for
deposition by the opposing party," which enables
preservation of the expert's testimony should the
expert later become unavailable or may serve for
impeachment purposes. *Id. at 245.* As a result, the
court determined that the Rule 26 designation waived
the "free consultation" privilege under subsection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(b)(4)(B), even if the designation was subsequently withdrawn because the designation under subsection (b)(4)(A) eliminates or removes the "exceptional circumstances" category. *Id.* In reaching its conclusion, the court also relied on the nature and circumstances of the particular expert testimony sought, finding that by requiring a medical examination by a designated expert created a reliance or reasonable expectation that such an expert would be available. In applying the balancing concerns, the court determined that under that standard as well, the deposition was appropriate. [FN4] An influence on the court's decision was defendant's failure to appropriately and adequately prepare its expert testimony before the designation cut-off date. Regarding any possible prejudice to defendant before the jury that the expert had been original hired by the defendant, the court felt that issue could be reduced or eliminated by excluding such evidence. As a result, plaintiff's counsel was allowed to depose defendant's expert. *Id. at 248.*

> FN3. Those concerns include: 1) the desire to allow counsel to obtain necessary expert advice without fear that the adversary may obtain such information; 2) the unfairness of allowing an opposing party to reap the benefits from another party's efforts and expense; 3) the fear of discouraging experts from serving as consultants if their testimony could be compelled; and 4) the risk of prejudice because of the prior retention of an expert by an opposing party. *Id. at 241.*

> FN4. In the balancing analysis, the court relied upon the following considerations: 1) the interest in presenting relevant, probative information to the jury; 2) the court's interest in a proper resolution of the issues; and 3) plaintiff's reasonable reliance on being able to use the expert because she had been ask to consent to an examination.

**\*2** In the earlier case of *Ross v. Burlington N.R. Co., 136 F.R.D. 638 (N.D.Ill.1991),* the plaintiff had designated his expert and revealed the subject matter of his testimony. After the plaintiff withdrew the designation, the defendant sought to depose the expert. In denying plaintiff's motion to compel, the court held, "[s]ince plaintiff changed his mind before any expert testimony was given in this case, the witness never actually acted as a testifying expert witness." However, the *Ross* court did not address the

more thornier issue of the relationship between the two subsections of Rule 26 *after* the redesignated expert's facts and opinions have been disclosed.

The *Dayton-Phoenix Group v. General Motors Corp., 1997 WL 1764760 (S.D.Ohio 1997)* addressed the defendant's motion for a protective order to prevent the plaintiff from deposing an expert that defendant had designated and then subsequently withdrew and the dueling provisions of Rule 26(b)(4). Defendant argued that the provisions of 26(b)(4)(B) were applicable, while the plaintiff contended that since the defendant had designed the expert, Rule 26(b)(4)(A) applied. The *Dayton-Phoenix Group* court considered the differing results of both *House* and *Ross* and relied on the following to support its conclusion: the Advisory Committee Notes to Rule 26(b)(4)(B) limit discovery to trial witnesses; the primary purpose of Rule 26(b)(4)(B) is to allow a party to prepare adequately for cross-examination at trial, and its purpose is to promote fairness, which would not be accomplished by allowing access to the other party's trial preparation. As a result, in the absence of exceptional circumstances, the court granted defendant's motion in part, thereby preventing plaintiff from discovering facts acquired and opinions held by defendant's expert as a result of being retained in anticipation of the litigation. However, in an added wrinkle, the court recognized that a party may discover those facts and opinions held by another's consulting expert which were developed before the expert was retained for the particular litigation, but not those developed through the expert's employment with the opposing party in anticipation of the underlying litigation. Before allowing the deposition to proceed as so limited, the district court required the plaintiff to articulate the purpose for such a deposition, providing "a practical, trial based reason." [FN5]

> FN5. The opinion did not clearly indicate whether the opinion of the defense expert had been disclosed.

In *Mantolete v. Bolger, 96 F.R.D. 179 (D.Ariz.1982),* the plaintiff moved to compel the deposition of the defense expert, who had been previously designated as an expert for trial, then subsequently withdrawn. In finding that rule 26(b0(4)(B) applied and that the plaintiff failed to show exception circumstances the court denied plaintiff's motion. *Id. at 181-182.* In reaching its conclusion, the court held:
The reason for this rule is that while pretrial exchange of discovery regarding experts to be used

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1906628 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

as witnesses aids in narrowing the issues, preparation of cross examination and the elimination of surprise at trial, there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course the litigation should take.

*3 Again, it was not clear whether prior to the redesignation of defendant's expert there had been any disclosure regarding that expert's opinions.

_In re Shell Oil Refinery, 132 F.R.D. 437 (E.D.La.1990)_ dealt with the plaintiff's request to depose both designated and non-designated experts. On a motion for reconsideration, plaintiff, PLC sought the results of tests conducted by defendant, Shell on relevant material and leave to depose the authors of the preliminary expert reports. Shell argued that it had not decided which test results and experts it intended to use at trial and specifically represented that it did not intend to use two in-house experts (Nordstrom and Nelson) involved in the testing nor their preliminary reports. All the preliminary expert reports, including those of the two non-designated experts, had been provided to PLC prior to the filing of its motion. Relying on the Advisory Committee Notes to then Rule 26(b)(4)(A), the court determined that discovery was limited to trial experts, which information may only be obtained at a time when the parties know who their respective experts will be and found that, in light of the scheduling order cut-off dates, PLC's request was premature. Regarding the two experts defendant had consulted, but were not designated for trial, the court determined that despite receiving their preliminary reports, which was pursuant to a court-ordered deadline, their investigation and study was in anticipation of litigation. It also found that the Rule 26(b)(4)(B) provision of "specially employed" was applicable to non-testifying in-house experts, but not unlimited. When such experts are not so retained or employed, but their work was in anticipation of litigation, the discovery analysis is made under the work product doctrine, Rule 26(b)(3). However, since the court determined that those experts had been retained or specially employed, then the "exceptional circumstances" standard applied, placing a heavy burden on the moving party. Since PLC could obtain the substantial equivalent by having their own experts conduct testing, in essence finding no exceptional circumstances existed, the court denied plaintiff's motion for reconsideration.

Another extensive analysis of the relationship

between Rule 26(b)(4)(A) and (B) occurred in _FMC Corporation v. Vendo Company, 196 F.Supp.2d 1023 (E.D.Cal.2002)_. There, defendant moved to quash a third-party defendant's subpoenas of the plaintiff's experts, after a settlement was reached between the plaintiff and that defendant. After discussing the rationale of a number of the cases previously mentioned herein, the court granted defendant's motion to quash, relying primarily on the absence of meeting the exceptional circumstances requirement under Rule 26(B)(4)(B). _FMC Corporation_ dealt with experts who had been previously designated, then withdrawn _after_ their reports and opinions had been provided.

A common theme is apparent throughout the cases reviewed from various jurisdictions-the conversion of an expert designated for trial purposes under Rule 26(b)(4)(A), to a consulting expert, under Rule 26(b)(4)(B) is allowed and results in insulating that expert from discovery, absent the showing of exceptional circumstances. Although some of the cases identified herein by the parties did not indicate whether disclosure of the opinions had occurred before the change in designation, in those cases where such disclosure had clearly occurred, _In re Shell Oil Refinery_ and _FMC Corporation,_ the analysis is consistent between those two cases, as well as with the non-disclosure cases. Divulging the expert opinions did not alter the analysis. The only exception was _House,_ where plaintiff had undergone a medical examination by defendant's expert, one of the exceptions under 26(b)(4)(B).

*4 Despite Dunlop's arguments to the contrary, the court is not convinced that Dr. Mehta's deposition would promote objectives of Rule 26. Moreover, the only "prejudice" asserted by defendant is expense and time related concerns, that is, having its experts address the findings and conclusions of Dr. Mehta, which may be solved by allowing Dunlop the opportunity to review Dr. Smits's report and supplement its expert reports. However, it is not clear, at this stage, whether Dr. Mehta possessed relevant facts and opinions that relate to the aerodynamics of Callaway's patent infringement claim and that were developed _before_ he was retained as an expert by plaintiff. Before completely closing the door on his deposition, Dunlop will be allowed to present information regarding the purpose of his deposition, as limited herein, and shall also provide to the court the practical, trial based reasons for his limited deposition. Further, should the court allow the limited deposition of Dr. Mehta to proceed, that fact will not be determinative of his testimony being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 4
Not Reported in F.Supp.2d, 2002 WL 1906628 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

admissible at trial. Even if such information is relevant, this court will analyzed his testimony based on the standards of <u>Fed.R.Evid. 403</u> and if cumulative, especially of evidence provided by Dunlop's experts, it will not be allowed.

IT IS ORDERED that:

Should Dunlop wish to proceed with a deposition of Dr. Mehta as limited in this Order, on or before Thursday, August 22, 2002, Dunlop shall provide to the Court by letter, no longer than three (3) pages, 12 point font, the information required pursuant to this Order, including a brief description of Dr. Mehta's relationship to the parties, if any, independent of his position as a consulting expert. On or before Wednesday, August 28, 2002, Callaway may file a no more than a three (3) page response, 12 point font. A courtesy copy only of these submissions may be provided to chambers.

D.Del.,2002.
Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.
Not Reported in F.Supp.2d, 2002 WL 1906628 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1988 WL 35905 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Villari v. Terminix Intern., Inc.
E.D.Pa.,1988.
Only the Westlaw citation is currently available.
   United States District Court, E.D. Pennsylvania.
   Leonard F. VILLARI and Annette Villari, et al.
v.
TERMINIX INTERNATIONAL, INC.
**Civ. A. No. 85-1363.**

April 14, 1988.

David F. Simon, Pamela S. Goodwin, Philadelphia, Pa., for plaintiffs.
Mitchell S. Pinsly, Philadelphia, Pa., Edward L. Edelstein, Edward J. Carreiro, Jr., for Terminix International, Inc.

MEMORANDUM
LOUIS H. POLLAK, District Judge.
**\*1** This is a diversity action in which plaintiffs, the Villari family, allege that defendant pest control corporation, Terminix International, Inc. ("Terminix"), contaminated plaintiffs' home with the termiticide aldrin. Now before me are cross-motions to compel discovery. For the reasons that follow, defendant's motion will be denied, and plaintiffs' motion will be granted.

I.

Defendant has moved to compel production of documents of Joseph Highland, Ph.D., an expert retained by plaintiffs whom plaintiffs do not intend to call as a witness at trial. Plaintiffs consulted Dr. Highland regarding the health risks associated with exposure to aldrin, and regarding the efficacy of procedures available to clean up the chemical. Defendant served Dr. Highland with a subpoena and notice of records deposition in August, 1987, to which plaintiffs objected on the grounds that Dr. Highland's records are subject to attorney-client privilege [FN1] and work-product immunity.

Defendant characterizes Dr. Highland as an expert consulted "for the purpose of overseeing and evaluating the clean-up of the Villari house," and contends that Dr. Highland, together with plaintiffs' counsel, advised plaintiffs to delay and prolong

unnecessarily the clean-up process. Defendant wants to discover Dr. Highland's file in order to learn why the Villaris remained out of their home for longer then Terminix believes was necessary. This information is relevant to the amount of damages to which plaintiffs may be entitled for living expenses for the period during which they were out of their home awaiting its decontamination.

Federal Rule of Civil Procedure 26(b)(4)(B) describes the scope of work product immunity with respect to information in the hands of an expert retained in anticipation of litigation by a party who does not expect to call the witness at trial. "[A] party may discover facts known or opinions held by such an ·expert only on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." *See* Notes of Advisory Committee, 1970 Amendment.

Defendant contends that no work-product immunity protects the files, because the files were not prepared in anticipation of litigation. Plaintiffs respond that although Dr. Highland clearly was hired in part for a purpose independent of trial preparation-to help the Villari family guard against harmful further exposure to aldrin-he was hired for the additional, closely related purpose of preparing for the present litigation by helping the Villaris to ascertain the extent of their injury during the period when they were considering whether to file this suit. I find that Dr. Highland was retained for the dual purposes of (1) helping the Villaris decide how to protect their personal safety, and (2) determining the extent to which the Villaris might be justified in recovering from Terminix for the harms they believed they suffered.

Because at least one main purpose of Dr. Highland's retainer was to prepare for litigation, defendant must show that it has a substantial need for the files it seeks, such that it will suffer undue hardship if Dr. Highland is not compelled to produce them. Defendant contends that it has a substantial need for the files because without them it will be unable to assess the reasonableness of plaintiffs' decision not to return to their home until the aldrin had been reduced to a certain level. Defendant attempts to distinguish Dr. Highland's files from the opinions of other experts, thereby explaining why it would need his files in particular when other experts are available to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 35905 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 2

it, by contending that it was Dr. Highland who directed plaintiffs not to move back into their house. Plaintiffs point out, however, that the distinction defendant draws does not support its current motion, because Dr. Highland had no authority to direct plaintiffs.

*2 I agree with plaintiffs that defendant has failed to show substantial need for the files. The reasonableness of plaintiffs' decision when to move back into their house can be assessed in light of the testimony of other experts who are available to defendant, and who are familiar both with the hazards of various levels of aldrin and with the efficacy of the cleanup methods available in this case. Because defendant has not shown why the files of Dr. Highland in particular are necessary to its case, defendant's motion for an order compelling Dr. Highland to produce them is denied.

II.

Plaintiffs have cross-moved to compel defendant to produce an opinion letter, dated August 27, 1983, from the law firm of Webster, Chamberlain & Bean to the National Pest Control Association ("NPCA"), recommending that pest control companies disclose to customers the risks attending exposure to hazardous chemicals that the companies use. Plaintiffs' counsel contend that defendant produced the letter to them for inspection but then refused to provide them with a copy of it when plaintiffs' counsel were representing other plaintiffs in a separate but similar case against defendant. In that case, Judge Shapiro granted a motion to compel Terminix to produce the copy on the ground that any attorney-client privilege that might have applied to the letter had been waived when the letter was shown to opposing counsel. See Shargel v. Terminix, Civil Action No. 85-1954, Order dated January 20, 1987, (Exhibit J to plaintiff's Motion). According to plaintiffs' counsel, Terminix nonetheless continued to refuse to provide the copy, and the case was settled before plaintiffs could seek compliance with the Judge's order.

Defendant denies any knowledge of the letter ever having been produced, and objects to plaintiffs' current request for it on the ground that Terminix has no authority to release the letter. Defendant also controverts plaintiffs' contention that Terminix's waiver in Shargel of its attorney-client privilege applies in this case as well. In defendant's view, "Plaintiffs can obtain the letter just as easily as

defendant can" by requesting it directly from the NPCA.

The attorney-client privilege does not apply to the letter at issue because disclosure of a document to a third party, regardless of whether that party is a current adversary in litigation, waives the privilege for all purposes. Once a document has been produced for inspection, it has been made public and can no longer be considered confidential. Although defendant claims lack of knowledge of the production, Judge Shapiro found in Shargel that the letter had been produced and the privilege thereby waived. That waiver is effective for this case as well. In the absence of any grounds showing that defendant is under an obligation not to disclose the NPCA letter to third parties, defendant's contention that it lacks authority to release the letter is no impediment to plaintiffs' obtaining it in discovery. Although the letter may well be available from another source such as the NPCA, the fact that a relevant and non-privileged document sought in discovery may be available elsewhere does not constitute a legitimate objection to its production. Accordingly, plaintiffs' motion to compel production of the opinion letter is granted.

ORDER

*3 For the reasons stated in the accompanying memorandum, it is hereby ORDERED that defendant's motion to compel Dr. Highland to produce his files is DENIED. It is further ORDERED that plaintiffs' cross-motion to compel defendant to produce an opinion letter, dated August 27, 1983, from the law firm of Webster, Chamberlain & Bean to the National Pest Control Association is GRANTED. Defendant shall have seven days from the date of this order within which to provide plaintiffs with a copy of the opinion letter.

FN1. Because plaintiffs did not rely on the attorney-client privilege in opposing defendant's motion to compel, I will consider that ground to be abandoned.

E.D.Pa.,1988.
Villari v. Terminix Intern., Inc.
Not Reported in F.Supp., 1988 WL 35905 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

MIT-4167AAA

## Assignment

WHEREAS, we, David Baltimore, Ranjan Sen, Louis Staudt, Lynn M. Corcoran, Patrick A. Baeurle, Michael J. Lenardo, (hereinafter "the Assignors"), have, together with co-inventors Phillip A. Sharp, Harinder Singh, Jonathan LeBowitz, Albert S. Baldwin, Jr., Roger Clerc, Chen-Ming Fan and Tom Maniatis, invented a certain new and useful improvement in NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL REGULATION described in an application for Letters Patent of the United States, Serial No. 07/791,898, filed November 13, 1991.

WHEREAS, Whitehead Institute for Biomedical Research (hereinafter "ASSIGNEE"), a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and having a usual place of business at Nine Cambridge Center, Cambridge, MA  02142 desires to acquire an interest therein in accordance with agreements duly entered into with us;

NOW, THEREFORE, to all whom it may concern be it known that for and in consideration of the said agreements and of other good and valuable consideration, the receipt of which is hereby acknowledged, we have sold, assigned and transferred and by these presents do hereby sell, assign and transfer unto said ASSIGNEE, its successors, assigns and legal representatives, the entire right, title and interest in and throughout the United States of America, its territories and all foreign countries, in and to the said invention as described in said application, together with the entire right, title and interest in and to the said application and such Letters Patent as may issue thereon; said invention, application and Letters Patent to be held and enjoyed by said ASSIGNEE for its own use and behalf and for its successors, assigns and legal representatives, to the full end of the term for which said Letters Patent may be granted as fully and entirely as the same would have been held by us had this assignment and sale not been made; we hereby convey all rights arising under or pursuant to any and all international agreements, treaties or laws relating to the protection of industrial property by filing any such applications for Letters Patent. We hereby acknowledge that this assignment, being of the entire right, title and interest in and to said invention, carries with it the right in ASSIGNEE to apply for and obtain from competent authorities in all countries of the world any and all Letters Patent by attorneys and agents of ASSIGNEE selection and the right to procure the grant of all such Letters Patent to ASSIGNEE for

REEL 6017 FRAME 330

ADL 0017159—

-2-

its own name as assignee of the entire right, title and interest therein.

AND, we hereby further agree for ourselves and our executors and administrators to execute upon request any other lawful documents and likewise to perform any other lawful acts which may be deemed necessary to secure fully the aforesaid invention to said ASSIGNEE, its successors, assigns and legal representatives, but at its or their expense and charges, including the execution of applications for patents in foreign countries, and the execution of substitution, reissue, divisional or continuation applications and preliminary or other statements and the giving of testimony in any interference or other proceeding in which said invention or any application or patent directed thereto may be involved.

AND, we do hereby authorize and request the Commissioner of Patents of the United States to issue such Letters Patent as shall be granted upon said application or applications based thereon to said ASSIGNEE, its successors, assigns, and legal representatives.

Inventor_____ Date_____
               David Baltimore

Address_____

        _____

Witness_____ Date_____

Address_____

        _____

Witness_____ Date_____

Address_____

        _____

REEL 6017 FRAME 331

ADL 0017160

-3-

Inventor _Lynn M. Corcoran_ Date _Jan 3, 1992_
  Lynn M. Corcoran
Address _Walter & Eliza Hall Institute , P.O. Royal Melbourne_
_Hospital , VICTORIA AUSTRALIA 3050_

Witness _Tracey Frost_ Date _Jan 3 1992_
Address _10/5 Longland Rd Mitcham 3132._


Witness _ACVinaden_ Date _Jan 3, 1992_
Address _20/283 Royal Pde_
_Parkville Victoria 3050_

Inventor_____ Date_____
  Louis Staudt

Address_____

_____

Witness_____ Date_____
Address_____

_____

Witness_____ Date_____
Address_____

_____

REEL 6017 FRAME 332

ADL 0017161__

-4-

Inventor_____    Date_____
         Ranjan Sen

Address_____

       _____

Witness_____    Date_____

Address_____

       _____

Witness_____    Date_____

Address_____

       _____


Inventor_____    Date_____
         Patrick A. Baeurle

Address_____

       _____

Witness_____    Date_____

Address_____

       _____

Witness_____    Date_____

Address_____

       _____

REEL 6017 FRAME 333

-5-

Inventor_____   Date_____
          Michael J. Lenardo

Address_____

_____

Witness_____   Date_____

Address_____

_____

Witness_____   Date_____

Address_____

_____

RECORDED
PATENT AND TRADEMARK
OFFICE

FEB 18 1992

ADL 0017163__

# EXHIBIT 4

MIT-4167AAA

## Assignment

WHEREAS, we, David Baltimore, Ranjan Sen, Louis Staudt, Lynn M. Corcoran, Patrick A. Baeurle, Michael J. Lenardo, (hereinafter "the Assignors"), have, together with co-inventors Phillip A. Sharp, Harinder Singh, Jonathan LeBowitz, Albert S. Baldwin, Jr., Roger Clerc, Chen-Ming Fan and Tom Maniatis, invented a certain new and useful improvement in NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL REGULATION described in an application for Letters Patent of the United States, Serial No. 07/791,898, filed November 13, 1991.

WHEREAS, Whitehead Institute for Biomedical Research (hereinafter "ASSIGNEE"), a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and having a usual place of business at Nine Cambridge Center, Cambridge, MA  02142 desires to acquire an interest therein in accordance with agreements duly entered into with us;

NOW, THEREFORE, to all whom it may concern be it known that for and in consideration of the said agreements and of other good and valuable consideration, the receipt of which is hereby acknowledged, we have sold, assigned and transferred and by these presents do hereby sell, assign and transfer unto said ASSIGNEE, its successors, assigns and legal representatives, the entire right, title and interest in and throughout the United States of America, its territories and all foreign countries, in and to the said invention as described in said application, together with the entire right, title and interest in and to the said application and such Letters Patent as may issue thereon; said invention, application and Letters Patent to be held and enjoyed by said ASSIGNEE for its own use and behalf and for its successors, assigns and legal representatives, to the full end of the term for which said Letters Patent may be granted as fully and entirely as the same would have been held by us had this assignment and sale not been made; we hereby convey all rights arising under or pursuant to any and all international agreements, treaties or laws relating to the protection of industrial property by filing any such applications for Letters Patent.  We hereby acknowledge that this assignment, being of the entire right, title and interest in and to said invention, carries with it the right in ASSIGNEE to apply for and obtain from competent authorities in all countries of the world any and all Letters Patent by attorneys and agents of ASSIGNEE selection and the right to procure the grant of all such Letters Patent to ASSIGNEE for

REEL 6 0 1 7 FRAME 3 1 9



DTX
2194
02-cv-11280 RWZ

ADL 0017166_

-2-

its own name as assignee of the entire right, title and interest therein.

AND, we hereby further agree for ourselves and our executors and administrators to execute upon request any other lawful documents and likewise to perform any other lawful acts which may be deemed necessary to secure fully the aforesaid invention to said ASSIGNEE, its successors, assigns and legal representatives, but at its or their expense and charges, including the execution of applications for patents in foreign countries, and the execution of substitution, reissue, divi-sional or continuation applications and preliminary or other statements and the giving of testimony in any interference or other proceeding in which said invention or any application or patent directed thereto may be involved.

AND, we do hereby authorize and request the Commissioner of Patents of the United States to issue such Letters Patent as shall be granted upon said application or applications based thereon to said ASSIGNEE, its successors, assigns, and legal representatives.

Inventor_____ Date_____
              David Baltimore

Address_____

           _____

Witness_____ Date_____

Address_____

           _____

Witness_____ Date_____

Address_____

           _____

REEL 6017 FRAME 320

ADL 0017167__

-3-

Inventor_____    Date_____
        Lynn M. Corcoran
Address_____

_____

Witness_____    Date_____
Address_____

_____

Witness_____    Date_____
Address_____

_____

Inventor_____    Date_____
        Louis Staudt
Address_____

_____

Witness_____    Date_____
Address_____

_____

Witness_____    Date_____
Address_____

_____

REEL 6017 FRAME 321

ADL 0017168

~4~

Inventor_____    Date_____
       Ranjan Sen

Address_____

       _____

Witness_____    Date_____

Address_____

       _____

Witness_____    Date_____

Address_____

       _____

Inventor _~~Patrick Baeurle~~_    Date _12/27/91_
       Patrick A. Baeurle
Address _Am Bogen 25, D-8031 Fichmau / FRG_

Witness _Catherin Schindenof_    Date _12/27/91_
Address _Münchener Str. 28_
       _8046 Garching, BRD._
Witness _4. Yimm_    Date _12/27/91_
Address _Unrellib. 40_
       _8000 München 40_

REEL 6017 FRAME 322

ADL 0017169

-5-

Inventor_____    Date_____
          Michael J. Lenardo

Address_____

_____

Witness_____    Date_____
Address_____

_____

Witness_____    Date_____
Address_____

_____

RECORDED
PATENT AND TRADEMARK
OFFICE

FEB 18 1992

REEL 6017 FRAME 323

ADL 0017170—

# EXHIBIT 5

MIT-4167AAA

### Assignment

WHEREAS, we, Phillip A. Sharp, Harinder Singh, Jonathan LeBowitz, Albert S. Baldwin, Jr. and Roger Clerc (hereinafter "the Assignors"), have, together with co-inventors David Baltimore, Ranjan Sen, Louis Staudt, Lynn M. Corcoran, Patrick A. Baeurle, Michael J. Lenardo, Chen-Ming Fan and Tom Maniatis, invented a certain new and useful improvement in NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL REGULATION described in an application for Letters Patent of the United States, Serial No. 07/791,898, filed November 13, 1991.

WHEREAS, Massachusetts Institute of Technology (hereinafter "ASSIGNEE"), a corporation organized and existing under the laws of the Commonwealth of Massachusetts, and having a usual place of business at 77 Massachusetts Avenue, Cambridge, MA  02139 desires to acquire an interest therein in accordance with agreements duly entered into with us;

NOW, THEREFORE, to all whom it may concern be it known that for and in consideration of the said agreements and of other good and valuable consideration, the receipt of which is hereby acknowledged, we have sold, assigned and transferred and by these presents do hereby sell, assign and transfer unto said ASSIGNEE, its successors, assigns and legal representatives, the entire right, title and interest in and throughout the United States of America, its territories and all foreign countries, in and to the said invention as described in said application, together with the entire right, title and interest in and to the said application and such Letters Patent as may issue thereon; said invention, application and Letters Patent to be held and enjoyed by said ASSIGNEE for its own use and behalf and for its successors, assigns and legal representatives, to the full end of the term for which said Letters Patent may be granted as fully and entirely as the same would have been held by us had this assignment and sale not been made; we hereby convey all rights arising under or pursuant to any and all international agreements, treaties or laws relating to the protection of industrial property by filing any such applications for Letters Patent.  We hereby acknowledge that this assignment, being of the entire right, title and interest in and to said invention, carries with it the right in ASSIGNEE to apply for and obtain from competent authorities in all countries of the world any and all Letters Patent by attorneys and agents of ASSIGNEE selection and the right to procure the grant of all such Letters Patent to ASSIGNEE for

REEL 6017 FRAME 325

-2-

its own name as assignee of the entire right, title and interest therein.

AND, we hereby further agree for ourselves and our executors and administrators to execute upon request any other lawful documents and likewise to perform any other lawful acts which may be deemed necessary to secure fully the aforesaid invention to said ASSIGNEE, its successors, assigns and legal representatives, but at its or their expense and charges, including the execution of applications for patents in foreign countries, and the execution of substitution, reissue, divi- sional or continuation applications and preliminary or other statements and the giving of testimony in any interference or other proceeding in which said invention or any application or patent directed thereto may be involved.

AND, we do hereby authorize and request the Commissioner of Patents of the United States to issue such Letters Patent as shall be granted upon said application or applications based thereon to said ASSIGNEE, its successors, assigns, and legal representatives.

Inventor_____ Date_____
            Phillip A. Sharp

Address_____

        _____

Witness_____ Date_____

Address_____

        _____

Witness_____ Date_____

Address_____

        _____

REEL 6017 FRAME 326

ADL 0017154—

-3-

Inventor_____ Date_____
            Harinder Singh

Address_____

_____

Witness_____ Date_____

Address_____

_____

Witness_____ Date_____

Address_____

_____

Inventor_____ Date_____
            Jonathan LeBowitz

Address_____

_____

Witness_____ Date_____

Address_____

_____

Witness_____ Date_____

Address_____

_____

REEL 6017 FRAME 327

ADL 0017155

-4-

Inventor _____    Date _____
         Albert S. Baldwin, Jr.

Address _____

         _____

Witness _____    Date _____

Address _____

         _____

Witness _____    Date _____

Address _____

         _____

Inventor    *Rcleer*              Date  01 /02 /1992
            Roger Clerc

Address    KUGELFANG 42

           CH-4102  BINNINGEN     SWITZERLAND

Witness   ERIC BERTOLINO          Date  01/02/1992

Address   4 RUE AMITIE

          F 68300  SAINT-LOUIS / FRANCE

Witness   GLENN E. DALE           Date  01/02/1992

Address   FROBENSTRASSE  46

          4053 BASEL  / SWITZERLAND .

                    RECORDED
               PATENT AND TRADEMARK
                      OFFICE

                   FEB 18 1992    .

REEL 5017 FRAME 328

# EXHIBIT 6

I R E L L  &  M A N E L L A  LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA  90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE:  www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

January 31, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

     Re:    *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

     You have inquired whether our firm is representing the inventors named on the '516 patent.  We are representing all of the inventors except for Louis Staudt and Roger Clerc.

     Very truly yours,

David I. Gindler

1632178

# EXHIBIT 7

OCT 05 2004 10:23 FR KAYE SCHOLER LLP 9   212 836 7155 TO 5131291300020260 P.02

# KAYE SCHOLER LLP

Michael Siem
212 836-7397
Fax 212 836-6367
msiem@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

October 5, 2004

Alison Baldwin
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Chicago, IL 60606

**FILE COPY**

Re:　　Ariad et al. v. Eli Lilly, Civil Action No. 02 CV 11280
RWZ

Dear Alison:

Dr. Corcoran is available for deposition in Melbourne, Australia on November 23rd.
Please let us know as soon as possible whether this date is acceptable to Lilly.

Sincerely,

Michael A. Siem

L-A0178431

# EXHIBIT 8

SEP 27 2004 12:13 FR KAYE SCHOLER LLP 9  212 836 7155 TO 5131291300020260 P.02

# KAYE SCHOLER LLP

Michael Siem
212 836-7397
Fax 212 836-6367
msiem@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

September 27, 2004

**FILE COPY**

Alison Baldwin
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Chicago, IL 60606

Re:    Ariad et al. v. Eli Lilly, Civil Action No. 02 CV 11280
RWZ

Dear Alison:

Dr. Baeuerle is available for deposition on November 29th or December 1st in Germany. Please let us know as soon as possible whether either of these dates are acceptable to Lilly.

Sincerely,

Michael A. Siem

30953589.DOC

NEW YORK    CHICAGO    LOS ANGELES    WASHINGTON, D.C.    WEST PALM BEACH    FRANKFURT    HONG KONG    LONDON    SHANGHAI

L-A0178303