IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA, INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation; and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation,<br><br>       Plaintiffs,<br><br>v.<br><br>ARIAD PHARMACEUTICALS, INC., a Delaware corporation; and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation,<br><br>       Defendants,<br>—————————————————<br>ARIAD PHARMACEUTICALS, INC., a Delaware corporation; THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, a Massachusetts corporation; MASSACHUSETTS INSTITUTE OF TECHNOLOGY, a Massachusetts corporation; and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation,<br><br>       Counterclaim-Plaintiffs,<br><br>v.<br><br>AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA, INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation; IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation; and WYETH, a Delaware corporation,<br><br>       Counterclaim-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br><br><br>Civil Action No. 06-259-MPT |

## THE AMGEN ENTITIES' THIRD NOTICE OF DEPOSITION TO ARIAD, WHITEHEAD, HARVARD, AND MIT PURSUANT TO FED. R. CIV. P. 30(b)(6)

**TO:**

| | |
|---|---|
| John G. Day | Frederick L. Cottrell, III |
| Steven J. Balick | Anne Shea Gaza |
| Tiffany Geyer Lydon | Richards Layton & Finger, P.A. |
| Ashby & Geddes | One Rodney Square |
| 500 Delaware Avenue, 8th Floor | 920 North King Street |
| Wilmington, DE 19801 | Wilmington, DE 19801 |

PLEASE TAKE NOTICE that, in accordance with the provisions of Rules 26 and 30 of the Federal Rules of Civil Procedure, Amgen, Inc., Immunex, Inc., Amgen USA Inc., Amgen Manufacturing, Ltd., and Immunex Rhode Island Corporation (collectively, "Amgen"), commencing at 9:00 a.m. on June 12, 2007, at Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210, or at such other time and place mutually agreed upon by counsel for the parties, it will take the deposition of ARIAD Pharmaceuticals, Inc. ("ARIAD"), Whitehead Institute for Biomedical Research ("Whitehead"), Massachusetts Institute of Technology ("MIT"), and the President and Fellows of Harvard College ("Harvard") (collectively "ARIAD and the Assignees") by oral examination of witness(es) designated by ARIAD and the Assignees to testify on their behalf as the person(s) most competent to testify concerning the matters listed on attached Attachment A.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated by ARIAD and the Assignees should be prepared to testify as to such matters known or reasonably available to ARIAD and the Assignees. You are required to produce the witness(es) at the stated time and place, and are invited to attend to cross-examine.

ARAID and the Assignees are requested to provide Amgen's counsel, on or before June 1, 2007, a written designation of the names and positions of the officers, directors, managing agents or other persons who are most competent to testify concerning the areas of

2

testimony set forth in Attachment A, and, for each person designated, the matters on which he or she will testify.

The depositions will be conducted under the Federal Rules of Civil Procedure and the Local Rules for the District of Delaware, for the purpose of discovery, for use at trial and for such other purposes as are permitted at law. The depositions will be taken upon oral examination before an official authorized by law to administer oaths and will continue from day to day until completed. Pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be recorded by sound-and-visual means and/or ordinary stenographic methods.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals
Marcus E. Sernel
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
(312)861-2000

Drew Diamond
KIRKLAND & ELLIS LLP
South Figueroa Street
Los Angeles, CA  900017-5800
(213)680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc.,
Immunex Corporation, Amgen USA Inc., Amgen Manufacturin
Limited, and Immunex Rhode Island Corporation*

Dated: May 23, 2007

4

## **ATTACHMENT A**

### **DEFINITIONS AND INSTRUCTIONS**

1.      The term "'516 patent" shall mean United States Patent No. 6,410,516.

2.      "ARIAD" shall mean ARIAD Pharmaceuticals, Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with ARIAD, and persons purporting to act on ARIAD's behalf or on whose behalf ARIAD has acted or acts.

3.      "Whitehead" shall mean Whitehead Institute for Biomedical Research, including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with Ariad, and persons purporting to act on Ariad's behalf or on whose behalf Ariad has acted or acts.

4.      "Harvard" shall mean The President and Fellows of Harvard College and Harvard University including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent entities, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relationship with Harvard, and persons purporting to act on Harvard's behalf or on whose behalf Harvard has acted or acts.

5.      "MIT" shall mean Massachusetts Institute of Technology including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent entities, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relationship with MIT, and persons

1

purporting to act on MIT's behalf or on whose behalf MIT has acted or acts.

6.      "Assignees" refers to the list of named assignees on the face of the '516 patent.

7.      "Amgen" shall mean Amgen, Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with Amgen, and persons purporting to act on Amgen's behalf or on whose behalf Amgen has acted or acts.

8.      "Millennium" shall mean Millennium Pharmaceuticals, Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relationship with Millennium, and persons purporting to act on Millennium's behalf or on whose behalf Millennium has acted or acts.

9.      "BMS" shall mean Bristol-Myers Squibb Company including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relationship with BMS, and persons purporting to act on BMS's behalf or on whose behalf BMS has acted or acts. "Referring," "relating to" and "regarding" shall mean describing, depicting, summarizing, reflecting, constituting, containing, evidencing, discussing, analyzing, considering, or evaluating.

10.     "Document" is used in its customary broad sense within the context of the Federal Rules of Civil Procedure and shall mean any written, printed, recorded or graphic matter, computer memory, computer tapes and diskettes, tapes, films, photographs, drawings, or any

2

other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including without limitation written and electronic communications, letters, correspondence, notes, memoranda of telephone conversations or meetings, diaries, desk calendars, interoffice communications, fax messages, e-mail messages, telegrams, telex messages, records, studies, bills, receipts, checks, checkbooks, purchase orders, invoices, requisitions, studies, summaries, analyses, statistical and financial statements, charts, graphs, reports, computer printouts, laboratory notebooks, invention disclosure documents, patent applications and drafts thereof, test records, test reports, assignments, licenses, bills of sale, sale of business agreements, market studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers, journals, microfiche, microfilm photographic film, surveys, forms, printed brochures or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.

11.    "Referring," "relating to" and "regarding" shall mean describing, depicting, summarizing, reflecting, constituting, containing, evidencing, discussing, analyzing, considering, or evaluating.

12.    "And," "or," and "and/or" shall mean both the conjunctive and disjunctive and shall serve as an interrogatory for information that would be responsive under a conjunctive reading in addition to all information that would be responsive under a disjunctive reading.

13.    "Identify," "identity" or "identification," with respect to a document or thing, shall mean to state the production number or the type or nature of the document (e.g., letter,

3

memorandum, telegram, chart, laboratory report, etc.), the date of its preparation, the identity of the person(s) who prepared the document, the identity of person(s) who signed the document, the sender, the recipient(s) and addressee(s), a description of the subject matter and content, the name and address of any person having possession, custody, or control of the same or a true copy thereof, and all other means of identifying the document with sufficient particularity so as to satisfy the requirements for its inclusion in a demand or interrogatory for its production pursuant to Federal Rule of Civil Procedure 34.

14.    "Identify," "identity" or "identification," with respect to a natural person or company, shall mean to state the name, business address, and telephone number for such person or company and, in the case of natural persons, the person's title.

15.    "Person" shall mean any natural person or any business, legal or governmental entity or association, or any other person recognizable at law, and its agents and employees.

16.    "Inventors" refers to the list of named inventors on the face of the '516 patent.

17.    "Communication" or "communications" shall mean any of the following: (i) any written letter, memorandum, e-mail or other such document; (ii) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or informal; (iii) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal; and (iv) any transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18.    "Invention" shall mean the alleged invention or discovery described in the '516 patent . The use of the word "invention" is not an admission by the Amgen Entities that any claims of the '516 patent or valid, or that the '516 patent discloses any patentable invention.

19.    "Related Patent" shall mean any U.S. or foreign patent or patent application that

4

(i) stems from or claims priority, either directly or indirectly, to U.S. patent application numbers 06/817,441, 07/155,207, 07/162,680, 07/280,173, 07/318,901, 07/341,436, 08/418,266, 06/946,365, 07/791,898, or 08/418,266; or (ii) refers to, describes or claims subject matter described and/or claimed in the '516 patent.

## AREAS OF TESTIMONY

1.      Identification of all licenses, assignments, or agreements relating to the '516 patent or Related Patents, or the subject matter claimed or described in the '516 patent or Related Patents.

2.      All facts and circumstances related to any attempts to license the '516 patent or its Related Patents and patent applications, including any offers made to or negotiations with third parties.

3.      The license from ARIAD to Bristol Meyers Squibb Company dated November 6, 2002 ("the BMS License") and bearing Bates Nos. L-A0003063-081, including, but not limited to, the identity of all persons involved in negotiation and/or drafting of the license, or who participated in the decision-making process with respect to the terms of the license; the date the license was offered, proposed, granted, and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g., compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to the licensing discussions, meetings, and/or conferences.

5

4.    The license from ARIAD to DiscoverX dated May 2, 2003, and bearing Bates Nos. L-A0003031-062, including, but not limited to, the identity of all persons involved in negotiation and/or drafting of the license, or who participated in the decision-making process with respect to the terms of the license; the date the license was offered, proposed, granted and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g., compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to these licensing discussions, meetings, and/or conferences.

5.    The license from MIT and Whitehead to ARIAD dated August 19, 1991, and bearing Bates Nos. ADL 0029159-198 and all subsequent amendments thereto, including, but not limited to, the identity of all persons involved in negotiations and/or drafting of the license, or who participated in the decision-making process with respect to the terms of the license; the date the license was offered, proposed, granted, and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g. compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to these license discussions, meetings, and/or conferences.

6

6.     The license from MIT to The United States Government dated August 20, 1992, and bearing Bates No. ADL0018562, including, but not limited to, the identity of all persons involved in negotiation and/or drafting of the license, or who participated in the decision-making process with respect to the terms of the license; the date the license was offered, proposed, granted and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g., compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to these licensing discussions, meetings, and/or conferences.

7.     Any license of, attempt to license or decision not to license patents, technology, or know-how referring or relating to NF-κB or other transcription factors, including, but not limited to, the identity of all persons involved; the date the license was offered, proposed, granted, and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g., compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to these licensing discussions, meetings, and/or conferences.

7

8.    Any license of, attempt to license or decision not to license the subject matter, technology or know-how disclosed, taught, and/or claimed in any of the patents listed in Schedule A of the BMS License (Bates No. L-A003081) or any claim thereof, including, but not limited to, the identity of all persons involved; the date the license was offered, proposed, granted and/or requested; when, where, and under what conditions and circumstances the offer, proposal grant, or request was made, extended, and/or negotiated; each person and/or party present during and/or involved in any discussion, meeting, conference, or decision made in connection with each offer, proposal, grant, or request; whether or not the license is still in effect; the consideration (e.g., compensation) paid and/or received for the license; any policies and/or procedures used in connection or associated with the license; and all documents and communications that refer and/or relate to these licensing discussions, meetings, and/or conferences.

9.    The negotiations, including any communications, between ARIAD, the Assignees, and/or Millennium Pharmaceuticals regarding a potential license to any of the patents listed in Schedule A of the BMS License (Bates No. L-A003081).

10.    Negotiations between ARIAD, any of the Assignees, and/or any third party regarding a potential license to any of the patents listed in Schedule A of the BMS License (Bates No. L-A003081).

11.    The royalties received by ARIAD and/or any of the Assignees for the licensing of any of the patents listed in Schedule A of the BMS License (Bates No. L-A003081).

12.    Any agreements, assignment, license, sale, acquisition, or transfer of any rights between ARIAD, any of the Assignees, and the inventors of the '516 patent, including offers or requests for the same.

8

13.     Any agreements, assignment, license, sale acquisition, or transfer of any rights relating to the '516 patent, Related Patents, or the subject matter thereof between any of the Assignees and ARIAD, including offers or requests for the same.

14.     Any agreements, assignment, license, sale acquisition, or transfer of any rights relating to the '516 patent, Related Patents, or the subject matter thereof between any of the Assignees, including offers or requests for the same.

15.     All factual bases for any damages claimed by ARIAD and/or any of the Assignees as a result of the Amgen Entities' alleged infringement of the '516 patent, including all facts concerning the factors set forth in *Georgia Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp 1116 (S.D.N.Y. 1970), and all facts concerning the four part test for lost profits originating in *Panduit Corp., v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

16.     ARIAD's and/or any of the Assignees' operations directed to the development or production of pharmaceuticals, including but not limited to any pharmaceutical which utilizes the subject matter claimed or described in the '516 patent.

17.     Identification of the personnel involved in ARIAD's and/or any of the Assignees' marketing programs, marketing plans from 1998 to the present.

18.     Knowledge held by ARIAD and/or any of the Assignees of any acceptable non-infringing alternatives to Enbrel®.

19.     Knowledge held by ARIAD and/or any of the Assignees of any acceptable non-infringing alternatives to Kineret®.

20.     The amount of profits ARIAD and/or any of the Assignees assert they have made absent the alleged infringement of the '516 patent by the Amgen Entities, including but not

9

limited to an identification of all costs expenses and overhead ARIAD and/or any of the Assignees would have incurred.

21.    The content of, and circumstances surrounding, any requests for funding, including any grant requests, prepared or submitted by ARIAD and/or any of the Assignees and/or any named inventors for any work relating to the '516 patent and/or subject matter claimed or described in the '516 patent.

22.    All funding, including any grants, received by ARIAD and/or any of the Assignees and/or any named inventors for any work relating to the '516 patent and/or subject matter claimed or described in the '516 patent, including but not limited to the person(s) or organization(s) that provided such funding amounts of such funding received; waivers obtained from the person(s) or organizations that provided such funding; all representations made regarding (a) the subject matter claimed and/or described in the '516 patent and (b) efforts to license, develop and/or commercialize the subject matter described or claimed in the '516 patent.

23.    All obligations to pay any funds obtained from licensing and/or litigation relating to the '516 patent to any of the named inventors, including but not limited to any license agreements, assignments, or other documents under which such obligations arise.

24.    Communications between any of the Assignees, ARIAD, and/or any third-party relating to any license(s) relating to the '516 patent or Related Patents.

25.    Any royalties, compensation, or other consideration ARIAD and/or any of the Assignees have received related to a license for the '516 patent or any Related Patents.

26.    The relationship between ARIAD and/or any of the Assignees and Amgen, including whether ARIAD and/or any of the Assignees are competitors of ARIAD.

27.    The identity of ARIAD's and/or any of the Assignees' past and present

10

competitors and the basis for identifying a company or other entity as a competitor of ARIAD and/or any of the Assignees.

28.     ARIAD's and/or any of the Assignees' products that practice the alleged invention of the '516 patent.

29.     The market for the subject matter of the '516 patent.

30.     ARIAD's and/or any of the Assignees' business plans and projections for the development of products that practice the alleged invention of the '516 patent or Related Patents.

31.     ARIAD's and/or any of the Assignees' licensing policies, procedures, practices or criteria adopted and/or followed by ARIAD and/or any of the Assignees relating to licensing the '516 patent, Related Patents or any other patents relating to the subject matter of the '516 patent.

32.     All facts and circumstances relating to the assessment of licensing or litigation targets related to the subject matter claimed or disclosed in the '516 patent or Related Patents.

33.     ARIAD's and/or any of the Assignees' decisions for establishing royalty rates or other prices for licenses to the subject matter of the '516 patent or any Related Patents, and the basis for determining those rates or other prices.

34.     The identify and location of other witnesses knowledgeable about the categories set forth in topics 1 through 37 above.

11

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 23, 2007, I caused to be electronically filed a true and correct copy of The Amgen Entities' Third Notice of Deposition to ARIAD, Whitehead, Harvard, and MIT Pursuant to Fed. R. Civ. P. 30(b)(6) with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

| | |
|---|---|
| John G. Day | Frederick L. Cottrell, III |
| Steven J. Balick | Anne Shea Gaza |
| Tiffany Geyer Lydon | Richards Layton & Finger, P.A. |
| Ashby & Geddes | One Rodney Square |
| 500 Delaware Avenue, 8th Floor | 920 North King Street |
| Wilmington, DE 19801 | Wilmington, DE 19801 |

I further certify that on May 23, 2007, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

| | |
|---|---|
| Charles E. Lipsey | Morgan Chu |
| Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | David I. Gindler |
| Two Freedom Square | Amir A. Naini |
| 11955 Freedom Drive, Suite 800 | Christopher M. Newman |
| Reston, VA 20190-5675 | Elizabeth L. Rosenblatt |
| | Irell & Manella LLP |
| | 1800 Avenue of the Stars, Suite 900 |
| | Los Angeles, CA 90067-4276 |

Howard W. Levine
Robert D. Bajefsky
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com