# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 30, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware  19810

**VIA ELECTRONIC FILING**

Re: *Amgen Inc., et al. v. ARIAD Pharmaceuticals, et al.*, C.A. No. 06-259-MPT

Dear Judge Thynge:

We write on behalf of ARIAD Pharmaceuticals, Harvard, MIT, and Whitehead pursuant to the Court's Orders of May 21, 2007 (D.I.s 254, 255) to address the need to modify the overall case schedule to accommodate the current posture of the case and the recent addition of new parties and additional claims, as well as to take into account the state of discovery and other circumstances.  The proposed revised schedule is set forth in the attached chart.  Ex. 1.

*Brief Background*.  The current scheduling order (D.I. 150) was entered on February 20, 2007, shortly after Your Honor began presiding over the case.  At that time, the case involved only Amgen's claim for declaratory relief that U.S. Patent No. 6,410,516 patent was invalid, unenforceable and not infringed by Enbrel and Kineret.  The focus of the litigation up to that point had been threshold procedural questions regarding whether Amgen's declaratory relief claim would proceed.  Because ARIAD believed that the Court lacked subject matter jurisdiction, and that Amgen had failed to join indispensable parties, ARIAD moved to dismiss. The Court ultimately declined to dismiss, but found that the issues warranted certification for immediate appellate review under § 1292(b).  (D.I. 104.)  The case encountered several stops and starts as these issues were resolved.  (*See* D.I. 61 at 3:10-23, staying discovery pending motion to dismiss; D.I. 106 at 35:20-36:2, staying discovery pending briefing on stay motion, and D.I. 120, staying case pending the Federal Circuit's decision whether to accept the interlocutory appeal).[1] Fact discovery began in earnest only in February, when the Court entered an Amended Scheduling Order.  Before then, given that it did not make sense to engage in expensive discovery, no depositions were taken and little discovery had occurred.

*Four New Parties Recently Were Added To The Case*.  The current procedural posture of the case makes the need to revise the schedule apparent.  Since the resolution of ARIAD's motions to dismiss and the entry of the Amended Scheduling Order, new parties have been added on both sides of the case.  On April 13, 2007, Amgen filed an amended complaint adding

---

[1] A detailed recitation of the procedural background is in the Court's March 27, 2007 Order (D.I. 158), and ARIAD's and the Institution's recently filed motion for leave to amend.

The Honorable Mary Pat Thynge
May 30, 2007
Page 2

Whitehead as a counterclaim-defendant. (D.I. 183) On April 14, ARIAD and Whitehead, with Harvard and MIT, the other '516 patent assignees, asserted a counterclaim for infringement. (D.I. 185) Amgen replied, asserting allegations of inequitable conduct. (D.I. 221)

ARIAD and the Institutions also asserted an infringement claim against Wyeth. (D.I. 185.) Wyeth co-promotes Enbrel with Amgen in the United States and Canada, and has exclusive rights to Enbrel elsewhere. Ex. 2 (Wyeth 2007 10Q at 20). Wyeth has collaborated since at least 1993 with Amgen's predecessor Immunex on the research, development, and manufacturing of Enbrel. Ex. 3 (excerpts from 1996, 1997, 1998, and 2001 agreements). Given this long history, and the importance of Enbrel to Wyeth's business (Enbrel is ninth in global sales of all pharmaceutical products), Wyeth is an important part of the case. Wyeth has not yet even responded to the counterclaims. In fact, Wyeth will not be filing its response until June 5, 2007, and will not be serving its initial disclosures under Rule 26(a) until June 18, 2007, or its written responses to ARIAD's first set of discovery requests until June 20, 2007. As a result, Wyeth will be first responding to the infringement claim <u>after</u> the already-passed May 14, 2007 deadline to serve written discovery, and just eight days before the current fact discovery cutoff.

*ARIAD's Affirmative Infringement Claims Raise Important New Issues*. While Amgen's original declaratory judgment claims mirror ARIAD's infringement claims in many respects, the infringement claims add significant new issues, such as damages and willfulness, that were not in the case previously. The scheduling order's fact discovery cutoff of June 13, 2007 does not allow a sufficient opportunity to litigate these issues, or to conduct discovery from Wyeth.

*A Huge Amount Of Discovery Remains To Be Conducted*. While Amgen will argue to the contrary, the parties' discovery is far closer to the start than the end. The first deposition taken was an April 17 deposition of ARIAD's CEO Dr. Harvey Berger under Rule 30(b)(6). (D.I. 141.) Thus far, the parties have taken a total of ten depositions (Amgen eight, ARIAD two), but a startling number remain. Amgen has noticed, subpoenaed or requested forty-three depositions, including <u>twenty-seven</u> in the last two weeks.[2] To date, ARIAD has served over thirty deposition notices. Moreover, each side likely will serve additional deposition notices as the facts develop. It is not possible to complete these depositions in anything close to the two weeks remaining before the current fact discovery cutoff, putting aside the witnesses' schedules.[3] Amgen already has acknowledged implicitly that the current deadline is unworkable. While Amgen has stated that it does not agree to move the fact discovery cutoff, Amgen has accepted dates for depositions in July and August (Exs. 5-7) and cannot seriously believe that the many depositions it seeks – which have not been scheduled – will be completed in a span of two months, let alone the next two weeks. Significant issues also remain with regard to Amgen's document production, as well as Amgen's preparation of two Rule 30(b)(6) witnesses deposed thus far. ARIAD's letter brief of today's date addresses these deficiencies.

---

[2] D.I. 141, 160-62, 169-73, 201, 224-26, 263, 269-75; *see also* Ex. 4 (chart listing depositions).

[3] The Court's scheduling order allows each side 150 hours for depositions, an acknowledgment of the complexity of the case. If every deposition takes one seven hour day, then 300 hours of deposition time would consume every business day for more than eight full weeks – even without allowing for attorney or witness time for preparation, travel or other logistical needs.

The Honorable Mary Pat Thynge
May 30, 2007
Page 3

*ARIAD's Concurrent Motion For Leave To Amend*.  ARIAD also recently discovered in Amgen's April 10 document production materials that reveal Amgen's infringement of two other patents in the same family as the '516 patent – U.S. Patent Nos. 5,804,374 (the "'374 patent") and 6,150,090 ("'090 patent").  These patents relate to methods for identifying agents and compounds that modulate NF-kB activity.  The inclusion of these overlapping patents and claims is in the interest of justice and will not lengthen these proceedings beyond the adjustments that are already needed.  (*See* D.I. 291.)  ARIAD discovered this material after the scheduling issues currently before the Court arose, and is content to litigate these claims under the same modified schedule that ARIAD previously proposed to Amgen, and which is set forth in Exhibit 1.

*Additional Time Is Needed For Laboratory Testing*.  In order to prepare this case for trial and present all the claims of the '516 patent that Enbrel and Kineret infringe, ARIAD requires additional time to complete its investigation.  Thus far, ARIAD and the Institutions believe Enbrel infringes claims 1, 2, 5, 6, 18, 26-29, 37-38, 40, 59-62, 70-73, and 183-185 of the '516 patent.  In addition, ARIAD is working diligently to investigate the infringement of additional dependent claims 20-25, 31-36, 53-58, 64-69, and 177-182.  ARIAD has engaged the services of a leading national research university to perform independent testing, but due to the nature of the tests, the process will take approximately six months.  Ex. 8 (Declaration of Amir Naini, Esq. ¶ 6).  It would be severely prejudicial to ARIAD if it were deprived of the opportunity to investigate and prepare those claims for trial in this case as a result of the current schedule.  After all, ARIAD did not believe there was a justiciable controversy with Amgen, had not been planning or preparing to file an infringement complaint, and only recently asserted claims for infringement after its motions to dismiss were resolved.

*ARIAD's Adjustment To The Schedule Should Be Adopted*.  To allow the parties to have their day in Court after an orderly and fair discovery process, ARIAD requests that the Court modify interim pretrial dates to extend the discovery period and reschedule the trial by no more than 120 days.  The full listing of the proposed dates are set forth in Exhibit 1.  ARIAD proposed these dates to Amgen, but Amgen did not agree.  Exs. 9 & 10.  Amgen made a counter-proposal that is essentially the same as the schedule currently in place (extending fact discovery by six weeks and expert disclosures by one month, but leaving the Markman and trial dates unchanged), but this would not allow a meaningful opportunity to conduct discovery from Wyeth or complete other discovery and investigation.  Wyeth has not expressed its position regarding the schedule.  ARIAD's proposed revised dates are consistent with the procedural posture of the case, the state of discovery, and the time needed to adequately prepare this matter for expert discovery and trial.

Respectfully,

/s/ *Steven J. Balick*

Steven J. Balick

SJB/dmf
Attachments (Exhibits 1-10)

181094.1

The Honorable Mary Pat Thynge
May 30, 2007
Page 4


cc:    David I. Gindler, Esquire (via electronic mail; w/attachments)
       Melanie K. Sharp, Esquire (by hand and via electronic mail; w/attachments)
       Marcus E. Sernel, Esquire (via electronic mail; w/attachments)
       Frederick L. Cottrell, III, Esquire (by hand and via electronic mail; w/attachments)
       Charles E. Lipsey, Esquire (via electronic mail; w/attachments)
       Robert D. Bajefsky, Esquire (via electronic mail; w/attachments)

# EXHIBIT 1

## PROPOSED REVISED SCHEDULE

## SUBMITTED BY ARIAD, HARVARD, MIT, AND WHITEHEAD

| | Current Schedule | Proposed Schedule |
|---|---|---|
| Fact Discovery Cutoff | 6/13/07 | 12/31/07 |
| Expert Discovery Cutoff | 10/1/07 | 3/14/08 |
| Expert Testimony Disclosure | 7/7/07 (rebuttal 9/7/07) | 1/18/08 (rebuttal 2/29/08) |
| Interim Status Report | 8/15/07 | 2/8/08 |
| Tutorial (completed 5/1/07) | N/A | N/A |
| Case Dispositive Motions | 10/29/07 (answer 11/29/07, reply 12/14/07) | 4/11/08 (answer 5/9/08, reply 5/23/08) |
| Exchange List of Claim Constructions | 10/8/07 | 3/21/08 |
| Initial Briefs on Claim Construction | 10/29/07 (responsive brief 11/29/07) | 4/11/08 (responsive brief 5/9/08) |
| Hearing on Claim Construction | 1/7/08 | 6/6/08 |
| Pretrial Conference | 4/22/08 | 7/25/08 |
| Trial | 5/12/08 | 9/15/08 (or such earlier date after pretrial conference, as convenient for the Court) |

EXHIBIT 1

0.0 01

# EXHIBIT 2

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

## FORM 10−Q

---

(Mark One)

☒    **Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

For the quarterly period ended March 31, 2007

or

☐    **Transition Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

For the transition period from _____ to _____

**Commission file number 1−1225**

# Wyeth
**(Exact name of registrant as specified in its charter)**

| **Delaware** | **13−2526821** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| **Five Giralda Farms, Madison, N.J.** | **07940** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (973) 660−5000

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.    **Yes** ☒  **No** ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non−accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b−2 of the Exchange Act. (Check one):

Large accelerated filer ☒                    Accelerated filer ☐                    Non−accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b−2 of the Exchange Act).    **Yes** ☐  **No** ☒

The number of shares of Wyeth's Common Stock outstanding as of the close of business on April 30, 2007:

| Class | Number of Shares Outstanding |
|---|---|
| Common Stock, $0.33 ⅓ par value | 1,345,160,352 |

Table of Contents

**Management's Discussion and Analysis of Financial Condition
and Results of Operations
Three Months Ended March 31, 2007**

- **EFFEXOR** is our novel antidepressant for treating adult patients with major depressive disorder, generalized anxiety disorder, social anxiety disorder and panic disorder. **EFFEXOR** remains our largest franchise and the number one selling antidepressant globally. See "Our Challenging Business Environment" beginning on page 24 for a discussion of the settlement agreement with Teva, pursuant to which Teva has launched generic versions of **EFFEXOR** (immediate release tablets) in the United States and **EFFEXOR XR** (extended release capsules) in Canada.

- **PREVNAR** is our vaccine for preventing invasive pneumococcal disease in infants and children. It is the first and only vaccine product ever to achieve $1 billion in annual net revenue and now is available in 76 countries worldwide and included in 16 national immunization programs (NIP). We anticipate the number of NIPs to increase as a result of the March 23, 2007 announcement by the World Health Organization recommending the inclusion of **PREVNAR** in NIPs.

- **PROTONIX** is our proton pump inhibitor (PPI) for gastroesophageal reflux disease. The PPI category is highly competitive, and we have continued to focus on our strategy of higher value prescriptions within the third–party managed care segment. We also are tailoring our marketing programs to capitalize on unique local market opportunities. **PROTONIX** continues to have the highest preferred access with health maintenance organizations among the branded PPIs and is the leader among branded PPIs on Medicare drug plan formularies.

- **ENBREL** is our treatment for rheumatoid arthritis, psoriasis and other conditions. We have exclusive rights to **ENBREL** outside the United States and Canada, and we co–promote **ENBREL** with Amgen in the United States and Canada. **ENBREL** maintains its leading U.S. market position in rheumatology and dermatology and is ranked ninth in global sales among all pharmaceutical products. **ENBREL** now is approved, launched and reimbursed in Japan, where, until recently, we had been operating under a routine government–required post–marketing safety program. In April 2007, this program was concluded, paving the way for broader patient access and expanded commercial opportunity for **ENBREL** in Japan.

- Alliance revenue includes our share of profits from sales of **ENBREL** in the United States and Canada, where we co–promote the product with Amgen; our share of profits from sales of **ALTACE**, which was co–promoted with King Pharmaceuticals, Inc. (King) prior to 2007; and certain revenue earned related to sirolimus, the active ingredient in **RAPAMUNE**, which coats the **CYPHER** coronary stent marketed by Johnson & Johnson. In July 2006, Wyeth and King announced that the companies had entered into an Amended and Restated Co–Promotion Agreement regarding **ALTACE**. Effective January 1, 2007, King assumed full responsibility for the selling and marketing of **ALTACE**. Wyeth will receive a fee in 2007 through 2010, generally based on a percentage of **ALTACE** net sales and subject to annual payment limits.

- Nutrition includes our infant formula and toddler products **NURSOY, PROGRESS, PROMIL** and **S–26**. We continue to expand into new markets, grow our business in the countries where we compete and shift focus of our business to the more profitable premium sector of the market. Significant manufacturing capacity expansions currently are under way in the Asia/Pacific region to support our nutrition business strategy.

20

# EXHIBIT 3

**2001 Agreement (Excerpts)**

EXHIBIT 10.1

EXECUTION COPY

"[*]" = confidential portions of this document that have been omitted and have been separately filed with the Securities and Exchange Commission pursuant to an application for confidential treatment under Rule 406 of the Securities Act of 1933.

AMENDED AND RESTATED PROMOTION AGREEMENT

Between

IMMUNEX CORPORATION,

AMERICAN HOME PRODUCTS CORPORATION

and

AMGEN INC.

for the Promotion of ENBREL(TM)(TNFR:Fc) in

North America

Dated as of December 16, 2001

TABLE OF CONTENTS

Page
----

ARTICLE 1.  DEFINITIONS.......................................................2

ARTICLE 2.  COORDINATORS.....................................................9

ARTICLE 3.  ENBREL MANAGEMENT COMMITTEE....................................10

ARTICLE 4.  PROMOTION RESPONSIBILITIES.....................................11

ARTICLE 5.  ADDITIONAL IMMUNEX RESPONSIBILITIES...........................15

ARTICLE 6.  COMMERCIAL EXPENSES...........................................17

ARTICLE 7.  ENBREL PROMOTIONAL MATERIALS..................................18

ARTICLE 8.  COMPENSATION..................................................20

ARTICLE 9.  DETAILING REPORTS; ACTIVITY AUDITS; DETERMINATION OF
            DETAILS PERFORMED.............................................22

ARTICLE 10. NEW INDICATION EXPENSES.......................................24

ARTICLE 11. PATENTS.......................................................24

ARTICLE 12. COMPETITIVE PRODUCTS..........................................26

ARTICLE 13. ACCOUNTING AND RECORDS........................................27

ARTICLE 14. CURRENCY......................................................29

ARTICLE 15. TRADEMARKS....................................................29

ARTICLE 16. CONFIDENTIAL INFORMATION......................................30

ARTICLE 17. REPRESENTATIONS AND WARRANTIES................................31

ARTICLE 18. INDEMNITIES...................................................31

ARTICLE 19. PROMOTION TERM; TERMINATION OF AGREEMENT......................33

ARTICLE 20. PUBLICATIONS; USE OF NAMES....................................35

ARTICLE 21. MISCELLANEOUS PROVISIONS......................................36

SCHEDULE A    TRADEMARKS
EXHIBIT 1     PROCEDURES RE: TREATMENT OF CONFIDENTIAL INFORMATION

i

AMENDED AND RESTATED

PROMOTION AGREEMENT

THIS AMENDED AND RESTATED PROMOTION AGREEMENT (the "Agreement"), dated the
16th day of December, 2001, by and between IMMUNEX CORPORATION, a Washington
corporation, having its principal place of business at 51 University Street,
Seattle, Washington 98101, together with its Affiliates (as defined herein)
("Immunex"), AMERICAN HOME PRODUCTS CORPORATION ("AHPC"), a Delaware
corporation, acting through its WYETH-AYERST LABORATORIES DIVISION, having a
place of business at 555 East Lancaster Avenue, St. Davids, Pennsylvania 19087
("Wyeth-Ayerst") and AMGEN INC., a Delaware corporation having its principal
place of business at One Amgen Center Drive, Thousand Oaks, California 91320
("Amgen").

WITNESSETH:

WHEREAS, Immunex and Wyeth-Ayerst intend to market and sell in the
Territory (as defined herein) a biological drug for rheumatoid arthritis under
the trademark ENBREL(TM) (TNFR:Fc);

WHEREAS, Immunex and Wyeth-Ayerst have entered into a PROMOTION AGREEMENT
dated September 25, 1997;

WHEREAS, Amgen, AMS Acquisition Inc., a Washington corporation and wholly
owned subsidiary of Amgen ("Merger Sub"), and Immunex have entered into that
certain Agreement and Plan of Merger of even date herewith (the "Merger
Agreement") pursuant to which Merger Sub will merge with and into Immunex with
Immunex surviving as a wholly owned subsidiary of Amgen (the "Merger");

WHEREAS, Amgen, Immunex, AHPC and Wyeth-Ayerst desire to amend and restate
the PROMOTION AGREEMENT and enter into an arrangement at and after the effective
time of the Merger whereby the Parties (as defined herein) would jointly engage
in tactical marketing and selling activities (as described more fully herein) to
promote sales of Enbrel in the Territory under the terms and conditions set
forth below;

WHEREAS, the execution of this Agreement by AHPC on the date hereof was a
material inducement relied upon by Amgen in entering into the Merger Agreement;
and

WHEREAS, Amgen shall cause Immunex to execute this Agreement as of the
effective time of the Merger.

NOW, THEREFORE, in consideration of the premises and the mutual covenants
and agreements herein contained, and for other good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the Parties hereto,
intending to be legally bound hereby, do hereby agree as follows:

**1998 Agreement (Excerpts)**

Exhibit 10.18

--------------------------------------------------------------------------------
--------------------------------------------------------------------------------


ENBREL SUPPLY AGREEMENT

AMONG

IMMUNEX CORPORATION,

AMERICAN HOME PRODUCTS CORPORATION

AND

BOEHRINGER INGELHEIM PHARMA KG


DATED AS OF NOVEMBER 5, 1998


--------------------------------------------------------------------------------
--------------------------------------------------------------------------------

67

TABLE OF CONTENTS

                                                                                          **PAGE**

ARTICLE 1.        DEFINITIONS.................................................1

ARTICLE 2.        COORDINATORS...............................................9

ARTICLE 3.        SUPPLY OF BULK DRUG SUBSTANCE, DRUG
                  PRODUCT AND FINISHED PRODUCT..............................10

ARTICLE 4.        PRE-FIRST COMMERCIAL SALE FIRM ORDERS;
                  FORECASTS; FIRM ORDERS; DELIVERIES........................13

ARTICLE 5.        PRODUCTION CAPACITY; PRODUCT PRICE; PAYMENT...............21

ARTICLE 6.        BIP PRODUCT WARRANTIES; SPECIFICATIONS....................26

ARTICLE 7.        PACKAGING.................................................29

ARTICLE 8.        CLAIMS....................................................29

ARTICLE 9.        MANUFACTURING AUDITS; CERTIFICATE OF
                  COMPLIANCE; REGULATORY MATTERS............................30

ARTICLE 10.       RECALLS...................................................34

ARTICLE 11.       QUALITY ASSURANCE; QUALITY CONTROL;
                  VALIDATION; STABILITY.....................................35

ARTICLE 12.       BIP'S OBLIGATIONS AS MANUFACTURER.........................37

ARTICLE 13.       LICENSE GRANTS............................................40

ARTICLE 14.       USE OF DATA; OWNERSHIP OF INTELLECTUAL
                  PROPERTY; [*]; FUTURE ACTIVITIES..........................41

ARTICLE 15.       REPRESENTATIONS AND WARRANTIES............................41

ARTICLE 16.       INDEMNIFICATION...........................................42

ARTICLE 17.       CONFIDENTIALITY...........................................44

ARTICLE 18.       PRESS RELEASES; USE OF NAMES..............................47

68

                                                                          PAGE

ARTICLE 19.      TERM; TERMINATION.......................................47

ARTICLE 20.      FORCE MAJEURE..........................................52

ARTICLE 21.      ASSIGNMENT.............................................54

ARTICLE 22.      DISPUTE RESOLUTION.....................................54

ARTICLE 23.      MISCELLANEOUS.........................................55


EXHIBITS:

EXHIBIT A      BULK DRUG SUBSTANCE SPECIFICATIONS
EXHIBIT B      DRUG PRODUCT SPECIFICATIONS
EXHIBIT C      FINISHED PRODUCT SPECIFICATIONS
EXHIBIT D      VOLUME DISCOUNT PRICING MATRIX FOR BULK DRUG SUBSTANCE [*]
EXHIBIT E      VOLUME DISCOUNT PRICING MATRIX FOR FILLING AND LYOPHILIZATION
               OPERATIONS FOR [*]
EXHIBIT F      VOLUME DISCOUNT PRICING MATRIX FOR LABELING OPERATIONS FOR [*]
EXHIBIT G      FIRM ORDER PLANNING SYSTEM OF [*] COMMERCIAL SUPPLY, PRE-FDA
               APPROVAL
EXHIBIT H      COORDINATORS AND WYETH REPRESENTATIVE

69

## ENBREL SUPPLY AGREEMENT

THIS ENBREL SUPPLY AGREEMENT ("AGREEMENT") is made effective as of November 5, 1998, by and among IMMUNEX CORPORATION, a corporation of the State of Washington, having its principal place of business at 51 University Street, Seattle, Washington 98101, U.S.A., together with its Affiliates (as defined herein) ("IMMUNEX"), AMERICAN HOME PRODUCTS CORPORATION, a corporation of the State of Delaware having its corporate headquarters at Five Giralda Farms, Madison, New Jersey 07940, U.S.A. ("AHPC"), acting through its Wyeth-Ayerst Laboratories division, having offices at 555 East Lancaster Avenue, St. Davids, Pennsylvania 19087, U.S.A. ("WYETH"), and BOEHRINGER INGELHEIM PHARMA KG (the successor of Dr. Karl Thomae GmbH ("THOMAE")), a German corporation having a place of business at Birkendorfer Stra(beta)e 65, 88397 Biberach an der Riss, Federal Republic of Germany ("BIP").

### BACKGROUND

Immunex and Wyeth wish to distribute commercially in their respective territories a certain Immunex proprietary biological product known as TNFR:Fc in finished dosage form for human use.

BIP has the experience and expertise necessary to perform manufacturing, analytical testing and quality assurance services for the manufacturing and labeling of such product for sale hereunder, and BIP owns specialized cell culture, processing, protein purification, filling and lyophilization facilities that are suitable for commercial production of such product.

Immunex and Wyeth desire BIP to perform such services and sell commercial quantities of such product hereunder, and BIP desires to perform such services and sell commercial quantities of such product to Immunex on its behalf and on behalf of Wyeth hereunder, all on the terms and conditions set forth in this Agreement.

### AGREEMENT

IN CONSIDERATION OF the mutual covenants set forth in this Agreement, the Parties (as defined herein) hereby agree as follows:

### ARTICLE 1. DEFINITIONS

The following terms, whether used in the singular or plural, shall have the meanings assigned to them below for purposes of this Agreement.

1.1  "ACQUISITION COST" shall mean the actual invoiced price paid by a Party to any Third Party (as defined herein) for acquiring any materials used in the manufacture of the Product (as defined herein) hereunder, including, but not limited to, shipping and handling costs and customs duties incurred and paid by such Party in connection with the acquisition of such materials, and also including [*] percent ([*]%) of the above amounts to cover such Party's storage and overhead costs. This definition, including the [*] percent ([*]%) markup, shall only apply in the circumstances set forth in Section 6.3(a)(5) and Section 19.3(c)(1) hereof.

1.2  "AFFILIATE" shall mean any corporation or business entity of which a Party owns directly or indirectly, fifty percent (50%) or more of the assets or outstanding stock, or any corporation which a Party directly or indirectly controls, or any parent corporation that owns, directly or indirectly, fifty percent (50%) or more of the assets or outstanding stock of a Party or directly or indirectly controls a Party. For purposes of this Agreement, any Party and the other Affiliates it controls shall not be deemed to be Affiliates of any other Party.

1.3  "ANNUAL QUANTITY" shall mean the number of kg of Bulk Drug Substance (as defined herein) for which Buyer (as defined herein) has submitted Firm Orders (as defined herein) with respect to a particular Calendar Year (as defined herein).

1.4  "ANNUAL SURCHARGE" shall have the meaning set forth in Section 5.2(b) hereof.

70

**1997 Agreement (Excerpts)**

================================================================================

REDACTED VERSION

EXHIBIT 10.1

TO

IMMUNEX CORPORATION'S

FORM 8-K

DATED

SEPTEMBER 29, 1997

================================================================================

"[*]" = omitted, confidential material, which material has been separately
filed with the Securities and Exchange Commission pursuant to a report for
confidential treatment.

EXHIBIT 10.1

========================================================================

PROMOTION AGREEMENT

BETWEEN

IMMUNEX CORPORATION

AND

AMERICAN HOME PRODUCTS CORPORATION

FOR THE PROMOTION OF ENBREL/TM/ (TNFR:FC) IN

NORTH AMERICA

DATED AS OF SEPTEMBER 25, 1997

========================================================================

CONTENTS

ARTICLE 1.    DEFINITIONS.................................................................    1

ARTICLE 2.    COORDINATORS.................................................................   10

ARTICLE 3.    ENBREL MANAGEMENT COMMITTEE................................................   11

ARTICLE 4.    APPOINTMENT; WYETH-AYERST RESPONSIBILITIES.................................   12

ARTICLE 5.    IMMUNEX RESPONSIBILITIES..................................................   20

ARTICLE 6.    COMMERCIAL EXPENSES.......................................................   23

ARTICLE 7.    WORKING CAPITAL LOAN FOR LAUNCH INVENTORY OF ENBREL.......................   26

ARTICLE 8.    ENBREL PROMOTIONAL MATERIALS.............................................   27

ARTICLE 9.    SCHEDULED PAYMENTS........................................................   29

ARTICLE 10.   COMPENSATION..............................................................   30

ARTICLE 11.   DETAILING REPORTS; ACTIVITY AUDITS; DETERMINATION OF DETAILS PERFORMED...   33

ARTICLE 12.   NEW INDICATION EXPENSES..................................................   35

ARTICLE 13.   PATENTS...................................................................   36

ARTICLE 14.   COMPETITIVE PRODUCTS......................................................   38

ARTICLE 15.   ACCOUNTING AND RECORDS....................................................   39

ARTICLE 16.   CURRENCY..................................................................   41

ARTICLE 17.   TRADEMARKS................................................................   41

ARTICLE 18.   CONFIDENTIAL INFORMATION.................................................   42

ARTICLE 19.   REPRESENTATIONS AND WARRANTIES...........................................   43

-ii-

ARTICLE 20.   INDEMNITIES..................................................... 44

ARTICLE 21.   PROMOTION TERM; TERMINATION OF AGREEMENT................. 45

ARTICLE 22.   PUBLICATIONS; USE OF NAMES.............................. 49

ARTICLE 23.   U.S. TACE AGREEMENT.................................... 50

ARTICLE 24.   MISCELLANEOUS PROVISIONS............................... 50

APPOINTMENT OF WYETH-AYERST INTERNATIONAL, INC. ..................... 54

SCHEDULE A     TRADEMARKS
SCHEDULE B     COORDINATORS
SCHEDULE C     ENBREL MANAGEMENT COMMITTEE
SCHEDULE D     NOTE
SCHEDULE E     LOAN REQUEST

-iii-

## PROMOTION AGREEMENT

THIS PROMOTION AGREEMENT (the "Agreement"), effective as of the 25th day
of September, 1997, by and between IMMUNEX CORPORATION, a Washington
corporation, having its principal place of business at 51 University Street,
Seattle, Washington 98101, together with its Affiliates (as defined herein)
("Immunex"), and AMERICAN HOME PRODUCTS CORPORATION ("AHPC"), a Delaware
corporation, acting through its WYETH-AYERST LABORATORIES DIVISION, having a
place of business at 555 East Lancaster Avenue, St. Davids, Pennsylvania 19087
("Wyeth-Ayerst").

### WITNESSETH:

WHEREAS, Immunex, upon obtaining appropriate regulatory approvals, intends
to market and sell in the Territory (as defined herein) a biological drug for
rheumatoid arthritis under the trademark ENBREL(TM) (TNFR:Fc); and

WHEREAS, Wyeth-Ayerst has the necessary resources and expertise to take
responsibility for the tactical marketing and selling of Enbrel (as defined
herein); and

WHEREAS, the Parties (as defined herein) desire to enter into an
arrangement whereby Wyeth-Ayerst would engage in tactical marketing and selling
activities (as described more fully herein) to promote sales of Enbrel in the
Territory under the terms and conditions set forth below;

NOW, THEREFORE, in consideration of the premises and the mutual covenants
and agreements herein contained, and for other good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the Parties hereto,
intending to be legally bound hereby, do hereby agree as follows:

### ARTICLE 1.   DEFINITIONS

The following terms shall, for the purposes of this Agreement, have the
meanings designated to them under this Article unless otherwise specifically
indicated.

1.1  "Acquired Competitive Product" shall mean any Competitive Product (as
defined herein) which was acquired in any way by Wyeth-Ayerst or its Affiliates
through the acquisition of all or substantially all of the stock or assets of a
company; provided, however, that any such product shall not be deemed to be a
Competitive Product for a period of [  *  ] following the closing date of such
acquisition.

[ * ] Confidential Treatment Requested.

-1-

**1996 Agreement (Excerpts)**

EXHIBIT 10.2

REDACTED VERSION

EXHIBIT 10.2

To

Immunex Corporation's

Form 8-K

Dated

July 24, 1996

"[ * ]" = omitted, confidential material, which material has been
separately filed with the Securities and Exchange Commission pursuant to a
report for confidential treatment.

EXHIBIT 10.2

## TNFR LICENSE AND DEVELOPMENT AGREEMENT

AGREEMENT made as of this 1st day of July, 1996 ("Effective Date") by and between American Home Products Corporation, a Delaware corporation, acting through its Wyeth-Ayerst Laboratories Division, ("AHP") and Immunex Corporation, a Washington corporation, together with its Affiliates ("Immunex").

A.    Immunex and American Cyanamid Corporation, a wholly-owned subsidiary of AHP ("ACY"), entered into a Research and Development Agreement dated as of June 1, 1993 (the "R&D Agreement") providing for, among other things, the collaboration of the parties in oncology research and development and the granting by Immunex to ACY of certain license rights to TNFR.

B.    Immunex, AHP and ACY have determined to terminate the R&D Agreement and replace it with the Research Agreement dated the date hereof relating to oncology research and development and this Agreement relating to the development and commercialization of TNFR on the terms and conditions set forth herein.

### ARTICLE 1.   DEFINITIONS

1.01  "Affiliate" shall mean any corporation or business entity of which a party owns directly or indirectly, fifty percent (50%) or more of the assets or outstanding stock, or any corporation which a party directly or indirectly controls, or any parent corporation that owns, directly or indirectly, fifty percent (50%) or more of the assets or outstanding stock of a party or directly or indirectly controls a party.  For purposes of this Agreement, the parties and their respective Affiliates shall not be deemed to be Affiliates of each other.

1.02  "AHP Patent(s)" shall mean any and all AHP Granted Patents and patent applications relating to TNFR, or third-party patents or patent applications in which AHP and/or its Affiliates has a licensable interest, that are necessary or useful in order to research, develop, make, have made, market, use, import, offer for sale, or sell TNFR, and any reissues, re-examinations, continuations, continuations-in-part, divisions, renewals, extensions, patents of addition, and any extension of the term of the patent or supplementary protection certificate or other means by which greater effective patent protection is extended that exist as of the Effective Date or are issued or filed at any time during the term of this Agreement.

1.03  "AHP Territory" shall mean all of the countries of the world except North America.

# EXHIBIT 4

**AMGEN NOTICED OR SUBPOENAED DEPOSITIONS**

| D.I. # | DEPONENT | NOTICED LOCATION | DATE SERVED |
|---|---|---|---|
| 141 | Ariad Pharmaceuticals, Inc.: Amgen's First Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 02/02/2007 |
| 160 | Harinder Singh: Subpoena in a Civil Case to Chen-Ming Fan to Produce and Permit Inspection and Copying of Documents; Testify at the Taking of a Deposition | Chicago, IL | 03/28/2007 |
| 161 | Jonathan H. Lebowitz: Subpoena in a Civil Case to Jonathan H. Lebowitz to Produce and Permit Inspection and Copying of Documents; Testify at the Taking of a Deposition | St. Louis, MO | 03/13/2007 |
| 162 | Chen-Ming Fan: Subpoena in a Civil Case to Chen-Ming Fan to Produce and Permit Inspection and Copying of Documents; Testify at the Taking of a Deposition | Wilmington, DE | 03/13/2007 |
| 169 | Albert S. Baldwin, Jr.: Subpoena in a Civil Case to Albert S. Baldwin, Jr. Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of Documents | Chapel Hill, NC | D: 03/29/07 |
| 170 | Inder M. Verma: Subpoena in a Civil Case to Inder M. Verma Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of Documents | San Diego, CA | D: 03/29/07 [Protective Order Granted] |

| 171 | Michael J. Lenardo: Subpoena in a Civil Case to Michael J. Lenardo Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of Documents | Washington, D.C. | D: 03/29/07 |
|-----|-----|-----|-----|
| 172 | Ranjen Sen: Subpoena in a Civil Case to Ranjan Sen Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of Documents | Washington D.C. | D: 03/29/07 |
| 173 | Phillip A. Sharp: Subpoena in a Civil Case to Phillip A. Sharp Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of Documents | Boston, MA | D: 03/29/07 |
| 201 | Ariad Pharmaceuticals, Inc.: Amgen's Second Notice of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | S: 04/20/07 |
| N/A | Patrick Baeuerle: Subpoena in a Civil Case to Patrick Baeuerle Re: Testifying at the Taking of a Deposition Producing and Permitting Inspection and Copying of Documents | New York, NY [Boston, MA, by agreement] | S: 04/24/2007 [Subpoena withdrawn, witness resides in Germany and agreed to appear in Boston in August] |
| 224 | Harvard: Amgen's First Notice of Deposition of Harvard Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | F: 05/04/07 |

| 225 | Whitehead Institute: Amgen's First Notice of Deposition of Whitehead Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | F: 05/04/07 |
|---|---|---|---|
| 226 | MIT: Amgen's First Notice of Deposition of MIT Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | F: 05/04/07 |
| N/A | Thomas Maniatis: Amgen's Subpoena to Thomas Maniatis | Boston, MA | S: 05/11/07 |
| N/A | Louis Staudt: Subpoena in a Civil Case to Louis Staudt to Testify at the Taking of a Deposition; Produce and Permit Inspection and Copying of Documents | | 04/20/2007 |
| N/A | Patricia Granahan: Subpoena in a Civil Case to Patricia Granahan Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of the Documents | Boston, MA | 05/23/2007 |
| N/A | Lisa Treannie: Subpoena in a Civil Case to Lisa Treannie Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of the Documents | Boston, MA | 05/23/2007 |

| N/A | Matthew Vincent: Subpoena in a Civil Case to Matthew Vincent Re: Testifying at the Taking of a Deposition; Producing and Permitting Inspection and Copying of the Documents | Boston, MA | 05/23/2007 |
|-----|-----|-----|-----|
| 263 | Bristol-Myers Squibb Co.: Notice of Deposition & Subpoena of Bristol-Myers Squibb Company | Wilmington, DE | 05/21/2007 |
| 269 | Lita Nelson: The Amgen Entities' Notice of Deposition of Lita Nelson | Boston, MA | 05/23/2007 |
| 270 | The Amgen Entities' Notice of Deposition of **Laurie A. Allen, Harvey J. Berger, David L. Berstein, Joseph Bratica, and Edward M. Fitzgerald** | Boston, MA | 05/23/2007 |
| 273 | The Amgen Entities' Second Notice of Deposition to **Whitehead, Harvard, and MIT** Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | 05/23/2007 |
| 271 | The Amgen Entities' Third Notice of Deposition to **Ariad, Whitehead, Harvard, and MIT** Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | 05/23/2007 |
| 272 | The Amgen Entities' Fourth Notice of Deposition to **Ariad, Whitehead, Harvard, and MIT** Pursuant to Fed. R. Civ. P. 30(b)(6) | Boston, MA | 05/23/2007 |
| N/A | Fritz Casselman: Amgen Subpoena to Fritz Casselman | Boston, MA | 05/23/2007 |

| 274 | Biogen IDEC, Inc.: Notice of Deposition of Biogen IDEC, Inc. | Wilmington, DE | 05/24/2007 |
|-----|-----|-----|-----|
| N/A | David Baltimore: Subpoena to David Baltimore | Los Angeles, CA | 05/24/2007 |
| N/A | Roger Clerc: No subpoena served yet | [Los Angeles, CA] | [Witness resides in Switzerland and agreed to appear in Los Angeles in July] |
| N/A | Lynn Corcoran: No subpoena served yet | [Los Angeles, CA] | [Witness resides in Australia and agreed to appear in Los Angeles June 28] |
| N/A | Isabelle Clauss:  No subpoena served yet | Boston, MA | |

## ARIAD'S NOTICED OR SUBPOENAED DEPOSITIONS

| D.I. # | DEPONENT | NOTICED LOCATION | DATE SERVED |
|---|---|---|---|
| 151 | Plaintiffs Amgen et al 30(b)(6): First Notice of Deposition of Plaintiffs | Los Angeles | 03/05/2007 |
| 152 | Plaintiffs Amgen et al 30(b)(6): Second Notice of Deposition of Plaintiffs | Los Angeles | 03/05/07 |
| 154 | Plaintiffs Amgen et al 30(b)(6): Third Notice of Deposition of Plaintiffs | Los Angeles | 03/05/07 |
| 205 | Plaintiffs: Defendant Ariad Pharmaceuticals, Inc.'s Fourth Notice of Deposition of Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6) | Thousand Oaks, CA | D: 04/23/07 |
| 207 | Plaintiffs: Defendant Ariad Pharmaceuticals, Inc.'s Fifth Notice of Deposition of Plaintiffs pursuant to Fed. R. Civ. P. 30(b)(6) | Thousand Oaks, CA | D: 04/23/07 |
| 231 | Alice B. Gottlieb: Notice of Deposition and Notice of Service of Subpoena *Ad Testificandum* and *Duces Tecum* on Alice B. Gottlieb | Boston, MA | S: 05/08/07 |
| 237 | Raymond Goodwin: Notice of Deposition and Service of Subpoena in a Civil Case to Raymond Goodwin, (Kirkland and Ellis) to Testify at the Taking of a Deposition;<br><br>Produce and Permit Inspection and Copying of Documents | Seattle, WA | D: 05/09/07 |

| 236 | Craig Smith: Notice of Deposition and Service of Subpoena in a Civil Case to Craig Smith, (Kirkland and Ellis) to Testify at the Taking of a Deposition; Produce and Permit Inspection and Copying of Documents | Seattle, WA | D: 05/09/07 |
|---|---|---|---|
| 234 | James Louie: Notice of Deposition of James Louie | Los Angeles, CA | F: 05/11/07 |
| 247 | William Arend: Notice of Deposition and Service of Subpoena on William Arend | Denver, CO | F: 05/16/07 |
| 248 | Robert Thompson: Notice of Deposition and Service of Subpoena on Robert Thompson | Denver, CO | F: 05/16/07 |
| 257 | Laura Hamill: Notice of Deposition | Agoura Hills, CA | F: 05/22/07 |
| 264 | Amgen Entities: Defendant and Counterclaim Plaintiff Ariad's Sixth Notice of Deposition of the Amgen Entities Pursuant to Fed. R. Civ. P. 30(b)(6) | Agoura Hills, CA | F: 05/23/07 |
| 276 | Stewart Chipman: Notice of Deposition | Seattle, WA | F: 05/24/07 |
| 278 | Venkat Mukku: Notice of Deposition | Thousand Oaks, CA | F: 05/24/07 |
| 277 | David Goeddel: Notice of Deposition | San Francisco, CA | F: 05/24/07 |
| 283 | Wyeth: Ariad's First Notice of Deposition of Wyeth Persuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/25/2007 |

| 284 | Wyeth: Ariad's Second Notice of Deposition of Wyeth Persuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/25/2007 |
|---|---|---|---|
| 285 | Wyeth: Ariad's Third Notice of Deposition of Wyeth Persuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/25/2007 |
| 286 | Wyeth: Ariad's Fourth Notice of Deposition of Wyeth Persuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/25/2007 |
| 287 | Wyeth: Ariad's Fifth Notice of Deposition of Wyeth Persuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/25/2007 |
| 288 | Notice of Depositions of **Diane Aparisio, Jim Carlson, Jerry Housman, Xu-Rong Jiang, Richard Lit, Lionel Murray, Jamie Nichols, Junyan Shu, James Stonecypher, Lars Theill, and Debbie Trujillo** | Thousand Oaks, CA | 05/29/2007 |
| 289 | Wyeth: Ariad's Sixth Notice of Deposition of Wyeth Pursuant to Fed. R. Civ. P. 30(b)(6) | Wilmington, DE | 05/29/2007 |
| 289 | Amgen Entities: Ariad's Seventh Notice of Deposition of Wyeth Pursuant to Fed. R. Civ. P. 30(b)(6) | Los Angeles, CA | 05/29/2007 |

# EXHIBIT 5

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 780-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7052
FACSIMILE (310) 203-7199
rbirnholz@irell.com

May 17, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL  60601-6636

Re:     Amgen Inc. v. ARIAD Pharmaceuticals, Inc.

Dear Marc:

We have informed Drs. Baeuerle, Corcoran and Clerc of the Court's order.  In light of the significant travel (from Germany, Australia, and Switzerland), and the burden Amgen's request imposes on their professional and personal schedules, we can report that:

- Dr. Baeuerle can be available for deposition in Boston on August 10, 2007.

- Dr. Corcoran can be available for deposition on June 28, 2007.  The tentative proposed location is Los Angeles, though we are still investigating.

- We were able to reach Dr. Clerc via FedEx, though previous letters and phone calls had gone unanswered.  (The telephone extension to which our calls were directed did not have "voice mail.")  We are currently investigating dates on which he might agree to appear for deposition in the United States.

Per the Court's order, Amgen will pay the costs of the transportation, food and lodging expenses incurred for the witnesses to attend these depositions.  Given the length of the travel, the witnesses will be flying business class.  Moreover, Dr. Corcoran requires the additional space of business class because she is recovering from serious knee surgery.  We will ask these individuals to hold the dates mentioned above and assume that we will be proceeding as described.

Very truly yours,

Richard M. Birnholz

cc:     Steven J. Balick, Esq.
         Melanie K. Sharp, Esq.
         Frederick Cottrell, III, Esq.

1694572

# EXHIBIT 6

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

May 21, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601-6636

Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

We have received additional information from Drs. Corcoran and Clerc regarding their availability for deposition.

- Dr. Corcoran can be available for deposition in Los Angeles on the previously-identified date of June 28, 2007.

- Dr. Clerc can be available for deposition in Los Angeles on July 6, 2007.

Per our earlier correspondence, we have asked each individual to hold open the dates mentioned above. In light of the significant travel and burden on their professional and personal schedules, please confirm these dates, as well as the August 10, 2007 (Boston) date for Dr. Baeuerle, as soon as possible.

Sincerely,

Betsy Rosenblatt

1697019

# EXHIBIT 7

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Semel
To Call Writer Directly:
312 861-2389
msemel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 22, 2007

<u>VIA E-MAIL</u>

Betsy Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:  *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear Betsy:

I write regarding the depositions of the foreign-based inventors of the '516 patent.

First, in response to your letter of late last week and today concerning the depositions of Drs. Baeuerle, Corcoran and Clerc, we agree to your proposed dates and locations for these depositions. Although these dates are outside the close of fact discovery in this case, we are willing to accommodate your request given the special circumstances requiring these individuals to travel to the United States from abroad. Our agreement to take these depositions outside the current fact discovery deadline should not in any way be construed as an agreement that the overall case schedule needs to be modified.

Second, we agree to your request to pay for a business class fare for these witnesses to travel to the United States, provided that fares obtained are no more than the lowest-available fares purchased more than 28 days prior to travel. We also agree to reimburse for other reasonable expenses incurred during their travel, including lodging for two nights at a reasonable hotel.

Third, in response to your colleague's letter of Friday describing Dr. Louis Staudt's medical condition, while we are of course sympathetic to his ailment, we do intend to move forward with this deposition. It is our understanding that Dr. Staudt is still actively engaged in research activities, including running a laboratory at the National Institute of Health, and do not understand his condition to be so debilitating as to justify his exclusion from discovery altogether. We are certainly willing to make reasonable accommodations for Dr. Staudt's medical condition (such as taking frequent breaks), and also believe that this deposition is

# KIRKLAND & ELLIS LLP

May 22, 2007
Page 2

unlikely to take a full seven hours.  Please let us know the dates on which Dr. Staudt is available as soon as possible.

Very truly yours,

*/s/ Marcus E. Sernel*

Marcus E. Sernel

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,                )
AMGEN USA INC., AMGEN                            )
MANUFACTURING LIMITED, and IMMUNEX              )
RHODE ISLAND CORPORATION,                        )
                                                 )
                Plaintiffs,    )    C.A. No. 06-259-MPT
                                                 )
     v.                           )
                                                 )
ARIAD PHARMACEUTICALS, INC., and THE            )
WHITEHEAD INSTITUTE FOR BIOMEDICAL              )
RESEARCH, a Delaware corporation,                )
                                                 )
              Defendants.    )
                                                 )
_____          )
                                                 )
ARIAD PHARMACEUTICALS, INC.,                     )
MASSACHUSETTS INSTITUTE OF                        )
TECHNOLOGY, THE PRESIDENT AND                     )
FELLOWS OF HARVARD COLLEGE, and THE             )
WHITEHEAD INSTITUTE FOR BIOMEDICAL              )
RESEARCH,                                        )
                                                 )
             Counterclaim    )
             Plaintiffs,     )
                                                 )
     v.                           )
                                                 )
AMGEN INC., IMMUNEX CORPORATION,                )
AMGEN USA INC., AMGEN                            )
MANUFACTURING LIMITED, IMMUNEX                  )
RHODE ISLAND CORPORATION, and                    )
WYETH,                                           )
                                                 )
             Counterclaim    )
             Defendants.     )

## DECLARATION OF AMIR A. NAINI

I, Amir A. Naini, declare as follows:

1.      I am an attorney at the law firm of Irell & Manella LLP, counsel for ARIAD Pharmaceuticals, Inc. ("ARIAD"), and Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research (collectively, the "Institutions"). I also hold a Ph.D. in biochemistry from Brandeis University. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      On behalf of ARIAD and the Institutions, we specially engaged for purposes of this litigation the services of a leading university research laboratory to perform independent laboratory testing related to investigation of Counterclaim-Defendants' infringement of the patent-in-suit, U.S. Patent No. 6,410,516 (the "'516 patent"). In particular, the laboratory testing will provide information regarding whether use of Enbrel infringes claims 20-25, 31-36, 53-58, 64-69, and 177-182 of the '516 patent. ARIAD has not yet asserted any of these claims in this case.

3.      In addition, the laboratory testing will provide further information regarding infringement of claims 1, 2, 5, 6, 18, 26-29, 37-38, 40, 59-62, 70-73, and 183-185. ARIAD has already identified these claims as infringed in its interrogatory responses based on publicly available information. The purpose of the testing is to provide further evidence of infringement.

4.      The university research laboratory we have engaged is performing the testing as quickly as possible. Experimental protocols have been developed and testing is in progress. The laboratory testing involves growing various cell lines in culture, validating that the cell lines may be used reliably to test for infringement, and conducting numerous stages of testing to provide information relevant to individual claims of the '516 patent.

5.    Because of the time needed to grow and validate the cell lines, and the numerous stages of testing that are required, the testing will take approximately six months to complete. This length of time is principally a function of the testing that will be performed with respect to the claims that ARIAD has not yet identified as infringed (referenced in paragraph 2, above). The experimental protocols to determine whether Amgen infringes these claims involve multiple steps, each of which builds upon the results of the previous steps. Some of the steps that may be undertaken depend on the outcome of earlier steps.

Executed on May 30, 2007, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Amir A. Naini
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
*Counsel for ARIAD Pharmaceuticals, Inc.,*
*Massachusetts Institute of Technology, The*
*President and Fellows of Harvard College, and*
*The Whitehead Institute for Biomedical*
*Research*

# EXHIBIT 9

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE. SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS. SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7052
FACSIMILE (310) 203-7199
rbirnholz@irell.com

May 18, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL  60601-6636

Robert D. Bajefsky, Esq.
Finnegan Henderson Farabow Garrett & Dunner LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Re:     Amgen Inc. v. ARIAD Pharmaceuticals, Inc.

Dear Marc and Bob:

I write further to my previous letters, and my separate discussions with each of you and your colleagues regarding the case schedule.  We reiterate our position that the current case schedule is not workable.  Some of the pertinent circumstances that make this evident include, but are not limited to, the very recent addition of four new parties (including four new parties on both sides of the case – three new counterclaim-plaintiffs and one new counterclaim-defendant, Wyeth), ARIAD's assertion of infringement counterclaims against Amgen and Wyeth, the state of the extensive discovery that is underway, the deficiencies in Amgen's document production, the practicalities of scheduling and completing the many depositions that are contemplated, and the time required for experiments relating to infringement of additional claims.  Moreover, Wyeth has not yet appeared, and has requested additional time to serve initial disclosures and respond to discovery requests.

As a result of these circumstances, we proposed a revision to the schedule that extended fact discovery to accommodate the situation on the ground, while at the same time only moving the trial date a modest amount – from May to September, just four months.  Amgen proposed a slight revision to the schedule that would extend fact discovery six weeks and push expert disclosures out one month, but leave the Markman and trial dates unchanged.   As we discussed, this suggestion is not consistent with the current procedural posture of the case, the state of discovery, and the time needed to adequately prepare this matter for expert discovery and trial.  Wyeth was not yet in a position to address the scheduling issues, as it has not appeared in the case.

1694614

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Robert D. Bajefsky, Esq.
May 18, 2007
Page 2


        We very much would prefer to resolve this issue between us, but it appears that we
will require the Court's assistance in revising the case schedule.  We will be submitting a
very short letter to the Court asking the Court's guidance as to the manner in which the Court
wishes this issue to be presented.

                                        Very truly yours,



                                        Richard M. Birnholz


cc:     Steven J. Balick, Esq.
        Melanie K. Sharp, Esq.
        Frederick Cottrell, III, Esq.

1694614

# EXHIBIT 10

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7052
FACSIMILE (310) 203-7199
rbirnholz@irell.com

May 7, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 E. Randolph Dr.
Chicago, IL  60601-6636

Robert D. Bajefsky, Esq.
Finnegan Henderson Farabow Garrett & Dunner LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413

Re:    Amgen Inc. v. ARIAD Pharmaceuticals, Inc.

Dear Marc and Bob:

I write further to my letter of May 2, 2007 to Marc, and Marc's initial conversation with David Gindler regarding the case schedule. As we have discussed previously with Amgen, it is apparent that the current case schedule is not workable, particularly in light of the very recent addition of four new parties (including new parties on both sides of the case), ARIAD's assertion of counterclaims against Amgen and Wyeth, and the state of the extensive discovery that is underway. Wyeth has not yet even appeared in the action. Moreover, several additional months are required for ARIAD to perform experiments necessary to complete our investigation of infringement of additional claims.

With this in mind, below is a revised proposed case schedule:

|  | **Current Schedule** | **Proposed Schedule** |
|---|---|---|
| Fact Discovery Cutoff | 6/13/07 | 12/31/07 |
| Expert Discovery Cutoff | 10/1/07 | 3/14/08 |
| Expert Testimony Disclosure | 7/7/07 (rebuttal 9/7/07) | 1/18/08 (rebuttal 2/29/08) |
| Interim Status Report | 8/15/07 | 2/8/08 |
| Tutorial (completed 5/1/07) | N/A | N/A |
| Case Dispositive Motions | 10/29/07 (answer 11/29/07, reply 12/14/07) | 4/11/08 (answer 5/9/08, reply 5/23/08) |
| Exchange List of Claim Constructions | 10/8/07 | 3/21/08 |

1688979

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
Robert D. Bajefsky, Esq.
May 7, 2007
Page 2

| Initial Briefs on Claim Construction | 10/29/07 (responsive brief 11/29/07) | 4/11/08 (responsive brief 5/9/08) |
|---|---|---|
| Hearing on Claim Construction | 1/7/08 | 6/6/08 |
| Pretrial Conference | 4/22/08 | 7/25/08 |
| Trial | 5/12/08 | 9/15/08 |

We of course would prefer to resolve this issue by agreement rather than motion practice. Please let us know as soon as possible, and no later than noon Pacific Time on Tuesday, May 8, 2007, if the above revised dates are acceptable.

While Wyeth has not yet appeared in the case, I have included their counsel as an addressee on this letter as a courtesy.

Very truly yours,

Richard M. Birnholz

cc:    Steven J. Balick, Esq.
       Melanie K. Sharp, Esq.
       Frederick Cottrell, III, Esq.

1688979