# YOUNG CONAWAY STARGATT & TAYLOR, LLP

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

MELANIE K. SHARP
DIRECT DIAL: (302) 571-6681
DIRECT FAX:    (302) 576-3333
msharp@ycst.com

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

May 31, 2007

The Honorable Mary Pat Thynge
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

**BY E-FILE**

Re:   *Amgen, Inc. et al.  v. ARIAD Pharmaceuticals, Inc.,* C. A. No.: 06-259 (MPT)

Dear Judge Thynge:

We represent plaintiffs (collectively, "Amgen") in the above-referenced matter, and write in response to ARIAD's letter of yesterday that seeks a modification of the overall case schedule. ARIAD's strategy from the beginning of this case has been to delay, and yesterday's letter is just the latest effort in this strategy. (*See* Ex. A for portion of history of ARIAD delay.) Amgen has attempted in good faith to offer a reasonable proposal to allow the parties to complete the necessary discovery while keeping the overall schedule intact, but ARIAD has instead insisted on significantly derailing the current schedule. As discussed in more detail below, Amgen respectfully requests that ARIAD's request be denied, and Amgen's more reasonable proposal be implemented.

**Brief Background**:  This case was filed by Amgen over 13 months ago in April 2006, and ARIAD has been seeking to stymie its progress ever since.  Initial discovery was served by Amgen in July 2006, and Judge Jordan set the schedule for the case at that same time. The original schedule (which adopted ***ARIAD's*** longer timeline) required that all amendments to the pleadings be made by December 23, 2006, fact discovery be completed by April 23, 2007, and trial commence on February 4, 2008.

ARIAD has sought to derail this case by every conceivable means:  moving to dismiss on multiple grounds on three separate occasions, moving to transfer, moving for certification of an interlocutory appeal, moving for stay pending appeal, and moving for stay pending reexam. Despite these efforts, the case continued and ARIAD succeeded in getting only two brief stays of discovery. Thus, during the vast majority of the past 13+ months, ARIAD could (and should) have been proceeding with discovery.

Upon transfer of this case to Your Honor, ARIAD capitalized on its prior delays and sought an extension of the case schedule, ostensibly to give it even more time to conduct its infringement analysis. Your Honor extended by four months (to April 13, 2007) the date by which amendments to pleadings, including ARIAD's infringement counterclaims, could be filed, noting however that ARIAD had been on notice since September that the case would be proceeding forward.  *See* Ex. B (1/24/07 Tr. at 18, DI 135) Subsequently, the Court further extended other dates, moving the Markman hearing to January 8, 2008 and the trial date to May 12, 2008.

By its own choice, ARIAD did not serve its initial written discovery until February 22, 2007—a self-imposed delay of nearly 8 months. Despite this delay, Amgen produced the vast

May 31, 2007
Page 2

majority of its documents on April 10, within 45 days of receiving ARIAD's document requests. ARIAD delayed taking its first deposition until April 25, despite Amgen's multiple offers to produce witnesses weeks earlier. ARIAD has also further frustrated the progress of this case by, among other things, unnecessarily dragging its feet in providing dates for Amgen's initial deposition notices, moving each of the depositions back by at least several weeks.

**ARIAD's Arguments For Substantial Delay Are Without Merit**: All of ARIAD's arguments to support its proposed delay of the overall schedule are problems of ARIAD's own making:

- *Addition of the Institutions to the case* – The addition of the Institutions does not justify ARIAD's proposed delay. The Institutions have never suggested that they are prejudiced by their late addition to the case. Indeed, the Institutions have not served any individual discovery in the case; all discovery has been served by ARIAD jointly with the Institutions, and they are represented by the same counsel. Moreover, the License Agreement between the defendants specifically requires ARIAD to keep the Institutions apprised of litigation, and a representative of MIT in fact filed a declaration in this action in October 2006. *See* DI 86. The Institutions were on notice, and could have joined earlier if they wanted to. ARIAD is clearly in the driver's seat insofar as the Institutions' participation in this case is concerned and, therefore, the addition of the Institutions has effectively changed nothing.

- *ARIAD's attempt to add Wyeth to the case* – Given that it has always been public knowledge that Wyeth co-promotes Enbrel in the United States, ARIAD could have, and should have, attempted to add them as a party long before the last day on which parties could have been added under the schedule adopted by the Court. Moreover, Wyeth has nothing to do with the development or manufacture of Enbrel, and this case does not need Wyeth to proceed forward. ARIAD should not be able to further delay by its belated attempt to drag Wyeth into the case.

- *ARIAD's infringement counterclaims* – ARIAD also waited until the last possible day to add its infringement counterclaims. Given that ARIAD's infringement counterclaims admittedly mirror Amgen's non-infringement claims that have always been part of this case, they add nothing in the way of requiring any "new" discovery. With respect to damages and willfulness, Amgen has proposed a solution to deal with any conceivable impact these issues might have on the schedule as it now stands (see below).

- *Discovery that remains to be completed* – Amgen acknowledges that there exists discovery that remains to be completed, largely as a result of ARIAD's continued foot-dragging throughout this case to bolster its delay strategy. For example, ARIAD served twelve new deposition notices the day before filing its letter. In any event, the remaining discovery can be adequately dealt with in the next two months, pursuant to Amgen's proposal discussed in more detail below, particularly where ARIAD and the Institutions are now being represented by at least 15 outside counsel.

- *ARIAD's belated motion for leave to amend* – Amgen received ARIAD's motion for leave to amend yesterday afternoon, and will timely oppose the motion if the Court is inclined to consider it. ARIAD's motion does not justify delay since ARIAD waited

May 31, 2007
Page 3

until over a month after the Court's deadline for such amendment, which had already been extended by four months at ARIAD's request. ARIAD's stated excuse—that it was only recently able to allege infringement under these patents from documents produced by Amgen—is specious given ARIAD's failure to commence discovery in a timely manner.

- *ARIAD's need for laboratory testing* – ARIAD had one full year from the time of Amgen's complaint until the deadline for amendment of pleadings to allegedly analyze Amgen's products for the purpose of making its infringement allegations. Indeed, throughout that year, ARIAD repeatedly indicated that its purported infringement investigation was ongoing and that it was unable to assert any counterclaims until that investigation was complete. *See* Ex. C (ARIAD's 9/25/06 Answer to Complaint, DI 72); Ex. D (4/12/07 Rosenblatt letter indicting infringement analysis finally completed). Any testing that ARIAD wanted to perform could (and should) have been conducted much sooner.

**Amgen's Compromise Proposal**:  In contrast to ARIAD's proposal, Amgen has proposed a modest extension of some of the interim deadlines in the case that should provide sufficient time to complete the outstanding discovery. Amgen has proposed that fact discovery could be extended by over six weeks (from June 13 to July 27, 2007), with the initial expert report deadline being moved back one month (from July 7 to August 7, 2007). Under this proposal, all other dates in the current schedule could be maintained.

In addition, while ARIAD notes the additional discovery that its recent allegation of willful infringement adds to the case, Amgen has already proposed to ARIAD a solution. Consistent with the trend in patent cases in Delaware, willful infringement discovery could be conducted on a separate track from other fact discovery. Courts, including judges in Delaware, have recognized that alleged infringers should be allowed additional time to make the difficult decision as to whether to rely on the advice of counsel defense to rebut an allegation of willful infringement, and thus have to deal with the consequences of the associated waiver of privilege. As a result, this date is now frequently set after the close of other fact discovery. Amgen has proposed that this date be set for seven days following receipt of the Court's Markman ruling, with discovery to proceed in the weeks immediately following. Willful infringement discovery need not be completed by whatever deadline the Court sets for the other discovery in the case. Similarly, if ARIAD still contends that it cannot complete its other discovery within this six-week extension proposed by Amgen, Amgen suggests that damages discovery could continue past the close of other fact discovery since it need not be completed in advance of the Markman hearing in January.

ARIAD's schedule problems are of their own making, and they should not be able to use these problems to engineer further delay. Amgen has attempted in good faith to propose a reasonable alternative that adjusts some of the interim deadlines to permit completion of discovery, yet maintains the overall schedule (including the Markman hearing and trial dates) intact. Amgen respectfully suggests that the Court reject ARIAD's request to delay, and instead adopt Amgen's more reasonable compromise.

May 31, 2007
Page 4

Respectfully,

Melanie K. Sharp (No. 2501)

MKS:ch
cc:    Clerk of the Court (via hand delivery)
       John G. Day, Esquire (via e-mail and hand delivery)
       Frederick L. Cottrell, III, Esquire (via e-mail)
       David I. Gindler, Esquire (via e-mail)
       Charles E. Lipsey, Esquire (via e-mail)

# EXHIBIT A

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:          312 861-2000                                    Facsimile:
312 861-2389                                                                      312 861-2200
msernel@kirkland.com          www.kirkland.com

August 8, 2006

<u>VIA E-MAIL</u>

Elizabeth L. Rosenblatt
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Betsy:

I write in response to the discovery objections you served late last evening.

The discovery objections that you served last evening are in violation of the Federal Rules of Civil Procedure. As you are well aware, you failed to provide a substantive response to any of Plaintiffs' outstanding interrogatories and document requests, and instead simply set forth a litany of improper objections. While we understand that you also filed a motion to stay discovery late last evening, the law is very clear that the mere filing of such a motion *does not* excuse a party from its obligations to respond to discovery until the Court grants the relief that is sought. It is certainly not appropriate for ARIAD to decide for itself that it will grant it own motion to stay when its request to stay has already been denied once by Judge Jordan, and especially when ARIAD waited nearly a month (and until the day its discovery responses were due) to bring its formal motion.

We thus demand that you provide us substantive responses to our discovery no later than Thursday, August 10. If you do not provide us substantive responses by that date, I am available to meet and confer with you on Friday, August 11 to attempt to resolve our dispute. Assuming that you will continue to refuse to substantively respond to our discovery, we intend to bring this matter to the Court's attention.

# KIRKLAND & ELLIS LLP

August 8, 2006
Page 2

Please feel free to contact me to discuss this issue.

Very truly yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

August 9, 2006

<u>VIA E-MAIL</u>

Elizabeth L. Rosenblatt
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Betsy:

I write to respond to at least parts of the letter you sent earlier today.

I am perplexed by your contention that ARIAD provided "substantive responses" to Plaintiffs' discovery requests. I have read through ARIAD's "responses" and find nothing of substance in them. Please identify those "responses" that you believe to be substantive -- *i.e.* those "responses" that ARIAD will stand by and believes do not require supplementation.

I am also perplexed by your suggestion that "[t]he parties have been meeting and conferring on this topic [of staying discovery] for some time." I believe the history on meeting and conferring on this issue consists of two short meet and confers separated by weeks of silence by ARIAD. The history is this:

- ARIAD raised the prospect of staying discovery in the meet and confer regarding the scheduling order on July 6, and Plaintiffs rejected ARIAD's request;

- ARIAD then raised the issue of a stay with Judge Jordan by letter, and in the scheduling teleconference with the Court on July 12, at which time Judge Jordan denied ARIAD's request;

- Sixteen days then elapsed before ARIAD again raised the issue of a stay, this time in a letter you sent me on July 28;

# KIRKLAND & ELLIS LLP

August 9, 2006
Page 2

- We met and conferred on August 3, at which time I repeated Plaintiffs' position that we would not agree to a stay;

- ARIAD then waited four more days before filing its motion to stay.

The message to ARIAD from Plaintiffs (and the Court) has been very clear -- we will not agree to stay discovery. ARIAD's continuing effort to drag this issue out does not justify your delay in bringing the motion.

I am finally perplexed by the suggestion in your letter that Plaintiffs are engaging in discovery gamesmanship because we want responses to our discovery. We simply want what the Federal Rules require, and what Judge Jordan has ruled you must provide. And it is ironic that ARIAD would have concerns about producing information to Plaintiffs now if in fact ARIAD expects the case to be dismissed and has no intention of filing a lawsuit against Plaintiffs in the future. We of course have every expectation that your motion to dismiss will be denied, and we have much discovery to take before initial expert reports are due in January. There is no gamesmanship here -- we simply want to get started on litigating this case that we filed over four months ago.

I suggest a meet and confer tomorrow (Thursday) at 9 AM your time. Please let me know via email if this works for you.

Very truly yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

August 11, 2006

<u>VIA E-MAIL</u>

Elizabeth L. Rosenblatt
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:  *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ**

Dear Betsy:

In our meet and confer yesterday, you requested that we identify the specific concerns we have with ARIAD's August 7, 2006 discovery objections (separate and apart with our dispute regarding ARIAD's non-responses to the discovery). While the impropriety of your objections is transparent, particularly in light of your outright refusal to respond to the discovery, I will indulge your request in this letter.

As I explained to you on the phone yesterday, the real underlying issue here is that ARIAD impermissibly granted itself a stay pending resolution of its motion for a stay of discovery, and consequently has provided no substantive discovery responses. Your objections, even if they were proper as to some portion of a request -- and we believe the entirety of our requests are proper and unobjectionable -- simply cannot justify the complete failure to produce *any* documents or provide *any* substantive interrogatory responses. Nevertheless, I will walk through some of the problems with your objections.

ARIAD repeatedly -- in nearly every discovery response -- makes overbreadth and/or vagueness-type objections without specifying what is allegedly unduly burdensome, overbroad or vague/ambiguous about the particular request. If ARIAD is going to raise these objections, it must either provide specificity regarding its objection (*e.g.* what is vague and ambiguous) and/or indicate what subset of documents it intends to produce. By doing neither, these objections are improper.

ARIAD also repeatedly objects that the discovery requests are allegedly "premature." This amounts to an improper, unilaterally-imposed stay of discovery. *See*

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

August 11, 2006
Page 2

*Standard Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 261 (D. Del. 1992) (motion to stay discovery does not allow a party to "no longer obey basic discovery rules" and "unless and until it is granted a stay, [a party] should be required to conduct discovery as if no motion had been filed at all") (quoting *Willemijn Houdstermaatschaapij BV v. Appollo Computer, Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989).

ARIAD repeatedly objects that it need not produce documents that are "publicly available," "equally accessible to Plaintiffs," or in Plaintiffs' possession. This is incorrect. ARIAD's possession/knowledge of a document (e.g., a prior art reference) could in itself be relevant, for example. Moreover, ARIAD cannot be certain in all cases whether a document is accessible to, or in the possession of, Plaintiffs.

ARIAD repeatedly objects to providing documents that reflect trade secrets or other confidential/sensitive information. This objection is unfounded, as the parties are negotiating the provisions of the protective order, and this district has a provision in place to protect confidential information until a protective order is entered. *See* Local Rule 26.2.

ARIAD objects to each interrogatory to the extent they "call for a legal conclusion." This is an improper basis upon which to refuse to answer, as interrogatories are an appropriate vehicle for inquiring about an adversary's legal contentions and the bases for them.

Regarding ARIAD's objections to various interrogatories as "compound and consisting of multiple subparts," please indicate which of the interrogatories, if any, ARIAD is counting as multiple interrogatories and/or is refusing to answer in light of this objection.

As for some specific examples:

Document Request No. 1 -- please explain what ARIAD contends is vague and ambiguous about a request for "pleadings, transcripts, deposition transcripts of ARIAD's witnesses, exhibits, expert reports and documents produced by any party." With respect to the overbreadth/burdensomeness objection, we don't understand the justification for this and ARIAD has in any event refused production of, at a minimum, documents associated with other litigation or proceedings directly involving the '516 patent (e.g., the Eli Lilly litigation, or PTO reexamination proceedings).

Document Request No. 9 -- please explain what ARIAD contends is vague and ambiguous about a request for documents relating to conception, reduction to practice, and diligence toward reduction to practice, particularly given that several specific examples (inventor notebooks, etc.) are provided in the request. With respect to the overbreadth/burdensomeness

# KIRKLAND & ELLIS LLP

August 11, 2006
Page 3

objection, we don't understand how these objections can be proper, especially when I have to believe ARIAD produced documents in response to a similar request in the Lilly case.

Document Requests No. 24-25 -- documents in ARIAD's possession, custody or control concerning these topics (first sale/offer to sell or public use) are directly relevant to this action. Please explain what ARIAD contends it does not understand about these requests and why ARIAD contends this subject matter is not relevant.

Document Request No. 36 -- please explain what ARIAD does not understand about this request. Additionally, even assuming ARIAD has not conducted any evaluation or analysis of ENBREL or KINERET, documents in ARIAD's possession that relate to ENBREL or KINERET are nonetheless relevant to this action. (For example, ARIAD documents published during the Eli Lilly litigation specifically mentioned both products.) Please clarify whether ARIAD is truly contending that it is not required to turn over documents relating to these products on relevance and overbreadth/burdensomeness grounds.

Document Requests No. 45-46 -- please explain what ARIAD does not understand about these requests. Also, please explain ARIAD's contention that the subject matter "tumor necrosis factor (TNF) and/or tumor necrosis factor receptors (TNFRs)" and "interleukin-1 (IL-1) and/or interleukin-1 receptors (IL-1Rs)" is overly broad or poses an undue burden in the context of this litigation, in light of the products at issue.

Interrogatory No. 4 -- Please explain whether ARIAD is contending that it can withhold licensing and royalty information pertaining to the '516 patent on overbreadth, burdensomeness, and relevance grounds, and if so, explain the basis for this contention.

Interrogatory No. 5 -- Please explain whether ARIAD is contending that it can withhold information about legal or administrative proceedings involving the '516 patent on overbreadth, burdensomeness, and relevance grounds, and if so, explain the basis for the contention.

Interrogatory No. 10 -- Please explain whether ARIAD is contending that it can withhold information regarding prior allegations of invalidity or unenforceability of the '516 patent on the basis of its overbreadth, burdensomeness and relevance objections, and if so, explain the basis for this position.

As I mentioned above, this letter does not intend to provide an exhaustive list of the improper objections in your discovery "responses," as I consider all of your objections to be improper insofar as they provide your basis for refusing to include any substance in your

# KIRKLAND & ELLIS LLP

August 11, 2006
Page 4

responses.  In any event, please do not hesitate to call me if you would like to discuss this further.

Very truly yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

**AND AFFILIATED PARTNERSHIPS**

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

August 21, 2006

<u>VIA E-MAIL</u>

Jason Sheasby
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Jason:

I write this letter to you, as directed by Betsy Rosenblatt's email of this morning, to address several outstanding issues from last week.

In response to Ms. Rosenblatt's request that I send her letter explaining our problems with ARIAD's objections to Amgen's initial discovery, I sent her a letter dated August 11 outlining several examples of the problems that we had with ARIAD's objections. Ten days have gone by with no response. If ARIAD is truly interested in meeting and conferring, at a minimum, please identify all of ARIAD's stated objections that it intends to drop, as well as a detailed explanation as to the basis for each and every objection that it intends to maintain. You should do so as soon as possible so that we can attempt to work out any disagreements prior to the September 11 hearing.

On a related note, we are interested to hear what the basis was for Ms. Rosenblatt's statement during Friday's teleconference that there were "dangerous" documents in Lilly's possession that implicate serious "privacy" concerns, thus providing an argument for why Amgen's subpoena to Lilly should be quashed. Ms. Rosenblatt indicated that there was a need to meet and confer with Amgen regarding these concerns, and the Court suggested that the parties should do so before the September 11 hearing. Please provide us a detailed, written explanation of the objections that ARIAD has to Amgen's subpoena to Lilly, including an identification of the types of dangerous documents Ms. Rosenblatt was referring to. Once we have this written explanation we can meet and confer in an attempt to resolve any remaining disputes.

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

August 21, 2006
Page 2


   With respect to the protective order, while we have reached agreement on the key issue of a single confidentiality designation to which in-house counsel would have access, there is still some work to do to come to agreement on the remaining terms of the protective order. Please let me know when you (or someone at Irell) is available to discuss the remaining issues with the protective order. It goes without saying that we must work through these issues so that we can submit a protective order for Judge Jordan's signature prior to the September 11 hearing.

   We expect ARIAD to be prepared to immediately provide substantive discovery responses and move forward with this case if/when the Court denies ARIAD's motion to dismiss on September 11. If there are any issues upon which ARIAD would like to meet and confer before that hearing, or any other issues that might prevent the case from moving forward on that date, please let us know as soon as possible.


       Very truly yours,

       Marcus E. Sernel

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

August 25, 2006

<u>VIA E-MAIL</u>

Jason Sheasby
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:** ***Amgen et al. v. ARIAD Pharmaceuticals, Inc.***, D. Del. Civil Action No. 06-259-KAJ

Dear Jason:

        I still have not received any response to my letters of August 11 and 15 to Betsy Rosenblatt of your office, or my letter to you dated August 21. We stand ready to meet and confer on any issues you would like to discuss prior to September 11, but this must happen sooner rather than later in order to provide any chance to address these issues prior to the hearing. As I have stated in my prior letters, we expect all issues between the parties to be resolved on or before September 11, so that there is nothing that prevents full discovery to proceed on that date. Please provide responses to my prior letters immediately.

        Please feel free to contact me if you have any questions.

Very truly yours,

*p.p. Drew Diamond*

Marcus E. Sernel

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

September 5, 2006

<u>VIA E-MAIL</u>

Jason Sheasby
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Jason:

I write to respond to your letter of August 28 relating to various outstanding issues.

I am confused by your position with respect to meeting and conferring regarding your objections to Amgen's discovery requests. Your colleague Ms. Rosenblatt had previously requested that we provide you with specific details regarding the impropriety of your objections. We provided a lengthy list of examples of such improprieties in a letter dated August 11. This was done with the express understanding that you wanted to meet and confer with Amgen regarding the objections. Your position that it is now "premature and inappropriate" to meet and confer on these discovery requests is entirely inconsistent with what Ms. Rosenblatt stated just a few weeks ago. Moreover, we have repeatedly requested that you identify those objections that ARIAD maintains and provide the basis for each and every one of those objections. You, however, have repeatedly refused to do so, much less respond to my letter of August 11. We once again request that if ARIAD is maintaining any of its objections that you provide to us in writing immediately a list of such objections with a detailed explanation of the basis for each such objection so that these issues can be resolved during the September 11 hearing as indicated by the Court.

As stated in my recent letters, we want to ensure that ARIAD does not attempt to continue to delay this case if/when Judge Jordan denies ARIAD's motion to dismiss on September 11. ARIAD has previously requested to meet and confer on issues relating to Amgen's discovery requests, and we would like to resolve any disputes prior to September 11 so that any discovery response deadline that the Court puts in place at that time is not further

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

September 5, 2006
Page 2

delayed. As to your suggestion that you should have 25 days after September 11 to respond to discovery that you've had for nearly two months now, we do not agree. Since you were within hours of having to serve your discovery responses before you filed your motion to stay discovery, you should be within hours of having completed discovery responses to serve on us once the stay is lifted. Thus, assuming the motion to dismiss is denied, we would propose a deadline of September 15 for ARIAD's discovery responses. Whether or not ARIAD has filed a responsive pleading by that time is a completely separate question to the timing of the discovery responses (as underscored by the fact that Judge Jordan originally allowed discovery to proceed in the absence of your responsive pleading).

With respect to the protective order, once again you are taking a position that is contrary to your colleague. Ms. Rosenblatt and I agreed, after resolving the primary dispute with respect to in-house counsel access under the protective order, that we would work together prior to the September 11 hearing so as to be in a position to submit a joint proposed protective order to the Court before the hearing. If you are now unwilling to do so, please let me know.

I would like to meet and confer with you on any and all of these issues as soon as possible. Please let me know when you are available, or if you have any questions.

Very truly yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
(312) 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

September 19, 2006

**VIA E-MAIL**

Elizabeth L. Rosenblatt
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Betsy:

I write in response to your letter of late yesterday.

Erick Ottoson and/or I will be available to meet and confer with you regarding the remaining issues with respect to the protective order on Wednesday. We hope and expect that you will work with us to resolve the remaining issues in good faith as we have previously agreed to do. Please let us know your time preference and we can call you.

We do not understand how you could possibly contend that Amgen's designated in-house counsel (that you have already agreed can have access on the same terms as outside counsel) should be excluded from reviewing the Lilly documents. There is no possible basis for you to argue that the Lilly documents require "greater protection" than those contemplated by the protective order. Indeed, these documents have already been in Lilly's possession for some time, and you have never suggested (to our knowledge) that the provisions of the Lilly protective order were insufficient to protect your interests. While we will provide the Lilly documents to you when we receive them, you of course already know everything that you have provided to Lilly in the course of your litigation, and should be in a position right now to identify any documents that you believe require heightened protection. We expect your prompt agreement that the Lilly documents can be viewed by Amgen's designated in-house counsel, and we will certainly bring any gamesmanship to the Court's attention to the extent you seek to limit in-house counsel's access.

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

September 19, 2006
Page 2

Finally, with respect to ARIAD's discovery responses, your suggestion that ARIAD should have 29 days from the Court's denial of its motions to dismiss and stay to provide substantive discovery responses is wholly unacceptable. This case has been pending for five months, and you have had this discovery for over two months. ARIAD has litigated this same patent and presumably responded to very similar discovery in the Lilly case. We expect that you will provide us substantive responses to both our document requests and interrogatories on September 25. If you do not provide us substantive responses on that date, we intend to bring this matter back to the Court's attention.

As you know, Judge Jordan has expressed that this case should move forward with dispatch now that ARIAD's motions have been denied. We have much discovery to take over the coming few months to be in a position to serve expert reports in January, and expect your cooperation to be able to do that. Please feel free to contact me if you have any questions or issues, and I look forward to discussing the protective order issues with you this week.

Very Truly Yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
(312) 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 3, 2006

**VIA E-MAIL**

Elizabeth L. Rosenblatt
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear Betsy:

I write to follow up on several issues.

We received your supplemental responses to our document requests later last week and remain underwhelmed. While you have at least indicated that you will be producing documents in response to some of the requests, you continue to lodge improper objections. More importantly, you still have not produced any documents responsive to these requests. We expect production of your documents by Monday at the latest, and would like to meet and confer with you regarding some of the objections to your document requests.

With respect to the protective order, Erick Ottoson has provided you a revised draft reflecting your meet and confer with him. Please let us know when you are available to discuss the revised draft so that we can attempt to finalize the protective order for the Court's signature.

With respect to your interrogatory responses, these are long overdue. You have indicated that you would provide these interrogatory responses by Monday, and we will expect complete responses by that time.

Finally, with respect to the documents produced by Lilly in response to our subpoena, you should now have received a copy of all of the documents received by us to date. Please let us know by Monday if there are any documents that you believe cannot be reviewed by Amgen's designated in-house counsel. If there are, please identify each document by bates

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

October 3, 2006
Page 2

numbers and provide us your basis for believing the protective order is insufficient to maintain the confidentiality of the documents.

We look forward to discussing these issues and hopefully starting to make progress with discovery in this case. We would propose a meet and confer on the protective order at 11 AM Chicago time tomorrow (Wednesday); if that does not work, we are generally available so please let us know your preference. With respect to the discovery responses and any issues with the Lilly documents, we would suggest a meet and confer at 3 PM Chicago time on October 10, the day after you should have produced all of your discovery and documents to us.

Very Truly Yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 12, 2006

VIA E-MAIL

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear David:

I write to follow up on our meet and confer call of last evening.

We are in the process of turning around a draft of the protective order based on our discussion last evening, and would expect to be able to get you a draft of this later today. I hope that we are within one iteration of finalizing the protective order so that we can submit it for the Court's signature.

As I mentioned to you on the phone, I disagree with your position that ARIAD does not have to produce its own documents in this case because Amgen may have received copies of some of those documents from Lilly. The Federal Rules do not provide a free pass on discovery just because a third party might also have copies of some of the same documents. Moreover, we would expect that our document requests call for different categories of documents than were produced in the Lilly case, for example documents relating to the Amgen Entities or the products at issue. You cannot credibly contend that whatever sweep for documents was conducted in the Lilly case will be sufficient to capture and produce all documents that will be relevant to this case. We are entitled to receive *all* documents that ARIAD has that are responsive to our document requests. And it is not our burden to guess what additional documents ARIAD might have and then specifically request those -- we have served reasonably-tailored document

# KIRKLAND & ELLIS LLP

October 12, 2006
Page 2

requests[1] and you are under an obligation to locate and produce responsive documents that are in ARIAD's possession, custody or control.    Please let me know if you will change your indefensible position on this issue.

Your position with respect to your own document production is even more indefensible in light of your apparent gamesmanship with respect to the Lilly documents.  As you know, we produced the documents we received from Lilly pursuant to our subpoena (in the condition we received them from Lilly) over two weeks ago.  You indicated only yesterday that you are now having difficulty reviewing the documents because of "problems" with the load and image files that were provided. While I cannot confirm whether your "problems" are of your own making or not -- all I know is that our IT people were apparently able to sort through the problems -- it would appear that you are not devoting the proper time and attention to this task, and instead seeking to delay in-house access to these documents.  As I stated last night to you, I cannot fathom how ARIAD would have an objection to the designated Amgen in-house lawyers having access to these documents when it has already provided access to Lilly's in-house lawyers and has already agreed that designated Amgen in-house lawyers may access all documents produced under the protective order that we are finalizing. Accordingly, there is no defensible reason why ARIAD continues to refuse such access and we continue to insist on such access without any further delay.  You indicated that it was your desire to resolve this issue as quickly as possible, and I expect you to follow through on that promise.  At the very least, please immediately indicate which documents you have reviewed to date and provide us a "rolling" approval of those documents in the Lilly production that Amgen's in-house lawyers can see based on your review.

We also received your interrogatory responses late last evening.  Given the three months that you have had to gather information responsive to these interrogatories, however, your responses remain far from complete.  We will be preparing a detailed list of the continuing deficiencies with your interrogatory responses and will provide this to you shortly.

Very truly yours,

Marcus E. Sernel

---

[1]    Indeed, despite several requests over the last several months, you still have not articulated the bases for ARIAD's objections to Amgen's First Set of Documents Requests and Interrogatories.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

January 5, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:** *Amgen et al. v. ARIAD Pharms, Inc.*, **D. Del. Civil Action No. 06-259-*** (MPT)**

Dear David:

I write to follow up on your review of the documents produced by Lilly and your obligation to inform us whether designated Amgen in-house counsel can review these documents. As you know, we produced the vast majority of documents from Lilly on a rolling basis in September and October 2006. We have also now produced this week what we are told is the final installment of documents from Lilly. While we have received your consent that Amgen in-house counsel can review some of the Lilly documents, you still have not taken a position with respect to the majority of the documents that have been produced.

We would expect that all Lilly documents produced to you in September and October have now been reviewed -- indeed, you indicated to the Court in November that you were within a few business days of completing your review -- so please confirm that Amgen in-house counsel can access these documents. As for the latest batch of documents, I would ask that you complete your review of these documents by the end of next week and confirm that they can also be accessed by in-house counsel.

I trust that your IT people have now overcome their prior difficulties and been able to access all of the Lilly documents. If that is not the case, then I would suggest that you produce these same documents from ARIAD's own files.

Very truly yours,

Marcus E. Sernel

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:                     312 861-2000                     Facsimile:
312 861-2389                                                                   312 861-2200
msernel@kirkland.com                         www.kirkland.com

January 26, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-*** (MPT)

Dear David:

I write regarding several outstanding discovery issues. Please immediately (1) confirm that all documents produced by Lilly can be reviewed by designated Amgen in-house counsel, and (2) produce all additional documents that are responsive to Amgen's discovery requests.

With respect to point (1), in view of your previous statement to the Court that you were within only a few days of completing your review of all the documents produced by Lilly, we expect that you will have no problem in completing your review by February 2 and informing us by that date if there are any documents for which ARIAD refuses to authorize designated in-house access and, if so, the identity of all such documents. As we have stated several times before, ARIAD has no reasonable basis on which to withhold such access and we must know as soon as possible what ARIAD's final position is so that we can take it up with the Court if necessary.

Regarding point (2), ARIAD has now had ample time to conduct a reasonable search for additional documents that are responsive to Amgen's document requests but which were not included in the Lilly subpoena. Indeed in your letter, dated October 25, 2006, you stated:

> We do not intend to rely exclusively on the document production from the Lilly case to satisfy ARIAD's obligations to respond to Amgen's document requests…There are, of course, a number of categories of documents that Amgen has requested—for example, documents relating to Enbrel and Kineret—that were not collected for the Lilly litigation.

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

January 26, 2007
Page 2

Besides documents relating to Enbrel or Kineret, we are aware of several additional categories of documents that are included within our document requests but not satisfied by the documents produced from the Lilly subpoena. A non-exhaustive list of such documents includes:

- Documents that relate to any research, development and testing of products or compounds that ARIAD contends practice, embody or incorporate the subject matter described by the '516 patent (Request No. 3);

- Documents that relate to past or present efforts by ARIAD or its collaborators to develop products based on the subject matter of the '516 patent (Request No. 8);

- Documents sufficient to identify persons who assisted in any research, development and testing of any attempts to develop products based on the subject matter of the '516 patent (Request No. 5);

- Documents relating to any presentations to or by ARIAD relating to the subject matter described in the '516 patent (Request No. 8);

- Documents relating to any presentations to or by ARIAD relating to any of the Amgen Entities (Request No. 38);

- Documents relating to any interviews, presentations, demonstrations and other communications at which any employee of the United States Patent and Trademark Office was present concerning the subject matter of the '516 patent (Request No. 50);

- Documents relating to all board and scientific advisory board meeting minutes or presentations that relate to the '516 patent (Request No. 61).

Given your acknowledgment of your discovery obligations with respect to documents not produced from the subpoena to Lilly, we expect that ARIAD can substantially complete its production of any such documents by February 9.

You have never responded to my inquiry, sent on January 5, regarding your representation of the inventors for purposes of discovery in this case. To reiterate, I asked which of the named inventors your firm represents for purposes of discovery in this case, which of the named inventors you will voluntarily produce for deposition, and for those of the named inventors that your firm is representing, whether you will accept service of documents such as subpoenas. You had indicated that these issues would be resolved once Ms. Rosenblatt returned from vacation on January 15. Please let us know by January 31 your answers to the above

# KIRKLAND & ELLIS LLP

January 26, 2007
Page 3

questions.  If you do not confirm your representation by January 31, we will assume that the inventors will not be represented by your firm and will proceed accordingly.

So that discovery in this case is not further delayed, please provide the requested information and documents as soon as possible.

Very truly yours,

for   Marcus E. Sernel

# KIRKLAND & ELLIS LLP
#### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

February 1, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:** *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-***(MPT)

Dear David:

I write to follow up on the first of three letters you sent on January 31. In this letter, you indicated that your firm was "representing all of the inventors except for Louis Staudt and Roger Clerc." You did not, however, fully respond to my inquiries with respect to the inventors. I had also sought information regarding:

- which of the named inventors you would voluntarily produce for deposition; and

- whether you would accept service of documents such as subpoenas on behalf of the inventors.

As my original request for this information was made on January 5, and so that discovery in this case is not further delayed and can be conducted as efficiently as possible, please provide the requested information as soon as possible, and in any event, no later than Monday, February 5, 2007.

Very truly yours,

*for* Marcus E. Sernel

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:                          213 680-8400                          Facsimile:
213 680-8217                                                                          213 680-8500
ddiamond@kirkland.com                        www.kirkland.com

Direct Facsimile: 213-808-8043

February 9, 2007

**VIA EMAIL**

Betsy Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear Betsy:

I write in response to your letter of February 8, 2007, in which you objected to various aspects of Amgen's 30(b)(6) Notice to ARIAD. We are willing to have a meet and confer so that you can further share your concerns, but must emphasize here that the deposition is timely and appropriate and that we expect it to be going forward at some point in the very near future.

As a preliminary matter, I note in your letter that you believe some of the information we seek from this deposition may be "more properly sought via interrogatories." Do you intend to soon discharge your obligation to supplement your interrogatory responses to provide actual answers to our earlier queries? While substantive interrogatory responses are not a substitute for deposition testimony, your immediate compliance with the Rules may allow us to streamline our pursuit of testimony on certain aspects of the noticed 30(b)(6) topics. The fact is that ARIAD has now had *over four months* -- exclusive of any stay -- to answer the interrogatories that Mr. Gindler admitted were responded to "mostly with objections." Please let us know a date certain upon which you will supplement your interrogatory responses with substantive content.

You argue in your letter that many of the deposition topics call completely or partly for inventor testimony. We disagree. While ARIAD is certainly welcome to designate one or more of the named inventors to speak for ARIAD on any of the noticed topics, the topics do not require an inventor to be the one speaking on the facts surrounding the alleged inventions. You also argue that many of the deposition topics call completely or partly for expert testimony. We again disagree. Specifically, you refer to certain topics as calling for information regarding what a "person of skill in the art" would have understood concerning the inventions of the '516 patent. We do not see this language in the topics as written and consequently do not understand what

Chicago        London        Munich        New York        San Francisco        Washington, D.C.

Betsy Rosenblatt, Esq.
February 9, 2007
Page 2

you mean by your objection. Are you contending that it is inappropriate to ask ARIAD about the facts regarding what ARIAD alleges to be the inventions in its own patent? Please explain.

You further argue that testimony regarding certain topics is premature in light of the fact that claim construction in this matter has not yet occurred.[1]  The timing of the Court's claim construction in this case, however, is irrelevant to the topics as articulated.  ARIAD cannot deny that it already alleges that the '516 patent discloses and claims specific inventions.  While indeed the Court may ultimately disagree with ARIAD's interpretation of the claims, ARIAD not only can describe the inventions it alleges are in fact disclosed and/or claimed in the '516 patent, but also, in the context of such alleged inventions, can provide testimony related, among other things, to the following non-exhaustive list of facts requested under the 30(b)(6) Notice:

- *Facts* regarding the conception of, reduction to practice of, or efforts to reduce to practice any such alleged invention.
- *Facts* regarding the first knowledge or use of any such alleged inventions by others in the United States, the first patenting or publication of any such alleged inventions anywhere in the world, the first public use or offer for sale of any such alleged inventions in the United States, and the first disclosure of any such alleged inventions to any person not named on the face of the '516 patent as an inventor.
- *Facts* regarding the design, operation and structure of *actual* methods or processes that practice, embody or incorporate any such alleged inventions and the commercial success of such methods or processes.
- *Facts* regarding the design, operation and structure of *actual* compositions of matter or compounds used in methods or processes that practice, embody or incorporate any such alleged inventions and the commercial success of such compositions of matter or compounds.
- *Facts* regarding all experimental, research, development and/or testing activities performed by or on behalf of ARIAD related to any such alleged inventions, including identities of persons at or associated with ARIAD.
- *Facts* regarding ARIAD's license, investigation, assessment, negotiation, and litigation-targeting activities related to any of the alleged inventions.
- *Facts* regarding ARIAD's relationships with Harvard, MIT, and the Whitehead Institute.

*(The above list gives examples only and is not intended to limit the scope of the noticed topics)*

---

[1]     This is puzzling.  A logical result of your argument would be to allow ARIAD to withhold information until after the Court has issued a *Markman* ruling (and long after fact and expert discovery in this matter has closed).

Betsy Rosenblatt, Esq.
February 9, 2007
Page 3

You also profess to find the "multi-part definition" of ARIAD "incomprehensible." Please explain in more detail how you find the definition for ARIAD "incomprehensible" in the specific context of each topic in which the word "ARIAD" is used. We are willing to listen to your concerns, but cannot even consider your request of providing a more "appropriate" definition if you do not explain to us how you can be truly confused about what "ARIAD" means in the context of a particular topic.

Regarding your assertions that some of the topics are vague and ambiguous, we do not see the need for further explanation. We are confident that, once ARIAD has actually taken the time to designate witnesses, they will be able to figure out to the best of their ability what it means to "investigate [a method or compound] for consideration as requiring a license" and what patents and patent applications are "related to" the '516 patent. We are, however, willing to listen to your concerns in our meet and confer.

We would like to have the meet and confer relating to the 30(b)(6) Notice at your earliest convenience, preferably before Wednesday of next week. We will meet and confer with you on the date(s) for the deposition and witness designations and the location(s) for the deposition, and are certainly willing to listen to any further objections you may feel compelled to voice. In advance of this meet and confer, please provide us with a letter detailing the following:

- The specific topics for which ARIAD is prepared to designate a witness or witnesses by the February 14 deadline outlined in the Notice.
- The topics for which ARIAD contends it requires more time to designate a witness or witnesses.
- An account as to why more time is required to designate such witness(es).
- A date certain upon which ARIAD will designate such witness(es).
- The location(s) at which ARIAD would prefer its witness(es) be deposed.
- The date(s) upon which ARIAD would prefer its witness(es) be deposed.

Ever yours,

/s/ *Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:                    213 680-8400                              Facsimile:
213 680-8217                                                                        213 680-8500
ddiamond@kirkland.com                       www.kirkland.com                    Dir. Fax: 213 808-8043

February 9, 2007

**VIA E-MAIL**

David I. Gindler, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear David:

I write in response to your letter sent February 7, 2007. In that letter, you stated "Amgen has demanded immediate production of documents in response to limited versions of Requests No. 3, 4, 5, 8, 38, 50 and 61." This statement mischaracterizes our letter of January 26, 2007. We requested that ARIAD complete its production of *all* additional documents that are responsive to Amgen's document requests but which were not included in the Lilly subpoena by February 9, as required by your acknowledged discovery obligations. We did refer to this specific subset of requests as *examples* of categories of documents that were not satisfied by the production from the Lilly subpoena, but specifically indicated that the list was *"non-exhaustive."*

Nonetheless, you listed certain objections to this limited set of requests to "facilitate the meet and confer process." However, we *already went through* a meet and confer process with respect to these requests over three months ago. Indeed, in your letter to the Court, dated November 2, 2006, you stated:

> To date, ARIAD's counsel and Plaintiffs' counsel have *repeatedly met and conferred* regarding Plaintiffs' sixty-two requests for production.

(emphasis added). In this letter, you further informed the Court that "ARIAD has agreed to produce all relevant, discoverable documents sought by forty-two of Plaintiffs' requests." You then cited to your letter, sent October 31, 2006, which listed what documents you planned on producing in response to forty-two of our requests. Now, however, you attempt to raise new objections to categories of documents that you have *already explicitly agreed* to produce.

London          Los Angeles          New York          San Francisco          Washington, D.C.

## KIRKLAND & ELLIS LLP

February 9, 2007
Page 2

In your letter of October 31, 2006, you stated that you would produce the following, subject to a list of additional reservations at the end of that letter:

**Request No. 3** — ARIAD will produce non-privileged documents that relate to any research, development and testing of products or compounds that ARIAD contends practice, embody, or incorporate the subject matter described by the '516 patent, including documents regarding Lilly's alleged infringing products in the prior litigation or any other third party products. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

**Request No. 4** — ARIAD will produce non-privileged documents that relate to past or present efforts, if any, by ARIAD or its collaborators to develop products based on the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

**Request No. 5** — ARIAD will produce non-privileged documents sufficient to identify persons, if any, who assisted in any research, development and testing of any attempts to develop products based on the subject matter of the '516 patent. ARIAD will not produce such documents for the Related Patents, but will notify you if any such documents exist.

**Request No. 8** — ARIAD will produce non-privileged presentation materials or other documents that reflect the substance of presentations, if any, between ARIAD and third parties regarding the subject matter of the '516 patent, as well as documents sufficient to establish the date of and persons who attended any such presentations. ARIAD will not produce such documents for the Related Patents, but will notify you if any such presentations exist.

Inexplicably, you now ask us to explain how Requests Nos. 3, 4, 5, and 8 are "calculated to lead to the discovery of relevant information" and why we "believe that the benefits of these requests outweigh the burdens to ARIAD involved in responding to them." These documents, *as you implicitly agreed before*, are clearly calculated to lead to the discovery of admissible evidence to issues relevant to this case.

Furthermore, in your letter of February 7, 2007, you stated that "[w]ith respect to Request No. 50, ARIAD has agreed to produce file history and other documents of public record disclosed in the prosecution of the '516 patent, subject to the objections set forth in ARIAD's Amended Objections and to the extent not already produced by Lilly." In your October 31, 2007 letter, however, you *already agreed* to produce a more complete set of responsive documents:

# KIRKLAND & ELLIS LLP

February 9, 2007
Page 3

> **Request No. 50** — ARIAD will produce non-privileged documents that relate to any interviews, presentations, demonstrations, or other communications at which any employee of the PTO was present concerning the prosecution or reexamination of the '516 patent or the Related Patents.

In our January 26, 2007 letter, we also referred to documents related to Enbrel or Kineret as additional categories of documents that are included within our document requests but not satisfied by the documents produced from the Lilly subpoena. While your February 7, 2007 letter makes no mention of these documents, your November 2, 2006 letter to the Court does:

> Ariad has agreed to produce ***all relevant non-privileged documents concerning Enbrel or Kineret***, such as non-privileged documents concerning any comparison of the claims of the '516 patent to Enbrel or Kineret.

To the extent that your letter of February 7, 2007 conflicts with what you agreed to in your October 31, 2006 letter and what you represented to the Court in your November 2, 2007 letter, please clarify why you are changing your position with respect to production of these documents.

You have now had our First Set of Requests for the Production of Documents and Things since July 7, 2006, and we have yet to receive a single document from ARIAD. Although this case has been stayed from August 18, 2006 to September 11, 2006 and November 3, 2006 to December 29, 2006, there have been *over four months* during which ARIAD has had our discovery requests and a corresponding obligation to produce responsive documents. Accordingly, although we had requested to receive all outstanding documents by February 9, we expect that you could produce the majority of these documents by February 16, 2007. Additionally, please provide us with the date by which you will fulfill the remainder of your discovery obligations. Finally, where ARIAD will be relying on documents produced by Lilly under subpoena to fulfill ARIAD's discovery obligations, we request that you enumerate, by Bates number range, the documents from Lilly that you view as responsive to our requests.

To address these matters, we propose to meet and confer on either Monday, February 12 or Tuesday, February 13. Please advise us of your availability on either of these dates so that we can set a time to discuss and resolve any outstanding issues.

Regards,

*/s/ Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:                    213 680-8400                    Facsimile:
213 680-8217                                                                213 680-8500
ddiamond@kirkland.com                      www.kirkland.com               Dir. Fax: 213 808-8043

February 14, 2007

**VIA E-MAIL**

Elizabeth Rosenblatt
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear Betsy:

This letter is in response to the letter you sent today memorializing our meet and confer that took place yesterday regarding outstanding discovery issues related to Amgen's First 30(b)(6) Notice and Amgen's First Set of Requests for the Production of Documents and Things.

First, regarding the 30(b)(6) notice, Amgen has the same understanding of the topics for which ARIAD agreed to produce 30(b)(6) witnesses (namely, for topics 5-11, 13-14, 12 as limited, 16, to the extent subsumed in the other topics). Amgen further notes several concerns that it has pertaining to the discussion of topics 5-9 and 13-14. These topics pertain, generally, to ARIAD's licensing efforts related to the '516 or related patents and information about methods, processes, compounds or compositions that may practice the alleged inventions of the '516 patent. During the course of our discussions, Ms. Rosenblatt indicated that while ARIAD believes these topics to be appropriate, any witness provided by ARIAD would likely "not know too much" about them.

To explain this comment, Mr. Gindler suggested that we recall ARIAD CEO Harvey Berger's trial testimony in the Lilly case. The tenor of this discussion seemed to be that ARIAD would "produce" 30(b)(6) witness(es) on these topics who would have very little to say, either on grounds that ARIAD had only conducted cursory analysis (but not *no* analysis) on companies or products, and therefore could not discuss them at all in relation to the '516 patent, or that ARIAD had conducted a complete analysis, rendering any related information privileged. It remains to be seen, of course, what any 30(b)(6) witness(es) on these topics will attest to, but in light of the

London          Los Angeles          New York          San Francisco          Washington, D.C.

## KIRKLAND & ELLIS LLP

February 14, 2007
Page 2

discussion described above, Amgen wants to be clear that it reserves all rights with respect to obtaining the full scope of information covered by these requests to which Amgen is entitled.

Additionally, during the meet and confer, ARIAD stated that it would not provide any 30(b)(6) witnesses for topics 1-4 and topic 15. Topics 1-4 address, generally, the conception and reduction to practice of the alleged inventions of the '516 patent. ARIAD acknowledged the relevance of these topics, but declined to produce any witnesses on the grounds that ARIAD had no "firsthand" knowledge of events covered by the topics. ARIAD stated that Amgen should seek information on these topics elsewhere—from inventors or prosecuting attorneys. Amgen disagrees and will seek appropriate remedies.

Topic 15 relates, generally, to all facts and circumstances supporting and surrounding ARIAD's responses to Amgen's discovery requests. ARIAD refused to provide any 30(b)(6) witness for this topic on the basis that this request was too broad. In order to address ARIAD's concern, Amgen proposes the following narrowed formulation of topic 15:

> The basis for ARIAD's responses to Plaintiffs' discovery requests, including Plaintiff's First Set of Interrogatories to Defendant, and Plaintiffs' First Set of Requests for Documents and Things to Defendant, including any efforts taken by ARIAD to identify such facts.

Finally, regarding the scheduling and location of the 30(b)(6) deposition(s), Amgen has agreed to conduct the depositions in Boston or Cambridge, Massachusetts, with the final location to be proposed by ARIAD. Amgen also understands that ARIAD has agreed to designate witnesses, along with dates on which they are available to be deposed, by February 27. Mr. Gindler proffered that Amgen could bring the issue before the Court "within 48 hours" if the dates were not "reasonable." Given the amount of time that ARIAD has already been on notice of this deposition, Amgen *will* take this matter to the Court if the proposed dates do not fall within the weeks immediately following February 27.

Turning to the issue of ARIAD's ongoing review of the documents produced in response to the Lilly subpoena, Amgen acknowledges that ARIAD expects to finish reviewing the remainder of these documents by the end of this week. Given the small number of documents, Amgen hopes that ARIAD takes seriously its professed expectation to finish reviewing them by the end of this week. Indeed, five months have passed since Amgen served its subpoena on Lilly on August 11, 2006, and only just now are Amgen's in-house counsel about to have complete access to the Lilly documents—the only documents to have been produced in this case so far. This lack of access for in-house counsel was maintained, with sporadic notices that ARIAD had

## KIRKLAND & ELLIS LLP

February 14, 2007
Page 3

cleared more Bates ranges, solely on the basis that this production contained "dangerous documents," and despite the fact that the protective orders in place in both the Lilly litigation and this litigation are nearly identical. Indeed, after all of ARIAD's professed concerns about dangerous documents, it was only able to identify two out of approximately 8,000 documents that it believed Amgen should return or destroy.[1] Amgen has done so, notwithstanding Amgen's position that this category of documents is properly discoverable under the Federal Rules and does not appear to be dangerous. In any event, during our meet and confer yesterday, Mr. Gindler indicated that if Amgen had sought these documents directly from ARIAD and not from Lilly, ARIAD would have simply sent Amgen the same discs that it had given Lilly. Instead, ARIAD has chosen to delay discovery unnecessarily by producing no documents from its own files, and reviewing the documents produced by Lilly at its own pace. Simultaneously, ARIAD has refused to produce anything present within the Lilly production from its own files (a process apparently involving merely copying some discs).

ARIAD continues to adhere to the positions it took regarding the scope of document production in its letter of October 31, 2006, along with its representations to the Court on November 2, 2006. ARIAD has also indicated that the document production from Lilly does not necessarily cover all documents responsive to Amgen's document requests and that ARIAD has been looking for any such additional documents, but has not found any yet.

ARIAD has agreed to "provide a date certain by which ARIAD expects to have completed its production." But, as to when Amgen will learn what this end date is, Mr. Gindler stated during our discussions that "you will get a date when you get a date." ARIAD has thus refused to provide any concrete indication of when ARIAD expects to be done with its document production. Amgen continues to be bewildered as to why ARIAD cannot provide any dates *despite* having had Amgen's document requests for over four months during which discovery was not stayed in this case and *despite* having taken a definite position on what documents it would agree to produce to Amgen over three months ago on October 31, 2006, and *despite* ARIAD's repeated assertions that "[w]e do not expect this category of documents to be very large."

---

[1] Amgen also identified a third document that appeared to be the corresponding brief to one of the documents ARIAD identified for destruction; this third document was located in a section of the Lilly production that ARIAD had indicated it could not view. Amgen informed ARIAD of this document, and has destroyed it as well, although Amgen maintains that it is properly discoverable under the Federal Rules.

## KIRKLAND & ELLIS LLP

February 14, 2007
Page 4

The only explanation that Amgen can imagine for not having received any documents yet is ARIAD's current document production methodology, as you explained during our meet and confer yesterday.  This process appears to consist of collecting all potentially responsive documents from ARIAD and then *cross-checking each and every one with the Bates numbers from the Lilly production* to ensure that no document gets produced twice.  While ARIAD insists that it has no obligation to produce documents that were already produced in response to the Lilly subpoena, the laborious process by which ARIAD has chosen to ensure that no document gets produced twice is not a valid basis for ARIAD to fail to produce documents within a reasonable period of time.

In sum, Amgen is satisfied that some progress has been made with respect to the 30(b)(6) depositions, although needless to say, Amgen is disappointed that ARIAD has refused to produce a 30(b)(6) witness for topics 1-4, despite acknowledging their relevance and that ARIAD has not yet completed its review of the Lilly documents, although hopefully that will be done by the end of this week.  Amgen is also extremely disappointed to have learned that ARIAD appears to be employing a slow and cumbersome methodology to survey for any additional documents responsive to our requests.  Finally, Amgen is frustrated that it has yet to receive a single document from ARIAD directly, and that there still is no clear end date in sight for when ARIAD will finish its production.  We are indeed hopeful that, as ARIAD stated in its letter, this end date will be "in the very near future."  Amgen looks forward to knowing exactly when this date will be.

Yours sincerely,

*/s/ Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

March 16, 2007

<u>**VIA E-MAIL**</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:     Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, **D. Del. Civil Action
No. 06-259-MPT**

Dear David:

I write regarding several outstanding discovery issues, including (1) ARIAD's continued failure to produce all documents responsive to Amgen's document requests; and (2) ARIAD's deficient responses to Amgen's First Set of Requests For Admission.

## ARIAD's Deficient Document Production

In reviewing ARIAD's production of documents, it is readily apparent that ARIAD's production is incomplete. As of March 13, ARIAD had only produced approximately 2500 pages in response to Amgen's requests for production — most of which are SEC filings and printouts from ARIAD's website. Only on March 13 did ARIAD apparently deliver an additional documents, most of which are from the Eli Lilly proceedings and which according to the cover letter sent with the production, includes no ARIAD confidential information. While we have not yet had an opportunity to review ARIAD's latest production in detail, it is difficult to imagine how a production made up entirely of non-confidential information can satisfy the numerous deficiencies in ARIAD's production that we have noted and discussed with you in the past. This production is simply not credible, especially given that ARIAD has now had over 8 months to search for and produce documents in response to Amgen's requests.

Putting aside the lack of completeness of ARIAD's production, there is also the issue of the timeliness of ARIAD's production. The fact discovery cut-off in this case is fast approaching and any continued delay by ARIAD in fully responding to Amgen's discovery requests is unacceptable. We have addressed our specific grievances with ARIAD's production

London         Los Angeles         Munich         New York         San Francisco         Washington, D.C.

# KIRKLAND & ELLIS LLP

March 16, 2007
Page 2

on multiple occasions, including meet and confers. Yet, ARIAD has opted to choose stonewalling and delay over compliance with the Federal Rules. For example, in addition to the various requests that we have previously brought to your attention, for which ARIAD has not produced (and continues to refuse to produce) all responsive documents, ARIAD has also not produced any electronically stored information, including any e-mails, in this case. Nor has ARIAD produced all responsive documents that were created after ARIAD last embarked to collect and produce documents in the Lilly case (which we in fact received only from Lilly pursuant to our Lilly subpoena). If we do not receive ARIAD's complete production (including all electronically stored information) by Friday, March 23, 2007, we intend to move the Court for an order compelling such production.

### ARIAD's Deficient Responses to Amgen's RFAs

ARIAD's March 7, 2007, responses to Amgen's First Set of Requests for Admission are also incomplete and/or non-responsive. We would like to set up a meet and confer early next week to discuss these deficiencies. I am generally available Monday thru Wednesday of next week for a meet and confer.

First, ARIAD's responses to Amgen's requests for admission numbers 1-3, 5-53, 55-84, 86-125, 127, and 134-141 are incomplete because each of those responses is subject to the objection that terms are "vague and ambiguous." Examples of terms that ARIAD finds "vague and ambiguous" are: "NF-kB activity", "human", "a molecule", "intracellular", "extracellular", and "cells." But such terms/phrases are not vague or ambiguous as ARIAD claims. Many of these terms have common meanings that are undisputed. For example, there can be no question about what a "human" is -- this objection is not credible. Moreover, some of the terms, such as "NF-kB activity", "intracellular", and "extracellular" are used in ARIAD's own discovery requests *in this case.*

Second, ARIAD's responses to Amgen's requests for admission numbers 5-6, 8-9, 11-15, 18-19, 21-31, 33-43, 45-84, 87-91, 93, 98-107, 119-122, and 138-141 are incomplete and/or non-responsive. In response to such requests, ARIAD merely states that "although ARIAD has conducted a reasonable inquiry in an attempt to respond to this request, ARIAD cannot further admit or deny this request" but fails to state that "the information known or readily obtainable by [ARIAD] is insufficient to enable [ARIAD] to admit or deny" the request as explicitly required by Rule 36(a). Is it ARIAD's position that "the information known or readily obtainable by [it] is insufficient to enable [it] to admit or deny" these requests? ARIAD's boilerplate non-responses to Amgen's requests fall short of complying with Rule 36(a) because they fail to "set forth *in detail* the reasons why the answering party cannot truthfully admit or deny the matter." (emphasis added). For example, Amgen's request for admission number 28

## KIRKLAND & ELLIS LLP

March 16, 2007
Page 3

states "[s]ome publications show that PHA will induce NF-kB activity in 70Z/3 cells." ARIAD's response to this request is that "although ARIAD has conducted a reasonable inquiry in an attempt to respond to this request, ARIAD *cannot further admit or deny this request.*" But either ARIAD's "reasonable inquiry" has found publications showing that PHA will induce NF-kB activity in 70Z/3 cells, or it has not. ARIAD must expressly admit or deny these requests for admission. If ARIAD truly believes that it cannot admit or deny a request for admission despite a "reasonable inquiry" then ARIAD must "set forth *in detail* the reasons why." (emphasis added).

        Third, ARIAD's responses to Amgen's requests for admission numbers 108-115, and 124-133 are incomplete and/or non-responsive. Instead of responding to these requests, ARIAD "objects to [these] request[s] as premature because ARIAD has not completed its investigation of whether any of the claims of the '516 patent are infringed ... by Plaintiffs based on any activities related to" Enbrel or Kineret. This objection is improper and has no basis in the Federal Rules or case law. Pursuant to Rule 36(a), ARIAD "may not give lack of information or knowledge as a reason for failure to admit or deny *unless* the party states that the party has made reasonably inquiry *and* that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." (emphasis added). ARIAD's objection and non-response directly contradict this express provision of Rule 36(a). Has ARIAD conducted a reasonable investigation in order to respond to these requests and is it ARIAD's position that "the information known or readily obtainable by [it] is insufficient to enable [it] to admit or deny" these requests?

        I look forward to your prompt attention to ARIAD's document production issues, and discussing ARIAD's responses to Amgen's First Set of Requests for Admission at a meet and confer. Please contact me if you have any questions.

                Sincerely,

                Jamie McDole

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:
213 680-8217
ddiamond@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500
Dir. Fax: 213 808-8043

March 29, 2007

<u>Via E-mail</u>

Elizabeth L. Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:  *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear Betsy:

I write in response to your letters of a few hours ago, in which you propose to postpone several of the depositions that have been calendared for the next several weeks.

First, regarding the depositions for Drs. Fan, LeBowitz, and Singh, the notices you "received" yesterday simply resulted from our filing copies of the subpoenas we served earlier this month. Contrary to your letter, we have not re-noticed these depositions, and have been willing to accommodate the new dates and location you requested for Drs. Singh and LeBowitz in your original letter of March 22, 2007.

We find it highly objectionable, however, that ARIAD would seek to postpone depositions for next week that have been previously agreed to by the parties. We noticed Dr. Fan's deposition for April 6, you confirmed that Dr. Fan would be made available on April 6, and we had made arrangements to take Dr. Fan's depositions on that date. We had similarly prepared to provide a witness in response to ARIAD's Third Notice of Deposition on April 5. For you to seek to unilaterally cancel these depositions at this time, and then turn around and demand that we confirm by the close of business **today** whether the new dates are acceptable, is unprofessional and discourteous.

Your postponement of these depositions, along with the delayed dates for the other depositions that have been noticed, raises serious concerns as to whether ARIAD will act in good faith to complete discovery in the time allotted by the Court. ARIAD has sought to delay this case at every opportunity, and we are concerned that these latest postponements are just the

Chicago        Hong Kong        London        Munich        New York        San Francisco        Washington, D.C.

Elizabeth L. Rosenblatt, Esq.
March 29, 2007
Page 2

latest part of this strategy to delay. Now that the Court has denied ARIAD's procedural motions, there is no basis at all to continue your delay tactics.

Discovery in this case must move forward immediately, and we intend to bring the fact of ARIAD's delay (along with other outstanding discovery issues) to the Court's attention. Please let us know if any of the noticed inventors are available on dates earlier than those proposed in your letter. Assuming they are not, we will agree to take them on the proposed dates.

Sincerely,

*/s/ Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California  90017

Drew Diamond
To Call Writer Directly:
213 680-8217
ddiamond@kirkland.com

(213) 680-8400

www.kirkland.com

Facsimile:
(213) 680-8500
Dir. Fax: 213 680-8500

March 30, 2007

<u>VIA EMAIL</u>

Elizabeth L. Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:** ***Amgen et al. v. ARIAD Pharms., Inc.***, D. Del. Civil Action No. 06-259-(MPT)

Dear Betsy:

I write in response to your letter of this morning, in which you "confirm" that Amgen has agreed to the new dates you proposed in your March 29, 2007 letter regarding depositions noticed in ARIAD's first and third 30(b)(6) deposition notices.  You are incorrect -- Amgen has not agreed to these new dates.  My response letter of March 29, 2007 stated that Amgen only agreed (reluctantly) to move the dates of the inventor depositions that you referenced in your letter.

You proposed moving the deposition noticed in ARIAD's third 30(b)(6) deposition notice from April 5, 2007 to April 12, 2007.  April 12th will not work for us due to scheduling conflicts, but Amgen will be able to offer a witness on April 25, 2007.

You also proposed moving the deposition noticed in ARIAD's first 30(b)(6) deposition notice from April 20, 2007 to May 3, 2007.  Amgen is still trying to determine whether this new date is acceptable.

Amgen will not be offering a witness for the April 9th deposition noticed in ARIAD's second 30(b)(6) deposition notice.  As explained in greater detail in Amgen's forthcoming response, all topics listed in this deposition notice are objectionable.

You should have received yesterday the next round of subpoenas for depositions to be taken by Amgen.  If you will not be able to produce the witnesses on the dates noticed, you should immediately inform us of alternative dates (presumably within a few days or so of the

Elizabeth L. Rosenblatt, Esq.
March 30, 2007
Page 2

noticed date) so that we can plan accordingly.  We need to establish firm dates for these depositions, and then stick to them, so that discovery can proceed toward completion within the timeframe set by the Court.

Best regards,

*/s/ Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:
213 680-8217
ddiamond@kirkland.com

213 680-8400

www.kirkland.com

Facsimile:
213 680-8500
Dir. Fax: 213 808-8043

April 4, 2007

**VIA E-MAIL**

David I. Gindler, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)**

Dear David:

I write in response to your April 3, 2007 letter regarding the depositions of Drs. Baeuerle and Corcorcan, two of the named inventors on the '516 patent.

Back on January 5, 2007, we requested that you identify the named inventors you would be voluntarily producing for deposition and accepting service of subpoenas for. In your letter dated January 31, 2007, you simply stated that your firm was "representing all of the inventors except for Louis Staudt and Roger Clerc."

In a letter dated February 1, 2007, we again asked which named inventors you would be voluntarily producing and accepting service of subpoenas for. In your letter of February 5, 2007, you responded that you would "accept service of subpoenas for each of them." While you specified that you would be making the named inventors who reside in the United States available at their "home locations," you did not specify where you would be making available the two named inventors who are currently living abroad.

Last week, I asked you to please tell us where you would be making Drs. Baeuerle and Corcorcan available, so that we could serve you with subpoenas issued out of the proper jurisdictions. In your latest letter, dated April 3, 2007, however, you now claim that your firm has not been authorized to accept subpoenas for either of Drs. Baeuerle or Corcoran, further stating that you "do not know whether either of them will voluntarily appear for a deposition, although [you] believe it is doubtful that they would agree to do so."

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

David I. Gindler, Esq.
April 4, 2007
Page 2


     This reversal of position is unacceptable.  It appears once again that ARIAD is manipulating things to block Amgen's efforts to conduct appropriate discovery in this case.  This is particularly troubling given the facts that both named inventors have a contractual duty to assist in litigation relating to the '516 patent and ARIAD made both named inventors available in its litigation with Lilly.  If you are now unwilling to do the same for Amgen in this case, despite having represented to the contrary, please explicitly so state.  We will pursue discovery of Drs. Baeuerle and Corcoran in any event.  Please respond no later than the close of business tomorrow, April 5, 2007, so that we can take appropriate steps with the Court.

     Sincerely,


     */s/ Drew Diamond*


     Drew Diamond

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 5, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-KAJ

Dear David:

I write in response to your letter of yesterday regarding Amgen's document production.

I first must note that I was surprised that you are already clamoring for the production of our documents despite the fact that just a little over a month has passed since you first served your document requests. As you know, you have been in possession of Amgen's document requests for nearly nine months, yet based on our review it appears you have not produced any internal confidential documents (e.g. emails, internal presentations, notes, etc.) to date. Moreover, ARIAD has still not yet asserted any counterclaims in this case, despite the fact Ms. Rosenblatt admitted to me two weeks ago that ARIAD's long-running infringement analysis had been completed (but that you were not telling us the conclusion until April 13). It is thus troubling that you would insist on a quick production of Amgen's documents while dragging your feet with respect to the complete production of ARIAD documents.

In any event, we have endeavored to gather and review the relevant documents that are responsive to your requests, and expect to produce these documents next week. I would hope and expect that ARIAD will supplement its woefully-incomplete production in a similar (or sooner) timeframe. Unfortunately, ARIAD's continuing delays to comply with discovery will likely force us to seek the Court's assistance to move discovery along.

Very truly yours,

Marcus E. Sernel

London        Los Angeles        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 10, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear David:

I write in response to your recent letters that address various discovery issues.

**Verma deposition**: You have stated that Dr. Verma will not "voluntarily" appear for deposition. As you know, Dr. Verma has been <u>subpoenaed</u> to appear for deposition. Please let us know by tomorrow whether Dr. Verma intends to comply with his obligations pursuant to the subpoena.

**Baeuerle and Corcoran depositions:** Although you have indicated that you represent these two named inventors of the '516 patent, and both of them were voluntarily offered for deposition by ARIAD in the *Lilly* litigation, you have stated that you will not be producing them for deposition in this case. I assume that we are at an impasse, but please let us know by tomorrow if there is any reason to meet and confer on this issue before we involve the Court.

**Baldwin, Lenardo, Sen, and Sharp depositions:** You have not yet informed us whether the dates noticed in the subpoenas of these named inventors are acceptable. Notices of these depositions were sent out over a week ago. Please confirm that whether you will be producing these witnesses on the noticed dates, or provide alternate dates on which they are available, by tomorrow.

**Amgen's inequitable conduct allegation**: I do not understand why you need all of the information requested in your letter in order to determine whether you consent to Amgen's proposed Amended Complaint that I sent for your review. In any event, I can confirm that

# KIRKLAND & ELLIS LLP

April 10, 2007
Page 2

Amgen became aware of the basis for its unenforceability claim after the filing of its original complaint. Amgen believes that discovery should be completed within the schedule set by the Court and that ARIAD will not be prejudiced by inclusion of this claim because, among other things, no depositions have yet been taken.

        **Interrogatory responses**:  Your citation of the local rules for jurisdictions in California and Texas is confusing to me.  As you know, this case is proceeding in the District of Delaware, and I am aware of no authority that indicates the District of Delaware is following the rules of any other jurisdiction.  Moreover, I would remind you that your interrogatory responses remain deficient in many of the same respects for which you are complaining about our responses, and you have had our interrogatories for nine months.  I would hope that you are willing to discuss tomorrow a reasonable schedule for supplementation of interrogatory responses.

        I am available to meet and confer regarding any or all of these issues tomorrow. Please let me know what times work and I will call you to discuss them.

Very truly yours,

/s/ *Marcus E. Sernel*

Marcus E. Sernel

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

April 13, 2007

<u>VIA E-MAIL</u>

Betsy Rosenblatt
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear Betsy:

I write in response to your letters of yesterday evening.

I am in receipt of David Gindler's letter in which he refuses to consent to our amendment adding an allegation of inequitable conduct. Your position on this issue is unfortunate, given the fact that he does not dispute that you are in possession of all of the facts to defend against this allegation, and he does not articulate why he believes that this addition should affect the court's schedule in any way.

As to your proposed amended answer and counterclaims, you have provided us no assurances that your new counterclaim can be added without an impact on discovery or the court's schedule, nor have you provided us any indication as to what any potential impact might be. Without such assurances, you need to explain why it has taken ARIAD almost a year to conclude what it has characterized as its "infringement analysis" and why ARIAD was unable to complete that analysis earlier. In the absence of any such explanation, we can only conclude that ARIAD was indeed able to complete its purported analysis much sooner than it did, but chose not to in order to attempt to engineer a delay in the schedule.

In light of your inability to identify the potential impact of ARIAD's proposed amendment, we cannot consent. We do, however, consent to your addition of Harvard and MIT as parties to the case as contemplated in the Court's recent ruling.

London          Los Angeles          New York          San Francisco          Washington, D.C.

## KIRKLAND & ELLIS LLP

April 13, 2007
Page 2


       Please let me know if there is any additional information that we can discuss in order to resolve our differences on the proposed amendments.


                Very truly yours,

                Marcus E. Sernel

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Drew Diamond
To Call Writer Directly:
213 680-8217
ddiamond@kirkland.com

213 680-8400

www.kirkland.com

Facsimile:
213 680-8500
Dir. Fax: 213 808-8043

April 19, 2007

**VIA E-MAIL**

Betsy Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear Betsy:

I write in response to your letter and attachments sent earlier today. It appears that you have only just produced documents responsive to our subpoena of Chen-Ming Fan, whose deposition is scheduled to proceed less than twenty-four hours from now. These documents were properly subpoenaed for production on March 23, 2007. This delay is unacceptable.

So that the remainder of fact discovery can proceed on-schedule, we expect that responsive documents in the possession of the remaining named inventors of the '516 patent that Irell represents will be produced on their noticed dates. To the extent that such noticed dates have already passed, we expect that Irell will produce any such documents immediately.

In order to expedite this process, I delineate below apparent problems in the April 12, 2007, "Objections to Subpoena Served on March 29, 2007 by Kirkland & Ellis", and the March 22, 2007, "Objections to Subpoena Served on March 13, 2007 by Kirkland & Ellis" (collectively the "Objections") of Ranjan Sen, Albert Baldwin, Michael Lenardo, Phillip Sharp, Chen-Ming Fan, and Jonathan Lebowitz (collectively the "subpoenaed inventors"). It is not clear from the objections what, if any, responsive documents the subpoenaed inventors have in their possession, custody or control, and what documents they intend to produce. In an effort to determine what disputes we have with the subpoenaed inventors, we request the following information. To the extent that the responses to any of these questions differ for any of the subpoenaed inventors, please identify which of the subpoenaed inventors each particular response applies to.

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

April 19, 2007
Page 2

1.  For each of the subpoenaed inventors, please indicate whether he/she will be producing any documents. If so, when will Amgen receive those documents? For Chen-Ming Fan, please indicate whether the production received today constitutes the entirety of the documents we can expect to receive.

2.  For each of Document Request Nos. 1-3, 5, and 13-20:

    (i)   Please state whether any of the subpoenaed inventors are withholding responsive documents in their possession, custody, or control, and if so identify specifically which objections form the basis for each subpoenaed inventor's refusal to produce such documents.

    (ii)  Please state whether any of the subpoenaed inventors are withholding responsive documents in their possession, custody, or control based on a claim of privilege or immunity, and if so please provide an appropriate privilege log.

    (iii) If any of the subpoenaed inventors are withholding responsive documents in their possession, custody, or control because the documents were already produced by Lilly, for each subpoenaed inventor provide Amgen with a list of such documents also present in the inventor's files.

3.  For each of Document Request Nos. 4, 6, 7, 10-12, and 21:

    (i)   Please state whether any of the subpoenaed inventors are withholding responsive documents in their possession, custody or control, and if so identify specifically which objections form the basis for each subpoenaed inventor's refusal to produce such documents.

    (ii)  What is the basis for Chen-Ming Fan's, and Jonathan Lebowitz's statements that they "will produce no documents in response to th[ese] requests?" If they are in possession of responsive documents, those documents must be produced.

4.  For each of Document Request Nos. 8 and 9:

    (i)   Please state whether any of the subpoenaed inventors are withholding responsive documents in their possession, custody or control, and if so identify specifically which objections form the basis for each subpoenaed inventor's decision not to disclose such documents.

# KIRKLAND & ELLIS LLP

April 19, 2007
Page 3

     (ii)     What is the basis for Ranjan Sen's, Michael Lenardo's, Phillip Sharp's, Chen-Ming Fan's, and Jonathan Lebowitz's statements that they "will produce no documents in response to th[ese] requests?" If they are in possession of responsive documents, those documents must be produced.

     (iii)    With respect to Ranjan Sen's, Michael Lenardo's, Philip Sharp's, Chen-Ming Fan's, and Jonathan Lebowitz's responses "specifically refer[ring] Plaintiffs to [particular Bates numbered documents], which were produced in Lilly", identify which of the documents bearing the relevant Bates numbers are also present in each of the subpoenaed inventor's files.

We of course want to avoid the need to depose the inventors on more than one occasion, so please provide your responses to the above inquiries as soon as possible.

Yours sincerely,

*/s/ Drew Diamond*

Drew Diamond

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois  60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 2, 2007

**VIA E-MAIL**

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    **Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, **D. Del. Civil Action No. 06-259-MPT**

Dear David:

For the second time, I write with respect to the April 19, 2007, "Objections to Subpoena Duces Tecum Served on April 12, 2007 and Directed to the President and Fellows of Harvard College," and "Objections to Subpoena Duces Tecum served on April 12, 2007 and Directed to Massachusetts Institute of Technology."

On April 24, 2007, I sent you a letter requesting that you let me know by April 25, 2007, whether Harvard and MIT will move to quash the subpoenas. To date, you have not responded nor has Harvard or MIT produced any documents. We would ask again for a date by which Harvard and MIT intend to produce documents.

Sincerely,

*/s/ Jamie McDole*

Jamie McDole

London         Los Angeles         Munich         New York         San Francisco         Washington, D.C.

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 4, 2007

<u>VIA E-MAIL</u>

David I. Gindler, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:  ***Amgen et al. v. ARIAD Pharms., Inc.***, D. Del. Civil Action No. 06-259-(MPT)

Dear David:

I write to follow up on the subpoena served on April 24, 2007 to one of the named inventors of the '516 patent, Patrick Baeuerle.  The deposition was noticed for May 10, 2007 at the offices of Kirkland & Ellis in New York.  As I indicated in my letter to you of April 24, Amgen is amenable, if necessary, to discussions of an alternate date and/or location that may be more convenient for Dr. Baeuerle.  I have not heard back from you on this matter.  Please inform me whether Dr. Baeuerle will be attending the deposition as noticed.  Otherwise, please provide an alternative time and/or location so that we can proceed with discovery efficiently in this matter.

Sincerely,

/s/ *Marcus E. Sernel*

Marcus E. Sernel

London          Los Angeles          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 11, 2007

<u>**VIA E-MAIL**</u>

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:     **Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, **D. Del. Civil Action
No. 06-259-MPT**

Dear David:

During the April 25, 2007 teleconference before Judge Thynge, you represented to both Amgen and the Court that ARIAD would provide an update of the results of your electronic search for documents and either produce such documents or provide a date certain on which you will produce such documents. Over two weeks have now passed since this hearing and we have neither received an update from ARIAD or received any production from ARIAD in this regard.

Please immediately provide an update on ARIAD's electronic discovery efforts and produce these responsive documents.

If you have any questions, please let me know.

Sincerely,

Jamie McDole

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 14, 2007

**VIA E-MAIL**

Richard M. Birnholz
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

> Re:    **Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action
> No. 06-259-MPT**

Dear Richard:

This letter responds to your letter of May 11, 2007 regarding ARIAD's failure to provide an e-discovery statement to Amgen per Mr. Gindler's representation to the Court at the April 25, 2007 hearing.

During the April 25 hearing, Mr. Gindler represented that by May 4, ARIAD would provide Amgen with a statement of its e-discovery progress and a "date certain" of when the production would be forthcoming:

> MR. PALS: . . .We'll look forward to obviously the results of the electronic discovery that Mr. Gindler says is still ongoing.  I guess it would help us Your Honor, to have an understanding if it would be completed.

> THE COURT:  As to when it would be completed?

> MR. PALS:  Yes.

> THE COURT:  I think that would be most helpful, too.  And I think, David, you could probably give a good idea there.

> MR. GINDLER:  Oh, I think we will talk about that next week because I would like to get this issue pinned down next week.

> THE COURT:  What do you mean by "pinned down?"

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

May 14, 2007
Page 2

> MR. GINDLER: *To tell if there are no documents or if there are documents, to either produce them or to give them a date certain by which they will be produced.*

> THE COURT: Well, I do think that you can do that by next week and the date certain of the production I guess will partly depend upon the size. But if it's not substantial, I do think that within a week thereafter, you can get those documents to them.

> MR. GINDLER: Your Honor, I agree with that.

(April 25, 2007 Hearing Trans. at 14-15) (emphasis added). The depositions of ARIAD on May 8 and 10 (which you somehow claim is ARIAD's e-discovery statement) did not identify whether responsive documents exists, did not provide a date certain by which ARIAD would produce such documents, and certainly did not produce any such documents to Amgen.

To date, we have still not received the e-discovery information Mr. Gindler represented that ARIAD would provide by May 4, 2007. We also have not received any production from ARIAD of electronic documents as directed by the Court to be completed by May 11, 2007.

ARIAD's transparent delay efforts are certainly not "extremely forthcoming" as you claim. We would ask for ARIAD to immediately provide a complete e-discovery statement as promised by Mr. Gindler at the April 25 hearing, or let us know if ARIAD will continue to refuse to provide this information so we may raise this issue with the Court for a second time. If we do not hear from you by the close of business tomorrow, we will assume that ARIAD will not provide this information.

If you have any questions, please let me know.

Sincerely,

Jamie McDole

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Daniel Stephen Ebner
To Call Writer Directly:                           312 861-2000                              Facsimile:
312 469-7017                                                                                312 861-2200
debner@kirkland.com                          www.kirkland.com

May 17, 2007

David I. Gindler                                                           **VIA E-MAIL**
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No.
06-259-MPT

Dear David:

On May 4, 2007, Amgen served its first 30(b)(6) notices of deposition of Harvard, MIT, and Whitehead, noticing depositions of these entities for 9:00 a.m. on May 21, May 22, and May 23 respectively. We have received no response as to whether the three institutions are amenable to these deposition dates. Please let me know as soon as possible whether these depositions will go forward on the dates noticed. If so, Amgen has reserved space for all three of these depositions at Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210. In addition, please inform Amgen about the identity of the persons who will be designated to testify on the noticed deposition topics.

Furthermore, to date Amgen has received no document production from Harvard, MIT, or Whitehead although we were told that documents would be produced by the institutions the week of May 14th. If Amgen has not received the institutions' document production by Friday, May 18, 2007, Amgen will reserve the right to leave the depositions open with respect to additional questions that arise about the institutions' completed document production.

If you wish to discuss this any further please do not hesitate to contact me.

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

May 17, 2007
Page 2

Sincerely,

Daniel Stephen Ebner

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 22, 2007

**VIA E-MAIL**

Richard M. Birnholz
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    **Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, **D. Del. Civil Action No. 06-259-MPT**

Dear Mr. Birnholz:

This letter responds to your letter of today regarding our meet and confer with respect to ARIAD's responses to Amgen's Requests for Admissions. Your letter makes a number of misstatements and mischaracterizations, which I seek to correct below.

First, the purpose of our meet and confer was to discuss ARIAD's responses to Amgen's RFAs, and to determine whether ARIAD would supplement its responses per the Court's direction at the April 25, 2007 hearing -- for instance, see my May 11, 2007 e-mail to D. Gindler requesting the meet and confer and asking "whether ARIAD plans to supplement its responses consistent with the Court's statements at the hearing prior to the meet and confer." We asked for this supplementation to assist in the meet and confer. ARIAD did not respond or provide supplemental responses.

Second, your characterization of our meet and confer is incorrect. At the beginning of our call, I started by again asking whether ARIAD planned to supplement its responses to Amgen's RFAs as required by the Court in the April 25, 2007 hearing.

> THE COURT: Well, I think more importantly is what is ARIAD's position on this particular question or on this particular statement. And I did note that in my review of the request, although I didn't review all 100-and-some odd of them, but in my brief review of them, I didn't see anything compound, and that is the usual

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

May 22, 2007
Page 2

> complaint I have when somebody does a request. They don't
> address it just to a limited statement.
>
> I also agree, and as I pointed out, when you respond by saying I
> can't confirm or deny the request, *it does require* a [d]etailed
> substantive response. And that is not only in the rule but that is
> also in the advisory notes. So that is a direction.

(April 25 Hearing Transcript at 28) (emphasis added). I also explained that even if ARIAD
claimed that it still could not respond to Amgen's RFAs, at a minimum ARIAD is nonetheless
required to supplement its responses to provide the detailed reasoning for its inability to admit or
deny the request.

Instead of agreeing to supplement, you took issue with what the Court required of
ARIAD, claiming that the Court ordered Amgen to effectively revise its RFAs and provide
additional information to ARIAD. I disagreed and explained that the RFAs were clear on their
face and that I did not believe additional information was necessary. I also stated that it did not
make sense to argue about what the Court said at the April 25 hearing and offered to agree to
disagree on that issue. Unfortunately, you raised your voice and cut me off mid-sentence (by
talking over me), again demanding to know whether Amgen would provide additional
information. I confirmed two additional times that the RFAs were clear on their face -- indeed,
much of the information comes straight from the '516 patent (with which I would hope you are
familiar) -- and that I did not believe any additional information was necessary.

We asked you several times during our call to not speak over us so that we could
complete our statements. Nevertheless, you continued to do so which led into both parties
talking over one another. Ultimately, we asked again whether ARIAD intended to supplement
its responses and you again refused to respond. When it became apparent that the parties would
not reach resolution on this matter, I stated that we were at an impasse. You disagreed yet
refused to commit to supplementing ARIAD's responses. I finally explained that if we did not
receive supplemental responses by Friday of this week, we would assume that ARIAD would not
supplement and consider the issue ripe for the Court. You abruptly asked if there were any other
issues and terminated the call.

Finally, with respect to the "aside" at the end of your letter, we do not consider your
personal attacks to be appropriate, especially when it was your own conduct on the call that fell
short of the standards for professional conduct. Indeed, we do not consider it to be "rude" to
request ARIAD to comply with the Court's orders, only to be verbally attacked when we make

## KIRKLAND & ELLIS LLP

May 22, 2007
Page 3

such a request. I sincerely hope that on future calls we can state our positions and move toward resolution instead of conflict on these simple issues.

From your letter, it appears that you are now taking the position that a supplemental response to Amgen's RFAs is appropriate. I believe we could have avoided much of this argument if ARIAD would have agreed to this supplement in response to my May 11 e-mail or in response to my request at the beginning of our call today. Nevertheless, we look forward to your supplement and will raise any remaining issues at that time.

Sincerely,

Jamie McDole

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Daniel Stephen Ebner
To Call Writer Directly:              312 861-2000                        Facsimile:
312 469-7017                                                            312 861-2200
debner@kirkland.com               www.kirkland.com

May 24, 2007

Betsy Rosenblatt                                            **VIA E-MAIL**
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

> Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, **D. Del. Civil Action No.
> 06-259-MPT**

Dear Betsy:

I write with respect to your May 18, 2007, letter concerning Amgen's First 30(b)(6) Notices of Deposition of Harvard, MIT and Whitehead and Harvard's, MIT's, and Whitehead's, Objections to Amgen's First Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) served on May 22, 2007.

Amgen's First 30(b)(6) Notices of Deposition were served on May 4, 2007 and noticed depositions of Harvard, MIT, and Whitehead in Boston for Monday, May 21, Tuesday, May 22, and Wednesday, May 23. Nevertheless, it was not until after 4:00 p.m. CST on Friday, May 18 — after the close of business in Boston — that we were informed that Harvard, Whitehead, and MIT did not intend to produce witnesses for the 30(b)(6) depositions on the dates noticed. While we are happy to accommodate witness schedules by changing noticed dates for depositions, next time please provide us the courtesy of reasonable notice so that we may make appropriate arrangements.

Finally, your letter of May 18 leaves two outstanding issues: (1) when will the Institutions provide to Amgen the remainder of their document productions so that we may proceed with the depositions (especially given that there are only a few weeks left in fact discovery)?; and (2) what alternative dates do you propose for such depositions? I would

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

## KIRKLAND & ELLIS LLP

May 24, 2007
Page 2

appreciate responses to these questions by the end of this week so we may make appropriate arrangements. We would hope that we can resolve these issues without requiring the Court to get involved.

Sincerely,

Daniel Stephen Ebner

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Laura Burson
To Call Writer Directly:
213 680-8270
lburson@kirkland.com

213 680-8400

www.kirkland.com

Facsimile:
213 808-8087

May 25, 2007

**VIA EMAIL**

David Gindler, Esq.
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No.
       **06-259-MPT**

Dear David:

I write in response to your letter regarding Dr. Appleton's deposition which you emailed to me <u>after office-hours on the evening of May 24, 2007</u> demanding a response by the close of business the following day, May 25, 2007.

I disagree with your characterization that Dr. Appleton was not prepared to testify on the topics for which Amgen had designated him as well as your characterization of my conduct at the deposition. With respect to my conduct, I am entitled under Rule 30 to make a record as to the topics (*which I identified by number*) on which the witness is being offered. Moreover, I put my statements on the record before any substantive questioning had begun and did not make them while a question was pending. It was no surprise to Dr. Appleton that Amgen had designated him to testify as a Rule 30(b)(6) witness on certain topics. As such, my statements clearly could not have coached the witness.

**On the other hand, your conduct was quite startling and unprofessional.** One can only assume that you behaved as you did to bully the witness and to manufacture a basis for suspending the deposition. Not only did you spend hours harassing and badgering Dr. Appleton --a fact witness--with a series of technical, expert questions <u>outside the scope of the deposition</u>, you also spent the majority of your time questioning Dr. Appleton about two legal documents also <u>outside the scope of the deposition</u>--Ariad's First and Fifth Deposition Notices. You even declined to use my copy of Amgen's Objections to Ariad's First and Fifth Deposition Notices which clearly set forth the scope of the deposition and the parameters of what was to be Dr. Appleton's testimony. If you had believed that you were entitled to obtain testimony beyond the

Chicago        London        Munich        New York        San Francisco        Washington, D.C.

K&E 11808125.

# KIRKLAND & ELLIS LLP

May 25, 2007
Page 2

parameters set forth in Amgen's Objections, you should have sought relief from the court *before* the deposition, instead of trying to bully Dr. Appleton into addressing Ariad's noticed topics and then later claiming that Dr. Appleton was ill-prepared.

You also failed to ask Dr. Appleton any fact questions regarding the mechanism of action of Enbrel or Kineret--the very topic on which Dr. Appleton was designated--in connection with Amgen documents produced in this case. Instead, without asking any substantive, fact questions about mechanism of action, you spent only a few minutes on one Amgen regulatory document which appeared to be an incomplete compilation.

Furthermore, your constant attempts to shout over me when I was making a record can only be understood as blatant attempts to intimidate and conduct clearly in violation of both local and federal deposition practice.

Amgen considers Dr. Appleton's Rule 30(b)(6) deposition closed. The fact that you squandered your time on matters beyond the scope of the deposition does not create a basis for suspending the deposition; nor does it create a basis for a second bite at the apple. Should you attempt to bring a motion to compel further testimony on the subjects for which Dr. Appleton was offered, Amgen will bring your misconduct to the court's attention.

Very truly yours,

*/s/ Laura M. Burson*

Laura M. Burson

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, CA  90017-5800

Drew Diamond
To Call Writer Directly:       213-680-8400                    Facsimile:
213-680-8217                                                  213-680-8500
ddiamond@kirkland.com          www.kirkland.com

May 29, 2007

**VIA E-MAIL**

Betsy Rosenblatt, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

        Re:     **Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action
No. 06-259-MPT**

Dear Betsy:

This responds to your letter dated May 18, 2007.  Your letter appears on its face to be an attempt to further defendants' strategy of manufacturing discovery issues in order to engineer a delay in the current schedule that controls this case.  Rather than waste the extensive resources that it would take to respond to each of the misrepresentations contained in your letter, I request that ARIAD and the Institutions explain why, if they believe that the laundry list of documents you identify in your letter are relevant, that they have not produced any such documents themselves, much less searched their files for any such documents.  Contrary to defendants' wishes, discovery cannot proceed under a double-standard.  Suffice it to say that the fact that ARIAD and the Institutions were able to inappropriately garner information from Amgen's document production in order to form the basis for their latest infringement allegations speaks volumes as to the completeness of Amgen's production.

Please provide the requested explanation as soon as possible (and, in any event, no later than May 31), so we can better understand defendants' justification for their position.

Sincerely,

*/s/ Drew Diamond*

Drew Diamond

London      Los Angeles      Munich      New York      San Francisco      Washington, D.C.

# EXHIBIT B

```
                    IN THE UNITED STATES DISTRICT COURT
                    IN AND FOR THE DISTRICT OF DELAWARE

                               - - -

AMGEN, INC., a Delaware corporation; :    CIVIL ACTION
IMMUNEX CORPORATION, a Washington     :
Corporation; AMGEN USA, INC., a       :
Delaware corporation; AMGEN           :
MANUFACTURING, LIMITED, a Bermuda     :
Corporation; and IMMUNEX RHODE ISLAND :
CORPORATION a Delaware corporation,   :
                                      :
                   Plaintiffs,        :
         v                            :
                                      :
ARIAD PHARMACEUTICALS, INC.,          :
a Delaware corporation                :
                                      :    NO. 06-259 (***)
                   Defendant.         :
                               - - -


                       Wilmington, Delaware
             Wednesday, January 24, 2007 at 10:02 a.m.
                      TELEPHONE CONFERENCE

                               - - -

BEFORE:  HONORABLE MARY PAT THYNGE, U.S. MAGISTRATE JUDGE

                               - - -

APPEARANCES:


            YOUNG CONAWAY STARGATT & TAYLOR, LLP
            BY:  JOSY W. INGERSOLL, ESQ.

                 and

            KIRKLAND & ELLIS, LLP
            BY:  MARK A. PALS, ESQ., and
                 MARCUS E. SERNEL, ESQ.
                 (Chicago, Illinois)

                      Counsel for Plaintiffs


                         Brian P. Gaffigan
                         Registered Merit Reporter
```

1  address the motions that are outstanding.  I'm trying to

2  build in sufficient enough time for the Court to evaluate

3  that so that we'll have probably more of a crystal clear or

4  better understanding of whether this case is going to stay

5  here, whether it's going to be dismissed for the a failure

6  to name necessary and indispensable parties and gives us

7  some additional time regarding what is going on with the

8  PTO.  Maybe the PTO will have something or have given ARIAD

9  a read.

10        But I do think that ARIAD has had enough time,

11 certainly since September when Judge Jordan indicated,

12 strongly indicated at that time that he was denying or he

13 was finding that there was a basis for this case to stay

14 alive.  There was a reason for a DJ action.

15        And it should be no surprise, I don't think, to

16 ARIAD from that point on, and certainly this gives you more

17 time to do an investigation to at least indicate where you

18 think there is infringement, because somebody must have

19 thought there was to have made strong indications that a

20 lawsuit was a potential outcome if Amgen continued to do

21 whatever it was doing.

22        So to keep this case moving along and to take

23 into account the concerns expressed by both, that's my

24 ruling for today.  I do think, though, that you've probably

25 got, Amgen has gotten probably a fair amount of documents

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, | ) | |
| AMGEN USA INC., AMGEN MANUFACTURING | ) | |
| LIMITED, IMMUNEX RHODE ISLAND | ) | |
| CORPORATION, | ) | |
| | ) | C.A. No. 06-259-KAJ |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ARIAD PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ARIAD PHARMACEUTICALS, INC.'S ANSWER TO COMPLAINT**

Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") responds as follows to the Complaint of Plaintiffs Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing Limited, and Immunex Rhode Island Corporation (collectively, "Plaintiffs").

**NATURE OF THIS ACTION**

1.      In response to paragraph 1, ARIAD admits that Plaintiffs purport to bring claims under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the United States Patent Law, 35 U.S.C. § 100 *et seq.*, but denies that these claims are properly brought.  Except as expressly admitted, ARIAD denies each and every allegation of paragraph 1.

2.      In response to paragraph 2, ARIAD admits that a copy of U.S. Patent No. 6,410,516 (the "'516 Patent") is attached to the Complaint and admits that Plaintiffs purport to seek a declaration that each claim of the '516 Patent is invalid and that the Plaintiffs do not infringe any valid claim of the '516 Patent based on any activities related to the Enbrel® and Kineret® products, but denies that Plaintiffs' action is meritorious and denies that Plaintiffs are entitled to the relief sought.  Except as expressly admitted, ARIAD denies each and every allegation of paragraph 2.

## JURISDICTION AND VENUE

3.       In response to paragraph 3, ARIAD admits that rules regarding jurisdiction are set forth in 28 U.S.C. §§ 1331 and 1338(a) and rules regarding declaratory judgment are set forth in 28 U.S.C. §§ 2201 and 2202, which speak for themselves, but denies that this Court has jurisdiction under those statutes.  Except as expressly admitted, ARIAD denies each and every allegation of paragraph 3.

4.       Paragraph 4 states a legal conclusion for which no response is necessary, but ARIAD denies that venue if proper in this District.

## THE PARTIES

5.       In response to paragraph 5, ARIAD admits, on information and belief, that Amgen is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at One Amgen Center Drive, Thousand Oaks, California.  ARIAD further admits, on information and belief, that Amgen is a global biotechnology company.  Except as expressly admitted, ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 5 and for that reason they are denied.

6.       ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 6 and for that reason they are denied.

7.       ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 7 and for that reason they are denied.

8.       ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 8 and for that reason they are denied.

9.       ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 9 and for that reason they are denied.

10.       ARIAD admits the allegations of paragraph 10.

11.       ARIAD admits that on June 25, 2002, the '516 Patent issued from U.S. Patent Application Ser. No. 08/464,364, filed June 5, 1995, and that the content of the

'516 Patent speaks for itself. As the second sentence of paragraph 11 provides quotations out of context and does not provide sources for such quotations, except as expressly admitted above, ARIAD is without personal knowledge sufficient to admit or deny the allegations in the second sentence of paragraph 11 and for that reason they are denied. Except as expressly admitted, ARIAD denies each and every allegation of paragraph 11.

12.    In response to paragraph 12, ARIAD admits that it has entered into a license agreement with the Massachusetts Institute of Technology ("MIT"), the Whitehead Institute ("Whitehead"), and Harvard University ("Harvard"), pursuant to which ARIAD has acquired a license to Patent Rights, among other things, as defined in that license agreement. Except as expressly admitted, ARIAD denies each and every allegation of paragraph 12.

13.    In response to paragraph 13, ARIAD admits that the Enbrel® product (generic name: etanercept) is a human therapeutic product. Except as expressly admitted, ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 13 and for that reason they are denied.

14.    ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 14 and for that reason they are denied.

15.    ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 15 and for that reason they are denied.

16.    In response to paragraph 16, ARIAD admits that the Kineret® product (generic name: anakinra) is a human therapeutic product. Expect as expressly admitted, ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 16 and for that reason they are denied.

17.    ARIAD is without personal knowledge sufficient to admit or deny the allegations of paragraph 17 and for that reason they are denied.

18.    ARIAD denies each and every allegation contained in the first sentence of paragraph 18. In response to the second sentence of paragraph 18, ARIAD admits that

Plaintiffs purport to seek a declaration that each claim of the '516 Patent is invalid and that the Plaintiffs do not infringe any claim of the '516 Patent based on any activities related to the Enbrel® and Kineret® products, but denies that Plaintiffs' claims are meritorious and denies that Plaintiffs are entitled to the relief sought.

## FIRST CLAIM FOR RELIEF

19.     In response to paragraph 19, ARIAD incorporates herein by this reference paragraphs 1 through 18 as if set forth in full.

20.     In response to paragraph 20, ARIAD denies each and every allegation contained therein.

21.     In response to paragraph 21, ARIAD denies each and every allegation contained therein.

## SECOND CLAIM FOR RELIEF

22.     In response to paragraph 22, ARIAD incorporates herein by this reference paragraphs 1 through 21 as if set forth in full.

23.     In response to paragraph 23, ARIAD admits that the Plaintiffs seek a judicial declaration that they do not directly or indirectly infringe any valid claim of the '516 Patent through any activities related to the Enbrel® and/or Kineret® products, but denies that a judicial declaration is appropriate or necessary.  Prior to the filing of this action, ARIAD had not conducted any investigation into whether any activities related to the Enbrel® and/or Kineret® products infringe the '516 Patent.  Solely in response to this action, and the Court's denial of ARIAD's motion to dismiss, ARIAD is now seeking to determine, for the first time, whether any activities related to the Enbrel® and/or Kineret® products infringe the '516 Patent.  ARIAD is therefore without personal knowledge at this time sufficient to admit or deny whether any activities related to the Enbrel® and/or Kineret® products infringe the '516 Patent.  ARIAD reserves the right to amend its answer once it has determined whether any activities related to the Enbrel®

and/or Kineret® products infringe the '516 Patent.    Except as expressly admitted, ARIAD denies each and every allegation of paragraph 23.

## AFFIRMATIVE DEFENSES

24.    The Court lacks subject matter jurisdiction over this action or, in the alternative, should exercise its discretion to decline the exercise of subject matter jurisdiction over this action.

25.    Plaintiffs have failed to joint MIT, Whitehead, and Harvard, all of which are necessary and indispensable parties to this action.

## PRAYER FOR RELIEF

WHEREFORE, ARIAD prays for relief as follows:

A.    For the dismissal of this action on the grounds that the Court lacks subject matter jurisdiction over this action or, in the alternative, that the Court should exercise its discretion to decline to exercise subject mater jurisdiction over this action;

B.    For the dismissal of this action on the grounds that Plaintiffs have failed to join necessary and indispensable parties;

C.    For leave to amend its answer to add any mandatory counterclaims for infringement if the Court declines to dismiss this action and ARIAD concludes, after investigation, that any of Plaintiffs' activities related to either Enbrel® or Kineret® infringe any claim of the '516 Patent (not because ARIAD desires to assert such counterclaims, which it does not, but only because any such counterclaims would appear to be mandatory under the Federal Rules of Civil Procedure);

D.    For a declaration that this case is exceptional pursuant to 35 U.S.C. § 285;

E.    For an award of attorneys' fees and costs; and

F.    For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

ARIAD hereby demands a trial by jury on any issue triable of right by a jury.

ASHBY & GEDDES

*/s/ John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Counsel for Defendant
ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Dated: September 25, 2006
173513.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2006, the attached **ARIAD**

**PHARMACEUTICALS, INC.'S ANSWER TO COMPLAINT** was served upon the below-

named counsel of record at the address and in the manner indicated:

Melanie K. Sharp, Esquire                                HAND DELIVERY
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Marcus E. Sernel, Esquire                                VIA FEDERAL EXPRESS
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

J. Drew Diamond, Esquire                                VIA FEDERAL EXPRESS
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800

/s/ John G. Day
_____
John G. Day

**Gassaway, Mechelle**

| | |
|---|---|
| **From:** | Sharp, Melanie |
| **Sent:** | Monday, September 25, 2006 12:07 PM |
| **To:** | Gassaway, Mechelle |
| **Subject:** | FW: Activity in Case 1:06-cv-00259-KAJ Amgen Inc. et al v. Ariad Pharmaceuticals Inc. "Answer to Complaint" |

From: ded_nefreply@ded.uscourts.gov [mailto:ded_nefreply@ded.uscourts.gov]
Sent: Monday, September 25, 2006 11:37 AM
To: ded_ecf@ded.uscourts.gov
Subject: Activity in Case 1:06-cv-00259-KAJ Amgen Inc. et al v. Ariad Pharmaceuticals Inc. "Answer to Complaint"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Day, John G. entered on 9/25/2006 at 11:37 AM EDT and filed on 9/25/2006
**Case Name:**        Amgen Inc. et al v. Ariad Pharmaceuticals Inc.
**Case Number:**      1:06-cv-259
**Filer:**            Ariad Pharmaceuticals Inc.
**Document Number:** 72

**Docket Text:**
ANSWER to Complaint with Jury Demand by Ariad Pharmaceuticals Inc..(Day, John)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=9/25/2006] [FileNumber=277551-0]
[4be7a3cb500c88d93f54585513ff779408a96694b8b35dbc87ddb18e693223c0fb0e
27280236b675104f002f36383c38e6310a9d79722b2a3aad346bb371db3e]]

**1:06-cv-259 Notice will be electronically mailed to:**

Steven J. Balick     sbalick@ashby-geddes.com, jday@ashby-geddes.com; mkipp@ashby-geddes.com;
dfioravanti@ashby-geddes.com; nlopez@ashby-geddes.com; tlydon@ashby-geddes.com; lmaguire@ashby-
geddes.com; dharker@ashby-geddes.com

Morgan Chu     mchu@irell.com,

John G. Day     jday@ashby-geddes.com, sbalick@ashby-geddes.com; mkipp@ashby-geddes.com;
dfioravanti@ashby-geddes.com; nlopez@ashby-geddes.com; tlydon@ashby-geddes.com; lmaguire@ashby-

geddes.com; dharker@ashby-geddes.com

David I. Gindler    dgindler@irell.com,

Amir A. Naini    anaini@irell.com,

Christopher M. Newman    cnewman@irell.com

Elizabeth L. Rose! nblatt    brosenblatt@irell.com

Melanie K. Sharp    msharp@ycst.com, achacko@ycst.com; chunter@ycst.com; beichner@ycst.com

**1:06-cv-259 Notice will be delivered by other means to:**

9/25/2006

# EXHIBIT D

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

April 12, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636

Re:     *Amgen Inc.  et al. v. ARIAD Pharmaceuticals, Inc.*

Dear Marc:

I write in response to your letter of yesterday, April 11, 2007, containing specific inquiries regarding ARIAD's proposed amended answer and counterclaim.

First, with regard to when ARIAD became aware of its basis to assert its counterclaim, our investigation as to the claims that, as of today, we believe Amgen and Wyeth infringe was only recently concluded, that is, during the month of April.  ARIAD served Plaintiffs with its interrogatory responses identifying those claims earlier today.

Second, ARIAD cannot say for certain what additional discovery its counterclaim will require, but at the very least there will be additional discovery regarding damages and willfulness issues.

Third, ARIAD does not know for sure whether the case schedule will need to be adjusted to accommodate the addition of its counterclaim.  ARIAD just yesterday received over 520,000 pages of documents from Amgen and does not know whether anything in those documents will impact our counterclaims.

Fourth, ARIAD does not know enough about the Amgen/Wyeth relationship to say whether ARIAD's proposed addition of Wyeth as a counterclaim defendant in this action will impact the above issues.

Please confirm that Plaintiffs consent to ARIAD's amending its answer to include

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marcus E. Sernel, Esq.
April 12, 2007
Page 2


Harvard and M.I.T. as parties to this litigation (per the Court's ruling) and to include the counterclaims identified in our prior correspondence.

Sincerely,

Betsy Rosenblatt