# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

May 30, 2007

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware 19810

**VIA ELECTRONIC FILING**

**REDACTED
PUBLIC VERSION**

Re:  *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*, C.A. No. 06-259-MPT

Dear Judge Thynge:

    We write on behalf of ARIAD Pharmaceuticals, Inc. ("ARIAD") to raise three critical issues regarding Amgen's failure to provide adequate, or any, discovery. Amgen's refusal to provide discovery on key issues is significantly impairing ARIAD's ability to prepare its case.

    **1.    Amgen's Deficient Document Production.**  Amgen has failed to produce—and, often, even to look for—highly relevant documents that are critical to ARIAD's claims:

    *Technical Documents (Request Nos. 6, 8, 9, 10, 11, 12, 13, 23, 25, 26, 27, 28, 29, 30, 41, 42, 53, 58).*  (Ex. A.)  The '516 patent, generally speaking, concerns methods of inhibiting NF-κB activity. TNF and IL-1 induce NF-κB activity in a cell when they bind to receptors on the surface of the cell.  Amgen's drugs Enbrel and Kineret are known to inhibit NF-κB activity by preventing TNF and IL-1, respectively, from attaching to cell surface receptors.

    Amgen has not even looked for technical documents unless they meet two criteria— (i) they relate specifically to Enbrel or Kineret (or those products' "mechanisms of action") *and* (ii) they relate specifically to NF-κB.  (*See* Ex. F.)  Except for documents meeting these narrow criteria, Amgen has not produced:  (a) laboratory notebooks or other materials maintained by Enbrel or Kineret researchers relating to NF-κB (Request Nos. 6, 9, 23); (b) internal Amgen communications and patent applications discussing NF-κB in relation to inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, or sepsis—the disease states that Enbrel and Kineret treat (Request No. 8, 10, 11); (c) research or development relating to TNF, IL-1, and their cell surface receptors, at least as they relate to NF-κB (Request Nos. 12, 13); (d) documents relating to biological or biochemical effects of Enbrel on TNF or the effects of Kineret on IL-1 (Request Nos. 17-20); (e) documents relating to whether certain proteins inhibit or induce NF-κB activity (Request No. 25); (f) documents relating to assays used to measure NF-κB activity (Request No. 26); (g) documents relating to the intracellular and/or extracellular aspects of NF-κB signaling, TNF signaling, and IL-1 signaling (Request Nos. 27, 28); and (h) tutorials, presentations, videos and transcripts that relate to the subject of the '516 patent family (Request No. 41).  The Court should order Amgen to produce these documents.

    *Testing Documents (Request No. 7, 21).*  (Ex. B.) Amgen has objected to producing documents relating to testing of Enbrel or Kineret after the products were released, and has

The Honorable Mary Pat Thynge
May 30, 2007
Page 2

produced only *"representative"* documents for other time periods. (*See* Ex. F.) These documents are critical. For example, the few testing documents produced by Amgen clearly show that Amgen has tested whether TNF and IL-1 induce NF-κB activity, and whether Enbrel and Kineret reduce NF-κB activity induced by TNF and IL-1. ARIAD is entitled to testing documents that show how Enbrel and Kineret function, including their effects on TNF, IL-1, and NF-κB—whether from before or after the products were released, and not just those documents that Amgen considers "representative." ARIAD does not seek the results of clinical trials.

**Regulatory Submissions On The Accused Products** (*Request No. 14).* (Ex. C.) Amgen produced only excerpts from its FDA filings—Investigational New Drug Applications ("INDs") and Biologics License Applications ("BLAs")—for Enbrel and Kineret. Amgen withheld many relevant sections of the BLAs, such as: the application summary (§ 3.0), the scientific rationale for the drug products (§ 3.2), the summary of FDA communications (§ 3.3), the pharmacology and toxicology summary (§ 3.6), pharmacokinetic and bioavailability information (§ 3.7), and patent information (§§ 13-14). Amgen also produced very few responsive communications from the FDA, and did not produce a complete set of its BLA supplements. All FDA submissions and correspondence should be produced, save perhaps sections on manufacturing and clinical trials.

**Damages Documents** (*Request Nos. 2, 21, 55, 56, 57, 59, 60).* (Ex. D.) Aside from a handful of documents, Amgen's production relating to damages issues, such as financial documents relating to sales, revenues and profits generated by Enbrel and Kineret, and licensing documents relating to Enbrel and Kineret, is incomplete. (*See* Exs. F, G) In addition, Amgen will not produce financial information from any time prior to the issuance of the '516 patent, even though that information would have been available in a hypothetical license negotiation at the time of the issuance of the '516 patent and is therefore directly relevant to a reasonable royalty analysis. (See Ex. F.) Amgen should respond fully to these requests.

**Willfulness Documents** (*Requests No. 16, 32, 33, 34, 35, 36, 37, 41, 42).* (Ex. E.) Amgen also refuses to produce the documents it will rely on to defend against *willful* infringement. Amgen argues that it has not yet decided whether to rely on advice of counsel as a defense, and that it should not be required to make this election "at any time in the near future." (See Exs. F, H, I, J) Consistent with practice in this District, Amgen should be required to make its election so that any resulting discovery may take place before the close of fact discovery.

**2.    Amgen's Unprepared Witness on Document Issues.** In light of Amgen's insufficient document production, ARIAD noticed a Rule 30(b)(6) deposition of Amgen to investigate the nature of Amgen's documents and its efforts to locate responsive documents. (Ex. K). But Amgen's witness Helen Streck repeated the same stock answer regarding Amgen's document search, regardless of the question asked—Amgen searched for documents relating to "Enbrel and Kineret as they're related to NF-κB or the mechanism of action." She gave this answer *more than fifty times*, even though she did not know what the phrase meant. (Ex. L; *See* Exs. M, N). Ms. Streck could not explain anything else about Amgen's efforts to collect and produce responsive documents. (Exs. L, N.) She was also ill-prepared to respond to questions about Amgen's documents and document preservation matters. (Exs. L, N). To whitewash this deposition, Amgen argues that its counsel may provide ARIAD with the answers. (Exs. N, O.) Counsel's letters are no substitute for sworn testimony under Rule 30.

The Honorable Mary Pat Thynge
May 30, 2007
Page 3

**3.** **Amgen's Unprepared Witness on Enbrel and Kineret.**  Amgen also failed to prepare Dr. Brent Appleton, who was designated to testify concerning the mechanisms of action of Enbrel and Kineret. (Exs. P, Q, R.)  He was utterly unprepared to do so.  (*See* Ex. S, T, U.)  He had not even seen the deposition notices before. (Ex. V at 24:24-25:20; 36:19-37:2)[1]

To constrain the examination of Dr. Appleton, Amgen crafted an implausibly narrow definition of "mechanism of action" that it disclosed for the first time at the deposition: "the mode or manner in which Kineret or Enbrel or a therapeutic agent has an action in a patient who has clinical disease or in a clinical disease state" (20:25-21:3).  Dr. Appleton would only testify that Enbrel's mechanism of action is that it "intercepts TNF" (117:5-17), and that Kineret's mechanism of action is that it "occupies space on the IL-1 receptor" (117:19-119:14.).  He could not answer fundamental questions such as:  (a) "Is there a connection between the mechanism of action of Enbrel and the treatment of rheumatoid arthritis?" (122:7-9); (b) "Does Amgen have any idea how Enbrel provides a therapeutic benefit to patients with rheumatoid arthritis?" (97:6-8); and (c) "Does Amgen have any knowledge as to whether Enbrel causes a reduction in inflammation in patients with rheumatoid arthritis?" (97:16-17).

Furthermore, relying on Amgen's restrictive definition, Dr. Appleton could not address basic aspects of how Enbrel and Kineret work, such as: (a) "Is there any connection between the mechanism of action of Enbrel and NF-κB?" (121:10-11); (b) "What is the connection between the mechanism of action of Enbrel and its biological activity?" (134:17-18); (c) "Is there any connection between the mechanism of action of Enbrel and intracellular signaling?" (120:10-12); (d) "Does Amgen have knowledge as to whether the interception of TNF by Enbrel does or does not have an effect on intracellular signaling?" (98:17-19); (e) "When TNF is intercepted by Enbrel, what effect does that have on cells?" (89:17-18); (f) "Can the mechanism of action of a drug such as Enbrel be studied *in vitro*?" (53:17-18); and (g) "Do you know whether Amgen uses a reporter gene bioassay to test the mechanism of action of Enbrel?" (126:7-8).

ARIAD would appreciate the Court's assistance with these matters.

Respectfully,

*/s/ Steven J. Balick*

Steven J. Balick

SJB/dmf

181082.1

---

[1] Amgen also objected to the deposition topics as, for example, "vague and ambiguous as to the phrase 'NF-KB signaling.'" (Exs. W, X.)  These objections are without merit, as explained in meet-and-confer letters attempting to resolve the dispute. (Exs. S, T, U.)

The Honorable Mary Pat Thynge
May 30, 2007
Page 4


cc:    David I. Gindler, Esquire (via electronic mail; w/attachments)
       Melanie K. Sharp, Esquire (by hand and via electronic mail; w/attachments)
       Marcus E. Sernel, Esquire (via electronic mail; w/attachments)
       Frederick L. Cottrell, III, Esquire (by hand and via electronic mail; w/attachments)
       Charles E. Lipsey, Esquire (via electronic mail; w/attachments)
       Robert D. Bajefsky, Esquire (via electronic mail; w/attachments)

# Exhibit A

**EXHIBIT A**

**Technical Documents**

**(Request Nos. 6, 8, 9, 10, 11, 12, 13, 23, 25, 26, 27, 28, 29, 30, 41, 42, 53, and 58)**

**REQUEST NO. 6**:

All laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries authored or maintained by any ENBREL RESEARCHERS or KINERET RESEARCHERS RELATING TO ENBREL, KINERET, or NF-KB.

**RESPONSE:**

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries; non-privileged documents sufficient to show the design, development, and testing of Enbrel® and Kineret® to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meanings of "ENBREL RESEARCHERS" and "KINERET RESEARCHERS." Clarification is required.

**REQUEST NO. 8**:

All DOCUMENTS RELATING TO any internal COMMUNICATIONS by YOU wherein NF-KB was noted or discussed in relation to inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, sepsis, ENBREL or KINERET.

**RESPONSE:**

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce from internal communications, non-privileged documents wherein NF-•B was noted or discussed in relation to the use of Enbrel® or Kineret® for the treatment of inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, and sepsis, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege: the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 9**:

All DOCUMENTS RELATING TO any publication or article authored or coauthored by YOU, ENBREL RESEARCHERS and/or KINERET RESEARCHERS concerning NF-KB, ENBREL or KINERET.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from publications or articles written by or on behalf of any of the Amgen Entities, non-privileged documents wherein NF-•B was noted or discussed in relation to the use of Enbrel® and for Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meanings of "ENBREL RESEARCHERS" and "KINERET RESEARCHERS." Clarification is required.

**REQUEST NO. 10**:

All DOCUMENTS RELATING TO any patent or pending or abandoned patent application owned or controlled by YOU, which includes any discussion of a product or method to treat inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, or sepsis, or which includes any discussion of affecting or modulating NF-KB or NF-KB activity.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from patents or pending or abandoned patent applications owned or controlled by the Amgen Entities, non-privileged documents wherein NF-•B was noted or discussed in relation to the use of Enbrel® or Kineret® for the treatment of inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, and sepsis, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 11**:

All DOCUMENTS RELATING TO any evaluation or study of any method of treatment of inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, or sepsis involving binding of a substance or molecule to TNF, IL-1, or IL-1 receptor.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from evaluations or studies of methods of treatment of inflammation, rheumatoid

arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, and sepsis, non-privileged documents wherein NF-•B was noted or discussed in relation to the binding of Enbrel® or Kineret® to TNF, IL-1, and/or IL-1 receptor, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority

**REQUEST NO. 12**:

All DOCUMENTS RELATING TO research or development RELATING TO TNF and/or TNF receptor(s), including notebooks, research articles, proposed or executed collaborations with THIRD PARTIES, research proposals, tutorials, videos, transcripts, notes, calendars, diaries, records, reports, and presentation materials.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from notebooks, research articles, collaborations with third parties, research proposals, tutorials, videos, transcripts, notes, calendars, diaries, records, reports, and presentation materials, non-privileged documents sufficient to show the research and development of

Enbrel®, to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 13**:

All DOCUMENTS RELATING TO research or development RELATING TO IL-1, IL-1 receptor(s) and/or IL-1Ra, including research articles, proposed or executed collaborations with THIRD PARTIES, notebooks, research proposals, tutorials, videos, transcripts, notes, calendars, diaries, records, reports, and presentation materials.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from notebooks, research articles, collaborations with third parties, research proposals, tutorials, videos, transcripts, notes, calendars, diaries, records, reports, and presentation materials, non-privileged documents sufficient to show the research and development of Kineret®, to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

1700267

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 23**:

All laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries RELATING TO NF-KB RESEARCH PROJECTS.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries, non-privileged documents wherein NF-•B is noted or discussed in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meaning of "NF-KB RESEARCH PROJECTS." Clarification is required.

**REQUEST NO. 25**:

All DOCUMENTS RELATING TO any protein kinase C inhibitors and/or phytohemagglutinin and NF-KB.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents wherein NF-•B is noted or discussed in relation to protein kinase C inhibitors and/or phytohemagglutinin, to the extent that they are responsive to another request (and subject to the Specific and General objections thereto).

The Amgen Entities specifically object to this request as vague, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 26**:

All DOCUMENTS RELATING TO any electrophoretic mobility shift assays and/or reporter assays and NF-KB.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents wherein NF-•B is noted or discussed in relation to electrophoretic mobility shift assays and for reporter assays, to the extent that they are responsive to another request (and subject to the Specific and General objections thereto).

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 27**:

All DOCUMENTS RELATING TO the intracellular and/or extracellular aspects of NF-KB signaling, including any such documents authored or maintained by ENBREL RESEARCHERS or KINERET RESEARCHERS.

**RESPONSE:**

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from research materials written by or on behalf of any of the Amgen Entities, non privileged documents wherein NF-•B is noted or discussed in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meaning of "NF-KB signaling," "extracellular aspects of NF-KB signaling," "ENBREL RESEARCHERS," and "KINERET RESEARCHERS." Clarification is required.

**REQUEST NO. 28**:

All DOCUMENTS RELATING TO the intracellular and/or extracellular aspects of TNF and/or IL-1 signaling, including any such documents authored or maintained by ENBREL RESEARCHERS or KINERET RESEARCHERS.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from research materials written by or on behalf of any of the Amgen Entities, non-privileged documents sufficient to detail the mechanism(s) of action of Enbrel® or Kineret®, to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meaning of "TNF and/or IL-1 signaling," "intracellular . . .aspects of TNF and/or IL-1 signaling," "ENBREL RESEARCHERS," and "KINERET RESEARCHERS." Clarification is required.

**REQUEST NO. 29**:

All DOCUMENTS RELATING TO anti-TNF antibodies and NF-KB signaling.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents wherein NF-•B is noted or discussed in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of

Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities object to this request as vague and ambiguous with respect to the meaning of "NF-KB signaling." Clarification is required.

**REQUEST NO. 30**:

All DOCUMENTS RELATING TO anti-IL-1 antibodies and NF-KB signaling.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents wherein NF-• B is noted or discussed in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meaning of "NF-KB signaling." Clarification is required.

**REQUEST NO. 41**:

All tutorials, presentations, videos and transcripts that RELATE TO the subject matter described and/or claimed in the '516 PATENT FAMILY.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from tutorials, presentations, videos and transcripts, non-privileged documents wherein the '516 patent is noted or discussed, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure

by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 42**:

All DOCUMENTS RELATING TO any COMMUNICATION or agreement with a THIRD PARTY RELATING TO ARIAD or the '516 PATENT FAMILY.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from communications or agreements with third parties, non-privileged documents wherein the '516 patent is noted or discussed, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after

liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 53**:

All patents and patent applications owned or controlled by YOU that mention NF-KB (including any description of effects on NF-KB by any substances, experiments, procedures or therapies), and their prosecution histories.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from patents and patent applications owned or controlled by the Amgen Entities, non-privileged documents wherein NF-•B is noted or discussed in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 58**:

All DOCUMENTS RELATING TO licenses, agreements, or contracts between YOU and a THIRD PARTY RELATING TO intellectual property, or know how, involving NF-KB.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meaning of "know how." Clarification is required.

# Exhibit B

## EXHIBIT B

### Testing Documents (Request Nos. 3, 5, 7 and 21)

**REQUEST NO. 3**:

All DOCUMENTS RELATING TO the conception, reduction to practice, testing, development of the alleged inventions described and/or claimed in U.S. Patent Nos. 5,395,760; 5,605,690; 5,712,155; 5,945,397; 6,201,105; 6,572,852; Re 36,755; 5,075,222; 6,599,873; and/or any patents or patent applications that claim priority to an application from which one or more of the foregoing patents claims priority.

**RESPONSE**:

Despite their belief that such documents are not reasonably calculated to lead to the discovery of admissible evidence, and subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce publicly available copies of the prosecution histories for U.S. Patent Nos. 5,395,760; 5,605,690; 5,712,155; 5,945,397; 6,201,105; 6,572,852; Re 36,755; 5,075,222; and 6,599,873, as well as copies of representative related foreign filings.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 5**:

All laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries RELATING TO ENBREL RESEARCH PROJECTS or KINERET RESEARCH PROJECTS.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will

produce, from laboratory notebooks, laboratory records, research files, research meeting minutes, or research summaries, non-privileged documents sufficient to show the design, development, and testing of Enbrel® and Kineret® to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

The Amgen Entities further object to this request as vague and ambiguous with respect to the meanings of "ENBREL RESEARCH PRODUCTS" and "KINERET RESEARCH PRODUCTS." Clarification is required.

**REQUEST NO. 7**:

All DOCUMENTS RELATING TO the mechanism of action, development or testing of ENBREL or KINERET.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents sufficient to detail the mechanism(s) of action of Enbrel® and Kineret®, to the extent such documents exist and are relevant. The Amgen Entities will also

produce non-privileged documents sufficient to show the development and testing of Enbrel® and Kineret®, to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 21**:

All DOCUMENTS RELATING TO the development, testing, marketing, and/or sale of ENBREL or KINERET that include any discussion RELATING TO NF-KB.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from their development, testing, marketing, and/or sales materials, non-privileged documents that discuss NF-•B in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is

protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

# Exhibit C

## EXHIBIT C

### Regulatory Submissions On The Accused Products (Request No. 14)

**REQUEST NO. 14**:

All DOCUMENTS RELATING TO COMMUNICATIONS with government regulatory agencies or authorities concerning ENBREL or KINERET, including investigational new drug applications, new drug applications, biologics license applications, product license applications, establishment license applications, and applications for patent term extensions.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from their communications with government regulatory agencies or authorities regarding Enbrel® or Kineret®, non-privileged documents (1) sufficient to show the structure and function of Enbrel® and Kineret® and (2) that discuss NF-•B, to the extent such documents exist, are relevant, and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

1700267

# Exhibit D

## **EXHIBIT D**

### **Damages Documents (Request Nos. 2, 21, 55, 56, 57, 59, 60)**

**REQUEST NO. 2**:

DOCUMENTS sufficient to identify the name, position, and responsibilities of all individuals involved in conception, design, development, testing, manufacture, marketing, and sales of ENBREL and KINERET.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce non-privileged documents sufficient to identify the name, position, and responsibilities of individuals with substantial involvement in the design, development, testing, manufacture, marketing, or sales of Enbrel® and Kineret®, where such involvement is relevant.

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 21**:

All DOCUMENTS RELATING TO the development, testing, marketing, and/or sale of ENBREL or KINERET that include any discussion RELATING TO NF-KB.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from their development, testing, marketing, and/or sales materials, non-privileged documents that discuss NF-•B in relation to the use of Enbrel® or Kineret®, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 55**:

DOCUMENTS sufficient to fully describe the research, development, and production costs of ENBREL and KINERET.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third

- 2 -

parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 56**:

All projections of sales, revenue, profit (or loss), or profit margins for ENBREL and KINERET.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 57**:

DOCUMENTS sufficient to fully describe YOUR sales, revenue, costs, profit (or loss), and profit margins for ENBREL and KINERET from each product's first sale to the present.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 59**:

All DOCUMENTS RELATING TO licenses, agreements, or contracts between YOU and a THIRD PARTY RELATING TO intellectual property, or know how RELATING TO ENBREL or KINERET, including but not limited to licenses or agreements enabling YOU to manufacture or sell ENBREL OR KINERET.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 60**:

DOCUMENTS sufficient to identify all the locations of manufacture of ENBREL and KINERET, the amounts of ENBREL and KINERET produced at each location, and the countries in which the ENBREL and KINERET produced at each location were sold, on a quarterly basis.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive, not relevant to any issue in this case, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

# Exhibit E

## EXHIBIT E

## Willfulness Documents (Requests No. 16, 32, 33, 34, 35, 36, 37, 41, 42)

**REQUEST NO. 16:**

All DOCUMENTS RELATING TO any product clearance or due diligence, including any patent searching, performed or considered by YOU or on YOUR behalf RELATING TO the preparation, production, manufacturing, launch, or sale of ENBREL or KINERET in the United States.

**RESPONSE:**

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

**REQUEST NO. 32:**

All DOCUMENTS RELATING TO any investigation, search, or analysis regarding the scope, validity or invalidity, enforceability or unenforceability, or infringement or noninfringement, of any patent or application in the '516 PATENT FAMILY.

**RESPONSE:**

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a

determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities further object to this request as premature as the Amgen Entities have not yet asserted any claim for unenforceability of the '516 patent.

The Amgen Entities also object to this request as vague and ambiguous as to the meaning of the term "enforceability." Clarification is required.

**REQUEST NO. 33**:

All DOCUMENTS RELATING TO any advice or opinions of in-house or outside counsel, RELATING TO any patent or application in the '516 PATENT FAMILY.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

**REQUEST NO. 34**:

All DOCUMENTS that were considered by YOU, or YOUR in-house or outside counsel, in forming an opinion as to the infringement or noninfringement, validity or invalidity, or enforceability or unenforceability of any patent or application in the '516 PATENT FAMILY.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities further object to this request as premature as the Amgen Entities have not yet asserted any claim for unenforceability of the '516 patent.

The Amgen Entities also object to this request as vague and ambiguous as to the meaning of the term "enforceability." Clarification is required.

**REQUEST NO. 35**:

All DOCUMENTS that support, contradict or RELATE TO the contention that YOU have not willfully infringed and are not willfully infringing the '516 PATENT.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence.

The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery. The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

**REQUEST NO. 36**:

All DOCUMENTS RELATING TO any comparison of the features, qualities, or mechanisms of action of ENBREL or KINERET with the disclosures or claims in any patent or application in the '516 PATENT FAMILY.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity,

- 4 -

infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

**REQUEST NO. 37**:

All DOCUMENTS RELATING TO any comparison of the features, qualities, or mechanisms of action of any substance or molecule with the claims in the '516 PATENT.

**RESPONSE**:

The Amgen Entities specifically object to this request as premature, overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

**REQUEST NO. 41**:

All tutorials, presentations, videos and transcripts that RELATE TO the subject matter described and/or claimed in the '516 PATENT FAMILY.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from tutorials, presentations, videos and transcripts, non-privileged documents wherein the '516 patent is noted or discussed, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not

produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

**REQUEST NO. 42**:

All DOCUMENTS RELATING TO any COMMUNICATION or agreement with a THIRD PARTY RELATING TO ARIAD or the '516 PATENT FAMILY.

**RESPONSE**:

Subject to and without waiving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, the Amgen Entities will produce, from communications or agreements with third parties, non-privileged documents wherein the '516 patent is noted or discussed, to the extent such documents exist and are within the Amgen Entities' possession, custody, or control.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, or otherwise immune from discovery.

The Amgen Entities understand this request to call for documents constituting or referring to studies, evaluations, reports, reviews, assessments, or opinions regarding validity, infringement, or unenforceability of the '516 patent. The Amgen Entities further object to this request on the grounds that it is premature in that the Amgen Entities have not yet made a determination as to whether they will waive the privilege for this information with respect to any privileged or work product opinion they may rely upon in this case, but will either ask the Court to bifurcate the issue of willfulness and allow the Amgen Entities to defer the decision until after liability is determined, or make their decision and advise ARIAD of it before the close of discovery.

The Amgen Entities additionally object to this request to the extent that it requires the Amgen Entities to produce documents, things, and information that are protected from disclosure by third-party confidentiality agreements or obligations. In accordance with the Federal Rules of Civil Procedure and other applicable legal authorities, the Amgen Entities may not and will not produce such documents, things, or information subject to confidentiality agreements with third parties, or subject to protective orders in other actions, without the appropriate permission and authority.

# Exhibit F

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

May 18, 2007

**VIA E-MAIL**

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Drew:

I am writing to follow up on our meet-and-confer conversations on May 2, May 3, and May 4, 2007, regarding areas in which Amgen's document production remains inadequate. Those conversations followed your earlier discussions with Alex Young and Ray LaMagna on April 23 and April 26, 2007.

In our conversations, we discussed what documents Amgen has withheld or declined to search for in response to ARIAD's First Set Of Requests For Production Of Documents. We identified several areas of fundamental disagreement, which ARIAD and the Institutions intend to raise with the Court.

First, Amgen did not produce documents in response to Requests Nos. 6, 8, 9, 10, 11, 12, 13, 23, 25, 26, 27, 28, 29, 30, 41, 42, 53, and 58 unless those documents specifically related to Enbrel or Kineret. That is improper. Each of these requests seeks technical documents relevant to the issues in the case, such as the relationships between NF-kB TNF, IL-1, and the medical conditions for which NF-kB-related treatment is indicated. Documents on these subjects are relevant to ARIAD's claims regardless of whether they specifically reference Enbrel or Kineret. For example, if Amgen is in possession of documents evidencing the relationship between TNF or IL-1 and NF-kB, they relate directly to infringement and willfulness and should be produced. Yet Amgen has not even searched for such documents. Similarly, documents relating to NF-kB and the sorts of testing that may establish infringement in this case—such as electrophoretic mobility shift assays and/or reporter assays—are directly relevant to proving infringement. Yet Amgen has not searched for these documents either.

1690716

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
May 18, 2007
Page 2

Other documents that Amgen has not searched for on this basis include:

- Laboratory notebooks, laboratory records, research files, minutes, and summaries maintained by Enbrel or Kineret researchers relating to NF-kB or NF-kB research projects; and publications relating to NF-kB authored by Amgen, Enbrel researchers, or Kineret researchers. (Requests No. 6, 9, 23.)

- Internal Amgen communications and patent applications wherein NF-kB was noted or discussed in relation to inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, or sepsis. (Request No. 8.)

- Amgen's patents and patent applications that include discussion of modulating NF-kB or NF-kB activity. (Requests No. 10, 53.)

- Documents relating to evaluation or study of methods of treating inflammation, rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, plaque psoriasis, or sepsis by binding a substance or molecule to TNF, IL-1, or IL-1 receptor (Request No. 11.)

- Research or development relating to TNF, TNF receptors, IL-1, IL-1 receptors, or IL-1 receptor antagonists. (Requests No. 12, 13.)

- Documents relating to protein kinase C inhibitors and/or phytohemagglutinin and NF-kB (Request No. 25.)

- Documents relating to electrophoretic mobility shift assays and/or reporter assays and NF-kB (Request No. 26.)

- Documents relating to the intracellular and/or extracellular aspects of NF-kB signaling, TNF signaling, and IL-1 signaling. (Requests No. 27, 28.)

- Documents relating to anti-TNF antibodies and NF-kB signaling and anti-IL-1 antibodies and NF-kB signaling. (Requests No. 29, 30.)

- Tutorials, presentations, videos and transcripts that relate to the subject matter described and/or claimed in the '516 patent family. (Request No. 41.)

- Documents relating to communications with third parties concerning ARIAD or the '516 patent family. (Request No. 42.)

1690716

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
May 18, 2007
Page 3

- Documents relating to licenses or agreements between Amgen and a third party relating to intellectual property or know-how involving NF-kB. (Request No. 58.)

We intend to move to compel production of documents responsive to these requests.

Second, Amgen did not search for or produce documents in response to Request Nos. 17, 18, 19, or 20 relating to the biological or biochemical effect of Enbrel on TNF or TNF receptors, or the biological or biochemical effect of Kineret on IL-1, IL-1Ra, or IL-1 receptors, unless those documents specifically discuss NF-kB. That is improper. Claim 18 of the '516 patent explicitly calls out "reduc[ing] intracellular signaling caused by IL-1 or TNF." Amgen's decision not to search for such documents therefore results in the withholding of documents directly related to ARIAD's and Institutions' claims of infringement and willfulness. We intend to move to compel production of these documents.

Third, Amgen has not produced documents in response to Request Nos. 16, 32, 33, 34, 35, 36, 37, 41, and 42 relating to ARIAD's claim of willful infringement, on the basis that it has not elected whether it intends to rely on advice of counsel as a defense to willful infringement. ARIAD believes that Amgen must make its election immediately, so as to provide the opportunity for discovery regarding ARIAD's claim of willful infringement. It would be prejudicial to ARIAD and the Institutions for Amgen to withhold during the discovery period privileged documents relevant to willfulness issues, but then seek to rely on them after ARIAD's opportunity to take discovery on willfulness issues has passed. In addition, Amgen has no basis to withhold non-privileged documents relating to ARIAD's claim of willful infringement. We intend to move to compel the production of these documents.

Fourth, Amgen has not produced documents in response to Request Nos. 3 and 5 relating to testing of Enbrel or Kineret or other inventions claimed in the Enbrel and Kineret patents after the products were released, and laboratory notebooks, records, meetings, and summaries relating to Enbrel and Kineret research projects from after the products were released. That is improper. Such documents are relevant to ARIAD's claims for infringement and willfulness and should be produced. We intend to move to compel their production.

There are also several issues regarding documents that Amgen has agreed to produce, but has not produced or provided a date certain by which they will be produced. We intend to raise these issues with the Court as well.

First, Amgen has not produced damages documents. These documents are responsive to Request Nos. 2, 21, 55, 56, 57, 59, and 60 to the extent they relate to ARIAD's claim for damages. These requests relate to the marketing, sales, development and

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
May 18, 2007
Page 4

production costs, revenue, profit (or loss), and profit margins for the products in suit (Request Nos. 2, 21, 55, 57); projections of sales, revenue, profit (or loss), or profit margins for the products in suit (Request No. 56); licenses and agreements relating to intellectual property or know-how involving NF-kB, Enbrel, or Kineret (Request Nos. 58 and 59); and documents relating to the manufacture and importation of the products and suit (Request No. 60). Amgen has not disputed that these categories of documents are relevant, and weeks have passed since Amgen agreed to produce these documents, including agreeing to run queries for month-by-month financial information to the extent it is included in electronic financial records rather than paper records. We have not received these documents and intend to move to compel their production.

In addition, we discussed the time period for which Amgen would produce sales, revenue, profit (or loss), and profit margin data. Amgen intends to withhold financial information from any time prior to the issuance of the '516 patent. That is improper. Information dating to the first sales of the products would be directly relevant to a hypothetical negotiation in a reasonable royalty analysis, because information regarding the performance of the products in suit and their value to Amgen would have been part of the relevant and available information in such a hypothetical negotiation at the time the '516 patent issued.

Second, Amgen made an incomplete and disorganized production of its submissions to government regulatory agencies relating to Enbrel and Kineret, such as investigational new drug applications and biologics license applications, in response to Request No. 14. Amgen's regulatory submissions for Enbrel and Kineret contain information that is highly relevant to ARIAD's infringement claim. While there may be portions of these submissions that are irrelevant, ARIAD needs to know what portions were withheld in order to evaluate whether it was proper for Amgen to withhold them. The regulatory submissions that Amgen did produce were produced out of order and in manner that does not permit ARIAD to know or evaluate what has been withheld. Amgen's production did not include tables of contents for many of its regulatory submissions. The only complete table of contents that ARIAD has been able to locate in Amgen's production relates only to one of Amgen's regulatory submissions, and was found at an illogical location in the midst of another document. Amgen stated that it would provide to ARIAD (1) complete tables of contents for the Enbrel and Kineret submissions (including INDs and BLAs) and (2) specific identification of what portions of those regulatory submissions have been withheld. Although this agreement was made weeks ago, we have not received any of this material. We intend to raise this issue with the Court, as well.

Similarly, Amgen has elected to produce only what it describes as "representative" documents in response to Request No. 4 (patent applications relating to Enbrel and Kineret) and No. 7 (documents relating to the mechanism of action, development or testing of Enbrel or Kineret). It is improper for Amgen to decide which documents are "representative" and

1690716

I R E L L  &  M A N E L L A  LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Drew Diamond, Esq.
May 18, 2007
Page 5


which documents are cumulative. Amgen should provide complete responses to these requests and we intend to ask the Court to compel Amgen to do so.

Because of the many deficiencies that remain unresolved notwithstanding our lengthy discussions on these subjects, we will be raising these matters with the Court.

Sincerely,

Betsy Rosenblatt

1690716

# Exhibit G

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

May 29, 2007

**VIA E-MAIL**

Jamie McDole, Esq.                    Drew Diamond, Esq.
Kirkland & Ellis LLP                  Kirkland & Ellis LLP
200 East Randolph Drive               777 South Figueroa Street
Chicago, IL  60601                    Los Angeles, CA  90017

       Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Jamie and Drew:

       I am writing regarding Amgen's production of documents relating to ARIAD's and the Institutions' claim of damages.  I understand that today Jamie told my colleagues Perry Goldberg and Nathan Lowenstein that Amgen had made a complete production of damages documents.

       I was very surprised by this statement because we had been told exactly the opposite in earlier discussions with your firm.   In April, Drew acknowledged that Amgen's production of damages-related documents was incomplete and told Ray LaMagna and Alexandrea Young that Amgen would supplement its production.

       You and I had a similar conversation on the telephone on May 4, 2007.  I reiterated that Amgen's production was incomplete in response to ARIAD's Document Request Nos. 2, 21, 55, 56, 57, 59, and 60.  Jamie recognized the need for Amgen to run reports in its financial system to satisfy ARIAD's document requests.  In response to Jamie's request for clarification regarding what damages documents ARIAD sought, I referenced the requests above and stated that to the extent Amgen runs queries of its financial system to produce responsive documents, it should create reports on a month by month basis.   We also discussed the time period over which Amgen must produce information.  I confirmed this conversation in my letter of May 18, 2007, to Drew.  We have not received any additional documents.

       Amgen has admitted that it is able to run reports that contain complete financial information relating to Enbrel and Kineret as requested in Document Requests No. Document Request Nos. 55, 56, 57, 59, and 60, yet its production of damages-related documents is minimal.  While Amgen's production contains a handful of scattered weekly, monthly, or yearly sales or revenue figures for one drug or another, they are only a few pieces of a larger puzzle and hardly complete.  If you believe that, contrary to statements

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
Drew Diamond, Esq.
May 29, 2007
Page 2

that you made in earlier communications, Amgen has produced all damages-related documents that ARIAD has requested, please identify them by Bates number.

Sincerely,

Betsy Rosenblatt

1700821

# Exhibit H

.

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 18, 2007

<u>**VIA E-MAIL**</u>

David Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:     Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action
No. 06-259-MPT

Dear David:

As you are aware, ARIAD recently added a counterclaim of willful infringement in this case. The addition of this new allegation raises the issue of whether Amgen will rely on the advice of counsel to defend against it. Given that ARIAD only recently added this counterclaim, the Court did not have an opportunity to address in its scheduling order a timeframe for Amgen to state whether it intends to rely on the advice of counsel, and if so, produce corresponding documents. As I am sure you are aware, it is now relatively common in Delaware for alleged infringers to be given a date by which the decision to rely on the advice of counsel must be made, and that this date can be after the close of fact discovery so as to ease the prejudice of putting alleged infringers to the test of making this difficult decision before it sees how the case has unfolded. As such, we would request a meet and confer to discuss a schedule with respect to advice of counsel and hopefully reach agreement on the issue.

Please let me know when you are available to discuss this issue.

Sincerely,

Marcus E. Sernel

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# Exhibit I

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 29, 2007

<u>VIA E-MAIL</u>

Perry Goldberg, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re: *Amgen et al. v. ARIAD Pharms., Inc.*, D. Del. Civil Action No. 06-259-(MPT)

Dear Perry:

To follow up on our conversation of last week, I write with respect to our proposal for willful infringement-related discovery in this case.

We would propose that Amgen decide whether to rely on the advice of counsel defense within seven days of receiving a Markman ruling in this case. Setting this date after the Markman ruling alleviates some of the prejudice Amgen may suffer from the difficult decision of whether to waive the attorney-client privilege based on reliance or not. We would produce related documents within the appropriate scope of the waiver at the same time as this decision would be made, and then I would expect that ARIAD could take any depositions it would need within a few weeks of this date.

I assume you are also aware of the *In re Seagate Technology* case that is awaiting an *en banc* argument next month on, *inter alia*, the issue of the scope of waiver associated with reliance on the advice of counsel. Given the pendency of the *Seagate* case, and the fact that (depending on how the issues are addressed) it may shed some light on the appropriate scope of waiver in this case, it makes little sense to set the date for reliance on the advice of counsel at any time in the near future. The proposal I have set forth above should allow for the *Seagate* ruling to come out before Amgen is put to the decision regarding the advice of counsel.

## KIRKLAND & ELLIS LLP

May 29, 2007
Page 2

Please feel free to contact me if you have any questions or comments.

Very truly yours,

Marcus E. Semel

**Exhibit J**

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

**WRITER'S DIRECT**
TELEPHONE (310) 203-7047
FACSIMILE (310) 282-5747
pgoldberg@irell.com

May 29, 2007

**VIA E-MAIL**

Marcus E. Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re:  Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.

Dear Marc:

I am writing in response to your letter from earlier this afternoon proposing that willfulness-related discovery be postponed until next year, after the Markman ruling in this case. We respectfully decline your proposal. We believe that willfulness-related discovery should take place within the normal period for fact discovery. In addition, we do not think that it makes sense to postpone this discovery until after the Federal Circuit rules in *In re Seagate Technology,* given the uncertainty regarding when that case will be decided and whether the ruling in that case would have any impact on the issues in this case.

Very truly yours,

Perry Goldberg

PG:ld

1700536.1

# Exhibit K

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, | ) | |
| AMGEN USA INC., AMGEN MANUFACTURING | ) | |
| LIMITED, IMMUNEX RHODE ISLAND | ) | C.A. No. 06-259-MPT |
| CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| ARIAD PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
THIRD NOTICE OF DEPOSITION OF PLAINTIFFS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") will take the deposition upon oral examination of Plaintiffs Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation (collectively, "Amgen") on April 5, 2007 beginning at 9:00 a.m. and continuing from day to day thereafter (excluding Saturdays, Sundays, and holidays) until completed. The deposition shall take place at the offices of Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067 or according to alternative arrangements upon which counsel jointly agree. The deposition shall be taken before an officer authorized to administer oaths and may be recorded by any means that the Federal Rules of Civil Procedure permit, including videotaping, audio taping, stenographic recording, and means permitting electronic transmission of the transcript.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Amgen shall designate one or more of its officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf as to all matters known or reasonably

available to Amgen with respect to each of the subjects set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Amgen.

Amgen is requested to provide to ARIAD's counsel, on or before March 29, 2007, a written designation of the names and positions of the officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf concerning the areas of testimony set forth in Attachment A, and, for each person designated, the matters on which he or she will testify.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: March 5, 2007

178526.1

## ATTACHMENT A

## DEFINITIONS

A.    "ARIAD" shall mean ARIAD Pharmaceuticals, Inc.

B.    "YOUR" shall refer to Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation.

C.    "DOCUMENT" as used herein shall mean every kind of recording of any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic or photographic means, magnetic impulse, tape, computer disk or any other form of data storage, data compilation or mechanical or electronic recording, and all other tangible things which come within the meaning of "writing" or "recording" as used in Federal Rule of Evidence Rule 1001 or "document" as used in Federal Rule of Civil Procedure 34.  Every draft or non-identical copy of a DOCUMENT is a separate DOCUMENT as that term is used herein.

D.    "IDENTITY" shall mean (a) for a patent, its number, country of origin, and date of issue; (b) for a publication, its title, date of publication, author and publisher; (c) for all DOCUMENTS other than a patent or a publication, the name of the author, the type of DOCUMENT or writing, the date, the addressee and all other recipients, any title or description; and the present location; and (d) for an individual, the name, job title, job description, and affiliation of the individual, along with the individual's work and home address and telephone numbers.

E.    "PERSON" shall mean an individual, corporation, general partnership, limited partnership, limited liability company, governmental body, or any other private or public legal entity.

F.    Whenever appropriate, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary to bring within the scope of a topic any information that might otherwise be

-3-

considered outside its purview; and words imparting the masculine include the feminine and vice versa.

## AREAS OF TESTIMONY

1.      YOUR DOCUMENT retention and destruction policies, practices, and procedures, including but not limited to policies with respect to retention of paper DOCUMENTS and policies with respect to retention of electronic and e-mail files.

2.      YOUR policies, practices, and procedures with respect to the creation and maintenance of laboratory notebooks, research group meeting minutes, and research group project summaries.

3.      YOUR policies, practices, and procedures with respect to the creation and maintenance of scientific reference files.

4.      YOUR policies, practices, and procedures with respect to the creation and maintenance of invention disclosures.

5.      YOUR search for and collection of DOCUMENTS requested in ARIAD's First Set of Requests for Production of Documents.

6.      The IDENTITY of PERSONS who created, or possess, DOCUMENTS relevant to claims or defenses of the parties, and the location of such DOCUMENTS.

7.      The nature, existence and location of all DOCUMENTS relating to the subject matter of each of the foregoing categories.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2007, the attached **DEFENDANT ARIAD**

**PHARMACEUTICALS, INC.'S THIRD NOTICE OF DEPOSITION OF PLAINTIFFS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** was served upon the

below-named counsel of record at the address and in the manner indicated:


Melanie K. Sharp, Esquire                    BY HAND and ELECTRONIC MAIL
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391


Marcus E. Sernel, Esquire                    VIA FEDERAL EXPRESS and ELECTRONIC MAIL
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601-6636


J. Drew Diamond, Esquire                     VIA FEDERAL EXPRESS and ELECTRONIC MAIL
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800


                                    */s/ Tiffany Geyer Lydon*
                                    _____
                                    Tiffany Geyer Lydon

## Notices

1:06-cv-00259-MPT Amgen Inc. et al v. Ariad Pharmaceuticals Inc.
PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 3/5/2007 at 6:21 PM EST and filed on 3/5/2007

| | |
|---|---|
| **Case Name:** | Amgen Inc. et al v. Ariad Pharmaceuticals Inc. |
| **Case Number:** | 1:06-cv-259 |
| **Filer:** | Ariad Pharmaceuticals Inc. |

**Document Number:** 154

**Docket Text:**
NOTICE of (Defendant ARIAD Pharmaceuticals, Inc.'s Third Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) on April 5, 2007) by Ariad Pharmaceuticals Inc. (Lydon, Tiffany)

**1:06-cv-259 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Morgan Chu    mchu@irell.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

David I. Gindler    dgindler@irell.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Amir A. Naini    anaini@irell.com

Christopher M. Newman    cnewman@irell.com

Elizabeth L. Rosenblatt    brosenblatt@irell.com, egreenwood@irell.com, jroberts@irell.com

Melanie K. Sharp    msharp@ycst.com, asmit@ycst.com, chunter@ycst.com

**1:06-cv-259 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/5/2007] [FileNumber=352915-0]
[21d02fe7e38d4b058183c10a21466c07d8881c7cf8631c167d14f9a625c260087c13c
fa25f78f2039fccc10b05ae1798a4b745465ba30c65fca04fb32378fdde]]

# Exhibit L

# REDACTED

# Exhibit M

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
· NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

May 2, 2007

**VIA E-MAIL**

Jamie McDole, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Drew Diamond, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

   Re: *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Jamie and Drew:

   I am writing regarding the deposition of the Amgen Entities pursuant to ARIAD's Third Notice of Deposition Of Plaintiffs Pursuant To Federal Rule Of Civil Procedure 30(b)(6) (the "Notice"), which took place on April 25, 2007. Helen Streck, the Amgen Entities' designee at this deposition, was generally not prepared to testify regarding the topics in the Notice.

   As you know, a party has an obligation under Rule 30(b)(6) to provide a witness who is prepared to testify as to matters known or reasonably available to the party. Yet Ms. Streck was generally unprepared, for example, to provide anything beyond a boilerplate answer to most questions regarding the Amgen Entities' document collection process. ("Amgen searched for all documents related to Enbrel or Kineret as they're related to NF-kB or the mechanism of action"), and her responses reflected that she did not know what that phrase meant with respect to the actual parameters of Amgen's document search. Other examples of Ms. Streck's lack of knowledge include: She did not know who was asked to collect documents in response to ARIAD's document requests (or even approximately how many people were asked to do so); she did not know what terms were searched for purposes of electronic discovery or whose electronic files were searched; she did not know about the Amgen Entities' document retention policies and practices prior to her personal tenure at Amgen; and she did not know what happened to files from Immunex when Immunex merged with Amgen. She also stated at the outset of the deposition that she was not prepared to discuss topics 4 and 6, to which Amgen had objected generally.

1687326

# IRELL & MANELLA LLP
### A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
### INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
Drew Diamond, Esq.
May 2, 2007
Page 2


In light of Ms. Streck's unpreparedness, we request that the Amgen Entities produce a witness with knowledge sufficient to provide substantive answers on behalf of the Amgen Entities regarding all of the topics in the Notice, and that this witness appear at Amgen's expense. Drew, since we will be talking tomorrow regarding other issues, I would like to add this subject to our meet and confer agenda for that call.

Sincerely,

Betsy Rosenblatt

1687326

# Exhibit N

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7090
FACSIMILE (310) 203-7199
brosenblatt@irell.com

May 8, 2007

**VIA E-MAIL**

Jamie McDole, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  6060

      Re:    *Amgen, Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Jamie:

I am writing in response to your letter of May 4, 2007 regarding our discussion of the deposition of the Amgen Entities pursuant to ARIAD's Third Notice of Deposition Of Plaintiffs Pursuant To Federal Rule Of Civil Procedure 30(b)(6).

I disagree with your characterization of our discussion. Although we spoke at length regarding the deficiencies in Ms. Streck's testimony, and I raised several areas in which she was clearly unprepared to testify as a designated Amgen corporate representative, we did not resolve the fundamental disagreement among the parties. You did not dispute that Ms. Streck did not know the answers to many questions on which she had been designated to testify, but you took the position that ARIAD should be satisfied with Amgen's unprepared witness because you (or other Amgen counsel) were now willing to answer (or investigate the answers to) the questions for which she did not know the answers. Your answers, however, do not serve the same purpose as answers under oath from Amgen's corporate designee. As you know, depositions provide a unique opportunity for one party to receive unvarnished answers directly from another party, without an attorney intermediary. ARIAD is entitled to develop evidence of Amgen's responses to its deposition questions, not the informal responses of Amgen's counsel.

As I described on the telephone, Ms. Streck's boilerplate answer was not responsive to most of ARIAD's questions about what Amgen did or did not search for in response to ARIAD's document requests. She repeated substantially the same response (Amgen searched for documents relating to "Enbrel and Kineret and as they're related to NF-kB or the mechanism of action") over 50 times over the course of the deposition. She used substantially the same phrase regardless of the question asked. To provide just a few examples:

1690185

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
May 8, 2007
Page 2

- "Q. Was the Kineret Product Team requested to search for documents that relate to NF-kB that do not relate to Kineret? A. They were asked to look for documents regarding Kineret as it's related to NF-kB or the mechanism of action." (p. 65).

- "Q. Did Amgen search for NDAs for Enbrel or Kineret in response to ARIAD's document request? A. Amgen searched for all documents related to Enbrel or Kineret as they're related to NF-kB or the mechanism of action." (p. 83).

- "Q. Were searches performed outside of the documents related to Enbrel or Kineret as they relate to NF-kB or the mechanism of action? MR. McDOLE: Objection; asked and answered. THE WITNESS: As stated before, we searched for those documents that were related to Enbrel or Kineret as they are related to the NF-kB or the mechanism of action." (p. 94).

- "Q. Were these central depositories or file rooms searched in response to documents requested by Ariad? MR. McDOLE: Objection; asked and answered. THE WITNESS: We searched all documents relating to Enbrel and Kineret as related to NF-kB or the mechanism of action in response to the document request." (p. 119)

- "Q. Was the Enbrel Product Team asked to search for documents regarding the development of Enbrel that did not have to do with NF-kB? MR. McDOLE: Objection; nonsensical, vague and ambiguous, outside the scope. THE WITNESS: I can only tell you what we did search for. Q. BY MS. YOUNG: And I know it may be tiring, but what did you search for then? A. All the documents -- MR. McDOLE: Objection; asked and answered. THE WITNESS: All the documents relating to Enbrel as it's related to NF-kB or the mechanism of action." (p. 128).

(*See also, e.g.*, pp. 37, 38, 50, 51, 52, 54, 61, 92, 93, 95, 112, 117, 122, 123, 124, 127, 129, 133, 141, 142, 144, 146, 147, 148, 149, 150, 152, 154, 155, 158, 159, 160). The frequent repetition of this phrase effectively deprived ARIAD of meaningful information regarding the actual parameters of Amgen's document search.

Moreover, Ms. Streck's other responses reflected that she herself did not understand the meaning of the boilerplate language she had been instructed to provide. For example, Ms. Streck had never heard of TNF or IL-1 as it relates to this litigation (p. 24); she did not know who was on the product teams that were asked to collect their documents (p. 40); she did not know who contacted product teams to search for documents responsive to ARIAD's requests (pp. 40-41); she did not know who collected laboratory notebooks for production (p. 43); she did not know whether databases were made available to the product team members who searched for documents (p. 56); although she used the term "the mechanism of action" dozens of times, she did not have an understanding as to the term meant (p. 65); she did not know whose electronic documents were searched (pp. 67-68); she did not know

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
May 8, 2007
Page 3

whether a search was performed for documents relating to TNF as it relates to NF-kB
(p. 69); she did not know whether a search was performed for documents relating to NF-kB
apart from documents relating to Enbrel and Kineret (pp. 73-74); she did not know whether
Amgen performed a search of the files of individuals whose files were specifically requested
(pp. 80-82); she did know how those individuals' files are kept or whether those individuals'
files exist at Amgen (pp. 81-82); she did not know whether correspondence was searched for
responsive documents aside from correspondence falling within her boilerplate category
(p. 112); she could not provide an estimate of how many people at Amgen were asked to
search for documents (p. 40, pp. 120-21); she did not know whether Amgen searched
laboratory notebooks or research files for documents related to NF-kB that did not also
relate to Enbrel or Kineret (p. 142); and she did not know whether Amgen limited its search
to documents that contained the words "Enbrel" or "Kineret" (p. 150).

While we now know from your personal answers that Amgen did not perform much
of the document searching about which ARIAD inquired, your answers do not substitute for
the testimony of a Rule 30(b)(6) witness.

We also disagree regarding several areas of testimony on which Ms. Streck was
unprepared to testify which you maintained were beyond the scope of the topics on which
she was designated. For example, you maintained that the scope of Ms. Streck's designation
did not cover questions regarding Immunex's pre-merger document retention policies
(p. 89), and what happened to Immunex's documents when Immunex merged with Amgen
(pp. 90-91, 95, 97). These questions relate to the document retention and destruction
policies of the Amgen Entities (Topic 1) and provide foundation regarding Amgen's
document search (Topic 5). Similarly, questions regarding the identities and employment
status of the researchers involved in developing Enbrel (pp. 80, 82), to which you objected
on grounds of scope, are foundational questions regarding the parameters of Amgen's
document search for documents responsive to ARIAD's requests, which explicitly seek
documents from those researchers' files. You interposed the same objection to questions
regarding whether anyone at Amgen has been disciplined or terminated for failure to comply
with Amgen's document retention policy (pp. 76, 116), although those questions fell
squarely within Topic 1. Similarly, you objected that questioning regarding Amgen's
document search fell outside the scope Ms. Streck's designation, although they fell squarely
within Topic 5. (*E.g.* "Was the Enbrel Product Team asked to search for documents
regarding the development of Enbrel that did not have to do with NF-kB?" (p. 128); " Did
Amgen search for internal communications regarding NF-kB as related to rheumatoid
arthritis that did not reference Enbrel or Kineret?" (pp. 145-46) (*see also* pp. 146-48)).

Your objection to questioning regarding whether Amgen retains a central repository
or system of scientific or scholarly articles also directly conflicted with Ms. Streck's
designation as a corporate designee regarding topic 3 ("YOUR policies and procedures with
respect to the creation and maintenance of scientific reference files.") Along the same lines,

# IRELL & MANELLA LLP
### A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
### INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
May 8, 2007
Page 4

your objection to questioning regarding whether Amgen retains minutes from meetings of researchers directly conflicted with Ms. Streck's designation as a corporate designee regarding topic 2 ("YOUR policies, practices, and procedures with respect to the creation and maintenance of . . . research group meeting minutes"). These are just a few examples of areas on which Ms. Streck was designated to testify, yet unprepared to provide answers.

Amgen may not vitiate the obligation to provide a witness prepared to testify as to matters reasonably available to Amgen on the designated topics by suggesting that ARIAD settle for responses from counsel over the phone. You stated during our lengthy meet and confer discussion that Amgen was not considering providing a knowledgeable witness at Amgen's own expense, as ARIAD has requested. We gather from your letter that this position has not changed. Accordingly, we have no alternative but to bring this matter to the attention of the court.

Sincerely,

Betsy Rosenblatt

1690185

# Exhibit O

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 21, 2007

<u>**VIA E-MAIL**</u>

Betsy Rosenblatt
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    Re: *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action
No. 06-259-MPT

Dear Betsy:

This letter responds to your correspondence of Friday regarding ARIAD's Third Notice of Deposition of Plaintiffs. We continue to find it disappointing that you refuse to discuss and work these issues out between the parties. Throughout this process, Amgen has provided ARIAD with all of the information ARIAD requested with respect to Amgen's document production. First, Ms. Streck testified as to what Amgen searched for, how it searched and where it searched. Second, during our meet and confer regarding Ms. Streck's testimony, any specific issue you raised in this regard, I addressed and attempted to resolve disputes by providing you any information you requested about Amgen's document production. I also offered during the meet and confer to provide any other information you needed. Third, Amgen spent numerous hours with ARIAD in meet and confers over the past three weeks (relating to Amgen's responses to ARIAD's document requests) describing Amgen's document search efforts and production.

To date, Amgen has provided ARIAD with all of the information ARIAD requested with respect to Amgen's document production. This is in stark contrast to ARIAD's production which is absent of any electronic discovery despite the Court ordering such production to have occurred already. It is also in stark contrast to the productions of the Institutions which have produced a total of two pages to date (despite promises that their production would be completed by last week).

If there is any other information you need to know regarding Amgen's document production, please let me know. However, it appears from your correspondence and our

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

KIRKLAND & ELLIS LLP

May 21, 2007
Page 2

discussions that ARIAD is more interested in creating issues for the Court in order to try to delay this case rather than resolving disputes to move the case forward. As I explained in my letter of May 11, we continue to be willing to discuss these issues, but we cannot force ARIAD to cooperate.

If you have any questions, please let me know.

Sincerely,

Jamie McDole

Jamie McDole

# Exhibit P

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, | ) ) ) ) | C.A. No. 06-259-MPT |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
FIRST NOTICE OF DEPOSITION OF PLAINTIFFS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") will take the deposition upon oral examination of Plaintiffs Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation (collectively, "Amgen") on April 16, 2007 beginning at 9:30 a.m. and continuing from day to day thereafter (excluding Saturdays, Sundays, and holidays) until completed. The deposition shall take place at the offices of Irell & Manella LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067, or according to alternative arrangements upon which counsel jointly agree. The deposition shall be taken before an officer authorized to administer oaths and may be recorded by any means that the Federal Rules of Civil Procedure permit, including videotaping, audio taping, stenographic recording, and means permitting electronic transmission of the transcript.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Amgen shall designate one or more of its officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf as to all matters known or reasonably

available to Amgen with respect to each of the subjects set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Amgen.

Amgen is requested to provide to ARIAD's counsel, on or before March 29, 2007, a written designation of the names and positions of the officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf concerning the areas of testimony set forth in Attachment A, and, for each person designated, the matters on which he or she will testify.

ASHBY & GEDDES

/s/ Tiffany Geyer Lydon

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: March 5, 2007

178524.1

- 2 -

## ATTACHMENT A

## DEFINITIONS

A.    "ARIAD" shall mean ARIAD Pharmaceuticals, Inc.

B.    "AMGEN," "YOU," and "YOUR" shall mean Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation.

C.    "DOCUMENT" as used herein shall mean every kind of recording of any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic or photographic means, magnetic impulse, tape, computer disk or any other form of data storage, data compilation or mechanical or electronic recording, and all other tangible things which come within the meaning of "writing" or "recording" as used in Federal Rule of Evidence 1001 or "document" as used in Federal Rule of Civil Procedure 34. Every draft or non-identical copy of a DOCUMENT is a separate DOCUMENT as that term is used herein.

D.    "ENBREL" shall mean YOUR commercially available product sold under the brand name Enbrel® and/or the generic name etanercept, as approved for sale by the United States Food and Drug Administration, and any analog, derivative, or predecessor of the same, whether commercially available or not.

E.    "KINERET" shall mean YOUR commercially available product sold under the brand name Kineret® and/or the generic name anakinra, as approved for sale by the United States Food and Drug Administration, and any analog, derivative, or predecessor of the same, whether commercially available or not.

F.    "NF-KB" shall mean nuclear factor $\kappa$B and its analogs, derivatives and homologues.

G.    "'516 PATENT" shall mean United States Patent No. 6,410,516 entitled "Nuclear Factors Associated With Transcriptional Regulation," issued on June 25, 2002.

- 3 -

H.    Whenever appropriate, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary to bring within the scope of a topic any information that might otherwise be considered outside its purview; and words imparting the masculine include the feminine and vice versa.

## AREAS OF TESTIMONY

1.    The mechanisms of action of ENBREL, including but not limited to ENBREL's intracellular and extracellular interaction with NF-KB signaling.

2.    The mechanisms of action of KINERET, including but not limited to KINERET's intracellular and extracellular interaction with NF-KB signaling.

3.    Research and testing relating to ENBREL's mechanism of action, including but not limited to ENBREL's intracellular and extracellular interaction with NF-KB signaling.

4.    Research and testing relating to KINERET's mechanism of action, including but not limited to KINERET's intracellular and extracellular interaction with NF-KB signaling.

5.    AMGEN's communications with ARIAD or with third parties regarding ENBREL's mechanism of action or its interaction with NF-KB signaling.

6.    AMGEN's communications with ARIAD or with third parties regarding KINERET's mechanism of action or its interaction with NF-KB signaling.

7.    AMGEN's communications with ARIAD or with third parties regarding NF-KB signaling.

8.    AMGEN's contention that it does not directly or indirectly infringe any claim of the '516 PATENT through any activities relating to ENBREL.

9.    AMGEN's contention that it does not directly or indirectly infringe any claim of the '516 PATENT through any activities relating to KINERET.

10.    The patents (and claims thereof) that cover ENBREL, its formulation, or its mechanism of action.

11.    The patents (and claims thereof) that cover KINERET, its formulation, or its mechanism of action.

12.    The facts and circumstances relating to YOUR pre-suit knowledge of the '516 PATENT, including but not limited to the date on which YOU became aware of the '516 PATENT and the specific circumstances of how YOU became aware of it.

13.    Any steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with ENBREL.

14.    Any steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with KINERET.

15.    Any test, study, analysis, opinion, or investigation of the '516 PATENT, including the specific circumstances and results of each such activity, undertaken by or on behalf of AMGEN.

16.    The nature, existence and location of all DOCUMENTS relating to the subject matter of each of the foregoing categories.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2007, the attached **DEFENDANT ARIAD PHARMACEUTICALS, INC.'S FIRST NOTICE OF DEPOSITION OF PLAINTIFFS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** was served upon the below-named counsel of record at the address and in the manner indicated:

Melanie K. Sharp, Esquire                              BY HAND and ELECTRONIC MAIL
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Marcus E. Semel, Esquire                              VIA FEDERAL EXPRESS and ELECTRONIC MAIL
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601-6636

J. Drew Diamond, Esquire                              VIA FEDERAL EXPRESS and ELECTRONIC MAIL
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800


/s/ Tiffany Geyer Lydon
_____
Tiffany Geyer Lydon

## Discovery Documents

1:06-cv-00259-MPT Amgen Inc. et al v. Ariad Pharmaceuticals Inc.

PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

### Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 3/5/2007 at 5:37 PM EST and filed on 3/5/2007

**Case Name:**       Amgen Inc. et al v. Ariad Pharmaceuticals Inc.
**Case Number:**     1:06-cv-259
**Filer:**           Ariad Pharmaceuticals Inc.
**Document Number:** 151

**Docket Text:**
NOTICE to Take Deposition of Plaintiffs Amgen Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation on April 16, 2007 by Ariad Pharmaceuticals Inc..(Lydon, Tiffany)

**1:06-cv-259 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Morgan Chu    mchu@irell.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

David I. Gindler    dgindler@irell.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Amir A. Naini    anaini@irell.com

Christopher M. Newman    cnewman@irell.com

Elizabeth L. Rosenblatt    brosenblatt@irell.com, egreenwood@irell.com, jroberts@irell.com

Melanie K. Sharp    msharp@ycst.com, asmit@ycst.com, chunter@ycst.com

**1:06-cv-259 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/5/2007] [FileNumber=352897-0]
[59104661eea131aa0f80f02a30b61d41b922c1a50d5d4976d9c46c02d8f2c4e92e457
0f04835c0ffdd3ab5d1062347e87d72c766e4727b8bb12611bf842a5ddf]]

**Exhibit Q**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX
CORPORATION, AMGEN USA INC.,
AMGEN MANUFACTURING LIMITED,
and IMMUNEX RHODE ISLAND
CORPORATION,

                    Plaintiffs,

     v.

ARIAD PHARMACEUTICALS, INC., and
THE WHITEHEAD INSTITUTE FOR
BIOMEDICAL RESEARCH, a Delaware
corporation,

                    Defendants.

C.A. No. 06-259-MPT

---

ARIAD PHARMACEUTICALS, INC., THE
PRESIDENT AND FELLOWS OF
HARVARD COLLEGE, THE PRESIDENT
AND FELLOWS OF HARVARD
COLLEGE, and THE WHITEHEAD
INSTITUTE FOR BIOMEDICAL
RESEARCH,

                    Counterclaim-
                    Plaintiffs,

     v.

AMGEN INC., IMMUNEX
CORPORATION, AMGEN USA INC.,
AMGEN MANUFACTURING LIMITED,
IMMUNEX RHODE ISLAND
CORPORATION, and WYETH,

                    Counterclaim-
                    Defendants.

## DEFENDANT ARIAD PHARMACEUTICALS, INC.'S
## FIFTH NOTICE OF DEPOSITION OF PLAINTIFFS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Defendant ARIAD Pharmaceuticals, Inc. ("ARIAD") will take the deposition upon oral examination of Plaintiffs Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation (collectively, "Amgen") on May 22, 2007 beginning at 9:00 a.m. and continuing from day to day thereafter (excluding Saturdays, Sundays, and holidays) until completed. The deposition shall take place at the Hyatt Westlake Plaza, 880 S. Westlake Blvd., Thousand Oaks, CA 91361, or according to alternative arrangements upon which counsel jointly agree. The deposition shall be taken before an officer authorized to administer oaths and may be recorded by any means that the Federal Rules of Civil Procedure permit, including videotaping, audio taping, stenographic recording, and means permitting electronic transmission of the transcript.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Amgen shall designate one or more of its officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf as to all matters known or reasonably available to Amgen with respect to each of the subjects set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Amgen.

Amgen is requested to provide to ARIAD's counsel, on or before May 7, 2007, a written designation of the names and positions of the officers, directors, managing agents, or other persons who are most qualified, knowledgeable, and competent to testify on its behalf concerning the areas of testimony set forth in Attachment A, and, for each person designated, the matters on which he or she will testify.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendant*
*ARIAD Pharmaceuticals, Inc.*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067
(310) 277-1010

Dated:  April 23, 2007

179931.1

3

## ATTACHMENT A

## DEFINITIONS

A.    "ARIAD" shall mean ARIAD Pharmaceuticals, Inc.

B.    "AMGEN," "YOU," and "YOUR" shall mean Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation.

C.    "DOCUMENT" as used herein shall mean every kind of recording of any form of communication or representation upon any tangible thing, including letters, words, pictures, sounds or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic or photographic means, magnetic impulse, tape, computer disk or any other form of data storage, data compilation or mechanical or electronic recording, and all other tangible things which come within the meaning of "writing" or "recording" as used in Federal Rule of Evidence 1001 or "document" as used in Federal Rule of Civil Procedure 34. Every draft or non-identical copy of a DOCUMENT is a separate DOCUMENT as that term is used herein.

D.    "ENBREL" shall mean YOUR commercially available product sold under the brand name Enbrel® and/or the generic name etanercept, as approved for sale by the United States Food and Drug Administration, and any analog, derivative, or predecessor of the same, whether commercially available or not.

E.    "KINERET" shall mean YOUR commercially available product sold under the brand name Kineret® and/or the generic name anakinra, as approved for sale by the United States Food and Drug Administration, and any analog, derivative, or predecessor of the same, whether commercially available or not.

F.    "NF-KB" shall mean nuclear factor $\kappa$B and its analogs, derivatives and homologues.

G.    WYETH shall mean Wyeth, Wyeth-Ayerst Laboratories Division of American Home Products Corporation and/or American Home Products Corporation.

H.      "'516 PATENT" shall mean United States Patent No. 6,410,516 entitled "Nuclear Factors Associated With Transcriptional Regulation," issued on June 25, 2002.

I.      "'516 PATENT FAMILY" shall mean the '516 PATENT, any patents or applications from which the '516 PATENT claims priority, and any patents or applications that claim priority to an application from which the '156 PATENT claims priority.

J.      Whenever appropriate, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present, and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary to bring within the scope of a topic any information that might otherwise be considered outside its purview; and words imparting the masculine include the feminine and vice versa.

## AREAS OF TESTIMONY

1.      AMGEN's communications with ARIAD relating to the '516 PATENT or the '516 PATENT FAMILY.

2.      AMGEN's pre-suit knowledge of the '516 PATENT.

3.      The date on which AMGEN first became aware of the '516 patent and the specific circumstances of how AMGEN became aware the '516 PATENT.

4.      All steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with ENBREL.

5.      All steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with KINERET.

6.      All steps taken by AMGEN to assure that it was acting with due care in connection with ARIAD's rights with respect to the '516 PATENT.

7.      Any test, study, analysis, opinion or investigation of the '516 PATENT, including the specific circumstances and results of each such activity, undertaken by or on behalf of AMGEN.

2

8.    Any attempts undertaken by or on behalf of AMGEN to evaluate, analyze, test, operate, study the subject matter of the '516 PATENT.

9.    AMGEN's reliance on any opinion of counsel in connection with the '516 patent and ENBREL or KINERET, including any such opinions relied upon with respect to freedom to operate, validity of the '516 patent, and/or infringement of the '516 PATENT.

10.    Testing of ENBREL in the United States relating to the mechanism of action of ENBREL in relation to NF-KB, including the identity and location of those who performed and analyzed such testing and the dates of such testing.

11.    Testing of KINERET in the United States relating to the mechanism of action of KINERET in relation to NF-KB, including the identity and location of those who performed and analyzed such testing and the dates of such testing.

12.    The identity and location of witnesses knowledgeable about the categories set forth in Topics 1 to 12 above.

13.    The nature, existence, and location of all DOCUMENTS relating to Topics 1 to 12 above.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 23rd day of April, 2007, the attached **DEFENDANT ARIAD**

**PHARMACEUTICALS, INC. 'S FIFTH NOTICE OF DEPOSITION OF PLAINTIFFS**

**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** was served upon the

below-named counsel of record at the address and in the manner indicated:


Melanie K. Sharp, Esquire                                  <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Marcus E. Sernel, Esquire                                  <u>VIA FEDERAL EXPRESS</u>
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

J. Drew Diamond, Esquire                                   <u>VIA FEDERAL EXPRESS</u>
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800


*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

## Notices

<u>1:06-cv-00259-MPT Amgen Inc. et al v. Ariad Pharmaceuticals Inc.</u>
PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Lydon, Tiffany on 4/23/2007 at 7:29 PM EDT and filed on 4/23/2007

| | |
|---|---|
| **Case Name:** | Amgen Inc. et al v. Ariad Pharmaceuticals Inc. |
| **Case Number:** | <u>1:06-cv-259</u> |
| **Filer:** | Ariad Pharmaceuticals Inc. |
| **Document Number:** | <u>207</u> |

**Docket Text:**
NOTICE of Fifth Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) on May 22, 2007 by Ariad Pharmaceuticals Inc. (Lydon, Tiffany)

**1:06-cv-259 Notice has been electronically mailed to:**

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Morgan Chu    mchu@irell.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

David I. Gindler    dgindler@irell.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Amir A. Naini    anaini@irell.com

Elizabeth L. Rosenblatt    brosenblatt@irell.com, egreenwood@irell.com, jroberts@irell.com

Melanie K. Sharp    msharp@ycst.com, asmit@ycst.com, chunter@ycst.com

**1:06-cv-259 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=4/23/2007] [FileNumber=376634-0]
[2475dc6bd9ca48b7292955cebe5713b7b6c0fb54354eff05c83cea8339e99e6f78cb
c13a2544c87ee51be2a568aae6e1e5cc482bac0ba2637702607fc3faf353]]

# Exhibit R

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:                          312 861-2000                          Facsimile:
312 861-2389                                                                             312 861-2200
msernel@kirkland.com                          www.kirkland.com

April 6, 2007

<u>VIA E-MAIL</u>

David I. Gindler
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No. 06-259-MPT

Dear David:

I write in response to your series of letters of the past few days.

**<u>Inder Verma subpoena</u>**: Yes, we intend to pursue this deposition. Please let us know whether you will voluntarily produce him for deposition, or whether we will need to seek the assistance of the Court.

**<u>BLAs and INDs for the products-in-suit</u>**: As explained in my letter to you of yesterday, Amgen is in the process of gathering and reviewing relevant documents that are responsive to ARIAD's requests for production, and expect to produce these next week. We anticipate that relevant portions of Amgen's submissions to the FDA will be included in that production.

**<u>Amgen's Objections to Defendant's Third Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6)</u>**: With respect to topics 1, 2, 3, and 7, Amgen maintains its current objections and responses. Amgen has a document retention policy and it will provide a witness to testify as to that policy. To the extent you believe that these topics are broader than this subject matter, please let me know specifically what you believe Amgen is excluding from these topics. While we currently believe anything beyond what we offer for these topics is overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence, we are willing to consider a request for a broader scope of information and are available to meet and confer on this issue.

## KIRKLAND & ELLIS LLP

April 6, 2007
Page 2

With respect to topic 4, Amgen maintains its objections and will not provide a witness on this topic. As you are well aware, invention disclosures (including the creation and maintenance of them) are privileged. Moreover, this topic is overbroad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Whether Amgen creates and maintains invention disclosures has no bearing on any issue in this case. If you nonetheless believe ARIAD is entitled to this discovery, please provide your justification and any authority that you believe supports your position.

Amgen stands by its objections to topic 6. The information this topic seeks, to the extent it is not overbroad, is contained in Amgen's Rule 26(a) initial disclosures or interrogatory responses. Beyond the disclosures and responses, this topic is duplicative, unduly burdensome, harassing, and not likely to lead to the discovery of admissible evidence. To the extent Amgen becomes aware of new information, it will supplement its initial disclosures or interrogatory responses consistent with the Federal Rules.

**Identification of witnesses for 30(b)(6) depositions**: We have already identified for you Amgen's designee in response to ARIAD's third 30(b)(6) deposition notice. Amgen's designee in response to ARIAD's first 30(b)(6) deposition notice will be Dr. Brent Appleton.

**Amgen's responses to ARIAD's First Set of Interrogatories**: We are considering the issues you raised in your letter regarding Amgen's interrogatory responses. We are willing to schedule a meet and confer with you at any time during the upcoming week to discuss more fully what you have characterized as deficiencies, what you would consider "complete, substantive" responses, and whether ARIAD is proposing to supplement ARIAD's interrogatory responses to make them "complete and substantive." We can discuss then what the appropriate timeline should be for both parties to provide any possible supplementation to which we might mutually agree.

**ARIAD's continuing refusal to supplement its responses to Amgen's Requests for Admission**: Despite being granted an extension to respond to our Requests for Admission, you ultimately provided us non-responses to the vast majority of them. We detailed our concerns with your deficient non-responses over two weeks ago in a meet and confer, yet you still have not supplemented these non-responses. You have left us no choice but to bring the insufficiency of your responses to the Court's attention.

# KIRKLAND & ELLIS LLP

April 6, 2007
Page 3

I would hope that the parties can channel their efforts toward satisfying their discovery obligations as opposed to writing self-serving letters back and forth.  Please let me know if you have any questions.

Very truly yours,

Marcus E. Sernel

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

May 22, 2007

**VIA E-MAIL**

David I. Gindler
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    **Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.***, D. Del. Civil Action
       No. 06-259-MPT**

Dear David:

This letter relates to ARIAD's deposition of Brent Appleton tomorrow. In addition to the topics previously designated from ARIAD's First Notice of Deposition of Plaintiffs, Brent Appleton will also testify tomorrow on behalf of the Amgen Entities with respect to topics 10, 11 and 12 of ARIAD's Fifth Notice of Deposition as these topics overlap with those topics in the First Notice.

If you have any questions, please let me know.

Sincerely,

Jamie McDole

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# Exhibit S

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

May 24, 2007

**VIA E-MAIL**

Laura M. Burson, Esq.
Kirkland & Ellis LLP
777 South Figueroa St.
Los Angeles, CA 90017

Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals., Inc. et al.*

Dear Laura:

I write with respect to ARIAD's First Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("First Notice") and ARIAD's Fifth Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Fifth Notice"). For ease of reference, I will refer to Plaintiffs collectively as "Amgen."

Yesterday, Dr. Brent Appleton appeared as Amgen's designated witness for the First Notice and for topics 10, 11, and 12 in the Fifth Notice. Dr. Appleton was utterly unprepared to provide any meaningful testimony on behalf of Amgen. Incredibly, Dr. Appleton testified that he had never seen the First Notice or the Fifth Notice, (24:24-25:20; 36:19-37:2), and expressed confusion as to whether he was testifying on behalf of Amgen Inc. or on behalf of all of the Plaintiffs. (32:4-34:22.)

In its written objections—with which ARIAD does not agree, as discussed later in this letter—Amgen stated that it would provide a Rule 30(b)(6) witness on topics 1-6, 10-11 and 16 of the First Notice, and topics 10-12 of the Second Notice. Amgen indicated that it would provide a witness on these topics with respect to the mechanisms of action of Enbrel and Kineret, and related areas such as research and testing relating to the mechanisms of action. Amgen also asserted that the phrase "NF-KB signaling" was vague and ambiguous—an objection that rings hollow in light of Amgen's own technology tutorial in this case, which contained extensive discussion of NF-kB signaling, including detailed description of multiple steps in the NF-kB signaling pathway. In any event, Amgen did not provide any explanation of how its agreement to provide a witness on the mechanisms of action might be limited by the objection.

Setting aside the many problems with Amgen's objections, Dr. Appleton was unprepared to testify even within the confines of what Amgen agreed was proper, namely the mechanisms of action of Enbrel and Kineret. Dr. Appleton stated that he was prepared

1698065.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Laura M. Burson, Esq.
May 24, 2007
Page 2

to testify only by using the following implausibly narrow definition of "mechanism of action": "[T]he mode or manner in which Kineret or Enbrel or a therapeutic agent has an action in a patient who has clinical disease or in a clinical disease state." (20:25-21:3.) Dr. Appleton made clear that he was not prepared to discuss Amgen's knowledge with respect to any other aspect of the mechanisms of action of Enbrel or Kineret, including their mechanisms of action when applied to cells in culture. (24:7-12; 120:5-9.) ARIAD's deposition notices contain none of these limitations. Nor did Amgen's objections warn that its designee would limit his testimony so severely. Nevertheless, relying upon that narrow definition, Dr. Appleton would only testify as Amgen's designee that Enbrel's mechanism of action is that it "intercepts TNF," (117:5-17) and that Kineret's mechanism of action is that it "occupies space on the IL-1 receptor." (117:19-119:14). He declined to provide any other information regarding the mechanism of action of Enbrel and Kineret as Amgen's designee.

ARIAD is entitled to a knowledgeable deponent on all aspects of the mechanism of action of Enbrel and Kineret, not just those that Amgen claims are implicated by the unreasonable definition that Amgen had Dr. Appleton give at his deposition. Dr. Appleton's lack of preparation to answer questions on the most basic aspects of how Enbrel and Kineret work are best illustrated by listing some of the simple questions that Dr. Appleton declined to answer on Amgen's behalf:

Enbrel

- Is there any connection between the mechanism of action of Enbrel and NF-kB? (121:10-11.)

- What is the connection between the mechanism of action of Enbrel and its biological activity? (134:17-18.)

- Is there any connection between the mechanism of action of Enbrel and intracellular signaling? (120:10-12.)

- Does Amgen have knowledge as to whether the interception of TNF by Enbrel does or does not have an effect on intracellular signaling? (98:17-19.)

- When TNF is intercepted by Enbrel, what effect does that have on cells? (89:17-18.)

- Can the mechanism of action of a drug such as Enbrel be studied in vitro? (53:17-18.)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Laura M. Burson, Esq.
May 24, 2007
Page 3

- In vitro data about a drug's mechanism of action can be used to understand how a drug works in a patient, correct? (56:5-7.)

- Do you know whether Amgen uses a reporter gene bioassay to test the mechanism of action of Enbrel? (126:7-8.)

- Does Amgen perform tests on lots of Enbrel to confirm its biological activity? (131:3-4.)

- Is there any a connection between the mechanism of action of Enbrel and the treatment of rheumatoid arthritis? (122:7-9.)

- Does Amgen have any idea how Enbrel provides a therapeutic benefit to patients with rheumatoid arthritis? (97:6-8.)

- Does Amgen have any knowledge as to whether Enbrel causes a reduction in inflammation in patients with rheumatoid arthritis? (97:16-17.)

Kineret

- Is there any connection between the mechanism of action of Kineret and NF-kB? (121:19-20.)

- Is there any connection between the mechanism of action of Kineret and intracellular signaling? (120:23-25.)

- What is the connection between the mechanism of action of Kineret and the biological activity of Kineret? (135:2-4.)

- Do you know whether Amgen uses a reporter gene bioassay to test the mechanism of action of Kineret? (126:11-13.)

- And you aren't prepared to testify today about testing that Amgen does on Kineret to confirm its biological activity? (132:16-18.)

- When Kineret occupies space on an IL-1 receptor, does that have an effect on the cell? (91:24-25.)

- When Kineret occupies space in an IL-1 receptor, does that inhibit any intracellular signaling that would otherwise occur? (94:6-8.)

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Laura M. Burson, Esq.
May 24, 2007
Page 4

- Does Amgen have knowledge as to whether Kineret has any effect one way or the other on intracellular signaling? (99:2-4.)

- Is there a connection between the mechanism of action of Kineret and the treatment of rheumatoid arthritis? (122:16-18.)

- Does Kineret cause a reduction in inflammation when administered to patients with rheumatoid arthritis? (94:19-21.)

- Does Amgen have any idea how Kineret provides therapeutic benefit to patients with rheumatoid arthritis? (95:20-22.)

- Does Amgen have knowledge as to whether Kineret reduces inflammation in patients with rheumatoid arthritis? (98:1-3.)

These questions are just some examples demonstrating that Amgen produced a witness who was unqualified and unknowledgeable to testify as a Rule 30(b)(6) witness. Many other avenues of questioning were unavailable because of (among other things) the implausibly narrow meaning that Amgen has ascribed to the term "mechanism of action"—a definition that Amgen did not disclose to ARIAD at any time before the deposition.

We had deferred raising our disagreement with Amgen's objections to the deposition notices in the hope that Amgen would take a reasonable approach at the deposition, thereby limiting the scope of any real dispute over the desired testimony. Regrettably, that did not occur. As a result, we address Amgen's objections below.

Amgen did not agree to provide a witness for topics 7-9 and 12-15 of the First Notice. For topic 7, Amgen's refusal appears to be based on the vagueness objection to "NF-KB signaling." Amgen's position is meritless. As discussed above, Amgen claims to have a very sophisticated understanding of NF-kB signaling. Topic 7 plainly meets the standard for the description of deposition topics provided for in Rule 30(b)(6).

For topics 8-9, which relate to Amgen's contention that it does not infringe the '516 patent, Amgen asserted that the topics were premature because they seek expert testimony, ARIAD had not identified claims it contends are infringed, and the Court had not yet construed the claims. Amgen's objection based on identification of claims is moot, because ARIAD identified claims over a month ago. Amgen's other objections miss the point— ARIAD seeks information regarding contentions that Amgen has already made in the case. For topics 12-15, which relate to Amgen's knowledge and analysis of the '516 patent and steps taken to avoid infringement, Amgen's principal objection appears to be that such information is willfulness discovery that is protected by privilege or work product immunity. Even if some information within the topics may be privileged or work product, ARIAD is

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Laura M. Burson, Esq.
May 24, 2007
Page 5

entitled to testimony regarding information that is not privileged or work product. For example, any non-privileged investigation of the '516 patent or knowledge of the '516 patent by Amgen scientists is information to which that ARIAD is entitled, and Amgen's flat refusal to provide a witness on the topics is improper.

I also note that your behavior while defending yesterday's deposition was in clear violation of the rules governing how objections must be stated. As I informed you during the deposition, objections are to be "limited to the word 'Objection' and a brief identification of the ground, preferably in no more than three words." *Tuerkes-Beckers, Inc. v. New Castle Assocs.*, 158 F.R.D. 573, 575 (D. Del. 1993). You ignored the rules and spoke at length on the record in front of the witness, despite my repeated warnings. (10:8-11:21; 32:11-33:16; 35:2-36:14.) We intend to bring your conduct to the court's attention.

As I informed you when I suspended the deposition, ARIAD intends to bring Dr. Appleton's lack of preparation to the Court's attention in a motion to compel. I am writing this letter in an effort to persuade Amgen to produce a qualified and knowledgeable witness and to withdraw its objections to the deposition notices. Please let me know by the close of business on Friday, May 25, if Amgen will agree to do so.

Very truly yours,

David I. Gindler

cc:    Counsel of Record (via email)

1698065.

**Exhibit T**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, California 90017

Laura Burson
To Call Writer Directly:
213 680-8270
lburson@kirkland.com

213 680-8400

www.kirkland.com

Facsimile:
213 808-8087

May 25, 2007

**VIA EMAIL**

David Gindler, Esq.
Irell & Manella.
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No.
       06-259-MPT

Dear David:

I write in response to your letter regarding Dr. Appleton's deposition which you emailed to me after office-hours on the evening of May 24, 2007 demanding a response by the close of business the following day, May 25, 2007.

I disagree with your characterization that Dr. Appleton was not prepared to testify on the topics for which Amgen had designated him as well as your characterization of my conduct at the deposition. With respect to my conduct, I am entitled under Rule 30 to make a record as to the topics (*which I identified by number*) on which the witness is being offered. Moreover, I put my statements on the record before any substantive questioning had begun and did not make them while a question was pending. It was no surprise to Dr. Appleton that Amgen had designated him to testify as a Rule 30(b)(6) witness on certain topics. As such, my statements clearly could not have coached the witness.

**On the other hand, your conduct was quite startling and unprofessional.** One can only assume that you behaved as you did to bully the witness and to manufacture a basis for suspending the deposition. Not only did you spend hours harassing and badgering Dr. Appleton --a fact witness--with a series of technical, expert questions outside the scope of the deposition, you also spent the majority of your time questioning Dr. Appleton about two legal documents also outside the scope of the deposition--Ariad's First and Fifth Deposition Notices. You even declined to use my copy of Amgen's Objections to Ariad's First and Fifth Deposition Notices which clearly set forth the scope of the deposition and the parameters of what was to be Dr. Appleton's testimony. If you had believed that you were entitled to obtain testimony beyond the

Chicago        London        Munich        New York        San Francisco        Washington, D.C.

K&E 11808125.

# KIRKLAND & ELLIS LLP

May 25, 2007
Page 2

parameters set forth in Amgen's Objections, you should have sought relief from the court *before* the deposition, instead of trying to bully Dr. Appleton into addressing Ariad's noticed topics and then later claiming that Dr. Appleton was ill-prepared.

You also failed to ask Dr. Appleton any fact questions regarding the mechanism of action of Enbrel or Kineret--the very topic on which Dr. Appleton was designated--in connection with Amgen documents produced in this case.  Instead, without asking any substantive, fact questions about mechanism of action, you spent only a few minutes on <u>one</u> Amgen regulatory document which appeared to be an incomplete compilation.

Furthermore, your constant attempts to shout over me when I was making a record can only be understood as blatant attempts to intimidate and conduct clearly in violation of both local and federal deposition practice.

Amgen considers Dr. Appleton's Rule 30(b)(6) deposition closed.  The fact that you squandered your time on matters beyond the scope of the deposition does not create a basis for suspending the deposition; nor does it create a basis for a second bite at the apple.  Should you attempt to bring a motion to compel further testimony on the subjects for which Dr. Appleton was offered, Amgen will bring your misconduct to the court's attention.

Very truly yours,

*/s/ Laura M. Burson*

Laura M. Burson

**Exhibit U**

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7106
FACSIMILE (310) 556-5206
dgindler@irell.com

May 29, 2007

**VIA E-MAIL**

Laura M. Burson, Esq.
Kirkland & Ellis LLP
777 South Figueroa St.
Los Angeles, CA 90017

    Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals., Inc. et al.*

Dear Laura:

    I have received your letter dated March 25, 2007, regarding the deposition of Amgen's Rule 30(b)(6) designee, Dr. Brent Appleton.

    There is a written transcript of the deposition, as well as an audio and video recording of the deposition. Your self-serving description of the proceedings is belied by these official recordings of the proceedings.

    While I found much of your letter to contain the posturing that so often goes on when a litigant is trying to defend discovery misconduct that is simply indefensible, I was taken aback by your suggestion that I attempted to "shout over" you at the deposition. You and I both know that no one engaged in any shouting at the deposition. In any event, it doesn't really matter what your letter says. There is an audio and video recording of the deposition.

    As we will be bringing Amgen's failure to provide an adequately prepared witness to the Court for resolution, the Court will have the opportunity to review the deposition transcript and make its own decision on the issues.

    Very truly yours,

David I. Gindler

cc:    Counsel of Record (via email)

1700538.

# Exhibit V

# REDACTED

# Exhibit W

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation;⠀⠀⠀)
IMMUNEX CORPORATION, a Washington⠀)
corporation; AMGEN USA INC., a Delaware⠀)
Corporation; AMGEN MANUFACTURING,⠀)
LIMITED, a Bermuda Corporation, and⠀⠀⠀)
IMMUNEX RHODE ISLAND⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil Action No. 06-259-MPT
CORPORATION, a Delaware corporation,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ARIAD PHARMACEUTICALS, INC., a⠀⠀)
Delaware corporation,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

## THE AMGEN ENTITIES' OBJECTIONS TO DEFENDANT'S FIRST NOTICE OF DEPOSITION OF PLAINTIFFS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

Pursuant to Federal Rule of Civil Procedure 30, plaintiffs Amgen, Inc. ("Amgen"); Immunex Corporation ("Immunex"); Amgen USA, Inc. ("Amgen USA"); Amgen Manufacturing, Limited ("Amgen Mfg."); and Immunex Rhode Island Corporation ("Immunex R.I.") (collectively the "Amgen Entities") hereby object and respond to defendant ARIAD Pharmaceuticals, Inc.'s ("ARIAD's") First Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("ARIAD's First 30(b)(6) Notice").

The Amgen Entities responses are at all times subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, is subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by the Amgen Entities or their attorneys. If additional or new information

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀

becomes available, the Amgen Entities may supplement any responses they provide at the deposition.

The following objections provide the bases upon which the Amgen Entities find ARIAD's First 30(b)(6) Notice objectionable on its face. The Amgen Entities do not waive or forego any rights they have to make further objections at the deposition itself.

## GENERAL OBJECTIONS

1.    The Amgen Entities object to ARIAD's First 30(b)(6) Notice to the extent it attempts to impose obligations on the Amgen Entities beyond those required by the Federal Rules of Civil Procedure, the Civil Local Rules of the District of Delaware, the Scheduling Order in this case, or any other applicable law. The Amgen Entities will provide discovery in accordance with their obligations under the Federal Rules of Civil Procedure, the Local Rules, and the applicable case law.

2.    The Amgen Entities object to location of the deposition as identified in ARIAD's First 30(b)(6) Notice of deposition. Any witness identified and provided in response to this notice will be at Amgen's Headquarters, One Amgen Center Drive, Thousand Oaks, California 91320.

3.    The Amgen Entities object to ARIAD's First 30(b)(6) Notice to the extent it is not sufficiently limited or reasonably calculated to lead to the discovery of admissible evidence and the topics are overly broad and unduly burdensome.

4.    The Amgen Entities object to ARIAD's First 30(b)(6) Notice to the extent it requests information already in ARIAD's possession or information which is equally available to ARIAD from other sources.

5.    The Amgen Entities object to ARIAD's First 30(b)(6) Notice to the extent it seeks information protected by the attorney-client privilege and/or attorney work product immunity.

2

The foregoing General Objections shall be deemed continuous throughout the objections to the specific areas of testimony that were listed in Attachment A of ARIAD's First 30(b)(6) Notice, even though not specifically referred to in such.

## AREA OF TESTIMONY NO. 1:

The mechanisms of action of ENBREL, including but not limited to ENBREL's intracellular and extracellular interaction with NF-KB signaling.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of the mechanism of action of Enbrel®.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Enbrel®.

## AREA OF TESTIMONY NO. 2:

The mechanisms of action of KINERET, including but not limited to KINERET'S intracellular and extracellular interaction with NF-KB signaling.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of the mechanism of action of Kineret®.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Kineret®.

3

## AREA OF TESTIMONY NO. 3:

Research and testing relating to ENBREL's mechanism of action, including but not limited to ENBREL's intracellular and extracellular interaction with NF-KB signaling.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of research and testing relating to Enbrel's® mechanism of action.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on research and testing relating to Enbrel's® mechanism of action.

## AREA OF TESTIMONY NO. 4:

Research and testing relating to KINERET's mechanism of action, including but not limited to KINERET's intracellular and extracellular interaction with NF-KB signaling.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of research and testing relating to Kineret's® mechanism of action.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on research and testing relating to Kineret's® mechanism of action.

DB02:5888497.1                                                                                        065028.1001

**AREA OF TESTIMONY NO. 5:**

AMGEN's communications with ARIAD or with third parties regarding ENBREL's mechanism of action or its interaction with NF-KB signaling.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of the Amgen Entities' communications with ARIAD or with third parties regarding Enbrel's® mechanism of action.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the Amgen Entities' communications, if any, with ARIAD or with third parties regarding Enbrel's® mechanism of action.

**AREA OF TESTIMONY NO. 6:**

AMGEN's communications with ARIAD or with third parties regarding KINERET's mechanism of action or its interaction with NF-KB signaling.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." To the extent understood, the Amgen Entities object to this topic as overly broad and unduly burdensome to the extent the topic seeks expert testimony about hypothetical situations that is outside of the Amgen Entities' communications with ARIAD or with third parties regarding Kineret's® mechanism of action.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the Amgen Entities' communications, if any, with ARIAD or with third parties regarding Kineret's® mechanism of action.

**AREA OF TESTIMONY NO. 7:**

AMGEN's communications with ARIAD or with third parties regarding NF-KB signaling.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as vague and ambiguous as to the phrase "NF-KB signaling." The Amgen Entities further object to this topic as overly broad and unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The Amgen Entities also object to this request to the extent the topic seeks expert testimony about hypothetical situations.

**AREA OF TESTIMONY NO. 8:**

AMGEN's contention that it does not directly or indirectly infringe any claim of the '516 PATENT through any activities relating to ENBREL.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as calling for information that is covered by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities further object to this deposition topic as premature 1) to the extent it seeks expert discovery, 2) because Ariad has not identified any claims of the '516 patent it contends are infringed by activities relating to Enbrel®, and 3) because the Court has not yet construed the claims of the '516 patent.

**AREA OF TESTIMONY NO. 9:**

AMGEN's contention that it does not directly or indirectly infringe any claim of the '516 PATENT through any activities relating to KINERET.

6

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as calling for information that is covered by the attorney-client privilege or attorney work product immunity. The Amgen Entities further object to this deposition topic as premature 1) to the extent it seeks expert discovery, 2) because Ariad has not identified any claims of the '516 patent it contends are infringed by activities relating to Kineret®, and 3) because the Court has not yet construed the claims of the '516 patent.

**AREA OF TESTIMONY NO. 10:**

The patents (and claims thereof) that cover ENBREL, its formulation, or its mechanism of action.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, and seeking information not likely to lead to the discovery of admissible evidence. The Amgen Entities further object to this deposition topic as cumulative, vague, seeking a legal conclusion, and prematurely seeking expert discovery.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the formulation and mechanism of action of Enbrel®.

**AREA OF TESTIMONY NO. 11:**

The patents (and claims thereof) that cover KINERET, its formulation, or its mechanism of action.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, and seeking information not likely to lead to the discovery of admissible evidence.

7

The Amgen Entities further object to this deposition topic as cumulative, vague, seeking a legal conclusion, and prematurely seeking expert discovery.

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the formulation and mechanism of action of Kineret®.

## AREA OF TESTIMONY NO. 12:

The facts and circumstances relating to YOUR pre-suit knowledge of the '516 PATENT, including but not limited to the date on which YOU became aware of the '516 PATENT and the specific circumstances of how YOU became aware of it.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, premature, and seeking information not likely to lead to the discovery of admissible evidence. The Amgen Entities further object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity.

## AREA OF TESTIMONY NO. 13:

Any steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with ENBREL.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, premature, and seeking information not likely to lead to the discovery of admissible evidence. The Amgen Entities further object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity.

## AREA OF TESTIMONY NO. 14:

Any steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516 PATENT with respect to its activities in connection with KINERET.

DB02:5888497.1                                                                            065028.1001

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, premature, and seeking information not likely to lead to the discovery of admissible evidence. The Amgen Entities further object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity.

**AREA OF TESTIMONY NO. 15:**

Any test, study, analysis, opinion, or investigation of the '516 PATENT, including the specific circumstances and results of each such activity, undertaken by or on behalf of AMGEN.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as overbroad and unduly burdensome, premature, and seeking information not likely to lead to the discovery of admissible evidence. The Amgen Entities further object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity.

**AREA OF TESTIMONY NO. 16:**

The nature, existence and location of all DOCUMENTS relating to the subject matter of each of the foregoing categories.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as premature and cumulative because the Amgen Entities are in the process of producing documents properly subject to discovery in this suit, subject to their objection to ARIAD's First Set of Requests for Production of Documents.

Subject to these General and Specific objections, the Amgen Entities will produce a 30(b)(6) witness in response to ARIAD's Third Notice of Deposition of Plaintiffs Pursuant to

9

Federal Rule of Civil Procedure 30(b)(6), subject to the objections set forth in the Amgen Entities' objections to such notice.


Date: April 5, 2007                    YOUNG CONAWAY STARGATT & TAYLOR, LLP


                                       Melanie K. Sharp (No. 2501)
                                       The Brandywine Building
                                       1000 West Street, 17th Floor
                                       Wilmington, Delaware  19801

                                       P.O. Box 391
                                       Wilmington, Delaware  19899-0391
                                       (302) 571-6681
                                       msharp@ycst.com

                                       KIRKLAND & ELLIS LLP
                                       Mark A. Pals, P.C.
                                       Marcus E. Sernel
                                       200 East Randolph Drive
                                       Chicago, IL 60601-6636
                                       (312) 861-2000

                                       Robert G. Krupka, P.C.
                                       Drew Diamond
                                       777 Figueroa Street
                                       Los Angeles, CA 90017-5800
                                       (213) 680-8400

                                       *Attorneys for Plaintiffs Amgen, Inc., Immunex*
                                       *Corporation, Amgen USA Inc., Amgen Manufacturing,*
                                       *Limited, and Immunex Rhode Island Corporation.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on April 4, 2007 I caused to be electronically filed a true and correct copy of The Amgen Entities' Objections to Defendant's First Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> John G. Day
> Steven J. Balick
> Tiffany Geyer Lydon
> Ashby & Geddes
> 500 Delaware Avenue, 8th Floor
> Wilmington, DE 19801

I further certify that on April 4, 2007 I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

> **BY E-MAIL (by agreement of counsel)**
> Morgan Chu (mchu@irell.com)
> David I. Gindler (dgindler@irell.com)
> Amir A. Naini (anaini@irell.com)
> Christopher M. Newman (cnewman@irell.com)
> Elizabeth L. Rosenblatt (brosenblatt@irell.com)
> Irell & Manella LLP
> 1800 Avenue of the Stars, Suite 900
> Los Angeles, CA 90067-4276

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

# Exhibit X

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AMGEN, INC., a Delaware corporation; IMMUNEX )
CORPORATION, a Washington corporation; )
AMGEN USA, INC., a Delaware corporation; )
AMGEN MANUFACTURING, LIMITED, a )
Bermuda Corporation; and IMMUNEX RHODE )
ISLAND CORPORATION, a Delaware corporation, )
)
        Plaintiffs, )
)
v. )
)
ARIAD PHARMACEUTICALS, INC., a Delaware )
corporation; HARVARD UNIVERSITY, a )
Massachusetts corporation; MASSACHUSETTS )
INSTITUTE OF TECHNOLOGY, a Massachusetts )
corporation; and THE WHITEHEAD INSTITUTE )
FOR BIOMEDICAL RESEARCH, a Delaware )
corporation, )
)
        Defendants, )
                             )    Civil Action No. 06-259-MPT
                             )
ARIAD PHARMACEUTICALS, INC., a Delaware )
corporation; HARVARD UNIVERSITY, a )
Massachusetts corporation; MASSACHUSETTS )
INSTITUTE OF TECHNOLOGY, a Massachusetts )
corporation; and THE WHITEHEAD INSTITUTE )
FOR BIOMEDICAL RESEARCH, a Delaware )
corporation, )
)
        Counterclaim-Plaintiffs, )
)
v. )
)
AMGEN, INC., a Delaware corporation; IMMUNEX )
CORPORATION, a Washington corporation; )
AMGEN USA, INC., a Delaware corporation; )
AMGEN MANUFACTURING, LIMITED, a )
Bermuda Corporation; IMMUNEX RHODE )
ISLAND CORPORATION, a Delaware corporation; )
and WYETH, a Delaware corporation, )
)
        Counterclaim-Defendants. )
)

                                                    

## THE AMGEN ENTITIES' OBJECTIONS TO ARIAD'S
## FIFTH NOTICE OF DEPOSITION OF PLAINTIFFS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

Pursuant to Federal Rule of Civil Procedure 30, plaintiffs/counterclaim-defendants Amgen, Inc. ("Amgen"); Immunex Corporation ("Immunex"); Amgen USA, Inc. ("Amgen USA"); Amgen Manufacturing, Limited ("Amgen Mfg."); and Immunex Rhode Island Corporation ("Immunex R.I.") (collectively the "Amgen Entities") hereby object and respond to defendant/counterclaim-plaintiff ARIAD Pharmaceuticals, Inc.'s ("ARIAD's") Fifth Notice of Deposition of Plaintiffs Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("ARIAD's Fifth 30(b)(6) Notice").

The Amgen Entities responses are at all times subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, is subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by the Amgen Entities or their attorneys. If additional or new information becomes available, the Amgen Entities may supplement any responses they provide at the deposition.

The following objections provide the bases upon which the Amgen Entities find ARIAD's Fifth 30(b)(6) Notice objectionable on its face. The Amgen Entities do not waive or forego any rights they have to make further objections at the deposition itself.

### GENERAL OBJECTIONS

1.      The Amgen Entities object to ARIAD's Fifth 30(b)(6) Notice to the extent it attempts to impose obligations on the Amgen Entities beyond those required by the Federal Rules of Civil Procedure, the Civil Local Rules of the District of Delaware, the Scheduling Order in this case, or any other applicable law. The Amgen Entities will provide discovery in

accordance with their obligations under the Federal Rules of Civil Procedure, the Local Rules, and the applicable case law.

2.      The Amgen Entities object to ARIAD's Fifth 30(b)(6) Notice to the extent it is overbroad, unduly burdensome and/or not sufficiently limited or reasonably calculated to lead to the discovery of admissible evidence.

3.      The Amgen Entities object to ARIAD's Fifth 30(b)(6) Notice to the extent it requests information already in ARIAD's possession or information which is equally available to ARIAD from other sources.

4.      The Amgen Entities object to ARIAD's Fifth 30(b)(6) Notice to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.  For instance, the topics in the present notice relate generally to ARIAD's claims of willful infringement which were only recently added to this case.  As such, the Court did not have an opportunity to address a schedule for Amgen to state whether it intends to rely on advice of counsel, and if so, produce documents accordingly.  Until the Court orders, or the parties agree to, a schedule for issues relating to any advice of counsel defense, the present notice for depostion is premature.

The foregoing General Objections shall be deemed continuous throughout the objections to the specific areas of testimony that were listed in Attachment A of ARIAD's Fifth 30(b)(6) Notice, even though not specifically referred to in such.

## AREA OF TESTIMONY NO. 1:

AMGEN's communications with ARIAD relating to the '516 PATENT or the '516 PATENT FAMILY.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 2:**

AMGEN's pre-suit knowledge of the '516 PATENT.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 3:**

The date on which AMGEN first became aware of the '516 patent and the specific circumstances of how AMGEN became aware of the '516 PATENT.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend

to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by

the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's

allegations of willful infringement and an appropriate time frame for related discovery. Once the

parties agree to or the Court orders an appropriate schedule to address any advice of counsel

defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 4:**

All steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516

PATENT with respect to its activities in connection with ENBREL.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by

the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend

to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by

the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's

allegations of willful infringement and an appropriate time frame for related discovery. Once the

parties agree to or the Court orders an appropriate schedule to address any advice of counsel

defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 5:**

All steps taken by AMGEN to ensure that AMGEN avoided infringement of the '516

PATENT with respect to its activities in connection with KINERET.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by

the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend

to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by

the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's

allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

## AREA OF TESTIMONY NO. 6:

All steps taken by AMGEN to assure that it was acting with due care in connection with ARIAD's rights with respect to the '516 PATENT.

## RESPONSE:

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

## AREA OF TESTIMONY NO. 7:

Any test, study, analysis, opinion or investigation of the '516 PATENT, including the specific circumstances and results of each such activity, undertaken by or on behalf of AMGEN.

## RESPONSE:

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the

parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 8:**

Any attempts undertaken by or on behalf of AMGEN to evaluate, analyze, test, operate, [sic] study the subject matter of the '516 PATENT.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 9:**

AMGEN's reliance on any opinion of counsel in connection with the '516 patent and ENBREL or KINERET, including any such opinions relied upon with respect to freedom to operate, validity of the '516 patent, and/or infringement of the '516 PATENT.

**RESPONSE:**

The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the

parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

**AREA OF TESTIMONY NO. 10:**

Testing of ENBREL in the United States relating to the mechanism of action of ENBREL in relation to NF-KB, including the identity and location of those who performed and analyzed such testing and the dates of such testing.

**RESPONSE:**

The Amgen Entities object to this request to the extent that it lacks foundation. The Amgen Entities further object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

Subject to these General and Specific objections, the Amgen Entities will designate a 30(b)(6) witness to testify on any testing of Enbrel® by the Amgen Entities in the United States relating to the mechanism of action of Enbrel®, including the reasonable identification and location of those who performed and analyzed such testing and the dates of such testing.

**AREA OF TESTIMONY NO. 11:**

Testing of KINERET in the United States relating to the mechanism of action of KINERET in relation to NF-KB, including the identity and location of those who performed and analyzed such testing and the dates of such testing.

**RESPONSE:**

The Amgen Entities object to this request to the extent that it lacks foundation. The Amgen Entities specifically object to this topic as seeking information protected by the attorney-client privilege and/or attorney work product immunity. The Amgen Entities intend to work with ARIAD to come to an agreement as to the appropriate time frame for a decision by the Amgen Entities as to whether they intend to rely on the advice of counsel to rebut ARIAD's allegations of willful infringement and an appropriate time frame for related discovery. Once the parties agree to or the Court orders an appropriate schedule to address any advice of counsel defense, the Amgen Entities may supplement this response.

Subject to these General and Specific objections, the Amgen Entities will designate a 30(b)(6) witness to testify on any testing of Kineret® by the Amgen Entities in the United States relating to the mechanism of action of Kineret®, including the reasonable identification and location of those who performed and analyzed such testing and the dates of such testing.

**AREA OF TESTIMONY NO. 12:**

The identity and location of witnesses knowledgeable about the categories set forth in Topics 1 to 12 above.

**RESPONSE:**

The Amgen Entities specifically object to this deposition topic as cumulative, overly broad and unduly burdensome to the extent the topic seeks testimony about the identity of persons with knowledge that could include hundreds of individuals and/or that has already been disclosed in the Amgen Entities' Initial Disclosures under Federal Rule of Civil Procedure 26(a)(2).

Subject to these General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the reasonable identification and location of witnesses knowledgeable about the categories set forth in Topics 10 and 11 above.

## AREA OF TESTIMONY NO. 13:

The nature, existence, and location of all DOCUMENTS relating to Topics 1 to 12 above.

## RESPONSE:

The Amgen Entities specifically object to this deposition topic as overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence to the extent that it requests the identification and location of "all DOCUMENTS." The Amgen Entities also object to this topic as cumulative and seeking information already in ARIAD's possession, custody or control because the Amgen Entities have already produced documents properly subject to discovery in this suit, or to the extent such documents relate to the advice of counsel, such documents will be produced in accordance with either a Court order or agreement of the parties.

To the extent that ARIAD provides specific identification of "all DOCUMENTS", the Amgen Entities may supplement this response.

Date: May 18, 2007

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex
Corporation, Amgen USA Inc., Amgen
Manufacturing, Limited, and Immunex Rhode
Island Corporation.*

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 18, 2007, I caused a copy of

The Amgen Entities' Objections to ARIAD's Fifth Notice of Deposition of Plaintiffs Pursuant to

Federal Rule of Civil Procedure 30(b)(6) to be served on the following counsel of record in the

manner indicated below:

### BY HAND DELIVERY & E-MAIL

John G. Day                              Frederick L. Cottrell, III
Steven J. Balick                         Anne Shea Gaza
Tiffany Geyer Lydon                      Richards Layton & Finger, P.A.
Ashby & Geddes                           One Rodney Square
500 Delaware Avenue, 8th Floor           920 North King Street
Wilmington, DE 19801                     Wilmington, DE 19801

### BY E-MAIL (by agreement of counsel)

Morgan Chu (mchu@irell.com)
David I. Gindler (dgindler@irell.com)
Amir A. Naini (anaini@irell.com)
Christopher M. Newman (cnewman@irell.com)
Elizabeth L. Rosenblatt (brosenblatt@irell.com)
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Melanie K. Sharp (No. 2501)