IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, | ) ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) | C.A. No. 06-259-MPT |
| v. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | ) ) ) ) | |
| Defendants. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | ) ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH, | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**COUNTERCLAIM-PLAINTIFFS' OPENING MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AMENDED
COUNTERCLAIMS ASSERTING ADDITIONAL CLAIMS**

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Dated: May 30, 2007
181067.1

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for Defendants/Counterclaim
Plaintiffs*

TABLE OF CONTENTS

Page

I.  NATURE AND STAGE OF THE PROCEEDINGS ............................................ 1

II.  SUMMARY OF ARGUMENTS .......................................................................... 2

III.  BACKGROUND ................................................................................................. 3

IV.  ARGUMENT ....................................................................................................... 7

    A.  Under Rules 13(f) And 15(a) Of The Federal Rules Of Civil Procedure, Leave To Amend Shall Be Freely Given, Particularly When New Information Is Learned In Discovery ................................................................................... 7

    B.  There Is No Evidence Of Bad Faith Or Undue Delay ............................ 9

    C.  The Proposed Amendment Will Not Result In Undue Prejudice ......................................................................................... 12

    D.  The Proposed Amendment Is In The Interests Of Justice ....................... 14

V.  CONCLUSION .................................................................................................. 16

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gould, Inc.,*
739 F.2d 858 (3d Cir. 1984)......................................................................... passim

*Arthur v. Maersk, Inc.,*
434 F.3d 196 (3d Cir. 2006).......................................................... 10, 11, 14

*Barkauskie v. Indian River Sch. Dist.,*
951 F. Supp. 519 (D. Del. 1996)....................................................... 14

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,*
295 F. Supp. 2d 430 (D. Del. 2003)...................................................... 9

*CC Investors Corp. v. Raytheon Co.,*
2005 WL 81591 (D. Del. Jan. 7, 2005)................................................. 8

*CenterForce Techs., Inc. v. Austin Logistics Inc.,*
55 U.S.P.Q.2d 1124 (D. Del. 2000) ............................................. passim

*Coventry v. U.S. Steel Corp.,*
856 F.2d 514 (3d Cir. 1988)............................................................. 11

*Digimarc Corp. v. Signum Techs. Ltd.,*
2001 WL 34043751 (D. Or. May 23, 2001) ....................................... 11

*Dole v. Arco Chem. Co.,*
921 F.2d 484 (3d Cir. 1990)............................................................. 14

*Foman v. Davis,*
371 U.S. 178 (1962)................................................................ 2, 7, 13

*Howze v. Jones & Laughlin Steel Corp.,*
750 F.2d 1208 (3d Cir. 1984)........................................................... 11

*Micron Tech., Inc. v. Rambus, Inc.,*
409 F. Supp. 2d 552 (D. Del. 2006)....................................... 13, 14, 15

*Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.,*
758 F. Supp. 1080 (W.D. Pa. 1991)................................................ 8, 11

*Reynolds v. Borough of Avalon,*
799 F. Supp. 442 (D.N.J. 1992) ......................................................... 9

*Spartan Grain & Mill Co. v. Ayers,*
517 F.2d 214 (5th Cir. 1975) ........................................................... 11

*Trueposition, Inc. v. Allen Telecom, Inc.,*
2002 WL 1558531 (D. Del. July 16, 2002) ................................ 8, 13, 15

Page(s)

**Statutes**

L.R. 15.1 ................................................................................................................. 2

Fed. R. Civ. P. 16(b) ............................................................................................... 9

Fed. R. Civ. P. 15(a) ....................................................................................... 2, 7, 8, 9

Fed. R. Civ. P. 13(f) .......................................................................................... 2, 7, 8

28 U.S.C. § 1292(b) ................................................................................................ 5

29 U.S.C. § 626 ..................................................................................................... 11

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This lawsuit currently involves claims and counterclaims regarding whether the drugs Enbrel® and Kineret® infringe U.S. Patent No. 6,410,516 (the "'516 patent") and whether the '516 patent is valid and enforceable.

<strong>REDACTED</strong>

ᴵ·   To allow for the efficient litigation of these claims, Counterclaim-Plaintiffs ARIAD Pharmaceuticals, The Whitehead Institute for Biomedical Research ("Whitehead"), Massachusetts Institutes of Technology ("MIT"), and the Presidents and Fellows of Harvard College ("Harvard") respectfully seek leave to file amended counterclaims in this litigation to assert claims for infringement of U.S. Patent Nos. 5,804,374 (the "'374 patent") and 6,150,090 ("'090 patent").

The '516 patent, generally speaking, addresses methods of modulating NF-kB activity to inhibit expression of genes. The '374 and '090 patents, which are in the same patent family as the '516 patent, address methods of identifying agents or compounds that modulate NF-kB activity. The three patents have the same inventors, claim priority to the same series of patent applications, have substantially the same specifications, and have many of the same claim terms. Accordingly, there is substantial overlap between the evidence that will be used to prove infringement of the '516 patent and the evidence that will prove infringement of the '374 and '090 patents. Litigating these patents in one proceeding will conserve judicial resources, prevent inconsistent rulings or constructions of the patents, and conserve the resources of the parties and witnesses.

ARIAD and the Institutions (Whitehead, MIT and Harvard) are mindful that this Court set April 13, 2007, as a deadline to amend pleadings. The information referenced above regarding Amgen's infringement of the '374 and '090 patents was found in a very small set of documents included in the more than 500,000 pages of documents that Amgen produced on April 10, 2007, just three days before that deadline. The documents

were only recently identified in connection with ARIAD's review of Amgen's massive document production. Given that trial is not imminent and that ARIAD and the Institutions only recently learned of this information, the liberal policies of amendment embodied in Rules 13(f) and 15(a) of the Federal Rules of Civil Procedure strongly favor allowing ARIAD leave to amend such that the newly discovered claims on the related '374 and '090 patents may be litigated efficiently in this case.

## II.    SUMMARY OF ARGUMENTS

1.    ARIAD and the Institutions seek leave to file an Answer to Amended Complaint, Amended Counterclaim and Demand for Jury Trial[1] (the "Answer and Amended Counterclaim"). The only difference from the previous pleading is the inclusion of two additional counterclaims against Amgen Inc. for infringement of the '374 and '090 patents.

2.    Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires." Similarly, Rule 13(f) of the Federal Rules of Civil Procedure specifically allows a pleader to include omitted counterclaims "when justice requires."

3.    Well-established precedent favors the liberal allowance of amendments to pleadings in the absence of undue delay, bad faith on the part of the party seeking amendment, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). These factors are not present here.

4.    ARIAD and the Institutions have not unduly delayed in seeking leave to add these counterclaims. Indeed, the evidence on which ARIAD and the Institutions base the additional counterclaims was recently discovered in Amgen's first production of

---

[1] Pursuant to L.R. 15.1, two copies of the proposed Answer and Amended Counterclaim, and a copy of the proposed Answer and Amended Counterclaim indicating in what respect it differs from the pleading which it amends, are attached to the Motion for Leave, which is being filed concurrently.

documents, made on April 10, 2007. As soon as this information was learned, ARIAD and the Institutions promptly asked Amgen if it would stipulate to the amendment. When Amgen refused, ARIAD and the Institutions immediately brought this motion seeking leave to amend.

5.    Allowing the amendment to assert these claims at this time will not result in undue prejudice. The '374 and '090 patents are in the same patent family as the '516 patent already in suit; they involve the same area of technology, have the same named inventors, have substantially the same specifications, and share many of the same claim terms. Given this overlap, the parties and the Court would benefit from the efficient resolution of all infringement and damages issues relating to the use of this technology in a single proceeding. Moreover, the parties are in the midst of addressing with the Court matters relating to adjusting the overall case schedule to accommodate the current procedural posture of the case; the recent addition of four new parties to the case, including a new counterclaim-defendant, Wyeth; and the state of extensive discovery that is underway; among other matters.

6.    ARIAD and the Institutions have not sought leave to amend in bad faith or with dilatory motive. The alleged infringement was only recently discovered and the additional claims can be litigated under the same revised schedule that ARIAD and the Institutions proposed before this information came to light.

## III.    BACKGROUND

This action was initiated in April 2006, though substantive litigation did not commence in earnest until February 2007. As a result, the case is in the early stages of the proceedings, as well as discovery on the merits. Indeed, one party, counterclaim-defendant Wyeth, will be filing its first responsive pleading on June 5, 2007, after this motion has been filed with the Court.

The case began on April 20, 2006, when Amgen sued ARIAD, seeking a declaration that Amgen's activities with respect to the drugs Enbrel and Kineret do not

infringe the '516 patent and that the '516 patent is invalid. (D.I. 1.) It was ARIAD's position, however, that there was not a justiciable controversy with Amgen. ARIAD had not threatened Amgen with suit, and preferred to devote its limited resources to developing beneficial pharmaceutical products rather than analyzing infringement and litigating a patent suit against Amgen. As a result, on June 14, 2006, ARIAD moved for dismissal of the complaint on the grounds that, among other things, the district court lacked subject matter jurisdiction. (D.I. 13.)

On July 7, 2006, while ARIAD's motion to dismiss was pending and before a scheduling order had issued, Amgen attempted to begin discovery, serving its first sets of interrogatories and requests for production. (D.I. 27, 28.) Hoping to avoid wasting extensive resources on litigation over which it believed that the Court lacked jurisdiction, on August 7, 2006, ARIAD filed a motion to stay discovery pending adjudication of its motion to dismiss. (D.I. 46.) On August 18, 2006, the Court granted ARIAD's request and stayed discovery pending the hearing on ARIAD's motion to dismiss. (D.I. 61.)

ARIAD's motion to dismiss was heard on September 11, 2006. (D.I. 68.) The Court found that there was subject matter jurisdiction, and on September 13, 2006, the Court issued an order denying the motion. (D.I. 69.) The Court, however, emphasized that its order was without prejudice to the question of whether additional facts would warrant the dismissal of the case on the grounds that Amgen failed to join indispensable parties, namely the Institutions who are the assignees of the '516 patent. (D.I. 69.) Moreover, because the issues raised on the motion to dismiss involved difficult questions of declaratory judgment jurisdiction worthy of immediate appellate review, on September 25, 2006, ARIAD moved to certify the order denying its motion to dismiss for an interlocutory appeal to the Federal Circuit. (D.I. 73.)

On October 5, 2006, ARIAD brought a renewed motion to dismiss for failure to name indispensable parties. (D.I. 83.) Amgen opposed the motion, and the motion remained pending as a result of other matters before the Court. On November 3, 2006,

then-District Judge Jordan agreed that the jurisdictional issues presented on ARIAD's original motion to dismiss were worthy of certification for appellate review and granted ARIAD's motion for certification under 28 U.S.C. § 1292(b). (D.I. 104.). Because there was ample justification for the parties not to conduct active litigation while the jurisdictional issues were being decided, the Court issued another interim stay of discovery at the hearing pending full briefing on the question of whether a stay of all proceedings should issue.  (D.I. 104.)    Although Judge Jordan indicated at the November 3 hearing that he likely would grant the motion to stay all proceedings (Gindler Decl. Ex. J at 35:17–19), Judge Jordan ultimately did not decide this question, as he was elevated to sit as a Circuit Judge for the United States Court of Appeals for the Third Circuit.  This case was then referred to this Court.  On December 21, 2006, this Court issued an order staying the entire proceedings pending the outcome of the interlocutory appeal.  (D.I. 120.)

The Federal Circuit ultimately declined to accept ARIAD's petition for interlocutory appeal. (D.I. 123.) Shortly after learning that its petition had been denied, on January 9, 2006, ARIAD informed the Court by letter that it intended to file a motion extending the stay until reexamination of the '516 patent by the PTO was complete. (D.I. 125.) Shortly thereafter, ARIAD filed its motion for a stay pending the reexamination proceeding.  (D.I. 130.) On February 6, 2007, the Court denied ARIAD's motion for a stay pending reexamination. (D.I. 143.)

At that time, although ARIAD still had a renewed motion to dismiss pending on the indispensable party issues (D.I. 146), it was clear that a new scheduling order was required.  Accordingly, in mid-February 2007, the parties submitted revised scheduling proposals to the Court and on February 20, 2007, the Court issued an Amended Scheduling Order. (D.I. 144, 150.) Among other things, the Amended Scheduling Order set April 13, 2007 as the deadline for joinder of parties and amendment of the pleadings, and June 13, 2007 as the fact discovery cutoff. (D.I. 150.)

ARIAD also immediately commenced discovery. On February 22, 2007, ARIAD served its first set of interrogatories and first set of requests for production of documents. (D.I. 148, 149.) Shortly thereafter, it began serving deposition notices. (*See, e.g.,* D.I. 151, 152, 154). Amgen produced documents to ARIAD on April 10, 2007, three days before the current deadline to amend pleadings. (Gindler Decl. Ex C.) Amgen's April 10 production consisted of more than 500,000 pages. (Gindler Decl. Ex. C.)

On April 13, 2007, pursuant to the Court's March 27, 2007 order on ARIAD's renewed motion to dismiss, Amgen filed an amended complaint adding Whitehead as a defendant. (D.I. 183.) The next day, ARIAD and Whitehead, along with two new parties to the case—MIT and Harvard—filed an answer to the amended complaint, which included a counterclaim alleging infringement of the '516 patent against Amgen. ARIAD also named as a counterclaim-defendant Wyeth, an important participant in the development and marketing of Enbrel. (D.I. 185.) As a result of this activity, in the last few weeks, four new parties on both sides of the case were added to the proceedings and new affirmative claims of infringement on the '516 patent were added. Discovery as to the new parties has just commenced, and Wyeth is scheduled to answer ARIAD's current counterclaims on June 5, 2007 – after this motion is on file. (D.I. 282.)

Because it is apparent that adjustments to the overall case schedule are appropriate in light of the addition of new parties and other factors, the parties have met and conferred about modifications to the case schedule. ARIAD and the Institutions proposed an adjustment to the schedule that would modify interim pretrial dates to accommodate the new parties, allow for additional time to complete discovery and expert reports, yet only lengthen the overall case schedule by approximately 120 days. (Gindler Decl. Ex. D.) Amgen has not agreed to ARIAD's proposed revision, and Wyeth has thus far declined to express its position on the subject. (Gindler Decl. Ex. E.). Matters relating to the case schedule are currently pending for hearing before the Court on June 4, 2007. (D.I. 255.)

This motion relates to new information revealed in discovery. Very recently, and in the course of reviewing Amgen's document production, ARIAD discovered information regarding Amgen's infringement of the '374 patent and '090 patent. (Gindler Decl. ¶ 4.) These patents, which are in the same family as the '516 patent, are generally directed at assays, including reporter gene assays, for identifying agents and compounds that modulate NF-kB activity. (Gindler Decl. Exs. A–B.) *

**REDACTED**

ARIAD and the Institutions immediately requested that Amgen stipulate to allow the filing of an amended counterclaim including the assertion of claims under the '374 patent and the '090 patent in this litigation. (Gindler Decl. Ex. G.) Amgen declined. (Gindler Decl. Ex. H.) This motion followed.

## IV.     ARGUMENT

### A.     Under Rules 13(f) And 15(a) Of The Federal Rules Of Civil Procedure, Leave To Amend Shall Be Freely Given, Particularly When New Information Is Learned In Discovery

It is well-settled that the Federal Rules of Civil Procedure reflect the policy of extreme liberality in allowing the amendment of pleadings. Indeed, the default under Rule 15(a) is in favor of allowing amendment. As the United States Supreme Court explained in *Foman v. Davis*, 371 U.S. at 182:

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith, or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given."

Following this precedent, the Third Circuit has explained that leave to amend should be liberally granted, holding that "amendment should be allowed whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a

result of the delay," and that "the liberal pleading philosophy of the rules requires that a decision not to allow an amendment be justified by one of the factors listed above." *Adams*, 739 F.2d at 868.

The same principles of liberality favor the amendment of counterclaims under Rule 13(f). As the Court explained in *CC Investors Corp. v. Raytheon Co.*, 2005 WL 81591, at *2 (D. Del. Jan. 7, 2005), "whether to grant leave to amend under Rule 13(f) is governed by a standard similar to that which governs leave to amend under Rule 15(a). In this regard, leave to amend should be freely given, absent undue prejudice, bad faith, dilatory motives, undue delay or futility of the amendment." Other courts also have highlighted the flexibility of the rules with regard to amendments of counterclaims. *See Perfect Plastics Indus., Inc. v. Cars & Concepts, Inc.*, 758 F. Supp. 1080, 1081–82 (W.D. Pa. 1991) (Rule 13(f) analysis is "especially flexible and enables the court to exercise its discretion and permit amendment [to add counterclaims] whenever it seems desirable to do so"); *see also Trueposition, Inc. v. Allen Telecom, Inc.*, 2002 WL 1558531, at *1 (D. Del. July 16, 2002) (amendment allowed, no evidence of undue delay, bad faith, dilatory motive, or undue prejudice).

Courts also are very receptive to granting motions for leave to amend when the basis for the amendment is new information learned in discovery. For example, in *CenterForce Techs., Inc. v. Austin Logistics Inc.*, 55 U.S.P.Q.2d 1124 (D. Del. 2000), the plaintiff asserted one patent, but wished to assert an additional patent in the same patent family after obtaining information in discovery. The plaintiff argued that it quickly sought to amend when it received sufficient evidence of infringement through discovery in the case. The Court found no undue delay by the plaintiff's waiting to obtain evidence to back up an infringement allegation, nor undue prejudice or dilatory motive. "In view of the fact that discovery has not yet closed, the [additional] patent is closely related to the [patent-in-suit] . . . and that [defendant] will have time to prepare its defenses to these new claims before the case is scheduled for trial, [defendant] will not be unduly

prejudiced by granting the motion to amend." *Id,* at 1130. The Court also noted it was "clearly preferable" to dispose of all the contentions between the parties in one proceeding. *Id.*[2]

Other cases are to the same effect, whether inside or outside of the patent context. In *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F. Supp. 2d 430, 433 (D. Del. 2003), the Court granted a motion to amend, after the scheduling order's deadline for amendments, to add a trade secret counterclaim based on information revealed in discovery. *See also Reynolds v. Borough of Avalon*, 799 F. Supp. 442, 450 (D.N.J. 1992) (allowing leave to amend complaint to add claim for retaliatory discharge after deadline to amend pleadings). Thus, when questions arise regarding whether to allow an amendment to a pleading after the date set in a scheduling order, courts have explained that the traditional "good cause" standard to modify a scheduling date typically will give way to the liberal policy favoring amendment of pleadings. *Reynolds,* 799 F. Supp. at 450 (courts "must consider F. R. Civ. P. 16(b)'s requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given.'"); *see also Callaway Golf,* 295 F. Supp. 2d at 433 (rejecting argument that Rule 16(b) should preclude amendment of counterclaim after deadline had passed "[g]iven the Supreme Court's counsel to the lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a)" (1internal quotations omitted)).

## B.    There Is No Evidence Of Bad Faith Or Undue Delay

At the outset, this is not a situation where there is evidence of bad faith or undue delay in seeking leave to amend the claims to add the '374 and '090 patents. Amgen's

---

[2] In response to ARIAD's request that Amgen stipulate to allowing an amendment to assert the additional patents, Amgen expressed "concern" that ARIAD had engaged in an improper fishing expedition or somehow violated the protective order. (Gindler Decl. Ex. H.) Amgen's rhetoric is misguided. Amgen obviously believed the information to be relevant to the '516 patent claim, as it produced the material in response to ARIAD's discovery. Moreover, even accepting Amgen's argument on its own terms, the protective order allows information to be used for purposes of "this Litigation." (Gindler Decl. Ex. I.)

production of documents on April 10, consisting of more than 500,000 pages, was just made a few weeks ago.  (Gindler Decl. Ex. C.) '

## REDACTED

Immediately upon discovering this evidence, ARIAD met and conferred with Amgen, which refused to stipulate to the amendment, necessitating this motion.  (Gindler Decl. Exs. G–H.)  Given that ARIAD only recently received the information from Amgen relating to the assay techniques (and required time to review that information and evaluate its significance), any argument of undue delay rings hollow.

Amgen almost certainly will argue that ARIAD should have conducted discovery earlier.  Yet the timing of discovery has to be measured against the procedural history of this case.  From the filing of Amgen's complaint through the end of 2006, there were substantial procedural issues that resulted in multiple stays of discovery.  Indeed, the entire case was stayed for a period of time while the complex jurisdictional issues were being certified for potential immediate appellate review.  Given the posture of the case as an Amgen declaratory judgment suit, and that it was no secret that ARIAD preferred to devote its resources toward its research and development rather than litigation, there was ample justification to defer expensive discovery practice until the procedural issues were resolved.

When it became clear that the case would be proceeding on the merits, ARIAD diligently commenced discovery.  Thus, in February 2007 (approximately two weeks after ARIAD's motion for stay pending the reexamination was denied and just two days after the revised scheduling order issued), ARIAD served discovery.  And upon receiving documents evidencing additional infringement, ARIAD promptly brought the present motion. *See Adams*, 739 F.2d at 867–68 (noting "colorable excuse" for delay in amending); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 & n.11 (3d Cir. 2006) (amendment

was appropriate when sought soon after relevant facts were discovered despite delay in discovering them).

It also is important to stress that even assuming there is delay, which there is not, this is not sufficient grounds to deny a motion for leave to amend. *See, e.g., Arthur,* 434 F.3d at 204–05 (granting leave to amend after 11-month delay; noting that "only one appellate court uncovered in our research has approved of denial of leave to amend based on a delay of less than one year," citing a Fifth Circuit case); *Adams,* 739 F.2d at 862–63, 868 (delay of over four years, including summary judgment and interlocutory appeal, was not evidence of bad faith); *Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 220 (5th Cir. 1975) (reversing denial of leave to amend despite apparently unexplained delay of 16 months, until two months prior to trial); *Perfect Plastics,* 758 F. Supp at 1081 (permitting amendment although claimant provided no explanation for 1.5-year delay after having knowledge of basis for counterclaims); *CenterForce,* 55 U.S.P.Q.2d at 1129 (granting motion for leave to add patent as there is no undue delay when "fact discovery has yet to close and there have been no determinations on the merits").

Delay alone will not justify denial of leave to amend unless the delay unduly prejudices the non-moving party, which as set forth below is not the case here. *See Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 520 (3d Cir. 1998) (reversing denial of leave to amend in the absence of a demonstration of "the way in which such a delay would have caused undue prejudice" to the non-moving party), *superseded by statute on other grounds,* 29 U.S.C. § 626; *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir. 1984) (explaining that "[d]elay alone . . . is an insufficient ground upon which to deny a motion to amend" and emphasizing that "the touchstone is whether the non-moving party will be prejudiced if the amendment is allowed"); *see also Perfect Plastics,* 758 F. Supp. at 1082 ("the mere passage of time between an original filing and an attempted amendment is not a sufficient reason for the denial of the motion"); *Digimarc Corp. v. Signum Techs. Ltd.,* 2001 WL 34043751, at *2 (D. Or. May 23, 2001)

("[A]dding [three] more patents will complicate this case and require additional discovery, possibly causing some delay. However, delay, by itself, no matter how lengthy, is not a sufficient reason for a court to deny a motion for leave to amend." (internal quotations omitted)).

## C.    The Proposed Amendment Will Not Result In Undue Prejudice

Ultimately the factor given the most weight in analyzing a motion for leave to amend is whether the opposing party will suffer "undue prejudice" from the proposed amendment. Here, Amgen will not be able to show such undue prejudice.

First, the posture of the case negates a claim of prejudice. Four of the current parties in this case were not even litigants in this matter until just a few weeks ago in mid-April 2007. (D.I. 183, 185.) One party, Wyeth, has yet to file its responsive pleading. (D.I. 282.)

Second, discovery is far from completed. Amgen made its first production of documents on April 10, 2007. (Gindler Decl. Ex. C.) That production is woefully inadequate, as will be addressed separately by letter brief to the Court. In terms of depositions, while some depositions have been taken, the majority of depositions remain to be conducted. Upwards of 50 deposition notices have been exchanged in the past few weeks, and the parties will need to work together to schedule and complete this mammoth amount of discovery that remains. (Gindler Decl. ¶ 13.) Expert discovery has not yet begun. (Gindler Decl. ¶ 13.)

Third, while there may be some additional discovery as a result of the counterclaims, it is hard to imagine that it will significantly alter the discovery underway. The additional patents are in the same patent family, share the same named inventors, have substantially the same specifications, and involve related subject matter concerning NF-kB. (Gindler Decl. Exs. A–B & F.) The '516 patent reaches use of the accused products Enbrel and Kineret whereas the '374 and '090 patents relate to techniques for identifying agents or compounds that modulate NF-kB activity. ARIAD expects there to

be considerable overlap in discovery with regard to all three patents.

**REDACTED**

Even in light of Amgen's unreasonably tight restrictions on the documents that it looked for in response to ARIAD's document requests, Amgen itself believes the subject matter is relevant to the existing claims. ARIAD also has already provided discovery regarding the '374 and '090 patents, including prosecution files and documents relating to the licensing of these patents. (Gindler Decl. ¶ 14.) In any event, any additional discovery would need to be conducted whether the additional patent claims are asserted in this case or in a separate case before this Court or elsewhere.

Courts in this district have relied on an overlap in subject matter between the existing claims and proposed additional claims to reject arguments of undue prejudice, even when the amendment would result in far more additional discovery than here. As set forth in the *CenterForce* case, "[w]hile the Court agrees with [defendant] that some additional discovery will be needed, the Court does not believe this need for additional discovery creates 'undue prejudice' within the meaning of *Foman*." *CenterForce*, 55 U.S.P.Q.2d at 1129 ("prejudice to [defendant] is diminished because the claims relate to the same product, the patents are substantially similar, and significant discovery regarding the [additional] patent has been conducted already in this litigation"); *see also Micron Tech., Inc. v. Rambus, Inc.*, 409 F. Supp. 2d 552, 558–59 & n.2 (D. Del. 2006) (rejecting argument that additional work necessitated by added patents would result in undue prejudice and noting overlap in subject matter of patents); *Trueposition*, 2002 WL 15588531, at *2–3 (additional complexity of action and potential for delay in resolution of case caused by the addition of four patents were "vague and mild assertions of prejudice" that did not rise to the required level of proof where "the newly asserted patents relate to the same accused products and technology as the originally asserted patents").

Moreover, even to the extent that the proposed amendment may require additional discovery or delay the end of the case, the Third Circuit has rejected such as a basis for denying leave to amend. *Adams*, 739 F.2d at 869 (granting leave to amend over objection that amendment would increase counsel fees, delay the end of the case, and thwart "finality" in the litigation process); *CenterForce*, 55 U.S.P.Q.2d at 1129-30 (necessity of extending deadlines did not merit denial of leave to amend); *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 528 (D. Del. 1996) (need for additional discovery will not prejudice non-moving party because non-moving party will not be denied such discovery). Rather, to show prejudice, Amgen must demonstrate that "[its] ability to present [its] case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990); *see also Arthur*, 434 F.3d at 206 (delay did not support denial of leave to amend because it did not impair non-moving party's "ability to defend against the suit" or unfairly disadvantage the non-moving party's opportunity to present facts or evidence). Here, Amgen cannot show that its ability to present its case would be seriously impaired by the addition of the '374 and '090 patents. There is no prejudice to Amgen from the proposed amendment, much less undue prejudice.

### D.    The Proposed Amendment Is In The Interests Of Justice

Because the '516 patent and the '374 and '090 patent, are related patents, implicate the same area of technology, have substantially the same specifications, and share similar terminology, there would be substantial overlap in discovery between the patents, as well as in claim construction, resulting in benefits to both the parties and the Court.

Recognizing the substantial benefits that stem from allowing a patent holder to amend its pleadings to include additional patents where the patents are based on similar technology, this Court has allowed amendments in analogous situations. *See, e.g., Micron*, 409 F. Supp. 2d at 558–59 (granting leave to add patents and products to suit

where the additional patents related to the "same subject matter as the patents-in-suit," as there would be overlap with already completed preparation of claims); *Trueposition*, 2002 WL 1558531, at *2 (given the overlapping technology between the existing and proposed patents, "it would be economically beneficial to the parties to resolve all issues in a single proceeding" and "judicial economy weighs in favor of granting the motion to amend").

Here, as in *Micron* and *Trueposition*, the patents that ARIAD and the Institutions seek to add relate to similar subject matter as the patent already in suit and are directed against some of the same products, resulting in substantial overlap with the facts and arguments implicated by the '516 patent. Adding the '374 and '090 patents to this case on a schedule to be addressed with the Court at the June 4, 2007 teleconference hearing would permit the parties and the Court to efficiently resolve this dispute in one forum and in one consolidated proceeding.

V.     **CONCLUSION**

ARIAD and Institutions respectfully request that the Court grant them leave to file their proposed Answer and Amended Counterclaim with the two additional counterclaims against Amgen Inc. for infringement of the '374 and '090 patents.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals,*
*Inc., Massachusetts Institute of*
*Technology, The President and Fellows*
*of Harvard College and The Whitehead*
*Institute for Biomedical Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated:  May 30, 2007
181067.1