## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-259-MPT |
| v. | ) ) | |
| ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | ) ) ) | |
| Defendants | ) ) | |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH | ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH, | ) ) ) ) | |
| Counterclaim Defendants. | ) ) | |

## COUNTERCLAIM DEFENDANT WYETH'S REPLY TO
## ARIAD AND THE INSTITUTIONS'
## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
## WYETH'S MOTION TO SEVER AND STAY

*Of Counsel:*
Robert D. Bajefsky
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, District of Columbia   20001
(202) 408-4000

Frederick L. Cottrell III (# 2555)
*cottrell@rlf.com*
Anne Shea Gaza (#4093)
*gaza@rlf.com*
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware   19801
(302) 651-7509

*Attorney for Counterclaim Defendant
Wyeth*

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia   20190
(571) 203-2700

Dated:  June 25, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.      INTRODUCTION ........................................................................................................ 1

II.     REPLY ......................................................................................................................... 3

        A.      The Magistrate Can Sever Wyeth from the Litigation to Maintain
                Jurisdiction over the Consenting Parties ...................................................... 3

        B.      Most of the Activities Pointed to by Ariad Are Not Relevant to Any
                Infringement Allegation in the Litigation ...................................................... 5

                1.      The Infringement Allegations in this Case ....................................... 5

                2.      The Collaboration and Global Supply Agreement ........................... 5

                3.      Wyeth's Involvement with Enbrel® Since 1993 ............................... 6

                4.      Wyeth's Co-Promotion Activities ..................................................... 7

        C.      Ariad Has Presented No Legal Reason Why Wyeth Cannot Be
                Severed ........................................................................................................... 8

                1.      Severance Under Fed. R. Civ. P. 21 Is a Well-Accepted
                        Procedure .......................................................................................... 8

        D.      Contrary to Ariad's Assertion, It Will Not Suffer Prejudice as a
                Result of the Severance of Wyeth ............................................................... 10

        E.      Wyeth, on the Other Hand, Faces Substantial Prejudice if It
                Must Remain a Party .................................................................................... 12

III.    CONCLUSION ......................................................................................................... 14

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A&E Products Group L.P. v. Accessory Corp.*,
   No. 00 CIV. 7271 (LMM), 2002 WL 1041321 (S.D.N.Y. May 23, 2002) .................... 9

*Amgen Inc. v. Chugai Pharm. Co.*,
   11 U.S.P.Q.2d 1466 (D. Mass. 1989) ....................................................................... 3, 4

*Corry v. CFM Majestic, Inc.*,
   16 F. Supp. 2d 660 (E.D. Va. 1998) ............................................................................ 8

*German v. Federal Home Loan Mortgage Corp.*,
   896 F. Supp. 1385 (S.D.N.Y. 1995) ............................................................................. 9

*Guess v. Chenault*,
   108 F.R.D. 446 (N.D. Ind. 1985) ................................................................................. 3

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
   361 F.3d 1355 (Fed. Cir. 2004) ............................................................................... 2, 6

*Jeanty v. County of Orange*,
   379 F. Supp. 2d 533 (S.D.N.Y. 2005) .......................................................................... 9

*Koh v. Microtech International Inc.*,
   250 F. Supp. 2d 627 (E.D. Va. 2003) .......................................................................... 8

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
   131 F. Supp. 2d 804 (E.D. Va. 2001) .......................................................................... 2

*Miller v. American Bonding Co.*,
   257 U.S. 304 (1921) ....................................................................................................... 9

*N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*,
   996 F.2d 21 (2d Cir. 1993) ....................................................................................... 3, 4

*Nat'l Presto Indus., Inc. v. West Bend Co.*,
   76 F.3d 1185 (Fed. Cir. 1996) ................................................................................. 2, 6

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
   953 F.2d 1360 (Fed. Cir. 1991) ................................................................................... 5

## FEDERAL STATUTES

28 U.S.C. § 636(c)(2) ........................................................................................................ 4

ii

Fed. R. Civ. P. 21 ......................................................................................................... 8

Fed. R. Civ. P. 72 ....................................................................................................... 1, 3

Fed. R. Civ. P. 73 ....................................................................................................... 1, 4

iii

## I.     INTRODUCTION

In its moving papers, Wyeth demonstrated that the interest of justice warrants severing and staying Ariad's counterclaim against Wyeth.   As Wyeth has not consented to the Magistrate's jurisdiction, and as there is no District Court Judge available to hear objections to any recommendations or orders by the Magistrate, neither Fed. R. Civ. P. 72 nor 73 provide the Magistrate with jurisdiction over Wyeth.   Thus, to allow the case to continue, Wyeth submitted that this Court should sever Wyeth from the case and allow the remaining parties to continue to trial.

This is particularly appropriate in this case as Wyeth is merely a peripheral party. Wyeth established that it was a peripheral party because (1) its only activities in the United States relevant to Ariad's infringement claim are its co-promotion with Amgen of Enbrel®, and (2) resolution of the main Amgen/Ariad dispute would eliminate the need to try Ariad's counterclaim against Wyeth.   Given Wyeth's peripheral status, and the fact that it has not consented to the Magistrate's jurisdiction, the interests of justice plainly warrant severing Wyeth from the instant action and allowing the litigation between Amgen and Ariad to proceed to trial.

In its opposition, Ariad largely ignores the limitations of the Magistrate's jurisdiction and instead argues that Wyeth is not a peripheral party because its Enbrel® activities are not limited to co-promotion.  Ariad advances this argument by pointing to alleged activities *outside* of the United States and *prior* to the issuance of the '516 patent.  To that end, Ariad makes much of Wyeth's facility in Grange Castle Ireland.  But that facility—Wyeth's only facility for making Enbrel®—has never made Enbrel® for sale in the United States.  Wyeth's production of Enbrel® outside of the United States for sale outside of the United States simply has no

1

relevance to this patent infringement action. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355 (Fed. Cir. 2004) (holding that it is not an act of infringement to make a patented product outside the United States); *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) (holding that "as a matter of law § 271(b) does not reach actions taken before issuance of the adverse patent"). The other activities Ariad identifies in its brief relate to Wyeth's obligation, along with Amgen, to co-promote Enbrel® in the United States, conduct which Wyeth acknowledged in its moving papers.

Further, Ariad offers no compelling response for why it could not obtain complete relief from Amgen for any alleged infringement of the '516 patent. As set forth in Wyeth's opening brief, damages for any alleged infringement will be tied to the sales of Enbrel®. And while Wyeth does co-promote that product, all sales of Enbrel® in the United States are made by Amgen—*not* Wyeth. Thus, there will never be a need for two separate trials as Ariad cannot recover damages from two parties for the same infringement. *LG Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 812 (E.D. Va. 2001) ("If the Court finds Advance or DTK liable, and LGE collects royalties from Advance or DTK, then LGE cannot in turn collect royalties from the entities to whom Advance and DTK sold the products.") As stated by Amgen in its letter to the Court, "any possible damage award or other relief can be assessed against Amgen, and Amgen can then seek recovery from Wyeth for its share pursuant to the contractual arrangement between Amgen and Wyeth." D.I. 316 at 1 n.1. Ariad simply does not need Wyeth in the case to obtain full relief for any alleged infringement. Accordingly, for all above reasons, Wyeth respectfully submits that this Court should sever and stay Ariad's claim against Wyeth.

2

## II.   REPLY

### A.   The Magistrate Can Sever Wyeth from the Litigation to Maintain Jurisdiction over the Consenting Parties

Although first addressed by Ariad at page 17 of its 20 page brief, the first issue that must be resolved by any court relate to the limitations of its jurisdiction. Ariad argues, without providing any legal authority, that Wyeth must participate in a lawsuit where there is no Article III Judge, even if it withholds consent, and that the Magistrate Judge "may preside over this case for all pretrial purposes (other than dispositive motions) no matter what Wyeth decides." (Opp. at 18-19 (D.I. 321)). Ariad is simply wrong. As found by the Northern District of Indiana in *Guess v. Chenault*, 108 F.R.D. 446, 449-50 (N.D. Ind. 1985), the issue is whether the Magistrate Judge has **jurisdiction** over the non-consenting party: "Since the threshold jurisdictional requirement has not been met with respect to Transport Insurance Company, this Court does not have jurisdiction over that defendant."[1]

The jurisdictional analysis set forth by *Guess* comports with controlling law. Fed. R. Civ. P. 72 allows a Magistrate Judge to handle "nondispositive matters" and "dispositive motions" without a parties' consent **but** expressly provides the parties with the right to "serve and file objections" to a Magistrate's order "[w]ithin 10 days." *Id.* At that point, "the district court judge to whom the case is assigned **shall** [review] . . . the magistrate judge's order . . . ." *Id.* Here, Rule 72 is not applicable as there is no assigned district court judge, and thus no

---

[1] Contrary to Ariad's assertions about the limited applicability of *Guess*, the Second Circuit specifically cited *Guess* with approval on the issue of the importance of consent. *N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc.*, 996 F.2d 21, 24 (2d Cir. 1993)(citing *Guess* in the context of a motion for intervention); *see also Amgen Inc. v. Chugai Pharm. Co.*, 11 U.S.P.Q.2d 1466, 1468 (D. Mass. 1989)(citing *Guess* for the proposition that a Magistrate does not have jurisdiction over a later-added party that does not consent to the Magistrate's jurisdiction).

3

place for Wyeth to file its objections to any decision of the Magistrate Judge on either dispositive or non-dispositive matters.

Rule 73 is also not applicable. It "limits the power of the magistrate judge to conduct all the proceedings in a civil case 'when all parties consent thereto.'" *N.Y. Chinese TV Programs,* 996 F.2d at 23-24. "Rules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent." *Id.* (citing 28 U.S.C. § 636(c)(2)). "The requirement of consent is of constitutional dimension . . . . [T]he delegation of power to magistrates to conduct consensual trials and enter judgments without de novo review by a district judge does not violate the litigants' Article III rights *where the parties have voluntarily consented to have the action handled through to judgment by a magistrate.*" *Amgen,* 11 U.S.P.Q.2d at 1468 (emphasis added). In *Amgen,* relying on *Guess,* the Magistrate Judge held—"as a matter of constitutional law, statutory construction, and interpretation of Fed. R. Civ. P. 73"—that it could not even decide a motion to intervene because of lack of consent by the party seeking to intervene. *Id.* Instead, the Magistrate Judge "issue[d] a report and recommendation to the trial court with respect to the motion to intervene."

Here, as mentioned above, there is no district court judge to consider any report or recommendation by the Magistrate Judge for either dispositive or non-dispositive matters under Rule 72, and Wyeth has not consented to the Magistrate Judge under Rule 73. Accordingly, as in *Guess,* the Magistrate Judge lacks jurisdiction over Wyeth. Thus, to allow the case to continue and serve the interests of justice, the Magistrate Judge should sever Wyeth out of the case. The matter may then be stayed against Wyeth or assigned to a district court judge. The severance of Wyeth from this case is particularly appropriate as it is merely a peripheral party to the litigation, as discussed below.

4

**B.    Most of the Activities Pointed to by Ariad Are Not Relevant to Any Infringement Allegation in the Litigation**

**1.    The Infringement Allegations in this Case**

Ariad attempts to show that Wyeth is not a peripheral party by pointing to activities that have no relevance to this action.  In order to understand the irrelevance of Ariad's contentions, it is necessary first to consider the claims of the '516 patent.  All 203 claims of that patent define methods of inhibiting the activity of NF-κB.  None of the claims cover Enbrel® as a product or a method of manufacturing Enbrel®.  Claim 1, for example, states:

> A method of inhibiting expression . . . of a gene whose transcription is regulated by NF-κKB[sic], the method comprising reducing NF-κKB[sic] activity in the cell such that expression of said gene is inhibited.

('516 patent, col. 82, ll. 13-16.)   In the context of this case, if that claim is infringed, infringement occurs when doctors or patients use Enbrel®, *not* when it is manufactured or sold.  *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991)("The '938 patent claims a method for producing asphalt, not the apparatus for implementing that process.  Thus, the sale in the United States of an unclaimed apparatus alone does not make Gencor a contributory infringer of the patented method.")   Thus, Wyeth's manufacture of Enbrel®, even if it occurred in the United States, would not be relevant to Ariad's infringement charge.

**2.    The Collaboration and Global Supply Agreement**

The Collaboration and Global Supply Agreement relates to the manufacture of Enbrel® by Amgen in the United States, Boehringer Ingelheim in Germany, and Wyeth in Ireland.  Wyeth does not manufacture Enbrel® in the United States.  (Jacques Decl. at ¶ 3.)[2]   While

---

[2] The Declaration of Allen Jacques is filed contemporaneously herewith.

5

Ariad asserts that it "expect[s]" the agreement and the manufacture of bulk etanercept by Wyeth and Amgen "to be an important subject of discovery" (Opp. at 8), it does not explain the relevance of either the agreement or the manufacture of Enbrel® to its allegation that the use of Enbrel® infringes the claims of the '516 patent. That failure is telling because the '516 patent claims methods of inhibiting NF-κB activity. Thus, as explained above, neither the agreement nor the manufacture of Enbrel® in Ireland has any relevance to this action. In fact, Wyeth's Grange Castle facility in Ireland has never produced Enbrel® for sale in the United States. Nor can it, as that facility has never been approved by the United States Food and Drug Administration for that purpose. (*Id.* at ¶ 4.) Indeed, the portion of the Enbrel® box that Ariad included on page 1 of its opposition identifies the manufacturer of the product as Immunex Corporation (a subsidiary of Amgen), not Wyeth.

Wyeth's manufacturing operations in Ireland thus clearly have no relevance to any issue in this civil action involving a United States patent. *Int'l Rectifier*, 361 F.3d at 1360. Consequently, the Collaboration and Global Supply Agreement should not impact whether this Court severs and stays Ariad's counterclaim against Wyeth.

### 3. Wyeth's Involvement with Enbrel® Since 1993

In a further effort to demonstrate the alleged importance of Wyeth to this action, Ariad points to agreements between Wyeth and Immunex entered into in 1993, 1996, and 1997. (Opp. at 8-10.) But the 1993 and 1997 agreements have no relevance to this action because they were entered into and ceased to be effective before the '516 patent issued in June 2002. *See Nat'l Presto*, 76 F.3d at 1196. The 1996 agreement is also of no relevance because it only gives Wyeth certain rights to market and sell Enbrel® outside the United States as noted by

6

Ariad (Opp. at 9), but gave Wyeth no rights within the United States. (Gindler Decl. Ex. G at ¶¶ 1.03 & 2.01.)

Moreover, while Ariad suggests that Wyeth was involved in the early development of Enbrel®, the patents relating to that development were applied for by Immunex scientists (see Bajefsky Decl. Ex. A)[3] and two of the inventors confirmed Wyeth's lack of involvement in the development of Enbrel®, testifying that they never had or could not recall contact with any representatives of Wyeth. (Bajefsky Decl. Ex. B at 65:9-66:10; Ex. C at 126:4-128:8.) Therefore, even though Wyeth may have had an ownership interest in Immunex (see Opp. at 9), it was Immunex itself that created Enbrel®, obtained patents to cover it, and retained all rights to it in the United States. Moreover, contrary to Ariad's assertion, (Opp. at 9), Wyeth never controlled Immunex. While Wyeth owned approximately 53% of Immunex stock, Immunex was an independent company having its own facilities, officers, and Board of Directors.

### 4.    Wyeth's Co-Promotion Activities

Wyeth does co-promote Enbrel® in the United States and specifically acknowledged that fact in its opening brief. Wyeth also submitted a copy of the 2001 Co-Promotion Agreement, which defines the structure and process through which Amgen and Wyeth market Enbrel® in this country. (Wyeth Mem. at 4.) Ariad, however, conducts a section-by-section analysis of that agreement in an effort to show that Wyeth's responsibility involves more than promotion. (Opp. at 3-7.) Putting aside Ariad's rhetoric, it is clear that all of the activities enumerated by Ariad relate to promoting Enbrel®; that is, convincing physicians to prescribe that product, and not to the actual sale of Enbrel®.

---

[3] The Declaration of Robert D. Bajefsky is filed contemporaneously herewith.

Indeed, Ariad acknowledges that *sales* of Enbrel® in the United States are made by Amgen. (Opp. at 6 ("Enbrel sales in the United States are booked on Amgen's accounts").) While Ariad attempts to diminish the significance of this fact by wrongly asserting that it is "for accounting purposes" (*id.*), Ariad does not dispute that Amgen, not Wyeth, sells Enbrel® in the United States. In this connection, it is significant to note that from the beginning of Wyeth's relationship with Immunex in 1993, the parties have agreed that the United States and Canadian markets belonged to Immunex. (Bajefsky Decl. Ex. C at §§ 1.09, 1.18, & 3.1(c).)

### C.    Ariad Has Presented No Legal Reason Why Wyeth Cannot Be Severed

#### 1.    Severance Under Fed. R. Civ. P. 21 Is a Well-Accepted Procedure

In its opening brief, Wyeth demonstrated that courts properly use their power to sever under Fed. R. Civ. P. 21 "where the administration of justice would be materially advanced," particularly when, as in this case, the adjudication of the main claim is dispositive of the severed claim, making trial of the severed claim unnecessary. (Wyeth Mem. at 6-7.) In particular, Wyeth relied on *Koh v. Microtech International Inc.*, 250 F. Supp. 2d 627 (E.D. Va. 2003), and *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998). In both of those cases, courts granted motions to sever where, as in the present case, resolution of the main action eliminated the need for trial of the severed action.

Ariad attempts to distinguish those cases because they involve mere "resellers," while Wyeth sells Enbrel® in countries other than the United States, manufactures the product in Ireland, and promotes Enbrel® in the United States. (Opp. at 16-17.) That distinction, however, fails for at least two reasons. First, Wyeth does not manufacture or sell Enbrel® in the United States, and as noted above, those manufacturing and sales activities that occur in other countries do not--and cannot--infringe the '516 patent. Second, and most important, the *Koh*

8

and *Corry* courts granted motions to sever to permit transfer of the cases against the remaining defendants to a more appropriate forum. Here, severance of the Amgen/Ariad dispute from the Ariad/Wyeth dispute is appropriate because it will permit the former to be tried before the Magistrate Judge who has been educated in this matter by tutorials presented by both Ariad and Amgen and the numerous hearings she has presided over since those parties consented to her jurisdiction. *See* pages 3 to 4, *supra*.

The decisions cited by Ariad at page 11 of its opposition do not deal with the appropriateness of severance under such circumstances. In *Jeanty v. County of Orange*, 379 F. Supp. 2d 533 (S.D.N.Y. 2005), the defendants sought severance and *separate trials*. In denying the motion, the court stated: "severance of the claims or separate trials would not further convenience or be conducive to 'expedition and economy;' rather, it *would require the Court to try two cases that are essentially the same . . . .*" *Id.* at 549 (emphasis added). But here Wyeth does not seek a separate trial, as the result of the Amgen/Ariad matter will necessarily provide Ariad with complete relief. In *Miller v. American Bonding Co.*, 257 U.S. 304, 307 (1921), the act under which the case was brought contemplated that "all claims under the bond are to be presented, adjudicated, and enforced in a single action." The U.S. patent laws do not contain an analogous provision. In *A&E Products Group L.P. v. Accessory Corp.*, No. 00 CIV. 7271 (LMM), 2002 WL 1041321, at *2 (S.D.N.Y. May 23, 2002), which was unreported, the court dealt briefly with a single plaintiff asserting patent infringement and a single defendant presenting antitrust counterclaims where the patents were "linked" to the anti-competitive conduct. This case is not relevant to the issues involved in this case. And in *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1400-01 (S.D.N.Y. 1995), the court denied severance because common and complex factual issues existed between two

9

sets of defendants and those same issues were ***certain to be re-litigated*** if one set of defendants was severed. That is simply not the situation here, where trial of the Amgen/Ariad dispute will eliminate the need for the trial of Ariad's counterclaim against Wyeth for the reasons set forth in Wyeth's opening brief.

### D.    Contrary to Ariad's Assertion, It Will Not Suffer Prejudice as a Result of the Severance of Wyeth

Consistent with the cases it cites, Ariad's primary allegation of prejudice is an alleged concern that a second trial against Wyeth will be necessary if it prevails in its action against Amgen. However, whether Amgen or Ariad prevails in their dispute, as explained at pages 7 and 8 of Wyeth's opening brief, no trial of Ariad's counterclaim against Wyeth will be necessary.

In an attempt to justify its second trial argument, Ariad argues that "neither Wyeth nor Amgen has acknowledged that they are responsible for the infringing acts of the other." (Opp. at 13, *see also id.* at 14.) That statement makes no sense in the context of this case. If Ariad prevails, the damages it receives will be based upon the ***sales*** of Enbrel® in the United States. Only Amgen sells that product. Thus, as both Wyeth and Amgen have acknowledged, a judgment against Amgen will provide Ariad with full relief. (Wyeth Mem. at 7 & 10-11; D.I. 316.)

Ariad also argues that "Wyeth implicitly wants to reserve the right for a 'do over' with respect to any results it does not like." (Opp. at 13.) Ariad makes this argument by relying on a partial quote from page 9 of Wyeth's opening brief. The quoted language, when read in context, demonstrates that Wyeth's concern related to the potential collateral estoppel effect for products other than Enbrel®:

10

> Wyeth's need to participate fully if it remains a party is based on significant
> concerns *beyond Enbrel*®. If it remains a party, Wyeth could be potentially
> bound by any adverse decision reached by this Court as to the claim
> construction, validity, and/or enforceability of the '516 patent if Ariad were to
> assert infringement by products that Wyeth sells in the United States or will sell
> in the future. . . . If the court severs Ariad's claim against Wyeth, there would
> be no need for expanded participation by Wyeth . . . because there would not be
> issue preclusion as to *other Wyeth products*.

(Wyeth Mem. at 9 (emphasis added).)

In further support of its two trial argument, Ariad incorrectly argues that Wyeth "has not conceded, nor left the impression," that it would not challenge the outcome if Ariad prevails in its dispute with Amgen. (Opp. at 13.) Wyeth believes that concession is clear from its moving papers. However, to eliminate any doubt, Wyeth unequivocally states that if Ariad prevails against Amgen, Wyeth will not contest any ruling that the use of Enbrel® by a patient infringes the '516 patent and that Ariad is entitled to damages resulting from the sales of Enbrel® in the United States.

Finally, Ariad suggests that it will be deprived of discovery if Wyeth is not a party. However, Ariad will obtain the same depositions and document production through subpoenas as it would have received through Rules 30 and 34. Ariad will, of course, not receive the expert disclosures required by Rule 26 if Wyeth is not a party, but it fails to explain why it would be damaged by not having to deal with a second set of experts in discovery and trial. Its suggestion that it would somehow be prejudiced by the absence of the burden of those disclosures perhaps best demonstrates the bankruptcy of Ariad's position.

Moreover, to the extent that Ariad will suffer any prejudice, it has only itself to blame. It knew of Wyeth's involvement with Enbrel® at the time this lawsuit was filed, but waited more than a year to amend its pleadings to assert a claim against Wyeth.

11

E.    **Wyeth, on the Other Hand, Faces Substantial Prejudice if It Must Remain a Party**

Wyeth will face extreme prejudice if it is not severed and must remain a party.  That prejudice exists because of the potential for estoppel relating to products other than Enbrel®, the presence of issues not related to Wyeth in this case, and the advanced state of this case.  As mentioned above, if the '516 patent is not struck down as invalid and/or unenforceable, it is possible that Ariad will assert it in a later case against Wyeth, for example, on a yet-developed product.  Wyeth may be held to those previous determinations of validity and enforceability if it is not severed from this case.

The effects of that collateral estoppel, while not certain, would be particularly unfair for a number of reasons.  First, since Amgen is a party, as a practical matter, Wyeth does not have complete control over the presentation of evidence and legal theories since Amgen will also be presenting its own evidence based on its legal theories.  Amgen's presence, therefore, may restrict Wyeth's opportunity for a full and fair review of its own case against the '516 patent.  Also, even with the schedule extension granted by this Court in the teleconference on June 13, 2007 (*see* D.I. 326), Wyeth may not have an adequate opportunity to conduct complete discovery to defend Ariad's charge.

Ariad claims that Wyeth will have sufficient time to conduct discovery because of the extension of the pretrial schedule granted by the Court.  (Opp. at 14-15.)  However, Ariad and Amgen have been involved in this action for more than a year.  During that period they have had an extended period of time to develop their respective positions, retain experts, and plan discovery.  Indeed, the parties have exchanged significant numbers of documents and taken numerous depositions (including depositions of seven of the '516 patent inventors), and are now scheduling depositions at a rapid rate.  And both engaged in a detailed tutorial for the

12

Court. If the counterclaim is not severed, Wyeth will suffer a significant disadvantage. Wyeth will need to join this ongoing discovery, revisit some earlier discovery, develop its positions, review the hundreds of thousands of documents already produced, and collect its own documents. Consequently, it will be at a severe disadvantage even with the new schedule.

The Amgen/Ariad dispute also involves another product–Kineret®–that does not involve Wyeth. (D.I. 316; Opp. at 3.) While Ariad dismisses Kineret® because its sales are less than Enbrel®'s (*id.*), the presence of that product will necessarily require fact discovery, expert discovery, claim construction, and infringement findings separate from and equally substantial to those for Enbrel®. Ariad's pending motion for leave to amend (D.I. 291) would exacerbate that prejudice if granted, since at least two additional testing assays, as well as additional patents, would enter this suit. And Wyeth has no connection to any of those new issues. The presence of claims, issues, and evidence wholly unrelated to Wyeth clearly weighs in favor of severance.

Finally, Ariad suggests that Wyeth is not prejudiced since it "likely" has been involved in the litigation behind the scenes and is obligated to pay a portion of the costs of this litigation. (Opp. at 15.) That unsupported speculation is simply wrong. Wyeth has not consulted with Amgen about the substance of this litigation behind the scenes or otherwise and, prior to retaining counsel to defend against Ariad's counterclaim, has not paid any of the costs associated with Amgen's suit against Ariad.[4] Chopskie Decl. at ¶ 3[5].

---

[4] The suggestion that Wyeth will not be damaged by remaining a party to this lawsuit because it was a defendant in a previous patent infringement litigation involving Enbrel® (Opp. at 15) is also wrong. The circumstances surrounding that case differed entirely from the present case. By way of example, Wyeth was named as a defendant from the outset of the litigation, the case involved only Enbrel®, and no other Wyeth products (present or future) were potentially impacted by the patent in suit.

The prejudice to Wyeth, thus, cannot be seriously challenged and weighs heavily in support of severance.

## III.    CONCLUSION

For reasons stated above and in Wyeth's opening memorandum, this Court should sever and stay Ariad's counterclaim against Wyeth.


Frederick L. Cottrell III (# 2555)
*cottrell@rlf.com*
Anne Shea Gaza (#4093)
*gaza@rlf.com*
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware   19801
(302) 651-7509

*Of Counsel*
Robert D. Bajefsky
Howard W. Levine
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, District of Columbia   20001
(202) 408-4000

*Attorney for Counterclaim Defendant
Wyeth*

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia   20190
(571) 203-2700

---

[5] The Declaration of Gregory A. Chopskie is filed contemporaneously herewith.

14

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I hereby certify that, on June 25, 2007, I caused to be sent by hand delivery and electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Steven J. Balick
John T. Day
Tiffany Geyer Lyden
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899

Melanie K. Sharp
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE 19899

I hereby certify that on June 25, 2007, the foregoing document was sent via Federal Express to the following non-registered participants in the manner indicated:

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

J. Drew Diamond
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017

Anne Shea Gaza (#4093)
gaza@rlf.com

RLF1-3159971-1