IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>                 Plaintiffs,<br><br>  v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                 Defendants. | **REDACTED**<br>**PUBLIC VERSION**<br><br><br>C.A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                 Counterclaim-Plaintiffs,<br><br>  v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>                 Counterclaim-Defendants. | |

**COUNTERCLAIM-PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR
LEAVE TO FILE AMENDED COUNTERCLAIMS
ASSERTING ADDITIONAL CLAIMS**

1708131

TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. ARIAD'S RECENT DISCOVERY OF IMPORTANT DOCUMENTS IS AMPLE "GOOD CAUSE" TO ALLOW AMENDMENT.............................................................................................2

    B. THERE IS NO ISSUE OF "UNDUE DELAY" ........................................4

    C. ARIAD'S GOOD FAITH IN SEEKING LEAVE CANNOT BE QUESTIONED ..............................................................................7

    D. THE PROPOSED AMENDMENT WILL NOT RESULT IN PREJUDICE .........................................................................................9

    E. THE PROPOSED AMENDMENT IS IN THE INTERESTS OF JUSTICE.........................................................................................11

III. CONCLUSION....................................................................................................13

1708131

- i -

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gould Inc.*, 739 F.2d 869 (3d Cir. 1984) .................................................................. 9

*Arthur v. Maersk, Inc.*,
    434 F.3d 196 (3d Cir. 2006) ............................................................................................ 4, 10

*Barkauskie v. Indian River Sch. Dist.*,
    951 F. Supp. 519 (D. Del. 1996) ........................................................................................... 9

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*,
    295 F. Supp. 2d 430 (D. Del. 2003) ................................................................................... 3, 4

*CenterForce Techs., Inc. v. Austin Logistics Inc.*,
    55 U.S.P.Q.2d 1124 (D. Del. 2000) ........................................................................ 4, 5, 9, 11

*Cureton v. Nat'l Collegiate Athletic Assoc.*,
    252 F.3d 267 (3d Cir. 2001) .................................................................................................. 7

*Dimensional Communications, Inc. v. Oz Optics, Ltd.*,
    148 Fed. Appx. 82 (3d Cir. 2005) ......................................................................................... 4

*Dole v. Arco Chem. Co.*,
    921 F.2d 484 (3d Cir. 1990) ................................................................................................ 10

*Eastern Minerals & Chemicals Co. v. Mahan*,
    225 F.3d 330 (3d Cir. 2000) .................................................................................................. 4

*Gonzalez v. Comcast Corp.*,
    No. Civ.A. 03-445-KAJ, 2004 WL 2009366
    (D. Del. Aug. 25, 2004) ........................................................................................................ 4

*In re Liberty Logistics, LLC*,
    320 B.R. 291 (Bankr. E.D. Pa. 2005) ................................................................................... 7

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    237 F.R.D. 361 (D. Del. 2006) ............................................................................................. 7

*Lorenz v. CSX Corp.*,
    1 F.3d 1406 (3d Cir. 1993) .................................................................................................... 7

*Micron Tech., Inc. v. Rambus, Inc.*,
    409 F. Supp. 2d 552 (D. Del. 2006) ............................................................................... 11, 12

*Miller Products Co., Inc. v. Veltek Associates, Inc.*,
    218 F.R.D. 425 (D. Del. 2003) ............................................................................................ 10

*Reynolds v. Borough of Avalon*,
    799 F. Supp. 442 (D.N.J. 1992) ......................................................................................... 3, 4

**Page(s)**

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*,
  93 F.R.D. 858 (D. Del. 1982) ........................................................................ 7

*Trueposition, Inc. v. Allen Telecom, Inc.*,
  No. CIV.A.01-823 GMS, 2002 WL 1558531 (D. Del. July 16,
  2002) .................................................................................................. 10, 11, 12

*USX Corp. v. Barnhart*,
  395 F.3d 161 (3d Cir. 2004) .......................................................................... 7

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................ 5

Fed. R. Civ. P. 11 ............................................................................................ 5, 6

Fed. R. Civ. P. 15(a) ........................................................................................... 3

Fed. R. Civ. P. 16(b) ........................................................................................... 3

I.   **INTRODUCTION**

After discovering documents that demonstrate Amgen also infringes the '374 and '090 patents, two patents in the same family as the '516 patent-in-suit, ARIAD and the Institutions promptly brought this motion for leave to amend. Although Amgen hopes to defer the consequences of its infringement of these patents, now is an ideal time to allow leave. The overall schedule in the case has just been adjusted to accommodate its procedural posture and provide additional time to conduct discovery; the parties are working to schedule a substantial number of depositions to be taken; expert discovery will not commence for more than six months; and the trial date has been continued until November 2008. Consistent with the liberal policy of allowing amendments to pleadings, ARIAD should be granted leave such that these complementary claims may be resolved efficiently in a single proceeding.

The main theme of Amgen's opposition is the fictional argument that ARIAD's request for leave to amend is intended to delay these proceedings. This is simply not true. ARIAD does not seek to add any additional time to the overall case schedule as a result of including the '374 and '090 patents. The new trial date and corresponding discovery schedule should provide the parties plenty of time to litigate the claims regarding the additional patents. The claims also fit together naturally—the patents are all in the same family and share substantially the same specification. Moreover, there will be an overlap in the evidence showing infringement of the patents.

**REDACTED**

In short, the subject matter of the additional patents is already in play and adding them to the case is not intended to, and will not, extend the duration of the litigation.

Because Amgen's arguments about purported delay on the back end of the case do not hold water, Amgen also argues that ARIAD should have brought the claims on the additional patents earlier. The cases are uniform, however, in explaining how delay alone cannot justify denying a bona fide request for leave to amend. In any event, there is no "undue delay." ARIAD raised the claims under the '374 and '090 patents immediately upon discovering the evidence among the 500,000 documents that Amgen produced on April 10, 2007. This was merely six weeks after ARIAD and the Institutions asserted the infringement claims on the '516 patent. Amgen also conveniently ignores how ARIAD did not initiate this litigation and only asserted these claims after receiving Amgen documents regarding its infringement of the '516 patent, which additionally showed infringement of the '374 and '090 patents.

Amgen also has not demonstrated that it will be prejudiced in its ability to defend itself against the claims on the '374 and '090 patents. This is not a case where discovery is closed or the case is on the eve of trial. The vast majority of depositions have yet to be taken. Expert discovery is several months away. Given these circumstances, Amgen only argues that it may wish to conduct additional discovery, including depositions of inventors already deposed. This is of no moment. Not only will it be more efficient to fold whatever further discovery will occur on the '374 and '090 patents into the continuing discovery in this case, Amgen will need to take this discovery no matter what, either here or in a separate case. The interests of justice, judicial efficiency and economy—as well as Amgen's professed desire to clear a "cloud" caused by ARIAD's patents—are all advanced by one proceeding at one time on one schedule.

## II. ARGUMENT

### A. ARIAD'S RECENT DISCOVERY OF IMPORTANT DOCUMENTS IS AMPLE "GOOD CAUSE" TO ALLOW AMENDMENT

Amgen does not dispute that it first produced the documents upon which the claims on the '374 and '090 patents are based on April 10, 2007 (in a production of over

500,000 pages), just three days before the deadline to amend pleadings. D.I. 293 at ¶¶ 4-5 & Ex. C. Amgen also does not dispute that upon receiving these documents, ARIAD and the Institutions acted promptly in bringing this motion. Yet Amgen argues that ARIAD should be denied the opportunity to assert the claims here because the date to amend pleadings passed on April 13, 2007—seventy-two hours after Amgen first produced its documents. The facts and applicable law, however, do not support Amgen, and confirm there is good cause.

As an initial matter, Amgen's argument that the scheduling order should be a firm barrier to any request for leave to amend runs directly contrary to the fact that ARIAD and the Institutions have already shown good cause to modify the scheduling order. In particular, in light of all the circumstances in the case, ARIAD moved to adjust the overall schedule in the case, extend discovery, and continue the trial date. D.I. 295. On June 13, the Court granted this request to modify the overall case schedule, extend the discovery period by about six months, and set a new trial date.

Even starting from first principles, the "good cause" standard under Rule 16 of the Federal Rules of Civil Procedure must be viewed in light of the liberal policy of allowing amendments to pleadings. *See Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F. Supp. 2d 430, 433 (D. Del. 2003) (rejecting argument that Rule 16(b) should preclude amendment of counterclaim after deadline had passed "[g]iven the Supreme Court's counsel to the lower federal courts to heed the liberal policy of amendment embodied in Rule 15(a)"); *Reynolds v. Borough of Avalon*, 799 F. Supp. 442, 450 (D.N.J. 1992) (courts "must consider F. R. Civ. P. 16(b)'s requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given.'").

Amgen does not cite a single case denying leave to amend when a motion was made promptly after the relevant information was obtained via discovery, within weeks of the deadline set by the scheduling order, and where the current case schedule allowed

ample time for any additional discovery the claim would require. Indeed, all of the Rule 16 cases that Amgen cites confirm that there *is* good cause here, not the opposite. Amgen's cases involve substantially longer delays that the moving party could not explain or that were found to result in substantial prejudice to the opposing party.[1]

### B. THERE IS NO ISSUE OF "UNDUE DELAY"

As noted in ARIAD's and the Institutions' opening brief, courts are very receptive to granting motions for leave to amend when the basis for the amendment is new information learned in discovery. *See, e.g., Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-06 (3d Cir. 2006) (amendment was appropriate when sought soon after relevant facts were discovered despite delay in discovering them); *CenterForce Techs., Inc. v. Austin Logistics Inc.*, 55 U.S.P.Q.2d 1124, 1128-30 (D. Del. 2000) (allowing amendment to add new patent infringement claim based on information obtained in discovery and finding no undue delay by plaintiff's waiting to obtain evidence to back up an infringement allegation where discovery had not yet closed and defendant would thus have time to prepare its defenses to the new claims before trial); *Callaway Golf*, 295 F. Supp. 2d at 433 (granting motion to amend counterclaim after deadline set forth in scheduling order based on information revealed in discovery); *Reynolds*, 799 F. Supp. at 450 (allowing leave to amend complaint to add claim for retaliatory discharge after deadline to amend pleadings).

Although ARIAD acted swiftly after discovering the documents that confirmed Amgen's infringement of the '374 and '090 patents, Amgen criticizes ARIAD's actions by

---

[1] *See Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (more than 6 month delay without explanation); *Dimensional Communications, Inc. v. Oz Optics, Ltd.*, 148 Fed. Appx. 82, 84-85 (3d Cir. 2005) (non-precedential opinion) (party seeking leave "was in possession of the facts underlying its proposed counterclaim well before the amendment deadline," but nevertheless waited until 4½ months after the deadline, resulting in prejudice to the opposing party); *Gonzalez v. Comcast Corp.*, No. Civ.A. 03-445-KAJ, 2004 WL 2009366 (D. Del. Aug. 25, 2004) (request for leave was filed over 7 months after the scheduling order deadline and after the court had ruled on summary judgment and discovery had ended, the proposed amendment would have required "substantial changes in other deadlines set forth in the scheduling order, including the trial date," and the amendment would have been "unduly prejudicial to the defendants"). The circumstances here are not comparable.

arguing that the discovery that resulted in the production of this material should have been served earlier. In making this argument, Amgen again ignores the complex threshold procedural and jurisdictional issues that were being litigated from the start of the case until the February-March 2007 timeframe. In response to Amgen's declaratory judgment suit, ARIAD moved to dismiss for lack of subject matter jurisdiction and for failure to join indispensable parties. While Judge Jordan denied the motion, the issues were so close and important that Judge Jordan certified them for immediate appellate review under 28 U.S.C. § 1292(b). D.I. 104. There were also several stays of discovery put in place to avoid the unnecessary expenditure of resources by the Court and the parties while these issues were being resolved. D.I. 61 at 3:10-23; D.I. 106 at 35-36; D.I. 120. Had ARIAD's motion been granted in the district court or as a result of an appeal, this case would have ended without the need for any discovery.[2] Given the posture of the case, which Amgen started as declaratory judgment suit, there was ample justification for ARIAD (and Amgen) to defer expensive discovery practice until the threshold jurisdictional and procedural matters were resolved. When it became clear that this case would be proceeding on the merits, ARIAD diligently commenced discovery and promptly brought this motion on receiving documents evidencing infringement.

Amgen also tries to deflect the allegations of infringement of the '374 and '090 patents by arguing that ARIAD *suspected* that Amgen was infringing before Amgen filed suit and hence should have asserted the claims earlier. Amgen's argument proves too much and ignores the difference between writing a letter regarding licensing discussions and formally asserting claims in litigation. As Amgen is well aware, Rule 11 requires a good faith basis before claims may be asserted in litigation. The district court in *CenterForce*, 55 U.S.P.Q.2d at 1128, explained how "[a]ny consideration of [undue delay] frequently necessitates an inquiry into the applicability of Rule 11" and the

---

[2] As Judge Jordan acknowledged, "if [ARIAD's] right, there is no subject matter jurisdiction, [Amgen] shouldn't be getting anything out of this case, period." D.I. 61 at 15.

acquisition of knowledge sufficient to make an amendment to a pleading. In that case, the court rejected the argument that the plaintiff had unduly delayed in seeking leave to amend by waiting for the discovery process to reveal a sufficient basis to assert claims under another patent. *Id.* ("In light of Rule 11's mandate, the Court cannot conclude that CenterForce unduly delayed asserting a claim for infringement of the '965 patent.").

**REDACTED**

Amgen's arguments regarding an alleged delay also must be placed in the context of this overall case, and where it stands currently. This motion for leave to amend was brought just weeks after the April 13, 2007 deadline set by the then-effective scheduling order. At that time, both parties recognized that discovery would need to be extended due to a variety of circumstances unrelated to this present motion. D.I. 295; D.I. 299. ARIAD requested fact discovery remain open until December 31, 2007, approximately six additional months. D.I. 295. On June 13, 2007, this Court granted the request, and continued the trial date to November 3, 2008. The Court also directed the parties to prepare a revised scheduling ordere adjusting the other dates to reflect the extension of time and modification of scheduled dates. As a result, fact discovery is expected to remain open until the end of the year, initial expert reports will be exchanged thereafter, and a summary judgment/claim construction hearing likely will take place in the May or June 2008. Simply put, this is not an eleventh hour motion to amend, but rather a motion brought immediately after obtaining pertinent information and six weeks after the deadline set forth in a now-superseded scheduling order.

---

**REDACTED**

Even if the Court were to accept Amgen's incorrect arguments on delay, this is insufficient to deny leave to amend. The cases under Rule 15 of the Federal Rules of Civil Procedure recognize the well-established rule that "delay alone is an insufficient ground to deny leave to amend." *Cureton v. Nat'l Collegiate Athletic Assoc.*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, cases in which leave is denied uniformly involve not only extended delays (measured in *years*, not weeks or months), but also other extenuating circumstances, such as substantial prejudice to the non-moving party. *See id.* at 273-74 (motion for leave was made post-judgment, 3 years after the complaint was filed, 2½ years after the factual information on which the proposed amendment relied upon was known, and would have been detrimental to the cause of judicial efficiency and the interest in the finality of proceedings, as well as unduly prejudicial to the non-moving party). The cases on which Amgen relies are thus inapposite.[4]

### C. ARIAD'S GOOD FAITH IN SEEKING LEAVE CANNOT BE QUESTIONED

Amgen also casts aspersions on ARIAD by questioning its motivation in seeking leave to amend. Amgen contends ARIAD has brought this motion in "less than good faith." D.I. 317 at 14-15. Amgen's spurious assertions are without basis, and regrettably

---

[4] *See USX Corp. v. Barnhart*, 395 F.3d 161, 167-69 (3d Cir. 2004) (finding interests of judicial economy and finality of litigation particularly compelling as motion for leave was made after adverse party had been granted summary judgment and after more than 3-year delay); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (involving 3-year delay in seeking to amend, where party seeking leave had failed to take advantage of numerous prior opportunities to amend and the proposed amendment was futile); *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361 (D. Del. 2006) (motion for leave to amend made approximately 4 years after suit was filed, 3 years after the close of discovery and deadline for amending pleadings, and 2½ years after the Markman hearing was granted in part and denied in part; as to the portion denied, the court found that defendant had delayed more than 2 years from the time it had the information upon which its amendment was based before seeking leave without any reasonable explanation and that the amendment would unduly prejudice the other party given the late stage of the proceeding); *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858, 862-64 (D. Del. 1982) (granting in part and denying in part motion to amend; as to the portion denied, the court found plaintiff had obtained legal opinion confirming claim was cognizable approximately 2½ years before seeking leave to amend); *In re Liberty Logistics, LLC*, 320 B.R. 291 (Bankr. E.D. Pa. 2005) (leave to amend was sought well after the close of discovery and just weeks before trial and would have resulted in unfair prejudice to the defendant).

reveal the depths to which Amgen will sink to avoid having to respond on the merits to its infringement of the '374 and '090 patents.

First, Amgen asserts that "[t]he timing of ARIAD's motion suggests that this move is the latest in ARIAD's campaign to delay this case." D.I. 317 at 14. The fundamental flaw in Amgen's position is that ARIAD and the Institutions have not sought to extend the Scheduling Order by any additional amounts based on the addition of the '374 and '090 patents to this case. D.I. 295. Any claims regarding the '374 and '090 patents can be litigated and tried on the same schedule as the claims relating the '516 patent.

Second, Amgen makes the ill-tempered allegation that the timing of ARIAD's discovery in the case is "equivalent to bad faith." While there is room to debate the substantial procedural and jurisdictional issues that were presented in response to Amgen's declaratory judgment suit, there is no room to argue that ARIAD's decision to defer discovery until the resolution of those issues is "unexplained" or in bad faith. Judge Jordan's stays of proceedings at various points, and his certification of issues for interlocutory appeal, are testaments to the reasonableness of ARIAD's refraining from engaging in expensive discovery at that time. Amgen too refrained from discovery, not pursuing a single deposition until after the Court established a new Scheduling Order in February 2008. While ARIAD was not ultimately successful in obtaining dismissal based on a lack of subject matter jurisdiction, its pursuit of bona fide procedural remedies intended to dispose of the litigation cannot establish dilatory motive or anything "equivalent to bad faith."

Finally, Amgen asserts that "ARIAD cannot square its current efforts to greatly expand this case with its prior protestations that it had no money to litigate even Amgen's original declaratory judgment claims." D.I. 317 at 14. While it is no secret that ARIAD would have preferred to spend its limited resources researching rather than litigating, it did not have a choice in the matter. Amgen brought this declaratory judgment against

ARIAD, forcing the litigation when it was not dismissed. Now that it is clear the claims will be addressed on their merits, and the parties are engaged in discovery, Amgen cannot seriously expect ARIAD to ignore concrete evidence that Amgen is infringing other patents in the same family as the '516 patent. ARIAD's pursuit of those claims, when presented with evidence of blatant infringement, is neither an "about-face" nor evidence of bad faith.

### D. THE PROPOSED AMENDMENT WILL NOT RESULT IN PREJUDICE

The only argument that Amgen advances to show "undue prejudice" is that the claims of the '374 and '090 patents differ from those of the '516 patent and additional discovery will be required if those patents are included in the case. Amgen's argument misses the mark. The question in determining "prejudice" is not whether the new claims will entail some additional work or discovery, but rather whether Amgen will be prejudiced in its ability to defend against the claims. Amgen's argument also ignores the similarities of the patents and the substantial efficiency that would be gained.

First, the notion that a party may need to conduct additional discovery in response to an amendment is not sufficient to block that amendment. If it were, then few amendments would ever be allowed, contrary to the policy of extreme liberality embraced in Rule 15. The Third Circuit has made this point clear, rejecting the argument that a proposed amendment which may require additional discovery or delay the resolution of a case is a sufficient basis for denying leave to amend. *See, e.g., Adams v. Gould Inc.*, 739 F.2d 858, 869 (3d Cir. 1984) (granting leave to amend over objection that amendment would increase counsel fees, delay the end of the case, and thwart "finality" in the litigation process); *CenterForce*, 55 U.S.P.Q.2d at 1129 (necessity of extending deadlines did not merit denial of leave to amend); *Barkauskie v. Indian River Sch. Dist.*, 951 F. Supp. 519, 528 (D. Del. 1996) (need for additional discovery will not cause prejudice where non-moving party can take such discovery).

In order to show prejudice, Amgen "must demonstrate that its ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990); *see also Arthur*, 434 F.3d at 206-07 (delay did not support denial of leave to amend where it did not impair non-moving party's "ability to defend against the suit"); *Trueposition, Inc. v. Allen Telecom, Inc.*, No. CIV.A.01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002) ("To show undue prejudice [opposing party] must demonstrate that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence unless leave to amend is denied." (internal quotations omitted)). Amgen does not, and cannot, make any such showing.

In any event, the Court's revision to the scheduling order provides ample opportunity for Amgen to seek additional discovery should any such discovery be necessary. This is not a case where discovery has closed or the trial is within a few months. *See Miller Prods. Co. v. Veltek Assocs.*, 218 F.R.D. 425 (D. Del. 2003) (denying leave when "discovery is now closed" and trial was set for four months later). The parties are in the midst of conducting discovery and are scheduling a multitude of depositions.

While Amgen focuses on the differences in the patents, Amgen sidesteps the key issue—whether it is more efficient to litigate all of the patents in this case or to break them apart in two separate suits. Either way, Amgen will be required to defend ARIAD's claims of infringement of the '374 and '090 patents. Either way, Amgen will be required to conduct all necessary discovery. Yet there would be substantial efficiency gained from litigating the three patents in a single suit. The '516 patent concerns the use of products such as Enbrel and Kineret to reduce NF-kB activity, whereas the '374 and '090 patents concern techniques used for identifying agents or compounds that modulate NF-kB activity— **REDACTED**
For all the witnesses who have not yet been deposed and may have information pertinent to both the '516 patent and the '374 or '090 patents (or the activities that are alleged to infringe these patents), it is far

superior to have these witnesses deposed once and, where applicable, attend one trial. Moreover, even as to the inventors whose depositions may need to be reopened, it is likely to be far less burdensome on all concerned for them to provide a few additional hours of deposition testimony now than it would be to provide potentially a full day of deposition testimony in a separate lawsuit.

Finally, as previously noted in ARIAD's and the Institutions' opening brief, courts in this district have observed that where there is an overlap in subject matter between the existing claims and proposed additional claims, it is beneficial to resolve the claims in a single proceeding, even when the amendment would result in far more additional discovery than here. *See, e.g., Micron Tech., Inc. v. Rambus, Inc.*, 409 F. Supp. 2d. 552, 558-59 (D. Del. 2006) (rejecting argument that additional work necessitated by adding 4 patents would result in undue prejudice); *Trueposition*, 2002 WL 15588531, at *2-3 (additional complexity of action and potential for delay in resolution of case caused by the addition of 4 patents were "vague and mild assertions of prejudice" that did not rise to the required level of proof where "the newly asserted patents relate to the same accused products and technology as the originally asserted patents"); *see also CenterForce*, 55 U.S.P.Q.2d at 1129 (while adding patent means that "some additional discovery will be needed, the Court does not believe this need for additional discovery creates 'undue prejudice' within the meaning of *Foman*").

### E. THE PROPOSED AMENDMENT IS IN THE INTERESTS OF JUSTICE

Amgen's final argument that justice would not be served by granting leave to amend is based on an assumption that this amendment was brought for purposes of delay and would lengthen the present litigation and resolution of its claims regarding the '516 patent. This assumption is unfounded. Adding the '374 and '090 patents to this case is not intended to delay and would not delay trial of the present claims regarding the '516 patent, which is currently scheduled for November 2008. To the contrary, to the extent

that Amgen truly desires to clear whatever "cloud" it sees hanging over Enbrel and Kineret, adding the '374 and '090 patents to the instant litigation will expedite that process,

**REDACTED**

Thus, by consolidating litigation involving the three patents, all parties will be able to achieve a final resolution of their disputes pertaining to Enbrel and Kineret, rather than resolving issues pertaining to only the '516 patent, while other patent infringement issues loom.

Moreover, as this Court has recognized, there are substantial benefits that stem from allowing a patent holder to amend its pleadings to include additional patents based on similar technology or products. *See, e.g., Micron*, 409 F. Supp. 2d at 558-59 & n.2 (granting leave to add patents and products to suit where the additional patents related to "the same subject matter as the patents-in-suit" and observing there would be overlap with already completed preparation of claims); *Trueposition*, 2002 WL 1558531, at *2 (given the overlapping technology between the existing and proposed patents, "it would be economically beneficial to the parties to resolve all issues in a single proceeding" and "judicial economy weighs in favor of granting the motion to amend"). Consolidating litigation involving the three patents provides for efficient use of judicial resources, particularly given the complexity of the underlying technology and the need to familiarize the Court with the technology. It is also beneficial to those witnesses who possess knowledge relevant to claims involving all three patents and provides for consistent claim interpretation and resolution of factual and legal issues.

## III. CONCLUSION

ARIAD and the Institutions respectfully submit that the claims based on recently discovered evidence are best resolved in the context of this case at this time, not a separate lawsuit. The Court should grant leave to file the two additional counterclaims against Amgen Inc. for infringement of the '374 and '090 patents.

           ASHBY & GEDDES

           */s/ Steven J. Balick*

           Steven J. Balick (I.D. #2114)
           John G. Day (I.D. #2403)
           Tiffany Geyer Lydon (I.D. #3950)
           500 Delaware Avenue, 8th Floor
           P.O. Box 1150
           Wilmington, DE 19899
           Telephone: (302) 654-1888
           sbalick@ashby-geddes.com
           jday@ashby-geddes.com
           tlydon@ashby-geddes.com

           *Counsel for ARIAD Pharmaceuticals, Inc., the Massachusetts Institute of Technology, the President & Fellows of Harvard College, and the Whitehead Institute for Biomedical Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth L. Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Dated: June 20, 2007

1708131