# YOUNG CONAWAY STARGATT & TAYLOR, LLP

MELANIE K. SHARP
DIRECT DIAL: (302) 571-6681
DIRECT FAX: (302) 576-3333
msharp@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

July 23, 2007

The Honorable Mary Pat Thynge
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

**BY E-FILE**

Re:   *Amgen, Inc. et al. v. ARIAD Pharmaceuticals, Inc.*
      C. A. No.: 06-259 (MPT)

Dear Judge Thynge:

    Defendants' aspersions aside, Amgen has fully complied with the Court's June 4 Order and its obligation to produce relevant discovery under the Federal Rules. In fact, Amgen has produced all documents that are relevant to the issues in this case -- *e.g.*, Defendants' patent claims, the accused products, or intracellular activities that are purportedly implicated by the patent claims or by use of the accused products. Nevertheless, Defendants contort the Court's prior ruling to argue that it required Amgen to produce all documents having anything to do with two molecules (TNF and IL-1) that are omnipresent in the biochemistry of humans and many other living beings, without regard to the relevance these documents might have to this case and, in particular, to the accused products Enbrel and Kineret. Indeed, freed of any logical nexus to the products-at-issue, a document collection as sought by ARIAD would require individual searches of literally thousands of research employees. This overly broad scope of discovery was not the subject of the Court's order, and is in fact well beyond what Defendants themselves have produced from their own files. Defendants' latest motion to compel must be denied.

    As an initial matter, Defendants have misconstrued the Court's prior statements on what Amgen should produce. Defendants cite, out-of-context, a comment by the Court allowing discovery "as described by Mr. Gindler" to now argue for discovery that the Court did not order. The full quote to which Defendants refer is as follows:

> First of all, the documents about the biological activity studies in cells and cultures and ***what happens with Kineret and Enbrel in cells*** I'm going to allow as described by Mr. Gindler.

(D.I. 311 at 35) (emphasis added). The Court subsequently elaborated on this point, stating that Amgen should produce (to the extent such documents exist):

> …the testing documents about Enbrel and Kineret and what happens when Enbrel and Kineret are used in cells because it's been pointed out to me that there is testing done at different levels and you don't just test constantly on humans but you try to find out how these drugs work and why they work. And it's not just at the human level. To the extent that those documents exist in the biological activity of these Kineret, Enbrel in cells to evaluate in

YOUNG CONAWAY STARGATT & TAYLOR, LLP
July 23, 2007
Page 2

> figuring out how they would eventually work in patients, cell culture, I'm allowing that discovery.

(D.I. 311 at 37-38) (emphasis added). As this second statement makes particularly clear, the Court's rulings were focused on the products-at-issue, **_Enbrel and Kineret_** -- <u>not</u> documents from other products or research areas as Defendants now argue. Nevertheless, Defendants now focus exclusively on the single reference to "as described by Mr. Gindler," and ignore the repeated references in the Court's ruling to the products-at-issue. The Court order is not directed to **_everything_** that Mr. Gindler has ever described, including irrelevant documents that bear no nexus to Enbrel or Kineret. The prior issue dealt with whether Amgen had to produce animal and cell culture experiments based on Enbrel and Kineret, and the Court ruled that such documents (if they existed) had to be produced regardless of whether they mentioned NF-κB.[1] The Court's order did not require Amgen to search throughout the company for any mention of TNF or IL-1 or NF-κB -- documents relating these molecules to the products-at-issue had already been collected and produced. Defendants' letter is further replete with mischaracterizations of facts[2] and improper assumptions regarding key issues in dispute,[3] through which Defendants attempt to support the overly broad discovery that they now demand.

Indeed, Defendants latest letter seems to flip-flop on the position they adopted in the last teleconference on June 4. During that hearing, Mr. Gindler acknowledged that it would be "absurd" to ask Amgen to produce all documents related to NF-κB:

> We have not simply asked for give me all your documents about NF kappa B. That would be an absurd request.

(D.I. 311 at 32). Defendants' latest letter now seeks to impose a similarly "absurd" discovery burden on Amgen to search for documents that have nothing to do with whether the products-at-issue infringe the asserted patent claims in this case. Amgen therefore requests that the Court confirm the reasonable scope of its prior order.

---

[1] Defendants suggest that, because the recent productions of documents from Amgen have been relatively small compared to its prior productions, this somehow proves that Amgen has not complied with the Court's June 4 Order. The explanation, of course, is that the vast majority of responsive documents had been produced in the hundreds of thousands of pages originally produced by Amgen.

[2] Defendants, for example, claim that Enbrel is a tumor necrosis factor receptor ("TNFR") (see page 2, "Amgen must produce all documents...showing whether a TNF receptor (TNFR) such as Enbrel....") and that Kineret is nothing more than a naturally-occurring IL-1 receptor antagonist. As explained in the tech tutorial, however, Enbrel is a novel product formulation that includes an Fc portion of an antibody fused to a portion of a TNF-receptor. Similarly, Kineret is a formulation that includes, among other things, an IL-1 receptor antagonist,. To describe Enbrel and Kineret as nothing more than a TNFR and IL-1 receptor antagonist, respectively, is simplistic and inaccurate, particularly when there exist many types of TNFRs and IL-1 receptor antagonists.

[3] Virtually the entire third paragraph on the first page of Defendants' letter assumes away key issues in dispute. It is Defendants' burden to show a link, if any, between administration of Enbrel and Kineret and reduction of NF-κB activity. This issue is a key one in dispute, and therefore Defendants' bald statements that "Amgen's drug, Enbrel...inhibits NF-κB activity..." and "Kineret...inhibits NF-κB activity..." are manifestly improper.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
July 23, 2007
Page 3

    Amgen has fully complied with the scope of the Court's prior order, in addition to complying with the rest of its discovery obligations in this case. Amgen has conducted a reasonable search related to the products-at-issue, by (among other things) going to the groups that work on Enbrel and Kineret and gathering their documents. To be clear, Amgen **has not** limited its production of documents from these groups to those mentioning the words Enbrel or Kineret. To the extent documents from these groups have anything to do with the activities of TNF, IL-1, or NF-κB, these documents have been produced.[4] The hundreds of thousands of pages produced by Amgen are a testament to its extensive efforts to produce relevant documents.

    Where the dispute really appears to arise between the parties is *not* with respect to the scope of production from persons at Amgen working on Enbrel and Kineret, but rather whether the same broad discovery net needs to be cast throughout the entire company to capture documents *unrelated* to Enbrel and Kineret. In this respect, Defendants' request amounts to nothing more than an attempt to engage in a fishing expedition across the nearly 20,000 employees of Amgen located worldwide -- to groups that are not working on Kineret, Enbrel, or even the diseases for which these products are approved (*e.g.*, rheumatoid arthritis). TNF and IL-1 have been investigated in a wide variety of diseases -- including various forms of cancer, diabetes, Alzheimer's disease, psoriasis, asthma, and many others. Not surprisingly, Amgen (just like any other drug company) has wide-ranging research in these areas. Defendants' effort to get access to all of these documents cannot be explained by any possible relevance to the issues in this case -- these documents are quite simply not relevant. Indeed, all this discovery would accomplish is to impose an enormous burden on Amgen to review essentially every document in the company for any mention of TNF or IL-1, two molecules that play a role in a vast number of complex biological processes.

    Tellingly, Defendants have not even attempted to produce ***their own documents*** relating to TNF or IL-1, despite the fact that at least a dozen research groups at Harvard, MIT and the Whitehead list these molecules among their research interests on their websites. Defendants' attempt to create a one-way obligation on Amgen to produce all TNF and IL-1 documents, while taking the position that such a request is oppressive when applied to their own documents, illustrates how hollow their position is on this motion. Amgen is not interested in mutually-assured discovery destruction that imposes ridiculous burdens on both sides. Discovery should be limited to the documents and people that have something to do with the patent, products, and other issues, such as damages, implicated by allegations pled in this case.

    Defendants cannot cite this Court's rulings out of context to create discovery burdens on Amgen that are far beyond anything contemplated by the Federal Rules or this Court. Defendants should not be able to create a one-way discovery burden on Amgen to sweep the entire company for documents having nothing to do with the patent or products-in-suit. Defendants' request to greatly expand the scope of discovery well beyond any reasonable limits should be denied.

---

[4] In other words, to the extent documents are within the groups at Amgen that have worked on the products-at-issue in this case, all of the types of documents outlined in Defendants' letter (e.g. relating to intracellular mechanisms of TNF, IL-1, and NF-κB) have been produced.

Young Conaway Stargatt & Taylor, LLP
July 23, 2007
Page 4

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

MKS

cc: Clerk of the Court (Hand Delivery)
    John G. Day, Esquire (via e-mail)
    Frederick L. Cottrell, III, Esquire (via e-mail)
    David I. Gindler, Esquire (via e-mail)
    Charles E. Lipsey, Esquire (via e-mail)