# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

July 20, 2007

**REDACTED
PUBLIC VERSION**

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware  19810

**VIA ELECTRONIC FILING**

Re:    *Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.,* C.A. No. 06-259-MPT

Dear Judge Thynge:

We write on behalf of ARIAD Pharmaceuticals, Inc. ("ARIAD") regarding Amgen's continuing failure to provide the basic technical discovery the Court ordered at the June 4, 2007 discovery hearing. *See* Ex. 1 (D.I. 311, transcript); Ex. 2 (D.I. 296, ARIAD May 30 letter).

At the June 4 hearing, the Court directed Amgen to produce technical and testing documents.  ARIAD believed that the Court's rulings had put these discovery issues behind us, but unfortunately they did not.  Over a month and a half later, Amgen still has not complied with the Court's order.  Indeed, to our surprise, after the parties and the Court had invested considerable effort to litigate ARIAD's motion to compel, which the Court granted, Amgen indicated that its production was already complete except for only a handful of additional technical documents.  It quickly became apparent in ensuing meet and confer discussions that Amgen was taking the same positions that the Court had rejected, and crafting its own narrow interpretation of the Court's comments at the hearing to avoid providing further discovery.  Ex. 3 (Gindler June 14, 2007 letter to Sernel); Ex. 4 (Sernel June 26, 2007 response).

As discussed at the June 4 hearing and the tutorial, the '516 patent generally concerns methods of inhibiting NF-κB activity.  TNF and IL-1 induce NF-κB activity in a cell when they bind to receptors on the surface of the cell.  Amgen's drug Enbrel, a TNF receptor, inhibits NF-κB activity at least by binding to TNF and preventing TNF from attaching to cell surface receptors.  Kineret, an IL-1 receptor antagonist, inhibits NF-κB activity at least by attaching to cell surface receptors, preventing IL-1 from doing so.

An important area of technical discovery in this case thus is Amgen's knowledge of what happens when TNF or IL-1 binds to a cell surface receptor.  What cell signaling activity occurs, and how does that signaling activity relate to NF-κB?  What happens when TNF receptors like Enbrel and IL-1 receptor antagonists like Kineret stop TNF and IL-1 from binding to a cell surface receptor?  What mechanisms inside the cell are disrupted?  Discovery regarding Amgen's

The Honorable Mary Pat Thynge
July 20, 2007
Page 2

knowledge and understanding on these topics is central to proving that Amgen's activities with respect to Enbrel and Kineret constitute infringement of the asserted claims of the '516 patent and whether that infringement is willful. And Amgen undoubtedly has documents on these important subjects. For example, David Goeddel of Amgen's Tularik group has been deeply involved in research regarding the role that TNF plays in inducing NF-κB activity. Ex. 5 (*Science* article, AM-AR0511439-440)[1]; Ex. 6 ("landmark" research, ARI 82209-10).[2]

These topics were discussed at length at the June 4 hearing. First, Amgen refused to provide discovery on cell culture experiments. The Court rejected Amgen's position. D.I. 311 at 37:21-38:7 ("To the extent that those documents exist in the biological activity of these [drugs] Kineret, Enbrel in cells to evaluate in figuring out how they would eventually work in patients, cell culture, I'm allowing that discovery."). Second, Amgen refused to produce documents concerning the relationship of TNF or IL-1 to NF-κB that did not *specifically* relate to Enbrel or Kineret. As ARIAD's counsel, David Gindler, explained: "What we want to understand is exactly what is happening when Enbrel and Kineret stop TNF and IL-1 from attaching to a cell surface receptor? What signaling activity is stopped or not stopped? Does it include NF kappa B activity or does it not include NF kappa B activity? If it does include NF kappa B activity, what does it do?" D.I. 311 at 31:21-32:2. Mr. Gindler elaborated that "[a]ll that [Amgen is] going to give ARIAD is a document which, on its face, shows a connection between Enbrel and NF kappa B. Well, what happens, for example, to all the documents that show, for example, that when TNF does bind to a cell surface receptor, the act that Enbrel tries to stop, that it causes NF kappa B activity? Where are the documents that show what happens when TNF binds to a cell surface receptor? What else happens? What pathway is induced? Does that pathway intersect with NF kappa B, or not?" D.I. 311 at 34:22-35:6.

The Court expressly adopted ARIAD's formulation of the relevant technical documents: "First of all, the documents about the biological activity studies in cells and cultures and what happens with Kineret and Enbrel in cells I'm going to allow *as described by Mr. Gindler.*" D.I. 311 at 35:18-21, emphasis added. Yet Amgen persists in refusing to produce technical or testing documents unless they specifically refer to Enbrel or Kineret. Amgen is continuing to invoke word games to disregard the Court's order and hamper ARIAD's ability to conduct discovery.

Amgen must produce all documents relating to any experiment, testing or research showing whether a TNF receptor ("TNFR") such as Enbrel or an IL-1 receptor antagonist ("IL-1Ra") such as Kineret affects NF-κB activity, irrespective of whether the experiment, testing, or research was performed on patients or on cells. This includes any experiment, testing or research

---

[1] "TNF-induced activation of NF-κB relies on phosphorylation-dependent ubiquitination and degradation of inhibitor of kB (IkB) proteins, which normally retain NF-κB within the cytoplasm of unstimulated cells. The past 5 years have witnessed tremendous advances in our understanding of this branch of the TNF signaling network."

[2] "Several key inflammatory response genes are regulated by a single transcription factor, NF-κB. Our scientists have discovered numerous novel regulatory proteins in the gene regulation pathways leading from the tumor necrosis factor [TNF] and interleukin-1 [IL-1] receptors and have elucidated their roles in NF-κB activation. On the basis of these landmark discoveries, our scientists are recognized as leaders in this field of research."

The Honorable Mary Pat Thynge
July 20, 2007
Page 3

relating to (i) whether TNF or IL-1 induces or stimulates NF-κB activity in cells; and (ii) whether TNFR or IL-1Ra reduces or inhibits NF-κB activity in cells, including but not limited to cells where NF-κB activity has been induced or stimulated by TNF or IL-1. Because of Amgen's myopic focus in discovery matters, we are using the terms TNFR and IL-1Ra to ensure that Amgen has not withheld documents on ground that the particular TNFR in any experiment, testing, or research was not the commercially approved formulation of Enbrel, or that the particular IL-1Ra in any experiment, testing, or research was not the commercially approved formulation of Kineret. For example, TNFR would include Amgen's soluble TNF receptor, referred to as sTNF-RI.

Although the Court already has ordered Amgen to provide this discovery, we must request that the Court direct that Amgen comply with the Court's previous Order and immediately locate and produce all technical documents covered by the Court's June 4 ruling. This includes, without limitation, the testing documents previously described, and Amgen's documents relating to what happens when TNF and IL-1 bind to cell surface receptors, and whether TNFR and IL-1Ra reduce NF-κB activity when they prevent TNF and IL-1 from binding to cell surface receptors. For example, if Amgen has documents relating to whether TNF and IL-1 affect NF-κB activity when they bind to cell surface receptors—even if those documents do not specifically relate to Enbrel or Kineret (such as documents relating to work performed by David Goeddel and others)—those documents must be produced. Similarly, if Amgen has documents relating to whether TNFR or IL-1Ra reduce NF-κB activity, including NF-κB activity induced when TNF or IL-1 bind to cell surface receptors, those documents must be produced. Moreover, all such documents must be produced, irrespective of whether they relate to cells in culture or patients in disease states.

The vigor with which Amgen fought ARIAD's previous motion to compel, and the narrow constructions of this Court's comments and ARIAD's discovery requests, belie Amgen's position that it has complied with the Court's order and has no additional technical documents. Indeed, among the handful of pages of documents produced right after the Court's order granting ARIAD's motion to compel, was a document (Bates labeled AM-AR20000767) **REDACTED** **REDACTED** How could such a document possibly not have been produced earlier? In meet and confers, Amgen called this research "peripheral." But if a document that mentions **REDACTED** squarely within Amgen's own view of what had to be produced—is somehow "peripheral," one can only imagine what is not being reviewed, collected and provided in discovery. (Amgen still has not produced all relevant FDA documents concerning Enbrel and Kineret, either.)

Amgen's failure to comply with the Court's order on technical documents has resulted in a fundamental dispute that has proliferated to other discovery. In addition to refusing to produce documents, Amgen has also refused to provide deposition discovery on the same basis. When ARIAD served a Rule 30(b)(6) deposition notice on these technical subjects, Amgen has insisted that its corporate designee will not provide testimony regarding testing and conclusions relating to TNF/IL-1 and NF-κB if the testing does not directly involve Enbrel or Kineret. Ex. 7.

We appreciate the Court's assistance in securing compliance with the Court's June 4, 2007 Order regarding technical and testing discovery.

The Honorable Mary Pat Thynge
July 20, 2007
Page 4

Respectfully,

/s/ Lauren E. Maguire

Lauren E. Maguire

LEM/dmf
Enclosures
182466.1

cc:    David I. Gindler, Esquire (via electronic mail; w/encs.)
       Melanie K. Sharp, Esquire (by hand and via electronic mail; w/encs.)
       Marcus E. Sernel, Esquire (via electronic mail; w/encs.)
       Frederick L. Cottrell, III, Esquire (by hand and via electronic mail; w/encs.)
       Charles E. Lipsey, Esquire (via electronic mail; w/encs.)
       Robert D. Bajefsky, Esquire (via electronic mail; w/encs.)

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

# REDACTED

# EXHIBIT 3

# REDACTED

# EXHIBIT 4

# REDACTED

# EXHIBIT 5

MAPPING CELLULAR SIGNALING
VIEWPOINT

# TNF-R1 Signaling: A Beautiful Pathway

Guoqing Chen and David V. Goeddel*

Tumor necrosis factor (TNF) is a major mediator of apoptosis as well as inflammation and immunity, and it has been implicated in the pathogenesis of a wide spectrum of human diseases, including sepsis, diabetes, cancer, osteoporosis, multiple sclerosis, rheumatoid arthritis, and inflammatory bowel diseases. The interaction of TNF with TNF receptor–1 (TNF-R1) activates several signal transduction pathways. A common feature of each pathway is the TNF-induced formation of a multiprotein signaling complex at the cell membrane. Over the past decade, many of the components and mechanisms of these signaling pathways have been elucidated. We provide an overview of current knowledge of TNF signaling and introduce an STKE Connections Map that depicts a canonical view of this process.

The anticancer activity now known as tumor necrosis factor (TNF) was first described more than a century ago. However, it wasn't until 1984 that human TNF was purified and its encoding cDNA was cloned and expressed. The subsequent availability of recombinant TNF led to a rapid cataloging of TNF's pleiotropic activities.

In addition to triggering apoptosis of certain tumor cells, TNF mediates the inflammatory response and regulates immune function. Inappropriate production of TNF or sustained activation of TNF signaling has been implicated in the pathogenesis of a wide spectrum of human diseases, including sepsis, cerebral malaria, diabetes, cancer, osteoporosis, allograft rejection, and autoimmune diseases such as multiple sclerosis, rheumatoid arthritis, and inflammatory bowel diseases.

In the past dozen years, the molecular details of signal transduction by TNF gradually have been unveiled. The TNF Pathway Connections Map (http://stke.sciencemag.org/cgi/cm/CMP_7107) at *Science*'s Signal Transduction Knowledge Environment presents current knowledge of the pathway's components and connections between them (1). Today, our understanding of the TNF signaling network provides a paradigm for elucidating the signaling pathways utilized by other TNF-related proteins and their receptors (2). This understanding has also led to the development of novel therapies that neutralize the deleterious effects of TNF for treatment of recalcitrant inflammatory conditions such as rheumatoid arthritis (3).

TNF is a homotrimer of 157 amino acid subunits primarily produced by activated macrophages. TNF signals through two distinct cell surface receptors, TNF-R1 and TNF-R2. Multiple experimental approaches have revealed that TNF-R1 initiates the majority of TNF's biolog-

Tularik Inc., Two Corporate Drive, South San Francisco, CA 94080, USA.

*To whom correspondence should be addressed. E-mail: goeddel@tularik.com

ical activities. The binding of TNF to TNF-R1 triggers a series of intracellular events that ultimately result in the activation of two major transcription factors, nuclear factor κB (NF-κB) and c-Jun. These transcription factors are responsible for the inducible expression of genes important for diverse biological processes, including cell growth and death, development, oncogenesis, and immune, inflammatory, and stress responses.

The initial step in TNF signaling (1) involves the binding of the TNF trimer to the extracellular domain of TNF-R1 and the release of the inhibitory protein silencer of death domains (SODD) from TNF-R1's intracellular domain (ICD). The resulting aggregated TNF-R1 ICD is recognized by the adaptor protein TNF receptor–associated death domain (TRADD), which recruits additional adaptor proteins receptor-interacting protein (RIP), TNF-R–associated factor 2 (TRAF2), and Fas-associated death domain (FADD). These latter proteins recruit key enzymes to TNF-R1 that are responsible for initiating signaling events (Fig. 1). For instance, caspase-8 is recruited by FADD to the TNF-R1 complex, where it becomes activated, presumably by self-cleavage, and initiates a protease cascade that leads to apoptosis. TRAF2 recruits cellular inhibitor of apoptosis protein-1 (cIAP-1) and cIAP-2, two anti-apoptosis proteins that also have ubiquitin protein ligase activity. TRAF2 is also thought to activate a mitogen-activated protein kinase kinase kinase (MAPKKK), such as

extracellular signal–regulated kinase kinase kinase 1 (MEKK1) or apoptosis-stimulated kinase 1 (ASK1), in a complex at or near the receptor, thereby activating a cascade of kinases resulting in the activation of c-Jun NH$_2$-terminal kinase (JNK), a kinase that phosphorylates c-Jun and increases its transcriptional activity. Finally, the protein kinase RIP is critical to the functioning of a third arm of the TNF signaling network, the activation of the transcription factor NF-κB. However, the enzymatic activity of RIP is not required for TNF-induced activation of NF-κB.

TNF-induced activation of NF-κB relies on phosphorylation-dependent ubiquitination and degradation of inhibitor of κB (IκB) proteins,



**Fig. 1.** TNF signal transduction pathway. Engagement of TNF with its cognate receptor TNF-R1 results in the release of SODD and formation of a receptor-proximal complex containing the important adaptor proteins TRADD, TRAF2, RIP, and FADD. These adaptor proteins in turn recruit additional key pathway-specific enzymes (for example, caspase-8 and IKKβ) to the TNF-R1 complex, where they become activated and initiate downstream events leading to apoptosis, NF-κB activation, and JNK activation.

Non Confidential    AM-AR0511439

MAPPING CELLULAR SIGNALING

which normally retain NF-κB within the cytoplasm of unstimulated cells. The past 5 years have witnessed tremendous advances in our understanding of this branch of the TNF signaling network. Especially noteworthy was the identification of the multiprotein IκB kinase (IKK) complex that mediates phosphorylation of IκB in a TNF-dependent manner (4). The core of the IKK complex consists of two catalytic subunits, IKKα and IKKβ, and a regulatory subunit, NF-κB essential modulator (NEMO, or IKKγ). In addition, the IKK complex contains a kinase-specific chaperone consisting of Cdc37 and Hsp90 that plays a role in shuttling the complex from the cytoplasm to the membrane. The IKK complex is also recruited to TNF-R1, where it becomes activated within minutes of TNF treatment. This activation depends on RIP, indicating that the IKK activation within the receptor complex likely occurs through a RIP-dependent intermediate factor, perhaps a kinase. Gene knockout studies in mice have established essential roles for IKKβ in TNF-induced activation of NF-κB, and for NEMO in regulation of IKK complex activation in response to numerous upstream signals. In contrast, IKKα plays only a minor role in TNF-induced activation of NF-κB, but it has other important functions, such as serving as a NF-κB2/p100 kinase in B cells.

An interesting feature of the TNF signaling network is the existence of extensive cross talk between the apoptosis, NF-κB, and JNK signaling pathways that emanate from TNF-R1. In the absence of NF-κB activity, cellular susceptibility to TNF- induced apoptosis increases, whereas enforced activation of NF-κB protects against apoptosis. Similarly, TNF-induced JNK activation is stronger and more prolonged in cells lacking NF-κB, and the products of several NF-κB–activated genes inhibit activation of JNK by TNF. Moreover, NF-κB activation prompts the resynthesis of IκB and other inhibitory molecules, such as the cIAPs, thereby adding another layer of regulation of the duration and amplitude of TNF signaling.

To date, most of the players in the TNF pathway have been validated by both biochemical and genetic means, thus providing a rich source of potential drug targets for the development of a new generation of anti-inflammatory agents. However, many questions remain unanswered. For example, what MAPKKK initiates the kinase cascade that activates JNK, and how is this kinase recruited to TNF-R1 and activated within the receptor complex in response to TNF? In the case of IKK complex activation, the possibility remains that an intermediate factor or kinase is required between RIP and NEMO. Unraveling the molecular details of how the enzymes like caspase-8 and the IKK complex become activated within the TNF-R1 complex will be key to a full understanding of the dynamic nature of TNF signaling. Finally, the molecular basis for cross talk between TNF-mediated apoptosis, NF-κB, and JNK signaling pathways is not well understood. Deciphering these puzzles will greatly help interpret how a specific outcome of TNF signaling is achieved in distinct biological contexts.

References

1. G. Chen, D. V. Goeddel, TNF Pathway, Science's STKE (Connections Map, as seen May 2002), http://stke.sciencemag.org/cgi/cm/CMP_7107.
2. R. M. Locksley, N. Killeen, M. J. Lenardo, Cell 104, 487 (2001).
3. M. Feldmann, R. N. Maini, Annu. Rev. Immunol. 19, 163 (2001).
4. S. Ghosh, M. Karin, Cell 109, S81 (2002).

VIEWPOINT

# The Fas Signaling Pathway: More Than a Paradigm

Harald Wajant*

Apoptosis and related forms of cell death have central importance in development, homeostasis, tumor surveillance, and the function of the immune system. Apoptosis is initiated by two principal pathways. The intrinsic pathway emerges from mitochondria, whereas the extrinsic pathway is activated by the ligation of death receptors. This Viewpoint introduces the basic mechanisms of the extrinsic pathway, using the example of the prototypical death receptor Fas and its role in apoptosis, but it also points out the increasingly understood importance of this receptor as a non-apoptotic signal transducer.

Fas (also called Apo-1 or CD95) is a death domain–containing member of the tumor necrosis factor receptor (TNFR) superfamily. It has a central role in the physiological regulation of programmed cell death and has been implicated in the pathogenesis of various malignancies and diseases of the immune system (1, 2) [see Fas Signaling Pathway, http://stke.sciencemag.org/cgi/cm/CMP_7966 (3) and Fas Signaling Pathway in Cardiomyocytes, http://stke.sciencemag.org/cgi/cm/CMP_9993 (4)]. Although the Fas ligand (FasL)–Fas system has been appreciated mainly with respect to its death-inducing function, it also transduces proliferative and activating signals through pathways that are still poorly defined (1, 2).

In the absence of membrane-bound ligand, inactive complexes of Fas are formed by the pre–ligand-binding assembly domain of the molecule (2). Interaction with membrane-bound FasL (or agonistic antibodies) reorganizes these complexes and allows the formation of a death-inducing signaling complex (DISC). The Fas DISC contains the adaptor protein Fas-associated death domain protein (FADD) and caspases 8 and 10, which can initiate the process of apoptosis. FasL-induced clustering of Fas, FADD, and caspase-8 or -10 within the DISC results in autoproteolytic processing of these caspases by induced proximity and in release of the processed active proteases (Fig. 1). In type I cells, processed caspase-8 is sufficient to directly activate other members of the caspase family, whose action on defined substrates paves the way to the execution phase of apoptosis (1). In type II cells, proper activation of effector caspases by Fas depends on an amplification loop that relies on caspase-8–mediated cleavage of the pro-apoptotic Bcl-2 family member Bid and subsequent release of mitochondrial pro-apoptotic factors [for example, cytochrome c and second mitochondria-derived activator of caspases (SMAC, also called Diablo)] to drive the formation of the caspase-9–activating apoptosome. Active caspase-9 activates the executioner caspase-3, which in turn activates caspase-8 outside the Fas DISC, thereby completing a positive feedback loop (1).

Each step in Fas-mediated apoptosis can be a target of regulatory mechanisms enabling cells to show flexible responses to stimulation by Fas. Corresponding to the hierarchy of events in Fas-mediated apoptosis, these regulatory mechanisms can be specific for Fas or common to death receptors, or they can affect the apoptotic core machinery of the cell. The FasL gene is transcriptionally inactive in most cells. Thus, regulation of FasL expression itself, for example, by the transcription factors nuclear factor kappa B (NF-κB), activating protein 1 (AP1), or nuclear factor of activated T cells (NF-AT), regulates FasL/Fas-mediated effects, such as those of activation-induced cell death of CD4+ T cells (5). To a lesser extent, regulation of Fas expression is also used to control Fas responses, for example,

Institute of Cell Biology and Immunology, Allmandring 31, University of Stuttgart, 70 569 Stuttgart, Germany. E-mail: harald.wajant@po.uni-stuttgart.de

Non Confidential                    AM-AR0511440

# EXHIBIT 6



**Tularik**

*R e s e a r c h*

### Inflammation

Under normal circumstances, inflammation is an important defense response to injury and infection. An early step in the inflammatory response is the recruitment of white blood cells, or leukocytes, from the circulatory system to damaged or infected tissue. Excessive or prolonged accumulation of leukocytes can lead to inflammatory conditions, including asthma, inflammatory bowel disease, multiple sclerosis, psoriasis, rheumatoid arthritis and septic shock. In 1998, a total of approximately 28 million individuals in the United States suffered from these



diseases. Worldwide sales of non-steroidal anti-inflammatory drugs totaled approximately $6.0 billion in 1998 and are expected to grow at a 4% compound annual growth rate. An estimated 400,000 individuals in the United States and Europe have Crohn's disease, a serious chronic inflammatory disease of the small and large intestine.

Inflammatory messengers act by binding to specific cell surface receptors, that, in turn, set off signaling events culminating in the expression of many inflammatory response genes. The crucial roles played by particular inflammatory messengers in several inflammatory disease states have been clearly demonstrated by studies utilizing antibodies and soluble receptors that neutralize the activities of particular inflammatory messengers. The efficacy demonstrated by Enbrel, a soluble inflammatory messenger receptor, has validated this concept for the treatment of rheumatoid arthritis. We believe that an orally available drug of comparable efficacy would represent formidable competition for drugs that must be injected, such as Enbrel β.

Several key inflammatory response genes are regulated by a single transcription factor, NF-κB. Our scientists have discovered numerous novel regulatory proteins in the gene regulation pathways leading from the tumor necrosis factor and interleukin-1 receptors and have elucidated their roles in NF-κB activation. On the basis of these landmark discoveries, our scientists are recognized as leaders in this field of research.

Based upon this research, our scientists have determined that some of these regulatory proteins appear to be exclusively dedicated to NF-κB activation and the inflammatory response and therefore represent ideal drug discovery targets. We are employing several of these targets in high throughput screening assays, and a lead compound that inhibits one of the key components involved in NF-κB activation is currently undergoing optimization. We believe that our discoveries and the expertise we have developed in this disease area place us in a leading position to identify the next generation of important anti-inflammatory drugs.

We have collaborated with Roche Bioscience in inflammation research since July 1997.



## INFLAMMATION - A CASE STUDY

Affecting more than two million Americans, rheumatoid arthritis, like other inflammatory conditions, is the result of aberrant gene expression. In rheumatoid arthritis, genes responsible for the body's natural immune response to injury are inappropriately switched "on", initiating a cascade of events that results in painful and often debilitating inflammation of the joints. The genes that control the inflammatory process associated with rheumatoid arthritis are activated by a metabolic pathway that involves the inflammatory cytokine tumor necrosis factor (TNF). TNF's major inflammatory activity is mediated by the transcription factor NF-κB. TNF binds to receptor proteins on the surface of cells, setting off a series of intracellular events that leads ultimately to NF-κB activation. Many of the important proteins in this pathway were first discovered at Tularik and represent promising targets for drug discovery. The identification of compounds that block the activities of these target proteins will lead to the development of potent and selective drugs for the treatment of inflammatory diseases.

Tularik Inc., Two Corporate Drive, South San Francisco, CA 94080
(tel) 650.825.7000    (fax) 650.825.7303
© Tularik Inc. 2000. All Rights Reserved.

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; IMMUNEX )
CORPORATION, a Washington corporation; )
AMGEN USA, INC., a Delaware corporation; )
AMGEN MANUFACTURING, LIMITED, a )
Bermuda Corporation; and IMMUNEX RHODE )
ISLAND CORPORATION, a Delaware corporation, )
)
        Plaintiffs, )
)
v. )
)
ARIAD PHARMACEUTICALS, INC., a Delaware )
corporation; and THE WHITEHEAD INSTITUTE )
FOR BIOMEDICAL RESEARCH, a Delaware )
corporation, )
)
        Defendants, )
)
_____ )
)
ARIAD PHARMACEUTICALS, INC., a Delaware )
corporation; THE PRESIDENT AND FELLOWS OF )    Civil Action No. 06-259-MPT
HARVARD COLLEGE, a Massachusetts )
corporation; MASSACHUSETTS INSTITUTE OF )
TECHNOLOGY, a Massachusetts corporation; and )
THE WHITEHEAD INSTITUTE FOR )
BIOMEDICAL RESEARCH, a Delaware )
corporation, )
)
        Counterclaim-Plaintiffs, )
)
v. )
)
AMGEN, INC., a Delaware corporation; IMMUNEX )
CORPORATION, a Washington corporation; )
AMGEN USA, INC., a Delaware corporation; )
AMGEN MANUFACTURING, LIMITED, a )
Bermuda Corporation; IMMUNEX RHODE )
ISLAND CORPORATION, a Delaware corporation; )
and WYETH, a Delaware corporation, )
)
        Counterclaim-Defendants. )

## THE AMGEN ENTITIES' OBJECTIONS TO DEFENDANT'S SEVENTH NOTICE OF DEPOSITION OF PLAINTIFFS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

Pursuant to Federal Rule of Civil Procedure 30, plaintiffs Amgen, Inc. ("Amgen"); Immunex Corporation ("Immunex"); Amgen USA, Inc. ("Amgen USA"); Amgen Manufacturing, Limited ("Amgen Mfg."); and Immunex Rhode Island Corporation ("Immunex R.I.") (collectively the "Amgen Entities") hereby object and respond to defendant ARIAD Pharmaceuticals, Inc.'s ("ARIAD's") Seventh Notice of Deposition of the Amgen Entities Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("ARIAD's Seventh 30(b)(6) Notice").

The Amgen Entities' responses are at all times subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, is subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by the Amgen Entities or their attorneys. If additional or new information becomes available, the Amgen Entities may supplement any responses they provide at the deposition.

The following objections provide the bases upon which the Amgen Entities find ARIAD's Seventh 30(b)(6) Notice objectionable on its face. The Amgen Entities do not waive or forego any rights they have to make further objections at the deposition itself.

### GENERAL OBJECTIONS

1.      The Amgen Entities object to ARIAD's Seventh 30(b)(6) Notice to the extent it attempts to impose obligations on the Amgen Entities beyond those required by the Federal Rules of Civil Procedure, the Civil Local Rules of the District of Delaware, the Scheduling Order in this case, or any other applicable law. The Amgen Entities will provide discovery in accordance with their obligations under the Federal Rules of Civil Procedure, the Local Rules, and the applicable case law.

2

2.    The Amgen Entities object to ARIAD's Seventh 30(b)(6) Notice to the extent it is not sufficiently limited or reasonably calculated to lead to the discovery of admissible evidence and the topics are overly broad and unduly burdensome.

3.    The Amgen Entities object to ARIAD's Seventh 30(b)(6) Notice to the extent it requests information already in ARIAD's possession or information which is equally available to ARIAD from other sources.

4.    The Amgen Entities object to ARIAD's Seventh 30(b)(6) Notice to the extent it seeks information protected by the attorney-client or attorney work product privileges.

The foregoing General Objections shall be deemed continuous throughout the objections to the specific areas of testimony that were listed in Attachment A of ARIAD's Seventh 30(b)(6) Notice, even though not specifically referred to in such.

## AREA OF TESTIMONY NO. 1:

ENBREL's effects on NF-KB activity, including effects measured by luciferase reporter assays and cellular imaging analyses.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on their testing of Enbrel® with reference to NF-κB.

The Amgen Entities object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "NF-KB," "NF-KB activity" "ENBREL's effects on NF-KB activity," "luciferase reporter assays," and "cellular imaging analyses."   As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for expert testimony instead of facts related to the Amgen Entities' testing of Enbrel® with reference to NF-κB. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "ENBREL" (apparently without regard to any

3

particular conditions) has "effects" on "NF-KB activity," that "luciferase reporter assays" and "cellular imaging analyses" can be used to measure a compound's "effects" on "NF-KB activity," that the Amgen Entities have performed research (including testing involving "luciferase reporter assays" and "cellular imaging analyses") in order to determine if "ENBREL" has "effects" on "NF-KB activity," and that the results of the Amgen Entities' research leads to the conclusion that "ENBREL" has "effects" on "NF-KB activity."

**AREA OF TESTIMONY NO. 2:**

KINERET's effects on NF-KB activity, including effects measured by luciferase reporter assays and cellular imaging analyses.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the their testing of Kineret® with reference to NF-κB.

The Amgen Entities object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "NF-KB," "NF-KB activity" "KINERET's effects on NF-KB activity," "luciferase reporter assays," and "cellular imaging analyses." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for expert testimony instead of facts related to the Amgen Entities' testing of Kineret® with reference to NF-κB. The Amgen Entities further object to this deposition topic as lacking foundation because it improperly assumes that "KINERET" (apparently without regard to any particular conditions) has "effects" on "NF-KB activity," that "luciferase reporter assays" and "cellular imaging analyses" can be used to measure a compound's "effects" on "NF-KB activity," that the Amgen Entities have performed research (including testing involving "luciferase reporter assays" and "cellular imaging analyses") in order to determine if

"KINERET" has "effects" on "NF-KB activity," and that the results of the Amgen Entities' research leads to the conclusion that "KINERET" has "effects" on "NF-KB activity."

**AREA OF TESTIMONY NO. 3:**

The mechanism by which TNF has an effect upon NF-KB activity, whether in vitro or in vivo.

**RESPONSE:**

The Amgen Entities' specifically object to this topic as vague and ambiguous as to the terms "mechanism," "NF-KB," "NF-KB activity," and "effect upon NF-KB activity." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome, improperly calling for expert testimony instead of facts that might bear any reasonable nexus to either of the two accused products. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that TNF (apparently without regard to any particular conditions -- whether *in vitro* or *in vivo* ) has an "effect" on "NF-KB activity," that there is a "mechanism" that underlies such purported "effect," and that the purported "mechanism" of the "effect" is known by the Amgen Entities as a matter of fact.

**AREA OF TESTIMONY NO. 4:**

The mechanism by which IL-1 has an effect upon NF-KB activity, whether in vitro or in vivo.

**RESPONSE:**

The Amgen Entities' specifically object to this topic as vague and ambiguous as to the terms "mechanism," "NF-KB," "NF-KB activity," and "effect upon NF-KB activity." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome, improperly calling for expert testimony instead of facts that might bear any reasonable nexus to either of the two accused products. The Amgen Entities further object to this topic as lacking

foundation because it improperly assumes that IL-1 (apparently without regard to any particular conditions -- whether *in vitro* or *in vivo* ) has an "effect" on "NF-KB activity," that there is a "mechanism" that underlies such purported "effect," and that the purported "mechanism" of the "effect" is known by the Amgen Entities as a matter of fact.

**<u>AREA OF TESTIMONY NO. 5:</u>**

The mechanism by which ENBREL has an effect upon NF-KB activity, whether in vitro or in vivo.

**<u>RESPONSE:</u>**

The Amgen Entities' specifically object to this topic as vague, ambiguous, and/or overly broad as to the terms "mechanism," "ENBREL," "NF-KB," "NF-KB activity," and "effect upon NF-KB activity." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome, improperly calling for expert testimony instead of facts related to the Amgen Entities' testing of Enbrel® with reference to NF-κB. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that ENBREL (apparently without regard to any particular conditions -- whether *in vitro* or *in vivo* ) has an "effect" on "NF-KB activity," that there is a "mechanism" that underlies such purported "effect," and that the purported "mechanism" of the "effect" is known by the Amgen Entities as a matter of fact.

**<u>AREA OF TESTIMONY NO. 6:</u>**

The mechanism by which KINERET has an effect upon NF-KB activity, whether in vitro or in vivo.

**<u>RESPONSE:</u>**

The Amgen Entities' specifically object to this topic as vague, ambiguous, and/or overly broad as to the terms "mechanism," "KINERET," "NF-KB," "NF-KB activity," and "effect upon NF-KB activity." As understood, the Amgen Entities also object to this topic as overly broad

6

and unduly burdensome, improperly calling for expert testimony instead of facts related to the Amgen Entities' testing of Enbrel® with reference to NF-κB. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that KINERET (apparently without regard to any particular conditions -- whether *in vitro* or *in vivo* ) has an "effect" on "NF-KB activity," that there is a "mechanism" that underlies such purported "effect," and that the purported "mechanism" of the "effect" is known by the Amgen Entities as a matter of fact.

### AREA OF TESTIMONY NO. 7:

Plaintiffs' use of luciferase reporter assays and cellular imaging analyses to measure intracellular effects of TNF, including effects on NF-KB activity.

### RESPONSE:

The Amgen Entities specifically object to this topic as vague and ambiguous as to the terms "luciferase reporter assays," "cellular imaging analyses," "intracellular effects of TNF," "NF-KB," "NF-KB activity," and "effects on NF-KB activity."  As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome, improperly calling for expert testimony instead of facts that might bear any reasonable nexus to either of the two accused products. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that TNF (apparently without regard to any particular conditions) has "intracellular effects," including "effects on NF-KB activity," that such "effects" can be measured with "luciferase reporter assays" and "cellular imaging analyses," that the Amgen Entities have carried out such assays and analyses for that purpose, and that the Amgen Entities have measured such purported "effects" as a matter of fact.

### AREA OF TESTIMONY NO. 8:

Plaintiffs' use of luciferase reporter assays and cellular imaging analyses to measure intracellular effects of IL-1, including effects on NF-KB activity.

7

**RESPONSE:**

The Amgen Entities specifically object to this topic as vague and ambiguous as to the terms "luciferase reporter assays," "cellular imaging analyses," "intracellular effects of IL-1," "NF-KB," "NF-KB activity," and "effects on NF-KB activity." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome, improperly calling for expert testimony instead of facts that might bear any reasonable nexus to either of the two accused products. The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that IL-1 (apparently without regard to any particular conditions) has "intracellular effects," including "effects on NF-KB activity," that such "effects" can be measured with "luciferase reporter assays" and "cellular imaging analyses," that the Amgen Entities have carried out such assays and analyses for that purpose, and that the Amgen Entities have measured such purported "effects" as a matter of fact.

**AREA OF TESTIMONY NO. 9:**

Plaintiffs' use of luciferase reporter assays and cellular imaging analyses to measure or analyze NF-KB activity, including NF-KB activity related to TNF, IL-1, ENBREL or KINERET.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the their testing of Enbrel® and/or Kineret® with reference to NF-κB.

The Amgen Entities specifically object to this topic as vague and ambiguous as to the terms "luciferase reporter assays," "cellular imaging analyses," "NF-KB," "NF-KB activity," "ENBREL," and "KINERET." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for expert testimony instead of facts specifically related to the Amgen Entities' testing of Enbrel® and/or Kineret® with reference to NF-κB. The Amgen Entities further object to this topic as lacking foundation

8

because it improperly assumes that "luciferase reporter assays" and "cellular imaging analyses" can be used to measure or analyze "NF-KB activity" and that the Amgen Entities have carried out such assays and analyses for that purpose.

**AREA OF TESTIMONY NO. 10:**

Plaintiffs' in vitro testing of ENBREL, including luciferase reporter assays and cellular imaging analyses.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the their testing of Enbrel® with reference to NF-κB.

The Amgen Entities specifically object to this request as vague, ambiguous, and/or overly broad as to the meaning of "ENBREL," "in vitro testing of ENBREL," "luciferase reporting assays," and "cellular imaging analyses." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for testimony on facts irrelevant to any claim or defense in this action.

**AREA OF TESTIMONY NO. 11:**

Plaintiffs' in vitro testing of KINERET, including luciferase reporter assays and cellular imaging analyses.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the their testing of Kineret® with reference to NF-κB.

The Amgen Entities specifically object to this request as vague, ambiguous, and/or overly broad as to the meaning of "KINERET," "in vitro testing of KINERET," "luciferase reporting assays," and "cellular imaging analyses." As understood, the Amgen Entities also object to this

9

topic as overly broad and unduly burdensome to the extent it improperly calls for testimony on facts irrelevant to any claim or defense in this action.

**AREA OF TESTIMONY NO. 12:**

Plaintiffs' use of in vitro testing, including luciferase reporter assays and cellular imaging analyses, to understand how ENBREL works in patients.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on their *in vitro* testing of Enbrel® with reference to NF-κB.

The Amgen Entities object to this topic as vague, ambiguous, and/or overly broad as to the terms "luciferase reporter assays," "cellular imaging analyses," "ENBREL," and "how ENBREL works in patients." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for expert testimony instead of facts related to the Amgen Entities' *in vitro* testing of Enbrel® with reference to NF-κB. The Amgen Entities further object to this deposition topic as lacking foundation because it improperly assumes that *in vitro* testing, including luciferase reporter assays and cellular imaging analyses, can be used to determine "how ENBREL works in patients," that the Amgen Entities have used *in vitro* testing to allegedly determine "how ENBREL works in patients," and that the Amgen Entities have actually determined, as a matter of fact, "how ENBREL works in patients."

**AREA OF TESTIMONY NO. 13:**

Plaintiffs' use of in vitro testing, including luciferase reporter assays and cellular imaging analyses, to understand how KINERET works in patients.

**RESPONSE:**

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on their *in vitro* testing of Kineret® with reference to NF-κB.

The Amgen Entities object to this topic as vague, ambiguous, and/or overly broad as to the terms "luciferase reporter assays," "cellular imaging analyses," "KINERET," and "how KINERET works in patients." As understood, the Amgen Entities also object to this topic as overly broad and unduly burdensome to the extent it improperly calls for expert testimony instead of facts related to the Amgen Entities' testing of Kineret® with reference to NF-κB. The Amgen Entities further object to this deposition topic as lacking foundation because it improperly assumes that *in vitro* testing, including luciferase reporter assays and cellular imaging analyses, can be used to determine "how KINERET works in patients," that the Amgen Entities have used *in vitro* testing to allegedly determine "how KINERET works in patients," and that the Amgen Entities have actually determined, as a matter of fact, "how KINERET works in patients."

## AREA OF TESTIMONY NO. 14:

ENBREL's effects on cells, including intracellular effects on cells.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Enbrel®.

The Amgen Entities specifically object to this deposition topic as calling for expert testimony by asking about "ENBREL's effects on cells." The Amgen Entities also object to this request as vague and ambiguous as to the meaning of ""ENBREL," "ENBREL's effects on cells" and "ENBREL's . . . intracellular effects on cells." The Amgen Entities further object to this deposition topic as lacking foundation because it improperly assumes that "ENBREL"

11

(apparently without regard to any particular conditions) has "effects on cells," that such purported "effects on cells" can be "intracellular," and that the Amgen Entities have actually determined, as a matter of fact, what these purported "effects" are.

## AREA OF TESTIMONY NO. 15:

KINERET's effects on cells, including intracellular effects on cells.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Kineret®.

The Amgen Entities specifically object to this deposition topic as calling for expert testimony by asking about "KINERET's effects on cells." The Amgen Entities also object to this request as vague and ambiguous as to the meaning of ""KINERET," "KINERET's effects on cells" and "KINERET's . . . intracellular effects on cells." The Amgen Entities further object to this deposition topic as lacking foundation because it improperly assumes that "KINERET" (apparently without regard to any particular conditions) has "effects on cells," that such purported "effects on cells" can be "intracellular," and that the Amgen Entities have actually determined, as a matter of fact, what these purported "effects" are.

## AREA OF TESTIMONY NO. 16:

How ENBREL reduces inflammation, including any connection between reduction of inflammation and NF-KB activity.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Enbrel®.

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow ENBREL reduces inflammation, including any connection between

065028.1001

reduction of inflammation and NF-KB activity." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "reduces inflammation/reduction of inflammation," "NF-KB," and "NF-KB activity." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "ENBREL" (apparently without regard to any particular conditions) "reduces inflammation," that there exists a connection between "reduction of inflammation" and "NF-KB activity," and that such purported "connection" is known by the Amgen Entities as a matter of fact.

## AREA OF TESTIMONY NO. 17:

How KINERET reduces inflammation, including any connection between reduction of inflammation and NF-KB activity.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the mechanism of action of Kineret®.

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow KINERET reduces inflammation, including any connection between reduction of inflammation and NF-KB activity." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "reduces inflammation/reduction of inflammation," "NF-KB," and "NF-KB activity." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "KINERET" (apparently without regard to any particular conditions) "reduces inflammation," that there exists a connection between "reduction of inflammation" and "NF-KB activity," and that such purported "connection" is known by the Amgen Entities as a matter of fact.

**AREA OF TESTIMONY NO. 18:**

ENBREL's effects on TNF signaling, including extracellular and intracellular aspects of signaling caused by TNF.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "ENBREL's effects on TNF signaling, including extracellular and intracellular aspects of signaling caused by TNF." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "effects," "TNF signaling," "signaling caused by TNF," and "extracellular and intracellular aspects of signaling caused by TNF." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "TNF signaling/signaling caused by TNF" has "extracellular and intracellular aspects," that "ENBREL" (apparently without regard to any particular conditions) has "effects on TNF signaling, including extracellular and intracellular aspects of signaling caused by TNF," and that such purported "effects" are known by the Amgen Entities as a matter of fact.

**AREA OF TESTIMONY NO. 19:**

KINERET's effects on IL-1 signaling, including extracellular and intracellular aspects of signaling caused by IL-1.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "KINERET's effects on IL-1 signaling, including extracellular and intracellular aspects of signaling caused by IL-1." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "effects," "IL-1 signaling," "signaling caused by IL-1," and "extracellular and intracellular aspects of signaling caused by

14

IL-1." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "IL-1 signaling/signaling caused by IL-1" has "extracellular and intracellular aspects," that "KINERET" (apparently without regard to any particular conditions) has "effects on IL-1 signaling, including extracellular and intracellular aspects of signaling caused by IL-1," and that such purported "effects" are known by the Amgen Entities as a matter of fact.

## AREA OF TESTIMONY NO. 20:

ENBREL's effects on extracellular and intracellular components of the NF-KB pathway.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "ENBREL's effects on extracellular and intracellular components of the NF-KB pathway." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "effects," "NF-KB," "NF-KB pathway," and "extracellular and intracellular components of the NF-KB pathway.." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that the "NF-KB pathway" has "extracellular and intracellular components," that "ENBREL" has "effects on extracellular and intracellular components of the NF-KB pathway," and that such purported "effects" are known by the Amgen Entities as a matter of fact.

## AREA OF TESTIMONY NO. 21:

KINERET's effects on extracellular and intracellular components of the NF-KB pathway.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "KINERET's effects on extracellular and intracellular components of the NF-KB pathway." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly

DB02:6034311.1

065028.1001

broad as to the terms "KINERET," "effects," "NF-KB," "NF-KB pathway," and "extracellular and intracellular components of the NF-KB pathway.." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that the "NF-KB pathway" has "extracellular and intracellular components," that "KINERET" has "effects on extracellular and intracellular components of the NF-KB pathway," and that such purported "effects" are known by the Amgen Entities as a matter of fact.

**AREA OF TESTIMONY NO. 22:**

How ENBREL inhibits expression of a gene whose transcription is regulated by NF-KB.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow ENBREL inhibits expression of a gene whose transcription is regulated by NF-KB." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "inhibits expression," "NF-KB," and "gene whose transcription is regulated by NF-KB." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "ENBREL inhibits expression of a gene whose transcription is regulated by NF-KB."

**AREA OF TESTIMONY NO. 23:**

How KINERET inhibits expression of a gene whose transcription is regulated by NF-KB.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow KINERET inhibits expression of a gene whose transcription is regulated by NF-KB." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "inhibits expression," "NF-KB," and "gene whose transcription is regulated by NF-KB." The Amgen Entities further object to this topic as lacking foundation

because it improperly assumes that "KINERET inhibits expression of a gene whose transcription is regulated by NF-KB."

## AREA OF TESTIMONY NO. 24:

How ENBREL reduces the level of expression of a cytokine gene whose transcription is regulated by NF-KB, including how ENBREL reduces the level of expression of genes encoding TNF and IL-1.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow ENBREL reduces the level of expression of a cytokine gene whose transcription is regulated by NF-KB" and "reduces the level of expression of genes encoding TNF and IL-1." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "level of expression," "cytokine gene," "NF-KB," "gene whose transcription is regulated by NF-KB," and "reduces the level of expression of genes encoding TNF and IL-1." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "ENBREL reduces the level of expression of a cytokine gene whose transcription is regulated by NF-KB" and "reduces the level of expression of genes encoding TNF and IL-1."

## AREA OF TESTIMONY NO. 25:

How KINERET reduces the level of expression of a cytokine gene whose transcription is regulated by NF-KB, including how KINERET reduces the level of expression of genes encoding TNF and IL-1.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow KINERET reduces the level of expression of a cytokine gene whose

17

transcription is regulated by NF-KB" and "reduces the level of expression of genes encoding TNF and IL-1." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "level of expression," "cytokine gene," "NF-KB," "gene whose transcription is regulated by NF-KB," and "reduces the level of expression of genes encoding TNF and IL-1." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "KINERET reduces the level of expression of a cytokine gene whose transcription is regulated by NF-KB" and "reduces the level of expression of genes encoding TNF and IL-1."

## AREA OF TESTIMONY NO. 26:

How ENBREL diminishes induced NF-KB-mediated intracellular signaling, including how ENBREL diminishes intracellular signaling induced by TNF.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow ENBREL diminishes induced NF-KB-mediated intracellular signaling, including how ENBREL diminishes intracellular signaling induced by TNF." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "NF-KB," "intracellular signaling," "induced NF-KB-mediated intracellular signaling," "diminishes induced NF-KB-mediated intracellular signaling," "intracellular signaling induced by TNF" and "diminishes intracellular signaling induced by TNF." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "ENBREL diminishes induced NF-KB-mediated intracellular signaling, including how ENBREL diminishes intracellular signaling induced by TNF."

**AREA OF TESTIMONY NO. 27:**

How KINERET diminishes induced NF-KB-mediated intracellular signaling, including how KINERET diminishes intracellular signaling induced by IL-1.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow KINERET diminishes induced NF-KB-mediated intracellular signaling, including how KINERET diminishes intracellular signaling induced by IL-1." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "NF-KB," "intracellular signaling," "induced NF-KB-mediated intracellular signaling," "diminishes induced NF-KB-mediated intracellular signaling," "intracellular signaling induced by IL-1" and "diminishes intracellular signaling induced by IL-1." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "KINERET diminishes induced NF-KB-mediated intracellular signaling, including how KINERET diminishes intracellular signaling induced by IL-1."

**AREA OF TESTIMONY NO. 28:**

How ENBREL diminishes molecular communication within cells effected by, or conveyed through, NF-KB.

**RESPONSE:**

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow ENBREL diminishes molecular communication within cells effected by, or conveyed through, NF-KB." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "ENBREL," "diminishes molecular communication," "within cells," "NF-KB," and "cells effected by, or conveyed through, NF-KB." The Amgen Entities

19

further object to this topic as lacking foundation because it improperly assumes that "ENBREL diminishes molecular communication within cells effected by, or conveyed through, NF-KB."

## AREA OF TESTIMONY NO. 29:

How KINERET diminishes molecular communication within cells effected by, or conveyed through, NF-KB.

## RESPONSE:

The Amgen Entities specifically object to this topic as calling for expert testimony by asking about "[h]ow KINERET diminishes molecular communication within cells effected by, or conveyed through, NF-KB." The Amgen Entities also object to this topic as vague, ambiguous, and/or overly broad as to the terms "KINERET," "diminishes molecular communication," "within cells," "NF-KB," and "cells effected by, or conveyed through, NF-KB." The Amgen Entities further object to this topic as lacking foundation because it improperly assumes that "KINERET diminishes molecular communication within cells effected by, or conveyed through, NF-KB."

## AREA OF TESTIMONY NO. 30:

The identity and location of witnesses knowledgeable about the categories set forth in Topics 1 to 29 above.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the reasonable identification and location of persons with knowledge as to topics 1-29 as set forth above, but as objected to by the Amgen Entities.

The Amgen Entities specifically object to this deposition topic as cumulative, overly broad and unduly burdensome to the extent the topic seeks testimony about the identity of persons with knowledge that could include hundreds of individuals and/or that has already been

disclosed in the Amgen Entities' Initial Disclosures under Federal Rule of Civil Procedure 26(a)(2).

## AREA OF TESTIMONY NO. 31:

The nature, existence and location of all DOCUMENTS relating to Topics 1 to 29 above.

## RESPONSE:

Subject to their General and Specific objections, the Amgen Entities will provide a 30(b)(6) witness on the reasonable existence and location of documents relating to topics 1-29 as set forth above, but as objected to by the Amgen Entities.

The Amgen Entities specifically object to this deposition topic as overbroad, unduly burdensome and not likely to lead to the discovery of admissible evidence to the extent that it requests the identification and location of "all DOCUMENTS." The Amgen Entities also object to this topic as cumulative and seeking information already in ARIAD's possession, custody or control because the Amgen Entities have already produced documents properly subject to discovery in this suit. The Amgen Entities further object to this topic as not describing with reasonable particularity the matters on which examination is requested as required by Federal Rule of Civil Procedure 30(b)(6).

DB02:6034311.1                    065028.1001

Date: June 11, 2007

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware  19899-0391
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
Drew Diamond
777 Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs Amgen, Inc., Immunex
Corporation, Amgen USA Inc., Amgen
Manufacturing, Limited, and Immunex Rhode
Island Corporation.*

22

065028.1001

## CERTIFICATE OF SERVICE

I, Mary F. Dugan, Esquire, hereby certify that on June 11, 2007, I caused a copy of The

Amgen Entities' Objections to ARIAD's Seventh Notice of Deposition of Plaintiffs Pursuant to

Federal Rule of Civil Procedure 30(b)(6) to be served on the following counsel of record in the

manner indicated below:

### BY HAND DELIVERY & E-MAIL

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Frederick L. Cottrell, III
Anne Shea Gaza
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

### BY E-MAIL (by agreement of counsel)

Charles E. Lipsey
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive, Suite 800
Reston, VA 20190-5675

Morgan Chu
David I. Gindler
Amir A. Naini
Christopher M. Newman
Elizabeth L. Rosenblatt
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Howard W. Levine
Robert D. Bajefsky
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

_____
Mary F. Dugan (No. 4704)