# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

**500 DELAWARE AVENUE**

**P. O. BOX 1150**

**WILMINGTON, DELAWARE 19899**

October 16, 2007

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

The Honorable Mary Pat Thynge
United States District Court
844 North King Street
Wilmington, Delaware 19801

VIA ELECTRONIC FILING

**REDACTED**
**PUBLIC VERSION**

Re:    *Amgen Inc., et al. v. ARIAD Pharmaceuticals, Inc., et al.,*
C.A. No. 06-259-MPT

Dear Judge Thynge:

      We write on behalf of ARIAD, Harvard, MIT, and The Whitehead Institute regarding the following discovery disputes for the October 18, 2007 teleconference. (D.I. 435).

      **(1) Wyeth should be ordered to complete its document production.** ARIAD served Wyeth with its First and Second Sets of Requests for Production of Documents *over five months ago*, on April 20 and May 14. (D.I. 199; D.I. 243). After much fruitless meeting and conferring, ARIAD finally asked the Court for a discovery hearing in August (*over three months* after serving the document requests) because Wyeth refused to agree to a deadline for completing its document production. Only after a hearing was scheduled did Wyeth finally agree on August 22 to "produce the majority of its documents by September 14" and be "substantially complete by September 28." (Ex. A, Stanley 8/22 email). Relying on this promise, ARIAD withdrew its request for a discovery hearing—but Wyeth did not keep its promise. Wyeth now "currently anticipate[s] that Wyeth's production will be completed by October 22." (Ex. B, Stanley 10/8 letter). Wyeth's delay has already stunted the discovery process and ARIAD needs Wyeth's documents to take depositions, conduct follow-up discovery, develop expert reports, and prepare for trial. ARIAD requests that the Court hold Wyeth to its (latest) word and order Wyeth to complete its production by October 22.

      **(2) Wyeth should produce employee Allen Jacques for deposition.** On July 16, ARIAD noticed the deposition of Mr. Jacques for September 18. (Ex. C, notice). On September 5, Wyeth claimed that documents relevant to Mr. Jacques' deposition would not be ready for production by that time. (Ex. D, Stanley 9/5 email). Wyeth then proposed October 16 as the deposition date for Mr. Jacques, which ARIAD reluctantly accepted. (Ex. E, Stanley 9/25 letter; Ex. F, Novak 9/26 letter). Without warning, less than a week before the confirmed date, Wyeth cancelled the deposition, stating (without explanation) that Mr. Jacques was no longer available on October 16, and that "Wyeth will provide a new date for Mr. Jacques in due course, which we anticipate will be in the last weeks of November or early December." (Ex. G, Stanley 10/10 letter). After ARIAD advised Wyeth that it would seek relief from the Court, Wyeth then offered to make Mr. Jacques available for deposition on November 15. This continued delay is

The Honorable Mary Pat Thynge
October 16, 2007
Page 2

unacceptable and the need for the deposition is pressing. Wyeth has designated Mr. Jacques as its 30(b)(6) witness as to agreements concerning the manufacture of Enbrel; ARIAD believes that Mr. Jacques' testimony may show Wyeth's foreign sales have a nexus to the United States, thereby undermining representations made by Wyeth to this Court. ARIAD respectfully requests an Order requiring Wyeth to produce Mr. Jacques for deposition on or before October 24.

**(3) Wyeth should provide a long-awaited date for the deposition of Tim McIntire.** Wyeth identified Mr. McIntire in its Initial Disclosures and its interrogatory responses as having relevant information about Wyeth's business relationship with Amgen. On July 16 (*i.e.*, three months ago), ARIAD noticed his deposition for September 20. (Ex. C, notice). On September 5, Wyeth unilaterally cancelled the deposition and promised to provide a new date. (Ex. D, Stanley 9/5 email). Wyeth still has not provided ARIAD with a date. ARIAD respectfully requests an Order requiring Wyeth to produce Mr. McIntire for deposition on or before October 25.

**(4) Wyeth should provide dates and designees for ARIAD's outstanding 30(b)(6) topics on willfulness.** The deadline to make an election as to whether a party will rely on advice of counsel (and waive privilege) to defend against willfulness is November 9. Topics 7-9 of ARIAD's First 30(b)(6) Notice and topics 2-7 of the Fifth 30(b)(6) Notice relate to willfulness, but Wyeth has refused to designate witnesses or offer any deposition dates in advance, the same procedure ARIAD worked out with Amgen. Although ARIAD intends to conduct the depositions after the November 9 deadline, the depositions need to be scheduled now to ensure that the discovery can be completed in advance of the December 21 discovery cut-off.

**(5) Wyeth should provide adequate responses to ARIAD's contention interrogatories.** Although ARIAD served its First Set of Interrogatories on Wyeth *nearly six months ago* (on April 20, 2007), and Wyeth has repeatedly promised to provide answers, Wyeth's responses continue to be deficient. (Ex. H, third supp. responses). At the May 1 hearing, the Court made its view quite clear: "I am going to start taking a much harder line on what information parties decide that they are going to disclose [in response to contention interrogatories] and when they disclose it, and it's not all going to be at the last minute." (D.I. 228, 93:4-94:16, May 1, 2007 transcript). The Court also specifically admonished Wyeth to participate in discovery: "Well, let me put it this way. Wyeth is in this case. Wyeth, until I decide the motion [to sever and stay], will remain in this case so I guess Wyeth better start getting concerned about getting discovery done." (D.I. 326, 20:23-21:1, June 13, 2007 transcript). Specifically, Wyeth has not provided adequate responses to ARIAD's following contention interrogatories: No. 13 (Wyeth did not identify the items offered for sale, items publicly used or known, dates of offers, uses and public knowledge, and the identities of persons who made the uses, made and received the offers, etc.); No. 14 (Wyeth provided no explanation or support for its contentions); No. 15 (Wyeth provided no explanation or support for its contentions); No. 16 (the chart provided by Wyeth is nonresponsive and merely is a re-counting of their list of alleged prior art); No. 17 (Wyeth provided no claim chart nor an identification of where each element of each allegedly obvious claim could be found in the cited references); No. 22 (Wyeth did not identify persons nor documents, and failed to explain how it does not indirectly infringe the patent); and No. 23 (Wyeth identified no persons nor any documents). ARIAD respectfully requests that the Court order Wyeth to fully respond to Interrogatory Nos. 13, 14, 15, 16, 17, 22, and 23 by October 25.

The Honorable Mary Pat Thynge
October 16, 2007
Page 3

**(6)  Amgen and Wyeth should respond to the interrogatories served by MIT, Whitehead, and Harvard**.  Although Fed. R. Civ. P. 33(a) expressly states that *"any party"* may serve up to 25 interrogatories, Amgen and Wyeth have refused to answer any interrogatories from Harvard, MIT, and Whitehead because ARIAD has already served 25 interrogatories.  A leading treatise disagrees: "[I]n multi-party cases, a party may serve 25 interrogatories on each other party involved.  For example, if parties A and B are suing parties X, Y, and Z, then A can serve 25 interrogatories on X, 25 on Y, and 25 on Z, and B can do the same."  7-33 Moore's Federal Practice – Civil §33.30[1] (2007).  Although Amgen has cited contrary authority from outside this Circuit, such authority is not controlling here and is inconsistent with the language of Rule 33(a).  Amgen and Wyeth should be ordered to respond to these interrogatories by October 25.

**(7)  Amgen cannot grant itself a stay of discovery on the assay patents**.  Although discovery relating to the assay patents overlaps with discovery relating to the '516 patent, Amgen has taken the position that discovery regarding the assay patents should be deferred or stayed until after the close of fact discovery regarding the '516 patent.  (Ex. I, Sernel 10/5 letter) ("To the extent that there is any additional discovery implicated by the assay patents, that discovery should be dealt with after fact discovery on the '516 patent has been completed.").  Amgen has thus refused to produce full copies of pertinent laboratory notebooks bearing on the assay patents, and is setting up a situation where ARIAD will need to later re-depose witnesses who possess information relevant to both the '516 patent and the assay patents.  This would be costly and inefficient and ARIAD asks that the Court rejects Amgen's position.

**REDACTED**

We appreciate Your Honor's attention to these matters.

Respectfully,

*/s/ John G. Day*

John G. Day

The Honorable Mary Pat Thynge
October 16, 2007
Page 4

JGD/nml
Attachments
185013.1

cc:    David I. Gindler, Esquire (via electronic mail; w/attachments)
        Melanie K. Sharp, Esquire (by hand and via electronic mail; w/attachments)
        Marcus E. Sernel, Esquire (via electronic mail; w/attachments)
        Frederick L. Cottrell, III, Esquire (by hand and via electronic mail; w/attachments)
        Charles E. Lipsey, Esquire (via electronic mail; w/attachments)
        Robert D. Bajefsky, Esquire (via electronic mail; w/attachments)

# EXHIBIT A

**Young, Alexandrea**

**Subject:**            FW: Amgen v. ARIAD : Wyeth Letter to ARIAD re Discovery Dates


-----Original Message-----
From: Stanley, Robert [mailto:Robert.Stanley@finnegan.com]
Sent: Wednesday, August 22, 2007 2:44 PM
To: Birnholz, Richard
Cc: Lowenstein, Nathan
Subject: RE: Amgen v. ARIAD : Wyeth Letter to ARIAD re Discovery Dates

Hi Richard--

Thanks for our discussion regarding the discovery dates certain ARIAD has requested. We
appeared to agree that Wyeth would provide substantive responses to Interrogatories 13-20
and 22-23 by September 21, as you requested in your letter of August 21. For the document
production, Wyeth hopes to produce the majority of its documents by September 14, barring
any technological and collection problems, and be substantially complete by September 28.
I also mentioned that Wyeth would produce documents relating to Mr. Dippel by September 6,
prior to his scheduled deposition on September 13.

Once you and Nate have had a chance to consider the proposal, I look forward to hearing
from you so we can resolve the issue and remove the August 27 teleconference from the
Court's schedule.

With best regards,

--Robert

-----Original Message-----
From: Birnholz, Richard [mailto:RBirnholz@irell.com]
Sent: Wednesday, August 22, 2007 4:47 PM
To: Stanley, Robert
Cc: Lowenstein, Nathan
Subject: RE: Amgen v. ARIAD : Wyeth Letter to ARIAD re Discovery Dates

Robert, how can Nate and I best reach you to discuss?

-----Original Message-----
From: Stanley, Robert [mailto:Robert.Stanley@finnegan.com]
Sent: Wednesday, August 22, 2007 12:57 PM
To: Lowenstein, Nathan
Cc: #Ariad I&M/Local Counsel Team [Int/Ext].; ~ariadcorrespondence@kirkland.com
Subject: Amgen v. ARIAD : Wyeth Letter to ARIAD re Discovery Dates

*       Amgen v. ARIAD (D. Del. 06-259-MPT)

Dear Nathan--

Please see the attached letter. With best regards,

--Robert

 <<2007-08-22 Letter to Lowenstein re Discovery Dates.pdf>>
 -----
Robert C. Stanley
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
Atlanta, Georgia   USA
404-653-6441
404-653-6444 facsimile
robert.stanley@finnegan.com
-----

1

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law.
If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.


ccmailg.irell.com made the following
annotations------------------------------------------------------------
-------PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.



------------------------------------------------------------------------



This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

# EXHIBIT B



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

3500 SunTrust Plaza ▪ 303 Peachtree Street, NE ▪ Atlanta, GA  30308-3263 ▪ 404.653.6400 ▪ Fax 404.653.6444
www.finnegan.com

ROBERT C. STANLEY
404.653.6441
robert.stanley@finnegan.com

October 8, 2007

Nathan Lowenstein, Esq.                                    **VIA E-Mail**
Irell & Manella LLP                              *nlowenstein@irell.com*
1800 Avenue of the Stars                          **and Federal Express**
Suite 900
Los Angeles, California   90067-4276

              Wyeth Document Production
              *Amgen v. ARIAD* (D. Del. No. 1:06-cv-00259)

Dear Nate:

       Subject to the protective order agreed to by the parties, we enclose one DVD-ROM labeled WYE_008 containing Wyeth production documents labeled WYE00086757 to WYE00107870.  The DVD contains TIF images and standard database load files.

       We also have available for inspection in our Washington, D.C., office six boxes of Wyeth's Enbrel®-related marketing and promotional pieces, many of which are in color and assorted sizes and, thus, have not been imaged and produced as have other Wyeth documents.  We will work with you to setup a mutually agreeable time for you or another ARIAD representative to inspect those materials.

       In response to your letter of October 1, we expect to produce non-privileged, relevant documents from Wyeth's legal and medical affairs departments by October 12.  Wyeth's vendors have scheduled delivery of the final data for Wyeth's electronic documents and electronic mail by October 12.  The quantity of electronic mail (and associated attachments) already received from Wyeth's vendors is significant, and may double by the time the production is finished.  We currently anticipate that Wyeth's production will be completed by October 22.  Until that time, we will continue producing documents to ARIAD on a rolling basis to facilitate its review.

Nathan Lowenstein, Esq.
October 8, 2007
Page 2 of 2


With best regards,

Sincerely,

Robert Stanley

Robert C. Stanley


cc:        ARIAD Counsel (*ariad.litigation.team@irell.com*)
           Amgen Counsel (*ariadcorrespondence@kirkland.com*)

Enclosure:  Wyeth Production DVD-ROM labeled WYE_008
            (by Federal Express only)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,      )
AMGEN USA INC., AMGEN MANUFACTURING   )
LIMITED, and IMMUNEX RHODE ISLAND     )
CORPORATION,                          )
                                      )
                      Plaintiffs,     )        C.A. No. 06-259-MPT
                                      )
        v.                            )
                                      )
ARIAD PHARMACEUTICALS, INC., and THE  )
WHITEHEAD INSTITUTE FOR BIOMEDICAL    )
RESEARCH,                             )
                                      )
                      Defendants.     )
_____ )
                                      )
ARIAD PHARMACEUTICALS, INC.,          )
MASSACHUSETTS INSTITUTE OF            )
TECHNOLOGY, THE PRESIDENT AND         )
FELLOWS OF HARVARD COLLEGE, and THE   )
WHITEHEAD INSTITUTE FOR BIOMEDICAL    )
RESEARCH,                             )
                                      )
              Counterclaim Plaintiffs, )
                                      )
        v.                            )
                                      )
AMGEN INC., IMMUNEX CORPORATION,      )
AMGEN USA INC., AMGEN MANUFACTURING   )
LIMITED, IMMUNEX RHODE ISLAND         )
CORPORATION, and WYETH,               )
                                      )
              Counterclaim Defendants. )

## NOTICE OF DEPOSITIONS OF ALLEN JACQUES, TIM MCINTIRE, AND MICHAEL RUSSAMANO

PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Defendants and Counterclaim Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research will take the depositions upon oral examination of the following employees of

Wyeth on the dates and times listed below, or such other dates and times as are mutually agreed upon by counsel for the parties:

| DEPONENT | DATE OF DEPOSITION | TIME OF DEPOSITION |
|----------|--------------------|--------------------|
| Allen Jacques | September 18, 2007 | 10:00 a.m. |
| Tim McIntire | September 20, 2007 | 10:00 a.m. |
| Michael Russamano | September 21, 2007 | 10:00 a.m. |

The depositions shall continue from day to day thereafter (excluding Saturdays, Sundays, and holidays) until completed.

The depositions shall take place at Rosenberg & Associates, 425 Eagle Rock Avenue, Roseland, New Jersey 07068, (973) 228-9100, or according to alternative arrangements upon which counsel jointly agree. The depositions shall be taken before an officer authorized to administer oaths and may be recorded by any means that the Federal Rules of Civil Procedure permit, including videotaping, audio taping, stenographic recording, and means permitting electronic transmission of the transcript. You are invited to attend and examine.

ASHBY & GEDDES

*/s/ Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888

*Attorneys for Defendants and Counterclaim Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research*

- 2 -

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone:  (310) 277-1010

Dated:  July 16, 2007
182325.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2007, the attached **NOTICE OF**

**DEPOSITIONS OF ALLEN JACQUES, TIM MCINTIRE, AND MICHAEL**

**RUSSAMANO** was served upon the below-named counsel of record at the address and in the

manner indicated:

| | |
|---|---|
| Melanie K. Sharp, Esquire<br>Young Conaway Stargatt & Taylor LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391 | **HAND DELIVERY** |
| Marcus E. Sernel, Esquire<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, IL 60601-6636 | **VIA ELECTRONIC MAIL** |
| J. Drew Diamond, Esquire<br>Kirkland & Ellis LLP<br>777 South Figueroa Street<br>Los Angeles, CA 90017-5800 | **VIA ELECTRONIC MAIL** |
| Frederick L. Cottrell, III, Esquire<br>Richards, Layton & Finger<br>One Rodney Square<br>Wilmington, DE 19899 | **HAND DELIVERY** |
| Charles E. Lipsey, Esquire<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>Two Freedom Square<br>11955 Freedom Drive, Suite 800<br>Reston, VA 20190-5675 | **VIA ELECTRONIC MAIL** |
| Robert D. Bajefsky, Esquire<br>Finnegan, Henderson, Farabow, Garrett & Dunner LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413 | **VIA ELECTRONIC MAIL** |

Robert C. Stanley, Esquire
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA  30308-3263

VIA ELECTRONIC MAIL

*/s/ Lauren E. Maguire*

Lauren E. Maguire

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION, )
AMGEN USA INC., AMGEN MANUFACTURING )
LIMITED, and IMMUNEX RHODE ISLAND )
CORPORATION, )
)                                    C.A. No. 06-259-MPT
     Plaintiffs, )
)
  v. )
)
ARIAD PHARMACEUTICALS, INC., and THE )
WHITEHEAD INSTITUTE FOR BIOMEDICAL )
RESEARCH, )
)
     Defendants. )
)
———————————————————— )
)
ARIAD PHARMACEUTICALS, INC., )
MASSACHUSETTS INSTITUTE OF )
TECHNOLOGY, THE PRESIDENT AND )
FELLOWS OF HARVARD COLLEGE, and THE )
WHITEHEAD INSTITUTE FOR BIOMEDICAL )
RESEARCH, )
)
     Counterclaim Plaintiffs, )
)
  v. )
)
AMGEN INC., IMMUNEX CORPORATION, )
AMGEN USA INC., AMGEN MANUFACTURING )
LIMITED, IMMUNEX RHODE ISLAND )
CORPORATION, and WYETH, )
)
     Counterclaim Defendants. )

## NOTICE OF SERVICE

The undersigned hereby certifies that on the 16[h] day of July, 2007, **NOTICE OF**

**DEPOSITIONS OF ALLEN JACQUES, TIM MCINTIRE, AND MICHAEL**

**RUSSAMANO** was served upon the following counsel of record at the address and in the

manner indicated:

Melanie K. Sharp, Esquire                                        **HAND DELIVERY**
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391

Marcus E. Sernel, Esquire                                        **VIA ELECTRONIC MAIL**
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601-6636

J. Drew Diamond, Esquire                                         **VIA ELECTRONIC MAIL**
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800

Frederick L. Cottrell, III, Esquire                             **HAND DELIVERY**
Richards, Layton & Finger
One Rodney Square
Wilmington, DE  19899

Charles E. Lipsey, Esquire                                      **VIA ELECTRONIC MAIL**
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive, Suite 800
Reston, VA  20190-5675

Robert D. Bajefsky, Esquire                                     **VIA ELECTRONIC MAIL**
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
901 New York Avenue, NW
Washington, DC  20001-4413

Robert C. Stanley, Esquire                                      **VIA ELECTRONIC MAIL**
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA  30308-3263

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc.,*
*Massachusetts Institute of Technology, The*
*President and Fellows of Harvard College and*
*The Whitehead Institute for Biomedical*
*Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated:  July 16, 2007
171644.1

3

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2007, the attached **NOTICE OF SERVICE**

was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Melanie K. Sharp, Esquire<br>Young Conaway Stargatt & Taylor LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391 | <u>HAND DELIVERY</u> |
| Marcus E. Sernel, Esquire<br>Kirkland & Ellis LLP<br>200 East Randolph Drive<br>Chicago, IL 60601-6636 | <u>VIA ELECTRONIC MAIL</u> |
| J. Drew Diamond, Esquire<br>Kirkland & Ellis LLP<br>777 South Figueroa Street<br>Los Angeles, CA 90017-5800 | <u>VIA ELECTRONIC MAIL</u> |
| Frederick L. Cottrell, III, Esquire<br>Richards, Layton & Finger<br>One Rodney Square<br>Wilmington, DE 19899 | <u>HAND DELIVERY</u> |
| Charles E. Lipsey, Esquire<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>Two Freedom Square<br>11955 Freedom Drive, Suite 800<br>Reston, VA 20190-5675 | <u>VIA ELECTRONIC MAIL</u> |
| Robert D. Bajefsky, Esquire<br>Finnegan, Henderson, Farabow, Garrett & Dunner LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413 | <u>VIA ELECTRONIC MAIL</u> |

Robert C. Stanley, Esquire                    <u>VIA ELECTRONIC MAIL</u>
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
3500 SunTrust Plaza
303 Peachtree Street, NE
Atlanta, GA  30308-3263


/s/ *Lauren E. Maguire*
_____
Lauren E. Maguire

## Discovery Documents

1:06-cv-00259-MPT Amgen Inc. et al v. Ariad Pharmaceuticals Inc.

PATENT, PaperDocuments

### U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Maguire, Lauren on 7/16/2007 at 4:36 PM EDT and filed on 7/16/2007

**Case Name:** Amgen Inc. et al v. Ariad Pharmaceuticals Inc.
**Case Number:** 1:06-cv-259
**Filer:** Massachusetts Institute of Technology
Ariad Pharmaceuticals Inc.
The Whitehead Institute for Biomedical Research
The President and Fellows of Harvard College
**Document Number:** 358

**Docket Text:**
NOTICE OF SERVICE of Notice of Depositions of Allen Jacques, Tim McIntire, Michael Russamano by Ariad Pharmaceuticals Inc., The Whitehead Institute for Biomedical Research, Massachusetts Institute of Technology, The President and Fellows of Harvard College.(Maguire, Lauren)

**1:06-cv-259 Notice has been electronically mailed to:**

Robert D. Bajefsky    robert.bajefsky@finnegan.com, john.kozikowski@finnegan.com

Steven J. Balick    sbalick@ashby-geddes.com, dfioravanti@ashby-geddes.com, jday@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, tlydon@ashby-geddes.com

Richard M. Birnholz    rbirnholz@irell.com

Morgan Chu    mchu@irell.com

Frederick L. Cottrell , III    cottrell@rlf.com

John G. Day    jday@ashby-geddes.com, dfioravanti@ashby-geddes.com, dharker@ashby-geddes.com, lmaguire@ashby-geddes.com, mkipp@ashby-geddes.com, nlopez@ashby-geddes.com, rgamory@ashby-geddes.com, sbalick@ashby-geddes.com, tlydon@ashby-geddes.com

Anne Shea Gaza    gaza@rlf.com, garvey@rlf.com

David I. Gindler    dgindler@irell.com

Howard W. Levine    howard.levine@finnegan.com

Charles E. Lipsey    charles.lipsey@finnegan.com

Tiffany Geyer Lydon    tlydon@ashby-geddes.com, dfioravanti@ashby-geddes.com

Lauren E. Maguire    lmaguire@ashby-geddes.com

Amir A. Naini    anaini@irell.com

Elizabeth L. Rosenblatt    brosenblatt@irell.com, ddrescher@irell.com, mlange@irell.com

Melanie K. Sharp    msharp@ycst.com, asmit@ycst.com, chunter@ycst.com

**1:06-cv-259 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=7/16/2007] [FileNumber=415864-0]
[99641ac0cf997834bb8d7793b35495a8851e3664d6fbab77c522e6e7b330b6f22c94
259673cfcedc037796c6c9f0a1f84bc1feaf18669ced0347d812aa88b7df]]

# EXHIBIT D

**Young, Alexandrea**

| | |
|---|---|
| **From:** | Stanley, Robert [Robert.Stanley@finnegan.com] |
| **Sent:** | Wednesday, September 05, 2007 6:35 AM |
| **To:** | Lowenstein, Nathan |
| **Cc:** | #Ariad I&M/Local Counsel Team [Int/Ext].; ~ariadcorrespondence@kirkland.com |
| **Subject:** | ARIAD v. Amgen : Wyeth's Upcoming Depositions |

```
*     Amgen v. ARIAD (D. Del. 06-259-MPT)
```

Dear Nate--

I am writing in response to your voice mail from yesterday afternoon, in which you requested information regarding the depositions of Wyeth's witnesses.

Tim McIntire and Mike Russomano are not available on September 20 and 21, respectively. We will check into new dates and send them to you.

Due to technical complications with document processing, we will not have all of Allen Jacques's documents ready before his deposition currently scheduled for September 18 in Boston. Therefore, Wyeth plans to postpone his deposition and we will get you a new proposed date.

Lastly, Wyeth plans to produce its documents related to Mr. Dippel on September 6, for delivery to your Los Angeles office on September 7. Mr. Dippel's deposition should proceed as scheduled on September 13 in our Cambridge office.

With best regards,

--Robert

-----
Robert C. Stanley
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
Atlanta, Georgia   USA
404-653-6441
404-653-6444 facsimile
robert.stanley@finnegan.com
-----


This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

# EXHIBIT E

**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP**

3500 SunTrust Plaza ▪ 303 Peachtree Street, NE ▪ Atlanta, GA 30308-3263 ▪ 404.653.6400 ▪ Fax 404.653.6444
www.finnegan.com

ROBERT C. STANLEY
404.653.6441
robert.stanley@finnegan.com

September 25, 2007

Mary Ann Novak, Esq.                                        **VIA E-Mail**
Irell & Manella LLP                                     *mnovak@irell.com*
1800 Avenue of the Stars
Suite 900
Los Angeles, California   90067-4276

        Wyeth's 30(b)(6) Designees
        *Amgen v. ARIAD* (D. Del. No. 1:06-cv-00259)

Dear Mary Ann:

      Wyeth designates the following individuals to testify in response to ARIAD's First, Fourth, Fifth, and Sixth Notices of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), subject to Wyeth's objections and our on-going negotiations as to the scope of testimony:

    1.    Joseph Warchol, Wyeth BioPharma
        Fourth Notice - Areas of Testimony No. 1, 5, and 11-13
        October 23, 2007, in Washington, D.C.

    2.    Allen Jacques, Wyeth BioPharma
        Fourth Notice - Areas of Testimony No. 2 and 3 (partial, for
          agreements with respect to the manufacture of Enbrel®)
        October 16, 2007, in Cambridge, Massachusetts

    3.    Michael Russomano, Wyeth BioPharma
        Fourth Notice - Areas of Testimony Nos. 6-8, 15, and 18
        November 6, 2007, in Cambridge, Massachusetts

    4.    Bruce Freundlich, Wyeth Pharmaceuticals
        First Notice - Areas of Testimony No. 1-4
        Fifth Notice - Area of Testimony No. 9
        Sixth Notice - Area of Testimony Nos. 1-11
        November 20, 2007, in Collegeville, Pennsylvania

Washington, DC  ▪  Atlanta, GA  ▪  Cambridge, MA  ▪  Palo Alto, CA  ▪  Reston, VA  ▪  Brussels  ▪  Taipei  ▪  Tokyo

Mary Ann Novak, Esq.
September 25, 2007
Page 2 of 2


     Wyeth has not yet been able to determine the availability of its designees to testify in response to ARIAD's Third Notice Area of Testimony Nos. 1-6, the Fourth Notice Area of Testimony No. 9, and the Fifth Notice Area of Testimony Nos. 1, 10, and 11. We should have that information by the end of this week. These remaining designations should obviate the hearing request in your e-mail of September 24, 2007.

     With best regards,

                         Sincerely,

                         Robert C. Stanley

cc:    ARIAD Counsel (*ariad.litigation.team@irell.com*)
       Amgen Counsel (*ariadcorrespondence@kirkland.com*)

# EXHIBIT F

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7883
FACSIMILE (310) 203-7199
msovak@irell.com

September 26, 2007

**VIA E-MAIL**

Robert C. Stanley, Esq.
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
303 Peachtree Street, N.E.
Sun Trust Plaza, Suite 3500
Atlanta, GA 30308

   Re:  *Amgen Inc. v. ARIAD Pharmaceuticals, Inc.*

Dear Robert:

   I am writing in response to your letter of September 25, 2007 regarding 30(b)(6) deposition scheduling.

   First, I want to confirm that we will proceed with the deposition of Allen Jacques on October 16, 2007 in Cambridge, Massachusetts and the deposition of Joseph Warchol on October 23, 2007 in Washington, D.C. As to Michael Russomano, please let us know whether he is available the week of October 15, 2007 so that the parties can minimize their travel to Cambridge; if he is not available the week of October 15, we will proceed with his deposition on November 6, 2007 in Cambridge, Massachusetts. Finally, please reserve November 20, 2007 for the deposition of Bruce Freundlich in Collegeville, Pennsylvania. However, as this date is distant—especially in light of the fact that the 30(b)(6) deposition notices were served in May 2007—please let us know what earlier dates Bruce Freundlich is available.

   Second, I note that your letter does not address Areas of Testimony Nos. 7-9 of the First 30(b)(6) Notice and Areas of Testimony Nos. 2-7 of the Fifth 30(b)(6) Notice. As you will recall, Wyeth took the position that it would provide a 30(b)(6) designee as to these topics, but not until after the date by which Wyeth must elect whether it will be relying on advice of counsel as a defense to willfulness. While ARIAD believes that these areas of testimony include a significant amount of information that is not privileged and is thus ripe for discovery, ARIAD agreed on August 13, 2007 that, for the time being, it would postpone the deposition of Wyeth on these topics until after the date by which Wyeth must make its willfulness election provided that ARIAD was given the following information at that time: (1) the name of the person(s) Wyeth will designate to testify on these topics, and (2) a date

# IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Robert C. Stanley, Esq.
September 26, 2007
Page 2

and location for the deposition(s), which date should be shortly after the willfulness election is scheduled to take place. Wyeth still has not provided that information, and we expect that Wyeth will provide it no later than this Friday.

Third, your letter likewise fails to address Areas of Testimony Nos. 4, 10 and 17 of ARIAD's Fourth 30(b)(6) to Wyeth. It was ARIAD's understanding, based on your meet and confer with Mr. Lowenstein and Mr. Goldberg, that Wyeth would be providing a designee as to these three areas of testimony. (See Mr. Lowenstein's August 17, 2007 letter.) Accordingly, please provide the names of the individuals Wyeth will designate on each of these topics no later than this Friday.

Fourth, with respect to Area of Testimony No. 3 of ARIAD's Fourth 30(b)(6) Notice, please clarify what is meant by the limitation "partial, for agreements with respect to the manufacture of Enbrel®." Is Wyeth taking the position that it will not provide a designee regarding agreements relating to the sale, promotion or marketing of Enbrel or does Wyeth intend to designate a different individual to testify regarding such agreements?

Fifth, there are a few other open issues with respect to ARIAD's 30(b)(6) Notices that are not addressed in your letter:

- <u>Area of Testimony No. 4 of the First 30(b)(6) Notice</u>: As you will recall, during our meet and confer, ARIAD proposed a compromise as to this area of testimony wherein the limitation "in relation to Enbrel" would be applicable to Wyeth's communications with third parties, but not for Wyeth's communications with Amgen or ARIAD. (See my letter of August 15, 2007 confirming our meet and confer.) You stated that you thought this proposal would be acceptable to Wyeth, but agreed to confirm this by August 15, 2007. As we have heard nothing further from Wyeth regarding this issue, we will assume that this compromise is acceptable and that Bruce Freundlich will be prepared to testify accordingly. If our assumption is incorrect, please let us know by this Friday.

- <u>Area of Testimony No. 6 of the First 30(b)(6) Notice and Area of Testimony No. 6 of the Second 30(b)(6) Notice</u>: You agreed during our meet and confer that you would let ARIAD know by August 15, 2007 whether Wyeth will provide a witness as to these areas of testimony, which relate to the patents that cover Enbrel and the inventions described therein. Despite repeated requests, Wyeth failed to get back to ARIAD regarding these two areas of testimony. Please provide, by this Friday, a definitive answer as to whether Wyeth will provide a designee on these two topics. If Wyeth does not intend to provide a designee, please let us know whether Wyeth will agree that it will not introduce evidence relating to these patents at trial.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Robert C. Stanley, Esq.
September 26, 2007
Page 3

Finally, while we are glad to have received a portion of the deposition scheduling information that Wyeth promised us weeks ago, we are disappointed that it was provided only after ARIAD informed Wyeth that it intended to call the Court to schedule a hearing for a motion to compel production of this information.  While ARIAD agreed to delay contacting the Court this week in light of Wyeth's promise to provide the remaining information by week's end, please note that if ARIAD does not receive the promised information this week, it intends to contact the Court on Monday morning.  As always, we hope that it will not be necessary to involve the Court, and look forward to receiving the remaining information this week.

Sincerely,

Mary Ann Novak

cc:    Counsel of Record

1757268

# EXHIBIT G



**FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER**LLP

3500 SunTrust Plaza ▪ 303 Peachtree Street, NE ▪ Atlanta, GA 30308-3263 ▪ 404.653.6400 ▪ Fax 404.653.6444
www.finnegan.com

ROBERT C. STANLEY
404.653.6441
robert.stanley@finnegan.com

October 10, 2007

Mary Ann Novak, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, California  90067-4276

<u>**VIA E-Mail**</u>
*mnovak@irell.com*

Deposition of Allen Jacques
*Amgen v. ARIAD* (D. Del. No. 1:06-cv-00259)

Dear Mary Ann:

Allen Jacques is no longer available for deposition on October 16.  Wyeth will provide a new date for Mr. Jacques in due course, which we anticipate will be in the last weeks of November or early December.

With best regards,

Sincerely,

*Robert Stanley*

Robert C. Stanley

cc:     ARIAD Counsel (*ariad.litigation.team@irell.com*)
        Amgen Counsel (*ariadcorrespondence@kirkland.com*)

Washington, DC  ▪  Atlanta, GA  ▪  Cambridge, MA  ▪  Palo Alto, CA  ▪  Reston, VA  ▪  Brussels  ▪  Taipei  ▪  Tokyo

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, | ) ) ) |
| Plaintiffs, | ) C.A. No. 06-259-MPT |
| v. | ) |
| ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | ) ) ) |
| Defendants. | ) ) ) |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH | ) ) ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | ) |
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH, | ) ) ) ) |
| Counterclaim Defendants. | ) ) |

**WYETH'S THIRD SET OF SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO ARIAD'S FIRST SET OF INTERROGATORIES
(NOS. 1-25)**

Under Fed. R. Civ. P. 33, subject to the following general and specific objections, and

without prejudice to its pending Motion to Sever and Stay, Counterclaim Defendant Wyeth

provides the following third set of supplemental responses to Ariad's First Set of Interrogatories

(Nos. 1-25) as follows:

## GENERAL OBJECTIONS

1.    Wyeth objects generally to the interrogatories, instructions, and definitions provided by Ariad to the extent they purport to import obligations on Wyeth beyond those required by the Federal Rules of Civil Procedure, this Court's Local Rules, orders issued in this case, and applicable case law.

2.    Wyeth objects generally to the interrogatories to the extent they seek the disclosure of information protected by the attorney-client privilege, work-product immunity, and/or any other applicable privilege. Wyeth also objects generally to the interrogatories to the extent they seek information that is trial preparation material within the meaning of Fed. R. Civ. P. 26(b)(3).

3.    Wyeth objects generally to the interrogatories to the extent they purport to require Wyeth to provide or search for information not within its possession, custody, or control. To do so would place an undue burden on Wyeth.

4.    Wyeth objects generally to the interrogatories to the extent they require Wyeth to provide any information beyond what is available to it at present from a reasonable search of its own files at its principal offices and from reasonable inquiry of its present employees, on the grounds that such discovery is unduly burdensome.

5.    Wyeth's objections and responses are based on the best knowledge, information, and belief known at this time. Wyeth's objections and responses are made without prejudice to Wyeth's right to revise or supplement them based on the discovery taken in this case. Further, Wyeth's objections and responses are based on Wyeth's good-faith interpretation of the individual interrogatories and are subject to correction for errors or omission, if any.

2

6.    Wyeth generally objects to the interrogatories to the extent that they seek information regarding commercial, financial, regulatory, marketing, manufacturing, and sales activities in countries other than the United States, as such interrogatories are unduly burdensome and overly broad, the information sought is not relevant to any issue in this suit, and the information is not reasonably calculated to lead to the discovery of admissible evidence.

7.    Wyeth generally objects to the interrogatories to the extent they seek the disclosure of information that is not relevant to any claim or defense in this case, or not reasonably likely to lead to the discovery of admissible evidence that is relevant to any claim or defense. Wyeth also objects to the requests to the extent they ask for information at a time before the issuance of the '516 patent.

8.    Wyeth generally objects to the interrogatories to the extent they seek the disclosure of information regarding products other than Enbrel®. Such interrogatories are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

9.    Wyeth objects to Ariad's definition of "identify" as it pertains to documents as unduly burdensome. To the extent a document is identified by Bates number, none of the other information needs to be provided. For any document not identified by Bates number, Wyeth will provide an adequate description so that Ariad can access the document.

10.    Wyeth objects to Ariad's definition of "ENBREL" as vague and ambiguous with respect to the phrase "any analog, derivative, or predecessor of the same, whether commercially available or not." Wyeth has interpreted the term "ENBREL" in these interrogatories to mean the commercially available product approved for sale by the U.S. Food and Drug Administration under the brand name Enbrel®.

3

11.    Wyeth generally objects to the interrogatories asking for the identification of documents or documented information for which Ariad has also requested production in its requests for production as unduly burdensome and imposing obligations greater than those required under the Federal Rules of Civil Procedure. To the extent non-privileged, responsive documents exist, they will be produced in response to the corresponding or related request for production in lieu of identification in response to the interrogatory.

12.    Wyeth generally objects to the interrogatories to the extent they are overly broad or unduly burdensome.

13.    Wyeth generally objects to Interrogatories Nos. 12 through 24 as compound, requiring Wyeth to respond to separate, multiple interrogatories (including subparts), and constitute an impermissible effort by ARIAD to circumvent the fifty interrogatory limit set forth in Local Rule 26.1(b).

14.    Wyeth generally objects to the interrogatories requiring the identification of "all," "the entire," "any," "each," or "every" person, document, or fact, or any similar unrestricted request, as oppressive and unduly burdensome.

15.    Wyeth generally objects to the interrogatories to the extent they seek information, documents and/or things of a confidential or proprietary nature to Wyeth or to others to whom Wyeth is under an obligation of confidentiality. Subject to the other objections and limitations stated herein, Wyeth will provide such information and produce such documents and/or things subject to the terms of the Protective Order entered in this action.

16.    Each of the General Objections is incorporated by reference into each and every response set forth below. To the extent that General Objections are cited herein in response to specific interrogatories, those specific citations are provided because they are believed to be

particularly applicable to the request and are not to be construed as a waiver of any other General Objections applicable to the information falling within the scope of the interrogatory.

17.     Nothing in these responses should be construed as waiving rights or objections that otherwise might be available to Wyeth, nor should Wyeth's answering of any discovery request be deemed an admission of relevancy, materiality, or admissibility in evidence of the interrogatories or the responses thereto.

**RESPONSES TO INTERROGATORIES NOS. 1-25**
**WITH WYETH'S SPECIFIC OBJECTIONS**

Subject to the foregoing General Objections, and without waiver, modification, or limitation thereof, Wyeth responds and specifically objects to Ariad's First Set of Interrogatories (Nos. 1-25) as set forth below.

**INTERROGATORY NO. 1**

Please IDENTIFY each agreement between YOU on the one hand and AMGEN on the other hand.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests the identification of agreements outside the United States and not related to Enbrel®. Wyeth further objects to this interrogatory to the extent that it seeks disclosure of information protected by third-party confidentiality agreements or obligations.

Subject to its General and Specific Objections, to the extent documents exist that are responsive to this interrogatory, they will be produced in response to at least Ariad's Request for Production No. 2.

## SUPPLEMENTAL RESPONSE

Subject to its General and Specific Objections, Wyeth provides the following response, while reserving its right to supplementation.

Wyeth identifies the following agreements between it and Amgen regarding Enbrel®, which will be produced in response to at least Ariad's Request for Production No. 2:

- TNFR License Development Agreement, dated July 1, 1996;
- Promotion Agreement, dated September 25, 1997;
- Product Rights Agreement, dated July 1, 1998;
- Amendment No. 1 to the Product Rights Agreement, dated May 20, 1999;
- Memorandum of Understanding Regarding Long-Term Allocation of ENBREL Supplies, dated August 9, 2000;
- Letter regarding Short-Term Allocation Agreement of ENBREL Supplies, dated August 9, 2000;
- Memorandum of Understanding for the Identification, Collection, Evaluation and Regulatory Reporting of Adverse Events and Product Quality and for the Provision of Medical Information for Enbrel® (etanercept), dated December 13, 2000;
- Amendment No. 1 to Memorandum of Understanding, dated April 18, 2001;
- Amendment No. 1 to Memorandum of Understanding Regarding Greenwich Holding's West Greenwich, RI Biopharmaceutical Facility dated August 9, 2000, dated April 19, 2001
- Collaboration and Global Supply Agreement, dated November 6, 2001;
- Technology Transfer Agreement, dated November 6, 2001;
- Amended and Restated Promotion Agreement, dated December 16, 2001;
- Amendment No. 2 to the Product Rights Agreement, dated July 15, 2002;
- Safety Agreement, dated March 31, 2003;
- Amendment No. 1 to Collaboration and Global Supply Agreement, Amended and Restated Promotion Agreement, and TNFR License and Development Agreement, dated July 8, 2003;
- Amendment No. 1 to Safety Agreement, dated September 11, 2003;
- Amendment No. 2 to Safety Agreement, dated November 17, 2003;
- 2004 Delivery Schedule Agreement, dated April 20, 2004;
- Amendment No. 2 to Collaboration and Global Supply Agreement and Amended and Restated Promotion Agreement, dated April 20, 2004;
- Amendment No. 3 to Amended and Restated Promotion Agreement, dated April 19, 2005; and,
- Services Agreement, dated April 9, 2007.

**INTERROGATORY NO. 2**

Please IDENTIFY the five persons, at least three of whom are YOUR current employees, whom YOU believe are the most knowledgeable regarding YOUR business relationship with AMGEN.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests information regarding business relationships outside the United States and not related to Enbrel®. Wyeth further objects to this interrogatory as vague and ambiguous to the extent that it seeks identification of persons "most knowledgeable" regarding the recited topics.

Subject to its General and Specific Objections, Wyeth is investigating the information sought by this interrogatory and will supplement its response when responsive information is determined.

**SUPPLEMENTAL RESPONSE**

Subject to its General and Specific Objections, Wyeth presently identifies the following five persons, while reserving the right to supplement this response:

1. Michael Russamano
2. Emil Andrusko
3. Timothy McIntire
4. Ronald Alice
5. Joseph Warchol

## SECOND SUPPLEMENTAL RESPONSE

Subject to its General and Specific Objections, Wyeth presently identifies the following five persons, while reserving the right to supplement this response:

1.  Michael Russamano
    Vice President and U.S. General Business Manager - Enbrel®
    Wyeth BioPharma, 500 Arcola Road, Collegeville, Pennsylvania 19426

2.  Emil Andrusko
    Assistant Vice President, U.S. Enbrel® Marketing
    Wyeth BioPharma, 500 Arcola Road, Collegeville, Pennsylvania 19426

3.  Timothy McIntire
    Senior Director - Enbrel® Rheumatology
    Wyeth BioPharma, 500 Arcola Road, Collegeville, Pennsylvania 19426

4.  Ronald Alice
    Assistant General Counsel and Vice President, Global Business
        Development
    Wyeth Pharmaceuticals, 500 Arcola Road, Collegeville, Pennsylvania
        19426

5.  Joseph Warchol
    Enbrel® Finance
    Wyeth BioPharma, 500 Arcola Road, Collegeville, Pennsylvania 19426

## INTERROGATORY NO. 3

Please IDENTIFY each person within WYETH who has participated in the design, development, engineering, manufacture, testing, marketing, promotion and/or sales of ENBREL, and describe the role of each identified person in connection with the design, development, engineering, manufacture, testing, marketing and/or sales.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests

information regarding voluminous numbers of individuals whose relation to Enbrel® in no way relates to any claim or defense in this case. Wyeth further objects to this interrogatory as vague and ambiguous with respect to the undefined terms "testing," "development," and "engineering."

## SUPPLEMENTAL RESPONSE

Subject to its General and Specific Objections, Wyeth will produce documents sufficient to identify the persons within Wyeth who have participated in and are responsible for testing of Enbrel® and the marketing and promotion of Enbrel® in the United States, while reserving the right to supplement this response.

## INTERROGATORY NO. 4

IDENTIFY all directors, officers, and employees of WYETH, and describe the job duties of each identified person.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests information regarding voluminous numbers of individuals who have no relation to Enbrel® or whose relation to Enbrel® in no way relates to any claim or defense in this case.

## SUPPLEMENTAL RESPONSE

Subject to its General and Specific Objections, Wyeth will produce documents sufficient to identify the members of its Board of Directors, its Principal Corporate Officers, its Principal Division and Subsidiary Officers, and its non-sales force Enbrel®-related employees, while reserving the right to supplement this response.

RLF1-3203977-1

## INTERROGATORY NO. 5

Please IDENTIFY each location throughout the world that manufactures ENBREL.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests information regarding manufacturing outside of the United States and because manufacturing Enbrel® anywhere in the world, including in the United States, is not an infringement of any claim of U.S. Patent No. 6,410,516 ("the '516 patent").

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as vague and ambiguous with respect to the phrase "manufactures Enbrel." Subject to its general and specific objections, Wyeth provides the following response, while reserving its right to supplementation. The following locations worldwide were or may now be involved in one or more steps in the making, filling, finishing, or packaging of etanercept or Enbrel®: Wyeth's facility in Grange Castle, Ireland; Boehringer Ingelheim's facilities in Biberach, Germany; Amgen's facilities in West Greenwich, Rhode Island; Genentech's facility in South San Francisco, California; Vetter Pharma's facility in Langenargen, Germany; DSM Pharmaceuticals' facility in Greenville, North Carolina; Amgen's facility in Juncos, Puerto Rico; Wyeth-WKK's facility in Shiki, Japan; Wyeth's facilities in Havant and Gosport, United Kingdom; and Catalent Pharma Solutions' facility in Philadelphia, Pennsylvania.

**INTERROGATORY NO. 6**

Please IDENTIFY the total dollar amount of sales (in U.S. dollars) for ENBREL worldwide for each month from the inception of YOUR promotion, co-promotion or manufacture of ENBREL to the present.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests information regarding sales outside of the United States and because the manufacture of Enbrel® anywhere in the world, including in the United States, is not an infringement of any claim of the '516 patent.

Subject to its General and Specific Objections, Wyeth has not and does not sell Enbrel® in the United States.

**SUPPLEMENTAL RESPONSE**

Subject to its General and Specific Objections, Wyeth identifies the following total dollar amount of sales (in U.S. dollars) for Enbrel® worldwide, not including the United States and Canada (in which Wyeth does not sell Enbrel®), for each quarter from the inception of its promotion or co-promotion of Enbrel® to the end of the second quarter (June 30) 2007, while reserving its right to supplementation:

| Year / Quarter | Sales (US$) |
|---|---|
| 1998 4Q | $0 |
| **1998 Total** | **$0** |
| 1999 1Q | $4,066.00 |
| 1999 2Q | $1,551,950.00 |
| 1999 3Q | $3,155,392.00 |
| 1999 4Q | $3,737,764.00 |
| **1999 Total** | **$8,449,171.00** |

11

| 2000 1Q | $7,635,365.00 |
|---|---|
| 2000 2Q | $9,573,663.00 |
| 2000 3Q | $10,410,554.00 |
| 2000 4Q | $13,791,861.00 |
| 2000 Total | $41,411,444 |
| 2001 1Q | $16,210,564.00 |
| 2001 2Q | $20,032,422.00 |
| 2001 3Q | $22,929,846.00 |
| 2001 4Q | $27,112,909.00 |
| 2001 Total | $86,285,741.00 |
| 2002 1Q | $29,590,786.00 |
| 2002 2Q | $31,332,651.00 |
| 2002 3Q | $35,510,356.00 |
| 2002 4Q | $39,112,263.00 |
| 2002 Total | $135,546,056.00 |
| 2003 1Q | $42,782,254.00 |
| 2003 2Q | $63,716,160.00 |
| 2003 3Q | $86,818,706.00 |
| 2003 4Q | $105,562,000.00 |
| 2003 Total | $298,879,120.00 |
| 2004 1Q | $135,028,032.00 |
| 2004 2Q | $155,971,440.00 |
| 2004 3Q | $173,410,557.00 |
| 2004 4Q | $215,569,563.00 |
| 2004 Total | $679,979,591.00 |
| 2005 1Q | $236,971,199.00 |
| 2005 2Q | $272,356,045.00 |
| 2005 3Q | $276,284,974.00 |
| 2005 4Q | $298,048,556.00 |
| 2005 Total | $1,083,660,774.00 |
| 2006 1Q | $335,354,588.00 |
| 2006 2Q | $369,839,173.00 |
| 2006 3Q | $378,290,423.00 |
| 2006 4Q | $416,084,135.00 |
| 2006 Total | $1,499,568,319.00 |
| 2007 1Q | $445,204,950.00 |
| 2007 2Q | $507,868,349.00 |

## INTERROGATORY NO. 7

Please IDENTIFY the total dollar amount of sales (in U.S. dollars) for ENBREL in the United States for each month from the inception of YOUR promotion, co-promotion or manufacture of ENBREL to the present.

12

**RESPONSE**

Subject to its General Objections, Wyeth has not and does not sell Enbrel® in the United States.

**INTERROGATORY NO. 8**

Please IDENTIFY the total volume of ENBREL sold worldwide for each month from the inception of YOUR promotion, co-promotion or manufacture of ENBREL to the present.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests information regarding sales outside of the United States.

Subject to its General and Specific Objections, Wyeth will produce documents showing the total volume of Enbrel® sold in the United States in response to Ariad's Request for Production No. 63.

**SUPPLEMENTAL RESPONSE**

Subject to its General and Specific Objections, Wyeth identifies the following total volume in 25 mg vial equivalents of Enbrel® sold worldwide, not including the United States and Canada (in which Wyeth does not sell Enbrel®), for each quarter from the inception of its promotion or co-promotion of Enbrel® to the end of the first quarter (March 31) 2007, while reserving its right to supplementation:

| Year / Quarter | Sales (25mg equivalents) |
|---|---|
| 1998 4Q | 0 |
| 1998 Total | 0 |
| 1999 1Q | 36 |
| 1999 2Q | 12,412 |
| 1999 3Q | 25,128 |

13

| | |
|---|---|
| 1999 4Q | 30,184 |
| **1999 Total** | **67,760** |
| 2000 1Q | 58,884 |
| 2000 2Q | 72,936 |
| 2000 3Q | 84,060 |
| 2000 4Q | 165,908 |
| **2000 Total** | **381,788** |
| 2001 1Q | 126,156 |
| 2001 2Q | 157,860 |
| 2001 3Q | 178,292 |
| 2001 4Q | 209,280 |
| **2001 Total** | **671,588** |
| 2002 1Q | 230,034 |
| 2002 2Q | 233,480 |
| 2002 3Q | 248,696 |
| 2002 4Q | 266,311 |
| **2002 Total** | **978,521** |
| 2003 1Q | 277,678 |
| 2003 2Q | 389,573 |
| 2003 3Q | 558,633 |
| 2003 4Q | 671,301 |
| **2003 Total** | **1,897,185** |
| 2004 1Q | 820,916 |
| 2004 2Q | 983,884 |
| 2004 3Q | 1,107,023 |
| 2004 4Q | 1,287,621 |
| **2004 Total** | **4,199,444** |
| 2005 1Q | 1,396,394 |
| 2005 2Q | 1,702,921 |
| 2005 3Q | 1,813,395 |
| 2005 4Q | 2,010,563 |
| **2005 Total** | **6,923,273** |
| 2006 1Q | 2,255,286 |
| 2006 2Q | 2,411,517 |
| 2006 3Q | 2,496,049 |
| 2006 4Q | 2,720,720 |
| **2006 Total** | **9,883,572** |
| 2007 1Q | 2,874,389 |

RLF1-3203977-1

## INTERROGATORY NO. 9

Please IDENTIFY the total volume of ENBREL sold in the United States for each month from the inception of YOUR promotion, co-promotion or manufacture of ENBREL to the present.

## RESPONSE

See response to Interrogatory No. 8.

## SUPPLEMENTAL RESPONSE

Subject to its General Objections, Wyeth has not and does not sell Enbrel® in the United States.

## INTERROGATORY NO. 10

State whether YOU have conducted or caused to be conducted any search or investigation to locate PRIOR ART pertinent or relevant to the '516 PATENT and, if so: (a) state when and by whom each search or investigation was made at whose request; and (b) identify each patent, printed publication or other PRIOR ART reference or device which WYETH will contend is pertinent or relevant to the '516 PATENT; and (c) IDENTIFY every document prepared by or for WYETH relating to any such investigation or search.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is protected by the attorney-client privilege, work-product immunity, and/or other applicable privilege. Wyeth further objects to this interrogatory as premature, as Wyeth has not yet fully developed its positions regarding the information sought to be disclosed by this interrogatory in part (b).

15

**INTERROGATORY NO. 11**

Please IDENTIFY when WYETH first became aware of the '516 PATENT, the circumstances of such first awareness, and the persons involved in such first awareness.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is protected by the attorney-client privilege, work-product immunity, and/or other applicable privilege.

Subject to the General and Specific Objections, Wyeth learned of the '516 patent at about the time the patent issued. It has not yet determined the circumstances of its first awareness and the persons involved. Wyeth will supplement this answer when the investigation is completed.

**SUPPLEMENTAL RESPONSE**

Subject to its General and Specific Objections, and while reserving its right to supplementation, Wyeth answers that it became aware of the '516 Patent on or about June 26, 2002, when Darryl Webster reviewed a press release mentioning the '516 Patent.

**INTERROGATORY NO. 12**

Please IDENTIFY each item of PRIOR ART constituting a patent or publication.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent. Wyeth further objects to this interrogatory as premature since Wyeth has not yet determined what prior art it will rely upon.

RLF1-3203977-1

Subject to the General and Specific Objections, prior art is identified in the pending reexamination proceedings of the '516 patent at the U.S. Patent and Trademark Office with Control Nos. 90/007,503 and 90/007,828.

## SUPPLEMENTAL RESPONSE

Subject to the General and Specific Objections, Wyeth presently identifies the following items of prior art, while reserving the right to supplement this response:

1.      Annual Meeting, 183 J. Am. Med. Assoc. 166-169 (1963)
2.      Baeuerle, 1072 Biochimica Biophysica Acta 63-80 (1991)
3.      Baeuerle, 242 Science 540-546 (1988)
4.      Baeuerle, 53 Cell 211-217 (1988)
5.      Baeuerle, Cold Spring Harbor Symposia on Quantitative Biology, Vol. LIII, 789-798 (1988)
6.      Baldwin, 7 Molecular & Cellular Biology 305-313 (1987)
7.      Baldwin, 85 Proc. Natl. Sci. USA 723-727 (1988)
8.      Baltimore, 335 Nature 395-396 (1988)
9.      Banerji, 11 Molecular and Cellular Biology 4074-4087 (1991)
10.     Beutler, 232 Science 977-980 (1986)
11.     Bielinska, 250 Science 997-1000 (1990)
12.     Blanar, 8 EMBO Journal 1139-1144 (1989)
13.     Böhnlein, 53 Cell 827-83 (1988)
14.     Brini, 1 Eur. Cytokine Network 131-139 (1990)
15.     Clouse, 142 J. Immunology 431-438 (1989)
16.     Collart, 10 Molecular & Cellular Biology 1498-1506 (1990)
17.     Collart, J. Immunology 949-955 (1987)
18.     Colston, 108 Endocrinology 1083-1086 (1981)
19.     Cross, 244 Science 466-469 (1989)
20.     Davis, 253 Science 1268-1271 (1991)
21.     Dew, 287 Br. Med. Journal 23-24 (1983)
22.     Dobrilla, 31 Hepato-Gastroenterology 35-37 (1984)
23.     Dofferhoff, 23 Scand. J. Infect. 739-754 (1991)
24.     Emmel, 246 Science 1617-1620 (1989)
25.     Fan, 354 Nature 395-398 (1991)
26.     Fan, 4 Genes & Development 29-42 (1990)
27.     Fan, 8 EMBO Journal 101-110 (1989)
28.     Friedman, 335 Nature 452-454 (1988)
29.     Gehrt, 51 J. Antibiotics 45-46 (1998)
30.     Goldfeld, 86 Proc. Natl. Acad. Sci. USA 1490-1494 (1989)
31.     Goldfeld, 87 Proc. Natl. Acad. Sci. USA 9769-9773 (1990)
32.     Goodbourn, 85 Proc. Natl. Acad. Sci. USA 1447-1451 (1988)
33.     Griffith, 196 Ann. Surg. 324 (1981)

34. Griffith, 99 J. Thorac. Cardiovaso. Surg. 952-957 (1984)
35. Hahn, 30 J. Clin. Investigations 274 (1951)
36. Haskill, 65 Cell 1281-1289 (1991)
37. Holick, 68 Proc .Nat. Acad. Sci. USA 803 (1971)
38. Horuk, 119 J. Immunological Methods 255 (1989)
39. Hoyos, 244 Science 457-460 (1989)
40. Hughes, 287 Brit. Med. Journal 23-24 (1983)
41. Hurley, 35 Antimicrobial Agents & Chemotherapy 2388-2394 (1991)
42. Jones, 60 Pharm. & Tox. 217-220 (1987)
43. Keller, 85 Proc. Natl. Acad. Sci. USA 3309-3313 (1988)
44. Kerr, 5 Genes & Development 1464-1476 (1991)
45. King James Bible (1611)
46. Krönke, 81 Proc. Natl. Acad. Sci. USA 5214-5218 (1984)
47. Lawson, 230 Nature 228-230 (1971)
48. Leger, 1 Then Lancet 1017-1020 (1979)
49. Lemire, 134 J. Immunol. 3032-3035 (1985)
50. Lemire, 74 J. Clin. Invest. 657-661 (1984)
51. Lenardo, 236 Science 1573-1577 (1987)
52. Lenardo, 57 Cell 287-294 (1989)
53. Lenardo, 85 Proc. Nat. Acad. Sci. USA 8825-8829 (1988)
54. Leung, 333 Nature 776-778 (1988)
55. Logeat, 10 EMBO Journal 1827-1832 (1991)
56. Manolagas, 63 J. Clin. Endocrinology & Metabolism 394-400 (1986)
57. Mauxion, 88 Proc. Nat. Acad. Sci. USA 2141-2145 (1991)
58. Mauxion, 9 Molecular & Cellular Biology 3548-3552 (1989)
59. Meichle, 236 J. Biol. Chem. 8339-8343 (1990)
60. Mustafa, 160 J. Infectious Diseases 891-895 (1989)
61. Nabel, 326 Nature 711-713 (1987)
62. Nagasawa, 109 J. Cell. Phys. 181-192 (1981)
63. Nelsen, 8 Molecular & Cellular Biology 3526-3531 (1988)
64. Norman, 173 Science 51-54 (1971)
65. Osborn, 86 Proc. Natl. Acad. Sci. USA 2336-2340 (1989)
66. Physicians' Desk Reference (1970)
67. Physicians' Desk Reference (1980)
68. Physicians' Desk Reference (1985)
69. Provvedini, 221 Science 1181-1183 (1983)
70. Reed, 137 J. Immunol. 150-154 (1986)
71. Rigby, 135 J Immunol. 2279-2286 (1985)
72. Rigby, 74 J. Clin. Invest. 1451-1455 (1984)
73. Rovera, 204 Science 868-970 (1979)
74. Ruben, 241 Science 89-92 (1988)
75. Schmidt, 64 J. Virology 4037-4041 (1990)
76. Schmitz, 1 Trends in Cell Biology 130-137 (1991)
77. Schreck, 1 Forum 39-42 (1991)
78. Semmler, 30 Tetrahedron Lett. 4147-4150 (1972)
79. Sen, 46 Cell 705-716 (1986)

80.    Sen, 47 Cell 921-928 (1986)
81.    Shenep, 150 J. Infectious Diseases 380-388 (1984)
82.    Shirakawa, 9 Molecular and Cellular Biology 2424-2430 (1989)
83.    Siebenlist, 6 Molecular and Cellular Biology 3042-3049 (1986)
84.    Smith, 249 Science 386-390 (1990)
85.    St. Leger, 1 Lancet 1017-1020 (May 1979)
86.    Staal, 87 Proc. Natl. Acad. Sci. USA 9943-9947 (1990)
87.    Taber's Cyclopedic Medical Dictionary (1989)
88.    Tomita, 42 Arthritis & Rheumatism 2532-2542 (1999)
89.    Tsoukas, 224 Science 1438-1440 (1984)
90.    Weissman, 264 Scientific American 84-90 (1991)
91.    Yu, 92 Proc. Natl. Acad. Sci. USA 10990-10994 (1995)
92.    Zabel, 81 Cell 255-265 (1990)
93.    Zinn, 34 Cell 865-879 (1983)

## SECOND SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent, and because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence. Wyeth also objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth further objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent. Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses continue.

19

Subject to the General and Specific Objections, Wyeth identifies the prior art identified by Amgen in this matter and incorporates by reference herein Amgen's Responses to Interrogatory No. 1 in Plaintiff's First Supplemental Responses and Objections to Ariad's First Set of Interrogatories.

## INTERROGATORY NO. 13

For PRIOR ART under 35 U.S.C. § 102(b), please IDENTIFY the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the PERSON who made the use or who made and received the offer, or the PERSON who made the information known or to whom it was made known.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent. Wyeth further objects to this interrogatory to the extent it references statutes at issue in this case and, thus, improperly seeks legal conclusions. Wyeth further objects to this interrogatory as premature since Wyeth has not yet determined if it will contend that the '516 patent was invalid because of a prior public use or offer to sell.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of

20

admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent, and because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence. Wyeth also objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Wyeth currently responds that investigation is continuing to determine what other methods, having been publicly used or on sale, are prior art with respect to any claim of the '516 patent. Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, Wyeth responds that, to the extent any reference cited in Wyeth's Response to Interrogatory No. 12 may also constitute evidence of a method that, having been in public use or on sale in this country more than one year prior to the effective filing date of the '516 patent application, anticipates at least one claim of the '516 patent, Wyeth fully incorporates by reference herein its Response to Interrogatory No. 12. Wyeth identifies the prior art identified by Amgen in this matter and incorporates by reference herein Amgen's Responses to Interrogatory No. 2 in Plaintiff's First Supplemental Responses and Objections to Ariad's First Set of Interrogatories.

## INTERROGATORY NO. 14

For PRIOR ART under 35 U.S.C. § 102(f), please IDENTIFY all PERSONS from whom, and describe in detail the circumstances under which, the invention or any part of it was derived.

## RESPONSE

21

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent. Wyeth further objects to this interrogatory to the extent it references statutes at issue in this case and, thus, improperly seeks legal conclusions. Wyeth further objects to this interrogatory as premature since Wyeth has not yet determined if it will contend that the '516 patent was invalid because of derivation.

**SUPPLEMENTAL RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent, and because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence. Wyeth also objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid under 35 U.S.C. 102(f). This investigation, which is both complex and time consuming, is ongoing and incomplete. Wyeth therefore reserves the right to amend this

response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, the '516 patent claims the benefit of the filing dates of numerous applications filed prior to Application No. 07/791,898, filed on November 13, 1991. Those earlier filed applications named several different sets of applicants who were employed by or affiliated with three different institutions: the Whitehead Institute, MIT, and Harvard. The individual applicants are believed to have had obligations to assign their interests in the various applications leading to the '516 patent to the institutions by which they were employed or in whose laboratories they worked. Consequently, the efforts of these different sets of applicants may constitute prior art under 35 U.S.C. § 102(f) to the subject matter of the asserted claims in the '516 patent.

## INTERROGATORY NO. 15

For PRIOR ART under 35 U.S.C. § 102(g), please IDENTIFY all PERSONS involved in, and describe in detail the circumstances surrounding the making of the invention before the patent applicants.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent. Wyeth further objects to this interrogatory to the extent it references statutes at issue in this case and, thus, improperly seeks legal conclusions. Wyeth further objects to this

interrogatory as premature since Wyeth has not yet determined if it will contend that the '516 patent was invalid because of prior invention.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it requests voluminous amounts of information that may pre-date yet have no relation to the claims of the '516 patent, and because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence. Wyeth also objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.

Investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid under 35 U.S.C. 102(g). This investigation, which is both complex and time consuming, is ongoing and incomplete. Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, the '516 patent claims the benefit of the filing dates of numerous applications filed prior to Application No. 07/791,898, filed on November 13, 1991. Those earlier filed applications named several different sets of applicants who were employed by or affiliated with three different institutions: the Whitehead Institute,

MIT, and Harvard. The individual applicants are believed to have had obligations to assign their interests in the various applications leading to the '516 patent to the institutions by which they were employed or in whose laboratories they worked. Consequently, the efforts of these different sets of applicants and the patent applications filed in their names may constitute prior art under 35 U.S.C. § 102(g) to the subject matter of the asserted claims in the '516 patent.

## INTERROGATORY NO. 16

For each item of PRIOR ART YOU will assert anticipates any claim of the '516 PATENT, provide a chart that identifies where specifically in such item of PRIOR ART each element of each allegedly anticipated claim is found.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory. Wyeth further objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 102) and, thus, improperly seeks legal conclusions.

Subject to the General and Specific Objections, prior art that Wyeth may assert is identified in the pending reexamination proceedings of the '516 patent at the U.S. Patent and Trademark Office with Control Nos. 90/007,503 and 90/007,828.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of

25

admissible evidence, at least because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence. Wyeth objects to this interrogatory as premature to the extent it seeks an expert determination or infomation more appropriately sought through expert discovery.    Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.  Wyeth objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 102) and, thus, improperly seeks legal conclusions.  Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts).

Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent.  Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, Wyeth responds that, to the extent that any prior art listed in Wyeth's Response to Interrogatory Nos. 12-15 also anticipates at least one claim of the '516 patent, Wyeth fully incorporates herein by reference its Responses to Interrogatory Nos. 12-15.  Wyeth further identifies the prior art identified by Amgen in this matter and incorporates by reference herein Amgen's Responses to Interrogatory No. 5 in Plaintiff's Second Supplemental Responses and Objections to Ariad's First Set of Interrogatories.

Subject to and without waiving any of the previously listed Specific Objections and General Objections, Wyeth responds that depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, and applying Ariad's apparent theory of claim construction and

infringement to the claims of the '516 patent, each of the following references from the list

below may anticipate, expressly or inherently, and/or render obvious at least one claim of the

'516 patent:

| | |
|---|---|
| Tong-Starkesen SE, Luciw PA, Peterlin BM, Signaling through T lymphocyte surface proteins, TCR/CD3 and CD28, activates the HIV-1 long terminal repeat. J Immunol. 1989 Jan 15;142(2):702-7. | Among other things, this article discloses that protein kinase inhibitor H7 inhibits PMA or TCR/CD3 and CD28 induced cellular NF-kB activity and expression of HIV-1, a process that requires NF-kB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| U.S. Patent No. 5,698,419 | Among other things, this patent discloses that neutralizing TNF antibodies inhibit septic shock and cachexia in animals, processes that require NF-kB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this patent anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| U.S. Patent No. 5,658,803 | Among other things, this patent discloses that neutralizing TNF antibodies inhibit septic shock in animals, a process that requires NF-kB-dependent gene expression. The patent also discloses that neutralizing TNF antibodies inhibit TNF induced responsiveness of L929 cells, a process that includes NFkB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this patent anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |

| U.S. Patent No. 4,684,623 | Among other things, this patent discloses a method for controlling cachexia, a process that involves NFkB-dependent gene expression, by administration of neutralizing TNF antibodies. The patent also discloses that neutralizing TNF antibodies inhibit TNF induced responsiveness of L929 cells, a process that includes NFkB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
|---|---|
| Beutler et al., Science. 1985 Aug 30;229(4716):869-71. | Among other things, this article discloses that neutralizing TNF antibodies inhibit LPS-induced shock in animals, a process that requires NF-kB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Tracey et al., Nature. 1987 Dec 17-23;330(6149):662-4. | Among other things, this article discloses that neutralizing TNF antibodies inhibit bacteria-induced septic shock in animals, a process that requires NF-kB-dependent gene expression. The article also discloses that neutralizing TNF antibodies inhibit TNF induced responsiveness of L929 cells, a process that includes NFkB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185 |

28

| | |
|---|---|
| Osborn et al., PNAS USA. 1989 Apr;86(7):2336-40. | Among other things, this article discloses that neutralizing TNF antibodies inhibit TNF induction of cellular expression of a HIV-1 enhancer-driven gene, a gene whose transcription is regulated by NF-κB. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Clouse et al., J Immunol. 1989 Jan 15;142(2):431-8. | Among other things, this article discloses that neutralizing TNF antibodies inhibit TNF induction of cellular expression of HIV-1, a process that requires NF-kB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Fendly BM, Toy KJ, Creasey AA, Vitt CR, Larrick JW, Yamamoto R, Lin LS., Murine monoclonal antibodies defining neutralizing epitopes on tumor necrosis factor. Hybridoma. 1987 Aug;6(4):359-70. | Among other things, this article discloses that neutralizing TNF antibodies inhibit TNF induced responsiveness of L929 cells, a process that includes NFkB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |

29

| | |
|---|---|
| Meager A, Parti S, Leung H, Peil E, Mahon B., Preparation and characterization of monoclonal antibodies directed against antigenic determinants of recombinant human tumour necrosis factor (rTNF). Hybridoma. 1987 Jun;6(3):305-11. | Among other things, this article discloses that neutralizing TNF antibodies inhibit TNF induced responsiveness of L929 cells, a process that includes NFkB-dependent gene expression. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Rothlein R, Czajkowski M, O'Neill MM, Marlin SD, Mainolfi E, Merluzzi VJ., Induction of intercellular adhesion molecule 1 on primary and continuous cell lines by pro-inflammatory cytokines. Regulation by pharmacologic agents and neutralizing antibodies. J Immunol. 1988 Sep 1;141(5):1665-9. | Among other things, this article discloses that neutralizing TNF antibodies inhibit TNF induction of cellular expression of the ICAM-1 gene, a gene whose transcription is regulated by NF-κB. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Blasco R, Aguero M, Almendral JM, Vinuela E., Variable and constant regions in African swine fever virus DNA. Virology. 1989 Feb;168(2):330-8. | Among other things, this article discloses the genomic structure of the African Swine Fever Virus strain BA71V, a virus that inhibits NF-kB activity and target gene expression in infected cells. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |

RLF1-3203977-1

| | |
|---|---|
| Sierra MA, Carrasco L, Gomez-Villamandos JC, Martin de las Mulas J, Mendez A, Jover A., Pulmonary intravascular macrophages in lungs of pigs inoculated with African swine fever virus of differing virulence. J Comp Pathol. 1990 Apr;102(3):323-34. | Among other things, this article discloses the infection of cells by the African Swine Fever Virus strain E70, a virus that inhibits NF-kB activity and target gene expression in infected cells. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Enjuanes et al., J Gen Virol. 1976 Sep;32(3):471-7. | Among other things, this article discloses infection by the African Swine Fever Virus, a virus that inhibits NF-kB activity and target gene expression in infected cells. The article also discloses the strain BA71V. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |
| Enjuanes et al., J Gen Virol. 1976 Sep;32(3):479-92. | Among other things, this article discloses infection by the African Swine Fever Virus, including strain BA71V, a virus that inhibits NF-kB activity and target gene expression in infected cells. The article also discloses the isolation of homogeneous DNA of the virus. Thus, depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are ultimately construed, this article anticipates and/or renders obvious at least claim(s) 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185. |

Subject to and without waiving any of the previously listed Specific Objections and General Objections, Wyeth responds that depending upon the effective filing date, if any, to which the '516 patent claims are entitled and upon how the limitations of those claims are

31

ultimately construed, and applying Ariad's apparent theory of claim construction to the claims of the '516 patent, the above listed articles may anticipate, expressly or inherently, and/or render obvious one or more of the claims of the '516 patent as indicated in the chart below.

Use of anti-TNF antibody, as in, for example, the following reference(s), may anticipate and/or render obvious the following claims of the '516 patent according to the following chart.

- US Patent No. 5,698,419

- US Patent No. 5,658,803

- US Patent No. 4,684,623

- Beutler et al., Science. 1985 Aug 30;229(4716):869-71.

- Tracey et al., Nature. 1987 Dec 17-23;330(6149):662-4.

- Osborn et al., PNAS USA. 1989 Apr;86(7):2336-40

- Fendly et al., Hybridoma. 1987 Aug;6(4):359-70.

- Meager et al., Hybridoma. 1987 Jun;6(3):305-11.

- Rothlein et al., J Immunol. 1988 Sep 1;141(5):1665-9

| '516 Patent claim | anti-TNF antibody |
|---|---|
| **Claim 1** | |
| A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said gene is inhibited. | Use of anti-TNF antibody anticipates this claim by inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |
| **Claim 2** | |
| A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said genes is | Use of anti-TNF antibody anticipates this claim by selectively inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion |

| | |
|---|---|
| inhibited. | molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |

| Claim 5 | |
|---|---|
| A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-κB in a eukaryotic cell comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. | Use of anti-TNF antibody anticipates this claim by reducing the level of expression of cytokine genes, including the TNF-α gene, whose transcription is regulated by NF-κB in eukaryotic cells, including mammalian cells, comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. |

| Claim 6 | |
|---|---|
| A method for diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells such that NF-κB-mediated intracellular signaling is diminished. | Use of anti-TNF antibody anticipates this claim by diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells, including mammalian cells, such that NF-κB-mediated intracellular signaling is diminished. |

| Claim 18 | |
|---|---|
| A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Use of anti-TNF antibody anticipates this claim by reducing Tumor Necrosis Factor-α activity in mammalian cells, including human, mouse or baboon cells, comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Tumor Necrosis Factor-α in the cells. |

| Claim 26 | |
|---|---|
| The method of claim 1, carried out on mammalian cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 1 on mammalian cells, including human, mouse or baboon cells. |

| Claim 27 | |
|---|---|
| The method of claim 1, carried out on human cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 1 on human cells, including immune cells. |

| Claim 29 | |
|---|---|
| The method of claim 26 or 27 carried out on lymphoid cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 26 or 27 on lymphoid cells, including T cells. |

| Claim 37 | |
|---|---|
| The method of claim 2, carried out on mammalian cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 2 on |

|  | mammalian cells, including human, mouse or baboon cells. |
|---|---|
| **Claim 38** | |
| The method of claim 2, carried out on human cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 2 on human cells, including immune cells. |
| **Claim 40** | |
| The method of claim 37 or 38, carried out on lymphoid cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 37 or 38 on lymphoid cells, including T cells. |
| **Claim 59** | |
| The method of claim 5, carried out on mammalian cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 5 on mammalian cells, including human, mouse or baboon cells. |
| **Claim 60** | |
| The method of claim 5, carried out on human cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 5 on human cells, including immune cells. |
| **Claim 61** | |
| The method of claim 59 or 60, carried out on immune cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 59 or 60 on immune cells, including lymphocytes. |
| **Claim 62** | |
| The method of claim 59 or 60, carried out on lymphoid cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 59 or 60 on lymphoid cells, including T cells. |
| **Claim 70** | |
| The method of claim 6, carried out on mammalian cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 6 on mammalian cells, including human, mouse or baboon cells. |
| **Claim 71** | |
| The method of claim 6, carried out on human cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 6 on human cells, including immune cells. |
| **Claim 72** | |
| The method of claim 70 or 71, carried out on immune cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 70 or 71 on immune cells, including lymphocytes. |
| **Claim 73** | |
| The method of claim 70 or 71, carried out on lymphoid cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 70 or 71 on lymphoid cells, including T cells. |

| Claim 183 | |
|---|---|
| The method of claim 18, carried out on human cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 18 on human cells, including immune cells. |
| Claim 184 | |
| The method of claim 18 or 183, carried out on immune cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 18 or 183 on immune cells, including lymphocytes. |
| Claim 185 | |
| The method of claim 18 or 183, carried out on lymphoid cells. | Use of anti-TNF antibody anticipates this claim by carrying out the method of claim 18 or 183 on lymphoid cells, including T cells. |

Infection with African Swine Fever Virus (ASFV), as in, for example, the following reference(s), may anticipate and/or render obvious the following claims of the '516 patent by anticipating each and every element of the claim, expressly or inherently, according to the following chart.

- Enjuanes et al., J Gen Virol. 1976 Sep;32(3):471-7.

- Enjuanes et al., J Gen Virol. 1976 Sep;32(3):479-92.

- Blasco et al., Virology. 1989 Feb;168(2):330-8.

- Sierra et al., J Comp Pathol. 1990 Apr;102(3):323-34.

| '516 Patent claim | ASFV |
|---|---|
| Claim 1 | |
| A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said gene is inhibited. | Infection with ASFV anticipates this claim by inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or enzymes, viral genes, or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |

35

| Claim 2 | |
|---|---|
| A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said genes is inhibited. | Infection with ASFV anticipates this claim by selectively inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or enzymes, viral genes, or reporter genes, whose transcription is regulated by NF-κB, by reducing NF-kB activity in the cell. |
| **Claim 5** | |
| A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-κB in a eukaryotic cell comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. | Infection with ASFV anticipates this claim by reducing the level of expression of cytokine genes, including the TNF-α gene, whose transcription is regulated by NF-κB in eukaryotic cells, including mammalian cells, comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. |
| **Claim 6** | |
| A method for diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells such that NF-κB-mediated intracellular signaling is diminished. | Infection with ASFV anticipates this claim by diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells, including mammalian cells, such that NF-κB-mediated intracellular signaling is diminished. |
| **Claim 18** | |
| A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Infection with ASFV anticipates this claim by reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. |
| **Claim 26** | |
| The method of claim 1, carried out on mammalian cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 1 on mammalian cells, including human cells. |
| **Claim 27** | |
| The method of claim 1, carried out on human cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 1 on human cells, including immune cells. |
| **Claim 29** | |
| The method of claim 26 or 27 carried out on lymphoid cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 26 or 27 on lymphoid cells, including T cells. |

RLF1-3203977-1

| **Claim 37** | |
|---|---|
| The method of claim 2, carried out on mammalian cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 2 on mammalian cells, including human cells. |
| **Claim 38** | |
| The method of claim 2, carried out on human cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 2 on human cells, including immune cells. |
| **Claim 40** | |
| The method of claim 37 or 38, carried out on lymphoid cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 37 or 38 on lymphoid cells, including T cells. |
| **Claim 59** | |
| The method of claim 5, carried out on mammalian cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 5 on mammalian cells, including human cells. |
| **Claim 60** | |
| The method of claim 5, carried out on human cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 5 on human cells, including immune cells. |
| **Claim 61** | |
| The method of claim 59 or 60, carried out on immune cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 5 9 or 60 on immune cells, including macrophages. |
| **Claim 62** | |
| The method of claim 59 or 60, carried out on lymphoid cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 5 on lymphoid cells, including T cells. |
| **Claim 70** | |
| The method of claim 6, carried out on mammalian cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 6 on mammalian cells, including human cells. |
| **Claim 71** | |
| The method of claim 6, carried out on human cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 6 on human cells, including immune cells. |
| **Claim 72** | |
| The method of claim 70 or 71, carried out on immune cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 70 or 71 on immune cells, including macrophages. |
| **Claim 73** | |
| The method of claim 70 or 71, carried out on lymphoid cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 70 or 71 on lymphoid cells, including T cells. |

37

| Claim 183 | |
|---|---|
| The method of claim 18, carried out on human cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 18 on human cells, including immune cells. |
| Claim 184 | |
| The method of claim 18 or 183, carried out on immune cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 18 or 183 on immune cells, including macrophages. |
| Claim 185 | |
| The method of claim 18 or 183, carried out on lymphoid cells. | Infection with ASFV anticipates this claim by carrying out the method of claim 18 or 183 on lymphoid cells, including T cells. |

Use of the following substance(s), dexamethasone or hydrocortisone, as in, for example, the following reference(s), may anticipate and/or render obvious the following claims of the '516 patent by anticipating each and every element of the claim, expressly or inherently, according to the following chart. To the extent that such a reference renders obvious a given element, motivation to combine exists in the reference(s) mentioning NF-kB.

- Rothlein et al., J.J Immunol. 1988 Sep 1;141(5):1665-9

| '516 Patent claim | Dexamethasone or Hydrocortisone |
|---|---|
| Claim 1 | |
| A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said gene is inhibited. | Use of dexamethasone or hydrocortisone anticipates this claim by inhibiting in various eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |

| Claim 2 | |
|---|---|
| A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said genes is inhibited. | Use of dexamethasone or hydrocortisone anticipates this claim by selectively inhibiting in various eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |
| **Claim 5** | |
| A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-κB in a eukaryotic cell comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. | Use of dexamethasone or hydrocortisone anticipates this claim by reducing the level of expression of cytokine genes, including the TNF-α gene, whose transcription is regulated by NF-κB in eukaryotic cells, including mammalian cells, comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. |
| **Claim 6** | |
| A method for diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells such that NF-κB-mediated intracellular signaling is diminished. | Use of dexamethasone or hydrocortisone anticipates this claim by diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells, including mammalian cells, such that NF-κB-mediated intracellular signaling is diminished. |
| **Claim 18** | |
| A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Use of dexamethasone or hydrocortisone anticipates this claim by reducing Interleukin-1 activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 in the cells. |
| **Claim 26** | |
| The method of claim 1, carried out on mammalian cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 1 on mammalian cells, including human cells. |
| **Claim 27** | |
| The method of claim 1, carried out on human cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 1 on human cells, including sarcoma and carcinoma cells. |

39

| Claim 29 | |
|---|---|
| The-method of claim 26 or 27 carried out on lymphoid cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 1 on human cells, including sarcoma and carcinoma cells. |
| Claim 37 | |
| The method of claim 2, carried out on mammalian cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 2 on mammalian cells, including human cells. |
| Claim 38 | |
| The method of claim 2, carried out on human cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 2 on human cells, including sarcoma and carcinoma cells. |
| Claim 40 | |
| The method of claim 37 or 38, carried out on lymphoid cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 2 on human cells, including sarcoma and carcinoma cells. |
| Claim 59 | |
| The method of claim 5, carried out on mammalian cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 5 on mammalian cells, including human cells. |
| Claim 60 | |
| The method of claim 5, carried out on human cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 5 on mammalian cells, including sarcoma and carcinoma cells. |
| Claim 61 | |
| The method of claim 59 or 60, carried out on immune cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 5 on mammalian cells, including sarcoma and carcinoma cells. |
| Claim 62 | |
| The method of claim 59 or 60, carried out on lymphoid cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 5 on mammalian cells, including sarcoma and carcinoma cells. |

40

| Claim 70 | |
|---|---|
| The method of claim 6, carried out on mammalian cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 6 on mammalian cells, including human cells. |
| Claim 71 | |
| The method of claim 6, carried out on human cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 6 on human cells, including sarcoma and carcinoma cells. |
| Claim 72 | |
| The method of claim 70 or 71, carried out on immune cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 6 on human cells, including sarcoma and carcinoma cells. |
| Claim 73 | |
| The method of claim 70 or 71, carried out on lymphoid cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 6 on human cells, including sarcoma and carcinoma cells. |
| Claim 183 | |
| The method of claim 18, carried out on human cells. | Use of dexamethasone or hydrocortisone anticipates this claim by carrying out the method of claim 18 on human cells, including sarcoma and carcinoma cells. |
| Claim 184 | |
| The method of claim 18 or 183, carried out on immune cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 18 on human cells, including sarcoma and carcinoma cells. |
| Claim 185 | |
| The method of claim 18 or 183, carried out on lymphoid cells. | Use of dexamethasone or hydrocortisone anticipates/renders obvious this claim by carrying out the method of claim 18 on human cells, including sarcoma and carcinoma cells. |

Use of the following substance(s), H7 inhibitor, as in, for example, the following reference(s), may anticipate and/or render obvious the following claims of the '516 patent by anticipating each and every element of the claim, directly or inherently, according to the following chart. To the extent that such a reference renders obvious a given element, motivation to combine exists in the reference(s) mentioning NF-kB.

- Tong-Starkesen et al., J Immunol. 1989 Jan 15;142(2):702-7

| '516 Patent claim | H7 inhibitor |
|---|---|
| **Claim 1** | |
| A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said gene is inhibited. | Use of H7 inhibitor anticipates this claim by inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |
| **Claim 2** | |
| A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB, the method comprising reducing NF-κB activity in the cell such that expression of said genes is inhibited. | Use of H7 inhibitor anticipates this claim by selectively inhibiting in eukaryotic cells, including mammalian cells, the expression of genes, including cellular genes, for example, encoding cytokines or adhesion molecules, viral genes, for example, of human immunodeficiency virus type 1 (HIV-1), or reporter genes, whose transcription is regulated by NF-kB, by reducing NF-kB activity in the cell. |
| **Claim 5** | |
| A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-κB in a eukaryotic cell comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. | Use of H7 inhibitor anticipates this claim by reducing the level of expression of cytokine genes, including the TNF-α gene, whose transcription is regulated by NF-κB in eukaryotic cells, including mammalian cells, comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. |
| **Claim 6** | |
| A method for diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells such that NF-κB-mediated intracellular signaling is diminished. | Use of H7 inhibitor anticipates this claim by diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells, including mammalian cells, such that NF-κB-mediated intracellular signaling is diminished. |

42

| Claim 18 | |
|---|---|
| A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Use of H7 inhibitor anticipates this claim by reducing the level of expression of cytokine genes, including the TNF-α gene, whose transcription is regulated by NF-κB in eukaryotic cells, including mammalian cells, comprising reducing NF-κB activity in the cell such that expression of said cytokine gene is reduced. |
| **Claim 26** | |
| The method of claim 1, carried out on mammalian cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 1 on mammalian cells, including human cells. |
| **Claim 27** | |
| The method of claim 1, carried out on human cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 1 on human cells, including immune cells. |
| **Claim 29** | |
| The method of claim 26 or 27 carried out on lymphoid cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 26 or 27 on lymphoid cells, including T cells. |
| **Claim 37** | |
| The method of claim 2, carried out on mammalian cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 2 on mammalian cells, including human cells. |
| **Claim 38** | |
| The method of claim 2, carried out on human cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 2 on human cells, including immune cells. |
| **Claim 40** | |
| The method of claim 37 or 38, carried out on lymphoid cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 37 or 38 on lymphoid cells, including T cells. |
| **Claim 59** | |
| The method of claim 5, carried out on mammalian cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 5 on mammalian cells, including human cells. |
| **Claim 60** | |
| The method of claim 5, carried out on human cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 5 on human cells, including immune cells. |
| **Claim 61** | |
| The method of claim 59 or 60, carried out on immune cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 59 or 60 on immune cells, including lymphocytes. |

43

| Claim 62 | |
|---|---|
| The method of claim 59 or 60, carried out on lymphoid cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 59 or 60 on lymphoid cells, including T cells. |
| Claim 70 | |
| The method of claim 6, carried out on mammalian cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 6 on mammalian cells, including human cells. |
| Claim 71 | |
| The method of claim 6, carried out on human cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 6 on human cells, including immune cells. |
| Claim 72 | |
| The method of claim 70 or 71, carried out on immune cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 70 or 71 on immune cells, including lymphocytes. |
| Claim 73 | |
| The method of claim 70 or 71, carried out on lymphoid cells. | Use of H7 inhibitor anticipates this claim by carrying out the method of claim 70 or 71 on lymphoid cells, including T cells. |
| Claim 183 | |
| The method of claim 18, carried out on human cells. | Use of H7 inhibitor anticipates/renders obvious this claim by carrying out the method of claim 18 on lymphoid cells, including T cells. |
| Claim 184 | |
| The method of claim 18 or 183, carried out on immune cells. | Use of H7 inhibitor anticipates/renders obvious this claim by carrying out the method of claim 18 or 183 on lymphoid cells, including T cells. |
| Claim 185 | |
| The method of claim 18 or 183, carried out on lymphoid cells. | Use of H7 inhibitor anticipates/renders obvious this claim by carrying out the method of claim 18 or 183 on lymphoid cells, including T cells. |

## INTERROGATORY NO. 17

For each item or combination of items of PRIOR ART that YOU will assert renders obvious any claim of the '516 PATENT, provide a chart that identifies where specifically in such item or combination of items each element of each allegedly obvious claim is found, and explain all facts (and IDENTIFY all DOCUMENTS) showing any motivation to combine any such item of PRIOR ART.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome.  Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory.  Wyeth further objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 103) and, thus, improperly seeks legal conclusions.

Subject to the General and Specific Objections, prior art that Wyeth may assert is identified in the pending reexamination proceedings of the '516 patent at the U.S. Patent and Trademark Office with Control Nos. 90/007,503 and 90/007,828.

**SUPPLEMENTAL RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome, at least to the extent that the term "PRIOR ART" as defined broadly by ARIAD renders this request overly broad and unduly burdensome.  Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because the term "PRIOR ART" as defined broadly by ARIAD renders the request not reasonably calculated to lead to the discovery of admissible evidence.  Wyeth further objects to this interrogatory as premature to the extent it seeks an expert determination or infomation more appropriately sought through expert discovery.  Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine.  Wyeth objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 103) and, thus, improperly seeks legal conclusions.  Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts).

Investigation is continuing to determine what other references are prior art with respect to any claim of the '516 patent. Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, Wyeth responds that, to the extent that any prior art listed in Wyeth's Response to Interrogatory Nos. 12-16 also anticipates at least one claim of the '516 patent, Wyeth fully incorporates herein by reference its Responses to Interrogatory Nos. 12-16. Wyeth further identifies the prior art identified by Amgen in this matter and incorporates by reference herein Amgen's Responses to Interrogatory No. 6 in Plaintiff's Second Supplemental Responses and Objections to Ariad's First Set of Interrogatories. Wyeth further responds that the subject matter of claims 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185 would have been obvious to a person of ordinary skill in the art at the time of the earliest effective filing date of the '516 patent in view of Sen and Baltimore, Cell, 46:705-16 (1986). This publication disclosed the sequence of the DNA binding site for NF-κB. It further showed that NF-κB bound to a radioactively labeled DNA fragment of the kappa 3 enhancer. *See*, for example, figure 5D. This binding was inhibited *in vitro* by an unlabeled DNA fragment containing the DNA sequence GGGGACTTTCC. *Id*. Prior art also disclosed techniques for conducting analogous competitive assays in cell culture. These publications described experiments in which gene expression was reduced by the co-transfection of cells in cell culture with plasmids containing competitor DNA (decoying molecules). *See* Scholer and Gruss, Cell, 36:403-11 (1984); Mercola et al., Science, 227:266-70 (1985). Moreover, those of ordinary skill in the art at the relevant time knew that the NF-κB binding site directed expression of certain genes in eukaryotic cell cultures, including

46

HIV genes. *See* Lenardo et al., Science, 236:1573-77 (1987); Nabel and Baltimore, Nature 326: 711-713 (1987).

The subject matter of claims 1, 2, 5, 6, 18, 26, 27, 29, 37, 38, 40, 59, 60, 61, 62, 70, 71, 72, 73, 183, 184, and 185 would also have been obvious to a person of ordinary skill in the art at the time of the earliest effective filing date of the '516 patent in view of the prior art disclosing that IκB inhibited NF-κB. *See*, for example, Baeuerle and Baltimore, Science, 242:540-546 (1988); Baeuerle and Baltimore, Cell, 53:211-217 (1988). If U.S. Patent Application Serial No. 07/341,436, filed April 21, 1989, contained an enabling disclosure, the subject matter of the asserted claims of the '516 patent would have been obvious in view of these teachings. Moreover, as of the filing date of U.S. Patent Application Serial No. 07/791,898, filed November 13, 1991, the prior art disclosed the amino acid and DNA sequences of two "IkB-like" molecules. *See* Haskill et al., Cell, 65:1281-89 (1991); Davis et al, Science, 253:1268-71 (1991).

## INTERROGATORY NO. 18

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) upon which YOU will rely to establish that any claim of the '516 PATENT is invalid for indefiniteness under 35 U.S.C. § 112(2).

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory. Wyeth further objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 112) and, thus, improperly seeks legal conclusions.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Wyeth further objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts).

Investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid for indefiniteness under 35 U.S.C. § 112(2). Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, Wyeth may rely on factual and legal bases identified by Amgen and incorporates by reference herein Amgen's Responses to Interrogatory No. 7 in Amgen's First Supplemental Responses.

## INTERROGATORY NO. 19

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) upon which YOU will rely to establish that any claim of the '516 PATENT is invalid for lack of enablement or written description under 35 U.S.C. § 112(1).

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still

ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory. Wyeth further objects to this interrogatory to the extent it references a statute at issue in this case (35 U.S.C. § 112) and, thus, improperly seeks legal conclusions.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Wyeth further objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts).

Investigation is continuing to determine the full extent to which the claims of the '516 patent are invalid for lack of written description and/or enablement under 35 U.S.C. § 112(1). Wyeth therefore reserves the right to amend this response, and will provide further supplemental responses as its invalidity analyses are completed.

Subject to the General and Specific Objections, Wyeth may rely on the factual and legal bases set forth by Amgen and incorporates by reference herein Amgen's Responses to Interrogatory No. 8 in Amgen's First Supplemental Responses.

## INTERROGATORY NO. 20

Describe in detail (including the IDENTITY of all DOCUMENTS and PERSONS upon which YOU will rely to establish) the level of skill of a person of ordinary skill in the art to

which the subject matter of the '516 PATENT pertains, and identify all evidence (including all DOCUMENTS) on which YOU will rely to support this contention.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory. Wyeth further objects to this interrogatory to the extent it references statutes at issue in this case (35 U.S.C. §§ 102, 103, and 112) and, thus, improperly seeks legal conclusions.

**SUPPLEMENTAL RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Wyeth further objects to this interrogatory as premature to the extent it seeks an expert determination or information more appropriately sought through expert discovery. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Wyeth objects to this interrogatory to the extent it references statutes at issue in this case (35 U.S.C. § 102, 103, and 112) and, thus, improperly seeks legal conclusions. Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts). Wyeth reserves the right to amend this response.

Subject to the General and Specific Objections, Wyeth incorporates by reference herein Amgen's Responses to Interrogatory No. 9 in Amgen's First Supplemental Responses.

**INTERROGATORY NO. 21**

Provide YOUR construction of each term in each claim in the '516 PATENT that YOU believe requires construction, and describe in detail any intrinsic or extrinsic evidence that supports that construction.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth objects to this interrogatory as premature as it seeks the disclosure of '516 patent claim terms for construction before that information is due to be exchanged under the Scheduling Order in this case. Wyeth further objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory. Wyeth additionally objects to this interrogatory as premature, as Ariad has not yet identified those claims of the '516 patent that it asserts are infringed by Enbrel®.

**INTERROGATORY NO. 22**

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) upon which YOU will rely to establish that YOU have not infringed and are not infringing the '516 PATENT, directly, indirectly, literally, or by the doctrine of equivalents.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it is not restricted to Enbrel®. Wyeth further objects to this interrogatory as premature, to the extent it

seeks expert testimony before that testimony is due to be disclosed under the Scheduling Order in this case. Wyeth additionally objects to this interrogatory to the extent it seeks legal conclusions. Wyeth also objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it is not restricted to Enbrel®. Wyeth further objects to this interrogatory as premature to the extent it seeks expert testimony before that testimony is due to be disclosed under the Scheduling Order in this case. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Wyeth also objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts).

Wyeth reserves the right to amend this response, and will provide further supplemental responses as its analyses continue and as Ariad provides further information on its proposed claim construction.

Subject to the General and Specific Objections, Wyeth fully incorporates by reference herein Amgen's Response to Interrogatory No. 11 in Amgen's First Supplemental Responses.

## INTERROGATORY NO. 23

Describe in detail the factual and legal basis (including the IDENTITY of all DOCUMENTS and PERSONS) upon which YOU will rely to establish that YOU have not been

infringing and are not now willfully infringing the '516 PATENT, directly, indirectly, literally, or by the doctrine of equivalents.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it is not restricted to Enbrel®. Wyeth further objects to this interrogatory as premature, to the extent it seeks expert testimony before that testimony is due to be disclosed under the Scheduling Order in this case. Wyeth additionally objects to this interrogatory as premature, in that Wyeth has not yet made a final determination as to whether it will waive any privilege or protection for the requested information; before the close of fact discovery, Wyeth will either move the Court to bifurcate the issue of willfulness from any issues of liability, or make its decision regarding waiver and, subject to its General and Specific Objections, provide a response to this interrogatory at that time, if appropriate. Moreover, Wyeth objects to this interrogatory to the extent it seeks legal conclusions. In addition, Wyeth objects to this interrogatory as premature, as Wyeth began discovery recently, discovery is still ongoing, and Wyeth has not yet fully developed its positions regarding the information sought by this interrogatory.

## SUPPLEMENTAL RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it is not restricted to Enbrel®. Wyeth objects to this interrogatory as premature to the extent it seeks expert testimony before that testimony is due to be disclosed under the Scheduling Order in this

case. Wyeth also objects to this interrogatory as premature, in that Wyeth is not required to make a final determination as to whether it will waive any privilege or protection for the requested information; before the date specified in the scheduling order. Wyeth objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client privilege and/or the work-product doctrine. Wyeth further objects to this interrogatory because it requires Wyeth to respond to separate, multiple interrogatories (including subparts). Wyeth reserves the right to supplement or amend its response to this interrogatory.

Subject to its General and Specific Objections, Wyeth will rely at least on the factual and legal bases set forth by Amgen and fully incorporates by reference herein Amgen's Amended Response to Interrogatory No. 12. In addition, Wyeth notes that, under the standard set forth in *In re Seagate*, 2007 WL 2358677, Misc. Docket No. 830 (Fed. Cir. Aug. 20, 2007), a party seeking to prove willful patent infringement must prove, as a threshold matter, that the accused party acted despite an "objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 12. No such objective high likelihood exists or ever existed with respect to the '516 patent because, as set forth in Wyeth's responses to Interrogatories 12-22 (incorporated herein by reference) and as will be developed more fully through the remainder of fact and expert discovery and at trial, the claims would not be infringed if properly construed and they are invalid, particularly if construed broadly enough to encompass the use of Enbrel®.

Merely by way of example, at the time the '516 patent issued, it was well established that in unpredictable fields, such as the molecular regulation of gene expression, the narrow disclosure of laboratory research methods in a limited group of isolated cells would not provide sufficient support under 35 U.S.C. § 112 to enable broad claims involving any cell type or entire organisms. *See, e.g., In re Wright*, 999 F.2d 1557, 1562 (Fed Cir. 1997) (finding disclosure of

single working example to narrow method of producing vaccine in chicken cells insufficient to enable broad claims to producing vaccines against a variety of viruses effective in any animal); *Enzo Biochem, Inc. v. Calgene Inc.*, 188 F.3d 1362, 1371 (Fed. Cir. 1999) (finding claims to methods of using "antisense" techniques to control protein expression in prokaryotic and eukaryotic cells not enabled by disclosure of limited examples in *E. coli*, a prokaryote). While Ariad contends that the asserted '516 patent claims cover the use of a human therapeutics (*e.g.* Enbrel®), the specification lacks disclosure of any such therapeutics, much less working examples in animals or humans.

Likewise, Federal Circuit precedent in mid-2002 was clear that a specification, like that of the '516 patent, that defined a chemical molecule merely by a desired function rather than structure, formula, chemical name, or physical properties lacked sufficient written description to support claims requiring such a molecule. *See, e.g., Regents of the University of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1568 (Fed. Cir. 1997) (holding that definition by function does not define a genus because it describes only what the molecule "does" rather than what it "is"); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 296 F.3d 1316, 1328-29 (Fed. Cir. 2002) ("A description of what a material does, rather than what it is, usually does not suffice.").

The '516 patent applicants contended during prosecution that it was "appropriate for the Applicants to have defined the substances useful in the claimed methods by their method of identification rather than by reference to a particular chemical structure" ('364 File History, Response and Amendment, 2/12/2001 at 4.), a contention directly at odds with established case law both then and now. *See Univ of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004). Indeed, the '516 applicants supported their contention with a declaration by Dr. Baltimore, stating that the "classes of compounds which are able to affect NF-kB mediated gene

expression in cells are structurally diverse." Balitmore Dec. at ¶ 7. These unequivocal admissions firmly established, from the time the patent issued that the asserted claims lacked sufficient written description and were invalid under 35 U.S.C. § 112, first paragraph. Consequently, Ariad will be unable to carry its burden of proving willful infringement by establishing that Wyeth acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Moreover and more recently, the PTO has instituted reexamination proceedings and finally rejected the '516 patent claims.

## INTERROGATORY NO. 24

Please IDENTIFY the five persons, at least three of whom are YOUR current employees, whom YOU believe are the most knowledgeable regarding ENBREL's mechanisms of action and interaction with NF-KB signaling.

## RESPONSE

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as vague and ambiguous to the extent that it seeks identification of persons "most knowledgeable" regarding the recited topics.

Subject to its General and Specific Objections, Wyeth is investigating the information sought by this interrogatory and will supplement its response when responsive information is determined.

## INTERROGATORY NO. 25

Please IDENTIFY all COMMUNICATIONS with AMGEN or any THIRD PARTY relating to ARIAD, this litigation, or the '516 PATENT.

**RESPONSE**

Wyeth objects to this interrogatory as overly broad and unduly burdensome. Wyeth also objects to this interrogatory as seeking the disclosure of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, at least because it seeks the disclosure of information not related to Enbrel®. Wyeth further objects to this interrogatory to the extent it seeks the disclosure of information protected by the attorney-client privilege, work-product immunity, and/or other applicable privilege.

Subject to its General and Specific Objections, to the extent non-privileged documents exist that are responsive to this interrogatory, they will be produced in response to at least Ariad's Request for Production Nos. 54, 81, and 98.

AS TO OBJECTIONS:

Frederick L. Cottrell III (I.D. # 2555)
cottrell@rlf.com
Anne Shea Gaza (I.D. # 4093)
gaza@rlf.com
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

*Attorneys for Counterclaim Defendant Wyeth*

*Of Counsel:*
Robert D. Bajefsky
Howard W. Levine
David P. Frazier, Ph.D.
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, District of Columbia  20001
(202) 408-4000

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia  20190
(571) 203-2700

RLF1-3203977-1

Robert C. Stanley
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
303 Peachtree Street, N.E.
Sun Trust Plaza, Suite 3500
Atlanta, Georgia 30308
(404) 653-6400


Dated:  September 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2007, true and correct copies of the

foregoing were caused to be served on counsel of record at the following address as indicated:

**VIA HAND DELIVERY**
Steven J. Balick
John T. Day
Tiffany Geyer Lyden
Lauren E. Maguire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE  19899

**VIA ELECTRONIC MAIL**
Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067

**VIA ELECTRONIC MAIL**
J. Drew Diamond
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017

**VIA HAND DELIVERY**
Melanie K. Sharp
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P. O. Box 391
Wilmington, DE  19899

**VIA ELECTRONIC MAIL**
Marcus E. Sernel
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

Anne Shea Gaza (#4093)
Gaza@Rlf.Com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

# EXHIBIT I

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Marcus E. Sernel
To Call Writer Directly:
312 861-2389
msernel@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: 312 861-2200

October 5, 2007

**VIA E-MAIL**

Amir Naini, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    *Amgen et al. v. ARIAD et al.* -- D. Del. Civil Action No. 06-259-(MPT)

Dear Amir:

I write to respond to your September 27, 2007 letter to Drew Diamond and to your continued accusations concerning Amgen's document production.

As for your specific complaint concerning Amgen's production of laboratory notebooks, Amgen produced the relevant portions of notebooks in accordance with Judge Thynge's discovery rulings in this case. As you will recall, ARIAD went before Judge Thynge asking the Court to expand the scope of discovery beyond information relevant to Enbrel and Kineret. Judge Thynge rejected that request. We simply do not understand why ARIAD continues to press this issue, and we reject your attempt to do an end-run around Judge Thynge's ruling.

As for your assertion that the inclusion of the assay patents significantly broadens the scope of discovery, we are surprised at your new position, especially in light of ARIAD's contention, when seeking leave to amend after the deadline for doing so, that the addition of the assay patents would not significantly impact the scope of discovery. The inclusion of the assay patents should not impact the scope of discovery in this case, especially given the broad scope of documents that Amgen originally produced for the '516 patent issues. In any event, to the extent you are somehow able to justify that a broader scope of discovery is warranted for the assays patents, Judge Thynge has already ruled that the assay patents are to be addressed on a different schedule. Significant work remains for both parties before the close of fact discovery relating to the '516 patent, and the parties should remain focused on completing that discovery in accordance with the Court's scheduling order. To the extent that there is any additional discovery implicated by the assay patents, that discovery should be dealt with after fact discovery on the '516 patent has been completed.

Hong Kong      London      Los Angeles      Munich      New York      San Francisco      Washington, D.C.

**KIRKLAND & ELLIS LLP**

Amir Naini, Esq.
October 5, 2007
Page 2


I would hope that you will comply with Judge Thynge's prior rulings and that we do not need to rehash these issues any further. If you still have any remaining issues, however, please let me know and I will be happy to discuss them with you further.

Sincerely,

Marcus E. Sernel

MES/crw

# EXHIBITS J-O

# REDACTED IN THEIR ENTIRETY