IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>                    Plaintiffs,<br>  v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation,<br><br>                    Defendants. | C.A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                  Counterclaim Plaintiffs,<br>  v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>                  Counterclaim Defendants. | |

**ARIAD AND THE INSTITUTIONS'
OPPOSITION TO THE AMGEN ENTITIES' MOTION FOR A
PROTECTIVE ORDER QUASHING THE SUBPOENA OF VASANT GANDHI**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Counsel for Defendants and Counterclaim-Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Perry Goldberg
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000


Dated: December 5, 2007
186447.1

TABLE OF CONTENTS

Page

I. SUMMARY ....................................................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................... 3

III. ARGUMENT ..................................................................................................................... 4

    A. Mr. Gandhi Is a Key Actor and Fact Witness Who Should Be Deposed—He Was Immunex's Lead Negotiator in Seeking a License to the Patents-In-Suit ......................................................................... 4

    B. Any Privilege Concern Can Be Addressed by Objections Raised at the Deposition—A Blanket Prohibition on a Deposition Is Unnecessary and Contrary to Circuit Law ............................................................ 6

    C. ARIAD Is Entitled To Probe This Percipient Witness's Knowledge—Amgen Cannot Avoid Making a Key Fact Witness Available by Substituting a 30(b)(6) Designee ............................................... 7

    D. A Deposition Will Not Unduly Burden or Injure Mr. Gandhi or the Amgen Entities .............................................................................................. 9

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cipollone v. Liggett Group, Inc.*,
    785 F.2d 1108 (3d Cir. 1986) ............................................................................................ 9

*Falkenberg Capital Corp. v. Dakota Cellular, Inc.*,
    1998 WL 552966 (D. Del. Aug. 4, 1998) ........................................................................ 6, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................................................... 5

*Glenmede Trust Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995) ................................................................................................ 9

*In re Tutu Water Wells Contamination*,
    184 F.R.D. 266 (D.V.I. 1999) ......................................................................................... 6, 9

*Jamison v. Miracle Mile Rambler, Inc.*,
    536 F.2d 560 (3d Cir. 1976) .............................................................................................. 6

*Kaiser v. Mutual Life Ins. Co.*,
    161 F.R.D. 378 (S.D. Ind. 1994) .................................................................................... 5, 6

*Marco Island Partners v. Oak Dev. Corp.*,
    117 F.R.D. 418 (N.D. Ill. 1987) ................................................................................. 5, 6, 8

*Marshall v. Elec. Hose & Rubber Co.*,
    68 F.R.D. 287 (D. Del. 1975) ............................................................................................ 8

*Musko v. McCandless*,
    1995 WL 580275 (E.D. Pa. Sept. 29, 1995) ..................................................................... 6

*Publicker Indus. v. Cohen*,
    733 F.2d 1059 (3d Cir. 1984) ....................................................................................... 9, 10

*Scovill Mfg. Co. v. Sunbeam Co.*,
    61 F.R.D. 598 (D. Del. 1973) ............................................................................................ 6

*Trunk v. City of San Diego*,
    2007 WL 2701356 (S.D. Cal. Sept. 13, 2007) .................................................................. 5

*United States v. Dentsply Int'l, Inc.*,
    187 F.R.D. 152 (D. Del. 1999) ..................................................................................... 9, 10

**Other Authorities**

8 Charles Wright et al., *Federal Practice and Procedure* § 2035 and § 2037,
    (2d 1994) ................................................................................................................. 6, 7, 10

# I. SUMMARY

Vasant Gandhi is a key fact witness in this case, and the Amgen Entities' motion to block his deposition has no legal or factual support. Mr. Gandhi was Immunex's lead negotiator in the extended licensing negotiations between Immunex and ARIAD related to the patents-in-suit. In this role, Mr. Gandhi negotiated the exchange of Term Sheets between Immunex and ARIAD as part of Immunex's request to license the patents. Obviously, none of the communications between Immunex and ARIAD are privileged. ARIAD is entitled to depose Mr. Gandhi about these critical communications that are centrally relevant to (among other things) a determination of damages pursuant to a "reasonable royalty." Thus, the central claim in Amgen's Motion is unfounded—it is untrue that "[t]he only topic for which Mr. Gandhi could possibly have relevant information is with regard to ARIAD's willful infringement allegations." (*See* Pls. Mot. at 1.)

Contrary to the Amgen Entities' suggestion in their Motion, there is no prohibition or heightened standard for deposing a fact witness who happens to be a lawyer. When a lawyer is an actor in events underlying litigation, both Delaware and the Third Circuit apply the same standards to that fact witness as to any other. Namely, to block a deposition entirely, a movant has the burden of showing that the movant will suffer a significant, specific harm that cannot be remedied by the standard procedure of objecting on the record during the deposition itself. The Amgen Entities, however, have not shown any such specific harm, let alone significant harm. Mr. Gandhi is no longer employed by the Amgen Entities, and his deposition therefore would not prevent him from performing any duties for the Amgen Entities. Notably, Mr. Gandhi himself has neither opposed his deposition, nor has he joined the Amgen Entities' Motion.

The Amgen Entities suggest that Mr. Gandhi's deposition is unnecessary because they are providing a 30(b)(6) deponent on "certain limited topics related" to willfulness. Of course, Amgen's radical proposal—that offering a corporate spokesman obviates its duty to present a fact witness—knows no support in the law. The 30(b)(6) deposition procedure is not a tool for allowing a party to shield fact witnesses from discovery. In any event, the Amgen Entities' 30(b)(6) witness on willfulness-related topics (Dr. Ungemach) has now *already testified* (on

November 30) that (*i*) he did not know that Immunex had ever tried to license the patents-in-suit; (*ii*) he was unfamiliar with Mr. Gandhi's negotiations with ARIAD, (*iii*) he had not spoken with Mr. Gandhi about the subject, (*iv*) he was not aware of any effort to search for related documents, and (*v*) other than two documents, he had never before seen the correspondence between Mr. Gandhi and ARIAD. This repudiates Amgen's representation to this Court that this witness's testimony makes Dr. Gandhi's deposition "wholly duplicative." (*See* Pls. Mot. at 7.)

Amgen also wrongly suggests that Mr. Gandhi's deposition is unnecessary because Mr. Gandhi claims not to recall much about his licensing negotiations with ARIAD. ARIAD is entitled to refresh and probe Mr. Gandhi's recollection of his year-long negotiations with ARIAD, including to question him regarding the Term Sheets he exchanged with ARIAD, one of which is missing. Amgen failed to produce *any* of the e-mails that Mr. Gandhi sent to ARIAD, and it appears that Amgen either did not search for them or has lost or destroyed them. ARIAD is entitled to determine what happened to those documents, and what additional related documents Mr. Gandhi created in connection with his licensing negotiations with ARIAD.

Lastly, Amgen's Motion is hypocritical. Amgen has deposed five of ARIAD's and the Institutions' attorneys over the last month alone. Counterclaim Defendants are now demanding that at least five more lawyers who have been employed by ARIAD or the Institutions must be deposed in the next few weeks, including attorney Fritz Casselman, Mr. Gandhi's counterpart at ARIAD in the licensing negotiations. Amgen's disingenuous plea to this Court for protection (which appears to be simply a delay tactic) should be denied.[1]

---

[1] This Court's Scheduling Order of July 19, 2006, explicitly requires discovery disputes and protective orders to be resolved by teleconference. (D.I. 37 at ¶¶ 3(e) & 4.) The Amgen Entities' resort to full motion practice for this dispute is contrary to the Court's Order, creates unnecessary delay, and burdens both the Court and the Parties. ARIAD and the Institutions do not wish to further burden the Court with a satellite dispute on this procedural issue and therefore just provide this responsive brief.

## II. FACTUAL BACKGROUND

Mr. Gandhi took a leading role in negotiating with ARIAD on behalf of Immunex in Immunex's attempt to license ARIAD's NF-kB portfolio, including the patents-in-suit. In March 2001, Immunex informed ARIAD that it was interested in a license, and requested that ARIAD provide it with a licensing proposal. (Ex. A.)[2] In April 2001, Mr. Gandhi wrote ARIAD to request a "formal Term Sheet," which would outline the conditions under which ARIAD would license the patents-in-suit to Immunex. (*See* Ex. E.) This began Mr. Gandhi's year-long series of email, letter and telephone negotiations with ARIAD. (*See, e.g.*, Exs. B, E, F, G, H.)

In May 2001, ARIAD provided Mr. Gandhi with proposed terms for a license. (Ex. B.) In June 2001, Mr. Gandhi requested that ARIAD send him ARIAD's model license agreement for the patents-in-suit. (Ex. F.) By February 2002, Mr. Gandhi had considered ARIAD's terms *and provided ARIAD with Immunex's counterproposal.*[3] (*See* Ex. G.) In June 2002, when the last patent in ARIAD's NF-kB portfolio issued, ARIAD provided Mr. Gandhi with revised licensing terms. (Ex. H.) The next month, Amgen completed its previously-announced acquisition of Immunex (and Immunex's main product, Enbrel) in a deal worth $17.8 billion.

Immunex and the rest of the Amgen Entities initiated this lawsuit in April 2006 to resolve potential liability with respect to the '516 patent, the application for which was the subject of the licensing negotiations between Immunex (through Mr. Gandhi) and ARIAD. (*See* D.I. 1.) In September 2007, ARIAD issued a Notice of Deposition for Mr. Gandhi. (D.I. 410.) Amgen waited nearly three weeks to inform ARIAD that Mr. Gandhi was no longer an employee, and then ignored ARIAD's requests for Mr. Gandhi's updated contact information. (*See* Ex. I.)

---

[2] Exhibits referred to solely by exhibit letter are attached to the Declaration of Raymond A. LaMagna filed concurrently herewith in support of this Opposition.

[3] Amgen fails to mention in its Motion that it was Mr. Gandhi who communicated Immunex's offer of licensing terms to ARIAD for the patents-in-suit. Amgen also fails to mention that it has not produced copies of that Term Sheet or related documents to ARIAD. Amgen's 30(b)(6) witness on the topic of communications between the Amgen Entities and ARIAD testified that he had made no attempt to look for or locate these items. (Ex. M at 81:25–82:7, 87:5–19.) This is the same witness that Amgen claims makes Mr. Gandhi's testimony "wholly duplicative." (Pls. Mot. at 7.)

ARIAD on its own located Mr. Gandhi and personally served him with a third-party subpoena requesting his deposition. (Ex. D.) Counsel for Amgen (Kirkland & Ellis) then informed ARIAD that they represented Mr. Gandhi. (Pls. Mot. at Ex. C.) Amgen's counsel stated that Mr. Gandhi was unavailable for the date noticed, but did not provide an alternative date for his deposition. (Pls. Mot. at Ex. E.) ARIAD repeatedly explained that it could only agree to take the deposition off calendar if an alternative date were provided. (*E.g.*, Exs. J, K.) Rather than provide an alternative date, and without prior notification to ARIAD that it would be filing a motion, Amgen filed its Motion For A Protective Order on the morning of Mr. Gandhi's deposition. (D.I. 484.)

Although Mr. Gandhi never took any steps to quash his subpoena, he failed to appear at his deposition. The court reporter and ARIAD's counsel appeared for Mr. Gandhi's deposition as noticed, and Mr. Gandhi's non-appearance was noted on the record. ARIAD's counsel entered a short statement on the record and marked select exhibits that evidenced Mr. Gandhi's role as a key actor and fact witness in this case. (Exs. C, E, F, G, H.) To date, Mr. Gandhi has not moved to quash his subpoena in the Central District of California (the district court from which the subpoena was properly issued) nor has he joined the Amgen Entities' Motion. (*See* Pls. Mot. at 2, 8.) It is ARIAD's understanding that Mr. Gandhi is currently employed by Abraxis BioScience in Los Angeles, and that his place of employment is only three miles away from the location in Los Angeles at which his deposition was noticed. (*See* Exs. N, O, P.)

### III. ARGUMENT

**A.    Mr. Gandhi Is a Key Actor and Fact Witness Who Should Be Deposed—He Was Immunex's Lead Negotiator in Seeking a License to the Patents-In-Suit**

There can be little doubt that Mr. Gandhi's year-long interactions with ARIAD make him perhaps the most important fact witness from Immunex with respect to numerous issues in dispute. Mr. Gandhi was centrally involved as a negotiator in key events between Immunex and

ARIAD, including personally handling the exchange of licensing Term Sheets for the patents-in-suit. Mr. Gandhi's extended negotiations with ARIAD bear on, among other things, issues including royalty damages under *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), and knowledge required for indirect infringement.

Nevertheless, Amgen argues that a heightened requirement of discretion merits shielding Mr. Gandhi from discovery *because of his lawyer status*. (Pls. Mot. at 5–7.) Yet Amgen only cites two cases in support, both of which are from outside the circuit and factually inapposite.[4] Amgen's reliance on one case—*Marco Island Partners v. Oak Development Corp.*—is particularly misplaced as it reiterates support for taking Mr. Gandhi's deposition by citing that:

(*i*) "[A]n attorney may be deposed, even if he or she represents a party to the litigation";

(*ii*) "[T]he mere invocation of the privilege, without more, would not justify granting" a protective order; and

(*iii*) "[I]t would be premature to quash a deposition based on an assertion of privilege: The more appropriate method is to allow the deposition to be taken and permit the attorney to claim privilege in the face of certain questions, if necessary."

117 F.R.D. 418, 419 (N.D. Ill. 1987) (internal quotations omitted).

Moreover, to the extent *Marco Island* might otherwise be read (as Amgen seems to) to support applying a heightened standard for a lawyer's deposition, later cases reject this view. *See, e.g., Kaiser v. Mutual Life Ins. Co.*, 161 F.R.D. 378, 379–82 (S.D. Ind. 1994). For example,

---

[4] In one case that Amgen describes as "analogous" (*id.* at 6), Plaintiffs sought to depose a congressman on issues of legislative intent, and the Court entered a protective order based on the Speech or Debate Privilege of the U.S. Constitution. *See Trunk v. City of San Diego*, 2007 WL 2701356, at *1 (S.D. Cal. Sept. 13, 2007). Plaintiffs then sought to depose one of the congressman's advisors as an "end-around" the order. *Id.* at *6. The court extended its order based on Article I, Section 6, Clause 1 of the Constitution. *Id.* Here, the Constitution is not at issue, and ARIAD is not attempting an "end-around" this Court's orders.

In the other case, the court determined that the lawyer's testimony was duplicative because *fourteen other people* had witnessed the same event, *nine of whom were already scheduled to be deposed*. *Marco Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 419 (N.D. Ill. 1987). In this case, Gandhi is the *only* Immunex employee who participated in the key licensing negotiations with ARIAD.

*Kaiser* held that "ordinary standards and procedures provided in the rules" apply to all depositions alike. *Id.* at 382. Citing *Marco Island*, *Kaiser* noted that lawyers' depositions raised concerns, but determined that "[n]one of these concerns . . . alone or in combination, justify a court deviating from the framework provided in the rules for raising and resolving such concerns." *Id.* at 381. Rather, decisions like *Kaiser* hold that "if an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness." *Id.* at 382.

Amgen's Motion is contrary to well-established case law, and should be denied.

**B.   Any Privilege Concern Can Be Addressed by Objections Raised at the Deposition— A Blanket Prohibition on a Deposition Is Unnecessary and Contrary to Circuit Law**

Third Circuit courts do not recognize any prohibition against deposing fact witnesses who happen to be lawyers. *See Falkenberg Capital Corp. v. Dakota Cellular, Inc.*, 1998 WL 552966, at *4 (D. Del. Aug. 4, 1998); *In re Tutu Water Wells Contamination*, 184 F.R.D. 266, 267 & n.1 (D.V.I. 1999); *Musko v. McCandless*, 1995 WL 580275, at *1 (E.D. Pa. Sept. 29, 1995). In fact, Delaware courts have long held that "[t]he circumstances are rare which justify an order that a deposition not be taken at all, and the existence of privilege is not one of those circumstances." *Scovill Mfg. Co. v. Sunbeam Co.*, 61 F.R.D. 598, 603 (D. Del. 1973) (Latchum, C.J.); *cf. Musko*, 1995 WL 580275, at *1 ("[P]rotective orders prohibiting depositions are rarely issued.").

Rather, the well-established rule in the Third Circuit and Delaware is that the proper procedure for addressing privilege concerns is for counsel to raise objections at the deposition itself. *See Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565–66 (3d Cir. 1976); *Scovill*, 61 F.R.D at 603. In *Jamison*, for example, the Third Circuit held that the lower court erred in *barring* an attorney's deposition. The Third Circuit found that objections raised at the deposition protected privilege concerns "without the blanket prohibition imposed" by a protective order. *Jamison*, 536 F.2d at 565–66 (vacating the district court's protective order); *see also* 8 Charles Wright et al., *Federal Practice and Procedure* § 2037, at 494–95 (2d 1994) (noting that the availability of objections at depositions make orders barring depositions largely unnecessary).

In contrast, Amgen argues that this Court should bar any questioning of Mr. Gandhi because of "the need to respect the attorney-client privilege." (Pls. Mot. at 7 (internal quotation omitted).)[5] This claim rings hollow considering Amgen has deposed five of ARIAD's and the Institutions' attorneys over the last month alone, and Amgen or Wyeth still plan to depose five more attorneys who have been employed by ARIAD or the Institutions in the next three weeks.

In fact, Amgen has subpoenaed Mr. Gandhi's counterpart at ARIAD—Fritz Casselman—the lawyer and former ARIAD employee who negotiated with Mr. Gandhi during the Immunex-ARIAD licensing talks. (*See* Ex. L.) The facts Amgen appears to be trying to protect from discovery center on these non-privileged negotiations. Mr. Gandhi himself seems only marginally involved in privileged communications leading up to this litigation—his name appears only six times on Amgen's Privilege Log.

Having reaped the benefit of deposing ARIAD's and the Institution's lawyers, Amgen now seeks to impose a self-serving double standard to shield a key fact witness from discovery. It would be contrary to circuit precedent to grant Amgen this shield when Amgen's counsel—who also represent Mr. Gandhi—can attend his deposition and raise privilege objections as necessary.

C. **ARIAD Is Entitled To Probe This Percipient Witness's Knowledge—Amgen Cannot Avoid Making a Key Fact Witness Available by Substituting a 30(b)(6) Designee**

Amgen has not stated that Mr. Gandhi has no relevant knowledge as a fact witness. Rather, Amgen characterizes Mr. Gandhi as having "very limited knowledge" and a "minimal" recollection. (Pls. Mot. at 3–4.) But it is well established that "[a] witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge." 8 Wright et al., § 2037, at 500.

---

[5]   Amgen brings its Motion under Rules 26(c) and 45(c). (Pls. Mot. at 5, 7.) But Rule 45(c) governs applications made by the recipient of a subpoena *to the court of issuance*. Mr. Gandhi has not objected to his being deposed and no motion has been brought in California. Thus, Amgen's Motion is best characterized under Rule 26(c), which governs a party's application for a protective order.

Likewise, Mr. Gandhi's declaration offers no additional support for Amgen's position—Mr. Gandhi admits recalling information contained in correspondence from Amgen's files, but he has never been questioned about those documents or his handling of them. Similarly, Mr. Gandhi has never been questioned about his handling of numerous other key documents related to his year-long negotiations with ARIAD—including the Term Sheet that Mr. Gandhi sent to ARIAD—or about the circumstances surrounding those negotiations. ARIAD is entitled to refresh and test Mr. Gandhi's recollection on all of these key issues. ARIAD is entitled to question Mr. Gandhi on what he did with his copies of key documents—including the Terms Sheets—that the Amgen Entities have failed to locate or produce.

Amgen, however, contends that it can obviate the need for Mr. Gandhi's fact testimony because it has offered a 30(b)(6) "witness on certain *limited* topics related to" willfulness. (Pls. Mot. at 4 (emphasis added).) Amgen contends that "[t]his alone is sufficient reason to quash" the subpoena to Mr. Gandhi because the 30(b)(6) testimony would make his testimony "wholly duplicative" and "unreasonably cumulative." (*Id.* at 5, 7.)

Amgen's radical proposal—that a percipient witness's fact testimony can be made moot and avoided by offering a corporate spokesman's testimony instead—is antithetical to our system of procedure under the Rules and to Delaware's long tradition of liberal discovery. *See Marshall v. Elec. Hose & Rubber Co.*, 68 F.R.D. 287, 295 (D. Del. 1975). And Amgen's reliance on *Marco Island*—which did not involve 30(b)(6) designees—is equally misplaced. (*See* Pls. Mot. at 7.) In *Marco*, Defendants sought to depose Plaintiffs' *trial* counsel, who attended negotiations with **fourteen other people, *nine of whom were scheduled to be deposed*.** *Marco Island*, 117 F.R.D. at 419. Here, Mr. Gandhi—who is no longer employed by the Amgen Entities and was never their trial counsel—was the *only* Amgen Entity witness to certain key events underlying this litigation. Shielding Mr. Gandhi from discovery cannot be made to comport with the standard for discovery under the Federal Rules.

Moreover—and completely belying Amgen's claim of "wholly duplicative" and "unreasonably cumulative" discovery—Amgen's 30(b)(6) deponent on willfulness testified that he knew nothing about Mr. Gandhi's negotiation efforts with ARIAD beyond what was contained in Mr. Gandhi's Declaration. (Ex. M at 63:11–65:3, 81:6–82:22.) Amgen's corporate spokesman testified that he had not even spoken to Mr. Gandhi on the subject. (*Id.* at 63:3–64:10.) In fact, he testified that he was unaware that Immunex had sought to license the patents-in-suit from ARIAD. (*Id.* at 64:12–23, 93:3–6.) Likewise, he testified that he had never seen correspondence from Mr. Gandhi to ARIAD that ARIAD produced to Amgen from its own files. (*Id.* at 91:7–93:17; *cf.* Exs. E, F, G.) Furthermore, he testified that he never even looked for or tried to locate such documents in Amgen's files. (Ex. M at 81:25–82:7, 87:5–19.) Rather, he testified that he was not aware that he was designated as a spokesman on Immunex's communications with ARIAD during the time period that Mr. Gandhi conducted his negotiations. (*Id.* at 90:3–14.) This repudiates Amgen's representation to this Court that its 30(b)(6) witness would provide testimony that would make Mr. Gandhi's deposition "wholly duplicative." (*See* Pls. Mot. at 7.) This further demonstrates that Amgen's Motion is unfounded.

**D.    A Deposition Will Not Unduly Burden or Injure Mr. Gandhi or the Amgen Entities**

For Amgen to block this deposition, Amgen must prove that it will itself suffer a "clearly defined and serious injury." *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984); *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999); *Falkenberg*, 1998 WL 552966, at *4; *see also In re Tutu*, 184 F.R.D. at 267 ("Good cause is established by showing that disclosure will cause prejudice to the [movant].").

Third Circuit and Delaware law is clear—Amgen has the burden to prove that a protective order "is particularly needed to obviate a *significant* harm; broad allegations of harm will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (emphasis added); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, (3d Cir. 1986) (holding that

"the harm must be significant, not a mere trifle" and that "[b]road allegations" are insufficient); *Publicker*, 733 F.2d at 1071 ("The injury must be shown with specificity."); *Dentsply*, 187 F.R.D. at 158 (the movant "must articulate the injury with specificity" not with "[b]road allegations of harm"); 8 Wright et al., § 2035, at 284 ("[C]ourts have insisted on a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. . .").

Amgen has not met (and cannot meet) its burden. Amgen's demand to block this deposition relies on broad, unfounded, and conclusory assertions that this deposition is "unreasonably cumulative" or "burdensome." (Pls. Mot. at 5.) Amgen fails to allege any specific harm to it that cannot be addressed by Amgen and Mr. Gandhi's joint counsel raising objections as necessary in the ordinary course of the deposition. Moreover, Amgen's decision to pursue full motion practice demonstrates that "burden" is not Amgen's real concern. Allowing Mr. Gandhi to be deposed would have been much less time-consuming than motion practice. Moreover, Amgen knowingly selected the most burdensome procedure available to it and avoided the less-burdensome teleconference procedure that this Court has ordered. (*See* D.I. 37 at ¶¶ 3(e) & 4.) Amgen cannot now argue that attending this one deposition in Southern California, where Amgen and the witness are both located, is "unduly burdensome."

Likewise, Amgen's claim that "Mr. Gandhi should not be subject to annoyance and undue burden" rings equally hollow. (*See* Pls. Mot. at 8.) Mr. Gandhi is no longer an Amgen employee, and he himself has neither filed a motion to quash nor joined in Amgen's Motion. In fact, he makes no mention of any burden or inconvenience in the factual declaration he submitted to this Court. (*Cf.* Gandhi Decl. at 2.) Mr. Gandhi's current place of employment appears to be only three miles from the proposed location of his deposition. (*See* Exs. N, O, P.)

As this deposition places no unreasonable burden on either Amgen or the deponent, this Court should deny Amgen's Motion and order that Mr. Gandhi's deposition go forward.

## IV. **CONCLUSION**

Because Mr. Gandhi is a key fact witness, and because the Amgen Entities have presented no legitimate reason to prevent his deposition, ARIAD and the Institutions respectfully request this Court deny Amgen's Motion.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888

*Counsel for Defendants and Counterclaim-Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Perry Goldberg
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: December 5, 2007

186447.1