IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation;
IMMUNEX CORPORATION, a Washington
corporation; AMGEN USA INC., a Delaware
corporation; AMGEN MANUFACTURING,
LIMITED, a Bermuda Corporation, and
IMMUNEX RHODE ISLAND CORPORATION, a
Delaware corporation,

      Plaintiffs,

v.

ARIAD PHARMACEUTICALS, INC., a Delaware
corporation, and THE WHITEHEAD INSTITUTE
FOR BIOMEDICAL RESEARCH, a Delaware
corporation,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 06-259 (MPT)

CONFIDENTIAL
FILED UNDER SEAL

# REDACTED
# VERSION

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THEIR REPLY TO DEFENDANT'S COUNTERCLAIMS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
msharp@ycst.com
(302) 571-6681

KIRKLAND & ELLIS LLP
Mark A. Pals
Marcus E. Sernel
Jamie H. McDole
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Drew Diamond
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: December 11, 2007

# TABLE OF CONTENTS

*Page(s)*

I.     Nature And Stage Of The Proceedings ...................................................................2

II.    Statement Of Facts/Background ...........................................................................3

III.   Argument ...............................................................................................................6

    A.    Leave to Amend and Supplement Is Appropriate and Shall Be Freely Given, under Rules )15(a) and 15(d), Where A Party Seeks to Amend Based Upon Claims That Matured After The Responsive Pleading........................8

    B.    The Newly Available Facts Support Amgen's Claim For Relief, The Proposed Amendment Is Not Futile, And Pleading The Additional Factual Basis Promotes The Just Disposition Of The Case....................................................9

        1.    ARIAD Had A Duty To Disclose Information Which Is Inconsistent With Its Position in Asserting An Argument Of Patentability. ...............................................................................................9

        2.    Dr. Kadesch's Testimony Directly Contradicts His Prior Testimony And ARIAD's Position In Asserting An Argument Of Patentability And Was Thus Material To The Examiner In Re-examination................................................................................................10

        3.    ARIAD and its Counsel Knew Of Dr. Kadesch's Recanted Testimony And Contrary Opinions And Took Intentional, Affirmative Steps To Conceal The Information .......................................12

    C.    The Proposed Amendment Was Not The Result Of Amgen's Delay Or Of Any Bad Faith On Amgen's Part. ......................................................................13

    D.    The Proposed Amendment Will Not Cause Undue Prejudice ...............................14

    E.    Granting Amgen's Motion Is In The Interest of the Just, Speedy and Inexpensive Resolution. ....................................................................................14

IV.    Conclusion ............................................................................................................16

## TABLE OF AUTHORITIES

Page

**Cases**

*Amgen, Inc. v. F. Hoffmann-LaRoche,*
    Civil Action No. 05-12237 (WGY) (D. Mass.) ................................................................ 3

*ARIAD Pharmaceuticals et. al. v. Eli Lilly & Co.,*
    Civil Action No. 02 CV 11280 (RWZ) (D. Mass.) ........................................................ 3

*Charpentier v. Godsil,*
    937 F.2d 859 (3d Cir. 1991) .......................................................................................... 8

*Chromalloy American Corp. v. Alloy Surfaces Co.,*
    339 F. Supp. 859 (D. Del. 1972) .................................................................................. 15

*Enzo Life Sciences, Inc. v. Digene Corp.,*
    270 F. Supp.2d 484, 490 (D. Del. 2003) ................................................................ 7, 13

*Foman v. Davis,*
    371 U.S. 178 (1962) ................................................................................................ 7, 8, 9

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
    45 F.3d 1550 (Fed. Cir. 1995) ...................................................................................... 15

*Griffin v. County School Board,*
    377 U.S. 218 (1964) ........................................................................................................ 8

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
    882 F.2d 1556 (Fed. Cir. 1989) .................................................................................... 15

*Intrepid v. Pollock,*
    907 F.2d 1125 (Fed. Cir. 1990) ...................................................................................... 9

*J. P. Stevens & Co. v. Lex Tex Ltd.,*
    747 F.2d 1553 (Fed. Cir. 1984) .................................................................................... 15

*Kleinknecht v. Gettysburg College,*
    989 F.2d 1360 (3d. Cir. 1993) ........................................................................................ 8

*LaBounty Mfg., Inc. v. U.S. Int'l Trade Com'n,*
    958 F.2d 1066 (Fed. Cir. 1992) .................................................................................... 15

*Medeva Pharma Ltd. v. American Home Prods. Corp.,*
    201 F.R.D. 103 (D. Del. 2001) ................................................................................ 9, 14

iii

*Micron Tech., Inc. v. Rambus, Inc.,*
    409 F. Supp. 2d 552 (D. Del. 2006)...................................................................... 8

*Pharmacia Corp. v. Par Pharm., Inc.,*
    417 F.3d 1369 (Fed. Cir. 2005)....................................................................... 15

**Statutes**

35 U.S.C. § 112 ....................................................................................................... 1

37 CFR § 1.555(a)........................................................................................... 9, 10

MPEP § 2016 ........................................................................................................ 15

MPEP§ 2014 ........................................................................................................... 9

**Rules**

FED. R. CIV. 16(b) ............................................................................................... 2, 6

FED. R. CIV. 60(b) .................................................................................................. 6

FED. R. CIV. P. 15(a) ..................................................................................... passim

FED. R. CIV. P. 15(d), ..................................................................................... 1, 7, 8

DB02:6433646.1

065028.1001

The Amgen Entities (hereinafter "Amgen") seek leave of this Court to file their first amended reply to ARIAD's, Harvard's, MIT's and the Whitehead Institute's (hereinafter "ARIAD's") amended counterclaims, to allege an additional and newly-discovered act of inequitable conduct in support of Amgen's previously-pled affirmative defense of unenforceability. The new ground of inequitable conduct relates to the failure of one or more of Defendants and/or their counsel, including members of Kaye Scholer LLP to cite highly-relevant information in the re-examination of U.S. Patent 6,410,516 ("the '516 patent"). Evidence made available to Amgen on Saturday, December 8, 2007 demonstrates that Defendants and/or their counsel withheld and, indeed, took affirmative steps to conceal from the Patent and Trademark Office ("PTO") the more recent testimony (in a separate case) of its expert in ARIAD's litigation with Eli Lilly & Co., Dr. Thomas Kadesch, in which he expressly recanted his opinions **REDACTED** When pressed with respect to his inconsistent positions in the two cases, Dr. Kadesch flat-out acknowledged that **REDACTED**

**REDACTED** whereas Dr. Kadesch had previously defended these same claims against a § 112 attack as an expert for ARIAD in the *Lilly* trial. Not only is the testimony diametrically the opposite, but Dr. Kadesch admits as much in the recent deposition. The materiality of the testimony is indisputable, particularly since ARIAD submitted the pro-Ariad testimony from Dr. Kadesch to the PTO during the reexam. In intentionally failing to disclose Dr. Kadesch's inconsistent expert testimony and recantation to the PTO Defendants and/or their counsel have committed inequitable conduct.

Under Federal Rules of Civil Procedure 15(a) and 15(d), the decision rests within the discretion of this Court and leave to amend is to be "freely given when justice so requires." FED.

R. Civ. P. 15(a). Here, Amgen has immediately sought leave to add this new allegation upon

learning of the facts that underlie it, and there is no prejudice to ARIAD because its counsel has

been aware of these facts (and affirmatively attempted to shield them from Amgen's counsel in

this case) for some time. In fact, had ARIAD's counsel not affirmatively blocked Amgen's

efforts to obtain the testimony, Amgen could have included this affirmative defense as of right in

its Reply to ARIAD's Amended Answer filed on October 9, 2007, well after the June 21, 2007

deposition.

Because there is no prejudice, delay, bad faith, or futility, and no other reason to deny this

motion, Amgen respectfully requests that this Court grant the motion to amend. Furthermore,

Amgen has met the "good cause" standard of Rule 16(b) where Amgen only gained possession

of the facts necessary to plead on December 8, 2007, after which it promptly moved to amend.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Amgen filed this case in April, 2006, seeking declaratory judgments of non-infringement

and invalidity of the claims of the '516 patent. (D.I. 1) On April 14, 2007, ARIAD asserted

counterclaims against Amgen in which Harvard, MIT, and the Whitehead Institute joined. On

May 3, 2007, Amgen filed its reply to ARIAD's counterclaims asserting affirmative defenses

including unenforceability, based upon, among other acts, the inequitable conduct of the patentee

during the re-examination proceeding. ARIAD amended its counterclaims on September 24,

2007 (D.I. 413) and Amgen filed its reply to these amended counterclaims on October 9, 2007,

again asserting unenforceability based upon inequitable conduct during re-examination (D.I.

429).

Under the amended scheduling order, fact discovery closes on December 21, 2007, with

initial expert reports to be exchanged on January 18, 2007, and rebuttal expert reports to be

served on February 22, 2007. Expert discovery is then set to close on March 28, 2007, followed by Markman and summary judgment briefing.

## II.    STATEMENT OF FACTS/BACKGROUND

On April 27, 2006, Dr. Thomas Kadesch testified at trial in the matter of *ARIAD Pharmaceuticals et. al. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280 (RWZ) (D. Mass.) (the "*Lilly* litigation") as an expert on behalf of ARIAD concerning, *inter alia*, the issue of written description. Dr. Kadesch specifically testified that the claims of the '516 patent were supported by adequate written description. Consistent with Dr. Kadesch's testimony, the jury found for ARIAD, and final judgment was entered on September 12, 2007. *See* Exh. A (Final Judgment entered on September 10, 2007 in the *Lilly* litigation).

On June 21, 2007, Dr. Kadesch was deposed in separate litigation proceedings between Amgen, Inc. and F. Hoffmann-LaRoche, Ltd. et al. ("Roche") and as an expert for Roche proffered opinions inconsistent with those he testified to in the *Lilly* litigation. *See* Exh. B, June 21, 2007 Deposition Testimony of Thomas R. Kadesch, in the matter of *Amgen, Inc. v. F. Hoffmann-LaRoche, Ltd.*, Civil Action No. 05-12237 (WGY) (D. Mass.) ("*Amgen v. Roche*") at pp. 257-270. At the *Roche* deposition, Amgen's counsel questioned Dr. Kadesch concerning his conflicting opinion testimony. Dr. Kadesch unequivocally recanted his ARIAD trial testimony and in doing so proffered opinion testimony contrary to ARIAD's arguments of patentability of the '516 patent claims concurrently before the PTO in re-examination.

**REDACTED**

**REDACTED**

Roche and Dr. Kadesch were represented at that deposition by members of Kaye Scholer, ARIAD's lead counsel in the *Lilly* litigation. Exh. B at 6. In an apparent attempt to hide Dr. Kadesch's recantation from the *Lilly* court and from the PTO, counsel immediately designated the entire deposition transcript "outside counsel's eyes only" under the Protective Order in the *Roche* case. Exh. B at 283. There was, however, no basis for the designation under the protective order in *Roche*[1] and when asked for the basis of the designation, counsel responded, "I believe [the ARIAD] patent actually is in litigation currently with Amgen. So therefore, I am going to mark it -- mark this deposition outside eyes only." Exh. B at 283. In designating the testimony confidential, counsel acted on behalf of its client *ARIAD*, not on behalf of *Roche*, and so admitted.

The '516 patent is currently in re-examination in the Merged Proceedings of *Ex Parte* Re-examination Control Nos. 90/007,503 (filed April 4, 2005) and 90/007,828 (filed December 2, 2005). In the re-examination, ARIAD has asserted arguments of patentability that rely upon priority and underlying written description arguments and has submitted Dr. Kadesch's expert report from the *Lilly* case regarding these issues. *See* Exh. C, Second Supplemental Information Disclosure Statement in *Ex Parte* Re-examination Control No. 90/007,898 dated December 2, 2005 at ¶ 9; *see also* Exh. D, Third Supplemental Information Disclosure Statement in *Ex Parte* Re-examination Control No. 90/007,898 dated December 2, 2005 at ¶16. Dr. Kadesch's deposition testimony recanting his opinions in the *ARIAD v. Lilly* matter is opinion testimony directly contrary to ARIAD's arguments of patentability before the PTO.

---

[1] *See* Paragraphs 3, 6 and 9 of Exh. E, the Amended Protective Order in *Amgen v. Roche*.

Over five months ago, counsel for Amgen in the Roche litigation notified Kaye Scholer

of the import of Dr. Kadesch's testimony in the pending re-examination proceedings[2] and of

ARIAD's and Kaye Scholer's duty to disclose it to the PTO:

> As you know, Dr. Kadesch's deposition testimony about the validity of the '516
> patent is relevant to the pending re-examination of the '516 patent. As ARIAD's
> attorneys regarding the '516 patent, Kaye Scholer has a duty to ensure that this
> testimony, which is clearly material to the patentability of the '516 patent, is
> disclosed to the U.S. Patent and Trademark Office. Kaye Scholer's attempt to
> designate this testimony as confidential under the protective order does not shield
> this testimony from the required disclosure to the PTO.

Exh. F, July 2, 2007 Flowers letter to Suh, at p. 2.

In response, Defendants and/or their counsel, including members of Kaye Scholer not

only failed to disclose the substance of Dr. Kadesch's testimony, but also, by affirmatively

designating the testimony and refusing to remove the improper designation, took affirmative

steps to prevent others, including Amgen, from disclosing that testimony to the Examiner during

re-examination.

Amgen diligently pursued several avenues to obtain the transcript of Dr. Kadesch's

deposition in the Roche litigation, but Defendants and/or their counsel thwarted every one of

those efforts. Amgen filed a motion on September 13, 2007 in the Roche litigation to de-

designate the transcript, which motion was denied as moot because ARIAD's counsel claimed

that it would not call Dr. Kadesch to testify at trial. *See* Exh. G, Amgen's Motion to Remove the

"Confidential" Designation from the June 21, 2007 Deposition Transcript of Roche's Expert Dr.

---

2    Members of Kaye Scholer have been in communication with counsel for the re-examination
     regarding ARIAD's responses.

**REDACTED**                    **REDACTED**

5

Thomas Kadesch. On October 30, 2007, Lilly filed a Motion for Relief from Judgment and for Additional Discovery in its separate litigation against ARIAD, in response to which ARIAD provided an excerpt of the deposition to Lilly's counsel but with strict secrecy obligations. *See* Exh. H, Notice of Withdrawal of Eli Lilly and Company's Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b) and for Additional Discovery. Upon learning that ARIAD had produced excerpts of Dr. Kadesch's testimony to Lilly, Amgen immediately requested production of the testimony, as well as the associated expert reports and exhibits. *See* Exh. I, McDole November 15, 2007 letter to Gindler. Defendants and/or their counsel refused again. *See* Exh. J, K and L.

On November 16, 2007, unable to procure the testimony from ARIAD, Amgen subpoenaed F. Hoffman-LaRoche to obtain this information. Exh. M, Roche Subpoena. Roche produced the deposition transcript on December 8, 2007. The deposition testimony is central to the inequitable conduct claim which Amgen seeks to add by this motion. Having reviewed Dr. Kadesch's testimony, Amgen promptly files this motion to amend its pleadings to assert this newly discovered ground in support of its inequitable conduct allegations in this case.

## III.    ARGUMENT

Amgen seeks leave of this Court to amend and supplement its reply pursuant to Federal Rules of Civil Procedure 15(a) and 15(d), to plead additional facts in support of its asserted affirmative defense that U.S. Patent No. 6,410,516 ("the '516 patent") is unenforceable due to ARIAD's inequitable conduct in the re-examination of the patent-in-suit.

The Federal Rules of Civil Procedure and applicable legal precedent support Amgen's motion for leave to amend to add additional acts of inequitable conduct. Amgen has good cause under Rule 16(b) for this amendment to its reply. *See* Fed. R. Civ. P. 16(b). This Court has found good cause to supplement pleadings to assert inequitable conduct where there was no

6

undue delay or likelihood of prejudice and where the proponent "filed its amendment soon after it was able to satisfy the pleading requirements of Rule 9(b)." *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (granting leave to amend to assert inequitable conduct.) Here Amgen did not delay and diligently pursued access to the testimony despite ARIAD's attempts to block disclosure to Amgen. Amgen could not have brought this motion earlier as it did not obtain the withheld testimony until December 8, 2007.

In pertinent part, Federal Rule of Civil Procedure 15(a) provides:

> A party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED. R. CIV. P. 15(a).

Federal Rule of Civil Procedure 15(d) provides:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences of events which have happened since the date of the pleading sought to be supplemented.

FED. R. CIV. P. 15(d).

The decision of whether to grant leave to amend is "addressed to the sound discretion of the district court." *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("the grant or denial of an opportunity to amend is within the discretion of the District Court" and "outright refusal to grant the leave without any justifying reason … is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."); *see also Enzo*, 270 F. Supp. 2d at 487. Here, there is no delay (other than that caused by ARIAD's counsel's misuse of the *Amgen v. Roche* Protective Order) no prejudice and no reason to prohibit Amgen from amending its reply to ARIAD's counterclaims.

7

**A.    Leave to Amend and Supplement Is Appropriate and Shall Be Freely Given, under Rules )15(a) and 15(d), Where A Party Seeks to Amend Based Upon Claims That Matured After The Responsive Pleading.**

Amgen's motion for leave to amend is supported by FED. R. CIV. P. 15(a) and (d).  Under Rule 15(a), leave to amend is to be "freely given [by the court] when justice so requires."  FED. R. CIV. P. 15(a); *see also Micron Tech., Inc. v. Rambus, Inc.*, 409 F. Supp. 2d 552, 558 (D. Del. 2006) ("A policy of favoring decisions on the merits rather than on the technicalities, underlies this Rule.")  In fact, the Supreme Court has noted:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (*internal citations omitted).*  Rule 15 provides a method for amending an answer to assert additional affirmative defenses.  *See e.g. Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1374 (3d. Cir. 1993) ("a responsive pleading may be amended at any time by leave of court to include an affirmative defense ...").

Generally, Rule 15(a) embodies a liberal approach to the allowance of amendments and requires that courts grant leave to amend where there is no prejudice or delay.  *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991) ("Unless the opposing party will be prejudiced, leave to amend should generally be allowed.")

Fed. R. Civ. P. 15(d) provides, in pertinent part:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences of events which have happened since the date of the pleading sought to be supplemented.

Fed. R. Civ. P. 15(d).  The Supreme Court has held that this Rule "plainly permits supplemental amendments to cover events happening after suit...."  *Griffin v. County School Board*,  377 U.S. 218, 227 (1964) (finding a supplemental pleading relying on occurrences after the action began

was appropriate under Rule 15(d) where the later occurrences were part of the original cause of action.) In fact, "[w]here the supplemental pleading with respect to such later events relates to the same cause of action originally pleaded ... it would be an abuse of discretion to deny the amendment." *Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990) (vacating and remanding based upon an abuse of discretion, where motion to supplement had been denied in the trial court.)

"The standard [for granting] motions to amend under Fed. R. Civ. P. 15(d) is essentially the same standard that applies to Fed. R. Civ. P. 15(a)." *Medeva Pharma Ltd. v. American Home Prods. Corp.*, 201 F.R.D. 103, 104 n. 3 (D. Del. 2001). Thus amendments are liberally allowed to pleadings in the absence of undue delay, bad faith, undue prejudice, or futility. *Foman v. Davis,* 371 U.S. 178, 182 (1962). As explained below, Amgen just received the evidence establishing this additional instance of inequitable conduct, and has promptly filed this motion. There is no delay or bad faith on the part of Amgen, there is no prejudice to ARIAD, and the inclusion of this additional defense favors the just and expeditious determination of this case. This Court should grant Amgen's motion.

      **B.**    **The Newly Available Facts Support Amgen's Claim For Relief, The Proposed Amendment Is Not Futile, And Pleading The Additional Factual Basis Promotes The Just Disposition Of The Case.**

          **1.**    **ARIAD Had A Duty To Disclose Information Which Is Inconsistent With Its Position in Asserting An Argument Of Patentability.**

The duty of disclosure in re-examination proceedings applies to "...the patent owner, each attorney or agent who represents the patent owner, and every other individual who is substantively involved on behalf of the patent owner in a re-examination proceeding." 37 CFR § 1.555(a). "That duty is a continuing obligation on the part of the patent owner through the proceedings." *See* MPEP§ 2014. "Each individual associated with the patent owner in a re-

examination proceeding has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the office all information known to that individual to be material to patentability in a re-examination proceeding." 37 CFR § 1.555(a). Information material to re-examination includes that which is:

> ...not cumulative to information of record or being made of record in the re-examination proceeding, and ...[which] refutes, or is inconsistent with, a position the patent owner takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.

Because, as discussed *supra*, Defendants and/or their counsel possessed but did not disclose non-cumulative information known to be inconsistent with a position that ARIAD took in asserting an argument of patentability, Defendants and/or their counsel failed to meet the duty to disclose all information material to patentability.

> **2.    Dr. Kadesch's Testimony Directly Contradicts His Prior Testimony And ARIAD's Position In Asserting An Argument Of Patentability And Was Thus Material To The Examiner In Re-examination**

During the Merged Proceedings of *Ex Parte* Re-examination Control Nos. 90/007,503 (filed April 4, 2005) and 90/007,828 (filed December 2, 2005) ARIAD asserted that the various continuation-in-part (CIP) applications adequately described the claims at issue such that the claims were entitled to effective filing dates as early as January 9, 1986 and April 21, 1989. Included in ARIAD's submissions to the PTO material to these issues was Dr. Kadesch's expert report in the *Lilly* case.

For example, in the re-examination, ARIAD argued that certain claims were entitled to at least an April 21, 1989 effective filing date because:

> 3.    Contrary to the Examiner's assertion, the terms 'mammalian cells' and 'eukaryotic cells' in the pending claims are clearly supported by at least the following passages in the April 21, 1989 application...

Exh. N, November 9, 2006 Response to August 2, 2006 rejection, at page 36.

065028.1001

In asserting its arguments of patentability, ARIAD had submitted Dr. Kadesch's expert

report, in which he claimed:

> The '516 patent specification and earlier applications ... describe methods of
> reducing induced NF-kB activity in cells to reduce the expression of NF-kB
> regulated genes. The description clearly allows one of ordinary skill in the art to
> recognize that the Baltimore Inventors invented what is claimed.

Exh. O, Rule 26(A)(2) Rebuttal Report of Thomas R. Kadesch, PhD., at ¶ 88.

However, in his deposition in the *Roche* matter, Dr. Kadesch testified to a contrary and

inconsistent opinion:

**REDACTED**

**REDACTED**

In so testifying, Dr. Kadesch specifically recanted his opinions in the *Lilly* litigation that

were of record in the re-examination. Dr. Kadesch's testimony in the *Roche* case directly

contradicts ARIAD's asserted patentability arguments before the re-examination Examiner.

ARIAD cannot dispute the materiality of Dr. Kadesch's testimony since it submitted Dr.

Kadesch's testimony in favor of patentability to the PTO during the reexam. Thus there is no

question that Dr. Kadesch's contradictory testimony is material.

3. **ARIAD and its Counsel Knew Of Dr. Kadesch's Recanted Testimony And Contrary Opinions And Took Intentional, Affirmative Steps To Conceal The Information**

Nor is there any doubt that Defendants and/or their counsel, including at least members of Kaye Scholer, intended to conceal Dr. Kadesch's testimony and not to disclose it to the Examiner. Kaye Scholer immediately designated the entire deposition transcript "outside counsel's eyes only" under the Protective Order in the *Roche* case. There was, however, no basis for the designation under the protective order in that case. When counsel for Amgen asked for the basis of the designation, counsel for ARIAD responded, "I believe [the ARIAD] patent actually is in litigation currently with Amgen. So therefore, I am going to mark it -- mark this deposition outside eyes only." Exh. B at 283.

Counsel for Amgen notified Kaye Scholer of the import of Dr. Kadesch's testimony in the pending re-examination proceedings and of ARIAD's and Kaye Scholer's duty to disclose:

> As you know, Dr. Kadesch's deposition testimony about the validity of the '516 patent is relevant to the pending re-examination of the '516 patent. As ARIAD's attorneys regarding the '516 patent, Kaye Scholer has a duty to ensure that this testimony, which is clearly material to the patentability of the '516 patent, is disclosed to the U.S. Patent and Trademark Office. Kaye Scholer's attempt to designate this testimony as confidential under the protective order does not shield this testimony from the required disclosure to the PTO.

Exh. F, July 2, 2007 Flowers letter to Suh, at p. 2.

Amgen moved in the *Roche* case to de-designate the transcript and also requested production directly from ARIAD. ARIAD and members of Kaye Scholer not only failed to disclose the substance of Dr. Kadesch's testimony but also, by affirmatively designating the testimony and opposing the motion to de-designate, took affirmative steps to prevent the Examiner from learning of this testimony during the pending re-examination. Further, despite the designation under the protective order, Kaye Scholer provided at least portions of the transcript to one of the firms representing ARIAD in this litigation. Only after Lilly filed a Rule

12

60 motion for relief from judgment did Kaye Scholer finally disclose the testimony to Lilly's counsel in the Lilly litigation, and then only under strict secrecy conditions. Amgen was finally successful in obtaining the testimony in this action only through a subpoena to third party Roche, who produced the relevant testimony to Amgen on December 8, 2007.

Amgen's proposed amendment is not futile. An amendment is only deemed futile if it would not survive a motion to dismiss. *Enzo*, 270 F. Supp. 2d at 489. Because these facts establish knowledge of the materiality of Dr. Kadesch's testimony and of the duty to disclose that testimony as well as the intentional withholding of that testimony from the patent office, the proposed amendment is not futile and granting leave to amend to plead the additional factual basis promotes the just disposition of this case.

**C.      The Proposed Amendment Was Not The Result Of Amgen's Delay Or Of Any Bad Faith On Amgen's Part.**

There is no undue delay by Amgen in seeking leave to amend -- the only reason Amgen could not seek leave to amend sooner is because of the extraordinary effort of Defendants and/or their counsel to stonewall production of the information upon which the new inequitable conduct allegation is based. Members of Kaye Scholer designated Dr. Kadesch's inconsistent testimony "outside counsel eyes only" and refused to remove the improper designation; thus, the information was unavailable to Amgen until produced by Roche on December 8, 2007. Amgen took affirmative steps to obtain the information, first moving in the *Roche* case on September 13, 2007 to de-designate the transcript, then requesting production from ARIAD (through its counsel), and finally requesting the information through subpoena from Roche. *See* Exh. I, J, K, L, and M. Upon receiving the transcript on December 8, 2007, Amgen promptly brought this motion.

13

Nor is there evidence of bad faith by Amgen, who took affirmative steps to notify both Kaye Scholer and ARIAD of the import of Dr. Kadesch's testimony in the pending re-examination proceedings and of ARIAD's duty to disclose. Only after Kaye Scholer refused to remove its improper confidentiality designation, and only after both Kaye Scholer and ARIAD failed to disclose the testimony to the Examiner, did Amgen file its motion. The proposed amendment was not the result of any undue delay or bad faith by Amgen. To the contrary, Amgen could not have sought the requested amendment sooner because ARIAD's counsel blocked disclosure of the withheld testimony since July 2, 2007 when Amgen first requested disclosure of the testimony.

### D.    The Proposed Amendment Will Not Cause Undue Prejudice

Finally, there is no prejudice to ARIAD in granting Amgen's motion for leave to amend. Amgen has no additional facts relevant to this issue that are not already in the possession of ARIAD. As a result, ARIAD cannot be heard to claim any prejudice if this new allegation of inequitable conduct is added at this time. In fact, had ARIAD's counsel not affirmatively blocked Amgen's efforts to obtain the testimony, Amgen could have included this affirmative defense as of right in its Reply to ARIAD's Amended Answer filed on October 9, 2007, well after the June 21, 2007 deposition. Any purported prejudice suffered by ARIAD is of its own making.

### E.    Granting Amgen's Motion Is In The Interest of the Just, Speedy and Inexpensive Resolution.

The application of Rule 15 should favor, "the just, speedy and inexpensive determination of every action." *Medeva*, 201 F.R.D. at 104. Amgen has already pleaded the affirmative defense of unenforceability based upon ARIAD's inequitable conduct in the re-examination and

DB02:6433646.1

065028.1001

relies in this action on the lack of written description for the claims of the '516 patent as one of the bases for the asserted invalidity of the claims.

A finding of inequitable conduct would render the asserted claims unenforceable, resolving many outstanding issues. This is because "[a] finding of 'fraud,' 'inequitable conduct,' or violation of duty of disclosure with respect to any claim in an application or patent, renders all the claims thereof unpatentable or invalid." MPEP § 2016; *see also Chromalloy American Corp. v. Alloy Surfaces Co.,* 339 F. Supp. 859, 876 (D. Del. 1972). "Once a court concludes that inequitable conduct occurred, all the claims -- not just the particular claims in which the inequitable conduct is directly connected -- are unenforceable." *J. P. Stevens & Co. v. Lex Tex Ltd.,* 747 F.2d 1553, 1561 (Fed. Cir. 1984). Thus, inequitable conduct results in the "permanent" unenforceability of the *entire patent. See, e.g., Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1556 -1557 (Fed. Cir. 1995); *LaBounty Mfg., Inc. v. U.S. Int'l Trade Com'n,* 958 F.2d 1066, 1070 (Fed. Cir. 1992). No exception exists in the law for patent claims allegedly "untainted" by fraud. *See e.g., Pharmacia Corp. v. Par Pharm., Inc.,* 417 F.3d 1369, 1374 -1375 (Fed. Cir. 2005) ("a finding of inequitable conduct in the acquisition of even a single claim of a patent renders the remaining claims of that patent unenforceable, even those without the taint of inequitable conduct."); accord *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556, 1563 (Fed. Cir. 1989).

Because the deposition testimony of Dr. Kadesch, produced on December 8, 2007, in light of the record before this Court, evidences ARIAD's and Kaye Scholer's intentional concealment of the substance of Dr. Kadesch's testimony, and because this testimony is inconsistent with ARIAD's asserted position in the re-examination, Amgen's motion to amend should be granted. Further, because a finding of inequitable conduct resolves many of the

outstanding issues in this case, the proposed amendment favors the just, expeditious, and inexpensive determination of this action. For these reasons, Amgen's motion for leave to amend should be granted.

## IV.   CONCLUSION

Because the newly available evidence supports Amgen's proposed amendment, because there is no evidence of futility, undue delay, bad faith or undue prejudice, and because the granting leave to amend favors the just, expedition and inexpensive determination of this action, Amgen respectfully requests that this Court grant its motion for leave to file an amended reply.

16

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Melanie K. Sharp (No. 2501)
Mary F. Dugan (No. 4704)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals
Marcus E. Sernel
Jamie H. McDole
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Drew Diamond
KIRKLAND & ELLIS LLP
South Figueroa Street
Los Angeles, CA 900017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc.,*
*Immunex Corporation, Amgen USA Inc., Amgen Manufacturin*
*Limited, and Immunex Rhode Island Corporation*

Dated: December 11, 2007

17

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 02-11280-RWZ

ARIAD PHARMACEUTICALS, INC.,
MASSACHUSETTS INSTITUTE OF TECHNOLOGY,
THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,
and THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE

v.

ELI LILLY & CO.

FINAL JUDGMENT

September 10, 2007

ZOBEL, D.J.

Pursuant to Rule 58 of the Federal Rules of Civil Procedure, in accordance with

the verdict of the jury returned on May 4, 2006, on the issues of infringement, validity

and damages (the "Verdict"); and in accordance with the Findings of Fact and

Conclusions of Law of the court issued on July 6, 2007 (the "Court's Findings"); a Final

Judgment is entered for the plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts

Institute of Technology, The Whitehead Institute for Biomedical Research, and The

President and Fellows of Harvard College (collectively, "Plaintiffs") against the

defendant Eli Lilly and Company ("Lilly") as follows:

**Validity and Enforceability**

1.    As set forth in the Verdict and the Court's Findings, claims 80, 95, 144,

and 145 of U.S. Patent No. 6,410,516 ("the '516 patent"), asserted in this action, were

not proven invalid or unenforceable by clear and convincing evidence.

**Infringement**

    2.    Lilly is liable for active inducement of infringement and contributory infringement of each of claim 80 and claim 95 of the '516 patent by Lilly's sales of Evista® (raloxifene hydrochloride) after June 25, 2002, in the United States in accordance with the product label for prevention or treatment of osteoporosis, and for active inducement of infringement and contributory infringement of each of claim 144 and claim 145 by Lilly's sales of Xigris® (recombinant activated protein -c) after June 25, 2002, in the United States in accordance with the product label for treatment of severe sepsis.

**Determination and Reporting of Damages**

    3. Lilly's monetary liability for patent infringement damages shall be established as follows:

        (a)    For sales of Evista and Xigris prior to May 4, 2006, $65,183,533.47.

        (b)    For sales of Evista (in accordance with the product label for prevention or treatment of osteoporosis) and Xigris (in accordance with the product label for treatment of severe sepsis) from May 4, 2006, until September 30, 2007, a sum equal to 2.3% of net sales revenue in the United States to be reported no later than October 31, 2007, to an individual or individuals to be designated in writing by Plaintiffs' counsel.

        (c)    For sales of Evista (in accordance with the product label for prevention or

2

treatment of osteoporosis) and sales of Xigris (in accordance with the product label for treatment of severe sepsis) after September 30, 2007, until expiration of the '516 patent, an amount equal to 2.3% of net sales revenue in the United States to be reported quarterly no later than 45 days after the close of the calendar quarter (the "Reporting Date") to an individual or individuals to be designated in writing by Plaintiffs' counsel.

(d)    Post-judgment interest, at the rate determined pursuant to 28 U.S.C. § 1961, shall accrue from the date of this Final Judgment with respect to subparagraph (a); from October 31, 2007, with respect to subparagraph (b); and from the Reporting Date with respect to subparagraph (c) until paid pursuant to paragraph 5, below.

**Deferral of Payments**

4. Lilly may defer payment of accrued damages and interest as set forth in subparagraphs (a) through (d) of paragraph 3 above until the later of 14 days after (a) mandate issues from the Court of Appeals for the Federal Circuit; (b) a final order or judgment issues from the Supreme Court; or (c) the period for appeal or review has expired.

**Payment of Damages**

5. After the end of the deferral period set forth in paragraph 4 above, Lilly shall pay to Plaintiffs by wire transfer to a bank or other repository as designated from time to time in writing by Plaintiffs' counsel:

3

    (a)   Within 30 days of the end of the payment deferral period the damages specified in paragraph 3(a) and any damages then reported pursuant to paragraphs 3(b) and (c) with interest as specified in paragraph 3(d).

    (b)   If the deferral period ends prior to October 31, 2007, the damages specified in paragraph 3(b) on October 31, 2007.

    (c)   Thereafter, payment will be made on the Reporting Date as set forth in paragraph 3(c).

**Security**

6. The parties agree that Lilly is an adequately capitalized, solvent corporation capable of paying the damages set forth in this Final Judgment. Therefore, it is further ordered that any requirement for a bond or posting of other security during the deferral period set forth in paragraph 4 is waived.

**Modification of Terms**

7. It is anticipated that, as sophisticated entities, the parties may wish to agree to more comprehensive or convenient terms, or to vary the terms of this judgment. The parties shall promptly notify the court of any such agreement.

**Retention of Jurisdiction**

8. This court retains jurisdiction over this matter for purposes of enforcing or, if appropriate, modifying this judgment. All relief not specifically granted herein is denied. SO ORDERED.

4

_____September 10, 2007_____
            DATE

_____/s/Rya W. Zobel_____
                RYA W. ZOBEL
        UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# REDACTED

# EXHIBIT C



Docket No. 75848/JPW/GJG

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patentees:    David Baltimore, Ranjan Sen, Phillip A. Sharp,
Harinder Singh, Louis Staudt, Jonathan H.
Lebowitz, Albert S. Baldwin Jr., Roger G. Clerc,
Lynn M. Corcoran, Patrick A. Baeuerle, Michael J.
Lenardo, Chen-Ming Fan, and Thomas P. Maniatis

*Ex Parte*
Reexamination
Control No.:    **90/007,828**             Group Art Unit: 3991

Filed    :    December 2, 2005          Examiner: B.M. Celsa

Patent No.:    6,410,516 B1             Serial No: 08/464,364

Issue Date:    June 25, 2002           Filed:    June 5, 1995

For    :    NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL
REGULATION

1185 Avenue of the Americas
New York, New York 10036
April 4, 2006

Mail Stop *Ex Parte Reexam*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

### SECOND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with their duty of disclosure under 37 C.F.R.
§1.555, Patentees direct the Examiner's attention to the
following disclosures, which are listed on Form PTO-1449 (**Exhibit
A**). Copies of all of the references listed herein are being
submitted in connection with *Ex Parte* Reexamination Control No.
90/007,503, filed April 4, 2005, of the above-identified patent,
which reexamination is also assigned to Examiner Celsa.
Accordingly, copies of items 1-11 are not attached to this Second
Supplemental Information Disclosure Statement but are readily

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:    90/007,828
*Page 8 of 12 of Information Disclosure Statement*

12 attached with this Third Supplemental Information Disclosure Statement, namely: Curriculum Vitae of Brendan Franceis Boyce [DDX 400 12/17/05]; Gianni et al., J. Clin. Endocrinol Metab., (2004), 89:6097-6099 [DDX403 12/17/05]; Blum, et al., The American Journal of Cardiology Brief Reports, (2000), 86:892-895 [DDX404 12/17/05]; Walsh et al., The American Journal of Cardiology, (2001), 88:825-828 [DDX405 12/17/05]; Jimi et al., Nature Medicine (2004), 10:617-624 [DDX406 12/17/05]; Compston, J.E., Physological Reviews, (2001), 31:419-447 [DDX407 12/17/05]; Chadwick et al., PNAS, (2005), 102:2543-2548 [DDX408 12/17/05]; Harnish, et al., Endocrinology, (2000), 141:3403-3411 [DDX409 12/17/05]; U.S Patent No. 6,545,027 B1, issued April 8, 2003, Berg et al. [DDX410 12/17/05]; Reifel-Miller et al., The Journal of Biological Chemistry, (1994), 269:23861-23864 [DDX411 12/17/05]; Chen et al., Nature, (1998), 391:410-413 [DDX415 12/17/05]; Olivier, et al., Presentation Number: SU104 [DDX414 12/17/05];

9.  December 20, 2005 Condensed Deposition of Thomas R. Kadesch Civil Case 02 CV 11280 RWZ including deposition Exhibits 1-12 attached with this Third Supplemental Information Disclosure Statement, namely: Curriculum Vitae of Thomas Robert Kadesch [DDX 414 12/20/05]; October 21, 2005 Rule 26(A)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D. [DDX 415 12/20/05]; September 9, 2005 Expert Report of David Latchman, DSc., Ph.D. [DDX416 12/20/05]; November 11, 2005 Reply Expert Report of David Latchman, DSc., Ph.D. [DDX417 12/20/05]; U.S. Patent No. 5,500,365, issued March 19, 1996 Fischhoff et al. [DDX418 12/20/05]; Horuk R., Journal of Immunological Methods, (1989), 119:255-258 [DDX419 12/20/05]; Gehrt, et al., The Journal of Antibiotics, (1998), 51:455-463 [DDX420 12/20/05]; Kumar et al., Oncogene (1998), 17:913-918 [DDX421 12/20/05]; Davis et

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:     90/007,828
*Page 9 of 12 of Information Disclosure Statement*

> al., Science, (1991), 253:1268-1271 [DDX422 12/20/05];
> Haskill et al., Cell, (1991), 65:1281-1289 [DDX423
> 12/20/05]; Bielinska et al., Science, (1990), 250:997-1000
> [DDX424 12/20/05]; Hoyos et al., Science, (1989), 244:457-
> 460 [DDX425 12/20/05];

10.   December 23, 2005 Condensed Deposition of David M.
      Livingston Civil Case 02 CV 11280 RWZ including deposition
      Exhibits 1-6 attached with this Third Supplemental
      Information Disclosure Statement, namely: Curriculum Vitae
      of David Morse Livingston [Livingston 450 12/23/05];
      Bernard et al., The New England Journal of Medicine,
      (2001), 344:699-709 [Livingston 453 12/23/05]; Gianni et
      al., J. Clin. Endocrinol. Metab., (2004), 89:6097-6099
      [Livingston 454 12/23/05]; Taranta, et al., Bone, (2002)
      30-368-376 [Livingston 455 12/23/05]; Blum, et al, The
      American Journal of Cardiology, (2000), 86:892-895
      [Livingston 456 12/23/05]; Smith, C.L., Supplement ot
      Menopause Management, (March/April 2005), ppg. 40-43
      [Livingston 465 12/23/05]; and

11.   January 25, 2006 Condensed Deposition of Robert Lindsay
      Civil Case 02 CV 11280 RWZ including deposition Exhibits 1-
      14 attached with this Third Supplemental Information
      Disclosure Statement, namely: Curriculum Vitae of Robert
      Lindsay [Lindsay 1 1/25/06]; March 3, 2004 Memorandum of
      Decision And Order [Lindsay 4 1/25/06]; December 21, 2005
      Eli Lilly and Company To Pay U.S. $36 Million Relating To
      Off-Label Promotion [Lindsay 5 1/25/06]; Cosman and
      Lindsay, Endocrine Reviews, (1999), 20:418-434 [Lindsay 6
      1/25/06]; Kousteni et al., J. Clin. Invest. (2003),
      111:1651-1664 [Lindsay 7 1/25/06]; Helvering et al.,
      Molecular Pharamcology, (2005), 63:1225-1238 [Lindsay 8
      1/25/06]; 71.-77. Of deposition [Lindsay 9 1/25/06]; Walsh

# EXHIBIT D

Docket No. 75848/JPW/GJG

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Patentees:    David Baltimore, Ranjan Sen, Phillip A. Sharp,
              Harinder  Singh,  Louis  Staudt,  Jonathan  H.
              Lebowitz, Albert S. Baldwin Jr., Roger G. Clerc,
              Lynn M. Corcoran, Patrick A. Baeuerle, Michael J.
              Lenardo, Chen-Ming Fan, and Thomas P. Maniatis

**_Ex Parte_**
**Reexamination**
**Control No.:**    **90/007,828**            Group Art Unit: 3991

Filed     :    December 2, 2005            Examiner: B.M. Celsa

Patent No.:    6,410,516 B1               Serial No: 08/464,364

Issue Date:    June 25, 2002             Filed:    June 5, 1995

For       :    NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL
               REGULATION

                          1185 Avenue of the Americas
                          New York, New York 10036
                          April 7, 2006

Mail Stop _Ex Parte Reexam_
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

## THIRD SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with their duty of disclosure under 37 C.F.R.
§1.555, Patentees direct the Examiner's attention to the
following disclosures, which are listed on Form PTO-1449 (**Exhibit
A**).  Copies of all of the references listed herein are being
submitted in connection with _Ex Parte_ Reexamination Control No.
90/007,503, filed April 4, 2005, of the above-identified patent,
which reexamination is also assigned to Examiner Celsa.
Accordingly, copies of items 1-16 are not attached to this Third
Supplemental Information Disclosure Statement but are readily

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:    90/007,828
*Page 23 of 27 of Information Disclosure Statement*

Research (1994) 22:3069-3074; Tomita et al., Journal of Hypertension (1996) 16:993-1000; Trepicchio and Krontiris, Nucleic Acids Research (1993) 21:977-985; and

16. Rule 26(A)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D. dated October 21, 2005 in Civil Case 02 CV 11280 RWZ including Exhibits 1-71 attached with this Fourth Supplemental Information Disclosure Statement, namely: U.S. Patent No. 5,500,365, issued March 19, 1996, Fischhoff et al.; U.S. Patent No. 5,625,136, issued April 29, 1997, Koziel et al.; File History of U.S. Serial No. 08/418,266, filed April 6, 1995; U.S. Patent No. 5,804,374, issued September 8, 1998, Baltimore et al.; U.S. Patent No. 5,939,421, issued August 17, 1999, Palanki et al.; File History of 06/946,365, filed December 24, 1986; File History of U.S. Serial No. 06/817,441, filed January 9, 1986; U.S. Patent No. 6,060,310, issued May 9, 2000, Cho-Chung; File History of U.S. Serial No. 07/791,898, issued November 13, 1991; U.S. Patent No. 6,410,516, issued June 25, 2002, Baltimore et al.; U.S. Patent No. 6,841,371, issued January 11, 2005, Gerlitz et al.; File History of U.S. Serial No. 07/155,207, filed February 12, 1988; File History of U.S. Serial No. 07/162,680, filed March 1, 1988; File History of U.S. Serial No. 07/280,173, filed December 5, 1988; File History of U.S. Serial No. 07/318,901, filed March 3, 1989; File History of U.S. Serial No. 07/341,436, filed April 21, 1989; Arruda et al., Blood (2005) 105:3458-3464; Kline et al., Int. J. Immunopharmac. (1984) 6:467-473; Ballard et al., Cell (1990) 63:803-814; Bass et al., Proteins: Structure, Function & Genetics (1990) 8:309-314; Berns et al., Breast Cancer Research & Treatment (1984) 4:195-204; Boda et al., Folia Biologica (1987) 33:93-97; Bressler et al., Journal of Virology (1993) 67:288-293; Brown et al., Methods in Enzymology (1979) 68:109-151;

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:    90/007,828
*Page 24 of 27 of Information Disclosure Statement*

Brown et al., Science (1995) 267:1485-1488; Cai et al., The
Journal of Biological Chemistry (1997) 272:96-101;
Cunningham and Wells, Science (1989) 244:1081-1085; Davis
et al., Science (1991) 253:1268-1271; Du et al., Molecular
Brain Research (2005) 136:177-188; Esslinger et al., The
Journal of Immunology (1997) 158:5075-5078; Curriculum
Vitae of Thomas Robert Kadesch dated 4/26/05; Fenteany et
al., Science (1995) 268:726-731; Fiedler et al., Am. J.
Respir. Cell Mol. Biol. (1998) 19:259-268; Fujihara et al.,
The Journal of Immnology (2000) 165:1004-1012; Gallop et
al., J. Of Medicinal Chemistry (1994) 37:1233-1251; Gehrt
et al., The Journal of Antibiotics (1998) 51:455-463;
Gesner et al., Journal of Cellular Physiology (1988)
136:493-499; Gill and Ptashne, Nature (1988) 334:721-724;
Haskill et al., Cell (1991) 65:1281-1289; Horuk R., Journal
of Immunological Methods (1989) 119:255-258; Hoyos et al.,
Science (1989) 244:457-460; Kawamura et al. Gene Therapy
(2001) 905-912; Khaled et al., Clinical Immunology (1998)
86:170-179; Krappmann et al., The EMBO Journal (1996)
15:6716-6726; Kumar et al., Oncogene (1998) 17:913-918;
Lenardo and Baltimore, Cell (1989) 58:227-229; Lloyd et
al., Nature (1991) 352:635-638; Logeat et al., The EMBO
Journal (1991) 10:1827-1832; LyB et al., The Journal of
Biological Chemistry (1998) 273:33508-33516; McKinney et
al., The Journal of Biological Chemistry (1997) 272:22377-
22380; McKnight and Kingsbury, Science (1982) 217:316-324;
Meng et al., Proc. Natl. Acad. Sci. USA, (1999) 96:10403-
10408; Morishita et al., Nature Medicine (1997) 3:894-899;
Myers et al., Science (1986) 232:613-618; Nabel et al.,
Proc. Natl. Acad. Sci. USA, (1996) 93:15388-15393; Nicolau
et al., Cell Fusion (1984) pp.254-267; Palombella et al.,
Proc. Natl. Acad. Sci. USA, (1998) 95:16741-15676; Ray et
al., The Journal of Biological Chemistry (1995) 270:10680-
10685; Reisine et al., Proc. Natl. Acad. Sci. USA, (1985)

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:   90/007,828
*Page 25 of 27 of Information Disclosure Statement*

82:8261-8265; Roberts K., Week in Review Desk (1985); Roozemond et al., Immunobiol. (1987) 176:35-46; Sawa et al., Circulation (1997) 96[suppl II]:II-280-II-285; Schindler et al., The Journal of Immunology (1990) 144:2216-2222; Scott and Smith, Science (1990) 249:386-390; Shakhov et al., J. Exp. Med. (1990) 171:35-47; Holden C., Science (1985) 230:302; Tomita et al., J. Hypertens (1998) 16:993-1000; Trepicchio and Krontiris, Nucleic Acids Research (1993) 21:977-985; Tung et al., Proc. Natl. Acad. Sci. USA, (1988) 85:2479-2483; PCT International Application No. WO 90/02809, International Publication Date March 22, 1990; PCT International Application No. WO 90/15070, International Publication Date December 13, 1990.

If a telephone interview would be of assistance in advancing prosecution of the subject application, applicants' undersigned attorney invites the Examiner to telephone at the number provided below.

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.:    90/007,828
*Page 26 of 27 of Information Disclosure Statement*

No fee is deemed necessary in connection with the filing of this
Third Supplemental Information Disclosure Statement. If any such
fee is required, authorization is hereby given to charge the
amount of any such fee to Deposit Account No. 03-3125.

Respectfully submitted,

*Gary J. Gershik*
John P. White
Registration No. 28,678
Gary J. Gershik
Registration No. 39,992
Attorneys for Applicants
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

I hereby certify that this
correspondence is being deposited
this date with the U.S. Postal
Service with sufficient postage as
first class mail in an envelope
addressed to:
Commissioner for Patents, P.O. Box
1450, Alexandria, VA 22313-1450.

*Gary J. Gershik*    4/7/06
John P. White                 Date
Reg. No. 28,678
Gary J. Gershik
Reg. No. 39,992

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 05 Civ. 12237 WGY |
| | ) | |
| F. HOFFMANN-LA ROCHE LTD, ROCHE | ) | |
| DIAGNOSTICS GmbH, and HOFFMANN- | ) | |
| LA ROCHE INC., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## AMENDED PROTECTIVE ORDER

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which relate to trade secrets or other confidential research, development or commercial information, the Court finds that good cause exists for the entry of the following protective order in this action pursuant to Rule 26(c) of the Federal Rules of Civil Procedure in order to provide access by the parties to such confidential information, subject to certain protective provisions set forth herein. The parties to this action are Plaintiff AMGEN INC. ("Amgen"), and Defendants F. HOFFMANN-LA ROCHE LTD, ROCHE DIAGNOSTICS GmbH, and HOFFMANN-LA ROCHE INC. ("Defendants") (hereinafter, collectively "the Parties").

**IT IS HEREBY ORDERED THAT:**

1.      This Protective Order shall apply to all information, including but not limited to deposition testimony, documents and things subject to discovery and produced by or otherwise obtained from either a party or non-party in discovery in this action ("Discovery Materials").

588907_1

For purposes of this Protective Order, any party or non-party producing Discovery Materials in this case shall be known as a "Supplier."

  2.  Discovery Materials that contain confidential business information may be designated as "Confidential Material." Confidential Material may include information which has not been made public and which concerns or relates to the trade secrets, processes, operations, style of work, communications or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, the disclosure of which information is likely to have the effect of causing harm to the Supplier.

  3.  Discovery Materials may be designated as "Highly Confidential Material" pursuant to the terms of this paragraph. Discovery Materials designated as Highly Confidential Material shall be limited to (a) on-going and future clinical trials and communications with regulatory authorities regarding such trials; (b) on-going labeling negotiations for any therapeutic product pending but not yet approved for sale by a regulatory authority; and (c) active and on-going research and development of any therapeutic product for which no regulatory approval has yet been sought. Defendants may within 10 days of this Order designate as Highly Confidential documents previously produced in the proceeding before the International Trade Commission captioned *In the Matter of Certain Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin*, Inv. No. 337-TA-568, that are within the definition of "Highly Confidential Material" set forth in this paragraph and that are not contained in the BLA and INDs identified in Paragraph 4 and are not duplicative of information contained therein, to the extent that any such documents exist.

4.    Defendants' pending Biological License Application ("BLA") for CERA and

Investigational New Drug Applications ("INDs") for CERA may be designated as "Restricted

Access Confidential BLA/IND Material" and shall not be disclosed except to the persons

identified in Paragraph 10 subject to the following procedures and conditions:

     a.    Defendants have produced or will produce one paper copy of the subject
         INDs and BLA;

     b.    Defendants have produced or will produce 10 fully text searchable CD
         copies of the INDs and BLA (which Amgen's counsel will not
         electronically reproduce);

     c.    the CDs and single hard copy will be maintained by outside counsel of
         record and/or designated in-house counsel in one or more locked rooms in
         one or more office buildings, commercial storage facilities or other secure
         non-residential facilities not on Amgen's premises, and a log will be
         maintained to identify each person who has been given access to said
         materials, which access shall be limited to the individuals identified in
         paragraph 10; and

     d.    the CDs will be reviewed on stand-alone, non-networked computers.

The provisions of this paragraph shall apply to Defendants' prior production of such documents

in the proceeding before the International Trade Commission captioned *In the Matter of Certain*

*Products and Pharmaceutical Compositions Containing Recombinant Human Erythropoietin,*

Inv. No. 337-TA-568; and shall also apply to any subsequent productions, if any, of these

documents in another form by Defendants.

5.    Any Discovery Materials submitted, either voluntarily or pursuant to order, in this

action, which are asserted by any Supplier to contain or constitute Confidential Material,

Restricted Access Confidential BLA/IND Material, or Highly Confidential Material

(collectively, "Confidential Discovery Material") shall be so designated by such Supplier, as set

forth in subparagraphs (a)–(d) below and shall be segregated from other information being

submitted.

588907_1                                          3

a.     Documents designated as Highly Confidential Material shall be clearly and prominently marked on their face with the legend: "**HIGHLY CONFIDENTIAL– OUTSIDE COUNSELS' EYES ONLY**" or a comparable notice. Documents designated as "Restricted Access Confidential BLA/IND Material" shall be clearly and prominently marked on their face with the legend: "**RESTRICTED ACCESS CONFIDENTIAL BLA/IND - LOCKED ROOM ACCESS ONLY**" or a comparable notice. Documents designated as Confidential Material shall be clearly and prominently marked on their face with the legend "**CONFIDENTIAL**" or a comparable notice.

b.     Interrogatory answers or other responses to written discovery and information contained therein shall be designated as Confidential Discovery Material by means of a statement at the conclusion of each answer specifying the Confidential Discovery Material contained therein or by other means that clearly indicate what portion of the answer or information is considered Confidential Discovery Material and by placing the legend referenced in subpart (a) above on the front of any set of interrogatory answers containing such Confidential Discovery Material.

c.     Deposition testimony and transcripts including exhibits attached thereto shall be treated as Confidential Material, unless otherwise designated as Highly Confidential or Restricted Access Confidential BLA/IND Material. Counsel may designate all or portions of the transcript and exhibits used therein as Highly Confidential or Restricted Access Confidential BLA/IND Material at any time during the deposition and for a period of five (5) business days following receipt of the transcript by counsel for the deponent. In-house counsel shall not have access to such transcripts or exhibits until after the expiration of said five (5) business days and provided that the designation has not been changed to Highly Confidential or Restricted Access Confidential BLA/IND Material. In-house counsel of a party may attend any deposition of a party or non-party witness, provided that the in-house counsel upon notice will leave the deposition room while another party or non-party's Highly Confidential information or an exhibit containing the same is the subject of the examination or testimony.

d.     In the event that a Supplier produces or discloses Confidential Discovery Material without designating it as Confidential Discovery Material prior to or contemporaneously with such production or disclosure, and thereafter determines that it inadvertently failed to designate Discovery Material as Confidential Discovery Material, it may do so by giving notice to all receiving parties, who thereafter shall treat the Confidential Discovery Material as such pursuant to the provisions of this Order.

6.      When any Confidential Discovery Material is included in an authorized transcript of a deposition or exhibits thereto, arrangements shall be made with the court reporter taking the deposition to bind such portions and separately label them "[Supplier] **HIGHLY CONFIDENTIAL MATERIAL – OUTSIDE COUNSELS' EYES ONLY, SUBJECT TO PROTECTIVE ORDER," "[Supplier] RESTRICTED ACCESS CONFIDENTIAL BLA/IND - LOCKED ROOM ACCESS ONLY"** or "[Supplier], **CONFIDENTIAL MATERIAL, SUBJECT TO PROTECTIVE ORDER,"** respectively.  Before a court reporter receives any such Confidential Discovery Material, he or she shall have first read this Order and shall have agreed in writing to be bound by the terms thereof.  Alternatively, he or she shall sign the agreement included as Attachment C hereto.  Copies of each such signed agreement shall be provided to the Supplier of the Discovery Materials at issue.

7.      Any Discovery Materials designated as Confidential Discovery Material are to be treated as such until and unless the parties agree in writing to the contrary or there is a ruling by the Court pursuant to a challenge to the designation pursuant to Paragraph 8 below.

8.      If a party to this Order disagrees, in full or in part, with a Supplier's designation of Confidential Discovery Material, such party may notify the Supplier in writing stating the basis for its disagreement, and the Supplier shall thereafter state the basis for the designation and confer in good faith as to the designation of the Discovery Material.  If the parties are unable to reach agreement on the proper designation of the Discovery Material, either party may move to re-classify Confidential Discovery Material pursuant to the terms of this Order.

9.      In the absence of written permission from the Supplier or an order by the Court, any Highly Confidential Material pursuant to Paragraph 3 **shall not be disclosed to any person** other than:

    a.    outside counsel of record for parties to this action, including necessary paralegal, litigation support (including outside document management and courtroom graphics consultants), secretarial and clerical personnel assisting such counsel;

    b.    qualified persons translating, recording or transcribing testimony involving Highly Confidential Material and necessary stenographic and clerical personnel thereof;

    c.    experts, consultants, and their staff who are employed by outside counsel under Paragraph 9(a) for the purposes of this litigation (provided they are not employed by a party to this proceeding or by a licensee of a party to this proceeding); and

    d.    the Court and the Court staff, in accordance with the Court's rules, procedures and orders for handling confidential information.

10.    In the absence of written permission from the Supplier or an order by the Court, any Confidential Material **shall not be disclosed to any person** other than:

    a.    the persons identified in subparagraphs 9(a)–(d) above; and

    b.    the following four (4) Amgen in-house counsel who have each been admitted or will be admitted *pro hac vice* in this action (and their paralegal, litigation support, secretarial and clerical personnel):

        1.  Wendy A. Whiteford

        2.  Monique L. Cordray

        3.  Darrell G. Dotson

        4.  to be identified at a later date by Amgen

    c.    the following four (4) Defendants in-house counsel who have each been admitted or will be admitted *pro hac vice* in this action (and their paralegal, litigation support, secretarial and clerical personnel):

        1.  George W. Johnston

        2.  Patricia Rocha-Tramaloni

        3.  Nancy DiLella

        4.  to be identified at a later date by Defendants

11.    Confidential Discovery Material shall not be made available to any individual identified in Paragraphs 9(a) and (c), or 10(b) and (c) unless he or she has first read and agreed in writing (as set forth in Attachment A) to be bound to terms of this Order.

12.    Each outside counsel seeking access to confidential business information shall agree in writing (per Attachment A) to be bound by the terms of the Protective Order. Outside counsel's clerical and support personnel (other individuals identified in Paragraph 9(a) except any outside litigation support) need not sign. Each in-house counsel who wishes to have access to Confidential Materials shall review and agree in writing (per Attachment B) to be bound by the Protective Order. Notwithstanding the access restrictions in Paragraph 4, in-house counsel may maintain the following documents containing Restricted Access Confidential BLA/IND Material of another party received pursuant to this Protective Order either in a locked room pursuant to Paragraph 4(c) or under lock and key, such as in a locked room or filing cabinet, at any location: documents filed with the Court in this proceeding, deposition transcripts (but not exhibits) in this proceeding, expert reports (but not exhibits) in this proceeding, interrogatory answers in this proceeding, admissions in this proceeding, and drafts of any of the foregoing. All agreements to be bound by the terms of this Protective Order shall be served on all non-parties who have theretofore produced Confidential Discovery Material. Each counsel identified in paragraph 10 above may utilize Discovery Materials produced under the terms of this order for purposes of this litigation, including to generate work product, draft motions, prepare for depositions, work with experts, draft expert reports and to otherwise prepare the case for trial. Without limiting the generality of the foregoing, the parties agree that Restricted Access BLA/IND Material may be shown to Amgen's experts at their offices, consistent with the terms of Paragraph 13 hereof, provided that those materials are not left with the experts and further

provided that such materials remain in the custody and control of Amgen's counsel of record designated pursuant to this Protective Order at all times.

13.    Not less than ten (10) business days before the initial disclosure of any Confidential Discovery Material to a proposed expert or consultant in accordance with Paragraph 9(c) above, the party proposing to disclose designated information to said expert or consultant shall notify the Supplier in writing of the name of the expert or consultant, provide a signed copy of Attachment A, and a current curriculum vitae of the expert or consultant. If, within 10 business days of such notice, the Supplier objects to the disclosure of such Confidential Discovery Material to the proposed expert or consultant, it shall notify the other party in writing of its objection and the grounds therefor.[1]  The parties will meet and confer in good faith to resolve the dispute within 3 days of notification by the Supplier.  If the parties are unable to reach agreement, the party proposing to disclose designated information to the expert or consultant may seek a ruling from the Court permitting such disclosure.

14.    No document shall be filed in Court under seal absent allowance of a particularized motion to seal that would be allowed only if the filing includes a trade secret. A party seeking to file another party's Confidential Discovery Material shall serve its papers on the Supplier and shall file a notice of service with the Court.  The Supplier shall then have four (4) Court days in which to either consent to the request to file said information in the public record or to seek leave of the Court pursuant to Local Rule 7.2 to file such papers under seal as set forth

---

[1]  The parties disagree as to whether it would be appropriate to disclose Confidential Discovery Material to a proposed expert or consultant who is employed by or affiliated with (a) a competitor of the Parties in the markets which are the subject of this action, or (b) any domestic or foreign manufacturer, wholesaler, retailer, or distributor of products and pharmaceutical compositions containing recombinant human erythropoietin.  Each party preserves its rights with respect to this issue.

588907_1                                    8

above. The parties shall cooperate in good faith to obtain a prompt ruling on any motion for leave to file under seal pursuant to this paragraph, including by filing any opposition within two (2) Court days of the motion.

15.    If Confidential Discovery Material is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the Supplier and, without prejudice to other rights and remedies of the Supplier, make every effort to prevent further disclosure by it and by the person who was the recipient of such information.

16.    This Protective Order does not affect the right of any party or non-party to refuse to disclose information properly subject to the attorney-client privilege or the attorney work product doctrine. To that end, each party or non-party may produce its documents in redacted form, redacting only information which is irrelevant or is subject to a claim of attorney-client privilege or work-product immunity. The party or non-party so producing a document in redacted form shall make the notation "REDACTED" (or comparable notice) on each redacted portion of the document. In addition, each "REDACTED" (or comparable) notation must include a separate notation identifying the basis for that redaction (*i.e.,* privilege or relevance). Receiving counsel shall not have the right to custody of the original un-redacted documents or a copy thereof. In the event of disagreement, receiving counsel shall identify those redacted areas of the documents which should not be redacted and shall state why such areas should not be redacted. In the event the producing party or non-party continues to refuse to produce the document(s) in unredacted form, counsel of the receiving party may seek a determination by the Court that such documents or portions thereof should be produced in unredacted form.

17.     If a party or non-party inadvertently produces or discloses information that is
subject to attorney-client privilege and/or attorney-work product immunity, or other applicable
privilege, it may request in writing within ten business (10) days of learning of such inadvertent
production or disclosure that the information inadvertently produced or disclosed be returned or
destroyed. Such inadvertent production shall not constitute or be construed as a waiver of any
applicable privilege either to the information or subject matter of the disclosure. The request
must state the nature of the privilege and/or immunity claimed for the inadvertently produced or
disclosed information. Upon receipt of such request, the party or non-party in receipt of such
information shall in good faith attempt to retrieve all copies of such information and shall return
or destroy the information (and shall to the extent possible destroy any notes relating to the
information subject to the request). No party or non-party that received the inadvertently
produced or disclosed information under the provisions of this Order may argue that the privilege
or immunity has been waived as a result of the inadvertent production or disclosure, nor may that
party use any information contained in or obtained from such inadvertent production in this
action or for any purpose. If the receiving party or non-party wishes to challenge the propriety of
the claim of privilege or immunity, it may do so only after first fully complying with the
requirements of this paragraph.

18.     Nothing in this Order shall be deemed to place any restrictions on any party, non-
party or its attorneys with respect to access and use and disposition of a party's own Confidential
Discovery Material, nor abridge the right of any person to seek judicial review or to pursue other
appropriate judicial action with respect to any ruling made by the Court concerning the issue of
the status of Discovery Material designated as Confidential Discovery Material. In addition,
nothing in this Order shall place a restriction on either party or its attorneys with respect to

sharing a Supplier's Confidential Discovery Material with a Supplier's current or former employee who was an author or recipient of such documents.

19.    Upon final termination of this action, including any appeal thereof, each party that is subject to this Order shall destroy or return to the Supplier within thirty (30) days all Confidential Discovery Material designated in accordance with Paragraphs 2-4 above, including all copies of such materials or information which may have been made. Copies of all pleadings or other papers filed under seal containing or disclosing Confidential Discovery Material shall be destroyed; provided however, that outside counsel of record for each of the parties may retain one (1) paper and one (1) electronic copy of such pleadings or other papers solely for the purpose of preserving a file in this matter. If destroyed rather than returned, the party destroying shall so verify in writing. Receipt of material returned to the Supplier shall be acknowledged in writing.

20.    Within thirty (30) days of the final termination of the action, including any appeal thereof, copies of Confidential Discovery Material that is in the hands of experts or consultants under Paragraph 9(c) must be retrieved or destroyed.

21.    The parties acknowledge that this Protective Order is binding upon them, and agree to treat any Confidential Discovery Material disclosed to them Pursuant to this Protective Order in accordance with its terms. The parties further agree that this Protective Order may be enforced by a Supplier at any time, including after the termination of this action.

22.    The Court retains jurisdiction for purposes of enforcing the terms of this Order at any time.

23.    The parties may move to amend this Order for good cause shown at any time.

PLAINTIFF AMGEN INC.
By its attorneys,

Of Counsel:
Stuart L. Watt
Wendy A. Whiteford
Monique L. Cordray
Darrell G. Dotson
MarySusan Howard
Kimberlin L. Morley
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
Telephone: (805) 447-5000

/s/ Michael R. Gottfried
Michael R. Gottfried (BBO#542156)
D. Dennis Allegretti (BBO#545511)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: (617) 289-9200
Facsimile: (617) 289-9201

Lloyd R. Day, Jr. (*pro hac vice*)
David A. Madrid (*pro hac vice*)
Linda A. Sasaki-Baxley (*pro hac vice*)
Deborah E. Fishman (*pro hac vice*)
DAY CASEBEER MADRID &
BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220

William G. Gaede III (*pro hac vice*)
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone: (650) 813-5000
Facsimile: (650) 813-5100

Kevin M. Flowers (*pro hac vice*)
Thomas I. Ross (*pro hac vice*)
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone: (312) 474-6300
Facsimile: (312) 474-0448

DEFENDANTS, by their attorneys,

/s/ Julia Huston
Lee Carl Bromberg (BBO# 058480)
Julia Huston (BBO# 562160)
Keith E. Toms (BBO# 663369)
Nicole A. Rizzo (BBO #663853)
BROMBERG & SUNSTEIN LLP
125 Summer Street
Boston, MA 02110
Tel: (617) 443-9292

and

Leora Ben-Ami (*pro hac vice*)
Patricia A. Carson (*pro hac vice*)
Thomas F. Fleming (*pro hac vice*)
Howard Suh (*pro hac vice*)
Hank Heckel (*pro hac vice*)
Peter Fratangelo (BBO# 639775)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
Tel: (212) 836-8000

SO ORDERED on this _7ᵀᴴ_ day of _Feb_, 200_7_

SO ORDERED:

_William G. Young_
The Honorable William G. Young
United States District Court
District of Massachusetts

ATTACHMENT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AMGEN INC.,                                    )
                                               )
              Plaintiff,                       )
                                               )
       v.                                      )   Civil Action No.: 05 Civ. 12237 WGY
                                               )
F. HOFFMANN-LA ROCHE LTD, ROCHE                )
DIAGNOSTICS GmbH, and HOFFMANN-                )
LA ROCHE INC.,                                 )
              Defendants.                      )
                                               )
                                               )

## AGREEMENT TO ABIDE BY PROTECTIVE ORDER

The undersigned represents that he or she is affiliated with [Plaintiff Amgen, Inc.]

[Defendants F. Hoffman-La Roche Ltd, Roche Diagnostics GmbH, and Hoffman-LaRoche Inc.],

in the above captioned matter. The undersigned is involved in this litigation as

_____ [*e.g.*, outside counsel, expert or consultant retained by outside counsel]. If

an attorney, the undersigned is admitted in _____ [all jurisdictions].

The undersigned has read the Protective Order issued on _____ by the Honorable

William G. Young in this matter, and in accordance with that Order, hereby agrees:

    (1)        To be bound by the terms of the Protective Order;

    (2)        Not to reveal Confidential Discovery Material under this Protective Order

                to anyone other than another person authorized to have access to it

                pursuant to Paragraphs 9 and 10 of the Protective Order;

    (3)        To comply with the procedures set forth in Paragraph 4 of the Protective

                Order with respect to Restricted Access Confidential BLA/IND Material;

(4)        To use such Confidential Discovery Material solely for purposes of this

litigation, unless permission is received from the Supplier, or the Court, to

use it for other purposes.

Respectfully submitted,

Dated:

                              _____

Name
Employer
Address

15

ATTACHMENT B

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 05 Civ. 12237 WGY |
| | ) | |
| F. HOFFMANN-LA ROCHE LTD, ROCHE | ) | |
| DIAGNOSTICS GmbH, and HOFFMANN- | ) | |
| LA ROCHE INC., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### IN-HOUSE COUNSEL AGREEMENT TO ABIDE BY PROTECTIVE ORDER

The undersigned represents that he or she is affiliated with [Plaintiff Amgen, Inc.] [Defendants F. Hoffman-La Roche Ltd, Roche Diagnostics GmbH, and Hoffman-La Roche Inc.], in the above captioned matter. The undersigned is involved in this litigation as an attorney and is admitted to practice in _____[all jurisdictions]. The undersigned has read the Protective Order issued on _____ by the Honorable William G. Young in this matter, and in accordance with that Order, hereby agrees:

(1)    To be bound by the terms of the Protective Order;

(2)    Not to reveal Confidential Material or Restricted Access Confidential

BLA/IND Material under this Protective Order to anyone other than

another person authorized to have access to it pursuant to Paragraphs 9

and 10 of the Protective Order;

(3)     To use such Confidential Material or Restricted Access Confidential BLA/IND Material solely for purposes of this litigation, unless permission is received from the Supplier, or the Court, to use it for other purposes;

(4)     To maintain the following documents containing such Restricted Access Confidential BLA/IND Material under lock and key, such as in a locked room or filing cabinet, at any location: documents filed with the Court in this proceeding, deposition transcripts (but not exhibits) in this proceeding, expert reports (but not exhibits) in this proceeding, interrogatory answers in this proceeding, admissions in this proceeding, and drafts of any of the foregoing.

(5)     To comply with the procedures set forth in Paragraph 4 of the Protective Order with respect to Restricted Access Confidential BLA/IND Material;

(6)     Acknowledges that he/she is not permitted access to any other party's materials designated as Highly Confidential Material without consent of the Supplier or an order of the Court;

(7)     Not to participate in or supervise patent prosecution or engage in any competitive decision-making with respect to any ESP (any erythropoiesis-stimulating protein, including EPO, peg-EPO, and EPO analog) for one year after the conclusion of the lawsuit.

Respectfully submitted,

Dated:

_____
Name
Employer
Address

ATTACHMENT C

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| AMGEN INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 05 Civ. 12237 WGY |
| | ) | |
| F. HOFFMANN-LA ROCHE LTD, ROCHE | ) | |
| DIAGNOSTICS GmbH, and HOFFMANN- | ) | |
| LA ROCHE INC., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

NONDISCLOSURE AGREEMENT FOR REPORTER/STENOGRAPHER/TRANSLATOR

I, _____, do solemnly swear that I will not divulge any

information communicated to me in any confidential portion of the action or hearing in the above

action except as permitted in the Protective Order issued in this case. I will not directly or

indirectly use, or allow the use of such information for any purpose other than that directly

associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any

person reveal the nature of content of any information communicated during any confidential

portion of the action or hearing in this case.

I also affirm that I do not hold any position or official relationship with any of the

participants in said action.

Signed_____
Dated_____
Firm or affiliation

03099/00501 589460.1

588907_1                          19

# EXHIBIT F



——— ATTORNEYS·AT·LAW ———

Kevin M. Flowers
(312) 474-6615
kflowers@marshallip.com

July 2, 2007

Howard Suh, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022

Re:    *Amgen Inc. v. F. Hoffmann LaRoche Ltd., et al. (05-CV-12237 WGY)*

Howard:

I write with respect to Roche's attempt to designate the transcript of Dr. Kadesch's June 21, 2007 deposition testimony as "highly confidential -- outside counsel eyes only." At the close of the deposition, you stated:

> I'd like to actually mark the transcript outside counsel's eyes only to the extent that Amgen counsel has actually raised issues with respect to the – issues with respect to the Ariad patent. I believe that patent actually is in litigation currently with Amgen. So therefore, I am going to mark it – mark this deposition outside eyes only. (Kadesch Transcript 283:11–20).

The deposition transcript has been marked as "highly confidential -- outside counsel eyes only." There is no basis for such designation. Paragraph 3 of the Amended Protective Order provides that:

> Discovery Materials may be designated as "Highly Confidential Material" pursuant to the terms of this paragraph. Discovery Materials designated as Highly Confidential Material **shall be limited to** (a) on-going and future clinical trials and communications with regulatory authorities regarding such trials; (b) on-going labeling negotiations for any therapeutic product pending but not yet approved for sale by a regulatory authority; and (c) active and on-going research and development of any therapeutic product for which no regulatory approval has yet been sought. (emphasis added)

### MARSHALL, GERSTEIN & BORUN LLP

Howard Suh, Esq.
July 2, 2007
Page 2

The designation of Dr. Kadesch's transcript as "highly confidential -- outside counsel eyes only" is improper, and should be withdrawn immediately. Dr. Kadesch's deposition testimony contains no confidential information of Amgen, Roche or any third party (much less information meriting a "highly confidential" designation). Your purported basis for the designation, that the Baltimore *et al.* '516 patent is currently involved in litigation involving Amgen, is not a valid basis for designation of Dr. Kadesch's testimony about that patent as "confidential" under the protective order in this case. Dr. Kadesch's opinions about the validity of the '516 patent are clearly public – he testified about the validity of that patent in open court in the *Ariad v. Eli Lilly* case in Delaware last year, and his expert report from the *Ariad v. Eli Lilly* case is publicly available from the U.S. Patent and Trademark Office files relating to the pending reexamination of the '516 patent.

As you know, Dr. Kadesch's deposition testimony about the validity of the '516 patent is relevant to the pending reexamination of the '516 patent. As Ariad's attorneys regarding the '516 patent, Kaye Scholer has a duty to ensure that this testimony, which is clearly material to the patentability of the '516 patent, is disclosed to the U.S. Patent and Trademark Office. Kaye Scholer's attempt to designate this testimony as confidential under the protective order does not shield this testimony from the required disclosure to the PTO.

Please advise by July 5, 2007 whether Roche will withdraw the confidentiality designation and send an appropriate notice to the reporting agency to correct the mis-designation. If Roche refuses to do so, we will be forced to seek relief from the Court.

Sincerely,

Kevin M. Flowers

KMF/mg

cc:    Leora Ben-Ami
       Deborah E. Fishman

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMGEN INC., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> F. HOFFMANN-LAROCHE ) <br> LTD., a Swiss Company, ROCHE ) <br> DIAGNOSTICS GmbH, a German ) <br> Company and HOFFMANN LAROCHE ) <br> INC., a New Jersey Corporation, ) <br><br> Defendants. ) | Civil Action No.: 05-12237 WGY |

---

**AMGEN'S MOTION TO REMOVE THE "CONFIDENTIAL" DESIGNATION FROM**
**THE JUNE 21, 2007 DEPOSITION TRANSCRIPT OF ROCHE'S EXPERT DR.**
**THOMAS KADESCH**

Defendants have misused the confidentiality provisions of the Protective Order entered

by this Court in this case to hide non-confidential material information disclosed by one of their

experts during his deposition. Consequently, Amgen respectfully requests that, pursuant to

paragraph 8 of the Protective Order, the designation of the transcript of the June 21, 2007,

deposition of Defendants' expert, Dr. Thomas Kadesch, as "Confidential" or "Highly

Confidential" be removed.

On June 21, 2007, Amgen deposed Dr. Kadesch regarding his expert opinions in this

case. Dr. Kadesch testified, consistent with his expert report, that he believes Dr. Lin's patents

are invalid under Section 112. During his deposition, Dr. Kadesch was also questioned about his

testimony last year on behalf of ARIAD Pharmaceuticals, Inc. (which was also represented by

Defendants' lead counsel here, Ms. Ben-Ami), in a jury trial before Judge Zobel (*ARIAD*

*Pharmaceuticals et al. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280 (RWZ)). In the ARIAD

case, Dr. Kadesch testified that ARIAD's patent was valid under Section 112. Consistent with that testimony, the jury found in favor of ARIAD, and final judgment was entered for ARIAD yesterday.[1]

During his June 21 deposition -- unable to reconcile his ARIAD testimony with his opinions regarding Section 112 issues in this case -- Dr. Kadesch unequivocally recanted his ARIAD trial testimony.[2] In a transparent attempt to hide his recantation from the ARIAD court and the U.S. Patent Office (where the ARIAD patent is currently in re-examination), counsel for Roche immediately designated the entire deposition transcript "Highly Confidential" under the Protective Order in this case. When asked for the basis of the designation, Roche's counsel responded simply that "I believe [the ARIAD] patent actually is in litigation currently with Amgen.[3] So therefore, I am going to mark it – mark this deposition outside eyes only."[4]

Amgen's counsel pointed out at the time, and in a subsequent letter, that the basis for the designation is improper, and requested that the designation be removed.[5] Mr. Suh simply ignored several subsequent requests by Amgen's counsel to further meet and confer on the issue.[6]

The designation of this transcript as "Confidential" – much less "Highly Confidential" -- is wholly improper: Dr. Kadesch's testimony does not relate in any way to confidential information of any party, much less "Highly Confidential" information as defined by the Protective Order in this action. His opinions regarding the validity of the ARIAD patent, about

---

[1]  Exhibit 1 (*ARIAD Pharmaceuticals et al. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280 (RWZ) (D. Mass., Sept. 10, 2007) (Docket No. 417) ("*Ariad v. Lilly*").

[2]  Exhibit 2 (June 21, 2007 Deposition Transcript of Thomas R. Kadesch, Ph.D.) at 257:21–270:16.

[3]  Amgen sued ARIAD in 2006 to invalidate ARIAD's patent (U.S. Pat. No. 6,410,516) and contends that the ARIAD patent is invalid under Section 112.

[4]  Exhibit 2 at 283:11-20.

[5]  *See, e.g.*, Exhibit 2 at 283:21-25 and Exhibit 3 (Letter from Flowers to Suh of 7/2/07).

[6]  Exhibit 4 (E-mail from Flowers to Suh of 8/9/07).

which he was questioned in his June 21 deposition, are already public – he testified in open court

on behalf of ARIAD on those very issues in the *ARIAD v. Eli Lilly* case before Judge Zobel in

April of 2006.[7] Dr. Kadesch's expert report from that case, about which he was also questioned

on June 21, is publicly available on the PACER system.[8]

       Not only is Dr. Kadesch's recantation of his ARIAD opinion relevant to the weakness of

Roche's Section 112 attack on Dr. Lin's patents here, it is highly material to the ongoing

proceedings relating to the ARIAD patent. To prevent a miscarriage of justice, Amgen

respectfully requests that the Court order that the improper designation be removed pursuant to

paragraph 8 of the Protective Order.

       Roche has not and cannot meet its burden under the Protective Order for maintaining the

designation. The designation must be removed to ensure that the ARIAD court and the U.S.

Patent and Trademark Office has this testimony, which is highly material to the validity of the

ARIAD patent. This Court should put an end to the improper "hide the ball" tactics of Roche's

(and ARIAD's) counsel.

---

[7] Exhibit 5 (selected pages from Trial Transcript, Day 13, 2nd Session, in *Ariad v. Lilly* (April 27, 2006).

[8] Exhibit 6 (Rule 26(A)(2) Rebuttal Report of Thomas R. Kadesch, *Ariad v. Lilly*, (D. Mass., Feb. 3, 2006) (Docket Nos. 198-16 & 198-17)).

Respectfully Submitted,

AMGEN INC.,
By its attorneys,


_____/s/ Michael R. Gottfried_____
D. DENNIS ALLEGRETTI (BBO#545511)
MICHAEL R. GOTTFRIED (BBO#542156)
PATRICIA R. RICH (BBO# 640578)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA  02210
Telephone:     (857) 488-4200
Facsimile:      (857) 488-4201

Of Counsel:

STUART L. WATT
WENDY A. WHITEFORD
MONIQUE L. CORDRAY
DARRELL G. DOTSON
KIMBERLIN L. MORLEY
ERICA OLSON
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA   91320-1789
(805) 447-5000

LLOYD R. DAY, JR.
DAY CASEBEER
  MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA  95014
Telephone:     (408) 873-0110
Facsimile:      (408) 873-0220

WILLIAM GAEDE III
McDERMOTT WILL & EMERY
3150 Porter Drive
Palo Alto, CA 94304
Telephone:     (650) 813-5000
Facsimile:      (650) 813-5100

KEVIN M. FLOWERS
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago IL 60606
Telephone:     (312) 474-6300
Facsimile:      (312) 474-0448

September 13, 2007

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1**

I certify that counsel for the parties have conferred in an attempt to resolve or narrow the issues presented by this motion and no agreement was reached.

/s/ Michael R. Gottfried
Michael R. Gottfried

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of electronic filing and paper copies will be sent to those indicated as non-registered participants on September 13, 2007.

/s/ Michael R. Gottfried
Michael R. Gottfried

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, AND THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE,** | |
| Plaintiffs, | **CIVIL ACTION NO.: 02-11280 (RWZ)** |
| v. | **U.S. District Judge Rya W. Zobel** |
| **ELI LILLY AND COMPANY,** | |
| Defendant. | |

**NOTICE OF WITHDRAWAL OF ELI LILLY AND COMPANY'S MOTION FOR
RELIEF FROM JUDGMENT UNDER FED. R. CIV. P. 60(b)
AND FOR ADDITIONAL DISCOVERY**

Because Plaintiffs have now provided Eli Lilly and Company ("Lilly") with an excerpt of

the requested deposition transcript of Dr. Thomas Kadesch from *Amgen Inc. v. F. Hoffman-La

Roche Ltd.*, Civil Action No. 05-12237 (WGY) (D. Mass.), and with Ariad's assent, Lilly hereby

withdraws its Motion for Relief from Judgment under Fed. R. Civ. P. 60(b) and for Additional

Discovery (D.I. 423-425), without prejudice to renewing its motion following review of the

deposition testimony.

Respectfully Submitted,

Date:  November 13, 2007

**Of Counsel**
Paul R. Cantrell
Gilbert T. Voy
Alexander Wilson
Eli Lilly and Company
Lilly Corporate Center
Indianapolis, IN  46285
Telephone: (317) 276-3885
Facsimile: (317) 276-1294

/s/ Charles E. Lipsey

Lawrence R. Robins (BBO# 632610)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER L.L.P.
55 Cambridge Parkway
Cambridge, MA 02142
Telephone: (617) 452-1600
Facsimile: (617) 452-1666

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190
Telephone:  (571) 203-2700
Facsimile:  (202) 408-4400

Robert D. Bajefsky
David S. Forman
Howard W. Levine
Laura P. Masurovsky
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER L.L.P.
901 New York Ave., N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400
**Attorneys for Defendant Eli Lilly and
Company**

## CERTIFICATE OF SERVICE

I hereby certify that the Notice of Withdrawal of Eli Lilly and Company's Motion for Relief from Judgment Under Fed. R. Civ. P. 60(b) and for Additional Discovery, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on November 13, 2007.

/s/ Charles E. Lipsey

# EXHIBIT I

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamie H. McDole
To Call Writer Directly:
312 861-2048
jmcdole@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

November 15, 2007

**VIA E-MAIL**

David I. Gindler
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    **Re:** *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*

Dear David:

We remain concerned regarding ARIAD's failure to timely provide discovery in this case. ARIAD is of course obligated under the Federal Rules to timely supplement its discovery, including document production. We have previously raised this issue many times, the latest being in the context of ARIAD's failure to timely produce reexamination materials. Now, it appears that ARIAD has produced excerpts of the deposition transcripts of Dr. Thomas Kadesch from *Amgen Inc. v. F. Hoffman-La Roche Ltd., Civil Action No.* 05-122237 (WGY) (D. Mass) to Eli Lilly in *ARIAD Pharmaceuticals, Inc. et al v. Eli Lilly And Company*, (CA No. 02-11280), yet has failed to produce these same materials to the Amgen Entities.

We request that ARIAD immediately produce these excerpts from Dr. Kadesch's deposition transcripts. Given that these documents have already been produced to Eli Lilly, we expect that ARIAD can email this production to my attention no later than the close of business today. Also, please promptly (by November 21, 2007) produce the entirety of Dr. Kadesch's deposition transcript as well as his expert report(s) and corresponding exhibits.

Sincerely,

Jamie McDole

# EXHIBIT J

# IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
**LOS ANGELES, CALIFORNIA 90067-4276**

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7123
FACSIMILE (310) 712-3193
rlamagna@irell.com

November 15, 2007

**<u>VIA E-MAIL</u>**

Jamie McDole
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

   Re: <u>Amgen Inc. v. ARIAD Pharmaceuticals, Inc. and related counterclaims.</u>

Dear Jamie:

   I write in response to your letter of November 15, 2007 to David Gindler.  We continue to disagree with your characterization of ARIAD's and the Institutions' document production efforts as anything but diligent.

   Regarding your request, please explain why Amgen feels that it is entitled to the discovery of deposition transcripts filed under seal in a case that does not involve either Enbrel or Kineret and in which neither ARIAD nor the Institutions were parties.  Likewise, please explain on what basis Amgen believes ARIAD is able to or required to "produce the entirety of Dr. Kadesch's deposition transcript as well as expert report(s) and corresponding exhibits" from the Hoffman-LaRoche case.

       Sincerely,

       */s/ Raymond LaMagna*

       Raymond LaMagna

RL:rl

cc:  Counsel of Record

1781767

# EXHIBIT K

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

777 South Figueroa Street
Los Angeles, CA 90017-5800

Drew Diamond
To Call Writer Directly:              213-680-8400                              Facsimile:
213-680-8217                                                                    213-680-8500
ddiamond@kirkland.com            www.kirkland.com

November 20, 2007

**VIA E-MAIL**

Ray LaMagna, Esq.
Irell & Manella LLP
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

Re:    *Amgen et al. v. ARIAD et al.* -- D. Del. Civil Action No. 06-259-(MPT)

Dear Ray:

I write in response to your November 15, 2007 letter to Jamie McDole. We requested both the excerpts of Dr. Kadesch's deposition transcript from the Roche case that ARIAD produced to Lilly and the full copy and exhibits to that deposition. While it appears you are maintaining for now your refusal to produce the full transcript and exhibits, please produce immediately the excerpts that ARIAD has already produced to Lilly.

In your letter, you requested that we "explain on what basis Amgen believes ARIAD is able to or required to 'produce the entirety of Dr. Kadesch's deposition transcript as well as expert report(s) and corresponding exhibits' from the Hoffman-LaRoche case." We respond as follows.

As you know, on April 27, 2006, Dr. Thomas Kadesch testified as an expert on behalf of ARIAD concerning the issues of written description and enablement in litigation proceedings against Eli Lilly & Co. (*ARIAD Pharms. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280 (RWZ) (D. Mass.) -- "the Lilly matter"). Dr. Kadesch testified that the '516 patent was valid under Section 112. ARIAD's recently-filed Opposition to Lilly's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, A New Trial attempts to support the jury's verdict on Section 112 issues by extensive citation to Dr. Kadesch's trial testimony.

As you also know, Dr. Kadesch was deposed on June 21, 2007 in separate litigation proceedings between Amgen and F. Hoffmann-LaRoche et al. (*Amgen, Inc. v. F. Hoffmann-LaRoche*, Civil Action No. 05-12237 (WGY) (D. Mass.) -- "the Roche matter"). According to pleadings from both the Roche and Lilly matters, Dr. Kadesch recanted his ARIAD trial

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

Ray LaMagna
November 20, 2007
Page 2

testimony and in doing so proffered opinion testimony contrary to ARIAD's arguments of patentability before the PTO in reexamination.

Roche was represented at that deposition by Kaye Scholer, who was also ARIAD's lead counsel in the concurrent Lilly matter. Counsel from Kaye Scholer improperly designated the entire deposition transcript "Highly Confidential" under the Protective Order in the Roche matter. When asked for the basis of the designation, counsel responded, "I believe [the ARIAD] patent actually is in litigation currently with Amgen. So therefore, I am going to mark it -- mark this deposition outside eyes only." [Docket No. 1063, Case No. 1:05 CV 12237-WGY] In designating the testimony confidential, counsel acted on behalf of its client ARIAD, not on behalf of Roche, and so admitted.

The '516 patent is currently in reexamination in the Merged Proceedings of Ex Parte Reexamination Control Nos. 90/007,503 (filed April 4, 2005) and 90/007,828 (filed December 2, 2005). In the reexamination, ARIAD has asserted arguments of patentability that rely upon priority and underlying written description arguments and has submitted Dr. Kadesch's expert report from the Lilly matter regarding these issues.

Counsel for Amgen notified Kaye Scholer of the import of Dr. Kadesch's testimony in the pending reexamination proceedings and of ARIAD's duty to disclose. In response, counsel for ARIAD, not only failed to disclose the substance of his testimony to the Examiner but also prevented others from doing so by refusing to remove the improper designation.

Amgen and the PTO should have the ability to evaluate Dr. Kadesch's testimony from the Roche matter, both to evaluate issues of invalidity and issues of inequitable conduct and unenforceability. As Dr. Kadesch's expert report and the exhibits from his deposition provide necessary context for his recantation of his trial testimony, they should be provided immediately as well.

If ARIAD refuses to produce these materials, I am available to meet and confer on this matter at your earliest convenience.

Best regards,

/s/ Drew Diamond

Drew Diamond

# EXHIBIT L

# Young Conaway Stargatt & Taylor, LLP

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

MELANIE K. SHARP
DIRECT DIAL: (302) 571-6681
DIRECT FAX: (302) 576-3333
msharp@ycst.com

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

December 5, 2007

**BY E-FILE**

The Honorable Mary Pat Thynge
United States District Court of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *Amgen, Inc. et al. v. ARIAD Pharmaceuticals, Inc.*
C. A. No.: 06-259 (MPT)

Dear Judge Thynge:

I write on behalf of Amgen concerning ARIAD's refusal to produce documents relating to recantation by Dr. Thomas Kadesch of opinions he rendered on behalf of ARIAD regarding the validity of the '516 patent. Because the validity of the '516 patent is central to this case and is the subject of arguments ARIAD is making before the PTO in the reexamination, the discoverability of the requested documents is not even a close question. Specifically, Amgen requested Dr. Kadesch's deposition transcript, his expert report, corresponding exhibits and production made in litigation with Hoffman LaRoche, where Dr. Kadesch "unequivocally" recanted his '516 patent validity opinion previously made on behalf of ARIAD.[1]

By way of background, on April 27, 2006, Dr. Thomas Kadesch testified as an expert on behalf of ARIAD concerning the issues of written description and enablement in litigation against Eli Lilly & Co. (*ARIAD Pharms. v. Eli Lilly & Co.*, C.A. No. 02 CV 11280 (RWZ) (D. Mass.) -- "the Lilly matter"). Specifically, Dr. Kadesch testified at the jury trial that the '516 patent was valid under Section 112. (*See, e.g.*, Lilly Trial Tr. at pp 94 and 137, Ex. A.) More recently, on November 15, 2007, ARIAD cited extensively to Dr. Kadesch's trial testimony in post trial briefing in its attempt to salvage the jury's verdict on Section 112 issues. (*See* [ARIAD's] Opposition to Lilly's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, A New Trial, at 5, 8-12, 18-21, 43, and 44, Ex. B.)

On June 21, 2007 (after trial of the Lilly matter and well before ARIAD submitted its post trial brief), Dr. Kadesch recanted his testimony in the Lilly matter. He was deposed in separate litigation between Amgen and F. Hoffmann-LaRoche et al. (*Amgen, Inc. v. F. Hoffmann-LaRoche*, C.A. No. 05-12237 (WGY) (D. Mass.) -- "the Roche matter") which does

---

[1] As a result of ARIAD's intransigence, Amgen has been forced to serve subpoenas for the Kadesch documents on third parties. The subpoena served on Hoffman LaRoche, Inc. on November 16, 2007 (D.I. 498) will likely be the subject of a motion to compel as soon as practicable, because Roche's counsel (who is also ARIAD's local counsel in the Lilly action), after communication with ARIAD's most recent lead counsel, appears to have adopted ARIAD's baseless relevance argument.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
December 5, 2007
Page 2

not involve the '516 patent. Counsel for F. Hoffman-LaRoche in the Roche matter is Kaye
Scholer, the same counsel that represented ARIAD in the Lilly matter. According to pleadings
in both the Roche and Lilly matters, Dr. Kadesch recanted his ARIAD trial testimony concerning
the validity of the '516 patent, and, in doing so, proffered opinion testimony *contrary* to
ARIAD's arguments of patentability before the PTO in reexamination. In fact, while ARIAD,
pursuant to the reexamination of the '516 patent, has submitted Dr. Kadesch's expert report from
the Lilly matter, they have failed to disclose to the PTO any of the more recent Kadesch
materials from the Roche matter that contradict his prior testimony in the Lilly matter, such as
his recantation of his validity opinions concerning written description contained in that report.

Dr. Kadesch's deposition in the Roche matter was improperly designated as
"Highly Confidential" by counsel for Roche/ARIAD and ARIAD has refused to correct that
designation. Counsel from Kaye Scholer improperly designated the entire Kadesch deposition
transcript "Highly Confidential" under the Protective Order in the Roche matter. When asked
for the basis of the designation, counsel responded, "I believe [the ARIAD] patent actually is in
litigation currently with Amgen. So therefore, I am going to mark it – mark this deposition
outside eyes only." (Docket No. 1063, Case No. 1:05 CV 12237-WGY, Ex. C) In designating
the testimony confidential, counsel acted on behalf of ARIAD, not on behalf of Roche, and so
admitted. ARIAD should not prevail with its attempt to bury this highly relevant and prejudicial
evidence by hiding behind a protective order which all parties agree is inapplicable to the
testimony at issue.

As Your Honor is aware, the '516 patent is currently in reexamination in the
Merged Proceedings of Ex Parte Reexamination Control Nos. 90/007,503 (filed April 4, 2005)
and 90/007,828 (filed December 2, 2005). In the reexamination, ARIAD has asserted arguments
of patentability that rely upon priority and underlying written description arguments and has
submitted and relies on Dr. Kadesch's expert report from the Lilly matter regarding these issues.

Dr. Kadesch's deposition testimony concerning issues relating to the '516 patent,
and his expert report, exhibits and other related production in the Roche matter which place his
deposition testimony in context, are plainly discoverable as they relate to the issues of invalidity
and inequitable conduct in this action. The evidence is relevant to inequitable conduct – serious
inequitable conduct concerns have been raised by ARIAD's attempt to bury this evidence which
is indisputably material to the validity of the '516 patent in both this action and the
reexamination. The testimony is further relevant to the validity of the '516 patent since the
subject matter of his testimony, not his status, particularly because he has testified and recanted,
governs discoverability.

Counsel for Amgen immediately notified ARIAD, through its counsel, of the
import of Dr. Kadesch's testimony in the pending reexamination proceedings and of ARIAD's
duty to disclose. On November 15 in this action, Amgen requested production of the Kadesch
documents from ARIAD's lead counsel at Irell & Manella, LLP. (November 15, 2007 from
McDole to Gindler, Ex. D) ARIAD resisted by letter that same day, demanding further
explanation. (November 15, 2007 letter from LaMagna to McDole, Ex. E) On November 20,

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Mary Pat Thynge
December 5, 2007
Page 3

2007, Amgen responded and invited a meet and confer. (November 20, 2007 letter from Diamond to LaMagna, Ex. F) ARIAD stood mute, at least as to Amgen and the PTO. On December 4, in response to Amgen's insistence, ARIAD's third set of counsel refused production in this case on the grounds of relevance, and, like his predecessors, refused a corrective disclosure to the PTO. As a result, I certify pursuant to L.R. 7.1.1, that Amgen has been unable to secure ARIAD's voluntary cooperation on this matter, necessitating the Court's intervention.

Respectfully,

*/s/ Melanie K. Sharp*

Melanie K. Sharp (No. 2501)

MKS

cc:    Clerk of the Court (Hand Delivery)
       John G. Day, Esquire (via e-mail)
       Frederick L. Cottrell, III, Esquire (via e-mail)
       David I. Gindler, Esquire (via e-mail)
       David Greenwald, Esquire (via e-mail)
       Robert D. Bajefsky, Esquire (via e-mail)

# EXHIBIT M

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| Amgen, Inc., a Delaware corporation, et al.<br><br>V.<br><br>ARIAD Pharmaceuticals, Inc., a Delaware Corporation et al. | **SUBPOENA IN A CIVIL CASE**<br><br>Case Number:[1] 06-259 (MPT) |

TO:  Hoffman LaRoche Inc.
c/o Its Registered/Agent:  Frederick C. Kentz III
340 Kingsland Street
Nutley, NJ 07110, U.S.A

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A

| PLACE    Young Conaway Stargatt & Taylor, LLP, 1000 West street, 17th Floor, Wilmington, DE 19899 (or at a location and time agreed upon by the parties) | DATE AND TIME<br>11/26/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | 11/16/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Melanie K. Sharp, Attorney for Plaintiff, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, (302) 571-6681

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| **SERVED** | 11/16/2007 | Hoffman LaRoche Inc., c/o its registered Agent - Frederick C Kentz II, 340 Kingsland Street, Nutley,NJ |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Jane Y.C. Mathews Esq., Senior Cousel at 16:20 Hrs | Personal and Authorized |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| ROBERT H STALB | Certified Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___11/16/2007___
DATE

SIGNATURE OF SERVER

LAWYERS EDGE PROCESS SERVICE LLC

ADDRESS OF SERVER

58 Main Street, Hackensack, New Jersey 07601

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises— or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

AMGEN INC. – A DELAWARE CORPORATION ET AL.

Case 1:06-cv-00259-MPT    Document 498    Filed 11/30/2007    Page 5 of 10

Plaintiff

*vs.*

**United States District Court**
**District of Delaware**
**Docket / Index # 06-259 (MPT)**

**ARIAD PHARMACEUTICALS INC – A DELAWARE CORPORATION**
**ET AL**

Defendant

**AFFIDAVIT**

**Person to be served:**
*Hoffman LaRoche Inc.* **at:** *Hoffman LaRoche Inc., c/o Its Registered Agent –*
*Frederick C Kentz II, 340 Kingsland Street, Nutley, NJ 07110*

**Attorney:**
**Young Conaway Stargatt & Taylor LLP**
The Brandywine Building
100 West Street 17th Floor, Wilmington, DE 19899

Cost of Service Pursuant to R. 4:4-3(c)

$ _____

**Papers Served:**
**SUBPOENA IN A CIVIL CASE**

**Service Data:**

Served Successfully   **X**    Not Served _____

**Date:** November 16, 2007   **Time:** 4:20 PM

**Attempts: 0**

_____   Delivered a copy to him / her personally

_____   Left a copy with a competent household member over 14
years of age residing therein.

**X**   Left a copy with a person authorized to accept service, e.g.
managing agent, registered agent, etc.

**Name of Person Served and**
**Relationship / Title:**

Jane Y.C. Mathews Esq., Senior Counsel and
Managing Attorney – Authorized to accept for
Mr Kentz in his absence

**Description of Person Accepting Service:**
Sex: **Female**  Age: **50**  Height: **5' 3"**  Weight: **120-130 lbs**  Skin Color: **Caucasian**  Hair Color: **Brown**

( )Other _____  Comments or Remarks _____

**Server Data:**
Subscribed and Sworn to me this
16 day of November 2007

CHRISTINA A. DEGENNARO
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 2/24/2011

I, **Robert H. Stalb**, was at the time of service a competent adult
not having a direct interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

Robert H. Stalb, Process Server

**Lawyers Edge Process Service, LLC**, 58 Main Street Suite 1C, Hackensack, NJ 07601
Phone: (201) 489-8080   Fax: (201) 489-8824

Job #21189
Affidavit of Service (9/30/02)

## ATTACHMENT A

## DOCUMENT REQUESTS

1.     All transcripts, videos, or other recordings of any deposition of Dr. Thomas Kadesch, including but not limited to his deposition of June 11, 2007.

2.     All documents and things, including exhibits and expert reports, relating to any deposition of Dr. Thomas Kadesch, including but not limited to those relating to his deposition of June 11, 2007.

3.     All documents and things relating to communications between Dr. Thomas Kadesch and any representatives of Roche, including but not limited to Roche's in-house and outside counsel.

4.     All documents and things relating to any communications between Roche and ARIAD or their respective counsel relating to Dr. Thomas Kadesch.

065028.1001

### DEFINITIONS AND INSTRUCTIONS

1.      "You," "your," or "Roche" refers to Hoffmann-La Roche Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with Roche, and persons purporting to act on Roche's behalf or on whose behalf Roche has acted or acts.

2.      "ARIAD" shall mean ARIAD Pharmaceuticals, Inc., including without limitation any predecessors, successors, wholly or partially owned subsidiaries, parent companies, affiliates, and all past or present agents, representatives, partners, employees, directors, officers, consultants, entities acting in joint-venture or partnership relations with ARIAD, and persons purporting to act on ARIAD's behalf or on whose behalf ARIAD has acted or acts.

3.      "Document" is used in its customary broad sense within the context of the Federal Rules of Civil Procedure and shall mean any written, printed, recorded or graphic matter, computer memory, computer tapes and diskettes, tapes, films, photographs, drawings, or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted, or executed, including without limitation written and electronic communications, letters, correspondence, notes, memoranda of telephone conversations or meetings, diaries, desk calendars, interoffice communications, fax messages, e-mail messages, telegrams, telex messages, records, studies, bills, receipts, checks, checkbooks, purchase orders, invoices, requisitions, studies, summaries, analyses, statistical and financial statements, charts, graphs, reports, computer printouts, laboratory notebooks, invention disclosure documents, patent

2

applications and drafts thereof, test records, test reports, assignments, licenses, bills of sale, sale of business agreements, market studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers, journals, microfiche, microfilm photographic film, surveys, forms, printed brochures or material similar to any of the foregoing, however denominated, by whomever prepared, and to whomever addressed, which are in your possession, custody or control or to which you have, have had or can obtain access.

4.      The terms "any" and "all" shall be construed to include "each and every."

5.      "Relating to" and "regarding" shall mean describing, depicting, summarizing, reflecting, constituting, containing, evidencing, discussing, analyzing, considering, or evaluating.

6.      "And," "or," and "and/or" shall mean both the conjunctive and disjunctive and shall serve as an interrogatory for information that would be responsive under a conjunctive reading in addition to all information that would be responsive under a disjunctive reading.

7.      The singular includes the plural number, and vice versa. The masculine includes the feminine and neuter genders. The past tense includes the present tense where the clear meaning is not distorted by a change in tense.

8.      "Identify," "identity" or "identification," with respect to a document or thing, shall mean to state the production number or the type or nature of the document (e.g., letter, memorandum, telegram, chart, laboratory report, etc.), the date of its preparation, the identity of the person(s) who prepared the document, the identity of person(s) who signed the document, the sender, the recipient(s) and addressee(s), a description of the subject matter and content, the name and address of any person having possession, custody, or control of the same or a true copy thereof, and all other means of identifying the document with sufficient particularity so as to

3

satisfy the requirements for its inclusion in a demand or interrogatory for its production pursuant to Federal Rule of Civil Procedure 34.

9.    "Person" shall mean any natural person or any business, legal or governmental entity or association, or any other person recognizable at law, and its agents and employees.

10.    "Communication" or "communications" shall mean any of the following: (i) any written letter, memorandum, e-mail or other such document; (ii) any telephone call between two or more persons, whether or not such call was by chance or prearranged, formal or informal; (iii) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal; and (iv) any transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

11.    You are requested to search all documents within your possession, custody, or control, wherever located, including, but not limited to, any documents placed in storage facilities or in the possession of any employee, agent, representative, attorney, investigator, or other person acting or purporting to act on your behalf, in order to fully respond to the requests for documents herein.

12.    Each request for documents set forth herein seeks production of all documents described, along with any attachments, drafts, non-identical copies, and translations thereof in your possession, custody, or control.

4

13.     Documents from any single file shall be produced in the same order as they were found in such file, including labels, files, folders, and/or containers in which such documents are located in or associated with.  If copies are produced in lieu of originals, such copies should be legible and bound or stapled in the same manner as the original.  You are also requested to produce all versions of the foregoing documents stored by a computer internally, on disk, on CD-ROM, on tape, or on other memory device.

14.     These requests are not limited as to time period unless otherwise stated.

15.     If you object to any part of a document request, set forth the basis for your objection and respond to all parts of the document request to which you do not object.

16.     If any privilege is claimed as a ground for not producing any document, state (a) the privilege claimed; (b) the author(s) and recipients of documents claimed to be privileged; (c) the date of the privileged communication; and (d) a description of the privileged communication sufficient to apprise Amgen of its privileged nature.

17.     Each request for a document contemplates production of the document in its entirety, without abridgement, abbreviation, or expurgation of any sort.  If a document responsive to any request herein cannot be produced in full, it shall be produced to the extent possible, with an explanation as to why production of the remainder is not possible.

18.     If any documents identified by this Request have been destroyed or discarded, state (a) the nature of the documents; (b) the author(s) and recipient(s) of documents; (c) the date of the document; and (d) a location where a copy of the document may still exist.

# EXHIBIT N

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 4 of 92  of November 9, 2006 Response*

<u>**REMARKS**</u>

Patentees respond below to the rejections set forth in the August 2, 2006 Office Action.  The following Table of Contents is provided for reference:

<u>Table of Contents</u>

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 6 |
| | A. | Status of Claims Pursuant to 37 C.F.R. § 1.530(e) | 6 |
| | B. | Rejections Made Moot by the Cancellation of Claims | 6 |
| | C. | Update of Concurrent Proceedings Under 37 C.F.R. §1.565 | 6 |
| | D. | Summary of Patentees' Response Set Forth in this Response | 8 |
| II. | SUMMARY OF OCTOBER 13, 2006 EXAMINER INTERVIEW | | 11 |
| III. | THE IMPROPER USE OF REFERENCES WHICH ARE NOT PRIOR ART AND A DECLARATION TO SUPPORT INHERENCY REJECTION IS *ULTRA VIRES* | | 18 |
| | A. | Statutory Grounds For Reexamination | 18 |
| | B. | Impermissible Grounds of Rejection in a Reexamination | 18 |
| | C. | The Inherent Anticipation Rejections in the August 2, 2006 Office Action are Improper; They Rely on Evidence Other Than "prior art consisting of patents or printed publications" in Violation of the Reexamination Statute | 19 |
| | D. | The Claims of the Subject Patent Are Method Claims and the Cited Prior Art References are At Most Evidence of What Occurred During A Prior Public Use | 21 |
| IV. | INCONSISTENCIES IN AUGUST 2, 2006 OFFICE ACTION | | 24 |
| | A. | Rejected Claims Reciting "Liver Cells" Should be Confirmed Patentable | 24 |
| | B. | Rejected Claims Reciting Specific Ways of Reducing NF-kB Activity Should be Confirmed Patentable | 24 |
| V. | PROPER CLAIM CONSTRUCTION | | 25 |
| | A. | Claims Require a "Reasonable" Interpretation; The Examiner Improperly Expanded The Scope of the claims Beyond a Reasonable Interpretation | 25 |
| | B. | The Proper Interpretation of Method Claims Requires They Be Interpreted As Involving Affirmative Acts | 26 |
| | C. | Different Claims Must Be Construed To Have Different Scope | 28 |
| | D. | Proper Construction of the '516 Claims | 29 |
| VI. | REJECTIONS ON THE BASIS OF "INTERVENING REFERENCES" | | 33 |
| | A. | Numerous Claims Are Clearly Entitled To At Least An April 21, 1989 Effective Filing Date | 33 |

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 5 of 92  of November 9, 2006 Response*

      B.    Rejections On the Basis of "Intervening References" Should Be Withdrawn As To All Claims Entitled To At Least An April 21, 1989 Effective Filing Date ............................................. 34

      C.    Claims Entitled To At Least An April 21, 1989 Effective Filing Date And Rejected Solely On The Basis of "Intervening References" Should Be Confirmed Patentable ................................... 34

      D.    Claim Rejections On The Grounds Of Anticipation or Obviousness Over The "Intervening References" Are Not Valid Even For Claims Entitled To a November 13, 1991 Filing Date ........................... 39

            1. Intervening References Relating To Protein Kinase...... 39

            2. Intervening References Relating To Cyclosporin A....... 48

            3. Intervening References Relating To N-Acetyl-L Cysteine. 61

VIII. THE CLAIMS ARE NOT INHERENTLY ANTICIPATED...................... 64

      A.    Inherent Anticipation Requires a Showing That Each and Every Element of a Claim Necessarily Occurred in the Prior Art................................. 64

      B.    The References Used As "Extrinsic Evidence" Do Not Reproduce What the Prior Art References Describe And Therefore Fail to "Explain" What Occurred in the Prior Art References................. 66

      C.    Even If the References Used As "Extrinsic Evidence" Were Deemed To Explain the Prior Art, the Cited Prior Art Does Not Teach Each and Every Element of the Claims Being Rejected............... 79

IX.    SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT................... 90

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 33 of 92  of November 9, 2006 Response*

VI.   REJECTIONS ON THE BASIS OF "INTERVENING REFERENCES".

On pages 3-4 of the August 2, 2006 Office Action, the Examiner
alleged that all 203 claims of the subject patent are only entitled
to the benefit of a November 13, 1991 filing date, and rejected a
subset of the claims on references having an effective date between
April 21, 1989 and November 13, 1991 (the "intervening references").[4]

### A.   Numerous Claims Are Clearly Entitled To At Least An April 21, 1898 Effective Filing Date

Patentees maintain that numerous claims are clearly entitled at least
to the April 21, 1989 filing date of U.S. Serial No. 07/341,436.

For the subset of claims against which the "intervening references"
are being cited Patentees direct the Examiner's attention to a Claim
Support Chart, attached as **Exhibit 3** to the Declaration of Dr. Verma.
This Claim Support Chart clearly shows support for the claims listed
in the April 21, 1989 application.   The portions of the April 21,
1989 application or of the relevant application(s) incorporated
therein by references and identified in the Claim Support Chart
convey with reasonable clarity the invention recited in the
corresponding claim(s) listed in the chart to one of skill in the
art.   See, also the Declaration of Dr. Verma, ¶¶ 16-21.   Patentees
point out that to the extent support for the pending claims appears
in U.S. Serial Nos. 06/817,441, filed January 9, 1986; 07/155,207,
filed February 12, 1988; and/or 07/280,173, filed December 5, 1988,
each of these applications is incorporated by reference into the
April 21, 1989 application on page 1, lines 4-8 thereof.   In
accordance with M.P.E.P. § 608.01(p)(I), claims are entitled to at

---

[4] *Pending claims which have been rejected on "intervening references" are: 1-8, 9, 11, 18, 20, 21, 25-27, 29, 31, 32, 36-38, 40, 42, 43, 47-51, 53, 54, 58-60, 61, 62, 64, 65, 69-71, 72, 73, 75, 76, 80, 82, 84, 88, 89, 93-97, 106, 107, 109, 110, 114-117, 182-185, 192, 193, 197-199, 200 and 201.*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 34 of 92 of November 9, 2006 Response*

least the April 21, 1989 effective filing date of U.S. Serial No.
07/341,436 if supported by the disclosure of an application
incorporated therein by reference.

   B.   **Rejections On The Basis Of "Intervening References" Should
        Be Withdrawn As To All Claims Entitled To At Least An
        April 21, 1989 Effective Filing Date**

As noted above, numerous claims rejected on the basis of "intervening
references" are in fact entitled to at least an April 21, 1989
effective filing date. Therefore, each ground of rejection based on
an "intervening reference" should be withdrawn with respect to each
claim rejected on such ground which is entitled to the April 21, 1989
filing date. Specifically, the rejections set forth: in section I
on pages 10-13; in section IIa on pages 13-18; in section VIII on
pages 47-48; and in section IX on pages 48-51 of the August 2, 2006
Office Action should be withdrawn with respect to each pending claim
rejected therein which is entitled to an April 21, 1989 effective
filing date.

   C.   **Claims Entitled To At Least An April 21, 1989 Effective
        Filing Date And Rejected Solely On The Basis Of
        "Intervening References" Should Be Confirmed Patentable**

Because certain claims have only "intervening references" cited
against them, such claims should be confirmed patentable as to each
such claim found to be entitled to the April 21, 1989 effective
filing date. Specifically, Patentees maintain that claims 3, 4, 11,
42, 43, 47-49, 51, 107, 109, 110, 114, 115, 117, 192, 193, 197-199
and 201 are entitled to an April 21, 1989 effective filing date and
have only "intervening references" cited against them. Accordingly,
each of claim 3, 4, 11, 42, 43, 47-49, 51, 107, 109, 110, 114, 115,
117, 192, 193, 197-199 and 201 should be confirmed patentable.

In addition to the Claim Support Chart discussed above, Patentees now
address the Examiner's specific comments on pages 3-4 of the Office

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 35 of 92  of November 9, 2006 Response*

Action which relate to the claims being rejected on the basis of the intervening references.  The Examiner has alleged that:

> "every claim of the '516 patent (1-203) recites at least one of the following features which the pre-1991 applications fail to disclose:
>
> a.    an amino acid or nucleic acid sequence corresponding to NF-κB;
>
> b.    support for the Baltimore patent claim limitations including (but not limited to):
>
> -'reducing NF-kB activity' in a cell (e.g. especially mammalian/eukaryotic) and/or an enabling means thereof (e.g. administering a NF-kB inhibitor) to effect various functions (e.g. inhibit expression generally, reduce cytokine expression etc.) as *required in all the claims*;
>
> -'reduce binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB' (e.g., claims 25, 36, 47, 69, 80, 93, 144, 154 and 182);
>
> -'inhibiting modification of an IkB protein, which modification otherwise reduces IkB binding to NF-kB' (e.g., claims 22, 33, and 44);
>
> -'inhibiting degradation of an IkB protein' (e.g., claims 23, 34, and 45);
>
> -'inhibiting dissociation of NF-kB:IkB complexes' (e.g., claims 24, 35, and 46)."

In response, Patentees note the following:

1. Contrary to the Examiner's assertion, amino acid or nucleic acid sequences corresponding to NF-kB are not recited in the pending claims or necessary to enable these claims as of April 21, 1989.  See Declaration of Dr. Verma ¶ 17.

2. Contrary to the Examiner's assertion, the phrase "reducing NF-kB activity" in the pending claims is clearly supported by at least the following passages in of U.S. Serial No. 07/341,436, filed April 21, 1989 (the "April 21, 1989" application):

- page 5, lines 13-16: "Alteration or modification, whether to enhance or reduce NF-kB activity . . . is referred to herein as

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 36 of 92  of November 9, 2006 Response*

regulation of NF-kB activity." See, also Declaration of Dr. Verma
¶ 17 and 18.


3. Contrary to the Examiner's assertion, the terms "mammalian cells"
and "eukaryotic cells" in the pending claims are clearly supported
by at least the following passages in the April 21, 1989 application:

- page 1, lines 4-8, incorporating U.S. Serial No. 07/155,207, page
77, lines 8-9: "NF-kB [is] present in a wide variety of <u>mammalian
cells</u>"; and
- page 1, lines 4-8, incorporating U.S. Serial No. 07/280,173, page
4, line 21: "In the present work with <u>eukaryotic cells</u>." See, also,
Declaration of Dr. Verma ¶ 18.


Patentees also note the Examiner's assertion that "'reducing NF-kB
activity' in a cell (e.g. especially mammalian/eukaryotic) and/or an
enabling means thereof (e.g. administering a NF-kB inhibitor) to
effect various functions (e.g. inhibit expression generally, reduce
cytokine expression etc.)" is not disclosed in the subject patent.
In this regard, Patentees respectfully direct the Examiner's
attention to page 23, line 22 to page 30, line 25 of the April 21,
1989 application describing how one skilled in the art may proceed
to reduce NF-kB activity in accordance with the invention.


4. Contrary to the Examiner's assertion, the phrase "reducing binding
of NF-κB to NF-κB recognition sites on genes which are
transcriptionally regulated by NF-κB" in the pending claims is
clearly supported by at least the following passages in the April 21,
1989 application:

- on page 5, line 31 to page 6, line 8: "NF-kB-mediated gene
expression can also be selectively regulated by altering the <u>binding
domain of NF-kB</u> in such a manner that binding specificity and/or
affinity are modified.";

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 37 of 92  of November 9, 2006 Response*

- on page 24, lines 9-29: "According to the methods described herein, the <u>expression of genes under the control of one of these elements is subject to modulation</u> by alteration of the concentration or availability of NF-κB. This can also be carried out, according to the present method, for <u>any gene which contains an NF-kB binding site</u>."; and

- in the Title: "<u>NF-kB-Mediated Transcriptional Regulation</u>".  See, also, Declaration of Dr. Verma ¶ 19.


5. Contrary to the Examiner's assertion, the phrase "inhibiting modification of an IkB protein, which modification otherwise reduces IkB binding to NF-kB" in the pending claims is clearly supported by at least the following passages in the April 21, 1989 application:


-on page 18, lines 28-29: "<u>Inactive NF-kB is complexed</u> with a labile inhibitor protein, I-kB.";

- on page 19, lines 20-21: "The implication is that <u>activation of NF-kB</u> involves a <u>modification of I-kB</u> and not NF-kB."; and

- on page 5, lines 7-13 and 23-25: "<u>As a result of this finding</u>, it is now possible to alter or modify the activity of NF-κB as an intracellular messenger and, as a result, to alter or modify the effect of a variety of external influences, referred to as inducing substances, whose messages are transduced within cells through NF-κB activity....   In particular, the present invention relates to a method of regulating (enhancing or <u>diminishing) the activity of NF-kB</u> in cells in which it is present and capable of acting as an intracellular messenger, as well as to substances or composition useful in such a method." See, also, Declaration of Dr. Verma ¶ 20.


6. Contrary to the Examiner's assertion, the phrase "inhibiting degradation of an IkB protein" in the pending claims is clearly supported by at least the following passages in the April 21, 1989 application:

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 38 of 92 of November 9, 2006 Response*

- on page 20, lines 1-3: "Various inducer then cause an <u>alteration in I-kB</u> allowing NF-kB to be released from the complex."; and
- on page 5, lines 7-13 and 23-25: "<u>As a result of this finding</u>, it is now possible to alter or modify the activity of NF-KB as an intracellular messenger and, as a result, to alter or modify the effect of a variety of external influences, referred to as inducing substances, whose messages are transduced within cells through NF-KB activity...." Contrary to the Examiner's assertion, the phrase "inhibiting degradation of an IkB protein" in the pending claims is clearly supported by at least the following passages in the April 21, 1989 application: In particular, the present invention relates to a method of regulating (enhancing or <u>diminishing) the activity of NF-KB</u> in cells in which it is present and capable of acting as an intracellular messenger, as well as to substances or composition useful in such a method." See, also, Declaration of Dr. Verma ¶ 21.

7. Contrary to the Examiner's assertion, the phrase "inhibiting dissociation of NF-kB:IkB complexes" in the pending claims is clearly supported by at least the following passages in the April 21, 1989 application:

- on page 19, lines 1-3: "... <u>dissociating</u> agents such as formamide and deoxycholate to unmask very high levels of NF-kB activity."; and
- on page 20, lines 5-7: "The <u>complex formation</u> of NF-kB with I-kB appears to be rapidly and efficiently <u>reversible</u> ...." See, also, Declaration of Dr. Verma ¶ 21.

Patentees, thus, have shown where each of the terms mentioned by the Examiner has adequate support in the April 21, 1989 application. Accordingly, the claims containing these terms should be according to an April 21, 1989 effective filing date.

# EXHIBIT O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, and THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br>          Plaintiffs,<br><br>   v.<br><br>ELI LILLY AND CO.,<br><br>          Defendants. | Civil Action No. 02 CV 11280 RWZ<br><br>U.S. District Judge Rya W. Zobel |

### RULE 26(A)(2) REBUTTAL REPORT OF THOMAS R. KADESCH, Ph.D.

I, Thomas R. Kadesch, Ph.D., submit the following report on behalf of ARIAD

Pharmaceuticals, Inc., Massachusetts Institute of Technology, The Whitehead Institute for

Biomedical Research, and The President and Fellows of Harvard College (collectively "Ariad")

Plaintiffs in this action.

I.  **Introduction**

1.  I have been asked to prepare a report on certain issues related to the validity of U.S.

Patents No. 6,410,516 ("the '516 patent"), including a rebuttal to certain opinions expressed in

the reports of Drs. David Latchman (hereinafter "Latchman") and Peter Barnes (hereinafter

"Barnes"), served on behalf of defendant Eli Lilly & Co. ("Lilly") on September 9, 2005.

2.  I anticipate testifying as an expert at trial based on the opinions expressed herein.

These opinions are based upon the information I have received so far.  They may be

supplemented or modified if I receive additional information.  They may also be supplemented to

## IX.    Written Description

### A.    The Specification of the '516 Patent Contains and Adequate Written Description of the Asserted Claims Because It Demonstrates that the Baltimore Inventors Were in Possession of the Claimed Methods at the Time of Filing.

88. The '516 patent specification and earlier applications (see discussion below on earlier filed applications), describe methods of reducing induced NF-$\kappa$B activity in cells to reduce the expression of NF-$\kappa$B regulated genes. The description clearly allows one of ordinary skill in art to recognize that the Baltimore Inventors invented what is claimed. It allows one skilled in the art to visualize himself or herself practicing the claimed methods. In forming my opinion of have considered the specification of the '516 patent as a whole giving weight to all of the words, structures, figures, diagrams, and formulas.

89. For many of the same reasons that the specification enables one of skill in the art to practice the claims, the specification provides a written description. Therefore, the reader is referred to my discussion on enablement above for further support of my reasons. In particular one of ordinary skill in the art reading the specification finds a detailed description of:

- the mechanism of NF-$\kappa$B activation, (see above ¶¶ 46-52);

- I$\kappa$B as an inhibitor of NF-$\kappa$B, (see above ¶¶ 66-74);

- assays for the analysis of protein DNA interactions, (see above ¶¶ 57-65);

- decoy molecules, (see above ¶¶ 75-78);

- dominantly interfering molecules, (see above ¶¶ 79-81).

90. In addition to being enabling to those of ordinary skill in the art the disclosure clearly sets forth the limitations of the asserted claims.

### a.    The specification describes that NF-$\kappa$B mediated intracellular signaling is induced by external influences, including LPS.

28

# EXHIBIT P

# REDACTED

# EXHIBIT Q

Sep-07-2006  12:23pm  From-cooper&dunham            +212 391 0525      T-085  P.003/009  F-438

## --URGENT ACTION REQUESTED--
### Ex Parte REEXAMINATION

Docket No. 74753/JPW/GJG

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

A Merged Proceeding of *Ex Parte* Reexamination Control Nos:

90/007,503    and    90/007,828
Filed April 4, 2005      Filed December 2, 2005

Merged Pursuant to May 4, 2006 Merger Decision
Group Art Unit: 3991  Examiner: B.M. Celsa

| | |
|---|---|
| Patentees: | David Baltimore, Ranjan Sen, Phillip A. Sharp, Harinder Singh, Louis Staudt, Jonathan H. Lebowitz, Albert S. Baldwin Jr., Roger G. Clerc, Lynn M. Corcoran, Patrick A. Baeuerle, Michael J. Lenardo, Chen-Ming Fan, and Thomas P. Maniatis |

Patent No.:    6,410,516 B1            Serial No: 08/464,364

Issue Date:    June 25, 2002            Filed:    June 5, 1995

For        :    NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL
REGULATION

1185 Avenue of the Americas
New York, New York 10036
September 7, 2006

BY FACSIMILE  571-273-9900
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Attn.    Director, Central Reexamination Unit

### PETITION FOR EXTENSION OF TIME UNDER 37 C.F.R. § 1.550(c) FOR RESPONDING TO AUGUST 2, 2006 OFFICE ACTION

An Office Action issued August 2, 2006 in connection with the above-identified merged *ex parte* reexamination. The August 2, 2006 Office Action set a two (2) month period for filing a response so that a response is currently due October 2, 2006. Patentees hereby petition for a one (1) month extension of time so that a response to the August 2, 2006 Office Action will be

Amgen v. Ariad
Plaintiff's Dep Exhibit
214

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.: 90/007,503 and 90/007,828
*Page 2 of 7 of Request for Extension*

due November 2, 2006.    Patentees hereby authorize the
Commissioner to charge the $200.00 fee under 37 C.F.R. § 1.17(g)
for filing this Petition to Deposit Account No. 03-3125.

<u>Summary of Reasons for Granting Petition</u>

Although a more detailed discussion of the reasons warranting the
grant of this Petition is set forth below, the following is a
summary of the reasons:

1)  The August 2, 2006 Office Action contains 281 pages
    (including the appendices) and rejects 160 claims, some on
    as many as 15 grounds, while relying on a total of 53
    references and a declaration;

2)  Scheduling commitments of Patentees' technical expert, a
    Professor at the Salk Institute in San Diego, California,
    made prior to issuance of the August 2, 2006 Office Action,
    only permitted an interview with the Examiner to be
    scheduled on September 26, 2006, and do not permit adequate
    time for Patentees to consult with their expert after
    September 26 and before the current October 2, 2006
    deadline; and

3)  Before finalizing and filing a response to the August 2,
    2006 Office Action Patentees' undersigned counsel need to
    consult with and/or take into account the input of: a) a
    technical expert who resides in California; b) the
    exclusive licensee located in Cambridge, Massachusetts; c)
    the three coowners of the Patent, also located in
    Cambridge, Massachusetts; d) the thirteen (13) named
    inventors; and e) trial counsel involved in two separate
    litigations in Massachusetts and Delaware.

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.: 90/007,503 and 90/007,828
*Page 3 of 7 of Request for Extension*

Detailed Discussion of Reasons for Granting Petition

Extensions of time in an *ex parte* reexamination are governed by
37 C.F.R. § 1.550(c), which provides, in relevant part:

> (c) The time for taking any action by a patent owner in an *ex parte* reexamination
> proceeding will be extended only for sufficient cause and for a reasonable time
> specified. Any request for such extension must be filed on or before the day on
> which action by the patent owner is due, but in no case will the mere filing of a
> request effect any extension. Any request for such extension must be
> accompanied by the petition fee set forth in § 1.17(g).

Section 2265 of the M.P.E.P. provides that:

> Evaluation of whether sufficient cause has been shown for an extension must be
> made in the context of providing the patent owner with a fair opportunity to
> present an argument against any attack on the patent, and the requirement of the
> statute (35 U.S.C. 305) that the proceedings be conducted with special dispatch.

Patentees respectfully submit that sufficient cause exists in the
instant case for extending the deadline for responding to the
August 2, 2006 Office Action by one month.

The Office Action was mailed on August 2, 2006 and received at
the undersigned's office on August 7, 2006. Since receiving the
August 2, 2006 Office Action Patentees, their attorneys and their
technical expert have been studying the grounds of rejection of
160 claims of the patent on multiple grounds (as many as 15
grounds being applicable to some claims), based on 53 different
references and a declaration. Multiple meetings and conferences
have taken place to review and discuss the August 2, 2006 Office
Action. One of the undersigned attorneys has worked over 140
hours on this matter since receiving the August 2, 2006. The
number and complexity of issues presented in the August 2, 2006
Office Action is substantial and Patentees need to consult with
and have the participation of their technical expert in an
interview with the Examiner and the preparation of the response
to the August 2, 2006 Office Action. Therefore, Patentees need
one additional month to have a fair opportunity to present a

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.: 90/007,503 and 90/007,828
*Page 4 of 7 of Request for Extension*

complete response against the attack on the subject patent as set
forth in the August 2, 2006 Office Action.

As discussed in more detail below, the availability of Patentees'
technical expert to analyze the complex and numerous issues
raised by the August 2, 2006 Office Action, attend an interview
with the Examiner, and participate in the preparation of a
response to the Office Action, constitute sufficient cause for
granting this Petition for a one month extension of time.   In
addition, the logistical problems of coordinating and consulting
with three coowners of the Patent, an exclusive licensee, 13
inventors, and trial counsel involved in two litigations in two
jurisdictions constitute further cause for granting this
Petition.

First, the limited time available for Patentees' technical expert
to a) review the 281 page Office Action along with 53 references
and a declaration, b) understand and discuss with Patentees the
grounds of rejection applied against the 160 claims,   c)
participate in an interview at the Patent Office with the
Examiner, and d) assist counsel in preparing a response to the
Office Action, warrant granting this Petition.   Patentees have
retained a technical expert to assist with the analysis of the
complex art at issue in this reexamination.   The expert is a
Professor at the Salk Institute in San Diego, California and has
commitments in September made prior to receipt of the August 2,
2006 Office Action.   The current October 2, 2006 deadline would
be highly prejudicial to Patentees with respect to their expert's
ability to fully analyze the 53 references and multiple grounds
of rejection of 160 claims.   Furthermore, Patentees have
scheduled an interview with Examiner Celsa which will be attended
by their technical expert.   The expert resides in California.
Thus, the expert's prior commitments, the need for the expert to
have adequate time to review the voluminous Office Action, the
need for a meeting to prepare for the interview, and travel
arrangements, only permitted the interview with Examiner Celsa

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.: 90/007,503 and 90/007,828
*Page 5 of 7 of Request for Extension*

to be scheduled on September 26, 2006. Moreover, immediately after the September 26, 2006 interview, the technical expert needs to travel back to California because of prior commitments on September 27-29. The current deadline of Monday, October 2, 2006 for filing a response does not provide Patentees with time to consult with their technical expert about the issues discussed during the interview and to prepare a declaration. The expert currently is available to meet with counsel to assist in preparing a response to the August 2, 2006 Office Action and to prepare a declaration on October 9-10, 2006. Thus, the availability of Patentees' technical expert constitutes sufficient cause to grant this Petition.

Second, the sheer length and complexity of the August 2, 2006 Office Action also warrants granting this Petition. The August 2, 2006 Office Action is sixty-three (63) pages long and incorporates by reference Exhibits G and H, and Appendices D, E, and F. The material incorporated by reference totals two hundred and eighteen (218) pages.[1] Thus, the August 2, 2006 Office Action contains **281 pages** setting forth multiple grounds of rejection of **160 claims** of Patentees' patent ranging from one ground to as many as fifteen (15) grounds of rejection for some claims, and relies on a total of **53 references** and **one declaration**.

Third, the logistic difficulties of working with a) a technical expert in California; b) an exclusive licensee in Cambridge, Massachusetts; c) three coowners of the Patent in Cambridge, Massachusetts; d) thirteen (13) inventors; and e) trial counsel involved in litigation in two jurisdictions, Massachusetts and Delaware, also warrant granting this Petition. For example, the

---

[1] Exhibit G consists of parts G-1(21 pages) and G-2 (16 pages), for a total of 37 pages; Exhibit H consists of parts H-1 (20 pages), H-2 (13 pages), H-3 (12 pages), H-4 (14 pages), H-5 (11 pages), H-6 (6 pages), H-7 (17 pages), H-8 (18 pages), H-9 (27 pages), and H-10 (29 pages), for a total of 167 pages; Appendix D is a total of 11 pages; Appendix E is a total of 2 pages; and Appendix F is a total of 1 page.

Patentees: David Baltimore et al.
*Ex Parte*
Reexamination Control No.: 90/007,503 and 90/007,828
*Page 6 of 7 of Request for Extension*

undersigned attorneys need time to consult with Patentees' expert in California, who in turn needs to first review the 281 page Office Action, the 53 references and the declaration, in order to outline a course of action for responding to the August 2, 2006 Office Action.    Furthermore, each of three different coowners, the licensee, and trial counsel handling the concurrent litigation involving the Patent, needs to be consulted concerning the proposed course of action.

In conclusion, there is sufficient cause to extend the shortened statutory period for reply by one month to provide Patentees a fair opportunity to respond to the lengthy and complex attack on their patent set forth in the August 2, 2006 Office Action. Accordingly, Patentees respectfully submit that a one month extension of time should be granted.

Pursuant to the May 4, 2006 Merger Decision, this Petition is being filed in duplicate, each original bearing an original signature and identifying data for both reexamination files. As set forth above, the undersigned authorizes the Commissioner to charge any fee required in connection with the filing of this Petition to Deposit Account No. 03-3125.

Respectfully submitted,

John P. White
Registration No. 28,678
Gary J. Gershik
Registration No. 39,992
Attorneys for Patentees
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on December 11, 2007, I caused to be electronically filed a true and correct copy of Memorandum in Support of The Amgen Entities' Motion for Leave to File First Amended Reply to ARIAD, Harvard, MIT, and Whitehead's Amended Counterclaims, with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

Frederick L. Cottrell, III
Anne Shea Gaza
Richards Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

I further certify that on December 11, 2007, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

Charles E. Lipsey
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Two Freedom Square
11955 Freedom Drive, Suite 800
Reston, VA 20190-5675

Morgan Chu
David I. Gindler
Amir A. Naini
Christopher M. Newman
Elizabeth L. Rosenblatt
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276

Howard W. Levine
Robert D. Bajefsky
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com