## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, <br><br>         Plaintiffs, <br><br>    v. <br><br> ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, <br><br>         Defendants. | |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, <br><br>         Counterclaim Plaintiffs, <br><br>    v. <br><br> AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH, <br><br>         Counterclaim Defendants. | C.A. No. 06-259-MPT |

## DEFENDANTS/COUNTERCLAIM-PLAINTIFFS ARIAD'S AND THE INSTITUTIONS' MEMORANDUM IN RESPONSE TO PLAINTIFFS/COUNTERCLAIM-DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR REPLY TO AMENDED COUNTERCLAIMS

ASHBY & GEDDES
Steven J. Balick (#2114)
John G. Day (#2403)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150,
Wilmington, Delaware 19899
Telephone: 302-654-1888

*Counsel for ARIAD Pharmaceuticals, Inc.,
Massachusetts Institute of Technology, The President
and Fellows of Harvard College, and The Whitehead
Institute for Biomedical Research*

Dated: December 27, 2007

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

I.    NATURE AND STAGE OF THE PROCEEDINGS. ............................................1

II.   SUMMARY OF ARGUMENTS. ..........................................................................2

III.  STATEMENT OF FACTS AND BACKGROUND. .............................................3

IV.   ARGUMENT. ........................................................................................................6

      A.    ARIAD and the Institutions Provided the Allegedly Withheld
            Material to the PTO Prior to a Final Office Action. ..................................7

      B.    The Allegedly Withheld Testimony is Immaterial to the
            Reexamination. ...........................................................................................8

      C.    Nothing in the Proposed Allegations Reflects an Intent by ARIAD
            and the Institutions to Defraud the PTO. ..................................................11

      D.    Amgen's Motion Otherwise Fails to Justify the Relief It Seeks................12

V.    CONCLUSION......................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions,
  482 F.3d 1347 (Fed. Cir. 2007)................................................................. 12

Fraser v. Nationwide Mut. Ins. Co.,
  352 F.3d 107 (3d Cir. 2003)....................................................................... 7

Glaxo Inc. v. Novopharm Ltd.,
  52 F.3d 1043 (Fed. Cir. 1995).................................................................... 7

Inline Connection Corp. v. AOL Time Warner Inc.,
  237 F.R.D. 361 (D. Del. 2006).................................................................. 12

Jewett v. IDT Corp.,
  No. 04-1454, 2007 WL 2688932 (D.N.J. Sept. 11, 2007) ........................... 12

Kanter v. Barella,
  489 F.3d 170 (3d Cir. 2007).................................................................... 7, 11

Mallinckrodt, Inc. v. Masimo Corp.,
  147 Fed. Appx. 158 (Fed. Cir. 2005).......................................................... 8

Northern Telecom, Inc. v. Datapoint Corp.,
  908 F.2d 931 (Fed. Cir. 1990)................................................................... 11

Patlex Corp. v. Quigg,
  680 F. Supp. 33 (D.D.C. 1988) ............................................................... 8, 9

Scripps Clinic & Research Foundation v. Genentech, Inc.,
  927 F.2d 1565 (Fed. Cir. 1991)................................................................... 8

Total Containment, Inc. v. Environ Products, Inc.,
  921 F. Supp. 1355 (E.D. Pa. 1995), aff'd in part, vacated in part, 106
  F.3d 427, 1997 WL 16032 (Fed. Cir. Jan 17, 1997) ..................................... 9

Young v. Lumenis, Inc.,
  492 F.3d 1336 (Fed. Cir. 2007)................................................................... 7

**Statutes and Rules**

35 U.S.C. § 112.......................................................................................... 2

37 C.F.R. § 1.555 .................................................................................... 9, 11

37 C.F.R. § 1.97(h) .................................................................................................... 11

MPEP § 2258 ............................................................................................................. 9

Defendants/counterclaim-plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College, and The Whitehead Institute for Biomedical Research (collectively, "ARIAD and the Institutions") respectfully submit this memorandum in opposition to the motion submitted by plaintiffs/counterclaim-defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Ltd., and Immunex Rhode Island Corp. (collectively, "Amgen") to amend their Reply to Defendants' Amended Counterclaims.

## I.      NATURE AND STAGE OF THE PROCEEDINGS.

This case concerns United States Patent No. 6,410,516 (the "'516 patent"), which issued in 2002 and covers methods of inhibiting the expression of genes regulated by a transcription factor known as "NF-$\kappa$B." The methods disclosed by the '516 patent have enormous and wide-ranging therapeutic applications. ARIAD and the Institutions allege that Amgen, through its sales of and marketing activities for its drugs, Enbrel and Kineret, has infringed the '516 patent, thereby enjoying enormous financial gain without paying any compensation for its infringing activities.

Amgen seeks leave to amend its pleadings to add allegations of inequitable conduct based upon events supposedly related to a pending reexamination proceeding concerning the '516 patent. Specifically, Amgen seeks leave to allege that ARIAD and the Institutions engaged in inequitable conduct by not disclosing to the United States Patent and Trademark Office ("PTO") certain deposition testimony of Dr. Thomas Kadesch, an expert not retained by either party in this litigation, from an unrelated case, having nothing to do with the '516 patent, between Hoffman-La Roche ("Roche") and Amgen, to which neither ARIAD nor the Institutions are a party.

## II.    SUMMARY OF ARGUMENTS.

The proposed allegations of inequitable conduct – the alleged failure of ARIAD and the Institutions to disclose to the PTO in the reexamination Dr. Kadesch's previously sealed deposition testimony from an unrelated litigation – are untenable and Amgen's motion to amend should be denied for at least the following reasons:

1.    While Dr. Kadesch's testimony is irrelevant to the reexamination, ARIAD and the Institutions disclosed it to the PTO on December 13, 2007, before a final office action and within a day after receiving clearance under the protective order in the Roche litigation, to moot Amgen's allegations. Thus, the allegedly withheld information has been disclosed to the PTO, and Amgen's allegations of inequitable conduct fall flat.

2.    Amgen's proposed allegations are based on deposition testimony relating to whether the '516 patent satisfies the written description requirement of 35 U.S.C. § 112. However, whether the specification of the '516 patent complies with 35 U.S.C. § 112 is not a basis for reexamination. The testimony in question, therefore, is neither material to the reexamination nor could it support a claim of inequitable conduct.

3.    Nothing in Amgen's proposed amendment reflects an intent by ARIAD and the Institutions to deceive the PTO. In fact, as soon as they obtained a copy of Dr. Kadesch's testimony, ARIAD and the Institutions provided it the PTO.

4.    Amgen cannot carry its burden to show that the proposed amendment is asserted in good faith and would not result in prejudice to ARIAD and the Institutions.

### III.    STATEMENT OF FACTS AND BACKGROUND.[1]

Prior to the commencement of this case, ARIAD and the Institutions filed a lawsuit against Eli Lilly & Company ("Lilly") in the United States District Court for the District of Massachusetts, ARIAD Pharmaceuticals, Inc. v. Eli Lilly & Co., Civil Action No. 02 CV 11280 ("the Lilly case"), for infringement of the '516 patent. (Ex. A: Complaint in the Lilly case, dated June 25, 2002.) The law firm Kaye Scholer LLP ("Kaye Scholer") acts as counsel for ARIAD and the Institutions in the Lilly case.

In addition to asserting that it did not infringe the '516 patent, Lilly alleged that the patent was invalid and unenforceable. (Ex. B: Answer in the Lilly case, dated May 27, 2003.) Lilly also petitioned the PTO to reexamine the '516 patent pursuant to 35 U.S.C. § 302, arguing that many of the patent's claims "encompass[ed] numerous prior art methods employing compounds now known to necessarily modulate NF-$\kappa$B activity." (Ex. C at 1: April 4, 2005 Eli Lilly & Co. Request for Ex Parte Reexamination of Patent No. 6,410,516.)

Dr. Thomas Kadesch, a Professor of Genetics at the University of Pennsylvania School of Medicine, was among the several experts that ARIAD and the Institutions retained in the Lilly case. Dr. Kadesch submitted an expert report and offered deposition and trial testimony on issues of enablement, written description and priority date. (Ex. D: Rule 26(a)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D. from the Lilly case, dated Oct. 21, 2005.) Among other things, Dr. Kadesch testified that claims 80, 95, 144 and

---

[1] The facts set forth in this response are supported by the documents appended to the Declaration of David Greenwald, which are cited as "Ex.__". Citations to Amgen's memorandum in support of its motion for leave to amend its reply to ARIAD's and the Institutions' counterclaims are referred to as "Amgen Mem. at __". The exhibits attached to Amgen's motion are referred to as "Amgen Ex. __".

145 of the '516 patent satisfied the written description requirements of 35 U.S.C. § 112.
(Id. at 28; Ex. E at 40:1 - 48:24:  Trial Transcript from the Lilly case, dated April 27,
2006.)  After the reexamination commenced, ARIAD and the Institutions submitted
Information Disclosure Statements to the PTO containing all the reports, deposition
testimony, and trial testimony of all validity experts in the Lilly case, including Dr.
Kadesch.  (Amgen Exs. C, D.)

Following a fourteen-day trial, a jury returned a verdict in favor of ARIAD and
the Institutions.  The jury rejected Lilly's allegation's that the '516 patent was invalid and
awarded substantial damages for Lilly's infringement of the patent.  (Ex. F: Jury Verdict
entered in the Lilly case on May 4, 2006.)  On July 6, 2007, after a bench trial, the Court
entered an order rejecting Lilly's further allegations relating to the validity and
enforceability of the '516 patent.  (Ex. G: Order entered in the Lilly case on July 6,
2007.)

Subsequent to his trial testimony in the Lilly case, Dr. Kadesch appeared and was
deposed as an expert witness on behalf of Roche in another case, Amgen Inc. v. F.
Hoffmann-La Roche, Ltd., Civil Action No. 05 CV 12237 (D. Mass.) ("the Roche case").
(Ex. H: Dep. Tr. of Thomas R. Kadesch, Ph. D. from the Roche case, dated June 21,
2007.)  Neither ARIAD nor the Institutions is a party to the Roche case.

Although the Roche case has nothing to do with the '516 patent, Amgen took the
liberty (in ARIAD's and the Institutions' absence) of questioning Dr. Kadesch at his
deposition about the written description of the '516 patent and his related testimony in the
Lilly case. (Ex. H at 257-271.)  Dr. Kadesch's testimony from the Roche case, and the

alleged failure of ARIAD and the Institutions to disclose it to the PTO, is the basis for Amgen's new theory of inequitable conduct.

Pursuant to the protective order in the Roche case, counsel for Roche (Kaye Scholer) designated Dr. Kadesch's testimony as subject to review by outside counsel only. (Ex. H at 283; Ex. I ¶ 12: Protective Order from the Roche case dated Dec. 21, 2006.) Although Kaye Scholer also represents ARIAD and the Institutions in the Lilly case, it designated Dr. Kadesch's testimony under the protective order solely in its capacity as counsel for Roche. And although Amgen claims that Dr. Kadesch's testimony was designated under the protective order in the Roche case improperly, Amgen fails to reveal that it asserted the same claim before the court that presides over the Roche case, and that that court rejected it. (Amgen Ex. G at 23-25; Ex. L: Docket entry for 10/1/2007 Order denying Amgen's motion to remove the confidential designation from the June 21, 2007 deposition transcript of Thomas Kadesch from the Roche case.)

Neither ARIAD nor the Institutions learned the content of Dr. Kadesch's testimony until December 11, 2007, when, following Amgen's request for production of the testimony in this case, Roche agreed to disclose it to ARIAD and the Institutions.[2]

---

[2] Lilly filed a Motion for Relief from Judgment and for Additional Discovery in the Lilly case on October 30, 2007. (Amgen Mem. at 6.) Although outside counsel for ARIAD and the Institutions (Kaye Scholer) responded to this motion by providing copies of Dr. Kadesch's testimony from the Roche case to Lilly, ARIAD and the Institutions did not obtain the actual transcripts and never saw them because access to the testimony was limited to outside counsel only. See Ex. M: Nov. 2, 2007 letter from Patricia A. Carson to Laura P. Masurovsky; Ex. N: Nov. 5, 2007 letter from Laura P. Masurovsky to Patricia A. Carson. Moreover, Roche authorized outside counsel for ARIAD and the Institutions in this case to review Dr. Kadesch's testimony shortly before it allowed ARIAD and the Institutions to review it – but only for the purpose of understanding Amgen's claims and not for the purpose of disclosing it to ARIAD, the Institutions or the reexamination counsel, which they did not until granted permission by Roche.

Contrary to Amgen's contention, Dr. Kadesch's testimony in the Roche case does not recant his testimony in the Lilly case. In the Lilly case, Dr. Kadesch opined that "the specification of the '516 patent contains [an] adequate written description of the asserted claims", which were construed as specifically limited to cells containing NF-κB. (Ex. D at 28; Ex. J at 3: Order entered in the Lilly case on March 3, 2004.) Asked about that testimony and the '516 patent in the Roche case, Dr. Kadesch stated simply that his understanding of the necessity for claim language has evolved and that he does not believe that the claims of the '516 patent have adequate written descriptive support for all eukaryotic cells (i.e., cells with nuclei) because NF-κB (to his knowledge) is not present in yeast cells, which like all other plant and animal cells, are eukaryotic. (Ex. H at 268:17 - 270:16.)

While Dr. Kadesch's testimony is irrelevant to the reexamination proceedings, ARIAD and the Institutions disclosed it to the PTO within one day after receiving permission from Roche to do so. (Ex. K: Dec. 13, 2007 Letter from Pat Carson to David Greenwald; Ex. O at 4: Dec. 13, 2007 Information Disclosure Statement filed by ARIAD.) They did so to put an end to Amgen's misguided allegations of inequitable conduct. A final office action in the reexamination has yet to occur.[3]

## IV.    ARGUMENT.

Leave to amend should be denied where: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the

---

[3] Amgen represents that it met and conferred with ARIAD and the Institutions in advance of filing its motion to amend. In truth, Amgen afforded ARIAD and the Institutions less than 24 hours to evaluate the proposed amendment, after ARIAD informed Amgen that it would require more time.

amendment would prejudice the other party". <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 116-17 (3d Cir. 2003). "Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend." <u>Kanter v. Barella</u>, 489 F.3d 170, 181 (3d Cir. 2007).

Amgen cannot carry its burden to justify the proposed allegations of inequitable conduct. To establish inequitable conduct based on failure to disclose material information to the PTO, an accused infringer must show by clear and convincing evidence that the alleged nondisclosure occurred, that the nondisclosure was material and that the patent applicant acted with the intent to deceive the PTO. <u>See</u> <u>Glaxo Inc. v. Novopharm Ltd.</u>, 52 F.3d 1043, 1048 (Fed. Cir. 1995). As is discussed below, Amgen's proposed defense of inequitable conduct fails on all three of these elements. Amgen's motion to amend should therefore be denied.

A.    <u>ARIAD and the Institutions Provided the Allegedly Withheld Material to the PTO Prior to a Final Office Action.</u>

As stated, Amgen seeks leave to pursue allegations of inequitable conduct based on the alleged failure of ARIAD and the Institutions to disclose to the PTO in the pending reexamination Dr. Kadesch's deposition testimony from an unrelated case. However, ARIAD and the Institutions have now provided Dr. Kadesch's testimony to the PTO, prior to a final office action in the reexamination. Where, as here, a party accused of withholding information from the PTO discloses that information to the PTO prior to a final office action, there can be no inequitable conduct for failure to disclose. That is true even where the disclosure occurs after allegations of inequitable conduct based on nondisclosure are raised in a parallel litigation. <u>See</u> <u>Young v. Lumenis, Inc.</u>, 492 F.3d 1336, 1349 (Fed. Cir. 2007) (holding that there was no "'failure to disclose' material

information to the PTO sufficient to constitute inequitable conduct when that information was disclosed before the examiner's final Office Action, albeit only after the issue of disclosure was raised in a parallel district court action.").[4] And it is true, a fortiori, where, as here, the disclosure occurs so promptly after the patentee under an alleged duty to disclose receives access to and knowledge of the information in question. Hence, Amgen's allegations of inequitable conduct are untenable as a matter of law, and thus the amendment is futile.

B.    The Allegedly Withheld Testimony is Immaterial to the Reexamination.

Even if ARIAD and the Institutions had not provided Dr. Kadesch's testimony to the PTO, the nondisclosure of that testimony would have been immaterial to the reexamination and thus could not support a claim for inequitable conduct. See Mallinckrodt, Inc. v. Masimo Corp., 147 Fed. Appx. 158, 186 (Fed. Cir. 2005) (holding that where the allegedly withheld information is immaterial to patentability, a party cannot be held to deceive the PTO for failing to disclose this information).

As stated, the allegedly omitted testimony concerns the written description requirement, which is not an issue the PTO may address during a reexamination. A reexamination proceeding is generally limited to issues of patentability based on prior art. See, e.g., Patlex Corp. v. Quigg, 680 F. Supp. 33, 37 (D.D.C. 1988). The written description requirement can only be addressed in a reexamination in circumstances not

---

[4] This is true because when a reference is before the examiner, "it is not controlling how [the reference] came to the examiner's attention." Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1582 (Fed. Cir. 1991).

applicable here.[5] Thus, testimony about whether the '516 patent satisfies the written description requirement is immaterial and even if it were withheld – which it has not been – could not support a finding of inequitable conduct. Id. (holding that "the reexamination statute does not contemplate a 'reexamination' of the sufficiency of a disclosure"); Total Containment, Inc. v. Environ Products, Inc., 921 F. Supp. 1355, 1374 (E.D. Pa. 1995) (holding that "information submitted by the plaintiff [on public sale and use] was properly rejected by the PTO as 'inappropriate' and, therefore, is not material to the reexamination"), aff'd in part, vacated in part, 106 F.3d 427 (Table), 1997 WL 16032 (Fed. Cir. Jan 17, 1997).[6]

Amgen argues that Dr. Kadesch's testimony is material because it is inconsistent with his testimony in the Lilly case, which ARIAD and the Institutions submitted to the PTO as part of two Information Disclosure Statements. (Amgen Mem. at 4, 9-10, citing 37 C.F.R. § 1.555.) According to Amgen, this supposed inconsistency made Dr. Kadesch's later testimony material under 37 C.F.R. § 1.555. 37 C.F.R. § 1.555 provides that "information is material to patentability in a reexamination proceeding when it is not

---

[5] Written specification issues may be considered on a reexamination where the patentee amends the patent to add a new claim which contains "a limitation not found in the original patent". MPEP § 2258. ARIAD and the Institutions have not amended any of the claims of the '516 patent at issue in the Lilly case nor in this case, and thus no written specification issues would be under consideration by the PTO concerning these claims.

[6] See also MPEP § 2258 (providing that on reexaminations, "[r]ejections will not be based on matters other than patents or printed publications, such as public use or sale, inventorship, 35 U.S.C. 101, fraud, etc. (citations omitted). A rejection on prior public use or sale, insufficiency of disclosure, etc., cannot be made even if it relies on a prior art patent or printed publication."); 37 C.F.R. § 1.552 (providing that "Claims in an ex parte reexamination proceeding will be examined on the basis of patents or printed publications" and "issues other than those indicated . . . will not be resolved in a reexamination proceeding").

cumulative to information of record or being made of record in the reexamination proceeding, and . . . (2) It refutes, or is inconsistent with, a position the patent owner takes in: . . . (ii) Asserting an argument of patentability."

However, Dr. Kadesch's testimony from the Roche case is not inconsistent with his testimony from the Lilly case. In the Lilly case, Dr. Kadesch opined that "the specification of the '516 patent contains [an] adequate written description of the asserted claims", which were construed as specifically limited to cells containing NF-$\kappa$B. (Ex. D at 28; Ex. J at 3.) Asked about that testimony and the '516 patent in the Roche case, Dr. Kadesch stated simply that his understanding of the necessity for claim language has evolved and that he does not believe that the claims of the '516 patent have adequate written descriptive support for all eukaryotic cells regardless of whether they contained NF-$\kappa$B, which was not the specific claim construction he opined on in the Lilly case. (Ex. H at 268:17 - 270:16.) Therefore, his testimony on written description in the two cases is not inconsistent: the '516 patent has adequate written description for cells as limited in the claims asserted and as construed in the Lilly litigation, but not for all eukaryotic cells (as he testified to in Roche) because not all eukaryotic cells contain NF-$\kappa$B.

But even if Dr. Kadesch's testimony in Roche were inconsistent with his testimony in Lilly, it would not render the Roche testimony material to the reexamination because it is uncontested that ARIAD and the Institutions did not cite Dr. Kadesch's testimony from Lilly in support of an argument of patentability. 37 C.F.R. 1.555, upon which Amgen relies, is implicated only where the patentee omits information that is inconsistent with a "position the patent owner takes in . . . [a]sserting an argument of

patentability". ARIAD and the Institutions did not submit Dr. Kadesch's testimony from

Lilly to support any arguments on patentability, and Amgen makes no claim to the

contrary. Rather, ARIAD and the Institutions submitted the testimony in question as part

of two Information Disclosure Statements, which is not equivalent to "[a]sserting an

argument of patentability". See 37 C.F.R. § 1.97(h) (providing that the "filing of an

information disclosure statement shall not be construed to be an admission that the

information cited in the statement is, or is considered to be, material to patentability as

defined in § 1.56.") Therefore, ARIAD and the Institutions were not required under 37

C.F.R. § 1.555 to disclose Dr. Kadesch's testimony in the Roche case even if it did

contradict his testimony in the Lilly case, which it does not. Accordingly, any

amendments to allege inequitable conduct based on ARIAD's or the Institutions'

purported failure to disclose Dr. Kadesch's Roche testimony would not state a viable

claim for inequitable conduct, and would be futile. See Kanter, 489 F.3d at 181.

> C. Nothing in the Proposed Allegations Reflects an Intent by ARIAD and the
> Institutions to Defraud the PTO.

Even if (contrary to fact) ARIAD and the Institutions had not provided Dr.

Kadesch's testimony to the PTO and the nondisclosure of that testimony were material,

Amgen's allegations of inequitable conduct would still fail. Nothing in the proposed

allegations reflects an intent by ARIAD and the Institutions to defraud the PTO.

The Federal Circuit has held that "[g]iven the ease with which a relatively routine

act of patent prosecution can be portrayed as intended to mislead or deceive, clear and

convincing evidence of conduct sufficient to support an inference of culpable intent is

required." Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 939 (Fed. Cir.

1990). Furthermore, when asserting claims of inequitable conduct, allegations of

- 11 -

inequitable conduct "must be pled with particularity." <u>Cent. Admixture Pharmacy Servs.,</u> <u>Inc. v. Advanced Cardiac Solutions</u>, 482 F.3d 1347, 1356 (Fed. Cir. 2007); <u>see also</u> <u>Inline</u> <u>Connection Corp. v. AOL Time Warner Inc.</u>, 237 F.R.D. 361, 366-67 (D. Del. 2006) (Thynge, M.J.) ("The court recognizes that defendants must plead inequitable conduct with particularity under Rule 9(b).").

Contrary to Amgen's assertions, which were rejected by the Court in the Roche case, ARIAD and the Institutions took no steps to keep Dr. Kadesch's testimony from the PTO. As soon as they obtained a copy of the testimony, which Amgen solicited in a case to which ARIAD and the Institutions are not parties and in which a protective order governs the use and disclosure of confidential information, ARIAD and the Institutions provided a copy to the PTO. As stated, ARIAD and the Institutions did this not because Dr. Kadesch's testimony is relevant to the reexamination – it is not – but to put an end to Amgen's misguided allegations of inequitable conduct, which are much more about Amgen seeking to influence the reexamination (an ex parte proceeding) than the good-faith pursuit of a legitimate defense. Thus, Amgen's proposed amendment fails properly to plead an intent to deceive on the part of ARIAD and the Institutions.

D.    <u>Amgen's Motion Otherwise Fails to Justify the Relief It Seeks.</u>

Finally, Amgen cannot carry its burden to show that the proposed amendment is asserted in good faith. <u>See</u> <u>Jewett v. IDT Corp.</u>, No. 04-1454, 2007 WL 2688932, at *5 (D.N.J. Sept. 11, 2007) (denying leave to amend in part where plaintiff failed to show good faith). To the contrary, fair review of the relevant chronology demonstrates that Amgen deliberately procured the allegedly "recanting" testimony in the Roche litigation for the sole, transparent purpose of generating a theory of inequitable conduct in this

- 12 -

case. To be sure, Amgen is entitled to assert and to procure expert testimony (from experts who, unlike Dr. Kadesch, submit a report in this action) to support any invalidity defense it may choose to raise, including a defense under 35 U.S.C. § 112.[7] But to say that is not to say that Amgen acted in good faith when, under the pretext of a deposition in an unrelated case to which ARIAD was not a party, Amgen procured testimony for the sole purpose of asserting that ARIAD (who initially lacked any access to that testimony) had a duty to disclose that testimony to the PTO.

That Amgen continues to press its theory, even after ARIAD disclosed the testimony within a day of receiving permission from Roche to do so, underscores the artificial, contrived nature of Amgen's theory. Amgen's continued maintenance of this defense confirms that Amgen is asserting it not because it sincerely believes that ARIAD is attempting to conceal material information from the PTO, but solely out of its tactical interest in increasing the raw number of (makeweight) defenses to enforcement of the '516 patent that it may assert.

---

[7] However, because Dr. Kadesch has not been retained in this action, ARIAD will object to the admissibility of his testimony from the Roche case under Fed. R. Evid. 402, 403, 702, and 802.

## V.     CONCLUSION.

For all of the foregoing reasons, Amgen's motion to amend must be denied in its

entirety.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (#2114)
John G. Day (#2403)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Counsel for ARIAD Pharmaceuticals, Inc.,*
*Massachusetts Institute of Technology, The*
*President and Fellows of Harvard College, and*
*The Whitehead Institute for Biomedical Research*

*Of Counsel*

Morgan Chu
David I. Gindler
Perry Goldberg
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Ángeles, CA 90067
(310) 277-1010

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: December 27, 2007