# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, | |
| Plaintiffs, | C.A. No. 06-259-MPT |
| v. | |
| ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | |
| Defendants. | |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, | **REDACTED PUBLIC VERSION** |
| Counterclaim-Plaintiffs, | |
| v. | |
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, | |
| Counterclaim-Defendants. | |

## DEFENDANTS-COUNTERCLAIM-PLAINTIFFS ARIAD'S AND THE INSTITUTIONS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO AMEND COUNTERCLAIMS

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

(212) 474-1000

Dated: February 8, 2008

ASHBY & GEDDES
Steven J. Balick (I.D. #2403)
John G. Day (I.D. #2114)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College and The Whitehead Institute for Biomedical Research*

## TABLE OF CONTENTS

Page

Table of Authorities ................................................................................................ ii

I.   Nature and Stage of the Proceedings. ..................................................... 1

II.  Summary of Argument ............................................................................ 2

III. Background .............................................................................................. 3

     A.   ARIAD's Theory of Infringement Under Section 271(f) ............. 3

     B.   Conformation of Counterclaim to Reflect Recent Litigation
          Developments ................................................................................. 9

     C.   ARIAD's Attempts to Resolve This Motion Consensually ........... 9

IV.  Argument ................................................................................................. 10

     A.   ARIAD Has Pleaded Infringement Under Section 271(f) ............ 10

     B.   ARIAD Should Be Permitted to Amend Its Pleading Pursuant to
          Federal Rule of Civil Procedure 15(a) ......................................... 11

          1.   ARIAD's Proposed Amendment Will Not Prejudice Amgen ........ 12

          2.   ARIAD's Proposed Amendment Is Not Brought in Bad
               Faith or After Undue Delay.. ........................................... 14

          3.   ARIAD's Proposed Amendment Is Not Futile ............... 15

          4.   Granting the Motion Serves Justice ............................... 19

     C.   ARIAD Has Met the Rule 16(b) Good Cause Requirement ..................... 19

V.   Conclusion ............................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) ............................................ 12

*Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006) .............................................. 12-13, 14

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    418 F. Supp. 2d 1021 (S.D. Ind. 2006) .......................................... 3, 16-17, 19

*CC Investors Corp. v. Raytheon Co.*, No. Civ. A. 03-114-JJF,
    2005 WL 81591 (D. Del. Jan. 7, 2005) ................................................. 12

*DiCicco v. Willow Grove Bank*, 308 F. Supp. 2d 528 (E.D. Pa. 2004) ................ 12, 15, 19

*Dole v. Arco Chem. Co.*, 921 F.2d 484 (3d Cir. 1990) ................................... 12, 13

*Eolas Techs. v. Microsoft Corp.*, 399 F.3d 1325 (Fed. Cir. 2005).................... 16

*Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693 (Fed. Cir. 1990) ....................... 10

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790
    (Fed. Cir. 2000) .......................................................................... 11

*Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000) ........................................... 12, 15

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    425 F.3d 1366 (Fed. Cir. 2005)............................................................*passim*


**Statutes and Rules**

35 U.S.C. § 271 ..........................................................................................*passim*

Fed. R. Civ. P. 13 ...................................................................................... 12

Fed. R. Civ. P. 15 ...................................................................................11-12, 19

Fed. R. Civ. P. 16 ...................................................................................... 19

Defendants-counterclaim-plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, The President and Fellows of Harvard College and The Whitehead Institute for Biomedical Research (collectively, "ARIAD") respectfully submit this memorandum of law in support of their motion to amend their counterclaims.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case concerns United States Patent No. 6,410,516 (the "'516 patent"), which issued in 2002 and covers methods of inhibiting the expression of genes whose transcription is regulated by NF-$\kappa$B.  The process of inhibiting gene expression through regulation of NF-$\kappa$B has enormous and wide-ranging therapeutic effects.  ARIAD alleges that Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Ltd. and Immunex Rhode Island Corporation (collectively, "Amgen"), through the sale of and marketing activities for the drug, Enbrel, have indirectly infringed the '516 patent.

Unlike many provisions of the law of patent infringement, which are restricted to activities concerning products destined for U.S. markets, 35 U.S.C. § 271(f) ("Section 271(f)") expressly extends liability for patent infringement to certain activities reaching "outside of the United States," such as Amgen's supply of Enbrel from the United States to markets abroad.  35 U.S.C. § 271(f).  ARIAD believes that its counterclaims state a claim for infringement (and thus damages) not only under Section 271(b) (inducing infringement) and Section 271(c) (contributory infringement), which Amgen has never disputed, but also under Section 271(f), which Amgen has contested.  ARIAD respectfully requests that the Court grant ARIAD's motion to amend its Answer to Amended Complaint, Amended Counterclaim and Demand for Jury Trial

(the "Counterclaim") to make clear that its pleadings encompass its theory of infringement under Section 271(f).

Separately, ARIAD seeks to amend its Counterclaim to reflect certain recent developments: that ARIAD has dismissed without prejudice its counterclaims against Wyeth, that ARIAD is no longer asserting counterclaims for infringement with respect to Amgen's Kineret product, and that ARIAD has withdrawn its claims against Amgen for infringement of the '090 and '374 Patents. Amgen has consented to these latter amendments.

## II.    SUMMARY OF ARGUMENT

1.    ARIAD's existing pleadings, as drafted, encompass its theory of infringement under Section 271(f). (*See infra* Section IV.A.) ARIAD seeks to amend its pleadings solely to make that theory explicit, and to obviate Amgen's non-meritorious objection that the original Counterclaim does not encompass such a theory.

2.    The proposed amendment will not prejudice Amgen. A determination with respect to Section 271(f) is necessary to adjudicate Amgen's own declaratory judgment claims, and therefore cannot impair Amgen's ability to "present its case." (*See infra* Section IV.B.1.) Moreover, a determination of infringement under Section 271(f) represents, as a practical matter, solely an additional theory of damages. Hence, allowing ARIAD to amend its complaint will not impair Amgen's "ability to defend against the suit," or likely alter in any way Amgen's liability defenses. (*See id.*) Moreover, ARIAD seeks no additional discovery corresponding to the proposed amendment. Although ARIAD believes that Amgen has improperly objected to several outstanding discovery requests related to Section 271(f), ARIAD is willing to forgo

enforcement of compliance with those outstanding discovery requests in an effort to facilitate the resolution of its counterclaims.

3.    This motion is not brought in bad faith or after undue delay. ARIAD has openly pursued discovery related to infringement and damages under Section 271(f), and Amgen has had no difficulty understanding the purpose for which ARIAD pursued that discovery. (*See infra* Section IV.B.2.)  The parties' discussions regarding pleadings under Section 271(f) have been ongoing. (*See id.*)

4.    The amendment with respect to Section 271(f) is not futile because "[Section] 271(f) governs method/process inventions," *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1380 (Fed. Cir. 2005), including methods of treating diseases in patients located abroad, *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 418 F. Supp. 2d 1021 (S.D. Ind. 2006), such as the inventions of the '516 patent. (*See infra* Section IV.B.3.)

5.    Granting the motion serves justice and is supported by good cause. (*See infra* Section IV.B.4.)

## III.    BACKGROUND[1]

### A.    ARIAD's Theory of Infringement Under Section 271(f)

Although many provisions of patent law target activities reaching U.S. markets exclusively, such as sales within or importation into the United States, *see, e.g.*, 35 U.S.C. § 271(a) & (c), Section 271(f) expressly extends infringement liability to certain activities reaching "outside of the United States," such as the supply "in or from

---

[1] The facts set forth herein are supported by the documents cited as "Ex.___" appended to the Declaration of David Greenwald filed concurrently herewith.

the United States" of a "component" or "components" of a patented invention for

combination abroad.  35 U.S.C. § 271(f).  Section 271(f) provides that

> (1) [w]hoever without authority supplies or causes to be supplied in or
> from the United States all or a substantial portion of the components of a
> patented invention, where such components are uncombined in whole or
> in part, in such manner as to actively induce the combination of such
> components outside of the United States in a manner that would infringe
> the patent if such combination occurred within the United States, shall be
> liable as an infringer[; and]
>
> (2) [w]hoever without authority supplies or causes to be supplied in or
> from the United States any component of a patented invention that is
> especially made or especially adapted for use in the invention and not a
> staple article or commodity of commerce suitable for substantial
> noninfringing use, where such component is uncombined in whole or in
> part, knowing that such component is so made or adapted and intending
> that such component will be combined outside of the United States in a
> manner that would infringe the patent if such combination occurred within
> the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(1)-(2).  The two subsections of 271(f) track, respectively and

in the foreign context, the provisions imposing liability for indirect domestic

infringement under 35 U.S.C. § 271(b) (inducing infringement within the U.S.)

and § 271(c) (contributory infringement within the U.S.).  Therefore if Amgen has

"supplie[d] or cause[d] to be supplied . . . in or from the United States" a

"component" or "components" of the method claims of the '516 patent for

combination outside of the United States such that their combination would

directly infringe the patent if it occurred within the U.S. — as ARIAD believes

Amgen has done by supplying Enbrel to distributors and patients abroad — such

activity would constitute actionable infringement under Section 271(f).

     In April 2006, Amgen filed a complaint against ARIAD seeking a

declaratory judgment that Amgen does not infringe any valid claim of the '516 patent

based on "any activities" related to Enbrel. (*See* Compl. at "Prayer for Relief" ¶ B.) To this day, Amgen has continued to seek the same broad declaration of noninfringement. (*See* Second Am. Compl. ¶ B.)[2] Because Amgen's complaints do not seek to preempt potential infringement claims brought under specific subsections of 35 U.S.C. § 271, but rather seek a declaration of noninfringement "based on any activities related to Enbrel" (*see id.*), ARIAD believed, as it continues to believe, that Amgen's own pleadings necessarily implicate Section 271(f).

On April 13, 2006, ARIAD sought a broad declaration of infringement by Amgen, alleging that, "in violation of 35 U.S.C. § 271, [the Amgen Entities] have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing Enbrel® (etanercept) without authority or license from ARIAD and the Institutions." (Counterclaim ¶ 18.) Like Amgen's own pleadings, the counterclaims did not reference specific subsections of Section 271, and were not intended to be limited to particular subsections.

During fact discovery, consistent with what it believed to be the scope of the parties' respective claims for infringement/noninfringement, ARIAD pursued discovery related to Section 271(f), including through depositions, interrogatories and discovery requests. For example, on May 14, 2007, ARIAD served its First Set of Requests for Admission on Amgen, and ARIAD stated explicitly that Request No. 141 "relates to possible infringement under Section 271(f)." (*See* ARIAD's July 31, 2007, Ltr.

---

[2] *See also id.* ¶ 25 ("The Amgen Entities seek a judicial declaration that they do not directly or indirectly infringe any valid claim of the '516 patent through any activities related to the Enbrel® . . . .").

at 6-7, attached as Ex. A.)  Similarly, on October 8, 2007, ARIAD served its fifth set of

requests for production, which included requests related to Enbrel "supplied from the

United States" that is "used or distributed by anyone outside of the United States"

(ARIAD's Fifth Set of Requests for Production of Documents and Things to the Amgen

Entities, excerpted and attached as Ex. B, Nos. 181, 182, 193 & 194; *see also id.* Nos.

183-91 (relating to sales abroad)),[3] and on October 19, 2007, ARIAD served an

interrogatory asking Amgen to "describe in detail the process through which Enbrel . . .

goes from being manufactured or handled in the United States to being distributed and/or

sold to patients outside of the United States" (ARIAD's Third Set of Interrogatories to

Amgen, excerpted and attached as Ex. D, No. 27).[4]  Those requests and interrogatories

unambiguously implicated Section 271(f).[5]


**REDACTED**


---

[3] Amgen objected to those requests, limiting its production to documents relating to the sale of Enbrel within the United States.  (*See, e.g.*, Amgen's Responses to ARIAD's Fifth Set of Requests, excerpted and attached as Ex. C, Nos. 181-191, 193-194.)

[4] Amgen objected on the grounds that the interrogatory "seeks discovery . . . not related to any claim or defense in this matter."  (Amgen's Responses to ARIAD's Third Set of Interrogatories, excerpted and attached as Ex. E, No. 27.)

[5] *See* Ex. A, at 6-7 (stating explicitly that Request No. 141 of ARIAD's First Set of Requests for Admission "relates to possible infringement under Section 271(f)"); *see also* Amgen's Dec. 18, 2007 Ltr. (denying ARIAD that discovery because "ARIAD has not pled a claim for infringement under § 271(f)," and "under § 271(f) ARIAD cannot collect damages"), attached as Ex. F.

**REDACTED**

Throughout fact discovery, through its deposition questions, requests for admission, interrogatories and document requests, ARIAD made it unambiguously clear that it was pursuing discovery related to infringement under Section 271(f). And, to be sure, Amgen had no difficulty understanding the purpose for which ARIAD was pursuing

---

6

**REDACTED**

that discovery, as evidenced by Amgen's attempts to run the clock on ARIAD's efforts to develop a full evidentiary record before the close of fact discovery.  (*See* Ex. F, at 1.)

Because Amgen initially objected to ARIAD's production requests related to Section 271(f) (*see supra* 6 n. 3), ARIAD requested that Amgen comply with its discovery obligations.  (*See* ARIAD's Dec. 3, 2007 Ltr., attached as Ex. K.)  After initially ignoring ARIAD's inquiry (*see* ARIAD's Dec. 6, 2007 Ltr., attached as Ex. L), counsel for Amgen notified ARIAD on December 7, 2007, that it would need additional time to respond, suggesting that Amgen was involved in some sort of "investigation" that was being "expedit[ed] as much as possible," after which it would be "more than willing" to meet and confer:

> We are investigating the issues raised in [ARIAD's] letter from earlier this week and intend to respond next week — we are expediting our investigation as much as possible.  After we have investigated this issue and responded to your letter, we would be more than willing to meet and confer with you on this issue.

(Amgen's Dec. 7, 2007 E-mail, attached as Ex. M.)

Amgen finally responded on December 18, 2007, just three days before the close of fact discovery, claiming that ARIAD was not entitled to discovery with respect to infringement under Section 271(f) because "ARIAD has not pled a claim for infringement under Section 271(f)," and "under Section 271(f) ARIAD cannot collect damages."  (Ex. F.)

In a letter dated December 26, 2007, ARIAD responded to Amgen's letter, explaining that ARIAD has properly pleaded infringement under Section 271(f), protesting Amgen's decision to withhold discovery, and seeking "to meet and confer as soon as possible" in order to "seek the Court's assistance in a timely manner."  (ARIAD's

Dec. 26, 2007 Ltr., attached as Ex. N.)  Nearly three weeks later, on January 14, 2008,

Amgen responded to ARIAD's letter, merely reiterating, in a single paragraph, its

purported belief that ARIAD had not properly pleaded infringement under Section 271(f)

and offering to meet and confer.  (Amgen's Jan. 14, 2008 Ltr., attached as Ex. O.)

### B.    Conformation of Counterclaim to Reflect Recent Litigation Developments

Since the filing of the Counterclaim, ARIAD and Wyeth have stipulated to

dismiss Wyeth from the Counterclaim without prejudice.  The Court signed and entered

that stipulation on December 12, 2007.  Separately, ARIAD has decided no longer to

assert that Amgen's Kineret product infringes the '516 Patent, and ARIAD has

withdrawn its claims against Amgen for infringement of the '090 and '374 Patents.

ARIAD seeks to conform its counterclaims to those recent litigation developments.

### C.    ARIAD's Attempts to Resolve This Motion Consensually

ARIAD explained to Amgen the nature of its proposed amendments to the

Counterclaim on January 28 and 29, and sent Amgen a draft of the amended

Counterclaim on January 31.  At that time, ARIAD requested that Amgen inform it

whether it was willing to consent to the amendments by February 1.  On February 4,

Amgen informed ARIAD that it was not opposed to the amendments reflecting the recent

developments regarding Wyeth, the Assay Patents and Kineret, but that it would not

consent to ARIAD's amendment making clear that ARIAD pleads infringement under

Section 271(f).  (Amgen's Feb. 4, 2008 E-mail, attached as Ex. P.)  On February 7,

ARIAD informed Amgen that it would file this motion.  (Amgen's Feb. 7, 2008 E-mail,

attached as Ex. Q.)

- 9 -

## IV.    ARGUMENT

### A.    ARIAD Has Pleaded Infringement Under Section 271(f).

In response to a very broad request for declaratory relief that Amgen does not infringe the '516 Patent through "any" of its activities related to Enbrel, ARIAD sought a similarly broad declaration of infringement that the "Amgen Entities . . . have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing Enbrel . . . ." (Counterclaim ¶ 19.) ARIAD respectfully submits that, in view of Amgen's own extraordinarily broad request for declaratory relief, Amgen's interpretation of the Counterclaim — as expressly carving out conduct that would amount to a violation of Section 271(f) — does not withstand scrutiny. Nothing in Amgen's otherwise remarkably broad complaint reflects an intent not to seek a declaration that its activities related to sales/shipment of Enbrel abroad are lawful.

In correspondence with ARIAD, Amgen has sought to recast ARIAD's infringement allegations for indirect infringement as relating only to subsections (b) and (c) of Section 271. (*See* Ex. F.) Amgen's interpretation of ARIAD's pleadings is incorrect.[7] The Counterclaim does not allege a specific location where direct infringing activities occur (whether inside or outside the United States), and thus it does not disclaim theories of infringement related to domestic activities that may lead to infringement abroad. Similarly, the reference to "induc[ed] infringement" in ARIAD's

---

[7] While Amgen appears to fault ARIAD for not referencing subsection (f) of Section 271 in the pleading setting forth its counterclaims, neither party's pleadings reference particular subsections of Section 271, nor is there any requirement that they do so. *See Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693, 695-96 (Fed. Cir. 1990).

pleading does not disclaim a theory of infringement under Section 271(f); indeed, paragraph (1) of Section 271(f) expressly incorporates the inducement element. *See* 35 U.S.C. § 271(f)(1). Likewise, the reference to "contributor[y] infringing" does not disclaim a theory of infringement under Section 271(f) because, as noted, paragraph (2) thereof tracks subsection (c) of Section 271.

In sum, Amgen has clearly been on notice since long ago that a theory of infringement under Section 271(f) was at issue in this litigation. *See Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) (noting that "a patentee need only plead facts sufficient to place the alleged infringer on notice" such that "an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself"). ARIAD thus respectfully requests that the Court grant its motion and reject Amgen's assertion that claims under Section 271(f) were somehow carved out from the parties' pleadings.

**B.    ARIAD Should Be Permitted to Amend Its Pleading Pursuant to Federal Rule of Civil Procedure 15(a).**

Although ARIAD has pleaded infringement under Section 271(f), ARIAD respectfully requests to amend its Counterclaim to make clear that its pleadings encompass that theory. At the same time, ARIAD separately requests leave to amend its counterclaim to reflect the recent developments that ARIAD has dismissed without prejudice its counterclaims against Wyeth, that ARIAD is no longer asserting that Amgen's sales of Kineret infringe the '516 Patent, and that ARIAD has withdrawn its claims against Amgen for infringement of the '090 and '374 Patents.

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading with leave from the court, which a court "should freely give . . . when justice so

requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has explained that leave to amend should be granted "whenever there has not been undue delay, bad faith on the part of the plaintiff, or prejudice to the defendant as a result of the delay." *Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). The court could justify a denial of leave to amend on the grounds of "futility," where "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* "Accordingly, the court must accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them, and deny a motion to amend only where it is certain that no relief could be granted under any set of facts that could be proved." *DiCicco v. Willow Grove Bank*, 308 F. Supp. 2d 528, 532 (E.D. Pa. 2004) (quotations omitted).[8]

### 1.    ARIAD's Proposed Amendment Will Not Prejudice Amgen.

A party suffers prejudice within the meaning of Federal Rule of Civil Procedure 15(a) where "its ability to present its case would be seriously impaired were amendment allowed." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 206 (3d Cir. 2006) (finding that leave to amend did not prejudice non-moving party because it did not impair non-moving party's

---

[8] Although it is ARIAD's position that it is amending a pleading pursuant to Federal Rule of Civil Procedure 15(a), not adding a counterclaim pursuant to Rule 13(f), the decision "to grant leave to amend under Rule 13(f) is governed by a standard similar to that which governs leave to amend under Rule 15(a)." *CC Investors Corp. v. Raytheon Co.*, No. Civ. A. 03-114-JJF, 2005 WL 81591, at *2 (D. Del. Jan. 7, 2005). "In this regard, leave to amend [pursuant to Rule 13(f)] should be freely given, absent undue prejudice, bad faith, dilatory motives, undue delay or futility of the amendment." *Id.* (citation omitted).

"ability to defend against the suit" or unfairly disadvantage the non-moving party's opportunity to present facts or evidence).

No prejudice to Amgen would result from allowing ARIAD to clarify its counterclaims. On its face, Amgen's complaint seeks a declaration of noninfringement that Amgen "do[es] not directly or indirectly infringe any valid claim of the '516 patent through *any* activities related to the Enbrel and/or Kineret products". (Compl. at "Prayer for Relief" ¶ B (emphasis added); Am. Compl. at "Prayer for Relief" ¶ B.) A determination with respect to Section 271(f), therefore, is a necessary component of Amgen "present[ing] its case" with respect to its own declaratory judgment claims. *Dole*, 921 F.2d at 488. Amgen could thus hardly be surprised, let alone prejudiced, that ARIAD should seek to prove that its supply of Enbrel outside of the United States makes Amgen liable under Section 271(f). Therefore, allowing ARIAD to clarify that it pleads infringement under Section 271(f) would not impair — let alone seriously impair — Amgen's ability to present its case.

Moreover, a determination of infringement/noninfringement under Section 271(f) represents primarily a theory of damages,[9] insofar as the theory of direct infringement liability underlying both ARIAD's pleadings under Section 271( b), (c) and under 271(f) are the same: the administration of Enbrel to patients.[10] Allowing ARIAD to amend its complaint will not impair Amgen's "ability to defend against the suit,"

---

[9] *Cf.* Amgen's Jan. 14, 2008 Ltr. (Ex. O) at 1 (asking ARIAD to "outline [its] argument about whether Defendants have a claim for damages under § 271(f)").

[10] *See, e.g.*, Amgen's Dec. 18, 2008 Ltr. (Ex. F) at 2-3 (arguing the validity of ARIAD's legal theory).

*Arthur*, 434 F.3d at 206, or likely alter in any way Amgen's defense to liability. Consequently, granting ARIAD's motion to amend would not prejudice Amgen.

Further underscoring the lack of prejudice to Amgen from the proposed amendment is that ARIAD seeks no additional discovery with respect to Section 271(f). To the extent that allowing ARIAD to amend the complaint requires Amgen to meet outstanding discovery obligations, such burden is not "prejudice" as defined by this Circuit and is of Amgen's own making. As noted above, the broad declaratory judgment Amgen itself seeks plainly implicates Section 271(f), and for this reason alone Amgen should not have withheld evidence related to foreign sales (*see* Ex. N). Nevertheless, in an effort to facilitate the resolution of its counterclaims, ARIAD is willing to forgo enforcement of compliance with its outstanding discovery requests related to Section 271(f).

2.    ARIAD's Proposed Amendment Is Not Brought in Bad Faith or After Undue Delay.

Consistent with ARIAD's position that infringement/noninfringement under Section 271(f) was stated within the pleadings of both parties, ARIAD has openly pursued discovery related to foreign sales of Enbrel, including through depositions (*see* Exs. G, H & I), requests for admission (*see* Ex. A, at 6-7), interrogatories (*see, e.g.*, Ex. D at No. 27), and discovery requests (*see, e.g.*, Ex. B at Nos. 181-91, 193-94). Amgen has clearly understood ARIAD's position. (*See, e.g.*, Ex. A at 6-7 (stating explicitly that Request No. 141 of ARIAD's First Set of Requests for Admission "relates to possible infringement under Section 271(f)").) On December 3, 2007, ARIAD requested that Amgen comply with its discovery obligations related to Section 271(f). (Ex. K.) After initially ignoring that request (Ex. L), counsel for Amgen notified ARIAD on December

7, 2007, that it would need additional time to respond, suggesting that Amgen was involved in some sort of "investigation" that was being "expedit[ed] as much as possible" (Ex. M). Amgen finally responded on December 18, 2007, just three days before the close of fact discovery, claiming that ARIAD was not entitled to discovery with respect to infringement under Section 271(f) because "ARIAD had not pled a claim for infringement under Section 271(f)." (Ex. F.) On December 26, 2007, ARIAD responded to Amgen's letter, explaining that ARIAD had properly pleaded infringement under Section 271(f), protesting Amgen's decision to withhold discovery, and seeking "to meet and confer as soon as possible" in order to "seek the Court's assistance in a timely manner." (Ex. N.) Nearly three weeks later, on January 14, 2008, Amgen responded to ARIAD's letter, reiterating its belief that ARIAD had not properly pleaded infringement under Section 271(f) and offering to meet and confer. (Ex. O.) To the extent Amgen argues delay with respect to ARIAD's motion, that delay is of Amgen's making.

### 3.    ARIAD's Proposed Amendment Is Not Futile.

"In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane*, 213 F.3d at 115. "Accordingly, the court must accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them, and deny a motion to amend only where it is certain that no relief could be granted under any set of facts that could be proved." *DiCicco*, 308 F. Supp. 2d at 532 (quotations omitted). Under this standard, ARIAD's proposed amendment — clarifying that ARIAD alleges infringement under Section 271(f) — is not futile.

35 U.S.C. § 271(f) states that whoever "supplies or causes to be supplied in or from the United States" any "component" or "a substantial portion of the

components" of a patented invention where such component or components are combined "outside of the United States in a manner that would infringe the patent if such combination occurred within the United States" is liable for infringement. 35 U.S.C. § 271(f)(1)-(2) (*see supra* p. 4 (citing Section 271(f) in full)). Under Federal Circuit case law, "Section 271(f) governs method/process inventions," *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1380 (Fed. Cir. 2005), such as the '516 patent. *Union Carbide* concerned the potential infringement of a method patent where the alleged infringer directly sold to foreign buyers an item (in that case a catalyst) that was combined to infringe the patented method. *Id.* at 1380. The court described a previous Federal Circuit case, *Eolas Technologies v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005), as "holding that *every* component of *every* form of invention deserves the protection of 35 U.S.C. Section 271(f), *i.e.*, that 'components' and 'patented inventions' under Section 271(f) are not limited to physical machines." *Union Carbide*, 425 F.3d at 1379 (emphasis in original). Because the lower court in *Union Carbide* had ruled *in limine* that Section 271(f) "is not directed to process claims," *id.* at 1378, the court reversed and remanded for findings on potential liability under Section 271(f), *id.* at 1380.

That reasoning applies where, as here, a patented method defines a course of medical treatment, a component or components of that method (*i.e.*, a drug) is/are supplied from the United States, and the treatment is administered to a patient abroad in a manner that would infringe the patented method if implemented in the United States. In *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 418 F. Supp. 2d 1021 (S.D. Ind. 2006), the owner of a method patent for implanting certain defibrillators inside the human

body sued a company that supplied defibrillators abroad. The alleged infringer moved

for summary judgment arguing that "the use of the word 'component' in reference to a

method step would be inconsistent with the use of that term in other provisions of section

271," "that the notions of 'combining' or 'supply' make no sense in the context of

method claims," and that defibrillators "sold abroad are not combined with other physical

components to practice the claimed method." *Id.* at 1043-44. The court denied the

motion for summary judgment, stating that "this court cannot conclude as a matter of law

that section 271(f) does not apply to the method claim at issue here. St. Jude's devices

are sold directly to foreign customers for (the court must assume) use of the patented

method abroad." *Id.*, 418 F. Supp. 2d at 1044. In so ruling, the court implicitly

recognized that an assembled defibrillator can be a "component" and the implantation of

that intact component in the human body can constitute an infringing "combination."[11]


**REDACTED**


---

[11] As with Enbrel in the present case, a defibrillator by itself did not infringe the
patent, but only infringed when used in the patented method. *Id.* at 1043 ("use of the
method infringes the method claim"). Because the patented method required, *inter alia*,
"an implantable heart stimulator" capable of "determining a condition of the heart," the
court implicitly recognized that the device must be administered to a human patient to
infringe. *Id.* at 1024. And, like Enbrel, the defibrillators are "not combined with other
physical components," *id.* at 1044, before being used in treating a patient.

[12] Amgen's public financial filings show the values of its Canadian sales. (See, e.g.,
Amgen Inc., Annual Report (Form 10-K), at 68 (Feb. 28, 2007) (listing "International"
sales of Enbrel for 2004, 2005 and 2006 as $73 million, $103 million and $143 million,
respectively), excerpted and attached as Ex. R.)

**REDACTED**

In letters to ARIAD, Amgen has stated its position that liability under

Section 271(f) does not apply to method patents, such as the '516 patent.  (*See* Ex. F at 2

("Section 271(f) does not allow a patentee to recover for infringement of a method

patents [sic] when components are sold in the United States and used in a foreign

country.").)  Aware of the Federal Circuit's 2005 opinion to the contrary in *Union*

*Carbide*, Amgen has opined that *Union Carbide* is "not entitled to the same precedential

value" as *earlier* cases from the Federal Circuit, and "is a single case that has been

roundly criticized as poorly reasoned."[13]  Notwithstanding Amgen's disagreement with

---

[13] Based on that appraisal of the case law, *i.e.*, that a 2005 Federal Circuit opinion "is
entitled to less precedential value" than a 1991 Federal Circuit opinion, Amgen
concluded that ARIAD "has not alleged a claim for patent infringement under 35 U.S.C.

and appraisal of binding Federal Circuit precedent as "poorly reasoned," ARIAD's claims under Section 271(f) are clearly not "futile" as defined by this Circuit. Rather, it is clear under *Union Carbide* and *Cardiac Pacemakers* that relief could be granted to ARIAD on the facts already established through testimony, and thus the proposed amendment is not futile, *DiCicco*, 308 F. Supp. 2d at 532.[14]

    4.    <u>Granting the Motion Serves Justice.</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the proposed amendment will not prejudice Amgen, was not brought after undue delay, will not delay trial (in part, because ARIAD is not seeking further discovery), and will make clear that ARIAD (1) has pleaded infringement under 35 U.S.C. § 271(f), (2) no longer asserts counterclaims in this litigation against Wyeth, (3) no longer asserts as a theory of infringement Amgen's manufacture or sale of Kineret, and (4) has withdrawn its claims against Amgen for infringement of the '090 and '374 Patents, ARIAD respectfully submits that justice is served by granting the proposed amendment.

**C.    ARIAD Has Met the Rule 16(b) Good Cause Requirement.**

Federal Rule of Civil Procedure 16(b) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). For the reasons stated above, and because the alternative course of action — forcing ARIAD to file another complaint alleging infringement under Section 271(f) alone — is

---

§ 271(f)" and therefore "Amgen will not produce documents or answer Interrogatories relating to any foreign sales of Enbrel." (Ex. F at 2-3.)

[14] Whether ARIAD will ultimately prevail on that theory is a wholly separate issue that is not appropriately resolved at this stage of the case.

wasteful and unnecessary, ARIAD believes it has shown good cause to allow this amendment, and respectfully requests this Court's consent to do so.

## V.    CONCLUSION

For all of the foregoing reasons, ARIAD respectfully requests that the Court grant ARIAD's motion and docket the proposed Answer to Amended Complaint, Second Amended Counterclaim and Demand for Jury Trial as the amended pleading.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (I.D. #2403)
John G. Day (I.D. #2114)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc.,*
*Massachusetts Institute of Technology,*
*President and Fellows of Harvard College,*
*Whitehead Institute for Biomedical Research*

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated:  February 8, 2008
188047.1