## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, and IMMUNEX RHODE ISLAND
CORPORATION,

      Plaintiffs,

    v.

ARIAD PHARMACEUTICALS, INC., and THE
WHITEHEAD INSTITUTE FOR BIOMEDICAL
RESEARCH,

      Defendants.

ARIAD PHARMACEUTICALS, INC.,
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, THE PRESIDENT AND
FELLOWS OF HARVARD COLLEGE, and THE
WHITEHEAD INSTITUTE FOR BIOMEDICAL
RESEARCH,

      Counterclaim-Plaintiffs,

    v.

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, and IMMUNEX RHODE ISLAND
CORPORATION,

      Counterclaim-Defendants.

C.A. No. 06-259-MPT

**REDACTED
PUBLIC VERSION**

---

## DECLARATION OF DAVID GREENWALD IN SUPPORT OF DEFENDANTS-COUNTERCLAIM-PLAINTIFFS ARIAD'S AND THE INSTITUTIONS' MOTION TO AMEND COUNTERCLAIMS

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

ASHBY & GEDDES
Steven J. Balick (I.D. #2403)
John G. Day (I.D. #2114)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals, Inc.,
Massachusetts Institute of Technology, The President
and Fellows of Harvard College and The Whitehead
Institute for Biomedical Research*

I, David Greenwald, declare as follows:

1.       I am a member of Cravath, Swaine & Moore LLP, counsel for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College, and the Whitehead Institute for Biomedical Research (collectively "Counterclaim-Plaintiffs") in connection with this action.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.  I make this declaration in support of Counterclaim-Plaintiffs' Motion to Amend Counterclaims.

2.       Attached hereto as Exhibit A is a true and correct copy of a July 31, 2007, letter from Nathan Lowenstein to Jamie McDole.

3.       Attached hereto as Exhibit B is a true and correct copy of an excerpt from ARIAD'S Fifth Set of Requests for Production of Documents and Things to the Amgen Entities.

4.       Attached hereto as Exhibit C is a true and correct copy of an excerpt from The Amgen Entities' Responses to ARIAD'S Fifth Set of Requests for Production of Documents.

5.       Attached hereto as Exhibit D is a true and correct copy of an excerpt from ARIAD'S and the Institutions' Third Set of Interrogatories to the Amgen Entities.

6.       Attached hereto as Exhibit E is a true and correct copy of an excerpt from the Amgen Entities' Responses to ARIAD's and the Institutions' Third Set of Interrogatories.

7.       Attached hereto as Exhibit F is a true and correct copy of a December 18, 2007, letter from Daniel Ebner to Perry Goldberg.

8.      Attached hereto as Exhibit G are true and correct copies of excerpts from the November 15, 2007, deposition transcript of Allen Reeves Jacques.

9.      Attached hereto as Exhibit H are true and correct copies of excerpts from the September 19, 2007, deposition transcript of Laura Hamill.

10.     Attached hereto as Exhibit I are true and correct copies of excerpts from the November 28, 2007, deposition transcript of Jay Marshall.

11.     Attached hereto as Exhibit J is a true and correct copy of an excerpt from the October 16, 2007, deposition transcript of Arleen Paulino.

12.     Attached hereto as Exhibit K is a true and correct copy of a December 3, 2007, letter from Perry Goldberg to Marc Sernel.

13.     Attached hereto as Exhibit L is a true and correct copy of a December 6, 2007, letter from Perry Goldberg to Marc Sernel.

14.     Attached hereto as Exhibit M is a true and correct copy of a December 7, 2007 e-mail from Jamie McDole to Perry Goldberg.

15.     Attached hereto as Exhibit N is a true and correct copy of a December 26, 2007, letter from David Greenwald to Daniel Ebner.

16.     Attached hereto as Exhibit O is a true and correct copy of a January 14, 2008, letter from Daniel Ebner to David Greenwald.

17.     Attached hereto as Exhibit P is a true and correct copy of a February 4, 2008, e-mail from Marc Sernel to Radu Lelutiu.

18.     Attached hereto as Exhibit Q is a true and correct copy of a February 7, 2008, e-mail from Radu Lelutiu to Marc Sernel.

19.     Attached hereto as Exhibit R is a true and correct copy of an excerpt from the Amgen Inc., 2006 Annual Report (Form 10-K), filed February 28, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2008.

_____
David Greenwald

# Exhibit A

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7074
FACSIMILE (310) 203-7199
HLowenstein@irell.com

July 31, 2007

<u>**VIA E-MAIL**</u>

Jamie McDole, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:    *Amgen Inc., et al. v. ARIAD Pharmaceuticals, Inc., et al.*, and related
counterclaims

Dear Jamie:

We have reviewed the Amgen Entities' ("Amgen") responses to ARIAD's Third Set of Requests for Production ("Requests"), ARIAD's Second Set of Interrogatories, and ARIAD's First Set of Requests For Admission. As described in more detail below, Amgen's responses to these requests are deficient in many respects. ARIAD reserves the right to raise further deficiencies in Amgen's responses after further review of Amgen's responses.

**<u>Objections Based on Information that Existed Prior to the '516 Patent – *see, e.g.*, Requests For Production 88, 92-96, 105, 107, 110, 111, 128, and 129; Interrogatories 17 and 21</u>**

In response to multiple discovery requests, Amgen has objected to the extent the requests seek documents or information that existed prior to the issuance of the '516 patent as "overly broad, unduly burdensome, oppressive and not reasonably calculated to lead to the discovery of admissible evidence." As we have explained to you, on multiple occasions, it is black letter law that information that existed prior to the issuance of the patent-in-suit is relevant to the hypothetical negotiation. The entire framework for the determination of a reasonable royalty is a hypothetical negotiation that occurs between the parties at the date of first infringement. Thus, information available to the parties prior to the date of first infringement is especially relevant to the determination of a reasonable royalty. *See, e.g., Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F. 3d 1371, 1385 (Fed. Cir. 2001) ("In this case, the 1996 business plan and its projections for future sales were prepared by Infinite two months before infringement began. Thus, rather than being outdated for purposes of the hypothetical negotiation, those projections would have been available to Infinite at the time of the hypothetical negotiation. The fact that Infinite did not

I R E L L  &  M A N E L L A  LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 2

subsequently meet those projections is irrelevant to Infinite's state of mind at the time of the hypothetical negotiation.").

Amgen has never provided any legal justification for its assertion that information that existed prior to the hypothetical negotiation is irrelevant. If Amgen has any legal support for its position, please provide it to us immediately. Otherwise, please let us know whether Amgen will withdraw such improper objections. If Amgen refuses to remove these objections, will it agree that it will not rely upon any documents created prior to the issuance of the '516 patent in its reasonable royalty analysis at trial?

### Third Party Confidentiality Concerns – *See, e.g.*, Responses to Interrogatories 14 and 15; Requests For Production 87

In response to multiple discovery requests, Amgen states that it will not "produce such documents, things or information subject to confidentiality agreements with third-parties, or subject to protective orders in other actions, without the appropriate permission and authority." Please confirm whether Amgen has sought the permission from the third parties to produce the withheld information pursuant to Paragraph P of the protective order. As you know, if any of these third parties are not willing to allow the production of this information, Amgen is obligated to inform the counterclaimants of this fact and identify the information withheld on a separate index stating the reason for withholding the document and the third party to whom the obligation is owed.

### Objections to Third Set of Requests

As a preliminary matter, in response to many requests, Amgen states that it will produce documents. Please provide a date certain by which this production will be complete.

### Restriction to "relevant" documents

As in Amgen's prior objections to ARIAD's Requests for Production, Amgen agrees only to produce "relevant" documents. As ARIAD has informed Amgen on prior occasions, this limitation is improper. While ARIAD seeks relevant documents, Amgen may not limit is production of documents to those that it unilaterally deems to be relevant. In the past, you have confirmed that Amgen was not limiting its production based upon this objection, and that it would inform ARIAD if it ever did rely upon this limitation. *See* my June 25 letter. Please confirm that Amgen is not withholding any documents on the basis of this limitation in this new set of objections and that Amgen will inform ARIAD if it does withhold any documents based upon this limitation.

1727935.110

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 3

Request No. 113

This Request seeks "ALL DOCUMENTS RELATING TO any litigation involving ARIAD." Amgen refuses to produce any document in response to this litigation because the request is not limited to litigation relating to the '516 patent. In light of this objection, Amgen should, at the very least, produce documents relating to the litigation between ARIAD and Lilly. Please confirm whether Amgen will do this.

Request NO. 121

This Request seeks "ALL DOCUMENTS RELATING TO marketing, advertising, or promotion of ENBREL or KINERET." Amgen only agrees to produce such documents to the extent they relate to the mechanism of action of Enbrel or Kineret or NF-kB. As you have noted on many occasions, this case to a significant degree concerns indirect infringement claims. These documents are relevant to ARIAD's indirect infringement claims and should be produced. Please confirm whether Amgen will remove this improper restriction.

Request No. 122

This Request seeks documents that support Amgen's assertions of a common interest or joint defense privilege. Amgen responds that it will produce "non-privileged documents" sufficient to support its claims of privilege. Please confirm whether Amgen will produce any written joint defense or common interest agreements. If you contend that Amgen has already produced such agreements, please identify them to us by Bates number.

Request No. 126

This Request seeks documents relating to payments made by Wyeth to Amgen. Amgen refuses to produce any documents in response to this Request because the Request is not limited to payments relating to Enbrel or other issues in this case. In light of this objection, Amgen should, at the very least, produce documents relating to payments made by Wyeth to Amgen that relate to Enbrel or other issues in this case. Please confirm whether Amgen will produce these documents.

Request No. 129

This Request seeks documents sufficient to show the proportion of Amgen's sales of Enbrel and Kineret that are used by users of Enbrel and Kineret in the United States. Amgen only agrees to produce documents sufficient to show revenue generated from sales of Enbrel and Kineret. As you have noted on several occasions, much of the direct infringement at issue in this case is the use of Enbrel and Kineret by patients in the United States. Please confirm whether Amgen will produce documents relating to the proportion of its sales of Enbrel and Kineret that are used in the United States.

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 4

Request No. 134

    This Request seeks documents relating to any services provided by Amgen directly to users or potential users of Enbrel or Kineret. Amgen refuses to produce any documents in response to this Request. Amgen claims that this refusal is based, in part, upon its inability to understand the phrase "any services." This phrase is clear. This Request relates to ARIAD's indirect infringement claims, and Amgen cannot withhold relevant documents based upon its pretense that it does not understand basic English. Please confirm whether Amgen will produce responsive documents.

**Objections to ARIAD's Second Set of Interrogatories**

Amgen's Improper Reliance Upon Rule 33(d) – *see, e.g.* Responses To Interrogatories 14, 15, 17, and 21

    In response to each of these interrogatories, Amgen refuses to provide a narrative response to the interrogatory and rather relies upon Rule 33(d). Assuming, for the sake of argument, that Amgen may rely upon Rule 33(d) to answer these interrogatories, Amgen's responses are deficient because they do not identify all of the documents that provide the answer to each interrogatory. Amgen uses the phrase "see, e.g.," which indicates that it is only identifying a potion of the documents that supposedly answer each interrogatory. Reliance upon Rule 33(d) is only appropriate when the responder specifies "the records from which the answer may be derived or ascertained." Since, Amgen has not even identified all of the documents that answer the interrogatory, reliance upon Rule 33(d) is inappropriate.

    Further, reliance upon Rule 33(d) is only proper when the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as the party served. As Amgen has not fully identified the documents which it relies upon to answer these interrogatories, the burden is clearly greater for ARIAD. Each of these interrogatories seek information that would naturally be in Amgen's possession. If Amgen elects to identify documents rather than provide a narrative response, it cannot force ARIAD to hunt through Amgen's production to attempt to determine which additional documents are necessary to provide complete answers to ARIAD's interrogatories. Amgen's reliance upon Rule 33(d) is improper for this additional reason.

    Please confirm whether Amgen will identify all documents it contends answer these interrogatories.

Interrogatory No. 15

    This Interrogatory seeks in part a description of YOUR patent licensing practices, policies, policies, and procedures. Amgen responds that it does not "have a *formal* practice, policy or procedure regarding patent licensing." (emphasis added). This Interrogatory is not

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 5

limited to *formal* practices, policies, or procedures nor is it limited to such practices, policies, or procedures that are currently in place. If Amgen has or had any *informal* practices, policies, or procedures relating to patent licensing, it must identify and describe them. Further, if Amgen had any *formal* practices, policies, or procedures that are no longer in place, it must identify and describe them as well. If Amgen has never had any formal or informal practices, policies, or procedures relating to patent licensing, it should state so explicitly in its Interrogatory response. Please confirm whether Amgen will amend its response accordingly.

<u>Contention Interrogatories 16, 19, and 20</u>

- <u>Interrogatory 16</u> – Identify all license agreements you contend bear on the reasonable royalty analysis.

- <u>Interrogatory 19</u> – For the '516 PATENT, identify the reasonable royalty that YOU contend YOU and ARIAD would have agreed upon in a hypothetical negotiation and set forth the basis for YOUR contention, including the date on which YOU contend the hypothetical negotiation would have occurred, the identity of any licenses or other documents that YOU contend bear on the reasonable royalty rate, and the identity of any design-around or non-infringing alternative or buy around options that affect the reasonable royalty.

- <u>Interrogatory 20</u> – Identify the amount of YOUR revenue for ENBREL and KINERET which YOU contend the reasonable royalty should be applied if ENBREL and KINERET are found to infringe the '516 PATENT, and set forth the basis for YOUR contention.

Amgen has refused to provide a substantive response to each of these Interrogatories. Amgen states that it will supplement its responses to these interrogatories after serving a damages report relating to these topics. This is precisely what Judge Thynge said she did not want to see from the parties. *See* May 1, 2007 Hearing Transcript at 92:24-93:8 ("If both of you have problems with the interrogatory responses, and I have a belief that you do, because certainly when I sit there and I have read bits and pieces of everybody's interrogatory responses in this case and in others, I find them extremely uninformative. I do not expect to see in interrogatory responses and contention interrogatories a long list of nothing but objections and then one sentence that actually goes to the point, which is what I see repeatedly."). With respect to these interrogatories, Amgen has not even provided one sentence that "goes to the point." Amgen's approach is contrary to Judge's Thynge's instructions and designed to prevent ARIAD from probing the factual bases of Amgen's contentions during fact discovery.

With respect to Interrogatory 16, Amgen should be able to provide a response, at least for its own licenses, without waiting for expert discovery. With respect to Interrogatory 19, to

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 6


the extent Amgen contends that such alternatives exist, they would be known to Amgen, not Amgen's damages expert, and ARIAD is entitled to take discovery of them. Further, Amgen should also identify all documents it is aware of that it contends bears upon the reasonable royalty rate. We also assume that Amgen's position is that the date of the hypothetical negotiation is the same date that the '516 patent issued, and Amgen should so state in its interrogatory response. With respect to Interrogatory 20, Amgen, in a prior meet and confer, identified two potential contentions it might make for excluding sales of Enbrel or Kineret from the royalty base even if it is found to infringe the '516 patent: (1) ARIAD's damages are limited to only those sales of Enbrel and Kineret that is used by people in the United States and (2) sales to certain governments should be excluded. If Amgen intends to pursue these contentions, or any other contentions that would limit the royalty base in this action, it must allow ARIAD to probe the factual basis for these contentions.

To the extent Amgen has any information that is responsive to these interrogatories, it should provide it immediately. Failing to do so, as Judge Thynge pointed out, will result in preclusion. May 1 hearing at 94:5-14 ("Anybody who wants to live with their interrogatory responses will die with their interrogatory responses....And if you choose not to supplement in a timely fashion, you will live and die with that too. I am going to start taking a much harder line on what information parties decide that they are going to disclose and when they disclose it, and it's not all going to be at the last minute."). Please let me know whether Amgen will supplement its responses to provide appropriate answers.

Interrogatory No. 22

This Interrogatory seeks the identification of five individuals who are most knowledgeable about various topics at Amgen. However, Amgen only identifies five individuals in response to one of the four topics. Additionally, Amgen did not identify the home address of the identified individuals as requested in the interrogatory. Please let us know whether Amgen will provide this information.

**Objections to First Set of Requests For Admission**

Request No. 141

This Request asks that Amgen, "[a]dmit that YOU do not have the right to market ENBREL outside of the United States and Canada." Amgen refuses to answer this request on the supposed basis that it is unduly burdensome and not likely to lead to the discovery of admissible evidence to the extent it seeks information regarding activities outside of the United States. As you know, ARIAD has asserted indirect infringement claims against Amgen. Whether Amgen's marketing activities are focused exclusively upon the United States and Canada is relevant at least to this inquiry. In addition, this Request relates to

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Jamie McDole, Esq.
July 31, 2007
Page 7


possible infringement under Section 271(f) of the Patent Act. Please let us know whether Amgen will provide a proper response to this inquiry.

We would like to arrange a meet and confer for this week to discuss these issues. Please let us know when you are available.

Sincerely,

/s/ Nathan Lowenstein

Nathan Lowenstein

cc:    Counsel of Record

1727935.110

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,  )
AMGEN USA INC., AMGEN MANUFACTURING  )
LIMITED, and IMMUNEX RHODE ISLAND  )
CORPORATION,  )
                                                 )      C.A. No. 06-259-MPT
             Plaintiffs,  )
     v.  )
                   )
ARIAD PHARMACEUTICALS, INC., and THE  )
WHITEHEAD INSTITUTE FOR BIOMEDICAL  )
RESEARCH,  )
                   )
            Defendants.  )
                   )
                   )
ARIAD PHARMACEUTICALS, INC.,  )
MASSACHUSETTS INSTITUTE OF  )
TECHNOLOGY, THE PRESIDENT AND  )
FELLOWS OF HARVARD COLLEGE, and THE  )
WHITEHEAD INSTITUTE FOR BIOMEDICAL  )
RESEARCH,  )
                   )
          Counterclaim Plaintiffs,  )
                   )
     v.  )
                   )
AMGEN INC., IMMUNEX CORPORATION,  )
AMGEN USA INC., AMGEN MANUFACTURING  )
LIMITED, IMMUNEX RHODE ISLAND  )
CORPORATION, and WYETH,  )
                   )
         Counterclaim Defendants.  )

## DEFENDANT AND COUNTERCLAIMANT ARIAD'S FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO THE AMGEN ENTITIES

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and other applicable rules of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff ARIAD Pharmaceuticals, Inc. requests that Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing Limited, and Immunex Rhode Island Corporation (collectively, "Plaintiffs") respond to these requests and produce the following documents and things at the

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 181

DOCUMENTS sufficient to show the quantity of ENBREL on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is received, sold, used, or distributed by anyone outside of the UNITED STATES.

### REQUEST NO. 182

DOCUMENTS sufficient to show on a quarterly or annual basis the revenue attributable to sales of ENBREL that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is received, sold, used, or distributed by anyone outside of the UNITED STATES.

### REQUEST NO. 183

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at YOUR facility in Juncos, Puerto Rico and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

### REQUEST NO. 184

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at YOUR facility in West Greenwich, Rhode Island and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

### REQUEST NO. 185

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at Genentech's facility in South San Francisco and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**REQUEST NO. 186**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at DSM Pharmaceuticals' facility in Greenville, North Carolina and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**REQUEST NO. 187**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at Catalent Pharma Solutions' facility in Philadelphia, Pennsylvania and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**REQUEST NO. 188**

DOCUMENTS sufficient to show the role of WYETH's facility in Grange Castle, Ireland; Boehringer Ingelheim's facilities in Biberach, Germany; YOUR facility in West Greenwich, Rhode Island; Genentech's facility in South San Francisco, California; Vetter Pharma's facility in Langenargen, Germany; DSM Pharmaceuticals' facility in Greenville, North Carolina; YOUR facility in Juncos, Puerto Rico; WYETH-WKK's facility in Shiki Japan; WYETH's facilities in Havant and Gosport, United Kingdom; and Catalent Pharma Solutions; facility in Philadelphia, Pennsylvania in the manufacture, testing, filling, finishing, packaging, distribution, sale, or processing of Enbrel.

**REQUEST NO. 189**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, packaged, tested, or processed by YOU for WYETH.

**REQUEST NO. 190**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been transferred, distributed, given, or sold by YOU to WYETH.

**REQUEST NO. 191**

DOCUMENTS sufficient to show all ENBREL that has been sold by YOU in Canada that was either manufactured in YOUR facility in West Greenwich, Rhode Island, packaged in YOUR facility in Juncos, Puerto Rico, or supplied, distributed or exported from the UNITED STATES.

**REQUEST NO. 192**

DOCUMENTS sufficient to show the quantity of ENBREL received or purchased by YOU that was manufactured outside of the UNITED STATES and sold by YOU in the UNITED STATES, the amount of money paid for such ENBREL, and each entity that manufactured, distributed, or sold such ENBREL.

**REQUEST NO. 193**

DOCUMENTS sufficient to show the quantity of KINERET on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is sold, used, or distributed by anyone outside of the UNITED STATES.

**REQUEST NO. 194**

DOCUMENTS sufficient to show on a quarterly or annual basis the revenue attributable to sales of KINERET that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is sold, used, or distributed by anyone outside of the UNITED STATES.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc.,
Massachusetts Institute of Technology, The
President and Fellows of Harvard College and
The Whitehead Institute for Biomedical
Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Elizabeth Rosenblatt
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: October 8, 2007
184803.1

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
)
             Plaintiffs, )
)
    v. )
)
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, )
)
        Defendants. )   Civil Action No. 06-259 (MPT)
_____ )
)
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, MASSACHUSETTS )
INSTITUTE OF TECHNOLOGY, THE )
PRESIDENT AND FELLOWS OF HARVARD )
COLLEGE, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, )
)
      Counterclaim Plaintiffs, )
    v. )
AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, and )
WYETH, )
)
      Counterclaim Defendants. )
)
)
)
)
_____ )

**THE AMGEN ENTITIES' RESPONSES TO ARIAD'S**
**<u>FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Pursuant to Federal Rules of Civil Procedure 26 and 34, plaintiffs Amgen, Inc. ("Amgen"); Immunex Corporation ("Immunex"); Amgen USA Inc. ("Amgen USA"); Amgen Manufacturing, Limited ("Amgen Mfg."); and Immunex Rhode Island Corporation ("Immunex R.I.," together with Amgen, Immunex, Amgen USA, and Amgen Mfg. the "Amgen Entities") hereby object and respond to defendant ARIAD Pharmaceuticals, Inc.'s ("ARIAD's") Fifth Set of Requests for Production of Documents. These responses are based on the Amgen Entities' present state of recollection, knowledge, and belief. They are subject to additional or different information that discovery may disclose, and, while based on the present state of recollection, are subject to such refreshing of recollection, and such knowledge or facts, as may result from further investigation by the Amgen Entities or their attorneys, or further discovery from ARIAD or third parties. The Amgen Entities reserve the right to supplement these responses.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 181:

DOCUMENTS sufficient to show the quantity of ENBREL on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is received, sold, used, or distributed by anyone outside of the UNITED STATES.

### RESPONSE:

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the quantity of Enbrel® on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by the Amgen Entities in the United States for sale by the Amgen Entities in the United States.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the

2

United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "supplied".

## REQUEST NO. 182:

DOCUMENTS sufficient to show on a quarterly or annual basis the revenue attributable to sales of ENBREL that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is received, sold, used or distributed by anyone outside of the UNITED STATES.

## RESPONSE:

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the revenue attributable to sales of Enbrel® on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by the Amgen Entities in the United States for sale by the Amgen Entities in the United States.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "supplied".

## REQUEST NO. 183:

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at YOUR facility in Juncos, Puerto Rico and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "received".

**REQUEST NO. 184:**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at YOUR facility in West Greenwich, Rhode Island and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "received".

**REQUEST NO. 185:**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at Genentech's facility in South San Francisco and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in

this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "received".

### REQUEST NO. 186:

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at DSM Pharmaceuticals' facility in Greenville, North Carolina and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

### RESPONSE:

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "received".

### REQUEST NO. 187:

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, tested, filled, finished, packaged, or processed at Catalent Pharma Solutions' facility in Philadelphia, Pennsylvania and transferred, distributed, delivered, or sold to WYETH, or received, taken, or sold by WYETH.

### RESPONSE:

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "received".

**REQUEST NO. 188:**

DOCUMENTS sufficient to show the role of WYETH's facility in Grange Castle, Ireland; Boehringer Ingelheim's facilities in Biberach, Germany; YOUR facility in West Greenwich, Rhode Island; Genentech's facility in South San Francisco, California; Vetter Pharma's facility in Langenargen, Germany; DSM Pharmaceuticals' facility in Greenville, North Carolina; YOUR facility in Juncos, Puerto Rico; WYETH-WKK's facility in Shiki Japan; WYETH's facilities in Havant and Gosport, United Kingdom; and Catalent Pharma Solutions; [sic] facility in Philadelphia, Pennsylvania in the manufacture, testing, filling, finishing, packaging, distribution, sale, or processing of ENBREL.

**RESPONSE:**

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the role of the facilities named in this interrogatory in the manufacture, testing, filling, finishing, packaging, distribution, sale, or processing of Enbrel® for sale by the Amgen Entities in the United States.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the term "processing".

**REQUEST NO. 189:**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been manufactured, packaged, tested, or processed by YOU for WYETH.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the

United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the term "processed".

**REQUEST NO. 190:**

DOCUMENTS sufficient to show on a quarterly or annual basis the quantity of ENBREL that has been transferred, distributed, given, or sold by YOU to WYETH.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "transferred", and "distributed".

**REQUEST NO. 191:**

DOCUMENTS sufficient to show all ENBREL that has been sold by YOU in Canada that was either manufactured in YOUR facility in West Greenwich, Rhode Island, packaged in YOUR facility in Juncos, Puerto Rico, or supplied, distributed or exported from the UNITED STATES.

**RESPONSE:**

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the term "distributed".

7

**REQUEST NO. 192:**

DOCUMENTS sufficient to show the quantity of ENBREL received or purchased by YOU that was manufactured outside of the UNITED STATES and sold by YOU in the UNITED STATES, the amount of money paid for such ENBREL, and each entity that manufactured, distributed, or sold such ENBREL.

**RESPONSE:**

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the quantity of Enbrel® received or purchased by the Amgen Entities that was manufactured outside of the United States and sold by the Amgen Entities in the United States, the amount of money paid for such Enbrel®, and each entity that manufactured, distributed, or sold such Enbrel®.

**REQUEST NO. 193:**

DOCUMENTS sufficient to show the quantity of KINERET on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is sold, used, or distributed by anyone outside of the UNITED STATES.

**RESPONSE:**

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the quantity of Kineret® on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by the Amgen Entities in the United States for sale by the Amgen Entities in the United States.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Kineret® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The

8

Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "supplied".

### REQUEST NO. 194:

DOCUMENTS sufficient to show on a quarterly or annual basis the revenue attributable to sales of KINERET that is manufactured, tested, filled, finished, packaged, or processed by YOU in the UNITED STATES, or distributed, transferred, or supplied from the UNITED STATES by YOU, that is sold, used, or distributed by anyone outside of the UNITED STATES.

### RESPONSE:

Subject to and without waving the Amgen Entities' Specific Objections and General Objections below, which are fully incorporated by reference herein, to the extent they exist the Amgen Entities will produce non-privileged and relevant documents sufficient to show the revenue attributable to sales of Kineret® on a quarterly or annual basis that is manufactured, tested, filled, finished, packaged, or processed by the Amgen Entities in the United States for sale by the Amgen Entities in the United States.

The Amgen Entities specifically object to this request as overbroad, unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks documents unrelated to the Amgen Entities' sale of Kineret® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities further object to this request as vague and ambiguous with respect to the terms "processed", "distributed", "transferred," and "supplied".

### GENERAL OBJECTIONS

1.     The Amgen Entities object to ARIAD's Fifth Set of Requests for the Production of Documents to the extent that they purport to impose discovery or other requirements on the Amgen Entities greater than those authorized under, or permitted by, the Federal Rules of Civil procedure, the Rules of the United States District Court for the District of Delaware, and applicable case law. The Amgen Entities shall not comply with any purported obligation not imposed by law.

# Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>                          Plaintiffs,<br><br>        v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation,<br><br>                          Defendants. | C.A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                          Counterclaim<br>                          Plaintiffs,<br><br>        v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>                          Counterclaim<br>                          Defendants. | |

**COUNTERCLAIM PLAINTIFFS ARIAD'S AND THE INSTITUTIONS'**

**THIRD SET OF INTERROGATORIES TO THE AMGEN ENTITIES**

including IDENTIFYING any individual who YOU have financially supported or employed in such research, study, or investigation, and including a detailed description of the manner in which YOU provided such financial support (including the IDENTIFICATION any DOCUMENTS that demonstrate YOUR financial support).

**INTERROGATORY NO. 25**:

Identify by year the total volume of ENBREL that is manufactured, tested, processed, filled, finished, packaged, and/or labeled in the UNITED STATES or supplied, exported, or distributed from a location in the United States, for sale outside of the UNITED STATES, and describe in detail by year and/or quarter the amount of YOUR revenues attributable to that volume of ENBREL.

**INTERROGATORY NO. 26**:

Identify by year the total volume of KINERET that is manufactured, tested, processed, filled, finished, packaged, and/or labeled in the UNITED STATES for sale, or supplied, exported, or distributed from a location in the UNITED STATES, for use or sale outside of the United States, and describe in detail by year and/or quarter the amount of YOUR revenues attributable to that volume of KINERET.

**INTERROGATORY NO. 27**:

If, in response to Interrogatory Nos. 25 or 26, YOU identified a quantity other than zero for any year, describe in detail the process through which that ENBREL or KINERET goes from being manufactured or handled in the UNITED STATES to being distributed and/or sold to patients outside of the UNITED STATES (including the IDENTIFICATION of those manufacturers, handlers, exporters, sellers, and/or distributors involved in this process and the countries in which this process occurred).

**INTERROGATORY NO. 28**:

IDENTIFY each item that YOU contend constitutes prior art that anticipates any claim of the '374 PATENT by providing a chart that identifies where specifically in such item of prior art each element of each allegedly anticipated claim is found.

- 6 -

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ARIAD PHARMACEUTICALS, INC., a Delaware corporation, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| ARIAD PHARMACEUTICALS, INC., a Delaware corporation, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation, <br><br> Counterclaim Plaintiffs, <br> v. <br> AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, and WYETH, <br><br> Counterclaim Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 06-259 (MPT)

**THE AMGEN ENTITIES' RESPONSES TO ARIAD'S
THIRD SET OF INTERROGATORIES**

**INTERROGATORY NO. 26:**

Identify by year the total volume of KINERET that is manufactured, tested, processed, filled, finished, packaged, and/or labeled in the UNITED STATES for sale, or supplied, exported, or distributed from a location in the UNITED STATES, for use or sale outside of the United States, and describe in detail by year and/or quarter the amount of YOUR revenues attributable to that volume of KINERET.

**RESPONSE:**

The Amgen Entities specifically object to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks discovery unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities also object to this request as vague and ambiguous as to time.

**INTERROGATORY NO. 27:**

If, in response to Interrogatory Nos. 25 or 26, YOU identified a quantity other than zero for any year, describe in detail the process through which that ENBREL or KINERET goes from being manufactured or handled in the UNITED STATES to being distributed and/or sold to patients outside of the UNITED STATES (including the IDENTIFICATION of those manufacturers, handlers, exporters, sellers, and/or distributors involved in this process and the countries in which this process occurred).

**RESPONSE:**

The Amgen Entities specifically object to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because, among other reasons, it seeks discovery that is not related to any claim or defense in this matter in that it seeks discovery unrelated to the Amgen Entities' sale of Enbrel® in the United States and unrelated to any claim of infringement of the '516, '090, or '374 patents. The Amgen Entities also object to this request as vague and ambiguous as to time.

**GENERAL STATEMENT**

1.   The Amgen Entities' responses are made without in any way waiving or intending to waive, and instead preserve and intend to preserve the following:

Exhibit F



Daniel S Ebner
<debner@kirkland.com>
12/18/2007 03:17 PM

To  pgoldberg@irell.com

cc  Ariad Correspondence
    <ariadcorrespondence@kirkland.com>,
    ariad.litigation.team@irell.com, ariad@cravath.com

bcc

Subject  Amgen v. ARIAD

Perry,

Please see the attached letter about ARIAD's requests for discovery relating to sales of Amgen products outside the United States.  If you would like to meet and confer we are happy to do so.

Thanks,
Dan

Daniel Ebner
Kirkland & Ellis LLP
200 E. Randolph Drive
Chicago, Illinois 60601
Associate
Ph 312-469-7017
debner@kirkland.com
**************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
**************************************************



2007-12-18 Ebner to Goldberg.PDF

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Daniel Stephen Ebner
To Call Writer Directly:
312 469-7017
debner@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

December 18, 2007

Perry Goldberg
Irell & Manella
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4276

**VIA E-MAIL**

Re:    *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No.
06-259-MPT

Dear Perry:

I write with respect to your December 3, 2007 letter to Marc Sernel about discovery relating to sale of Enbrel® and Kineret® outside the United States. ARIAD is not entitled to this discovery because 1) ARIAD has not pled a claim for infringement under § 271(f); and 2) under § 271(f) ARIAD cannot collect damages for infringement of a method claim such as the asserted claims of the '516 patent.

## ARIAD Has Not Pled A Claim For Patent Infringement Under 35 U.S.C. § 271(f)

An adequately pled claim for patent infringement "alleges ownership of the asserted patent, names each individual defendant, cites the patent that is allegedly infringed, describes the means by which the defendant[] allegedly infringe[s], and points to the specific sections of the patent law invoked." *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) (emphasis added). Thus, to satisfy the requirement that a patent owner "describes the means by which the defendant allegedly infringes:" a claim for patent infringement under § 271(a) must allege that the defendant "makes, uses, offers to sell, or sells" a patented product; a claim for patent infringement under § 271(b) must allege that a defendant "induces" infringement of a patent; a claim for patent infringement under § 271(c) must allege that a defendant is liable as a "contributory" infringer of a patent; and a claim for patent infringement under § 271(f) must allege that a defendant "supplies or causes to be supplied in or from the United States" the components of a patented invention. *See Z4 Technologies, Inc. v. Microsoft Corp.*, Case No. 2006-1638, 2007 WL 3407175, *13 (Fed. Cir. Nov. 16, 2007) (finding that a claim for patent infringement under § 271(f) was not implicated in a case because "[t]he complaint alleged infringement using only language from § 271(a).")

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

**KIRKLAND & ELLIS LLP**

December 18, 2007
Page 2

ARIAD's amended counterclaim alleges that "the Amgen Entities and Wyeth have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing Enbrel®...." (D. 413, ARIAD's Sept. 24, 2007 Amended Counterclaim at ¶¶ 19, 20.) This language places Amgen on notice that ARIAD has asserted claims for infringement under § 271(a) ("making, using, offering to sell, selling"), § 271(b) ("inducing"), and § 271(c) ("contributorily"). But ARIAD's allegation of infringement includes no language indicating that it is asserting a claim under § 271(f). Consequently, ARIAD has not asserted a claim for patent infringement under § 271(f), and Amgen is not obligated to provide any discovery about sales of Enbrel® and Kineret® outside the United States.

### Section 271(f) Does Not Permit Recovery of Damages For Foreign Sales Of Enbrel® or Kineret®

Under controlling Federal Circuit precedent, 35 U.S.C. § 271(f) allows a patentee to recover for infringement when components that are sold in the United States are assembled in a foreign country to create a device that infringes an apparatus patent; but § 271(f) does not allow a patentee to recover for infringement of a method patents when components are sold in the United States and used in a foreign country. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991); *see also Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 -775 (Fed. Cir. 1993) ("Our holding in *Standard Havens*, first, reflects the previously discussed principle that a method claim is not directly infringed by the sale of an apparatus even though it is capable of performing only the patented method. The sale of the apparatus is not a sale of the method. A method claim is directly infringed only by one practicing the patented method."); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 1 Fed. Appx. 879, 883-884 (Fed. Cir. 2001) (internal quotes and citations omitted) ("This court reasoned [in *Standard Havens*] that the sale in the United States of an unclaimed apparatus alone does not make the defendant a contributory infringer of the patented method."); *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1321-23 (Fed. Cir. 2005) (describing *Standard Havens* as "holding that the sale in the United States of an apparatus for carrying out a claimed process did not infringe the process claim under § 271(f) where the customer practiced the process abroad"). The asserted claims of the '516 patent are method claims that do not describe any particular apparatus or composition. Thus, § 271(f) cannot be implicated in this case.

The 2005 Federal Circuit opinion *Union Carbide Chemicals & Plastics Technology Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005), does not change the conclusion that § 271(f) is not implicated in this case. In *Union Carbide* the Federal Circuit panel held that § 271(f) provided for a claim of infringement of a method claim when the allegedly infringing component was expressly defined in the body of the method claim. *Id.* at 1375. Here, the

**KIRKLAND & ELLIS LLP**

December 18, 2007
Page 3

method claims of the '516 patent do not come close to defining Enbrel® or Kineret®. Second, to the extent that the holding of *Union Carbide* conflicts with the ruling in *Standard Havens*, *Union Carbide* is of less precedential value. It is a single case that has been roundly criticized as poorly reasoned, and that is not entitled to the same precedential value as the more established *Standard Havens* line of cases. *See, e.g., Union Carbide*, 434 F.3d at 1358-1359 (dissent to order denying *en banc* rehearing); 3 Moy's Walker on Patents § 12:30 (4th ed.) ("Frankly, the decisions ... characterizing paragraph 271(f) as applicable to methods, are not only later in time than contrary precedents but also rather lightly reasoned; thus, one can question whether they will be influential in the future."); 2 Annotated Patent Digest (Matthews), § 10:128 (2007) (criticizing *Union Carbide* for "[b]uilding on [] arguable dicta in *Eolas*, ignoring the apparent holding of *Standard Havens*, and not considering any of the legislative history of § 271(f)").

Because ARIAD has not alleged a claim for patent infringement under 35 U.S.C. § 271(f), and because § 271(f) does permit recovery for infringement of a method claim such as those of the '516 patent that are asserted in this case, Amgen will not produce documents or answer Interrogatories relating to any foreign sales of Enbrel® or Kineret®.

Sincerely,

Daniel Stephen Ebner

Exhibit G

# REDACTED

# Exhibit H

# REDACTED

# Exhibit I

# REDACTED

# Exhibit J

# REDACTED

# Exhibit K

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7047
FACSIMILE (310) 282-5747
pgoldberg@irell.com

December 3, 2007

**VIA E-MAIL**

Marc Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

    Re:    Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.

Dear Marc:

        I write regarding the Amgen Entities' Responses to ARIAD's Fifth Set of Requests for Production of Documents and the Amgen Entities' Responses to Interrogatory Nos. 25-27 from ARIAD's Third Set of Interrogatories.

        ARIAD's Fifth Set of Requests for Production of Documents seek documents sufficient to show the quantity of Enbrel and Kineret that is supplied in or from the United States to persons outside the United States and the revenue attributable thereto (including the quantity of Enbrel that is processed for or transferred to Wyeth). *See* Request Nos. 181-87, 189-91 & 193-94. In addition, Request No. 188 seeks documents sufficient to show the role of various Wyeth and Amgen facilities in the manufacture and distribution of Enbrel. As to each of these requests, Amgen has either completely refused to produce documents on the basis that the discovery sought is overbroad and not reasonably calculated to lead to the discovery of admissible evidence or (in the case of Request Nos. 181-82, 188, and 193-94) has improperly limited its production to Enbrel processed "for sale by the Amgen Entities in the United States" in complete disregard of the actual discovery being sought.

        Interrogatory Nos. 25-27 seek information about the volume of Enbrel and Kineret supplied from the United States for sale outside the United States and the supply chain through which such Enbrel or Kineret passes. As with ARIAD's Requests for Production, the Amgen Entities refused to provide any substantive response to these interrogatories, instead objecting to the discovery on the basis that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

        The Amgen Entities objections are unfounded. As you are well aware, 35 U.S.C. § 271(f)(1) provides liability where an entity "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that

1788122

**IRELL & MANELLA LLP**
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Marc Sernel, Esq.
December 3, 2007
Page 2

would infringe the patent if such combination occurred within the United States" and 35 U.S.C. § 271(f)(2) provides liability where an entity "supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States."

These document requests and interrogatories are thus directly relevant to both Amgen's declaratory judgment claim and to ARIAD's and the Institutions' counterclaim for infringement of the '516 patent. *See* Amgen's Amended Complaint ¶ 25 (seeking declaration that Amgen does not infringe any valid claim of the '516 patent "through any activities related to the Enbrel® and/or Kineret® products"); ARIAD's Amended Counterclaim ¶ 19 (alleging that the Amgen Entities and Wyeth have violated 35 U.S.C. § 271). Amgen's efforts to resist this discovery appear to be nothing more than a thinly-veiled attempt to conceal the scope of Amgen's infringement. Notably, during his deposition on November 28, Amgen's Jay Marshall testified that the Enbrel Amgen sells in Canada is supplied from Amgen's distribution facilities in Kentucky.

Moreover, the discovery sought is narrowly tailored and would not be burdensome for Amgen to provide. ARIAD has not sought all documents relating to Enbrel or Kineret supplied from the United States for use outside the United States, but instead has sought documents and discovery "sufficient to show" to the quantities at issue, the revenue there from, and the role of various facilities in the manufacture and processing thereof.

In light of the above, please confirm that the Amgen Entities will supplement their responses to Request for Production Nos. 181-91 and 193-94 and Interrogatory Nos. 25-27 by close of business Thursday, December 6, 2007. If the Amgen Entities do not intend to provide substantive responses to these discovery requests, please let me know what time you are available on Tuesday or Wednesday this week to meet and confer regarding this issue.

Very truly yours,

*Perry Goldberg*

Perry Goldberg

cc: Counsel of record

1788122

# Exhibit L

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900

LOS ANGELES, CALIFORNIA  90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7047
FACSIMILE (310) 282-6747
pgoldberg@irell.com

December 6, 2007

**VIA E-MAIL**

Marc Sernel, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

Re:    Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.

Dear Marc:

On December 3, 2007, I wrote you regarding inadequacies in the Amgen Entities'
Responses to ARIAD's Fifth Set of Requests for Production of Documents and the Amgen
Entities' Responses to Interrogatory Nos. 25-27 from ARIAD's Third Set of Interrogatories.
In my letter, I requested that the Amgen Entities either supplement their responses to
Request for Production Nos. 181-91 and 193-94 and Interrogatory Nos. 25-27 by close of
business Thursday, December 6, 2007 or, if the Amgen Entities did not intend to supplement
their responses, that they meet and confer with ARIAD regarding this issue on either
Tuesday, December 4, 2007 or Wednesday, December 5, 2007.  It is now close of business
December 6, 2007 and the Amgen Entities have neither supplemented their responses to this
discovery, nor made themselves available to meet and confer.  As Amgen has refused to
meet and confer, ARIAD is left with no choice but to raise this matter with the Court.

Very truly yours,

Perry Goldberg

cc:  Counsel of record

1790605

# Exhibit M



Jamie McDole
<jmcdole@kirkland.com>
12/07/2007 04:42 PM

To  PGoldberg@irell.com

cc  Ariad Correspondence
    <ariadcorrespondence@kirkland.com>,
    ariad.litigation.team@irell.com,
    wyeth-ariad-listserv@finnegan.com, ariad@cravath.com

bcc

Subject  Fw: Amgen v. ARIAD -- letter re: 271(f) discovery

Perry,

We are investigating the issues raised in your letter
from earlier this week and intend to respond next week
-- we are expediting our investigation as much as
possible.  After we have investigated this issue and
responded to your letter, we would be more than willing
to meet and confer with you on this issue.

Have a good weekend.

Thanks,

Jamie McDole

                "Goldberg
                , Perry"
                <PGoldber                          To
                g@irell.c       msernel@kirkland.com
                om>                                 cc
                                "#Ariad I&M/Local
                                Counsel Team
                12/06/200       [Int/Ext]."
                7 17:25         <ariad.litigation.team@
                                irell.com>, "#EXT SERV
                                Ariad/Amgen [Ext]"
                                <#EXTSERVAriad_Amgen@ir
                                ell.com>

                                                   bcc

                                               Subject
                                RE: Amgen v. ARIAD --
                                letter re: 271(f)
                                discovery

Dear Marc,

Please see the attached letter following up on my
letter  from December 3.

Regards,
Perry

From: Goldberg, Perry
Sent: Monday, December 03, 2007 9:27 AM
To: Marcus E. Sernel (msernel@kirkland.com)
Cc: #Ariad I&M/Local Counsel Team  [Int/Ext].; #EXT
SERV Ariad/Amgen [Ext]
Subject: Amgen v. ARIAD --  letter re: 271(f) discovery

Dear  Marc,

Please see the  attached letter.

Regards,
Perry

ccmailg.irell.com made the following
annotations-----------------------------------------------------------
--PLEASE
 NOTE:  This message, including any attachments, may
include privileged, confidential and/or inside
information.  Any distribution or use of this
communication by anyone other than the intended
recipient(s) is strictly prohibited and may be
unlawful.  If you are not the intended recipient,
please notify the sender by replying to this message
and then delete it from your system. Thank you.
-------------------------------------------------------------------
(See attached file: 1790805_1.PDF)
*****************************************************
The informati
on contained in this communication is
confidential, may be attorney-clien
t privileged, may
constitute inside information, and is intended only for

the use of the addressee.  It is the property of
Kirkland & Ellis LLP
 or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or c
opying of this
communication or any part thereof is strictly prohibited

and may be unlawful.  If you have received this
communication in error
, please notify us immediately by
return e-mail or by e-mail to postmaste
r@kirkland.com, and
destroy this communication and all copies thereof,

including all attachments.
*****************************************

\* \* \* \* \* \* \* \* \* \* \* \* \* \*



1790805_1.PDF

# Exhibit N

# CRAVATH, SWAINE & MOORE LLP

### WORLDWIDE PLAZA
### 825 EIGHTH AVENUE
### NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1922

December 26, 2007

Amgen Inc. v. ARIAD Pharmaceuticals, Inc.,
No. 06-259-MPT

Dear Daniel:

        I write in response to your letter to Perry Goldberg dated December 18, 2007.

        We disagree with your assertion that ARIAD is not entitled to the particularized discovery sought by Requests Nos. 181-91 and 193-94 of ARIAD's Fifth Set of Requests for Production of Documents and Interrogatories Nos. 25-27 of ARIAD's Third Set of Interrogatories, which seek certain documents and information about Enbrel supplied by Amgen from the United States for sale abroad.

        Contrary to your assertions, both Amgen's and ARIAD's pleadings contain allegations of infringement /non-infringement pursuant to 35 U.S.C. § 271(f) ("Section 271(f)"). The discrete discovery ARIAD seeks is relevant to those claims.

        ARIAD seeks a broad declaration of infringement that the "Amgen Entities . . . have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing Enbrel . . . ." Although your letter seeks to recast ARIAD's infringement allegations for indirect infringement as relating only to subsections (b) and (c) of Section 271, that interpretation is incorrect.[1] Notably ARIAD's

---

[1] While you appear to fault ARIAD for not referencing subsection (f) of Section 271 in the pleading setting forth its counterclaims, neither party's pleadings reference particular subsections of Section 271, nor is there any requirement that they do so. *Kunkel v. Topmaster Int'l, Inc.*, 906 F.2d 693, 696-97 (Fed. Cir. 1990).

2

pleading does not indicate where the direct infringing activities occur (whether inside or outside the United States), and thus it does not disclaim claims related to domestic activities that may lead to infringement abroad. Similarly, the reference to "induc[ed] infringement" in ARIAD's pleading does not disclaim a claim under Section 271(f) — indeed, paragraph (1) of Section 271(f) expressly incorporates the inducement element. Likewise, the reference to "contributor[y] infringing" does not disclaim a claim under Section 271(f) because paragraph (2) thereof tracks subsection (c) of Section 271. In sum, we fail to see how ARIAD has not pled facts sufficient to place Amgen on notice that a claim under Section 271(f) was at issue in this litigation. *See Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) ("a patentee need only plead facts sufficient to place the alleged infringer on notice" such that "an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself.").

In any event, the broad declaration of noninfringement that Amgen seeks — that it "do[es] not directly or indirectly infringe any valid claim of the '516 patent through *any* activities related to the Enbrel and/or Kineret products" — clearly implicates Section 271(f).

Even if Amgen had not sought a broad declaration of noninfringement and ARIAD had not counterclaimed for infringement pursuant to Section 271(f), the discovery at issue is clearly relevant to ARIAD's claims of infringement that you discuss in your letter. The term "relevant," within the meaning of Fed. R. Civ. P. 26, "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The commercial success of Enbrel — whether sold domestically or abroad — is directly relevant to at least one of the factors ARIAD's damages expert will analyze in the context of the reasonable royalty calculation set forth in *United States Plywood v. Georgia-Pacific*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (noting that one relevant factor to the analysis is "[t]he established profitability of the product; its commercial success and its current popularity.").

We decline in the context of a discovery dispute to address your substantive argument that Section 271(f) "does not allow a patentee to recover for infringement of a method patents [sic] when components are sold in the United States and used in a foreign country." We disagree with your interpretation of Federal Circuit precedent, but will reserve our response for substantive briefing after Amgen has complied with its discovery obligations.

3

In view of the fast-approaching deadline for our damages expert report, we request that you comply with your discovery obligations promptly, or agree to meet and confer as soon as possible so that we may seek the Court's assistance in a timely manner.

Very truly yours,

David Greenwald

Daniel S. Ebner, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601

BY E-MAIL

Copy to:  Counsel of record

# Exhibit O

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Daniel Stephen Ebner
To Call Writer Directly:
312 469-7017
debner@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

January 14, 2008

David Greenwald                                              **VIA E-MAIL**
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

Re:     *Amgen et al. v. ARIAD Pharmaceuticals, Inc.*, D. Del. Civil Action No.
            06-259-MPT

Dear David:

I write with respect to your letter of December 26, 2007, regarding discovery relating to
foreign sales of Enbrel® and Kineret®. As I discussed in greater length in my December 18,
2007, letter to Perry Goldberg, it continues to be the Amgen Entities' position that ARIAD and
the Institutions (the "Defendants") have not properly pled a claim for infringement under 35
U.S.C. § 271(f).

In addition, your refusal to address whether the Defendants' even have a legal basis for
alleging infringement of a method claim under § 271(f) is misplaced. A party cannot take
discovery that is not relevant to a claim or defense. Fed. R. Civ. P. 26. And courts routinely
limit discovery that is unduly burdensome or intrusive, and of minimal relevance. *See, e.g., AML
Intern., Ltd. v. Orion Pictures Corp.*, 1990 WL 364469, *5 (S.D.N.Y. 1990) (citing Fed. R. Civ.
P. 26(b)(1)(iii)) ("the court finds that Magistrate Lee's ruling instead represented her line-
drawing to try to minimize both the burden and the degree of intrusiveness."). Please reconsider
your position in this regard; or at least outline your argument about whether the Defendants have
a claim for damages under § 271(f) so that we may productively work to resolve this issue.

I am generally available Wednesday, January 16, 2008, and Thursday, January 17, 2008,
to meet and confer on this issue.

**KIRKLAND & ELLIS LLP**

January 14, 2008
Page 2

Sincerely,

Daniel Stephen Ebner

# Exhibit P

Radu Lelutiu                  To
02/04/2008 07:56 PM           cc
                              bcc
                   Subject    Fw: Proposed amended pleading

----- Forwarded by Radu Lelutiu/NYC/Cravath on 02/04/2008 07:56 PM -----



Marc Sernel
<msernel@kirkland.com>            To    Radu Lelutiu <RLelutiu@cravath.com>
02/04/2008 06:23 PM               cc    dgreenwald@cravath.com
                             Subject    Proposed amended pleading

Radu,

Per your request of last Thursday seeking consent regarding ARIAD's proposed amended pleading, our position is that we will consent to a pleading that reflects ARIAD's dismissal of allegations pertaining to Wyeth, the assay patents, and Kineret. We do not consent at this time to your proposed addition of infringement allegations based on 35 U.S.C. 271(f). We are willing to further consider this issue if you will provide us with a copy of your memorandum in support of a motion to amend or at least the legal authority that you believe supports the addition of this new allegation at this late point in view of the obvious delay and prejudice, and we believe futility, underlying this new claim. Similarly, if you are unwilling to provide a copy prior to filing, we are willing to consider our position after you file your motion for leave to amend. Please let me know if you have any questions.

Thanks -- Marc

Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph
Chicago, IL 60601
(312) 861-2389
msernel@kirkland.com

****************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
****************************************************

# Exhibit Q

| | | |
|---|---|---|
| **Matthew Smith** | To | Matthew Buchwach/NYC/Cravath@Cravath |
| 02/07/2008 12:31 PM | cc | |
| | bcc | |
| | Subject | Proposed amended pleading |

| | | |
|---|---|---|
| **Radu Lelutiu/NYC/Cravath** | To | Marc Sernel <msernel@kirkland.com> |
| 02/07/2008 12:23 PM | cc | dgreenwald@cravath.com |
| | Subject | Re: Proposed amended pleading |

Marc:

Thank you for your email.  We will indicate in our moving papers that Amgen consents to certain portions of ARIAD's motion, but not to the amendments addressing Section 217(f).

We do not agree that the motion to amend will cause Amgen prejudice; nor do we agree that the motion is untimely, or that our claims under Section 271(f) are futile.

 At this point, since the parties have already exchanged several letters regarding the relevant issues, we believe that the most efficient way to resolve our long-standing dispute is to proceed with our motion.

Regards,

Radu A. Lelutiu
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue, 4210
New York, NY 10019
(212) 474-1420
(212) 474-1000 (fax)
Marc Sernel <msernel@kirkland.com>



| | | |
|---|---|---|
| **Marc Sernel**<br>**<msernel@kirkland.com>** | To | Radu Lelutiu <RLelutiu@cravath.com> |
| 02/04/2008 06:23 PM | cc | dgreenwald@cravath.com |
| | Subject | Proposed amended pleading |

Radu,

Per your request of last Thursday seeking consent regarding ARIAD's proposed amended pleading, our position is that we will consent to a pleading that reflects ARIAD's dismissal of allegations pertaining to Wyeth, the assay patents, and Kineret.  We do not consent at this time to your proposed addition of infringement allegations based on 35 U.S.C. 271(f).  We are willing to further consider this issue if you will

provide us with a copy of your memorandum in support of a motion to amend or at least the legal authority that you believe supports the addidion of this new allegation at this late point in view of the obvious delay and prejudice, and we believe futility, underlying this new claim.  Similarly, if you are unwilling to provide a copy prior to filing, we are willing to consider our position after you file your motion for leave to amend.  Please let me know if you have any questions.

Thanks -- Marc

Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph
Chicago, IL 60601
(312) 861-2389
msernel@kirkland.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# Exhibit R



# AMGEN INC (AMGN)

ONE AMGEN CENTER DRIVE
THOUSAND OAKS, CA 91320-1799
805-447-1000
http://www.amgen.com/

## 10-K

**FORM 10-K**
**Filed on 02/28/2007 – Period: 12/31/2006**
**File Number 000-12477**



**Table of Contents**

and may negatively impact healthcare provider prescribing behavior, use of our product, regulatory or private healthcare organization medical guidelines and reimbursement practices. Sales for EPOGEN® in 2007 could, however, be favorably impacted to a certain degree by underlying demand in the free–standing dialysis centers, which we believe will remain consistent with the annual patient population growth of 3 to 4 percent, and the lessened impact of conversion to Aranesp® in the U.S. hospital dialysis clinics, which we believe stabilized in mid–2006. Dialysis patients receiving treatment for anemia associated with end stage renal disease with EPOGEN® are covered primarily under medical programs provided by the federal government. Therefore, going forward, we believe EPOGEN® sales growth will further depend on changes in reimbursement rates or a change in the basis for reimbursement by the federal government. We believe EPOGEN® sales growth will also be dependent, in part, on future governmental or private organization regulations or guidelines relating to the use of our products, cost containment pressures from the federal government on healthcare providers and the effects of pricing strategies (see "Item 1A. Risk Factors — Our sales depend on payment and reimbursement from third–party payers, and, to the extent that reimbursement for our products is reduced, this could negatively impact the utilization of our products.").

*ENBREL*

For the years ended December 31, 2006, 2005 and 2004, total ENBREL sales by geographic region were as follows (amounts in millions):



| | 2006 | Change | 2005 | Change | 2004 |
|---|---|---|---|---|---|
| ENBREL — International | 143 | 39% | 103 | 41% | 73 |

ENBREL sales growth for the year ended December 31, 2006 was driven by increased demand in both the rheumatology and dermatology segments. The increase in demand for the year ended December 31, 2006 also includes the impact of a 4.9 percent U.S. price increase that went into effect May 1, 2006. While ENBREL continued to maintain a leading position in both rheumatology and dermatology, we have experienced moderate share loss in both segments in 2006 compared to 2005. ENBREL sales growth was also affected in 2006 by slowing segment growth in dermatology and by increased competitive activities in both segments.

ENBREL sales growth for the year ended December 31, 2005 was driven by demand, reflecting strong growth in both rheumatology and dermatology. ENBREL sales growth benefited from its competitive profile and significant growth of biologics in both the rheumatology and dermatology segments.

Sales growth for ENBREL in 2007 will depend on growing both the rheumatology and dermatology segments. In addition, future ENBREL sales growth will be dependent on such factors as the effects of competing products or therapies and, in part, our ability to differentiate ENBREL based on safety and efficacy; segment growth; the availability, extent and access to reimbursement by government and third–party payers; cost containment pressures from governments and private insurers on healthcare providers; adverse events or results from clinical trials or studies performed by us or by others which may expand safety labeling and may negatively impact healthcare provider prescribing behavior, use of our product, regulatory or private healthcare organization medical guidelines and reimbursement practices; governmental or private organization regulations or guidelines relating to the use of our products; and the effects of pricing strategies (see "Item 1A. Risk Factors — Our sales depend on payment and reimbursement from third–party payers, and, to the extent that reimbursement for our products is reduced, this could negatively impact the utilization of our products.").