Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 46 of 92  of November 9, 2006 Response*

claims, i.e. claims 1-2, 5-6, 8, 9, 20-21, 25-27, 29, 31, 32, 36-38, 40, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89 and 93-97, are entitled to at least an April 21, 1989 effective filing date. On this basis alone, this rejection based on art after April 21, 1989 should be withdrawn.

Notwithstanding, Patentees explain below that even if the claims are not entitled to an April 21, 1989 effective filing date, *Shirakawa* does not anticipate the claims.

## I) Factual errors in August 2, 2006 Office Action.

On page 12 of the Office Action, the Examiner erroneously stated that "Shirikawa [*sic*] teaches the reduction of NF-kB activity in induced cells using agents that inhibit protein kinase C." The experiments *Shirakawa* describes in which H8 was administered to cells, including the specific experiments the Examiner relied on (Fig. 1, portions of Fig. 2), were all conducted by <u>pretreating</u> cells with H8 for 2 hours before cells were stimulated with IL-1. (*Shirakawa* at 2426; Declaration of Dr. Verma, ¶ 153.)

### ii) Shirakawa does not show reduction of NF-kB activity in induced cells, as required by the claims.

*Shirakawa* reports various experiments conducted in a mouse pre-B cell line 70Z/3, and in human natural killer-like cell line, YT. *Shirakawa* describes a series of experiments conducted to determine whether the ability of IL-1 in these cells to stimulate NF-kB binding activity required the activity of cAMP-activated kinases. (*Shirakawa* at 2424). The experiments *Shirakawa* describes in which H8 was administered to cells, including the specific experiments the Examiner relies on, (Fig. 1, portions of Fig. 2) were all conducted by pretreating cells with H8 for 2 hours before cells were stimulated with IL-1. (*Shirakawa* at 2426). Again, as in *Meichle*, pretreatment was performed to prevent a cellular response to IL-1 by inactivating PK-C

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 47 of 92  of November 9, 2006 Response*

and PK-A (and most likely other kinases) before stimulating the cell with IL-1. (*Shirakawa* at 24325-26). The use of these inhibitors as described by *Shirakawa*, therefore, was not on induced cells, as assumed by the Examiner.  None of the experiments in *Shirakawa*, therefore, could anticipate the pending claims requiring reducing activity that has first been induced. (Declaration of Dr. Verma, ¶ 153.)

> iii) *Shirakawa does not teach use of inhibitor while an inducer is also present.*

On pages 12-13 of the Office Action, the examiner also contended that based on CAT reporter assays described in Fig. 1, *Shirakawa* teaches use of PK inhibitors (H8) to reduce NF-kB-mediated gene transcription by reducing NF-kB activity, and therefore would have practiced the above claims.  As noted above, in this experiment cells were pretreated with H8 for two hours before being treated with IL-1. (*Shirakawa* at 2425).  In fact, Fig. 1 indicates that before being treated with IL-1, the cells were washed and the H8 <u>removed</u>.  The use of H8 in this experiment as described by *Shirakawa*, therefore, was not in induced cells and could not have reduced any induced effect in the cell. (Declaration of Dr. Verma, ¶ 154.)

> iv) *Shirakawa is missing critical controls necessary to show NF-kB effects.*

Each of the three PK inhibitors (H7, H8 and staurosporine) in particular at dose ranges used in *Meichle* and *Shirakawa*, are relatively unspecific and in addition to PK-C and PK-A affect numerous kinases.  Significantly, by inhibiting other kinases, these agents can inhibit transcription unrelated to effects on PKC, or NF-kB.  In particular, both H7 and H8 have been demonstrated to block gene expression and to inhibit mRNA chain elongation, most likely by inhibiting TFIIH kinase activity. (*Yankulov et al.* 1995; *Kumahara et*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 48 of 92  of November 9, 2006 Response*

*al.* 1999; Declaration of Dr. Verma, ¶ 155. ). Therefore, appropriate controls are a necessity in order to properly interpret the effects of such inhibitors on a transcriptional assay, such as CAT reporter assay, as being related to NF-kB. *Shirakawa* omits any such controls from CAT reporter experiment described in Fig. 1, such as, for example, evidence that H8 would not affect expression of appropriately matched CAT construct lacking an NF-kB binding site. One of skill would therefore not have read *Shirakawa* as teaching that one could use H8 to reduce NF-kB activity (Declaration of Dr. Verma, ¶¶ 152-155.)

Accordingly, even if the claims were not entitled to a filing date prior to the date of *Shirakawa* (which they are), *Shirakawa* still would not anticipate or make obvious the invention recited by each of claims 1-2, 5-6, 8, 9, 20-21, 25-27, 29, 31, 32, 36-38, 40, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89 and 93-97. Accordingly, the rejection of these claims based on *Shirakawa* should be reconsidered and withdrawn.

### 2.    Intervening References Relating To Cyclosporin A

A common fundamental flaw exists in all of the CsA art presented in the April 4, 2005 Request for *Ex Parte* Reexamination, and relied upon by the Examiner. CsA has now been shown to have its effects through a different nuclear factor, NFAT, and not through NF-kB. Patentees respectfully direct the Examiner's attention to the Declaration of Dr. Verma, ¶¶ 22-52, incorporated herein by reference, which explains this and other flaws in the CsA art cited. For the sake of completeness, Patentees summarize all of the deficiencies of the each cited CsA reference in the sub-sections that follow.

### 1.    §102(b) or 103 - Schmidt (8/90) - *Intervening* Art

On pages 13-15 of the August 2, 2006 Office Action, the Examiner rejected claims 1-9, 11, 20-21, 25-29, 36-40, 42-43, 47-51, 53-54, 58-

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 49 of 92  of November 9, 2006 Response*

62, 64-65, 69-73, 75-76, 80-86, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201 under 35 U.S.C. 102(b) as allegedly anticipated, or alternatively rendered obvious under §103, by *Schmidt et al., J. Virology* 64:4037-4041 (August 1990). The Examiner summarized the rejection by stating that, "*Schmidt* teaches administration of Cyclosporin A ("CsA") to cells which substantially reduced NF-kB activity in those cells thus inhibiting expression of genes whose transcription is regulated by NF-kB activity. In addition, these references all utilized the HIV LTR promoter in their experiments and demonstrated that CsA reduced the expression of viral genes."

The Examiner alleged that the instant claims are drawn to reducing NF-kB activity in eukaryotic (e.g. claims 1 or 2) or mammalian cells (e.g. claim 11) to effect inhibited expression of a gene under transcriptional control of NF-kB, and that NF-kB activity can be affected by diminishing induced NF-kB mediated intracellular signaling (claims 6-9) to inhibit associated gene (viral gene such as HIV: claims 1-4) expression of a cytokine protein(claim 5) in a eukaryotic cell. Of note, however, is that the Examiner 1) made the rejection under an incorrect claim construction, and 2) appears to have not considered all of the rejected dependent claims, each of which recites additional patentable elements.

The Examiner also alleged that the *Schmidt* reference discloses that administration of CsA reduces NF-kB in cells (e.g. Jurkat cells) and therefore must inherently reduce NF-kB-regulated gene expression. The Examiner alleged that *Schmidt* utilized the Electrophoretic Mobility Shift Assay ("EMSA") disclosed in the '516 patent to measure NF-kB activity to determine that "PHA-mediated induction of complexes binding to the kB enhancer was completely abrogated by [1 ug/ml] CsA (Fig. 1, lane 6; no B or A shifts) . . . ." See *Schmidt* at 4038. The Examiner also alleged that these results were confirmed using an NF-kB CAT reporter assay as described in the '516 patent, for example

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 50 of 92  of November 9, 2006 Response*

at Col. 17, line 66-Col. 18, line 23.


Thus, the Examiner alleged that *Schmidt* showed that CsA reduced PHA-induced NF-kB activity and, therefore, reduced the expression of a gene (CAT) that was regulated by NF-kB, and that *Schmidt* described the use of CsA at concentrations that reduce NF-kB activity and reduce NF-kB regulated gene expression. With reference to *Exhibit* G-1 of the 90/007,503 Request, the Examiner alleged that the *Schmidt* reference expressly anticipates at least claims 1-2, 5-9, 20-21, 25-29, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89, and 93-97 of the '516 patent.


The Examiner reasoned that since *Schmidt* used the HIV LTR gene, *Schmidt* demonstrated that CsA reduced viral gene expression thereby anticipating instant claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110, 114-117, 192-193 and 197-201; and the use of the HIV LTR gene by *Schmidt* renders instant claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110, 114-117, 192-193 and 197-201 immediately envisaged, or alternatively, *prima facie* obvious in light of the fact that HIV LTR is responsible for regulating the expression of viral (HIV) genes. The Examiner concluded that it would have been anticipated, or alternatively *prima facie* obvious to regulate NF-kB activity as in *Schmidt* in order to affect associated viral (e.g. HIV) gene expression.


*Patentees' reply*
In response, Patentees respectfully traverse the Examiner's position. Initially, Patentees point out that claims 7, 28, 39, 81, 83, 85 and 86 have been cancelled without prejudice. Additionally, Patentees have explained in Section IV above that the remaining rejected claims, i.e. claims 1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201, are entitled to at least an April 21, 1989 effective filing date. On this basis alone,

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 51 of 92  of November 9, 2006 Response*

this rejection based on art after April 21, 1989 should be withdrawn.


Notwithstanding, Patentees explain below that even if the claims are not entitled to an April 21, 1989 effective filing date, *Schmidt* does not anticipate the claims.


### I) *Factual errors in August 2, 2006 Office Action.*


On page 14 of the Office Action, the Examiner erroneously stated that "*Schmidt* utilized the Electrophoretic Mobility Shift Assay ("EMSA") disclosed in the '516 patent." Among other things, most critically *Schmidt* did not use the same oligonucleotide probe. The particular oligonucleotide probe used as the binding site determines the specificity of the EMSA for measuring NF-kB binding activity under a particular experimental condition. The oligonucleotide probe Schmidt used corresponds to a portion of the HIV enhancer, which has now been shown to bind other factors, such as NFAT. (Declaration of Dr. Verma, ¶¶ 25-27. )


### ii) *Schmidt does not show reduction of NF-kB activity in induced cells, as required by the claims.*

In the experiments relied on by the Examiner, CsA was not administered to Jurkat cells which had first been induced with PHA (*Schmidt*, Figs. 1 and 4). Instead, Jurkat cells were <u>simultaneously</u> treated with CsA and PHA. None of these experiments would therefore have carried out the various methods described by these claims. None of the experiments in *Schmidt*, therefore, could anticipate the pending claims requiring reducing activity that has first been induced. (Declaration of Dr. Verma, ¶ 25.)


### iii) *A proper interpretation of Schmidt, in view of the '516 patent and other studies, indicates that CsA sensitive binding activity does not correspond to NF-kB, but instead corresponds to another factor, NFAT.*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 52 of 92   of November 9, 2006 Response*

In his attached Declaration Dr. Verma explains the basis for concluding that the effects of CsA are mediated through NFAT, not through NF-kB. (Declaration of Dr. Verma, ¶¶ 28-36.) With respect to *Schmidt*, Patentees emphasize that *Schmidt's* own experimental data supports this conclusion.

For example, *Schmidt* observed that PHA-induced binding to an HIV enhancer probe was CsA sensitive in Jurkat cells.  In contrast, however, as evident from the experiment reported in Fig. 24 of the subject patent where an HIV enhancer was not used, PHA alone did not induce NF-kB binding activity in Jurkat cells.  The HIV enhancer is now known to bind to NFAT.  Indeed, when *Schmidt* assessed induction of NFAT binding activity in Jurkat cells using an EMSA specific for NFAT, (*Schmidt*, fig. 2), there was "good activation of NFAT-1 with PHA alone, but not with PMA alone."  This data explains that the positive EMSA binding activity upon PHA induction that Schmidt observed with the HIV enhancer likely corresponded to NFAT. (Declaration of Dr. Verma, ¶ 31.)

Accordingly, even if the claims are not entitled to a filing date prior to the date of *Schmidt* (which they are), *Schmidt* still does not anticipate or make obvious the invention recited by each of claims 1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201.  Accordingly, the rejection of these claims based on *Schmidt* should be reconsidered and withdrawn.

## 2. §102(b) or 103 - Emmel (12/89) - *Intervening Art*

On pages 15-16 of the August 2, 2006 Office Action, the Examiner rejected claims 1-9, 11, 20-21, 25-29, 36-40, 42-43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201 under 35 U.S.C. 102(b) as allegedly anticipated, or alternatively rendered obvious under 103, by *Emmel*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 53 of 92  of November 9, 2006 Response*

et al., Science, *246* (Dec. 1989): 1617-20.  The Examiner summarized the  rejection  in  the  following  assertion:  "*Emmel*  teaches administration of Cyclosporin A ("CsA") to cells which substantially reduced NF-kB activity in those cells thus inhibiting expression of genes  whose  transcription  is  regulated  by  NF-kB  activity.   In addition, these references all utilized the HIV LTR promoter in their experiments and demonstrated that CsA reduced the expression of viral genes."

The Examiner alleged that the instant claims are drawn to reducing NF-kB activity in eukaryotic (e.g. claims 1 or 2) or mammalian cells (e.g.  claim  11)  to  effect  inhibited  expression  of  a  gene  under transcriptional control of NF-kB. For example, NF-kB activity can be effected  by  diminishing  induced  NF-kB  mediated  intracellular signaling (claims 6-9) to inhibit associated gene (viral gene such as HIV: claims 1-4) expression of a cytokine protein (claim 5) in a eukaryotic cell.

The Examiner also alleged that similar to the *Schmidt* reference discussed above, the *Emmel* reference discloses that administration of CsA reduces NF-kB in cells (e.g. eukaryotic Jurkat cells) that inherently reduces NF-kB-regulated gene expression.   The Examiner alleged that, like *Schmidt, Emmel* described the effects of CsA on Jurkat cells that were induced with PHA and PMA and CsA was shown (Fig. 3, .01-1 ug/ml) to reduce NF-kB binding activity, and in the CAT reporter assay, cells were transfected with a CAT reporter gene that was engineered to be regulated by HIV LTR gene, i.e. the gene had an NF-kB binding site incorporated into its regulatory region. The Examiner alleged that, as shown in Fig. 2D, CsA significantly reduced NF-kB activity thereby reducing the NF-kB-mediated expression of CAT, and as shown in Figure 3, 0.01-1 ug/ml (10-10000 ng/ml) CsA was found to reduce NF-kB binding activity. Thus, *Emmel* described the use of CsA at concentrations that reduce NF-kB activity and reduce NF-kB regulated gene expression, and as such, as shown in more detail

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 54 of 92  of November 9, 2006 Response*

in *Exhibit G-1* of the 90/007,503 Request, the *Emmel* reference
expressly anticipates at least claims 1-2, 5-9, 20-21, 25-29, 36-40,
53-54, 58-62, 64-65, 69-73, 75-76, 80- 86, 88-89, and 93-97 of the
'516 patent.

The Examiner also alleged that since *Emmel* used the HIV LTR gene,
*Emmel* demonstrated that Cyclosporin A reduced viral gene expression
thereby anticipating claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110,
114-117, 192-193 and 197-201, and *Emmel's* use of the HIV LTR gene
renders instant claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110, 114-
117, 192-193 and 197-201 immediately envisaged, or alternatively,
*prima facie* obvious since HIV LTR is responsible for regulating the
expression of viral (HIV) genes.

*Patentees' reply*

In response, Patentees respectfully traverse the Examiner's position.
Initially, Patentees point out that claims 7, 28, 39, 81, 83, 85 and
86 have been cancelled without prejudice.  Additionally, Patentees
have explained in Section IV above that the remaining rejected
claims, i.e. claims 1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-
43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-
97, 106-107, 109-110, 114-117, 192-193 and 197-201, are entitled to
at least an April 21, 1989 effective filing date.  On this basis
alone, this rejection based on art after April 21, 1989 should be
withdrawn.

Notwithstanding, Patentees explain below that even if the claims are
not entitled to an April 21, 1989 effective filing date, *Emmel* does
not anticipate the claims.

   I) *Factual errors in August 2, 2006 Office Action.*

On page 16 of the Office Action, the Examiner stated that "*Emmel*
describes the effects of CsA on Jurkat cells that <u>were</u> induced with

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 55 of 92  of November 9, 2006 Response*

PHA and PMA" (emphasis added). This does not accurately describe the experiments Emmel conducted. In the experiments of Emmel the Examiner relies on (Figs. 2D, 3), CsA was not administered to Jurkat cells that had been induced with PHA/PMA. Instead, Jurkat cells were simultaneously stimulated with PHA/PMA and CsA. In these experiments, CsA could not have reduced signaling that was occurring. (Declaration of Dr. Verma, ¶ 38.)

> *ii) Emmel does not show reduction of NF-kB activity in induced cells, as required by the claims.*

In *Emmel*, Jurkat cells were simultaneously stimulated with PHA/PMA and CsA. In these experiments, CsA could only have prevented the ability of PHA/PMA to induce signaling and not as the examiner assumes, have reduced signaling that was occurring. None of the experiments in *Emmel*, therefore, could anticipate the pending claims requiring reducing activity that has first been induced. (Declaration of Dr. Verma, ¶ 38.)

> *iii) A proper interpretation of Emmel, in view of the '516 patent and other studies, indicates that CsA sensitive binding activity does not correspond to NF-kB, but instead corresponds to another factor, NFAT.*

In his attached Declaration Dr. Verma explains the basis for concluding that the effects of CsA are mediated through NFAT, not through NF-kB. (Declaration of Dr. Verma, ¶¶ 28-36 and 39-41.) With respect to *Emmel*, Patentees emphasize that *Emmel's* own experimental data supports this conclusion.

For example, Emmel observed that CsA "virtually eliminated" PHA/PMA-stimulated CAT expression driven by the intact IL-2 enhancer, and that CsA effectively prevented PHA/PMA-stimulated expression of CAT reporter driven by tandem repeats of an NFAT binding site. (*Emmel*, Figure 2B). Significantly, however, deleting the NF-kB binding site did not affect the ability of CsA to prevent PHA/PMA from inducing

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 56 of 92  of November 9, 2006 Response*

CAT expression. (*Emmel* at 1618, Figure 1).  These data clearly show
that NF-kB does not play a role in mediating the effect of CsA on Il-
2 gene expression.  Indeed, these data in *Emmel* confirm our current
understanding that in Jurkat cells, CsA acts through NFAT, and not
through NF-kB.  (Declaration of Dr. Verma, ¶ 40.)

> *iv) Emmel is missing critical controls necessary to show
> NF-kB effects.*

The oligonucleotide probe *Emmel* used would not have discriminated
between NF-kB and NFAT binding activities.  Accordingly, multiple
bands appear in extracts from PHA/PMA treated cells under the
conditions *Emmel* used (*Emmel* Fig. 3).  (For example, compare with
Fig. 24B of the subject patent indicating only a single inducible
band in PHA/PMA-treated Jurkat cells.)  Appropriate controls would
have been critical for the correct identification of the different
complexes bound to the probe, and to the overall interpretation of
the EMSA data.  (Declaration of Dr. Verma, ¶¶ 41-43.)

Accordingly, even if the claims are not entitled to a filing date
prior to the date of *Emmel* (which they are), *Emmel* still does not
anticipate or make obvious the invention recited by each of claims
1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-43, 47-51, 53-54, 58-
62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-97, 106-107, 109-110,
114-117, 192-193 and 197-201.  Accordingly, the rejection of these
claims based on *Emmel* should be reconsidered and withdrawn.

### 3. §102(b) or 103 - Brini (9/90) - *Intervening Art*

On pages 17-18 of the August 2, 2006 Office Action, the Examiner
rejected claims 1-9, 11, 20-21, 25-29, 36-40, 42-43, 47-51, 53-54,
58-62, 64-65, 69-73, 75-76, 80-86, 88-89, 93-97, 106-107, 109-110,
114-117, 192-193 and 197-201 under 35 U.S.C. 102(b) as allegedly
anticipated, or alternatively, rendered obvious under § 103, by
*Brini,* Eur. Cytokine Net. 1: 131 -139 (Sept. 1990).  The Examiner

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 57 of 92  of November 9, 2006 Response*

alleged in summary that, "*Brini* teaches administration of Cyclosporin A (CsA) to cells which substantially reduced NF-kB activity in those cells thus inhibiting expression of genes whose transcription is regulated by NF-kB activity.  In addition, these references all utilized the HIV LTR promoter in their experiments and demonstrated that CsA reduced the expression of viral genes."

The Examiner alleged that the instant claims are drawn to reducing NF-kB activity in eukaryotic (e.g, claims 1 or 2) or mammalian cells (e.g. claim 11) to effect inhibited expression of a gene under transcriptional control of NF-kB. For example, NF-kB activity can be effected by diminishing induced NF-kB mediated intracellular signaling (claims 6-9) to inhibit associated gene (viral gene such as HIV: claims 1-4) expression of a cytokine protein(claim 5) in a eukaryotic cell.

The Examiner then alleged that the *Brini* reference discloses that administration of Cyclosporin A (CsA) reduces NF-kB in cells (e.g. T-cells) that inherently reduces NF-kB-regulated gene expression. Particularly, the Examiner alleged that *Brini* disclosed the use of 1 ug/ml CsA in human PBM (peripheral blood T-lymphocytes) that had been induced with PHA; *Brini* assessed NF-kB activity in an EMSA binding assay (Fig. 5) using the same HIV-1 LTR gene site used in the '516 patent to assess NF-kB activity and binding (see '516 patent, columns 17-18); *Brini* concluded that "CsA reduced the PHA-induced binding of transactivating factors from T- cells and kB-like sequences which are present in the IL-2R alpha gene and in the HIV-1 LTR gene (Figures 3 and 4)", referring to *Brini* at page 137.  The Examiner also alleged that *Brini* reported the effects of CsA on expression levels of IL-2 Receptor-alpha (Brini at page 131 Abstract) which is taught by the '516 patent to be regulated by PHA-induced NF-kB activity in T-cells, referring to col. 17, lines 21-24 of the subject patent ("NF-kB is induced in T-cells by a transactivator (tax) of HTLV-1 or by PMA/PHA treatment and thereby activates the IL-

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 58 of 92  of November 9, 2006 Response*

2 receptor alpha gene and possibly the IL-2 gene"). The Examiner then alleged that *Brini* described the use of CsA at concentrations that reduce NF-kB activity and reduce NF-kB regulated gene expression as allegedly shown in more detail in *Exhibit G-1* of the 90/007,503 Request, and that "the Emmel [sic] reference expressly anticipates at least claims 1-2, 5-9, 20-21, 25-29, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89, and 93-97 of the '516 patent."

The Examiner also alleged that since *Brini* used the HIV LTR gene, Brini demonstrated that CsA reduced viral gene expression thereby anticipating claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110, 114-117, 192-193 and 197-201, and *Brini's* use of HIV LTR renders instant claims 3, 4, 11, 42-43, 47-51, 106-107, 109-110, 114-117, 192-193 and 197-201, immediately envisaged, or alternatively, prima facie obvious since HIV LTR is responsible for regulating the expression of viral (HIV) genes.

### *Patentees' reply*

In response, Patentees respectfully traverse the Examiner's position. Initially, Patentees point out that claims 7, 28, 39, 81, 83, 85 and 86 have been cancelled without prejudice.  Additionally, Patentees have explained in Section IV above that the remaining rejected claims, i.e. claims 1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201, are entitled to at least an April 21, 1989 effective filing date.  On this basis alone this rejection based on art after April 21, 1989 should be withdrawn.

Notwithstanding, Patentees explain below that even if the claims are not entitled to an April 21, 1989 effective filing date, *Brini* does not anticipate the claims.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 59 of 92  of November 9, 2006 Response*

*I) Factual errors in August 2, 2006 Office Action.*

On page 17 of the Office Action, the Examiner erroneously stated that, "*Brini* disclosed the use of 1 ug/ml CsA in human PBM (peripheral blood T-lymphocytes) that <u>had been</u> induced with PHA." (Emphasis added.)  Notably, in all experiments of *Brini*, "CsA was always added to the cells 30 min before stimulation" with PHA (*Brini* at 132).  (Declaration of Dr. Verma, ¶ 45.)

*ii) Brini does not show reduction of NF-kB activity in induced cells, as required by the claims.*

In *Brini*, "CsA was always added to the cells 30 min before stimulation" with PHA (*Brini* at 132).  None of the experiments in *Brini*, therefore, could anticipate the pending claims requiring reducing activity that has first been induced. (Declaration of Dr. Verma, ¶¶ 44-46.)

*iii) The CsA influenced binding activity observed by Brini may illustrate what we now know, i.e. that it does not correspond to NF-kB, but instead corresponds to another factor, NFAT.*

In his attached Declaration Dr. Verma explains the basis for concluding that the effects of CsA are mediated through NFAT, not through NF-kB. (Declaration of Dr. Verma, ¶¶ 28-36 and 47-49.)

*iv) Brini is missing critical controls necessary to show NF-kB effects.*

T cells can exhibit substantial differences in their response to PHA and PMA.  As shown in Figure 24 A of the subject patent, PHA alone did not induce measurable amounts of NF-kB binding activity in the Jurkat T-cell line.  Without proper controls in *Brini*, there is no basis to assume that treatment of T-cells with PHA alone (as compared to treatment with both PHA and PMA) would similarly induce NF-kB

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 60 of 92  of November 9, 2006 Response*

activity so as to induce expression of any gene.  In fact, Brini reports that PHA appeared to induce binding activity of at least one other transcription factor, AP1, having binding sites in the IL-2 receptor promoter (*Brini*, Figure 5).  Lastly, as noted above, even assuming the complexes *Brini* detected by EMSA (Figs. 3 and 4) correspond to NF-kB, there is no correlation between the presence of these complexes in the EMSA assays (Figs. 3 and 4) and IL-2 receptor mRNA expression (Fig. 2).   These data therefore fail to provide any basis for concluding that with the experimental conditions *Brini* used, the IL-2 receptor expression was regulated in any way by NF-kB. (Declaration of Dr. Verma, ¶¶ 50-52.)

Accordingly, even if the claims are not entitled to a filing date prior to the date of *Brini* (which they are), *Brini* still does not anticipate or make obvious the invention recited by each of claims 1-6, 8, 9, 11, 20-21, 25-27, 29, 36-38, 40, 42-43, 47-51, 53-54, 58-62, 64-65, 69-73, 75-76, 80, 82, 84, 88-89, 93-97, 106-107, 109-110, 114-117, 192-193 and 197-201.  Accordingly, the rejection of these claims based on *Brini* should be reconsidered and withdrawn.

## *Conclusion - CsA Intervening Art*

In conclusion, none of the "intervening" art anticipates Patentees' claims even if the claims are not entitled to an April 21, 1989 filing date.  However, as explained in Section VI above, Patentees' claims are entitled to an April 21, 1989 effective filing date. Accordingly, the rejections based on "intervening" art should be withdrawn because the claims rejected have an effective filing date before the "intervening" art date, and/or because the "intervening" art fails to teach subject matter falling within the claims.

In particular, claims 3, 4, 11, 42, 43, 47-49, 51, 107, 109, 110, 114, 115, 117, 192, 193, 197-199 and 201 have only "intervening" art cited against them.  Accordingly, claims 3, 4, 11, 42, 43, 47-49, 51, 107, 109, 110, 114, 115, 117, 192, 193, 197-199 and 201 should be

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 61 of 92  of November 9, 2006 Response*

confirmed patentable because they have an effective filing date before the "intervening" art, and/or because the "intervening" art fails to teach subject matter falling within these claims.

### 3.    Intervening References Relating To N-Acetyl-L-Cysteine

On pages 47-48 of the August 2, 2006 Office Action, the Examiner rejected claims 18 and 182-185 under 35 U.S.C. 102(a) as allegedly anticipated by *Staal* et al., Proc. Nat'l Acad. Sci. 87:9943 (Dec. 1990) ('7828 appendix E: incorporated by reference). The Examiner alleged in summary that, "*Staal et al.* (see Abstract; page 9945; Figures 4-5) disclose a method of inhibiting TNF-$\alpha$ by blocking NF-kB activation in mammalian cells (e.g. Jurkat cells) by administration of N-acetyl-L-cysteine (NAC)."

The Examiner alleged that *Staal* teaches a method of inhibiting TNF-$\alpha$ activation and, thus, signaling, in mammalian cells by reducing NF-kB activity. Specifically, the Examiner alleged that *Staal* discloses inhibiting TNF-$\alpha$ stimulation of 293.27.2 and Jurkat cells by selectively blocking NF-kB activation by administration of N-acetyl-L-cysteine (NAC), referring to Abstract and Fig. 5. The Examiner alleged that reduction of intracellular TNF-$\alpha$ signaling is demonstrated by decreased expression of a betagalactosidase reporter gene in Jurkat cells, which are mammalian (human) in origin, referring to Fig. 4.

The Examiner also alleged that claim 182, depending on claim 18, further recites that reducing NF-kB activity comprising reducing binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB, and that *Staal* anticipates claim 182 by teaching that high thiol levels (resulting from NAC administration) inhibit NF-kB activation by preventing phosphorylation of I-kB, since phosphorylation of I-kB is necessary for dissociation of NF-kB from its complex with I-kB. The Examiner

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 62 of 92  of November 9, 2006 Response*

alleged that since NAC administration keeps NF-kB complexed to its naturally occurring inhibitor I-kB, NF-kB is unavailable for binding NF-kB recognition sites on genes that are transcriptionally regulated by NF-kB. On this basis, the Examiner concluded that claim 182 is anticipated since NAC-mediated inactivation of NF-kB described in *Staal* inherently and necessarily results in reduced NF-kB binding to its recognition sites.

The Examiner also alleged that claims 183-185, depending on claim 18, and requiring that the method is carried out on human cells (claim 183), immune cells (claim 184), and lymphoid cells (claim 185), are also anticipated by *Staal*. The Examiner alleged that *Staal* discloses NAC inhibition of TNF-α stimulation in Jurkat cells (Fig. 4, p. 9945) which are cells derived from a human T-cell leukemia cell line, and, thus, are human, immune and lymphoid anticipating claims 183-185.

*Patentees' reply*

In response, Patentees note that *Staal* reports various experiments conducted in Jurkat cells, a human T cell lymphoma line, and 293.27.2, a cell line stably transfected with a CAT expression construct.   As *Staal* notes, NAC is a drug which can prevent a reduction in intracellular thiol levels by serving as a precursor for the intercellular thiol, glutathione (GSH). (*Staal* at 9943).  In previous studies, *Staal* had observed in certain T cell lines that NAC prevented TNF from stimulating certain cellular responses. (*Staal* at 9943). In this regard, *Staal* reported that TNF stimulation caused a rapid transient decrease in intracellular thiol levels. (*Staal* at 9944).  *Staal* here reports a series of experiments conducted to examine whether the ability of NAC to prevent a TNF-stimulated reduction in intracellular thiol levels also prevented TNF from activating NF-kB. (*Staal* at 9944).

Thus, the aim of the *Staal* study was to determine whether NAC, by inhibiting thiol levels, could act on cells before they experienced

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 63 of 92  of November 9, 2006 Response*

stimulation (*Staal* at 9944).   In particular, in the experiments
specifically relied upon by the Examiner, cells were always treated
simultaneously with both NAC and TNF-α. (*Staal* at 9945-46).   In these
experiments, NAC therefore could not have inhibited TNF-α signaling
by reducing induced NF-kB activity.   None of these experiments
therefore have administered NAC to induced cells. (Declaration of Dr.
Verma ¶¶ 160-162.)

Accordingly, *Staal* does not anticipate pending claims 18, 182 and
185, and the rejection based on *Staal* should be reconsidered and
withdrawn.

Furthermore, claims 18, 182 and 185 are entitled to at least an April
21, 1989 filing date as explained in Section VI herein.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 64 of 92  of November 9, 2006 Response*

VIII.    <u>THE CLAIMS ARE NOT INHERENTLY ANTICIPATED</u>

    **A.    Inherent Anticipation Requires a Showing That Each and Every Element of a Claim Necessarily Occurred in the Prior Art.**

A finding that a patent claim is anticipated requires a finding that all elements of that claim are found in a single prior art reference. *Studiengesellschaft Kohle m.b.H. v. Dart Industries* Inc., 726 F.2d 724, 727-28 (Fed. Cir. 1984). Any alleged inherency in extrinsic evidence requires that it "make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). Additionally, "inherency may not be established by probabilities or possibilities" but rather "must be necessarily present" in the single prior art reference. *Crown Operations Intl., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002)(internal quotations omitted).

    1.    The Extrinsic Evidence Relied upon by the Examiner Does Not Establish That the Prior Art Necessarily Discloses All <u>Elements of the Claims.</u>

In contrast to the requirements of the inherency doctrine, the extrinsic evidence relied upon by the Examiner fails to demonstrate that the unstated elements in the prior art are *necessarily* present. At best, the Examiner has shown that it is *possible* that the prior art inherently disclosed unrecited elements of the claims. However, such a showing is insufficient to support a finding of inherent anticipation. *See Rapoport v. Dement*, 254 F.3d 1053, 1062-63 (Fed. Cir. 2001)(finding no anticipation because a treatment regime of three doses per day would not necessarily include administering a dose at the time of sleep, even though a dose *could* be administered at that time). Such findings of inherency based on mere "probabilities or possibilities" are improper. *See In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999)(finding that a system claim was not anticipated by prior art that could be used to perform the same

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 65 of 92  of November 9, 2006 Response*

result with a slightly different structure).  Even if the prior art
did sometimes encompass all of the elements of the claims, the claims
should still be allowed as "occasional results are not inherent."
*See Mehl/Biophile Int'l. Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed.
Cir. 1999)(holding that prior art did not anticipate a claim
requiring a substantially vertical orientation even though practice
of the prior art would sometimes result in such an orientation).

Accordingly, the Examiner is not permitted to rely on prior art to
show inherent anticipation where the art does not *necessarily* require
that each and every claim element be present.

     2.    Inherent Disclosure Cannot Be Shown By Inconclusive
        Extrinsic Evidence.

The Examiner improperly has concluded that numerous prior art
references inherently anticipate the claims by relying on
inconclusive non-prior art documents to show the elements missing in
the prior art.  *See Finnigan Corp. v. Int'l Trade Commission*, 180
F.3d 1354, 1366 (Fed. Cir. 1999)(holding that extrinsic evidence that
showed a set-up that could perform in either resonance or
nonresonance was insufficient to show inherent disclosure of
nonresonance).  Similarly, because the prior art was capable of
producing differing results, only some of which encompassed the
claims, the requirement for anticipation by inherent disclosure has
not been met.  *Glaxo Inc.v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed.
Cir. 1995) *cert. denied*, 516 U.S. 988 (1995)(holding that prior art
which did not always produce the claimed compound did not inherently
disclose it).

In this case, the extrinsic evidence cited by the Examiner fails to
conclusively demonstrate how the prior art references necessarily and
always involve each and every element of the rejected claims.
Therefore, the Examiner is not permitted to rely on this evidence to
show that the cited prior art inherently discloses all of the

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007;503 and 90/007,828
*Page 66 of 92  of November 9, 2006 Response*

elements of the present invention.

**B.    The Reference Used as "Extrinsic Evidence" Do Not Reproduce What The Prior Art References Describe And Therefore Fail to "Explain" What Occurred in the Prior Art References.**

As explained in this section, the "extrinsic evidence" does not consider what occurred in the cited prior art. Thus, the "extrinsic evidence" fails to offer a conclusive explanation of what may have occurred in the prior art.

*I) 5-ASA Art*

On pages 32-34 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-29, 31-40, 53-62, 64-73, 75-86, and 88-97 under 35 U.S.C. 102(b) as being anticipated by *Dew* (Br. Med. J. *287* (7/83):23-24)), as evidenced by *Baldwin II* (J. Clin. Invest. 107(1991):63-80), *Bantel* et al. (Amer. J. Gastroenterology *287* (2000):3452), *Yan* et al. (J. Biol. Chem. *274* (1999) 366631-36), and the *David Baltimore Declaration* submitted February 2001 in the 08/464,364 application, which issued as the Baltimore '526 patent.

Patentees respectfully traverse this rejection, *inter alia*, because *Baldwin II*, *Bantel*, *Yan*, and the *David Baltimore Declaration* do not repeat the use described by *Dew*. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 156-159):

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 67 of 92 of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| Dew (7/83)<br>-administration of 5-ASA to human subjects.<br>-all human subject are in "remission". Title; p. 23 1st para.; p. 23 2nd para. | Bentel (2000)<br>✗ all subjects had "accute" ulcerative colitis. (p. 3453, bottom line, left column.)<br>✗ "newly developed" formulation of 5-ASA (p.3453, top para.; right column)<br>Baldwin II (2001)<br>✗ no data. This is a review.<br>Yan (99)<br>✗ mouse cells<br>2001 Baltimore Declaration<br>✗ no data. Refers to Yan (99) - mouse cells; & Castrillo (2000)- murine cells. |

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there. Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

### ii) Antibiotics

On pages 39-42 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-10, 12-18, 20-21, 25-32, 36-41, 53-54, 58-65, 69-76, 80-89, 93-100, 104-105, 119-120, 124-129, 133-140, 144-150, 154-160, 164-168, 172-178, and 182-186 under 35 U.S.C. 102(b) as allegedly anticipated by *1970 PDR* as evidenced by the *Manolagas Declaration, Galdiero* et al. (Microbiology, *147* (2001): 2697-2704), *Yang* et al. (Nature *395(1998)* 284-288), *Mori* et al. (Eur. J. Haematol. 59 (1997): 162-170), the *Baltimore '516 Patent* and *Yasutomi* et al. *(J.* Immunology 175(2005) 8069-8076)(newly raised by the Examiner).

The Examiner cited to the subject patent (*Baltimore '516* Patent), on page 41, for the preposition that, "Once produced by gram-negative bacteria, LPS activates NF-kB, which translocates to the nucleus and binds to the NF-kB recognition sites on genes that are regulated, at least in part, by NF-kB." Patentees point out, however, that their patent offers no indication that antibiotics can reduce NF-kB

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 68 of 92  of November 9, 2006 Response*

activity.  Indeed, none of the cited references does so.


Thus, Patentees respectfully traverse this rejection, *inter alia*, because *Manolagas Declaration, Galdiero, Yang, Mori,* the *Baltimore '516 Patent* and *Yasutomi* do not repeat the use described by the *1970 PDR*.  The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 126-131):

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| <u>1970 PDR</u><br>-antibiotics are used to treat bacterial infection in human subjects<br>-antibiotic administered once subject has bacterial infection | <u>Galdiero (01)</u><br>✗ no antibiotic used.<br><u>Yang (98)</u><br>✗ no antibiotic used.<br><u>Mori (97)</u><br>✗ no LPS.  Induction is by TNF.<br>✗ no antibiotic.<br><u>Yasutomi (05)</u><br>✗ cell culture<br>✗ pretreats with an antibiotic.<br><u>'516 Patent</u><br>✗ no antibiotic used.<br><u>Manolagas Declaration</u><br>✗ no experiment, only commentary on the cited art is provided. |

Additionally, the *Manolagas Declaration* has been the subject of sworn testimony by Dr. Manolagas.  Certain portions of the sworn testimony calling in to question the conclusion in the *Manolagas Declaration* are attached hereto as **Exhibit 2.**


Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.  Accordingly, this inherent anticipation rejection is improper and should be withdrawn.


        *iii-a) Cyclosporin A - In Vivo Art*


On pages 19-23 of the August 2, 2006 Office Action, the Examiner

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 69 of 92  of November 9, 2006 Response*

rejected claims 1-2, 6-9, 20-29, 31-40, 64-73, 75-86 and 88-97 under 35 U.S.C. 102(b) as allegedly anticipated by the Physician's Desk Reference (PDR: 1985, pages 1811-13), *Griffith I* (Griffith et al., Ann. Surg. <u>196</u> (9/82):324-329), or *Griffith II* (Griffith et al., J. Thorac. Cardiovasc. Surg. <u>99</u> (12/84): 952-957), as evidenced by *Holschermann* et al., Circulation <u>96</u> (12/97) 4232-4238.  The Examiner referred to M.P.E.P. 2131.01 and alleged that "*Holschermann* provides extrinsic evidence that the PDR 1985, Griffith I, and Griffith II references inherently anticipate the subject claims."

Patentees respectfully traverse this rejection, *inter alia*, because *Holschermann* failed to repeat the use described by any of *PDR 1985, Griffith I,* or *Griffith II*.  *Holschermann* explains what occurred in a different experiment, or fails to explain what may have occurred during the use described by the *PDR 1985, Griffith I,* or *Griffith II*. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 64-74):

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| <u>1985 PDR</u><br>administration of cyclosporin is required -with adrenal corticosteroid (p. 1811 & 1813)<br>-4-12 hours prior to transplantation, either:<br>      orally<br>-at a dose of 14-18 mg/kg per day,<br>-continued postoperatively 1-2 weeks,<br>-then tapered by 5% per week to,<br>-maintenance level of 5-10 mg/kg per day.<br>     or, I.V.<br>-same as oral but at 1/3 the dose.<br>    (page 1813 of 1985 PDR)<br>✗ use of azathioprene not indicated<br>✗ use of aspirin not indicated | <u>Holschermann (12/97)</u><br><br>✗ "3 to 4 days after transplantation" (p. 4233, 1st par.)<br><br><br><br>✗ "3.4 ±0.3" mg/kg per day<br><br>& all patients received azathioprene<br>& all patients received aspirin |

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 70 of 92  of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| Griffith I (1982)<br>cyclosporin administered<br>-with methylprednisone 1g,<br>-"just before"operation (p. 324),<br>       orally<br>-at a dose of 17.5 mg/kg per day,<br>-reduced postoperatively to<br>-4-10 mg/kg per day<br>-with 200 mg per day prednisone, reduced after 10 days to 15-20 mg per day,<br>       or, I.V.<br>-same as oral but at 40% of the dose.   (p. 325)<br>-Antithymocyte Globulin <u>NOT USED</u> (p.325)<br>✗ use of azathioprene not indicated<br>✗ use of aspirin not indicated | <u>Holschermann (12/97)</u><br><br>✗ "3 to 4 days after transplantation" (p. 4233, 1st par.)<br><br>✗ "3.4 ±0.3" mg/kg per day<br><br><br><br>✗ all patients received antithymocyte globulin<br>& all patients received azathioprene<br>& all patients received aspirin |
| Griffith II (1984)<br>cyclosporin administered<br>orally<br>-1-4 hours preoperatively, 10-17.5 mg/kg,<br>-postoperatively every 12 hrs, 5 mg/kg<br>-with prednisone, 0.2 mg/kg per day,<br>-with rabbit antithymocyte globulin<br>✗ use of azathioprene not indicated<br>✗ use of aspirin not indicated | <u>Holschermann (12/97)</u><br><br>✗ "3 to 4 days after transplantation" (p. 4233, 1st par.)<br>✗ "3.4 ±0.3" mg/kg per day<br><br>& all patients received azathioprene<br>& all patients received aspirin |

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.  Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

       *iii-b) Cyclosporin A - In Vitro Art*

On pages 24-26 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-21, 25-29, 31-32, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89, and 93-97 under 35 U.S.C. 102(b) as allegedly anticipated by *Reed* et al., J. Immunol. *137* (7/86): 150-154, as evidenced by *Brini,* Eur. Cytokine Net. 1:131-139 (Sept. 1990). The Examiner referred to MPEP 2131.01 and alleged that *Brini* provides the evidence of inherency.

Patentees respectfully traverse this rejection, *inter alia*, because *Brini* does not repeat the use described by *Reed*.  Therefore, *Brini*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 71 of 92   of November 9, 2006 Response*

explains what occurred in a different experiment, and fails to explain what may have occurred during the use described by *Reed*. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 53-60):

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| Reed (7/86) | Brini (9/90) |
| - blood mononuclear cells (p. 150) | ✗ >95% pure CD3 T-lymphocytes (p. 132) |
| - PHA with PMA | ✗ PHA alone used as inducer (p.132) |

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there. Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

    *iii-c) Cyclosporin A - In Vitro Art*

On pages 26-29 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-21, 25-29, 31-32, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89, and 93-97 under 35 U.S.C. 102(b) as allegedly anticipated by *Kronke* et al. (PNAS USA 81(8/84) 5214-5218) and/or *Siebenlist* et al. (Mol. Cell. Biol. *6* (9/86) 3042-3049), as evidenced by *Schmidt* et al., J. Virology 64:4037-4041 (August 1990), *Emmel* et al., Science, *246* (Dec. 1989):1617-20, and the *Dr. Manolagas Declaration*. The Examiner referred to MPEP 2131.01 and alleged that *Schmidt, Emmel* and the *Manolagas Declaration* provide evidence of inherency.

Patentees respectfully traverse this rejection, *inter alia*, because *Kronke* or *Siebenlist* do not describe the claimed methods. (Declaration of Dr. Verma ¶¶ 61-63). Furthermore, as explained at length in the Declaration of Dr. Verma, ¶¶ 28-36, we now know that CsA affects NFAT. Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 72 of 92  of November 9, 2006 Response*

      *iv) Vitamin D*


On pages 30-32 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-21, 25-29, 31-32, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89 and 93-97 under 35 U.S.C. 102(b) as allegedly anticipated by *Tsoukas* (Science *224* (6/84) 1438-40), *Lemire I* (J. Clin. Invest. 74(8/84) 657-61), *Lemire II* (J. Immunol. 134 (5/85) 3032-5), *Rigby I* (J. Clin. Invest. *74* (10/84) 1451-5) or *Rigby II* (J. Immunol. 135 (10/85) 2279-86), and *Manolagas* et al. (JCE&M, 63 (1986) 394-400), as evidenced by *Yu* et al. (PNAS USA 92 (11/95) 10990-4) and the *Declaration of Dr. Manolagas (*paragraphs 7-24*)* provided in the 90/007,503 request.


The Examiner alleged that *Yu* conducted experiments "under the same conditions utilized in *Tsoukas* and *Manolagas* (i.e. calcitriol application to PHA activated PBM cells)." This is not correct as explained in Declaration of Dr. Verma, ¶¶ 115-117, and summarized in the table that follows. For example, the cell populations were different. Therefore, Patentees respectfully traverse this rejection, *inter alia*, because *Yu and the Manolagas Declaration* do not repeat the use described by *Tsoukas, Manolagas,* or any of the other cited references. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 107-125):

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 73 of 92  of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| <u>Tsoukas(6/84)</u><br>- PBMC cells | <u>Yu (11/95)</u><br>✗ Yu(11/95) refers to Yu, JBC 1991 for method of purifying cells, which method is not used in the prior art. Thus, the PBMC used in Yu are different (purified, non-adherent monocytes) than the cells in prior art.  Yu acknowledges that any NF-kB effect is "matter of conjecture".<br><br><u>Manolagas Declaration</u><br>✗ no experiment, only commentary on the cited art is provided.<br><br>✗ Manolagas admitted under oath at trial that, contrary to statements in his expert report, the study by Yu is "not connected" and "lacks correlation" with the prior art work.(Trial Testimony, day 10 p.68; day 13 p. 17; Manolagas Deposition, p.381-382) |
| <u>Manolagas (86)</u><br>- PBMC cells isolated by method of Boyum (p. 395) | <u>Yu (11/95)</u><br>✗ Yu(11/95) refers to Yu, JBC 1991 for method of purifying cells, which method is not used in the prior art. Thus, the PBMC used in Yu are different (purified, non-adherent monocytes) than the cells in prior art.  Yu acknowledges that any NF-kB effect is "matter of conjecture".<br><br><u>Manolagas Declaration</u><br>✗ no experiment, only commentary on the cited art is provided.<br><br>✗ Manolagas admitted under oath at trial that, contrary to statements in his expert report, the study by Yu is "not connected" and "lacks correlation" with the prior art work.(Trial Testimony, day 10 p.68; day 13 p. 17; Manolagas Deposition, p.381-382) |
| <u>Lemire I(8/84) & II(5/85)</u><br>- PBMC cells<br><br><u>Rigby I(10/84) & II(10/85)</u><br>- PBMC cells | <u>Yu (11/95)</u><br>✗ Yu(11/95) refers to Yu, JBC 1991 for method of purifying cells, which method is not used in the prior art. Thus, the PBMC used in Yu are different (purified, non-adherent monocytes) than the cells in prior art.  Yu acknowledges that any NF-kB effect is "matter of conjecture".<br><br><u>Manolagas Declaration</u><br>✗ no experiment, only commentary on the cited art is provided.<br><br>✗ Manolagas admitted under oath at trial that, contrary to statements in his expert report, the study by Yu is "not connected" and "lacks correlation" with the prior art work.(Trial Testimony, day 10 p.68; day 13 p. 17; Manolagas Deposition, p.381-382) |

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 74 of 92   of November 9, 2006 Response*


Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.   Accordingly, this inherent anticipation rejection is improper and should be withdrawn.


      *v) Red Wine*


On pages 42-47 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 6-9, 20-21, 25-32, 36-41, 64-65, 69-76, 80-89, and 93-98 under 35 U.S.C. 102(b) as allegedly anticipated by *King James Version Bible* (1611) (excerpts), *St. Leger* (The Lancet (5/79) 1017-20), *Dobrilla* (Hepato-Gastroenterol, 31 (2/84) 35-37), and *Jones* (Pharm. & Tox. 60 (3/87) 217-20), as evidenced by *Blanco-Colio* (Circulation *102* (8/00) 1020-6), *Holmes-McNary/Baldwin* (Cancer Res. 60 (7/00) 3477-83) and *Manna* (J. Immunol. 164 (2000) 6509-6519).


Patentees respectfully traverse this rejection, *inter alia*, because *Blanco-Colio*, *Holmes-McNary/Baldwin* and *Manna* do not repeat the use described by the *Bible*, *St. Leger*, *Dobrilla*, or *Jones*. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 132-146):

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
| --- | --- |
| The Bible<br>-inducer unknown<br>-type of red wine unknown<br>-in human subject | Blanco-Colio (8/00)<br>✗ type of red wine unknown<br>✗ potentially different inducer<br><br>Holmes-McNary/Baldwin<br>✗ in cells<br>✗ not wine, resveratrol<br><br>Manna (2000)<br>✗ in cells<br>✗ not wine, resveratrol |

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 75 of 92  of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| St.Leger (5/79)<br>-inducer unknown<br>-type of red wine unknown<br>-in human subject | Blanco-Colio (8/00)<br>✗ type of red wine unknown<br>✗ potentially different inducer<br><br>Holmes-McNary/Baldwin<br>✗ in cells<br>✗ not wine, resveratrol<br><br>Manna (2000)<br>✗ in cells<br>✗ not wine, resveratrol |
| Dobrilla (2/84)<br>-inducer unknown<br>-type of red wine unknown<br>-in human subject | Blanco-Colio (8/00)<br>✗ type of red wine unknown<br>✗ potentially different inducer<br><br>Holmes-McNary/Baldwin<br>✗ in cells<br>✗ not wine, resveratrol<br><br>Manna (2000)<br>✗ in cells<br>✗ not wine, resveratrol |
| Jones (3/87)<br>-inducer unknown<br>-type of red wine unknown<br>-in human subject | Blanco-Colio (8/00)<br>✗ type of red wine unknown<br>✗ potentially different inducer<br><br>Holmes-McNary/Baldwin<br>✗ in cells<br>✗ not wine, resveratrol<br><br>Manna (2000)<br>✗ in cells<br>✗ not wine, resveratrol |

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.  Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

    *vi) Glucocorticoid Art*

On pages 34-39 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-21, 25-29, 31-32, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89 and 93-97 under 35 U.S.C. 102(b) as allegedly anticipated by *1970 PDR, Lefring* et al. (Crit. Care. Med.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 76 of 92  of November 9, 2006 Response*

*23* (7/95) 1294-1303: References Cited Therein), *Nagasawa* et al. *(J.
Cell. Phys. 109* (1981) 181-192), or *Rovera* et al. (Science *204* (1979)
868-970), as evidenced by *Baldwin I* (Annu. Rev. Immunol. *14* (1996)
649-81), *Auphan* et al. (Science *270* (1995) 286-290), *Scheinman* I
(Mol. Cell. Biol. 15(2/95) 943-53), *Scheinman II* (Science *270* (10/95)
283-286), *Mukaida* (J. Biol. Chem. 269(5/94) 13289-95) and *Padgett* et
al., Trends in Immunology, 24(8) (Aug. 2003) pages 444-448 (raised
by Examiner).

Initially, Patentees point out that one of the cited references,
*Lefring* (1995), is not prior art, but has been cited as if it were
with the notation "references cited therein." *Lefring* (1995) cites
to 75 other references.  Such citation without particularity is
contrary to the rules of the Office and improper.  *See*, e.g. 37
C.F.R. § 1.104(c)(2).  Accordingly, *Lefring* (1995) and the 75
references cited therein cannot constitute a basis for a proper
rejection, and Patentees are not addressing *Lefring* (1995).

With respect to the remaining references, Patentees respectfully
traverse this rejection, *inter alia*, because *Baldwin I*, *Auphan*,
*Scheinman* I, *Scheinman II*, *Mukaida,*  and *Padgett* do not repeat the
use described by any of *1970 PDR*, *Nagasawa*, or *Rovera*. The following
table highlights only some of the discrepancies between the
experiments (*See also*, Declaration of Dr. Verma, ¶¶ 75-101):

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| <u>1970 PDR</u><br>-glucorticoids (dexamethasone) are used in human patients | <u>Baldwin I (96)</u><br>✗ no data. This is a review.<br><u>Auphan (1995)</u><br>✗ cell culture.<br><u>Scheinmann I(2/95) & II(10/95)</u><br>✗ cell culture; highly modified cells.<br><u>Mukaida (5/94)</u><br>✗ cell culture.<br><u>Padgett (8/03)</u><br>✗ no data. This is a review. |

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 77 of 92  of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art |
|---|---|
| Nagasawa (1981)<br>-leukemic T-cells (MOLT-3), non-tranfected. | Baldwin I (96)<br>✗ no data. This is a review.<br>Auphan (1995)<br>✗ modified cells, primarily Jurkat<br>Scheinmann I(2/95)<br>✗ transfected cell systems<br>Scheinmann II(10/95)<br>✗ HeLa cells (abnormal genotype)<br>Mukaida (5/94)<br>✗ human glioblastoma cell line<br>Padgett (8/03)<br>✗ no data. This is a review. |
| Rovera (1979)<br>-HL-60 cell line, non-transfected. | Baldwin I (96)<br>✗ no data. This is a review.<br>Auphan (1995)<br>✗ modified cells, primarily Jurkat<br>Scheinmann I(2/95)<br>✗ transfected cell systems<br>Scheinmann II(10/95)<br>✗ HeLa cells (abnormal genotype)<br>Mukaida (5/94)<br>✗ human glioblastoma cell line<br>Padgett (8/03)<br>✗ no data. This is a review. |

Furthermore, this rejection suffers from the fact that the mechanism of action of glucocorticoids is poorly understood and the effects of glucocorticoids have been observed to vary between different cell types.  In fact, some studies have shown that glucocorticoids have no effect on NF-kB.  (Declaration of Dr. Verma ¶ 97).

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.  Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

    *vii) Endogenous Glucocorticoids*

On pages 55-60 of the August 2, 2006 Office Action, the Examiner rejected claims 1-2, 5-9, 20-21, 25-29, 31-32, 36-40, 53-54, 58-62, 64-65, 69-73, 75-76, 80-86, 88-89 and 93-97 under 35 U.S.C. 102(b) as allegedly anticipated by *Goodman and Gilman's* (The Pharmacological

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 78 of 92  of November 9, 2006 Response*

Basis of Therapeutics, (Macmillan Publishing Co., Inc. 1980, pages 1466-1496) (newly raised by Examiner), as evidenced by *Baldwin I* (Annu. Rev. Immunol. <u>14</u> (1996) 649-81), *Auphan* et al. (Science <u>270</u> (1995) 286-290), *Scheinman I* (Mol. Cell. Biol. 15 (2/95) 943-53), *Scheinman Il* (Science <u>270</u> (10/95) 283-286), *Mukaida* (J. Biol. Chem. <u>269</u> (5/94) 13289-95), and - *Padgett* et al. Trends in Immunology, 24(8) (Aug. 2003) pages 444-448) (newly raised by Examiner).   The Examiner summarized the rejection as follows: "*Goodman & Gilman* teach the naturally occurring <u>endogenous production</u> and release of glucocorticoids (<u>cortisol</u>) in response to many different types of environmental stressors which *inherently* results in the reduction of NF-kB activity that acts to inhibit expression, in a eukaryotic cell, of cytokines whose transcription is regulated by NF-kB.   In this respect, the NF-kB inhibiting evidence provided by the Baldwin I, Auphan, Scheinman I/II and the Mukaida documents, regarding the <u>synthetically administered steroid dexamethasone (DEX)</u> has been found to be analogous with what occurs upon release of the endogenous cortisol glucocorticoid as evidenced by *Padgett*" (Emphasis added.)

Patentees respectfully submit that data from studies conducted with synthetic dexamethasone in cell culture cannot offer any explanation of what may occur during endogenous cortisol production in humans. Certainly one of skill in the art would not find such data probative. (Declaration of Dr. Verma, ¶ 105).

Thus, Patentees respectfully traverse this rejection, *inter alia*, because *Baldwin I*, *Auphan*, *Scheinman I*, *Scheinman II*, *Mukaida,* and *Padgett* do not repeat the use described by *Goodman & Gilman*. The following table highlights only some of the discrepancies between the experiments (*See also*, Declaration of Dr. Verma, ¶¶ 102-106):

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 79 of 92  of November 9, 2006 Response*

| Pre-April 21, 1989 Art | Post-April 21, 1989 Art | Highlights of Discrepancies |
|---|---|---|
| Goodman and Gilman (1980)<br>-in humans subjects<br>-endogenous cortisol | Baldwin I (96)<br>✗ no data. This is a review.<br>Auphan (1995)<br>✗ cell culture.<br>✗ dexamethasone (synthetic)<br>Scheinmann I(2/95) & II(10/95)<br>✗ cell culture; highly modified cells.<br>✗ dexamethasone (synthetic)<br>Mukaida (5/94)<br>✗ cell culture.<br>✗ dexamethasone (synthetic)<br>Padgett (8/03)<br>✗ no data. This is a review. | The mechanism of action of glucocorticoids is poorly understood and differs in different cell systems. Thus, data in the post-April 21, 1989 using different chemicals in cell culture cannot explain what may have occurred with endogenous cortisol in a human before pre-April 21, 1989. |

Because the extrinsic evidence does not repeat what the pre-April 21, 1989 reference described, the extrinsic evidence cannot explain what may have occurred there.  Accordingly, this inherent anticipation rejection is improper and should be withdrawn.

C.    **Even If the References Used As "Extrinsic Evidence" Were Deemed To Explain the Prior Art, the Cited Prior Art Does Not Teach Each and Every Element of the Claims Rejected.**

As summarized above and detailed in the Declaration of Dr. Inder Verma, which is attached hereto as **Exhibit 1** and incorporated by reference herein, each of the rejections based on inherent anticipation is defective for lacking a showing that the uses described in the pre-April 21, 1989 references inherently practiced the methods Patentees now claim.  However, even if what is described in the pre-April 21, 1989 references would be properly explained, Patentees explain below that the pre-April 21, 1989 references cannot anticipate, inherently or otherwise, the methods Patentees now claim.

    1)    5-ASA  -  Art Being Used To Reject Claims 1-2, 5-9, 20-29, 31-40, 53-62, 64-73, 75-86 and 88-97.

The inherent anticipation rejection set forth on pages 32-34 of the August 2, 2006 Office Action is based on *Dew* (7/83), alone and as allegedly "explained" by *Baldwin II* (91), *Bentel* (2000), *Yan* (99) and

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 80 of 92  of November 9, 2006 Response*

2/2001 *Baltimore Declaration*.  The Examiner, on page 33, alleged that *Dew* teaches administration of 5-ASA to humans for the treatment of ulcerative colitis, and alleged that ulcerative colitis is associated with NF-kB activation.  *Dew*, however, unambiguously discloses in its Title and first two paragraphs that all of the patients who received 5-ASA were in "remission," and the study was focused on "preventing relapse" of ulcerative colitis.

Accordingly, the patients in *Dew* cannot be said to necessarily have had NF-kB activation (even if ulcerative colitis is associated with such activation).  There is no basis to assert that ulcerative colitis patients in remission have any NF-kB activation.  Thus, whatever may have happened in *Dew*, it is clear that *Dew* cannot anticipate Patentees' claims requiring reduction of NF-kB activity which is present.

Furthermore, *Dew* was investigating the use of high doses of 5-ASA for "preventing relapse" of ulcerative colitis in remission patients.  As discussed above, Patentees' claims do not encompass prophylaxis, but rather are directed at reducing NF-kB activity.

*See also*, Schematic No. 9, and Declaration of Dr. Verma ¶¶ 156-159.

> 2)    Antibiotics -  Art Being Used To Reject Claims 1-2, 5-10, 12-18, 20-21, 25-32, 36-41, 53-54, 58-65, 69-76, 80-89, 93-100, 104-105, 119-120, 124-129, 133-140, 144-150, 154-160, 164-168, 172-178 and 182-186.

The inherent anticipation rejection set forth on pages 39-42 of the August 2, 2006 Office Action is based on the *1970 PDR*, alone and as allegedly "explained" by *Manolagas Declaration*, *Galdiero* (01), *Yang* (98), *Mori* (97), *'516 Patent* and *Yasutomi* (05).  The Examiner alleged on page 40 that gram-negative bacteria produce lipopolysaccharides ("LPS"), which induce NF-kB regulated cytokine production.  The

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 81 of 92  of November 9, 2006 Response*

Examiner also alleged that antibiotics, by killing the gram-negative bacteria, "act to inherently reduce LPS-induced and NF-kB-regulated cytokine production."  On page 42, the Examiner alleged that "by blocking LPS that reaches the cell, administration of the 1970 PDR antibiotics to combat gram-negative bacterial infections would necessarily reduce NF-kB activity in human cells and thereby reduce cytokine expression."

Initially, Patentees respectfully point out that the PDR is, at best, evidence of a prior public use.  As such, the PDR cannot be relied upon in a reexamination proceeding.

Patentees also point out that the quoted Examiner's language is unclear.  To be sure, antibiotics kill bacteria or prevent bacteria from reproducing, which bacteria has LPS on its cell membrane. Antibiotics, however, have no effect on LPS.  (Declaration of Dr. Verma, ¶ 127).

Should an antibiotic succeed in preventing bacteria from reproducing, the amount of bacteria is unchanged, and the bacteria still have LPS, which is still inducing NF-kB activity. (Schematic No. 10; Declaration of Dr. Verma, ¶ 128).  Thus, antibiotics that may prevent bacteria from reproducing cannot reduce NF-kB activity as recited in the pending claims.

Should an antibiotic successfully kill the bacteria, the consequence would be the release of additional LPS from the dead bacteria. Killing the bacteria disrupts the integrity of its cell membrane, which releases and solubilizes additional LPS from the bacterial cell membrane.  Such additional LPS would increase, not decrease, NF-kB activity.  (Declaration of Dr. Verma, ¶¶ 129-130).

Thus, antibiotics cannot anticipate Patentees' claims because antibiotics either will not affect NF-kB activity or will increase

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 82 of 92  of November 9, 2006 Response*

NF-kB activity.

Furthermore, certain claims as discussed above, e.g. claims 8 and 9, require that the external influences continue to "induce NF-kB-mediated intracellular signaling," i.e. require the activation of segment 1 outside the cell to be maintained.  Thus, as shown in Schematic 4, the reduction of NF-kB activity in such claims must be occurring as a result of interference inside the cell.  (Declaration of Dr. Verma, ¶ 131).  Use of antibiotics clearly does not anticipate such claims.

        3)    Cyclosporin A

           i) *In Vivo*  —  Art Being Used To Reject Claims 1-2, 6-9, 20-29, 31-40, 64-73, 75-86 and 88-97.

The inherent anticipation rejection set forth on pages 19-29 of the August 2, 2006 Office Action is based on the *PDR 1995*, *Griffith I* (9/82) or *Griffith II* (12/84), alone and as allegedly "explained" by Holschermann (12/97).

Initially, Patentees respectfully point out that the PDR is, at best, evidence of a prior public use.  As such, the PDR cannot be relied upon in a reexamination proceeding.

Patentees also point out that in *Griffith I* and *Griffith II*, CsA was administered before transplantation.  Even if transplantation could induce NF-kB activity, which has not been shown, and even if CsA was shown to operate through NF-kB, which has not been shown, *Griffith I* and *Griffith II* cannot anticipate Patentees' claims requiring reduction of NF-kB activity that was first induced.  (Declaration of Dr. Verma, ¶¶ 25-27, 38 and 44-46.)

The *1985 PDR*, as the Examiner indicated, teaches CsA should be administered first before and then after surgery.  Again, even if surgery could induce NF-kB activity, which has not been shown, and

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 83 of 92  of November 9, 2006 Response*

even if CsA was shown to operate through NF-kB, which has not been shown, *Griffith I* and *Griffith II* cannot anticipate Patentees' claims requiring reduction of NF-kB activity.  (Declaration of Dr. Verma, ¶¶ 64-74).

> ii) *In Vitro* - Art Being Used To Reject Claims 1-2,
> 5-9, 20-21, 25-29, 31-32, 36-40, 53-
> 54, 58-62, 64-65, 69-73, 75-76, 80-86,
> 88-89 and 93-97

The inherent anticipation rejection set forth on pages 19-29 of the August 2, 2006 Office Action is based on *Reed* (7/86), alone and as allegedly "explained" by *Brini* (9/90).

*Reed*, however, discloses experiments in which CsA was added to cells 20 to 30 minutes before any purported inducer was added to the cells. Even if CsA was shown to operate through NF-kB, which has not been shown, *Reed* cannot anticipate Patentees' claims requiring reduction of NF-kB activity.  (Declaration of Dr. Verma, ¶¶ 53-60).

A similar inherent anticipation rejection is set forth on pages 26-29 of the August 2, 2006 Office Action based on *Kronke* (8/84) and/or *Siebenlist* (9/86), each one alone and as allegedly "explained"  by *Schmidt* (8/90), *Emmel* (12/89) and *Manolagas Declaration*.

Patentees respectfully point out that none of the experiments described in *Siebenlist* used CsA in cells first induced with PHA and PMA.  Even if CsA was shown to operate through NF-kB, which has not been shown, *Siebenlist* cannot anticipate Patentees' claims requiring reduction of NF-kB activity.  (Declaration of Dr. Verma, ¶¶ 61-63).

*Kronke* does describe a single experiment in which cells were treated with CsA after exposure to PHA/PMA.  However, as is evident from Fig. 4 of *Kronke*, CsA treatment did not have a significant effect on the cell when added after cells had been induced with PHA/PMA.  *Kronke*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 84 of 92 of November 9, 2006 Response*

at 5217. Indeed, when added four hours after induction, CsA did not alter TCGF (IL2) mRNA levels. *Id.* at 5216. Only when CsA was added either before or with PHA/PMA treatment was an effect on IL-2 expression observed. *Id.* These data suggest that, while treatment with CsA appeared able to prevent induction of IL-2 expression, it had no substantial effect on induced IL2 expression. Because the claims of the subject patent specify reduction of NF-kB activity that was first induced, *Kronke* cannot anticipate the claims (even if CsA was shown to operate through NF-kB, which it has not). (Declaration of Dr. Verma, ¶¶ 28-36).

Of course, as explained at length in the Declaration of Dr. Verma, ¶¶ 28-36, we now know that CsA affects NFAT. (*See also*, schematics Nos. 11-13).

　　　　　4)　Vitamin D　-　Art Being Used To Reject Claims 1-2,
　　　　　　　　　　　　　　5-9, 20-21, 25-29, 31-32, 36-40, 53-
　　　　　　　　　　　　　　54, 58-62, 64-65, 69-73, 75-76, 80-86,
　　　　　　　　　　　　　　88-89 and 93-97

The inherent anticipation rejection set forth on pages 30-32 of the August 2, 2006 Office Action is based on *Tsoukas* (6/84), *Lemire I* (8/84), *Lemire II* (5/85), *Rigby I* (10/84), *Rigby II* (10/85) and *Manolagas* (86), each one alone and as allegedly "explained" by *Yu* (11/95) and *Manolagas Declaration*.

Patentees respectfully point out, however, that none of *Tsoukas*, *Lemire I*, *Lemire II*, *Rigby II* or *Manolagas* administers calcitriol to cells in which NF-kB activity has been induced, as required by the claims. *Tsoukas* describes a series of experiments investigating the effect of calcitriol on proliferation and production of IL-2 protein (as measured indirectly by IL-2 activity) in PBM cells simultaneously stimulated with PHA. *Manolagas* reports experiments investigating the effect of simultaneously administered calcitriol and PHA on proliferation and IL-2 activity in PBM cells. *Lemire I* describe

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 85 of 92  of November 9, 2006 Response*

experiments investigating the effect of calcitriol on DNA synthesis
and IgG production in PBM cells simultaneously stimulated with a
number of different agents, either PHA, pokeweed mitogen (PWA) or
dermatophyton-O.   In *Lemire II*, cells were either pretreated or
simultaneously treated with calcitriol and a number of different
agents, either PHA, PWA, or con A.   In *Rigby II*, cells were always
stimulated with PHA in the presence of calcitriol.   Therefore, even
if calcitriol would be shown to operate through NF-kB, which it has
not, *Tsoukas, Lemire I, Lemire II, Rigby II,* or *Manolagas* cannot
anticipate Patentees' claims requiring reduction of NF-kB activity.
(Declaration of Dr. Verma, ¶¶ 107-125).

*Rigby I* is the only pre-April 21, 1989 reference that describes use
of calcitriol in cells that have been stimulated by PHA.   (*Rigby I*,
page 1453, Figs 2 and 4.)   However, nothing of record shows that the
calitriol in Rigby I necessarily reduced NF-kB activity. (Declaration
of Dr. Verma, ¶¶ 118-125).

Finally, studies have shown that calcitriol in fact induces NF-kB
activity, as opposed to reducing it. (Schematic No. 14; Declaration
of Dr. Verma, ¶ 125).


          5)   Red Wine    -   Art Being Used To Reject Claims 1-2,
                               6-9, 20-21, 25-32, 36-41, 64-65, 69-
                               76, 80-89 and 93-98

The inherent anticipation rejection set forth on pages 30-32 of the
August 2, 2006 Office Action is based on *The Bible* (portions),
*St.Leger* (5/79), *Dobrilla* (2/84), *Jones* (3/87), each one alone and
as   allegedly   "explained"   by   *Blanco-Colio*   (8/00),   *Holmes-
McNary/Baldwin*, and *Manna* (2000).


Initially, Patentees respectfully point out that use of red wine
cannot anticipate any of Patentees' claims because red wine could

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 86 of 92 of November 9, 2006 Response*

never be the agent reducing NF-kB activity.   Upon ingestion, the red
wine is broken down into its components and digested.   Thus, red
wine, as such, cannot be the agent reducing NF-kB activity as
specified by Patentees' claims.   (Declaration of Dr. Verma, ¶ 133).

Patentees further point out that in each of the pre-April 21, 1989
references, namely *The Bible*, *St.Leger*, *Dobrilla*, and *Jones,*
induction of NF-kB activity has not been established, nor has the
inducer of NF-kB been identified.   Accordingly, even if red wine was
shown to operate through NF-kB, which it has not, *The Bible*,
*St.Leger*, *Dobrilla*, or *Jones* cannot anticipate Patentees' claims
specifying reduction of NF-kB activity.   (Schematic No. 15;
Declaration of Dr. Verma, ¶¶ 132-136).

Finally, *The Bible*, *St.Leger*, *Dobrilla*, and *Jones* do not enable use
of red wine for any purpose since none of these references discloses
the type of red wine used in each.   All red wine is certainly not
equal and cannot be expected to have the same effects.   A non-
enabling reference cannot anticipate a claim, inherently or
otherwise.   (Declaration of Dr. Verma ¶¶ 133-137).

> 6) Glucocorticoids    -    Art Being Used To Reject Claims
> 1-2, 5-9, 20-21, 25-29, 31-32,
> 36-40, 53-54, 58-62, 64-65, 69-
> 73, 75-76, 80-86, 88-89 and 93-
> 97

> i) *In Vivo* Art

The inherent anticipation rejection set forth on pages 34-39 of the
August 2, 2006 Office Action is based on the *1970 PDR*, alone and as
allegedly "explained" by *Baldwin I* (96), *Auphan* (1995), *Scheinmann
I*(2/95) and *II*(10/95), *Mukaida* (5/94), and *Padgett* (8/03).

Initially, Patentees respectfully point out that the PDR is, at best,
evidence of a prior public use.   As such, the PDR cannot be relied
upon in a reexamination proceeding.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 87 of 92  of November 9, 2006 Response*

Furthermore, there is no showing that NF-kB activity was induced in the patients to whom the *1970 PDR* recommends administering glucocorticoids. Because all of the pending claims specify reducing NF-kB activity that has been induced, the *1970 PDR* cannot anticipate the pending claims, inherently or otherwise.

Finally, the mechanisms by which glucocorticoids mediate inflammatory response are poorly understood still today. Thus, there is no basis in the record to conclude that glucocorticoids necessarily reduce NF-kB activity.

*See also*, Schematic No. 17 and Declaration of Dr. Verma, ¶¶ 85-101.


            ii) *In Vitro* Art


The rejection set forth on pages 34-39 of the August 2, 2006 Office Action is based on *Nagasawa* (1981) or *Rovera* (1979),[5] alone and as allegedly "explained" by *Baldwin I* (96), *Auphan* (1995), *Scheinmann I*(2/95) and *II*(10/95), *Mukaida* (5/94) and *Padgett* (8/03).

Patentees respectfully point out that each of *Nagasawa* and *Rovera* reports on experiments where dexamethasone was administered to cells before or simultaneously with TPA. Because all of the pending claims specify reducing NF-kB activity that has been induced, neither *Nagasawa* nor *Rovera* could anticipate the pending claims, inherently or otherwise.

Furthermore, neither *Nagasawa* nor *Rovera* describes any effect of TPA

---

[5] *Lefring* (7/95) is also cited in support of the rejection for "referenced cited therein". *Lefring* (1995), however, does not predate the 1991 date accorded to all of the claim by the Examiner. *Lefring* (1995) cites to 75 other references. Such citation without particularity is contrary to the rules of the U.S. Patent and Trademark Office and improper. *See*, e.g. 37 C.F.R. § 1.104(c)(2). Accordingly, *Lefring* (1995) or the 75 references cited therein cannot constitute a basis for a proper rejection and Patentees are not addressing *Lefring* (1995).

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 88 of 92  of November 9, 2006 Response*

which could be attributed to NF-kB induction.  Thus, it is unclear whether the experiments described by *Nagasawa* or *Rovera* had any induced NF-kB activity, as specified by the pending claims.

Finally, the only conclusion *Nagasawa* makes regarding glucocorticoids in MOLT-3 cells is that administration had no effect on induction of MOLT-3 cells by TPA.  (*Nagasawa* at 185).   Similarly, the only conclusion that *Rovera* makes regarding glucocorticoids in HL-60 cells is that dexamethasone did not "block[] the response of HL-60 cells to TPA, even when the cells were pretreated with a concentration of the test compound 1000 times greater that the concentration of TPA used to induce differentiation." (*Rovera* at 869).   Such acknowledged lack of effects cannot be reconciled with the Examiner's assertion in the Office Action that glucocorticoids reduced NF-kB activity.

Indeed, the mechanisms by which glucocorticoids mediate inflammatory response are poorly understood even today.  Thus, there is no basis in the record to conclude that glucocorticoids necessarily reduce NF-kB activity.

*See also*, Schematic No. 16; Declaration of Dr. Verma, ¶¶ 75-84.

iii) Endogenous Glucocorticoid

The rejection set forth on pages 55-60 of the August 2, 2006 Office Action is based on *Goodman and Gilman* (1980), alone and as allegedly "explained" by *Baldwin I* (96), *Auphan* (1995), *Scheinmann I*(2/95) and *II* (10/95), *Mukaida* (5/94) and *Padgett* (8/03).

Initially, Patentees respectfully point out that the pending claims require active steps.  As such, natural events cannot anticipate the claims.

Furthermore, there is no showing of record that the widely variable

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 89 of 92  of November 9, 2006 Response*

"environmental stressors" referred to on page 56 of the Office Action would necessarily induce NF-kB activity in a human subject.   Thus, there is no showing that the subjects of *Goodman and Gilman* had induced NF-kB activity, as specified by the pending claims.

Finally, there is no showing that the function of endogenous cortisol referred to in *Goodman and Gilman* is necessarily the same as the function of dexamethasone and other synthetic glucocorticoids referred to by the later references cited.

*See also*, Declaration of Dr. Verma, ¶¶ 102-106.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 90 of 92  of November 9, 2006 Response*

IX.  <u>SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT</u>

In accordance with their duty of disclosure under 37 C.F.R. §1.555, Patentees direct the Examiner's attention to the following disclosures, which are listed on Form PTO-1449 (**Exhibit 3**).  Copies of the disclosures listed below as items 1-8 including listed attachments are attached hereto as **Exhibits 4-11**, respectively.

1.   March 3, 2004 Memorandum Of Decision And Order on claim construction **(Exhibit 4)**;

2.   November 11, 2005 Reply Expert Report of Dr. Stephen Prescott, paragraphs 16-18 **(Exhibit 5)**;

3.   November 11, 2005 Reply Expert Report of Dr. Jeffrey Ravetch, paragraphs 6-9 **(Exhibit 6)**;

4.   November 11, 2005 Reply Expert Report Of Dr. Laurie H. Glimcher, page 11 and 12 **(Exhibit 7)**;

5.   November 11, 2005 Rule 26(b)(2) Reply Report of David M. Livingston, M.D., pages 17-18 **(Exhibit 8)**;

6.   November 22, 2005 Condensed Deposition of Stephen Prescott in Civil Case 02 CV 11280 RWZ, page 226, line 24 - page 242, line 25 and page 262, line 9 - page 267, line 20 **(Exhibit 9)**;

7.   November 30, 2005 Condensed Deposition of Jeffrey V. Ravetch in Civil Case 02 CV 11281 RWZ, page 40, line 8 - page 58, line 25 **(Exhibit 10)**; and

8.   Trial Transcript - April 26, 2006 Jury Trial Day 12, Second Session in Civil Case 02 CV 11281 RWZ, page 112, line 10 and page 124, line 16 **(Exhibit 11)**.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 91 of 92  of November 9, 2006 Response*

Pursuant to the May 4, 2006 Merger Decision, this Response is being filed in duplicate, each original bearing an original signature and identifying data for both reexamination files.

No fee, other than the enclosed fee of $180.00 for the filing of the Supplemental Information Disclosure Statement, is deemed necessary in connection with the filing of this Response.  However, if any additional fee is required, authorization is hereby given to charge the amount of any such fee to Deposit Account No. 31-3125.

Respectfully submitted,

John P. White
Registration No. 28,678

Gary J. Gershik
Registration No. 39,992

Attorneys for Patentees
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

I hereby certify that this correspondence is being deposited this date with the U.S. Postal Service with sufficient postage as first class mail in an envelope addressed to:

Mail Stop *Ex Parte* Reexamination
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450.

Gary J. Gershik                    11/9/06
Reg. No. 39,992                    Date

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 92 of 92  of November 9, 2006 Response*

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **RESPONSE TO AUGUST 2, 2006 OFFICE ACTION, SUMMARY OF OCTOBER 13, 2006 EXAMINER INTERVIEW, STATEMENT OF CONCURRENT PROCEEDINGS UNDER 37 C.F.R. § 1.565, AND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT** and any enclosure has been sent to:

McDonnell Boehnen Hulbert & Berghoff, 300 South Wacker Drive, Suite 3200, Chicago, Illinois 60606, Attn: Grantland G. Drutchas, Esq.,

    and

Bawa Biotechnology Consulting, LLC, 21005 Starflower Way, Ashburn, VA 20147, Attn: Dr. Raj Bawa,

each by U.S. Postal Service, first class mail service, with sufficient postage, on this 9th day of November, 2006.

Gary J. Gershik
_____
Gary J. Gershik