# EXHIBIT L



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/464,364 | 06/05/95 | BALTIMORE | D | MIT-4167-A3F |

HM12/0317

PATENT GROUP
FOLEY, HOAG AND ELIOT, LLP
ONE POST OFFICE SQUARE
BOSTON MA 02109

| EXAMINER |
|---|
| SCHWARTZMAN, R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1636 | 25 |

DATE MAILED: 03/17/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

PTO-90C (Rev. 2/96)
U.S. GPO: 1996-437-636/80022

1- File Copy

ADL 0000610

| Office Action Summary | Application No. 08/464,364 | Applicant(s) Baltimore et al. |
|---|---|---|
| | Examiner Robert Schwartzman | Group Art Unit 1636 |

☒ Responsive to communication(s) filed on *Jan 19, 1999*  .

☒ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *57-59, 61-63, 93, and 97-154* _____ is/are pending in the application.

☐ Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *57-59, 61-63, 93, and 97-154* _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been
   ☐ received.
   ☐ received in Application No. (Series Code/Serial Number) _____.
   ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892
☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____
☐ Interview Summary, PTO-413
☐ Notice of Draftsperson's Patent Drawing Review, PTO-948
☐ Notice of Informal Patent Application, PTO-152

— *SEE OFFICE ACTION ON THE FOLLOWING PAGES* —

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-95)   Office Action Summary   Part of Paper No. __25__

ADL 0000611

Application/Control Number: 08/464,364                                         Page 2

Art Unit: 1636

## DETAILED ACTION

This Office action is in response to the amendment filed January 19, 1999. Claims 94-96 have been canceled. Claims 57-59, 61-63, 93, and 97-154 are pending in this application.

*Claim Objections*

Claims 101, 106 and 109 are objected to under 37 CFR 1.75(c), as being of improper dependent form for failing to further limit the subject matter of a previous claim. Applicant is required to cancel the claim(s), or amend the claim(s) to place the claim(s) in proper dependent form, or rewrite the claim(s) in independent form. Claims 101, 106 and 109 add the additional limitation that the cell is a mammalian cell. However, the independent parent claims, claims 59, 61 and 58, respectively, are already limited to mammalian cells.

Claim 141 is objected to as it should recite "in" rather than "is" in line 1 after the word "NF-κB".

Claim 154 is objected to under 37 CFR 1.75(c) as being in improper form because a multiple dependent claim should refer to other claims in the alternative only. See MPEP

ADL 0000612

Application/Control Number: 08/464,364                                                    Page 3

Art Unit: 1636

§ 608.01(n). In the interest of compact prosecution claim 154 has been examined as if it were dependent from claims 112, 135 or 151.

### Claim Rejections - 35 USC § 112

The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 58, 63, 93, 98-100, 103-105, 107, 108, 115, 116, 130, 131, 134, 142, 143, 149 and 150 remain rejected under 35 U.S.C. 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. This rejection is maintained for the reasons of record in the previous Office action mailed July 14, 1998.

To summarize the rejection, the claims are broadly drawn to any cell from any mammal in any location *in vitro* or *in vivo*, any agent or substance which has the claimed activity, any assay and any method of contacting the cell with the agent or substance. The mechanism of gene regulation by NF-κB was unknown in the prior art. The area of the invention is completely

ADL 0000613

Application/Control Number: 08/464,364                                    Page 4

Art Unit: 1636

unpredictable. No working examples are disclosed. The specification fails to provide sufficient direction or guidance to support the present claims. In particular, the present claims are drawn to agents and substances which effect the phosphorylation, degradation or stability of IκB or are limited to *in vivo* methods of altering NF-κB or NF-κB-dependent gene transcription. The specification does not teach the skilled artisan to assay for agents which alter the phosphorylation, degradation or stability of IκB and does not teach how to assay for such agents. The specification does not teach how to modulate NF-κB activity *in vivo*. Based on these factors it would clearly require undue experimentation for one of skill in the art to carry out the claimed methods.

Applicants argue that the specification read as a whole provides adequate direction to screen for agents that modulate IκB phosphorylation or stability or other activities associated with NF-κB activation. One of skill in the art would have concluded that such phenomena were real and that artificial manipulation of such activities could be used to regulate NF-κB activity. Experimental evidence is provided to support the claims directed to screening for agents that modulate IκB phosphorylation or stability, including the facts that treatment with TPA involves alteration of IκB and TPA is known to activate protein kinases as well as the fact that IκB can be specifically inactivated by proteolytic enzymes. Such results, combined with an understanding of similar mechanisms of action for other signal transduction pathways, would be reasonably understood by those of skill in the art to be sufficiently convincing of a mechanism involving

ADL 0000614

Application/Control Number: 08/464,364

Art Unit: 1636

Page 5

phosphorylation of IκB and subsequent proteolytic degradation of the modified protein. This model has been confirmed and widely accepted in subsequent publications.

Applicants further argue that it would be evident to one skilled in the art that the assays described in the specification in the context of elucidating the mechanism of action of NF-κB are also useful for drug screening assays for the identification of agents which affect that mechanism. A variety of different drug screening assays were known in the art, including assays for detecting inhibitors of protein phosphorylation and inhibitors of protein degradation, and such assays could readily be applied to the NF-κB and IκB proteins. The experimentation required for development of drug screening assays would be considered to be routine. Subsequent publications by the inventors and others bear out this assertion.

These arguments have been fully considered and are deemed to be partially persuasive. It is agreed that the experimental techniques disclosed in the specification that were used to elucidate the mechanism of NF-κB regulation could be readily adapted by the skilled artisan to screen for agents which alter NF-κB and IκB activity. It is further agreed that the specification does suggest that agents which regulate these two proteins could be screened for. However, the suggestion that modulating agents be screened for is only supported insofar as the mechanism of NF-κB is disclosed in the specification, *i.e.*, that NF-κB is present in the cytoplasm of a cell in an inhibited complex with IκB and that, upon application of the appropriate signal, NF-κB is release

ADL 0000615

Application/Control Number: 08/464,364 Page 6

Art Unit: 1636

from the complex, translocates to the nucleus and transcriptionally regulates target genes through its specific DNA binding activity. The specification does <u>not</u> teach that IκB is phosphorylated and subsequently degraded by proteolysis and that this is the mechanism by which NF-κB is released from the inhibitory complex. The specification merely suggests these possibilities. It is not sufficient that one of skill in the art could reach such a conclusion by reading the specification and that one would know to adapt existing drug screening assays for inhibitors of protein phosphorylation or degradation to screening for modulators of IκB phosphorylation or degradation as the specification must be enabling as filed and one cannot rely on the knowledge of the skilled artisan to provide the processes necessary to carry out the claimed invention (see *Genentech Inc. v. Novo Nordisk A/S* cited in the previous Office action). As the specification does not even mention that inhibitors of IκB phosphorylation or degradation should be screened for or teach or refer to any screening assays which could be used for this purpose the specification clearly lacks essential teachings regarding the claimed methods and is not considered to be enabling for these aspects of the claimed invention.

Claims 57, 59, 61, 62, 97, 101, 102, 106, 109-111, 117-121, 135-141, 144-148 and 151-154 are rejected under 35 U.S.C. 112, first paragraph, because the specification, while being enabling for methods of altering NF-κB activity in a cell *in vitro*, does not reasonably provide enablement for methods of altering NF-κB activity in a cell *in vivo*. The specification does not

ADL 0000616

Application/Control Number: 08/464,364                                                    Page 7

Art Unit: 1636

enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention commensurate in scope with these claims.

Claims 57, 59, 61, 62, 97, 101, 102, 106, 109-111, 117-121, 135-141, 144-148 and 151-154 are drawn to methods for altering NF-κB-dependent gene transcription, inhibiting HIV DNA expression or altering the activity of NF-κB in a mammalian cell. The claims broadly read on a cell *in vitro* or *in vivo*. Because the claimed methods involve the administration to the cell of inhibitors or activators of NF-κB or IκB the claims read on the delivery to a target cell *in vivo* of any possible type of compound, particularly nucleic acids, proteins and small organic molecules as disclosed in the specification (*e.g.*, nucleic acid decoys, full length IκB, dominant negative proteins). The delivery of nucleic acids or proteins to target cells *in vivo* is an unpredictable method with many questions regarding the targeting of the compound to the appropriate cells, delivery of sufficient amounts of the compound to the target cells, stability of the compound both extracellularly and intracellularly, intracellular targeting and achieving intracellular concentrations sufficient to provide the desired effect. The specification provides minimal guidance regarding methods of *in vivo* delivery of nucleic acids, proteins or other compounds which alter NF-κB or IκB activity and does not address any of the above listed difficulties known to those of skill in the art. No working examples are provided. It would clearly require undue experimentation to one of skill in the art to carry out the claimed methods in mammalian cells *in vivo* based on the teachings of the present specification.

ADL 0000617

Application/Control Number: 08/464,364                                    Page 8

Art Unit: 1636

Particularly regarding claims 62 and 153, which are drawn to a method of inhibiting expression of HIV DNA in a human host cell, the specification teaches only one use for the *in vivo* inhibition of HIV DNA expression; the treatment of HIV infection. As of the effective filing date of the present application no protein- or nucleic acid-based therapeutic had been shown to be effective in eliciting any therapeutic response to HIV infection (See Johnston *et al.* cited in the previous Office action). The specification does not teach how to administer inhibitors *in vivo* to obtain a therapeutic effect in infected individuals, *e.g.*, how to target the inhibitor to infected cells, how to get the inhibitor into the cells, how to accumulate a sufficient quantity of the inhibitor in the correct compartment within the cell to achieve the desired effect, how to achieve sustained delivery and/or expression of the inhibitor to effect a treatment. No working examples of the *in vivo* inhibition of HIV DNA expression are disclosed. Thus, the specification fails to teach how to carry out the *in vivo* embodiment of the claimed method.

Claims 112-114, 122-129, 132 and 133 are rejected under 35 U.S.C. 112, first paragraph, because the specification, while being enabling for a method for altering NF-κB-dependent gene transcription in a mammalian cell *in vitro* and for agents which alter the nuclear localization of NF-κB, alter the level of protein:protein complexes including NF-κB and IκB and/or alter the DNA binding activity of NF-κB, does not reasonably provide enablement for a method of altering NF-κB-dependent gene transcription in a mammalian cell *in vivo* or for agents which alter the level of phosphorylation of IκB or alter the stability of IκB. The specification does not enable any

ADL 0000618

Application/Control Number: 08/464,364 Page 9
Art Unit: 1636

person skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention commensurate in scope with these claims.

Claims 112-114, 122-129, 132 and 133 are drawn to a method for altering NF-κB-dependent gene transcription in a mammalian cell comprising identifying an agent by its ability to alter various aspects of NF-κB or IκB function and then contacting the cell with the identified agent. As discussed above, the specification is not enabling for the identification of agents which alter the phosphorylation or stability of IκB. Therefore, embodiments (i) and (ii) of step (a) are not enabled and the claims should be limited to embodiments (iii)-(v). Furthermore, as discussed above, the specification is not enabling for *in vivo* methods of altering NF-κB-dependent gene transcription in a mammalian cell. Therefore, the claims should be limited to an *in vitro* method.

*Conclusion*

Claims 57-59, 61-63, 93 and 97-154 remain rejected

Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

ADL 0000619

Application/Control Number: 08/464,364                      Page 10

Art Unit: 1636

     A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Robert Schwartzman whose telephone number is (703) 308-7307. The examiner can normally be reached on Monday through Friday from 6:30 AM to 4:00 PM.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, George Elliott, can be reached at (703) 308-4003. The fax number for this group is (703) 305-3014.

ADL 0000620

Application/Control Number: 08/464,364  Page 11

Art Unit: 1636

Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the Group receptionist whose telephone number is (703)-308-0196.

Robert A. Schwartzman, Ph.D.
March 11, 1999

NANCY DEGEN
PRIMARY EXAMINER

ADL 0000621