# Exhibit M



EXPEDITED AFTER
FINAL PROCEDURE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re the application of: Baltimore et al. | Group Art Unit: 1636 |
|---|---|
| Serial No.: 08/464,364 | Examiner: Schwartzman, R. |
| Filed: June 5, 1995 | |
| For: *Nuclear Factors Associated With Transcriptional Regulation* | |
| Attorney Docket No.: APV-035.03 | |

Box AF
Assistant Commissioner for Patents
Washington, D.C. 20231

**Certificate of First Class Mailing (37 CFR 1.8(a))**
I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Box AF, Assistant Commissioner for Patents, Washington, D.C. 20231 on the date set forth below.

September 17, 1999
Date of Signature
and of Mail Deposit

By: _Isabelle Clauss_
Isabelle Clauss

## RESPONSE AND AMENDMENT UNDER 37 C.F.R. § 1.129 (a)

Sir:

Applicants submit this Response and Amendment in response to the final Office Action dated March 17, 1999. A Request for a Three-month Extension of Time and appropriate fee are submitted concurrently herewith.

A request for examination according to the procedures set forth under 37 C.F.R. § 1.129(a) has been filed on April 13, 1999, and was granted. Since this second submission is being filed prior to the filing of an appeal brief and prior to abandonment of the application, and is accompanied by the requisite fee as set forth in § 1.17(r), Applicants are entitled to have this second submission entered and considered on the merits.

Please amend the Application as follows.

09/22/1999 IKRANCO  00000037 08464364

02 FC:216                    380.00 OP

ADL 0000697

# *Optipat*®

Dear Valued Customer:

☐ Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available.

☑ The following page(s) **2,3** of paper number **28** is/are missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available

Additional comments:

If you have any questions or comments, please contact a Faxpat / Optipat Customer Assistance representative at 800-445-9760. We appreciate your patronage. Thank you.

5350 Shawnee Road • Suite 110 • Alexandria, VA 22312
Phone: 800.445.9760 or 703.916.1500 • fax: 800.445.9761 or 703.916.1727
www.faxpat.com www.optipat.com

ADL 0000698

**In the claims:**

Please cancel claim 109 without prejudice, and amend the claims as follows:

63.    (Amended) A method of inhibiting expression of human immunodeficiency virus DNA in a human host cell infected with human immunodeficiency virus DNA, comprising contacting the infected cell with an agent that prevents binding of NF-κB to the transcriptional control elements of the human immunodeficiency virus, which agent increases the [stability] level of the IκB protein and inhibits expression of human immunodeficiency virus DNA.

98.    (Amended) The method of claim 59, wherein the substance decreases the [stability] level of IκB.

101.    (Amended) The method of claim 59, 97, 98, 99, or 100, wherein the cell is a [mammalian] human cell.

103.    (Amended) The method of claim 61, wherein the substance decreases the [stability] level of IκB.

106.    (Amended) The method of claim 61, 102, 103, 104, or 105, wherein the cell is a [mammalian] human cell.

112.    (Amended) A method for altering NF-κB-dependent gene transcription in a mammalian cell, comprising
   (a) identifying an agent by its ability to
       (i)    alter the level of phosphorylation of an IκB protein,
       (ii)   alter the [stability] level of an IκB protein,
       (iii)  alter the nuclear localization of a NF-κB protein,
       (iv)   alter the level of protein:protein complexes including NF-κB and IκB proteins, and/or
       (v)    alter the DNA binding activity of NF-κB,
       which agent alters NF-κB-dependent gene transcription in a cell; and

   (b) contacting a mammalian cell with an agent identified in (a) in an amount sufficient to alter NF-κB-dependent gene transcription in the cell.

131.    (Amended) The method of claim 112, 124, 125 or 126, wherein the agent is identified in an assay which directly detects [stability] the level of an IκB protein, or portion thereof.

ADL 0000698.1

USSN 08/464,364                   -4-              Group Art Unit: 1636

141.   (Amended) The method of claim 135, wherein modulating the activity of NF-κB [is] in a
cell comprises modulating the activity of IκB.

142.   (Amended) The method of claim 141, wherein modulating the activity of IκB comprises
modulating the [stability] level of IκB.

154.   (Amended) The method of claim 112, 135 [and] or 151, wherein the agent has not
previously been identified as a pharmaceutical agent.

## Remarks

Claims 57-59, 61-63, 93, and 97-154 are pending.

Claim 109 has been canceled. Claims 63, 98, 101, 103, 106, 112, 131, 141, 142, and 154
have been amended. Support for the claim amendments can be found throughout the
specification. No new matter has been added.

Cancellation and/or amendment of claims should in no way be construed as an
acquiescence to any of the Examiner's rejections. The cancellation and/or amendments to the
claims are being made solely to expedite prosecution of the present application. Applicants
reserve the option to further prosecute the same or similar claims in the instant or in a subsequent
patent application.

### *Objection of claims 101, 106, 109, 141, and 154 under 37 C.F.R. § 1.75(c)*

Claims 101, 106, and 109 were objected to under 37 C.F.R. § 1.75(c), as being of
improper dependent form for failure to further limit the subject matter of a previous claim. Claim
109 has been canceled. Claims 101 and 106 have been amended by substituting "human" for
"mammalian." Accordingly, withdrawal of the objection is respectfully requested.

Claim 141 was objected to as it should recite "in" rather than "is". Claim 141 has been
amended to correct for this typographical error.

Claim 154 has been objected to as being in improper form, because a multiple dependent
claim should refer to other claims in the alternative only. Claim 154 has been corrected, thereby
obviating the objection.

In view of the claim amendments, withdrawal of the objection to claims 101, 106, 109,
141, and 154 is respectfully requested.

ADL 0000699

USSN 08/464,364                    -5-                  Group Art Unit: 1636

_Rejection of claims 58, 63, 93, 98-100, 103-105, 107, 108, 115, 116, 130, 131, 134, 142, 143, 149, and 150 under 35 U.S.C. § 112, first paragraph_

Claims 58, 63, 93, 98-100, 103-105, 107, 108, 115, 116, 130, 131, 134, 142, 143, 149, and 150 have been rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. Applicants respectfully traverse this rejection.

The Examiner acknowledges that "the experimental techniques disclosed in the specification that were used to elucidate the mechanism of NF-kB regulation could be readily adapted by the skilled artisan to screen for agents which alter NF-kB and IkB activity," and that, "the specification does suggest that agents which regulate these two proteins could be screened for." The Examiner maintains, however, that "[t]he specification does not teach that IkB is phosphorylated and subsequently degraded by proteolysis and that this is the mechanism by which NF-kB is released from the inhibitory complex. The specification merely suggests these possibilities." Applicants disagree, and reiterate here the statements made in their previous response. In particular, Applicants submit that the specification teaches that treatment of cells with TPA, which activates NF-kB, involves alteration of IkB, but not NF-kB; and that, after TPA stimulation, no IkB is found in the cell, whereas the activated NF-kB remains sensitive to subsequent treatment with unmodified IkB (see page 71 of the specification). Applicants further submit, that the general knowledge in the art at the time the invention was made provided that TPA and LPS, both of which activate NF-kB, activate protein kinases, such as protein kinase C. Thus, at the time the application was filed, it would have been credible to a person of skill in the art at the time the invention was made, that NF-kB is activated by phosphorylation and subsequent proteolytic degradation of IkB, based on the disclosure of the application and the general knowledge in the art, in particular, the art of protein phosphorylation.

Applicants further submit herewith a copy of a Declaration Under 37 C.F.R. § 1.132, which was submitted in copending application Serial No. 08/463,397 (having the same specification as the above-referenced application), in which Dr. David Baltimore, a co-inventor in the above-referenced application, states that the application clearly conveys and provides adequate guidance for embodiments of the subject methods involving direct detection and modulation of IkB phosphorylation or IkB degradation, and that, based on the experimental results described in the application and on the general knowledge in the art at the time the application was filed, it would have been credible to one of ordinary skill in the that NF-kB is activated as a result of phosphorylation and degradation of IkB.

In particular, Dr. Baltimore lists evidence provided in the present application which supports the pending claims directed to, for example, methods for modulating IkB phosphorylation or stability (see, page two of the Declaration).

ADL 0000700

USSN 08/464,364                    -6-                    Group Art Unit: 1636

Dr. Baltimore further indicates that it was well known in the art at the time the invention was made, that TPA and LPS activate protein kinases, resulting in phosphorylation of specific proteins. Dr. Baltimore concludes that, in view of the general knowledge of protein phosphorylation at the time the invention was made, the results described in the specification would have reasonably been understood by those of skill in the art to be sufficiently convincing of a mechanism for NF-kB activation involving phosphorylation of IkB and subsequent degradation of the modified protein.

Thus, Applicants respectfully submit that the specification does teach that IkB is phosphorylated and subsequently degraded by proteolysis and that this is the mechanism by which NF-kB is released from the inhibitory complex. Contrary to the Examiner's position, the specification does not merely suggests these possibilities, but presents this mechanism of action in a way that would have been credible to a person of skill in the art at the time the invention was made.

The Examiner further states that "[a]s the specification does not even mention that inhibitors of IkB phosphorylation or degradation should be screened for or teach or refer to any screening assays which could be used for this purpose the specification clearly lacks essential teachings regarding the claimed methods and is not considered to be enabling for these aspects of the claimed invention." Applicants respectfully submit that, as acknowledged by the Examiner, the specification does suggest that agents that regulate NF-kB and IkB could be screened for (Office Action at page 5). Thus, since, as supported in particular by Dr. Baltimore's Declaration, the specification also teaches that NF-kB is activated by phosphorylation and subsequent proteolytic degradation of IkB, the specification also suggests that agents that regulate the phosphorylation and degradation of IkB could be screened for.

Thus, reconsideration and withdrawal of the rejection of claims 58, 63, 93, 98-100, 103-105, 107, 108, 115, 116, 130, 131, 134, 142, 143, 149, and 150 under 35 U.S.C. § 112, first paragraph, is respectfully requested.

### *Rejection of claims 57, 59, 61, 62, 97, 101, 102, 106, 109-111, 117-121, 135-141, 144-148 and 151-154 under 35 U.S.C. § 112, first paragraph*

Claims 57, 59, 61, 62, 97, 101, 102, 106, 109-111, 117-121, 135-141, 144-148 and 151-154 were rejected under 35 U.S.C. § 112, first paragraph, "because the specification, while being enabling for methods of altering NF-kB activity in a cell *in vitro*, does not reasonably provide enablement for methods of altering NF-kB activity in a cell *in vivo*." The Examiner further states that, "[t]he delivery of nucleic acids or proteins to target cells *in vivo* is an unpredictable method with many questions regarding the targeting of the compound to the appropriate cells, delivery of sufficient amounts of the compound to the target cells, stability of the compound both extracellularly and intracellularly, intracellular targeting and achieving intracellular

ADL 0000701

USSN 08/464,364                    -7-                    Group Art Unit: 1636

concentrations sufficient to provide the desired effect." Applicants respectfully traverse this rejection.

The specification provides sufficient teachings for a person of skill in the art to alter NF-kB activity in a cell *in vivo* with any type of compound, such as nucleic acids, proteins and small organic molecules, according to the methods of the invention without undue experimentation.

For example, the paragraph bridging pages 75 and 76 provides that,

> the expression vector containing IkB-encoding DNA can be introduced into an individual, using known techniques, by any of a variety of routes, such as intramuscular, intravenous, intraperitoneal administration. IkB itself (or other rel-associated protein) can also be introduced into cells to inhibit NF-kB (or other rel-related protein).

Methods for introducing DNA or proteins (e.g., nucleic acid decoys, full length IkB, and dominant negative proteins) into cells were well known in the art at the time the invention was made. In particular, eukaryotic expression vectors for expressing a desired nucleic acid in a cell, were well known in the art at the time the invention was made. For example, the following expression vectors were available: vaccinia virus vectors (see, e.g., Mackett et al. (1982) *PNAS* 79: 7415, the abstract of which is attached hereto as Exhibit K); papillomavirus vectors (see, e.g., Howley et al. (1983), *Methods Enzymol.* 101: 347, the abstract of which is attached hereto as Exhibit L; and U.S. Patent No. 4,419,446, attached hereto as Exhibit M); and SV40 and polyoma virus vectors (see, e.g., Rigby W. (1979) *Biochem. Soc. Symp.* 44: 89, which is attached hereto as Exhibit N).

Applicants further submit that there is ample evidence that alteration of the activity of a protein, such as NK-kB, *in vivo*, i.e., by gene therapy, was credible to a person of skill in the art at the time the invention was made. This is illustrated, for example, by the adoption of gene therapy guidelines by the National Institutes of Health (NIH) on September 23, 1985, entitled "Points to Consider in the Design and Submission of Human Somatic-Cell Gene Therapy Protocols" (see, e.g., Marjorie S. (1985) *Science* 230:302 and Roberts K., *The New York Times* September 29, 1985, discussing the Guidelines; attached hereto as Exhibits F and G, respectively). Under the guidelines, researchers must submit a detailed proposal for each genetic therapy that they want to undertake, and must receive approval for it. The fact that the NIH felt that it was time to adopt gene therapy guidelines is evidence that gene therapy techniques for introducing and expressing a protein of interest in an individual were available at that time, i.e., 1985. Thus, *in vivo* alteration of gene expression by gene therapy methods was credible to a person of skill in the art at the time the application was filed.

Regarding administration of small organic molecules to a subject, Applicants submit that methods for administration of therapeutics were well known in the art at the time the invention was made. See, e.g., Remington's Pharmaceutical Sciences Mark Publishing Co., Easton, Pa., 15th 2nd., 1975.

ADL 0000702

USSN 08/464,364                    -8-                    Group Art Unit: 1636

The Examiner also states that, regarding claims 62 and 153, "as of the effective filing date of the present application no protein- or nucleic acid-based therapeutic had been shown to be effective in eliciting any therapeutic response to HIV infection," and that the specification does not teach how to administer inhibitors in vivo to obtain a therapeutic effect in infected individual." Applicants respectfully submit that there is no requirement that therapeutics had to have been shown to be effective in eliciting a therapeutic response to HIV infection, so long as the specification teaches how to make and use the claimed therapeutic methods without undue experimentation. As set forth above, Applicants have shown that the specification is enabling.

The Examiner also states that no working examples are provided. Applicants respectfully submit that working examples are not required by the statute, rules, or the case law. M.P.E.P. § 2164.02 states "[t]he specification need not contain an example if the invention is otherwise disclosed in such manner that one skilled in the art will be able to practice it without undue amount of experimentation." In particular, there is no requirement for working examples of *in vivo* methods. Furthermore, an *in vitro* example in the specification, in effect, constitutes a "working example" if that example correlates with the claimed methods. Applicants have, provided numerous working examples showing in particular that treatment of cells with specific agents, such as phorbol esters, lipopolysaccharide, virus and poly(rI:rC) induces activation of NF-kB in these cells. Thus, since these examples considered with of the general knowledge in the art at the time the invention was made reasonably correlate with the claimed invention, these examples constitute working examples of *in vivo* methods.

Thus, reconsideration and withdrawal of the rejection of claims 57, 59, 61, 62, 97, 101, 102, 106, 109-111, 117-121, 135-141, 144-148 and 151-154 under 35 U.S.C. § 112, first paragraph, is respectfully requested.

### *Rejection of the 112-114, 122-129, 132, and 133 under 35 U.S.C. § 112, first paragraph*

Claims 112-114, 122-129, 132, and 133 were rejected under 35 U.S.C. § 112, first paragraph, because "the specification, while being enabling for a method for altering NF-kB-dependent gene transcription in a mammalian cell *in vitro* and for agents which alter the nuclear localization of NF-kB, alter the level of protein:protein complexes including NF-kB and IkB and/or alter the DNA binding affinity of NF-kB, does not reasonably provide enablement for a method of altering NF-kB dependent gene transcription in a mammalian cell *in vivo* or for agents which alter the level of phosphorylation of IkB or alter the stability of IkB." Applicants respectfully traverse this rejection.

As set forth above, the specification is enabling for the identification of agents which alter the phosphorylation or stability of IkB, as well as for *in vivo* methods of altering NF-kB-dependent gene transcription in a mammalian cell.

ADL 0000703

USSN 08/464,364                    -9-                    Group Art Unit: 1636

Thus, reconsideration and withdrawal of the rejection of claims 112-114, 122-129, 132, and 133 have been rejected under 35 U.S.C. § 112, first paragraph, is respectfully requested.

### Conclusion

In view of the above remarks and the amendments to the claims, it is believed that this application is in condition for allowance. If a telephone conversation with Applicant's Agent would expedite prosecution of the above-identified application, the Examiner is urged to call the undersigned at (617) 832-1177.

Respectfully submitted,
FOLEY, HOAG & ELIOT LLP

By: _____
Isabelle M. Clauss, Ph.D.
Registration No. (*see enclosed*)
Agent for Applicants

One Post Office Square
Boston, MA 02109
Telephone: (617) 832-1000
Facsimile: (617) 832-7000

Date:  September 17, 1999

ADL 0000704