# EXHIBIT O

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re the application of: Baltimore et al. | Group Art Unit: 1636 |
| Serial No.: 08/464,364 | Examiner: Schwartzman, R. |
| Filed: June 5, 1995 | |
| For: *Nuclear Factors Associated With Transcriptional Regulation* | |
| Attorney Docket No.: APV-035.03 | |

Assistant Commissioner for Patents
Washington, D.C. 20231

**Certificate of First Class Mailing (37 CFR 1.8(a))**
I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on the date set forth below.

May 30, 2000                                    By: _____
Date of Signature                                    Isabelle M. Clauss
and of Mail Deposit

## RESPONSE AND AMENDMENT

Sir:

Applicants submit this Response and Amendment in response to the Office Action dated November 29, 1999. A Request for a Three-month Extension of Time and appropriate fee are submitted concurrently herewith.

Please amend the Application as follows.

**In the claims:**

Please cancel claims 133 and 134 without prejudice and amend the remaining claims as follows:

57.     **(Amended)** A method for altering expression, in a mammalian cell, of a gene[, the transcription of which] whose expression is regulated by NF-kB, comprising altering the level of NF-kB—IkB complex present in [the cytoplasm of] said cell with an agent that binds a NF-kB protein or an IkB protein and alters the association between the two proteins and alters expression of the gene.

ADL 0000722

USSN 08/464,364                    -3-                    .roup Art Unit: 1636

58.    **(Amended)** A method of inhibiting expression, in a mammalian cell, of a gene[, the transcription of which] whose expression is dependent on a DNA binding activity of a NF-kB protein, [the method] comprising inhibiting the DNA binding activity of the NF-kB protein by] contacting the cell with an agent which (i) inhibits phosphorylation of an IkB protein and/or (ii) prevents degradation of an IkB protein, or both [which IkB forms a transcriptionally inactive complex with the NF-kB protein, wherein the agent inhibits expression of the gene].

61.    **(Amended)** A method of inducing DNA-binding and nuclear translocation of NF-kB present in the cyotosol of a mammalian host cell, comprising treating the cell with a substance which causes dissociation of NF-kB--IkB complexes, resulting in induction of DNA-binding activity and nuclear translocation of the NF-kB present in the complex.

103.    **(Amended)** The method of claim 61, wherein the substance leads to a decrease[s] in the level of IkB.

104.    **(Amended)** The method of claim 103, wherein the substance [causes] leads to degradation of IkB.

105.    **(Amended)** The method of claim 61, wherein the substance leads to [stimulates] stimulation of phosphorylation of IkB.

108.    **(Amended)** The method of claim 107, wherein the agent leads to [inhibits] inhibition of degradation of the IkB protein.

110.    **(Amended)** The method of claim [109] 58, wherein the cell is a human cell.

113.    **(Amended)** The method of claim 112, wherein the agent [inhibits] leads to inhibition of NF-kB-dependent gene transcription.

114.    **(Amended)** The method of claim 112, wherein the agent leads to potentiation of [potentiates] NF-kB-dependent gene transcription.

115.    **(Amended)** The method of claim 112 or 113, wherein the agent [inhibits] leads to inhibition of phosphorylation of an IkB protein.

116.    **(Amended)** The method of claim 112 or 113, wherein the agent [increases] leads to an increase in the stability of an IkB protein.

ADL 0000723

USSN 08/464,364                    *-3                    roup Art Unit: 1636

117.   (Amended)  The method of claim 112 or 113, wherein the agent [inhibits] leads to inhibition of nuclear localization of a NF-kB protein.

118.   (Amended)  The method of claim 112 or 114, wherein the agent leads to potentiation of [potentiates] nuclear localization of a NF-kB protein.

119.   (Amended)  The method of claim 112, wherein the agent [inhibits] leads to inhibition of formation of protein:protein complexes including NF-kB and IkB proteins.

120.   (Amended)  The method of claim 112 or 113, wherein the agent agent [inhibits] leads to inhibition of a DNA-binding activity of NF-kB.

128.   (Amended) The method of claim 112, 122, 123[, 123], 125 or 126, wherein the agent is identified in a competitive binding assay using a NF-kB or IkB protein, or portion thereof.

132.   (Amended) The method of claim 112, 122, 123 or 126, wherein the agent is identified in a nuclear localization assay which [directly] detects a NF-kB protein.

135.   (Amended)  A method for altering an activity of [a] NF-kB [gene product] in a mammalian cell, comprising

(a)      identifying an agent by its ability to bind to a NF-kB protein or an IkB protein, which agent alters an activity of the NF-kB protein in a cell; and

(b)      treating a mammalian cell with an agent identified in (a) [, in an amount sufficient] to alter the activity of NF-kB in the cell [, to thereby modulate the activity of NF-kB in the cell].

141.   (Amended) The method of claim 135, wherein modulating the activity of NF-kB [in a cell] comprises modulating the activity of IkB.

144.   (Amended) The method of claim 136, wherein identifying the agent which modulates NF-kB activity comprises [contacting a cell with a test agent, said cell comprising] comparing expression of a gene operably linked to at least one NF-kB binding site, [and comparing expression of the gene in the cell contacted with the] in the presence and absence of a test agent, [relative to a cell which was not contacted with the test agent,] wherein a difference in the expression of the gene [in the cell contacted with the test agent relative to a cell which was not contacted with the test agent] indicates that the test agent modulates the activity of NF-kB.

ADL 0000724

150.    **(Amended)** A method for inhibiting the activity of NF-kB in a mammalian cell, comprising

(a)     identifying an agent which inhibits IkB phosphorylation; and

(b)     treating a mammalian cell with the agent of (a) [in an amount sufficient] to inhibit the activity of NF-kB in the cell [,

to thereby inhibit the activity of NF-kB in the cell].

Please add new claims 155-157:

–155.    A method for altering NF-kB-dependent gene transcription in a mammalian cell, comprising contacting a mammalian cell with an agent that has been identified by its ability to

(i)     alter the level of phosphorylation of an IkB protein,

(ii)    alter the level of an IkB protein,

(iii)   alter the nuclear localization of a NF-kB protein,

(iv)    alter the level of protein:protein complexes including NF-kB and IkB proteins, and/or

(v)     alter the DNA binding activity of NF-kB,

to alter NF-kB-dependent gene transcription in the cell.

156.    A method for altering an activity of NF-kB in a mammalian cell, comprising contacting a cell with an agent that has been identified by its ability to bind to a NF-kB protein or an IkB protein, which agent alters an activity of the NF-kB protein in a cell, to modulate the activity of NF-kB in the cell.

157.    A method for inhibiting the activity of NF-kB in a mammalian cell, comprising contacting a cell with an agent that has been identified by its ability to inhibit phosphorylation, to inhibit NF-kB in the cell.--

## Remarks

Claims 57-59, 61-63, 93, and 97-108 and 110-154 are pending. Claims 133 and 134 have been canceled. Claims 57, 58, 61, 103-105, 108, 110, 113, 120, 128, 132, 135, 141, 144, and 150 have been amended. New claims 155-157 have been added. Support for the claim amendments and new claims can be found throughout the specification. No new matter has been added.

Cancellation and/or amendment of claims should in no way be construed as an acquiescence to any of the Examiner's rejections. The cancellation and/or amendments to the claims are being made solely to expedite prosecution of the present application. Applicants

ADL 0000725

USSN 08/464,364                                        Group Art Unit: 1636

reserve the option to further prosecute the same or similar claims in the instant or in a subsequent patent application.

### Claim objections

Claims 110 and 128 have been objected to by the Examiner. The claims have been amended, and as amended are believed to obviate the objection. Withdrawal of this rejection is thus respectfully requested.

### Rejection of claims 57-59, 61, 63, 93, 97-108, 110, 112-152 and 154 under 35 U.S.C. § 112, first paragraph

Claims 58-59, 61, 63, 93, 97-108, 110, 112-152 and 154 have been rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention. Applicants respectfully traverse this rejection.

The Examiner states that "[t]he specification discloses a few agents which activate NF-κB when they contact a cell (...), oligonucleotide decoys comprising the NF-κB binding site and the use of NF-κB and IκB proteins as agents to modulate NF-κB-dependent transcription. No other agents are disclosed, in particular agents which inhibit phosphorylation of IκB, prevent degradation of IκB, decrease the level of IκB or stimulate phosphorylation of IκB. The disclosure of the compounds listed above is not deemed to be descriptive of the complete structure of a representative number of species encompassed by the claims as one of skill in the art cannot envision agents having each of the claimed capabilities or even other agents having the same capabilities of the compounds listed above. Nor is there a description of a representative number of species in terms of a partial structure and relevant identifying characteristics as there is no disclosed correlation between particular structures and the desired capabilities."

An essential goal of the written description of the invention requirement is to clearly convey that an applicant has invented the subject matter which is claimed. An objective standard for determining compliance with the written description requirement is whether the description clearly allows persons of ordinary skill in the art to recognize that s/he invented what is claimed. In re Gosteli, 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618 (Fed. Cir. 1989). As the PTO has previously articulated in its guidelines for Examiners, to satisfy the written description requirement, "a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention." See Federal Register June 15, 1998 (Volume 63, Number 114) entitled "Request for Comments on Interim Guidelines for Examination of Patent Applications Under the 35 U.S.C.

ADL 0000726

USSN 08/464,364                          7⁶                    . Group Art Unit: 1636

112 para. 1 Written Description Requirement". Such a review should be conducted from the standpoint of one of skill in the art at the time the application was filed. Moreover, what is well known to one skilled in the art need not be disclosed. See Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367 (Fed. Cir. 1986). If a skilled artisan would have understood the inventor to be in possession of the claimed invention at the time of filing, even if every nuance of the claims is not explicitly described in the specification, then the adequate description requirement is met. See Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555 (Fed. Cir. 1991); Martin v. Johnson, 454 F.2d 746 (CCPA 1972); and M.P.E.P. § 2163.

Applicants respectfully submit that one of ordinary skill in the art would recognize from the disclosure that Applicants were in possession of the claimed invention. The claims that stand rejected are drawn to a method for modulating certain biological phenomena by modulating the activity of NF-kB or its inhibitory binding partner, Ik-B. Applicants are the pioneers who identified NF-kB as a key mediator of fundamental biological phenomena and elucidated the mechanism of NF-kB-mediated signaling. The claims are directed to the application of those discoveries, first disclosed in the subject application. The specification explicitly lays claim to: "methods of regulating (inducting or preventing) activation of NF-kB, controlling the expression of .... genes whose expression is controlled by NF-kB ..." (page 7, last paragraph, of the specification); "alter[ing] or modify[ing] the activity of NF-kB as an intracellular messenger ... "(page 8, first paragraph, of the specification); "a method of regulating or influencing transduction, by NF-kB, of extracellular signals ..." (page 8, end of first paragraph, of the specification); doing so for the "medical implications" of NF-kB function (page 9, end of bridging paragraph, of the specificaiton); with reference to both genetic and drug approaches (see e.g. page 6, end of 1st full paragraph) and with reference to the various approaches for modulating NF-kB functioning (see chart in prior response).

In a nutshell, Applicants disclosed that one can modulate biological functions by modulating NF-kB-mediated signaling; disclosed that one can do so by affecting NF-kB or Ik-B, directly or indirectly; and disclosed that a variety of classes of substances could be used to do just that. Certainly other agents could also be used in the practice of the invention, but that is not inconsistent with Applicants' possession of the claimed invention as of their filing date.

The specification provides several examples of agents which have positive and negative modulating effects, as recognized by the Examiner. Under the circumstances, that should suffice to support the generic claims. According to the USPTO Training Materials for the Revised Interim Written Description Guidelines, in cases such as this one where one would have recognized from the disclosed species that applicant was in possession of the necessary common attributes or features of the members of the genus (modulaters of NF-kB activity), then the written description requirement is met. See" Genus Analysis", page 9, of the Guidelines.

This should suffice to demonstrate possession of the generic invention, which is defined through method claims.

ADL 0000727

USSN 08/464,364        -8-        Group Art Unit: 1636

Furthermore, as set forth in the Synposis of Application of Written Description Guidelines, "[t]here is a strong presumption that an adequate written description of the claimed invention is present in the specification as filed," and that "the examiner has the initial burden, ..., of presenting evidence or reasons why a person skilled in the art would not recognize that the written description of the invention provides support for the claims." Applicants respectfully submit that this high standard of burden has not been met in the instant case, i.e., insufficient evidence has been set forth to prove that a person skilled in the art would not recognize that the written description of the invention provides support for the claimed methods. In particular, the evidence that was provided focuses on agents, rather than on the claimed methods. Thus, no evidence has been provided why a person skilled in the art would not recognize that the Applicants had invented methods for modulating NF-κB in a cell by identifying an agent which affects a biological activity of NF-kB and then contacting the cell with the agent.

Thus, in view of the above, Applicants respectfully request reconsideration and withdrawal of this rejection.

### Rejection of claims 57-59, 61, 63, 93, 97-108, 110, 112-152 and 154 under 35 U.S.C. § 112, first paragraph

Claims 58-59, 61, 63, 93, 97-108, 110, 112-152 and 154 have been rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to enable one skilled in the art to which it pertains, or with which it is most nearly connected, to make and/or use the invention. Applicants respectfully traverse this rejection.

The Examiner states that "[m]ost of these claims are drawn to a method of using an agent which has been identified by a particular assay," but that "[s]ince the claimed method involve the use of agents which are not disclosed in the present specification as they have yet to be identified, the specification does not teach one skill in the art how to use the unidentified agents." The Examiner further states that "[a]gents having the claimed capabilities might have any structure, including proteins, nucleic acids, small organic molecules, polymers, etc.," and that "[e]ach agent would require specific knowledge in terms of how to make it, how much to use, methods by which it can be delivered to a cell *in vitro* and *in vivo*, how it can be delivered inside a cell, how to target it to the appropriate cells and other such factors." In particular, the Examiner states that "[i]t is not sufficient that one of skill in the art knew in general how to administer DNAs, proteins, and small organic molecules to an individual. The skilled artisan did not know how to administer these agents in order to modulate NF-κB activity in a desired fashion."

The enablement requirement is met so long as the specification teaches at least one method of making and using the claimed invention. The claims that stand rejected are drawn to a method for altering an activity of NF-κB, expression of a gene whose transcription is regulated

ADL 0000728

USSN 08/464,364                       -9-⁸                       Group Art Unit: 1636

by NF-κB, e.g., HIV, in a mammalian cell comprising, e.g., identifying an agent by its ability to alter the level of phosphorylation or the stability of an IκB protein; alter the nuclear localization of an NF-κB protein; alter the level of NF-κB-IκB complex; alter the DNA binding activity of NF-κB; or by its ability to bind to an NF-κB or IκB protein, and contacting a mammalian cell with such an agent to alter NF-κB-dependent gene transcription in the cell.

As set forth above, the Examiner acknowledged in the Office Action dated March 17, 1999 that "the specification does suggest that agents which regulate these two proteins could be screened for" (emphasis added), and that "[t]he experimental techniques disclosed in the specification that were used to elucidate the mechanism of NF-κB regulation could be readily adapted by the skilled artisan to screen for agents which alter NF-κB and IκB activity." Thus, the specification teaches how to screen for molecules, e.g., small molecules, peptides or nucleic acids, which modulate an activity of NF-κB.

In view of the Examiner's admission that the application teaches how to find agents which regulate NF-kB activity, the Examiner's rejection then turns on whether the specification, in light of the level of skill in the art, provides sufficient guidance as to administering such agents. Applicants point out again that the specification teaches, e.g., that proteins can be expressed in cells by using expression vectors. Various other methods for introducing proteins, nucleic acids and small molecules were well known in the art at the time the application was filed, as pointed out by Applicants in their previous response. In addition, since the skill in the art was high at the time the application was filed, a person of skill in the art could have determined using routine experimentation how to administer these molecules to a subject to obtain the desired effect. It was generally also known in the art how to determine the dose and the route of administration of a drug to a subject to obtain a desired effect, and specific doses and routes of administration could be determined by routine experimentation without undue experimentation, such as in clinical trials. In particular, at the time the application was filed, drugs were already used for treating disorders in which modulators of NF-kB can also be used, e.g., inflammation, and thus, the mode and route of administration of modulators of NF-kB can be mirrored on those of these known drugs.

Thus, reconsideration and withdrawal of this rejection is respectfully requested.

### _Rejection of claims 62, 11 and 153 under 35 U.S.C. § 112, first paragraph_

Claims 58-59, 61, 63, 93, 97-108, 110, 112-152 and 154 have been rejected under 35 U.S.C. § 112, first paragraph,

because the specification, while being enabling for a method of inhibiting HIV DNA expression or inhibiting expression of a NF-κB-dependent gene using a nucleic acid decoy in cells _in vitro_, does not reasonably provide enablement for a method of inhibiting HIV DNA expression or inhibiting expression of a NF-κB-dependent gene using a nucleic acid decoy molecule in cells _in vivo_. The

ADL 0000729

USSN 08/464,364                          -16-ᵃ                   Group Art Unit: 1636

specification does not enable any person skilled in the art to which it pertains, or
with which it is most nearly connected, to use the invention commensurate in
scope with these claims.

Applicants respectfully traverse this rejection.

The enablement requirement is met so long as the specification teaches at least one
method of making and using the claimed invention. Here, the specification teaches that decoy
nucleic acids can be administered to a subject to inhibit NF-κB activity, e.g., to inhibit HIV
replication. At the time the application was filed, techniques for introducing nucleic acids, e.g.,
decoy oligonucleotides, into cells were known. For example, it was known that the nucleic acids
can be prepared in liposomes and the liposomes administered to a subject (see, e.g., Nicolau et
al. (1984) Ciba Found. Symp. 1984 103: 254, entitled "Liposomes for gene transfer and
expression *in vivo*" (abstract attached hereto as Exhibit A). The use of liposomes for
administration of DNA is substantiated by, e.g., Nabel et al. (1996) *P.N.A.S.* 93: 15388, attached
hereto as Exhibit B, describing clinical trials of melanoma patients with DNA-liposome
complexes. Alternatively, nucleic acids can be expressed in cells *in vivo* by administration of
naked vectors or recombinant viral particles to the subject. As set forth by Applicants in their
last response, the use of vectors to express nucleic acids *in vivo* was well known in the art and
was credible to a person of skill in the art at the time the application was filed. In this particular
case, the decoy would either be the DNA in the vector, or it could be RNA molecules encoded by
the vector. Thus, the specification in light of the general knowledge in the art provide sufficient
guidance to allow a person of skill in the art to practice the claimed invention without undue
experimentation.

Applicants respectfully submit that it is not necessary to provide working examples of *in
vivo* inhibition of HIV DNA expression in a subject, so long as the use alleged in the
specification is credible to a person of skill in the art. As set forth by Applicants in their last
response, the use of vectors to deliver nucleic acids into cells was credible to a person of skill in
the art at the time the application was filed, as demonstrated, e.g., by the adoption of gene therapy
guidelines by the NIH in 1985. In addition, some experimentation is allowed to determine the
exact doses and details of the clinical protocol for treating HIV.

In fact, since the application was filed, decoy oligonucleotides have been used to inhibit
binding of a transcription factor to its DNA binding site both *in vitro* and *in vivo*. Numerous
articles describe the efficiency of NF-κB decoy oligonucleotides for inhibiting NF-κB mediated
gene expression, such as HIV replication. See for example: Khaled et al. (1998) *Clin. Immunol.
Immunopath.* 86: 170 entitled "Use of phophorothioate-modified oligodeoxynucleotides to
inhibit NF-κB expression and lymphocyte function," attached hereto as Exhibit C; and Tomita et
al. (1998) *J. Hypertens.* 16: 993, entitled "Transcription factor decoy for nuclear factor-kappaB
inhibits tumor necrosis factor-alpha-induced expression of interleukin 6 and intracellular
adhesion molecule 1 in endothelial cells," attached hereto as Exhibit D."

ADL 0000730

USSN 08/464,364                                -14-                        Group Art Unit: 1636

NF-κB decoy oligonucleotides have also been used *in vivo* in animal models.  For example, Kawamura et al. describe that injection of NF-kappa B decoy oligonucleotides into tumors of mice results in the inhibition of cachexia (Kawamura et al. (1999) *Gene Ther*. 6: 91 entitled "Intratumoral injection of oligonucleotides to the NF kappa B binding site inhibits cachexia in a mouse tumor model," attached hereto as Exhibit E.  Morishita et al. *Nat. Med.* (1997) 3:894 and Sawa et al. *Circulation* (1997) 96:II-280 (attached hereto as Exhibits F and G, respectively), each describe a gene therapy approach for myocardial protection using in vivo transfection of cis element decoys using kB response elements.  Sawa et al. describes that rat hearts were transfected with either a kB decoy or a scrambled decoy (control) by coronary infusion of hemagglutinating virus of Japan (HVJ)-liposome during cardioplegic arrest.  The authors demonstrated that hearts transfected with the cis element decoy which binds NF-κB showed significant improvement in tolerance against ischemia-reperfusion injury in association with the inhibition of neutrophil adeherence and tissue IL-8 production.

Further support for substantiating the credibility of administration of decoys to inhibit transcriptional stimulation by a specific transcription factor is provided in U.S. Patent No. 6,060,310 by Cho Chung, entitled "Transcription factor decoy and tumor growth inhibitor," attached hereto as Exhibit H.  In particular, in Example 5, the inventor describes that intraperitoneal injection of a decoy oligonucleotide comprising a cAMP response element (CRE) to a nude mouse that was inoculated with tumor cells resulted in greater than 85% inhibition of tumor growth, thus demonstrating the *in vivo* efficiency of decoy oligonucleotides that compete with the binding of transcription factors to their DNA binding.

The above-cited references are not offered to render an insufficient disclosure enabling, rather, they prove that the disclosure was in fact enabling when filed.  In re Brana, 51 F2d 1560 (CAFC 1995).

Thus, reconsideration and withdrawal of this rejection is respectfully requested.

ADL 0000731

USSN 08/464,364                     -12-            Group Art Unit: 1636

## Conclusion

In view of the above remarks and the amendments to the claims, it is believed that this application is in condition for allowance. If a telephone conversation with Applicant's Agent would expedite prosecution of the above-identified application, the Examiner is urged to call the undersigned at (617) 832-1000.

Respectfully submitted,
FOLEY, HOAG & ELIOT LLP

By:

Isabelle M. Clauss, Ph.D.
Registration No. (*see enclosed*)
Agent for Applicants

One Post Office Square
Boston, MA 02109
Telephone: (617) 832-1000
Facsimile: (617) 832-7000

Date:  May 30, 2000

ADL 0000732