# EXHIBIT S



EXPEDITED AFTER
FINAL PROCEDURE

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In re the application of: Baltimore et al. | Group Art Unit: 1636 |
|---|---|
| Serial No.: 08/464,364 | Examiner: Schwartzman, R. |
| Filed: June 5, 1995 | Attorney Docket No.: APV-035.03 |
| For: *Nuclear Factors Associated With Transcriptional Regulation* | |

Box AF
Assistant Commissioner for Patents
Washington, D.C. 20231

---

**Certificate of Facsimile**

I hereby certify that this correspondence is being submitted by facsimile to the United States Patent and Trademark Office on the date set forth below.

September, 12 2001                         By
Date of Signature and of Facsimile Transmission

---

### RESPONSE AND AMENDMENT

Sir:

In response to the Office Action mailed 11 August 2000 (herein the "Office Action"), and Notice of Appeal filed 15 February 2001, Applicants submit the following Response and Amendment. A Notice of Appeal and a Petition for a Five Months Extension of Time and appropriate fees are filed concurrently herewith. Please amend the application as follows.

A. Amendment of Claims

Please amend the claims as follows:

- Cancel claims 57-59, 61, 63, 93, 97-108, 110, 112-132, 135-152 and 154-157 without prejudice

ADL 0000874

# Optipat®

**Faxpat**

Dear Valued Customer:

☐ Paper number _____ is missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available.

☒ The following page(s) __2__ of paper number __48__ is/are missing from the United States Patent and Trademark Office's original copy of the file history. No additional information is available.

Additional comments: _____

If you have any questions or comments, please contact a Faxpat / Optipat Customer Assistance representative at 800-445-9760. We appreciate your patronage. Thank you.

5350 Shawnee Road • Suite 110 • Alexandria, VA 22312
Phone: 800.445.9760 or 703.916.1500 • fax: 800.445.9761 or 703.916.1727
www.faxpat.com   www.optipat.com

ADL 0000875

USSN 08/464,364     -3-     Group Art Unit: 1636



158. (new) A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB by reducing NF-κB activity in the cell.

159. (new) A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB by reducing NF-κB activity in the cell.

160. (new) A method for reducing the level of expression of a viral gene in a eukaryotic cell by reducing NF-κB activity in the cell.

161. (new) The method of claim 160, wherein the viral gene is a CMV, HIV or SV40 gene.

162. (new) A method for reducing the level of expression of a cytokine gene in a eukaryotic cell by reducing NF-κB activity in the cell.

163. (new) A method for diminishing induced NF-κB-mediated intracellular signaling by reducing NF-κB activity in cells.

164. (new) A method for modifying effects of external influences on a eukaryotic cell, which external influences induce NF-κB-mediated intracellular signaling, the method comprising altering NF-κB activity in the cell.

165. (new) The method of claim 164, wherein NF-kB activity in the cell is reduced.

166. (new) A method for inhibiting, in eukaryotic cells, expression of genes which are activated by extracellular influences which induce NF-κB-mediated intracellular signaling, the method comprising reducing NF-κB activity in the cells.

167. (new) A method for reducing the effects of infection by reducing NF-κB activity in cells.

168. (new) The method of claim 167, wherein the infection is a viral infection.

169. (new) The method of claim 167, wherein the infection is a bacterial infection.

170. (new) A method for reducing the effects of bacterial lipopolysaccharide by reducing NF-κB activity.

171. (new) A method for reducing bacterial lipopolysaccharide-induced expression of cytokines, which method comprises reducing NF-κB activity.

172. (new) A method for reducing bacterial lipopolysaccharide-induced expression of Tumor Necrosis Factor-alpha, which method comprises reducing NF-κB activity.

173. (new) A method for reducing bacterial lipopolysaccharide-mediated stimulation of immune cells, which method comprises reducing NF-κB activity.

ADL 0000876

USSN 08/464,364               -4-                    Group Art Unit: 1636

174. (new) A method for reducing bacterial-induced NF-κB signaling in cells, which method comprises reducing NF-κB activity in the cells.

175. (new) A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity by reducing intracellular NF-κB activity.

176. (new) A method for reducing bacterial lipopolysaccharide-induced translocation of NF-κB comprising inhibiting one or more of: (a) modification of an IκB protein which reduces binding to NF-kB, (b) degradation of an IκB protein, or (c) dissociation of NF-κB—IκB complexes.

177. (new) The method of any of claims 158 – 175 wherein NF-κB activity is reduced by decreasing the level of NF-κB not bound in an NF-κB:IκB complex.

178. (new) The method of any of claims 158 – 175 wherein NF-κB activity is reduced by inhibiting the passage of NF-κB into the nucleus of cells.

179. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting modification of an IκB protein, which modification otherwise reduces IκB binding to NF-kB.

180. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting degradation of an IκB protein.

181. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting dissociation of NF-κB—IκB complexes.

182. (new) The method of any of claims 158 – 175 wherein reducing NF-κB activity comprises reducing binding of NF-κB to NF-κB recognition sites on genes which are transcriptionally regulated by NF-κB.

183. (new) The method of any of claims 158 – 176, carried out on mammalian cells.

184. (new) The method of claim 183, wherein the mammalian cells are human cells.

185. (new) The method of claim 183, carried out on immune cells.

186. (new) The method of claim 183, carried out on lymphoid cells.

187. (new) The method of claim 183, carried out on liver cells.

188. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to decrease the level of NF-kB not bound in an NF-kB:IkB complex

ADL 0000877

USSN 08/464,364      -5-      Group Art Unit: 1636

189. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the dissociation of NF-kB IkB complexes.

190. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the modification of IkB.

191. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the degradation of IkB.

192. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the passage of NF-kB into the nucleus of cells.

193. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to reduce the binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB-mediated signal transduction.

*Attached hereto is a marked-up version of the changes made to the claims by the current amendment. The attached page is captioned "Version with markings to show changes made." For the convenience of the Examiner, all claims being examined, whether or not amended, are presented in that section.*

B. Support for Amended Claims

Support for such phrases as "inhibiting nuclear localization of a NF-κB protein", "inhibiting a DNA binding activity of an NF-κB protein" and "inhibiting dissociation of NF-κB--IkB complexes" have previously been demonstrated. Support for other phrases can be found inter alia as follows:

| phrase | page/paragraph of specification |
|---|---|
| reducing the effects of infection on cells by reducing NF-kB activity in the cells | Page 30, paragraph 1; Page 74, lines 10-14; Figures 20, 21 and 42 |
| reducing the effects of bacterial lipopolysaccharide by reducing NF-kB activity | Page 30, paragraph 1; Example 8; Figures 20 and 21 |
| reducing bacterial lipopolysaccharide induced expression of cytokines | Page 74, lines 5-7; Page 30, paragraph 1; Example 8; Figures 20 and 21 |
| reducing bacterial lipopolysaccharide induced | Page 39, line 29 – Page 40, line 1; Page 30, |

ADL 0000878

USSN 08/464,364                -6-                Group Art Unit: 1636

| | |
|---|---|
| expression of Tumor Necrosis Factor-α | paragraph 1; Example 8; Figures 20 and 21 |
| reducing bacterial lipopolysaccharide-mediated stimulation of immune cells | Page 30, paragraph 1; Example 8; Figures 20 and 21 |
| reducing Interleukin-1 or Tumor Necrosis Factor-α activity by reducing intracellular NF-kB activity | Page 74, lines 5-7; Page 39, line 29 – Page 40, line 1 |
| modifying effects of external influences on a eukaryotic cell, which external influences induce NF-kB-mediated intracellular signaling | Page 23, lines 17-18 |
| inhibiting, in eukaryotic cells, expression of genes which are activated by extracellular influences which induce NF-kB-mediated intracellular signaling | Page 7, lines 26-30 |
| modification of an IkB protein which reduces binding to NF-kB | Page 40, lines 14-22; and page 37, lines 10 - 11 |

### C. Outstanding Rejection Of Certain Pending Claims

In the outstanding Office Action, claims 57-59, 61, 63, 93, 97-108, 110, 112-132, 135-152 and 154-157 were rejected under 35 U.S.C. § 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to "reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention".

There, the Examiner noted Applicants' previously made points, including the following:
* applicants are the pioneers who identified NF-κB as a key mediator of biological phenomena,
* the specification explicitly lays claim to methods of modulating NF-κB and signaling through NF-κB,
* one can affect NF-κB directly or indirectly,
* a variety of classes of substances could be used for that purpose, and
* the specification discloses several examples of substances which modulate NF-κB.

The Examiner did not dispute the veracity of those points, but rather took issue specifically with the recitation of agents in the then pending method claims. The Examiner's position was based on the grounds that the specification lacked adequate description of those

ADL 0000879

USSN 08/464,364 -7- Group Art Unit: 1636

agents *per se*, especially in view of the structural diversity of agents that modulate NF-κB activity. This is discussed in greater detail on pages 4 –5 of the Office Action.

Moreover, the Examiner considered the specification's guidance on how to use such agents to be inadequately enabling to the extent that those agents were recited as agents identified by a particular assay, rather than as structurally identified agents. Additionally, a number of issues were raised regarding support for the method for inhibiting expression of HIV DNA recited in withdrawn claims 62 and 153. See the Office Action at pages 6 – 7.

Applicants do not agree with the Examiner's conclusions for the reasons presented below.

Additionally, a number of issues were raised regarding support for the method for inhibiting expression of HIV DNA recited in withdrawn claims 62 and 153. See the Office Action at pages 6 – 7. While Applicants' stand by the points made in their prior traversal of the rejection of claims 62 and 153 (See their May 30, 2000 Response and Amendment, see especially pages 9 - 10) and do not acquiesce to the maintenance of the rejection, they have withdrawn claims 62 and 153, rendering this issue moot.

D. Applicant's Rebuttal of the Rejections

The amendments to the claims are believed to render moot all outstanding grounds for rejection with respect to claims 158 – 187. Those claims, as well as new claim 188 and the cancelled claims are believed to comply with the requirements of Section 112 for the reasons set forth below, as well as in our prior responses.

*(i) Applicants Possessed the Claimed Invention*

According to the USPTO, the written description requirement is met by the Applicants if it would be apparent to those skilled in the art or science that the inventor was in possession of the claimed invention at the time of filing the patent application. See Guidelines for Examination of Patent Applications Under the 35 U.S.C. 112 1, 66 Fed. Reg. 4, 1099 (2001). The courts have repeatedly articulated a similar standard. There is no *per se* rule that, to show possession of the claimed invention, the Applicants must have been able to describe the structure of the chemical entities which could be identified in the assay steps. As the Examiner has stated, sufficient description can be provided not only by disclosure of structure, but also by disclosure of relevant identifying characteristics, i.e., "by other physical and/or chemical properties, by functional characteristics coupled with a known or disclosed correlation between function and structure, or

ADL 0000880

USSN 08/464,364                              -8-                         Group Art Unit: 1636

a by a combination of such identifying characteristics". See Office Action at page 5, citing the Written Description Guidelines. Clearly the courts and the patent office contemplate something other than merely structure alone for the definition of a class of substances *per se*, let alone for describing a method using such substances. In this case, as discussed in greater detail below, substances of structurally diverse types are, and would have been expected to be, useful in practicing the claimed methods. Thus it would be impractical and unreasonable to require a structural definition of each of the diverse kinds of agents useful in practicing the claimed methods. And, importantly, a structural definition would be unnecessary to convey to the reader Applicants' possession of the invention. Possession was manifested by the disclosed discovery of the signaling pathway and ways to identify and use inhibitors thereof. Thus, it is appropriate under the circumstances for Applicants to have defined the method of use with reference to agents identified or characterized by their method of selection or identification, as that inherently defines characteristic properties of useful agents.

The screening assays taught by the present application permit the identification or characterization of substances that modulate NF-$\kappa$B activity by various mechanisms. And there is no question about Applicants' possession of the screening methods. That is clear from US 6,150,090, which is based on the same specification as the subject application.

By definition, substances identified or characterized by the disclosed assays, irrespective of how widely they may vary from one another in chemical structure, are useful for inhibiting or potentiating (as the appropriate case may be) NF-$\kappa$B-mediated cellular signaling. No more need be known of the chemical structure of the substance to appreciate its utility in the claimed methods. To the contrary, a person of skill in the art would have reasonably expected that the screening steps of the prior claims would identify a diverse group of substances having any of a wide variety of structures, with no common structure expected to link the function disclosed by the specification and use covered by the prior claims. That is, a person of skill in the art would have readily appreciated that all modulators of NF-$\kappa$B would *not* have the same or similar structure. Even compounds regulating NF-$\kappa$B by the same mechanism, such as by inhibiting modification or degradation of I$\kappa$B, would have been expected to include any of a variety of different structures.

Indeed, at the time the present application was filed, there was ample precedent in the scientific literature for identifying structurally diverse agents based on their common activity against a selected biological target. For instance, Weinstein et al. (1989) Am J Hypertens 2:205 review the state of calcium antagonists, and note the identification of calcium antagonists of "very diverse structure." See also Triggle et al. (1983) Circ Res 52: 117. Likewise, Mills et al. (1989) Methods Find Exp Clin Pharmacol 11 Suppl 1: 87 reviews the state-of-the-art of H2-

ADL 0000881

USSN 08/464,364        -9-        Group Art Unit: 1636

receptor antagonists, and notes that "numerous compounds with diverse chemical structures have been shown to possess H2-receptor antagonist activity. See also Badger et al. (1984) Int J Immunopharmacol 6:467. The art already recognized many instances wherein structurally unrelated compounds acted on the same target protein(s). Thus, one of ordinary skill in the art would not have doubted applicants' possession of the invention based on the existence of NF-κB modulators of diverse structures, or on the reference in the method claims to such agents identified or characterized in appropriate functional assays.

Applicants' argument is further substantiated by the Declaration of David Baltimore under Rule 1.132 and In re Brana, a copy of which is attached hereto as Exhibit A. Dr. Baltimore points out examples of the types of compounds that have been found, as predicted by the application, to alter NF-κB and/or IκB activity and affect NF-κB mediated gene expression in cells. These compounds are structurally diverse. However, each is characterized by its ability to alter NF-kB signaling activity and to influence NF-κB mediated gene expression. Dr. Baltimore's declaration is not offered to render an insufficient disclosure enabling, rather, they prove that the disclosure was in fact enabling when filed. In re Brana, 51 F2d 1560 (CAFC 1995).

Further to this point, the Examiner's attention is directed to the attached publications of White et al (2000) British Journal of Hematology 110:130 (Exhibit B) and Fujihara et al. (2000) Journal of Immunology 165:1004 (Exhibit C). These references describe the use of compounds which reduce bacterial lipopolysaccharide (LPS) mediated activation of NF-κB signaling activity leading to inhibition of NF-κB dependent gene expression. For instance, Fujihara et al. describe the use of an intracellularly targeted peptide inhibitor of NF-κB nuclear translocation. In particular, they used cell permeable peptides carrying two nuclear localization sequences (NLS) and demonstrated that these peptides inhibited LPS-induced NF-κB nuclear translocation leading, inter alia, to inhibition of expression of the κ Ig light chain gene, a gene whose transcription is regulated by NF-κB. White et al. demonstrate that another polypeptide product, activated protein C, also inhibited LPS-induced activation of NF-κB, leading, inter alia, to inhibition of expression of the TNF gene, another gene whose transcription is regulated by NF-κB. Although those two inhibitors of NF-κB signaling activity are each demonstrated to inhibit LPS induction of NF-κB signaling activity and NF-κB-mediated gene transcription, and can reduce the effect of infection, they are clearly very different from one another in structural terms. While published after the priority date of the present application, these references are being offered merely as non-limiting examples to substantiate that the disclosure was in fact enabling when filed. In re Brana, supra. Additional supporting references from the scientific literature are provided in Exhibit D hereto.

ADL 0000882

USSN 08/464,364                    -10-                    Group Art Unit: 1636

Thus, it is evident from the specification and corroborated by the post-filing evidence, that one skilled in the art having read the application when it was filed would have expected, and would have been justified in that expection, that a wide range of structurally diverse substances would be identified or characterized using the assays taught by the present application and would be useful for inhibiting or potentiating NF-κB signaling activity. Moreover, it would be apparent to those skilled in the art that Applicants specifically contemplated that many different classes of substances could be identified or characterized in the subject assays as having such activity, and that such substances could then be used to modify NF-κB mediated signalling in cells, both in vitro and in vivo, as recited by the pending claims. This is believed to be amply borne out in the accompanying In re Brafia showing. Although the compounds regulating NF-κB mediated gene expression may be diverse structurally, they all possess at least one common functional characteristic, i.e., the capability to modulate NF-κB signal transducing activity.

It is submitted that Applicants' possession of the invention, including the invention defined in claims 188 – 193, would have been evident upon reading the application as filed.

*(ii) The Pending Claims are Enabled*

Long before the earliest priority date of the present application, the applied sciences of formulation and use of new drugs had become a matter of routine experimentation. As a practical matter, that scientific legacy is reapplied, rather than reinvented, in the case of each new drug selected for development. That is true regardless of the particular structure of a substance to be developed. As a matter of Patent Law, the ordinarily skilled artisan reading applicants' disclosure is charged with knowledge of that legacy, and applicants need not and should not dwell in their application on that which is already known in the art.

Applicants contributions include the identification of a very important cellular signal transduction pathway and the disclosure of a number of exemplary assays for finding or characterizing agents which modulate that pathway. When the practitioner selects such an agent, s/he usually need only apply the routine experimentation involved in formulating and using the agent. This is true regardless of the structure of the agent. While drug development is usually time consuming and expensive, it is routine—not undue—experimentation. This is reflected in the commercial reality of high value agreements between companies for the identification of new drug discovery targets, contrasted with the routine drug development work often delegated to relatively low value contract labs.

ADL 0000883

In short, the routine craft of drug development is well known and applicable across structural lines. Accordingly, Applicants submit that the structural range of agents useful in practicing the method claims does not actually give rise to an enablement deficit.

*(iii) Additional In re Braña references*

As mentioned above, the references provided as part of Exhibit D offer additional substantiation under *In re Braña* of the operability of the claimed invention in both *in vitro* and *in vivo* contexts to show, among other things, examples of successful achievement of Applicants' claimed objectives through direct or indirect reduction of NF-kB signal transducing activity. The embodiments described in the attached references range from use of nucleic acid decoys, to expression vectors encoding IκB proteins (wild-type and mutant), to small molecule inhibitors of IκB degradation. In each case, structurally diverse substances were deployed in accordance with Applicants' methods—i.e., to reduce NF-κB activity in cells which were contacted with the agents, both in culture and in animals. Moreover, in none of these references disclosed any peculiar problems in putting into practice the inhibition of NF-kB signaling activity.

*(iv) Precedence set by other issued patents*

The pending claims, directed as they are to methods rather than compositions-of-matter, are consistent with claims issuing in a variety of arts. As such, they appear to comport with the PTO's working standards for form, semantics and determination of possession of invention.

With particular regard to claims 188 - 193, Applicants note that there are numerous issued patents in the chemical, mechanical and software arts directed to methods in which a product of one step is passed onto subsequent steps without specifying its structure, noting simply that the product was the thing produced or identified etc. by the preceding step. US Patent 6,171,813 is an example of claims issued in the chemical art in which a product of one step is provided into a next step of the claimed method:

1. A method of catalysis of at least one substrate into a product in an organic reaction solvent, comprising the steps of:
   (a) obtaining a catalyst comprising an enzyme-surfactant ion pair complex comprising an enzyme and an ionic surfactant capable of forming an ion pair complex with the enzyme, the complex being produced by extracting an aqueous solution of the enzyme with the ionic surfactant and a water immiscible organic solvent,
   (b) combining the catalyst with an organic reaction solvent, comprising an organic solvent and water in an amount sufficient to increase the rate of catalysis relative to a water-free organic reaction solvent, the amount of water ranging from about 0.03% to about 2.5% v/v, and
   (c) allowing catalysis of the at least one substrate into the product.

ADL 0000884

USSN 08/464,364          -12-          Group Art Unit: 1636

> 2. The method of claim 1, further comprising recovering the product after catalysis is substantially completed.

Likewise, US Patent 5,666,415 is an example of claims issued in the software art in which a product (the encrypted file) of one step is passed into the next step (decryption) of the claimed method:

> 1. In an information handling system in which secret information is maintained within a first protected environment, a method of transferring said secret information from said first protected environment to a second protected environment, said method being performed by one or more authorities, said information within said protected environments being unobtainable in clear form by said one or more authorities, said method comprising the steps of:
> establishing within said first and second protected environments a shared secret transport key that is obtainable in clear form only within said first and second protected environments and is unobtainable in clear form by said one or more authorities;
> encrypting said secret information within said first protected environment using said transport key to generate encrypted secret information that is obtainable in encrypted form by at least one of said one or more authorities; and
> decrypting said encrypted secret information within said second protected environment using said transport key to regenerate the original secret information within said second protected environment, said regenerated secret information being unobtainable in clear form by said one or more authorities.

The Examiner's attention is also directed to US Patent 6,271,197, which includes claims directed to a combination of screening assay with treatment step

> 1. A method for inhibiting growth of a fungal pathogen comprising
>    (a) forming a reaction mixture including:
>        (i) a fungal geranylgeranyl transferase (GGPTase);
>        (ii) a GGPTase substrate;
>        (iii) a test compound, under conditions whereunder, in the absence of the test compound, the GGPTase and the GGPTase substrate interact,
>    (b) detecting interaction of the GGPTase substrate with the GGPTase,
>    wherein a statistically significant decrease in the interaction of the GGPTase substrate and GGPTase in the presence of the test compound, relative to the level of interaction in the absence of the test compound, indicates a potential GGPTase inhibitory activity for the test compound; and
>    (c) contacting the pathogen with the test compound identified as having a potential GGPTase inhibitory activity, whereby growth of the fungal pathogen is inhibited.

In those illustrative cases, the inventors' possession of their claimed methods was evident without the need for structural identification of the class of agents used in the claimed method. The inventors were permitted to use normal language to describe their methods, rather than being forced to describe their method without mentioning the agent involved in the method. The same should be true in the subject case.

B. State of Fact Finding by PTO

The final guidelines for section 112 clearly state there is a strong presumption that the specification as filed provides adequate written description support for the claimed invention. See *Guidelines*, 64 Fed. Reg. 71 at page 1105. A disclosure as filed is prima facie adequate. To support a rejection, the PTO has the burden of showing why the Applicant's evidence is

ADL 0000885

USSN 08/464,364                        -13-                        Group Art Unit: 1636

insufficient. In any case where lack of written description is found, the PTO should cite documentary evidence in support of the finding. As expressly stated by the guidelines, where documentary evidence is not available, technical reasoning, as distinguished from legal reasoning, may support the finding when the technical line of reasoning relates to <u>fact finding</u> regarding possession of the invention.

Moreover, the Federal Circuit has recently articulated a standard whereby the PTO must establish a rational connection between the agency's fact findings and its ultimate action. Dickinson v. Zurko, 119 S. Ct. 1816 (1999). In light of the Applicants arguments of record, and the presumption in favor of the Applicants, it is respectfully asserted that the Examiner's maintenance of the present rejection is not supported by substantial evidence, and as such, does not meet the "arbitrary, capricious" standard applied under the "substantial evidence" test of Section 706(2)(E) of the Administrative Procedure Act. The Examiner has not cited any relevant art nor relied on any other fact finding results which rebut the presumption in favor of the Applicants.

F. <u>Entry of Amendment</u>

Applicants respectfully request that the Examiner enter this Amendment and Response. It is expected that the instant paper should place the present application in condition for allowance. However, if the Examiner maintains the present rejection, it is believed that the arguments provided herein, though supplementing past remarks by the Applicants, can be useful towards fully developing the file history for appeal. It is noted by the Applicants would be severely prejudiced should they be required to refill this application (e.g., as an RCE or CPA) by the loss of potential patent term.

This case reflects a good faith, earnest effort by Applicants to define patentable subject matter commensurate in scope and effect with the significance of the disclosed invention. To bring those efforts to an appropriate conclusion, Applicants have during the course of this important prosecution sought the advice of experienced attorneys at three well known patent law firms. And during that time, Applicants gratefully note, the Examiner has been very helpful and has made a clear effort to advance prosecution.

However, Applicants believe that the criteria used for examining the pending claims of the present application (and analogous claims in other cases) have been shifting over the last several office actions. This is apparently due in part to changing ideas about PTO policies on the Written Description Requirement of §112, or to variability in their application, prior to and

ADL 0000886

USSN 08/464,364 -14- Group Art Unit: 1636

perhaps after the PTO's adoption of the new Guidelines for the Written Description Requirement. In certain instances, the remarks and amendments which Applicants have presented have been rebutted in part by reference to recent announcements on these guidelines. In particular, the most recent office action is the first to articulate the rejection of the pending claims with reference to the Written Description guidelines. It in fact refers to the interim guidelines published in 1999. Since that time, the final guidelines for examination with respect to the written description requirement of 35 USC §112 were published in the Federal Register. 66 Fed. Reg. 1092. The final guidelines included several changes relative to the interim guidelines, and also provide clarifying statements in response to public comment on the interim guidelines. Moreover, the very promulgation of these guidelines evidences a need, perceived by the PTO itself, to impose a consistency of policy or its application—where one was previously lacking.

The past, including the recent past, saw variability in the understanding and application of §112 standards by different examiners, and thus a variability in the understanding of those standards by the public. Consistency has hopefully been achieved through the recent promulgation of official Guidelines combined with educational efforts within the PTO.

In the course of prosecution of this case, applicants and their various attorneys have parsed the language of the office actions and attempted to craft language to overcome the §112 issues noted in the office actions—based on their collective experiences at the PTO, including their experiences with application of Written Description notions by other examiners. It is noted that the present office action identifies for the first time the particular language in the claims to which the Examiner's rejection under 35 USC §112 is drawn. As set forth in the office action, it is the "second part of the method drawn to using an agent" which the Examiner identifies as lacking adequate written description in the specification. That new, more specific guidance from the Examiner, combined with careful study of the Official Guidelines for the Written Description Requirement has given Applicants confidence that the claims 158-188 define patentable subject matter that will meet with the Examiner's approval.

In this regard, we note that MPEP Section 706.07 states that "before final rejection is in order a clear issue should be developed between the examiner and applicant". It is submitted that under the totality of circumstances noted above, the development of a clear issue had been foreclosed at the time the last office action issued. Accordingly, Applicants request that the finality of the outstanding office action be reconsidered and withdrawn to provide Applicants a better opportunity to address the rejection in view of the final Written Description guidelines, and present claims which address the particular features to the pending claims which where objected to by the Examiner.

ADL 0000887

USSN 08/464,364    -15-    Group Art Unit: 1636

Applicants believe that such an action is required for the development of a clear issue between Applicants and the Examiner, if possible, should appeal be necessary. While Applicants understand that it is to the interest of the applicants as a class as well as to that of the public that prosecution of an application be confined to as few actions as possible, Applicants believe that the present request is consistent with a balance which includes a thorough consideration of the merits of the case.

Finally, as a consequence to the loss of a substantial portion of the patent term because of the early priority date of the instant application, Applicants note that they would be <u>severely</u> prejudiced should they be required to refile this application in order to have these issues considered.

### G. Conclusion

In view of the above remarks and the amendments to the claims, it is believed that this application is in condition for allowance. If a telephone conversation with Applicant's Attorney would expedite prosecution of the above-identified application, the Examiner is urged to call the undersigned at (617) 951-7000.

Ropes & Gray
One International Place
Boston, Massachusetts 02110
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Customer No.: 28120

Dated: _____

Respectfully submitted,
ROPES & GRAY

Matthew P. Vincent
Registration No.: 36,709

ADL 0000888

USSN 08/464,364            -16-            Group Art Unit: 1636

VERSION WITH MARKINGS TO SHOW CHANGES MADE

111. (reiterated) A method of inhibiting expression, in a mammalian cell, of a gene whose transcriptional activity is activated by binding of NF-κB to said gene, comprising introducing a nucleic acid decoy molecule into the cell in an amount sufficient to inhibit expression of the gene, which decoy includes a NF-κB binding site that binds to NF-κB.

158. (new) A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-κB by reducing NF-κB activity in the cell.

159. (new) A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-κB by reducing NF-κB activity in the cell.

160. (new) A method for reducing the level of expression of a viral gene in a eukaryotic cell by reducing NF-κB activity in the cell.

161. (new) The method of claim 160, wherein the viral gene is a CMV, HIV or SV40 gene.

162. (new) A method for reducing the level of expression of a cytokine gene in a eukaryotic cell by reducing NF-κB activity in the cell.

163. (new) A method for diminishing induced NF-κB-mediated intracellular signaling by reducing NF-κB activity in cells.

164. (new) A method for modifying effects of external influences on a eukaryotic cell, which external influences induce NF-κB-mediated intracellular signaling, the method comprising altering NF-κB activity in the cell.

165. (new) The method of claim 164, wherein NF-κB activity in the cell is reduced.

166. (new) A method for inhibiting, in eukaryotic cells, expression of genes which are activated by extracellular influences which induce NF-κB-mediated intracellular signaling, the method comprising reducing NF-κB activity in the cells.

167. (new) A method for reducing the effects of infection by reducing NF-κB activity in cells.

168. (new) The method of claim 167, wherein the infection is a viral infection.

169. (new) The method of claim 167, wherein the infection is a bacterial infection.

170. (new) A method for reducing the effects of bacterial lipopolysaccharide by reducing NF-κB activity.

171. (new) A method for reducing bacterial lipopolysaccharide-induced expression of cytokines, which method comprises reducing NF-κB activity.

ADL 0000889

USSN 08/464,364      -17-      Group Art Unit: 1636

172. (new) A method for reducing bacterial lipopolysaccharide-induced expression of Tumor Necrosis Factor-alpha, which method comprises reducing NF-κB activity.

173. (new) A method for reducing bacterial lipopolysaccharide-mediated stimulation of immune cells, which method comprises reducing NF-κB activity.

174. (new) A method for reducing bacterial-induced NF-κB signaling in cells, which method comprises reducing NF-κB activity in the cells.

175. (new) A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity by reducing intracellular NF-κB activity.

176. (new) A method for reducing bacterial lipopolysaccharide-induced translocation of NF-κB comprising inhibiting one or more of: (a) modification of an IκB protein which reduces binding to NF-kB, (b) degradation of an IκB protein, or (c) dissociation of NF-κB --IκB complexes.

177. (new) The method of any of claims 158 – 175 wherein NF-κB activity is reduced by decreasing the level of NF-κB not bound in an NF-κB:IκB complex.

178. (new) The method of any of claims 158 – 175 wherein NF-κB activity is reduced by inhibiting the passage of NF-κB into the nucleus of cells.

179. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting modification of an IκB protein, which modification otherwise reduces IκB binding to NF-kB.

180. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting degradation of an IκB protein.

181. (new) The method of claim 178, wherein inhibiting passage of NF-κB into the nucleus comprises inhibiting dissociation of NF-κB --IκB complexes.

182. (new) The method of any of claims 158 – 175 wherein reducing NF-κB activity comprises reducing binding of NF-κB to NF-κB recognition sites on genes which are transcriptionally regulated by NF-κB.

183. (new) The method of any of claims 158 – 176, carried out on mammalian cells.

184. (new) The method of claim 183, wherein the mammalian cells are human cells.

185. (new) The method of claim 183, carried out on immune cells.

186. (new) The method of claim 183, carried out on lymphoid cells.

ADL 0000890

USSN 08/464,364                      -18-                    Group Art Unit: 1636

187. (new) The method of claim 183, carried out on liver cells.

188. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to decrease the level of NF-kB not bound in an NF-kB:IkB complex

189. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the dissociation of NF-kB—IkB complexes.

190. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the modification of IkB.

191. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the degradation of IkB.

192. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to inhibit the passage of NF-kB into the nucleus of cells.

193. (new) A method of any of claims 158 - 175, wherein the NF-kB activity is reduced by administration of an agent which had been found to reduce the binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB-mediated signal transduction.

ADL 0000891