# EXHIBIT U

# EXHIBIT U

Docket No. 74753/JPW/GJG

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**A Merged Proceeding of *Ex Parte* Reexamination Control Nos:**

**90/007,503          and          90/007,828**

**Filed April 4, 2005          Filed December 2, 2005**

**Merged Pursuant to May 4, 2006 Merger Decision**
**Group Art Unit: 3991   Examiner: B.M. Celsa**

| | |
|---|---|
| Patentees: | David Baltimore, Ranjan Sen, Phillip A. Sharp, Harinder Singh, Louis Staudt, Jonathan H. Lebowitz, Albert S. Baldwin Jr., Roger G. Clerc, Lynn M. Corcoran, Patrick A. Baeuerle, Michael J. Lenardo, Chen-Ming Fan, and Thomas P. Maniatis |

Patent No.:   6,410,516 B1          Serial No: 08/464,364

Issue Date:   June 25, 2002          Filed:   June 5, 1995

For      :   NUCLEAR FACTORS ASSOCIATED WITH TRANSCRIPTIONAL REGULATION

1185 Avenue of the Americas
New York, New York 10036
October 22, 2007

Mail Stop *Ex Parte* Reexamination
Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### RESPONSE TO JULY 6, 2007 FINAL OFFICE ACTION, SUMMARY OF AUGUST 22, 2007 EXAMINER INTERVIEW, STATEMENT OF CONCURRENT PROCEEDINGS UNDER 37 C.F.R. § 1.565, AND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

A Final Office Action issued July 6, 2007 in connection with the above-identified merged *ex parte* reexamination. The July 6, 2007 Final Office Action set a two (2) month period for filing a response. Patentees petitioned, and on September 29, 2007 the U.S. Patent Office granted Patentees' petition, for a one (1) month extension of time such that a response to the July 6, 2007 Final Office Action was due October 6, 2007. Thereafter, on October 1, 2007 Patentees petitioned for, and the U.S. Patent Office granted Patentees' petition for a two (2) week extension

ARI 84387

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 2 of 92 of October 22, 2007 Response*

of time such that a response to the July 6, 2007 Final Office Action is now due October 20, 2007.  However, since October 20, 2007 was a Saturday, a response filed on the next succeeding day which is not a Saturday, Sunday or Federal holiday, i.e. Monday, October 22, 2007, is to be considered timely filed under 37 C.F.R. § 1.7.  Accordingly, this Response is being timely filed.

Patentees note that they are concurrently filing a Petition Under 37 C.F.R. § 1.182 And Request For Continued Reexamination.

**ARI 84388**

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 3 of 92 of October 22, 2007 Response*


## In the Specification

Please amend the specification of the subject patent under reexamination pursuant to 37 C.F.R. § 1.530(d)(1) as follows:


-delete the paragraph in column 10, lines 16-17; and

-amend the paragraph in column 28, lines 5-17 as follows:

The inhibitor fraction was treated with trypsin to test whether IkB is a protein (FIG. 35B). Tryptic digestion was stopped by the addition of bovine pancreas trypsin inhibitor (BPTI) and samples were analyzed for NF-kB inhibition. Trypsin treatment interfered with the activity of IkB, as shown by the complete inability of the treated sample to inhibit NF-kB activity (FIG. 35B, compare lanes 1 and 6). Trypsin that had been treated with BPTI had no effect (FIG. 35B, lane 5), demonstrating that the inactivation of IkB was specifically caused by the proteolytic activity of trypsin. It appears that IkB requires an intact polypeptide structure for its activity. ~~The nucleotide sequence of the IkB-α gene and the amino acid sequence of IkB-α are shown in FIG. 43.~~

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 4 of 92 of October 22, 2007 Response*


## In the Drawings


Please cancel Figure 43 from the subject patent under reexamination pursuant to 37 C.F.R. § 1.530(d)(3). In accordance with 37 C.F.R. § 1.530(d)(3) a copy of Figure 43 surrounded by brackets and identified as "Canceled" is attached hereto as **Exhibit A**.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 5 of 92 of October 22, 2007 Response*

## In the Claims

Please amend the claims of the subject patent pursuant to 37
C.F.R. § 1.530(d)(2):

Specifically, please cancel the following claims[1]:

(a)    1, and 20-27 and 29 which depend from claim 1;

(b)    2, and 31-38 and 40 which depend from claim 2;

(c)    3, and 42, 43 and 47-51 which depend from claim 3;

(d)    4, and 192, 193 and 197-201 which depend from claim 4;

(e)    5, and 53-62 which depend from claim 5;

(f)    10, and 99, 100, 104 and 105 which depend from claim
       10;

(g)    11, and 106, 107, 109, 110 and 114-117 which depend
       from claim 11;

(h)    12, and 119, 120 and 124-127 which depend from clam
       12;

(i)    13, and 128, 129 and 133-137 which depend from claim
       13;

(j)    15, and 149, 150 and 154-157 which depend from claim
       15;

(k)    16, and 159, 160 and 164-166 which depend from claim
       16; and

(l)    17, and 167, 168 and 172-175 which depend from claim
       17.

In addition please add new claims 204-211 as follows:

204. (New) A method for reducing expression in a human cell of
     a gene, the expression of which has been induced by an
     extracellular polypeptide that activates NF-kB to act as an
     intracellular messenger to transmit a signal that induces
     expression of the gene from the plasma membrane of the cell
     to the nucleus of the cell, which comprises contacting the

_____

[1]Please note that in the response to the August 2, 2006 Office Action the following
claims were previously canceled: 7, 81, 83, 85, 86, 28, 39, and 203.

ARI 84391

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 6 of 92 of October 22, 2007 Response*

cell with a composition that inhibits transmission of the signal so as to thereby reduce expression of the gene in the cell.

205. (New) The method of claim 204, wherein the contacting of the cell with the composition that inhibits transmission of the signal is within the cell.

206. (New) The method of claim 204, wherein the extracellular polypeptide is TNF-α.

207. (New) The method of claim 205, wherein the extracellular polypeptide is TNF-α.

208. (New)  The method of claim 204, wherein the composition is a protein.

209. (New)  The method of claim 205, wherein the composition is a protein.

210. (New)  The method of claim 206, wherein the composition is a protein.

211. (New)  The method of claim 207, wherein the composition is a protein.

Support for new claim 204 may be found, *inter alia*, in column 3, line 59 - column 4, line 28; in column 12, line 36 - column 13, line 3; in column 15, line 54 - column 16, line 35; in column 2, line 57; and in column 17, lines 30-37 of the '516 patent.

Support for new claim 205 may be found, *inter alia*, in column 3, line 63-64 of the '516 patent.

Support for new claims 206 and 207 may be found, *inter alia*, in column 17, line 30-36 of the '516 patent.

ARI 84392

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 7 of 92 of October 22, 2007 Response*

Support for new claims 208-211 may be found, *inter alia*, in column 16, lines 4-10; and in column 37, line 55-56 and 43-49 of the '516 patent.

Accordingly, each of new claims 204-211 is fully supported by the specification of the '516 Patent and raises no issue of new matter. These new claims are added in response to issues and/or arguments raised for the first time in the July 6, 2007 Final Office Action. Therefore, entry and consideration of new claims 204-211 is respectfully requested.

As a result of this Amendment the following claims are pending:

    (a)    confirmed patentable claims 19, 30, 41, 44-46, 52, 63, 74, 87, 98, 101-103, 108, 111-113, 118, 121-123, 130-132, 138, 141-143, 148, 151-153, 158, 161-163, 169-171, 176, 179-181, 186-191, 194-196, and 202;

    (b)    rejected claims 6 and 64-73 which depend from claim 6; 8 and 75-80, 82 and 84 which depend from claim 8; 9 and 88-97 which depend from claim 9; 14 and 139, 140, and 144-147 which depend from claim 14; 18 and 177, 178, and 182-185 which depend from claim 18; and

    (c)    new claims 204-211.

ARI 84393

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 8 of 92 of October 22, 2007 Response*

<u>**REMARKS**</u>

Patentees respond below to the rejections set forth in the July 6, 2007 Final Office Action.  The following Table of Contents is provided for the Examiner's convenient reference.

<u>Table of Contents</u>

Page

I.   INTRODUCTION ........................................... 15

   A. **Status of Claims Pursuant to 37 C.F.R. § 1.530(e)**..... 15

   B. <u>**Objection to Claim 8**</u> ................................ 15

   C. **Updated Status of Concurrent Proceedings Pursuant to 37 C.F.R. §1.565** ....................................... 17

II.  <u>SUMMARY OF AUGUST 22, 2007 EXAMINER INTERVIEW</u> .......... 21

III. <u>RESPONSE TO ART REJECTIONS</u> ............................. 29

   A. **All Rejected Claims Now Pending Are Directed To <u>Reducing Induced</u> NF-kB Activity** ..................... 29

      1) All rejected, pending claims must be given their <u>broadest reasonable interpretation</u> ............... 30

      2) Claim 6 Recites "<u>diminishing induced</u> NF-kB-mediated <u>intracellular signaling</u>"; Claim 8 recites <u>modifying effects of external influences which induce</u> NF-kB mediated intracellular signaling <u>by reducing NF-kB activity</u> in the cells <u>such that NF-kB mediated effects ...are modified</u>; Claim 9 Recites "<u>reducing</u>, in eukaryotic cells, the level of <u>expression of genes which are activated</u>"; Claim 14 Recites "<u>reducing</u> bacterial lipopolysaccharide- <u>induced expression</u> of cytokines"; and Claim 18 Recites <u>reducing</u> Interleukin-1 or Tumor Necrosis Factor-α <u>activity</u> ...so as <u>to reduce</u> "<u>intracellular signaling</u> caused by Interlukin-1 or Tumor Necrosis Factor- α in the cells" ................................. 32

      3) Each of Claim's 64-69, 75-80, 88-93, 139-144, 177, 178, and 182 Is Directed To Reducing Induced NF-kB Activity By Carrying Out A Specific Step Inside a Cell.................................... 35

   B. **The Rejected Claims Now Pending Are Not Anticipated By The Cited Art. For Each Rejected Claim It Has Not Been Shown That Every Element Explicitly or Necessarily Occurs in the Cited Art. Moreover, Certain Cited Art Clearly Does Not Enable The Method Described Therein So That Even If Each Element Of A Rejected Claim Were Disclosed The Cited Art Such Art Would Not Anticipate**........ 36

ARI 84394

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 9 of 92 of October 22, 2007 Response*

1)    CLAIM 14 AND CLAIMS 139, 140 and 144-147 WHICH DEPEND
      THEREON.............................................. 38

a)    *The Method of Claim 14 and Claims Dependent
      Thereon Does Not Occur In Any Person To Whom
      Antibiotics Are Administered* ...................... 39

b)    *Performing Any Method Involving Administering An
      Antibiotic According to The Disclosure of the 1970 PDR
      Only Results In Killing Gram-Negative Bacteria
      Sometimes. Such Occasional Results Are Not Sufficient
      To Establish An Element of the Claims Necessarily or
      Inevitably Occurred....... ......................* 40

c)    *The Occasional Results Obtainable Following the
      Disclosure of the 1970 PDR Are Not Sufficient to
      Enable the Method Disclosed And Therefore Cannot
      Anticipate Claim 14 and Claims Dependent
      Thereon.............................................* 43

d)    *Administering An Antibiotic As Disclosed in The 1970
      PDR Does Not Anticipate Reducing Induced NF-kB
      Activity by Intervening Within the NF-kB Intracellular
      Signaling Pathway At A Specified Segment as Recited in
      Claim 139, 140 and 144...........................* 45

2)    CLAIM 18 AND CLAIMS 177, 178 and 182-185 WHICH DEPEND
      THEREFROM .......................................... 48

Rejection Based on Antibiotic Art ...................... 49

a)    *The Method of Claim 18 and Claims Dependent
      Thereon Does Not Occur In Any Person To Whom
      Antibiotics Are Administered* ...................... 49

b)    *Performing Any Method Involving An Antibiotic
      According To the 1970 PDR Only Results In Killing
      Gram-Negative Bacteria Sometimes. Such Occasional
      Results Are Not Sufficient To Establish An Element of
      the Claims Necessarily Or Inherently Occurs* ...... 49

c)    *The Occasional Results Obtainable Following The
      Disclosure of the 1970 PDR Are Not Sufficient to
      Enable the Method of Disclosed And Therefore Cannot
      Anticipate Claim 18 and Claims Dependent Thereon....* 49

d)    *Administering An Antibiotic As Disclosed In The 1970
      PDR Does Not Anticipate Reducing Induced NF-kB
      Activity by Intravening Within the NF-kB Intracellular
      Signaling Pathway at a Specified Segment as Required
      by Claims 177, 178 and 182.......................* 50

e)    *Administering Antibiotics Does Not Involve*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 10 of 92 of October 22, 2007 Response*

      *Reducing NF-kB Activity "caused by"*
      *IL-1 or TNF-α* ..................................... 50

Rejection Based on NAC Art ............................. 52

a)    *The Experiments Disclosed in Staal et al., Do Not
      Involve The Method of Claim 18 or Claims 182-185 Which
      are Dependent Thereon.* ........................... 52

b)    *Staal et al. Do Not Enable the Method of Claim 18
      Or Claims 182-185* ................................ 53

c)    *Staal et al. Do Not Anticipate Reducing
      Induced NF-kB Activity in Human Cells,
      as Recited in Claim 183* .......................... 55

3) CLAIMS 6, 8 AND 9 AND CLAIMS DEPENDENT THEREON ....... 56

Rejections Based on Antibiotic Art ..................... 60

a)    *The Methods of Each of Claims 6, 8 and 9 and of Claims
      Dependent Thereon Do Not Occur In Any Person To Whom
      Antibiotics Are Administered. At most administering
      antibiotics prevents induction of the NF-kB
      intracellular signaling pathway. A method which
      comprises administering antibiotics is not a method
      which involves reducing induced NF-kB activity* ...... 60

b)    *Performing Any Method Involving Administering An
      Antibiotic According To the 1970 PDR Only Sometimes
      Results in Killing Gram-Negative Bacteria. Such
      Occasional Results Are Not Sufficient To Establish An
      Element of the Claims Necessarily Or Inevitably
      Occurred* ......................................... 60

c)    *The Occasional Results Obtainable following the
      Disclosure of The 1970 PDR Are Not Sufficient to
      Enable the Methods Disclosed And Therefore Cannot
      Anticipate Any Of Claim 6, 8 or 9 or Any Claim
      Dependent Thereon* ................................ 60

d)    *Administering An Antibiotic As Disclosed In The 1970
      PDR Does Not Anticipate Reducing Induced NF-kB
      Activity by Intervening Within the NF-kB Intracellular
      Signaling Pathway At A Specified Segment as Required
      by each of Claims 64, 65, 75, 76, 80, 88, 89
      and 93* ............................................ 60

Rejections Based on Cyclosporin A Art .................. 61

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 11 of 92 of October 22, 2007 Response*

a)   *The Use of Cyclosporin A in The Cited Art Does Not
     Involve Reducing Induced NF-kB Activity As Required By
     The Methods of Each of Claims 6, 8 and 9 and Claims
     Dependent Thereon*................................... 61

b)   *The Cyclosporin A Art Does Not Disclose The Method of
     Any of Claim 6, 8 or 9 or of Any Claim Dependent
     Thereon*............................................. 62

c)   *The Cited Cyclosporin A Art Is Not Enabling And
     Therefore Cannot Anticipate the Method of Any of Claim
     6, 8 or 9 or of Any Claim Dependent
     Thereon*............................................. 63

d)   *The Cited Cyclosporin Art Does Not Anticipate Reducing
     Induced NF-kB Activity by Intervening at a Specified
     Segment Within the NF-kB Intracellular Signaling
     Pathway as Recited in Each of Claims 64-69, 75-80 and
     88-93* .............................................. 64

Rejections Based on Protein Kinase C Inhibitor Art ...... 66

a)   *The Use of a Protein Kinase C Inhibitor in The Cited
     Art Does Not Involve Reducing Induced NF-kB Activity
     As Required By The Methods of Claims 6, 8 and 9 and
     Claims Dependent
     Thereon*............................................. 66

b)   *The Cited Protein Kinase C Inhibitor Art Does Not
     Disclose the Method of Any of Claim 6, 8, 9 or any
     Claim Dependent Thereon* ............................ 67

c)   *The Cited Protein kinase C Inhibitor Art Does Not
     Enable the Performance of a Method of Any of Claims 6,
     8 or 9 or Any Claim Dependent
     Thereon*............................................. 68

d)   *The Cited Protein Kinase C Inhibitor Art Does Not
     Disclose a Method Which Anticipates Reducing Induced
     NF-kB Activity by Intervening within the NF-kB
     Intracellular Signaling Pathway At A Specified Segment
     as Recited in Claims 64, 65, 69, 75, 76, 80, 88, 89
     and 93.* ............................................ 69

ARI 84397

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 12 of 92 of October 22, 2007 Response*

Rejections Based on Vitamin D Art ...................... 70

   a)   *The Cited Vitamin D Art Does Not Disclose A Method of Using Vitamin D Which Anticipates Any Method Recited In Any of Claim 6, 8, or 9 and in any Claims Dependent Thereon* ......................................... 70

   b)   *The Cited Vitamin D Art Does Not Enable The Performance of Any Method Which Anticipates a Method of Any of Claim 6, 8 or 9 or Any Claim Dependent Thereon* ......................................... 74

   c)   *The Cited Vitamin D Art Does Not Anticipate Reducing Induced NF-kB Activity by Intervening at a Specific Segment Within the NF-kB Intracellular Signaling Pathway as Recited in Each of Claims 64, 65, 69, 75, 76, 80, 88, 89 and 93.* ............................. 75

Rejection Based on 5-ASA Art ........................... 76

   a)   *The Use of 5-ASA in Dew et al., Does Not Involve Reducing Induced NF-kB Activity As Required By The Methods of Claims 6, 8 and 9 and Claims Dependent Thereon*........................................... 76

   b)   *Dew et al. Do Not Enable the Performance of a Method of Any of Claims 6, 8 or 9 or Any Claim Dependent Thereon* ......................................... 79

   c)   *Dew et al. Do Not Disclose A Method Which Anticipates Reducing Induced NF-kB Activity by Intervening Within the NF-kB Intracellular Signaling Pathway at a Specified Segment as Recited in Claims 64-69, 75-80 and 88-93.* ....................................... 80

Rejection Based on the Endogenous Glucocorticoid Art...... 81

   a)   *The Use of Endogenous Glucocorticoids Disclosed in Goodman and Gilman Does Not Involve Reducing Induced NF-kB Activity as Required by The Methods of Claims 6, 8 and 9 and Claims Dependent Thereon*........................................... 81

   b)   *Any Method Disclosed in Goodman and Gilman, Would At Most Only Involve Reducing Induced NF-kB Activity Sometimes. Any Such Occasional Result Is Not Sufficient To Establish An Element of the Claimed Methods Necessarily Or*

ARI 84398

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 13 of 92 of October 22, 2007 Response*

*Inevitably Occurs* ................................. 82

    c)    *Any Occasional Results Obtainable By Following The Disclosure of Goodman and Gilman Is Not Sufficient to Enable the Method of Any of Claims 6, 8 or 9 or Any Claim Dependent Thereon* ........................... 84

    d)    *Goodman and Gilman Do Not Disclose A Method Which Anticipates A Method Of Reducing Induced NF-kB Activity by Intervening Within the NF-kB Intracellular Signaling Pathway Inside a Cell at a Specific Segment of the Pathway As Required by each of Claims 64, 65,*

        *69, 75, 76, 80, 88, 89 and 93* ...................... 86

IV.   THE USE OF NON-PRIOR ART REFERENCES AND EVIDENCE SUBMITTED IN A DECLARATION THAT GOES BEYOND EXPLAINING THE CONTENT OF CITED PRIOR ART AS A BASIS FOR AN INHERENCY REJECTION IS IMPROPER AND ULTRA VIRES.................................................... 88

   A.   **Statutory Grounds For Reexamination** ................ 88

   B.   **Impermissible Grounds of Rejection in a Reexamination** ...................................... 88

   C.   **The Inherent Anticipation Rejections in the August 2, 2006 and July 6, 2007 Office Actions Are Improper; They Rely On Evidence Other Than "prior art consisting of patents or printed publications" in Violation of the Reexamination Statute**........................................... 89

   D.   **The Claims of the '516 Patent Are Method Claims and the Cited Prior Art Is At Most Evidence of What Occurred During A Prior Public Use** ........................... 91

V.   SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT ........... 94

ARI 84399

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 14 of 92 of October 22, 2007 Response*

I.    INTRODUCTION

    **A.    Status of Claims Pursuant to 37 C.F.R. § 1.530(e).**

Issued Claims Confirmed Patentable

Claims 19, 30, 41, 44-46, 52, 63, 74, 87, 98, 101-103, 108, 111-113, 118, 121-123, 130-132, 138, 141-143, 148, 151-153, 158, 161-163, 169-171, 176, 179-181, 186-191, 194-196, and 202 have been confirmed patentable.

Canceled Claims

Claims 1-5, 7, 10-13, 15-17, 20-29, 31-40, 42, 43, 47-51, 53-62, 81, 83, 85, 86, 99, 100, 104-107, 109, 110, 114-117, 119, 120, 124-129, 133-137, 149, 150, 154-157, 159, 160, 164-168, 172-175, 192, 193, 197-201 and 203 have been canceled.

(To reduce the number of issues in this reexamination Patentees have cancelled the claims listed above without disclaimer or prejudice.)

Rejected Claims

Claims 6, 8, 9, 14, 18, 64-74, 75-80, 82, 84, 88-97, 139, 140, 144-147, 177, 178, 182-185 as issued on June 25, 2002 are now pending and subject to rejection.

New Claims

New claims 204-211 have been added.

    **B. Objection to Claim 8**

The July 6, 2007 Final Office Action on page 2 objected to claim 8 for being dependent on canceled claim 7, and required Patentees to rewrite claim 8 in independent form.

ARI 84400

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 15 of 92 of October 22, 2007 Response*

In response, Patentees respectfully direct the Examiner's attention to M.P.E.P. § 2260.01, which provides:

> If an unamended base patent claim (i.e., a claim appearing in the reexamination as it appears in the patent) has been rejected or canceled, any claim which is directly or indirectly dependent thereon should be confirmed or allowed if the dependent claim is otherwise allowable. The dependent claim should not be objected to or rejected merely because it depends on a rejected or canceled patent claim. No requirement should be made for rewriting the dependent claim in independent form.

Accordingly, claim 8 does not need to be rewritten and the objection to claim 8 should be withdrawn.

ARI 84401

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 16 of 92 of October 22, 2007 Response*

### C.    Updated Status of Concurrent Proceedings Pursuant To 37 C.F.R. § 1.565

*ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly and Co.*

Patentees previously informed the U.S. Patent and Trademark Office
that a jury trial at the U.S. District Court for the District of
Massachusetts (*ARIAD Pharmaceutical, Inc. et al. v. Eli Lilly and
Co.*, 02-CV-11280-RWZ) unanimously found claims 80, 95, 144, and 145
of the subject patent valid and infringed. The art presented to the
Court included art relating to glucocorticoids, cyclosporin A,
antibiotics, 5-ASA, and red wine. Expert reports and testimony
including reports and testimony from Dr. Manolagas on which the
Examiner has relied in part in the August 2, 2006 Office Action, were
also presented to the Court. The jury also determined that the
claims at issue were enabled and adequately described in U.S. Serial
No. 07/431,436, filed April 21, 1989 and therefore entitled to an
April 21, 1989 effective filing date.

From August 7, 2006 to August 10, 2006, an evidentiary hearing was
conducted by the Court on four asserted defenses/counterclaims raised
by Lilly which the Court did not submit to the jury. The four issues
presented were whether the subject patent is a) unenforceable because
of alleged inequitable conduct during prosecution, b) unenforceable
because of alleged prosecution latches, c) invalid for covering non-
patentable subject matter, and d) invalid for indefiniteness. On
September 10, 2007 the Court entered a Final Judgment against Lilly.

On September 23, 2007, Lilly renewed its Motion for Judgment as a
Matter of Law, or in the Alternative for a New Trial. On September
27, 2007, the Court issued an Order setting a briefing schedule on
Lilly's motion. As set forth in the Order, all briefing is to be
completed by December 24, 2007, and a hearing on Lilly's motion is
scheduled for January 16, 2008.

ARI 84402

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 17 of 92 of October 22, 2007 Response*


*Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*

A Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement of U.S. Patent No. 6,410,516 (the "'516 patent") was filed on April 20, 2006 in the U.S. District Court for the district of Delaware by Amgen Inc. and several affiliated companies (collectively, "Amgen") (*Amgen Inc. et al. v. ARIAD Pharmaceuticals, Inc.*, 06-CV-00259-MPT). In a written order on September 13, 2006, that Court (a) denied a motion by ARIAD to dismiss the case for lack of subject matter jurisdiction, and (b) denied without prejudice a motion by ARIAD a motion to dismiss for failure to join necessary and indispensable parties. On September 25, 2006, ARIAD answered the complaint and denied the allegations of patent invalidity and non-infringement. On November 3, 2006, the Court granted a motion by ARIAD for certification for appeal to the Court of Appeals for the Federal Circuit ("CAFC") of the Court's order denying the motion to dismiss for lack of subject matter jurisdiction. On December 29, 2006, the CAFC declined to hear that appeal.


On October 5, 2006, ARIAD filed a renewed motion to dismiss for failure to join indispensable parties. ARIAD moved in the alternative to transfer the case to the District of Massachusetts. On January 23, 2007, ARIAD moved to stay the case pending the present reexamination. On February 6, 2007, the Court denied without prejudice ARIAD's motion to stay. On March 27, 2007, the Court ordered that the case remain in the District of Delaware, and held that patent assignees Massachusetts Institute of Technology, President and Fellows of Harvard College, and the Whitehead Institute for Biomedical Research (collectively, the "Institutions") were necessary parties to the action.


On April 13, 2007, ARIAD and the Institutions asserted counterclaims against Amgen for infringement of the '516 patent, including

ARI 84403

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 18 of 92 of October 22, 2007 Response*

allegations of willful infringement. At the same time, ARIAD and the Institutions filed and served affirmative claims for infringement of the '516 patent, including allegations of willful infringement, against Wyeth. Wyeth has moved to sever and stay the case as it pertains to ARIAD and the Institutions' claims against Wyeth; the Court has not ruled on Wyeth's motion to sever and stay.

On May 30, 2007, ARIAD and the Institutions moved to amend their counterclaims to add claims of infringement of U.S. Patent No. 5,804,374 and U.S. Patent No. 6,150,090 against Amgen. The Court granted this motion on August 27, 2007.

Amgen and Wyeth have asserted affirmative defenses with regard to ARIAD and the Institutions' counterclaims, including allegations of inequitable conduct in the prosecution of the '516 patent and in the present reexamination. Patentees have furnished the U.S. Patent and Trademark Office with Amgen's and Wyeth's filings containing such allegations, as well as discovery responses, deposition transcripts, and other materials from this matter.

Amgen, ARIAD, and the Institutions have consented to the jurisdiction of Magistrate Judge Mary Pat Thynge, to whom the case was assigned when Judge Kent A. Jordan was elevated to the Third Circuit Court of Appeals. Judge Thynge has entered a scheduling order in the case, setting the matter concerning the '516 patent for trial in November 2008.

ARI 84404

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 19 of 92 of October 22, 2007 Response*

II.  SUMMARY OF AUGUST 22, 2007 EXAMINER INTERVIEW

This Summary is filed pursuant to 37 C.F.R. § 1.560(b) to supplement
the handwritten Interview Summary prepared by Examiner Bennett Celsa
at the conclusion of an August 22, 2007 interview attended by
Examiner Celsa; Examiner Ponnaluri Padmashri; Supervisory Examiner
Deborah Jones; Dr. Inder Verma; John P. White, Esq.; and Gary J.
Gershik, Esq. Patentees seek herein to provide a complete record of
the reasons warranting favorable action in the above-identified
reexamination which were discussed during the August 22, 2007
interview.  Patentees acknowledge with appreciation the courtesy
extended by Examiners Celsa, Padmashri and Jones in connection with
the interview.

Patentees had requested the interview to discuss the grounds of
rejection set forth in the July 6, 2007 Final Office Action issued
in connection with this merged reexamination.  The interview was
spent discussing the proper interpretation of certain claims and the
flaws in the inherent anticipation rejections of such claims in the
July 6, 2007 Final Office Action.  Patentees noted that they were
considering canceling claims to reduce the number of issues in the
reexamination and address the grounds of rejection set forth in the
July 6, 2007 Final Office Action.

Claims Directed to a Method Involving Reducing NF-kB Activity by
Intervening At A Specified Segment Within the NF-kB Intracellular
Signaling Pathway Are Improperly Rejected Over Antibiotic Art.
Patentees first discussed certain claims rejected over antibiotic
art, such as claim 139 which recites a method "wherein NF-kB activity
is reduced by decreasing the level of NF-kB not bound in an NF-kB:IkB
complex," and claim 140 which recites a method "wherein NF-kB
activity is reduced by inhibiting the passage of NF-kB into the
nucleus of cells." (Emphasis added.)  Patentees pointed out that such
claims are clearly directed to a method wherein reducing NF-kB
activity is effected by intervening at a specified segment within the

ARI 84405

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 20 of 92 of October 22, 2007 Response*

NF-kB intracellular signaling pathway.

The use of antibiotics according to the 1970 Physician's Desk
Reference ("1970 PDR") as set forth in the July 6, 2007 Final Office
Action does not, and in fact cannot, inherently disclose reducing NF-
kB activity by intervening with the NF-kB intracellular signaling
pathway at the segments specified in these specific claims such as
claim 139 and claim 140 since the antibiotics in question do not even
enter mammalian cells. Patentees also pointed out that the rejection
of claim 139 and claim 140 is inconsistent with the confirmation of
patentability of claims 141-143 in the July 6, 2007 Final Office
Action. Claims 141-143, like rejected claims 139 and 140, are
directed to a method of reducing NF-kB activity by intervening at a
specified segment within the NF-kB intracellular signaling pathway.
Confirmed patentable claims 141-143 are analogous to claims 139 and
140 which have been rejected based on the use of antibiotics as
discussed in the 1970 PDR. Importantly, there is no evidence or
rationale in the July 6, 2007 Final Office Action establishing that
the use of antibiotics is associated with reducing induced NF-kB
activity by intervening within the NF-kB intracellular signaling
pathway at the segments specified in claims 139 and 140, particularly
since the Examiner previously acknowledged that antibiotics do not
act at the specific segments of the intracellular pathway recited in
claims 141-143.

Examiner Celsa suggested that an explanation for the rejection of
these claims appears in the July 6, 2007 Final Office Action.
Patentees have carefully reviewed the July 6, 2007 Final Office
Action, as well as the Declaration of Dr. Manolagas and Exhibit H-10
which were submitted to the U.S. Patent Office by the requester of
reexamination control number 90/007,503 and which are incorporated
by reference into the July 6, 2007 Final Office Action. Patentees
are unable to find any evidence or support for the proposition that
antibiotics could anticipate a method of reducing induced NF-kB

ARI 84406

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 21 of 92 of October 22, 2007 Response*

activity "wherein NF-kB activity is reduced <u>by decreasing the level</u> <u>of NF-kB not bound in an NF-kB:IkB complex</u>" or "wherein NF-kB activity is reduced <u>by inhibiting the passage of NF-kB into the</u> <u>nucleus of cells</u>." (Emphasis added.)  No specific discussion of claim 139 or of claim 140 appears in the July 6, 2007 Final Office Action. Exhibit H-10 has only the following quote separately repeated under each of the three (3) antibiotics being cited against claim 139: "Inherent. Reduction in LPS due to administration of antibiotic necessarily decreases NF-kB activation, and level of NF-kB not bound to NF-kB:Ikb complex." With respect to claim 140, Exhibit H-10 has only the following quote separately repeated for each of the three (3) antibiotics being cited against claim 140: "Inherent. Reduction in LPS due to administration of antibiotic in gram negative infection necessarily decreases NF-kB activation, and inhibits passage of NF-kB into the nucleus of cells." These conclusory statements provide no evidence or explanation how the use of antibiotics anticipates either a method which comprises reducing induced NF-kB activity, "wherein NF-kB activity is reduced by decreasing the level of NF-kB not bound in an NF-kB:IkB complex" or a method which comprises reducing induced NF-kB activity, "wherein NF-kB activity is reduced by inhibiting the passage of NF-kB into the nucleus of cells." Thus, there is no evidence or explanation in the July 6, 2007 Final Office Action how the use of antibiotics is reducing induced NF-kB activity at all, let alone by intervening within the NF-kB intracellular signaling pathway at the segment specified in the claims.

Therefore, Patentees maintain that claims such as claims 139 and 140 have been improperly rejected over the antibiotic art.  Because claims 139 and 140 are rejected only on the basis antibiotic art, the rejection of these claims should be withdrawn and these claims should be confirmed patentable.

The Examiners agreed to reconsider the applicability of the inherent anticipation rejection as applied to claims such as claim 139 and

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 22 of 92 of October 22, 2007 Response*

claim 140.


## Reduction of NF-kB Activity is Not Inherent To Any Method Disclosed in the PDR 1970.


Patentees next pointed out that the use of antibiotics does not necessarily kill bacteria, let alone necessarily comprise reducing induced NF-kB activity. Numerous bacterial strains are resistant to antibiotics. Specifically, the listing of bacteria in the 1970 PDR includes strains that are resistant to the respective antibiotic which the 1970 PDR suggest using against the strains. Thus, when one skilled in the art treated a patient suffering from a bacterial infection following the disclosure provided in the 1970 PDR, the patient's bacterial infection would not necessarily or inevitably respond to the antibiotic. Thus, for example, patients infected with a strain of the bacteria resistant to the antibiotic would not respond to treatment with the antibiotic.

The Examiners acknowledged that resistant bacteria would not respond to an antibiotic to which they were resistant. The Examiners also acknowledged that any given patient might be infected with resistant bacteria but a physician treating the patient would not know this to be the case. Examiner Celsa questioned whether the foregoing facts impact the propriety of the inherent anticipation rejection based on the 1970 PDR. Patentees explained that an inherent anticipation rejection requires a showing that the purported inherently disclosed method necessarily and inevitably occurred in the prior art. If practicing the method disclosed in the 1970 PDR sometimes does not result in killing bacteria, (and the disclosed method clearly does not necessarily or inevitably kill bacteria) the 1970 PDR cannot inherently anticipate the claimed methods. In further reply to Examiner Celsa's inquiry, Patentees referred, for example, to *Glaxo Inc.v. Novopharm Ltd.*, 52 F.3d 1043, 1047 (Fed. Cir. 1995) *cert.*

ARI 84408

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 23 of 92 of October 22, 2007 Response*

*denied*, 516 U.S. 988 (1995), holding that a prior art method which sometimes yielded crystals of one polymorph but other times yielded crystals of a different polymorph, i.e. a method of which did not always produce the claimed polymorph, did not inherently anticipate. A further discussion of this issue appears below in Section III B(1)(b).

Accordingly, a method of using antibiotics according to the 1970 PDR to treat a bacterial infection does not necessarily involve a method of reducing induced NF-kB activity and, therefore, the inherent anticipation rejection based on the 1970 PDR set forth on pages 105-111 of the July 6, 2007 Final Office Action should be withdrawn.

The Examiners agreed to review the legal standard for an anticipation rejection on the basis of inherency and to reconsider the propriety of this rejection based on the use of antibiotics set forth in the July 6, 2007 Final Office Action.

The Antibiotic Art Cannot Anticipate a Method of <u>Reducing Induced</u> <u>NF-kB Activity.</u>

Next Patentees pointed out that contrary to the interpretation of the claims advanced in the July 6, 2007 Final Office Action, a number of claims <u>explicitly</u> require reducing induced NF-kB activity. For example, Patentees pointed to claim 14 and claims dependent thereon as claims which explicitly require "reducing bacterial lipopolysaccharide induced expression of cytokines.

The 1970 PDR teaches that patients with a bacterial infection may be treated with one of the three antibiotics at issue. According to the rationale advanced in the July 6, 2007 Final Office Action, such antibiotic therapy necessarily involves reducing LPS as a result of administering the antibiotic in the case of gram negative infections and thus necessarily involves reducing NF-kB activity. However, obtaining a reduced level of "NF-kB activation" <u>does</u> <u>not</u> anticipate "reducing induced" NF-kB activity. Antibiotics do not have any

ARI 84409

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 24 of 92 of October 22, 2007 Response*

effect on NF-kB activity once the activity has been induced, and the July 6, 2007 Final Office Action does not assert otherwise. Therefore, the 1970 PDR does not anticipate a method which comprises reducing induced NF-kB activity.

Accordingly, the use of antibiotics to treat bacterial infection by a method disclosed in the 1970 PDR does not necessarily and inevitably involve reducing induced NF-kB activity and therefore cannot anticipate claim 14, claims dependent on claim 14, or any claims directed to reducing induced NF-kB activity (e.g., claims 6, 8 and 9, and claims dependent thereon). See further discussion of this issue in Section III.

The Examiners agreed to review and reconsider the applicability of the inherent anticipation rejection based on the 1970 disclosure of certain antibiotics in the PDR in so far as it was being applied against claims which require reducing induced NF-kB activity. To assist the Examiners, Patentees point out that claim 6 and claims dependent thereon recite "diminishing induced NF-kB-mediated intracellular signaling"; claim 8 and claims dependent thereon recite "modifying effects of external influences ... which induce NF-kB-mediated intracellular signaling by reducing NF-kB activity"; claim 9 and claims dependent thereon recite "reducing ... the level of expression of genes which are activated by extracellular influences which induce NF-kB mediated intracellular signaling"; claim 14 and claims dependent thereon recite "reducing bacterial lipopolysaccharide-induced expression of cytokines." ; and claim 18 and claims dependent thereon recite "reducing ...activity so as to reduce intracellular signaling caused by...".

Antibiotic Art has Been Improperly Applied to Claims Requiring Reducing Induced NF-kB Activity in Cells so as to Reduce Intracellular Signaling "Caused By Interlukin-1 or Tumor Necrosis Factor-$\alpha$".

Patentees also specifically discussed claim 18 and claims dependent

ARI 84410

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 25 of 92 of October 22, 2007 Response*

thereon requiring reducing intracellular signaling "caused by" IL-1
or TNF-α.   Specifically, Patentees requested clarification of the
Examiner's rationale for the position that the use of antibiotics
according to a method in the 1970 PDR could inherently anticipate the
claimed method.    Patentees pointed out that under the rationale
advanced in the July 6, 2007 Final Office Action, any reduction in
NF-kB activity attributable to the use of an antibiotic according to
a method disclosed in the 1970 PDR would have been "caused by" LPS,
not by IL-1 or TNF-α.

Examiner Celsa responded that LPS can regulate gene expression of
TNF-α and referred Patentees to the July 6, 2007 Final Office Action
for further clarification.   Patentees have reviewed the July 6, 2007
Final Office Action and find the following passage on page 106:
"Gram-negative bacteria produce lipopolysaccharide (LPS), which when
in contact with human cells induces NF-kB activity resulting in the
production of cytokines regulated by NF-kB.   Cytokines whose genes
are regulated by NF-kB (at least in part) include tumor necrosis
factor alpha (TNF-α)."   In Exhibit H-10 referenced in the July 6,
2007 Final Office Action, the following passage appears next to claim
18: "Inherent.   Reducing LPS by administration of antibiotic for
treatment of gram negative bacterial infection necessarily reduces
bacterial-induced NF-kB-mediated TNF-α production and resulting TNF-α
induced intracellular signaling.   *See* Galdiero, Yang, and Mori
references (showing LPS regulates gene expression of TNF-α, IL-6, IL-
8 and IL-10 via NF-kB)."

Patentees respectfully point out that notwithstanding the factual
inaccuracies in the cited passages, particularly the passage from
Exhibit H-10, the passages do not state or provide evidence
supporting the statement that a method of using an antibiotic
according to the 1970 PDR would have necessarily and inevitably
involve a method of reducing induced NF-kB activity in the cells so
as to reduce intracellular signaling <u>caused by</u> Interleukin-1 or Tumor

ARI 84411

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 26 of 92 of October 22, 2007 Response*

Necrosis Factor-$\alpha$ in the cells" as required by claim 18 and claims dependent thereon.

Therefore, there is no basis for maintaining the inherent anticipation rejection of claim 18 and claims dependent thereon over the disclosure of the 1970 PDR.

The Examiners agreed to review and reconsider the rejection of claim 18 and claims dependent thereon based on the use of antibiotics to treat bacterial infection according to the 1970 PDR.

ARI 84412

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 27 of 92 of October 22, 2007 Response*

III.     RESPONSE TO ART REJECTIONS

On pages 17-22, the July 6, 2007 Final Office Action sets forth an
interpretation of the claims of the '516 Patent which suggests that
many differently worded claims should be interpreted as having the
same scope.  To limit the issues in these proceedings, Patentees have
herein cancelled more than 90 claims and respectfully direct the
Examiner's attention to the pending rejected independent claims now
pending, i.e. claims 6, 8, 9, 14 and 18, and to claims dependent
thereon.  Patentees maintain that the claim interpretation advanced
in the July 6, 2007 Final Office Action (as well as that advanced in
the earlier August 2, 2006 Office Action) is not applicable to the
these now pending rejected claims.  See, also the Second Declaration
of Dr. Inder Verma, ¶¶ 6-10 , a copy of which is attached hereto as
**Exhibit B.**

The entire contents of the Second Declaration of Dr. Inder Verma as
well as that of the First Declaration of Dr. Verma is hereby
incorporated herein by reference.

**A.     All Rejected Claims Now Pending Are Directed To <u>Reducing
         Induced</u> NF-kB Activity**

In the absence of external inducing stimuli, NF-kB is present in the
cytoplasm of a eukaryotic cell in an inactive form, i.e. there is no
NF-kB activity.  In the presence of external inducing stimuli NF-kB
activity is induced in a cell. Such induced NF-kB activity persists
so long as the external inducing stimuli are present.  Broadly
speaking, there are the two types of methods to obtain a cell
exhibiting reduced NF-kB activity as follows: (a) reducing the
induced NF-kB activity by intervening in the signaling pathway by
which NF-kB activity is manifested including particularly intervening
intracellularly at a specific segment within the signaling pathway;
and (b) preventing the external inducing stimuli from inducing the

ARI 84413

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 28 of 92 of October 22, 2007 Response*

intracellular signaling pathway through which NF-kB activity is
manifested.

Certain claims of the '516 Patent as issued covered both such types
of methods.    However, as discussed further in this response
applicants maintain that the rejected claims now pending are directed
only to type (a) above.    (See, e.g., column 2, lines 20-63; column
10, lines 31-55; column 12, lines 57-66; column 13, line 13 - column
14, line 54; column 16, lines 22-63; and column 17, lines 30-37 of
the '516 patent; and First Declaration of Dr. Verma, ¶¶ 5-9.)

In applying the cited art against claims of the '516 patent in the
July 6, 2007 Final Office Action the Examiner consistently asserted
that the claimed method encompasses administering an inhibitor of NF-
kB activity (i) prior to, (ii) simultaneously with, and (iii)
subsequent to, administering an inducer of NF-kB activity. (See, e.g.
page 27, lines 16-18; page 36, lines 20-22; page 59, lines 4-10; page
80, lines 21-23; page 91, lines 26-29; page 98, lines 12-16; and page
112, lines 24-30 of the July 6, 2007 Final Office Action.)  However,
with respect to claims 6, 8, 9, 14 and 18, and claims dependent
thereon, the only rejected claims now pending, this assertion is not
correct.    The rejected claims now pending do not encompass either
case (i) or case (ii).

   1)    All rejected, pending claims must be given their broadest
         reasonable interpretation

While a claim under reexamination is to be given a broad
interpretation, this interpretation must be *reasonable* in light of
the specification.  *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir.
1984).  Additionally, the claims must be construed as one of skill
in the art would construe them.  *In re American Academy of Science
Tech Center*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).  For the broadest
reasonable interpretation of the claims by a person skilled in the

ARI 84414

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 29 of 92 of October 22, 2007 Response*

art see the previously filed Declaration of Dr. Verma, ¶¶ 5-9; and
the Second Declaration of Dr. Verma ¶¶ 6-10 submitted herewith.


The case of *In re Baker Hughes Incorporated* is instructive.   The
patent at issue in *In re Baker* claimed a composition and process used
to inhibit the release of toxic gas from a material comprising a
hydrocarbon and the toxic gas.   *In re Baker Hughes Incorporated*, 215
F.3d 1297, 1299 (Fed. Cir. 2000).    Relying on parts of the
specification that describe hydrocarbons as both liquids and gases,
the Board of Patent Appeals and Interferences held that the broadest
reasonable interpretation of the term "hydrocarbon" included both
gases and liquids.   *Id.* At 1303.   Upon review, the Federal Circuit
reversed this overly broad interpretation because it was inconsistent
with the purpose of the invention as disclosed in the specification.
*See id. (holding that "hydrocarbon" meant only a liquid as "nowhere
in the written description is there an example of the claimed process
being used with a gaseous hydrocarbon.")*


The now pending, rejected claims should not be construed so broadly
that they are given a meaning inconsistent with that which one of
skill in the art would attribute to them.   An interpretation contrary
to that which would be understood by a person skilled in the art is
an unreasonably broad interpretation.   *See In re Cortright*, 165 F.3d
1353, 1359 (Fed. Cir. 1999) (reversing the Examiner's rejection after
finding that one skilled in the art would construe the claim more
narrowly than had the examiner).   When the claim terms "are examined
through the viewing glass of a person skilled in the art," as they
are supposed to be, it becomes clear here that the Examiner's
interpretation is not reasonable.   *Phillips v. AWH Corp*, 415 F.3d
1303, 1313 (Fed. Cir. 2005), *cert. denied*, 126 S.Ct. 1332
(2006)(quoting *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,
350 F.3d 1327, 1338 (Fed. Cir. 2003)).   Such broad interpretations
are impermissible.   *See In re Marosi*, 710 F.2d 799 (Fed. Cir. 1983)
(reversing a claim rejection under 35 U.S.C. §§102 or 103 that failed

ARI 84415

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 30 of 92 of October 22, 2007 Response*

to interpret the claim in light of the interpretation which one
skilled in the art would have attributed to the claim).

> 2)    Claim 6 Recites "<u>diminishing induced</u> NF-kB-mediated
> intracellular signaling"; Claim 8 Recites <u>modifying
> effects of external influences which induce</u> NF-kB mediated
> intracellular signaling <u>by reducing NF-kB activity</u> in the
> cells <u>such that NF-kB mediated effects ... are modified</u>;
> Claim 9 Recites "<u>reducing</u>, in eukaryotic cells, the level
> of <u>expression of genes which are activated</u>"; Claim 14
> Recites "<u>reducing</u> bacterial lipopolysaccharide-<u>induced</u>
> expression of cytokines"; and Claim 18 Recites "<u>reducing</u>
> Interlukin-1 or Tumor Necrosis Factor-$\alpha$ <u>activity</u> ... so as
> <u>to reduce intracellular signaling caused by</u> Interlukin-1
> or Tumor Necrosis Factor-$\alpha$ in the cells.".

More fully, independent claims 6, 8, 9, 14 and 18 read as follows:

> 6. A method for diminishing induced NF-$\kappa$B-mediated
> intracellular signaling comprising reducing NF-$\kappa$B activity
> in cells such that NF-$\kappa$B-mediated intracellular signaling
> is diminished.

> 8. A method for modifying effects of external influences on a
> eukaryotic cell, which external influences induce NF-$\kappa$B-
> mediated intracellular signaling, the method comprising
> reducing NF-$\kappa$B activity in the cells such that NF-$\kappa$B-mediated
> effects of external influences are modified.[2]

> 9. A method for reducing, in eukaryotic cells, the level
> of expression of genes which are activated by
> extracellular influences which induce NF-$\kappa$B-mediated
> intracellular signaling, the method comprising reducing
> NF-$\kappa$B activity in the cells such that expression of said

---

[2]Claim 8 depends from canceled claim 7, but is presented
here as if written in independent form to facilitate
discussion.

ARI 84416

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 31 of 92 of October 22, 2007 Response*

genes is reduced.

14. A method for reducing bacterial lipopolysaccharide-induced expression of cytokines in mammalian cells, which method comprises reducing NF-κB activity in the cells so as to reduce bacterial lipopolysaccharide-induced expression of said cytokines in the cells.

18. A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells.

By reciting <u>diminishing induced</u> NF-kB mediated intracellular signaling by reducing NF-kB activity claim 6 is directed to reducing induced NF-kB activity. It is not directed to preventing induction of the NF-kB signaling pathway. Thus, only art involving administering an inhibitor subsequent to administering an inducer is relevant to the patentability of this claim.

Claim 8 recites <u>modifying effects of external influence which induce</u> NF-kB-mediated intracellular signaling by reducing NF-kB activity. The effects of external influences which induce NF-kB-mediated intracellular signaling result from the induction of the NF-kB signaling pathway caused by the external influence and the resulting NF-kB activity. Reducing this resulting NF-kB activity equates with reducing induced NF-kB activity. Thus, only art involving administering an inhibitor subsequent to administering an inducer is relevant to the patentability of this claim.

Similarly, claim 14 which recites <u>reducing</u> bacterial lipopolysaccharide <u>induced</u> expression of cytokines is directed to reducing induced NF-kB activity. It is not directed to preventing

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 32 of 92 of October 22, 2007 Response*

induction of the NF-kB signaling pathway. Thus, only art disclosing administration of an inhibitor subsequent to administering an inducer is relevant to its patentability.

Claim 9 recites <u>reducing</u> the level of expression of genes which are <u>activated by extracellular influences which induce</u> NF-kB-mediated intracellular signaling. Thus, claim 9 is directed to reducing induced NF-kB activity. It is not directed to preventing induction of the NF-kB signaling pathway. Once again, only art disclosing administration of an inhibitor subsequent to administering an inducer is relevant to the patentability of the claim.

Finally, claim 18 recites reducing IL-1 or TNF-α <u>activity</u> by reducing <u>NF-kB activity</u> in cells <u>so as</u> to <u>reduce intracellular signaling caused by</u> IL-1 or TNF-α. Since IL-1 and TNF-α are inducers of NF-kB activity, claim 18 concerns reducing IL-1 or TNF-α induced NF-kB activity. Therefore, only art disclosing administration of an inhibitor subsequent to administering an inducer is relevant to its patentability.

In summary, none of claims 6, 8, 9, 14 or 18 (or the claims dependent thereon) can properly be construed to encompass administering an inhibitor of NF-kB activity (i) prior to or (ii) simultaneously with, administration of an inducer of NF-kB activity.

   3)   Each of Claims 64-69, 75-80, 88-93, 139-144, 177, 178, and
        182 Is Directed To Reducing Induced NF-kB Activity By
        Carrying Out A Specific Step Inside a Cell.

Each of claims 64-69, 75-80, 88-93, 139-144, 177, 178 and 182 specify that the reducing of induced NF-kB activity is effected by a specified step which is one of the following:

   i.   decreasing the level of NF-kB not bound in an NF-kB:IkB
        complex;
   ii.  inhibiting passage of NF-kB into the nucleus;

ARI 84418

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 33 of 92 of October 22, 2007 Response*

    iii. inhibiting modification of an IkB protein;

    iv. inhibiting degradation of an IkB protein;

    v. inhibiting dissociation of NF-kB: IkB complexes; or

    vi. reducing binding of NF-kB to NF-kB recognition sites.

Each of these steps, with the broadest reasonable interpretation attributable to it, requires that the step of reducing induced NF-kB activity take place at a specific intracellular segment within the NF-kB intracellular signaling pathway. (See first Declaration of Dr. Verma ¶¶ 14-15; and Second Declaration of Dr. Verma ¶¶ 10) To construe each of these claims as the Examiner has suggested, i.e. as covering reducing NF-kB activity by a step which occurs anywhere within the NF-kB intracellular signaling pathway is unreasonable in view of the requirement of 35 U.S.C. §112, paragraph 4, that a dependent claim must further define and limit the claim from which it depends.

Thus, each of dependent claims 64-69, 75-80, 88-93, 139-144, 177, 178 and 182, properly construed, specify a specific subcase in which the step of reducing induced NF-kB activity involves intervening at a specified segment within the NF-kB intracellular signaling pathway. To construe these claims otherwise is unreasonable.

B.    **The Rejected Claims Now Pending Are Not Anticipated By The Cited Art. For Each Rejected Claim It Has Not Been Shown That Every Element Occur Explicitly or Necessarily Occurs in the Cited Art. Moreover, Certain Cited Art Clearly Does Not Enable The Method Described Therein So That Even If Each Element Of A Rejected Claim Were Disclosed In The Cited Art Such Art Would Not Anticipate.**

The now pending, rejected claims are the following:

    a.    Claim 14 and claims 139, 140 and 144-147 which depend therefrom;

ARI 84419

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 34 of 92 of October 22, 2007 Response*

b.   Claim 18 and claims 177, 178 and 182-185 which depend therefrom;

c.   Claim 6 and claims 64-73 which depend therefrom;

d.   claim 8 and claims 75-80, 82 and 84 which depend therefrom; and

e.   claim 9 and claims 88-97 which depend therefrom.

For any of these rejected claims to be properly rejected each and every element of such claim must be disclosed in a single prior art reference, either explicitly or inherently, and such allegedly anticipating prior art reference must enable the allegedly anticipating disclosure.

In the sections which follow Patentees explain that the rejected claims now pending, are not anticipated, either inherently or explicitly, by the art cited against such claims. In support of their position Patentees submit as **Exhibit B** a Second Declaration of Dr. Inder Verma.

Certain of the art rejections in the July 6, 2007 Final Office Action are based on alleged explicit anticipation; other rejections are based on alleged inherent anticipation.

With respect to the inherent anticipation rejections, Patentees have explained in their November 9, 2006 response the deficiencies of the purported extrinsic evidence being relied upon to allegedly "explain" the prior art. Patentees do not repeat that explanation in its entirety but hereby incorporate that response by reference into this response. Patentees note, however, that the Examiner appears to have ignored the fact that <u>none</u> of the purported extrinsic evidence concerns what occurred in the cited prior art. The Examiner does not

ARI 84420

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 35 of 92 of October 22, 2007 Response*

dispute that <u>none</u> of the purported extrinsic evidence relates to any effort to reproduce any experiment in the cited art. Instead, the Examiner has merely asserted that "enablement and not actual use is the legal standard for demonstrating inherency." (See, e.g., page 97, line 19; page 93, lines 18-20 of the July 6, 2007 Final Office Action.) and proceeded to maintain the inherent anticipation rejections notwithstanding that <u>none</u> of the extrinsic evidence being relied upon addressed what element(s) of the claim necessarily and inevitably occurred in any specific cited reference.

Patentees certainly agree that for any anticipation rejection it is required that a prior art reference "must enable that which it is asserted to anticipate." *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003). A proper <u>inherent</u> anticipation rejection, however, must additionally include evidence to "make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

Patentees, therefore, respectfully submit that all of the inherent anticipation rejections of record are fatally defective. Nevertheless, Patentees below explain why notwithstanding this improper reliance on the so-called extrinsic evidence, none of the cited art anticipates the rejected claims now pending.

1)    CLAIM 14 AND CLAIMS 139, 140 and 144-147 WHICH DEPEND THEREON

Each of claims 14, 139, 140 and 144-147 is rejected solely on the ground that the claimed method is inherently anticipated by the disclosure in the 1970 PDR of instructions for using three antibiotics (gentamycin, tetracycline, and erythromycin). In support of this ground of rejection the Examiner relies upon the *Manolagas*

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 36 of 92 of October 22, 2007 Response*

*Declaration, Galdiero* et al. (Microbiology, *147* (2001): 2697-2704),
*Yang* et al. (Nature *395(1998)* 284-288), *Mori* et al. (Eur. J.
Haematol. 59 (1997): 162-170), the *Baltimore '516 Patent* and *Yasutomi*
et al. *(J.* Immunology 175(2005) 8069-8076) which perport to "explain"
the disclosure in the 1970 PDR.

As an initial matter Patentees note that none of claims 14, 139, 140,
or 144-147 are specifically discussed in the July 6, 2007 Final
Office Action.  Rather these claims are merely grouped with other
claims which are worded differently and have different scopes.
Properly construed, these claims are not subject to the reasoning set
forth on pages 105-111 of the July 6, 2007 Final Office Action.

Patentees further note that in ¶¶ 113-123 of the Second Declaration
of Dr. Inder Verma, Exhibit B hereto, Dr. Verma discusses the flaws
in the Examiner's reasoning.  See particularly the table in ¶ 113
which provides a point by point discussion in response to the
Examiner's Rejection Summary on pages 105-107 of the July 6, 2007
Final Office Action; ¶ 114; ¶ 118; ¶ 119; and ¶¶ 121-123.

In the sections that follow, Patentees provide three reasons, each
of which is sufficient to require withdrawal of the inherent
anticipation rejection of claim 14, 139, 140 and 144-147 based on the
1970 PDR.  Patentees have additionally provided a fourth reason for
withdrawing the rejection as applied to claims 139, 140, and 144.

> a)   *The Method of Claim 14 and Claims Dependent Thereon Does*
>      *Not Occur In Any Person To Whom Antibiotics Are*
>      *Administered.*

According to the rationale advanced on pages 105-111 of the July 6,
2007 Final Office Action, administration of antibiotics to treat a
gram-negative bacterial infection results in killing the bacteria
which therefore no longer produce lipopolysaccharide ("LPS"), a known

ARI 84422

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 37 of 92 of October 22, 2007 Response*

inducer of NF-kB activity. Because there is less LPS in the subject to induce NF-kB activity, NF-kB activity is reduced.

Patentees respectfully point that even if this rationale as stated were accurate, it leads to the conclusion that administration of antibiotics, by killing gram-negative bacteria and causing a reduction in the level of LPS prevent induction of the NF-kB intracellular signaling pathway. This rationale does not support the conclusion that administering antibiotics, by killing gram-negative bacteria, and causing a reduction in the level of LPS, is reducing induced NF-kB activity as recited in claim 14 and in claims 139, 140 and 144-147 which depend therefrom.

As explained at length in the specification and by Dr. Verma, NF-kB is a nuclear transcription factor that unless and until activated is present only in an inactive complex in the cytoplasm of a eukaryotic cell. Upon activation by an external influence or stimulus capable of inducing activation the NF-kB signaling pathway, e.g. LPS, the inactive complex dissociates and NF-kB is created in a form which travels to the nucleus of the cell where it binds to specific binding recognition sites on genes that are regulated by NF-kB, resulting in transcription and often expression of such genes. Thus, although LPS when present induces NF-kB activity, its absence, as a result of administering an antibiotic has not effect on previously induced NF-kB activity, and such administration certainly does not involve reducing NF-kB activity. (See, e.g. column 2, lines 46-63; column 10, lines 31-55; column 14, lines 28-30; column 16, lines 22-63 of the subject patent; Declaration of Dr. Verma ¶¶ 8, 9; and Second Declaration of Dr. Verma ¶¶ 114.)

Because claim 14, 139, 140 and 144-147 recite reducing bacterial LPS-induced NF-kB activity, the administration of antibiotics cannot and does not result in the practice of the method recited in these claims.

ARI 84423

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 38 of 92 of October 22, 2007 Response*

For this reason alone, the inherent anticipation rejection of claims 14, 139, 140 and 144-147 based on the 1970 PDR should be withdrawn.

> b)    *Performing   Any   Method   Involving   Administering An*
> *Antibiotic According To The Disclosure of the 1970 PDR*
> *Only Results In Killing Gram-Negative Bacteria Sometimes.*
> *Such Occasional Results Are Not Sufficient To Establish An*
> *Element of the Claims Necessarily or Inevitably Occurred.*

As Patentees' representative explained during the August 22, 2007 Examiner Interview and as Dr. Verma explained in his first Declaration in paragraph 128, resistant strains of gram-negative bacteria are widespread. Antibiotics would not kill such resistant strains contrary to the Examiner's rationale that administering antibiotics would kill such bacteria and thereby effect reduced levels of LPS and consequently reduced NF-kB activity. Resistant strains of gram-negative bacteria would continue to produce LPS, which would continue to induce the NF-kB signaling pathway. Thus, not only would administering the antibiotic not involve reducing LPS-induced NF-kB activity, such administration would not prevent further LPS-induced NF-kB activity from occurring.

Claims 14, 139, 140 and 144-147 are rejected as inherently anticipated by the administration of antibiotics according to the disclosure in the 1970 PDR. However, the 1970 PDR does not disclose each and every element of these claims as required for an anticipation rejection. Thus, the July 6, 2007 Final Office Action relies on purported extrinsic evidence including references published after the effective filing date of the rejected claims to argue that each and every element of the claimed method would inherently occur if antibiotics were used in a method according to the instructions in the 1970 PDR.

ARI 84424

·Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 39 of 92 of October 22, 2007 Response*

An inherent anticipation rejection requires that the extrinsic evidence "make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). "Inherency may not be established by probabilities or possibilities" but rather "must be necessarily present" in the single prior art reference. *Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002)(internal quotations omitted).

Even if the three cited antibiotics disclosed in the cited 1970 PDR *did* work as postulated by the Examiner, they only did so *sometimes*. The 1970 PDR does not teach a) which patients are infected with gram-negative bacteria as opposed to those infected with gram-positive bacteria or how to identify such patients b) which patients are infected by a strain which is not resistant to treatment by the antibiotics or how to identify such non-resistant strains of gram-negative bacteria, or c) which gram-negative bacteria produce LPS capable of inducing NF-kB activity since not all such bacteria produce LPS. Therefore, administering an antibiotic as instructed in the 1970 PDR would at most lead to occasional killing of gram-negative bacteria that produce LPS capable of inducing NF-kB. Therefore, the Examiner's theory at best shows that administration of an antibiotic as instructed in the 1970 PDR may, *possibly*, kill gram-negative bacteria that may possibly produce LPS capable of inducing NF-kB. (Declaration of Dr. Verma ¶¶ 128; and Second Declaration of Dr. Verma ¶¶ 113-114, 122-123)

However, a showing of mere "probabilities or possibilities" is insufficient to support a finding of inherent anticipation. *See In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999)(finding that a system claim was not anticipated by prior art that <u>could be used</u> to obtain the same result). Where practice of the prior art only sometimes encompassed all elements of the claims, the art was held <u>not</u> to inherently anticipate because "occasional results are not

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 40 of 92 of October 22, 2007 Response*

inherent." *See Mehl/Biophile Int'l. Corp. v. Milgraum*, 192 F.3d
1362, 1365 (Fed. Cir. 1999)(holding that prior art did not anticipate
a claim requiring a substantially vertical orientation even though
use of the prior art method would sometimes result in such an
orientation). See, also, *Glaxo, Inc. v. Novopharm, Ltd.*, 52 F.3d
1043 (Fed. Cir. 1995) (affirming a district court holding that
practice of a prior art method sometimes yielding crystals of one
polymorph but other times yielding crystals of another polymorph did
not inherently anticipate a claim reciting only one of the
polymorphs.)

In *Perricone v. Medicis Pharmaceutical Corporation*, a district court
held a method claim for treating a sunburn by applying a specific
compound to the affected area was inherently anticipated by prior art
disclosing "topical application" of the compound to the skin.  On
appeal, the Federal Circuit reversed the finding of inherent
anticipation determining that the prior art did not anticipate the
claim and stating "the district court's inherency analysis goes
astray because it assumes what [the prior art] neither disclosed nor
rendered inherent" because the prior art did not disclose applying
the compound to a skin sunburn. *Perricone v. Medicis Pharmaceutical
Corporation*, 432 F.3d 1368, 1378 (Fed. Cir. 2005). It was deemed
irrelevant that the prior art compound *may* sometimes have been
applied to sunburned skin. *Id.* At 1379.

In the present case, the administration of antibiotics according to
the 1970 PDR may at most, result in killing gram-negative bacteria,
which is contrary to a critical assumption in the Examiner's theory
how administration of an antibiotic anticipates the method of claim
14.  Thus, even if the Examiner's rationale is accepted, occasional
results are insufficient to establish inherent anticipation under
controlling Federal Circuit precedent.

For this reason alone, the inherent anticipation rejection of claims

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 41 of 92 of October 22, 2007 Response*

14, 139, 140 and 144-147 based on the 1970 PDR should be withdrawn.


c)    *The Occasional Results Obtainable Following the Disclosure
of the 1970 PDR Are Not Sufficient to Enable the Method
Disclosed And Therefore Cannot Anticipate Claim 14 and
Claims Dependent Thereon.*


The occasional results that would have been obtained by practicing
the method of administering antibiotics in the 1970 PDR are
insufficient to enable the method disclosed and therefore cannot
anticipate claim 14 and claims dependent thereon.


"To serve as an anticipating reference, the reference must enable
that which it is asserted to anticipate. A claimed invention cannot
be anticipated by a prior art reference if the allegedly anticipatory
disclosures cited as prior art are not enabled" *Elan
Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed.
Cir. 2003) (internal citations omitted). Courts have refused to find
anticipation based on prior art that is not enabling. For instance,
in *Rockwell Intern. Corp v.U.S.*, the Federal Circuit refused to
invalidate patent claims based on prior art which did not "provide
sufficient basic chemistry information to enable one skilled in the
art to grow epitaxial . . . semiconductors" (i.e. practice the
claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358,
1364 (Fed. Cir. 1998). Likewise, in *Application of Sheppard*, the
Court of Customs and Patent Appeals held that a prior art reference
which may have disclosed either the claimed compound *or* a different
compound was not enabling and therefore could not anticipate the
claim at issue. *Application of Sheppard*, 339 F.2d 238, 241-242
(C.C.P.A., 1964).


The 1970 PDR does not teach a) which patients are infected with gram-
negative bacteria or how to identify such patents b) which patients

ARI 84427

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 42 of 92 of October 22, 2007 Response*

are infected by a strain of  gram-negative bacteria which is not
resistant to treatment by the antibiotics or how to identify such
non-resistant strains or c) which gram-negative bacteria produce LPS
capable of inducing NF-kB activity since not all such bacteria
produce LPS. Therefore, administering an antibiotic as set forth in
the 1970 PDR would at most lead to occasional killing of gram-
negative bacteria that produce LPS capable of inducing NF-kB.
(Declaration of Dr. Verma ¶¶ 128; and Second Declaration of Dr. Verma
¶¶ 113-114, 122-123)

Prior art whose disclosure would have only sometimes led to the
practice of the claimed method, like the prior art in *Rockwell* and
*Sheppard*, does not enable one skilled in the art to practice the
claimed method. The Examiner's rationale for the rejection, even if
factually correct, at most shows that administration of antibiotics
according to the 1970 PDR may *sometimes* kill gram-negative bacteria
that produce LPS capable of inducing NF-kB. Accordingly, the 1970
PDR is not enabling for the method upon which the Examiner relies and
the 1970 PDR cannot anticipate claim 14 and claims dependent thereon.

For this reason alone, the inherent anticipation rejection of claims
14, 139, 140 and 144-147 based on the 1970 PDR should be withdrawn.

> d)   *Administering An Antibiotic As Disclosed In The 1970 PDR*
>      *Does Not Anticipate Reducing Induced NF-kB Activity by*
>      *Intervening Within the NF-kB Intracellular Signaling*
>      *Pathway At A Specified Segment as Recited in Claims 139,*
>      *140 and 144.*

Dependent claims 139, 140 and 144 further limit claim 14 by reciting
that reducing induced NF-kB activity occurs as a result of a step
inside the cell. The Examiner's theory as to how the use of
antibiotics anticipate these claims involves antibiotics killing
gram-negative bacteria outside the cell so as to reduce the levels

ARI 84428

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 43 of 92 of October 22, 2007 Response*

of LPS present outside the cell.  Therefore, claims 139, 140 and 144 should not be rejected as inherently anticipated by the 1970 PDR.

Claim 139 requires that reducing LPS-induced NF-kB activity be effected "by decreasing the level of NF-kB not bound in an NF-kB:IkB complex."  Neither the 1970 PDR nor the purported extrinsic evidence show that antibiotics or reduced LPS levels involve decreasing the level of NF-kB not bound in an NF-kB:IkB complex.  (Declaration of Dr. Verma ¶¶ 127; and Second Declaration of Dr. Verma ¶¶ 121.)

Claim 140 requires that reducing LPS-induced NF-kB activity be effected  "by inhibiting the passage of NF-kB into the nucleus of cells." Neither the 1970 PDR nor the purported extrinsic evidence show that antibiotics or reduced LPS levels involve inhibiting the passage of NF-kB into the nucleus of cells.  (Declaration of Dr. Verma ¶¶ 127; and Second Declaration of Dr. Verma ¶¶ 121.)

Claim 144 requires that reducing LPS-induced NF-kB activity be effected by a step that "comprises reducing binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB." Neither the 1970 PDR nor the purported extrinsic evidence show that antibiotics or reduced LPS levels involve reducing binding of NF-kB to NF-kB recognition sites on genes which are transcriptionally regulated by NF-kB.  (Declaration of Dr. Verma ¶¶ 127; and Second Declaration of Dr. Verma ¶¶ 121)

In conclusion, Patentees have provided three reasons each of which independently warranting withdrawal of the inherent anticipation rejection of claims 14, 139, 140 and 144-147 based on the 1970 PDR. Patentees have additionally provided a fourth reason requiring warranting the rejection of claims 139, 140 and 144.

Because the inherent anticipation rejection of claims 14, 139, 140 and 144-147 is the only ground of rejection of these claims in the

ARI 84429

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 44 of 92 of October 22, 2007 Response*

July 6, 2007 Final Office Action, Patentees respectfully submit that
the rejection of claims 14, 139, 140 and 144-147 should be withdrawn
and these claims should be confirmed patentable.

**ARI 84430**

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 45 of 92 of October 22, 2007 Response*

    2)   CLAIM 18 AND CLAIMS 177, 178 AND 182-185 WHICH DEPEND
         THEREFROM

Each of claim 18, 177, 178 and 182-185 are rejected as allegedly
inherently anticipated by the disclosure in the 1970 PDR of
instructions for administering three antibiotics (gentamycin,
tetracycline, and erythromycin.) In support of these rejections the
Examiner relies upon the *Manolagas Declaration, Galdiero* et al.
(Microbiology, *147* (2001): 2697-2704), *Yang* et al. (Nature *395(1998)*
284-288), *Mori* et al. (Eur. J. Haematol. 59 (1997): 162-170), the
*Baltimore '516 Patent* and *Yasutomi* et al. *(J.* Immunology 175(2005)
8069-8076) which purport to "explain" the disclosure in the 1970 PDR.

Claim 18 and dependent claims 182-185 have additionally been rejected
as allegedly anticipated by Staal et al., PNAS 87:9943 (Dec. 1990).

Therefore claims 177 and 178, are only rejected as allegedly
inherently anticipated by the 1970 PDR.

Patentees have explained in their November 9, 2006 response the
deficiencies of the purported extrinsic evidence being relied upon
to support the inherent anticipation rejections based on the
antibiotics disclosed in the 1970 PDR and do not repeat that
explanation here.

Patentees explain below the deficiencies in both the inherent
anticipation rejection based on the 1970 PDR, and the anticipation
rejection based on Staal et al.

ARI 84431

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 46 of 92 of October 22, 2007 Response*

<u>Rejection Based on Antibiotic Art</u>

As an initial matter Patentees note that none of claims 18, 177, 178 and 182-185 are specifically discussed in the July 6, 2007 Final Office Action. Rather these claims are merely grouped with other claims which are worded differently and have different scopes. Properly construed, these claims are not subject to the reasoning set forth on pages 105-111 of the July 6, 2007 Final Office Action.

Patentees further note that in ¶¶ 113-123 of the Second Declaration of Dr. Inder Verma, Dr. Verma discusses the flaws in the Examiner's reasoning. See particularly the table in ¶ 113 which provides a point by point discussion in response to the Examiner's Rejection Summary on pages 105-107 of the July 6, 2007 Final Office Action; ¶ 114; ¶ 118; ¶ 120; and ¶¶ 121-123.

In the preceding Section, Patentees have provided four reasons why claim 14 and claim dependent thereon are patentable over the 1970 PDR. Each of the four reasons is also applicable to claim 18 and claims dependent thereon. Patentees do not repeat the explanations here, but instead summarize them as follow:

a) *The Method of Claim 18 and Claims Dependent Thereon Does Not Occur In Any Person To Whom Antibiotics Are Administered.*

b) *Performing Any Method Involving An Antibiotic According To the 1970 PDR Only Results In Killing Gram-Negative Bacteria Sometimes. Such Occasional Results Are Not Sufficient To Establish An Element of the Claims Necessarily Or Inherently Occurs.*

c) *The Occasional Results Obtainable Following the Disclosure of the 1970 PDR Are Not Sufficient to Enable the Method*

ARI 84432

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 47 of 92 of October 22, 2007 Response*

> *Disclosed And Therefore Cannot Anticipate Claim 18 and Claims Dependent Thereon.*

> d)    *Administering An Antibiotic As Disclosed In The 1970 PDR Does Not Anticipate Reducing Induced NF-kB Activity by Intervening Within the NF-kB Intracellular Signaling Pathway at a Specified Segment as Required by Claims 177, 178 and 182.*

Accordingly, Patentees respectfully request that the Examiner reconsider and withdraw the inherent anticipation rejection of claim 18 and claims dependent thereon in view of each of these four reasons, and the discussion by Dr. Verma with respect to claim 18 and claims dependent thereon. (Declaration of Dr. Verma ¶¶ 127; and Second Declaration of Dr. Verma ¶¶ 120-121)

Furthermore, there is another reason why administering antibiotics according to the 1970 PDR does not anticipate claim 18 and claims dependent thereon.

> e)    *Administering Antibiotics Does Not Involve Reducing NF-kB Activity "caused by" Il-1 or TNF-α.*

Claim 18 recites reducing NF-kB activity so as to reduce intracellular signaling "caused by" IL-1 or TNF-α. Antibiotics have no effect on intracellular signaling caused by IL-1 or TNF-α. While in the July 6, 2007 Final Office Action antibiotics are asserted to reduce levels of LPS, claim 18 is not directed to NF-kB activity induced by LPS. (Declaration of Dr. Verma ¶¶ 126-127; and Second Declaration of Dr. Verma ¶¶ 120) Claim 18 is directed to reducing NF-kB activity "caused by" IL-1 or TNF-α. There is no explanation whatsoever in the record how antibiotics could be used for reducing NF-kB activity caused by IL-1 or TNF-α.

ARI 84433

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 48 of 92 of October 22, 2007 Response*

Patentees have reviewed the July 6, 2007 Final Office Action and
noted the following passage on page 106: "Gram-negative bacteria
produce lipopolysaccharide (LPS), which when in contact with human
cells induces NF-kB activity resulting in the production of cytokines
regulated by NF-kB. Cytokines whose genes are regulated by NF-kB (at
least in part) include tumor necrosis factor alpha (TNF-$\alpha$)."   In
Exhibit H-10 referenced by the July 6, 2007 Final Office Action, the
following passage appears next to claim 18: "Inherent. Reducing LPS
by administration of antibiotic for treatment of gram negative
bacterial infection necessarily reduces bacterial-induced NF-kB-
mediated TNF-$\alpha$ production and resulting TNF-$\alpha$ induced intracellular
signaling. *See* Galdiero, Yang, and Mori references (showing LPS
regulates gene expression of TNF-$\alpha$, IL-6, IL-8 and IL-10 via NF-kB)."
Notwithstanding the factual inaccuracies in the cited passages,
particularly the passage from Exhibit H-10, Patentees respectfully
point out that these passages do not even allege that administering
an antibiotic as disclosed in the 1970 PDR involves reducing "NF-kB
activity in the cells so as to reduce intracellular signaling caused
by Interleukin-1 or Tumor Necrosis Factor-$\alpha$ in the cells" as required
by claim 18 and claims dependent thereon.

In fact, the rationale advanced by the Examiner, that administering
an antibiotic results in reduced levels of LPS and therefore reduced
LPS-induced NF-kB activity is inapplicable to claims 18 and claims
dependent thereon. Moreover, the LPS - induced NF-kB intracellular
signaling pathway is separate from either the IL-1-or the TNF$\alpha$-
induced NF-kB intracellular signaling pathway.

Each of the foregoing reasons a) through e) are independently
sufficient to warrant withdrawal of the inherent anticipation
rejection based on the 1970 PDR of claim 18 and claims 177, 178 and
182-185 dependent thereon.

Moreover, because the inherent anticipation rejection based on the

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 49 of 92 of October 22, 2007 Response*

1970 PDR is the only rejection raised against dependent claims 177 and 178 in the July 6, 2007 Final Office Action, Patentees respectfully submit that claims 177 and 178 should be confirmed patentable based on the foregoing reasons.


<u>Rejection Based on NAC Art</u>

Claims 18 and 182-185 are further rejected on pages 111-113 of the July 6, 2007 Final Office Action as allegedly anticipated by Staal et al., who disclose that N-acetyl-L-cysteine ("NAC") "prevents this thiol decrease [which leads to NF-kB activation] and blocks the activation of NF-kB". (Abstract of Staal et al.)

In ¶¶ 106-112 of the Second Declaration of Dr. Inder Verma, Dr. Verma provides a detailed rebuttal to the reasoning set forth by the Examiner in support of the rejection of claim 18 and 182-185 over Stall et al.

In addition, Patentees provide the following reasons why the rejection over Staal et al., should be withdrawn.

a)    *The Experiments Disclosed in Staal et al., Do Not Involve The Method of Claim 18 or Claims 182-185 Which are Dependent Thereon.*

As explained above, claim 18 recites a method "comprising reducing NF-kB activity in the cells so as to reduce intracellular signaling <u>caused by</u> Interleukin-1 or Tumor Necrosis Factor-$\alpha$ in the cells." "Caused By" is clearly past tense. Therefore claim 18 is directed to a method where there is intracellular signaling caused by IL-1 or TNF-$\alpha$, i.e. there is induced NF-kB activity.

All of the experiments of Staal et al. involve simultaneous treatment

ARI 84435

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 50 of 92 of October 22, 2007 Response*

with TNF-α and NAC.  There is no disclosure in Staal et al. of any method involving using NAC for reducing IL-1 or TNF-α induced NF-kB activity, i.e. reducing NF-kB activity so as to reduce intracellular signaling caused by IL-1 or TNF-α (Declaration of Dr. Verma ¶¶ 160-162; and Second Declaration of Dr. Verma ¶¶ 106-109, 112)

In fact, NAC does not reduce induced NF-kB activity according to Staal et al. themselves  Staal et al. point out that "low thiol levels are required for <u>activation</u>" of NF-kB. (Page 9943, right column, second full paragraph.)  Staal et al. elucidated that NAC prevents the decrease of intracellular thiol levels.  For example, in their Abstract, Staal et al. disclose that NAC "prevents this thiol decrease [which leads to NF-kB activation] and blocks the activation of NF-kB".  Decreasing thiol levels would have no effect on induced NF-kB activity.  (Second Declaration of Dr. Verma ¶¶ 108)

Similarly, Staal et al., state that their findings demonstrate that NAC blocks or inhibits cytokine-stimulated NF-kB activation.  Staal et al. do not state that their findings show reducing cytokine-stimulated NF-kB activity.

Accordingly, Staal et al. do not anticipate claim 18 or claims 182-185.

b)    *Staal et al. Do Not Enable the Method of Claim 18 or Claims 182-185.*

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate.  A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled"  *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (internal citations omitted).  Courts have refused to find

ARI 84436

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 51 of 92 of October 22, 2007 Response*

anticipation based on prior art that is not enabling. For instance, in *Rockwell Intern. Corp v. U.S.*, the Federal Circuit refused to invalidate patent claims based on prior art which did not "provide sufficient basic chemistry information to enable one skilled in the art to grow *epitaxial* . . . semiconductors" (i.e. practice the claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358, 1364 (Fed. Cir. 1998). Prior art is not enabling if it requires one of skill in the art to undertake "undue experimentation" to "gain possession of the claimed subject matter." *In re Sheppard*, 339 F.2d 238, 242 (C.C.P.A. 1964). Accordingly, if the prior art cannot be reproduced, then the reference is not enabling.

The experiments in Staal et al. cannot be reproduced, and therefore, Staal et al. cannot anticipate the method recited in claims 18 or 182-185. Staal et al. do not describe how to obtain the cells they use. Specifically, the Jurkat tri-kB cells of Staal et al. were not available to, and could not be reproduced by the public, because the source of these cells is a "personal communication." (Second Declaration of Dr. Verma ¶¶ 110-111)

Since Staal et al., does not enable practicing the experiments which the Examiner relies upon as establishing an anticipation of claims 18 and 185-185, the rejection of these claims over Staal et al. should be withdrawn.

   c)   *Staal et al. Do Not Anticipate Reducing Induced NF-kB Activity in Human Cells as Recited in Claim 183.*

The cells Staal et al. used were not only unavailable to the public, they were not human cells. (Second Declaration of Dr. Verma ¶¶ 109-110)

Therefore, to contrary to the Examiner's ground of rejection claim 183 which recites the method performed in human cells, is not

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 52 of 92 of October 22, 2007 Response*

anticipated by Staal et al.

In conclusion, Patentees have provided two reasons, each of which independently is sufficient to warrant withdrawal of the anticipation rejection over Staal et al. as applied to claims 18 and 182-185. Patentees have additionally provided a third reason warranting withdrawal of the anticipation rejection based on Staal et al. as applied to claim 183.

Accordingly, Patentees respectfully submit that claims 18 and 177, 178 and 182-185 dependent thereon should be confirmed patentable.

**ARI 84438**

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 53 of 92 of October 22, 2007 Response*

3) <u>CLAIMS 6, 8 AND 9 AND CLAIMS DEPENDENT THEREON</u>

Each of the following claims has been rejected based on art relating to each of the same six compounds (or classes of compounds):

Claim 6 and claims 64, 65 and 69-73 dependent thereon;
Claim 8 and claims 75, 76, 80, 82 and 84 dependent thereon; and
Claim 9 and claims 88, 89 and 93-97 dependent therein.

Specifically, each of these claims is rejected as follows:

1. <u>Antibiotic Art</u>
The claims are rejected as allegedly inherently anticipated by the 1970 PDR disclosure of the use of three antibiotics (gentamycin, tetracycline, and erythromycin), as explained by purported extrinsic evidence in the *Manolagas Declaration, Galdiero* et al. (Microbiology, *147* (2001): 2697-2704), *Yang* et al. (Nature *395(1998)* 284-288), *Mori* et al. (Eur. J. Haematol. 59 (1997): 162-170), the *Baltimore '516 Patent* and *Yasutomi* et al. *(J.* Immunology 175(2005) 8069-8076), as set forth on pages 105-110 of the July 6, 2007 Final Office Action.

2. <u>CsA Art</u>
The claims are rejected as allegedly: i) anticipated, or alternatively rendered obvious under §103, by *Schmidt* et al., *J. Virology* 64:4037-4041 (August 1990), as set forth on pages 35-42 of the July 6, 2007 Final Office Action;

ii) anticipated, or alternatively rendered obvious under 103, by *Emmel* et al., Science, *246* (Dec. 1989): 1617-20, as set forth on pages 42-47 of the July 6, 2007 Final Office Action;

iii) anticipated, or alternatively, rendered obvious under § 103, by *Brini,* Eur. Cytokine Net. 1: 131 -139 (Sept. 1990), as set forth on pages 47-54 of the July 6, 2007 Final Office Action;

**ARI 84439**

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 54 of 92 of October 22, 2007 Response*

iv) inherently anticipated by the Physician's Desk Reference (PDR: 1985, pages 1811-13), *Griffith I* (Griffith et al., Ann. Surg. <u>196</u> (9/82):324-329), or *Griffith II* (Griffith et al., J. Thorac. Cardiovasc. Surg. <u>99</u> (12/84): 952-957), as evidenced by *Holschermann* et al., Circulation <u>96</u> (12/97) 4232-4238, as set forth on pages 54-66 of the July 6, 2007 Final Office Action;

v) inherently anticipated by *Reed* et al., J. Immunol. *137* (7/86): 150-154, as evidenced by *Brini,* Eur. Cytokine Net. 1:131-139 (Sept. 1990), as set forth on pages 66-74 of the July 6, 2007 Final Office Action; and

vi) inherently anticipated by *Kronke* et al. (PNAS USA 81(8/84) 5214-5218) and/or *Siebenlist* et al. (Mol. Cell. Biol*. 6* (9/86) 3042-3049), as evidenced by *Schmidt* et al., J. Virology 64:4037-4041 (August 1990), *Emmel* et al., Science, *246* (Dec. 1989):1617-20, and the *Dr. Manolagas Declaration*, as set forth on pages 74-78 of the July 6, 2007 Final Office Action.

3. <u>Protein Kinase C Art</u>
The claims are rejected as allegedly: i) anticipated by, or as obvious over, *Meichle* (J. Biol. Chem. 265 (5/90) 8339-43), as set forth on pages 25-31 of the July 6, 2007 Final Office Action, and

ii) anticipated by *Shirakawa* (Mol. And Cell. Biol. 9 (6/89) 2424-30), as set forth on pages 31-34 of the July 6, 2007 Final Office Action.

4. <u>Vitamin D Art</u>
The claims are rejected as inherently anticipated by *Tsoukas* (Science *224* (6/84) 1438-40), *Lemire I* (J. Clin. Invest. 74(8/84) 657-61), *Lemire II* (J. Immunol. 134 (5/85) 3032-5), *Rigby I* (J. Clin. Invest. *74* (10/84) 1451-5), and *Manolagas* et al. (JCE&M, 63 (1986) 394-400), as evidenced by *Yu* et al. (PNAS USA 92 (11/95) 10990-4) and the

ARI 84440

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 55 of 92 of October 22, 2007 Response*

*Declaration of Dr. Manolagas* (paragraphs 7-24), as set forth on pages 78-89 of the July 6, 2007 Final Office Action.


5. 5-ASA Art

The claims are rejected as inherently anticipated by *Dew* (Br. Med. J. *287* (7/83):23-24)), as evidenced by *Baldwin II* (J. Clin. Invest. 107(1991):63-80), *Bantel* et al. (Amer. J. Gastroenterology *287* (2000):3452), *Yan* et al. (J. Biol. Chem. *274* (1999) 366631-36), and the *David Baltimore Declaration* submitted February 2001 in the 08/464,364 application, as set forth on pages 90-94 of the July 6, 2007 Final Office Action.


6. Glucocorticoid Art

The claims are rejected as inherently anticipated by *Goodman and Gilman's* (The Pharmacological Basis of Therapeutics, (Macmillan Publishing Co., Inc. 1980, pages 1466-1496) (newly raised by Examiner), as evidenced by *Baldwin I* (Annu. Rev. Immunol. 14 (1996) 649-81), *Auphan* et al. (Science 270 (1995) 286-290), *Scheinman I* (Mol. Cell. Biol. 15 (2/95) 943-53), *Scheinman I1* (Science 270 (10/95) 283-286), *Mukaida* (J. Biol. Chem. 269 (5/94) 13289-95), and - *Padgett* et al. Trends in Immunology, 24(8) (Aug. 2003) pages 444-448) as set forth on pages 94-105 of the July 6, 2007 Final Office Action.

In addition, each of claims 66-68 (dependent on claim 6), claims 77-79 (dependent on claim 8), and claims 90-92 (dependent of claim 9) have been rejected based on art relating to only CsA and 5-ASA.


Patentees incorporate by reference their comments concerning this art as set forth in their November 6, 2006 response, and the first Declaration of Dr. Inder Verma.


Patentees also direct the Examiner's attention to the Second Declaration of Dr. Inder Verma and specifically to the following

ARI 84441

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 56 of 92 of October 22, 2007 Response*

paragraphs:

1.    Antibiotics ...........¶¶ 113-118 and 121-123

2.    CsA ................¶¶ 11-58

3.    Protein Kinase C .....¶¶ 59-70

4.    Vitamin D/Calcitrol...¶¶ 71-86

5.    5-ASA ...............¶¶ 96-105

6.    Glucocorticoids ......¶¶ 87-95

ARI 84442

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 57 of 92 of October 22, 2007 Response*

Rejections Based on Antibiotic Art

Patentees have provided above four reasons why claim 14 is patentable over the 1970 PDR above. Each of these four separate reasons is also applicable to claims 6, 8 and 9 and claims dependent thereon. Patentees do not repeat the detailed explanations here, but instead summarize the reasons as follow:

a)    *The Methods of Each of Claims 6, 8 and 9 and of Claims Dependent Thereon Do Not Occur In Any Person To Whom Antibiotics Are Administered. At most administering antibiotics prevents induction of the NF-kB intracellular signaling pathway. A method which comprises administering antibiotics is not a method which involves reducing induced NF-kB activity.*

b)    *Performing Any Method Involving Administering An Antibiotic According To the 1970 PDR Only Sometimes Results in Killing Gram-Negative Bacteria. Such Occasional Results Are Not Sufficient To Establish An Element of the Claims Necessarily Or Inevitably Occurred.*

c)    *The Occasional Results Obtainable following the Disclosure of The 1970 PDR Are Not Sufficient to Enable the Methods Disclosed And Therefore Cannot Anticipate Any Of Claim 6, 8 or 9 or Any Claim Dependent Thereon.*

d)    *Administering An Antibiotic As Disclosed In The 1970 PDR Does Not Anticipate Reducing Induced NF-kB Activity by Intervening Within the NF-kB Intracellular Signaling Pathway At A Specified Segment as Required by each of Claims 64, 65, 75, 76, 80, 88, 89 and 93.*

Accordingly, Patentees respectfully request that the Examiner reconsider and withdraw the inherent anticipation rejection based on

ARI 84443

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 58 of 92 of October 22, 2007 Response*

antibiotic art as applied against each of claims 6, 8 and 9 and claims dependent thereon in view of each of the preceding four reasons, and the discussion by Dr. Verma with respect to claims 6, 8 and 9 and claims dependent thereon. (Declaration of Dr. Verma ¶¶ 126-131; and Second Declaration of Dr. Verma ¶¶ 113-123)


<u>Rejections Based on Cyclosporin A Art</u>


Two types of anticipation rejections are set forth in the July 6, 2007 Final Office Action: anticipation based on a purported explicit disclosure and anticipation based on an alleged inherent disclosure. Patentee in their November 9, 2006 response have pointed out the deficiencies in the extrinsic evidence relied upon as establishing an inherent anticipation. In the sections that follow, Patentees provide additional reasons, each of which alone is sufficient to warrant withdrawal of all rejections based on CsA Art. See the Second Declaration of Dr. Inder Verma ¶¶ 11-58 for detailed comments on the July 6, 2007 Final Office Action.


a)    *The Use of Cyclosporin A in The Cited Art Does Not Involve Reducing Induced NF-kB Activity As Required By The Methods of Each of Claims 6, 8 and 9 and Claims Dependent Thereon.*


Using CsA does not, and cannot, involve reducing induced NF-kB activity. CsA is not shown as reducing induced NF-kB activity in any of the cited references. At most certain of the cited references may be interpreted to suggest that use of CsA prevents induction of the NF-kB intracellular pathway. Importantly, a number of examples in the cited references clearly indicate that using CsA does not involve reducing induced NF-kB activity. For example, Schmidt et al. state, "direct addition of CsA to a prepared nuclear extract from activated cells <u>had no effect</u> on the factor binding, including binding of kB-binding factors (data not shown), <u>which suggests that inhibition</u>

ARI 84444

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 59 of 92 of October 22, 2007 Response*

occurs during the activation phase of NFAT-1 or the kB complex"
(emphasis added, page 4038, second column, second paragraph).
Further, Kronke et al., also of record, teach "when added 4 hr after
induction, CsA did not alter TCGF mRNA levels" (emphasis added, page
5216, 2nd column, second paragraph). Finally, although induction of
TCGF, also known as interleukin-2 (IL-2), is thought to be regulated
by NF-kB, Reed et al., also of record, point out that "previous
studies by us and by others have demonstrated that CsA (1 to 5ug/ml)
does not interfere directly with IL 2 receptor function in that CsA
fails to suppress IL 2-induced proliferation in long-term cultures
of activated T cells" (emphasis added, page 153, 2nd column, first
paragraph). Consequently, these results confirm that while
contacting a cell with, or administering CsA to, a person, may
possibly prevent induction of NF-kB activity by an external inducing
stimulus, such use or administration of CsA does not, and cannot,
involve reducing induced NF-kB activity. (Declaration of Dr. Verma
¶¶ 23, 25, 37-38, 46, 55-56, 62-63, 66; and Second Declaration of Dr.
Verma ¶¶ 12)

Because claims 6, 8 and 9 and claims dependent thereon require
reducing induced NF-kB activity, the prior art disclosures of using
or administering CsA are not and cannot be, a method for practicing
the claimed methods.

For this reason alone the anticipation and obvious rejections of each
of claims 6, 8 and 9 and of each of the claims dependent thereon
based on the CsA Art should be withdrawn.

> b)    *The Cyclosporin A Art Does Not Disclose The Method of Any*
>       *of Claim 6, 8 or 9 or of Any Claim Dependent Thereon.*

The cited CsA references disclose experiments which may be
interpreted as showing that use of CsA prevents induction of the
intracellular signaling pathway NF-kB. Claims 6, 8 and 9, however,

ARI 84445

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 60 of 92 of October 22, 2007 Response*

are directed to reducing induced NF-kB activity. The experiments in the CsA references that purport to show a change in NF-kB activity all involve either pretreatment with CsA or simultaneous contact by, or administration of, CsA and a positive inducer of the NF-kB intracellular signaling pathway. None of these experiments involve first inducing NF-kB and then treating with CsA as reducing induced NF-kB activity. Therefore, such experiments do not anticipate the claims at issue, each of which requires claims reducing induced NF-kB activity. (Declaration of Dr. Verma ¶¶ 25, 37-38, 45-46, 54-55, 62-63, 66; and Second Declaration of Dr. Verma ¶¶ 11-17, 22-28, 30-35, 37-50, 58)

For this reason alone the rejections of each of claim 6, 8 and 9, and of claims dependent thereon as being anticipated by or obvious over the cited CsA Art, should be withdrawn.

    c)    *The Cited Cyclosporin A Art Is Not Enabling And Therefore Cannot Anticipate the Method of Any of Claim 6, 8 or 9 or of Any Claim Dependent Thereon.*

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate. A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled" *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (internal citations omitted). Courts have refused to find anticipation based on prior art that is not enabling. For instance, in *Rockwell Intern. Corp v. U.S.*, the Federal Circuit refused to invalidate patent claims based on prior art which did not "provide sufficient basic chemistry information to enable one skilled in the art to grow epitaxial . . . semiconductors" (i.e. practice the claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358, 1364 (Fed. Cir. 1998). Prior art is not enabling if it requires one of skill in the art to undertake "undue experimentation" to "gain

ARI 84446

possession of the claimed subject matter." *In re Sheppard*, 339 F.2d 238, 242 (C.C.P.A. 1964). Accordingly, if the prior art cannot be reproduced, then the reference is not enabling.

The experiments in the cited CsA references cannot be reproduced and therefore are not enabling. See the discussion of each reference in the Second Declaration of Dr. Verma ¶¶ 11-58.

For this reason alone, the rejections of each claim 6, 8 and 9 and of each claim dependent thereon based on the cited CsA Art, should be withdrawn.

*d) The Cited Cyclosporin Art Does Not Anticipate Reducing Induced NF-kB Activity by Intervening at a Specified Segment Within the NF-kB Intracellular Signaling Pathway as Recited in Each of Claims 64-69, 75-80 and 88-93.*

Each of claims 64-69, 75-80 and 88-93 further limit the respective independent claim from which they depend by reciting that the reducing of induced NF-kB activity occurs by intervening at a specific segment within the NF-kB intracellular signaling pathway. The CsA references cited in the July 6, 2007 Final Office Action report results observed at a specific segment within the NF-kB pathway when induction of the pathway is inhibited, but offer no evidence that use of CsA involves intervening at the specific segment within the NF-kB pathway as recited in each of claims 64-69, 75-80 and 88-93. (Declaration of Dr. Verma ¶¶ 56; and Second Declaration of Dr. Verma ¶¶ 11, 17, 22, 28, 30, 35, 41, 45, 49, 58)

Therefore, none of claims 64-69, 75-80 or 88-93 should be rejected as inherently anticipated by the CsA Art.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 62 of 92 of October 22, 2007 Response*

In conclusion, Patentees have provided clear reasons, each of which independently is sufficient to warrant withdrawal of the anticipation, and if applicable obvious, rejections of claims 6, 8 and 9 and of claims dependent thereon based on the disclosures of the CsA Art. Patentees have also provided a reason sufficient to warrant withdrawal of the rejection of each of dependent claims 64-69, 75-80 and 88-93. Accordingly, Patentees respectfully request all rejections based on CsA Art be reconsidered and withdrawn as currently applied to each of claims 6, 8, 9, 64-69, 75-80 and 88-93.

ARI 84448

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 63 of 92 of October 22, 2007 Response*

<u>Rejections Based on Protein Kinase C Inhibitor Art</u>

For detailed comments concerning the rejections on the basis of
Protein Kinase C Inhibitors in the July 6, 2007 Final Office Action
see ¶¶ 59-70 of the Second Declaration of Dr. Inder Verma.  A summary
of the reasons why the rejections of claims 6, 8, 9 and claims
dependent thereon on the basis of the Protein Kinase C Inhibitor Art
should be withdrawn follows.

> a)    *The Use of a Protein Kinase C Inhibitor in The Cited Art*
>        *Does Not Involve Reducing Induced NF-kB Activity As*
>        *Required By The Methods of Claims 6, 8 and 9 and Claims*
>        *Dependent Thereon.*

A method which involves contacting a cell with, or administering to
a person, a protein kinase C inhibitor ("pKCi") does not, and cannot,
involve reducing induced NF-kB activity as recited in the rejected
claims.  Methods involving use of PKC inhibitor are not shown to
involve reducing induced NF-kB activity in the cited references.  At
most the cited references can be interpreted to disclose that pKC
inhibitors prevent or inhibit induction of the NF-kB intracellular
signaling pathway, and thereby prevent or inhibit the manifestation
of NF-kB activity.

Meichle et al. state "PK-C has not only been implicated in mediating
TNF activation of the transcription factor AP-1 [], but is also
likely to be involved in the <u>activation</u> of the IkB:NF-kB complex"
(page 8339, second column).  Likewise, Shirakawa et al. disclose "PKA
and PKC can <u>activate</u> NF-kB" and they hypothesize "that IkB is the
target of phosphorylation; the phosphorylated IkB would presumably
have a decreased ability to bind NF-kB." (page 2428, second column).
   Therefore, to the extent an inhibitor of protein kinase may have
any effect on the NF-kB intracellular signaling pathway and thereby
on NF-kB activity, (and it is unclear that it does have any such

ARI 84449

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 64 of 92 of October 22, 2007 Response*

effect), the only possible effect such an inhibitor could have would be to prevent or inhibit activation of NF-kB. Use of an inhibitor of protein kinase C cannot have any effect on induced NF-kB activity, and certainly cannot involve reducing induced NF-kB activity. (Second Declaration of Dr. Verma ¶¶ 59-68)

Because each of claim 6, 8, 9 and claims dependent thereon are directed to reducing induced NF-kB activity, the use of a protein kinase C inhibitor as disclosed in the cited art does not, and cannot, involve practicing the claimed methods.

For this reason alone, the anticipation rejections of claims 6, 8 and 9 and of claims dependent thereon based on the protein kinase C inhibitor Art should be withdrawn.

> b)    *The Cited Protein Kinase C Inhibitor Art Does Not Disclose the Method of Any of Claim 6, 8, 9 or any Claim Dependent Thereon.*

The two cited protein kinase C inhibitor references, Meichle et al. and Shirakawa et al., disclose experiments which may be interpreted as showing that a protein kinase C inhibitor prevents induction of the NF-kB intracellular signaling pathway and thereby effects the appearance of NF-kB activity. However, each of claims 6, 8 and 9, recite <u>reducing induced NF-kB activity</u>. Thus, the experiments in the cited references that purport to show a change in NF-kB activity involve either pretreating cells with a pKCi or administering the pkci simultaneously with a purported inducer of NF-kB. Performing such experiments does not anticipate the rejected claims that recite reducing induced NF-kB activity. (Declaration of Dr. Verma ¶¶ 148-149, 153-154; and Second Declaration of Dr. Verma ¶¶ 59-66)

For this reason alone, the anticipation rejections of each of claim 6, 8, 9, and claims dependent thereon based on Meichle et al. and

ARI 84450

Shirakawa et al., should be withdrawn.

c) *The Cited Protein kinase C Inhibitor Art Does Not Enable the Performance of a Method of Any of Claims 6, 8 or 9 or of Any Claim Dependent Thereon.*

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate. A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled" *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (internal citations omitted). Courts have refused to find anticipation based on prior art that is not enabling. For instance, in *Rockwell Intern. Corp v. U.S.*, the Federal Circuit refused to invalidate patent claims based on prior art which did not "provide sufficient basic chemistry information to enable one skilled in the art to grow epitaxial . . . semiconductors" (i.e. practice the claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358, 1364 (Fed. Cir. 1998). Prior art is not enabling if it requires one of skill in the art to undertake "undue experimentation" to "gain possession of the claimed subject matter." *In re Sheppard*, 339 F.2d 238, 242 (C.C.P.A. 1964). Accordingly, if the disclosures prior art reference cannot be reproduced, then that reference is not enabling.

The disclosures of protein kinase C inhibitor cited in the July 6, 2007 Final Office Action cannot be reproduced. See the specific discussion as to each reference in the Second Declaration of Dr. Verma ¶¶ 70.

For this reason alone the anticipation rejections of claims 6, 8, 9 and claims dependent thereon based on the Protein kinase C Inhibitor Art, should be withdrawn.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 66 of 92 of October 22, 2007 Response*

> d)    *The Cited Protein Kinase C Inhibitor Art Does Not Disclose a Method Which Anticipates Reducing Induced NF-kB Activity by Intervening within the NF-kB Intracellular Signaling Pathway At A Specified Segment as Recited in Claims 64, 65, 69, 75, 76, 80, 88, 89 and 93.*

Each of dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 further limit the independent claim by requiring that the reducing of induced NF-kB activity involve intervening at a specific segment of the NF-kB intracellular signaling pathway inside a cell. The pKCi references cited in the July 6, 2007 Final Office Action report results observed at a specific segment of the NF-kB intracellular signaling pathway, but provide no evidence that any pKCi is reducing induced NF-kB activity by intervening at such specific segment as required by each of claims 64, 65, 69, 75, 76, 80, 88, 89 and 93. (Declaration of Dr. Verma ¶¶ 148-155; and Second Declaration of Dr. Verma ¶¶ 67-69)

Therefore, none of claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 is inherently anticipated by any method involving the use of any pKCi disclosed in Meichle et al. or Shirakawa et al.

In conclusion, Patentees have provided reasons, each of which independently is sufficient to warrant withdrawal of the anticipation rejections of claims 6, 8 and 9 and of claims dependent thereon based on Meichle et al. or Shirakawa et al. Patentees have provided an additional reason warranting withdrawal of the rejection as applied to dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93. Accordingly, Patentees respectfully request all rejections based on Meichle et al. or Shirakawa et al. as applied to claims 6, 8, 9, 64, 65, 69, 75, 76, 80, 88, 89 and 93 be withdrawn.

## Rejections Based on Vitamin D Art

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 67 of 92 of October 22, 2007 Response*

For detailed comments concerning the rejection on the basis of the basis of Vitamin D in the July 6, 2007 Office Action, see ¶¶ 71-86 of the Second Declaration of Dr. Inder Verma. A summary of the reasons why the rejections of claims 6, 8, 9 and claims dependent thereon the basis of the Vitamin D Art should be withdrawn follows.

> a)    *The Cited Vitamin D Art Does Not Disclose A Method of Using Vitamin D Which Anticipates Any Method Recited In Any of Claim 6, 8, or 9 and in any Claims Dependent Thereon.*

Of the prior art vitamin D references cited in the July 6, 2007 Final Office Action, each reference other than Rigby I discussed below clearly does not disclose a method, the practice of which would anticipate any of claim 6, 8 or 9. These claims require reducing induced NF-kB activity, and the cited references do not disclose a method which does so. Each specific reference is explained and inaccurate characterizations in the July 6, 2007 Final Office Action are noted by Dr. Verma. (See Second Declaration of Dr. Verma ¶¶ 71-86) The cited vitamin D references, therefore, do not anticipate the method of any of claim 6, 8 or 9.

One reference Rigby I purports to show an experiment where vitamin D was administered to PBM cells stimulated with PHA. Rigby I et al. disclose calcitriol-mediated reduction in cellular proliferation and, in Figure 4, a reduction in the level of IL-2 production mediated by calcitriol over the course of 18 hours. A noticeable reduction in IL-2 production is observed at 12 hours post-calcitriol treatment and, at 18 hours, no IL-2 is observed (Figure 4). The production of IL-2 is thought to be regulated, at least in part, by NF-kB. As explained below and in the Second Declaration of Dr. Verma, the results in Figure 4 cannot be a consequence of reducing induced NF-kB activity.

ARI 84453

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 68 of 92 of October 22, 2007 Response*

Schmidt et al. and Emmel et al., both of which are of record, have demonstrated that factors, other than NF-kB, can have a role in regulating IL-2 production. Schmidt et al. point out that the "NFAT-1-binding site ... has been implicated directly in playing a major role during transcriptional <u>activation of IL-2</u>" (emphasis added, page 4037, first column). Likewise, Emmel et al. state "NF-AT, AP-3 and to a lesser extent NF-kB ... appear to be important in the transcriptional activation of genes for interleukin-2.." (page 1617, abstract). Additionally, cellular proliferation, the result observed in Rigby I, is a process regulated by many factors, and therefore not necessarily regulated by NF-kB. Thus, cellular proliferation and IL-2 production are not necessarily or inevitably indicative of changes in NF-kB activity.  Moreover and importantly, the cellular proliferation and IL-2 production results reported in *Rigby I* are <u>not</u> attributable to reducing induced NF-kB activity as explained by Yu et al., Takeuchi et al. and Alroy et al.  (Second Declaration of Dr. Verma ¶¶ 77)


Yu et al. evaluated the effects of calcitriol on IL-2 production and cellular proliferation noting that:

> NF-kB enhances the expression of IL-2 and the IL-2 receptor, two molecules critical for lymphocyte proliferation.  On the other hand, $1,25(OH)_2D_3$ inhibits IL-2 production and lymphocyte proliferation, raising the possibility that the antiproliferative effects of $1,25(OH)_2D_3$ could have been mediated via inhibition of NF-kB.  However, the time courses of the effects of $1,25(OH)_2D_3$ on NF-kB expression and lymphocyte proliferation were different.  Specifically, whereas $1,25(OH)_2D_3$ could inhibit cell proliferation only when it was added in the first 24 hr following activation <u>1,25(OH)_2D_3 decreased p50 and 105 levels when added to the culture as late as 64 hr following addition of the activating agent.    This suggests that the antiproliferative effect of $1,25(OH)_2D_3$ is not the result of it effects on NF-kB</u>" (page 10994, first column).

Yu et al. demonstrated that the addition of calictriol 48 hours after activation with PHA inhibits the transcription of the <u>NF-kB subunits p50 and p105</u> as disclosed in Figure 1.  On page 10992, Yu et al.

ARI 84454

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 69 of 92 of October 22, 2007 Response*

teach that "PBMCs were activated for 72 hr with PHA, and $1,25(OH)_2D_3$ was added either simultaneously with addition of PHA or 24, 48, 64, 68, or 70 hr following addition of PHA (Fig. 3). <u>The inhibiting effect of $1,25(OH)_2D_3$ on p50 and p105 was apparent when the hormone was added simultaneously with PHA or 24, 48, or 64 hr following addition of PHA</u>." Therefore, Yu et al., demonstrate that whatever effect $1,25(OH)_2D_3$ has on IL-2 production, that effect is <u>different</u> from and not attributable to reducing induced NF-kB.

The time course of the effects of $1,25(OH)_2D_3$ observed by Yu et al. is notably different from the time course observed by Rigby et al. I.   Rigby I demonstrated in Figure 4, that the effects on IL-2 production of calcitriol on PHA-stimulated PBMs occurred <u>within</u> 18 hours, and after 18 hours no IL-2 production remained to inhibit. According to Yu et al., however, the only effect of $1,25(OH)_2D_3$, ie. its effect on transcription of p50 and p105 is only detected <u>after</u> 24 hours.

The effect of calictriol on cell proliferation and IL-2 production in Rigby et al. I occurs too rapidly to be attributed to the effect of $1,25(OH)_2D_3$ on the transcription of the NF-kB subunits p50 and p105. As described in the '516 patent, column 16, lines 22-28, "NF-kB is initially located in the cytoplasm in a form unable to bind DNA because it is complexed with IkB. Various inducers then cause an alteration in IkB allowing NF-kB to be released from the complex. Free NF-kB then travels to the nucleus and interacts with its DNA recognition sites to facilitate gene transcription."   Thus, transcription of p50 and p105 genes is not needed for induction of NF-kB activity.

Takeuchi et al. and Alroy et al. both demonstrate that IL-2 production can be activated by any one of four factors: NF-kB, NFAT, AP-1 and OCT-3 (see Takuechi et al. at page 209). Based on Yu et al.'s teaching that the only effect of $1,25(OH)_2D_3$ relative to NF-kB

ARI 84455

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 70 of 92 of October 22, 2007 Response*

is its inhibition of transcription of p105 and p50, it is evident
that the results observed in Rigby et al. I in terms of cellular
proliferation and IL-2 production <u>did not</u>, and <u>could not</u> have
involved reducing induced NF-kB activity.   Therefore, the results
observed in *Rigby* I must have been due to a factor other than NF-kB
resulting in the reduced transcription of IL-2.

Furthermore, suppression production of p50 and p105 would not lead
to reducing induced NF-kB activity.   The only effect of vitamin D
relative to NF-kB shown of record is suppression of the production
of p50 and p105.   However, suppression of the production of p50 and
p105 would not lead to reducing induced NF-kB activity because
p65/RelA alone is sufficient to promote transcription of IL-2. See
e.g. Nishiyama et al., page 704, Figure 4, discussed by Dr. Verma.
(Second Declaration of Dr. Verma ¶¶ 78-82)

For this reason alone the anticipation rejections of each of claim
6, 8 and 9, and of each claim dependent thereon based on the Vitamin
D Art, should be withdrawn.

  b)    *The Cited Vitamin D Art Does Not Enable The Performance of
         Any Method Which Anticipates a Method of Any of Claim 6,
         8 or 9 or Any Claim Dependent Thereon.*

"To serve as an anticipating reference, the reference must enable
that which it is asserted to anticipate.   A claimed invention cannot
be anticipated by a prior art reference if the allegedly anticipatory
disclosures cited as prior art are not enabled" *Elan
Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed.
Cir. 2003) (internal citations omitted).   Courts have refused to find
anticipation based on prior art that is not enabling.   For instance,
in *Rockwell Intern. Corp v. U.S.*, the Federal Circuit refused to
invalidate patent claims based on prior art which did not "provide

sufficient basic chemistry information to enable one skilled in the art to grow epitaxial . . . semiconductors" (i.e. practice the claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358, 1364 (Fed. Cir. 1998). Prior art is not enabling if it requires one of skill in the art to undertake "undue experimentation" to "gain possession of the claimed subject matter." *In re Sheppard*, 339 F.2d 238, 242 (C.C.P.A. 1964). Accordingly, if the prior art cannot be reproduced, then the reference is not enabling.

The cited Vitamin D art cannot be reproduced and is not enabling. See the discussion in the Second Declaration of Dr. Verma ¶¶ 84-86.

For this reason alone the anticipation rejections of each of claim 6, 8 and 9 and of each claim dependent thereon based on the vitamin D art, should be withdrawn.

*c) The Cited Vitamin D Art Does Not Anticipate Reducing Induced NF-kB Activity by Intervening at a Specific Segment Within the NF-kB Intracellular Signaling Pathway as Recited in Each of Claims 64, 65, 69, 75, 76, 80, 88, 89 and 93.*

Each of dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 further limit the independent claim from which it depends by reciting that the reducing of induced NF-kB activity occurs by intervening at a specific segment within the NF-kB intracellular signaling pathway inside a cell. Vitamin D has no effect on reducing induced NF-kB activity. Moreover, any effect it may have on NF-kB does not involve reducing induced NF-kB activity by intervening at the specific segment within the NF-kB intracellular signaling pathway recited in any of claim 64, 65, 69, 75, 76, 80, 88, 89 and 93. (See also Declaration of Dr. Verma ¶¶ 108; and Second Declaration of Dr. Verma ¶¶ 76)

Patentees: *David Baltimore et al.*
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 72 of 92 of October 22, 2007 Response*

Therefore, none of claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 should be rejected as inherently anticipated by any use of vitamin D disclosed in any of the cited Vitamin D Art.

In conclusion, Patentees have provided reasons, each of which independently warrants withdrawal of the anticipation rejection of each of claims 6, 8 and 9 and of claims dependent thereon based on the Vitamin D art. Patentees have also provided an additional reason warranting withdrawal of the rejection of dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93.

Accordingly, Patentees respectfully request all rejection based on the cited Vitamin D art be withdrawn with respect to each of claims 6, 8, 9, 64, 65, 69, 75, 76, 80, 88, 89 and 93.

ARI 84458

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 73 of 92 of October 22, 2007 Response*

<u>Rejection Based on 5-ASA Art</u>

For detailed comments concerning the rejection on the basis of 5-ASA
in the July 6, 2007 Final Office Action see ¶¶ 96-105 of the Second
Declaration of Dr. Inder Verma.  A summary of the reasons why the
rejection of claims 6, 8, 9 and claims dependent thereon on the basis
of the cited 5-ASA Art should be withdrawn follows.

> *a)    The Use of 5-ASA in Dew et al., Does Not Involve Reducing
>        Induced NF-kB Activity As Required By The Methods of
>        Claims 6, 8 and 9 and Claims Dependent Thereon.*

The sole 5-ASA art reference cited, Dew et al., does not anticipate
claims 6, 8 and 9 and claims dependent thereon.  Dew et al. disclose
administration of 5-ASA to prevent reocurrence of ulcerative colitis
in patients who "all were <u>in remission with ulcerative colitis</u> or
proctitis and had passed three or less stools daily without blood or
slime during the previous month" (emphasis added, page 23 of Dew et
al).  Even if ulcerative colitis were associated with induced NF-kB
activity, and there is no evidence that it is, the patients in Dew
et al. were asymptomatic with respect to ulcerative colitis and
therefore could not have been exhibiting induced NF-kB activity.
Each of claims 6, 8 and 9 require reducing induced NF-kB activity.
Therefore, Dew et al. does not disclose a method of reducing induced
NF-kB.  (Declaration of Dr. Verma ¶¶ 156-158; and Second Declaration
of Dr. Verma ¶¶ 95-103)

In the July 6, 2007 Final Office Action, the Examiner alleged that
Yamamoto et al. teach patients in remission still have elevated
cytokine levels, indicating NF-kB is active.  This assertion is
misleading because Yamamoto et al. evaluated patients "who had been
diagnosed with endoscopically and histologically confirmed UC" (page
590, first column).  Thus, the disclosure of Yamamoto et al. does not
involve asymptomatic patients, such those in Dew et al.  When
cytokine levels in patients with inactive disease are analyzed, the

ARI 84459

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 74 of 92 of October 22, 2007 Response*

levels are similar to healthy volunteers.  See the discussion by Dr.
Verma of Braegger et al. and Mitsuyama et al., each of whom analyzed
patients with inactive disease, i.e. patients in "remission", and
showed that such patients in remission have cytokine levels similar
to the cytokine levels of the healthy control patients.
Specifically, Braegger et al. state "in patients with inactive
disease, either as a result of surgery or treatment with steroids,
the concentration of stool TNF alpha fell to those of control"
(abstract).  Likewise, Figure 1 of Mitsuyama et al. demonstrates that
the colonic levels of IL-8 in patients with inactive ulcerative
colitis are no different from those observed in control patients.
The Examiner has acknowledged on page 92 of the Final Office Action,
that TNF and IL-8 are regulated by NF-kB.  Since the asymptomatic
patients in Dew et al. would not have had elevated cytokine levels,
these patients would not have had induced NF-kB activity.  (Second
Declaration of Dr. Verma ¶¶ 101-102)

Moreover, the presence of proinflammatory cytokines and colonic
inflammation have been shown to occur in NF-kB deficient mice.
(Second Declaration of Dr. Verma ¶¶ 105)  Thus, regardless of what
"remission" means in Dew et al., there is no evidence in the record
showing that NF-kB is necessarily induced in patients with ulcerative
colitis, and certainly nothing showing that NF-kB was necessarily
induced in the patients of Dew et al.

An inherent anticipation rejection requires that the evidence "make
clear that the missing descriptive matter is necessarily present in
the thing described in the reference."  *Continental Can Co. v.
Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).  Dew et al. do
not describe induced NF-kB activity as recited by the claims.
Yamamoto et al. do not make clear that the patients of Dew et al. had
induced NF-kB activity.

Even if there was a possibility that the patients of Dew et al. had

ARI 84460

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 75 of 92 of October 22, 2007 Response*

induced NF-kB activity, such a possibility cannot support an inherent anticipation rejection. "Inherency may not be established by probabilities or possibilities" but rather "must be necessarily present" in a single prior art reference. *Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002)(internal quotations omitted). By referring to Yamamoto et al., the July 6, 2007 Final Office Action merely raises the possibility that a patient in Dew et al. had induced NF-kB activity. That possibility, however, is both clearly rebutted by others as discussed by Dr. Verma and insufficient as a matter of law to support a rejection on the basis of inherent anticipation. Accordingly, an inherent anticipation rejection based on Dew et al. is not proper.

Finally, although Patentees have explained in their November 9, 2006 response the deficiencies of the purported extrinsic evidence being relied upon to explain Dew et al., the Examiner alleged that the difference between the formulations of 5-ASA used by Dew et al. and by the extrinsic evidence is of no consequence. The Examiner is mistaken. (Second Declaration of Dr. Verma ¶¶ 104) Differences in formulation do matter and the use of different formulations in the non-prior art references relied upon to justify the inherency rejection establishes both that the non-prior art references are not being used to "explain" the prior art, and more importantly that these references do not show that the use of different formulations in Dew et al. inherently anticipates the claimed methods.

For this reason alone the anticipation rejections of each of claims 6, 8 and 9, and of claims dependent thereon based on Dew et al., should be withdrawn.

> b)   *Dew et al. Do Not Enable the Performance of a Method of Any of Claims 6, 8 or 9 or Any Claim Dependent Thereon.*

"To serve as an anticipating reference, the reference must enable that which it is asserted to anticipate. A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled" *Elan Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (internal citations omitted). Courts have refused to find anticipation based on prior art that is not enabling. For instance, in *Rockwell Intern. Corp v. U.S.*, the Federal Circuit refused to invalidate patent claims based on prior art which did not "provide sufficient basic chemistry information to enable one skilled in the art to grow epitaxial . . . semiconductors" (i.e. practice the claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358, 1364 (Fed. Cir. 1998). Prior art is not enabling if it requires one of skill in the art to undertake "undue experimentation" to "gain possession of the claimed subject matter." *In re Sheppard*, 339 F.2d 238, 242 (C.C.P.A. 1964). Accordingly, if the prior art cannot be reproduced, then the reference is not enabling.

The disclosure of Dew et al. cannot be reproduced and is not enabling for the method disclosed. See the discussion in the Second Declaration of Dr. Verma ¶¶ 104.

For this reason alone the anticipation rejections of each of claims 6, 8 and 9 and of each claim dependent thereon based on Dew et al., should be withdrawn.

*c) Dew et al. Do Not Disclose A Method Which Anticipates Reducing Induced NF-kB Activity by Intervening Within the NF-kB Intracellular Signaling Pathway at a Specified Segment as Recited in Claims 64-69, 75-80 and 88-93.*

Each of dependent claims 64-69, 75-80 and 88-93 further limits the independent claim from which it depends by requiring that the

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 77 of 92 of October 22, 2007 Response*

reducing of induced NF-kB activity involve intervening at a specific segment of the NF-kB intracellular signaling pathway inside a cell. Dew et al., at most report results observed at a specific segment, but provide no evidence that 5-ASA actually is reducing induced NF-kB activity by intervening at such specific segment as required by each of claims 64-69, 75-80 and 88-93. (Declaration of Dr. Verma ¶¶ 156-159; and Second Declaration of Dr. Verma ¶¶ 103)

Therefore, none of claims 64-69, 75-80 and 88-93 is inherently anticipated by any method disclosed in Dew et al.

In conclusion, Patentees have provided reasons, each of which independently is sufficient to warrant withdrawal of the anticipation rejections of claims 6, 8 and 9 and of claims dependent thereon based on Dew et al. Patentees have also provided an additional reason warranting withdrawal of the rejection as applied to dependent claims 64-69, 75-80 and 88-93. Accordingly, Patentees respectfully request all rejections based on Dew et al. As applied to claims 6, 8, 9, 64-69, 75-80 and 88-93 be withdrawn.

ARI 84463

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 78 of 92 of October 22, 2007 Response*

<u>Rejection Based on the Endogenous Glucocorticoid Art</u>

For detailed comments concerning the rejections on the basis of the Glucocorticoid Art in the July 6, 2007 Final Office Action see ¶¶ 87-95 of the Second Declaration of Dr. Inder Verma. A summary of the reasons why the rejection of claims 6, 8, 9 and claims dependent thereon on the basis of the Glucocorticoid Art should be withdrawn follows.

> a)    *The Use of Endogenous Glucocorticoids Disclosed in Goodman and Gilman Does Not Involve Reducing Induced NF-kB Activity as Required by The Methods of Claims 6, 8 and 9 and Claims Dependent Thereon.*

The sole Glucocorticoid reference cited, Goodman and Gilman, does not anticipate any of claims 6, 8, 9 or claims dependent thereon. Goodman and Gilman describe the production of endogenous glucocorticoids by the body in response to "agonal state, severe infections, surgery, parturition, cold, exercise and emotional stress" (Goodman and Gilman's page 1469, second column). As an initial threshold matter there is no evidence of record that any of these conditions referred to involves induced NF-kB activity. Each of claims 6, 8 and 9 as well as each claim dependent thereon is directed to reducing induced NF-kB activity. Because there is not showing that Goodman and Gilman disclose induced NF-kB activity, the claimed method cannot be anticipated. (Declaration of Dr. Verma ¶¶ 102-104; and Second Declaration of Dr. Verma ¶¶ 87-95)

Moreover, even if one or more of the conditions listed in Goodman and Gilman involved the presence of proinflammatory cytokines, this fact would not establish that there was induced NF-kB activity. Proinflammatory cytokines and inflammation has been shown to occur without NF-kB activity. (Second Declaration of Dr. Verma ¶¶ 95)

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 79 of 92 of October 22, 2007 Response*

An inherent anticipation rejection requires that the extrinsic evidence "make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). Goodman and Gilman do not describe induced NF-kB activity as recited by the claims, and the purported extrinsic evidence does not make <u>clear</u> that Goodman and Gilman had induced NF-kB activity. (Declaration of Dr. Verma ¶¶ 102-104; and Second Declaration of Dr. Verma ¶¶ 87-95)

For this reason alone the anticipation rejections of each of claims 6, 8 and 9, and of claims dependent thereon based on Goodman and Gilman, should be withdrawn.

   b)   *Any Method Disclosed in Goodman and Gilman, Would At Most Only Involve Reducing Induced NF-kB Activity Sometimes. Any Such Occasional Result Is Not Sufficient To Establish An Element of the Claimed Methods Necessarily Or Inevitably Occurs.*

Nothing of record establishes that the use of glucocorticoids necessarily or inevitably involves reducing induced NF-kB activity. Therefore, even if following the disclosure of Goodman and Gilman could, under some undefined circumstance, involve reducing induced NF-kB activity, (and there is no teaching in Goodman and Gilman of such a circumstance,) any such reducing would have only occurred occasionally. (Declaration of Dr. Verma ¶¶ 102-106; and Second Declaration of Dr. Verma ¶¶ 87, 94-95)

An inherent anticipation rejection requires that the extrinsic evidence "make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). "Inherency may not be established by probabilities or

ARI 84465

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 80 of 92 of October 22, 2007 Response*

possibilities" but rather "must be necessarily present" in the single prior art reference. *Crown Operations Int'l., Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002)(internal quotations omitted).

Thus, even if following the disclosure of Goodman and Gilman could occasionally involve reducing induced NF-kB activity this is insufficient to establish inherent anticipation. Critical information is missing from Goodman and Gilman including the type of cell, the type of inducer, and the conditions for administering a glucocorticoid to possibly effect reducing induced NF-kB activity. Without such critical information in Goodman and Gilman, the most the cited non prior art reference could ever show is that there was a possibility of reducing induced NF-kB activity by following the teaching of Goodman and Gilman (Declaration of Dr. Verma ¶¶ 103-105; and Second Declaration of Dr. Verma ¶¶ 87-93)

However, a showing of mere "probabilities or possibilities" is insufficient to support a finding of inherent anticipation. *See In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999)(finding that a system claim was not anticipated by prior art that could be used to perform the same result with a slightly different structure). Where practice of the prior art only sometimes involves all of the elements of a claim the art was held to <u>not</u> inherently anticipate because "occasional results are not inherent." *See Mehl/Biophile Int'l. Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999)(holding that prior art did not anticipate a claim requiring a substantially vertical orientation even though practicing the prior art would sometimes result in such an orientation). See, also, *Glaxo, Inc. v. Novopharm, Ltd.*, 52 F.3d 1043 (Fed. Cir. 1995) (affirming a district court holding that practice of a prior art method sometimes yielding crystals one of two polymorphs but other times yielding the other did not inherently anticipate a claim to only one of the polymorphs.)

In the present case, even accepting the Examiner's rationale advanced

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 81 of 92 of October 22, 2007 Response*

in the July 6, 2007 Final Office Action, the use of glucocorticoids
as taught by Goodman and Gilman would at most only *sometimes* have
involved reducing induced NF-kB activity.  Such an occasional result
is insufficient to establish inherent anticipation under controlling
Federal Circuit precedent.

For this reason alone the inherent anticipation rejection of each of
claim 6, 8, 9 and each claims dependent thereon based on the Goodman
and Gilman should be withdrawn.

> c)  *Any  Occasional  Results  Obtainable  By  Following  The*
> *Disclosure  of  Goodman  and  Gilman  Is  Not  Sufficient  to*
> *Enable  the  Method  of  Any  of  Claims  6,  8  or  9  or  Any  Claim*
> *Dependent  Thereon.*

Any occasional result that might have occurred upon practicing any
method disclosed by Goodman and Gilman would be insufficient to
enable the method of any of claims 6, 8, 9 or any claim dependent
thereon, and therefore, Goodman and Gilman cannot anticipate any of
these claims.

"To serve as an anticipating reference, the reference must enable
that which it is asserted to anticipate.  A claimed invention cannot
be anticipated by a prior art reference if the allegedly anticipatory
disclosures  cited  as  prior  art  are  not  enabled"    *Elan*
*Pharmaceuticals, Inc. v. Mayo Foundation*, 346 F.3d 1051, 1054 (Fed.
Cir. 2003) (internal citations omitted).  Courts have refused to find
anticipation based on prior art that is not enabling.  For instance,
in *Rockwell Intern. Corp v.U.S.*, the Federal Circuit refused to
invalidate patent claims based on prior art which did not "provide
sufficient basic chemistry information to enable one skilled in the
art to grow epitaxial . . . semiconductors" (i.e. practice the
claimed process). *See Rockwell Intern. Corp v. U.S.*, 147 F.3d 1358,

ARI 84467

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 82 of 92 of October 22, 2007 Response*

1364 (Fed. Cir. 1998).  Likewise, in *Application of Sheppard*, the
Court of Customs and Patent Appeals held that a prior art reference
which disclosed either the claimed compound *or* a different compound
was not enabling and therefore could not anticipate the claim at
issue.  *Application of Sheppard*, 339 F.2d 238, 241-242 (C.C.P.A.,
1964).

Goodman and Gilman do not disclose how to carry out a method which
necessarily and inevitably involves reducing induced NF-kB activity
using glucocorticoids (assuming it is even possible to carry out such
a method.)  Glucocorticoids have many effects and their mechanism of
action is poorly understood.  (Declaration of Dr. Verma ¶¶ 105; and
Second Declaration of Dr. Verma ¶¶ 94-95)

Prior art whose disclosure would have only sometimes involved
practicing the claimed method, like the prior art in *Rockwell* and
*Sheppard*, does not enable one skilled in the art to practice the
claimed method and therefore cannot anticipate the claimed method.
The Examiner's rationale for the rejection, even assuming it were
factually correct (which is unclear) would at most establish that the
use of glucocorticoids as taught by Goodman and Gilman could
*sometimes* have involved reducing induced NF-kB activity.  Such a
teaching in Goodman and Gilman does not enable the practice of the
method of any of claim 6, 8, 9, or any claim dependent thereon.

For this reason alone the inherent anticipation rejection of each of
claims 6, 8 and 9, and claims dependent thereon based on the Goodman
and Gilman should be withdrawn.

> d)  *Goodman and Gilman Do Not Disclose A Method Which
>     Anticipates A Method Of Reducing Induced NF-kB Activity by
>     Intervening Within the NF-kB Intracellular Signaling
>     Pathway Inside a Cell at a Specific Segment of the Pathway*

ARI 84468

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 83 of 92 of October 22, 2007 Response*

> *As Required by each of Claims 64, 65, 69, 75, 76, 80, 88, 89 and 93.*

Each of dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 further limit the independent claim from which it depends by requiring that the reducing of induced NF-kB activity involve intervening at a specific segment within the NF-kB intracellular signaling pathway inside a cell. Neither Goodman and Gilman, nor any of the non-prior art references cited in the July 6, 2007 Final Office Action, provide any information as to how glucocorticoids work. Certainly none of the cited references provide evidence that the use of glucocorticoids involves reducing induced NF-kB activity by intervening at the specific segment of the NF-kB intracellular signaling pathway as required in each of claims 64, 65, 69, 75, 76, 80, 88, 89 and 93. (Declaration of Dr. Verma ¶¶ 102-103; and Second Declaration of Dr. Verma ¶¶ 93)

Therefore, none of claims 64, 65, 69, 75, 76, 80, 88, 89 and 93 is inherently anticipated by Goodman and Gilman and the rejection on this basis should be withdrawn.

In conclusion, Patentees have provided reasons, each of which independently is sufficient to warrant withdrawal of the anticipation rejections of each of claims 6, 8, 9 and claims dependent thereon based on Goodman and Gilman. Patentees have provided an additional explanation warranting withdrawal of the rejection of dependent claims 64, 65, 69, 75, 76, 80, 88, 89 and 93. Accordingly, Patentees respectfully request the rejections based on Goodman and Gilman as applied to claims 6, 8, 9, 64, 65, 69, 75, 76, 80, 88, 89 and 93 be withdrawn.

ARI 84469

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 84 of 92 of October 22, 2007 Response*

IV. THE USE OF NON-PRIOR ART REFERENCES AND EVIDENCE SUBMITTED IN
    A DECLARATION THAT GOES BEYOND EXPLAINING THE CONTENT OF CITED
    PRIOR ART AS A BASIS FOR AN INHERENCY REJECTION IS <u>IMPROPER AND</u>
    <u>*ULTRA VIRES*</u>

### A.   Statutory Grounds For Reexamination

Statutory authority proscribes that in reexamination proceedings
consideration by the Patent Office be limited to "prior art
consisting of patents or printed publications" that have a bearing
on patentability.   35 U.S.C. § 301. *See also* 37 C.F.R. § 1.501.
Indeed, the Manual of Patent Examining Procedure ("MPEP") states that
substantial new questions of patentability must be based on "prior
art patents or printed publications." Prior art includes that relied
on in the reexamination request, that found elsewhere by the PTO, or
that in the patent file from submissions under 37 C.F.R. § 1.501.
All such art must be "prior art consisting of patents and printed
publications." MPEP 2216, 2217, and 2244; 37 C.F.R. § 1.501.

### B.   Impermissible Grounds of Rejection in a Reexamination

The Patent Office does not have statutory authority to entertain a
prior public use in a reexamination. 35 U.S.C. § 301, *et seq.*; e.g.,
M.P.E.P. § 2216 (Rev. 2, May 2004) ("Examples of such questions that
will not be considered are public use, on sale, and fraud.")

The lack of statutory authority cannot be circumvented by reliance
on a printed publication that merely describes the public use.  A
prior art citation "cannot include ... a statement as to the public
use of the claimed invention." M.P.E.P. § 2205 (Rev. 2, May 2004);
"a prior art patent or printed publication <u>cannot</u> be properly applied as
a ground for reexamination <u>if it is merely used as evidence of</u>
<u>alleged prior public use</u> or on sale, insufficiency of disclosure,
etc." M.P.E.P. § 2217 (Rev. 2, May 2004) (Emphasis added).

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 85 of 92 of October 22, 2007 Response*

Thus, it is clear that the PTO does not have statutory authority to rely on, as a ground for reexamination, a printed publication which does not itself contain the necessary disclosure, but describes an alleged prior public use. In support of this legal challenge to the subject reexamination proceeding Patentees also rely upon, and hereby incorporate by reference the Petitions, Requests for Reconsideration, and Pleadings filed in the Mandamus action initiated by Patentees in the U.S. District Court for the Eastern District of Virginia.

      **C.    The Inherent Anticipation Rejections in the August 2, 2006 and July 6, 2007 Office Actions are Improper; They Rely on Evidence Other Than "prior art consisting of patents or printed publications" in Violation of the Reexamination Statute.**

As noted above, a reexamination must be based on "prior art consisting of patents and printed publications." MPEP 2216, 2217, and 2244; 37 C.F.R. § 1.501. Nothing in the statute, the rules, or the M.P.E.P. dictates a different understanding. Indeed, even prior art patents or printed publications cannot be grounds for reexamination if used merely as evidence of alleged prior public use or on sale activity. MPEP 2217. Affidavits or declarations may be considered in reexamination to explain the content or pertinent date of a prior art patent or printed publication. *Id.* However, rejection on prior art "cannot be based on the affidavits or declarations as such, but must be based on the prior art patents or printed publications." *Id.* at 2258(I)(E).

Likewise, an admission may not be the basis for establishing a substantial new question of patentability, although an admission may be used "to determine the scope and content of the prior art in conjunction with prior art patents and printed publications, whether such admissions result from patents or printed publications or from some other source." *Id.* at 2217 and 2258(I)(F)(1)-(2). "An admission as to what is in the prior art is simply that, an admission, and requires no independent proof. It is an acknowledged,

ARI 84471

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 86 of 92 of October 22, 2007 Response*

declared, conceded, or recognized fact or truth." *Id.* at
2258(I)(F)(2). However, information supplementing or further
defining the admission is improper, as the admission must stand on
its own. *Id.* at 2217.


It is clear that reexamination proceedings were designed to be
limited in scope to consideration of prior art patents and printed
publications, "lest the life of an issued patent be wasted and the
patentee's legitimate rights be abused by third party requests for
reexamination, for there are myriad grounds on which patentability
is subject to challenge." *In re Lonardo*, 119 F.3d 960, 969, 43
USPQ2d 1262 (Fed. Cir. 1997)(Newman, J., dissenting and noting
legislative history's "serious concern that reexamination not create
new opportunities for abusive tactics and burdensome
procedures")(quoting *In re Recreative Technologies Corp.*, 83 F.3d
1394, 1397, 38 USPQ2d 1776, 1778 (Fed. Cir. 1996)).


Despite the statute, the rules and the MPEP, the Examiner advances
the following case law on pages 8-9 of the August 2, 2006 Office
Action as relevant to the use of non-prior art references in a
reexamination:

> The discovery of a previously unappreciated property of a prior art composition, or of
> a scientific explanation for the prior art's functioning, does not render the old
> composition patentably new to the discoverer." Atlas *Powder* Co. v. *Ireco* Inc., 190
> F.3d 1342,1347,51 USPQ2d 1943,1947 (Fed. Cir. 1999). Thus the claiming of a new
> use, new function or unknown property which is inherently present in the prior art does
> not necessarily make the claim patentable. *In re Best*, 562 F.2d 1252, 1254, 195 USPQ
> 430, 433 (CCPA 1977); *Ex parte Novitski*, 26 USPQ2d 1389 (Bd. Pat.App. & Inter.
> 1993); *In re Cruciferous Sprout Litigation*, 301 F3d. 1343,64 USPQ2d 1202 (Fed. Cir.
> 2002); *In re Crish*, 393 F.3d 1253, 1258, 73 USPQ2d 1364, 1368 (Fed. Cir. 2004).
> Although, normally, only one reference should be used in making a rejection under 35
> U.S.C. 102, a 35 U.S.C. 102 rejection over multiple references has been held to be
> proper when the extra references are cited to show that a characteristic not disclosed in
> the reference is inherent. See MPEP 2131.01. Once a reference's teaching is shown to
> provide evidence or reasoning tending to show inherency, the burden shifts to
> Applicant to show an unobvious difference. MPEP 2112 (V).


Patentees respectfully point out that not one of the cases cited by

ARI 84472

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 87 of 92 of October 22, 2007 Response*

the Examiner involves a reexamination or discusses what is a legitimate ground for rejection in a <u>reexamination</u>.

35 U.S.C. § 303 specifically refers to §§ 301 and 302, which require the basis of reexamination to be prior art, whether "patents or publications discovered by [the Director] or cited under the provisions of section 301 [for citation of prior art in a request for reexamination under section 302]." 35 U.S.C. § 303. The Examiner proffers no rationale for interpreting the reexamination statute in a different manner. Yet, the Examiner proceeds to assert that non-prior art documents can be considered during reexamination to show inherent anticipation as "extrinsic evidence" of what is inherent in a prior art reference even when such "extrinsic evidence" does not refer to or reproduce the teachings of the prior art being cited.

**D.    The Claims of the '516 Patent Are Method Claims and the Cited Prior Art Is At Most Evidence of What Occurred During A Prior Public Use.**

Each of the prior art references cited in the August 2, 2006 Office Action expressly describes methods that were publicly used, e.g. drinking red wine. The cited prior art, therefore, merely provides evidence of the prior public use of the methods described.

The logic used in the August 2, 2006 Office Action is that when the methods described in the printed publications were practiced by the public, the claimed methods of the '516 Patent "inherently" were practiced. Clearly, however, anything that "inherently" happened, must have occurred *during the <u>public use</u>* of methods described in cited references.

Indeed, the August 2, 2006 Office Action relies on non-prior art references as "extrinsic evidence," as well as a Declaration offered by the Requestor, to allegedly "explain" what would have "inherently" happened during such public use. Clearly, the methods which are actually described in the cited prior art do not raise any

ARI 84473

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 88 of 92 of October 22, 2007 Response*

substantial new question of patentability, and the August 2, 2006 Office Action does not allege otherwise. What the August 2, 2006 Office Action effectively relies upon to support the inherent anticipation rejections is evidence of a prior public use.

The Federal Circuit has held in standard patent prosecution that a <u>method</u> is inherently anticipated only by the actual public use of the method (which may or may not have been described in a printed publication).[3]

A method of preparing and administering a food product rich in glucosinolates was found to be inherently anticipated where members of the public have "heretofore grown and eaten one of the many suitable cultivars identified by its patents." *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1351 (Fed. Cir. 2002). However, the rationale of this holding is prior public use, not prior publication. This rationale is not available as a ground for rejection in a reexamination.

A claim to a method of hair depilation has been found inherently anticipated on the basis of prior public use in an experiment investigating the safety of a laser on guinea pig backs. The experiment was described in a printed publication, but it was the public use which inherently anticipated, not the publication. Again, prior public use is not available as a basis for a rejection in a reexamination. *MEHL/BIOPHILE International Cor. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999). Moreover, a different printed publication that merely provided instructions for the use of the same laser to remove tattoos from skin, where there was no prior public

---

[3] The Federal Circuit has found a claim to a *compound* inherently anticipated by a disclosure in a *patent* of administering to a patient a precursor which was necessarily converted in the patient to the compound. *Schering Corporation v. Geneva et al.*, 339 F.3d 1373 (Fed. Cir. 2003). However, the Federal Circuit in *Schering* explicitly stated that the *method* of treatment claims were not inherently anticipated by such a disclosure. *Id*, at 1381.

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 89 of 92 of October 22, 2007 Response*

use, was held not to inherently anticipate a claimed depilation method. *Id* at 1365.

Accordingly, it is clear that inherent anticipation of a patented method only occurs during a prior public use, not in a printed publication describing that prior public use; and prior public use is not a permitted basis for a rejection in a reexamination.

The Office's own rules recognize that a prior art citation "cannot include ... a statement as to the public use of the claimed invention." M.P.E.P. § 2205 (Rev. 2, May 2004); "a prior art patent or printed publication <u>cannot</u> be properly applied as a ground for reexamination <u>if it is merely used as evidence of alleged prior public use</u> or on sale, insufficiency of disclosure, etc." M.P.E.P. § 2217 (Rev. 2, May 2004) (Emphasis added).

Accordingly, the August 2, 2006 Office Action contains improper rejections of a patented method based on prior public use.

ARI 84475

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 90 of 92 of October 22, 2007 Response*

V.    SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

In accordance with their duty of disclosure under 37 C.F.R. §1.555, Patentees direct the Examiner's attention to the following disclosures, which are listed on Form PTO-1449 (**Exhibit C**). Copies of the disclosures listed below as items 1-6 including listed attachments are attached hereto as **Exhibits 1-6,** respectively.

1.    July 16, 2007 Memorandum In Support of Eli Lilly And Company's Motion To Stay Entry of Judgement Pending Reexamination or For Settlement of Form of Final Judgement, Document 409, filed 07/16/2007, pgs. 1-18 in Civil Case 02 CV 11280 RWZ (**Exhibit 1**);

2.    August 22, 2007 Reply Memorandum In Support of Eli Lilly And Company's Motion To Stay Entry of Judgement Pending Reexamination or For Settlement of Form of Final Judgement, Document 414, filed 08/22/2007, pgs. 1-11, including Exhibits 2-6 in Civil Case 02 CV 11280 RWZ (**Exhibit 2**);

3.    September 10, 2007 Final Judgement, Document 417, filed 09/10/2007, pgs. 1-5 in Civil Case 02 CV 11280 RWZ (**Exhibit 3**);

4.    September 23, 2007 Memorandum In Support of Defendant's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, A New Trial, Document 420, filed 09/23/2007, pgs. 1-53, including Exhibit 2 in Civil Case 02 CV 11280 RWZ (**Exhibit 4**);

5.    July 16, 2007 Declaration Of Laura P. Masurovsky For Eli Lilly And Company's Motion To Stay Entry Of Judgment Pending Reexamination Or For Settlement Of Form of Final Judgment, Document 410, filed 07/16/2007, pgs. 1-2, including Exhibits 2-13 in Civil Case 02 CV 11280 RWZ (**Exhibit 5**); and

ARI 84476

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 91 of 92 of October 22, 2007 Response*

6.   July 26, 2007 Plaintiffs' Opposition To Lilly's Motion To Stay
     Entry Of Judgment Pending Reexamination or for Settlement of
     Form of Final Judgement, Document 411, filed 07/26/2007, pgs.
     1-11, including Exhibit 2 in Civil Case 02 CV 11280 RWZ
     (**Exhibit 6**).

Pursuant to the May 4, 2006 Merger Decision, this Response is being
filed in duplicate, each original bearing an original signature and
identifying data for both reexamination files.

No fee is deemed necessary in connection with the filing of this
Response.  However, if any additional fee is required, authorization
is hereby given to charge the amount of any such fee to Deposit
Account No. 31-3125.

                         Respectfully submitted,


I hereby certify that this correspondence is being deposited
this date with the U.S. Postal Service with sufficient postage as
first class mail in an envelope addressed to:

    Mail Stop Ex Parte Reexamination
    Central Reexamination Unit
    Commissioner for Patents
    P.O. Box 1450
    Alexandria, VA 22313-1450.

John P. White                        10/22/07
Reg. No. 28,678                      Date

John P. White
Registration No. 28,678
Gary J. Gershik
Registration No. 39,992
Attorneys for Patentees
Cooper & Dunham LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 278-0400

ARI 84477

Patentees: David Baltimore et al.
Merged *Ex Parte*
Reexamination Control Nos.: 90/007,503 and 90/007,828
*Page 92 of 92 of October 22, 2007 Response*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **RESPONSE TO JULY 6, 2007 FINAL OFFICE ACTION, SUMMARY OF AUGUST 22, 2007 EXAMINER INTERVIEW, STATEMENT OF CONCURRENT PROCEEDINGS UNDER 37 C.F.R. § 1.565, AND SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT** and any enclosure has been sent to:

McDonnell Boehnen Hulbert & Berghoff, 300 South Wacker Drive, Suite 3200, Chicago, Illinois 60606, Attn: Grantland G. Drutchas, Esq.,

          and

Bawa Biotechnology Consulting, LLC, 21005 Starflower Way, Ashburn, VA 20147, Attn: Dr. Raj Bawa,

each by U.S. Postal Service, first class mail service, with sufficient postage, on this 22nd day of October, 2007.

_____
John P. White

ARI 84478