IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation, <br><br> Plaintiffs/Counterclaim Defendants, <br><br> v. <br><br> ARIAD PHARMACEUTICALS, INC., a Delaware corporation, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation, *et. al.* <br><br> Defendants/Counterclaim Plaintiffs. | Civil Action No. 06-259 (MPT) |

**THE AMGEN ENTITIES' BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO PRECLUDE CERTAIN PROFFERED OPINIONS OF DR. JEFFREY V. RAVETCH RELATING TO WRITTEN DESCRIPTION AND INHERENT ANTICIPATION**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

HOGAN & HARTSON LLP
Siegmund Gutman
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: April 25, 2008

# **TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II. INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................... 1

III. STATEMENT OF FACTS ................................................................................................... 2

IV. ARGUMENT ....................................................................................................................... 2

    A.    Dr. Ravetch's Opinions on Written Description Should Be Precluded Because He Applied an Incorrect Legal Standard. ................................................. 3

    B.    Dr. Ravetch's Opinions on Inherent Anticipation Should Be Precluded Because He Misapplied the Legal Standard. ......................................................... 5

V. CONCLUSION .................................................................................................................... 7

DB02:6773650.1　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　065028.1001

# **TABLE OF AUTHORITIES**

**Cases**

*Atlas Powder Co., v. Ireco, Inc.,*
   190 F.3d at 1342 (Fed. Cir. 1999) ................................................................................ 7

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ........................................................................................... passim

*Herbert v. Lisle Corp.,*
   99 F.3d 1109 (Fed. Cir. 1996) ...................................................................................... 3

*In re Cruciferous Sprout Litigation.,*
   301 F.3d 1343 (Fed. Cir. 2002) .................................................................................... 7

*Izume Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
   315 F. Supp. 2d 589 (D. Del. 2004) ............................................................................. 2

*KB Home v. Antares Homes, Ltd.,*
   No. 04-1031, 2007 WL 1893370 (N.D. Tex. June 28, 2007) ............................... 3, 5, 7

*Lockwood v. American Airlines,*
   107 F.3d 1565 (Fed. Cir. 1997) ............................................................................ 1, 3, 4

*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.,*
   298 F.3d 1290 (Fed.Cir. 2002) ..................................................................................... 3

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
   --- F.3d ---, 2008 WL 1012561 (Fed. Cir. 2008) ......................................................... 4

*SmithKline Beecham Corp. v. Apotex Corp.*
   403 F.3d 1331 (Fed. Cir. 2005) ............................................................................ 1, 2, 6

*Verdegaal Bros. v. Union Oil Co.,*
   814 F.2d 628 (Fed. Cir. 1987) ...................................................................................... 6

*Watts v. University of Delaware,*
   471 F.Supp. 1272 (D. Del. 1979) .............................................................................. 2, 7

*Zenith Electronics Corp. v. PDI Communications Sys., Inc.,*
   --- F.3d ---, 2008 WL 1734195 (Fed. Cir. 2008) ......................................................... 3

**Statutes**

35 U.S.C. § 102 .................................................................................................................. 2, 6

35 U.S.C. § 112 ..................................................................................................................... 1

**Other Authorities**

WALKER ON PATENTS § 8.187 (2007) .................................................................................... 2, 6

**Rules**

FED. R. EVID. 702 .................................................................................................................. 1, 2, 3, 7

I.   **NATURE AND STAGE OF THE PROCEEDINGS**

The nature and stage of these proceedings are incorporated herein by reference as set forth in Amgen's Opening Brief in Support of its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,410,516.

II.  **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

1. ARIAD's expert Dr. Jeffrey Ravetch applied erroneous legal standards in rendering his opinions on written description and inherent anticipation, and his opinions based on those improper legal standards are therefore invalid. Amgen hereby moves under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) to preclude Dr. Ravetch from offering testimony as to those opinions.

2. By his own admission, Dr. Ravetch's analysis of whether an ancestor application of the '516 patent adequately described the claimed invention included consideration of "what was described [in the patent], *as well as what was obvious to one of ordinary skill in the art.*" (Ex. A, Dep. of Jeffrey Ravetch ("Ravetch Dep. Tr.") at 134:24-135:6 (emphasis added)) However, the Federal Circuit has been very clear that, in judging the sufficiency of a patent specification's disclosure under 35 U.S.C. § 112, "[t]he question is *not* whether a claimed invention is an obvious variant of that which is disclosed in the specification." *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) (emphasis added). Dr. Ravetch's opinion using the wrong standard of written description allowed him to improperly "fill in" holes in the inadequate disclosure and thus must be excluded.

3. Furthermore, Dr. Ravetch applied a much higher standard of inherency than established by the case law. Federal Circuit law is clear that, with respect to proving anticipation (inherency or otherwise), a reference need not show actual use to anticipate. *SmithKline Beecham Corp. v. Apotex Corp.* 403 F.3d 1331, 1344 (Fed. Cir. 2005). If such a use is shown by

1

a reference, a single prior art use is sufficient to show anticipation under 35 U.S.C. § 102. WALKER ON PATENTS § 8.187 (2007); *see also Watts v. University of Delaware*, 471 F.Supp. 1272, 1277 (D. Del. 1979). All that need be shown is that "the disclosure [of the prior art] is sufficient to show that the natural result flowing from the operation as taught [in the prior art] would result in the claimed product," and it is error to require a higher standard. *SmithKline*, 403 F.3d at 1343 (citations omitted). Dr. Ravetch admits that he applied a standard that required the prior art to show that the disclosed compound "necessarily ***and always***" reduced NF-κB activity, *i.e.*, "it would have to occur every time". (Ex. B, Ravetch Rebuttal Report at ¶¶ 26, 39; *see also* Ex. A, Ravetch Dep. Tr. at 326:4-24) Dr. Ravetch's opinions applying this incorrect standard of inherent anticipation must be excluded.

### III. STATEMENT OF FACTS

ARIAD retained Dr. Ravetch as an expert in this case. During the course of expert discovery, he has submitted three expert reports -- an opening, a rebuttal, and a reply report -- in which he opined on issues of priority, including the alleged written description and enablement of the claimed invention in various of the ancestor applications in the '516 patent family, claim construction, anticipation, and materiality of inequitable conduct assertions. Dr. Ravetch applied legally improper standards at least in his analysis of written description and inherent anticipation. Amgen therefore files this motion to preclude his opinions founded on these erroneous legal standards.

### IV. ARGUMENT

The Supreme Court has "assign[ed] to the trial judge the task of ensuring that an expert's testimony both rests on ***a reliable foundation*** and is relevant to the task at hand." *Daubert*, 509 U.S. at 597 (emphasis added); *see also Izume Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004). Under FED. R. EVID. 702 and *Daubert*, expert

2

opinions are inadmissible if they are the product of unreliable principles and methods. *See* FED. R. EVID. 702; Rule 702 Advisory Committee Notes; *Daubert*, 509 U.S. at 579-80, 592-93, 594-95. Expert testimony should be precluded when it is not "relevant to the task at hand," including testimony that applies an incorrect legal standard, because it is not helpful and may "confuse and mislead" the jury. *Daubert*, 509 U.S. at 597; *see also KB Home v. Antares Homes, Ltd.*, No. 04-1031, 2007 WL 1893370, at *9 (N.D. Tex. June 28, 2007). The Federal Circuit has made clear that the "court will not give credence to the legal aspect of mixed conclusions of fact and law that are based on incorrect legal standards." *Zenith Electronics Corp. v. PDI Communications Sys., Inc.*, --- F.3d ---, 2008 WL 1734195, slip op. at *16 (Fed. Cir. 2008). *See also Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) ("Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories.").

### A.  Dr. Ravetch's Opinions on Written Description Should Be Precluded Because He Applied an Incorrect Legal Standard.

Dr. Ravetch should be precluded from testifying on the adequacy of the written description in any of the applications leading to the '516 patent because he applied an incorrect legal standard for written description. *See Daubert*, 509 U.S. at 597. A patent must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1295 (Fed. Cir. 2002). While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, the law is clear that all the limitations must necessarily appear or be present in the specification. *Lockwood*, 107 F.3d at 1571-72. The Federal Circuit very clearly specifies -- the written description requirement is "not a question of whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure . . . . Rather, it is a question of whether the application necessarily

3

discloses that particular device." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, --- F.3d ---, 2008 WL 1012561, slip. op. at *11 (Fed. Cir. 2008), citing *Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987)(emphasis in original). The law requires a finding of written description based on what is described, not based on what would be obvious to one of ordinary skill in the art from the disclosure of the specification: "Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed." *Lockwood*, 107 F.3d at 1571-72.

Contrary to the black letter law, however, Dr. Ravetch admitted that he disregarded this standard and considered what was obvious to the skilled artisan in forming his opinions as to the sufficiency of the written description in the predecessor applications to the '516 patent. When questioned about what standard he applied in his analysis of whether an application of the '516 patent adequately described the claimed invention, Dr. Ravetch testified that he considered not only what was set forth in the patent or application, but also what would have been *obvious* to a person of skill in the art at the time of the invention:

> Q. Did you understand that from the standpoint of a written description analysis, you were not limited to what was actually described in the application, but *you could consider what was described, as well as what was obvious to one of ordinary skill in the art?*
>
> A. *Yes.*

(Ex. A, Ravetch Dep. Tr. at 134:24-135:6 (emphasis added))

Dr. Ravetch could not offer the opinions he does if he did not consider what was obvious in the art. Based on the incorrect standard, Dr. Ravetch offers conclusory opinions that, for example, the reference to mouse cells in a priority application provides written description for human cells. (Ex. C, Ravetch Opening Report at ¶ 47) In addition, Dr. Ravetch even agreed that the only disclosure in any specification for extracellular molecules, such as tumor necrosis

4

factor-α ("TNF-α"), is a passing reference to work done by others (*i.e.*, Osborn *et al.*). (*See* Ex. A, Ravetch Dep. Tr. at 193:6-12) He further admitted that he had no knowledge, nor did he ever inquire into, whether the inventors themselves actually conducted experiments with TNF-α. (*See id.* at 175:15-25) Moreover, Dr. Ravetch disagreed that the Osborn reference cited in the application disclosed a reduction of NF-κB activity. (*See id.* at 193:23-194:5) Yet Dr. Ravetch cobbled together what little information was provided in the specification and went well beyond what was disclosed to conclude that it would have been obvious to design experiments based on the disclosure to practice the claimed invention using extracellular molecules such as TNF-α or IL-1. (*See id.* at 175:7-14; 255:7-257:22)

Because Dr. Ravetch applied an incorrect legal standard, *i.e.*, that he considered not just the disclosure of the predecessor applications but also what he believed was obvious in determining written description in the context of a priority determination, the Court should preclude his testimony on this issue as it is legally baseless and will confuse and mislead the jury. *Daubert*, 509 U.S. at 597; *see also KB Homes*, 2007 WL 1893370, at *9 (finding that expert testimony that applies an incorrect legal standard will "confuse and mislead" the jury).

**B.  Dr. Ravetch's Opinions on Inherent Anticipation Should Be Precluded Because He Misapplied the Legal Standard.**

Dr. Ravetch should similarly be precluded from testifying regarding the inherent anticipation of the claims of the '516 patent based on certain prior art references because he applied an incorrect legal standard for inherent anticipation. *Daubert*, 509 U.S. at 597. Dr. Ravetch applied the wrong legal standard of inherency in requiring that the cited prior reference show a claim limitation "necessarily ***and always***" (*i.e.*, would have to occur ***every time*** that method was practiced) in order to anticipate. (*See* Ex. A, Ravetch Dep. Tr. at 326:17-24) For example, in discussing inherent anticipation under the Pachman reference, which describes work

5

with a salicylate like aspirin, Dr. Ravetch argued that the supporting references needed to show that salicylates "necessarily and always" reduce NF-κB activity. (*See* Ex. B, Ravetch Rebuttal Report at ¶ 26) Dr. Ravetch similarly argued that admissions by Drs. David Baltimore and Patrick Baeuerle, named inventors of the '516 patent, that protein kinase C inhibitor H-7 reduces NF-κB activity were insufficient to corroborate anticipation by H-7 because they did not "state that H-7 inhibits NF-κB activity *in all circumstances*, including prior induction." (*Id.* at ¶ 39 (emphasis added)) Dr. Ravetch also questioned whether another reference demonstrated that "ALLNa1 can inhibit induced NF-κB activity, much less that it necessarily does so *in each and every case.*" (*Id.* at ¶ 43 (emphasis added))

The Federal Circuit has clearly articulated that a claim of a patent may be anticipated under 35 U.S.C. § 102 by a single prior art reference if the reference includes all the elements of the patent claim either expressly or inherently. *See, e.g., Verdegaal Bros. v. Union Oil Co.*, 814 F.2d 628 (Fed. Cir. 1987). Nothing in the law requires, however, that a reference must "necessarily *and always*" (*i.e.* "in all circumstances" or "in each and every case") reduce NF-κB activity. A reference need not show that failing to achieve the result was impossible. *SmithKline*, 403 F. 3d at 1343 ("Apotex did not need to prove that it was impossible to make PHC anhydrate in the United States that contained no PHC hemihydrate, but merely that 'the disclosure [of the prior art] is sufficient to show that the natural result flowing from the operation as taught [in the prior art] would result in' the claimed product."). In fact, a reference need not even show actual use to anticipate. *Id.* at 1344 (holding that anticipation requires only disclosure, not reduction to actual practice). It is settled law that a *single* prior use can invalidate a patent under 35 U.S.C. § 102. WALKER ON PATENTS § 8.187 (2007) ("Initially, it can be stated with confidence that anticipation will occur if even a single qualifying use has occurred.") *See*

*also Watts*, 471 F. Supp. at 1277. Moreover, in *Atlas Powder*, the Federal Circuit noted that one of the principles underlying the doctrine of inherent anticipation is to ensure that "[t]he public remains free to make, use or sell prior art compositions or processes, regardless of whether or not they understand their complete makeup or the underlying scientific principles which allow them to operate." *Atlas Powder Co.*, 190 F.3d at 1348. If the reduction of NF-κB activity in cells is necessarily present (at least once) under the conditions disclosed in a reference, it inherently anticipates. *Id.* at 1347. Indeed, in *In re Cruciferous Sprout Litigation*, 301 F.3d 1343, 1350 (Fed. Cir. 2002), the fact that *some* prior art sprouts would have inherently had the claimed glucosinolate content and Phase 2 enzyme-inducing potential was found sufficient to inherently anticipate the claims despite the fact no one had previously recognized these properties. Thus, Dr. Ravetch's "necessarily *and always*" standard does not comport with the settled law and his opinion must be stricken.

Because Dr. Ravetch's application of the inherent anticipation standard is inconsistent with the legally correct standard, the Court should preclude his testimony on this issue because its admission will only create juror confusion on the proper standard to apply to the references. *Daubert*, 509 U.S. at 597; *see also KB Homes*, 2007 WL 1893370, at *9 (finding that expert testimony that applies an incorrect legal standard will "confuse and mislead" the jury).

## V.  CONCLUSION

For the foregoing reasons, Dr. Ravetch's opinions based on legally incorrect standards should be precluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*.

7

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*
_____
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

Siegmund Gutman
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Dated: April 25, 2008

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*