IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>    Defendants. | C.A. No. 06-259-MPT<br><br>**REDACTED<br>PUBLIC VERSION** |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>    Counterclaim-Defendants. | |

**DEFENDANTS-COUNTERCLAIM-PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY
JUDGMENT ON INEQUITABLE CONDUCT**

*Of Counsel:*
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: April 25, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

{00212453;v1}

## Table of Contents

*Page*

Table of Authorities .................................................................................................................. ii

I. Nature and Stage of the Proceedings ............................................................................1

II. Summary of Argument...................................................................................................2

III. Statement of Facts..........................................................................................................3

    A. The Disclosures to the PTO of Dr. Verma's Articles and Amgen's Theory of Inequitable Conduct........................................................4

    B. The Disclosures to the PTO of Dr. Kadesch's Testimony and Amgen's Theory of Inequitable Conduct................................................6

IV. Argument .......................................................................................................................9

    A. Relevant Legal Standards................................................................................9

    B. Amgen's Inequitable Conduct Theories Based upon Prior Statements by Dr. Verma and Dr. Kadesch Are Moot. ...............................10

V. Conclusion....................................................................................................................15

## Table of Authorities

*Page(s)*

**Cases**

*FDIC v. Giammettei,*
  34 F.3d 51 (2d Cir. 1994) .................................................................................................. 9, 12

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.,*
  439 F.3d 1335 (Fed. Cir. 2006) ............................................................................................ 10

*Rohm & Haas Co. v. Crystal Chemical Co.,*
  722 F.2d 1556 (Fed. Cir. 1983) ....................................................................................... 13-14

*Scripps Clinic & Research Found. v. Genentech, Inc.,*
  927 F.2d 1565 (Fed. Cir. 1991) ........................................................................................ 3, 12

*Young v. Lumenis, Inc.,*
  492 F.3d 1336 (Fed. Cir. 2007) .................................................................................. *passim*

**Statutes, Rules & Regulations**

37 C.F.R. § 1.97 ........................................................................................................................ 3, 5

37 C.F.R. § 1.98 ........................................................................................................................... 5

Fed. R. Civ. P. 56 ........................................................................................................................ 9

**Other Authorities**

Manual of Patent Examining Procedure ......................................................................... 3, 12, 13

Defendants-counterclaim-plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research (collectively, "ARIAD") respectfully submit this memorandum of law in support of their motion for partial summary judgment on two of the three theories of inequitable conduct asserted by plaintiffs-counterclaim-defendants Amgen Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Ltd., and Immunex Rhode Island Corp. (collectively, "Amgen"). Because ARIAD has submitted to the patent examiner conducting the ongoing reexamination of the patent-in-suit all information that Amgen alleges was improperly withheld during that reexamination, Amgen's inequitable conduct defenses related to that proceeding are moot, and summary judgment on those defenses is appropriate.

I. **Nature and Stage of the Proceedings**

This case concerns United States Patent No. 6,410,516 (the "'516 Patent"), which covers methods of inhibiting the expression of genes whose transcription is regulated by NF-κB. The '516 Patent issued June 25, 2002, and is currently the subject of an ongoing reexamination proceeding before the United States Patent and Trademark Office ("PTO").

Amgen commenced the present declaratory action on April 20, 2006, seeking declarations of non-infringement and invalidity. ARIAD counterclaimed for infringement of the '516 Patent. On April 13, 2007, Amgen amended its complaint to

1

add a defense of unenforceability based upon alleged inequitable conduct.[1] On May 3, 2007, Amgen added to that defense a new theory of inequitable conduct, alleging that "ARIAD and/or its counsel violated the duty of disclosure" by failing to disclose to the PTO during the reexamination proceeding certain articles co-authored by Dr. Inder Verma, an expert retained by ARIAD in connection with the reexamination proceeding. (*See* Amgen's Amended Reply to ARIAD's Counterclaims ("Amgen's Amended Reply") (D.I. 559) ¶¶ 59-75.) On December 11, 2007, Amgen moved to amend its inequitable conduct allegations to allege that ARIAD and/or its counsel failed to disclose to the PTO during the reexamination proceeding deposition testimony given in an unrelated case not involving ARIAD by Dr. Thomas Kadesch, an expert retained by ARIAD in prior litigation. (*See* Amgen's Amended Reply (D.I. 559) ¶¶ 76-83.) In a Memorandum Order dated January 31, 2008, this Court allowed Amgen to amend its Reply to ARIAD's Counterclaim to include Amgen's theory of inequitable conduct related to Dr. Kadesch.

## II.     Summary of Argument

1. Amgen's inequitable conduct defense is based, in large part, upon the allegation that, during the ongoing reexamination, ARIAD withheld from the PTO certain materials related to Dr. Kadesch and Dr. Verma.

2. In May 2007 and December 2007, ARIAD submitted to the PTO the materials that Amgen alleges were improperly withheld.

3. Moreover, on February 20, 2008, following a ruling by this Court allowing Amgen to assert its theory of inequitable conduct related to Dr. Kadesch's

---

[1] Amgen's original theory of inequitable conduct is not at issue in this motion. *See infra* note 3.

testimony, ARIAD resubmitted to the PTO those same materials, along with the reports of Amgen's experts in this action. Those submissions explicitly advise the examiner of Amgen's theories of inequitable conduct related to Dr. Kadesch and Dr. Verma. Pursuant to the Manual of Patent Examining Procedure ("MPEP"), MPEP § 609, and the applicable regulations, 37 C.F.R. § 1.97, the examiner has an obligation to consider the materials submitted by ARIAD, including Amgen's detailed explanation of the supposed inconsistencies whose nondisclosures are alleged to amount to inequitable conduct.

    4. As of the time of ARIAD's submissions, the reexamination proceeding was ongoing, and the PTO has not yet issued a final Office Action.

    5. Under controlling Federal Circuit precedent, allegations of inequitable conduct for failure to disclose materials are moot, where, as here, the allegedly withheld materials are submitted to the PTO in sufficient time for them to be considered by the examiner. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1348 (Fed. Cir. 2007); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991).

### III. Statement of Facts

    On April 4, 2005, before Amgen initiated the instant action, Eli Lilly and Co. ("Lilly") petitioned the PTO to reexamine the '516 Patent under 35 U.S.C. § 302. At the time, Lilly was involved in separate litigation with ARIAD relating to Lilly's infringement of the '516 Patent.[2] The PTO granted Lilly's petition for reexamination and commenced an *ex parte* reexamination proceeding, which is ongoing.

---

[2] That litigation, filed in the United States District Court for the District of Massachusetts as *ARIAD Pharmaceuticals, Inc. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280 (the "*Lilly* Litigation"), concerned different claims from those asserted in this case.

In the present action, Amgen alleges several theories of inequitable conduct, two of which relate to ARIAD's alleged conduct during the reexamination proceeding.[3] Specifically, Amgen alleges a failure to disclose in the ongoing reexamination proceeding certain articles co-authored by Dr. Inder Verma and a June 2007 transcript of a deposition by Amgen of Dr. Thomas Kadesch, in an unrelated case, not involving ARIAD, the '516 Patent or NF-κB.

### A.  The Disclosures to the PTO of Dr. Verma's Articles and Amgen's Theory of Inequitable Conduct

Dr. Inder Verma, a professor of Molecular Biology at Salk Institute in La Jolla, California, was retained to assist ARIAD as a technical expert in the reexamination proceeding. On November 9, 2006, Dr. Verma submitted a declaration to the PTO in support of the validity of the claims of the '516 Patent.

Amgen alleges that the submission of Dr. Verma's declaration to the PTO breached ARIAD's duty of good faith and candor to the PTO because ARIAD did not also submit several articles authored by Dr. Verma and others, which Amgen contends are inconsistent with Dr. Verma's declaration. (*See* Amgen's Amended Reply (D.I. 559) ¶¶ 59-75.)

On May 17, 2007, shortly after learning of Amgen's inequitable conduct theory related to Dr. Verma, ARIAD submitted an Information Disclosure Statement

---

Following a fourteen-day trial, a jury returned a verdict in favor of ARIAD. The jury rejected Lilly's allegation's that the '516 Patent was invalid and awarded substantial damages for Lilly's infringement of the patent. In July 2007, after a bench trial, the Court entered an order rejecting Lilly's further allegations relating to the validity and enforceability of the '516 Patent.

[3] ARIAD's present motion does not relate to Amgen's theory of inequitable conduct based upon the original examination of the application that matured into the '516 Patent.

("IDS") to the PTO, attaching the articles authored by Dr. Verma that were identified by Amgen as having been wrongfully withheld.[4] (*See* Greenwald Decl. Ex. 5.)[5] On July 3, 2007, ARIAD submitted those articles to the PTO a second time, and also attached Amgen's Reply to ARIAD's Counterclaims, which explicitly sets forth Amgen's allegations of inequitable conduct with respect to Dr. Verma's declaration. (*See* Greenwald Decl. Ex. 8.) Thus, by July 3, 2007, the PTO had in its possession all the Verma articles Amgen alleges were withheld (*compare* Amgen's Amended Reply to ARIAD's Counterclaims ¶¶ 63-75, *with* Greenwald Decl. Ex. 8 at 5-6), as well as Amgen's Reply to ARIAD's Counterclaim setting forth Amgen's contentions that those articles are inconsistent with Dr. Verma's November 9, 2006 declaration.

Amgen's theories of inequitable conduct were also fully set forth in two expert reports submitted in this action on January 19, 2008. Those reports, by Dr. Randolph Wall (the "Wall Report", Greenwald Decl. Ex. 13) and Gerald J. Mossinghoff (the "Mossinghoff Report", Greenwald Decl. Ex. 14),

**REDACTED**

[6] On February 20, 2008, ARIAD's reexamination counsel submitted to the PTO additional

---

[4] An IDS may be filed by an applicant to bring to the examiner's attention information that may be relevant to the examination. 37 C.F.R. §§ 1.97-98 (setting forth the procedural and substantive requirements for submitting an IDS).

[5] The documents cited herein are appended to the Declaration of David Greenwald, dated April 25, 2008 ("Greenwald Decl.").

[6] *E.g.*,

**REDACTED**

see also Wall Report (Greenwald Decl. Ex. 13) at page 94 ("[T]he statements and conclusions set forth by Dr. Verma in his deposition [sic: declaration] directly contradict the statements and conclusions published [sic] that Dr. Verma, along with others, published prior to November 9, 2006.").

IDSs attaching those two expert reports as well as Amgen's May 3, 2007 Reply to ARIAD's Counterclaim and all of Dr. Verma's allegedly inconsistent articles (for the third time). (*See* Greenwald Decl. Exs. 18, 19 & 25.) In addition, the February 20 IDSs included statements that: (1) expressly point out to the examiner the location of the Verma articles within the submission (Greenwald Decl. Ex. 18 at 3); (2) note that Amgen "makes certain allegations of inconsistencies between the content of the articles co-authored by Dr. Verma and the content of Dr. Verma's two declarations filed in the subject reexamination proceeding" (*id.*); (3) expressly point out to the examiner the location of the Wall Report and Amgen's 30(b)(6) Deposition Notice related to the Verma articles, which in turn direct the examiner to the specific inconsistencies Amgen alleges; and (4) advise the examiner that the documents submitted concurrently set forth "alleged inconsistencies between the articles co-authored by Dr. Verma and Dr. Verma's two Declarations in the subject reexamination proceeding" (*id.*).

### B. The Disclosures to the PTO of Dr. Kadesch's Testimony and Amgen's Theory of Inequitable Conduct

On April 7, 2006, after reexamination commenced, ARIAD submitted an IDS that attached all of the expert reports, expert deposition testimony and trial testimony from the *Lilly* Litigation. Included among those materials were the expert report and deposition testimony of Dr. Thomas Kadesch, a Professor of Genetics at the University of Pennsylvania School of Medicine retained by ARIAD as an expert in that litigation. Dr. Kadesch submitted an expert report, and offered deposition and trial testimony, on issues of enablement, written description and priority date. ARIAD submitted Dr. Kadesch's report and testimony, together with that of Lilly's experts and the nine other ARIAD experts who testified in the *Lilly* Litigation, to the PTO in the

interest of submitting to the examiner all expert materials from that litigation.[7]

Subsequent to Dr. Kadesch's appearances in the *Lilly* Litigation, Dr. Kadesch appeared as an expert witness on behalf of F. Hoffman-LaRoche, Ltd. in a wholly unrelated case involving Amgen and LaRoche, filed as *Amgen Inc. v. F. Hoffmann-LaRoche, Ltd.*, Civil Action No. 05 CV 12237 (D. Mass.) (the "*Roche*" case).[8] The *Roche* case involved the validity of certain claims of U.S. Patent No. 5,756,349 for the production in vertebrates of the hormone, erythropoietin, and had nothing whatsoever to do with ARIAD, the '516 Patent or NF-κB. Dr. Kadesch was deposed by counsel for Amgen in the *Roche* case on June 21, 2007. Prior to December 11, 2007, Dr. Kadesch's testimony was subject to a protective order and could not lawfully be disclosed outside the *Roche* case. On December 13, 2007, very shortly after learning of Amgen's (mistaken) contention that Dr. Kadesch's June 21, 2007 testimony was inconsistent with opinions he had expressed in the *Lilly* Litigation, ARIAD submitted an IDS to the PTO attaching Dr. Kadesch's *Roche* testimony. (*See* Greenwald Decl. Ex. 10)

On December 11, 2007, the same day Hoffman-LaRoche consented to lifting the protective order with respect to Dr. Kadesch's deposition testimony in the *Roche* case, Amgen moved this Court for leave to amend its reply to ARIAD's counterclaims to "allege an additional and newly-discovered act of inequitable conduct," claiming that Dr. Kadesch, in his *Roche* testimony, had "expressly recanted"

---

[7] Notably, at no point in the reexamination proceeding has ARIAD relied substantively on the positions Dr. Kadesch advanced in the *Lilly* Litigation, simply because the issues on which he opined – enablement, written description, and priority date – are issues that are not germane to reexamination proceedings. (*See* 12/27/07 ARIAD Response to Amgen's Mot. to Amend (D.I. 530) at 8-11.)

[8] Neither ARIAD nor the Institutions are a party to the *Roche* case.

7

the opinions he had offered in the *Lilly* Litigation. (*See* 12/11/07 Amgen Mem. in Supp. of Mot. to Amend (D.I. 510) at 1.) In its briefing on that motion, Amgen contended that its new theory of inequitable conduct was not "futile" as defined by the relevant case law, because Dr. Kadesch's June 21, 2007 testimony allegedly was inconsistent with opinions he expressed in the *Lilly* Litigation, was material to the reexamination proceeding, and was intentionally concealed by ARIAD and its counsel. ARIAD explained in its response why Dr. Kadesch's testimony is immaterial to the reexamination, that ARIAD had nevertheless submitted that testimony to the PTO to moot Amgen's allegations and that nothing in the proposed allegations reflected an intent by ARIAD to defraud the PTO. (*See* 12/27/07 ARIAD Response to Amgen's Mot. to Amend (D.I. 530) at 8-11.) This Court, in a decision dated January 31, 2008, allowed Amgen to amend its reply to ARIAD's counterclaims to include allegations related to Dr. Kadesch, noting the liberal standards governing motions to amend. In its decision, this Court expressed its concern that although Kadesch's deposition was submitted to the PTO, "it was included with a number of other materials, with no attempt to advise the PTO of potential misrepresentations." (1/31/08 Mem. Order (D.I. 549) at 3.)

Three weeks after, and taking guidance from, this Court's ruling, ARIAD's reexamination counsel submitted to the PTO on February 28, 2008, IDSs attaching (1) the January 18, 2008 Mossinghoff Report and Wall Report; (2) this Court's Memorandum Order granting Amgen's motion to amend its reply; and (3) Dr. Kadesch's testimony in the *Roche* case (for a second time). (*See* Greenwald Decl. Exs. 18, 19 & 24.) The Mossinghoff Report and the Wall Report

**REDACTED**

**REDACTED**

Those IDSs also include statements that: (1) specifically direct the examiner to the Mossinghoff Report (Greenwald Decl. Ex. 24 at 2) and (2) the Wall Report (Greenwald Decl. Ex. 19 at 3); (3) advise the examiner that this Court noted in its January 31, 2008 order that "although Patentees submitted [that testimony] to the U.S. Patent Office, Patentees did not advise the U.S. Patent Office of alleged inconsistencies between Dr. Kadesch's statements on pages 258-271 of the Deposition Transcript and the statements in the October 21, 2005 Rebuttal Report of Dr. Kadesch, item 4, from [the *Lilly* Litigation]" (*id.*); and (4) advise the examiner that Dr. Wall's report "is also relevant to the alleged inconsistencies" with respect to Dr. Kadesch, which report in turn identifies the specific inconsistencies Amgen alleges (*id.*).

## IV.   Argument

### A.   Relevant Legal Standards

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense – on which the defendant bears the burden of proof at trial – a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). A finding of inequitable conduct

9

requires proof of (a) an affirmative misrepresentation of material fact or failure to disclose material information; and (b) intent to deceive the PTO. *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339-40 (Fed. Cir. 2006).

### B. Amgen's Inequitable Conduct Theories Based upon Prior Statements by Dr. Verma and Dr. Kadesch Are Moot.

Here, the parties dispute whether a material nondisclosure ever in fact occurred.[9] However, solely for purposes of this motion, ARIAD assumes that Amgen's positions have merit; that is, that: (1) Dr. Kadesch's allegedly inconsistent testimony in the *Roche* case was at one point improperly withheld from the PTO; (2) Dr. Verma's allegedly inconsistent articles were at one point improperly withheld from the PTO; and (3) these materials relating to Dr. Kadesch and Dr. Verma were "material" under the legal standards applicable to inequitable conduct analysis.

Even under the foregoing counterfactual assumptions, Amgen's defenses fail. ARIAD has now provided *all* of the allegedly withheld information to the examiner. Moreover, not only has ARIAD provided this information to the examiner (on multiple occasions), but the IDS statements submitted to the examiner also *expressly advise* the examiner of the existence of those materials and *direct* the examiner to Amgen's allegations related to those materials. In light of the timely submission of ARIAD's IDSs and related materials to the PTO, any misconduct by ARIAD has been cured, and Amgen's inequitable conduct defenses based upon the alleged nondisclosure of Dr. Kadesch's November 2007 testimony and certain articles co-authored by Dr. Verma are moot as a matter of law.

---

[9] ARIAD's and Amgen's respective positions on these issues are fully set forth in the submissions of each party's experts, as well as in their deposition testimony.

The ability to "correct," "cure" or "expiate" information submitted to the PTO is expressly recognized by the Court of Appeals for the Federal Circuit. Most recently, the Federal Circuit held that there can be no "'failure to disclose material information' to the PTO" where "the alleged material information was disclosed to the PTO at a time when it could be considered by the examiner." *Young*, 492 F.3d at 1348. In *Young*, defendant Lumenis requested a reexamination of the patent-in-suit. After the PTO issued a first Office Action, Lumenis moved for summary judgment on inequitable conduct based upon Young's alleged failure to disclose during the reexamination certain expert deposition testimony from the *Markman* hearing. *Id.* at 1341-43. The District Court granted summary judgment for Lumenis, although Young had, in fact, submitted that testimony to the PTO before the examiner issued a second Office Action. The District Court found that, because Young's submission came "only after" Lumenis filed its motion, it was therefore not on Young's "own initiative," and the Court "may properly infer an intent to deceive." *Id.* at 1343-45.

The Federal Circuit rejected those arguments in their entirety, holding that "there was no 'failure to disclose material information' to the PTO because the alleged material information was disclosed to the PTO *at a time when it could be considered by the examiner.*" *Id.* at 1348 (emphasis added). The Court further reasoned that "[t]he examiner was therefore fully apprised of the [allegedly withheld] testimony and was able to fully consider it and any potential effects it may have on the patentability of the claims before issuing his second Office Action." *Id.* at 1349. The Court found irrelevant that the alleged material information was disclosed in a reexamination proceeding "after the examiner had issued its first Office Action," because it "was disclosed before the examiner's final Office Action." *Id.* The Court also found irrelevant that the disclosure

11

of the information initially "was raised in a parallel district court action," and it was submitted to the PTO only after it was raised, explaining that "[t]he essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it." *Id.* at 1349; *see also Scripps Clinic*, 927 F.2d at 1582 ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it can not be deemed to have been withheld from the examiner.")).

ARIAD similarly has provided to the PTO all the materials Amgen alleges were withheld (*compare* Amgen's Amended Reply ¶¶ 63, 65, 67, 69, 71, 73, 75 & 77, *with* Greenwald Decl. Exs. 18, 19 & 25), and has done so "at a time when [they] could be considered by the examiner." *Young*, 492 F.3d at 1348. Pursuant to the federal regulations and the Manual of Patent Examining Procedure, which govern the conduct of the reexamination, the examiner has *no choice* but to consider those very materials. MPEP § 609 ("[T]he examiner *has an obligation to consider the information.*" (emphasis added)). Therefore, Amgen's allegations of a "failure to disclose material information" fail as a matter of law. *See Giammettei*, 34 F.3d at 54 (explaining that partial summary judgment is appropriate for striking an affirmative defense where there is "an absence of evidence to support an essential element of the non-moving party's case").

Amgen has previously attempted to characterize *Young* as factually distinguishable, because "it did not involve testimony directly recanting opinion testimony submitted to and undermining patentee arguments before the PTO (like here), did not involve evidence of intent to conceal (like here), and did not have a situation where the information was submitted after the relevant issue (written description and priority) had already been ruled upon by the PTO." (1/10/08 Amgen Reply in Supp. of Mot. to Amend (D.I. 538) at 6 n.3.) These arguments do not withstand analysis. Putting

12

aside Amgen's conclusory and unsupported allegations of intent and speculation about what the examiner may or may not consider, which assume that the examiner will disregard the duties imposed by federal regulations and the MPEP, *Young* makes clear that, so long as the alleged material information was presented to the examiner in time for it to be considered, it cannot be deemed to have been withheld.[10] 492 F.3d at 1348-49.

Amgen also has argued previously that *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1571 (Fed. Cir. 1983), "confirms that ARIAD's after-the-fact efforts do not absolve this inequitable conduct." (1/10/08 Amgen Reply in Supp. of Mot. to Amend (D.I. 538) at 6.) That argument disregards the holding in *Young*. Consistent with the examiner's duties pursuant to federal regulations and the MPEP, *Young* makes clear that the timing of the "cure" is not controlling, so long as the information is submitted in sufficient time for it to be considered by the examiner.

In any event, Amgen's reading of *Rohm & Haas* distorts the analysis of that case, which, to the contrary, provides steps for *curing* an affirmative misrepresentation to the PTO. *See Rohm & Haas*, 722 F.2d at 1572. And, although Amgen previously has suggested, to circumvent the holding of *Young*, that Dr. Verma's submission represents both an omission and a misrepresentation (which it does not), that strategy is unavailing, as ARIAD has taken all steps outlined in *Rohm & Haas* necessary to cure any affirmative representation.[11] *Cf. Young*, 492 F.3d at 1349 (rejecting

---

[10] Contrary to Amgen's assertion (*see, e.g.*, 1/10/08 Amgen Reply (D.I. 538) at 6 n.3 & 7), the examiner is currently able, and, indeed, has an obligation, to consider any issue relevant in a reexamination proceeding.

**REDACTED**

[11] The Court in *Rohm & Haas* stated:

13

the argument that a statement made in that case became a misrepresentation due to the omission of prior testimony, yet referencing *Rohm & Haas* in acknowledging that "a cure hurdle may be higher" where the issue relates "to an alleged false affidavit").

Simply put, there is no dispute that the examiner currently has in his possession all materials that Amgen alleges were improperly withheld. Moreover, to address the concerns previously expressed by the Court, ARIAD has "expressly advised" the examiner of the existence of Amgen's allegations and provided to the examiner Amgen's expert reports, which set forth Amgen's contentions. And this information has been submitted to the examiner "in time for him to act on it." *Young*, 492 F.3d at 1349. ARIAD respectfully submits that these circumstances compel a conclusion that Amgen's inequitable conduct theories based upon Dr. Verma and Dr. Kadesch are moot.

---

"The first requirement to be met by an applicant, aware of misrepresentation in the prosecution of his application and desiring to overcome it, is that he expressly advise the PTO of its existence, stating specifically wherein it resides. The second requirement is that, if the misrepresentation is of one or more facts, the PTO be advised what the actual facts are, the applicant making it clear that further examination in light thereof may be required if any PTO action has been based on the misrepresentation. Finally, on the basis of the new and factually accurate record, the applicant must establish patentability of the claimed subject matter."

722 F.2d at 1572. Here, ARIAD openly submitted the information to the PTO, the examiner was "expressly advise[d]" of the alleged inconsistencies, and ARIAD, by directing the examiner to Amgen's expert reports, "call[ed] his attention" to the allegedly misleading assertions, not leaving the examiner "to formulate his own conclusions." *Id.* Thus, ARIAD has expiated any alleged misrepresentation under the *Rohm & Haas* analysis, as well.

14

## V. Conclusion

Based upon the foregoing, ARIAD respectfully requests that the Court grant ARIAD's motion for partial summary judgment with respect to Amgen's defense of inequitable conduct based upon the submissions of Dr. Kadesch and Dr. Verma in connection with the ongoing reexamination of the '516 Patent.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: April 25, 2008