# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>              Plaintiffs,<br><br>       v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>Defendants. | C.A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>              Counterclaim<br>              Plaintiffs,<br><br>       v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and AMGEN,<br><br>              Counterclaim<br>              Defendants. | |

**ARIAD'S AND THE INSTITUTIONS' SUPPLEMENTAL RESPONSES AND OBJECTIONS
TO AMGEN'S FIRST AND SECOND SETS OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, and the Local Rules for the District of Delaware, Defendants and Counterclaim-Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology ("MIT"), The President and Fellows of Harvard College ("Harvard"), and The Whitehead Institute for Biomedical Research (collectively, with ARIAD Pharmaceuticals, Inc., MIT and Harvard, "ARIAD") hereby supplement their responses to Amgen Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing Limited, And

Immunex Rhode Island Corporation's (collectively, "Amgen") First and Second Sets of Interrogatories as follows:

## INTRODUCTION

These responses are made solely for the purpose of this action. These responses are subject to all objections as to competence, relevance, materiality, propriety and admissibility, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if such interrogatory were asked of, or statements contained herein were made by, a witness present and testifying in court. All such objections and grounds are expressly reserved.

ARIAD's responses herein, and its disclosure of information, do not constitute an acceptance of Amgen's purported Instructions or of the Definitions of words or phrases contained in the interrogatories. Consistent with applicable law, and without waiver or limitation of any of the objections, ARIAD has made a good faith effort to interpret the objectionable Definitions in Amgen's interrogatories.

The responses below reflect the current state of ARIAD's knowledge, understanding, and belief with regard to matters about which inquiry has been made. As discovery in this matter is not yet complete, ARIAD may not yet have uncovered all pertinent information or facts and may not yet have identified or located all persons with knowledge of pertinent information or facts. ARIAD consequently reserves the right to modify or supplement their responses with any subsequently discovered fact or information, or subsequently conducted analyses and research. Furthermore, these responses are provided without prejudice to using or relying on at trial any subsequently discovered information or facts, or information omitted from these responses as a result of mistake, oversight, or inadvertence.

2

## GENERAL OBJECTIONS

ARIAD asserts the following General Objections, which are incorporated into each specific response to the interrogatories set forth below as if set forth in full therein:

1.      ARIAD objects to the First and Second Sets of Interrogatories and to each definition, instruction, and interrogatory therein to the extent that they impose on ARIAD obligations that differ from or exceed those required by the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware ("Local Rules"), or any order or ruling by the Court in this action.

2.      ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent that they seek information protected by the work product doctrine, attorney-client privilege, or any other privilege or restriction on discovery. ARIAD will not produce information protected by such privileges or restrictions. Any inadvertent or unintentional disclosure of such information shall not be deemed a waiver of any applicable privilege or restriction.

3.      ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent that they are overbroad, unduly burdensome, oppressive, or seek information that is beyond the scope of discovery under the Federal Rules of Civil Procedure.

4.      ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent they are vague, ambiguous, or without sufficient specificity.

5.      ARIAD objects to the First and Second Sets of Interrogatories as premature, because, among other things, its investigation of the facts is continuing and may result in additional responses.

6.      ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent that they prematurely seek information that may be the subject of expert discovery along the schedule set by the Court.

3

7.       ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent that they seek information that is publicly available, in the possession, custody or control of Amgen or any third person or entity, or is equally accessible to Amgen.

8.       ARIAD objects to the First and Second Sets of Interrogatories and to each interrogatory therein to the extent that they call for a legal conclusion.

9.       ARIAD objects to Amgen's purported definitions of words and phrases contained in the First and Second Sets of Interrogatories. ARIAD objects to Amgen's definitions to the extent that they:  (i) are unclear, ambiguous, overly broad, or unduly burdensome; (ii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iii) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure and the Local Rules; or (iv) include assertions of purported fact that are inaccurate or at the very least are disputed by the parties to this action.

10.      ARIAD, in particular, objects to the definitions of "ARIAD," "Ariad," "Harvard," "MIT," and "Whitehead," as set forth in Appendix A of Amgen's First and Second Interrogatories, to the extent they purport to impose discovery obligations on persons or entities other than the parties to this action, and to the extent they seek discovery from individuals or entities over which ARIAD has no control.

11.      ARIAD objects to the First and Second Sets of Interrogatories and each interrogatory therein to the extent that they pertain to issues of which ARIAD has no personal knowledge.

<u>**RESPONSES TO SPECIFIC INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 2:**</u>

Identify all claims of the '516 patent that Ariad contends are infringed by the Amgen Entities based on any activities related to ENBREL, and state in detail, on a claim-by-claim basis, the legal and factual bases for Ariad's infringement contentions, including but not limited to

4

Ariad's contentions as to the proper constructions of terms and phrases in the patent claims, whether each infringement contention is literal or under the doctrine of equivalents, and providing an element-by-element analysis comparing the activities related to ENBREL that Ariad contends infringe a claim of the '516 patent to the claim that Ariad contends is infringed.

## RESPONSE TO INTERROGATORY NO. 2:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to Plaintiffs' Interrogatories as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

As ARIAD set forth in the papers supporting its Motion to Dismiss, ARIAD has never "contended" that ENBREL infringed any claim of the '516 patent and has not conducted an infringement analysis with respect to whether ENBREL infringes any claim of the '516 patent. This response is provided without prejudice to ARIAD's right to perform such an analysis at a later time. ARIAD expressly reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

ARIAD supplements its initial response to Interrogatory No. 2 as follows:

ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties. ARIAD further objects to this interrogatory as premature on the ground that the Scheduling Order issued by the Court sets forth May 21, 2007, as the date by which ARIAD is to identify the "claim term(s)/phrase(s)

that [it] believe[s] needs construction and their proposed construction of those term(s)/phrase(s)."

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Prior to the filing of this action, ARIAD has never "contended" that, or conducted any investigation to determine whether, any claims of the '516 patent are infringed, whether directly, indirectly or under the doctrine of equivalents, by Plaintiffs based on any activities related to ENBREL. In light of the Court's rulings at the hearing conducted on September 11, 2006, an investigation is being undertaken in an effort to determine whether any claims of the '516 patent are infringed, whether directly, indirectly or under the doctrine of equivalents, by Plaintiffs based on any activities related to ENBREL. This investigation, which is both complex and time consuming, is ongoing and is incomplete. ARIAD will provide further supplemental responses when and if it makes such a contention and its infringement analysis is completed.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

ARIAD supplements its response to Interrogatory No. 2 as follows:

ARIAD objects to this interrogatory insofar as the Court has not yet construed the claims of the '516 patent, ARIAD's investigation is still continuing, discovery is ongoing, and Plaintiffs did not produce any documents in this action until April 11, 2007. ARIAD reserves the right to modify or supplement its responses as ARIAD continues its investigation and as ARIAD reviews documents produced and other information provided by Plaintiffs or third parties (including but not limited to documents and information regarding ENBREL and Plaintiffs' activities related to ENBREL). ARIAD further reserves the right to modify or supplement its responses based on subsequent rulings by the Court, including but not limited to claim construction.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Plaintiffs and Wyeth have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing ENBREL, without authority or license from ARIAD. Plaintiffs' and Wyeth's activities related to ENBREL are currently believed to infringe at least the claims listed below. ARIAD's investigation is continuing and discovery is still ongoing. ARIAD has not had an opportunity to review Plaintiffs' April 11, 2007 document production, which appears to contain over half a million pages based on Bates ranges produced. ARIAD expressly reserves the right to modify or supplement the information provided below, including but not limited to adding or removing particular claims from the '516 patent.

| '516 Patent Claim | ENBREL |
|---|---|
| **Claim 1** | |
| 1. A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-kB, the method comprising reducing NF-kB activity in the cell such that expression of said gene is inhibited. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL binds to TNF and renders it unavailable for binding to TNF receptor. Under one way in which Plaintiffs and Wyeth infringe, TNF's binding to its receptor induces NF-kB activity. NF-kB is a transcription factor that regulates the expression of a variety of genes. Under one way in which Plaintiffs and Wyeth infringe, ENBREL's binding to TNF inhibits the expression of a variety of genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 2** | |
| 2. A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-kB, the method comprising reducing NF-kB activity in the cell such that expression of said genes is inhibited. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL binds selectively to TNF and renders it unavailable for binding to TNF receptor. Under one way in which Plaintiffs and Wyeth |

| '516 Patent Claim | ENBREL |
|---|---|
| | infringe, TNF's binding to its receptor induces NF-kB activity.<br><br>NF-kB is a transcription factor that regulates the expression of a variety of genes.<br><br>Under one way in which Plaintiffs and Wyeth infringe, ENBREL's binding to TNF selectively inhibits the expression of a variety of genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 5** | |
| 5. A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-kB in a eukaryotic cell comprising reducing NF-kB activity in the cell such that expression of said cytokine gene is reduced. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL binds to TNF and renders it unavailable for binding to TNF receptor.<br><br>Under one way in which Plaintiffs and Wyeth infringe, TNF's binding to its receptor induces NF-kB activity.<br><br>NF-kB is a transcription factor that regulates certain cytokine genes.<br><br>Under one way in which Plaintiffs and Wyeth infringe, ENBREL's binding to TNF reduces the level of expression of certain cytokine genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 6** | |
| 6. A method for diminishing induced NF-kB-mediated intracellular signaling comprising reducing NF-kB activity in cells such that NF-kB-mediated intracellular signaling is diminished. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL binds to TNF and renders it unavailable for binding to TNF receptor.<br><br>Under one way in which Plaintiffs and Wyeth infringe, TNF's binding to its receptor induces NF-kB-mediated intracellular signaling.<br><br>Under one way in which Plaintiffs and Wyeth infringe, ENBREL's binding to TNF diminishes induced NF-kB-mediated |

| '516 Patent Claim | ENBREL |
|---|---|
| | intracellular signaling by reducing NF-kB activity in human cells. |
| **Claim 18** | |
| 18. A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-kB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL binds to TNF (including the subtype of TNF called TNF-α) and renders it unavailable for binding to TNF receptor, thereby reducing TNF-α activity.<br><br>Under one way in which Plaintiffs and Wyeth infringe, TNF's binding to its receptor causes intracellular signaling.<br><br>Under one way in which Plaintiffs and Wyeth infringe, ENBREL's binding to TNF-α reduces intracellular signaling caused by TNF-α by reducing NF-kB activity in human cells, which are a type mammalian cell. |
| **Claim 26** | |
| 26. The method of claim 1, carried out on mammalian cells. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL is used to practice the method on human cells, which are mammalian cells. |
| **Claim 27** | |
| 27. The method of claim 1, carried out on human cells. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL is used to practice the method on human cells. |
| **Claim 29** | |
| 29. The method of claim 26 or 27, carried out on lymphoid cells. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL is used to practice the method on lymphoid cells, including white blood cells of the immune system. |
| **Claim 37** | |
| 37. The method of claim 2, carried out on mammalian cells. | See claim 26. |

9

| '516 Patent Claim | ENBREL |
|---|---|
| Claim 38 | |
| 38. The method of claim 2, carried out on human cells. | See claim 27. |
| Claim 40 | |
| 40. The method of claim 37 or 38, carried out on lymphoid cells. | See claim 29. |
| Claim 59 | |
| 59. The method of claim 5, carried out on mammalian cells. | See claim 26. |
| Claim 60 | |
| 60. The method of claim 5, carried out on human cells. | See claim 27. |
| Claim 61 | |
| 61. The method of claim 59 or 60, carried out on immune cells. | Under one way in which Plaintiffs and Wyeth infringe, ENBREL is used to practice the method on immune cells, including white blood cells of the immune system. |
| Claim 62 | |
| 62. The method of claim 59 or 60, carried out on lymphoid cells. | See claim 29. |
| Claim 70 | |
| 70. The method of claim 6, carried out on mammalian cells. | See claim 26. |
| Claim 71 | |
| 71. The method of claim 6, carried out on human cells. | See claim 27. |
| Claim 72 | |
| 72. The method of claim 70 or 71, carried out on immune cells. | See claim 61. |

| '516 Patent Claim | ENBREL |
|---|---|
| Claim 73 | |
| 73. The method of claim 70 or 71, carried out on lymphoid cells. | See claim 29. |
| Claim 183 | |
| 183. The method of claim 18, carried out on human cells. | See claim 27. |
| Claim 184 | |
| 184. The method of claim 18 or 183, carried out on immune cells. | See claim 61. |
| Claim 185 | |
| 185. The method of claim 18 or 183, carried out on lymphoid cells. | See claim 29. |

Facts relating to the above include information in the '516 patent and its prosecution history, the references cited in the prosecution history, Plaintiffs' prescribing information for ENBREL, information provided on Plaintiffs' websites at http://www.amgen.com and http://www.enbrel.com, and U.S. Patent Nos. 5,395,760; 5,605,690; 5,712,155; 5,945,397; 6,201,105; 6,572,852; and Re 36,755.

## THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

ARIAD supplements its response to Interrogatory No. 2 as follows:

ARIAD objects to this interrogatory insofar as the Court has not yet construed the claims of the '516 patent, ARIAD's investigation is still continuing, discovery is ongoing, and Plaintiffs have refused to produce certain documents responsive to ARIAD's requests. ARIAD reserves the right to modify or supplement its responses as ARIAD continues its investigation and as ARIAD reviews documents produced and other information provided by Plaintiffs or third parties (including but not limited to documents and information regarding ENBREL and Plaintiffs' activities related to ENBREL). ARIAD further reserves the right to modify or

11

supplement its responses based on subsequent rulings by the Court, including but not limited to claim construction.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Insofar as the Court may construe any of the claims identified in the Second Supplemental Response to Interrogatory No. 2 such that they are not literally infringed, Plaintiffs' and Wyeth's activities related to ENBREL infringe the identified claims under the doctrine of equivalents in at least the ways described in the claim chart.

In addition, ARIAD is investigating whether Plaintiffs' and Wyeth's activities related to ENBREL infringe additional claims of the '516 patent, including Claims 20-25, 31-36, 53-58, 64-69, and 177-182. ARIAD therefore reserves the right to supplement its response to Interrogatory No. 2 to identify at least the foregoing additional claims once its investigation is complete.

Further facts relating to the above include information in the following documents:

DeMaeyer, E. and J. DeMaeyer-Guignard, Interferons and Other Regulatory Cytokines, John Wiley and Sons, New York (1988);

Dower et al., Human cytokine receptors, J. Clin. Immunol., 10:289-99 (1990);

Goodwin et al., Molecular cloning and expression of the type 1 and type 2 murine receptors for tumor necrosis factor, Mol. Cell. Biol. 11:3020-3026 (1991);

Howard et al., Soluble tumor necrosis factor receptor: inhibition of human immunodeficiency virus activation. Proc. Natl. Acad. Sci. USA 90:2335-2339 (1993);

Lizzul et al., Differential expression of phosphorylated NF-kB/RelA in normal and psoriatic epidermis and downregulation of NF-kB in response to treatment with etanercept, J. Invest. Dermatol., 124:1275 –1283 (2005);

Mohler et al., Soluble tumor necrosis factor (TNF) receptors are effective therapeutic agents in lethal endotoxemia and function simultaneously as both TNF carriers and TNF antagonists, J. Immunol. 151:1548-1561 (1993);

Osborn et al., Tumor necrosis factor alpha and interleukin 1 stimulate the human immunodeficiency virus enhancer by activation of the nuclear factor kB, Proc. Natl. Acad. Sci. USA, 86:2336-2340 (1989);

Prescribing information for Enbrel, attached as Exhibit A to Plaintiffs' First Set of Requests for Admission;

Prescribing information for Enbrel, available at http://www.enbrel.com/ prescribing-information.jsp;

Shu et al., The tumor necrosis factor receptor 2 signal transducers TRAF2 and c-IAP1 are components of the tumor necrosis factor receptor 1 signaling complex, Proc. Natl. Acad. Sci. USA, 93:13973-13978 (1996);

Smith et al., A receptor for tumor necrosis factor defines an unusual family of cellular and viral proteins, Science, 248:1019-23 (1990);

Smith et al., T2 open reading frame from the Shope fibroma virus encodes a soluble form of the TNF receptor, Biochem. Biophys. Res. Commun., 176:335-342 (1991);

Smith et al., The TNF receptor superfamily of cellular and viral proteins: activation, costimulation, and death, Cell, 76:959-962 (1994);

Smith et al., Cowpox virus genome encodes a second soluble homologue of cellular TNF receptors, distinct from CrmB, that binds TNF but not LT alpha, Virology, 223:132-147 (1996);

Wiley et al., Identification and characterization of a new member of the TNF family that induces apoptosis, Immunity, 3:673-682 (1995)

## FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

ARIAD supplements its response to Interrogatory No. 2 as follows:

ARIAD objects to Interrogatory No. 2 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through the submission of expert reports.

13

Subject to its objections, ARIAD responds as follows:

To reduce the number of issues in the reexamination proceedings relating to the '516 patent, ARIAD cancelled, among others, claims 1, 2, 5, 26, 27, 29, 37, 38, 40 and 59-62 without disclaimer or prejudice. ARIAD is therefore removing claims 1, 2, 5, 26, 27, 29, 37, 38, 40 and 59-62 from the above list of asserted claims.

ARIAD states that Amgen and Wyeth have been and are currently contributorily infringing and/or inducing infringement of the '516 patent in the following ways, among others: Amgen and Wyeth have sold, sell, have supplied and/or supply ENBREL in and/or from the United States for use in human patients. ENBREL is a biopharmaceutical drug for use in humans; ENBREL is not a staple article or commodity of commerce. Use of ENBREL by human patients infringes the '516 patent in at least the ways indicated in the above claim chart. For at least the reasons described in the chart, use of ENBREL is a material part of the patented methods. There are no substantial noninfringing uses for ENBREL. Amgen and Wyeth were aware of the '516 patent on or about the patent issuance date of June 25, 2002. Amgen and Wyeth supply ENBREL outside of the United States with the intent that it be used by human patients. By at least such actions, Amgen and Wyeth, without authority, supply or cause to be supplied or have supplied or have caused to be supplied in or from the United States a substantial portion of the components of the asserted method claims of the '516 patent, where such components are uncombined in whole or in part, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe those method claims if such combination occurred within the United States, and/or supply or cause to be supplied or have supplied or have caused to be supplied in or from the United States a component of the asserted method claims of the '516 patent that is especially made or especially adapted for use in those method claims and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and

14

intending that such component will be combined outside of the United States in a manner that would infringe those method claims if such combination occurred within the United States.

Facts indicating that Amgen and Wyeth knew that ENBREL was especially adapted for use in an infringing manner include the history of the design and development of ENBREL as a TNF antagonist and/or TNF inhibitor, and include further information in the documents cited in response to this interrogatory. Facts indicating that Amgen and Wyeth specifically intended, and acted, to cause patients to use ENBREL include the instructions to patients and doctors contained in instructional materials distributed by Amgen and Wyeth (e.g., ENBREL prescribing information); marketing programs, services, materials and efforts to promote the use of ENBREL; Amgen's detailing efforts relating to ENBREL; deposition testimony from Amgen Entities and Wyeth, including, but not limited to, Laura Hamill, David V. Goeddel, Venkat Mukku, Craig Smith, Raymond Goodwin, Allen Reeves Jacques and Jay Marshall; and information in the documents cited in response to this interrogatory that relate use of ENBREL to (a) inhibition of TNF binding to cell surface TNF receptors, and (b) reduction of NF-kB activity.

Further facts relating to the above include information in the following documents:

AM-AR0217051-AM-AR0217143

AM-AR0225027-AM-AR0225035

AM-AR0359213-AM-AR0359221

AM-AR0359308-AM-AR0359331

AM-AR0360147-AM-AR0360154

AM-AR0360155-AM-AR0360178

AM-AR0363096-AM-AR0363104

AM-AR0402508-AM-AR0402641

AM-AR0441215-AM-AR0441215

AM-AR0441216-AM-AR0441219

AM-AR0441593-AM-AR0441623

AM-AR0441625-AM-AR0441631

AM-AR0442479-AM-AR0442492

AM-AR0442505-AM-AR0442511

AM-AR0442789-AM-AR0442802

AM-AR0444528-AM-AR0444545

AM-AR0479168-AM-AR0479189

AM-AR0511439-AM-AR0511440

AM-AR20000750-AM-AR20000768

AM-AR20000802-AM-AR20000822

AM-AR20000823-AM-AR20000827

AM-AR20045424-AM-AR20045441

AM-AR20046221-AM-AR20047009

AM-AR20032705-AM-AR20032775

WYE00101015-WYE00101016

WYE00116113-WYE00116114

WYE00352455

WYE00352459-WYE00352460

Alberts et al., Molecular Biology of the Cell, 4th Ed., Garland Science, New York (2002), at 898, 899, 1183, 1458;

Danning et al., Macrophage-derived cytokine and nuclear factor κB p65 expression in synovial membrane and skin of patients with psoriatic arthritis, Arthritis & Rheum., 43:1244-1256 (2000);

Foxwell et al., Efficient adenoviral infection with IκBα reveals that macrophage tumor necrosis factor α production in rheumatoid arthritis is NK-κB dependent, Proc. Natl. Acad. Sci. USA, 95:8211-8215 (1998).

Lizzul et al., Differential Expression of Phosphorylated NF-kB/RelA in Normal and Psoriatic Epidermis and Downregulation of NF-kB in Response to Treatment with Etanercept, J. Invest. Dermatol., 124:1275-1283 (2005).

In addition, ARIAD refers Amgen to all the documents that were produced by Complete Healthcare Communications, Inc. ("CHC") pursuant to ARIAD's subpoena to CHC, which was served on November 27, 2007.

## INTERROGATORY NO. 3:

Identify all claims of the '516 patent that Ariad contends are infringed by the Amgen Entities based on any activities related to KINERET, and state in detail, on a claim-by-claim basis, the legal and factual bases for Ariad's infringement contentions, including but not limited to Ariad's contentions as to the proper constructions of terms and phrases in the patent claims, whether each infringement contention is literal or under the doctrine of equivalents, and providing an element-by-element analysis comparing the activities related to KINERET that Ariad contends infringe a claim of the '516 patent to the claim that Ariad contends is infringed.

## RESPONSE TO INTERROGATORY NO. 3:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to Plaintiffs' Interrogatories as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. Additionally, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

As ARIAD set forth in the papers supporting its Motion to Dismiss, ARIAD has never "contended" that KINERET infringed any claim of the '516 patent and has not conducted an infringement analysis with respect to whether KINERET infringes any claim of the '516 patent. This response is provided without prejudice to ARIAD's right to perform such an analysis at a

17

later time. ARIAD expressly reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

ARIAD supplements its initial response to Interrogatory No. 3 as follows:

ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties. ARIAD further objects to this interrogatory as premature on the ground that the Scheduling Order issued by the Court sets forth May 21, 2007, as the date by which ARIAD is to identify the "claim term(s)/phrase(s) that [it] believe[s] needs construction and their proposed construction of those term(s)/phrase(s)."

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Prior to the filing of this action, ARIAD has never "contended" that, or conducted any investigation to determine whether, any claims of the '516 patent are infringed, whether directly, indirectly or under the doctrine of equivalents, by Plaintiffs based on any activities related to KINERET. In light of the Court's rulings at the hearing conducted on September 11, 2006, an investigation is being undertaken in an effort to determine whether any claims of the '516 patent are infringed, whether directly, indirectly or under the doctrine of equivalents, by Plaintiffs based on any activities related to KINERET. This investigation, which is both complex and time consuming, is ongoing and is incomplete. ARIAD will provide further supplemental responses when and if it makes such a contention and its infringement analysis is completed.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

ARIAD supplements its response to Interrogatory No. 3 as follows:

ARIAD objects to this interrogatory insofar as the Court has not yet construed the claims of the '516 patent, ARIAD's investigation is still continuing, discovery is ongoing, and Plaintiffs

did not produce any documents in this action until April 11, 2007. ARIAD reserves the right to modify or supplement its responses as ARIAD continues its investigation and as ARIAD reviews documents produced and other information provided by Plaintiffs or third parties (including but not limited to documents and information regarding KINERET and Plaintiffs' activities related to KINERET). ARIAD further reserves the right to modify or supplement its responses based on subsequent rulings by the Court, including but not limited to claim construction.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Amgen Inc., Amgen USA Inc., and Amgen Manufacturing Limited ("Kineret-Related Entities") have been and are currently directly infringing, contributorily infringing, and/or inducing infringement of the '516 patent by, among other things, making, using, offering to sell, selling and/or importing KINERET, without authority or license from ARIAD. The Kineret-Related Entities' activities related to KINERET are currently believed to infringe at least the claims listed below. ARIAD's investigation is continuing and discovery is still ongoing. ARIAD has not had an opportunity to review Plaintiffs' April 11, 2007 document production, which appears to contain over half a million pages based on Bates ranges produced. ARIAD expressly reserves the right to modify or supplement the information provided below, including but not limited to adding or removing particular claims from the '516 patent.

| '516 Patent Claim | KINERET |
|---|---|
| **Claim 1** | |
| 1. A method for inhibiting expression, in a eukaryotic cell, of a gene whose transcription is regulated by NF-kB, the method comprising reducing NF-kB activity in the cell such that expression of said gene is inhibited. | Under one way in which the Kineret-Related Entities infringe, KINERET binds competitively to IL-1 receptor without activating the receptor.<br><br>Under one way in which the Kineret-Related Entities infringe, IL-1's binding to its receptor induces NF-kB activity. |

19

| '516 Patent Claim | KINERET |
|---|---|
|  | NF-kB is a transcription factor that regulates the expression of a variety of genes.<br><br>Under one way in which the Kineret-Related Entities infringe, KINERET's binding to IL-1 receptor inhibits the expression of a variety of genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 2** |  |
| 2. A method for selectively inhibiting expression, in a eukaryotic cell, of genes whose transcription is regulated by NF-kB, the method comprising reducing NF-kB activity in the cell such that expression of said genes is inhibited. | Under one way in which the Kineret-Related Entities infringe, KINERET binds selectively and competitively to IL-1 receptor without activating the receptor.<br><br>Under one way in which the Kineret-Related Entities infringe, IL-1's binding to its receptor induces NF-kB activity.<br><br>NF-kB is a transcription factor that regulates the expression of a variety of genes.<br><br>Under one way in which the Kineret-Related Entities infringe, KINERET's binding to IL-1 receptor selectively inhibits the expression of a variety of genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 5** |  |
| 5. A method for reducing the level of expression of a cytokine gene whose transcription is regulated by NF-kB in a eukaryotic cell comprising reducing NF-kB activity in the cell such that expression of said cytokine gene is reduced. | Under one way in which the Kineret-Related Entities infringe, KINERET binds competitively to IL-1 receptor without activating the receptor.<br><br>Under one way in which the Kineret-Related Entities infringe, IL-1's binding to its receptor induces NF-kB activity.<br><br>NF-kB is a transcription factor that regulates certain cytokine genes.<br><br>Under one way in which the Kineret-Related |

| '516 Patent Claim | KINERET |
|---|---|
| | Entities infringe, KINERET's binding to IL-1 receptor reduces the level of expression of certain cytokine genes that are regulated by NF-kB by reducing NF-kB activity in human cells, which are a type of eukaryotic cell. |
| **Claim 6** | |
| 6. A method for diminishing induced NF-kB-mediated intracellular signaling comprising reducing NF-kB activity in cells such that NF-kB-mediated intracellular signaling is diminished. | Under one way in which the Kineret-Related Entities infringe, KINERET binds competitively to IL-1 receptor without activating the receptor. Under one way in which the Kineret-Related Entities infringe, IL-1's binding to its receptor induces NF-kB-mediated intracellular signaling. Under one way the Kineret-Related Entities infringe, KINERET's binding to Il-1 receptor diminishes induced NF-kB-mediated intracellular signaling by reducing NF-kB activity in human cells. |
| **Claim 18** | |
| 18. A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-kB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. | Under one way in which the Kineret-Related Entities infringe, KINERET binds competitively to IL-1 receptor without activating the receptor, thereby reducing IL-1 activity. Under one way in which the Kineret-Related Entities infringe, IL-1's binding to its receptor causes intracellular signaling. Under one way in which the Kineret-Related Entities infringe, KINERET's binding to IL-1 receptor reduces intracellular signaling caused by IL-1 by reducing NF-kB activity in human cells, which are a type of mammalian cell. |
| **Claim 26** | |
| 26. The method of claim 1, carried out on mammalian cells. | Under one way in which the Kineret-Related Entities infringe, KINERET is used to practice |

21

| '516 Patent Claim | KINERET |
|---|---|
|  | the method on human cells, which are mammalian cells. |
| **Claim 27** |  |
| 27. The method of claim 1, carried out on human cells. | Under one way in which the Kineret-Related Entities infringe, KINERET is used to practice the method on human cells. |
| **Claim 29** |  |
| 29. The method of claim 26 or 27, carried out on lymphoid cells. | Under one way in which the Kineret-Related Entities infringe, KINERET is used to practice the method on lymphoid cells, including white blood cells of the immune system. |
| **Claim 37** |  |
| 37. The method of claim 2, carried out on mammalian cells. | See claim 26. |
| **Claim 38** |  |
| 38. The method of claim 2, carried out on human cells. | See claim 27. |
| **Claim 40** |  |
| 40. The method of claim 37 or 38, carried out on lymphoid cells. | See claim 29. |
| **Claim 59** |  |
| 59. The method of claim 5, carried out on mammalian cells. | See claim 26. |
| **Claim 60** |  |
| 60. The method of claim 5, carried out on human cells. | See claim 27. |
| **Claim 61** |  |
| 61. The method of claim 59 or 60, carried out on immune cells. | Under one way in which the Kineret-Related Entities infringe, KINERET is used to practice the method on immune cells, including white |

| '516 Patent Claim | KINERET |
|---|---|
| | blood cells of the immune system. |
| **Claim 62** | |
| 62. The method of claim 59 or 60, carried out on lymphoid cells. | See claim 29. |
| **Claim 70** | |
| 70. The method of claim 6, carried out on mammalian cells. | See claim 26. |
| **Claim 71** | |
| 71. The method of claim 6, carried out on human cells. | See claim 27. |
| **Claim 72** | |
| 72. The method of claim 70 or 71, carried out on immune cells. | See claim 61. |
| **Claim 73** | |
| 73. The method of claim 70 or 71, carried out on lymphoid cells. | See claim 29. |
| **Claim 183** | |
| 183. The method of claim 18, carried out on human cells. | See claim 27. |
| **Claim 184** | |
| 184. The method of claim 18 or 183, carried out on immune cells. | See claim 61. |
| **Claim 185** | |
| 185. The method of claim 18 or 183, carried out on lymphoid cells. | See claim 29. |

Facts relating to the above include information in the '516 patent and its prosecution

history, the references cited in the prosecution history, Plaintiffs' prescribing information for

KINERET, information provided on Plaintiffs' websites at http://www.amgen.com and http://www.kineretrx.com, and U.S. Patent Nos. 5,075,222 and 6,599,873.

## THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

ARIAD supplements its response to Interrogatory No. 3 as follows:

ARIAD objects to this interrogatory insofar as the Court has not yet construed the claims of the '516 patent, ARIAD's investigation is still continuing, discovery is ongoing, and Plaintiffs have refused to produce certain documents responsive to ARIAD's requests. ARIAD reserves the right to modify or supplement its responses as ARIAD continues its investigation and as ARIAD reviews documents produced and other information provided by Plaintiffs or third parties (including but not limited to documents and information regarding KINERET and Plaintiffs' activities related to KINERET). ARIAD further reserves the right to modify or supplement its responses based on subsequent rulings by the Court, including but not limited to claim construction.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Insofar as the Court may construe any of the claims identified in the Second Supplemental Response to Interrogatory No. 3 such that they are not literally infringed, the Kineret-Related Entities' activities related to KINERET infringe the identified claims under the doctrine of equivalents in at least the ways described in the claim chart.

Further facts relating to the above include information in the following documents:

Arend, Interleukin-1 receptor antagonist: discovery, structure and properties, Prog. Growth Factor Res. 2:193-205 (1990);

Arend et al., Biological properties of recombinant human monocyte-derived interleukin 1 receptor antagonist, J. Clin. Invest. 85:1694-1697 (1990);

Arend et al., Interaction of recombinant monocyte-derived interleukin 1 receptor antagonist with rheumatoid synovial cells, Cytokine, 3:407-413 (1991);

24

DeMaeyer, E. and J. DeMaeyer-Guignard, Interferons and Other Regulatory Cytokines, John Wiley and Sons, New York (1988);

Dower et al., Human cytokine receptors, J. Clin. Immunol., 10:289-99 (1990);

Eisenberg et al., Primary structure and functional expression from complementary DNA of a human interleukin-1 receptor antagonist, Nature, 343:341-346 (1990).

Garat et al., Intracellular IL-1Ra type 1 inhibits IL-1-induced IL6 and IL-8 production in Caco-2 intestinal epithelial cells through inhibition of p38 mitogen-activated protein kinase and NF-kappaB pathways, Cytokine, 23:31-40 (2003);

Hannum et al., Interleukin-1 receptor antagonist activity of a human interleukin-1 inhibitor, Nature, 343:336-340 (1990);

Hammerberg et al., Interleukin-1 receptor antagonist in normal and psoriatic epidermis, J. Clin. Invest., 90:571-583 (1992);

Osborn et al., Tumor necrosis factor alpha and interleukin 1 stimulate the human immunodeficiency virus enhancer by activation of the nuclear factor  kB, Proc. Natl. Acad. Sci. USA, 86:2336-2340 (1989);

Prescribing information for Kineret, attached as Exhibit B to Plaintiffs' First Set of Requests for Admission;

Prescribing information for Kineret, available at http://www.kineretrx.com/pdf/pi.pdf;

Smith et al., LPS-induced expression of the human IL-1 receptor antagonist gene is controlled by multiple interacting promoter elements, J. Immunol. 153:3584-3593 (1994).

## FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:

ARIAD supplements its response to Interrogatory No. 3 as follows:

ARIAD objects to this interrogatory insofar as the Court has not yet construed the claims of the '516 patent, ARIAD's investigation is still continuing, discovery is ongoing, and Amgen has refused to produce certain documents responsive to ARIAD's requests. ARIAD reserves the

right to modify or supplement its responses as ARIAD continues its investigation and as ARIAD reviews documents produced and other information provided by Amgen or third parties (including but not limited to documents and information regarding KINERET and the Amgen's activities related to KINERET). ARIAD further reserves the right to modify or supplement its responses based on subsequent rulings by the Court, including but not limited to claim construction.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

To reduce the number of issues in the reexamination proceedings relating to the '516 patent, ARIAD cancelled, among others, claims 1, 2, 5, 26, 27, 29, 37, 38, 40 and 59-62 without disclaimer or prejudice. ARIAD is therefore removing claims 1, 2, 5, 26, 27, 29, 37, 38, 40 and 59-62 from the above list of asserted claims.

Amgen and Wyeth have been and are currently contributorily infringing and/or inducing infringement of the '516 patent as follows, among other reasons: Amgen and Wyeth have sold, sell, have supplied and/or supply KINERET in and/or from the United States for use in human patients. KINERET is a biopharmaceutical drug for use in humans; KINERET is not a staple article or commodity of commerce. Use of KINERET by human patients infringes the '516 patent in at least the ways indicated in the above claim chart. For at least the reasons described in the chart, use of KINERET is a material part of the patented methods. There are no substantial noninfringing uses for KINERET. Amgen and Wyeth were aware of the '516 patent on or about the patent issuance date of June 25, 2002. Facts indicating that Amgen and Wyeth knew that KINERET was especially adapted for use in an infringing manner include the history of the design and development of KINERET as an IL-1 antagonist and/or IL-1 inhibitor, and include further information in the documents cited in response to this interrogatory. Facts indicating that Amgen and Wyeth specifically intended, and acted, to cause patients to use KINERET include the instructions to patients and doctors contained in instructional materials distributed by Amgen and Wyeth (e.g. KINERET prescribing information); marketing

programs, services, materials and efforts to promote the use of KINERET; Amgen's and

Wyeth's detailing efforts relating to KINERET; deposition testimony from Amgen and Wyeth,

including Laura Hamill; and information in the documents cited in response to this

interrogatory that relate use of KINERET to (a) inhibition of IL-1 binding to cell surface IL-1

receptors, and (b) reduction of NF-kB activity.

   Further facts relating to the above include information in the following documents:

AM-AR0217186-AM-AR0217286

AM-AR0230486-AM-AR0230503

AM-AR0359235-AM-AR0359259

AM-AR0359260-AM-AR0359275

AM-AR0359302-AM-AR0359302

AM-AR0359303-AM-AR0359303

AM-AR0359304-AM-AR0359304

AM-AR0359305-AM-AR0359305

AM-AR0359306-AM-AR0359307

AM-AR0359362-AM-AR0359362

AM-AR0359392-AM-AR0359404

AM-AR0360147-AM-AR0360154

AM-AR0360185 AM-AR0360207

AM-AR0360208-AM-AR0360232

AM-AR0360400-AM-AR0360417

AM-AR0433118-AM-AR0433118

AM-AR0433119-AM-AR0433120

AM-AR0433121-AM-AR0433274

AM-AR0434344-AM-AR0434497

AM-AR0440259-AM-AR0440292

AM-AR0440303-AM-AR0440369

AM-AR0440411-AM-AR0440440

AM-AR0441434-AM-AR0441445

AM-AR0441475-AM-AR0441486

AM-AR0441489-AM-AR0441500

AM-AR0441593-AM-AR0441623

AM-AR0441625-AM-AR0441631

AM-AR0441690-AM-AR0441714

AM-AR0441906-AM-AR0441908

AM-AR0442012-AM-AR0442025

AM-AR0442040-AM-AR0442043

AM-AR0442044-AM-AR0442046

AM-AR0442049-AM-AR0442073

AM-AR0442074-AM-AR0442077

AM-AR0442078-AM-AR0442231

AM-AR0442232-AM-AR0442385

AM-AR0442410-AM-AR0442468

AM-AR0442505-AM-AR0442511

AM-AR0444528-AM-AR0444545

AM-AR20000750-AM-AR20000768

AM-AR20000790-AM-AR20000794

AM-AR20000795-AM-AR20000801

AM-AR20000802-AM-AR20000822

**INTERROGATORY NO. 4:**

Identify any licenses or other grant of rights, including but not limited to sublicenses, that Ariad or another party has granted for the '516 patent and/or any Related Patents, including but not limited to the name of the licensee/grantee, the date of the license/grant, the

28

rights granted under each license/grant, the royalty rate and/or other compensation arrangements under the license/grant, the royalty base, the total amount of royalties or other payments received from that licensee/grantee each month from the inception of the license/grant to the present, and the person most knowledgeable regarding such licensing/grant.

## RESPONSE TO INTERROGATORY NO. 4:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery.  ARIAD also objects to this interrogatory as overbroad and unduly burdensome, and objects to the extent that it calls for information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.  ARIAD objects to this interrogatory as overbroad and unduly burdensome, especially with regard to its use of the term "Related Patents."  In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.  ARIAD reserves the right to modify or supplement its responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

ARIAD supplements its initial response to Interrogatory No. 4 as follows:

ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs to documents produced or to be produced in this action from which the answers to this

interrogatory may be ascertained. Specifically, ARIAD directs Plaintiffs to the transcript of the deposition of ARIAD Pharmaceuticals, Inc. through its representative, Dr. Harvey J. Berger, dated July 29, 2005, in ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co., 02-11280 (D. Mass.). The person with most knowledge concerning the information requested in this interrogatory is Dr. Harvey J. Berger.

ARIAD also directs Plaintiffs to the following documents:

License Agreement between Massachusetts Institute of Technology, the Whitehead Institute, Harvard University, and ARIAD, dated August 19, 1991, as subsequently amended by the First Amendment, dated November 20, 2001, and subsequently amended by the Second Amendment, dated January 2, 2002;

Non-Exclusive Research License Agreement between Bristol-Myers Squibb Company and ARIAD, dated November 6, 2002;

Non-Exclusive License Agreement between DiscoveRx Corporation and ARIAD, dated May 2, 2003.

ARIAD is continuing to investigate the information requested in this interrogatory. ARIAD will supplement its responses and will identify additional documents when and if it locates further non-privileged, relevant information.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

ARIAD and/or the Institutions have entered into the following agreements relating to rights to the '516 patent and/or Related Patents:

Collaborative Research Agreement between Massachusetts Institute of Technology and Centocor, Inc. dated November 1988;

License Agreement between Massachusetts Institute of Technology, the Whitehead Institute, Harvard University, and ARIAD, dated August 19, 1991, as subsequently amended by the First Amendment, dated November 20, 1991, and subsequently amended by the Second Amendment, dated January 2, 2002;

30

License Agreement between Massachusetts Institute of Technology and the National Science Foundation dated August 20, 1992.

Non-Exclusive Research License Agreement between Bristol-Myers Squibb Company and ARIAD, dated November 6, 2002;

Non-Exclusive License Agreement between DiscoveRx Corporation and ARIAD, dated May 2, 2003.

The persons with most knowledge concerning the information requested in this interrogatory are Lita Nelsen and Dr. Harvey J. Berger.

## INTERROGATORY NO. 6:

For each of the claims of the '516 patent, explain in detail the dates and circumstances of the conception, actual and/or constructive reduction to practice, first written description, first disclosure to another, first public sale, and first public use, including but not limited to identifying all documents, materials and/or witnesses that Ariad contends corroborate or support the dates and circumstances identified or that contradict or may contradict Ariad's contentions as to such dates and circumstances.

## RESPONSE TO INTERROGATORY NO. 6:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD objects to this interrogatory as compound and consisting of multiple subparts which properly should be counted as separate interrogatories. ARIAD also objects to this interrogatory to the extent that it seeks information more properly acquired through other methods of discovery. In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD reserves the right to modify or supplement its

contentions and responses as ARIAD receives additional information from Plaintiffs or third

parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

ARIAD supplements its initial response to Interrogatory No. 6 as follows:

ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion

to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections,

ARIAD responds as follows:

The claims of the '516 patent were conceived and reduced to practice no later than April

21, 1989, and U.S. Patent Application Ser. No. 07/341,436 evidences such conception and

reduction to practice.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs

to documents produced or to be produced in this action from which the answers to this

interrogatory may be ascertained.  Specifically, ARIAD directs Plaintiffs to the prosecution

history of the '516 patent.

In addition, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD

refers Plaintiffs to the following documents from *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly &*

*Co.*, 02-11280 (D. Mass.):

ARIAD's responses to Eli Lilly & Co.'s Interrogatory No. 8;

Rule 26(a)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D.;

Rule 26(a)(2) Rebuttal Report of George R. Stark. Ph.D.;

Deposition of Patrick Baeuerle, dated December 1, 2004;

Deposition of Albert Baldwin, dated October 26, 2004;

Deposition of David Baltimore, dated August 23, 2004;

Deposition of Chen-Ming Fan, dated October 21, 2004;

Deposition of Thomas Kadesch, dated December 20, 2005

Deposition of Jonathan Lebowitz, dated June 28, 2004;

Deposition of Michael Lenardo, dated October 22, 2004;

Deposition of Thomas Maniatis, dated November 10, 2004;

Deposition of Ranjan Sen, dated October 12, 2004;

Deposition of Phillip Sharp, dated September 30, 2004;

Deposition of Harinder Singh, dated June 30, 2004;

Deposition of George Stark, dated December 9, 2005;

Transcripts of jury trial held between April 10, 2006 and April 28, 2006;

Special verdict form, dated May 4, 2006;

Transcripts of bench trial held between August 7, 2006 and August 10, 2006.

ARIAD is continuing to investigate the information requested in this interrogatory. ARIAD will supplement its responses and will identify additional documents when and if it locates further non-privileged, relevant information.

### SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:

ARIAD supplements its response to Interrogatory No. 6 as follows:

Subject to its objections, ARIAD states that it is unaware of any public use of the invention embodied in the asserted claims of the '516 patent occurring prior to the priority date of each of the asserted claims, as set forth in ARIAD's Response to Amgen's Interrogatory No. 7.

ARIAD further states that claims 6, 70, 71, 72, and 73 were first constructively reduced to practice on March 1, 1988 by the filing of U.S. App. Ser. No. 07/162,680. Claims 18, 183, 184 and 185 were first reduced to practice on April 21, 1989 by the filing of U.S. App. Ser. No. 07/341,436. Each claim of the '516 patent was conceived no later than its constructive reduction to practice.

### INTERROGATORY NO. 7:

For each of the claims of the '516 patent, identify what Ariad contends is its effective priority date and explain in detail the factual and legal bases supporting that date, including but

33

not limited to specific citations to any and all portions of any patent application that Ariad contends provide written description and enablement support for such claim of priority, and identify all documents, materials and/or witnesses that Ariad contends corroborate or support the dates identified or that contradict or may contradict Ariad's contentions as to the dates identified.

## RESPONSE TO INTERROGATORY NO. 7:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery.  ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.  In addition, ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:

ARIAD supplements its initial response to Interrogatory No. 7 as follows:

ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

The priority date for the '516 patent is no later than April 21, 1989, and U.S. Patent Application Ser. No. 07/341,436 provides written description for and enables the '516 patent.

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs to documents produced or to be produced in this action from which the answers to this interrogatory may be ascertained.  Specifically, ARIAD directs Plaintiffs to the prosecution

history of the '516 patent, and to the public records of the reexaminations listed in response to Interrogatory No. 5.

In addition, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs to the following documents from *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.):

ARIAD's responses to Eli Lilly & Co.'s Interrogatory No. 8;

Rule 26(a)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D.;

Rule 26(a)(2) Rebuttal Report of George R. Stark, Ph.D;

Deposition of Patrick Baeuerle, dated December 1, 2004;

Deposition of Albert Baldwin, dated October 26, 2004;

Deposition of David Baltimore, dated August 23, 2004;

Deposition of Brendan Boyce, dated December 17, 2005;

Deposition of Chen-Ming Fan, dated October 21, 2004;

Deposition of Thomas Kadesch, dated December 20, 2005

Deposition of Jonathan Lebowitz, dated June 28, 2004;

Deposition of Michael Lenardo, dated October 22, 2004;

Deposition of Thomas Maniatis, dated November 10, 2004;

Deposition of Ranjan Sen, dated October 12, 2004;

Deposition of Phillip Sharp, dated September 30, 2004;

Deposition of Harinder Singh, dated June 30, 2004;

Deposition of George Stark, dated December 9, 2005;

Transcripts of jury trial held between April 10, 2006 and April 28, 2006;

Special verdict form, dated May 4, 2006;

Transcripts of bench trial held between August 7, 2006 and August 10, 2006;

Expert Report of David Latchman, DSc., Ph.D.;

Reply Expert Report of David Latchman, DSc., Ph.D.

ARIAD is continuing to investigate the information requested in this interrogatory. ARIAD will supplement its responses and will identify additional documents when and if it locates further non-privileged, relevant information.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

ARIAD supplements its response to Interrogatory No. 7 as follows:

ARIAD objects to Interrogatory No. 7 because it is overly broad, unduly burdensome and oppressive to the extent it seeks contentions regarding the priority date of "each of the claims of the '516 patent." ARIAD limits its response herein to the claims it has asserted against Amgen.

ARIAD objects to Interrogatory No. 7 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court. ARIAD thus reserves the right to modify or supplement its contentions and responses to this interrogatory as discovery in this action proceeds, including through the submission of expert reports.

Subject to its objections, ARIAD states that the asserted claims are entitled under 35 U.S.C. §§ 120-21 to the benefit of at least the April 21, 1989 filing date of United States Patent Application Serial No. 07/341,436. Claims 6, 70, 71, 72 and 73 are entitled to the benefit of the March 1, 1988 filing date of United States Patent Application Serial No. 07/162,680. Support for the asserted claims may be found in United States Patent Application Serial No. 08/464,364 from which the '516 patent issued as well as United States Patent Application Serial Nos. 07/341,436 (filed April 21, 1989), 07/318,901 (filed March 3, 1989), and 07/162,680 (filed March 1, 1988) and in applications incorporated by reference therein, as set forth in the following chart:

| Claim No. | Effective Filing Date | Support (page:lines) |
|---|---|---|
| 6 | March 1, 1988 | S.N. 07/162,680: (1:27-2:9), (2:11-15), (2:16-29), (3:7-30), (4:1-5:25), (6:6-18), (6:25-7:16), (11:22-13:10), (13:23-17:20), (17:22-30), (20:8-21:5), (25:8-27:6) and the accompanying Figures 1-3, 5-9.<br><br>S.N. 07/318,901: (2:4-14), (2:16-3:2), |

| | | |
|---|---|---|
| | | (3:11-32), (4:6-5:31), (6:13-10:24), (10:26-11:22), (12:11-16), (16:25-18:26), (20:17-22:25), (22:26-23:2), (23:4-24:4), (25:24-29:32), (30:1-11), (32:6-33:15), (33:20-34:32), (38:5-39:2) and the accompanying Figures 1-3, 5-14.<br><br>S.N. 07/341,436: (2:20-3:14), (4:15-24), (5:7-16), (5:23-6:8), (6:13-19), (6:20-9:24), (9:26-10:6), (10:16-11:9), (12:10-23), (18:18-20:13), (22:13-24), (23:12-21), 23:24-24:2), (29:1-30:22) and the accompanying Figures 1-4. |
| 18 | April 21, 1989 | S.N. 07/341,436: (2:20-3:14), (4:15-24), (5:7-16), (5:23-6:8), (6:13-19), (6:20-9:24), (9:26-10:6), (10:16-11:9), (12:10-23), (18:18-20:13), (22:13-24), (22:25-23:3), (23:12-21), (23:24-24:2), (29:1-30:22) and the accompanying Figures 1-4. |
| 70 | March 1, 1988 | See response to claim 6, in particular:<br><br>S.N. 07/162,680: (2:11-15), (7:9-13), (15:14-17:30).<br><br>S.N. 07/318,901: (22:26-31).<br><br>S.N. 07/341,436: (23:24-27), (U.S. Serial No. 07/155,207, p.77:7-9, as incorporated into '436 on 1:1-8). |
| 71 | March 1, 1988 | See response to claim 6, in particular:<br><br>S.N. 07/162,680: (15:14-17:30).<br><br>S.N. 07/318,901: (22:26-31).<br><br>S.N. 07/341,436: (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |
| 72 | March 1, 1988 | See response to claim 6, in particular:<br><br>S.N. 07/318,901: (22:26-31).<br><br>S.N. 07/341,436: (12:10-13), (21: 1-23), |

|  |  | (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |
|---|---|---|
| 73 | March 1, 1988 | See response to claim 6, in particular:<br><br>S.N. 07/318,901: (22:26-31).<br><br>S.N. 07/341,436: (12:10-13), (21:19-23), (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |
| 183 | April 21, 1989 | See response to claim 18, in particular:<br><br>S.N. 07/341,436: (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |
| 184 | April 21, 1989 | See response to claim 18, in particular:<br><br>S.N. 07/341,436: (12:10-13), (21:1-23), (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |
| 185 | April 21, 1989 | See response to claim 18, in particular:<br><br>S.N. 07/341,436: (12:10-13), (21:19-23), (23:24-27), (31:6-12), (U.S. Serial No. 07/155,207, p.2:17-21, as incorporated into '436 on 1:1-8). |

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Amgen to documents produced or to be produced in this action from which the answers to Interrogatory No. 7 may be ascertained. Specifically, ARIAD directs Amgen to the prosecution history of the '516 patent and the applications listed above.

**INTERROGATORY NO. 8:**

Explain in detail Ariad's contention as to the qualifications for a person who is of ordinary skill in the art for the subject matter disclosed and/or claimed in the '516 patent,

including but not limited to the educational and work experience qualifications that person would have, and identify the legal and factual bases on which Ariad relies in support of that contention.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD objects to this interrogatory to the extent it seeks information regarding contentions that ARIAD has not made. Furthermore, ARIAD objects to this interrogatory to the extent it seeks information more appropriately sought through expert discovery. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:**

ARIAD supplements its initial response to Interrogatory No. 8 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs to documents produced or to be produced in this action from which the answers to this interrogatory may be ascertained. Specifically, ARIAD directs Plaintiffs to the prosecution history of the '516 patent. ARIAD also directs Plaintiffs to the Rule 26(a)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D., and to trial testimony of Thomas R. Kadesch, Ph.D. on April 27, 2006 in *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.). ARIAD is continuing

to investigate the information requested in this interrogatory and will supplement its responses when and if it locates further non-privileged, relevant information.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8:

ARIAD supplements its response to Interrogatory No. 8 as follows:

Subject to its objections, ARIAD states that the qualifications for a person of ordinary skill in the art for the subject matter disclosed and/or claimed in the '516 patent in the relevant time frame is a scientist with a Ph.D. in chemistry, biology or related field or a degree in medicine. The person of ordinary skill in the art also has three or more years of post-doctoral laboratory training or other laboratory experience related to molecular biology and more specifically, gene regulation.

## INTERROGATORY NO. 9:

Identify all prior art to the '516 patent (for purposes of this interrogatory, that in existence as of June 5, 1995) of which Ariad is aware, including but not limited to any and all references that any third party has asserted may be invalidating prior art to the '516 patent.

## RESPONSE TO INTERROGATORY NO. 9:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD further objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, settlement privilege, or any other applicable privilege or protection. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:

ARIAD supplements its initial response to Interrogatory No. 9 as follows:

ARIAD objects to this interrogatory as unduly burdensome because it requires ARIAD to survey all of its employees and agents. ARIAD also objects to this interrogatory because the term "prior art" is vague and ambiguous, and requires ARIAD to make a legal determination. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD refers Plaintiffs to the references cited in the prosecution history of the '516 patent, and the references cited in the reexaminations listed in response to Interrogatory No. 5.

ARIAD also refers Plaintiffs to the references cited in discovery responses, expert reports, and submissions to the court, in *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.). In particular, ARIAD refers Plaintiffs to:

Expert Report of Peter Barnes, Ph.D.;

Reply Expert Report of Peter Barnes, D.M. D.S.c.;

Expert Report of Dr. Jesus Egido;

Reply Expert Report of Dr. Jesus Egido;

Expert Report of Stanley Lieberstein;

Reply Expert Report of Stanley Lieberstein;

Expert Report of David Latchman, DSc., Ph.D.;

Expert Report of Stavros C. Manolagas, M.D., Ph.D.;

Reply Expert Report of Stavros C. Manolagas, M.D., Ph.D., Regarding Invalidity of the Asserted Claims;

Eli Lilly & Company's Notice Pursuant to 35 U.S.C. Section 282, filed March 10, 2006.

ARIAD is continuing to investigate the information requested in this interrogatory and will supplement its responses when and if it locates further non-privileged, relevant information.

41

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:

ARIAD objects to Interrogatory No. 9 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and with respect to contentions on which Amgen bears the burden of proof and production. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through the submission of expert reports.

ARIAD objects to Interrogatory No. 9 because it seeks a response concerning patent claims that have not been asserted against Amgen in this case, and with respect to references that postdate the priority dates of the asserted claims.

Subject to its objections, ARIAD states that the following references and documents have been cited by other parties as prior art, but does not concede that any reference identified in this response invalidates or is relevant prior art to the '516 patent:

Abraham et al., JAMA, 273(12):934-41 (1995)
Alkalay et al., Mol Cell Biol., 15(3):1294-301 (1995)
Alroy et al., Mol Cell Biol., 15(10):5789-99 (1995)
Aronica and Katzenellenbogen, Mol Endocrinol., 7(6):743-52 (1993)
Auphan et al., Science, 270:286-290 (1995)
Badger et al., Int J Immunopharmacol., 6(5):467-73 (1984)
Baeuerle and Baltimore, Cell, 53:211-217 (1988)
Baeuerle and Baltimore, Science, 242(4878):540-6 (1988)
Baeuerle and Henkel, Annu. Rev. Immunol., 12:141-179 (1994)
Baeuerle et al., Cold Spring Harbor Symposia on Quantitative Biology,
(53):789-798 (1988)
Bacuerle, Biochim Biophys Acta, 1072(1):63-80 (1991)
Baeuerle, P. et al., Cold Spring Harbor Symposium, 53:789-798 (1988)
Baeurle, P.A. and Baltimore, D., The Control of Human Retrovirus
Gene Expression, Banbury Conference, Cold Spring Harbor, NY, pp. 217-226 (1988)
Baldwin and Sharp, Mol. Cel. Biol., 7(1):305-313 (1987)
Baldwin and Sharp, PNAS USA, 85(3):723-7 (1988)
Baldwin et al., J. Clin. Invest., 107:63-80 (1991)
Baldwin et al., Proc. Nat'l Acad. Sci., 85:723 (1988)
Ballard et al., Cell., 63(4):803-14 (1990)
Ballard, D.W., et al., Science, 241:1652- 1657 (1988)
Baltimore Declaration in 08/464,364 application

Baltimore, Nature, 335:395-396 (1988)

Banerji, J. et al., Cell, 33:729- 740 (1983)

Bass et al., Proteins, 8(4):309-14 (1990)

Baumgartner et al., Lancet, 2(8446):59-63 (1985)

Beg et al., Mol Cell Biol., 13(6):3301-10 (1993)

Beg et al., Nature, 376:167-170 (1995)

Bell, R. M., Cell, 45:631-632 (1986)

Bellido, J Clin Invest., 95(6):2886-95 (1995)

Bennett et al., JAMA, 183(6): 462-465 (1963)

Berg et al., J Biol Chem., 270(26):15447-50 (1995)

Bergman, Y. et al., PNAS USA, 81:7041-7045 (1984)

Berns et al., Breast Cancer Res Treat., 4(3):195-204 (1984)

Beutler et al., Science, 232(4753):977-80 (1986)

Bielinska et al., Science, 250(4983):997-1000 (1990)

Black et al., J Clin Invest., 93(1):63-9 (1994)

Blanar et al., The EMBO Journal, 8(4):1139-1144 (1989)

Blanar, M.A. et al., Mol. & Cell. Biol., 9(2):844-846 (1989)

Blanco-Colio Manuscript entitled "Moderate alcohol intake decreases Nuclear Factor kappa-B activation in Mononuclear cells and circulating MCP-1 concentrations in healthy volunteers during a fat-enriched diet"

Blemis, J. and Erikson, R. L., PNAS USA, 83:1733-1737 (1986)

Blochlinger, Nature, 333(6174):629-635 (1988)

Boda et al., Folia Biol (Praha), 33(2):93-7 (1987)

Bohnlein et al., Cell, 53(5):827-36 (1988)

Bone et al., Crit Care Med., 23(6):994-1006 (1995). Erratum in: Crit Care Med, 23(9):1616 (1995)

Bone et al., N Engl J Med., 317(11):653-8 (1987)

Borel et al., Agents Actions., 6(4):468-75 (1976)

Borel et al., Immunology, 32(6):1017-25 (1977)

Branson et al., Lancet, 2(8360):1165-8 (1983)

Bressler et al., J Virol, 67(1):288-93 (1993)

Brini et al., Eur Cytokine Netw., 1(3):131-9 (1990)

Brown et al., PNAS USA, 90(6):2532-6 (1993)

Brown et al., Science, 267(5203):1485-8 (1995)

Brueckmann et al., "Anti-Inflammatory and Profibrinolytic Mechanisms of Action of Recombinant Human Activated Protein C," Research Proposal

Brueckmann et al., "Recombinant Human Activated Protein C in the Treatment of Coagulopathy and Inflammation in Severe Sepsis"

Brun-Buisson et al., JAMA, 274(12):968-74 (1995)

Caldenhoven et al., Mol Endocrinol., 9(4):401-12 (1995)

Celenza, J. L. and Carlson, M., Science, 233(4769):1175-1180 (1986)

43

Cho and Katzenellenbogen, Mol Endocrinol., 7(3):441-52 (1993)

Chu et al., Nucleic Acids Res., 15(3):1311-26 (1987)

Church, G. M. et al., Nature, 313:798-801 (1985)

Clark et al., Genes & Dev., 2(8):991-1002 (1988)

Cogswell et al., J Immunol., 150(7):2794-804 (1993)

Collart et al., J Immunol., 139(3):949-55 (1987)

Collart et al., Mol Cell Biol., 10(4): 1498-506 (1990)

Colston et al., Endocrinology, 108(3): 1083-6 (1981)

Colucci et al., J Clin Invest., 74(1):200-4 (1984)

Comp and Esmon, J Clin Invest., 68(5):1221-8 (1981)

Cronin et al., Crit Care Med., 23(8):1430-9 (1995)

Cross et al., Science, 244:466-469 (1989)

Cunningham et al., Science, 244(4908):1081-5 (1989)

Cupps and Fauci, Immunol Rev., 65:133-55 (1982)

Davis et al., Science, 253(5025)1:268-71 (1991)

DeMaeyer, E. and J. DeMaeyer-Guignard, John Wiley and Sons, New York (1988)

Dew et al., Br Med J (Clin Res Ed)., 287(6384):23-4 (1983)

DiMasi et al., J Health Econ., 10(2):107-42 (1991)

DiMasi et al., Pharmacoeconomics, 7(2):152-69 (1995)

Dingnam, J. D. et al., Nucleic Acids Research, 11(5):1475-1489 (1983)

Dobrilla et al., Hepatogastroenterology, 31(1):35-7 (1984)

Dynan, W. S. and R. Tjian, Cell, 32(3):669-680 (1983)

Eck et al., Mol Cell Biol., 13(10):6530-6 (1993)

Emerick et al., "Preclinical Pharmacology of Activate Protein C in the Pharmacology and Toxicology of Proteins," Holcenberg J.S. and Winkelhake, J.L. eds., pp. 351-67 (1987)

Emmel et al., Science, 246(4937):1617-20 (1989)

Eng et al., The Journal of Antibotics, 37(10):1231 – 1237 (1984)

Enoch et al., Mol. Cell Biol., 6(3):801-810 (1987)

EP 0 407 411 B1, published on November10, 1993, invented by Baeuerle and Baltimore

Ephrussi, A. et al., Science, 227(4683):134-140 (1985)

Esmon et al., J Biol Chem., 251(10):3052-6 (1976)

Eukaryotic Transcription Factors

Evans et al., Endocrinology, 134(5):2283-8 (1994)

Excerpt from Benjamin Lewin, Genes, (4th ed. 1990)

Excerpts from 3 International Dictionary of Medicine and Biology (1986)

Excerpts from Eleanor Lawrence, Henderson's Dictionary of Biological Terms (10th ed. 1989)

Excerpts from Emil R. Unanue, Macrophages, Antigen-Presenting Cells, and the Phenomena of Antigen in Fundamental Immunology (William E. Paul ed., 2d ed. 1989)

Excerpts from Merriam Webster's Ninth New Collegiate Dictionary (1983)

Excerpts from the Cambridge Dictionary of Science and Technology (Peter M. B. Walker, Ed., 1988)

Excerpts from the Concise Encyclopedia of Biochemistry (Thomas Scott Trans., 1983)

Fan and Maniatis, EMBO J., 8(1):101-10 (1989)

Fan and Maniatis, Genes Dev., 4(1):29-42 (1990)

Fan and Maniatis, Nature, 354(6352):395-8 (1991)

Fawell et al., PNAS USA, 91(2):664-8 (1994)

Fenteany et al., Science, 268(5211):726-31 (1995)

File History for SN 07/155,207

File History for US Pat. No. 6,545,027, issued on June 7, 1995 to Berg et al

Finco and Baldwin, Immunity, 3(3):263-72 (1995)

Fire, A. et al. J. Biol. Chem., 259(4):2509 (1984)

Fletcher, C. et al., Cell, 51(5):773-781 (1987)

Flournoy et al., Med Microbiol Immunol (Berl)., 175(4):221-7 (1986)

Foster, J. et al., Nature, 315:423-425 (1985)

Frantz et al., EMBO J., 13(4):861-70 (1994)

Franza et al., Nature, 330:391-395 (1987)

Fried and Crothers, Nucleic Acids Res., 9(23):6505-25 (1981)

Friedman, Nature, 335(6189):452-4 (1988)

Fujita et al., Cell, 49:357-367 (1987)

Galas, D. and Schmitz A., Nucl. Acids Res., 5:3157-3170 (1978)

Gallop et al., J Med Chem., 37(9):1233-51 (1994)

"Garlic," Botanical.com

Garner, M. M. and Revzin, A., Nucleic Acids Res., 9(13):3047-3060 (1981)

Gaziano et al., N Engl J Med., 329(25):1829-34 (1993)

Gehering, Science, 236: 1245-1252 (1987)

Gendelman, H. E. et al., PNAS USA, 83:9759-9763 (1986)

Gerster, T., et al., EMBO J., 6(5):1323-1330 (1987)

Gesner et al., J Cell Physiol., 136(3):493-9 (1988)

Ghosh and Baltimore, Nature, 344(6267):678-82 (1990)

Giguere, V. et al., Nature, 330:625-629 (1987)

Gill and Ptashne, Cell, 51: 121-126 (1987)

Gill and Ptashne, Nature, 334(6184):721-4 (1988)

Gillies, S. D. et al., Cell, 33:717 (1983)

Gillis and Watson, J Exp Med., 152(6)1709-19 (1980)

Gilman et al., Mol. Cell. Biol., 6:4305-4316 (1986)

Gimble et al., J. Virol., 62:4104-4112 (1988)

Glorious Tea - The origins of Tea, www.tea.co.uk/tGloriousT/index.htm

Goldfeld and Maniatis, PNAS USA, 86(5):1490-4 (1989)

Goldfeld et al., PNAS USA, 87(24):9769-73 (1990)

Goodbourn and Maniatis, PNAS USA, 85(5):1447-51 (1988)

Goodbourn et al., Cell, 45:601-610 (1986)

Goodbourn, S. et al., Cell, 41: 509-520 (1985)

Goodman & Gilman, The Pharmacological Basis of Therapeutics, 1466-96 (1980)

Goodman and Gilman, The Pharmacological Basis of Therapeutics, 9th Ed.
New York: McGraw Hill, pp. 625-631, 1712, 1780 (1990)

Goodman and Gilman, The Pharmacological Basis of Therapeutics, 9th Ed.
New York: McGraw Hill, pp. 633-635, 1783 (1990)

Gorman et al., Mol. Cell. Biol., 2:1044-1051 (1982)

Grabowski and Vernon, "A New Look at the Returns and Risks to Pharmaceutial R&D,"
Management Science, pages 804-821 (1990)

Grabowski and Vernon, Journal of Health Economics, 13:383-406 (1994)

Grabowski, Chapter 3, Medical Innovation at the Crossroads, Volume II, The Changing
Economics of Medical Technology, pages 37-51 (1991)

Grabowski, Economics excerpt from "Medical Innovation at the Crossroads:
The Changing of Medical Technology," pages 35-52 (1991)

Granelli-Piperno et al., J Exp Med., 163(4):922-37 (1986)

Granowitz et al., Blood, 82(10):2985-90 (1993)

Greenman et al., The XOMA Sepsis Study Group. JAMA, 266(8):1097-102 (1991)

Griffin et al., J Clin Invest., 68(5):1370-3 (1981)

Griffith et al., Ann Surg., 196(3):324-9 (1982)

Griffith et al., J Thorac Cardiovasc Surg., 88(6):952-7 (1984)

Grilli et al., Int Rev Cytol., 143:1-62 (1993)

Grilli et al., Mol Immunol., 30(14):1287-94 (1993)

Grollman, A. P., J. Biol. Chem., 242:3226-3233 (1967)

Groschedi R. and Birsteil M. L., PNAS USA, 79:297(1982)

Grosschedi, R. and Baltimore, D., Cell, 41:885-897 (1985)

Gruber and Griffin, Blood, 79(9):2340-8 (1992)

Gruber et al., Lancet, 342(8882):1275-6 (1993)

Gubler, U. and Hoffman, B. J., Genes, 25:263-269 (1983)

Hager, D. A. and R. R. Burgess, Anal. Biochem., 109:76-86 (1980)

Hahn et al., J Clin Invest., (3):274-81 (1951)

Handschultz et al., Science, 240:1759-1764 (1988)

Hansen, U. and P. A. Sharp, EMBO J., 2:2293 (1983)

Harada, S. et al., Virology, 154:249-258 (1986)

Haskill et al., Cell, 65(7):1281-9 (1991)

Hen, R. et al., PNAS USA, 79:7132 (1982)

Hench, P., Nobel Lectures Physiology or Medicine, 1942-1962 (1964)

Henkel, Biol Chem Hoppe Seyler, 376(1):9-16 (1995)

Henkel, Cell, 68(6):1121-33 (1992)

Hinshaw et al., Circulatory Shock, 16:365-277 (1985)

Hinshaw et al., Surg Gynecol Obstet., 163(4):335-44 (1986)

Hiscott et al., Mol Cell Biol., 13(10):6231-40 (1993)

Ho et al., PNAS USA, 86:6714 (1989)

Holick et al., PNAS USA, 68(4):803-4 (1971)

Hope et al., Nature, 333: 635-640 (1988)

Hope, I. A. and K. Struhl, EMBO J., 6:2781 (1987)

Horowitz et al., J Clin Invest., 83(1):149-57 (1989)

Horuk, J Immunol Methods, 119(2):255-8 (1989)

Ito et al., Nucleic Acids Res., 22(18):3787-92 (1994)

Jilka et al., Science, 257(5066):88-91 (1992)

Johnston et al., Science, 260:1286-1293 (1993)

Jones et al., Pharm. & Tox., 60:217-20 (1987)

Jones, K. A. et al., Science, 232:755-759 (1986)

Jones, Pharmacol Toxicol., 60(3):217-20 (1987)

Kaltschmidt et al., Biol. Chem. Hoppe-Seyler, 376:9-16 (1995)

Kaltschmidt et al., PNAS USA, 92(21):9618-22 (1995)

Karin, Haslinger, Holtgreve, Cathala, Slater, Baxter, Cell, 36(2):371-9 (1984)

Kawakami, K., et al., PNAS USA, 85:4700-4704 (1988)

Kay et al., Immunology, 50(3):441-6 (1983)

Keller and Maniatis, PNAS USA, 85(10):3309-13 (1988)

Kerr et al., Genes Dev., 5(8):1464-76 (1991)

Kikkawa, U. and Y. Nishizuka, Ann. Rev. Cell. Biol., 2:149 (1986)

King James Version Bible (1611) (excerpts)

Kisiel et al., Biochemistry, 15(22):4893-900 (1976)

Ko, H.-S., et al., Cell, 55:135-144 (1988).

Kochel et al., Oncogene, 6(4):615-26 (1991)

Kopp and Ghosh, Science, 265:956-959 (1994)

Kozak, Cell, 44: 283-292 (1986)

Kraft, A. S. et al., J. Biol. Chem., 257:13193 (1983)

Kramer et al., J Biol Chem., 270(12):6577-83 (1995)

Kronke et al., PNAS USA, 81(16):5214-8 (1984)

Kuhl et al., Cell, 50:1057-1069 (1987)

Kumagai et al., J Immunol., 141(11):3747-52 (1988)

Laemmli, U. K., Nature, 227:680-685 (1970)

Lai and Tan, The Journal of Biological Chemistry, 269(48):30077-30080 (1994)

Lander et al., The Journal of Immunology, 150(4):1509-1516 (1993)

Landolfi, N. F., et al., Nature, 323:548-51 (1986)

Landschultz et al., Genes & Development, 2: 786-800 (1988)

Landschultz et al., Science, 240: 1759- 1764 (1988)

Lawson et al., Nature, 230(5291):228-30 (1971)

Lee, W. et al., Cell, 49:741-752 (1987)

Lefering and Neugebauer, Crit Care Med., 23(7):1294-303 (1995)

47

Lemire et al., J Clin Invest., 74(2):657-61 (1984)

Lemire et al., J Immunol., 134(5):3032-5 (1985)

Lemischka, I. R., Farmer, S., Racaniello, V. R. and Sharp, P. A., J. Mol. Biol., 151:101-120 (1981)

Lenardo and Baldwin, Cell, Jul 28;58(2):227-9 (1989)

Lenardo and Baltimore, "NF-kB - a paradigm for inducible and tissue-specific gene control," draft dated Mary 28, 1989

Lenardo et al., Cell, 57:287-294 (1989)

Lenardo et al., PNAS USA, 85(23):8825-9 (1988)

Lenardo et al., Science, 236(4808):1573-7 (1987)

Leonard et al., PNAS USA, 82:6281-6285 (1985)

Leung and Nable, Nature, 333(6175):776-8 (1988)

Lewis S., et al., Cell, 30:807-816 (1982)

Li, J. J. and T. J. Kelly, PNAS USA, 81:6973 (1984)

Libermann and Baltimore, Mol Cell Biol., 10(5):2327-34 (1990)

Liou and Baltimore, Cell Biology, 5:477-487 (1993)

Lloyd et al., Nature, 352(6336):635-8 (1991)

Lo et al. - US Pat. No. 4,900,659 - Feb. 13, 1990

Logeat et al., EMBO J., 10(7):1827-32 (1991)

Magnolagas Declaration in 90/007,503 application

Mammen et al., Thrombosis Et Diathesis Haemorrhagica, Vol. V. 1961, pages 219-249

Maniatis, T., Frisch, E. F. and Sambrook, J. Molecular Cloning: A Laboratory Manual, Cold Spring Harbor Laboratory Press, NY. (1982)

Manley et al., PNAS USA, 77:3855 (1980)

Manolagas and Jilka, Calcif Tissue Int., 50(3):199-202 (1992)

Manolagas and Jilka, N Engl J Med., 332(5):305-11 (1995)

Manolagas et al., 1994 Current Opinion in Endocrinology and Diabetes, 1:275-81

Manolagas et al., Int J Immunopharmacol., 17(2):109-16 (1995)

Manolagas et al., J Clin Endocrinol Metab., 63(2):394-400 (1986)

Manolagas et al., Osteoporos Int., 3 Suppl 1:114-6 (1993)

Manolagas, Therapeutic Res., 15:82-99 (1994)

Marshall, F.H.A. and Jolly W.A., V. Phil. Trans. R. Soc., 198:99-141 (1906)

Mason, J. O., et al., Cell, 41:479-487 (1985)

Mauxion and Sen, Mol Cell Biol., 9(8):3548-52 (1989)

Mauxion et al., PNAS USA, 88(6):2141-5 (1991)

Max, E. E. et al., J. Biol. Chem., 256:5116 (1981)

Maxam, A. and Gilbert, W. Meth. Enzymol, 65:499-525 (1980)

McCaffrey et al., Nucleic Acids Res., 22(11):2134-42 (1994)

McCloskey et al., Ann Intern Med., 121(1):1-5 (1994)

McKnight & Kingsbury, Science, 217(4557):316-24 (1982)

Meichle et al., J Biol Chem., 265(14):8339-43 (1990)

Mercola, M. et al., Science, 221:663-665 (1983)

Mercola, M. et al., Science, 227:266-270 (1985)

Metka et al., Fertil Steril., 57(1):37-41 (1992)

Miller, EMBO J., #: 1061-1065 (1984)

Miyamoto, N. G. et al., Nucl. Acids Res., 12:8779 (1984)

Molecular Biology of the Cell, 423 (2nd Ed., 1989)

Monograph - Curcuma longa Common Name: Tumeric, Web page

Morishita et al., PNAS USA, 92(13):5855-9 (1995)

Morris et al., Mol Cell Biol., 14(10):6907-14 (1994)

Mosca, J. D. et al., Nature, 325:67-70 (1987)

Muesing, M. A. et al., Cell, 48:691-701 (1987)

Mukaida et al., J Biol Chem., 269(18)1 3289- 95 (1994)

Mundy, et al., Academic Press, San Diego, Ed 3, 1996, pp. 301-313

Myers et al., Science, 232(4750):613-8 (1986)

Nabel and Baltimore, Nature, 326(6114):711-3 (1987). Erratum in: Nature, 344(6262):178 (1990)

Nabel, G. and Baltimore, D., Nature, 326:711-713 (1987)

Nagasawa et al., J Cell Physiol., 109(1):181-92 (1981)

Nebel, G. J. et al., Science, 239(4845):1299-302(1988)

Nelsen et al., Mol Cell Biol., 8(8):3526-31(1988)

Nelsen et al., Science, 261(5117):82-6 (1993)

Nelsen, Hellman and Sen, Mol Cell Biol., 8(8):3526-31 (1988)

Nelson et al., Nucl. Acids Res., 12:1911-1923 (1984)

Nelson, K. J., et al., PNAS USA, 82:5305-5309 (1985)

Newmeyer, D. D. and D. J. Forbes, Cell, 52:641 (1987)

Nicolau et al., Ciba Found Symp., 103:254-67 (1984)

Nishizuka, Y. Nature 308:693-697, (1984)

Nolan, Mol Cell Biol., 13(6):3557-66 (1993)

Norman et al., Science, 173(991):51-4 (1971)

Novoa et al., Prep Biochem., 6(5):307-38 (1976)

O'Leary et al., J. Pharmacol Exp Ther., 273(1):193-8 (1995)

Osborn et al., PNAS USA, 86:2336-2340 (1989)

Osteoporosis Clinical Guidelines

Owen and Esmon, J Biol Chem., 256(11):5532-5 (1981)

Pabo and Sauer, Ann. Rev. Biochem., 53: 293-321 (1984)

Paige et al., J. Immunol., 121:641-647 (1978)

Parfitt, J Cell Biochem., 55(3):273-86 (1994)

Parrillo et al., Ann Intern Med., 113(3):227-42 (1990)

Parrillo, N Engl J Med., 328(20):1471-7 (1993)

Pastan, Sci. Amer., 227:97-105 (1972)

Peng et al., The Journal of Biological Chemistry, Vol. 270(23), 14214-14219,

Issue of June 9, 1995

Petkovich, M. et al., Cell, 330:444-450 (1987)

Pfahl, Endocr Rev., 14(5):651-8 (1993)

Physician's Desk Reference, 24th ed. Oradell, NJ: Miller PDR, 1970, pp. 303, 305, 307, 309, 312, 326-328, 638, 639, 809, 880-881, 1167, 12101211, 1309-1310, 1323, 1379-1380

Physicians' Desk Reference, 34 Edition, 1980 - Clinoril Tablets, pages 1147-1149

Physicians' Desk Reference, 39 Edition, 1985 - Sandimmune, pages 1811-1813

Picard, D. and K. R. Yamamoto, EMBO J., 6:3333-3340 (1987)

Picard, D. and Schaffner, W., Nature, 307:80-82 (1984)

Pierce , J Immunol., 155(4):1972-80 (1995)

Pierce, J. W. et al., PNAS USA, 85:1482-1486 (1988)

Plaskin, J Exp Med., 177(6):1651-62 (1993)

Poli et al., EMBO J., 13(5):1189-96 (1994)

Poole et al., Cell, 40: 37-43 (1985)

Pottratz et al.,  J Clin Invest., 93(3):944-50 (1994)

Power et al., Science, 254(5038)1636-9 (1991)

Prescott, D. M. and J. B. Kirkpatrick, In: Methods Cell Biol., D. M. Prescott, ed. (Academic Press, New York, 1973), p. 189

Provvedini et al., Science, 221(4616):1181-3 (1983)

Queen, C. and Baltimore, D., Cell, 33:741 (1983)

Queen, C. and Stafford, J., Mol. Cell. Biol, 4(6):1042-1049 (1984).

Quezado et al., JAMA, 269(17):2221-7 (1993)

Rando, R. F. et al., Oncogene, 1:13-19 (1987)

Rangel-Frausto et al., JAMA, 273(2):117-23 (1995 )

Ray and Prefontaine, PNAS USA, 91(2):752-6 (1994)

Ray et al., J Biol Chem., 269(17):12940-6 (1994)

Ray, J Biol Chem., 270(18):10680-5 (1995)

Reed et al., J Immunol., 137(1):150-4 (1986)

Reifel-Miller et al., The Journal of Biological Chemistry, 269(39):23861-23864 (1994)

Reisine et al., PNAS USA, 82(23):8261-5 (1985)

Rice et al., Cell, 71(2):243-53 (1992)

Richardson, W. D. et al., Cell, 52:655 (1988)

Rigby et al., J Clin Invest., 74(4):1451-5 (1984)

Rigby et al., J Immunol., 135(4):2279-86 (1985)

Ringold et al., PNAS USA, 81:3964-3968 (1984)

Roberts, The New York Times, September 29, 1985 (Sec. 4, Page 6, Col. 1)

Rodriquez-Pena, A. and Rozengurt, E., Biochem Biophys. Res. Comm., 120:1053-1009 (1984); EMBO J, 5:77-83 (1986)

Roitt, Immunology, Chapters 5, 10, 17 (3d ed. 1993)

Roozemond, Immunobiology, 176(1-2):35-46 (1987)

Rosoff P. M. et al., J. Biol. Chem., 259:7056-7060 (1984)

50

Rosoff, P. M. and Cantley, L. C. , J. Biol. Chem., 260 9209-9215 (1985)

Rovera et al., Science, 204(4395):868-70 (1979)

Ruben et al., Science, 241(4861):89-92 (1988)

Sakata et al., PNAS USA, 82(4):1121-5 (1985)

Sassone-Corsi, P. et al., Nature, 313:458-463 (1985)

Scheidereit, C., et al., Cell, 51:783-793 (1987)

Scheinman et al., Mol Cell Biol., 15(2):943-53 (1995)

Scheinman et al., Mol Cell Biol., 15(2):949 (1995) - Excerpt

Scheinman et al., Science, 270(5234):283-6 (1995)

Scherer, "Pricing, Profits, and Technological Progress in the Pharmaceutical Industry," The Journal of Economic Perspectives, (1986-1998); 1993, pages 97-115

Schindler and Baichwal, Mol Cell Biol., 14(9):5820-31 (1994)

Schindler et al., J Immunol., 144(6):2216-22 (1990)

Schmidt et al., J Virol., 64(8):4037-41 (1990)

Schmitz and Baeuerle, EMBO J., 10(12):3805-17 (1991)

Schmitz et al., Trends Cell Biol, 1(5):130-7 (1991)

Schneuwly et at., EMBO J., 5: 733-739 (1986)

Schorpp et al., J. Mol. Biol., 202:307 (1988)

Schreck and Baeuerle, Mol. Cel. Biol., 1281-1286 (1990)

Schreck and Baeuerle, Trends Cell Biol., 1(2-3):39-42 (1991)

Schreck et al., J Exp Med., 175(5):1181- 94 (1992)

Schreiber and Crabtree, Immunol Today, 13(4):136-42 (1992)

Scott and Smith, Science, 249(4967):386-90 (1990)

Scott and Weiner, PNAS USA, 81: 4115-4119 (1984)

Scott et al., Genes & Development, 7:1266-76 (1993)

Seegers et al., Thromb Res., 8(5):543-52 (1976)

Semmler et al., "The Synthesis of 1a, 25-Dihydroxycholecalciferol - A Metabolically Active Form of Vitamin D3," Tetrahedron Letters, No. 40, pp. 4147-4150, (1972)

Sen and Baltimore, Cell, 46(5):705-16 (1986)

Sen and Baltimore, Cell, 47:921-28 (1986)

Shakhov et al., J Exp Med. 171(1):35-47 (1990)

Shevach, E.M., Annual Review of Immunology, 3:397-423 (1985)

Shirikawa and Mizel, Mol Cell Biol., 9(6):2424-30 (1989)

Siebenlist et al., Annu Rev Cell Biol., 10:405-55 (1994)

Siebentist et al., Mol Cell Biol., 6(9):3042-9 (1986)

Singh and Aggarwal, The Journal of Biological Chemistry, 270(42):24995-25000 (1995)

Singh et al., Cell, 52:415-423 (1988)

Singh, H. et al., Nature, 319:154-158 (1986)

Sive, H. L. and R. G. Roeder, PNAS USA, 83:6382 (1986)

Smith, P. K. et al., Anals of Biochemistry, 150:76-85 (1985)

SN 06/817,441 Specification

SN 155,207 Specification

Sprung et al., N Engl J Med., 311(18):1137-43 (1984)

St. Leger et al., Lancet, 1(8124)1 017-20 (1979)

Staal et al., PNAS USA, 87(24):9943-7 (1990)

Staudt, L. M. et al., Nature, 323:640-643 (1986)

Staudt, L., et al., Science, 241: 577-580 (1988)

Stein and Yang, Mol Cell Biol., 15(9):4971-9 (1995)

Stenflo, J Biol Chem., 251(2):355-63 (1976)

Stephens, PNAS USA, 80(20):6229-33 (1983)

Strauss, F. and Varshaysky, A., Cell, 37:889-901 (1984)

Suffredini et al., J Immunol., 155(10):5038-45 (1995)

Sun et al., Science, 259(5103):1912-5 (1993)

Tam et al., Science, 234(4781):1234-7 (1986)

Tanaka, Nucleic Acids Res., 22(15):3069-74 (1994)

Taniguchi, T., Ann. Rev. Immunol., 6:439-464 (1988)

Taylor et al., "Protein C Prevents the Coagulopathic and Lethal Effects of Escherichia coli Infusion in Baboon," J. Clin Invest., Vol. 79, (March 1987)

Tesarik and Mendoza, J Clin Endocrinol Metab., 80(4):1438-43 (1995)

The Bible

The Veterans Administration Systemic Sepsis Cooperative Study Group, N Engl J Med., 317(11):659-65 (1987)

Ting and Baldwin, Curr Opin Immunol., 5(1):8-16 (1993)

Treisman, R., Cell, 42:889-902 (1985)

Trepicchio and Krontiris, Nucleic Acids Res., 21(4):977-85 (1993)

Truss and Beato, Endocr Rev., 14(4):459-79 (1993)

Tsoukas et al., Science, 224(4656):1438-40 (1984)

Tung et al., PNAS USA, 85(8):2479-83. (1988)

Udoff et al., Obstet Gynecol., 86(2):306-16 (1995)

US Pat. No. 4,418,068 issued on November 29, 1983 to Charles Jones

US Pat. No. 4,775,624 issued on October 4, 1988 to Bang, et al.

US Pat. No. 4,775,624, issued on October 4, 1988 to Nils Bang, Robert Beckmann, S. Richard Jaskunas, Mei-Huei Lai, Shelia Little, George Long and Robert Santerre

US Pat. No. 5,009,889, issued on April 23, 1991 to Taylor and Esmon

US Pat. No. 5,318,899, issued on June 7, 1994 to Scarborough, Wolf and Charo

US Pat. No. 5,393,763, issued on February 28, 1995 to Black and Cullinan

US Pat. No. 5,439,923, issued 8/8/95 (Cullinan)

US Pat. No. 5,439,931, issued 8/8/95 (Sales)

US Pat. No. 5,441,966, issued 8/15/95 (Dodge)

US Pat. No. 5,446,053, issued 8/29/95 (Keohane)

US Pat. No. 5,451,589, issued 9/19/95 (Dodge)

US Pat. No. 5,451,590, issued 9/19/95 (Dodge)

US Pat. No. 5,457,117, issued 10/10/95 (Black and Cullinan)

US Pat. No. 5,461,064, issued 10/24/95 (Cullinan)

US Pat. No. 5,462,949, issued 10/31/1995 (Jones and Tinsley)

van de Stolpe et al. J Biol Chem., 269(8):6185-92 (1994)

van Hinsbergh et al., Blood, 65(2):444-51 (1985)

Van Zee et al., J Immunol., 154(3):1499-507 (1995)

Venkataraman et al., J. Exp. Med., 181:1091-1099 (1995)

Visvanathan, K. V. and S. Goodbourn, EMBO J., 8:1129-1138 (1989)

von der Mohlen et al., J Infect Dis., 172(1):144-51 (1995)

Wall, R. et al., PNAS USA, 83:295-298 (1986)

Waterhouse, Department of Viticulture & Enology, University of California, May 1995

Way and Chalfie, Cell, 54: 5-16 (1988)

Webster's Ninth New College Dictionary - "eukaryotic" 1989

Weinberger, J. et al., Nature, 322:846 (1986)

Weiss, J Immunol., 133(1):123-8 (1984)

Weissmann, Sci. Am., 84-90 (1991)

Welshons, W. V. et al., Nature, 307:747 (1984)

Wheeler and Bernard, MMWR Morb Mortal Wkly Rep., 39:31-34 (1990)

Wheeler and Bernard, N Engl J Med, 340(3):207-14 (1999)

Whelan et al., Nucleic Acids Res., 19(10):2645-53 (1991)

Wightman, P. D. and Raetz, C. R. H., J. Biol. Chem. 259:10048-10052 (1984)

Wirth and Baltimore, EMBO J., 7(10):3109-13 (1988)

WO 90/02809, published on March 22, 1990 to Ladner and Gutterman

WO 90/15070, published on December 13, 1990 to Pirrung and Fodor

WO 92/20795, published on November 26, 1992 (Haskill, Baldwin, and Ralph)

Wolf, M. et al., Nature, 317:546 (1985)

Wu et al., EMBO J., 7:2117-2129 (1988)

Yano et al., EMBO J., 6:3317-3324 (1987)

Young, R. A. and Davis, R. W., Genetic Engineering: Principles and Techniques, vol 7 (eds Setlow, J. & Hollaender, A.) 29-41 (Plenum, New York 1985)

Yu et al., PNAS USA, 92(24):10990-4 (1995)

Zabel and Baeuerle, Cell, 61(2):255-65 (1990)

Zabel et al., EMBO J., 12(1):201- 11 (1993)

Zagury, D. J. et al., Science, 232:755-759 (1986)

Zeiher et al., Circulation Research, 76(6):980-986 (1995)

Ziegler et al., N Engl J Med., 307(20):1225-30 (1982)

Ziegler et al., N Engl J Med., 324(7):429-36 (1991)

Zinn et al., Cell, 34(3):865-79 (1983)

Zoller MJ.,Curr Opin Biotechnol., 3(4):348-54 (1992)

ARIAD also refers Amgen to the references cited in discovery responses in this litigation. In particular, ARIAD refers Amgen to Amgen's response to ARIAD's Interrogatory No. 1, and to Wyeth's response to ARIAD's Interrogatory No. 12.

## INTERROGATORY NO. 11:

If Ariad contends that any claim of the '516 patent is not invalid under 35 U.S.C. § 103, explain in detail the legal and factual bases for Ariad's contentions, including but not limited to whether and how its contentions of non-obviousness are supported by secondary considerations, such as to commercial success, long-felt need, copying by others, prior failure by others, licensing, or unexpected results.

## RESPONSE TO INTERROGATORY NO. 11:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Furthermore, ARIAD objects to this interrogatory to the extent that it seeks information more properly acquired through other methods of discovery. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:

ARIAD supplements its initial response to Interrogatory No. 11 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

The '516 patent is presumed valid pursuant to 35 U.S.C. § 282. The '516 patent issued after detailed scrutiny of validity by the U.S. Patent and Trademark Office. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD directs Plaintiffs to the publicly available prosecution record. ARIAD also directs Plaintiffs to information that is publicly available from *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.), and information produced by Lilly in this action.

Plaintiffs have not provided information regarding their contention that the '516 patent is invalid, including information regarding any contention that the '516 patent is invalid for obviousness under 35 U.S.C. § 103. ARIAD reserves the right to respond to any future contention by Plaintiffs regarding obviousness through supplemental interrogatory responses, production of relevant documents, and/or other methods of discovery.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

ARIAD objects to Interrogatory No. 11 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it seeks contentions regarding "any claim of the '516 patent" that ARIAD contends is not invalid under 35 U.S.C § 103. ARIAD limits its response herein to the claims it has asserted against Amgen.

ARIAD objects to Interrogatory No. 11 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and to the extent that it requires a final formulation of ARIAD's contentions or theories. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through submission of expert reports.

ARIAD objects to Interrogatory No. 11 because it is overly broad and unduly burdensome to the extent it requests ARIAD to explain the bases for its contentions concerning references that Amgen has cited in its interrogatory responses, but as to which Amgen has not

set forth specific contentions why those references render the subject matter of the asserted claims obvious. Amgen bears the burdens of production and proof on its defense under 35 U.S.C. § 103. ARIAD limits its response herein to those references as to which Amgen has provided specific contentions in its interrogatory responses. ARIAD reserves the right to respond, including during expert discovery, to any additional contention that Amgen may advance.

ARIAD objects to Interrogatory No. 11 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it requests ARIAD to explain the bases for contentions that references that do not predate the priority dates of the asserted claims, do not invalidate the asserted claims under 35 U.S.C. § 103. Such references cannot invalidate the asserted claims, regardless of their content. ARIAD reserves the right to supplement its response to this interrogatory should it be determined that references postdating the priority dates of the asserted claims, as identified in ARIAD's response to Interrogatory No. 7, are in fact prior art.

ARIAD objects to Interrogatory No. 11 because it is duplicative of Interrogatory No. 17. Subject to its objections, including the objections set forth in ARIAD's responses to Interrogatory No. 17, ARIAD refers Amgen to, and incorporates by reference, ARIAD's Responses to Amgen's Second Set of Interrogatories No. 17 as its response to Interrogatory No. 11.

In addition, ARIAD states that the following secondary considerations support the nonobviousness of the invention of the '516 patent:

Commercial Success - The commercial success of various drugs that infringe the invention of the '516 patent is an objective indication supportive of nonobviousness. These drugs include, but are not limited to Enbrel, Kineret, Evista and Xigris.

Long-felt Need - The drugs that infringe the invention of the '516 patent have satisfied a long-felt need for effective treatments of the diseases and conditions for which they are

indicated. These diseases and conditions include, but are not limited to, inflammatory diseases, osteoporosis, and bacterial sepsis.

Unexpected Properties - The invention of the '516 patent possesses unexpected properties and/or provided unexpected results or advantages. The '516 patent discloses that the NF-kB pathway is essential to the initiation and regulation of multiple functions of a cell, and is accordingly directed to the modification of each of those functions via the modulation of NF-kB activity. It was unexpected prior to the patent's disclosure that NF-kB would have so many effects in so many different cell types.

Expressions of Surprise by Those in the Art - Those in the art have expressed surprise at the pleiotropic role of NF-kB and that modulation of NF-kB activity can result in the ability to treat so many diseases and conditions.

Praise by Those Skilled in the Art - Those skilled in the art have expressed praise for the subject matter disclosed in the '516 patent.

Recognition by Infringers of the Importance of the Invention - Amgen, Wyeth and other infringers have recognized the importance of inhibiting the NF-kB pathway as it pertains to the mechanism of action of its infringing drugs, and thus the importance of the advance disclosed in the '516 patent. This recognition includes, but is not limited to, the support of research specifically directed at elucidating Enbrel's effects on the NF-kB pathway.

## INTERROGATORY NO. 12:

If Ariad contends that any claim of the '516 patent is not invalid under 35 U.S.C. § 102, explain in detail the legal and factual bases for Ariad's contentions, including but not limited to a detailed explanation of why Ariad contends that a reference that has been alleged to be anticipatory, either expressly or inherently, of any claim of the '516 patent is not so.

## RESPONSE TO INTERROGATORY NO. 12:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to

Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD further objects to this interrogatory as vague and ambiguous with respect to the phrase "reference that has been alleged to be anticipatory," as ARIAD is not aware of any allegations made in this action under 35 U.S.C. § 102. In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

### FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:

ARIAD supplements its initial response to Interrogatory No. 12 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

The '516 patent is presumed valid pursuant to 35 U.S.C. § 282. The '516 patent issued after detailed scrutiny of validity by the U.S. Patent and Trademark Office. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD directs Plaintiffs to the publicly available prosecution record. ARIAD also directs Plaintiffs to information that is publicly available from *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.), and information produced by Lilly in this action.

Plaintiffs have not provided information regarding their contention that the '516 patent is invalid, including information regarding any contention that the '516 patent is invalid for anticipation under 35 U.S.C. § 102. ARIAD reserves the right to respond to any future

contention by Plaintiffs regarding anticipation through supplemental interrogatory responses, production of relevant documents, and/or other methods of discovery.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:

ARIAD objects to Interrogatory No. 12 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it seeks contentions regarding "any claim of the '516 patent" that ARIAD contends is not invalid under 35 U.S.C. § 102. ARIAD limits its response herein to the claims it has asserted against Amgen.

ARIAD objects to Interrogatory No. 12 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and to the extent that it requires a final formulation of ARIAD's contentions or theories. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through submission of expert reports.

ARIAD objects to Interrogatory No. 12 because it is overly broad and unduly burdensome to the extent it requests ARIAD to explain the bases for its contentions concerning references that Amgen has cited in its interrogatory responses, but as to which Amgen has not set forth specific contentions why those references anticipate the '516 patent. Amgen bears the burdens of production and proof on its defense under 35 U.S.C. § 102. ARIAD limits its response herein to those references as to which Amgen has provided specific contentions in its interrogatory responses. ARIAD reserves the right to respond, including during expert discovery, to any additional contention that Amgen may advance.

ARIAD objects to Interrogatory No. 12 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it requests ARIAD to explain the bases for contentions that references that do not predate the priority dates of the asserted claims, do not invalidate the asserted claims under 35 U.S.C. § 102. Such references cannot invalidate the asserted claims, regardless of their content. ARIAD reserves the right to supplement its response to this interrogatory should it be determined that references postdating

the priority dates of the asserted claims, as identified in ARIAD's response to Interrogatory No. 7, are in fact prior art.

ARIAD objects to Interrogatory No. 12 because it is duplicative of Interrogatory No. 17. Subject to its objections, including the objections set forth in ARIAD's responses to Interrogatory No. 17, ARIAD refers Amgen to, and incorporates by reference, ARIAD's Responses to Amgen's Second Set of Interrogatories No. 17 as its response to Interrogatory No. 12.

## INTERROGATORY NO. 13:

If Ariad contends that any claim of the '516 patent is not invalid under 35 U.S.C. § 112, explain in detail the legal and factual bases for Ariad's contentions, including but not limited to specific citations to any and all portions of U.S. Patent Application Serial No. 08/464,364 that Ariad contends provide written description for and an enabling disclosure of the full scope of such claim, and identify all references, knowledge or facts allegedly supporting such contentions.

## RESPONSE TO INTERROGATORY NO. 13:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD further objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

ARIAD supplements its initial response to Interrogatory No. 13 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

The '516 patent is presumed valid pursuant to 35 U.S.C. § 282. The '516 patent issued after detailed scrutiny of validity by the U.S. Patent and Trademark Office. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD directs Plaintiffs to the publicly available prosecution record. ARIAD also directs Plaintiffs to information that is publicly available from ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co., 02-11280 (D. Mass.), and information produced by Lilly in this action. In particular, ARIAD refers Plaintiffs to:

ARIAD's responses to Eli Lilly & Co.'s Interrogatory No. 8;

Rule 26(a)(2) Rebuttal Report of Thomas R. Kadesch, Ph.D.;

Rule 26(a)(2) Rebuttal Report of George R. Stark, Ph.D.

Plaintiffs have not provided information regarding their contention that the '516 patent is invalid, including information regarding any contention that the '516 patent is invalid for lack of enablement or inadequate written description under 35 U.S.C. § 112. ARIAD reserves the right to respond to any future contention by Plaintiffs regarding enablement and/or written description through supplemental interrogatory responses, production of relevant documents, and/or other methods of discovery.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

ARIAD objects to Interrogatory No. 13 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it seeks contentions regarding "any claim of the '516 patent." ARIAD limits its response herein to the claims they have asserted against Amgen.

61

ARIAD objects to Interrogatory No. 13 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and to the extent that it requires a final formulation of ARIAD's contentions or theories. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through submission of expert reports.

ARIAD objects to Interrogatory No. 13 because it is overly broad and unduly burdensome to the extent it requires ARIAD to "identify all references, knowledge or facts allegedly supporting" its contentions. ARIAD limits its response to those references and facts specifically addressed by Amgen in its response to ARIAD's interrogatories.

Subject to its objections, ARIAD states that the '516 patent discloses the mechanism by which NF-kB regulates gene expression and methods for modulating NF-kB-mediated intracellular signaling, and hence, NF-kB activity. This includes the disclosure that NF-kB mediates intracellular signaling induced by extracellular stimuli such as TNF and IL-1. The specification of the '516 patent also discloses that one can modulate gene expression and biological functions regulated by NF-kB. The specification teaches at least three examples of agents that modulate NF-kB-mediated signaling: decoy molecules, dominantly interfering molecules and IkB. The specification teaches that decoy molecules and dominantly interfering molecules can be administered to modulate, for example, NF-kB activity and gene expression regulated by NF-kB, including reducing induced NF-kB activity. Those skilled in the art would readily be able to screen for molecules that modulate NF-kB activity through these mechanisms using knowledge and experience in the art, including knowledge and experience in standard drug screening techniques, and the methodology disclosed in the application. For example, those skilled in the art would recognize that one could readily adapt the assays used to elucidate the mechanism of action of NF-kB and IkB, and which were described in the patent, to find molecules that would modulate the activity of NF-kB and practice the methods of the asserted claims. Moreover, the specification teaches how to find molecules, such as peptides and small organic molecules, that would practice the methods of the asserted claims. The

patent also functionally describes IkB as a molecule that inhibits NF-kB activity, and that NF-kB is bound to this inhibitor. It would also have been a routine matter, using standard techniques available, to administer IkB or IkB-like compounds, discover decoy molecules, or discover dominantly interfering molecules in an efficacious manner to reduce induced NF-kB activity in vitro or in vivo.

That several publications, as Amgen contends, subsequent to the filing of the application for the '516 patent, using the methodology disclosed in the '516 patent, describe the screening and identification of numerous agents capable of practicing the methods of the asserted claims of the patent supports ARIAD's contention that the requirements of 35 U.S.C. § 112 are met. To the extent that Amgen contends that a declaration submitted by Dr. David Baltimore outlining publications reporting compounds that reduce NF-kB activity demonstrates the failure of the '516 patent to enable its claims, ARIAD denies that contention. Those publications, Lyss et al., Journal of Biological Chemistry (1998), Castrillo et al., Molecular and Cellular Biology (2000), Yan et al., Journal of Biological Chemistry (1999), Kumar et al., Oncogene (1998), Palombella et al., PNAS USA (1998), and Pianaki et al., U.S. Patent No. 5,939,421), demonstrate only the relative ease with which compounds reducing NF-kB activity could be found. These compounds were discovered using techniques known to those skilled in the art at the time of the application for the '516 patent, and demonstrate that the asserted claims were enabled and satisfy 35 U.S.C. § 112. That the discovery of these molecules were reported in peer-reviewed journals serves to demonstrate only that the discovery of molecules that inhibit or reduced induced NF-kB activity is a matter of scientific interest. It has no bearing on whether the '516 patent was enabled.

The asserted claims of the '516 patent are described and enabled in the specification as outlined in the following table:

| Claim | Support in '516 patent (col:lines) |
|---|---|
| Claim 6 | (4:5-11), (10:43-46), (3:59-64), (12:40-41), (16:31-35) |
| Claim 70 | See entry for claim 6; (35:42-45), (29:44-46) |

| Claim | Support in '516 patent (col:lines) |
|---|---|
| Claim 71 | See entry for claim 6; (35:42-45), (1:51-52), (78: 56-57) |
| Claim 72 | See entry for claim 71; (13:21-22), (17:1-2) |
| Claim 73 | See entry for claim 72 |
| Claim 18 | (17:20-21, 30-34), (16:23-35), (3:59-66), (4: 5-11), (12:40-41), (16: 31-35, 54-57), (29:44-46) |
| Claim 183 | See entry for claim 18; (35:42-45), (1:51-52), (78:56-57) |
| Claim 184 | See entry for claim 183; (13:21-22), (17:1-2) |
| Claim 185 | See entry for claim 184 |

ARIAD refers Amgen to ARIAD's response to Interrogatory No. 7 for support in the applications for the '516 patent.

**INTERROGATORY NO. 14:**

Identify each molecule, compound, or other substance that can be used to practice the method of reducing NF-κB activity disclosed in the '516 patent and/or recited in the '516 patent claims.

**RESPONSE TO INTERROGATORY NO. 14:**

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. ARIAD also objects to this interrogatory as overbroad and unduly burdensome and objects to the extent that it calls for information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD objects to this interrogatory to the extent it seeks information regarding contentions that ARIAD has not made. ARIAD further objects to this interrogatory to the extent it seeks information beyond the scope of ARIAD's knowledge. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from

64

Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

ARIAD supplements its initial response to Interrogatory No. 14 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD further objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, ARIAD directs Plaintiffs to the publicly available prosecution record, and to the public records for the reexaminations listed in response to Interrogatory No. 5. ARIAD also directs Plaintiffs to information that is publicly available from *ARIAD Pharmaceuticals, Inc. et al. v. Eli Lilly & Co.*, 02-11280 (D. Mass.), and information produced by Lilly in this action.

Plaintiffs have not provided information regarding their contention as to any molecule, compound, or other substance that can be used to practice the method of reducing NF-κB activity disclosed in the '516 patent and/or recited in the '516 patent claims. ARIAD is continuing to investigate the information requested in this interrogatory and will supplement its responses when and if it locates further non-privileged, relevant information.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:

ARIAD supplements its response to Interrogatory No. 14 as follows:

ARIAD objects to Interrogatory No. 14 because it is overly broad, unduly burdensome and oppressive and for the other reasons set forth in its general objections.

ARIAD objects to Interrogatory No. 14 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and with respect to contentions on which Amgen bears the burden of proof and production. ARIAD reserves the

right to modify or supplement its contentions and responses to this interrogatory, including through the submission of expert reports.

Subject to its objections, ARIAD states that the compounds that can be used to practice the inventions claimed in the '516 patent include, but are not limited to, decoy molecules, dominantly interfering molecules, IkB and IkB-like molecules, inhibitors, antagonists, and agents and drugs that reduce NF-kB activity, including Enbrel, Kineret, Xigris and Evista.

**INTERROGATORY NO. 15:**

Explain in detail the damages claimed by Ariad for what Ariad contends is the Amgen Entities' infringement of the '516 patent, including but not limited to the legal basis for the damages claim, including whether the damages are the result of the alleged lost profits, price erosion or reasonable royalty, identification of any documents that support Ariad's claim for damages, and the person or persons most knowledgeable of Ariad's claimed damages, including any experts that Ariad has retained in furtherance of its damages claims.

**RESPONSE TO INTERROGATORY NO. 15:**

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as premature and non-sensical in light of ARIAD's pending Motion to Dismiss, as set forth in the papers supporting ARIAD's Motion To Stay Discovery. In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

As ARIAD set forth in its Rule 26(a)(1) Initial Disclosure, in light of its pending Motion to Dismiss, ARIAD does not seek damages at this time, as ARIAD believes that the case should be dismissed for lack of subject matter jurisdiction. ARIAD expressly reserves the right to seek damages at a later date if this suit is not dismissed, and to modify or supplement its contentions and responses as ARIAD receives additional information from Plaintiffs or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

ARIAD supplements its initial response to Interrogatory No. 15 as follows:

ARIAD objects to this interrogatory because it seeks an expert determination and therefore is premature. ARIAD objects to this interrogatory as premature in light of ARIAD's renewed Motion to Dismiss for Failure to Join Necessary and Indispensable Parties.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

Prior to the filing of this action, ARIAD has never "contended" that, or conducted any investigation to determine, (1) whether any claims of the '516 patent are infringed, whether directly, indirectly or under the doctrine of equivalents, by Plaintiffs, or (2) the amount of damages that ARIAD would be entitled to recover based on any such infringement. In light of the Court's rulings at the hearing conducted on September 11, 2006, an investigation is being undertaken on these issues. This investigation, which is both complex and time consuming, is ongoing and is incomplete. ARIAD will provide further supplemental responses when and if it makes an infringement contention and its analysis is completed.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

ARIAD objects to Interrogatory No. 15 because it is overly broad, unduly burdensome and oppressive to the extent that it requires the identification of "any documents that support Ariad's claim for damages."

ARIAD objects to Interrogatory No. 15 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court. ARIAD thus reserves the right to modify or supplement its contentions and responses to this interrogatory as discovery in this action proceeds, including through the submission of expert reports.

Subject to its objections, ARIAD states that (1) it contends that its is entitled to damages adequate to compensate ARIAD for Amgen's infringement; (2) the legal basis for ARIAD's claim for relief is 35 U.S.C. § 284 and federal court decisions interpreting that section; (3) the

relief it seeks does not include lost profits and does not rely on the price erosion theory; and (4) the persons most knowledgeable about ARIAD's claim for relief are Dr. Harvey Berger, ARIAD's damages expert(s) and ARIAD's counsel.  ARIAD further states that documents that support its claim for damages will include those identified in the damages expert report(s) that ARIAD will submit in compliance with the schedule set by the Court.

## INTERROGATORY NO. 16:

Describe in detail the bases, if any, for Ariad's allegation "that the infringement of the '516 patent by the Amgen Entities ... has been and continues to be willful" as asserted in paragraph 19 of ARIAD's Counterclaim.

## RESPONSE TO INTERROGATORY NO. 16:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD and the Institutions object to this interrogatory as premature because the Amgen Entities to date have refused to provide any discovery relating to willful infringement, and have taken the position that willfulness discovery should be postponed until after the deadline (which has not yet been set) for the Amgen Entities to elect whether to assert an advice of counsel defense.  ARIAD and the Institutions further object to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.  ARIAD and the Institutions also object to this interrogatory to the extent that it seeks an expert determination and therefore is premature.  ARIAD and the Institutions reserve the right to modify or supplement their contentions and responses when the parties move forward with willfulness discovery and as ARIAD and the Institutions obtain additional information.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD and the Institutions respond as follows:

ARIAD provided Amgen with notice of the '516 patent on June 25, 2002, the day the patent issued.  Though Amgen was put on notice of the '516 patent, Amgen intentionally

continued its infringement of the '516 patent. ARIAD also incorporates by reference its response to Interrogatory Nos. 2 and 3.

### FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16:

ARIAD objects to Interrogatory No. 16 because it is overly broad, unduly burdensome and oppressive and for the other reasons set forth in its general objections.

ARIAD objects to Interrogatory No. 16 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through the submission of expert reports.

Subject to its objections, ARIAD supplements its response as follows:

Amgen received notice of the '516 patent's issuance from ARIAD on June 25, 2002, the day that the patent issued. As of that date, Amgen knew or should have known that use of pharmaceutical products that diminish induced NF-kB activity in patients' cells would infringe the asserted claims of the '516 patent. Similarly, Amgen, its predecessor Immunex and Wyeth had received notice that ARIAD was prosecuting the '516 patent through numerous communications that predate the actual issuance of that patent.

With respect to Enbrel, the following internal Amgen documents demonstrate that Amgen knew that the mechanism of action of Enbrel involved reducing NF-kB activity, and therefore knew or should have known that its use would infringe the asserted claims of the '516 patent:

AM-AR0442479, AM-AR20000809, AM-AR0217059-062, AM-AR0225027-035, AM-AR0359311, AM-AR0360147, AM-AR0402588, AM-AR0402589, AM-AR0441616, AM-AR0479168-189, AM-AR0511439, AM-AR20000827, AM-AR0438934, AM-AR0521412, AM-AR0521413, AM-AR0398580, AM-AR0403304, AM-AR0403354, AM-AR0379668-832, AM-AR0382419, AM-AR0441617, AM-AR0218941-9004, AM-AR0218998-9003, AM-AR0222888-898, AM-AR0220170 - 181, AM-AR0224574-584, AM-AR0224258-265, AM-AR0220182-187, AM-

AR0223600-628, AM-AR0405173-177, AM-AR0227654, AM-AR0224659-677, AM-AR0227656-672, AM-AR0366683-693, AM-AR0511439-40, AM-AR0219256-267, AM-AR0484440-460, AM-AR0442002-011, AM-AR0380962-965, AM-AR0508820-8880, AM-AR0508828. ARIAD refers Amgen to Amgen's Responses to ARIAD's Requests for Admissions Nos. 205-215 as support for ARIAD's contentions. ARIAD also refers Amgen to all the documents that were produced by Complete Healthcare Communications, Inc. ("CHC") pursuant to ARIAD's subpoena to CHC, which was served on November 27, 2007.

By continuing to sell Enbrel, knowing that its use would infringe the '516 patent, Amgen willfully and intentionally caused the asserted claims to be infringed.

With respect to Kineret, the following internal Amgen documents demonstrate that Amgen knew that the mechanism of action of Kineret involved reducing NF-kB activity, and therefore knew or should have known that its use would infringe the asserted claims of the '516 patent:

AM-AR0441690, AM-AR0442049, AM-AR0441434, AM-AR0442012, AM-AR0442075, AM-AR0442081, AM-AR0442082, AM-AR0442236, AM-AR0442105, AM-AR0442259, AM-AR0442123, AM-AR0442277, AM-AR0442411, AM-AR0359276, AM-AR0360400, AM-AR0360209, AM-AR0440259, AM-AR0440411, AM-AR0441475, AM-AR0360185-207, AM-AR0359308-331, AM-AR20000802-822, AM-AR0359362, AM-AR0359262, AM-AR0440303, AM-AR0218941-9004, AM-AR0359392-404, AM-AR0230486-503, AM-AR0434014-019.

By continuing to sell Kineret, knowing that its use would infringe the '516 patent, Amgen willfully and intentionally caused the asserted claims to be infringed.

**INTERROGATORY NO. 17:**

For each of the '516 patent claims, including each of the claims being asserted by Ariad, on an element-by-element basis, explain in detail all legal and factual bases for Ariad's contentions as to why each asserted claim is not invalid under 35 U.S.C §§ 102, 103, and 112, including an identification of each element that is allegedly not present in each reference that

the Amgen Entities have asserted as prior art in response to ARIAD's Interrogatory No. 5, why each claim is allegedly not obvious over each reference that the Amgen Entities have asserted as prior art in response to ARIAD's Interrogatory No. 5 (including any contentions based on secondary considerations of nonobviousness), and why each claim is allegedly definite, described, and enabled in light of the response to ARIAD's Interrogatory No. 5

### RESPONSE TO INTERROGATORY NO. 17:

See ARIAD's July 8, 2007 Responses to Amgen's Second Set of Interrogatories No. 17.

### FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17:

ARIAD objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it seeks contentions regarding "each of the '516 patent claims." ARIAD limits its response herein to the claims it has asserted against Amgen.

ARIAD objects to Interrogatory No. 17 because it prematurely seeks information that may be the subject of expert discovery along the schedule set by the Court and to the extent that it requires a final formulation of ARIAD's contentions or theories. ARIAD reserves the right to modify or supplement its contentions and responses to this interrogatory, including through submission of expert reports.

ARIAD objects to Interrogatory No. 17 because it is duplicative of Amgen's Interrogatory No. 13. ARIAD refers Amgen to, and incorporates by reference, ARIAD's Responses to Amgen's Second Set of Interrogatories No. 13, including the objections stated therein.

ARIAD objects to Interrogatory No. 17 because it is overly broad and unduly burdensome to the extent it requests ARIAD to explain the bases for its contentions concerning references that Amgen has cited in its interrogatory responses, but as to which Amgen has not set forth specific contentions why those references render the subject matter of the asserted claims anticipated and/or obvious, or otherwise invalid. Amgen bears the burdens of

production and proof on its defenses under 35 U.S.C. §§ 102, 103 and 112. ARIAD limits its response herein to those references as to which Amgen has provided specific contentions in its interrogatory responses to ARIAD's Interrogatory No. 5. ARIAD reserves the right to respond, including during expert discovery, to any additional contention that Amgen may advance.

ARIAD objects to Interrogatory No. 17 because it is overly broad, unduly burdensome, and not relevant to the claim or defense of any party to the extent it requests ARIAD to explain the bases for contentions for references that do not predate the priority dates of the asserted claims, do not invalidate the asserted claims under 35 U.S.C. §§ 102, 103 and 112. Such references cannot invalidate the asserted claims, regardless of their content. ARIAD reserves the right to supplement its response to this interrogatory should it be determined that references postdating the priority dates of the asserted claims, as identified in ARIAD's response to Interrogatory No. 7, are in fact prior art.

Subject to its objections, ARIAD states that the references cited by Amgen and identified in the first column of the following table, do not anticipate and/or render obvious the asserted claims of the '516 patent for reasons including, but not limited to, the contentions set forth in the second and third columns of the following table:

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| Baeuerle, Biochemica et Biophysica Acta 1072: 63 (1991) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Baldwin, Proceedings of the National Academy of Sciences of the United States of America 85: 723 (1988) | The reference does not disclose the pathway of NF-kB-mediated gene expression. Nor does it describe the reduction of induced NF-kB activity through the use of the H-2K(b) probe. Hence the reference does not describe reducing induced NF-kB activity. | See Response to Claim 6. In addition, the reference does not discuss the activation of NF-kB by TNF or IL-1, or the inhibition of signaling mediated by those cytokines. |
| Beutler, Science 232: 977 (1986) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of | See Response to Claim 6. In addition, the reference, including Figure 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | dexamethasone. Hence the reference, including Figure 2, does not describe the use of dexamethasone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, dexamethasone was incapable of inhibiting the production of TNF after induction. Hence the reference, including Figure 2, does not describe reducing induced NF-kB activity. | reduction of Interleukin-1 or TNF activity. |
| Bielinska, Science 250: 997 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Brini, European Cytokine Network 1: 131 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Chedid, Molecular and Cellular Biology 10: 3824 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Colston, Endocrinology 108: 1083 (1981) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the addition of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 3, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, calcitriol was added simultaneously with other reagents and was shown only to decrease malignant cell growth; hence the reference, including Figure 3, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 3, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Devary, Science 261: 1442 | The article does not predate the priority | The article does not predate the priority |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| (1993) | dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Dew, British Medical Journal 287: 23 (1983) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the addition of 5-ASA. Nor does it describe the reduction of induced NF-kB activity through the use of 5-ASA. Hence the reference, including the example on page 23 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of 5-ASA to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, 5-ASA was only used to maintain remission of ulcerative colitis; hence the reference, including the example on page 23 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on page 23 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Dobrilla, Hepato-Gastroenterology 31: 35 (1984) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the ingestion of red wine. Nor does it describe the reduction of induced NF-kB activity through the use of red wine. Hence the reference, including the example on page 35 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of red wine to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the measured endpoint was only the blood ethanol levels after red wine consumption; hence the reference, including the example on page 35 (*see* Amgen Response to ARIAD | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on page 35 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | Interrogatory No. 5), does not describe reducing induced NF-kB activity. | |
| Eck, Molecular and Cellular Biology 13:6330 (1993) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Edbrooke, Molecular and Cellular Biology 9: 1908 (1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Emmel, Science 246: 1617 (1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Giri, Journal of Immunology 132: 223 (1984) | The reference does not describe NF-kB or the NF-kB pathway; hence, the reference, including the examples on page 225 and Figure 4 (see Amgen Response to ARIAD Interrogatory No. 5), does not describe the diminution or reduction of induced NF-kB-mediated intracellular signaling. The anti-Interleukin-1 antibodies were added concurrently with Interleukin-1. The reference does not enable any method claimed in the asserted claims of the '516 patent. | See response to claim 6. In addition, the reference, including the examples on page 225 and Figure 4 (see Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Griffith, Annals of Surgery 196: 324 (1982) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of cyclosporine A or prednisone Nor does it describe the reduction of induced NF-kB activity through the use of cyclosporine A or prednisone . Hence the reference, including the example on pages 324-25 (see Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of cyclosporine A or prednisone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on pages 324-25 (see Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | in the reference, the measured endpoints were only the clinical effects of cyclosporine A and prednisone administration in patients; hence the reference, including the example on pages 324-25 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | |
| Griffith, Journal of Thoracic and Cardiovascular Surgery 88: 952 (1984) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of cyclosporine A or prednisone Nor does it describe the reduction of induced NF-kB activity through the use of cyclosporine A or prednisone . Hence the reference, including the example on pages 952-53 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of cyclosporine A or prednisone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the measured endpoints were only the clinical effects of cyclosporine A and prednisone administration in patients, including blood levels and toxicity of cyclosporine A; hence the reference, including the example on pages 952-53 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on pages 952-53, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Hahn, Journal of Clinical Investigations, 30: 274 (1951) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of cortisone. Nor does it describe the reduction of induced NF-kB activity through the use of cortisone. Hence the reference, including Amgen's | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on pages 274 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | (*see* Amgen Response to ARIAD Interrogatory No. 5) example on pages 274, does not describe the use of cortisone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the measured endpoints were only the clinical effects of cortisone administration in patients with streptococcal infections; hence the reference, including The example on pages 274 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | |
| Holick, Proceedings of the National Academy of Sciences of the United States of America 68: 803 (1971) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including the example on pages 803 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the structure of a specific Vitamin D metabolite was elucidated; hence the reference, including The example on pages 803 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on pages 803 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Hoyos, Science 244:457 (April 28, 1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Jones, Pharmacology & Toxicology 60: 217 (1987) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the ingestion of red wine. Nor does it describe the reduction of induced NF-kB activity through the use of red wine. Hence the reference, including the example on page 217 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the use of red wine to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the measured endpoint was only the blood ethanol and methanol levels after red wine consumption; hence the reference, including the example on page 217 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe reducing induced NF-kB activity. | the example on pages 217 (*see* Amgen Response to ARIAD Interrogatory No. 5), does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Kohase, Journal of Cellular Physiology 132: 271 (1987) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of dexamethasone. Hence the reference, including Figures 5 and 6, does not describe the use of dexamethasone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the effect of dexamethasone on cell proliferation and interferon was measured and described; hence the reference, including Figures 5 and 6, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference, including Figures 5 and 6, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Koizumi, Cellular Immunology 103: 469 (1986) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the addition of H7. Nor does it describe the reduction of induced NF-kB activity through the addition of H7. Hence the reference, including Figures 1 and 2, does not | See response to claim 6. In addition, the reference, including Figures 1 and 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | describe the use of H7 to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, H7 was added simultaneously with inducers, and its effects on IL-2 production and expression measured; hence the reference, including Figures 1 and 2, does not describe reducing induced NF-kB activity. | |
| Kovacs, Journal of Immunology 141: 3101 (1988) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of H7. Hence the reference, including Figure 1, does not describe the use of H7 to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the effect of H7 on mRNA expression was measured; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference, including Figure 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Kronke, Proceedings of the National Academy of Sciences of the United States of America 81: 5214 (1984) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of CsA. Hence the reference, including Figure 2, does not describe the use of CsA to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the effect of CsA on mRNA expression was measured, which was not inhibited by CsA when it was added after induction; hence the reference, including Figure 2, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Lawson, Nature 230: 228 (1971) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on p. 228, does not describe the reduction of signaling induced by |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
|  | the use of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including the example on page 228, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the identification of a metabolite was studied; hence the reference, including the example on page 228, does not describe reducing induced NF-kB activity. | Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Lemire, Journal of Clinical Investigations 74: 657 (1984) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 2, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only DNA synthesis and production of Immunoglobulin was decreased; hence the reference, including Figure 2, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF, and only describes the reduction of non-TNF or Interleukin-1 DNA synthesis, and production of Immunoglobulin; hence the reference, including Figure 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Lemire, Journal of Immunology 134: 3032 (1985) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Table 1, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only DNA synthesis and production of Immunoglobulin was decreased; hence | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF, and only describes the reduction of non-TNF or Interleukin-1 DNA synthesis, and production of Immunoglobulin; hence the reference, including Table I, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | the reference, including Table I, does not describe reducing induced NF-kB activity. | |
| Mannel, Infection and Immunity 33: 156 (1981) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of anti-TNF antibodies. Hence the reference, including Figure 1, does not describe the use of anti-TNF antibodies to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the effect of anti-TNF antibodies on tumoricidal activity was measured; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, only describes the reduction tumoricidal activity from "specific interactions" with TNF; hence the reference, including Figure 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Manolagas, Osteoporosis International Suppl. 1: 114 (1993) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Manolagas, Journal of Clinical Endocrinology and Metabolism 63: 394 (1986) | The reference does not describe NF-kB or the NF-kB pathway. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 5, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, calcitriol was shown only to reduce cell proliferation; hence the reference, including Figure 5, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 5, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Matthews, International RES Congress on Macrophages and Natural Killer Cells (9th) 721-729 (1982) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of anti-TNF antibodies. Nor does it describe the reduction of induced NF-kB activity through the use of anti-TNF antibodies. Hence the reference, including Figure 2, | See response to claim 6. In addition, the reference, including Figure 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | does not describe the use of anti-TNF antibodies to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, anti-TNF antibodies was shown only to reduce anti-tumor cytoxicity against L929 cells; hence the reference, including Figure 2, does not describe reducing induced NF-kB activity. | |
| Matthews, Immunology 48: 321 (1983) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of anti-TNF antibodies. Nor does it describe the reduction of induced NF-kB activity through the use of anti-TNF antibodies. Hence the reference, including Figure 1 and Table 2, does not describe the use of anti-TNF antibodies to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, anti-TNF antibodies was shown only to reduce anti-tumor cytoxicity by monocytes; hence the reference, including Figure 1 and Table 2, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference, including Figure 1 and Table 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Meichle, Journal of Biological Chemistry 265: 8339 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Mihm, Sixth International Conference on AIDS, Vol. 3 (Abstracts) S.A. 311 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Mihm, AIDS 5: 497 (1991) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Mukaida, Journal of Biological Chemistry | The article does not predate the priority dates of the asserted claims of the '516 | |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| 269:13289 (1994) | patent. See Response to Interrogatory No. 7. | |
| Norman, Science 173: 51 (1971) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of calcitriol. Nor does it describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including the example on p. 51, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the elucidation of an active metabolite; hence the reference, including The example on p. 51, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on p. 51, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Osborn, Proceedings of the National Academy of Sciences of the United States of America 86: 2336 (1989) | The reference does not predate the priority date of claims 6, 70-73 of the '516 patent. See Response to Interrogatory No. 7. | The reference does not describe the reduction of NF-kB activity in cells subsequent to induction of that activity by TNF; hence the reference, including Figure 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Provvedini, Science 221: 1181 (1983) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 3, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the search for receptors of calcitriol; hence the reference, including Figure 3, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 3, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Reed, Journal of Immunology 137: 150 (1986) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of CsA | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 1, does not describe the reduction |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | or dexamethasone. Nor does it describe the reduction of induced NF-kB activity through the use of CsA or dexamethasone. Hence the reference, including Figure 1, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the effects of CsA and dexamethasone on IL-2 receptor expression; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Reed, Proceedings of the National Academy of Sciences of the United States of America 82: 4221 (1985) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of dexamethasone. Nor does it describe the reduction of induced NF-kB activity through the use of dexamethasone. Hence the reference, including Table 1, does not describe the use of dexamethasone to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the effects of dexamethasone on c-myc mRNA levels; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Table 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Rigby, Journal of Immunology 135: 540 (1985) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 3, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the effects of calcitriol on cell growth and the cell growth cycle; hence the reference, including Figure 3, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference, including Figure 3, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Rigby, Journal of Clinical | The reference does not describe NF-kB | See response to claim 6. In addition, the |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| Investigation 79: 1659 (1987) | or the NF-kB pathway. The reference also fails to describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 1, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The reference only describes the effects of calcitriol on gamma interferon production and mRNA expression of a receptor; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | reference, including Figure 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Roederer, Proceedings of the National Academy of Sciences of the United States of America 87: 4884 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Rovera, Science 204: 868 (1979) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of dexamethasone. In the adherence experiments described in the reference, application of dexamethasone was either simultaneous with, or prior to, the application of TPA. Neither the reference nor any other prior art cited by Amgen shows that TPA induces the NF-kB pathway. Nor does the reference describe the reduction of induced NF-kB activity through the use of dexamethasone. Hence the reference, including Table 1, does not describe the use of dexamethasone to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the adherence of the tumor cells was measured; hence the reference, including Table 1, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Table 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Ruben, The New | The article does not predate the priority | |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| Biologist 2: 894 (1990) | dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | |
| Saito, Neuroscience Letters 89: 102 (1988) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of ALLN. In the experiments described in the reference, application of ALLN was either simultaneous with, or prior to, the application of NGF and the other purported inducers. Neither the reference nor any other prior art cited by Amgen shows that NGF induces the NF-kB pathway. Nor does the reference describe the reduction of induced NF-kB activity through the use of dexamethasone. Hence the reference, including Figure 3, does not describe the use of ALLN to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the extension of neurites was measured; hence the reference, including Figure 3, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 3, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Saito, Journal of Biochemistry 106: 1035 (1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. (received for publication June 1989) | |
| Saito, Neuroscience Research Suppl. 13: S97 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Schmidt, Journal of Virology 64: 4037 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Shreck, Journal of Experimental Medicine 175:1181 (1992) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | No. 7. | No. 7. |
| Schreck, The EMBO Journal 10: 2247 (1991) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Shirakawa, Molecular and Cellular Biology 9: 2424 (1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. (June 1989) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Sienbenlist, Molecular and Cellular Biology 6: 3042 (1986) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of CsA. In the experiments described in the reference, application of CsA was prior to the application of PHA and PMA. Nor does the reference describe the reduction of induced NF-kB activity through the use of CsA. Hence the reference, including Figure 2, does not describe the use of CsA to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the promoter sites for Interleukin-2 was studied; hence the reference, including Figure 2, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 2, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| St. Leger, Lancet 1: 1017 (1979) | The reference does not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the ingestion of red wine. Nor does it describe the reduction of induced NF-kB activity through the use of red wine. Hence the reference, including the example on p. 1017, does not describe the use of red wine to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the measured endpoint was only the | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference, including the example on p. 1017, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

87

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | clinical factors affecting mortality in patients who consume wine ; hence the reference, including The example on p. 1017, does not describe reducing induced NF-kB activity. | |
| Staal, Proceedings of the National Academy of Sciences of the United States of America 87: 9943 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Tanaka, Nucleic Acids Research 22: 3069 (1994) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Thevenin, The New Biologist 2: 793 (1990) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Tong-Starksen, Journal of Immunology 142: 702 (1989) | The reference does not predate the priority date of claims 6, 70-73 of the '516 patent. See Response to Interrogatory No. 7. | The reference does not describe reduction of signalling induced by Interleukin-1 or TNF. The reference does not describe induction of NF-kB activity prior to administration of any inhibitory compound; hence the reference, including Figure 4, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Tracey, Nature 330: 662 (1987) | The reference does not describe induction of NF-kB activity prior to administration of anti-TNF antibodies. Hence the reference does not describe reduction of NF-kB activity previously induced by TNF or IL-1 or any other inducer of NF-kB activity. The reference describes a bioassay for neutralizing antibodies in which L929-cells are pretreated with anti-TNF antibody prior to administration of LPS. NF-kB activity is not induced prior to administration of anti-TNF antibody. | See response to claim 6. In addition, the reference fails to describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Tsoukas, Science | The reference does not describe NF-kB | See response to claim 6. In addition, the |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| 224: 1438 (1984) | or the NF-kB pathway. The reference also fails to describe the induction of the NF-kB pathway prior to the use of calcitriol. In the experiments described in the reference, application of calcitriol was simultaneous with the application of PHA. Nor does the reference describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 1, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, only the effects of calcitriol on Interleukin-2 activity was studied; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | reference fails to describe Interleukin-1 or TNF; hence the reference, including Figure 1, does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Waage, Immunology 63: 299 (1988) | The reference does not describe NF-kB or the NF-kB pathway. Nor does the reference describe the reduction of induced NF-kB activity through the use of calcitriol. Hence the reference, including Figure 1, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. In the experiments described in the reference, the application of dexamethasone did not result in a statistically significant reduction in the production of TNF; hence the reference, including Figure 1, does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| Weissman, Scientific American 264: 84 (1991) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| The Physician's Desk Reference (39th Ed.) (1985) | The drug monographs in this reference do not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of the | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | drugs. Nor does it describe the reduction of induced NF-kB activity through the use of the drugs. Hence the reference, including the illustrative drug monographs, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The drug monographs only describe the administration of the drugs to humans; hence the reference does not describe reducing induced NF-kB activity. | activity. |
| The Physician's Desk Reference (24th Ed.) (1970) | The drug monographs in this reference do not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of the drugs. Nor does it describe the reduction of induced NF-kB activity through the use of the drugs. Hence the reference, including the illustrative drug monographs, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The drug monographs only describe the administration of the drugs to humans; hence the reference does not describe reducing induced NF-kB activity. | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |
| The Physician's Desk Reference (34th Ed.) (1980) | The drug monographs in this reference do not describe NF-kB or the NF-kB pathway. The reference also fails to describe the use of an inducer of the NF-kB pathway or the induction of the NF-kB pathway prior to the use of the drugs. Nor does it describe the reduction of induced NF-kB activity through the use of the drugs. Hence the reference, including the illustrative drug monographs, does not describe the use of calcitriol to diminish or reduce induced NF-kB-mediated intracellular signaling. The drug monographs only | See response to claim 6. In addition, the reference fails to describe Interleukin-1 or TNF; hence the reference does not describe the reduction of signaling induced by Interleukin-1 or TNF, or the reduction of Interleukin-1 or TNF activity. |

| PUBLICATION | CLAIM 6 and dependent claims | CLAIM 18 and dependent claims |
|---|---|---|
| | describe the administration of the drugs to humans; hence the reference does not describe reducing induced NF-kB activity. | |
| Devary, Science 261: 1442 (1993) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Eck, Molecular and Cellular Biology 13: 6530 (1993) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Manolagas, Osteoporosis International Suppl. 1: S114 (1993) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Mukaida, Journal of Biological Chemistry 269: 13289 (1994) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Schreck, Journal of Experimental Medicine 175: 1181 (1992) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |
| Tanaka, Nucleic Acids Research 22: 3069 (1994) | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. | The article does not predate the priority dates of the asserted claims of the '516 patent. See Response to Interrogatory No. 7. |

**INTERROGATORY NO. 19:**

Describe in detail the individual contributions made by each of the co-inventors listed on the '516 patent to the conception of each of the alleged inventions claimed in the '516 patent.

**RESPONSE TO INTERROGATORY NO. 19:**

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD and the Institutions object to this interrogatory as overbroad and unduly burdensome and object to the extent that it calls for information that is neither relevant to the subject matter

of this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, ARIAD and the Institutions object to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD and the Institutions further object to this interrogatory to the extent it seeks information beyond the scope of ARIAD's and the Institutions' knowledge. ARIAD and the Institutions reserve the right to modify or supplement their contentions and responses as ARIAD and the Institutions receive additional information from the Amgen Entities, Wyeth or third parties, as ARIAD and the Institutions locate additional information, or based on a ruling by the Court.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD and the Institutions respond as follows:

The co-inventors who worked in the laboratory of David Baltimore (David Baltimore, Ranjan Sen, Lynn Corcoran, Patrick Baeuerle, Michael Lenardo, and Louis Staudt), in collaboration with the laboratories of Phillip Sharp and Thomas Maniatis, contributed to the discovery and characterization of NF-kB, the discovery and characterization of IkB, the discovery and characterization of the mechanisms of NF-kB activation in response to inducers, the characterization of gene regulation by NF-kB, the discovery and characterization of Oct transcription factors, the characterization of beta-interferon gene regulation, the design and development of assays for the detection of DNA binding proteins and transcriptional activation, and the conception of methods for reducing NF-kB activity using various classes of inhibitors.

The co-inventors who worked in the laboratory of Phillip Sharp (Phillip Sharp, Harinder Singh, Albert Baldwin, Jonathan LeBowitz, and Roger Clerc), in collaboration with the laboratories of David Baltimore and Thomas Maniatis, contributed to the development of a novel method for the cloning of genes encoding sequence specific DNA binding proteins, the development of assays for the detection of DNA binding proteins and transcriptional activation, the discovery and characterization of Oct transcription factors, the characterization of beta-

interferon gene regulation, and the conception of methods for reducing NF-kB activity using various classes of inhibitors.

The co-inventors who worked in the laboratory of Thomas Maniatis (Thomas Maniatis and Chen-Ming Fan), in collaboration with the laboratories of David Baltimore and Phillip Sharp, contributed to the characterization of beta-interferon gene regulation, the characterization of gene regulation by NF-kB, and the conception of methods for reducing NF-kB activity using various classes of inhibitors.

Each of the co-inventors communicated and collaborated with other co-inventors regarding the conception and/or reduction to practice of the inventions claimed in the '516 patent. These communications included communications during the design, execution and analysis of experiments relating to collaborative research among the co-inventors, and informal conversations among co-inventors regarding the subject matter of the '516 patent.

ARIAD and the Institutions are continuing to investigate the information requested in this interrogatory. ARIAD and the Institutions will supplement their responses when and if they locate further non-privileged, relevant information.

## FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 19:

ARIAD objects to Interrogatory No. 19 because it is overly broad, unduly burdensome, oppressive, and for the other reasons set forth in its general objections.

Subject to its objections, ARIAD refers Amgen to the following deposition testimony:

8/20/07 and 8/21/07 Depositions of Patrick Bauerle; 5/16/07 Deposition of Philip Sharp; 4/27/07 Deposition of Harinder Singh; 6/7/07 Deposition of Michael Lenardo; 5/3/07 Deposition of Ranjan Sen; 6/28/07 Deposition of Lynn M. Corcoran; 5/25/2007 Deposition of Albert Baldwin; 4/20/07 Deposition of Chen-Ming Fan; 4/24/07 Deposition of Jonathon Lebowitz; 10/3/07 and 10/4/07 Depositions of Thomas Maniatis; 9/26/07 Deposition of David Baltimore; 8/7/07 Deposition of Louis Staudt; 7/10/07 Deposition of Roger Clerc.

**INTERROGATORY NO. 20:**

Describe in detail all work done by any of the inventors listed on the '516 patent with tumor necrosis factor-alpha (TNF-α) or antagonists (including, *e.g.*, antibodies) to TNF-α prior to April 6, 1995.

**RESPONSE TO INTERROGATORY NO. 20:**

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD objects to this interrogatory as overbroad and unduly burdensome and objects to the extent that it calls for information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, ARIAD objects to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD further objects to this interrogatory to the extent it seeks information beyond the scope of ARIAD's and the Institutions' knowledge. ARIAD reserves the right to modify or supplement its contentions and responses as ARIAD receives additional information from the Amgen Entities, Amgen or third parties, as ARIAD locates additional information, or based on a ruling by the Court.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

It was known in the field at least by April 21, 1989 that TNF activates NF-kB.

ARIAD is continuing to investigate the information requested in this interrogatory. ARIAD will supplement its responses when and if they locate further non-privileged, relevant information.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20:**

ARIAD objects to Interrogatory No. 20 because it is overly broad, unduly burdensome, oppressive, and for the other reasons set forth in its general objections.

Subject to its objections, ARIAD refers Amgen to the following deposition testimony:

5/25/2007 Baldwin Dep. Tr. at 119:21-120:2; 9/26/2007 Baltimore Dep. Tr. at 126:21-127:1, 162:1-13, 163:6-165:6; 4/20/2007 Fan Dep. Tr. at 149:10-13; 4/24/2007 Lebowitz Dep. Tr. at 176:14-177:1; 6/7/2007 Lenardo Dep. Tr. at 206:13-207:7, 208:20-209:1, 209:6-210:2, 257:9-17; 4/27/2007 Singh Dep. Tr. at 15:20-16:4, 28:7-10; 5/16/2007 Sharp Dep. Tr. at 123:14-18, 178:12-179:3, 184:14-185:2; 5/3/2007 Sen Dep. Tr. at 120:5-13, 148:3-10, 157:1-8, 214:12-16; 10/3/2007 Maniatis Dep. Tr. at 106:9-107:2.

## INTERROGATORY NO. 21:

Describe in detail all work done by any of the inventors listed on the '516 patent with Interleukin-1 (IL-1), IL-1 receptors, or antagonists (including, *e.g.*, antibodies) to IL-1 or IL-1 receptors prior to April 6, 1995.

## RESPONSE TO INTERROGATORY NO. 21:

In addition to the General Objections, which are incorporated fully by reference herein, ARIAD and the Institutions object to this interrogatory as overbroad and unduly burdensome and object to the extent that it calls for information that is neither relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. In addition, ARIAD and the Institutions object to this interrogatory to the extent it calls for information that is protected from discovery under the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. ARIAD and the Institutions further object to this interrogatory to the extent it seeks information beyond the scope of ARIAD's and the Institutions' knowledge. ARIAD and the Institutions reserve the right to modify or supplement their contentions and responses as ARIAD and the Institutions receive additional information from the Amgen Entities, Wyeth or third parties, as ARIAD and the Institutions locate additional information, or based on a ruling by the Court.

Subject to and without waiving any of the aforesaid objections and General Objections, ARIAD responds as follows:

It was known in the field at least by April 21, 1989 that IL-1 activates NF-Kb.

ARIAD and the Institutions are continuing to investigate the information requested in this interrogatory. ARIAD and the Institutions will supplement their responses when and if they locate further non-privileged, relevant information.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21:**

ARIAD objects to Interrogatory No. 21 because it is overly broad, unduly burdensome, oppressive, and for the other reasons set forth in its general objections.

Subject to its objections, ARIAD refers Amgen to the following deposition testimony:

5/16/07 Sharp Dep. Tr. at 123:22-23, 176:1-177:4, 178:12-179:3, 184:14-185:2; 4/27/07 Singh Dep. Tr. at 28:11-17; 6/7/07 Lenardo Dep. Tr. at 207:8-14, 208:2-19; 5/3/07 Sen Dep. Tr. at 119:25-120:18, 139:22-140:4, 148:3-10, 214:6-16; 6/28/07 Corcoran Dep. Tr.. at 93:9-12; 5/25/2007 Baldwin Dep. Tr. at 119:21-120:2; 4/20/07 Fan Dep. Tr. at 149:19-22; 4/24/07 Lebowitz Dep. Tr. at 177:3-21; 10/3/07 Maniatis Dep. Tr. at 107:3-16; 9/26/07 Baltimore Dep. Tr. at 127:2-6.

December 21, 2007

CRAVATH, SWAINE & MOORE LLP

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Counsel for ARIAD Pharmaceuticals, Inc., the
Massachusetts Institute of Technology, the President
& Fellows of Harvard College, and the Whitehead
Institute for Biomedical Research*

*Of Counsel:*

Morgan Chu
David I. Gindler
Richard M. Birnholz
Perry M. Goldberg
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888

Dated:  December 21, 2007