IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
)
    Plaintiffs/Counterclaim Defendants, )
)
    v. )
)
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, *et. al.* )
)
    Defendants/Counterclaim Plaintiffs. )

Civil Action No. 06-259 (MPT)


PUBLIC VERSION
CONFIDENTIAL MATERIAL OMMITED

---

**THE AMGEN ENTITIES' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 6,410,516**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

HOGAN & HARTSON LLP
Siegmund Gutman
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen
USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*


Dated: April 25, 2008

## TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT. ...............................................1

II.     NATURE AND STAGE OF PROCEEDING. ..................................................................3

III.    STATEMENT OF UNDISPUTED FACTS. ......................................................................3

        A.      Key Scientific Facts. ......................................................................................3

        B.      The Parties' Positions on Meaning of Claim Terms Relevant to the Instant
                Motion. ...........................................................................................................4

        C.      TNF-α and ENBREL. ....................................................................................8

        D.      Independent Development of ENBREL and Lack af Any Encouragement
                of Third Parties to Infringe. ........................................................................11

IV.     THE LEGAL STANDARDS. .........................................................................................11

        A.      The Legal Standard for Summary Judgment. ..............................................11

        B.      The Legal Standard for Determination of Infringement. .............................13

V.      THERE IS NO GENUINE ISSUE OF MATERIAL FACT PRECLUDING
        JUDGMENT THAT USE OF ENBREL DOES NOT INFRINGE THE
        ASSERTED CLAIMS OF THE '516 PATENT UNDER EITHER PARTY'S
        CLAIM CONSTRUCTIONS. ..........................................................................................14

        A.      Use of ENBREL Does Not Infringe Under Amgen's Claim Construction
                Because ENBREL Does Not Act Inside the Cell or Directly Inhibit NF-
                κB. ................................................................................................................14

        B.      Use of ENBREL Does Not Infringe Claims 6 And 18 of the '516 Patent
                (and Claims Dependent Thereon) Under Any Claim Construction
                Consistent With ARIAD's Representations to the PTO Because ENBREL
                Does Not Inhibit Already Induced NF-κB Activity By ARIAD's Own
                Admissions. ..................................................................................................16

        C.      ARIAD Is Not Pursuing Infringement Under Any Theory Pursuant to the
                Doctrine of Equivalents. ..............................................................................20

VI.     EVEN IF ARIAD CAN SOMEHOW MAKE OUT A CASE OF THIRD PARTY
        DIRECT INFRINGEMENT, IT STILL CANNOT PROVE INDIRECT
        INFRINGEMENT BY AMGEN. ...................................................................................21

i

VII.    CONCLUSION..................................................................................................25

065028.1001

## TABLE OF AUTHORITIES

Page

**Cases**

*Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984)..................................................................... 11, 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................... 12, 20

*Centricut, LLC v. Esab Group, Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004)................................................................. 12

*Desper Prods. Inc. v. QSound Labs, Inc.*,
    157 F.3d 1325 (Fed. Cir. 1998)................................................................. 12

*DSU Medical Corp. v. JMS Co., Ltd.*,
    471 F.3d 1293 (Fed. Cir. 2006)................................................... 13, 21, 23, 24

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988)................................................................. 14, 20

*epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*,
    492 F.Supp.2d 608 (E.D. Tex. 2007)......................................................... 23

*Genzyme Corp. v. Transkaryotic Therapies, Inc.*,
    346 F.3d 1094 (Fed. Cir. 2003)................................................................. 13, 15

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
    365 F.3d 1054 (Fed. Cir. 2004)................................................................. 13, 24

*LP Matthews LLC v. Bath & Body Works, Inc.*,
    458 F. Supp. 2d 189 (D. Del. 2006)........................................................... 12

*Novartis Corp. v. Ben Venue Labs*,
    271 F.3d 1043 (Fed. Cir. 2001)................................................................. 13

*Terlep v. Brinkmann Corp.*,
    418 F.3d 1379 (Fed. Cir. 2005)................................................................. 13

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.*
    870 F.2d 1546 (Fed. Cir. 1989)................................................................. 14, 16

*Warner-Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)................................................................. 21, 22

iii

**Other Authorities**

Li, Q. and Verma, I.M.,
*NF-κB Regulation in the Immune System*, Nature Reviews: Immunology Vol. 2 at
732 (October 2002) ................................................................................................ 10, 18

Withoff, *et al.*
*Regulating the Master Regulator NF-κB: From Natural Strategies to Rationally
Designed Superdrugs*, Handbook of Transcription Factor NF-kappaB, S. Ghosh,
Ed. at 206-07 (2007) ............................................................................................. 10, 18

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................... 12

iv

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT.

1.    Plaintiffs ("Amgen") move for summary judgment of non-infringement of asserted claims 6, 18, 70-72, and 183-184 of ARIAD's U.S. Patent No. 6,410,516 (the "'516 patent" -- attached at Exhibit A) based on three independent grounds.

2.    First, no genuine issue of material fact precludes summary judgment of non-infringement if the claims are properly construed such that the claimed step of "reducing NF-κB activity in cells" requires that the action to reduce be taken inside cells. The plain language of the claims dictates that the reduction take place "in the cells" or "in cells" and the specification focuses exclusively on hypothetical examples of blocking or interfering with molecular events occurring inside cells. The undisputed evidence shows that Amgen's Enbrel® product, on the other hand, does not act *inside* the cell, but rather binds to TNF-α *outside* the cell. Indeed, ARIAD's infringement expert unequivocally admitted that she "could not think of how there would be" infringement if Amgen's claim construction of "reducing NF-κB activity in cells" were adopted.

3.    Second, under *any* claim construction that is consistent with ARIAD's disclaimers of claim scope made to the United States Patent and Trademark Office ("PTO"), summary judgment of non-infringement is warranted. In an attempt to preserve the validity of the asserted claims over prior art raised during re-examination of the '516 patent, ARIAD has clearly disclaimed that its claims cover "inhibiting activation of NF-κB activity." More specifically, ARIAD has argued that actions taken to prevent an extracellular stimulus from inducing NF-κB activity, even when there has already been a prior induction (*i.e.*, preventing further induction), is not covered by any of the asserted claims. But that is, at most, all that ENBREL does. Even ARIAD's expert concedes that ENBREL, at most, merely blocks

1

induction of NF-κB activity by binding up TNF-α outside a cell, and does nothing to diminish any intracellular NF-κB activity that has already been induced. To the extent any link can be drawn between ENBREL and NF-κB activity, the most that ARIAD can show is that ENBREL falls within the scope disclaimed by ARIAD in arguments made to the PTO.

4.    Third, even if ARIAD can somehow maintain an argument that third parties are directly infringing by using ENBREL, ARIAD has no evidence to support its assertion of indirect infringement by Amgen. The claims require the step of "reducing NF-κB activity in cells" and the law of inducement requires that the accused indirect infringer have specific intent and take specific action to encourage the infringement of others. But here there is no evidence of Amgen's intent or that it encourages others to reduce the NF-κB activity in their cells. Moreover, there is no evidence of NF-κB or NF-κB activity playing any role in the design or development of ENBREL. It is undisputed that ENBREL's label and product insert are silent about NF-κB and any alleged effect on NF-κB activity, and the FDA requires that Amgen's promotional activities strictly conform to the label. As a result, it is not surprising that there is no evidence that Amgen markets ENBREL based on any effect on NF-κB. Further, with regard to contributory infringement, ARIAD cannot possibly meet the applicable standard because even under ARIAD's own evidence ENBREL has substantial non-infringing uses.

5.    For each of these three independent reasons -- ENBREL does not act within a cell, ARIAD disclaimed a claim scope that would cover patients taking drugs like ENBREL, and ARIAD cannot establish indirect infringement -- summary judgment of non-infringement of the asserted claims of the '516 patent is proper and should be granted.

## II.    NATURE AND STAGE OF PROCEEDING.

On April 20, 2006, Amgen filed a Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement of the '516 patent. (D.I. 1)  On April 14, 2007 (roughly one year after Amgen's Complaint was filed), ARIAD filed its Counterclaim alleging for the first time that Amgen infringes the '516 patent. (D.I. 185)  On September 24, 2007, ARIAD filed an Amended Counterclaim. (D.I. 413)  Fact and expert discovery are now closed in this case. Trial, if needed, is set for November 3, 2008. (D.I. 391)  It has been discussed that bench trial issues, including inequitable conduct, will be tried in this same timeframe.

## III.    STATEMENT OF UNDISPUTED FACTS.

The following undisputed facts are provided in support of the present motion.

### A.    Key Scientific Facts.

Amgen's Opening Markman Brief, filed contemporaneously with this brief, sets forth a more detailed scientific background regarding the '516 patent and its general technology.  The key elements of this technology for purposes of this motion are as follows:

- Activation of NF-κB is an extremely complicated process that involves many different mechanisms and molecules and is believed to vary greatly among individual people and even individual cells (Ex. B, Mar. 26, 2008, Dep. Tr. of ARIAD's Expert Dr. Kathryn Calame ("Calame Dep.") at 242:1-10; Declaration of Alisa Erika Koch, Ex. A, Rebuttal Expert Report of Dr. Alisa Koch ("Feb. 22 Koch Rpt.") at 23);

- NF-κB only acts *intra*cellularly (*i.e.* inside of cells) (Calame Dep. at 237:21-24);

- It is believed that many factors may induce NF-κB activity, including, under certain circumstances, extracellular contact of TNF-α and LPS with a cell (*id.* at 219:24-220:10);

- TNF-α and LPS induce NF-κB activity, in those instances where induction occurs, through very similar mechanisms (*id.* at 242:11-14);

- Induction of NF-κB activity as a result of TNF-α (or LPS), in those instances where induction occurs, can only occur through the binding of TNF-α (or LPS) to a cell surface receptor (*id.* at 220:16-221:9, 242:11-14).

3

Amgen assumes for purposes of this motion only that ARIAD's theory of the mechanism of action of TNF-α and ENBREL -- that TNF-α induces NF-κB activity and ENBREL, by binding TNF-α, blocks this activity -- is correct. Although Amgen disagrees that this theory is fully correct or applies in all patients taking ENBREL, summary judgment of non-infringement is warranted as a matter of law even under ARIAD's theory of the case.

**B.     The Parties' Positions on Meaning of Claim Terms Relevant to the Instant Motion.**

The claims of the '516 patent all relate to purported methods for altering NF-κB activity in cells. ARIAD asserts that the use of ENBREL infringes seven claims of the '516 patent, including independent claim 6 and its dependent claims 70-72, and independent claim 18 and its dependent claims 183-84, which read as follows:

> Claim 6:   A method for diminishing induced NF-κB-mediated intracellular signaling comprising reducing NF-κB activity in cells such that NF-κB-mediated intracellular signaling is diminished.
>
> Claim 70:  The method of claim 6, carried out on mammalian cells.
>
> Claim 71:  The method of claim 6, carried out on human cells.
>
> Claim 72:  The method of claim 70 or 71, carried out on immune cells.
>
> Claim 18:   A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising reducing NF-κB activity in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells.
>
> Claim 183:  The method of claim 18, carried out on human cells.
>
> Claim 184:  The method of claim 18 or 183, carried out on immune cells.

065028.1001

All of the asserted claims have some form of the "reducing NF-κB activity in cells" language that is at issue in this motion.[1]  Amgen's proffered construction and the proper construction of this term is:

taking action inside cells to directly inhibit (interfere or block) an NF-κB activity.

(See Amgen's Opening Markman Brief)  In fact, the claims repeatedly focus on actions taken in cells and the patent exclusively discusses, and thus can only possibly cover, actions taken inside cells to directly interfere or block an NF-κB activity.  Furthermore, all of the hypothetical examples in the '516 patent pertain to actions taken inside of cells on NF-κB itself or associated molecules that interact with NF-κB inside of cells, and thus a requirement of taking action inside cells is the only interpretation supported by the specification.  The speculative use of decoy molecules and dominantly-interfering molecules, for example, would (if they worked) interfere with NF-κB binding to DNA sequences inside the nucleus of a cell.  Over the entire course of the sixteen years of prosecution leading up to patent issuance in 2002, there was never any discussion of any specific embodiments that involved taking action outside cells.

ARIAD's proposed claim construction, on the other hand, is inconsistent with the intrinsic evidence.  Among other things, ARIAD seeks to rewrite the claims to provide two new provisions:  (1) expanding the claims to encompass actions taken outside cells (which is where

---

[1]  Since all of the claims of the '516 Patent have some form of this limitation, a ruling on summary judgment in Amgen's favor will apply across all claims of the '516 patent and Amgen does not infringe any of them.

ENBREL is found);[2] and (2) limiting the claims to require a specific induction of NF-κB activity

prior to the claimed reducing of NF-κB activity (in an attempt to avoid anticipating prior art).[3]

    ARIAD has recently characterized the meaning of these claims during the ongoing Re-

examination before the PTO.[4]  In attempting to overcome prior art raised by the Examiner,

ARIAD argued (as it does in this litigation), that the asserted claims require a specific induction,

by a stimulus, prior to any reduction of NF-κB.[5]  (Ex. C, Reexamination Control No. 90/007,503

and 90/007,828, Oct. 22, 2007, ARIAD Response at 27-28)  ARIAD attempted to support its

argument by pointing to the fact that the claims do not cover the situation in which an inhibiting

agent prevents an external stimulus, *i.e.* something outside the cell, from having the functional

---

[2]   ARIAD proposes that "reducing NF-κB in cells" means "decreasing NF-κB activity in cells in which NF-κB is present by inhibiting any step along the NF-κB signal transduction pathway, in such a manner that the activity differs from the naturally occurring activity of NF-κB under the same conditions, *without regard to the situs of the inhibiting agent.*" (D.I. 571, April 8, 2008, Joint Claim Construction Chart at 2-3 (emphasis added))

[3]   ARIAD has proposed that the preamble of claim 6 be limiting and that its language "diminishing induced NF-κB-mediated intracellular signaling" be construed to mean: "inhibiting the intracellular steps of the NF-κB signal transduction pathway, *performed after the pathway has been initiated in response to application of a* stimulus prior to the performance of the claimed method." (*Id.* at 6 (emphasis added))

[4]   The '516 patent is currently in re-examination in the Merged Proceedings of *Ex Parte* Re-examination Control Nos. 90/007,503 (filed April 4, 2005) and 90/007,828 (filed December 2, 2005).  The claims that remain in reexamination and currently stand as rejected include every claim asserted in this case.  (*See* Reexamination Control No. 90/007,503 and 90/007,828, Oct. 22, 2007, ARIAD Response at 14)

[5]   ARIAD's attempt to introduce this limitation into the claims, which the examiner has already rejected once, is wrong for the reasons explained in Amgen's Markman brief. (*See also* Ex. D, Reexamination Control No. 90/007,503 and 90/007,828, July 6, 2007, Final Rejection at 20 ("The claimed methods are drawn to 'reducing NF-kB activity' to inhibit NF-kB regulated gene expression in a eukaryotic (or mammalian) cell.  There is nothing in the independent claims compelling a person of ordinary skill in the art to include any particular steps including a 1st activation step."))

                                        

effect of inducing NF-κB activity. ARIAD made this concession because blocking an external stimulus would not allow induction to occur prior to reduction, which ARIAD argued was required by the claims. Thus, ARIAD stated:

> Broadly speaking, there are the two types of methods to obtain a cell exhibiting reduced NF-κB activity as follows: (a) reducing the induced NF-κB activity by intervening in the signaling pathway by which NF-κB activity is manifested including particularly intervening intracellularly at a specific segment within the signaling pathway; and (b) preventing the external inducing stimuli from inducing the intracellular signaling pathway through which NF-κB activity is manifested.

> Certain claims of the '516 Patent as issued covered both such types of methods. However, as discussed further in this response applicants maintain that the rejected claims now pending [which include claims 6, 18, 70-72 and 183-184] are directed only to type (a) above.

(*Id.*) In other words, ARIAD has admitted that none of the asserted claims pertain to "preventing [an] external inducing stimuli from inducing the intracellular signaling pathway through which NF-κB activity is manifested." (*See Id.*)

ARIAD's expert before the PTO, Dr. Inder Verma, repeated this argument in a supporting submission to the PTO, stating that "inhibiting activation is a method different from diminishing induced NF-κB activity." (*See, e.g.* Ex. E, October 19, 2007, Verma Decl. at ¶¶ 60, 61) In his declaration, Dr. Verma was excluding from the scope of the claims any method that constitutes "inhibiting activation" as opposed to "diminishing induced." (*Id.*) Thus, in the situation in which the inducing agent is something acting outside the cell, *i.e.* an "external stimulus," it is clear that "inhibiting activation" of NF-κB activity is equivalent to taking an action externally to stop the inducing agent from performing its function.

ARIAD made the same argument to the PTO when arguing to overcome prior art involving treatment with antibiotics. LPS is a substance that is produced by certain bacteria and is released into an infected person's intercellular fluid. (*See Id.* at ¶ 113) When LPS comes into

contact with a cell it induces NF-κB activity.  (*Id.*; Ex. B, Calame Dep. at 242:11-14)  As

explained by ARIAD's expert Dr. Verma to the PTO:

> In the case where LPS has already induced NF-κB activity, removal of LPS does
> not change such induced activity.  The absence of LPS does not reduce induced
> NF-κB activity.  LPS, when present, induces NF-κB activity, but when absent
> does not.  Thus, according to the Examiner's theory, antibiotics can only prevent
> induction of NF-κB by LPS but under no theory or evidence presented in the July
> 6, 2007 Final Office Action can antibiotics reduce induced NF-κB activity....
>
> *     *     *
>
> Though LPS induces activation of NF-κB, removing LPS ... merely prevents
> <u>further</u> induction of NF-κB.  Thus the 1970 PDR provides no evidence that
> antibiotics can diminish induced NF-κB-mediated intracellular signaling as
> recited by claim 6.

(Ex. E, Oct. 19, 2007, Verma Decl. at ¶¶ 114-115 (original emphasis))

The fact that ARIAD has explicitly acknowledged that "preventing further induction"

was not covered by the remaining claims is significant because it means that ARIAD admits that

the claims do not cover any type of interference with an external stimulus, whether it is done

before or after an initial induction has already taken place.  Thus, consistent with ARIAD's

position in front of the PTO, it follows that particular drugs that interfere with external stimuli of

NF-κB activity are not covered by the asserted claims.

**C.    TNF-α and ENBREL.**

TNF-α is a cytokine that plays a role in the immune response by facilitating intercellular

communications (*i.e.*, communications between cells).  (Koch Decl. Ex. A, Feb. 22 Koch Rpt. at

16-17)  TNF-α is a protein that is produced by cells and released outside the cells into the

intercellular fluid (*i.e.*, fluid surrounding cells in the body) where it exists and can come into

contact with a receptor for TNF-α on a cell's surface.  (*Id.*)  When TNF-α comes into contact

8

with a receptor for TNF-α on a cell's surface the TNF-α can bind to the receptor and may cause certain events to occur inside the cell. (*Id.*) TNF-α thus performs its functions outside of cells.

ENBREL is a drug that is produced and marketed by Amgen and is approved to treat immune diseases including rheumatoid arthritis, ankylosing spondylitis, psoriatic arthritis, and psoriasis. (*Id.* at 31.) Although the precise way in which ENBREL works is extremely complex and not well understood (Ex. B, Calame Dep. at 241:18-242:10), it is generally understood that ENBREL binds to TNF-α outside of cells and prevents TNF-α from binding to cell surface receptors (*id.* at 146:7-13). In fact, ENBREL was specifically developed to bind TNF-α extracellularly because it was believed that reducing TNF-α in the extracellular environment would reduce inflammation. (Koch Decl. Ex. A, Feb. 22 Koch Rpt. at 33-34) Subsequent clinical trials repeatedly showed that ENBREL did indeed reduce inflammation by binding to TNF-α extracellularly. (*Id.*)

Binding of free TNF-α in the intercellular fluid prevents the TNF-α that binds to ENBREL from binding to receptors on the cell surface and may block the induction of whatever subsequent processes inside the cell would have occurred from the binding of TNF-α to its cell surface receptor. (Ex. B, Calame Dep. at 144:5-13) Amgen has continued to study TNF-α (as well as other cytokines such as IL-1) in an attempt to learn more about their effects on a variety of cell types. ARIAD has in this case sought documents relating to Amgen's internal work performed long after ENBREL had already been developed and approved for use in patients, but these documents are irrelevant to whether the use of ENBREL infringes the asserted claims of

9

the '516 patent under either party's proposed claim construction.[6]  It is simply undisputed that

ENBREL does not enter a cell and does not act inside a cell.  (*Id.* at 146:3-21)  ENBREL further

cannot bind to TNF-α that is already bound to a cell surface receptor to "remove" any induction

that is occurring.  (*Id.* at 234:19-235:4)

   The mode of action of ENBREL and other anti-TNF drugs has been characterized by

ARIAD's paid expert Dr. Verma as "inhibition of NF-κB activation" (the same language that Dr.

Verma used in the PTO to contrast with what the claims require) because they "do not target NF-

κB specifically." (Ex. F, Li, Q. and Verma, I.M., *NF-κB Regulation in the Immune System*,

Nature Reviews: Immunology Vol. 2 at 732 (October 2002); *see also* Ex. G, Withoff, *et al.*

*Regulating the Master Regulator NF-κB: From Natural Strategies to Rationally Designed*

*Superdrugs*, Handbook of Transcription Factor NF-kappaB, S. Ghosh, Ed. at 206-07 (2007) (in

which Dr. Verma notes that decoy receptors "inhibit the triggering of NF-κB signaling" as

opposed to "inhibiting NF-κB signaling itself", and listing ENBREL as one such decoy

receptor))     **Redacted**

---

[6]

         **Redacted**

065028.1001

**D.    Independent Development of ENBREL and Lack af Any Encouragement of Third Parties to Infringe.**

Development of ENBREL began in the late 1980s (Koch Decl. Ex. A, Feb. 22 Koch Rpt. at 33) totally separate and apart from anything having to do with NF-κB or the inventors named on the '516 patent (*id.* at 33-34). Following nearly a decade of development and clinical testing, the FDA approved ENBREL for treatment of rheumatoid arthritis ("RA") on November 2, 1998. (*Id.* at 31) This was seven years before the '516 patent even issued. There is also no evidence that the developers of ENBREL considered NF-κB activity in creating this drug. Whether ENBREL impacts NF-κB activity was irrelevant to the inventors of ENBREL. (*Id.* at 33-34) Further, NF-κB was irrelevant to the production of ENBREL, to the development of the process for producing ENBREL, to the clinical development of ENBREL, and to the approval of ENBREL. (*Id.* at 38)

Not surprisingly, NF-κB activity is also utterly irrelevant to Amgen's efforts to promote ENBREL. There is no evidence of Amgen telling patients to reduce their NF-κB activity, or in fact telling patients anything about NF-κB activity. Amgen's package insert and promotional materials are similarly devoid of any reference to NF-κB or NF-κB activity. (*See, e.g.*, Ex. I, ENBREL Package Insert; Ex. J, ENBREL Promotional Material) And there are substantial non-infringing uses of ENBREL, even under ARIAD's theories of infringement, given that ARIAD's own infringement expert admits that not all patients, not all uses, and not all cells will infringe when ENBREL is taken. (Ex. B, Calame Dep. at 161:14-18, 211:23-212:3, 152:3-24)

**IV.    THE LEGAL STANDARDS.**

**A.    The Legal Standard for Summary Judgment.**

Summary judgment is "as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). "One of the

11

principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Desper Prods. Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998). It is the moving party's burden to prove no genuine issue of material fact exists. *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 189, 193 (D. Del. 2006).

"If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." *Id* (internal quotations and citations omitted). Although the court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, "[t]he mere existence of some evidence in support of the nonmoving party ... will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party." *Id.*

As patentee, ARIAD has the burden of proving infringement by a preponderance of the evidence. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). Notwithstanding that legitimate evidentiary inferences must be drawn in the nonmovant's favor, ARIAD cannot create a genuine issue of material fact merely by stating that a fact is challenged. *See Barmag Barmer Maschinenfabrik AG*, 731 F.2d at 836. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a

12

material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

**B.    The Legal Standard for Determination of Infringement.**

A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005) (internal quotations and citations omitted). If even one limitation from an asserted claim is absent from the use of ENBREL, then the Court should grant summary judgment of noninfringement. *See, e.g., Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094, 1106 (Fed. Cir. 2003).

A party is liable for inducing infringement if the party had "an affirmative intent to cause direct infringement." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). In other words, "inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *Id.* Thus, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* A party is liable for contributory infringement if it its products "have no substantial noninfringing uses" and it knows that the use for which its products are "especially made [is] both patented and infringing." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004). In addition, the party must have actually made sales "that contributed to another's direct infringement." *DSU*, 471 F.3d at 1303.

It is "axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co., Inc. v.*

13

*Frontier, Inc.* 870 F.2d 1546, 1553 (Fed. Cir. 1989). Thus, if the Court finds that any independent claim is not infringed, all claims dependent on that claim are also not infringed.

Finally, any claim scope disclaimed in reexamination proceedings cannot be recaptured in claim construction or litigation. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) ("The district court seemed to ignore arguments made during the reissue/reexamination proceeding that prior art polymers including those with crystallinity of 38%, 32%, and 38% were 'outside the scope of appellant's claims.' Statements made during reissue are relevant prosecution history when interpreting claims.").

## V. THERE IS NO GENUINE ISSUE OF MATERIAL FACT PRECLUDING JUDGMENT THAT USE OF ENBREL DOES NOT INFRINGE THE ASSERTED CLAIMS OF THE '516 PATENT UNDER EITHER PARTY'S CLAIM CONSTRUCTIONS.

### A. Use of ENBREL Does Not Infringe Under Amgen's Claim Construction Because ENBREL Does Not Act Inside the Cell or Directly Inhibit NF-κB.

The correct construction of the limitation in claim 6 of "reducing NF-κB activity in cells" and in claim 18 of "reducing NF- κB in the cells"[7] requires "*taking action inside [the] cells to directly inhibit (interfere or block) an NF-κB activity.*" There can be no infringement of the claims by ENBREL under this claim construction. ARIAD's expert Dr. Calame agrees that ENBREL acts only outside of cells. (Ex. B, Calame Dep. at 146:3-21) Dr. Calame also agrees that ENBREL does not directly interact with NF-κB in any way. (*Id.* at 241:7-10) And Dr. Calame further admits that, at most, any relationship between use of ENBREL and NF-κB

---

[7]    Claim 18 specifically requires "the cells" be "mammalian cells", but this is irrelevant for purposes of the instant motion.

14

activity is far downstream from ENBREL binding to TNF-α outside the cell. (*Id.* at 241:18-242:10, 271:13-272:25)

Summarizing this evidence, ARIAD's expert acknowledged in her deposition that she could not conceive of how use of ENBREL would infringe the '516 patent under Amgen's proposed claim construction:

> A:    I do understand that if the Court said that it only -- the claim construction was such that it had to happen inside the cell, then there would be more difficulty. It's still -- you know, we all agree that things are happening inside the cell as a result of something on the exterior of the cell binding to the receptor. But if the Court decided that the only activity of Enbrel had to be inside the cell, then that would be a difficulty, I agree. But, please, do understand that I am not rendering a definitive claims construction conclusion here.

> Q:    I understand that you're not providing any opinions regarding claim construction. I am just trying to ask you to take these proposed claim constructions and confirm for me that if the claims require taking action inside the cell to reduce NF-kappaB activity, you agree with me that a patient taking Enbrel doesn't do that; right?

> A:    I think that we've discussed that my understanding is Enbrel works outside the cell.

> Q:    *Okay. So there would be no infringement in that situation?*

> A:    *Well, I can't think how there would be.*

(*Id.* at 271:24-272:25 (emphasis added))

The undisputed facts are that ENBREL binds to TNF-α outside the cell and never directly interacts with NF-κB. Thus, use of ENBREL does not satisfy every limitation of, and thus cannot infringe, claims 6 and 18 of the '516 Patent because ENBREL does not "tak[e] action **inside** the cell," or "**directly** inhibit" NF-κB activity. *See, e.g., Genzyme*, 346 F.3d at 1106. If Amgen's proposed claim construction is adopted then "there is no genuine issue as to any material fact and [Amgen is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

065028.1001

Because use of ENBREL does not infringe independent claims 6 and 18, it also does not infringe any claims that are dependent on claims 6 and 18. *Wahpeton Canvas*, 870 F.2d at 1553 ("dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed").

**B.    Use of ENBREL Does Not Infringe Claims 6 And 18 of the '516 Patent (and Claims Dependent Thereon) Under Any Claim Construction Consistent With ARIAD's Representations to the PTO Because ENBREL Does Not Inhibit Already Induced NF-κB Activity By ARIAD's Own Admissions.**

Even if the Court adopts a construction of the claim limitations "reducing NF-κB activity in cells" and "reducing NF-κB activity in the cells" other than Amgen's specific proposal, summary judgment is still warranted. ARIAD's own admissions to the PTO make it impossible for the claims to cover a compound that acts like ENBREL does.

ENBREL acts by binding to TNF-α and intercepting it *before* it can bind to a cell surface receptor. (Ex. B, Calame Dep. at 144:5-13) When ENBREL prevents TNF-α from binding to a cell surface receptor, any induction of intracellular events that would ordinarily happen upon binding are now precluded. (*Id.* at 221:16-20) But once TNF-α binds to a cell surface and triggers induction of intracellular events, ENBREL cannot undo those events. (*See, e.g., Id.* at 234-35) Thus, at most, ENBREL's mechanism of binding TNF-α before it can bind to a cell surface receptor can only be described (assuming ARIAD's infringement theory) as "inhibiting activation" of NF-κB activity, and falls squarely within the scope of that which ARIAD disclaimed before the PTO. (Ex. E, October 19, 2007, Verma Decl. at ¶¶ 60, 61 ("inhibiting activation [not covered by the claim according to ARIAD] is a method different from diminishing induced [covered by the claim according to ARIAD] NF-κB activity."))

Similarly, ARIAD has told the PTO that preventing an external stimulus (such as TNF-α) from inducing NF-κB activity is *not* covered by the claims. (Ex. C, Reexamination Control

16

No. 90/007,503 and 90/007,828, Oct. 22, 2007, ARIAD Response at 27-28 (stating that "preventing the external inducing stimuli from inducing the intracellular signaling pathway through which NF-κB activity is manifested" is not covered by the claims)) ARIAD further told the PTO that "preventing <u>further</u> induction of NF-κB activity" — *i.e.* removing additional stimulus after the cells have been previously stimulated to have "induced" NF-κB activity — is also *not* covered by the claims. (Ex. E, Oct. 19, 2007, Verma Decl. at ¶¶ 114-115, original emphasis ("Though LPS induces activation of NF-κB, removing LPS (which is not a direct effect of an antibiotic) merely prevents further induction of NF-κB. Thus the 1970 PDR provides no evidence that antibiotics can diminish induced NF-κB-mediated intracellular signaling as recited by claim 6.")) Thus, Dr. Verma explains that treatment with antibiotics is an example of a method that "inhibit[s] activation of NF-κB" and thus does *not* fall within the scope of the '516 patent claims. (*Id.*)

Use of ENBREL to bind to TNF-α is analogous to use of antibiotics to stop bacteria from producing LPS. As discussed, antibiotics act outside the cell to prevent LPS from interacting with a person's cells and potentially inducing new NF-κB activity. Likewise, ENBREL acts outside the cell to prevent TNF-α from interacting with a person's cells and potentially inducing new NF-κB activity. (Ex. B, Calame Dep. at 222:21-223:7) Therefore, ENBREL (like an antibiotic) does not actually interact with cells in any way, much less act to inhibit the inherently intracellular activity of NF-κB that has already been induced by TNF-α (or, in the case of antibiotics, LPS). This is undisputed — no evidence in this case shows that ENBREL or TNF-α are in any way implicated in "reducing" or in any way interfering with NF-κB activity that has already been induced. (*Id.* at 228:17-234:18, 235:19-237:11, 238:15-239:14)

It is telling that Dr. Verma himself has described ENBREL's mode of action in terms that exclude it from coverage of the asserted claims. Dr. Verma has characterized the mode of action of ENBREL and other anti-TNF drugs as "inhibition of NF-κB activation" and contrasted it with drugs that directly work on the intracellular NF-κB activities. (Ex. F, Li, Q. and Verma, I.M. at 732; Ex. G, Withoff, *et al.* at 206-07)

**Redacted**

ARIAD cannot possibly square Dr. Verma's statements and ARIAD's assertion that ENBREL infringes in this case.

In short, in ARIAD's own words to the PTO, the remaining claims of the '516 patent only cover "reducing the induced NF-κB activity by intervening in the signaling pathway by which NF-κB activity is manifested including *particularly intervening intracellularly* at a specific segment within the signaling pathway." (Ex. C, Reexamination Control No. 90/007,503 and 90/007,828, October 22, 2007, ARIAD Response at 27-28 (emphasis added)) In other words, ARIAD has taken the position that the asserted claims only cover actions to intercept NF-κB activity that *has already been induced* by an external stimulus by intervening inside the cell to cut off (at least some of) that activity.

ARIAD's own expert's testimony in this case confirms that ENBREL cannot be covered by these claims. Dr. Calame admitted that induction of NF-κB activity and intracellular signaling caused by TNF-α may only occur *after* TNF-α has bound to a cell surface receptor. (Ex. B, Calame Dep. at 220:16-221:9) Indeed, when presented with the following diagram reflecting her theory of the mechanism of action of ENBREL, Dr. Calame could not explain how

18

ENBREL's blocking of TNF-α (*i.e.* "further stimulus blocked" in Fig. 1 below) could possibly

reduce any NF-κB-mediated intracellular signaling that had been induced by TNF-α:



FIG 1: Exhibit 17 of the deposition of Dr. Calame. (*See* Ex. B, Calame Dep. at 228:17-231:13)

ARIAD's own expert evidence in this case shows that, even under ARIAD's theory of

the case, the most that ARIAD could ever prove is that ENBREL "inhibit[s] activation" of NF-

κB by "preventing external stimuli [TNF-α] from inducing ... NF-κB activity." (*Id.* at 222:13-

223:17) Dr. Calame could not provide any explanation as to how use of ENBREL affects the

NF-κB activity that has already been induced. (*Id.* at 228:17-234:18, 235:19-237:11, 238:15-

239:14) Thus, even assuming that TNF-α actually acts as an "external inducing stimulus," the

most ARIAD can prove is that ENBREL only acts to prevent this "external inducing stimulus"

from ever inducing (or further inducing) the intracellular signaling pathway through which NF-

κB activity is manifested -- exactly what ARIAD has told the PTO the asserted claims ***do not***

cover.[8]  (Ex. C, Reexamination Control No. 90/007,503 and 90/007,828, October 22, 2007,

ARIAD Response at 27-28)  As a result, ENBREL's action must be outside the scope of any

claim construction that is consistent with the intrinsic evidence, and summary judgment of no

direct infringement of the asserted claims is warranted.  *E.I. du Pont de Nemours*, 849 F.2d at

1439 ("The district court seemed to ignore arguments made during the reissue/reexamination

proceeding that prior art polymers including those with crystallinity of 38%, 32%, and 38% were

'outside the scope of appellant's claims.'   Statements made during reissue are relevant

prosecution history when interpreting claims."); *Celotex*, 477 U.S. at 323-24 ("One of the

principal purposes of the summary judgment rule is to isolate and dispose of factually

unsupported claims or defenses.").

### C.    ARIAD Is Not Pursuing Infringement Under Any Theory Pursuant to the Doctrine of Equivalents.

ARIAD cannot save its infringement case by invoking the doctrine of equivalents.

ARIAD's interrogatory responses did not present any infringement contentions based on the

doctrine of equivalents.  ARIAD's infringement expert admits to having no opinions regarding

the doctrine of equivalents under any claim construction.  (Ex. B, Calame Dep. at 272:2-10)  And

ARIAD's counsel confirmed that ARIAD is not pursuing any theories beyond the literal

---

[8]   ARIAD has in this case pointed to and mischaracterized various document and articles -- *e.g.* articles with lead authors Lizzul or DiChamp and experiments purportedly conducted by Dr. Joel Pomerantz -- in an attempt to show an impact of ENBREL on NF-κB activity.  But this evidence does not address the question of how ENBREL might impact NF-κB activity as required by the claims, as opposed to merely blocking induction (or further induction, if previously induced) of NF-κB activity.  By ARIAD's own admissions, all impacts or reductions of NF-κB activity are *not* covered by the claims, so it proves nothing if ARIAD points to such documents that try to tie together ENBREL and NF-κB activity in some way. Thus, this evidence is not relevant to the issues presented in this motion.

infringement contentions set forth by its expert. (*Id.* at 272:11-274:21) As a result, the failure of ARIAD's literal infringement case is dispositive of the infringement issue, and summary judgment of non-infringement should be granted.

## VI. EVEN IF ARIAD CAN SOMEHOW MAKE OUT A CASE OF THIRD PARTY DIRECT INFRINGEMENT, IT STILL CANNOT PROVE INDIRECT INFRINGEMENT BY AMGEN.

Even if ARIAD can somehow prove that a third party has directly infringed the '516 patent, it still has no evidence to support its assertion of indirect infringement against Amgen.

All of the asserted claims require "reducing NF-κB activity in cells" or "in the cells," and thus, to establish indirect infringement by inducement, ARIAD must show, at a minimum, that Amgen possessed specific intent to encourage others to reduce NF-κB activity in cells. *DSU*, 471 F.3d at 1306 (*en banc*) ("proof of actual intent to *cause the acts which constitute the infringement* is a necessary prerequisite to finding active inducement") (citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) (emphasis added). Under the law governing indirect infringement, the question is *not* whether Amgen possesses specific intent to cause others to take a drug which may or may not perform the function of reducing NF-κB activity, among its many potential effects. *Id.* at 1306 ("The 'mere' knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven."). Because there is no evidence that Amgen intended to encourage others to achieve this claimed result, there can be no inducement of infringement in this case.

This is shown by the case of *Warner-Lambert*, in which the claims were to a method of treating a neurodegenerative disease by administering a compound commonly known as gabapentin. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1351 (Fed. Cir. 2003). Warner-Lambert had other patents also using the compound gabapentin in methods of treating

21

epilepsy and other disorders. *Id.* The accused infringer (Apotex) filed an ANDA for the epilepsy-like indications in order to market the drug upon expiration of the epilepsy patents, but was accused for infringement under the patents for the other neurodegenerative indication. *Id.* at 1352. Having lost on direct infringement, Warner-Lambert asserted indirect infringement, arguing that once Apotex launched the drug under the epilepsy indication, Apotex would nevertheless know that doctors would be prescribing the drug for treatment of the neurodegenerative disease as well, even though only the epilepsy indications were part of its ANDA application. But even taking such assertions of knowledge and likelihood of doctors prescribing the drug for the neurodegenerative treatment at face-value, the district court held and the Federal Circuit affirmed that such knowledge was insufficient to constitute an intention to cause patients to take the drug for neurodegenerative purposes. *Id.* at 1364. It did not matter that the accused infringer would soon be marketing a drug that, when administered to patients, could and would constitute a method of treating a neurodegenerative disease as claimed in the asserted patent. What mattered was that there was insufficient evidence in the record that the accused infringer *specifically intended* for doctors to prescribe to patients *for that purpose.* In other words, selling a drug that *may* have a certain effect is insufficient to prove inducing infringement. The accused infringer must intend and encourage the use of the drug to have *the claimed effect* -- in this case reducing NF-κB activity in cells.

ARIAD can present no "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU*, 471 F.3d at 1306. There is no evidence that Amgen had the intent specifically directed to encouraging others to reduce NF-κB activity in cells, as required by the claims. There are no promotional materials or instructions teaching doctors to teach patients to reduce NF-κB activity

22

in cells. *See epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F.Supp.2d 608, 635 (E.D.

Tex. 2007) ("It is active inducement to provide instructions describing how to engage in an

infringing use.") (*citing Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1364

(Fed. Cir. 2006) and *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354 (Fed.

Cir. 2004) (finding active inducement of infringement based on defendant's publications

describing and promoting use of a patented method)).   Amgen encourages patients to take

ENBREL only for the FDA approved indications as described on the label. (*See* Ex. I, ENBREL

Package Insert)   Any other encouragement is prohibited by FDA regulations.   ARIAD has

presented no doctors or patients, or communications from Amgen to doctors or patients, to meet

its burden to show that Amgen has ever engaged in "culpable conduct" by encouraging patients

or doctors to use ENBREL to influence a patient's NF-κB activity.

The only evidence of record compels the conclusion that Amgen has ***not*** induced or

encouraged anything with respect to "reducing NF-κB activity" or infringement of the claims.

Amgen has presented two treating physicians (Dr. Koch and Dr. Jackson) who have stated that

Amgen has never marketed ENBREL to them on the grounds that ENBREL treats NF-κB, and

who have stated that they do not even consider a patient's NF-κB activity when prescribing

ENBREL. (Ex. K, Mar. 21, 2008, Dep. Tr. of Dr. James Mark Jackson ("Jackson Dep.") at

78:14-82:11) Amgen has never included information about NF-κB in its marketing materials for

ENBREL and Laura Hamill, the head of Amgen's inflammation business unit, who is in charge

of marketing for ENBREL, had never even heard NF-κB discussed in connection with ENBREL

before this litigation.   (Ex. L, Sept. 19, 2007, Dep. Tr. of Laura Hamill ("Hamill Dep.") at

300:12-301:6)   ENBREL's inventors (like the inventor in *DSU Medical*) did not intend for

ENBREL to infringe the '516 patent -- and it was developed over a decade before the '516 patent

issued -- and they did not even consider NF-κB in developing ENBREL. (Koch Decl. Ex. A, Feb. 22 Koch Rpt. at 32-34) Finally, Amgen's ability to market ENBREL is limited by the FDA to what the label for ENBREL describes what the drug is used for and how it is to be used. (Hamill Dep. at 43:7-11) The label does not mention NF-κB. (Jackson Dep. at 75:12-76:10)

Nor can ARIAD show contributory infringement under § 271(c). To do so, ARIAD would be required to prove at least that (1) ENBREL has no substantial non-infringing uses, (2) that Amgen knew that ENBREL was especially for a use that was both patented and infringing, and (3) that Amgen made sales of ENBREL that contributed to another's direct infringement. *See Golden Blount*, 365 F.3d at 1061; *DSU*, 471 F.3d at 1303. ARIAD cannot meet even the first prong of this three-pronged test.

There is and can be no dispute that ENBREL has substantial non-infringing uses. Dr. Calame concedes that not all sales and/or doses of ENBREL infringe the '516 patent. (Ex. B, Calame Dep. at 161:14-18, 211:23-212:3) For example, ENBREL has been approved by the FDA to treat ankylosing spondylitis and the evidence in this case shows that patients with this condition do not have any "induced" level of NF-κB activity to be reduced and thus their use of ENBREL cannot infringe even under ARIAD's constructions in this case. (*Id.* at 152:3-24) Also, Dr. Calame admitted that even the evidence she points to for alleged infringement by treatment of rheumatoid arthritis and psoriasis with ENBREL does not prove that all patients taking the drug will be infringing the patent. Dr. Calame testified:

Q:    It's not your opinion in this case that necessarily all patients taking Enbrel would be infringing the claims?

A:    I have not stated that opinion, that's correct.

                          *       *       *

Q:    So, you're not prepared to provide opinions at trial that patients, all
      patients taking Enbrel would be infringing the claims of the '516 Patent;
      correct?

A:    That would be correct.

(*Id.* at 161:14-18, 211:23-212:3)

In short, there are significant classes of ENBREL users and doses taken by patients that

do not infringe the '516 patent, even under ARIAD's theory of infringement, and ARIAD cannot

show that ENBREL has no substantial non-infringing uses.

## VII.    CONCLUSION.

For the foregoing reasons, Amgen respectfully requests that the Court grant summary

judgment of:

- no literal direct infringement of the asserted claims of the '516 patent under either
  Amgen's or ARIAD's proposed claim constructions;

- no direct infringement under the doctrine of equivalents of the asserted claims of the
  '516 patent under either Amgen's or ARIAD's proposed claim constructions; and

- no indirect infringement of the asserted claims of the '516 patent by Amgen.

25

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

Siegmund Gutman
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Dated: April 25, 2008

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc.,
Immunex Corporation, Amgen USA Inc., Amgen Manufacturing,
Limited, and Immunex Rhode Island Corporation*

26

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on April 25, 2008, I caused to be electronically filed a true and correct copy of The Amgen Entities' Brief In Support Of Their Motion For Summary Judgment Of Noninfringement Of U.S. Patent No. 6,410,516 with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geodes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on April 25, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

David Greenwald
David R. Marriot
Cravat, Swine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com