IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., a Delaware corporation; IMMUNEX CORPORATION, a Washington corporation; AMGEN USA INC., a Delaware corporation; AMGEN MANUFACTURING, LIMITED, a Bermuda Corporation, and IMMUNEX RHODE ISLAND CORPORATION, a Delaware corporation,  )))))))))) | |
| Plaintiffs/Counterclaim Defendants,  )) | Civil Action No. 06-259 (MPT) |
| v.  )))) | PUBLIC VERSION CONFIDENTIAL MATERIAL OMMITED |
| ARIAD PHARMACEUTICALS, INC., a Delaware corporation, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, a Delaware corporation, et. al.  )))))) | |
| Defendants/Counterclaim Plaintiffs.  )) | |

## THE AMGEN ENTITIES' BRIEF IN SUPPORT OF THEIR *DAUBERT* MOTION TO PRECLUDE CERTAIN UNSUPPORTED AND UNRELIABLE OPINIONS OF DR. RYAN SULLIVAN RELATING TO DAMAGES

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

HOGAN & HARTSON LLP
Siegmund Gutman
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: April 25, 2008

065028.1001

## **TABLE OF CONTENTS**

I.  NATURE AND STAGE OF PROCEEDING ...................................................1

II.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................1

III.  STATEMENT OF FACTS ...................................................................4

    A.  The Patent-in-Suit ...............................................................4

    B.  Previous ARIAD Offers to License the Patent-in-Suit ......................4

    C.  Dr. Sullivan's Expert Reports and Opinions...................................6

        1.  *Dr. Sullivan's Inflation of the Royalty Rate for Exclusivity*.......................6

        2.  *Dr. Sullivan's Inflation of the Royalty Rate for "Litigation Risk"* .............7

        3.  *Dr. Sullivan's Inflation of the Royalty Base* ...................................9

IV.  LEGAL STANDARDS ..........................................................................9

    A.  *Daubert v. Merrell Dow Pharms., Inc.* ...........................................9

    B.  Damages for Patent Infringement Under 35 U.S.C. §284 ...................10

V.  ARGUMENT..........................................................................................11

    A.  Dr. Sullivan's "Exclusivity" Contention Should Be Precluded...........11

        1.  *Dr. Sullivan's Exclusivity Contention Improperly Seeks Damages More than "Adequate to Compensate for the Infringement."* ..................12

        2.  *Dr. Sullivan's Exclusivity Calculation Improperly Attempts to Apply Amgen's Speculative Future Profits to the Royalty Rate Applicable to Past Damages.* ..................................................13

        3.  *Dr. Sullivan's Exclusivity Contention Lacks a Proper Factual Foundation, and Is Contrary to the Record Evidence.* ..............................15

    B.  Dr. Sullivan's "Litigation Risk" Theory Should Be Precluded. ..........18

        1.  *Dr. Sullivan's "Litigation Risk" Theory Has Been Rejected By the Federal Circuit and Other Courts.* ...........................................19

i

2.     *Dr. Sullivan's "Litigation Risk" Theory Would Improperly Place ARIAD in a Better Position Than It Otherwise Would Have Been in Had the Alleged Infringement Not Occurred and Would Provide ARIAD Damages <u>More</u> than "Adequate to Compensate for the Infringement."* ............................................................................................. 20

3.     *Dr. Sullivan's "Litigation Risk" Theory Is Based Upon Unreliable and Unsound Economic Principles* .......................................................... 21

4.     *Dr. Sullivan's "Litigation Risk" Theory Is Based on Unsubstantiated Speculation and Unreliable Aggregate Data That Would Be Highly Prejudicial to Amgen If Presented to the Jury.* ............. 22

C.    Dr. Sullivan Should Be Precluded From Opining That the Royalty Base Includes Sales of ENBREL that ARIAD's Infringement Expert Concedes Do Not Infringe the '516 Patent ...................................................................... 23

VI.   CONCLUSION .................................................................................................. 26

DB02:6773974.1

065028.1001

## Table of Authorities

**Cases**

*Al Hansen Mfg. Co. v. Bauer Prods., Inc.,*
    2004 WL 1125911 (N.D. Ill. May 18, 2004) .................................................. 11

*American Medical Sys. Inc. v. Medical Eng. Corp.,*
    794 F. Supp. 1370 (E.D. Wis. 1992) .......................................................... 20

*Blancha v. Raymark Industries,*
    972 F.2d 507 (3d. Cir 1992) ................................................................... 23

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ......................................................................... 9, 10

*DSU Medical Corp. v. JMS Co.,*
    471 F.3d 1293 (Fed. Cir. 2006) ................................................................. 22

*Elcock v. KMart Corp.,*
    233 F.3d 734 (3d. Cir. 2000) ............................................................... 10, 15

*Fromson v. Western Litho Plate and Supply Co.,*
    853 F.2d 1568 (Fed. Cir. 1988) .............................................................. 2, 19

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (D.C.N.Y. 1970) ............................................................. 6

*Gumbs v. Int'l Harvester, Inc.,*
    718 F.2d 88 (3d. Cir. 1983) ............................................................... 10, 15

*Inline Connection Corp. v. AOL Time Warner Inc.,*
    470 F. Supp. 2d 435 (D. Del. 2007) ........................................................... 16

*Izume Prods. Co. v. Koninklijke Philips Elecs. N.V.,*
    315 F. Supp. 2d 589 (D. Del. 2004) ............................................................ 9

*Mahurkar v. C.R. Bard, Inc.,*
    79 F.3d 1572 (Fed. Cir. 1996) ........................................................... 2, 19, 20

*Mobil Oil Corp. v. Amoco Chem. Corp.,*
    915 F. Supp. 1333 (D. Del. 1995) ........................................................... 2, 19

*Oiness v. Walgreen Co.,*
    88 F.3d 1025 (Fed. Cir. 1996) ............................................................. 13, 15

DB02:6773974.1                                                                    065028.1001

*Pharmastem Therapeutics, Inc. v. Viacell Inc.*,
    2003 WL 22387038 (D. Del. Oct. 7, 2003) ..................................................... 16

*Riles v. Shell Exploration and Production Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ..................................................................... 11

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995) ....................................................................... 10

*Shockley v. Arcan, Inc.*,
    248 F.3d 1349 (Fed. Cir. 2001) ..................................................................... 15

*Timblin v. Kent General Hospital*,
    640 A.2d 1021 (Del. 1994) ........................................................................... 23

**Statutes**

35 U.S.C. §284 ............................................................................................. 1, 10, 19

**Other Authorities**

CHISUM ON PATENTS § 20.03 .............................................................................. 11

**Rules**

FED. R. CIV. P 37(c)(1) .................................................................................... 16

FED. R. EVID. 408 ..................................................................................... 15, 16

FED. R. EVID. 702 ................................................................... 3, 9, 10, 18, 19, 26

Fed.R.Civ.P. 56 ............................................................................................. 18

DB02:6773974.1

065028.1001

## I.    NATURE AND STAGE OF PROCEEDING

The nature and stage of these proceedings as set forth in the April 25, 2008, Opening Brief in Support of Amgen's Claim Constructions is adopted by reference.

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

1.    Plaintiffs ("Amgen") move under Federal Rule of Evidence 702 to preclude ARIAD's damages expert, Dr. Ryan Sullivan, from offering testimony as to unsupported and unsound damages theories that seek to inflate ARIAD's alleged damages to an amount significantly *more* than "adequate to compensate" for Amgen's alleged infringement.  Neither the law nor the facts of this case permit such an inflation.

2.    Dr. Sullivan's opinion contains at least three fundamental and fatal flaws based on speculative assumptions, and unreliable and unsound principles that result in a significantly inflated royalty rate of [REDACTED] and requested damages [REDACTED]

3.    First, Dr. Sullivan opines that the royalty rate in this case should be inflated by [REDACTED] [REDACTED] based on the unsupported assumption that, in a hypothetical negotiation, ARIAD and Amgen allegedly would have agreed to an *exclusive license* as to the accused product, Enbrel®. But Dr. Sullivan's opinion is contrary to law as it would provide ARIAD with damages *more* than "adequate to compensate" for Amgen's alleged infringement and thus, more than legally permissible under 35 U.S.C. §284.  Indeed, Dr. Sullivan readily concedes that a non-exclusive license (as opposed to the exclusive license suggested by Dr. Sullivan) at the time of first alleged infringement "would enable [Amgen], as part of that license, to use the '516 patent."  Moreover, Dr. Sullivan improperly quantifies this alleged exclusive license by equating Amgen's alleged *future* incremental profits [REDACTED] to an inflation in his royalty rate of [REDACTED] and then applying this inflated rate (based on his speculation as to Amgen's future sales) to past

1

065028.1001

infringement [REDACTED] Finally, Dr. Sullivan fails to offer a proper factual foundation for his contention that the parties would have agreed to an exclusive license as to ENBREL; indeed, none exists. In fact, Dr. Sullivan's opinion is flatly contradicted by the record evidence, including [REDACTED] [REDACTED] Dr. Sullivan's "exclusivity" opinion is contrary to law, not "based upon sufficient facts or data," and not the "product of reliable principles and methods." Thus, Dr. Sullivan should be precluded under FRE 702 from offering his "exclusivity" theory at trial.

4.    Second, Dr. Sullivan improperly applies a "litigation risk" to inflate his royalty rate by [REDACTED] in one calculation, and [REDACTED] in another, to allegedly account for ARIAD's risk in asserting the '516 patent in this case. Dr. Sullivan uses probabilities of enforcing patents and aggregate statistics relating to outcomes of unrelated patent infringement litigations to inflate his royalty by applying a litigation kicker or "litigation risk" [REDACTED] [REDACTED] But as an initial matter, the Federal Circuit, among other courts, have specifically rejected "litigation kickers" or "litigation risk" theories to inflate damages awards. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1580 (Fed. Cir. 1996); *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1576 (Fed. Cir. 1988); *Mobil Oil Corp. v. Amoco Chem. Corp.*, 915 F. Supp. 1333, 1349 (D. Del. 1995). Moreover, Dr. Sullivan's "litigation risk" theory would provide ARIAD with damages *more* than "adequate to compensate" for Amgen's alleged infringement of the patent-in-suit. For instance, Dr. Sullivan concedes that his theory would inflate the royalty rate and put ARIAD in a *better position* than if the parties had negotiated a license in real life. Dr. Sullivan's "litigation risk" theory is also illogical and unsound because, under his theory, the more unenforceable (*i.e.* invalid and/or not infringed) a patent, the higher a jury should inflate

2

the royalty rate to account for the higher risk allegedly associated with enforcing the patent. That is not the letter or spirit of the law. Finally, Dr. Sullivan's "litigation risk" premium is based on unsupported probabilities of enforcement as well as irrelevant aggregate statistics relating to success rates in patent infringement trials. If allowed to be presented to the jury, these irrelevant statistics would confuse the jury and significantly prejudice Amgen by telling the jury what "normally happens" in patent infringement trials. Thus, Dr. Sullivan should be precluded under FRE 702 from offering his "litigation risk" theory as well as any probabilities of enforcement or aggregate statistics regarding patent infringement litigations.

5.      Third, Dr. Sullivan assumes that all non-governmental sales/doses of ENBREL infringe the '516 patent and includes all such sales/doses in his royalty base. REDACTED



REDACTED

6.      Dr. Sullivan's opinions are unsupported, unreliable, and unsound and thus, should be precluded. At the very least, Dr. Sullivan's contentions relating to an "exclusive" license and a "litigation risk" should be precluded under Federal Rule of Evidence 702, and Dr. Sullivan should be precluded from offering any testimony suggesting the appropriate royalty rate in this case is anything higher than REDACTED

---

1      Dr. Sullivan contends that the royalty rate applicable to this case is REDACTED By starting with Dr. Sullivan's upper royalty range REDACTED and subtracting his inflation for enforceability of REDACTED and either of the upper range of his "litigation risk" inflations REDACTED the highest royalty rate Dr. Sullivan should be permitted to present to the jury is REDACTED

3

## III.    STATEMENT OF FACTS

### A.    The Patent-in-Suit

United States Patent No. 6,410,516 ("the '516 patent"), entitled "Nuclear Factors Associated with Transcriptional Regulation" issued on June 25, 2002, nearly 13 years after development of ENBREL began and four years after FDA approval of ENBREL. (*See e.g.,* Ex. A, U.S. Patent No. 6,410,516)  The claims of the '516 patent relate to purported methods for altering NF-κB activity in cells.  (*See id.*)  REDACTED  REDACTED  The '516 patent is scheduled to expire on June 25, 2019; however, it is currently undergoing reexamination in the United States Patent and Trademark Office and all asserted claims stand rejected as unpatentable. (Ex. B, PTO Reexam No. 90/007,503 and 90/007,828)

### B.    REDACTED



REDACTED

2    REDACTED

DB02:6773974.1    065028.1001



REDACTED

3



REDACTED

DB02:6773974.1

065028.1001

REDACTED

### C.    Dr. Sullivan's Expert Reports and Opinions

On January 19, 2008, ARIAD served a report of Dr. Sullivan relating to ARIAD's alleged damages.  (Ex. K, Sullivan Initial Report)  Dr. Sullivan opined that the royalty rate associated with the outcome of a hypothetical negotiation under *Georgia Pacific* should be REDACTED REDACTED (*Id.* ¶¶ 13 and 106)  In deriving his proposed royalty rate of REDACTED Dr. Sullivan relied principally on two theories to inflate his suggested royalty rate. (*Id.* ¶¶ 55, 62-67, and 107-111)  First, Dr. Sullivan opined that during a hypothetical negotiation at the time of first alleged infringement (in this case June 25, 2002), the parties would have negotiated a compound-exclusive license as to ENBREL. (*Id.* ¶ 64)  Based on this theory, Dr. Sullivan inflated his proposed royalty rate by REDACTED (*Id.* ¶ 67)  Second, Dr. Sullivan applied a "litigation risk" to inflate his royalty rate by REDACTED to account for the risk associated with ARIAD enforcing the '516 patent against Amgen. (*Id.* ¶¶ 57-61)

### 1.    *Dr. Sullivan's Inflation of the Royalty Rate for Exclusivity*

Dr. Sullivan first contends in his expert report that the parties to the hypothetical negotiation would have agreed upon a license that was exclusive as to ENBREL.  (*Id.* ¶¶ 13 and

---

4    Dr. Sullivan provided two calculations to quantify his "litigation risk" theory.  Dr. Sullivan initially opined that his "litigation risk" theory required an inflation of

REDACTED

64) Specifically, Dr. Sullivan states:

> I conclude that the license would have been exclusive concerning Enbrel. That is, I believe ARIAD would have agreed to license the '516 patent to Amgen/Wyeth alone for activities relating to Enbrel and would have foregone licensing generic manufacturers of Enbrel.

(*Id.*) Dr. Sullivan provides no support for his theory except to argue that a "compound-exclusive license agreement would have been in Amgen's best economic interest" because "patent protection for Enbrel was thought to expire in 2014." According to Dr. Sullivan, "Exclusivity would have allowed Amgen to continue to benefit from its monopoly on Enbrel well beyond 2014." (*Id.* ¶ 66)

In an attempt to quantify his "exclusivity" contention, Dr. Sullivan [REDACTED]

[REDACTED]

had the parties agreed to a "compound-exclusive" license. (*Id.* at Appendix 3) [REDACTED]

[REDACTED]

[REDACTED] (*Id.*) Dr. Sullivan used several theoretical profits splits, including the so-called "25% Rule of Thumb" and "Nash bargaining" (50/50 split), to quantify his "exclusivity" opinion and inflate his royalty rate. (*Id.*) In particular, Dr. Sullivan testified that he used a 50/50 profit split to quantify his "exclusivity" opinion. (Ex. C, Sullivan Dep. at 114-115) [REDACTED]

[REDACTED] (Ex. K, Sullivan Initial Report at Appendix 3)

2.    *Dr. Sullivan's Inflation of the Royalty Rate for "Litigation Risk"*

Dr. Sullivan also contends that any royalty rate in this case should be inflated to account for the "litigation risk" or "patent risk" associated with the enforcement of the '516 patent.

7

Specifically, Dr. Sullivan argues that parties in real-life conduct license negotiations

> under circumstances in which the parties had "asymmetric
> information" about the value of the technology and in which there
> was uncertainty as to issues such as infringement, validity, and
> enforceability. In the hypothetical negotiation, by contrast, the
> '516 patent would have been assumed to be valid, infringed, and
> enforceable.

(*Id.* ¶ 55) Based on this theory, <span>REDACTED</span>

<span>REDACTED</span> as well as two articles reporting aggregate statistics of patent infringement

litigation results of non-infringement and invalidity to derive an alleged average "probability of

enforceability" of <span>REDACTED</span> (*Id.* ¶ 55 n.57) Using these alleged probabilities of

enforcement, Dr. Sullivan then calculated an inflation of the <span>REDACTED</span>

<span>REDACTED</span> to account for this "probability of

enforceability," which he opined would "result in royalty rate adjustments of <span>REDACTED</span>

(*Id.*) Dr. Sullivan then performed the same calculation again, but instead used an alleged range

of royalty rates in Amgen/Immunex's license agreements of between <span>REDACTED</span> to inflate his

royalty rate by <span>REDACTED</span> (Ex. K, Sullivan Initial Report ¶ 61) Thus, Dr. Sullivan argued that

the alleged <span>REDACTED</span> royalty rates "agreed to by Immunex translate into a range of <span>REDACTED</span>

(*Id.*)

---

5  <span>REDACTED</span>

6  <span>REDACTED</span>

7  Dr. Sullivan based his range on Amgen/Immunex licenses with the highest royalty rates
to derive his <span>REDACTED</span> and ignored other licenses with much lower rates.

8

3.    *Dr. Sullivan's Inflation of the Royalty Base*

In calculating his royalty base, Dr. Sullivan assumed that all non-governmental sales/doses of ENBREL infringe the '516 patent and, upon this assumption, opined that the royalty base in this case includes all of Amgen's non-governmental[8] Total Net Sales of ENBREL from July 1, 2002 through present ████ REDACTED ████ (Ex. N, Reply Expert Report of Ryan Sullivan, Ph.D. at ¶¶104 and 108 (hereinafter "Sullivan Reply Report"); ████ REDACTED ████

████████████████████████████████████████

REDACTED

████████████████████████████████████████

## IV.    LEGAL STANDARDS

### A.    *Daubert v. Merrell Dow Pharms., Inc.*

The Supreme Court has "assign[ed] to the trial judge the task of ensuring that an expert's testimony both rests on *a reliable foundation* and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (emphasis added); *see also Izume Prods. Co. v. Koninklijke Philips Elecs. N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004). Likewise, Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will *assist the trier of fact* to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is *based upon sufficient facts or data*, (2) the testimony is the *product of reliable principles and methods*, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[8]    Dr. Sullivan excluded from his royalty base Amgen's governmental sales of ENBREL to account for a license from the Institutions to the United States government for the '516 patent. (Ex. K, Sullivan Initial Report ¶ 117)

065028.1001

FED. R. EVID. 702 (emphases added).   Under Rule 702 and *Daubert*, expert opinions are

inadmissible if they are the product of unreliable principles and methods. *See* Rule 702 Advisory

Committee Notes; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 594-95 (1993).

Expert opinions are also inadmissible if they are formed from speculative, insufficient, or

otherwise untrustworthy data. *See* Rule 702 Advisory Committee Notes ("The trial judge in all

cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not

speculative before it can be admitted.").   Finally, an expert's opinion should be precluded where

it is not supported by any evidence, or where the basis of the expert's opinion is contradicted by

the record evidence. *See Elcock v. KMart Corp.*, 233 F.3d 734, 756 (3d. Cir. 2000) (finding that

the lower court abused its discretion in admitting damages expert opinion not supported by the

record evidence); *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d. Cir. 1983) (holding that a

plaintiff's damages expert needed sufficient factual foundation before his opinions could be

submitted to the jury after directly conflicting with existing factual evidence).

**B.     Damages for Patent Infringement Under 35 U.S.C. §284**

It is well settled that, according to 35 U.S.C. § 284, a patentee may only receive damages

"adequate to compensate for the infringement . . . .":

> Upon finding for the claimant the court shall award the claimant
> ***damages adequate to compensate for the infringement***, but in no
> event less than a reasonable royalty ***for the use made of the
> invention*** by the infringer, together with interest and costs as fixed
> by the court. . . .

35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544, 1554 (Fed. Cir. 1995)

("The statute [ ] mandates that a claimant receive damages adequate to compensate for

infringement").   <span style="background:black;color:white">REDACTED</span>

<span style="background:black;color:white">REDACTED</span>

10

REDACTED

Patent law damages reflect the general law of compensatory damages, which "by definition, make the patentee whole, as opposed to punishing the infringer." *Riles v. Shell Exploration and Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002); *see also Al Hansen Mfg. Co. v. Bauer Prods., Inc.*, 2004 WL 1125911 at *5 (N.D. Ill. May 18, 2004) ("[I]n every patent case, courts award those damages that will put the patentee in the same position it would have been in absent infringement"). Indeed,

> **The patent statutes provide for the recovery of compensatory damages** as the primary monetary remedy for patent infringement. The basic theory of damages is to make the patent owner whole for losses caused by the infringer's illicit activity. **The patent owner is to be restored financially to the position he would have occupied but for the infringement.**

CHISUM ON PATENTS § 20.03 (internal citations omitted). Here, building on Dr. Sullivan's baseless and legally improper analysis, ARIAD proposes to argue for a damages award which places ARIAD in a better position than it would have been in had Amgen's alleged infringement not occurred, and far in excess of the amount adequate to compensate ARIAD for Amgen's alleged infringement.

## V.  ARGUMENT

### A.  Dr. Sullivan's "Exclusivity" Contention Should Be Precluded.

Dr. Sullivan's inflation of the royalty rate by [REDACTED] to account for his "exclusivity" contention is contrary to law, not "based upon sufficient facts or

---

9  [REDACTED]

065028.1001

data," and not the "product of reliable principles and methods" for at least three different reasons: (1) Dr. Sullivan's exclusivity contention would provide ARIAD a windfall of damages **_more_** than "adequate to compensate for the infringement;" (2) Dr. Sullivan's inflation of the royalty rate for exclusivity is calculated based solely on speculative future profits which he then applies to alleged past infringement; and (3) Dr. Sullivan's exclusivity contention lacks a proper factual foundation, and in fact, flatly contradicts the record evidence.    Consequently, Dr. Sullivan's exclusivity opinion should be precluded under FRE 702.

1.    *Dr. Sullivan's Exclusivity Contention Improperly Seeks Damages **More** than "Adequate to Compensate for the Infringement."*

Dr. Sullivan's exclusivity contention ignores the black-letter principles of patent damages law by attempting to place ARIAD in a better position than it would have otherwise been in had the alleged infringement not occurred.    It would provide ARIAD damages much **_more_** than "adequate to compensate for the infringement."    Indeed, Dr. Sullivan inflates his suggested royalty rate by REDACTED to account for an alleged compound-exclusive license as opposed to a non-exclusive license.    (Ex. K, Sullivan Initial Report at Appendix 3) REDACTED



REDACTED

REDACTED

REDACTED    Certainly, if a non-exclusive license would

have allowed Amgen to practice and use the '516 patent, it would also be "adequate to

compensate" ARIAD for any alleged infringement by Amgen.  As such, anything more than a

non-exclusive license in this case would be more than "adequate to compensate" ARIAD for

Amgen's alleged infringement, and therefore, is improper.  Thus, Dr. Sullivan's exclusivity

contention should be precluded on this basis alone.

> 2. *Dr. Sullivan's Exclusivity Calculation Improperly Attempts to Apply Amgen's Speculative Future Profits to the Royalty Rate Applicable to Past Damages.*

The Court should also preclude Dr. Sullivan's exclusivity contention because his attempt

to quantify such contention (*i.e.* an inflation of the royalty rate by REDACTED is based <u>entirely</u> on his

speculation as to Amgen's future profits, which Dr. Sullivan then improperly applies to past

damages.  But the law does not permit the use of guesswork or speculation to support damage

claims, particularly where a damage claim is based on uncertain future streams of income.  *See*

*Oiness v. Walgreen Co.*, 88 F.3d 1025, 1031 (Fed. Cir. 1996).  In fact, "the burden of proving

future injury is commensurately greater than that for damages already incurred, for the future

always harbors unknowns.  While estimates of lost future profits may necessarily contain some

speculative elements, the factfinder must have before it such facts and circumstances to enable it

to make an estimate of damage based upon judgment, not guesswork." *Id.*

In contravention of this law, Dr. Sullivan's "exclusivity" calculation relies entirely on

"uncertain" future profits that Amgen allegedly would have made some REDACTED in the future

had the parties entered into a compound-exclusive license.  (Ex. K, Sullivan Initial Report ¶ 66)

13

Dr. Sullivan argues that a compound-exclusive license would have provided Amgen an additional <span>REDACTED</span> of patent protection beyond its current patent protection, and thus, would allegedly keep generic or biosimilar products to ENBREL off the market from <span>REDACTED</span> (*Id.*) Dr. Sullivan calculates this alleged future benefit by "extrapolat[ing]" uncertain Amgen future revenue forecasts to arrive at the alleged incremental revenue Amgen would realize between



REDACTED

065028.1001

[REDACTED] Dr. Sullivan's exclusivity contention is based on pure speculation and guesswork -- not on evidence as required by law. Consequently, Dr. Sullivan's exclusivity contention should be precluded. *See Oiness*, 88 F.3d at 1031 (reversing a jury damages award relating to projected profits as based on "bald speculation" by Plaintiff's expert); *see also Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1363-64 (Fed. Cir. 2001) (vacating a jury award for future lost profits as based on speculative assumptions and running counter to the "great weight of record evidence").

3.    *Dr. Sullivan's Exclusivity Contention Lacks a Proper Factual Foundation, and Is Contrary to the Record Evidence.*

Finally, Dr. Sullivan's exclusivity contention lacks a proper factual foundation. In fact, Dr. Sullivan's contention is flatly contradicted by the record evidence in this case. Thus, Dr. Sullivan's opinions are "not based upon sufficient fact or data" and should be precluded under FRE 702. *See Elcock*, 233 F.3d at 756 (finding that the lower court abused its discretion in admitting damages expert opinion not supported by the record evidence); *Gumbs*, 718 F.2d at 98 (holding that a plaintiff's damages expert needed sufficient factual foundation before his opinions could be submitted to the jury after directly conflicting with existing factual evidence).

First and foremost, Dr. Sullivan fails to provide a proper factual foundation for his contention that the parties would have agreed to a compound-exclusive license in a hypothetical negotiation.[11] (Ex. K, Sullivan Initial Report ¶¶ 62-67) Instead, Dr. Sullivan's entire exclusivity

[REDACTED]

15

contention is based on conclusory statements and unsupported assumptions.  For instance, Dr.

Sullivan cites to no factual support REDACTED

suggesting that Amgen would have taken a compound-exclusive license from ARIAD. REDACTED

REDACTED

REDACTED

REDACTED





REDACTED    Dr. Sullivan simply has no proper factual foundation to conclude that ARIAD would have offered, and Amgen or Immunex would have accepted, a compound-exclusive license. Thus, Dr. Sullivan's exclusivity contention should be precluded as it is based on speculation and unreliable assumptions.

Not only does Dr. Sullivan's exclusivity contention lack a proper factual foundation, his contention is also flatly contradicted by all of the admissible record evidence on this issue. REDACTED

17



REDACTED

REDACTED

REDACTED  In fact, ARIAD's Chief Executive Officer, Harvey Berger, has unequivocally stated with respect to the '516 patent that "[w]e're not trying to keep anybody off the market."[12]  (Ex. R, 7/24/02 Boston Globe Article at ARI 44377)

Thus, not only is Dr. Sullivan's exclusivity contention not "based upon sufficient fact or data," but his contention is flatly contradicted by the admissible record evidence.  As such, Dr. Sullivan's exclusivity contention should be precluded under FRE 702.[13]

**B.    Dr. Sullivan's "Litigation Risk" Theory Should Be Precluded.**

In addition to his improper opinions regarding exclusivity, Dr. Sullivan attempts to apply what is known as a "litigation kicker" to inflate his suggested royalty rate.  In particular, Dr. Sullivan inflates his royalty rate by between REDACTED to account for the "litigation risk" or "patent risk" associated with enforcing the '516 patent in this case.  Dr. Sullivan's "litigation

---

12    Dr. Berger's statement is directly at odds with the entire premise of Dr. Sullivan's exclusivity contention -- that a compound-exclusive license with respect to ENBREL would keep generic manufacturers off the market.

13    Even if the Court concludes that Dr. Sullivan's "exclusivity" contention should not be precluded under FRE 702, Amgen is nonetheless entitled to summary judgment on this issue pursuant to FED.R.CIV.P. 56.  The undisputed material facts, as explained above, show that there is no genuine issue of material fact that the scope of the license negotiated in a hypothetical negotiation between Amgen and ARIAD would have been non-exclusive.  Indeed, no admissible evidence exists that the hypothetical license would be compound-exclusive as ARIAD contends.  Thus, Amgen is entitled to judgment as a matter of law on this issue.  *See* FED. R. CIV. P. 56.

065028.1001

risk" theory is contrary to law, not "based upon sufficient facts or data," and not the "product of reliable principles and methods" for at least four different reasons:   (1) the Federal Circuit has specifically rejected "litigation kickers" or "litigation risk" theories to inflate royalty rates and damages awards; (2) Dr. Sullivan's "litigation risk" theory would improperly place ARIAD in a better position than it otherwise would have been in had Amgen's alleged infringement not occurred and provide ARIAD with damages *more* than "adequate to compensate for the infringement;" (3) Dr. Sullivan's theory is based upon unreliable and unsound economic principles because, under Dr. Sullivan's theory, the more unenforceable a patent, the higher the royalty rate should be; and (4) ARIAD's attempt to introduce aggregate statistics on patent infringement litigation outcomes is improper and highly prejudicial to Amgen.  Consequently, Dr. Sullivan's "litigation risk" theory should be precluded under FRE 702.

>    1.    *Dr. Sullivan's "Litigation Risk" Theory Has Been Rejected By the Federal Circuit and Other Courts.*

It is well-settled that a patent holder is not entitled to a "litigation kicker" to inflate damages as a result of enforcing its patents in litigation.  *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1580 (Fed. Cir. 1996) (finding that the lower court abused its discretion by allowing for a "kicker on top of a reasonable royalty"); *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1576 (Fed. Cir. 1988) (citing willfulness under Section 284 and exceptional case under Section 285 in concluding that "the law is not without means for recognizing that an infringer is unlike a true 'willing' licensee"); *Mobil Oil Corp. v. Amoco Chem. Corp.*, 915 F. Supp 1333, 1349 (D. Del. 1995) ("the proper method of recognizing that an infringer is not like a willing licensee is to consider increased damages under Section 284 for willfulness or for attorney's fees under Section 285, *rather than artificially inflating the royalty rate*.") (italics in original); *American Medical Sys. Inc. v. Medical Eng. Corp.*, 794 F. Supp. 1370, 1395.n15 (E.D.

Wis. 1992) (*rev'd-in-part on other grounds*) (same).  Contrary to this settled law, Dr. Sullivan's "litigation risk" theory artificially inflates the royalty rate and "enhances the damages award . . . without meeting the statutory standards" of Sections 284 and 285.  *Mahurkar*, 79 F.3d at 1581.

Dr. Sullivan applies what he calls a "litigation risk" premium to inflate his suggested royalty rate by [REDACTED] (Ex. K, Sullivan Initial Report ¶¶ 57-61)  This is nothing other than a "litigation kicker" which has been rejected by the courts.  Dr. Sullivan has offered no opinion regarding enhanced damages for willful infringement under Section 284 or an opinion relating to exceptionality under Section 285 -- nor are these issues the proper subject matter for a jury to decide.  (*Id.* at ¶¶ 17 and 130)  Thus, Dr. Sullivan's attempt to provide ARIAD enhanced damages through a "litigation kicker" is improper and should be precluded.

> 2. *Dr. Sullivan's "Litigation Risk" Theory Would Improperly Place ARIAD in a Better Position Than It Otherwise Would Have Been in Had the Alleged Infringement Not Occurred and Would Provide ARIAD Damages More than "Adequate to Compensate for the Infringement."*

In addition to contravening established Federal Circuit precedent, Dr. Sullivan's "litigation risk" theory should also be precluded because it would place ARIAD in a better position than it otherwise would have been in had Amgen's alleged infringement not occurred and provides ARIAD damages *more* than "adequate to compensate for the infringement." [REDACTED]



REDACTED



Accordingly, Dr. Sullivan's "litigation risk" theory places ARIAD in a better position than it otherwise would have been in had Amgen's alleged infringement not occurred, thereby violating the basic premise of patent damages law. Thus, Dr. Sullivan's theory is again contrary to established precedent and therefore should be precluded.

3. *Dr. Sullivan's "Litigation Risk" Theory Is Based Upon Unreliable and Unsound Economic Principles*

Dr. Sullivan's "litigation risk" theory should also be precluded because it is based on unreliable and unsound economic principles. Specifically, under Dr. Sullivan's theory, the more "unenforceable" a patent is (*i.e.* the higher likelihood a patent is found not infringed or invalid), the more a royalty rate should be inflated. A theory that rewards a patentee for having a marginally enforceable patent cannot be sound or reliable, and therefore should be precluded.





Dr. Sullivan's "litigation risk" theory is more akin to roulette (where pay-outs are greater for riskier bets) than a sound damages theory. Certainly, Dr. Sullivan's theory does not rest on reliable and sound economic bases as required by law, and therefore should be precluded. *See DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006) (affirming lower court's exclusion of damages expert theory not grounded in "sound economic principle").

4.  *Dr. Sullivan's "Litigation Risk" Theory Is Based on Unsubstantiated Speculation and Unreliable Aggregate Data That Would Be Highly Prejudicial to Amgen If Presented to the Jury.*

Even if Dr. Sullivan's "litigation risk" theory were proper (which it is not), presenting "probabilities of enforcement" and/or aggregate statistics relating to outcomes of patent infringement trials to the jury is improper because they are irrelevant, likely to confuse and

---

14

065028.1001

mislead the jury, and highly prejudicial to Amgen. *See Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d. Cir 1992) ("Evidence relating to previous litigation involving the parties . . . and evidence of statistical probabilities are all likely subjects of exclusion" under FRE 403); *Timblin v. Kent General Hospital*, 640 A.2d 1021, 1026 (Del. 1994) (reversing a lower court's admission of "statistical evidence of what 'normally happens'" as highly prejudicial and lacking probative value).

Dr. Sullivan's entire "litigation risk" theory is dependent on presenting to the jury evidence of ARIAD's "likelihood of success of enforcing its patents" and on aggregate statistics allegedly showing that "litigated patents have a roughly 30% likelihood of being invalidated and a 35% likelihood of being found non-infringed." (Ex. K, Sullivan Initial Report ¶ 55 n.57) Allowing ARIAD and Dr. Sullivan to present these probabilities and statistics to the jury would unduly prejudice Amgen by implying to the jury what "normally happens" with respect to defenses of invalidity and non-infringement. The jury should decide this case on the merits, not aggregated statistical analyses of unrelated cases. Thus, Dr. Sullivan should be precluded from offering to the jury his "litigation risk" theory and the statistical evidence on which it relies.

**C.**     **Dr. Sullivan Should Be Precluded From Opining That the Royalty Base Includes** REDACTED
REDACTED

Finally, Dr. Sullivan should be precluded from offering any opinion that the royalty base in this case REDACTED



    065028.1001

REDACTED

REDACTED Dr. Sullivan's assumption in this regard has no basis in fact -- even under ARIAD's

own contention. REDACTED

REDACTED

REDACTED

DB02:6773974.1                                                                              065028.1001



065028.1001

VI.    **CONCLUSION**

For the foregoing reasons, Dr. Sullivan's opinion should be precluded as unsupported, unreliable, and unsound.  At the very least, Dr. Sullivan's contentions relating to "exclusivity" and a "litigation risk" should be precluded under Federal Rule of Evidence 702.  Based on Dr. Sullivan's quantification of these theories [REDACTED] [REDACTED] Dr. Sullivan should also be precluded from offering any opinion concluding that the reasonable royalty rate applicable to this case is anything higher than [REDACTED]

26

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_(signature)_

Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

Siegmund Gutman
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Dated:  April 25, 2008

_Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation_

27

065028.1001

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on April 25, 2008, I caused to be electronically filed a true and correct copy of The Amgen Entities' Brief in Support of Their *Daubert* Motion To Preclude Certain Unsupported and Unreliable Opinions of Dr. Ryan Sullivan Relating to Damages with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on April 25, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com