IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
  )
    Plaintiffs/Counterclaim Defendants, )
  )
    v. )
  )
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH,)
a Delaware corporation, *et. al.* )
  )
    Defendants/Counterclaim Plaintiffs. )

Civil Action No. 06-259 (MPT)

PUBLIC VERSION
CONFIDENTIAL MATERIAL OMMITED

**THE AMGEN ENTITIES' BRIEF IN SUPPORT OF THEIR *DAUBERT* MOTION TO PRECLUDE CERTAIN INADMISSIBLE OPINIONS OF DR. KATHRYN CALAME RELATING TO EXPERIMENTS PERFORMED BY DR. JOEL POMERANTZ**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

HOGAN & HARTSON LLP
Siegmund Gutman
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: April 25, 2008

## **TABLE OF CONTENTS**

Page

I.   NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II.  INTRODUCTION AND SUMMARY OF THE ARGUMENT .........................................1

III. STATEMENT OF FACTS ............................................................................................2

IV.  *DAUBERT* AND FEDERAL RULES OF EVIDENCE 702 AND 703 ..............................5

V.   ARGUMENT .................................................................................................................5

    A.   The Experiments Relied on By Dr. Calame Are Not of a Type Reasonably Relied Upon By Experts In Her Field.................................................................5

    B.   ARIAD Cannot Establish By a Preponderance of the Evidence That Dr. Calame's Opinions Based on Dr. Pomerantz's Experiments Are Reliable. ............7

VI.  CONCLUSION ...............................................................................................................8

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Astra Aktiebolag v. Andrx Pharm., Inc.,*
    222 F. Supp. 2d 423 (S.D.N.Y. 2002).................................................................. 6

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993).................................................................................. 5, 7

*Ecolab, Inc. v. Amerikem Laboratories, Inc.,*
    98 F. Supp. 2d 569 (D.N.J. 2000) .............................................................. 5, 6

*In re Paoli R.R. Yard PCB Litigation,*
    35 F.3d 717 (3rd Cir. 1994) ...................................................................... 5, 7

*Magistrini v. One Hour Martinizing Dry Cleaning,*
    180 F. Supp. 2d 584 (D.N.J. 2002) ............................................................... 7

*Valentine v. Pioneer Chlor Alkali Co.,*
    921 F. Supp. 666 (D. Nev.1996) .................................................................. 7

**Rules**

Fed. R. Evid. 104(a)....................................................................................... 5

Fed. R. Evid. 702 ................................................................................... 1, 5, 8

Fed. R. Evid. 703 .............................................................................. 1, 5, 6, 7

DB02:6774010.1

065028.1001

I.    **NATURE AND STAGE OF PROCEEDINGS**

The nature and stage of the proceedings are incorporated herein by reference from Amgen's Opening Brief in Support of its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,410,516.

II.   **INTRODUCTION AND SUMMARY OF THE ARGUMENT**

1.    Dr. Kathryn Calame, an ARIAD expert witness, must be precluded from introducing or relying on experiments purportedly conducted[1] by a separately retained individual, Dr. Joel Pomerantz ("Pomerantz experiments"), given her lack of involvement and understanding of those experiments. Under Federal Rules of Evidence 702 and 703, Amgen moves to preclude Dr. Calame from offering testimony about the Pomerantz experiments and the conclusions she draws from them.

2.    Fed. R. Evid. 703 requires any experiments or data that an expert relies on to be "of a type reasonably relied upon by experts in the particular field in forming opinions." Dr. Pomerantz's unpublished experiments are not the type of facts or data that a scientist such as Dr. Calame normally relies upon in forming opinions because Dr. Calame did not design, conduct, or supervise the experiments; does not work with Dr. Pomerantz; and has no opinion about Dr. Pomerantz's qualifications beyond the bare fact that he trained in a particular laboratory.

3.    Under Fed. R. Evid. 702, a party proffering expert opinions must establish that the opinions have a reliable basis, and thus are admissible, by a preponderance of the evidence. In this case, Dr. Calame cannot explain, and the record does not show, the rationale or basis for a number of key aspects of the design and execution of Dr. Pomerantz's experiments that relate to

---

[1]    Amgen assumes for purposes of this motion that the experiments were in fact conducted by Dr. Pomerantz, despite the lack of any admissible evidence to establish this fact.

their reliability. Because Dr. Calame did not participate in the design or execution of the experiments performed by Dr. Pomerantz, and because Dr. Pomerantz has not submitted an expert report describing those experiments, the experiments must not be admitted into the jury trial and Dr. Calame should be precluded from testifying about them.

## III.    STATEMENT OF FACTS

On January 19, 2008, ARIAD served Amgen with Dr. Calame's expert report in which she relied on experiments performed by Dr. Pomerantz in reaching the conclusion that Amgen's Enbrel® product infringes ARIAD's U.S. Patent No. 6,410,516.  (Ex. A, Jan. 18, 2008, Expert Report of Dr. Kathryn Calame ("Calame Rpt.") at ¶¶ 17-23)   ARIAD also served the unpublished laboratory notebook of Dr. Pomerantz, in which Dr. Pomerantz purportedly recorded the experiments he performed, with Dr. Calame's January 18 report.  (Ex. B, ARI-KC 00001-162 ("Pomerantz Notebook"))  ARIAD has not disclosed or produced an expert report for Dr. Pomerantz.

In her deposition on March 26, 2008, Dr. Calame said that she discussed the experiments with Dr. Pomerantz "two or three" times, but only *after* the experiments had been completed. (Ex. C, Dep. Tr. of Dr. Kathryn Calame ("Calame Dep.") at 36:3-14, 37:10-15, 43:17-21)   In spite of these conversations, Dr. Calame does not even know if Dr. Pomerantz personally ran all of the experiments described in this unpublished lab notebook.  (*Id.* at 88:14-89:10)  In fact, Dr. Calame's only bases for concluding that the experiments purportedly performed by Dr.

DB02:6774010.1

065028.1001

Pomerantz are reliable are that she had read Dr. Pomerantz's lab notebook (*id.* at 34:4-7) and that

he was "published in the field" and had "trained in the Baltimore lab:"[2]

Q:    Do you, do you have any understanding or knowledge regarding Dr. Pomerantz's ability to perform experiments of the type that were set forth in his notebook?

A:    Well, I also in reviewing the data and trying to understand it looked back over some of his previous publications, and realized that he has published in this field, and I know that he was trained in the Baltimore lab, all of which seemed to make me conclude that he knows what he's doing.

(*Id.* at 34:4-17) Dr. Calame further had no role in designing any aspect of the experiments:

Q:    Okay. Did you have any hand in, or play a role at all with the devising of the experiments that Dr. Pomerantz ran?

A:    You're asking did I help design the experiments? No, I did not.

Q:    Okay. And I just want to make sure that there is not something I'm missing because of my inarticulate language. Did you play any role at all in what experiments were run by Dr. Pomerantz, or was that solely done at his discretion?

A:    It was -- I had no role in it.

(*Id.* at 37:16-38:3) And Dr. Calame simply accepted Dr. Pomerantz's data calculations at face

value. (*Id.* at 61:10-13)

Dr. Calame admitted that she had no knowledge about many aspects of the design of Dr.

Pomerantz's experiments. For example, she had no knowledge about why Dr. Pomerantz chose

particular cell lines:

Q:    Do you have any understanding as to why Dr. Pomerantz ordered the cell lines that he did that are reflected on ARI-KC 1?

---

2    Dr. Baltimore is one of the inventors of the '516 patent, and thus the potential bias of Dr. Pomerantz is another basis upon which to question the reliability of the experiments, particularly where no discovery of Dr. Pomerantz has taken place.

3

A:      Well, I would not know what he was thinking at the time, but figuring backwards, obviously, he wanted to have human cells that he thought would respond to TNF-alpha that he could do his experiments with.

*     *     *

Q:      And again, it sounds to me, and tell me if this is wrong, but you don't have any personal knowledge or understanding as to why Dr. Pomerantz chose these two cell lines to order at the beginning of his work as compared to other cell lines?

A:      That's correct. I don't know what he, what his plans -- what his reason for ordering these cells were, was.

Q:      And you personally, obviously, did not play any role in the decision to order these cells to start out with; correct?

A:      I did not.

(*Id.* at 44:14-21; *see also Id.* at 47:20-48:7, 77:11-17) And Dr. Calame could not explain why Dr. Pomerantz ordered cells from a Ramos RA-1 cell line for his experiments but never performed experiments with them. (*Id.* at 48:22-49:20, 50:3-51:18) In fact, Dr. Calame emphasized that she could not speculate about why Dr. Pomerantz used particular cells because she had "no knowledge of what Dr. Pomerantz was thinking." (*Id.* at 51:17-18)

Dr. Calame also has no knowledge about why Dr. Pomerantz:

- conducted "experiments where he added ENBREL before adding TNF-alpha to the cell" (*id.* at 63:3-8; *see also id.* at 78:16-21);

- used certain stimuli other then ENBREL in his experiments, and does not even know what other stimulants he used (*id.* at 73:13-74:9);

- used particular concentrations of TNF in his experiments (*id.* at 81:16-21), if those concentrations were reasonable (*id.* at 81:22-82:3 ("I have no reason to think they are unreasonable.")), or if those were excess concentrations (*id.* at 84:22-85:3).

In short, Dr. Calame could not provide much information at all regarding the testing design, protocol, and data analysis of the experiments upon which her infringement opinions are based.

4

IV.    *DAUBERT* AND FEDERAL RULES OF EVIDENCE 702 AND 703

**Rule 703:** "Fed. R. Evid. 703 permits experts to opine on data of which they lack first-hand knowledge or that are otherwise inadmissible, provided the data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject....'" *Ecolab, Inc. v. Amerikem Laboratories, Inc.*, *rev'd on other grounds*, 98 F. Supp. 2d 569, 573-574 (D.N.J. 2000) (quoting Fed. R. Evid. 703).

**_Daubert_ and Rule 702:** The admissibility of all expert testimony under Rule 702 is a preliminary question of law for the district court to determine under Fed. R. Evid. 104(a). *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). The proponent of the expert evidence must establish admissibility of expert testimony by a preponderance of the evidence. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3rd Cir. 1994). To satisfy Rule 702, ARIAD must show by a preponderance of the evidence that its expert opinions rest on a *reliable* foundation. *See* Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597.

V.    **ARGUMENT**

A.    **The Experiments Relied on By Dr. Calame Are Not of a Type Reasonably Relied Upon By Experts In Her Field.**

The opinions Dr. Calame has formed based on the results of experiments conducted by Dr. Pomerantz should be precluded under Rule 703 because Dr. Pomerantz's purported unpublished lab notebook is not data "of a type reasonably relied upon by experts in the particular field." District courts examine three factors to determine if unpublished results of experiments on which an expert seeks to rely, but did not personally conduct, have sufficient indicia of reliability to satisfy Rule 703:  1) whether the experiments were designed by the expert, 2) whether the experiments were performed under the expert's direction, and 3) whether the experiments were performed by qualified personnel on whom the expert typically relies. *See,*

DB02:6774010.1                                                                                   065028.1001

*e.g., Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F. Supp. 2d 423, 491-92 (S.D.N.Y. 2002); *Ecolab*, 98 F. Supp. 2d at 574 ("results of tests designed by [the expert] and conducted under his direction-are properly before the Court").

In contrast to these requirements in the case law, Dr. Calame admitted to having "no role" in the design or implementation of the experiments. (Ex. C, Calame Dep. at 37:16-38:3) She also did not conduct or supervise the experiments -- in fact, she does not know if the experiments were personally performed by Dr. Pomerantz or someone else. (*Id.* at 88:14-89:10) Dr. Calame has not even checked the calculations performed by Dr. Pomerantz but simply chose to accept them at face value. (*Id.* at 61:10-13) Given Dr. Calame's total lack of involvement in the experiments performed by Dr. Pomerantz, Dr. Calame cannot rely on them under Rule 703. *Astra Aktiebolag*, 222 F. Supp. 2d at 491-92.[3]

That Rule 703 prohibits Dr. Calame from relying on Dr. Pomerantz's purported notebook because it is not data "of a type reasonably relied upon by [scientists] in forming opinions" is reinforced by Dr. Calame's basis for accepting the quality of the results. Dr. Calame evaluated the experiments based on Dr. Pomerantz's lab notebook (Ex. C, Calame Dep. at 34:4-7) and her knowledge that Dr. Pomerantz was "published in the field" and had "trained in the Baltimore lab:"

> Q:   Do you, do you have any understanding or knowledge regarding Dr.
>      Pomerantz's ability to perform experiments of the type that were set forth
>      in his notebook?

---

[3]   This is not a case of one expert relying on another expert's opinions. First, Dr. Calame is relying on Dr. Pomerantz's lab notebook, not his opinions or conclusions. Second, Dr. Pomerantz has not submitted an expert report disclosing opinions and conclusions about his experiments and their results. Thus, his laboratory notebook is nothing more than inadmissible hearsay that Dr. Calame may rely upon only if it satisfies Rule 703.

6

065028.1001

A:    Well, I also in reviewing the data and trying to understand it looked back over some of his previous publications, and realized that he has published in this field, and I know that he was trained in the Baltimore lab, all of which seemed to make me conclude that he knows what he's doing.

(*Id.* at 34:4-17) The unpublished notebook of a researcher from an entirely different laboratory and institution, with whom the expert has never worked before, is not the type of data "reasonably relied upon" by scientists "in forming opinions or inferences." Fed. R. Evid. 703. Because Dr. Calame did not provide a proper foundation for the admission of the Pomerantz experiments at trial, these experiments must be excluded.

**B.    ARIAD Cannot Establish By a Preponderance of the Evidence That Dr. Calame's Opinions Based on Dr. Pomerantz's Experiments Are Reliable.**

ARIAD must establish by a preponderance that Dr. Calame's proffered opinions rest on a reliable foundation; in other words that "(1) the testimony is based upon sufficient facts or data, [and] (2) the testimony is the product of reliable principles and methods." *See* Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 592-93, 597; *In re Paoli*, 35 F.3d at 744. Showing that proffered opinions based on experimental results are reliable requires establishing, among other things, that any assumptions made in the experiments are proper, *see Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 603 (D.N.J. 2002); tests for alternative causes of the experimental results were performed, *see Valentine v. Pioneer Chlor Alkali Co.*, 921 F. Supp. 666, 672 (D. Nev.1996); and control experiments were used, *see id.* at 676.

Dr. Calame, however, has no knowledge about a number of key aspects of the design and execution of Dr. Pomerantz's experiments including why Dr. Pomerantz:

- chose particular cell lines (Ex. C, Calame Dep. at 44:14-21, 47:20-48:7, 77:11-17);

- ordered cells from a Ramos RA-1 cell line for his experiments but never performed experiments with them (*id.* at 48:22-49:20, 50:3-51:18));

- conducted "experiments where he added ENBREL before adding TNF-alpha to the cell" (*id.* at 63:3-8; *see also id.* at 78:16-21);

7

- used certain stimuli other then ENBREL in his experiments and does not even know what other stimulants he used (*id.* at 73:13-74:9);

- used particular concentrations of TNF in his experiments (*id.* at 81:16-21), if those concentrations were reasonable (*id.* at 81:22-82:3 ("I have no reason to think they are unreasonable.")), or if those were excess concentrations (*id.* at 84:22-85:3).

Thus, Dr. Calame cannot present evidence to testify about a number of key facts about the design, methodology and execution of experiments conducted by Dr. Pomerantz that would establish if the results of those experiments are reliable or not. For example IgG may have been used as a control in those experiments, but Dr. Calame does not know if that was the case because she does not even know what the reference in the notebook was about. (*See id.* at 73:13-74:9) In the absence of evidence from Dr. Pomerantz or Dr. Calame explaining the design, methodology, execution and analysis of Dr. Pomerantz's experiments, ARIAD cannot meets its burden of proof under Rule 702 to establish that the conclusions Dr. Calame has drawn based on Dr. Pomerantz's data are reliable.

## VI.    CONCLUSION

For the foregoing reasons, Amgen respectfully requests that the Court preclude testimony by ARIAD's expert Dr. Kathryn Calame about experiments conducted by Dr. Joel Pomerantz and any conclusions she may have drawn therefrom.

8

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*[signature]*

Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

Siegmund Gutman
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Dated: April 25, 2008

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

9

065028.1001

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on April 25, 2008, I caused to be electronically filed a true and correct copy of The Amgen Entities' Brief In Support Of Their *Daubert* Motion To Preclude Certain Inadmissible Opinions Of Dr. Kathryn Calame Relating To Experiments Performed By Dr. Joel Pomerantz with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on April 25, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com