**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, <br><br> Defendants. | |
| | C.A. No. 06-259-MPT <br><br> **REDACTED** <br> **PUBLIC VERSION** |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH, <br><br> Counterclaim-Defendants. | |

---

**DEFENDANTS-COUNTERCLAIM-PLAINTIFFS' MEMORANDUM IN OPPOSITION TO AMGEN'S PARTIAL MOTION TO PRECLUDE ARIAD'S PROFFERED EXPERTS ON WILLFULNESS AND LACK OF INEQUITABLE CONDUCT**

*Of Counsel:*
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: May 22, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

## Table of Contents

*Page*

Table of Authorities ................................................................................................. ii

I.      Background and Summary of Argument ...................................................... 1

II.     Argument ........................................................................................................ 3

        A.      Dr. Calame's Testimony Is Admissible ........................................... 3

                1.      Dr. Calame Applies the Correct Legal Standard and
                        Opines on Amgen's Knowledge of an Objectively High
                        Likelihood of Infringement ................................................... 4

                2.      Dr. Calame's Testimony Regarding Documents
                        Demonstrating an Objectively High Likelihood of
                        Infringement Is Admissible Because It Would Assist the
                        Trier of Fact ............................................................................. 6

        B.      Mr. Manbeck's Testimony Is Admissible ........................................ 8

                1.      Mr. Manbeck    **REDACTED**
                                                        ........................................................... 9

                2.      Mr. Manbeck's Testimony Concerning
                                **REDACTED**                    .............................. 10

                3.      Mr. Manbeck's Testimony Concerning
                                **REDACTED**                    .................................. 10

III.    Conclusion ..................................................................................................... 12

# Table of Authorities

*Page(s)*

**Cases**

*AstraZeneca LP v. Tap Pharmaceutical Products, Inc.,*
    444 F. Supp. 2d 278 (D. Del. 2006)................................................................5

*Cryovac Inc. v. Pechiney Plastic Packaging, Inc.,*
    430 F. Supp. 2d 346 (D. Del. 2006)..............................................................12

*Daubert v. Merrell Dow Pharm.,*
    509 U.S. 579 (1993) ...................................................................................3, 11

*Eaton Corp. v. ZF Meritor LLC,*
    No. 03-74844, 2008 WL 920128 (E.D. Mich. Apr. 3, 2008).....................5

*Energy Transp. Group, Inc. v. William Demant Holding AS,*
    C.A. No. 05-422-GMS, 2008 WL 114861 (D. Del. Jan. 7, 2008) .........10

*Hnot v. Willis Group Holdings Ltd.,*
    No. 01 Civ. 6558 (GEL), 2007 WL 1599154 (S.D.N.Y. June 1, 2007)................8

*In re Seagate,*
    497 F.3d 1360 (Fed. Cir. 2007) ........................................................... passim

*Inline Connection Corp. v. AOL Time Warner Inc.,*
    470 F. Supp. 2d 424 (D. Del. 2007)...............................................................3

*Oxford Gene Tech Ltd. v. Mergen Ltd.,*
    345 F. Supp. 2d 431 (D. Del. 2004)........................................................5, 10

*ResQNet.com, Inc. v. Lansa, Inc.,*
    533 F. Supp. 2d 397 (S.D.N.Y. 2008)............................................................5

*Revlon Consumer Products Corp. v. L'Oreal S.A.,*
    No. 96-192 (MMS), 1997 WL 158281 (D. Del. Mar. 26, 1997)...........11

*Stecyk v. Bell Helicopter Textron, Inc.,*
    295 F.3d 408 (3d Cir. 2002) .........................................................................11

*Tap Pharmaceutical Products, Inc. v. Owl Pharmaceuticals, L.L.C.,*
    No. 99-CV-2715, 2003 WL 25695241 (N.D. Ohio Feb. 18, 2003)..........11

*V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc.,*
    -- F.R.D. --, 2008 WL 619207 (D.N.J. Mar. 4, 2008) ...............................5

*VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.,*
   527 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................................5


**Rules**

Fed. R. Evid. 702 ..................................................................................................................2

Defendants-counterclaim-plaintiffs (collectively, "ARIAD") respectfully submit this memorandum in opposition to the motion of plaintiffs-counterclaim-defendants (collectively, "Amgen") to preclude certain portions of the planned testimony of ARIAD's experts on willful infringement , Dr. Kathryn Calame, and lack of inequitable conduct, the Honorable Harry F. Manbeck.[1]

## I.    Background and Summary of Argument

Amgen's partial *Daubert* motion is directed towards discrete portions of the planned testimony of two of ARIAD's experts, Dr. Kathryn Calame and the Honorable Harry F. Manbeck.  As relevant to this motion, these two experts intend to testify as set forth below.

Dr. Calame is Professor of Biochemistry & Molecular Biophysics and Microbiology at the Columbia University College of Physicians and Surgeons.  (*See* Greenwald Supp. Decl. Ex. 23, 1/18/2008 Calame Report ¶ 1.)  As relevant to this motion, Dr. Calame intends to testify that,

REDACTED                                                            (*see id.* ¶¶ 30-43),

(<em>See id.</em> ¶¶ 44-45.)

Mr. Manbeck has over forty years of experience as a patent attorney, and served as Commissioner of Patents and Trademarks from 1990 through 1992. (Greenwald Supp. Decl. Ex. 30, 2/22/2008 Manbeck Report ¶ 1.)  As detailed in his two

---

[1]  Amgen's Memorandum in Support of the Motion to Preclude ARIAD's Proffered Experts on Willfulness and Inequitable Conduct from Opining on Intent, State of Mind and Other Matters (D.I. 598) is referred to herein as "Amgen Br."; documents cited to herein are attached to the Supplemental Declaration of David Greenwald ("Greenwald Supp. Decl.") dated May 22, 2008.

expert reports, Mr. Manbeck would testify as follows:

**REDACTED**

(*see* Greenwald Supp. Decl. Ex. 34, 3/7/2008 Manbeck Report ¶¶ 9-28).[2]

Amgen's partial *Daubert* motion against Dr. Calame and Mr. Manbeck should be denied for at least the following reasons:

1.      Contrary to Amgen's assertion, Dr. Calame's anticipated testimony regarding Amgen's willful infringement is based on the correct legal standard and is *not* an impermissible attempt to opine on Amgen's subjective intent to infringe the '516 Patent. Moreover, Dr. Calame's planned testimony regarding the Amgen and third-party documents supporting ARIAD's willful infringement claim is of a type expressly provided for by Federal Rule of Evidence 702 and routinely allowed by courts.

2.      The portions of Mr. Manbeck's anticipated testimony challenged by Amgen are relevant and admissible. Like Dr. Calame, Mr. Manbeck will opine not on Amgen's *subjective* intent to infringe, but on Amgen's knowledge of the *objective* likelihood that its activities would lead to infringement. Mr. Manbeck's contemplated testimony regarding Amgen's failure to mount an advice of counsel defense continues to be relevant after the Federal Circuit's *Seagate* decision. Finally, Mr. Manbeck's

---

[2] ARIAD has retained Mr. Manbeck to rebut the testimony of Amgen's purported inequitable conduct and willfulness expert, Gerald J. Mossinghoff. ARIAD has moved to preclude Mr. Mossinghoff's testimony in its entirety (*see* ARIAD's Mot. to Preclude Testimony of Mossinghoff and Ciechanover (D.I. 578) and Br. in Supp. of Mot. (D.I. 579))

anticipated testimony concerning ARIAD's lack of intent to deceive the PTO is based on his analysis of the objective facts and circumstances in light of his experience as a former Commissioner of Patents and Trademarks—*not* on an evaluation of the subjective intent of ARIAD's representatives.

## II.    Argument

Federal Rule of Evidence 702 confers upon trial judges "some gatekeeping responsibility in deciding questions of the admissibility of proffered expert testimony." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 600 (1993) (Rehnquist, C.J., concurring in part and dissenting in part).  Even though they bear the burden of establishing its admissibility, the "profferers of expert testimony do not have to demonstrate . . . by a preponderance of the evidence that the assessments of their experts are *correct*, they need only . . . demonstrate by a preponderance of the evidence that their opinions are reliable." *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 424, 430 (D. Del. 2007) (emphasis in original; citations and punctuations omitted).

### A.    Dr. Calame's Testimony Is Admissible.

The *only* portion of Dr. Calame's anticipated testimony that Amgen seeks to preclude is her opinion that,

### REDACTED

(*See*

Greenwald Supp. Decl. Ex. 23, 1/18/2008 Calame Report ¶¶ 44-45.)  Amgen's attack on this small portion of Dr. Calame's anticipated trial testimony should be rejected because

---

and would offer Mr. Manbeck's testimony at trial only if and to the extent that Mr. Mossinghoff is allowed to testify.

Dr. Calame applied the correct legal standards and her testimony will be helpful to the trier of fact.

> 1. **Dr. Calame Applies the Correct Legal Standard and Opines on Amgen's Knowledge of an Objectively High Likelihood of Infringement.**

Contrary to Amgen's bald assertion, it is simply untrue that Dr. Calame "rel[ies] on [Amgen's] subjective awareness" of facts and circumstances relevant to Amgen's willful infringement (Amgen Br. at 4) or that Dr. Calame seeks to testify concerning Amgen's *subjective* intent to infringe (*id.* at 4-5 and n.2). Rather, Dr. Calame's testimony is based on the following, correct legal standard:

**REDACTED**

(Greenwald Supp. Decl. Ex. 23, 1/18/2008 Calame Report ¶ 44 (emphases added).) The standard Dr. Calame applied is exactly the standard for willful infringement set out by the Federal Circuit in *Seagate*:

> [T]o establish willful infringement, a patentee must show . . . that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. . . . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*) (internal quotation marks and citation omitted) (cited at Amgen Br. 4, 5-6). Amgen simply ignores Dr. Calame's recitation of the legal standard she applied, and instead, relies on its mischaracterization of Dr. Calame's expected testimony.

Testimony concerning Amgen's "awareness" or "knowledge" of facts relevant to infringement is not forbidden evidence of Amgen's "state of mind" (Amgen Br. at 4), but is the very evidence *Seagate* explicitly holds is required to prove willful infringement.  *Seagate*, 497 F.3d at 1371 ("the patentee must . . . demonstrate that this objectively-defined risk [of infringement] was either known or so obvious that it should have been known to the accused infringer"); *see also VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072, 1075 (N.D. Cal. 2007) (in a post-*Seagate* case, denying motion for summary judgment as to willful infringement when a trier of fact could find that defendant had actual knowledge of patented method).[3] Here, as disclosed in her January 18, 2008 report, Dr. Calame plans to testify concerning

**REDACTED**

---

[3] Further negating Amgen's argument that its "subjective awareness" of Enbrel's infringing nature is irrelevant (Amgen Br. at 4-5), post-*Seagate* courts have held that "[i]f the objective component [of the *Seagate* test] has been satisfied, the analysis shifts to the *subjective knowledge* of the infringer:  the patentee must then demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *ResQNet.com, Inc. v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008) (internal quotation and citation omitted, emphasis added); *accord Eaton Corp. v. ZF Meritor LLC*, No. 03-74844, 2008 WL 920128, at *1 (E.D. Mich. Apr. 3, 2008) (same); *V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc.*, — F.R.D. —, 2008 WL 619207, at *4 (D.N.J. Mar. 4, 2008) (same).

The cases relied upon by Amgen are inapposite because they involved an expert seeking to speculate about the *motivations* of a party to the litigation.  In *Oxford Gene Tech Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 n.9 (D. Del. 2004), the precluded expert sought to give testimony inferring the defendant's state of mind, such as that defendant "recogniz[ed]" that its business activities might infringe; that defendant may have "fe[lt]" a license was necessary and may have been "concerned."  No similar testimony appears in Dr. Calame's January 18, 2008 report.  Similarly, Dr. Calame's report does not contain testimony similar to that excluded in *AstraZeneca LP v. Tap Pharmaceutical*

**REDACTED**          (*See* Greenwald Supp. Decl. Ex. 23, 1/18/2008 Calame Report

¶¶ 30-43; *see also infra* Part II.A.2.)  Dr. Calame then concludes that

**REDACTED**

(*Id.* ¶ 45.)  In sum, Dr. Calame applied the correct legal standard as set forth in *Seagate*,

and her testimony should be permitted.

> 2.    **Dr. Calame's Testimony Regarding Documents Demonstrating an Objectively High Likelihood of Infringement Is Admissible Because It Would Assist the Trier of Fact.**

While it is unclear whether Amgen seeks preclusion of Dr. Calame's

testimony interpreting documents demonstrating willful infringement (*see* Greenwald

Supp. Decl. Ex. 23, 1/18/2008 Calame Report ¶¶ 32-43; *but see* Sharp Decl. (D.I. 599) ¶ 5

(asserting that paragraphs 44 and 45 of the Calame Report are the only "[r]elevant

portions" of Dr. Calame's report for purposes of this motion)), such preclusion would be

improper.  Dr. Calame, whose scientific qualifications Amgen does not challenge, is

entitled to explain to the jury

**REDACTED**

i. (*See* Greenwald

Supp. Decl. Ex. 23, 33 and 38.)  The documents supporting ARIAD's willful infringement

---

*Products, Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006), where an opinion on what a
plaintiff was "seeking to utilize" and "aimed" to do was precluded.

claim involve complicated scientific concepts that are not readily understood by a layperson. Expert testimony will be necessary to explain their significance to the trier of fact.

To take a few specific examples, Dr. Calame will testify that:

- 

**REDACTED**

(Greenwald Supp. Decl. Ex. 23, 1/18/2008 Calame Report ¶ 36 (internal citations omitted).)

- 

**REDACTED**

(*Id.* ¶ 37 (internal citations omitted).)

- 

**REDACTED**

(*Id.* ¶ 39 (internal citations omitted).)

Dr. Calame's testimony explaining

**REDACTED**                    *See* Fed. R.

Evid. 702 (expert witness may testify if "scientific, technical, or other specialized

knowledge will assist the trier of fact to *understand the evidence* or to determine a fact in issue") (emphasis added); *see also Hnot v. Willis Group Holdings Ltd.,* No. 01 Civ. 6558 (GEL), 2007 WL 1599154, at *2 (S.D.N.Y. June 1, 2007) ("Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case — even if it simply explains facts and evidence already in the record.") (internal quotation and citation omitted).

*   *   *

For the reasons stated above, Dr. Calame's testimony is admissible in its entirety, and Amgen's partial preclusion motion with regard to her testimony should be denied.

**B.     Mr. Manbeck's Testimony Is Admissible.**

Amgen challenges three specific aspects of Mr. Manbeck's anticipated rebuttal testimony related to willfulness and inequitable conduct.  *First,* in rebuttal of the testimony of Amgen's purported willfulness expert, Mr. Mossinghoff,

**REDACTED**

(*See* Greenwald Supp. Decl. Ex. 34, 3/7/2008 Manbeck Report ¶¶ 9-28.)

(*Id.* ¶ 27.)

**REDACTED**

(Greenwald Supp. Decl. Ex. 30, 2/22/2008 Manbeck Report ¶¶ 80-84, 93, 101.) As demonstrated below, all this testimony is admissible under *Daubert* and Rule 702.[4]

      1.     **Mr. Manbeck**           **REDACTED**

As with Dr. Calame, Amgen suggests that Mr. Manbeck improperly seeks to testify regarding Amgen's state of mind with respect to willful infringement. (Amgen Br. at 4-5.) Not so.

**REDACTED**

(*See, e.g.,* Greenwald Supp. Decl. Ex. 34, 3/7/2008 Manbeck Report ¶ 28 ,

**REDACTED**

(internal citation omitted).)

---

[4] Amgen fails to mention that the anticipated willfulness testimony of its own expert, Mr. Mossinghoff, suffers from the same alleged defect as the testimony Amgen seeks to preclude.

**REDACTED**

(*See* Greenwald Supp. Decl. Ex. 47, 2/21/2008 Mossinghoff Report ¶ 8.) This anticipated testimony of Mr. Mossinghoff :

**REDACTED** Thus, to the extent the Court accepts Amgen's arguments with respect to Mr. Manbeck, those arguments provide an *additional* ground to preclude Mr. Mossinghoff's willfulness-related testimony. (*See* ARIAD's Brief in Supp. of Mot. to Preclude Expert Testimony of Mr. Mossinghoff and Dr. Ciechanover (D.I. 579) at 11-13 (demonstrating the existence of other grounds for preclusion of Mr. Mossinghoff's willfulness-related testimony).)

2.    **Mr. Manbeck's Testimony Concerning**
**REDACTED**

Amgen cites no authority for the proposition that Mr. Manbeck's

testimony concerning           **REDACTED**           (Greenwald Supp.

Decl. Ex. 34, 3/7/20008 Manbeck Report ¶ 27) is irrelevant in light of *Seagate*. (*See*

Amgen Br. at 5-6.) *Seagate* held only that "there is no affirmative obligation to obtain

opinion of counsel," 497 F.3d at 1371, and that "an accused infringer's failure to obtain

legal advice does not give rise to an adverse inference with respect to willfulness," *id.* at

1370. *Seagate* did *not* hold that an infringer's failure to obtain advice of counsel is

*irrelevant*. Indeed, in a case decided after *Seagate*, Judge Sleet of this Court denied

defendants' motion to preclude evidence regarding their failure to obtain advice of

counsel, holding that "nothing in *Seagate* forbids a jury to consider whether a defendant

obtained advice of counsel as part of the totality of the circumstances in determining

willfulness." *Energy Transp. Group, Inc. v. William Demant Holding AS*, C.A. No. 05-422-

GMS, 2008 WL 114861, at *1 (D. Del. Jan. 7, 2008). Accordingly, Amgen offers no reason

to preclude Mr. Manbeck's testimony on this topic.

3.    **Mr. Manbeck's Testimony Concerning**
**REDACTED**

Amgen misconstrues Mr. Manbeck's anticipated testimony when it

argues that Mr. Manbeck impermissibly seeks to opine about ARIAD's lack of intent to

mislead the PTO during the prosecution and reexamination of the '516 Patent. (Amgen

Br. at 6-8.) Unlike in cases such as *Oxford Gene Tech*, where the precluded expert

purported to opine on what a party "felt" or "recognized," 345 F. Supp. 2d at 443 n.9, Mr.

Manbeck seeks to apply his experience, including as a former Commissioner of Patents

and Trademarks (Greenwald Supp. Decl. Ex. 30, 2/22/2008 Manbeck Report ¶ 1), to

**REDACTED**

For example, Mr. Manbeck notes that the


**REDACTED**


(*id.* ¶¶ 93, 101).  None of this

anticipated testimony requires speculation as to the subjective state of mind of ARIAD's

personnel, and thus the concerns present in the cases cited by Amgen (*see* Amgen Br. at

7) are simply not present here.[5]

Moreover, Amgen's bare assertions that Mr. Manbeck's opinions on

intent are "unsupported by any record evidence" and "contrary to the proper inferences

from the record" (*id.* at 7-8) are not proper grounds for a *Daubert* motion.  *See, e.g., Stecyk

v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 415 n.3 (3d Cir. 2002) (criticisms directed to

the factual foundation for expert testimony "raise precisely the type of issues that must

---

[5] Indeed, two of Amgen's cited cases for this argument merely reinforce the grounds
for ARIAD's pending motion to preclude Mr. Mossinghoff.  Contrary to Amgen's
assertion (Amgen Br. at 7), *Revlon Consumer Prods Corp. v. L'Oreal S.A.,* No. 96-192 (MMS),
1997 WL 158281 (D. Del. Mar. 26, 1997), contains *no* specific reference to precluding an
expert from offering impermissible testimony on intent.  Rather, as ARIAD noted in its
opening brief in support of its motion to preclude Mr. Mossinghoff (D.I. 579 at 14), the
*Revlon* court precluded an inequitable conduct expert from testifying on *any* issue aside
from "matters of PTO practice and procedure."  *See Revlon,* 1997 WL 158281, at *3 ("this
holding precludes, among other things, Mr. Witherspoon's proposed testimony
regarding the 'duties and responsibilities of an inventor, his or her attorney or agent,
and others substantively involved in the preparation and prosecution of a patent
application in the PTO'").  Similarly, in *Tap Pharm. Prods., Inc. v. Owl Pharm., L.L.C.,* No.
1:99-CV-2715, 2003 WL 25695241, at *1 (N.D. Ohio Feb. 18, 2003), the court issued a
blanket preclusion order for *all* inequitable conduct-related expert testimony aside from
background on PTO procedures.

be resolved by a fact-finder having the benefit of the adversary process"); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 363-64 (D. Del. 2006) (argument that evidence relied upon by expert does not actually support expert's conclusion goes to the weight of expert's testimony, not its admissibility).  Thus, contrary to Amgen's contention, there is no question of Mr. Manbeck's (or Dr. Calame's) planned testimony invading a province "exclusively reserved for determination by the Court."  (Amgen Br. at 8.)

## III.    Conclusion

For the foregoing reasons, Amgen's motion to preclude Dr. Calame and Mr. Manbeck from testifying as to certain specified matters should be rejected in its entirety.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

Steven J. Balick (#2403)
John G. Day (#2114)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: May 22, 2008