# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, and IMMUNEX RHODE ISLAND
CORPORATION,

        Plaintiffs,

    v.

ARIAD PHARMACEUTICALS, INC., and THE
WHITEHEAD INSTITUTE FOR BIOMEDICAL
RESEARCH,

        Defendants.

ARIAD PHARMACEUTICALS, INC.,
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, THE PRESIDENT AND FELLOWS
OF HARVARD COLLEGE, and THE WHITEHEAD
INSTITUTE FOR BIOMEDICAL RESEARCH,

        Counterclaim-Plaintiffs,

    v.

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, IMMUNEX RHODE ISLAND
CORPORATION, and WYETH,

        Counterclaim-Defendants.

C.A. No. 06-259-MPT

**REDACTED
PUBLIC VERSION**

## DEFENDANTS-COUNTERCLAIM-PLAINTIFFS' REBUTTAL BRIEF
## ON CLAIM CONSTRUCTION

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: May 22, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for ARIAD Pharmaceuticals, Inc.,
Massachusetts Institute of Technology, the
President and Fellows of Harvard College and the
Whitehead Institute for Biomedical Research*

## Table of Contents

*Page(s)*

Table of Authorities ............................................................................................ ii

I.    Argument ................................................................................................ 1

      A.    Construction of "NF-κB," "NF-κB Activity" and Related Terms ................ 1

            1.    The Proper Construction of NF-κB and NF-κB Activity
                  Acknowledge NF-κB's Function as a Regulator of Gene
                  Expression. ........................................................................... 2

            2.    The DNA Sequences to Which NF-κB Binds Are Not
                  Limited to Those Identified in the Specification. ................... 4

            3.    Reference to the "NF-κB signal transduction pathway" Is
                  Supported by Intrinsic Evidence and Does Not Add
                  Limitations to the Claims. .................................................... 5

            4.    Amgen's Proposed Construction of "NF-κB-mediated
                  intracellular signaling" Is Inappropriate Because it Does
                  Not Describe "Signaling." ..................................................... 7

      B.    The Asserted Claims Encompass Intracellular and Extracellular
            Methods of Reducing NF-κB Activity in Cells. ................................. 8

      C.    The Asserted Claims Require Induction of NF-κB Activity by an
            External Stimulus Prior to the Application of an Agent Capable of
            Reducing NF-κB Activity. ............................................................. 14

            1.    Claim 6, and Claims Dependent Thereon, Requires
                  Induction of NF-κB Activity Before Performance of the
                  Claimed Method. ................................................................ 15

            2.    Claim 18, and Claims Dependent Thereon, Requires
                  Induction of NF-κB Activity Prior to the Performance of
                  the Claimed Method. ........................................................... 19

      D.    The Asserted Claims Are Limited to Methods Practiced in Those
            Cells in Which NF-κB is Present and Capable of Acting as an
            Intracellular Messenger. ............................................................. 21

      E.    The Asserted Claims Do Not Encompass Natural Processes. ................... 24

II.   Conclusion............................................................................................... 25

## Table of Authorities

**Cases**                                                               *Page(s)*

*Bicon, Inc. v. Straumann Co.,*
   441 F.3d 945 (Fed. Cir. 2006) ...........................................................................18

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,*
   246 F.3d 1368 (Fed. Cir. 2001) .........................................................................18

*Chochrane v. Deener,*
   94 U.S. 780 (1877) .............................................................................................24

*Eaton Corp. v. Rockwell Int'l,*
   323 F.3d 1332 (Fed. Cir. 2003) ....................................................................16, 19

*Loral Fairchild Corp. v. Sony Corp.,*
   181 F.3d 1313 (Fed. Cir. 1999) .........................................................................20

*Nostalgia Network, Inc. v. Lockwood,*
   315 F.3d 717 (7th Cir. 2002) .............................................................................23

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ...............................................................6, 22, 23

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*
   927 F.2d 1565 (Fed. Cir. 1991) ...........................................................................6

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
   299 F.3d 1313 (Fed. Cir. 2002) ..................................................................5, 9, 11

*Tilghman v. Proctor,*
   102 U.S. 707 (1880) ...........................................................................................24

*Vitronics Corp. v. Conceptronic, Inc.,*
   90 F.3d 1576 (Fed. Cir. 1996) .............................................................................8

**Statutes & Rules**

35 U.S.C. § 112.........................................................................................................23

Defendants-counterclaim-plaintiffs (collectively, "ARIAD") respectfully submit this memorandum in opposition to Amgen's proposed construction of certain terms in the claims of U.S. Patent No. 6,410,516 (the "'516 Patent") that ARIAD has asserted against plaintiffs-counterclaim-defendants (collectively, "Amgen").[1]

I.    **Argument**

A.  **Construction of "NF-κB," "NF-κB Activity" and Related Terms**

As shown in ARIAD's opening brief, the '516 Patent describes the discovery of NF-κB, and its role as a transcription factor that acts as a mediator of inducible gene expression. (ARIAD Br. at 16-22.) The asserted claims are directed towards artificial methods of reducing that activity. Thus, the proper understanding of the terms "NF-κB" and "NF-κB activity," which appear in all of the asserted claims, are critical to understanding the scope of the claimed inventions. Although the parties' definitions appear starkly different, much of that difference reflects the different ways that the parties have conceived the core of the claimed invention: "reducing NF-κB activity." ARIAD's constructions conceive of the reduction of NF-κB activity — and other related terms — as interference with the NF-κB signal transduction pathway that is described in the specification of the '516 Patent. By contrast, Amgen's proposed constructions are limited to inhibition of discrete, intermediate steps of that pathway. As explained below, Amgen's proposed definitions of NF-κB and NF-κB activity are

---

[1] Amgen's Opening Brief on Claim Construction (D.I. 581) is referred to herein as "Amgen Br."; ARIAD's Opening Brief on Claim Construction (D.I. 577) is referred to herein as "ARIAD Br."; documents cited to herein are attached to the Supplemental Declaration of David Greenwald ("Greenwald Supp. Decl.") dated May 22, 2008.

improperly narrow, and do not reflect how a person of ordinary skill in the art would

understand the terms upon reading the specification of the '516 Patent.

### 1. The Proper Construction of NF-κB and NF-κB Activity Acknowledge NF-κB's Function as a Regulator of Gene Expression.

Amgen's proffered construction of NF-κB — "a protein having each NF-

κB activity" — is informed not by the specification, but by its desire to improperly limit

"NF-κB activity" to three discrete steps of the NF-κB pathway. But the specification of

the '516 Patent provides significantly more information about NF-κB and its pathway

than just those three steps. For example, the specification describes the role of NF-κB as

a transcription factor that is activated in response to external stimuli.[2] It teaches that

certain extracellular signaling molecules, such as the cytokines, tumor necrosis factor

("TNF") and Interleukin-1 ("IL-1"), are involved in the first step of NF-κB activity,[3] and

describes the role of NF-κB as the mediator of inducible gene expression.[4] The

specification even refers to "the transcription factor activity of NF-κB" – an "activity"

that is curiously absent from Amgen's construction of "NF-κB activity."[5]

Amgen argues that "ARIAD's construction improperly seeks to import a

'gene regulation' limitation into the claims." (Amgen Br. at 13-14.) It is true that

ARIAD's constructions of the terms, "NF-κB" and "NF-κB activity" build in reference to

NF-κB's sole (known) function as a transcriptional factor. But it is hard to see how that

could be a fault of ARIAD's construction, or how the absence from Amgen's

---

[2] '516 Patent at 2:36-40, 3:56-64, 4:12-23, 16:26-28, 30:43-48, 35:45-49, 37:43-38:22.

[3] '516 Patent at 2:36-40, 3:59-64, 10:41-50, 12:36-41, 17:30-35; 17:45-47.

[4] '516 Patent at 2:36-40, 3:59-64, 10:41-50, 12:36-41, 17:45-50, 30:42-31:56.

[5] '516 Patent at 76:66-77:3.

constructions of any reference to NF-κB's function could be to their credit. Throughout

the specification, NF-κB is defined as a "transcription factor,"[6] which is, by definition, a

protein that "regulates the transcription of . . . gene[s]."[7]  NF-κB's role in regulating gene

expression is highlighted throughout the specification.[8]  And the very title of the patent

is "Nuclear Factors Associated With *Transcriptional Regulation*."[9]  Any definition of NF-

κB or its activity that omits its role as a transcriptional factor (*i.e.,* its role in regulating

the transcription of certain genes) is, thus, woefully incomplete.  Amgen's sole defense

of its omission of gene regulation language from its proposed claim constructions is that

unlike several non-asserted claims, the asserted claims do not refer specifically to "gene

regulation."  (Amgen Br. at 13.)  But because NF-κB had and has no known function

other than gene regulation, it is hard to see how it or its activity can be fairly defined

without reference to the gene regulation that NF-κB regulates.

As against constructions of the claims that acknowledge NF-κB's role as a

regulator of gene activity, Amgen argues that such a construction would "infuse[]

greater uncertainty into the disputed terms," because "the patent fails to identify what

'certain' or 'particular' genes are regulated by NF-κB."  (Amgen Br. at 14.)

Notwithstanding Amgen's objections that ARIAD's construction would render the

claims indefinite, ARIAD's construction is commensurate with the disclosure of the

---

[6] '516 Patent at 2:26-31, 6:5-7, 15:31-32, 27:1-7, 30:43-45, 35:18-19, 35:31-32, 76:66-77:3.

[7] Greenwald Supp. Decl. Ex. 49, David S. Latchman, *Transcription Factors: An Overview*, Int. J. Biochem. Cell Biol. 29(12):1305-1312 (1997).

[8] '516 Patent at 2:26-31, 3:67-4:4, 4:9-19, 4:23-28, 31:64-32:11, 35:31-32, 35:55-58.

[9] '516 Patent, Title Page (emphasis added).

specification.  The specification of the '516 Patent states that NF-κB regulates a wide variety of genes and lists several genes under the control of NF-κB.[10]  Nothing, however, in the specification would suggest that the identification of genes is exhaustive.  Indeed, one of the surprising aspects of the inventors' discovery is the considerable, "pleiotropic" variety of genes regulated by NF-κB.  The claims at issue in this case are directed to modulation of the steps of the NF-κB pathway to affect NF-κB's role as a mediator of inducible gene expression, not to controlling the expression of a specific gene.   Thus, while it is appropriate to indicate that NF-κB regulates the expression of *certain* genes — only those with NF-κB response elements in their promoters — it is not necessary to specify the full extent of the genes under NF-κB control.

### 2.  The DNA Sequences to Which NF-κB Binds Are Not Limited to Those Identified in the Specification.

The other area of disagreement relates to the class of DNA sequences to which NF-κB must bind in the course of exhibiting its "activity."  Whereas the parties agree that NF-κB (or, under Amgen's construction, "NF-κB activity") must be defined with reference to its ability to bind to specific DNA recognition sequences, the parties dispute whether that binding ability should defined as coextensive with the known, predicted and consensus sequences,[11] listed in Table 2 of the '516 Patent.  ('516 Patent at 37:1-42.)  Amgen's position is at once overbroad and unduly narrow.  It is overbroad because by turning upon NF-κB's binding to "the sequences listed in Table 2 of the '516

---

[10] '516 Patent at 14:56-60, 35:31-32, 37:1-42.

[11] A "consensus sequence" is a formula that describes a set of nucleotide sequences – here, the set consists of NF-κB recognition sequences – in a way that identifies regions of homology and variation among them.

patent" (Amgen Br. at 14), it includes *predicted* sequences, which the inventors

specifically identify in the specification of the '516 Patent as not having been

experimentally confirmed.[12]  Amgen's construction is also unduly narrow because

nothing in the specification states that the sequences to which NF-κB can bind are *limited*

to those exemplified in Table 2.  Because Amgen's construction violates one of the

canonical rules of claim construction — that examples from the specification should not,

without an unequivocal disclaimer of claim scope, be read to limit the claims, *see, e.g.,*

*Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1326-28 (Fed. Cir. 2002) — it should be

rejected.

### 3.  Reference to the "NF-κB signal transduction pathway" Is Supported by Intrinsic Evidence and Does Not Add Limitations to the Claims.

Amgen also faults ARIAD's constructions of several terms because they

incorporate reference to the "NF-κB signal transduction pathway."  (Amgen Br. at 21.)

Amgen's primary argument in support of its opposition to ARIAD's proposed

constructions is that the term "NF-κB signal transduction pathway" is not found, *ipsis*

*verbis,* in the specification of the '516 Patent.  However, claim limitations need not (and,

in many instances, could not) be limited to words or phrases found in the specification.[13]

---

[12]

### REDACTED

(Amgen Br. at 15.)

(Greenwald Supp. Decl. Ex. 40, 4/3/08 Ravetch Dep. at 91:10-92:16.)

### REDACTED

[13] If it were a proper criticism that certain proposed constructions incorporate terms
not used in the specification, then many of Amgen's proposed constructions would be

*See Scripps Clinic & Research Foundation v. Genentech, Inc.,* 927 F.2d 1565, 1580 (Fed. Cir. 1991) ("[T]he construction of claims is simply a way of elaborating the normally terse claim language."). Rather, claim limitations are defined as one of ordinary skill in the art would define them, having read and considered the intrinsic evidence. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

The specification clearly describes the signaling pathway through which NF-κB transduces the effects of extracellular influences and modulates inducible gene expression. Hence, it is appropriate to define several terms from the asserted claims with reference to the NF-κB signal transduction pathway. (*See* ARIAD Br. at 17-22.) That a person of ordinary skill in the art would understand the specification to describe such a pathway finds support in the teaching of the specification (*see* ARIAD Br. at 18-21), and from the prosecution history of the '516 Patent. Upon examination of the prosecution history, it is apparent that both the inventors and the PTO examiner understood the invention to relate to discovery of the NF-κB pathway and methods for intervening at that pathway at any point. For example, in prosecuting the '516 Patent before the PTO, the applicants argued that "[p]ossession [of the claimed inventions] was manifested by the disclosed discovery of the signaling pathway and ways to identify and use inhibitors thereof." (Greenwald Supp. Decl. Ex. 53, 08/464,364 Application, September 12, 2001 Response and Amendment at 8.) "Inhibitors" of that pathway were also referred to as "substances that modulate NF-κB activity by various mechanisms." (*Id.*)

---

vulnerable to the same charge. For example, the phrase "molecular interactions," which Amgen uses to define "NF-κB-mediated intracellular signaling" (Amgen Br. at 26), does not appear anywhere in the '516 Patent and its meaning is unclear.

### 4. Amgen's Proposed Construction of "NF-κB-mediated intracellular signaling" Is Inappropriate Because it Does Not Describe "Signaling."

Amgen disputes ARIAD's proposed construction of "NF-κB-mediated intracellular signaling" — "the intracellular steps of the NF–kB signal transduction pathway" — by suggesting that its own proposed construction more closely resembles the construction of that term that ARIAD proposed in *Lilly*. (Amgen Br. at 27.) Specifically, Amgen proposes that the term be defined as "molecular *interactions* within cells effected by, or conveyed through, NF-κB." (*Id.* (emphasis added).) In *Lilly*, ARIAD proposed construing the term as "molecular *communication* within cells effected by, or conveyed through, NF-κB." (*Id.* (emphasis added).) Notwithstanding the superficial similarity, Amgen's proposed construction and ARIAD's proposal from *Lilly* are distinct, and the latter is, in fact, substantially the same as ARIAD's here. Like ARIAD's construction in this case, the definition proposed by ARIAD's in *Lilly* refers to the intracellular *signaling* process — *i.e.*, "communication" — by which NF-κB transduces signals from extracellular stimuli. Thus, ARIAD's definitions in both cases are substantively similar. The definition proposed in this case simply describes the same phenomena using a different, somewhat more precise frame of reference: the NF-κB signal transduction pathway.

Amgen's proposed construction of "NF-κB-mediated intracellular signaling," on the other hand, is entirely divorced from the concept of signaling, and is therefore overly broad: "molecular interactions" can include interactions (*e.g.*, degradation) having nothing to do with signaling. Yet such interactions would be encompassed by Amgen's proposed construction. Moreover, as explained in section I.A.1. above, Amgen's definition is also too narrow, in that it is limited to the same three

steps of the NF-κB pathway that Amgen suggests delimit the scope of "NF-κB activity."

(Greenwald Supp. Decl. Ex. 57, 3/5/08 Ravetch Reply Report ¶ 12; *see also* ARIAD Br. at

20.) Accordingly, Amgen's proposed construction of "NF-κB-mediated intracellular

signaling" should be rejected.

### B. The Asserted Claims Encompass Intracellular and Extracellular Methods of Reducing NF-κB Activity in Cells.

A significant respect in which the parties' proposed claim constructions

differ is with respect to the limitation "reducing NF-κB activity in cells." This limitation

appears in claim 6 and in nearly identical form ('reducing NF-κB activity in *the* cells") in

claim 18. Although certain claims of the '516 Patent are directed towards methods of

intervening at specific intracellular steps along the NF-κB pathway,[14] none of the

asserted claims is so limited.[15] Rather, because claims 6 and 18, and their associated

---

[14] *See, e.g.,* '516 Patent claims 31 ("wherein NF-κB activity is reduced by decreasing the level of NF-κB not bound in an NF-κB:IκB complex"), 32 ("...by inhibiting the passage of NF-κB into the nucleus of cells"), 33 ("...by inhibiting modification of an IκB protein..."), 34 ("...by inhibiting degradation of an IκB protein"), and 35 ("...by inhibiting dissociation of the NF-κB:IκB complexes"). Each of these methods requires interference with specific steps, or their antecedent steps, along the NF-κB signaling pathway.

[15] Amgen's citation to Dr. Baltimore's deposition testimony — in which he provides his subjective opinion as to the scope of the claims—is legally irrelevant. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 (Fed. Cir. 1996) ("Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect [on claim construction]. Such testimony cannot guide the court to a proper interpretation when the patent documents themselves do so clearly."). Moreover, Dr. Baltimore admitted that he lacked the legal training to interpret patent claims, and had, in fact, previously underestimated the scope of the '516 Patent. *(See* 9/26/2007 Baltimore Dep. at 129:13-130:6 ("Q. Why did you say you would be amazed if Ariad prevails at trial? . . . A. Largely because I had thought of the patent as focusing on direct inhibitors of NF-kB, but when I —when I thought back later to how the patent is written, I realized that it had a much broader application. . . . You have got to understand here that I am trying to be a lawyer without a license.").

dependent claims, relate directly to "reducing NF-κB activity" without reference to the situs — inside or outside the cell — of the reducing agent, the methods of the asserted claims can be practiced by impeding any step along the NF-κB pathway. ('516 Patent at 3:59-64, 16:22-35.)

The only support that Amgen proffers for importing its "direct inhibition" limitation to the claims is that the embodiments disclosed in the specification act intracellularly and directly inhibit what Amgen refers to as "NF-κB activity." (Amgen Br. at 17-18.)  However, nothing in the language of the claims, the specification, or the prosecution history suggests that the claims should be limited by the disclosed embodiments.  Absent such a statement, Amgen's construction violates the fundamental rule of claim construction that limitations should not — without an unequivocal disclaimer — be read to limit the claims.  *See, e.g., Teleflex*, 299 F.3d at 1326-28.  Indeed, throughout the prosecution history, both the applicants and the examiner noted that the methods could be practiced by affecting NF-κB (or IκB) directly *or indirectly* — explicitly contradicting Amgen's proposed construction.[16]

To support its restriction of the claims to methods of intracellular inhibition, Amgen insists that ARIAD's proposed construction results in redundancy, because it is undisputed that NF-κB is located within cells.  (Amgen Br. at 18.)  It is true that NF-κB is an exclusively intracellular protein, but that does not render the term "in cells," surplusage.  Even under Amgen's proposed definition of "NF-κB activity," the

---

[16] *See, e.g.*, Greenwald Supp. Decl. Ex. 58, 08/464,364 Application, May 30, 2000 Response and Amendment at 6 ("Applicants disclosed that one can modulate biological functions by modulating NF-κB-mediated signaling . . . by affecting NF-κB or Iκ-B, directly *or indirectly*." (emphasis added)).

term "in cells" is required to understand the scope of the claims.   Because the specification affords several examples of experiments performed not "in cells," but in "cell extracts" or other in vitro settings, the term "in cells" signifies (under the agreed upon construction of the term "cells"), that the claimed methods cover methods of inhibiting NF-κB in *intact, living* cells (i.e., "cells"), rather than in cell *extracts*. [17] There is no redundancy; in the absence of the phrase, "in cells," the claims might be construed to apply to both types of methods.

Amgen also argues that "[b]ecause there is no intracellular signaling 'caused by' IL–1 or TNF–α until there is binding [of the cytokines to their receptors], reduction of this intracellular signaling must require action inside a cell to reduce the 'signaling' that has already been caused." (Amgen Br. at 19.)  However, this argument merely underlines Amgen's fundamental misunderstanding of the prior induction requirement, as discussed in greater detail in section I.C.  (*See also* ARIAD Br. at 29-35.)  Contrary to Amgen's suggestion,

**REDACTED**

(Greenwald Supp. Decl. Ex. 57, 3/5/08 Ravetch Reply Report ¶ 18).  Once NF-κB activity is induced, the cell is in an activated state. (*Id.*)  To reduce NF-κB activity after it has been induced, a method need not impede a particular signal or specific molecule of NF-κB to infringe the asserted claims. (*Id.*)  To infringe the asserted claims, a method need only reduce overall NF-κB activity previously induced by an external stimulus. (*Id.*)

---

[17] The parties agree that the claims are directed to methods practiced in whole cells, as opposed to cell extracts. (*See* Joint Claim Construction Chart (D.I. 571) at 2.)

Amgen's arguments based on the prosecution history are irrelevant and incorrect. In its prosecution history argument, Amgen repeats its legally unsupportable argument, *see Teleflex*, 299 F.3d at 1326-28, that the specific disclosed embodiments should be read to limit the scope of the claims, arguing that the claims should be limited to intracellular methods because only those examples were specifically discussed during the prosecution of the '516 Patent. (Amgen Br. at 20-21.) However, that the extracellular/intracellular distinction was not discussed during the prosecution of the '516 Patent is irrelevant to the scope of the asserted claims, and certainly does not support the conclusion that the claims should be limited to intracellular methods. Rather, the absence of an express distinction in the prosecution history between intracellular and extracellular methods only reinforces the absence of the distinction.

In fact, statements from the prosecution history indicate that the asserted claims encompass both intracellular and *extracellular* methods of reducing NF-κB activity. Throughout the prosecution history, many claims were drawn to "contacting" or "treating" cells with agents capable of inhibiting various steps of the NF-κB pathway.[18] "Contacting" is a broad term that, on its face, encompasses external application of reducing agents. Indeed, the examiner himself noted that "contacting" is a very broad term: "[t]he present claims are *broad*, encompassing...*any* method of contacting the cell with the agent or substance" capable of reducing NF-κB activity. (*See*,

---

[18] *See, e.g.* Greenwald Supp. Decl. Ex. 54, 08/464,364 Application, January 14, 1999 Response and Amendment at 2, 9 (Claim 58: "A method of . . .inhibiting expression, in a mammalian cell, of a gene . . . comprising inhibiting the DNA binding activity of the NF-κB protein by contacting the cell with an agent . . . wherein the agent inhibits the expression of the gene." Claim 150: "A method for inhibiting the activity of NF-κB in a mammalian cell, comprising . . . treating a mammalian cell with [an agent] . . .").

*e.g.*, Greenwald Supp. Decl. Ex. 55, 08/464,364 Application, July 14, 1998 Office Action at

7.)

Amgen also misinterprets one statement made during the reexamination

to suggest that "ARIAD [has] admitted that the asserted claims pertain only to

intracellular [methods]." (Amgen Br. at 20.) During the reexamination, counsel for

ARIAD noted that:

> Broadly speaking, there are the two types of methods to
> obtain a cell exhibiting reduced NF-KB activity [which are]
> as follows: (a) reducing the induced NF-KB activity by
> intervening in the signaling pathway by which NF-KB
> activity is manifested including particularly intervening
> intracellularly at a specific segment within the signaling
> pathway; and (b) preventing the external inducing stimuli
> from inducing the intracellular signaling pathway through
> which NF-KB activity is manifested.
>
> Certain claims of the '516 Patent as issued covered both
> types of methods. However, as discussed further in this
> response applicants maintain that the rejected claims now
> pending [which include claims 6, 18, 70-72 and 183-184]
> are directed only to type(a) above.

(Greenwald Supp. Decl. Ex. 17, Reexamination Control No. 90/007,503 and 90/007,828,

Oct. 22, 2007 ARIAD Response ("10/22/07 Response") at 27-28.) Contrary to Amgen's

argument (which it makes here and in its motion for summary judgment of non-

infringement), this statement is not a concession that the asserted claims are limited to

intracellular "interventions."[19] The statement distinguishes between treating activated

---

[19] *See also*, Defendant-Counterclaim-Plaintiffs' Memorandum in Opposition to
Amgen's Motion for Summary Judgment of Noninfringement, filed concurrently
herewith.

(induced) cells and preventing activation.[20]  As described in the response, the claims of the '516 Patent, including the claims asserted here, are directed towards methods encompassed within category (a): "reducing . . . induced activity."  (10/27/07 Response at 27-28.)  By contrast, methods falling within category (b) are those which merely "prevent[] . . . external inducing stimuli from inducing the intracellular signaling pathway through which NF-κB activity is manifested."  (*Id.*)  That the response notes that within category (a) fall methods that  *"includ[e] particularly intervening intracellularly at a specific segment within the signaling pathway,"* (*id.*), does not mean that intracellular  methods are the only methods that can "reduce . . . induced activity."  Also included in (a) are methods of reducing induced activity that are *not* directed towards intervention at a particular step of the pathway, including the first, extracellular step.

Amgen's interpretation of the statement is not consistent with other statements in that response, or the rest of the reexamination.  For example, immediately after making the quoted statement, counsel for ARIAD directed the examiner to a further explanation of ARIAD's position to, among other things, specific paragraphs of Dr. Verma's declaration dated November 2006, which was on file with the PTO.  (10/22/07 Response at 28.)  That declaration explained ARIAD's position that the NF-κB pathway consists of six steps, beginning with the "interaction of [an] extracellular influence with [a] receptor on [the] cell membrane" and ending with "[n]uclear processes leading to gene transcription."  (Greenwald Supp. Decl. Ex. 7, November 9,

---

[20] The statement was made in the context of distinguishing prior art that did not satisfy the prior induction requirement, in a line of argument that is irrelevant to the intracellular/extracellular distinction.  (10/22/07 Response at 17-22.)

2006 Declaration of Dr. Inder Verma ("2006 Verma Declaration") ¶ 9 and Exhibit 1,

Schematic 2.) Dr. Verma further explained that the '516 Patent teaches methods of

reducing induced NF-κB activity by "interfering anywhere along any" of those six steps,

including "interfering" with the "interaction of [an] extracellular influence with [a]

receptor on [the] cell membrane." (*See id.* at ¶¶ 9, 12 & Exhibit 1, Schematics 2, 3.) Thus,

the position that inhibition of induced NF-κB activity can be achieved through both

intracellular and extracellular interventions is one ARIAD has taken consistently and

without wavering.

      Nor is there any possibility that the examiner in the reexamination

misunderstands ARIAD's position, or that he disagrees. In a subsequent office action,

the examiner noted that he understood ARIAD to argue that "[r]educing NF-κB activity

. . . encompasses using agents that interfere at *any* of six activation events" described in

Dr. Verma's declaration, the first of which — "activation in response to signals triggered

by the interaction of certain external influence with receptors on the surface of the cell"

— is exclusively extracellular. (Greenwald Supp. Decl. Ex. 12, July 6, 2007 Office Action

at 18 (emphasis added).) In fact, the examiner agreed with ARIAD's argument that the

"the term 'reducing NF-κB activity' at least includes interference with *any* one of the six

activation segments," including the first, extracellular segment. (*Id.* (emphasis added).)

    **C. The Asserted Claims Require Induction of NF-κB Activity by an External**
       **Stimulus Prior to the Application of an Agent Capable of Reducing NF-κB**
       **Activity.**

      Another significant area in which the parties proposed claim

constructions differ concerns whether the asserted claims cover methods of reducing

pre-existing NF-κB activity, or whether they extend to the prevention of that activity's

initiation ("induction"), as, for example, its induction by a cytokine such as TNF.

ARIAD contends that the asserted claims relate only to "treatment": *i.e.*, that the asserted claims are infringed only by the reduction of NF-κB activity after it has been induced by an extracellular stimulus (*i.e.*, that the claims all contain a "prior induction requirement"). Ignoring the plain language of the claims, Amgen argues that the asserted claims can be practiced on cells without prior induction of NF-κB activity — *i.e.* that NF-κB activity, which does not exist, can be reduced.

### 1. Claim 6, and Claims Dependent Thereon, Requires Induction of NF-κB Activity Before Performance of the Claimed Method.

As shown in ARIAD's Opening Brief, three different terms found in claim 6 provide support for the prior induction requirement. The term "reducing NF-κB activity" implies that some amount of activity must exist before the claimed method is practiced. Similarly, "such that NF-κB-mediated intracellular signaling is diminished," which also appears in claim 6, implies that some amount of signaling must exist prior to the performance of the claimed method. Finally, the preamble of claim 6 states that the claimed invention is a "method for diminishing *induced* NF-κB-mediated intracellular signaling."[21] As used in claim 6, the word "induced" is a past participle that modifies the term that follows, *i.e.*, "NF-κB-mediated intracellular signaling." That indicates that the induction of NF-κB-mediated intracellular signaling must take place *before* the claimed method can be performed — *i.e.*, NF-κB activity must have been induced in the cells before the method can be practiced.

Amgen argues that the preamble of claim 6 should not be read to limit the claim because "it is reasonably susceptible to being construed to be merely duplicative

---

[21] '516 Patent at 82:32-33 (emphasis added).

of the limitations in the body of the claim." (Amgen Br. at 31.) However, as explained in ARIAD's opening brief, the limitation "induced" is necessary to give meaning to the terms "reducing" and "is diminished" found in the body of claim 6 — *i.e.* those terms "rely on and derive antecedent basis from" the term "induced" in the preamble of the claim. *Eaton Corp. v. Rockwell Int'l*, 323 F.3d 1332, 1339 (Fed. Cir. 2003). Therefore "induced" is properly considered a limitation of claim 6, and should be assigned its ordinary meaning. *Id.*

That Amgen is incorrect to suggest that the terms "reducing" and "is diminished" can be practiced before the induction of NF-κB activity — and therefore do not require "induced" to give them meaning — is immediately apparent upon consideration of Amgen's construction of the phrase "is diminished." Amgen asserts that "the plain meaning of 'is diminished' is 'there is a decrease'" (Amgen Br. at 29), but fails to take into account the fact that a quantity of signaling must first exist before it can be decreased. The specification of the '516 Patent discloses that NF-κB activity and NF-κB-mediated intracellular signaling do not exist in quiescent cells.[22] In light of that disclosure, a person of ordinary skill would understand that the asserted claims could not be practiced on quiescent cells: NF-κB activity cannot be "reduc[ed]" in such cells because there is nothing to reduce. For the same reason, NF-κB-mediated intracellular signaling cannot be "diminished."[23] Until the target cells have been stimulated by some

---

[22] '516 Patent at 15:62-66, 70:53-56, 72:44-73:6, 73:6-56.

[23]

**REDACTED**

(Greenwald Supp. Decl. Ex. 51, 3/27/08 Wall Dep. at 150:19-151:1.)

extracellular influence, the methods of the asserted claims cannot be practiced. Even Amgen concedes that the preamble of claim 6, if construed to limit the claims, requires that NF-κB-mediated intracellular signaling exist for the claimed method to be practiced.[24]

Amgen also argues that the examiner's amendment, made in the notice of allowance of claim 6, supports its position that the preamble is duplicative of the body of the claim. During prosecution, the examiner changed "[a] method for diminishing induced NF-κB-mediated intracellular signaling by reducing NF-κB activity in cells" to read "[a] method for diminishing induced NF-κB-mediated intracellular signaling *comprising* reducing NF-κB activity in cells *such that NF-κB-mediated intracellular signaling is diminished.*" (Greenwald Supp. Decl. Ex. 56, 08/464,364 Application, October 26, 2001 Notice of Allowance at 3.) Amgen suggests that because the added language is *similar* to the text of the preamble that it was not understood by the examiner to limit the scope of the claims. However, the added language is not identical to the preamble and, in fact, omits the word "induced." As even Amgen's construction of the preamble demonstrates, the word "induced" is significant to the meaning of the phrase. (*See* Amgen Br. at 31 ("decreasing any *existing* molecular interaction").) Because the word "induced" is not found in the body of claim 6 it cannot be said that the examiner's amendment "is merely duplicative of the limitations in the body of the claim." (*Id.*)

---

[24] Amgen defines "diminishing induced NF-κB-mediated intracellular signaling" as "decreasing any *existing* molecular interaction within cells effected by, or conveyed through, NF-κB." (*See* Amgen Br. at 31 (emphasis added).)

Moreover, by comparison to the examiner's amendments to claim 18,[25] which included adding the limitation "in mammalian cells" to the preamble — a phrase which, the parties agree, limits the claim — it is clear that the examiner did not intend to render limitations found in the preamble superfluous statements of purpose. The phrase "induced" in the preamble of claim 6, like "in mammalian cells" in the preamble of claim 18, is necessary to define the scope of the asserted claims.

        The cases cited by Amgen are either inapposite to the facts of this case, or support ARIAD's position that the word "induced" in claim 6 limits the scope of the claim. In *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006), the court held that — as in this case — the preamble of the asserted claim "recites essential elements of the invention." Here, the preamble of claim 6 explicitly states that the claim requires prior induction of NF-κB activity. Claim 6 is not an instance of where the "steps of the [method recited in the body] are performed the same way regardless of whether" the purpose of the preamble is fulfilled. *Cf. Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001). Rather, "induced" informs a person of ordinary skill that NF-κB-mediated intracellular signaling and NF-κB activity must already exist before the claimed invention can be practiced, and must be the result of that induction, rather than constitutive activity, as exists in some cell types.[26] In other words, the terms

---

[25] The examiner changed "[a] method for reducing Interleukin-1 or Tumor Necrosis Factor–α activity by reducing intracellular NF-κB activity" to read "[a] method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity *in mammalian cells comprising* reducing NF-κB activity *in the cells so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells.*" (Greenwald Supp. Decl. Ex. 56, 08/464,364 Application, October 26, 2001 Notice of Allowance at 6.)

[26] The specification discloses that NF-κB is constitutively active in B cells. '516 Patent at 29:47-48, 31:33-38.

"reducing" and "is diminished" found in the body of claim 6 "rely upon and derive antecedent basis from" the term "induced" in the preamble of the claim.  *See Eaton Corp.*, 323 F.3d at 1339.  Therefore "induced" is properly considered a limitation of claim 6, and should be given its ordinary meaning.  *Id.*

### 2. Claim 18, and Claims Dependent Thereon, Requires Induction of NF-κB Activity Prior to the Performance of the Claimed Method.

As shown in ARIAD's opening brief, Claim 18, and claims dependent thereon, are also limited to methods practiced upon cells that exhibit induced NF-κB activity.  The terms *"reducing* NF-κB activity" and "so as to reduce intracellular signaling *caused by* Interleukin-1 or Tumor Necrosis Factor-α" make plain that the prior induction requirement limits claim 18 as well.  Indeed, even Amgen admits that the method of claim 18 cannot be practiced until after the target cells have been exposed to an inducing cytokine (TNF or IL–1), and after signaling has been initiated within the cells.  In its opening brief, Amgen argues that:

> Because there is no intracellular signaling 'caused by' IL–1 or TNF–α until there is binding [of the cytokines to their receptors], reduction of this intracellular signaling must require action inside a cell to reduce the 'signaling' that has already been caused.

(Amgen Br. at 19.)  Although Amgen's argument is directed towards the false intracellular/extracellular distinction, discussed *supra*, its argument is — intentionally or not — based on the same considerations of ordinary meaning that compel ARIAD's proposed construction requiring the prior induction requirement.  The past participial phrase "caused by Interleukin-1 or Tumor Necrosis Factor- α" modifies "signaling" and thereby indicates that "NF-κB-mediated intracellular signaling" must have been *caused*

by Interleukin–1 or Tumor Necrosis Factor–α *before* the claimed method can be practiced.

Despite Amgen's tacit agreement that the methods of claim 18 can be practiced only upon cells that have already been stimulated by TNF or IL–1 (Amgen Br. at 19), Amgen argues that claim 18 (as well as claim 6) does not specify the order of "application of 'activators' or 'reducers'" of NF-κB activity (*id.* at 37). Lacking any reasonable argument based on the language of the claims or substance of the specification, Amgen makes two contradictory arguments to support its contention that claim 18 does not require prior induction. On the one hand, Amgen argues that "the claimed method requires one functional step, 'reducing NF-κB activity." (*Id.*) On the other, Amgen selectively quotes case law to support the proposition that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." (*Id.* at 33.) If, however, the claims are understood to have "one functional step" of reducing NF-κB activity, then the induction of NF-κB activity in cells is a necessary predicate to the performance of the claimed method rather than a step of the method, and the cases Amgen cites are irrelevant. By the same token, if Amgen retracts its position that the claims are limited to "one functional step," the cases cited are inapposite because the method of claim 18, like those of claim 6, implicitly requires that its steps be performed only after the induction of NF-κB activity in the target cells. *See Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1321-22 (Fed. Cir. 1999) (holding that the language of the claims implicitly required the performance of steps in order because each subsequent step referenced something logically indicating the prior step had been performed). Notwithstanding Amgen's contradictory arguments, it is clear from the language of claims 6 and 18 that the induction of NF-κB activity is a necessary predicate

to the performance of the claimed methods, and not a step of the claimed method. Accordingly, Amgen's proposed constructions should be rejected.

Lacking support from the language of the claims, the specification or the prosecution history, Amgen also cites statements made by the examiner in the ongoing reexamination of the '516 Patent. (*See* Amgen Br. at 30, 32-33.) Such statements are plainly irrelevant to the construction of the asserted claims. First, because the reexamination is ongoing, the examiner's statements are not final, and do not represent the fully developed opinion of the PTO. The asserted claims are still pending in the reexamination. Until they are allowed, statements made by the examiner as to their scope cannot be dispositive. Indeed, giving weight to the statements cited by Amgen would be akin to giving weight to any notice of rejection throughout the prosecution history, without examination of the subsequent replies and office actions. Under such a paradigm, no valid claims could ever issue unless they were allowed without argument or amendment. ARIAD responded to the examiner's rejection of its proposed construction in its most recent Response, submitted in reply to the Office Action quoted by Amgen. (*See* October 22, 2007 Response at 27-33.) The examiner's action on that response is pending.[27]

### D. The Asserted Claims Are Limited to Methods Practiced in Those Cells in Which NF-κB is Present and Capable of Acting as an Intracellular Messenger.

---

[27] That Amgen successfully opposed ARIAD's earlier motion to stay this case pending the outcome of the reexamination, makes it particularly inappropriate for Amgen to rely on non-final, interim actions/comments by the examiner to bolster its arguments. Had Amgen wished to take forensic advantage of the reexamination proceedings, it should have consented to ARIAD's motion, and awaited their conclusion.

**REDACTED**

(Greenwald Supp. Decl. Ex. 57, 3/5/08 Ravetch Reply Report ¶¶ 28-29.)

Amgen argues that, because the claims do not specifically state that they can be practiced only in cells that contain NF-κB, the claims should not be so limited. (Amgen Br. at 25.) That argument disregards the fundamental precept of claim construction that claims are interpreted as they would be understood by a person of ordinary skill in the art. *See Phillips*, 415 F.3d at 1312-13 (Fed. Cir. 2005) (en banc). Upon reading the specification, a person of ordinary skill would certainly understand that one could not interfere in a cellular process in cells that do not exhibit that process, any more than one could interrupt the flow of water through pipes in a dwelling that lacks plumbing. Such a person would not understand the '516 Patent to claim the impossible.

Amgen's proposed construction also disregards the inventors' express statement that methods practiced on cells that do not contain NF-κB are not within the scope of the claims.[28] Such an unequivocal disclaimer of claim scope by the inventor, contained within the specification of the patent, is generally dispositive. *Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance . . . the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as

---

[28] The specification notes that the claimed inventions relate to "method[s] of regulating…the activity of NF-κB in cells *in which it is present and capable of acting as an intracellular messenger*" ('516 Patent at 4:5-8 (emphasis added)) and "method[s] of regulating or influencing transduction, by NF-κB, of extracellular signals into specific patterns of gene expression and, thus, of regulating NF-κB-mediated gene expression *in the cells and systems in which it occurs*." ('516 Patent at 3:67-4:4 (emphasis added).)

dispositive."). Even ignoring that the claims cannot be practiced in cells that do not contain NF-κB, the express disclaimer found in the patent is properly understood to limit the claims. *Id.*

Amgen also argues that ARIAD is estopped to advance a claim construction under which the claims are construed to apply only to cells that have NF-κB activity, because in the prior litigation involving Eli Lilly, ARIAD did not seek such a limitation. (Amgen Br. at 25.) Amgen's estoppel argument is without merit. Because ARIAD did not argue the claims were limited to cells that contain NF-κB in *Lilly*, Amgen insists that ARIAD should now be estopped from raising that argument. (*Id.*) However, it was not necessary to resolve the issue whether the claims encompassed all cells, or merely those that contained NF-κB to resolve the disputed issues in *Lilly*. ARIAD has never taken the position that the claims are directed to *all* cells, irrespective of whether they contain NF-κB. In this case, however, that aspect of claim scope is relevant to Amgen's motion for summary judgment of invalidity of U.S. Patent No. 6,410,516 for lack of adequate written description under 35 U.S.C. § 112.[29] By seeking estoppel on this issue, Amgen argues that ARIAD should be estopped by arguments that it never made, on issues that were never litigated. The law of estoppel does not direct such a result. *Nostalgia Network, Inc. v. Lockwood,* 315 F.3d 717, 721 (7th Cir. 2002) (judicial estoppel merely "forbids a party who has prevailed on one ground in a litigation to repudiate that ground in seeking additional relief in a subsequent suit.").

---

[29] *See* Amgen's Opening Brief in Support of its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,410,516 for Lack of Adequate Written Description Under 35 U.S.C. § 112 (D.I. 584) at 23-24.

### E. The Asserted Claims Do Not Encompass Natural Processes.

The final point of disagreement concerns whether, as ARIAD contends, the claims of the '516 Patent are directed to artificial methods that accomplish the alteration (*i.e.*, reduction) of NF-κB activity through affirmative acts, and do not read on any natural process by which NF-κB activity is altered. Amgen argues that ARIAD is judicially estopped from seeking its proposed construction because it opposed such a limitation in the *Lilly* litigation. (Amgen Br. at 23-25.) However, even if, as Amgen argues, ARIAD is estopped from arguing that the quoted portion of the specification limits the claims, the claims are still properly understood to exclude any natural processes by which NF-κB activity is reduced. Courts have long considered process or method claims to relate to acts, *i.e.* human interventions. *See Tilghman v. Proctor*, 102 U.S. 707, 728 (1880). A "process requires that certain things should be done." *Cochrane v. Deener*, 94 U.S. 780, 788 (1877). Unlike a machine, a process requires affirmative acts to be taken. *Tilghman* 102 U.S. at 728. Moreover, upon reading the specification, it is clear that a person of ordinary skill would understand the claims to be directed towards the modulation of NF-κB activity through affirmative acts. Indeed, by using the phrase "taking action," Amgen's proposed definition for "reducing NF-κB activity" assumes that the claims require an affirmative act to be practiced. (4/8/2008 Claim Construction Chart (D.I. 571) at 2.)

## II.    Conclusion

For the foregoing reasons, ARIAD respectfully submits that the claim language in dispute should be construed as ARIAD proposes.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*

_____

Steven J. Balick (#2403)
John G. Day (#2114)
Lauren E. Maguire (#4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
lmaguire@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

*Of Counsel:*

Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: May 22, 2008