1               IN THE UNITED STATES DISTRICT COURT

2               IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

4   AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA  : CIVIL ACTION
    INC., AMGEN MANUFACTURING, LIMITED, and      :
5   IMMUNEX RHODE ISLAND CORPORATION,            :
                                                 :
6                   Plaintiffs,                  :
         v                                       :
7                                                :
    ARIAD PHARMACEUTICALS, INC., and the         :
8   WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, :
                                                 :
9                   Defendants.                  : NO 06-259-MPT
                                                 :
10  ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS   :
    INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND   :
11  FELLOWS OF HARVARD COLLEGE, and THE          :
    WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH, :
12                                               :
                    Counterclaim Plaintiffs.     :
13       v                                       :
                                                 :
14  AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA  :
    INC., AMGEN MANUFACTURING, LIMITED, and      :
15  IMMUNEX RHODE ISLAND CORPORATION, and WYETH, :
                                                 :
16                  Counterclaim Defendants.     :

17                          - - -

18                    Wilmington, Delaware
              Thursday, May 29, 2008 at 12:03 p.m.
19                  *TELEPHONE CONFERENCE*

20                          - - -

21  BEFORE:  HONORABLE **MARY PAT THYNGE**, U.S. MAGISTRATE JUDGE

22                          - - -

23  APPEARANCES:  (Listed on Page Two)

24
                                    Brian P. Gaffigan
25                                  Registered Merit Reporter

1    APPEARANCES:

2
                    YOUNG CONAWAY STARGATT & TAYLOR, LLP
3                   BY:  MELANIE K. SHARP, ESQ.

4                        and

5                   KIRKLAND & ELLIS, LLP
                    BY:  MARK A. PALS, P.C., ESQ., and
6                        MARCUS E. SERNEL, ESQ.
                         (Chicago, Illinois)
7
                             Counsel for Plaintiffs
8

9                   ASHBY & GEDDES, P.A.
                    BY:  LAUREN E. MAGUIRE, ESQ.
10
                         and
11

12                  CRAVATH SWAINE & MOORE, LLP
                    BY:  DAVID GREENWALD, ESQ.
                         (New York, New York)
13
                             Counsel for Defendants
14

15

16

17

18                           - oOo -

19                    P R O C E E D I N G S

20           (REPORTER'S NOTE:  The following telephone

21   conference was held in chambers, beginning at 12:03 a.m.)

22           THE COURT:  Good afternoon.  This is Judge

23   Thynge.  Before we begin, I'd like to find out who is on the

24   line for each of the parties.  Who is on the line on behalf

25   of Amgen, please?

1          MS. SHARP:  Your Honor, Melanie Sharp from Young

2     Conaway Stargatt & Taylor.  Also on the line are Mark Pals

3     and Marc Sernel from Kirkland & Ellis in Chicago.

4          MR. PALS:  Good afternoon, Your Honor.

5          THE COURT:  Good afternoon.

6          MS. MAGUIRE:  Good afternoon, Your Honor.

7     Lauren Maguire from Ashby & Geddes, along with David

8     Greenwald from Cravath Swain & Moore in New York; and Laurie

9     Allen from ARIAD.

10          MR. GREENWALD:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.  Counsel, the

12     counsel of this call was to telling what my ruling was on

13     ARIAD's motion to clarify under D.I. 555; and I understand

14     there has also been a letter that was provided by Mr. Day

15     asking for some additional time during this teleconference

16     regarding what is going to happen on June 19th.

17          As I noted, ARIAD moved to clarify its

18     counterclaims to allege a claim under 35 U.S.C., Section

19     271, Subsection F, and that it argued in its motion that

20     in light of Amgen's pleadings and ARIAD's prior pleadings,

21     it noticed that this section was part of the case, had

22     previously occurred but wished to make the point clear.

23     Amgen opposed the motion on the basis of Federal Rule of

24     Civil Procedure 16, arguing that no good cause had been

25     shown and Federal Rule of Civil Procedure 15 on the basis of

1    futility and undue delay.

2              The Court's ruling is that ARIAD's motion is

3    denied.  First, I query why ARIAD feels that it's necessary

4    to clarify if the matter had been properly pled originally.

5    It's no surprise ARIAD has previously I think on two

6    occasions moved to amend, never raised this issue despite

7    being aware both Amgen and Wyeth, by their continued refusal

8    to respond to discovery requests as early as July 2007, did

9    not consider Section 271(f) as part of the case.  Although

10   ARIAD calls it a motion for clarification, I'm interpreting

11   it probably as a motion to amend.  I will agree, though,

12   that this is not an issue which requires to be pled with

13   particularity such as fraud is under the Federal Rules but

14   a party is still required to adequately plead so that the

15   opposing party has notice a claim under that section has

16   been made.  To satisfy notice pleading requirements, one

17   must describe the means by which the alleged infringer

18   infringes.  For example, a patent owner asserting a claim

19   for patent infringement under Section 271(a) must allege

20   that the infringer, makes, uses, offers to sell or sells the

21   patented product or method.

22              If I followed ARIAD's logic that merely because

23   it alleged that somebody infringed under Section 271,

24   period, then it makes no sense as to why we have the

25   various subsections under 271(a) and the fact that they are

1    different.  271(a), I note that ARIAD alleged that there

2    were violations or that there was infringement under 271(a)

3    or that Amgen induced infringement as noted under 271(b) or

4    that Amgen contributorily infringed as under 271(c), and

5    that information was adequate notice for those sections,

6    but I don't believe it was adequate notice to indicate that

7    any other part of 271 was necessarily being alleged against

8    this party.

9           Noticed pleadings do require some

10   understanding of the basis of infringement under the

11   various provisions that deal with infringement.  As noted

12   by ARIAD, how a patentee may describe the means by which

13   an infringer infringes can be to use language from the

14   statute itself that provides notice or can be using other

15   appropriate language but it still needs to be adequate

16   notice.

17          As noted by ARIAD, although it emphasizes that

18   it does not intend or need any further discovery under

19   Section 271(f), it told me that it did not receive what it

20   felt to be adequate discovery.  So I am very concerned that

21   an amendment particularly at this late stage of the game is

22   just going to lead to more argument and more discovery being

23   needed in any event no matter what counsel has represented

24   on behalf of its clients.

25          I primarily probably decided this issue against

1    ARIAD on the basis of Federal Rule of Civil Procedure 16

2    which provides that the Court's scheduling order shall not

3    be modified except upon a showing of good cause and by

4    leave of the Court.  It is a stricter requirement than

5    maybe what you find under Rule 15, and I think that in this

6    circumstance what I'm viewing is that the application of

7    Rule 15 works in part on the assumption that Rule 16 does

8    not come into play.

9              Under Third Circuit law, when a party seeks

10   leave to amend in contravention of the scheduling order,

11   which required the amendment to occur -- the request for

12   amendment or motions to amend to occur earlier, there is

13   no good cause.  And I'm finding there has been no good

14   cause shown to me.  There is information to this Court

15   that ARIAD was in possession of information and facts that

16   there was a belief by the opposing party it did not

17   consider Section 271(f) to be part of the case via

18   discovery from depositions and also via other forms of

19   discovery.

20             ARIAD certainly could have brought this to the

21   Court's attention in a more timely manner, not 10 months

22   after the amendment to the pleadings had expired and two

23   months after discovery closed.  And the Court also notes

24   this amendment occurred during the time period during which

25   there was already the beginning of the exchange I think of

1    expert information, expert testimony and expert witness

2    information.

3              So that is my ruling based upon the motion that

4    was filed, and so the case will proceed as it has been

5    proceeding without this as part of the case.

6              Now, concerning what you want to do on

7    June 19th.  The Court is very much aware of the number of

8    motions that have been filed, of which I think six are

9    Daubert motions and there are five dispositive motions as

10   well as claim construction.  What type of guidance is

11   counsel looking for from the Court?

12             MR. GREENWALD:  Well, Your Honor, this is David

13   Greenwald for ARIAD.  If we could know either which motions

14   in addition to claim construction you might be interested

15   in hearing from counsel on that day or, barring that, which

16   motions you know you don't want to hear from us on that

17   day, that would at least make it easier for us to focus our

18   presentations on the 19th in a way that is most helpful to

19   you.  I am mindful, both sides are mindful that briefing on

20   these motions isn't complete yet, and we understand that

21   Your Honor probably hasn't even looked at them yet, but

22   to the extent that we could know if there are particular

23   motions on which you wish to hear argument or some that

24   you don't, that would be very helpful to us.

25             THE COURT:  Okay.  Could I have the timing of

1   when you would like to have that information, David?

2   Because I can't remember when briefing on these motions is

3   to be completed.

4           MS. MAGUIRE:  Well, I can help.  The briefing on

5   the reply briefs will go in next Friday.

6           THE COURT:  And that's on all the motions;

7   right?

8           MS. MAGUIRE:  That is on all the motions except

9   for, of course, claim construction where the Court's

10  scheduling order did not call for reply briefs.  So the

11  claim construction briefing, which we assume you do want to

12  take up obviously, is complete.  And that is substantial.

13  There are a substantial number of claim constructions issues

14  here.  We would also like to know how much of them Your

15  Honor wishes to allocate for the day.  We understand it's

16  scheduled for 9:30.  We don't know if there is a hard or

17  soft end time.

18          THE COURT:  Well, usually, and in talking with

19  other judges on this, there is usually not a lot of time or

20  I think counsel feels there is probably not a lot of time

21  that the Court often assigns to claim construction and the

22  case dispositive motions.  But each of you will have an hour

23  and-a-half.  So that if you do the math, you have a total of

24  three hours.  How that ends up getting divided up between

25  case dispositive motions and claim construction, I'm not

1    certain at this point.  I've gone through the claim

2    construction briefs twice.  I'm going through them a third

3    time right now and doing some outlines on them.  Trying to

4    outline it down, though, has been a little bit difficult and

5    so I'm not certain if -- claim construction obviously is

6    going to be the heart and soul of everything, particularly

7    for the case dispositive motions.

8            My practice is if I get claim construction

9    done at some reasonably decent time before the pretrial

10   conference, I will probably be turning to you to tell me

11   what case dispositive motions I do not need to address.  And

12   since, as I said, I haven't had the opportunity to review

13   the motions, either case dispositive or the Daubert motions,

14   my hope is, and maybe I'm wrong on this, that by identifying

15   claim construction or addressing claim construction a

16   little bit more heavily, that that will provide me with

17   answers for the Daubert motions.  Or am I mistaken on that

18   belief?

19           MR. GREENWALD:  I don't think it's mistaken.  I

20   think there is some interplay between some summary judgment

21   motions and some Daubert motions and claim construction;

22   although probably more, just thinking about it, probably

23   more on the summary judgment side than the Daubert side of

24   things.

25           THE COURT:  Well --

1          MR. GREENWALD:  I think it is true as a general

2    matter that resolving the other pending motions will be

3    easier once -- or at least somewhat easier once claim

4    construction issues are resolved.

5          THE COURT:  Well, let me ask you then.  If you

6    are saying to me --

7          MR. PALS:  May I share my thoughts?

8          THE COURT:  Sure.  Go ahead, Mark.

9          MR. PALS:  Some of the Daubert motions depend

10   on the dispositive motions in the sense that depending on

11   resolution of dispositive motions, some Daubert motions may

12   be moot, for example.  So if issues are out of the case, we

13   wouldn't need to go into a Daubert issue that would testify

14   only on that issue, for example.  Interplay between claim

15   construction and the dispositive motions?  There is some

16   interplay but I don't think that claim construction resolves

17   any of them necessarily.

18         THE COURT:  Well, did both of you argue in the

19   alternative on the case dispositive motions?

20         MR. PALS:  Well, the range of dispositive

21   motions include inequitable conduct, willfulness, infringe-

22   ment, written description.  And even on infringement, there

23   is an alternative argument in there, Your Honor, that is

24   not claim construction dependent and not something that is

25   resolved by the position the parties have taken on claim

1    construction.

2            THE COURT:  Okay.  Well, inequitable conduct, I

3    recognize that that is what I decide without the assistance

4    of a jury.  My inclination on inequitable conduct matters,

5    as far as motions for summary judgment, is to -- the more

6    likely than not approach would be by the Court to allow the

7    inequitable conduct to go forward and to not present it to

8    the jury.  The additional evidence on inequitable conduct

9    is presented to the Court solely either during the trial

10   itself, when we have some time at the end of the day, or at

11   a little bit later time after the trial.  And I can make a

12   ruling potentially from the bench as to whether I think

13   there is any inequitable conduct.  But I'm not saying that

14   is necessarily going to be the case.  I'll at least look at

15   the motion and try to give you some gut reaction beyond just

16   taking it off the top of my head right now.

17           MR. GREENWALD:  If I could just be heard very

18   briefly on that?

19           THE COURT:  Sure.

20           MR. GREENWALD:  The motion that is filed, the

21   partial one is only directly to the theories of inequitable

22   conduct that we feel, taking up from guidance in Your

23   Honor's last opinion on this subject, we feel has been

24   mooted by subsequent submissions to the re-examiner.  So

25   it's a pure procedural issue, having nothing to do with

1    the substance of the inequitable conduct that has been

2    alleged.

3                    THE COURT:  Okay.

4                    MR. GREENWALD:  We thought there would be

5    tremendous efficiencies associated with the resolution of

6    that motion in advance of trial.

7                    THE COURT:  All right.

8                    MR. PALS:  Your Honor, Mark Pals.  Obviously, we

9    disagree with that position.

10                    THE COURT:  Sure.  What about the lack of

11    subject matter jurisdiction?

12                    MR. GREENWALD:  Your Honor, that is our motion.

13    There would also be tremendous efficiencies associated

14    with the resolution of that one, even putting aside its

15    jurisdictional nature.  As Your Honor is aware, this is a

16    patent with 203 claims, all of which, the invalidity of

17    which are being challenged by Amgen, even though only seven

18    have been asserted, and, therefore, there are only seven as

19    to which there is a lot of controversy, particularly in a

20    jury trial context.  But even in a bench trial context, I

21    can't see how you can try the validity of 203 claims, even

22    inf there were jurisdiction.  So we think that a ruling on

23    that in advance of trial would be helpful.  And it would

24    also have some interplay with at least one of the Daubert

25    motions.

1          THE COURT:  Now, Mark, did you wish to make any

2    further comment on that particular issue?

3          MR. PALS:  Your Honor, our positions are set

4    forth in our brief as to why we believe it's appropriate to

5    go forward on the claims of the '516 patent broadly and as

6    to how they're dealt with in the context of a jury trial, so

7    I don't need to elaborate on that.  But, briefly, there is

8    commonality of issues across the asserted claims either

9    currently or its most recently unasserted claims that we

10   think apply across the board.

11         THE COURT:  That is because of the claim terms

12   that this Court is going to have to construe?

13         MR. PALS:  In part, yes, Your Honor.  There

14   is commonality of claim terms across the claims.  But take

15   written description, for example.  The written description

16   issues really apply broadly across the claims.  The

17   deficiencies, while there are some unique deficiencies for

18   some claims, there are common deficiencies across all of

19   them.

20         MR. GREENWALD:  Your Honor, may I respond?  I

21   would point out there is very little commonality with

22   respect to the claim construction issues.  The limitations

23   in the 195-or-96 unasserted claims are, for the most part,

24   very different from those in the asserted.  And just to

25   exemplify how even Amgen recognizes this case can't be tried

1    in a 203 claim declaratory judgment action before a jury,

2    they haven't even supplied proposed claim constructions on

3    the overwhelming majority or really any of limitations, the

4    unique limitations of the unasserted claims.

5         THE COURT:  The Daubert motions that the parties

6    have filed, are all of these individuals people skilled in

7    the art?

8         MR. PALS:  Your Honor, it's Mark Pals.  I'm

9    sorry.  There are technical witnesses that are at issue or

10   aspects of the technical witness's testimony that are at

11   issue in the different motions.  But Mr. Manbeck and

12   Mr. Mossinghoff are not technical witnesses and Mr. Sullivan

13   is a damages witness, so there are nontechnical witnesses

14   whose aspects of the testimony are raised in the Daubert

15   motions as well.

16        MR. GREENWALD:  Your Honor, Mr. Mossinghoff and

17   Mr. Manbeck are both -- well, I guess you call them patent

18   law experts.  We moved to preclude Mr. Mossinghoff and, as

19   part of the motion, have committed that if Your Honor grants

20   that motion to preclude his testimony, that we would not

21   call Mr. Manbeck.

22        THE COURT:  Okay.  Mr. Manbeck and

23   Mr. Mossinghoff are both patent law experts?  Are they

24   being propounded to instruct the jury on what the patent

25   law is?

1              MR. PALS:  Mr. Mossinghoff is not.

2    Mr. Mossinghoff is being presented, Your Honor, to testify

3    on issues that relate to willfulness.

4              THE COURT:  In what respect?

5              MR. PALS:  I'm sorry?

6              THE COURT:  In what respect?

7              MR. PALS:  With respect to what on willfulness?

8              THE COURT:  Yes.  That is a factual issue.

9              MR. PALS:  It's a factual issue under the *In Re*:

10   *Seagate* case depends heavily on commercial marketplace

11   considerations and objective beliefs or -- I'm sorry --

12   objective recklessness is a new standard under *In Re*:

13   *Seagate*.  Mr. Mossinghoff, as we explained in the briefing,

14   is in a position to address those issues and testify

15   before the jury, to assist the jury in making a decision

16   as to whether there was any objective reckless behavior

17   here.

18              MR. GREENWALD:  Your Honor, Mr. Mossinghoff

19   is being proffered both to give, we would view it, legal

20   expert testimony on willfulness and inequitable conduct,

21   particularly because inequitable conduct is for Your Honor.

22   But even putting that aside, this is not obviously the time

23   for me to repeat all the arguments in our my brief.  But if

24   you read his expert report, forget the brief, you will see

25   the testimony he purports or wishes to offer is just not

1    admissible or appropriate.

2              THE COURT:  Well, I will give you some

3    guidelines on that.  I'm certainly not going to allow any

4    expert to come in, attorney or otherwise, to come in to

5    testify about patent law expertise or anything along those

6    lines, instructions from the Court.  To the extent that the

7    instructions from the Court provide the jury with their

8    analysis, what the law says, that is where the jury gets

9    that information.  To the extent that a jury has to

10   determine what is objectively appropriate, I think that is

11   within their purview and not within any expert's purview.

12   That is my initial gut reaction to both of these witnesses.

13   And to the extent that their reports suggest to me that they

14   either impugn upon my prerogative or the jury's prerogative,

15   I will strike them both, possibly without an opinion, just

16   to tell you this is the reason why and they're gone without

17   a written opinion, counsel.

18             MR. PALS:  Your Honor, it's Mark Pals.

19             THE COURT:  But I just give you that warning

20   because I don't view *Seagate* as necessarily changing.  I

21   view it changing the law as far as application of it.  I'm

22   not certain it necessarily changes the law to require that

23   somehow you need an expert witness to tell somebody what was

24   objectively reasonable.  That's all.  Because if that is

25   the case, then "objective reasonableness" has some type of

1  standard some place and I'm not buying it.  If it doesn't

2  have it in other areas of the law, I don't understand why it

3  has it in the patent arena.

4            Mark, were you going to say something?  I

5  interrupted you.

6            MR. PALS:  No, Your Honor.  That's fine.  My

7  point is I think his testimony is admissible but we briefed

8  it.

9            THE COURT:  Yes, I understand.  Like I said, I

10  haven't read it to find out what type of spin is put on it

11  that makes it potentially admissible and I haven't read

12  through his report yet either so I have no idea what the

13  gentleman is being proffered to testify about.

14            MR. PALS:  Right.

15            THE COURT:  Okay.  But the rest of them are

16  technical experts?

17            MR. PALS:  Mr. Sullivan is a damages expert,

18  Your Honor.

19            THE COURT:  I'm sorry.  Okay.

20            MR. PALS:  And then the others are technical

21  experts.

22            THE COURT:  And, briefly, what is the basis of

23  getting rid of Mr. Sullivan?

24            MR. PALS:  It's aspects of his testimony, Your

25  Honor.  There are a number of issues with what he does,

1    including he adds onto a reasonable royalty in his analysis,

2    a litigation kicker, which is essentially a theory that he

3    has put in that says because this has been litigated, the

4    royalty should be bumped up.  He does that in a couple

5    different ways, one of which is a completely illogical

6    analysis that suggests that the weaker the patent is, the

7    lower the risk that it's enforceable in patent litigation

8    and, therefore, the higher the damages award ought to be

9    after a patent litigation succeeds.

10            He also has a theory where he says that the

11    license that would be agreed to in a hypothetical

12    negotiation isn't a license sufficient to permit Amgen to

13    do what it's doing.  It's actually an exclusive license,

14    which is more than the right Amgen would need to do what

15    it's doing.  So there are those bases as well as a number

16    of others.  There are some additional speculative arguments.

17    He is also seeking damages for sales or a percentage of

18    sales that their technical witness admits aren't infringing.

19            So there is a range of issues, Your Honor.  It's

20    not to exclude him entirely subject to an argument that

21    ARIAD just made that may actually subject him to that, but

22    it's generally to cut back and eliminate inappropriate

23    testimony.

24            THE COURT:  Okay.  So it's to narrow his

25    testimony.

1                    MR. PALS:  Yes, Your Honor.

2                    THE COURT:  All right.

3                    MR. GREENWALD:  Well, I think it's really just

4     to lower the ultimate number that he is going to propound.

5     There are differences as to how to interpret --

6                    THE COURT:  I think if it's narrowed, it would

7     possibly have that effect in any event.

8                    MR. GREENWALD:  I take Your Honor's point.

9                    THE COURT:  Yes.

10                   MR. GREENWALD:  But I would just say that these

11    are differences as to the interpretation of certain

12    Georgia-Pacific factors.  Just to take one:  The litigation

13    kick theory that Amgen has propounded is really nothing

14    other than Dr. Sullivan attempting to implement the clear

15    assumption of Georgia-Pacific that the hypothetical

16    negotiation has to represent what a party would do under the

17    artificial assumption that a patent is valid.  Therefore, if

18    he had comparable licenses that were negotiated under the

19    specter of litigation, he necessarily had to consider what

20    the licenses would have looked like had the parties been

21    negotiating under the requisite Georgia-Pacific assumptions.

22    So there are some sort of substantive legal disagreements

23    that are being played out in that brief, but it doesn't go

24    to whether or not Dr. Sullivan will testify.  That is

25    certainly true.

1          THE COURT:  Okay.  Well, it sounds to me that

2     part of the argument may actually go to weight but I don't

3     know that yet.

4          MR. PALS:  I think, Your Honor, it actually --

5     it's not a cross-examination, it's not a weight issue, it's

6     a gatekeeping issue with Dr. Sullivan.

7          THE COURT:  Oh, I recognize what you are saying,

8     Mark, about that, and I'm not saying that it's necessarily

9     true concerning Dr. Sullivan, but I have certainly found in

10    the past that a lot of the arguments that I have seen from

11    counsel when they file motions in limine on experts are

12    really more arguments that go to weight rather than to the

13    gatekeeping role that the Court is supposed to provide, but

14    I will look at that and see.

15         Some of these may be decisions that are brief,

16    like the one you received today, with just highlights of the

17    basis of my opinion, without anything written out.  It

18    depends on what we have, what time we have to get this done

19    and exactly what needs to be addressed and when.

20         MR. GREENWALD:  Your Honor, if I might make one

21    more observation about the Daubert motions?

22         THE COURT:  Yes.

23         MR. GREENWALD:  Although all of Amgen's four are

24    partial in the sense it will not result even if granted in

25    full, which we don't think any should be, will not result

1    in any fewer witnesses being called.  Our two Daubert

2    motions which we packaged as one brief would be complete

3    such that if granted, as we think they should be, they will

4    result in meaningful jury trial efficiencies in the limited

5    time that we have in November.

6              THE COURT:  Well, I recognize that you have only

7    got I think nine days to try this case, but I also view it

8    as that you only have one patent.

9              All right.  That's about as much direction I can

10   give you right now.  And to the extent that I'm able to give

11   you more prior to the time of your oral argument, I will

12   try to do so before the Markman hearing.  I will make an

13   effort to try to do that.  I'm not certain exactly how much

14   absorption I'm going to be able to get in between now and

15   the date of the Markman hearing on all of these points.

16             Does the Court's determination on any motion to

17   preclude an expert have a direct affect on the dispositive

18   motions?  Excuse me.

19             MR. GREENWALD:  I don't think so.

20             MR. PALS:  Yes.  I'm sorry.  Mr. Greenwald, I

21   didn't mean to step on you there.  I don't either.

22             THE COURT:  Okay.

23             MR. PALS:  We're thinking about that but I don't

24   think so, judge.

25             THE COURT:  That's what I wanted to know,

1  because then that would tell me which I should address

2  first, too.  But since you didn't bring it up, I didn't

3  think it did, and that was something else I wanted to --

4          MR. GREENWALD:  Your Honor, I guess if you were

5  to grant our motion for partial dismissal for lack of

6  subject matter jurisdiction, it's our view, although I'm not

7  sure Amgen shares this, that that would obviate the need for

8  95 percent of the testimony of Dr. Ciechanover, who we moved

9  to preclude.  And the reason for that will be clear I think

10  once you read the briefs, but that is the only sort of thing

11  major area of interplay that I see.

12          THE COURT:  Well --

13          MR. PALS:  Your Honor, it's Mark Pals again.

14  We disagree.  Dr. Ciechanover is directly relevant to the

15  asserted claims as well.

16          THE COURT:  Well, I think that is what he is

17  trying to say:  95 percent and five percent left for the

18  asserted claims.

19          MS. SHARP:  It's the same topic, the same

20  testimony, the same subject, just not limited in relevance

21  to unasserted or to asserted claims.  It's relevant to all

22  of them.

23          MR. GREENWALD:  Your Honor, actually, Dr.

24  Ciechanover has two areas of testimony.  One is he asserts,

25  he offers opinions concerning limitations of entirely

1    non-asserted claims.  His other opinion, what I call the

2    five percent opinion, is a redundant opinion that one

3    reference anticipates the claims of the patent.  That is

4    where the 95/5 comes from.

5             THE COURT:  Okay.  But what you are saying to

6    me is that I don't have to decide the Daubert motions

7    before deciding the motions for summary judgment, partial

8    or otherwise.

9             MR. GREENWALD:  Yes, and I guess I'm saying on

10   Ciechanover, what makes sense is for you first to resolve

11   the declaratory judgment motion because in our view at

12   least, obviously Amgen differs, but in our view at least

13   that will dictate your ruling on 95 percent of the

14   Ciechanover motion.

15            MR. PALS:  Your Honor, the answer to your

16   questions is you do not need to decide the Daubert motion

17   before the dispositive motion or the dispositive motion,

18   in our view, doesn't impact the Daubert motion of

19   Dr. Ciechanover either.

20            THE COURT:  All right.  Thank you, counsel.  Is

21   there anything else that needs to be discussed at this time?

22            That is an open-ended question I might regret

23   having made.

24            MR. PALS:  Despite it's open-endedness, nothing

25   from our end.

```
 1                   THE COURT:  All right, Mark.  Thank you.

 2                   How about from your side, from ARIAD's side,

 3      David?

 4                   MR. GREENWALD:  No, Your Honor.  We very much

 5      appreciate the opportunity you have given us today.

 6                   THE COURT:  Okay.  Take care.  And I will see

 7      you then on the 19th.

 8                   MR. PALS:  Thank you, Your Honor.

 9                   MS. SHARP:  Thank you, Your Honor.

10                   MS. MAGUIRE:  Thank you, Your Honor.

11                   (Telephone conference ends on 12:35 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```