IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
　　　　　　　　　　　　　　　　　　　 )
　　　Plaintiffs/Counterclaim Defendants, )
　　　　　　　　　　　　　　　　　　　 )
　　　v. )
　　　　　　　　　　　　　　　　　　　 )
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, *et. al.* )
　　　　　　　　　　　　　　　　　　　 )
　　　Defendants/Counterclaim Plaintiffs. )

Civil Action No. 06-259 (MPT)

Public Version
Confidential Material Omitted

**THE AMGEN ENTITIES' ANSWERING BRIEF IN OPPOSITION TO
ARIAD AND THE INSTITUTIONS' MOTION FOR PARTIAL DISMISSAL
FOR LACK OF SUBJECT MATTER JURISDICTION**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

HOGAN & HARTSON LLP
Siegmund Gutman
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312)861-2000

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen
USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: May 22, 2008

# TABLE OF CONTENTS

                                                                                                    **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.       SUMMARY OF ARGUMENT ............................................................................. 1

II.      NATURE AND STAGE OF PROCEEDINGS ..................................................... 2

III.     COUNTERSTATEMENT OF FACTS ................................................................. 3

IV.      ARGUMENT ....................................................................................................... 8

         A.      Amgen Is Entitled to a Final Judgment as to Whether the '516 Patent
                 as a Whole Is Unenforceable. ................................................................... 9

         B.      Amgen Is Entitled to a Final Judgment About the Validity of Each Claim
                 of the '516 as the Validity Arguments Turn On Most of the Same Issues. ........... 11

         C.      Efficiency, Finality and Fairness Require Resolution of All Claims
                 Involving the Same Issues and Facts That Are Present in This Litigation
                 and Will Be Present in Future Litigation Over Amgen's Pipeline Products. ........ 15

         D.      At the Very Least Amgen Should Be Awarded Its Fees in Having to
                 Defend Claims That ARIAD Strategically Dropped. ............................................ 16

V.       CONCLUSION .................................................................................................... 18

DB02:6839504.1                                                                                065028.1001

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Benitec Australia Ltd. v. Nucleonics, Inc.,*
    495 F.3d 1340 (Fed. Cir. 2007) ................................................................................ 14

*BIS Advanced Software Systems, Ltd. v. Red Bend Software, Inc.,*
    2006 WL 753246 (D. Mass. Mar. 22, 2006) ............................................................ 16

*Caraco Pharmaceutical Laboratories, Ltd. v. Forest Laboratories, Inc.,*
    -- F.3d --, 2008 WL 850330 (Fed. Cir. April 1, 2008) ........................................... 12

*Elena Pharma International Ltd. v. Abraxis Bioscience, Inc.,*
    Case No. 06-438 (D. Del. May 21, 2008) ............................................................... 14

*F.B. Leopold Co. v. Roberts Filter Manufacturing Co.,*
    1995 WL 776945 (W.D. Pa. Aug. 2, 1995) ............................................................ 11

*Fort James Corp. v. Solo Cup Co.,*
    412 F.3d 1340 (Fed. Cir. 2005) ............................................................................ 9, 10

*In re Columbia University Patent Litigation,*
    343 F. Supp. 2d 35 (D. Mass. 2004) ....................................................................... 16

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,*
    863 F.2d 867 (Fed. Cir. 1988) .................................................................................. 9

*L.E.A. Dynatech, Inc. v. Allina,*
    49 F.3d 1527 (Fed. Cir.1995) ............................................................................ 17, 18

*Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.,*
    528 F. Supp. 2d 654 (E.D. Mich. 2007) ...................................................... 11, 12, 13

*Marek v. Chesny,*
    473 U.S. 1 (1985) ................................................................................................... 17

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007) ............................................................................................. 13

*MedImmune, Inc. v. Genentech, Inc.,*
    535 F. Supp. 2d 1000 (C.D. Cal. 2008) ................................................................. 14

*Pickholtz v. Rainbow Technologies, Inc.,*
    284 F.3d 1365 (Fed. Cir. 2002) ............................................................................. 17

**Page(s)**

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995)................................................................... 14

*Sygenta Seeds, Inc. v. Monsanto Co.*,
    2004 WL 2790498 (D. Del. Nov. 22, 2004) ................................................ 12

**Statutes**

28 U.S.C. § 2201 ........................................................................................... 11

35 U.S.C. § 112 ............................................................................................. 15

37 C.F.R. § 1.530(k) ....................................................................................... 7

DB02:6839504.1

065028.1001

## I.    SUMMARY OF ARGUMENT

1.    Amgen brought this case to seek resolution, once and for all, of ARIAD's threats of litigation under the '516 patent.  For many years ARIAD has broadcast its contention that the 203 claims of its '516 patent cover wide swaths of the pharmaceutical industry's most promising drugs and drug targets, including express threats against Amgen and its activities.  There is no question, as this Court has found, that there is jurisdiction to hear this case.  The Court can and should address all of the disputes under the '516 patent, including the invalidity and unenforceability of all claims of the '516 patent, that could be asserted against Amgen now and/or again in the future.  ARIAD's motion for partial dismissal seeks to thwart this reasonable and justified objective and must be denied.

2.    Two years into this case, after the completion of fact and expert discovery, and barely two hours before filing *Markman* briefs and motions for summary judgment, ARIAD sought to deny Amgen the right to fully resolve the issues relating to the invalidity and unenforceability of the '516 patent by emailing Amgen a partial covenant not to sue.  But ARIAD's too-little-too-late partial covenant does not remove the controversy between ARIAD and Amgen with respect to the non-asserted claims of the '516 patent.  The partial covenant is narrowly tailored to encompass most (though not even all) future suits regarding the drugs Enbrel® and Kineret®, yet seeks to prevent Amgen from resolving the validity and enforceability of the '516 patent as a whole.  Amgen has a robust pipeline of products that will be at risk of further litigation if these issues, which have been part of this case since April 2006, are not resolved here and now.  The Federal Circuit has held in similar circumstances that covenants not to sue, and even judgments of noninfringement, are insufficient to divest a court of jurisdiction to consider pre-existing declaratory judgment claims for unenforceability and/or invalidity.  And in situations where the covenant (like the one now offered by ARIAD) addresses

only some but not all of the claims of a patent, courts have properly denied belated efforts like ARIAD's here to divest a court of jurisdiction to hear unenforceability and/or invalidity claims.

3.    The Declaratory Judgment Act empowers entities to escape uncertainty with respect to others' patent rights, and ARIAD cannot thwart the objectives of this Act through its insufficient and belated partial covenant. ARIAD cannot be permitted to engage parties like Amgen in litigation for years, force them to expend valuable time and resources, preview the invalidity arguments against its patent claims, and then, having assessed the uphill battle it faces to preserve its claims, drop and thus hold back the majority of its patent claims for future suits against the same party. ARIAD's motion flies in the face of the policy and purpose of the Declaratory Judgment Act and runs contrary to judicial economy, finality, and fairness to Amgen.

4.    Amgen is entitled under the law to seek a final judgment on whether the claims of the '516 patent are valid and enforceable. ARIAD's attempt to avoid a final and complete decision on these issues is an unjust attempt to keep the '516 patent hanging over Amgen's head so that ARIAD can drag Amgen (and/or others) back into court to re-litigate the same issues as here with respect to other claims of the patent. ARIAD's insufficient partial covenant does not divest this Court of jurisdiction, and ARIAD's motion for partial dismissal on the basis of this covenant must be denied.

## II.    NATURE AND STAGE OF PROCEEDINGS

The nature and stage of the proceedings are incorporated herein by reference from Amgen's April 25, 2008 Opening Brief in Support of its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 6,410,516. The parties filed their opening briefs on claim construction, dispositive motions, and *Daubert* motions on April 25, 2008. On this same date,

2

a few hours before filing the instant motion, ARIAD forwarded a partial covenant not to sue to Amgen. This is Amgen's answering brief in opposition to ARIAD's motion for partial dismissal.

## III.    COUNTERSTATEMENT OF FACTS

Over the last eight years, ARIAD has made clear its goal to assert the NF-κB patents, and in particular the '516 patent, against an incredibly broad range of drugs, even though the '516 patent does not describe or even mention any drug products. Indeed, from May 2000 onward, ARIAD actively sought to coerce Amgen to license its issued NF-κB "assay" patents[1] and its (at that time) pending '516 patent.[2] In a May 11, 2000 presentation, ARIAD alerted Amgen that ARIAD believed that drugs Amgen was selling or developing that involved IL-1 signaling (and/or inflammation generally) infringed ARIAD's patent rights.    (Ex. A, AM-AR0218942, AM-AR0218998-9001)    One diagram in that presentation titled "NF-κB Activation Pathway in Cells" identified a number of alleged "NF-κB pathway targets for drug discovery." (*Id.* at AM-AR0219001)  ARIAD followed the presentation with a letter to Amgen on May 15, 2000,

**REDACTED**

(Ex. B, ARI42522-23)  And in a May 4, 2001 email to Immunex, ARIAD asserted that its patents covered all "compounds capable of modulating the function of NF-κB." (Ex. C, AM-AR0219149)

---

1    The assay patents are U.S. Patent No. 5,804,374, which issued on September 8, 1998, and U.S. Patent No. 6,150,090, which issued on November 21, 2000.  Both patents relate to research and laboratory techniques (*i.e.* assays) involving NF-κB.

2    ARIAD's threats as of 2006 were described in detail in Amgen's June 28, 2006, Opposition to ARIAD's Motion to Dismiss for Lack of Subject Matter Jurisdiction.  (D.I. 21 at 3-11)



ARIAD's CEO confirmed in an interview with CNBC his view of the extreme breadth of the '516 patent and ARIAD's intention to seek "rent" for the patent:

> NF-(kappa)B cell-signaling pathway plays an important role in many different diseases . . . osteoporosis, [] as well as cancer and inflammation . . . companies need to pay rent for the use of the intellectual property. . . .

(Ex. E, May 4, 2006 CNBC Tr. at 2)  It is clear that ARIAD has intended and still intends to assert the '516 patent against a wide variety of companies and products.  It was thus not surprising that Judge Jordan concluded, "ARIAD feels it has rights and feels that the enforcement of those rights is important, and that it has the intention of enforcing those rights. . . .  [A] reasonably objective observer would perceive [ARIAD] to be threatening enforcement action."  (D.I. 68, Sept. 11, 2006 Motions Hearing at 82:2-7)

ARIAD's threats have not been limited to products that are already on the market.



**REDACTED**

Amgen's continuing pipeline of new drugs and indications includes 38 ongoing clinical trials and countless other drugs in other stages of development. (*See* http://wwwext.amgen.com/investors/pipe.jsp) ARIAD has indicated its belief that drugs designed to treat cancer and inflammatory diseases are allegedly enveloped by the '516 patent, and Amgen has four such drugs in Phase III trials, seven such drugs in Phase II trials, and five such drugs in Phase I trials. (*See id.*) Furthermore, prior to purchasing Immunex, Amgen was in the process of developing another drug candidate that was designed (like ENBREL) to bind TNF-α, and ARIAD sought and received discovery regarding this drug candidate during discovery. It is reasonable to expect that ARIAD will continue to attempt to enforce the '516 patent against Amgen as new products and activities continue to roll out. (*See* D.I. 68, Sept. 11, 2006 Motions Hearing at 82:2-7) Because this Court has found and confirmed it has jurisdiction, Amgen has the right to resolve once and for all the invalidity and unenforceability issues for the '516 patent that have been involved in the case from the start.

In fact, there are a variety of significant issues that would be common to this suit and any future suits that ARIAD might file against Amgen for infringement of the '516 patent. Many of Amgen's invalidity and unenforceability arguments center on the claim element "reducing NF-κB activity in cells" that is common to *every* claim of the '516 patent (except claim 203) and thus apply equally to the non-asserted as well as the asserted claims. Amgen contends, and has filed a summary judgment motion (D.I. 583) asserting that all claims (except 203) of the '516 patent are invalid as lacking an adequate written description because the specification does not provide any means for identifying and distinguishing infringing compounds and methods

5

065028.1001

from non-infringing ones, or provide sufficient teaching to discern those cell types in which the invention can be practiced. Perhaps even more significantly, Amgen's claim that the '516 patent is unenforceable for inequitable conduct centers on intentional affirmative misconduct by ARIAD during prosecution and reexamination, and in part focuses on the testimony of an ARIAD expert regarding non-asserted claim 1 of the '516 patent. If Amgen is successful in showing ARIAD's inequitable conduct regarding any of the non-asserted claims, Amgen is entitled to a judgment of unenforceability as to all claims of the entire patent. The principles of finality, judicial efficiency, and fairness dictate that these arguments should be dealt with now, with respect to all claims of the '516 patent.

ARIAD maintained a broad and ill-defined threat against Amgen for much of the two years this case has been pending. ARIAD first declined for over a year to identify whether it was asserting infringement counterclaims, and what those infringement counterclaims might entail. ARIAD then asserted infringement of twenty-two claims on April 12, 2007, a year after the case was filed (Ex. G, April 12, 2007 ARIAD 2nd Supp. Resp. to Amgen's First Set of Interrogatories at 9-13), but still "reserve[d] the right" to assert the other claims of the '516 patent (see, e.g., id. at 8-9). ARIAD did not, however, limit the discovery it sought to these twenty-two asserted claims. For example, throughout this litigation ARIAD has maintained interrogatories requesting Amgen's contentions about the invalidity of "any claim of the '516 PATENT." (Ex. O, ARIAD's First Set of Interrogatories to Amgen at 4) Also, ARIAD has served Interrogatories that seek discovery relating to "NF-κB assays" which ARIAD has defined as involving IκB. (See, e.g., Ex. P, ARIAD's Third Set of Interrogatories to Amgen at 3, 10) IκB, however, is only explicitly present in non-asserted claims of the '516 patent and is not included in any asserted claims.

6

ARIAD then moved to amend its Counterclaims to further broaden the case to assert the '374 and '090 "assay" patents on May 30, 2007. (*See* D.I. 291, May 30, 2007 Motion to File Amended Counterclaims) ARIAD sought, and was able to obtain, discovery beyond the two accused products (ENBREL and KINERET) to include discovery relating more broadly to NF-κB and compounds that might impact NF-κB. (*See, e.g.*, D.I. 366) For example, ARIAD

**REDACTED**

Eventually, after subjecting Amgen to expensive and time consuming discovery going well beyond the claims or accused product now in the case, ARIAD withdrew the assay patents and sought to cut down by 2/3 the number of claims in the case. (Ex. I, Jan. 31, 2008, Stipulation Regarding the '374 and '090 Patents)

While this litigation has been moving forward, ARIAD has also been engaged in a reexamination of the '516 patent before the PTO. All claims asserted by ARIAD in this litigation currently stand rejected in the reexamination, and ARIAD has even gone so far as to *cancel* at the PTO many of the claims it previously asserted in this case. On November 9, 2006 ARIAD cancelled eight claims of the '516 patent in response to a rejection by the PTO. (Ex. J, Nov. 9, 2006, Amendment and Response at 6) Then on October 22, 2007 ARIAD cancelled 96 more claims in response to another rejection. (Ex. K, October 22, 2007 Amendment and Response at 5) Currently 150 claims of the 203 claims of the '516 patent stand rejected or cancelled. Although the reexamination proceeds as if these claims were cancelled, under the rules of the PTO, the cancellation of claims is not effective until the reexamination certificate is issued. 37 C.F.R. § 1.530(k). This process can take several additional years.

7

These proposed cancelled claims include thirteen claims that ARIAD had specifically asserted in this case. After their cancellation, ARIAD sent Amgen a letter on November 2, 2007 stating that ARIAD was dropping these claims. (Ex. L, Nov. 2, 2007 ARIAD Letter to Amgen) ARIAD sent another letter on January 18, 2008 dropping two more claims from the case and reducing the number of asserted claims to seven. (Ex. M, January 18, 2008 ARIAD Letter to Amgen) Finally, on the eve of expert reports, ARIAD dropped its Counterclaims insofar as they related to KINERET. (*Id.*)

Literally hours before filing this motion, ARIAD offered a partial and inadequate covenant not to sue to Amgen to attempt to remove this Court's jurisdiction to hear parts of Amgen's declaratory judgment claims. (Ex. N, April 25, 2008 Partial Covenant) ARIAD's partial covenant is woefully insufficient to extinguish the dispute between the parties regarding the validity and enforceability of the non-asserted claims of the '516 patent. Yet ARIAD, through this motion, seeks to prevent the Court from relieving Amgen from the burden of ARIAD's threats, and seeks to preserve the ability to assert very similar claims against Amgen in the future irrespective of the outcome of this case. Indeed, ARIAD's partial covenant would even allow ARIAD to reinstate claims it has cancelled at the PTO, and dropped from this case, to re-assert them in a new case against Amgen. The prospect for future piecemeal litigation of different claims raising many of the same issues threatens to drain the resources of Amgen and the Court for years. Many of Amgen's arguments in this case pertain to all claims of the '516 patent, and they should be dealt with on a patent-wide basis once and for all.

## IV.    ARGUMENT

ARIAD's strategically narrow partial covenant falls well short of divesting the Court of jurisdiction to address the invalidity and unenforceabilty issues that Amgen is entitled to resolve

8

through this case. Granting ARIAD's motion centered on this covenant would create an unfair outcome for Amgen and an inefficient result for the Court. ARIAD's covenant leaves the door wide open for these same parties to be back in court litigating many of the same issues the moment a new Amgen product or activity is deemed by ARIAD to be worthy of suit in the future. And the partial covenant fails to give finality to Amgen, even leaving open the possibilities that Amgen will have to raise identical invalidity and unenforceability arguments based on identical facts, or that ARIAD could revive claims it has cancelled at the PTO and assert them again. The Court must reject ARIAD's inadequate covenant and avoid having to do this all over again in the future.

A. **Amgen Is Entitled to a Final Judgment as to Whether the '516 Patent as a Whole Is Unenforceable.**

ARIAD's Motion for Partial Dismissal should be denied because it is impermissible under controlling Federal Circuit law to limit this Court's ability to determine whether every claim of the '516 patent is unenforceable. ARIAD's motion asks the Court to "dismiss Amgen's challenges to the . . . enforceability" of certain claims of the '516 patent. (ARIAD Opening Br. at 1) But "[w]hen a court has finally determined that inequitable conduct occurred in relation to one or more claims during prosecution of the patent application, the entire patent is rendered unenforceable." *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988) (*en banc* in pertinent part). ARIAD cannot shield itself from the consequences of its inequitable conduct in procuring the '516 patent, and subsequent inequitable conduct in pursuing the reexamination, merely by unilaterally promising a limited covenant not to sue on claims of its choosing.

The Federal Circuit has confirmed that a covenant not to sue does not strip a court of the jurisdiction to hear unenforceability arguments, even when there has also been a final judgment

9

of noninfringement. *See Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005) (refusing to dismiss unenforceability counterclaims when the patentee provided a covenant not to sue following a judgment of noninfringement). Moreover, "a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of noninfringement." *Id.*

In this case it is particularly appropriate that Amgen be allowed to pursue its unenforceability arguments with respect to all claims because the inequitable conduct committed by ARIAD during prosecution of the '516 patent pertains with equal or greater force to some of the unasserted claims. For example, claim 67 (which is dependent on asserted claim 6) is specifically directed at IκB, and one of Amgen's inequitable conduct arguments relates to the fact that ARIAD knowingly misled the PTO into believing that Figure 43 in the '516 patent contained the correct sequence for IκB when it in fact contained a partial sequence for a chicken protein. Similarly, another of Amgen's unenforceability arguments centers on some statements by ARIAD's expert Dr. Kadesch that specifically refer to unasserted claim 1 of the '516 patent, although they also pertain to the validity of the patent claims more generally. If these inequitable conduct arguments that are focused on non-asserted claims are successful, the patent as a whole is unenforceable.

As a result, Amgen is entitled under the law to argue its unenforceability claims with respect to all claims of the '516 patent. The mere fact that ARIAD has granted Amgen a partial covenant not to sue covering some (but not all) of the '516 patent's claims does not divest the Court of jurisdiction to hear unenforceability arguments with respect to all of the claims. *See id.* Thus, ARIAD's partial covenant is grossly insufficient and its effort to strip Amgen's unenforceability claims must be denied.

**B.      Amgen Is Entitled to a Final Judgment About the Validity of Each Claim of the '516 as the Validity Arguments Turn On Most of the Same Issues.**

ARIAD's motion also fails because it would prevent Amgen from seeking a final determination regarding the validity of ARIAD's '516 patent claims.   It flies in the face of fairness and judicial economy to allow ARIAD in this case to maneuver during litigation to unilaterally offer a partial covenant not to sue on the non-asserted claims of a patent and divest the court of subject matter jurisdiction to determine invalidity of all the claims.   In fact, the invalidity of every claim of the '516 patent turns on much if not all of the same evidence, issues, case law and equitable considerations.   The parties and the Court would best be served by a ruling on whether every claim is invalid irrespective of ARIAD's covenant not to sue.

Courts frequently consider declaratory judgment claims of invalidity and unenforceability after a covenant not to sue or final judgment has been granted disposing of some or all infringement issues in a case.   In *Lear Automotive Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654 (E.D. Mich. 2007), which presented very similar facts to this case, patentee Lear initially asserted all claims of its patent against alleged infringer JCI.   *Id.* at 668-69.   Lear then filed two covenants with the court, covenanting not to sue JCI for infringement of claim 1 of its patent (while continuing to assert the other claims), and argued that these covenants divested the court of jurisdiction to hear JCI's Counterclaim for invalidity of claim 1.   *Id.* The *Lear* court determined "that it retain[ed] the jurisdiction to reach this issue, and that to do so would be an appropriate exercise of the Court's discretionary authority under the Declaratory Judgment Act, 28 U.S.C. § 2201." *Id.*   The *Lear* court's holding that "a covenant not to sue or a voluntary dismissal encompassing less than all of a patent's claims does not divest the court of jurisdiction over a counterclaim of patent invalidity" is supported by other district court decisions. *See, e.g.,* *F.B. Leopold Co. v. Roberts Filter Manufacturing Co.*, 1995 WL 776945 at *1-3 (W.D. Pa.

11

Aug. 2, 1995); *Sygenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 WL 2790498, at *1, n.1 (D. Del. Nov. 22, 2004) ("[a]lthough the Federal Circuit, in [*Super Sack*] concluded that a promise by a patentee not to assert patents against an infringer did divest the trial court of jurisdiction over the declaratory judgment because there was no longer a controversy, in that case the patentee withdrew the entire patent from controversy, not just discrete claims. The court finds the distinction substantial.")

In this case, as in *Lear*, after Amgen filed a declaratory judgment action in April 2006, ARIAD did not limit (or even identify) the asserted claims for much of the litigation. In responding to the complaint, ARIAD did not limit the claims that it alleged Amgen to infringe. Finally, a year later, ARIAD filed counterclaims that did not identify the particular claims of the '516 patent it was asserting. It was not until April 12, 2007, a year after the case was filed, that ARIAD first identified twenty-two claims that it contended were infringed by activities relating to KINERET and ENBREL. (*See* Ex. G at 9-13) Even after identifying these claims, ARIAD reserved the right to assert additional claims (*id.* at 8-9) and continued discovery as though all claims of the '516 patent were at issue (which they were under Amgen's declaratory judgment complaint). Finally, ARIAD did not offer a covenant not to sue until the eleventh hour. As the *Lear* court held, a partial covenant not to sue late in the game does not allow a patentee to strategically manipulate the trial schedule and avoid invalidity claims while costing the accused infringer considerable time and expense to prepare for litigation of invalidity of all claims.

In contrast to ARIAD's assertions, courts do not always divest themselves of jurisdiction merely because a covenant not to sue has been granted. For example, in the very recent Federal Circuit case of *Caraco Pharmaceutical Laboratories, Ltd. v. Forest Laboratories, Inc.*, -- F.3d --, 2008 WL 850330 at *14 (Fed. Cir. April 1, 2008), the court pointed out that although the

12

patentee had granted a covenant not to sue for all the claims of the patent, that covenant not to sue did "not eliminate the controversy between the parties," but merely sought to delay that controversy to another day to the detriment of Caraco. *Id.* at *13 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007)) ("Under these circumstances, even after a covenant not to sue has been granted, the dispute as to infringement or invalidity ... constitutes 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'").

In effect, ARIAD seeks to give itself multiple bites at the apple to assert other claims of its 203-claim patent against other products (whether they are currently in existence or have yet to be commercialized) in a piecemeal fashion.[3]  For example, even if Amgen invalidates all seven asserted claims in this action, ARIAD can seek to reintroduce previously asserted and cancelled claims in the reexamination and then assert one of those claims, which may be nearly identical to those ruled invalid, against future Amgen activities.  There are countless scenarios in which the parties might find themselves re-litigating essentially the same invalidity issues all over again. This would be unfair to Amgen and an inefficient use of judicial resources.  The law does not warrant this unfair and inefficient result.  As the Supreme Court has noted, the statutory language of the declaratory judgment act "has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune*, 127 S. Ct. at 776; *see also Lear*, 528 F. Supp. 2d at 674 ("Lear has not suggested a basis for the Court to decline to exercise its discretionary power to decide this counterclaim.  To the contrary,

---

[3]  ARIAD cannot complain of prejudice from determining all claims together as it did not provide its covenant not to sue until the 11th hour, after fact and expert discovery.  It had a full and fair opportunity to defend Amgen's claims.

it is difficult to view Lear's tactics in this case as anything other than an eleventh-hour attempt to pull the jurisdictional rug out from under a counterclaim that it could not defend against on the merits"); *Elena Pharma International Ltd. v. Abraxis Bioscience, Inc.*, Case No. 06-438 (D. Del. May 21, 2008) (attached at Exhibit Q) (exercising declaratory judgment jurisdiction over invalidity and unenforceability counterclaims because withdrawal of infringement claims by patentee did not obviate the dispute between the parties). The Court should deal with these issues now.

The main case ARIAD cites in its brief, *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008), is distinct because the patentee in that case only asserted a subset of claims of the patent-in-suit at the outset and the partial covenant not to sue at issue in that case covered all claims other than those that had been at issue all along. *Id.* at 1007 (distinguishing *Lear* because "the *Lear Auto.* patentee had initially asserted all its claims, rather than a subset thereof, and thus would not be permitted to limit the invalidity challenge only [to] the claims asserted after its covenant not to sue"). Likewise, *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) is distinguishable because the offer not to sue at issue encompassed all claims of the asserted patent, not a subset of them. *Id.* at 1058. Thus, in both of these cases the accused infringer was not threatened with infringement and then given a partial covenant not to sue that did not clear up those threats. Finally, *Benitec Australia Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) is again distinguishable because following the outcome of a Supreme Court decision the parties agreed (and the patentee granted a covenant) that there could be no infringement based on the defendant's activities under § 271(e)(1), while here there is jurisdiction to hear ARIAD's infringement claims and there will be a judgment as to whether ENBREL infringes the asserted claims. Given that an infringement case is moving

forward, and the purpose of the Declaratory Judgment Act is to remove the threat of litigation and allow Amgen to move forward on its business plans with greater certainty, ARIAD's cases do not undermine the Court's continued jurisdiction to consider the validity of the patent as a whole.

There is no question that, as Judge Jordan determined, there is jurisdiction to hear this case -- even ARIAD does not dispute that the Court has jurisdiction to consider whether ENBREL infringes the remaining asserted claims of the '516 patent and whether those claims are unenforceable and/or invalid. It follows that this Court should consider Amgen's invalidity arguments with respect to the now-non-asserted claims of the '516 patent and especially invalidity under 35 U.S.C. § 112 that turns on a claim element common to all but one of the 203 claims of the '516 patent. It would be a strange result if the Court had jurisdiction to consider the identical argument for some but not all of the claims of the '516 patent. And the law of declaratory judgment jurisdiction is simply not as rigid as ARIAD suggests and does not compel this result. Thus, the Court has jurisdiction and it should consider the invalidity of all claims of the '516 patent.

> C.    **Efficiency, Finality and Fairness Require Resolution of All Claims Involving the Same Issues and Facts That Are Present in This Litigation and Will Be Present in Future Litigation Over Amgen's Pipeline Products.**

ARIAD's insufficient covenant leaves Amgen at risk of lawsuits in the near future for infringement of the '516 patent, as Amgen is currently developing at least 16 drugs that, like ENBREL and KINERET, ARIAD has suggested in one way or another might infringe its patent. As discussed above, future suits over these products will involve similar or identical issues as are present in this suit with respect to invalidity and unenforceability because many of Amgen's

arguments center on the claim element "reducing NF-κB activity in cells" that is common to all but one of the 203 claims of the '516 patent.

Courts may exercise jurisdiction to hear declaratory judgment claims that relate to future products if those claims relate to an issue that is present in the instant case. *See, e.g., BIS Advanced Software Systems, Ltd. v. Red Bend Software, Inc.*, No. 04-11690, 2006 WL 753246 at *1 (D. Mass. Mar. 22, 2006) (stating that "[b]ecause defendant regularly updates its products, however, it is still vulnerable to an infringement suit," and permitting invalidity declaratory judgment claims to go forward after the patentee's infringement claims were voluntarily dismissed with prejudice). Courts have also required covenants to extend not only to commercially-available products, but also to non-commercialized research or clinical activities relating to "pipeline products" as well. *See, e.g. In re Columbia University Patent Litigation*, 343 F. Supp. 2d 35, 41-42 (D. Mass. 2004) (discussing broadening of covenant in light of argument that "ongoing research programs" were not covered by the initial covenant offered by the patentee). Amgen's extensive clinical activities are not protected in any way by ARIAD's partial covenant, despite the imminence of many of the products to FDA approval and launch. Resolving once and for all the issues that are common to this suit and future suits over Amgen's pipeline products promotes judicial efficiency, finality, and fairness.

### D.    At the Very Least Amgen Should Be Awarded Its Fees in Having to Defend Claims That ARIAD Strategically Dropped.

If ARIAD is permitted in any way to hinder Amgen's ability to seek final resolution with respect to all claims of the '516 patent, then at the very least Amgen should be awarded attorney fees or other compensation under the Court's inherent authority for having to defend the '516 claims that ARIAD has first asserted and then strategically cancelled before the PTO in the reexamination. In this case, ARIAD broadly asserted the claims of the '516 patent (as well as

the assay patents) only to drop the vast majority of these claims after discovery was over. ARIAD further cancelled these claims in reexamination, essentially stating that even though they forced Amgen into an expensive discovery battle over those claims, they currently did not wish to litigate those claims in this case. ARIAD also sought discovery on Amgen's KINERET product and on products beyond Amgen's KINERET and ENBREL products and then, at the expert report deadline, dropped KINERET from the case. And now, hours before filing a motion for dismissal, and hours before Amgen's motion for summary judgment of invalidity was filed, but long after fact and expert discovery was conducted, ARIAD has attempted to manipulate these proceedings and divest the court of authority to determine whether the claims of the '516 patent are invalid. There are 203 claims to the '516 patent. Preparing invalidity arguments based on all of those claims, and preparing non-infringement arguments based on KINERET, and providing discovery based on KINERET as well as the assay patents, has been an exceedingly time-consuming and expensive process.

"The courts always have had inherent authority to assess [attorney] fees against parties who act in bad faith, vexatiously, wantonly, or for oppressive reasons, and the assessment of fees against parties whose unreasonable conduct has violated the rules of litigation falls comfortably into the courts' authority to administer remedy and redress for disregard or infraction of those rules." *Marek v. Chesny*, 473 U.S. 1, 36-37 (1985) (internal quotes and citations omitted); *see also Pickholtz v. Rainbow Technologies, Inc.*, 284 F.3d 1365, 1378 (Fed. Cir. 2002) ("the inherent power can be used to shift attorney fees when there has been: (1) willful disobedience of a court order and (2) conduct that is in bad faith, vexatious, wanton, or for oppressive reasons") (internal quotes and citations omitted). Where a party strategically "manipulate[s] the timing of court proceedings to suit its own interests" and this manipulation causes an opposing

party to "incur[] substantial expense," then attorney fees to compensate for the extra expenses incurred as a result of the manipulation are proper. *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530-31 (Fed. Cir.1995). For example in *L.E.A.*, the patentee Meter-Treater vigorously pursued claims until the eve of trial and then, when the strength of its position appeared to change, "did an about-face" and attempted to slow the proceedings and caused L.E.A. to "incur substantial expenses in preparation for trial." *Id.* The Federal Circuit found that under these facts "[t]he district court did not abuse its discretion in awarding fees for Meter Treater's misconduct." *Id.* ARIAD's attempts to manipulate these proceedings should not be permitted without fair compensation to Amgen. *See id.* at 1530-31.

## V. CONCLUSION

For the foregoing reasons, Amgen respectfully requests that the Court deny ARIAD's motion for partial dismissal.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800
(213) 680-8400

Siegmund Gutman
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
(310) 785-4707

Dated: May 22, 2008

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen,
Immunex Corporation, Amgen USA Inc., Amgen Manufactu
Limited, and Immunex Rhode Island Corporation*

19

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on May 22, 2008, I caused to be electronically filed a true and correct copy of Declaration of Melanie K. Sharp in Support of The Amgen Entities' Answering Brief In Opposition To ARIAD and the Institutions' Motion For Partial Dismissal For Lack Of Subject Matter Jurisdiction with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on May 22, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL (by agreement of counsel):**

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

        /s/ Melanie K. Sharp
Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6681
msharp@ycst.com