**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,

Plaintiffs,

v.

ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,

Defendants.

ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,

Counterclaim Plaintiffs,

v.

AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,

Counterclaim Defendants.

C.A. No. 06-259-MPT

**REDACTED**
**PUBLIC VERSION**

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS-COUNTERCLAIM-PLAINTIFFS' MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION**

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Defendants and Counterclaim Plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

## Table of Contents

*Page*

Table of Authorities ........ ii

Introduction ........ 1

Argument ........ 3

A. Amgen's Request for Declaratory Relief Concerning Claims ARIAD Is Not Asserting — and Has Covenanted Not to Assert — Is Moot. ........ 3

B. The Covenant Properly Limits Amgen's Invalidity and Enforceability Challenges to the Seven Asserted Claims. ........ 8

C. Amgen's Request for Attorney's Fees Should Be Denied. ........ 13

Conclusion ........ 15

## Table of Authorities

Page(s)

**Cases**

*Amana Refrigeration, Inc. v. Quadlux, Inc.*,
172 F.3d 852 (Fed. Cir. 1999)....................4, 5

*BIS Advanced Software Sys., Ltd. v. Red Bend Software*,
No. 04-11690, 2006 WL 753246 (D. Mass. Mar. 22, 2006)....................6

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*,
129 F.3d 1247 (Fed. Cir. 1997)....................4

*Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*,
No. 2007-1404, 2008 WL 850330 (Fed. Cir. April 1, 2008)....................11, 12

*Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*,
Case No. 06-438 (D. Del. May 21, 2008)....................12

*F.B. Leopold Co. v. Roberts Filter Mfg'g Co.*,
No. 92-2427, 1995 WL 776945 (W.D. Pa. Aug. 2, 1995)....................8

*In re Columbia University Patent Litig.*,
343 F. Supp. 2d 35 (D. Mass. 2004)....................6

*In re Omeprazole Patent Litig.*,
483 F.3d 1364 (Fed. Cir. 2007)....................11

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
863 F.2d 867 (Fed. Cir. 1988)....................8

*Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*,
528 F. Supp. 2d 654 (E.D. Mich. 2007)....................8, 9, 10

*MedImmune, Inc. v. Genentech, Inc.*,
127 S. Ct. 764 (2007)....................5

*MedImmune, Inc. v. Genentech, Inc.*,
535 F. Supp. 2d 1000 (C.D. Cal. 2008)....................5, 10

*Metabolite Labs. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354 (Fed. Cir. 2004)....................8

*Purdue Pharma L.P. v. Faulding Inc.*,
230 F.3d 1320 (Fed. Cir. 2000)....................11

*Spectronics Corp. v. H.B. Fuller Co.*,
940 F.2d 631 (Fed. Cir. 1991) .......... 4

*Syngenta Seeds, Inc. v. Monsanto Co.*,
No. 02-1331-SLR, 2004 WL 2790498 (D. Del. Nov. 22, 2004) .......... 8

*Vision Biosys. (USA) Trading Inc. v. Ventana Med. Sys., Inc.*,
No. Civ. 03-10391-GAO, 2004 WL 2387284 (D. Mass. Sept. 30, 2004) .......... 5

**Statutes**

28 U.S.C. § 2201 .......... 2

35 U.S.C. § 112 .......... 11

**Other Authorities**

John M. Skenyon, *et al.*, *Patent Damages Law and Practice* (2007) .......... 4

Defendants-counterclaim-plaintiffs ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research (collectively, "ARIAD") respectfully submit this reply memorandum in support of their motion for partial dismissal for lack of subject matter jurisdiction.[1]

**Introduction**

The April 25, 2008 covenant not to sue confirmed ARIAD's commitments: (i) that it would assert only a small subset of the 203 claims of U.S. Patent No. 6,410, 516 (the "'516 Patent") against Amgen's product, Enbrel; and (ii) that it would not assert any of the claims of the '516 Patent against Amgen's product, Kineret. Both of those undertakings had been communicated to — and understood by — Amgen well before April 25, as evidenced by, among other things, Amgen's failure, in the joint April 8 claim construction chart (D.I. 571), to request the Court to construe the numerous limitations that appear uniquely in the 196 unasserted claims.

In its opposition to ARIAD's motion for partial dismissal, Amgen nevertheless suggests that the covenant arrived as a complete surprise, and gratuitously claims that ARIAD is engaged in a nefarious plan to "manipulate these proceedings and divest the court of authority to determine whether the claims of the '516 patent are invalid." (Amgen Opp'n at 17.) Despite the length and inflammatory nature of Amgen's submission, Amgen's arguments against partial dismissal boil down to two:

---

1 ARIAD's memorandum in support of its motion for partial dismissal is referred to herein as "ARIAD Br." Amgen's memorandum in opposition to ARIAD's motion is referred to herein as "Amgen Opp'n". The Declaration of David Greenwald dated April 25,2008, is referred to herein as "Greenwald Decl." The Second Supplemental Declaration of David Greenwald dated June 6, 2008, is referred to herein as "Greenwald Second Supp. Decl."

(i) that ARIAD's covenant is inadequate because it leaves open the prospect of future litigation with respect to Enbrel/Kineret and many of Amgen's "pipeline products" (*i.e.*, products that Amgen is currently developing); and (ii) that it would be unfair to deny Amgen an opportunity to challenge the validity and enforceability of the non-asserted claims because ARIAD's covenant arrived after ARIAD had asserted all 203 claims of the '516 Patent and Amgen had already expended significant resources preparing to invalidate those claims.

As demonstrated below and in ARIAD's opening papers, Amgen's two arguments are unavailing, as is its additional argument that it should be awarded attorney's fees for supposedly having had to defend itself against claims that ARIAD is alleged to have dropped for strategic reasons. The simple fact is that whatever jurisdictional basis this Court may have previously possessed upon which to adjudicate the validity of the 196 unasserted claims of the 203-claim '516 Patent has vanished with the extension of ARIAD's April 25 covenant not to sue. The case law is clear that the jurisdiction this Court possesses under 28 U.S.C. § 2201 to declare claims of a patent invalid does not exist under the circumstances present here: as this Court recognized in its earlier, September 11, 2006 ruling, whatever "live" controversy exists here concerns only the two drugs that were the subject of ARIAD's covenant. (*See* Greenwald Decl. Ex. 3 at 78:23-25 (noting that, but for Enbrel's and Kineret's inclusion on a supposed ARIAD litigation list, "I think I would be ruling differently than I am today. In fact, I feel sure I would have.").)

## Argument

### A. Amgen's Request for Declaratory Relief Concerning Claims ARIAD Is Not Asserting – and Has Covenanted Not to Assert – Is Moot.

Amgen argues that ARIAD's covenant is "strategically narrow" and "woefully insufficient" because it "preserves [ARIAD's] ability to assert very similar claims against Amgen in the future irrespective of the outcome of the case." (Amgen Opp'n at 8.) According to Amgen, there is a risk of further litigation regarding Enbrel and Kineret (*id.*), and a similar – perhaps greater – risk concerning Amgen's "pipeline products" (*id.* at 15-16). Amgen's first argument is contrary to the facts, while the second is both unsupported and irrelevant as a matter of law.

Amgen claims that the covenant will "allow ARIAD to reinstate claims it has cancelled at the PTO, and dropped from this case, to re-assert them in a new case against Amgen" involving Kineret and Enbrel. (Amgen Opp'n at 8.) But that is precisely what the covenant says ARIAD *cannot* do. With respect to Kineret, the covenant covers all 203 claims of the '516 Patent and "any claim in any reissued or reexamined version of the '516 patent" (Greenwald Decl. Ex. 25 ¶ 1), and thus extinguishes the possibility of litigation concerning that product. Similarly, the covenant extinguishes all future litigation concerning Enbrel, subject to two narrow exceptions. The first exception carves out the seven claims that are at issue in this litigation and "any claim that may emerge from the reexamination of the '516 patent that is substantially identical to those [seven] claims." (*Id.* ¶ 2.) This exception preserves ARIAD's ability to pursue its current infringement claims and, if one or more of the seven claims emerge from reexamination in "substantially identical" form, allows ARIAD to collect damages

for the entire period of Amgen's infringement.[2] The second exception carves out claims that may emerge from the reexamination, but only insofar as such claims are "in a form that is *not* substantially identical to a claim of the '516 patent that issued on June 25, 2002." (Greenwald Decl. Ex. 25 ¶ 2 (emphasis added).) While this latter carve-out permits future litigation between ARIAD and Amgen regarding Enbrel, such litigation would concern only *new* claims that may emerge from the reexamination, that is, claims whose form is presently unknown and, thus, whose validity Amgen could not presently challenge in this lawsuit anyway, even in the absence of the covenant. Under such circumstances, Federal Circuit precedent is clear that no "controversy" with respect to the unasserted claims exists for purposes of Declaratory Judgment Act jurisdiction. *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) ("Here, as in *Spectronics* [*Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991)], the future existence of a reissue patent is wholly speculative and, therefore, cannot create a present controversy."). In sum, with the exception of the controversy involving the seven asserted claims, which will be resolved through the November trial, the covenant extinguishes all live controversies between the parties with respect to Enbrel and Kineret.

It is true that the covenant does not cover hypothetical products that are currently being developed by Amgen, but that is immaterial. As ARIAD explained in its

---

[2] "With respect to claims in a reissued or reexamined patent that remain unchanged after issuance of the reissue patent or reexamination certificate, or which were added or amended during the proceeding, [35 U.S.C.] § 252 permits the legal effect of such claims to reach back to the date of the original patent issued if those claims are [substantially] identical to claims in the original patent. Otherwise, enforcement of the nonidentical reissue or reexamination claims is precluded for the period before the reissue patent or certificate of reexamination issued." John M. Skenyon, *et al.*, *Patent Damages Law and Practice* § 5:45 (2007); *see also Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).

opening brief and as the Supreme Court recently made clear, for Declaratory Judgment Act jurisdiction to exist, the "dispute [to be adjudicated]. . . must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007). Because "pipeline products" are, by definition, hypothetical, "a number of Federal Circuit cases [have] ma[d]e clear that a covenant not to sue need not cover hypothetical, future products; the patentee need only agree not to sue the alleged infringer based on past or present products." *Vision Biosys. (USA) Trading Inc. v. Ventana Med. Sys., Inc.*, No. Civ. 03-10391-GAO, 2004 WL 2387284, at *11 (D. Mass. Sept. 30, 2004).[3] That the only live controversy giving rise to Declaratory Judgment Act jurisdiction here related to Enbrel and Kineret — and the absence of any covenant not to sue relating to those drugs[4] — were critical underpinnings of this Court's earlier ruling on ARIAD's prior motion to dismiss. (*See* Greenwald Decl. Ex. 3 at 78:23-25 (noting that, but for Enbrel's and Kineret's inclusion on an alleged list of litigation targets, "I think I would be ruling differently than I am today. In fact, I feel sure I would have.").) And, as Amgen noted at the inception of this lawsuit, ARIAD's supposed threats related only to Enbrel and Kineret, and not to any

[3] *See also Amana Refrigeration*, 172 F.3d 852, 855 (Fed. Cir. 1999) (rejecting Declaratory Judgment Act jurisdiction over products "in the pipeline" because "an actual controversy cannot be based on a fear of litigation over future products"); *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1000, 1005 (C.D. Cal. 2008) ("a covenant need not cover potentially infringing activities in the future as long as it covers the past and present activities that constitute 'actual controversy' between the parties.") (citation omitted).

[4] *See* 2/28/2008 Amgen Opp'n to Mot. to Dismiss (D.I. 21) at 2 (stating that ARIAD should "agree that Amgen's products do not infringe the '516 patent . . . [and] grant Amgen a covenant not to sue"); *id.* at 19 ("ARIAD must either affirmatively covenant that it will not sue the Amgen Entities for infringement of the '516 patent or accept that this Court has subject matter jurisdiction.").

other Amgen or Immunex products. *See* 6/28/2006 Amgen Opp'n to Mot. to Dismiss (D.I. 21) at 3 ("Amgen markets two human therapeutics that ARIAD contends infringe the '516 patent: Enbrel (etanercept) and Kineret (anakinra)."); *id.* at 4 ("That ENBREL and KINERET were targets for litigation was underscored by repeated references to litigation."); *id.* at 5 ("ENBREL and KINERET were specifically targeted").

Amgen cites two cases as support for the proposition that "[c]ourts may exercise jurisdiction to hear declaratory judgment claims that relate to future products if those claims relate to an issue that is present in the instant case." (Amgen Opp'n at 16.) That proposition is obviously at odds with the Federal Circuit precedent summarized above, but the apparent inconsistency vanishes once one appreciates what those cases actually held. In *BIS Advanced Software Systems, Ltd. v. Red Bend Software*, No. 04-11690, 2006 WL 753246 (D. Mass. Mar. 22, 2006), the court denied the plaintiff's motion for voluntary dismissal because it found that the covenant the plaintiff had offered did not cover the defendant's customers, whom the plaintiff had threatened with infringement suits, and because the defendant, a software manufacturer, "regularly updates its products." *Id.* at *1. Here, however, ARIAD's covenant covers the entire Kineret and Enbrel supply chain, including patients,[5] and Amgen's pipeline products are in no sense "updates" of Kineret or Enbrel. As for the second case cited by Amgen, *In re Columbia University Patent Litigation*, 343 F. Supp. 2d 35, 41-42 (D. Mass. 2004), in relevant part, it

---

[5] With respect to both products, the covenant covers not only the entire group of Amgen plaintiffs, but also "anyone who manufactures, markets, imports, sells or uses [Kineret or Enbrel] sold or supplied by Amgen." (Greenwald Decl. Ex. 25, 4/25/2008 Covenant ¶¶ 1, 2.) This language is broad enough to cover the entire supply chain for Enbrel and Kineret that has a nexus to Amgen, as well as any patient who receives treatment with those products.

stands for the uncontroversial proposition that, to be effective, a covenant must cover current infringing activities that are at issue in the litigation.

Finally, until now, Amgen has never even suggested that its unidentified, "pipeline" products were part of this litigation. As ARIAD pointed out in its opening brief, Amgen steadfastly refused to produce any discovery covering products other than Enbrel and Kineret, the only two products that were the subject of its complaint. (*See* ARIAD Br. at 7-8 & nn.5-7.) Again, Enbrel and Kineret were the only products alleged to give rise to this controversy (*see id.* at 8 n.7),[6] and the only products that the Court found to give rise to jurisdiction pursuant to the Declaratory Judgment Act. (*See* Greenwald Decl. Ex. 3 at 78:23-25 (noting that, but for Enbrel's and Kineret's inclusion on an alleged list of litigation targets "I think I would be ruling differently than I am today. In fact, I feel sure I would have.").) Thus, Amgen's attempts to find deficiencies in ARIAD's covenant on the basis that the covenant does not cover pipeline products should be rejected.

---

[6] Citing to a May 2000 letter that it received from ARIAD, Amgen claims that "ARIAD's threats have not been limited to products that are already on the market." (Amgen Opp'n at 4.) The statements in questions do not amount to "threats."

**REDACTED**

(Greenwald Second Supp. Decl. Ex. 1, Gandhi Dep. at 48:21-49:19.)

                    **REDACTED**                    (*Id.* at 49:16-19.)
Moreover, the statements in question were contained in a letter inviting Amgen and a number of other industry players to consider licensing ARIAD's *assay* patents, not the '516 Patent.

**B. The Covenant Properly Limits Amgen's Invalidity and Enforceability Challenges to the Seven Asserted Claims.**[7]

Abandoning its former representations to the Court that "a properly-tailored 'covenant not to sue deprives a court of declaratory judgment jurisdiction'" (*see* Amgen Opp'n to Mot. for Certification (D.I. 89) at 15 (quoting *Metabolite Labs. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1369 (Fed. Cir. 2004)), Amgen now claims that ARIAD's covenant does not affect this Court's jurisdiction in the slightest because it offers Amgen "too-little-too-late." (Amgen Opp'n at 1, 11-15.) Amgen principally relies upon three cases in which the patent holder — not an infringer accused only in subsequent counterclaims — *initiated* infringement litigation and, in that holder-initiated infringement litigation, asserted *all* claims of its patent against the defendant.[8] The patent holder thereby placed the validity of the "entire patent" at issue, but then strategically withdrew some claims at the eleventh hour in an attempt to "pull the jurisdictional rug out from under [the defendant's invalidity] counterclaim[s] that it could not defend against on the merits." *Lear Auto.*, 528 F. Supp 2d at 674. Those cases, however, have no application here.

At *no* time did *ARIAD* assert all 203 claims of the '516 Patent against Amgen. As ARIAD noted in its opening brief, after the Court denied ARIAD's motion

---

[7] Amgen is correct that Federal Circuit precedent provides that a finding of inequitable conduct with respect to one claim renders the entire patent unenforceable. *E.g.*, *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988). For that reason, ARIAD's motion for partial dismissal did not attempt to limit Amgen's ability to press its inequitable conduct charges.

[8] *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 528 F. Supp. 2d 654 (E.D. Mich. 2007); *F.B. Leopold Co. v. Roberts Filter Mfg'g Co.*, No. 92-2427, 1995 WL 776945 (W.D. Pa. Aug. 2, 1995); *Syngenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 WL 2790498 (D. Del. Nov. 22, 2004).

to dismiss this declaratory judgment action instigated by *Amgen* concerning the validity and enforceability of all 203 claims of the '516 Patent, ARIAD committed to "seek[] to determine . . . whether any activities related to the Enbrel and/or Kineret products infringe the '516 Patent." (Answer (D.I. 72) ¶ 23.) Approximately six months later, after completing its investigation, ARIAD asserted only 22 claims, but then, within weeks after the cancellation of 15 in the ongoing reexamination, withdrew those 15. (ARIAD Br. at 4-5.)[9] Similarly, there was nothing "strategic" about Amgen's abandonment of its claims for infringement of Kineret or its timing. As Amgen has known since the onset of expert discovery and explored further at the recent deposition of Dr. Joel Pomerantz (*see* Greenwald Second Supp. Decl. Ex. 2, Pomerantz Dep. at 99:10-102:16), it was only after December 2007 experiments ARIAD commissioned to assess whether Kineret reduced IL-1 induced NF-kB activity results failed (for unknown reasons) to produce replicatable positive results, that ARIAD, before the January deadline for the inauguration of expert discovery, informed Amgen of its withdrawal of the Kineret-related claims on January 18, 2008, thereby further conserving the parties' and Court's resources. Because the seven currently-asserted claims have been the only claims at issue in this litigation throughout expert discovery, the principle of *Lear Automotive* — that eleventh hour, strategic, "bait-and-switch" claim withdrawals by the party initiating litigation may not

---

[9] Amgen states that "ARIAD maintained a broad and ill-defined threat against Amgen for much of the two years this case has been pending." (Amgen Opp'n at 6; *id.* at 16 ("[i]n this case, ARIAD broadly asserted the claims of the '516 patent.").) Those statements are incorrect, as it is clear from the evidentiary record. Amgen's citation to ARIAD's boilerplate objection that it "reserve[d] the right to assert other claims" if additional evidence of infringement came to light (Amgen Opp'n at 6) is unavailing because ARIAD did not, in fact, enlarge the scope of its infringement allegations at any point during this litigation. To the contrary, ARIAD continued to cut back on its infringement claims in a responsible effort to streamline this case and simplify the Court's and the jury's respective tasks.

be enough to divest a court of jurisdiction – simply does not apply. As a district court in California recently held,

> In *Lear Auto.*, the patentee tendered a partial covenant not to sue after the defendant brought a motion for summary judgment of noninfringement and the motion had been fully briefed by the parties. [528 F. Supp. 2d] at 656-57. The court refused to give the covenant jurisdictional effect. *Id.* Yet the narrow holding of *Lear Auto.* itself was based solely on the questionable exception it fashioned from the *Super Sack* rule: the *Lear Auto.* patentee had *initially* asserted *all* its claims, rather than a subset thereof, and thus would not be permitted to limit the invalidity challenge only the claims asserted after its covenant not to sue. Here, however, Genentech initially asserted only a subset of the claims of the '415 Patent and thus would not fall under the exception in *Lear Auto.* Even if this Court chose to follow *Lear Auto.*, it could not grant relief on that basis. Regardless of the policy arguments involved, MedImmune has provided the Court with no means by which to disregard Genentech's partial covenant.

*MedImmune*, 535 F. Supp. 2d at 1007 (emphases in the original).

*Lear Automotive* is further distinguishable because ARIAD did not extend its covenant in an attempt to avoid a decision on the merits. Indeed, contrary to Amgen's conclusory assertions that it has "prepar[ed] invalidity arguments based on all of those [unasserted] claims" (Amgen Opp'n at 17), the undeniable facts are that (i) Amgen has not requested the Court to construe numerous limitations that appear in the unasserted claims alone;[10] and (ii) beyond making general arguments that the '516

---

[10] Among the limitations present in the unasserted claims that the jury would need to interpret without assistance from the Court and testimony from the parties' respective experts are the following: (i) "modifying effects of external influences" (claim 7); (ii) "reducing, in eukaryotic cells, the level of expression of genes" (claim 9); (iii) "reducing the effects of bacterial infection on mammalian cells" (claim 10); (iv) "reducing the effects of viral infection on mammalian cells" (claim 11); (v) "to reduce the effects of bacterial lipopolysaccharide-induced gene expression in the cells" (claim 13); (vi) "reducing bacterial lipopolysaccharide-induced expression of Tumor Necrosis Factor-α in mammalian cells" (claim 15); (vii) "to reduce bacterial lipopolysaccharide-mediated stimulation of the immune cells" (claim 16); (viii) "reducing bacterial-induced NF-kB signaling in cells" (claim 17); (ix) "degradation of an IkB protein" (claim 23); (x) "recognition sites on genes which are transcriptionally regulated by NF-kB" (claim 25); (xi) "decreasing the level of NF-kB not bound in an NF-kB:IkB complex" (claim 31); (xii)

Patent in its entirety fails to comply with the written description requirement of 35 U.S.C. § 112 (*see generally* Greenwald Decl. Ex. 14, 1/18/2008 Wall Report; Greenwald Decl. Ex. 12, 1/15/2008 Ciechanover Report; Amgen's Mem. in Supp. of Summary J. on Written Description (D.I. 584)), Amgen has not mounted a meaningful challenge to the validity of any unasserted claim.[11] Indeed, as noted, Amgen has not even sought to have those claims construed, an omission that will render it impossible for Amgen to present any of its validity challenges (*i.e.*, anticipation and written description) to the jury. *See In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1371 (Fed. Cir. 2007) (noting that an anticipation challenge requires a comparison of the construed claim to the art alleged to be anticipating); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (noting that compliance with the written description requirement of 35 U.S.C. § 112 focuses on the ability of a person of ordinary skill in the art "immediately [to] discern the limitation at issue in the claims").

Amgen's reliance on the Federal Circuit's recent decision in *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, No. 2007-1404, 2008 WL 850330 (Fed. Cir. April 1, 2008), is similarly unpersuasive. In that case, the patent holder held two patents that blocked, under the Hatch-Waxman Act, the plaintiff from manufacturing a generic version of the patent holder's drug. Even though the defendant granted the plaintiff a covenant for *one*

"inhibiting the passage of NF-kB into the nucleus" (claim 32); (xiii) "inhibiting modification of an I-kB protein, which modification otherwise reduces IkB binding to NF-kB" (claim 33); (xiv) "inhibiting degradation of an IkB protein" (claim 34); (xv) "inhibiting dissociation of NF-kB:IkB complexes" (claim 35).

[11] Notably, Amgen has not responded to ARIAD's argument that — even ignoring Amgen's failure to propose constructions for and supply invalidity arguments addressing the 196 unasserted claims — it would be logistically impossible to ask the jury to consider validity challenges to all 203. (*See* ARIAD Br. at 8-9.)

of the two patents, the Federal Circuit found that the covenant did not eliminate the controversy. After noting that "[i]f a threat of suit was the only action . . . that effectively excluded [the plaintiff] from the marketplace, the covenant not to sue would moot [the] case and divest the district court of Article III jurisdiction," the Federal Circuit held that because the FDA could not approve the plaintiff's abbreviated new drug application (ANDA) until the plaintiff obtained a "judgment of noninfringement of *both* . . . patents, . . . terminating th[e] action without a judgment with respect to infringement on the '941 patent could delay FDA approval of [the plaintiff's] ANDA and thereby exclude [it] from the drug market. . . ." *Id.* at *13. That holding has no application here, in which ARIAD's understandable inability to offer a covenant not to sue on drugs of whose identity it is ignorant does not in any way place before Amgen a regulatory hurdle to FDA approval that Amgen cannot overcome in the absence of a ruling on any unasserted claim of the '516 Patent.

Similarly, Amgen's citation to *Elan Pharma Int'l Ltd. v. Abraxis Bioscience, Inc.*, Case No. 06-438 (D. Del. May 21, 2008) (which was attached as Exhibit Q to the Declaration of Melanie Sharp in support of Amgen's opposition to ARIAD's motion), is unpersuasive. *Elan Pharma* did not involve a covenant not to sue, but a simple withdrawal of the plaintiff's claims for infringement under circumstances where the court found that "nothing . . . prevent[ed] the plaintiff from appealing the court's claim construction Order and reinstating its infringement contentions . . . should the Federal Circuit conclude that the court's claim construction was erroneous." *Id.* at 1 n.1. Here, by contrast, there is no possibility that ARIAD could revive any of the infringement claims that were expressly abandoned during litigation and again relinquished in the April covenant.

In sum, Amgen's argument that ARIAD's covenant represents a calculated litigation maneuver designed to give ARIAD "multiple bites at the apple to assert other claims of its 203-claim against other products . . . in a piecemeal fashion" (Amgen Opp'n 13) falls wide of the mark. To the contrary, the covenant is only the latest example in a series of sensible, responsible efforts by ARIAD to narrow and focus the issues to be presented to the jury and to this Court. (*See* ARIAD Br. at 4-5.) Instigators of declaratory judgment actions like Amgen ought to welcome such efforts from their adversaries,[12] not penalize them by converting those streamlining efforts into arguments why now-extinguished Declaratory Judgment Act jurisdiction subsists.

**C. Amgen's Request for Attorney's Fees Should Be Denied.**

If ARIAD's motion is granted, Amgen requests that the Court award it attorney's fees, claiming that ARIAD has "attempted to manipulate these proceedings" by "broadly assert[ing] the claims of the '516 patent (as well as the assay patents) only to drop the vast majority of these claims after discovery was over." (Amgen Opp'n at 16-

---

[12] It is noteworthy that Amgen – not ARIAD – was the first to suggest that ARIAD grant it a covenant not to sue. Thus, on February 14, 2008, counsel for Amgen wrote to counsel for ARIAD proposing that ARIAD execute a covenant to "*streamline our declaratory judgment claims* (and thus the remainder of expert discovery, trial, etc.)." (Greenwald Second Supp. Decl. Ex. 3, 2/14/2008 Sernel email (emphasis added).)

**REDACTED**

(Greenwald Second Supp. Decl. Ex. 4, Amgen-proposed Draft Covenant ¶ 1); and

**REDACTED**

(*id.* ¶ 2).

(Greenwald Second Supp. Decl. Ex. 5, 3/18/2008 ARIAD-proposed Draft Stipulation.)

**REDACTED**

(Greenwald Decl. Ex. 25, 4/25/2008 Covenant.)

17.) Amgen argues that an award for attorney's fees is appropriate here because courts have authority to assess such fees "against parties who act in bad faith, vexatiously, wantonly, or for oppressive reasons." (*Id.* at 17 (quotations omitted).)

The only conclusion that can be drawn from the record, however, is that ARIAD has acted responsibly and in good faith throughout this litigation: ARIAD did not commence this lawsuit, Amgen did; ARIAD moved for a stay pending reexamination, arguing that it would be economical and efficient (both for the parties and the Court) to await the result of reexamination, but Amgen opposed that stay motion; ARIAD did not assert all 203 claims of the '516 Patent, but instead asserted only a subset of those claims; ARIAD repeatedly cut back its infringement allegations in an effort to streamline its case, as developments in the reexamination and scientific findings – not litigation tactics – so compelled; and ARIAD has now provided Amgen with an unambiguous covenant not to sue covering all but seven claims of the '516 Patent.

It is true that ARIAD filed a complaint asserting infringement of its assay patents, after the Court granted it leave to do so. But soon after taking the depositions of certain key Amgen witnesses, who testified that Amgen's infringement of the assay patents ceased in 2004, ARIAD promptly approached Amgen and negotiated a stipulation of dismissal. Among other things, that stipulation, which the Court approved, expressly provides that:

> The parties agree to bear their own legal fees and costs arising out of the prosecution and defense of ARIAD's claims that are hereby being withdrawn; [and]
>
> Neither party will rely on this Stipulation, or the dismissal of ARIAD's claims under the '374 or '090 Patents, as evidence in support of any claim, motion, demand or other request for any relief in this case, except for the purpose of enforcing this Stipulation.

(Stipulation of Dismissal (D.I. 550).) Thus, in addition to being legally deficient, Amgen's attempt to use the now-withdrawn assay patents complaint to obtain an attorney's fees award — one that will itself prompt wasteful, time-consuming proceedings to determine those portions of Amgen's fees traceable solely to defense of the dismissed assay patent claims — contravenes that stipulation.

**Conclusion**

ARIAD respectfully requests that the Court grant ARIAD and the Institutions partial dismissal with respect to Amgen's challenges to the validity and enforceability of the claims of the '516 Patent other than claims 6, 18, 70-72 and 183-84.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

*Of Counsel*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008