IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>    Plaintiffs,<br><br>v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>    Defendants. | C.A. No. 06-259-MPT |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>    Counterclaim-Defendants. | **REDACTED PUBLIC VERSION** |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS-COUNTERCLAIM-PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT ON INEQUITABLE CONDUCT**

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Defendants and Counterclaim Plaintiffs
ARIAD Pharmaceuticals, Inc., Massachusetts Institute of
Technology, the President and Fellows of Harvard College
and the Whitehead Institute for Biomedical Research*

{00222048;v1}

## Table of Contents

*Page*

Table of Authorities ................................................................................................................. ii

I. Introduction ..............................................................................................................1

II. Amgen's "Counterstatement of Facts" Is Not Relevant to This Motion. ................................................................................................................3

III. Under *Young*, There Is No Material Omission When All Material Information Is Submitted to the Examiner in Time to Be Considered. ....................6

    A. ARIAD's Submissions Were Timely. ..............................................................6

    B. Even If ARIAD's Alleged Misconduct Were Deemed an "Affirmative Misrepresentation," ARIAD Should Be Deemed to Have Cured the Alleged Misconduct. ........................................................11

IV. Conclusion. ............................................................................................................12

# Table of Authorities

*Page(s)*

**Cases**

*ARIAD Pharms., Inc. v. Eli Lilly & Co.*,
  529 F. Supp. 2d 106 (D. Mass. 2007) ................................................................................ 4

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
  480 F.3d 1129 (Fed Cir. 2007) ......................................................................................... 10

*Ferring B.V. v. Barr Labs., Inc.*,
  437 F.3d 1181 (Fed. Cir. 2006) .......................................................................................... 3

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) .......................................................................................... 6

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007) .......................................................................................... 3

*Rohm & Haas Co. v. Crystal Chem. Co.*,
  722 F.2d 1556 (Fed. Cir. 1983) ............................................................................ 2, 9, 10, 11

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991) ....................................................................................... 6, 8

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
  522 F.3d 1279 (Fed. Cir. 2008) .......................................................................................... 6

*Young v. Lumenis, Inc.*,
  492 F.3d 1336 (Fed. Cir. 2007) .................................................................................. *passim*

Defendants-counterclaim-plaintiffs (collectively, "ARIAD") respectfully submit this reply memorandum of law in support of their motion for partial summary judgment on two of the three theories of inequitable conduct asserted by plaintiffs-counterclaim-defendants (collectively, "Amgen").[1]

## I. Introduction

Despite Amgen's misleading arguments in opposition, this motion presents a single, pure legal issue: whether a patent holder accused by an infringer of withholding information from the PTO during an ongoing reexamination proceeding can cure the inequitable conduct of which it is accused if it provides *all* the allegedly withheld information to the PTO; or whether, instead, that information must be accompanied by (what would, here, be a false) admission of wrongdoing by the patent holder. Merely to state the latter proposition, even disregarding the controlling decision of *Young v. Lumenis*, 492 F.3d 1336 (Fed. Cir. 2007), is to demonstrate why it cannot be right. To accept Amgen's argument — its sole argument in opposition to ARIAD's motion — would logically imply that "cure" — a well-established and accepted method for mooting allegations of inequitable conduct in ongoing PTO proceedings — is available only to those who have actually committed inequitable conduct, not to those who, like ARIAD, have been falsely accused.

---

[1] ARIAD's memorandum in support of its motion for partial summary judgment on inequitable conduct is referred to herein as "ARIAD Br." Amgen's memorandum in opposition to ARIAD's motion is referred to herein as "Amgen Opp'n". The Declaration of David Greenwald dated April 25, 2008, is referred to herein as "Greenwald Decl." The Supplemental Declaration of David Greenwald dated May 22, 2008, is referred to herein as "Greenwald Supp. Decl." And the Second Supplemental Declaration of David Greenwald dated June 6, 2008, is referred to herein as "Greenwald Second Supp. Decl."

One searches Amgen's opposition brief in vain for any suggestion that the patent examiner conducting the ongoing reexamination of the '516 Patent now lacks *any* information or reference that Amgen alleges was improperly withheld during that reexamination. Nor does Amgen dispute that that information has been submitted in ample time to be considered by the examiner. With respect to ARIAD's most recent IDS submissions, Amgen does not assert — as it did, for example, in support of its motion for leave to amend in this case to add its allegations of inequitable conduct related to Dr. Kadesch's testimony in an unrelated case — that ARIAD "buried" the information it submitted to the examiner. (1/10/2008 Amgen Reply in Support of Mot. for Leave to Amend (D.I. 538) at 5.) Nor could it because ARIAD's recent IDS submissions put the "mooting" materials front and center. (*See* Greenwald Decl. Exs. 18, 19, 24 & 25.)

Amgen's attempt to divert attention away from these undisputed facts through an exhaustive "counterstatement of facts" is unavailing because ARIAD will permit the Court to accept those facts (stripped of their lawyers' rhetoric) for purposes of the resolution of this motion. The only issue to be decided by the present motion — whether ARIAD has effected a cure or expiation of any alleged misconduct — is purely legal. And on that single, dispositive issue (to the extent Amgen addresses it at all) Amgen's arguments fall flat. Rather than acknowledge the relevance of the Federal Circuit's on-all-fours decision in *Young v. Lumenis*, Amgen instead advocates for a rigid application of *Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556 (Fed. Cir. 1983), a case that has no application here.

In short, ARIAD has produced to the reexamination Examiner all the information Amgen claims was withheld, has given the Examiner all of Amgen's arguments about why Amgen believes that information was improperly withheld and

has, therefore, cured any omission. Accordingly, Amgen's claim of inequitable conduct with respect to Dr. Verma and Dr. Kadesch should be dismissed.

## II. Amgen's "Counterstatement of Facts" Is Not Relevant to This Motion.

Amgen devotes nearly half of its opposition brief to a lengthy recitation of a "counterstatement of facts," which purports to establish that ARIAD breached its duty of candor and good faith before the PTO. Among other things, Amgen accuses ARIAD of "selectively focus[ing] on its inequitable conduct during the reexamination." (Amgen Opp'n at 4.) According to Amgen, ARIAD engaged in a "pattern of blatant disregard of the duty of candor and good faith" that "started years before in the original prosecution" (*id.* at 2, 4-5) and extended "through prosecution, including reexamination" (*id.* at 2). But, even as alleged by Amgen, this so-called "pattern" consists of, at most, three discrete instances of alleged misconduct by ARIAD during the 10 years that the '516 Patent has been under examination and reexamination by the PTO — two of which Amgen claims occurred during the reexamination proceedings.[2]

---

[2] The facts as alleged here thus stand in stark contrast to the cases cited by Amgen that support a finding of inequitable conduct based upon a pattern of misconduct. *See Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007) (involving numerous instances of alleged misconduct involving 15 different patents, including: (1) the submission of two affidavits that failed to disclose declarant's personal ties to inventor and financial interest in the patents; (2) the intentional misstatement of effective priority date intended to avoid prior art; (3) the failure to disclose relevant pending litigation; (4) the failure to identify relevant prior art; and (5) the incorrect payment of small entity maintenance fees although licensing agreement required inventor to pay large entity maintenance fees); *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181 (Fed. Cir. 2006) (involving "multiple omissions over a long period of time" of "highly material" information including (1) the submission of four declarations from "scientists with significant associations with the assignee itself" after the examiners "specifically requested 'non-inventor' affidavits"; (2) the failure to disclose the affiants' associations; and (3) allegations that the inventors had manipulated the contents of the scientists' declarations by being intimately involved in the drafting process).

{00222048;v1}                                                  3

The first alleged breach — and the only one alleged to have occurred during the 7 year initial prosecution of the application that led to the '516 Patent — relates to a drawing (Figure 43) that was submitted in connection with the original prosecution of the '516 Patent. As clearly noted in ARIAD's opening brief (ARIAD Br. at 4 n.3), this motion does *not* address and has nothing to do with Amgen's inequitable conduct allegations related to Figure 43. That is not because Amgen's arguments with respect to Figure 43 have any merit (indeed, identical arguments were rejected by the court in *ARIAD Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 529 F. Supp. 2d 106, 135 (D. Mass. 2007)). Rather, it is because this motion addresses the narrow issue of the circumstances under which alleged misconduct can be "expiated" or cured. As Amgen itself notes, misconduct during an examination that has already closed cannot be cured (Amgen Opp'n at 2 n.2), and ARIAD has never contended otherwise. Since Amgen's theory of inequitable conduct relating to Figure 43 has nothing to do with this motion, ARIAD cannot be accused fairly of "selectively focusing" on alleged inequitable conduct during the reexamination.

The only other two instances of inequitable conduct identified by Amgen in its "counterstatement of facts" relate to the submissions of Dr. Verma and Dr. Kadesch during the reexamination, which are, of course, the subject of the present motion. However, contrary to Amgen's suggestion, the facts relating to the submissions of Dr. Verma and Dr. Kadesch (*i.e.*, whether Dr. Verma's statements in a declaration submitted to the PTO were inconsistent with prior articles authored by him, and

whether Dr. Kadesch "recanted" his prior testimony in the Lilly case) need not be addressed by the Court at this time.[3] As ARIAD made clear in its opening brief,

> *solely for purposes of this motion, ARIAD assumes that Amgen's positions have merit*; that is, that: (1) Dr. Kadesch's allegedly inconsistent testimony in the *Roche* case was at one point improperly withheld from the PTO; (2) Dr. Verma's allegedly inconsistent articles were at one point improperly withheld from the PTO; and (3) these materials relating to Dr. Verma and Dr. Kadesch were "material" under the legal standards applicable to inequitable conduct analysis.[4]

(ARIAD Br. at 10 (emphasis added).) Critically, Amgen does not dispute that ARIAD has now provided to the PTO *all* of the information it allegedly withheld from the examiner. Nor does Amgen dispute that this information has been submitted to the examiner on multiple occasions. Amgen's observation that "[b]ecause of the factual nature of inequitable conduct . . . the Federal Circuit has cautioned against the granting

---

[3] Amgen states that "[t]o date, ARIAD has never provided its own detailed explanation of the alleged misconduct involving the Verma publications and has never argued that the claims of the '516 Patent are patentable despite its misconduct." (Amgen Opp'n at 11.) Quite to the contrary, the expert reports submitted by ARIAD in this action provide an exhaustive explanation of Dr. Verma's submissions to the PTO. We do not repeat those explanations here, since they are not germane to the present motion. Nor is the fact that the curriculum vitae of Dr. Verma was allegedly truncated (*id.* at 10), or that his articles were listed by "first author" (*id.* at 11), relevant: it is undisputed that ARIAD has now submitted materials to the PTO that specifically draw the examiner's attention to Dr. Verma's allegedly inconsistent articles. Likewise, there is no need to respond to Amgen's unsupported allegation that the deposition testimony of Dr. Kadesch was improperly designated as "highly confidential." That testimony, as well as Amgen's allegations that the designation of Dr. Kadesch's testimony as "highly confidential" was improper, is presently before the examiner.

[4] Amgen's statements that "ARIAD committed inequitable conduct during the prosecution and reexamination of . . . the '516 Patent," and that ARIAD "does not even challenge this" (Amgen Opp'n at 1) are specious. While it is true that ARIAD conceded the materiality of alleged omissions related to the submissions of Dr. Verma and Dr. Kadesch for purposes of this motion, nowhere did ARIAD concede that those omissions were made with intent. The issue of intent — which is, of course, a necessary element of a finding of inequitable conduct — is not implicated, and therefore is not addressed, in the present motion.

of summary judgment" (Amgen Opp'n at 19) thus has no application where, as here, the "facts" are not in dispute.[5]

### III. Under *Young*, There Is No Material Omission When All Material Information Is Submitted to the Examiner in Time to Be Considered.

Saddled with the fact that all the information that ARIAD allegedly withheld from the examiner has now been submitted on several occasions, Amgen resorts to an attack on the timing and the sufficiency of the disclosure form submitted to the PTO. However, none of Amgen's arguments counters the controlling force of the recent Federal Circuit decision in *Young*.

#### A. ARIAD's Submissions Were Timely.

Amgen argues that no cure is possible here because "[a]lthough ARIAD could have disclosed the fact of its misleading statements at any time, it concealed them until it was caught red-handed" (Amgen Opp'n at 21), and, further, that ARIAD "should . . . be prevented from curing because [it] did not and, indeed, cannot voluntarily cure its misconduct." (*Id.* at 22.) Of course, what Amgen calls being "caught red-handed" means simply that ARIAD, when it first learned of Amgen's theories of inequitable conduct, was amazed that such theories could be articulated, and considered them so featherweight that it simply sent all the allegedly omitted materials to the

---

[5] And, in any event, the Federal Circuit has affirmed and/or granted summary judgment on inequitable conduct in numerous instances. *See, e.g., Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363 (Fed. Cir. 2008); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565 (Fed. Cir. 1991).

examiner, so that the examiner could see for himself (without any reexamination counsel argument) how far-fetched those theories were.[6]

But even putting aside Amgen's over-the-top rhetoric, its arguments completely ignore the holding of *Young*. As noted in ARIAD's opening memorandum of law (ARIAD Br. at 11-14), *Young* involved facts strikingly similar to those here: the defendant Lumenis moved for summary judgment on inequitable conduct based upon Young's alleged failure to disclose during a reexamination proceeding certain expert deposition testimony from the Markman hearing in the parallel patent infringement litigation. *Id.*, 492 F.3d at 1343. Only after Lumenis filed a summary judgment motion did Young submit the expert deposition testimony to the PTO. The district court found that, because Young's submission came "only after" Lumenis filed its motion, the attempted cure was therefore not on Young's "own initiative," summary judgment was appropriate. *Id.* at 1343-45.

The Federal Circuit rejected those arguments, which are *precisely* the arguments Amgen advances here. *Young* reversed the district court, finding that "there was no 'failure to disclose material information' to the PTO because the alleged material information was disclosed to the PTO *at a time when it could be considered by the examiner.*" *Id.* at 1348 (emphasis added). The Court further reasoned that "[t]he examiner was therefore fully apprised of the [allegedly withheld] testimony and was able to fully consider it and any potential effects it may have on the patentability of the claims before issuing his second Office Action." *Id.* at 1349. The Court found irrelevant that the

---

[6] Thus, ARIAD has now submitted Dr. Verma's allegedly inconsistent articles to the PTO *three* times (Greenwald Decl. Exs. 5, 8, 18, 19 & 25) and has submitted Dr. Kadesch's allegedly inconsistent testimony *twice*. (Greenwald Decl. Exs. 10, 18, 19 & 24.)

alleged material information was disclosed in a reexamination proceeding "after the examiner had issued its first Office Action," because it "was disclosed before the examiner's final Office Action." *Id.*

The Court also found irrelevant that the disclosure of the information initially "was raised in a parallel district court action," and that it was submitted to the PTO "only after" it was raised, explaining that "[t]he essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it." *Id.* at 1349; *see also Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("When a reference was before the examiner, whether through the examiner's search or the applicant's disclosure, it cannot be deemed to have been withheld from the examiner."). As in *Young*, ARIAD similarly has provided to the PTO all the materials that Amgen alleges were withheld (*see* ARIAD Br. at 4-9) — and has done so "at a time when [they] could be considered by the examiner." *Young*, 492 F.3d at 1348.

Amgen does not even mention *Young* until page 24 of its brief. (*See* Amgen Opp'n at 24.) There, Amgen attempts to distinguish *Young* on the ground that the inequitable conduct alleged in *Young* involved "mere attorney arguments," not "affirmative misrepresentations." (*Id.*) Thus, Amgen argues, "the Court held that there was no intent to deceive and no inequitable conduct." (*Id.* (emphasis omitted).) Of course, this strained reading of *Young* ignores the remainder of the inequitable conduct holding in *Young*.

In fact, the inequitable conduct allegations in *Young* had two discrete factual bases. The first — not relevant here but seized upon by Amgen — involved statements made by attorneys for Young in an affidavit submitted to the PTO. *Id.* at

1347-48.[7] The second instance of alleged misconduct — relevant to this motion yet ignored by Amgen — involved the failure of Young to submit to the PTO expert deposition testimony from the ongoing parallel litigation case. *Id.* With respect to this issue, the Court held that there could be no failure to disclose material information, and therefore no inequitable conduct, because Young submitted the testimony "in time for the examiner to consider it." *Id.* at 1349. Similarly, here, Dr. Kadesch's allegedly recanting testimony, as well as Dr. Verma's allegedly contradictory articles, have been submitted in time for the examiner to consider them. Under *Young*, no finding of inequitable conduct may result from a failure to disclose material information when that information is disclosed in time for the examiner to consider it. *Id.*

Amgen relies principally on *Rohm & Haas*, and notes that *Young* distinguished *Rohm & Haas* on the ground that *Rohm & Haas* involved an allegedly false affidavit. (Amgen Opp'n at 24.) As a result, Amgen attempts to shoehorn Dr. Verma's declaration into this distinction in *Young* by belatedly recharacterizing Dr. Verma's declaration as "false" and therefore an "affirmative misrepresentation" to which *Young* would not apply. (*Id.*)

The disingenuousness of this characterization is self-evident. From the outset, the focus of Amgen's allegations relating to Dr. Verma has been a *failure* to disclose information.

**REDACTED**

---

[7] With respect to these statements, the Court held that "attorney argument" did not constitute "affirmative misrepresentations." *Id.* at 1349.

**REDACTED**

(Greenwald Decl. Ex. 13, 1/18/2008 Mossinghoff Report ¶ 86 (emphasis added).)

**REDACTED**

(Greenwald Decl. Ex. 23, 4/4/2008 Mossinghoff Dep. at 143:11-15.)[8] The alleged omissions of ARIAD fall squarely under *Young*, not *Rohm & Haas*, because the latter case would apply only to an affirmative misrepresentation, which has not properly been alleged. Nor do any of the other cases cited by Amgen cast doubt on *Young*'s applicability. In *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129 (Fed Cir. 2007), the applicant submitted declarations in an attempt to cure earlier non-disclosure of material information. *Id.* at 1133. The court found that those declarations, which purported to cure prior omissions, themselves contained material misstatements. *Id.* at 1137. Here, the IDSs submitted by ARIAD are not false or misleading in any way.[9]

---

[8] **REDACTED** (Greenwald Second Supp. Decl. Ex. 6, 3/27/2008 Wall Dep. 113:7-117:5.)

[9] Even if Amgen were correct that the first two IDSs submitted with respect to Dr. Verma's articles "buried" material information, that argument certainly cannot be made — and Amgen does not make it — with respect to the third IDS, which submitted only

### B. Even If ARIAD's Alleged Misconduct Were Deemed an "Affirmative Misrepresentation," ARIAD Should Be Deemed to Have Cured the Alleged Misconduct.

Even if the cited portions of Dr. Verma's declaration were considered affirmative misstatements (as opposed to being simply inconsistent with other statements he has co-authored), it does not necessarily follow that this Court, in determining whether or not a cure has been effected, should resort to a rigid application of the factors discussed in *Rohm & Haas*. As noted by Amgen, courts deciding inequitable conduct motions consider "the totality of circumstances." Here, even applying *Rohm & Haas*, ARIAD has satisfied at least the first and third criteria identified therein.[10] With respect to the second factor identified in *Rohm & Haas* — that the PTO "be advised what the actual facts are," 722 F.2d at 1572 — Amgen takes the astonishing position that this element may be satisfied only by a *"mea culpa."* (Amgen Opp'n at 25.) Specifically, Amgen argues that the disclosures on ARIAD's multiple IDSs are deficient as a matter of law because ARIAD did not "provid[e] its own explanation of its misconduct or even acknowledg[e] that an inconsistency occurred." (*Id.* at 26.) In other words, under Amgen's view of the law, a cure may be effected only by an *admitted* wrongdoer; where, as here, there is an ongoing disagreement about whether misconduct in fact occurred, cure or expiation would not be possible.

---

information that was relevant to Amgen's inequitable conduct claims. (*See* Greenwald Decl. Ex. 18.)

[10] "The first requirement to be met by an applicant, aware of misrepresentation in the prosecution of his application and desiring to overcome it, is that he expressly advise the PTO of its existence, stating specifically wherein it resides." *Rohm & Haas*, 722 F.2d at 1572. The disclosures in ARIAD's IDSs satisfy this requirement. (Amgen Opp'n at 13 n.11.) The third requirement of *Rohm & Haas*, that "on the basis of the new and factually accurate record, the applicant must establish patentability of the claimed subject

ARIAD respectfully submits that Amgen's inflexible view of how to "cure" alleged omissions of material information would effectively place ARIAD in a Catch-22, for it would require this Court to hold that a cure can be effected only by an admitted wrongdoer, but *never* by one who believes he or she has done nothing wrong (and who, as here, has, in fact, done nothing wrong). Here, ARIAD has expressly advised the PTO of the precise basis of Amgen's claims of inequitable conduct, and ARIAD has done so in time for the examiner to consider the information during the reexamination. Short of delivering a confession that ARIAD believes would be false — and, hence, itself violative of ARIAD's duty of candor — there is nothing more ARIAD can do.

### IV.   Conclusion

Based upon the foregoing, ARIAD respectfully requests that the Court grant ARIAD's motion for partial summary judgment with respect to Amgen's defense of inequitable conduct based upon the submissions of Dr. Verma and Dr. Kadesch in connection with the ongoing reexamination of the '516 Patent.

---

matter," 722 F.2d at 1572, has (ARIAD believes) been satisfied during the course of the reexamination.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc., Massachusetts Institute of Technology, the President and Fellows of Harvard College and the Whitehead Institute for Biomedical Research*

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008