## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, and IMMUNEX RHODE ISLAND
CORPORATION,

        Plaintiffs,

    v.

ARIAD PHARMACEUTICALS, INC., and THE
WHITEHEAD INSTITUTE FOR BIOMEDICAL
RESEARCH,

        Defendants.

C.A. No. 06-259-MPT

ARIAD PHARMACEUTICALS, INC.,
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY, THE PRESIDENT AND FELLOWS
OF HARVARD COLLEGE, and THE WHITEHEAD
INSTITUTE FOR BIOMEDICAL RESEARCH,

        Counterclaim-Plaintiffs,

    v.

AMGEN INC., IMMUNEX CORPORATION,
AMGEN USA INC., AMGEN MANUFACTURING
LIMITED, IMMUNEX RHODE ISLAND
CORPORATION, and WYETH,

        Counterclaim-Defendants.

**REDACTED
PUBLIC VERSION**

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS-COUNTERCLAIM-
## PLAINTIFFS' MOTION TO PRECLUDE EXPERT TESTIMONY OF MR.
## GERALD J. MOSSINGHOFF AND DR. AARON CIECHANOVER

*Of Counsel:*
CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008

ASHBY & GEDDES
Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
*Attorneys for Defendants and Counterclaim
Plaintiffs ARIAD Pharmaceuticals, Inc.,
Massachusetts Institute of Technology, the
President and Fellows of Harvard College and the
Whitehead Institute for Biomedical Research*

*Page(s)*

## Table of Contents

*Page*

Table of Authorities ...................................................................................................... ii

I.      Introduction and Summary of Argument ............................................................. 1

II.     Mr. Mossinghoff's Testimony Should Be Precluded in Its Entirety ...................... 2

        A.      Mr. Mossinghoff's Testimony on Willfulness Should Be Precluded
                Because It Invades the Provinces of the Court and the Jury. ..................... 2

        B.      Mr. Mossinghoff's Testimony Related to Inequitable Conduct Should Be
                Precluded Because Mr. Mossinghoff Lacks Relevant Expertise on
                Materiality and His Testimony Is Unhelpful. ............................................ 5

                1.      Mr. Mossinghoff is not qualified to opine on the materiality of
                        scientific information. ................................................................... 5

                2.      Mr. Mossinghoff's opinions on the duty of candor would not be
                        helpful to this Court. ..................................................................... 8

        C.      Mr. Mossinghoff's Testimony on Patent Law, PTO Procedure and the
                Prosecution History of the '516 Patent Should Be Precluded. ................... 9

III.    Dr. Ciechanover's Opinions Are Not Helpful to the Trier of Fact and Should Be
        Precluded in Their Entirety ................................................................................. 10

        A.      Dr. Ciechanover's Testimony on the IκB Limitations Is Not Relevant to
                the Validity of Any Asserted Claim. ....................................................... 11

                1.      The specification does not need to describe the inhibition of
                        proteasomes to meet the enablement and written description
                        requirements. ............................................................................... 11

                2.      Dr. Ciechanover's testimony should be precluded because it is
                        cumulative of Dr. Wall's testimony. ............................................ 13

        B.      Dr. Ciechanover's Testimony About *Saito* Is Unreliable and Cumulative ............ 14

        C.      The Purported Reliance by Drs. Greene and Wall on Dr. Ciechanover's
                "Background Testimony" Does Not Render That Testimony Admissible. .......... 15

IV.     Conclusion ......................................................................................................... 17

*Page(s)*

## Table of Authorities

*Page(s)*

**Cases**

*Alza Corp. v. Andrx Pharms., L.L.C.,*
  Civ. No. 05-642-JJF, 2008 WL 1886042 (D. Del. Apr. 28, 2008)......................................................4

*Aspex Eyewear, Inc. v. E'Lite Optik, Inc.,*
  No. CIV.A. 398CV2996D, 2002 WL 1751381 (N.D. Tex. Apr. 4, 2002) ..........................................7

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,*
  68 F. Supp. 2d 508 (D.N.J. 1999) ..............................................................................................7

*Capon v. Eshhar,*
  418 F. 3d 1349 (Fed. Cir. 2005) ................................................................................................1

*Carr v. Publix Super Markets, Inc.,*
  No. 3-CV-118, 2005 WL 1073253 (M.D. Ga. Apr. 4, 2005)..........................................................3, 8

*Cordis Corp. v. Medtronic AVE, Inc.,*
  339 F.3d 1352 (Fed. Cir. 2003) ................................................................................................11

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,*
  285 F.3d 609 (7th Cir. 2002) ............................................................................................*passim*

*Huey v. UPS, Inc.,*
  165 F.3d 1084 (7th Cir. 1999) ................................................................................................8, 14

*In re Air Crash Disaster,*
  86 F.3d 498 (6th Cir. 1996) ..............................................................................................13, 14, 15

*In re Paoli R.R. Yard PCB Litig.,*
  497 F.3d 350 (Fed. Cir. 2008) ................................................................................................12, 13

*In re Seagate Tech.,*
  35 F.3d 717 (3d Cir. 1994) ......................................................................................................2

*Invitrogen Corp. v. Clontech Labs., Inc.,*
  429 F.3d 1052 (Fed. Cir. 2005) ..............................................................................................11, 12

*Oddi v. Ford Motor Co.,*
  234 F.3d 136 (3d Cir. 2000) ....................................................................................................10

*Oxford Gene Tech., Ltd. v. Mergen, Ltd.,*
  345 F. Supp. 2d 431 (D. Del. 2004)........................................................................................4, 5, 14

*Page(s)*

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,*
    No. C-A 02-148, 2004 WL 2127192 (D. Del. Sep. 15, 2004).........................................................3, 8

*Robert S. v. Stetson Sch., Inc.,*
    256 F.3d 159 (3d Cir. 2001) ...........................................................7, 13, 14, 15

*Watkins v. New Castle County,*
    374 F. Supp. 2d 379 (D. Del. 2005).........................................................8

## Regulation & Rules

37 C.F.R. § 1.56 .........................................................8

Fed R. Civ. P. 26 .........................................................4

Fed. R. Evid. 403 .........................................................7

Fed. R. Evid. 702 .........................................................1

## Other Authorities

D. Kaye, *et al., The New Wigmore:  A Treatise on Evidence* (2004) .........................................................6

Defendants-counterclaim-plaintiffs (collectively, "ARIAD") submit this reply memorandum in further support of their motion to preclude the expert testimony of Mr. Gerald J. Mossinghoff and Dr. Aaron Ciechanover, who have provided testimony in this case for plaintiffs-counterclaim-defendants (collectively, "Amgen").[1]

## I.    Introduction and Summary of Argument

In its opening memorandum in support of its motion to preclude, ARIAD explained that Mr. Mossinghoff — a patent law expert — should be precluded from testifying because: (1) his testimony on patent law and Patent and Trademark Office ("PTO") practice and procedure was unnecessary (*see* ARIAD Br. at 13-15); (2) his testimony regarding materiality was unreliable (*id.* at 6-10); (3) his testimony regarding inequitable conduct and willfulness impermissibly invaded the province of the jury (*id.* at 11-13); and (4) his summary of the prosecution history and reexamination of the '516 Patent did not amount to expert testimony within the meaning of Federal Rule of Evidence 702 (*id.* at 15-16). Similarly, ARIAD argued that Dr. Ciechanover's anticipated testimony, as previewed by his report, was not admissible because most of it concerned claimed limitations unique to certain unasserted claims (*id.* at 18-22), and because the remainder — a one-paragraph, wholly conclusory, opinion that a prior art reference anticipates the asserted claims — was unreliable (because it was so conclusory) and cumulative (*id.* at 22-25).

---

[1] ARIAD's Opening Memorandum in Support of Its Motion to Preclude Expert Testimony of Mr. Gerald J. Mossinghoff and Dr. Aaron Ciechanover (D.I. 579) is referred to herein as "ARIAD Br." Amgen's Memorandum in opposition to ARIAD's motion is referred to herein as "Amgen Opp'n". The Declaration of David Greenwald dated April 25, 2008, is referred to herein as "Greenwald Decl." The Supplemental Declaration of David Greenwald dated May 22, 2008, is referred to herein as "Greenwald Supp. Decl." The Second Supplemental Declaration of David Greenwald dated June 6, 2008, is referred to herein as "Greenwald Second Supp. Decl."

In its opposition to ARIAD's motion, Amgen argues that both Mr. Mossinghoff and Dr. Ciechanover should be allowed to testify. As to Mr. Mossinghoff, Amgen argues (1) that the recent Federal Circuit decision, *In re Seagate Technology, L.L.C.*, 497 F.3d 1360 (Fed. Cir. 2007), has altered the law of willfulness to such an extent that legal expert testimony, like Mr. Mossinghoff's, is now required for the jury to understand and apply the Federal Circuit's new test for willfulness (Amgen Opp'n at 12-14); (2) that Mr. Mossinghoff's conclusion that ARIAD's conduct amounts to inequitable conduct would benefit the court (*id.* at 8-12); and (3) that the complicated prosecution of U.S. Patent No. 6,410,516 (the "'516 Patent") and the current reexamination would be easier to understand if Mr. Mossinghoff, a former Commissioner of the PTO, explained them to the jury (*id.* at 4-8). As for Dr. Ciechanover, Amgen principally argues he too should be allowed to testify because his explanation of the history behind the discovery of the ubiquitin-proteasome system, which post-dates by several years the filing of the applications that matured into the '516 Patent, is helpful "background" for the testimony of two Amgen experts, who are alleged to rely upon Dr. Ciechanover. (*Id.* at 19-24.) For the reasons discussed in ARIAD's opening papers and further below, neither Mr. Mossinghoff's nor Dr. Ciechanover's testimony has any proper place at the upcoming trial.

II.    **Mr. Mossinghoff's Testimony Should Be Precluded in Its Entirety**

   A.    **Mr. Mossinghoff's Testimony on Willfulness Should Be Precluded Because It Invades the Provinces of the Court and the Jury.**

With respect to the issue of willfulness, which requires the jury to apply an objective standard, Amgen admits that Mr. Mossinghoff's testimony would interpret the law and provide a conclusion for the jury as to whether the new test for willfulness set forth in

*Seagate* has been met.[2]  As ARIAD noted in its opening papers, in addition to being unhelpful, such testimony is impermissible because it encroaches on the respective roles of the Court and the jury.  (*See* ARIAD Br. at 11-13 (citing *Carr v. Publix Super Markets, Inc.*, No. 3-CV-118, 2005 WL 1073253, at *4 (M.D. Ga. Apr. 4, 2005) (striking expert report offering "conclusions of law based upon the expert's interpretation of certain evidence that can just as effectively be interpreted by a lay person"); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, No. C-A 02-148, 2004 WL 2127192, at *10-11 (D. Del. Sep. 15, 2004) (striking testimony on infringement where expert's opinion constituted only a "lay person's interpretation" of the evidence)).)

Although Amgen does not take issue with the basic proposition that expert testimony that invades the province of the Court or the factfinder is impermissible, Amgen nevertheless argues that "the new 'objective' test [provided by *Seagate*] *requires* the type of expert testimony that Mr. Mossinghoff can provide."  (Amgen Opp'n at 2 (emphasis added).) Tellingly, Amgen cites no authority for the proposition that, after *Seagate*, a plaintiff can meet the Federal Circuit's willfulness test, and a defendant can demonstrate the absence of willfulness, only through the use of expert testimony.  Indeed, no post-*Seagate* court has so held. Since district courts had never required expert testimony on the topic of willfulness prior to

---

[2] *See* Amgen Opp'n at 1 ("Mr. Mossinghoff's testimony will . . . assist the jury in determining whether ARIAD's allegations meet the new heightened 'objective recklessness' test for willful infringement set forth in [*Seagate*]."); 2 ("[T]he new 'objective' test *requires* the type of expert testimony that Mr. Mossinghoff can provide" (emphasis added)); 12-13 ("Mr. Mossinghoff is certainly in a position to provide the jury with his expert opinions regarding whether a company in Amgen's shoes was 'objectively reckless' vis-à-vis the '516 [P]atent."); *see also* Greenwald Supp. Decl. Ex. 47, 2/21/2008 Mossinghoff Report ¶ 6 :

**REDACTED**

*id.* ¶ 8

Greenwald Second Suppl. Decl. Ex. 7, 4/4/2008 Mossinghoff Dep. at 24:12-16

**REDACTED**

*Seagate,* it is safe to assume that if the Federal Circuit had truly intended to alter the type of proof needed to prove willfulness (*i.e.,* by requiring, for instance, expert testimony on the topic), it would have made that intent clear in its *en banc* decision. There is simply no reason why a properly instructed jury could not assess whether Amgen's infringement has been willful after the facts and circumstances surrounding willfulness are presented and argued by counsel for both parties, and the Court has instructed the jury on the governing law.

Amgen also asserts that Mr. Mossinghoff could provide the jury with an understanding of the "relevant standards of commerce," which is a factor "a court might consider" in the course of deciding whether willfulness has been proven. (Amgen Opp'n at 13.) Amgen, however, does not explain what testimony Mr. Mossinghoff — a lawyer who admits to having no understanding of the technology at issue in this case (*see* ARIAD Br. at 7-10) — could provide in this regard. Indeed, Mr. Mossinghoff's entire expert opinion on that topic consists of a single sentence:                    **REDACTED**

(*See* Greenwald Decl. Ex. 47, 2/21/2008 Mossinghoff Report ¶ 8; Amgen Opp'n at 12-14.) But because Mr. Mossinghoff has not provided substantive testimony on "standards of commerce" in his reports, he cannot do so at trial. *See* Fed R. Civ. P. 26(a)(2)(B) (among other things, "[t]he [expert] report must contain:  (i) a complete statement of all opinions the witness will express and the basis and reasons for them."); *accord Alza Corp. v. Andrx Pharms., L.L.C.,* Civ. No. 05-642-JJF, 2008 WL 1886042, at *2 (D. Del. Apr. 28, 2008) (post-trial ruling sustaining plaintiffs' objection to defense expert testimony outside the scope of his expert report).[3]

_____

[3] Amgen cites *Oxford Gene Technology, Ltd. v. Mergen Ltd.,* 345 F. Supp. 2d 431 (D. Del. 2004), for the proposition that "ARIAD has not questioned that Mr. Mossinghoff is qualified to provide the jury with an understanding of the relevant standards of commerce" (Amgen Opp'n

**B.** **Mr. Mossinghoff's Testimony Related to Inequitable Conduct Should Be Precluded Because Mr. Mossinghoff Lacks Relevant Expertise on Materiality and His Testimony Is Unhelpful.**

To prevail on its inequitable conduct defense, Amgen must show that ARIAD: (1) breached its duty of candor to the PTO by making a material misrepresentation or by failing to disclose material information (2) with intent to mislead. (*See* ARIAD Br. at 7.) As he has admitted, Mr. Mossinghoff is not qualified to determine whether ARIAD's alleged misstatements and omissions were material, and disclaims an intention to testify on intent. (*Id.* at 7-10.) Mr. Mossinghoff's testimony relating to ARIAD's purported breach of its duty of candor wholly turns upon his opinion on the materiality of the alleged misstatements, a subject on which he is not qualified to offer any opinion. (*Id.* at 10-11.) Therefore, Mr. Mossinghoff's opinions related to inequitable conduct should be precluded. (*Id.* at 6-11.)

**1.** **Mr. Mossinghoff is not qualified to opine on the materiality of scientific information.**

Amgen does not attempt to rebut ARIAD's arguments that Mr. Mossinghoff is not qualified to determine whether ARIAD's alleged misstatements and omissions were material. (*Id.* at 7-10.) Nor does Amgen contest that, to reach his opinions on materiality, Mr. Mossinghoff parrots the opinions of Amgen's scientific expert, Dr. Randolph Wall, without providing any additional analysis or explanation. (*Id.*) Finally, Amgen does not dispute that an

---

at 13). That assertion is beside the point because Mr. Mossinghoff has not provided any such analysis in this case. (*See* Greenwald Decl. Ex. 47, 2/21/2008 Mossinghoff Report ¶ 8 (stating without explanation that,         **REDACTED**
                                    . Furthermore, *Oxford Gene Technology* is irrelevant, because the expert in that case, unlike Mr. Mossinghoff, had worked in the industry and was retained to testify — and did testify — regarding actions undertaken by corporations in analogous situations. *Id.* at 442-43. And although the court allowed testimony on standards of reasonable commercial behavior (on which she, unlike Mr. Mossinghoff, was qualified to opine), the court *precluded* her testimony regarding the legal standard for willfulness — and whether the behavior in that case met the standard of reasonableness, *id.* at 443 — precisely the testimony Amgen attempts to introduce through Mr. Mossinghoff.

expert "however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (Posner, J.). Amgen's attempt to distinguish *Dura* (Amgen Opp'n at 9-10) highlights the purely derivative nature of Mr. Mossinghoff's testimony and the weakness of Amgen's position. *Dura* draws a distinction between (1) the permissible situation in which an expert relies only "in part" on the work of another expert where "the soundness of the underlying expert judgment is [not] in issue," 285 F.3d at 613, and (2) the impermissible situation in which an expert acts as a "mouthpiece of a scientist in a different specialty" while lacking the expertise to understand the substance of the opinion he is seeking to repeat and where the underlying science "was not cut and dried," *id.* at 614. Amgen does not argue that Mr. Mossinghoff falls into the first, permissible category. Rather, Amgen attempts to extricate Mr. Mossinghoff from the second, impermissible category with the conclusory statement that "[h]ere, the soundness of the underlying technical expert opinion [of Dr. Wall] is uncontested." (Amgen Opp'n at 10.) That is wrong. Materiality is a highly contested issue (*see, e.g.*, Greenwald Supp. Decl. Ex. 32, 2/22/2008 Ravetch Rebuttal Report ¶¶ 78-89), and a cursory review of the expert testimony in this case shows that Mr. Mossinghoff adopts the conclusions of Dr. Wall with respect to materiality hook-line-and-sinker without having even the most rudimentary ability to understand those conclusions. Under *Dura*, such "mouthpiece" testimony is impermissible. *Id.* at 614.[4]

---

[4] *Cf.* D. Kaye, *et al.*, *The New Wigmore: A Treatise on Evidence* § 3.6.1 (2004) ("When an expert relies on an opinion or data produced by another expert in the same field, the testifying expert will presumably have the expertise to assess its reliability directly. But when an expert relies on an opinion or data from another field, if there is any challenge to the reliability of the underlying opinion, the reasonableness of the first expert's reliance will not be adequate to show reliability under Rule 702.").

Amgen attempts to salvage the admissibility of Mr. Mossinghoff's testimony by noting that it "is entirely proper" for Mr. Mossinghoff to "consider[] the opinions of technical experts in his analysis." (Amgen Opp'n at 9.) But the defect in Mr. Mossinghoff's testimony regarding materiality is not that he relies on Dr. Wall, but that Mr. Mossinghoff has offered no analysis of his own. Instead, Mr. Mossinghoff's testimony would simply cloak Dr. Wall's opinion, which he confesses to not understanding in the slightest (*e.g.*, Mr. Mossinghoff doesn't even know what NF-κB is (ARIAD Br. at 8)), with the credentials of a former PTO Commissioner. That is impermissible, as well as highly prejudicial. *See Dura*, 285 F.3d at 614.

Because Mr. Mossinghoff has no relevant experience that would allow him to form an educated opinions on materiality (ARIAD Br. at 9-10) — other than taking on faith that Amgen's technical experts are correct (*id.* at 8-10) — Mr. Mossinghoff's testimony can offer nothing helpful on the topic of materiality and should be precluded.[5] Moreover, Dr. Wall will likely testify at trial on the alleged materiality of scientific matters, rendering Mr. Mossinghoff's testimony duplicative and superfluous. *See* Fed. R. Evid. 403 (court may exclude "needless presentation of cumulative evidence"); *accord Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 170 (3d Cir. 2001) (upholding district court's limiting of expert testimony as cumulative where other experts "addressed the same issues").

---

[5] Amgen cites two out-of-district cases for the proposition that it is "entirely proper" for Mr. Mossinghoff to rely on technical experts for his analysis of what an reasonable examiner would consider material. Those cases are inapposite. *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 68 F. Supp. 2d 508, 525-29 (D.N.J. 1999), concerned a request for a preliminary injunction, not whether expert testimony should be allowed at trial, and the testimony in question appears to have been received by the court without objection from the defendant. And *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. CIV.A. 398CV2996D, 2002 WL 1751381, at *34-35 (N.D. Tex. Apr. 4, 2002) (Amgen Opp'n at 10), is a case in which prosecution history was deemed relevant to claim construction, *id.* at *35, not the context in which Amgen would offer Mr. Mossinghoff's testimony, *i.e.*, to "assist the trier of fact in deciding the issues in this case" (Amgen Opp'n at 11).

2.    **Mr. Mossinghoff's opinions on the duty of candor would not be helpful to this Court.**

Mr. Mossinghoff's opinion on the breach of the duty of candor to the PTO is not helpful to this Court because it expresses a legal conclusion that also depends on a finding of materiality,[6] on which Mr. Mossinghoff is not qualified to opine. (*See* ARIAD Br. at 10.) Mr. Mossinghoff's remaining testimony on this topic consists of nothing but quotes from and summaries of the relevant statutes, rules and case law (Greenwald Decl. Ex. 13, 1/18/2008 Mossinghoff Report ¶¶ 63-65, 84-86, 91-92) and citations to deposition transcripts (*id.* ¶¶ 74-78). Amgen's argument that Mr. Mossinghoff's credentials make him "undeniably qualified to testify as to issues relating to PTO procedures and policies" (Amgen Opp'n at 12), which "will assist the trier of fact in deciding the issues in this case" (*id.* at 11), glosses over the circumstance that the "trier of fact" on inequitable conduct is the Court, not the jury. This Court is more than able to interpret and apply those statutes to the facts of this case without assistance from Mr. Mossinghoff.[7]

---

[6] *See* 37 C.F.R. § 1.56 ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, *which includes a duty to disclose to the Office all information known to that individual to be material to patentability* as defined in this section." (emphasis added)).

[7] *See* ARIAD Br. at 12-13 (citing *PharmaStem Therapeutics, Inc.*, 2004 WL 2127192, at *10-11 (striking testimony on infringement where expert's opinion constituted only a "lay person's interpretation" of the evidence), *aff'd in relevant part*, 491 F.3d 1342 (Fed. Cir. 2007); *Carr*, 2005 WL 1073253 at *4 (striking expert report offering "conclusions of law based upon the expert's interpretation of certain evidence that can just as effectively be interpreted by a lay person")); *id.* at 11 (citing *Huey v. UPS, Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (Easterbrook, J.) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *Watkins v. New Castle County*, 374 F. Supp. 2d 379, 392-93 (D. Del. 2005) (precluding expert testimony stating legal conclusions)).

C.    **Mr. Mossinghoff's Testimony on Patent Law, PTO Procedure and the Prosecution History of the '516 Patent Should Be Precluded.**

The only remaining testimony that Mr. Mossinghoff provided in his reports seeks to educate the Court on matters of patent law, PTO regulations and procedures, and the prosecution history of the '516 Patent. (*See* ARIAD Br. at 13-15.) Any background information on PTO procedures the fact-finder might require can be provided by this Court per its standard practice, including stipulations and jury instructions. (ARIAD Br. at 14-15.) Expert testimony on such matters is not only unnecessary, but also invades the province of the Court. (ARIAD Br. at 13-15 (citing cases).)

In an attempt to render Mr. Mossinghoff's testimony admissible — including, it would appear, his testimony regarding willfulness and inequitable conduct — Amgen notes that, as a former PTO Commissioner, Mr. Mossinghoff is particularly qualified to explain to the jury the prosecution and reexamination history of the patent,[8] PTO procedures,[9] or a combination of both.[10] Amgen argues that such testimony would be relevant to other issues, such as "priority, invalidity issues including written description, enablement, and anticipation." (Amgen Opp'n at 6-7.) But, beyond narrating a series of events, Mr. Mossinghoff's reports

---

[8] *See id.* at 1 ("[t]he complex sixteen-year prosecution history"); 3 ("the sixteen-year prosecution and ongoing reexamination"); 4 ("the complicated prosecution and family history of the '516 [P]atent"); 6 ("the convoluted and lengthy prosecution history and ongoing reexamination"; "the complicated history . . . that led ultimately to the issuance of the '516 [P]atent"); 8 ("[t]he convoluted and lengthy prosecution history and reexamination"); 11 ("the convoluted prosecution history and reexamination").

[9] *See id.* at 5 ("the patenting and reexamination process"); 6 ("background information on PTO procedures"); 7 ("the procedure for reexamination"); 8 ("procedures of the patent application process and reexamination proceedings"); 12 ("PTO procedures and policies"); 14 ("issues related to PTO practice and procedure").

[10] *See id.* at 5 ("the duration and complexity of the prosecution and patent office procedure issues"); 11 ("PTO procedures and policies with respect to the prosecution history and pending reexamination").

provide no particular insights into the prosecution history, and, since Mr. Mossinghoff has

admitted that he cannot provide technical testimony in this case, he would be similarly unable

to explain the connection between the particulars of the prosecution history and the issue of

priority date, which requires a technical understanding of the levels of disclosure in the

specification. Moreover, Amgen does not explain why its counsel could not present the same

facts for the jury without help from Mr. Mossinghoff.[11] That testimony is, accordingly,

unhelpful, and should not be used as a back door through which Mr. Mossinghoff's other,

impermissible testimony should be allowed to enter. (*See* ARIAD Br. at 14-15.)

III.    **Dr. Ciechanover's Opinions Are Not Helpful to the Trier of Fact and Should Be
        Precluded in Their Entirety**

        In its opening brief, ARIAD sought to preclude Dr. Ciechanover's opinions on

grounds that his testimony is irrelevant, unreliable, duplicative and prejudicial. (*See* ARIAD Br.

at 1, 4-5, 16-25.) In response, Amgen's sole argument for admission of Dr. Ciechanover's

testimony is that he will provide background scientific information helpful to the trier of fact

(*id.* at 17-18, 23), including opinions on various aspects of the ubiquitin-proteasome system and

its inhibitors (*see id.* at 23). Notably absent is a discussion of issues or facts that are directed to

the validity or enforceability of the asserted claims of the '516 Patent. Amgen's proffered

reasons for admissibility do not suffice to carry its burden of establishing that Dr. Ciechanover's

testimony is in fact admissible. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000)

(noting that it is the burden of the proponent of expert testimony to establish its admissibility).

---

[11] ARIAD does not believe that the existence of the reexamination should be disclosed to
the jury. In due course, ARIAD will file an appropriate motion addressing this issue.

**A.    Dr. Ciechanover's Testimony on the IκB Limitations Is Not Relevant to the Validity of Any Asserted Claim.**

Amgen does not dispute that none of the claim limitations concerning whose description Dr. Ciechanover opines (the "IκB Limitations") appears in any asserted claim. Amgen's sole effort to tie Dr. Ciechanover's testimony about those unasserted claim limitations to any issue as to which there is a live controversy (*see* ARIAD's Brief in Supp. of Its Mot. for Partial Dismissal for Lack of Subject Matter Jurisdiction (D.I. 576) at 6-8) consists of its contention that because certain (unasserted) claims containing IκB Limitations are dependent on independent claims ARIAD is asserting, those claims "necessarily include within their full scope methods of targeting the proteasome system" and that the "full scope" of those independent claims cannot be described in the absence of a description of those limitations. (Amgen Opp'n at 20.)  Even if Amgen had proffered constructions of any IκB Limitation such that their validity could properly be assessed, *see Capon v. Eshhar*, 418 F.3d 1349, 1358, 1360 (Fed. Cir. 2005) (stating that the written description requirement demands a claim by claim analysis), Amgen's argument would not support the admissibility of Dr. Ciechanover's opinions.

**1.    The specification does not need to describe the inhibition of proteasomes to meet the enablement and written description requirements.**

Dr. Ciechanover's testimony concerning the IκB Limitations is inadmissible because the argument in support of which it will be proffered— that an application cannot enable nor adequately describe the full scope of inventions claimed therein if new methods of practicing those inventions are later discovered — suffers from a fatal legal flaw.  To enable or describe the "full scope" of a claim, the law does *not* require that the patent enable and describe every embodiment of an invention, let alone methods that were unknown when the patent application was filed.  Enablement "does not require the inventor to foresee every means of

implementing an invention at pains of losing his patent franchise." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005). Similarly, a patent applicant is not required to describe "every conceivable and possible future embodiment" of its invention. *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1365 (Fed. Cir. 2003). Hence, the absence of a description of one future potential method of practicing an invention does not render a claim insufficiently described, merely because that future method (among others) is encompassed by the claim.[12]

When that fallacy underpinning Amgen's argument is stripped away, the irrelevance of Dr. Ciechanover's testimony that certain methods of practicing *non-asserted* claims are not described, becomes readily apparent. The asserted claims of the '516 Patent are directed to general methods of reducing NF-κB activity, not to any specific method. Though inhibition of the ubiquitin-proteasome system may serve to reduce NF-κB activity (not to mention the operation of many other cellular pathways), that is not a limitation of the asserted claims. Indeed, as the Federal Circuit noted, citing the lower court with approval, "the enablement requirement is met if the description enables *any* mode of making and using the invention." *Invitrogen*, 429 F.3d at 1071 (emphasis added; quotations and alteration omitted). The '516 Patent in fact describes several modes of practicing the invention. (*See generally* Greenwald Supp. Decl. Ex. 46, 2/22/2008 Livingston Report.) Accordingly, Dr. Ciechanover's testimony

---

[12] The Federal Circuit has already rejected the legal proposition on which Amgen premises its argument. In *Invitrogen*, a case involving a patent for a biotechnology compound, the defendant argued that since the written description did not describe how to make the compound using a particular method (via a "point mutation" in the DNA), the patent was not enabled. *Invitrogen*, 429 F.3d at 1070. The court disagreed. The claims at issue in *Invitrogen* were not limited by the method of achieving the mutation in the compound, even though the claims encompassed compounds made by "point mutation," the specific method the defendant complained was not enabled. *Id.* at 1070-71. Accordingly, the court held that since the patent described another operable method of making the claimed compound ("deletion mutation") sufficiently to enable the claims, the absence of a description of a method using "point mutation" was immaterial. *See id.*

about the IκB Limitations would not assist the trier of fact in resolving any relevant issue. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) ("[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of the case*" (emphasis in original)).[13]

2.    **Dr. Ciechanover's testimony should be precluded because it is cumulative of Dr. Wall's testimony.**

Even if Dr. Ciechanover's testimony were admissible, as it is not, it should nevertheless be precluded because it is cumulative of that of Dr. Wall. Dr. Wall expressly discusses the discovery of the role of the ubiquitin-proteasome system in NF-κB activation in his report, attributing the discovery to Dr. Ciechanover and his colleagues. (Greenwald Supp. Decl. Ex. 24, 1/18/2008 Wall Report at 20-34.) In that discussion, Dr. Wall sets forth the discovery of several, if not all, of the very same things that Amgen asserts Dr. Ciechanover wishes to testify about (*see* Amgen Opp'n at 18), including: (1) the tagging of phosphorylated IκB through ubiquitination; (2) the subsequent degradation of the tagged IκB by a proteasome; (3) the regulation of IκB degradation and NF-κB activation through the "ubiquitin-mediated proteasome degradation pathway"; and (4) the effect of proteasome inhibitors on markers of NF-κB activation. Dr. Wall clearly understands the "background" purportedly being offered by Dr. Ciechanover. As such, testimony from Dr. Ciechanover is not necessary and his testimony would be clearly cumulative and wasteful. *See Robert S.*, 256 F.3d at 170 (upholding district court's limiting expert's testimony as cumulative where other experts "addressed the same

---

[13] Amgen asserts that Dr. Ciechanover's importation of entire portions of his previous work verbatim into his expert report shows only that his opinions are not litigation-driven. (Amgen Opp'n at 18.) Amgen misses the point. Dr. Ciechanover's testimony must be relevant to the issues to be tried. *See In re Paoli*, 35 F.3d at 743. Dr. Ciechanover's verbatim copying of prior work only underscores that his testimony will lack such a focus.

issues"); *see also In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir. 1996) (excluding testimony that would offer nothing more than "me too").

**B.    Dr. Ciechanover's Testimony About *Saito* Is Unreliable and Cumulative.**

Dr. Ciechanover's anticipated testimony about Saito, *et al.*, Enhancement of Neurite Outgrowth in PC12h Cells by a Protease Inhibitor, *Neurosci. Letters* 89(1):102-7 (1988) ("*Saito*") — as set forth in a single, conclusory sentence in his report — is also not admissible. Amgen does not even attempt to argue that the single sentence in Dr. Ciechanover's report lays an adequate predicate for offering an opinion that the reference anticipates.  To have offered such an opinion, Dr. Ciechanover would have had to show that every limitation of each allegedly anticipated claim is present in the reference. *See Oxford Gene Tech.*, 345 F. Supp. 2d at 435-36.  Dr. Ciechanover's report does nothing of the sort.  Dr. Ciechanover's one-paragraph discussion thereof fails to provide any detail, beyond mere *ipse dixit*, as to how *Saito* anticipates. Thus, it is proper to exclude such testimony. *See id.* at 435-37 (excluding testimony that where the expert did not provide a proper element by element analysis).

As a fallback, Amgen asserts that Dr. Ciechanover's testimony is necessary background to inform the jury how the proteasome inhibitors used in *Saito* anticipate.  (Amgen Opp'n at 17-19.)  But given the cursory treatment the article receives in his report, it is not apparent how his testimony, to the extent it tracks his report, will be anything other than the type of "bottom line" opinion testimony that is singularly unhelpful. *See Huey v. UPS, Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (Easterbrook, J.) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").  To the extent any Amgen expert is entitled to opine that *Saito* anticipates the asserted claims, it is Dr. Greene, who has set forth a full opinion on that reference; not Dr. Ciechanover, whose discussion of the reference in his report exemplifies the sort of "me too" testimony eschewed in *In re Air Crash Disaster*, 86 F.3d at

527, and other cases, *e.g.*, *Robert S.*, 256 F.3d at 170 (upholding district court's limiting expert's

testimony as cumulative where other experts "addressed the same issues"). While Amgen

claims, without any explanation, that the overlap between Dr. Ciechanover's testimony and Dr.

Greene's testimony on *Saito* will be "minor" (Amgen Opp'n at 24), Amgen has failed to explain

why the relevant portions of its two experts' respective reports discussing *Saito* paraphrase each

other and why                    REDACTED

                (Greenwald Supp. Decl. Ex. 27, 1/18/2008 Greene Report at 46.) The fact

remains that Amgen's experts are offering the *same* opinion regarding *Saito*, albeit Dr.

Ciechanover's in a wholly conclusory form. As such, Dr. Ciechanover's testimony is clearly

cumulative and subject to preclusion. *See Robert S.*, 256 F.3d at 170; *In re Air Crash Disaster*, 86

F.3d at 527.

### C.    The Purported Reliance by Drs. Greene and Wall on Dr. Ciechanover's "Background Testimony" Does Not Render That Testimony Admissible.

                Amgen also contends that Dr. Ciechanover's testimony on the background of the

ubiquitin-proteasome system is relevant because Drs. Wall and Greene rely on his discussion in

their own reports. (Amgen Opp'n at 19.) Citing to *Dura*, 285 F.3d at 613, Amgen asserts that

one expert can rely on the opinions of another expert. (*Id.*) Even though ARIAD — unlike

Amgen[14] — has never contested the principle that an expert within the same field can rely in

part on another, Dr. Ciechanover's testimony is still inadmissible because Drs. Greene and Wall

do not in fact rely on Dr. Ciechanover. Amgen's argument to the contrary is simply

backpedaling.

---

[14] *See* Amgen's Brief in Support of its *Daubert* Motion to Preclude Certain Opinion of Dr.
Kathryn Calame (D.I. 595) at 5-8 (where Amgen seeks to preclude the opinions of ARIAD's
infringement expert on matters in which she relied in part upon experiments performed by
another expert within the same field).

As review of the expert reports of Drs. Greene and Wall reveals, neither expert "use[s]" (Amgen Opp'n at 19) nor otherwise relies upon Dr. Ciechanover's discussion of the ubiquitin-proteasome system. For instance, on page 90 of Dr. Wall's opening expert report (to which Amgen cited as evidence of Dr. Wall's reliance), Dr. Wall does not state that his conclusions were in any way informed by Dr. Ciechanover's expert report. (Greenwald Supp. Decl. Ex. 24, 1/18/2008 Wall Report at 90.) Indeed, he noted that Dr. Ciechanover's views were "in accord" with that of his own, independently expressed views, based on Dr. Wall's own understanding of the discovery of the ubiquitin-proteasome system. (*Id.*) In his report, Dr. Wall provides an independent description of the ubiquitin-proteasome system (*id.* at 20-34), but nowhere therein does Dr. Wall reference Dr. Ciechanover's Report.

Similarly, Dr. Greene does not rely or "use" (Amgen Opp'n at 19) any information obtained from Dr. Ciechanover.

**REDACTED**

(Greenwald Supp. Decl. Ex. 27, 1/18/2008 Greene Report at 46.)

**REDACTED**

(*Id.* at 46.) Amgen's reliance on the statement in *Dura*, 285 F.3d at 613, that "it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert" is misplaced. (Amgen Opp'n at 19.) The court was stating only that experts, in forming their own opinions, can rely in part on another expert in a related field

for knowledge that is not possessed by the first expert. *Dura*, 285 F.3d at 613.[15] Here, however,

both Drs. Wall and Greene not only possess the same relevant expertise as Dr. Ciechanover but

also opine on the very same subject matter.

## IV.    Conclusion

For all of the foregoing reasons, ARIAD respectfully requests that the Court

preclude expert testimony from Gerald J. Mossinghoff and Aaron Ciechanover, M.D.

---

[15] As discussed above (*see supra* Section II.B.1), the court in *Dura* drew a distinction between the permissible testimony of an expert who relies in part on the expertise of another within the same field, and the impermissible testimony of an expert who is nothing more than a mouthpiece of another expert in an unrelated field. *Dura*, 285 F.3d at 613.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Steven J. Balick (#2403)
John G. Day (#2114)
Tiffany Geyer Lydon (#3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for ARIAD Pharmaceuticals, Inc.,*
*Massachusetts Institute of Technology, the*
*President and Fellows of Harvard College and the*
*Whitehead Institute for Biomedical Research*

*Of Counsel:*

CRAVATH, SWAINE & MOORE LLP
Evan R. Chesler
Keith R. Hummel
David R. Marriott
David Greenwald
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Dated: June 6, 2008