IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
)
      Plaintiffs/Counterclaim Defendants, )
)
      v. )
)
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, *et. al.* )
)
      Defendants/Counterclaim Plaintiffs. )

Civil Action No. 06-259 (MPT)

Public Version
Confidential Material Omitted

## THE AMGEN ENTITIES' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,410,516 FOR LACK OF ADEQUATE WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

HOGAN & HARTSON LLP
Siegmund Y. Gutman
J. Drew Diamond
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: June 6, 2008

## TABLE OF CONTENTS

I.     ARIAD CONCEDES MULTIPLE MATERIAL FACTS THAT
       INDEPENDENTLY SUPPORT A GRANT OF SUMMARY JUDGMENT.....................3

II.    UNDER THE PROPER LEGAL STANDARD FOR WRITTEN DESCRIPTION,
       THE PATENT FAILS TO DESCRIBE THE FULL SCOPE OF THE CLAIMS. .............8

       A.     ARIAD Mischaracterizes *Rochester* And The Proper Legal Standard For
              Adequate Written Description. ................................................................9

       B.     ARIAD Does Not Dispute That The '516 Patent Lacks Description Sufficient
              To Distinguish Infringing Compounds Or Methods From Non-Infringing
              Compounds Or Methods.......................................................................11

       C.     Disclosure Of Screening Assays Is Insufficient To Satisfy The Written
              Description Requirement......................................................................16

III.   THE '516 PATENT ALSO FAILS TO SATISFY THE WRITTEN
       DESCRIPTION REQUIREMENT FOR ALL OF THE CELL TYPES THE
       CLAIMS COVER..................................................................................17

       A.     The '516 Patent Must Describe A Representative Number Of Cell Types
              Within The Genera Of Cells In Which The Claimed Methods Can Be
              Practiced. ........................................................................................17

       B.     The '516 Patent Fails To Touch Upon, Much Less Describe, A Representative
              Number Of Cell Types To Cover All Cells In Which The Claimed Methods
              Can Be Practiced. ..............................................................................18

IV.    CONCLUSION. ...................................................................................19

DB02:6881104.1                                                                          065028.1001

## TABLE OF AUTHORITIES

**Cases**

*ARIAD Pharm., Inc. v. Eli Lilly & Co.,*
   Civil Action No. 02 CV 11280-RWZ (D. Mass.)............................................................7, 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...........................................................................................................7

*Chiron Corp. v. Genentech, Inc.,*
   363 F.3d 1247 (Fed. Cir. 2004) ........................................................................................11

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
   844 F. Supp. 336 (S.D. Tex. 1994)...................................................................................17

*LizardTech, Inc. v. Earth Resource Mapping, Inc.,*
   424 F.3d 1336 (Fed. Cir. 2005) .....................................................................................3, 9

*Mendenhall v. Cedarapids, Inc.,*
   5 F.3d 1557 (Fed. Cir. 1993) .............................................................................................7

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
   522 F.3d 1299 (Fed. Cir. 2008) ..................................................................................15, 17

*Regents of Univ. of Calif. v. Eli Lilly & Co.,*
   119 F.3d 1559 (Fed. Cir. 2003) ..................................................................................passim

*Univ. of Rochester v. G.D. Searle & Co.,*
   249 F. Supp. 2d 216 (W.D.N.Y. 2003)......................................................................3, 9, 10

**Statutes**

35 U.S.C. § 112 .....................................................................................................................passim

Whether employing Amgen's proposed claim construction or ARIAD's more expansive proposal, the claims of the '516 patent are so broadly-worded and open-ended that the theoretical discussion in the patent falls well short of describing the "full scope" of the claims. The '516 patent fails to describe the claimed methods to reduce NF-κB activity in cells, and also fails to describe the "cells" in which the claimed methods could be carried out. Each of these failures independently renders claims 1-202 of the patent invalid under 35 U.S.C. § 112.

ARIAD's Opposition Brief is noteworthy for what it does not challenge. ARIAD does not dispute that the '516 patent fails to describe any common structure, formula, chemical name or physical property that would allow one of skill in the art to distinguish infringing compounds from non-infringing compounds, or infringing methods from non-infringing methods. Nor does ARIAD dispute that the patent fails to describe any common structure-function correlation from which reducing compounds can be deduced.

All ARIAD can do to try to overcome summary judgment is to point to what it characterizes as "disclosure" related to two possible ways to practice the claims. But the simple listing of single-stranded DNA sequences in the patent is not sufficient to even describe all possible decoy molecules. Likewise, disclosure of an erroneous sequence for IκB, especially without any correlation between structure and function, is insufficient to describe all methods of using IκB to achieve the claimed result of "reducing NF-κB activity in cells."

Even if the '516 patent could be considered to have properly described decoy molecules and IκB, which it does not, the claims are not limited to the use of decoy molecules or IκB and the patent disclosure does not even begin to describe all of the other possible molecules and methods that could be used to reduce NF-κB activity in cells. Under Amgen's construction, the claims extend to ways of taking action inside cells to reduce NF-κB activity. But the patent does

not disclose the structure of NF-κB or the use of any of the myriad of other possible molecules (besides an erroneous IκB sequence) that could bind to NF-κB or otherwise reduce its activity. Such possible molecules could range from proteasome inhibitors to aspirin and are clearly not supported by the patent specification. Under ARIAD's proposed claim construction, the claim scope expands exponentially even further to potentially include any and all molecules that could act on the unidentified cell surface receptors that might signal through NF-κB, or the unidentified ligands that bind to the receptors (such as TNF-α). These potential molecules range from receptor blocking molecules to antibodies to different forms of soluble receptors. None of these molecules are described in the patent. And there is no common structure or sequence that can be deduced from the patent that would identify any such other compounds or methods that ARIAD would assert infringe the claims.

ARIAD's unsupported extension of the claims to extracellular molecules confirms the lack of adequate description. ARIAD does not and cannot explain how its purported disclosure of inherently intracellular decoy molecules (that bind to NF-κB inside cells) or IκB (that binds to NF-κB inside cells) could possibly identify any or all extracellular molecules that could be used to reduce NF-κB activity. Extracellular molecules would, of course, never come in contact with NF-κB and thus whatever mechanism by which extracellular molecules could possibly practice the claims (under ARIAD's proposed scope) would bear no resemblance whatsoever to the mechanism by which decoys or IκB might work. At best, the patent merely proposes two assays that might be used to show a reduction in NF-κB activity but these assays serve as no guides to the nearly limitless other possible ways to interact intracellularly or extracellularly to cause a reduction in NF-κB activity as measured by the assays. This invitation to invent ways and means

2

by which to practice the claimed methods falls far short of satisfying the written description requirement.

The facts remain undisputed that there is no disclosure in the patent that provides a representative description for the various unrelated ways of practicing the claimed methods under either party's construction, including *not a single word about any extracellular methods of reducing NF-κB activity*. Under a proper reading of *Rochester* and the related case law, summary judgment for lack of adequate written description of the claims of the '516 patent is unavoidable and should be granted.

## I.    ARIAD CONCEDES MULTIPLE MATERIAL FACTS THAT INDEPENDENTLY SUPPORT A GRANT OF SUMMARY JUDGMENT.

While ARIAD desperately attempts to refocus the inquiry on whether it has described the possible use of certain specific compounds to reduce NF-κB activity in cells, it ignores the central question of written description.  The central question is not "whether the '516 patent describes *any* compound that can be used to practice" the claimed methods as ARIAD argues (at ARIAD Opp. Br. at 19 (DI 637) (emphasis added)), but rather whether the patent provides a description that supports the *full scope* of the claims.  *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005) ("[The specification] must describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation" and "sufficiently ... convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, *i.e.*, that the patentee invented what is claimed.").  This would require description "*sufficient to distinguish infringing compounds from non-infringing compounds, or infringing methods from non-infringing methods.*" *Univ. of Rochester v. G.D.*

3

*Searle & Co.*, 358 F.3d 916, 926 (Fed. Cir. 2004) (emphasis added). ARIAD does not even attempt to argue that the '516 patent contains such disclosure.

ARIAD cannot and does not deny the key facts set forth in Amgen's Opening Brief regarding the insufficiency of the disclosure of the '516 patent. ARIAD admits or is completely silent as to Amgen's core facts, which taken by themselves establish the need for summary judgment of invalidity as a matter of law:

- The patent speculates about various types of compounds that might be useful for reducing NF-κB activity in cells, but these hypotheticals share no common structural or physical characteristics to support the claims.[1]

- The patent does not even suggest that extracellular agents were contemplated by the inventors, let alone describe or mention a single extracellular compound that could be used in order to reduce NF-κB activity in cells.[2]

- The patent provides no correlation between structure and function that would allow one of skill in the art to predict in advance the full scope of the compounds that might "interact" with NF-κB.[3]

---

[1]  ARIAD admits that the "claims are not limited to the use of any particular mode of reducing NF-κB activity, but are directed, generally, towards modulation of the NF-κB signaling pathway through which NF-κB activity is manifested." ARIAD Opp. Br. at 3. ARIAD also focuses its argument entirely on the functional definition of IκB in the patent, with no mention of any correlation between structure and function. *Id.* at 15. In fact, the '516 patent specification misrepresents that it provides a nucleotide and amino acid sequence of IκB in Figure 43 that is in fact an incorrect sequence for the chicken protein pp40. *See* Rebuttal Report of Jeffrey Ravetch at ¶ 84 (DI 640, at Ex. 32)

[2]  It is undisputed that "decoy" molecules, "dominantly interfering molecules," "antagonists of a factor-encoding gene or of the factor encoded by the gene," and IκB, even if sufficiently described in the '516 patent, cannot act outside the cell. *See* discussion *infra*. ARIAD does not even attempt to show any description of any other antagonist in the specification beyond the word itself.

[3]  In fact, ARIAD attempts to use the limitless number of ways that countless unrelated and undescribed compounds can possibly be used to reduce NF-κB activity in cells as justification for not describing the full scope of the claims. ARIAD Opp. Br. at 12-13.

- The patent speculates that NF-κB is present in "most, if not all cell types," but does not disclose the identity of the cell types that could be used in the claimed methods.[4]

- The patent does not describe the practice of the claimed methods in *all eukaryotic cells*, much less *all cells*.[5]

- The patent does not describe the use of the claimed methods in any intact cell, any living tissue, or in any organism.[6]

The only support for the claims is tautological -- compounds and methods that "reduce NF-κB activity in cells" are purportedly described by general statements about compounds and methods that "reduce NF-κB activity in cells." But this "if it works it infringes" description (without something to define the boundaries of what "it" entails) fails to satisfy 35 U.S.C. § 112 under any reading of the law.

In addition to failing to describe the full scope of compounds or methods for "reducing NF-κB activity in cells," there is not even a hint of description to support the claims if interpreted as broadly as ARIAD now proposes. ARIAD admits that, under its construction, the '516 patent claims are not limited to the use of any particular compound, and are not even limited to methods that require the use of a compound at all. (ARIAD Opp. Br. at 3) Indeed, under ARIAD's proffered claim construction, any manipulation -- whether involving the use of shade to block

---

[4]    *See* '516 Patent, col.14, ll. 53-54 (DI 585, at Ex. A)

[5]    *See* ARIAD Op. Br. on Claim Construction at fn. 40 ("The number of eukaryotic species exceeds 7 million. (Greenwald Decl. Ex. 33.) It would therefore have been impossible to claim the reduction of NF-κB activity in all eukaryotic species, because it would be impossible to assess whether each species expresses NF-κB. As revealed by the patent specification, the inventors had ascertained the presence of NF-κB in human, bovine and mouse cells.") (DI 577) While it should have been impossible to claim methods in *all* eukaryotic cells, ARIAD claims methods in just this broad range of cells in the '516 patent.

[6]    ARIAD Opp. Br. at 22.

ultraviolet light, for example, or the application of some as yet unknown compound -- would fall within the scope of the claims. (See Ex 1, 05/03/2007 Dep. of Ranjan Sen at 154:21-155:22) Even giving undue credit to ARIAD's argument that the patent makes a passing reference to "antagonists" -- and ignoring the context that makes clear that it is referring to intracellular "antagonists of a factor-encoding gene or of the factor encoded by the gene" -- ARIAD does not cite a single specific example of any extracellular "antagonist" described in the patent.[7]

ARIAD sought and obtained claims that were not themselves limited to the use of certain specific types of compounds (i.e., "decoys,"[8] "dominantly interfering molecules," "antagonists of a factor-encoding gene or of the factor encoded by the gene," or IκB). That this aggressively broad choice now imperils the validity of these claims is simply a matter of ARIAD reaping what it has sown. There are countless possible types of methods or compounds that *might* practice the method of "reducing NF-kB activity in cells," but no teaching in the patent to allow one to recognize what compounds would fall within or outside the scope of the claims. Unable to dispute the facts, ARIAD instead seeks to avoid summary judgment by mischaracterizing the relevant law and attempting to distract the Court with irrelevant and immaterial "facts." See

---

[7]    ARIAD Opp. Br. at 6-7; fn. 15. The '516 patent identifies "antagonists of a factor-encoding gene or of the factor encoded by the gene," -- i.e. "antagonists" of the NF-κB protein or of the gene that encodes the NF-κB protein -- that act intracellularly. See '516 patent, col. 34, l. 66 - col. 35, l. 12; see also Ex. 2, 3/17/2008 Dep. of Dr. David Livingston ("Livingston Dep. Tr.") at 257:23-258:24.

[8]    The only claim in the '516 patent limited to a particular genus of molecules for reducing NF-κB activity in cells is claim 203, relating to decoys. This motion does not relate to claim 203. ARIAD acknowledges that the remaining claims are not so limited. ARIAD Opp. Br. at 3 (stating that the "claims are not limited to the use of any particular mode of reducing NF-κB activity, but are directed, generally, towards modulation of the NF-κB signaling pathway through which NF-κB activity is manifested.").

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").

ARIAD additionally attempts to muddy the water with the irrelevant outcome in its prior litigation against Eli Lilly (*ARIAD Pharm., Inc. v. Eli Lilly & Co.*, Civil Action No. 02 CV 11280-RWZ (D. Mass.) ("*Lilly*")). It is hornbook law that prior adjudications of validity do not control later decisions involving different parties. *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1571 (Fed. Cir. 1993). In any event, ARIAD strategically omits that it is taking starkly different positions in this case from those it took in the *Lilly* case, and that much has changed since that case. In fact, ARIAD's expert on *written description* in the *Lilly* case, Dr. Thomas Kadesch, has *recanted the testimony upon which the written description verdict was based*. (06/21/2007 Dep. of Dr. Thomas Kadesch at 268:25-270:16 (DI 585, at Ex. K); *see also* Amgen Op. Br. at 13-14 (DI 584)) And ARIAD ignores the fact that in this case it is asserting that an extracellular molecule like Enbrel infringes the claims, while in the *Lilly* case, ARIAD's expert Dr. Ravetch opined that "a method for using drugs designed to block other extracellular substances from interacting with cells does not describe any of the claimed methods."[9] ARIAD's inconsistent claim construction positions and invalidity arguments thus require a different analysis for written

---

[9]    *See* 12/11/2005 Reply Expert Report of Jeffrey Ravetch at 2-3 (DI 649, at Ex. A)

description than was required in the *Lilly* litigation because, among other things, ARIAD now attempts to sweep extracellular molecules within the claims' scope.[10]

## II.  UNDER THE PROPER LEGAL STANDARD FOR WRITTEN DESCRIPTION, THE PATENT FAILS TO DESCRIBE THE FULL SCOPE OF THE CLAIMS.

ARIAD mischaracterizes and misapplies the case law regarding written description. ARIAD boldly proclaims that the '516 patent need only describe the use of *one compound*. (ARIAD Opp. Br. at 19) This is wrong. No matter what claim constructions the Court arrives at in this case, describing one compound is not enough. Without some common thread to define the scope of the invention, the disclosure of one, two, or even ten specific compounds could not begin to adequately describe the multiple, varied, and unrelated genera encompassed by the claims. *See Regents of Univ. of Calif. v. Eli Lilly & Co.*, 119 F.3d 1559, 1569 (Fed. Cir. 2003) ("A description of a genus of cDNAs may be achieved by means of a recitation of a representative number of cDNAs, defined by nucleotide sequence, falling within the scope of the genus or of a recitation of *structural features common to the members of the genus*, which features constitute a substantial portion of the genus.").

Contrary to ARIAD's argument, the adequacy of written description is not secured by the disclosure of a single compound, especially where there is no other description of common structure or physical properties. The Federal Circuit has expressly rejected ARIAD's "one compound is enough" argument in other cases. *See e.g., id.*, 119 F.3d at 1569 (affirming judgment of invalidity of claims drawn to a genus where the patent specification described only

---

[10]  *Compare* ARIAD Opp. Br. at fn. 19 (admitting that the claims at issue in *Lilly* are as broad as the claims asserted here with respect to the compounds and cell types encompassed) *with* fn. 26 (attempting to distinguish Dr. Kadesch's admission that the claims of the patent lack adequate written description for all eukaryotic cells).

one species; stating that "[i]t has been consistently held that the naming of one member of such a group is not, in itself, a proper basis for a claim to the entire group."); *see also LizardTech*, 424 F.3d at 1346 (affirming summary judgment of invalidity where the patent specification recited the procedure by which to manufacture one possible invention purported to be covered by the claims, but where the specification was impermissibly vague as to the range of inventions covered thereby).

### A.    ARIAD Mischaracterizes *Rochester* And The Proper Legal Standard For Adequate Written Description.

ARIAD's brief is most noteworthy in its mischaracterization of the seminal *Rochester* case and its attempt to rewrite the governing legal standard for written description. Contrary to ARIAD's assertion, *Rochester* was not decided on the basis of the patent's failure to describe *any* compounds.[11] As the Federal Circuit explained in *Rochester*, "[r]egardless whether a compound is claimed *per se* or a method is claimed that entails the use of the compound, the inventor cannot lay claim to that subject matter unless he can provide a description of the compound *sufficient to distinguish infringing compounds from non-infringing compounds, or infringing methods from non-infringing methods.*" *Rochester*, 358 F.3d at 926 (emphasis added).  A "vague functional description" is insufficient. *Id.* at 928.  A patent's disclosure must allow one skilled in the art to readily visualize the identity of the subject matter purportedly described. *Id.*

---

[11]    In fact, the district court noted in its analysis that the *Rochester* patent did disclose one compound, a "specific inhibitor of PGHS-2." *Univ. of Rochester v. G.D. Searle & Co.*, 249 F. Supp. 2d 216, 224 at Fn 4 (W.D.N.Y. 2003).  For purposes of appeal, Rochester apparently recognized that one compound was not enough. *See* Brief of Plaintiff-Appellant University of Rochester, 2003 WL 24305355, at *22 (Fed. Cir. 2003) ("The NS-398 evidence is irrelevant because Rochester is not relying on NS-398 to support written description.").  The Federal Circuit, therefore, did not focus on whether the *Rochester* patent disclosed *any* compounds.

9

at 923. The Federal Circuit, therefore, notwithstanding the patent's detailed description of a screening assay, affirmed the district court's grant of summary judgment of invalidity of the claims of the patent for failure to describe the full scope of compounds having the desired characteristic of selectively inhibiting PGHS-2.[12] *Id.* at 927 ("[T]he '850 patent does not disclose just '*which* peptides, polynucleotides, and small organic molecules have the desired characteristic of selectively inhibiting PGHS-2.' *Univ. of Rochester*, 249 F. Supp. 2d at 224. Without such disclosure, the claimed methods cannot be said to have been described.").

To be adequate, there must be written description of the ***full scope*** of the claims. *Id.* at 923 ("[I]t is well settled that claims in an application which are broader than the applicant's disclosure are not allowable."). Functional descriptions are insufficient unless those functional characteristics are "coupled with a known or disclosed correlation between function and structure, or some combination of such characteristics." *Id.* A detailed description of a screening assay, for example, is insufficient to disclose *which* compounds have the desired characteristics to carry out the claimed methods. *Id.* at 927. Written description requires more than an invitation to experiment. *Id.* at 930 ("[A] patent is not a hunting license. It is not a reward for the search, but compensation for its successful conclusion."). Adequate written description of each one of multiple, varied, and unrelated genera requires recitation of a representative number of members of each genus or of structural features common to the members of each genus. *Regents v. Lilly*, 119 F.3d at 1569.

---

[12]    The claims of the *Rochester* patent were even more limited than the claims of the '516 patent because they specifically excluded the use of steroids from the scope of their claimed methods. *Rochester*, 358 F.3d at 918.

10

Amgen does not assert, as ARIAD contends, that the reason the claims are invalid is because "the specification does not contain an express structural description of every compound that could be used to practice the claimed method." (ARIAD Opp. Br. at 12)  Nor is the issue whether ARIAD has adequately described certain genera of molecules that act inside the cell -- "decoys" or IκB (although it is evident that it has not).[13]  ARIAD did not limit its claims to species within those specific genera.  Instead, under ARIAD's proposed construction, ARIAD is claiming entirely different genera -- antibodies, fusion proteins, soluble receptors, etc. -- that act outside the cell and that are nowhere even suggested in the '516 patent.  ARIAD fails to establish a triable issue of fact as to whether the '516 patent provides a written description of *sufficient members of each genus* encompassed by the claims of the '516 patent.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1251-58 (Fed. Cir. 2004) (finding disclosure of multiple examples of antibodies insufficient to describe the full scope of the genus of antibodies); *Regents v. Lilly*, 119 F.3d at 1566-67 (affirming that description of rat cDNA for insulin is insufficient to describe all cDNAs encoding for vertebrate or mammalian insulin).  That is the relevant question. And the answer is that the patent does not provide such description and its claims are therefore invalid as a matter of law.

> **B.    ARIAD Does Not Dispute That The '516 Patent Lacks Description Sufficient To Distinguish Infringing Compounds Or Methods From Non-Infringing Compounds Or Methods.**

Amgen's key observation, still undisputed, is that the '516 patent does not disclose the use of even exemplary compounds belonging to the various unrelated categories about which it

---

[13]    ARIAD pays lip service to "dominantly interfering molecules" and "antagonists of a factor-encoding gene or of the factor encoded by the gene," but really only argues about the purported description of "decoys" and IκB. *See* ARIAD Opp. Br. at 14-17.

speculates. ARIAD does not address this critical overarching observation, but instead attempts to manufacture a factual dispute with respect to only two of the hypothetical categories the patent lists: decoy molecules and IκB. ARIAD's desperate attempt fails. As Amgen has already demonstrated, the patent lacks any working examples and even sufficient disclosure regarding those two categories of compounds. And in any event, a dispute regarding the sufficiency of the disclosure as to decoys and IκB is not relevant under the legal standard, which requires that there be sufficient correlation between the molecules disclosed and the remainder of the methods encompassed by the claims so as to allow one to distinguish between infringing compounds and methods and non-infringing compounds and methods. Even if the patent had provided such disclosure (something ARIAD has failed to establish), the patent would still lack necessary disclosure of a multitude of other genera (including, for example, proteasome inhibitors, and, under ARIAD's proposed construction, antibodies, fusion proteins, and even non-compound-based methods encompassed by the claims, whatever they may be). That the patent mentions the use of assays does not change this analysis, as Amgen has demonstrated not only that these assays are not particularly helpful, but also that they are simply reflective of the patent's overall tenor: an invitation to experiment.

ARIAD's attempt to raise factual disputes with respect to decoys offers nothing new with respect to description, but simply asserts that speculation in the patent would allow a person of ordinary skill in the art to use decoys to reduce NF-κB activity in cells. That is not written

**REDACTED**

DB02:6881104.1                                          065028.1001

this.[14] And ARIAD specifically argues that the single-stranded sequences in the patent may or may not be NF-κB binding sites and, therefore, may or may not provide a basis for further experimentation to see if a decoy molecule can be made that is able to reduce NF-κB activity in cells.[15] Of course, the patent does not provide a single example of the use of decoy molecules to practice the claimed methods.

**REDACTED**

ascertaining the necessary sequence of IκB. The patent certainly does not provide any description for how to isolate IκB. And ARIAD does not dispute that there is not one working example of using IκB to reduce NF-κB activity in cells.

The claims of the '516 patent at issue in this motion are not limited to the use of any particular method of reducing NF-κB activity in cells, let alone to the genera of "decoys" or IκB.

---

[14]  Table 2 of the '516 patent discloses single stranded sequences, not double stranded decoy molecules. *See* '516 patent, col. 37, ll. 1-43.

[15]  Indeed, ARIAD admits the insufficiency of the information contained within Table 2 of the '516 patent. *See* ARIAD Op. Br. on Claim Construction at 17-18 ("However, the specification notes that Table 2 contains only sequences that were then-known, *or predicted*, to contain NF-κB binding domains as of the time that the '436 application was filed, and that certain predicted recognition sequences had not yet been proven by binding assays. The specification also discloses that the proposed consensus sequence 'ignore[s] one deviant.' Because the specification makes clear that Table 2 contains predicted sequences, and a consensus sequence that may be incomplete, and does not purport to be an exhaustive list, it is clear that the inventors did not intend the definition of NF-κB to be limited by reference to the sequences that are disclosed for illustrative purposes."); **REDACTED**
**REDACTED**

DB02:6881104.1                                                                       065028.1001

Under ARIAD's proposed construction, the claims are not limited to the use of any specific compound or class of compounds having a particular structure, formula, chemical name, or physical property. Indeed, under ARIAD's view, the claims do not even require the use of compounds at all.

ARIAD chose its own claim language. ARIAD could have attempted to draw individual patent claims to the specific use of "decoys," "dominantly interfering molecules," "antagonists of a factor-encoding gene or of the factor encoded by the gene," or even IκB but, with the exception of claim 203, opted not to. Claim 203 is the exception that proves the rule: ARIAD did not, for claims 1-202, seek to limit their scope to any particular species or genus. Because the claims are not directed to those categories, but to encompass innumerable distinct genera that do not share common characteristics, even a description of species within certain genera – something that the patent lacks in any event – would be insufficient to describe the broad spectrum of unrelated genera covered by the claims.

To satisfy section 112, the '516 patent must describe the *full scope* of the claims in a manner sufficient to delineate infringing methods from non-infringing methods. *Rochester*, 358 F.3d at 923. ARIAD has failed to raise a genuine issue of material fact regarding the '516 patent's failure to define or circumscribe the universe of known or unknown compounds that could be used to reduce NF-κB activity in cells. As with the patent in *Rochester*, the '516 patent fails to provide any common structural or physical properties to tie together the full scope of compounds that could reduce NF-κB activity in cells, and the structure of such compounds cannot be deduced from any structure-function correlation.

There are a myriad of different genera that might fall within the scope of ARIAD's broad constructions of its patent claims but for which no description is provided. For example, the

14

'516 patent fails to describe any molecule belonging to any of the various genera that can be used to reduce NF-κB activity by acting exclusively outside the cell.

ARIAD has tried to address this issue by referring to antibodies to TNF. (ARIAD Opp. at 16) [16] Without any citation to the patent for the use of antibodies to TNF, ARIAD asserts that the '516 patent provides a description that would indicate to a person of ordinary skill that one could, "without undue experimentation, generate antibodies to TNF that could inhibit that *induced* activity." (*Id.* at 16-17)  First and foremost, what a person of ordinary skill "could" do is not the same as providing a description of one's invention. The Federal Circuit has stated that the written description requirement is "not a question of whether one skilled in the art *might* be able to construct the patentee's device from the teachings of the disclosure . . . . Rather, it is a question of whether the application necessarily discloses that particular device." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008) (*citing Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987)) (emphasis in original).  Moreover, as ARIAD explained in its own Opening Brief on Claim Construction, a person of ordinary skill would *not* know from reading the '516 patent if one "could" reduce already induced NF-κB activity using antibodies to TNF. (ARIAD Op. Br. on Claim Construction at 30, fn. 34)  ARIAD cites to studies showing that "monoclonal anti-TNF antibodies were used prophylactically to prevent the onset of septic shock, but noting that '*further experiments are needed* to determine whether the administration

---

[16]    ARIAD cannot cite to the '516 patent for the description of the use of antibodies to TNF to practice the claimed methods. *See* ARIAD Opp. Br. at 16.  Instead, ARIAD cites to the single sentence relating to TNF-α in the more than 80 columns of the '516 patent specification -- "IL-1 and TNF-α activate NF-κB binding and both have been shown known [sic] to induce β-IFN" -- that does not even describe the work of the inventors but rather the prior art work of another research group. *Id.*

of [anti-TNF] anti-bodies during persisting infection or indolent sepsis will be beneficial,'" and several studies in which "anti-TNF antibodies were demonstrated to be ineffective at treating sepsis after the onset of disease." (*Id.* (emphasis added))  ARIAD states in the context of the current briefing that "[m]ethods for preventing the induction of NF-κB activity may not necessarily be effective in reducing that activity once it has been induced." (*Id.* at 29-30)  If that is the case, then the '516 patent provides no description whatsoever as to how to distinguish those compounds that are effective in practicing the claims as ARIAD would construe them from those that are not.  An invitation to experiment is not sufficient.

C.    **Disclosure Of Screening Assays Is Insufficient To Satisfy The Written Description Requirement.**

ARIAD is wrong when it argues that the disclosure of a screening assay is sufficient description because theoretically one could simply test a compound via the assay and know if it infringes.  The Federal Circuit has made clear that even a ***detailed*** description of a screening assay is insufficient to disclose which compounds or classes of compounds have the desired characteristics to carry out the claimed methods. *Rochester*, 358 F.3d. at 927.  The patent itself must describe structural features common to the members of the claimed genus. *Regents v. Lilly*, 119 F.3d at 1569.  Without the disclosure of these common characteristics, the purpose behind the written description requirement is entirely defeated.  Detailed description is required so as to provide the public with something more concrete than an invitation to experiment in exchange for patent rights.  *Regents v. Lilly*, 119 F.3d at 1559.  The '516 patent fails to describe any overarching common thread that ties together the various compounds that have the desired characteristic of reducing NF-κB activity in cells, and thus fails to provide the *quid pro quo* required to obtain patent rights under §112.

16

ARIAD's expert flatly admitted in his deposition that the '516 patent merely provides "here is a library of compounds. Here is an assay that you can develop. And you will get from that inevitably, a compound that has an activity." (4/3/2008 Dep. of Dr. Jeffrey Ravetch at 154-156 (DI 585, at Ex. H) ARIAD does not deny this. The '516 patent's suggestion of a trial-and-error approach to search for things that might reduce NF-κB activity in cells is not enough under the law to describe the claims of the '516 patent. *See PowerOasis,* 522 F.3d at 1306 (stating that the written description requirement is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure"); *see also Hoechst Celanese Corp. v. BP Chems. Ltd.*, 844 F. Supp. 336, 340 (S.D. Tex. 1994) ("The test for the written description requirement is not whether a skilled artisan would have known that lithium iodide was 'suitable' in similar processes; the test is whether the artisan would have known, from reading the description, that the inventor of the '73 application did know of this suitability--and hence had possession of this invention.").

III.    **THE '516 PATENT ALSO FAILS TO SATISFY THE WRITTEN DESCRIPTION REQUIREMENT FOR ALL OF THE CELL TYPES THE CLAIMS COVER.**

    A.    **The '516 Patent Must Describe A Representative Number Of Cell Types Within The Genera Of Cells In Which The Claimed Methods Can Be Practiced.**

Adequate written description requires the disclosure of how to practice the methods in at least a representative number of cell types. *See Regents v. Lilly*, 119 F.3d at 1568. In *Regents v. Lilly*, the Federal Circuit ruled that disclosure of the DNA sequence encoding for rat insulin was not sufficient to support claims to all cDNAs encoding for vertebrate or mammalian insulin. *Id.* at 1568. Because of this failure, the Federal Circuit explained that "one skilled in the art therefore cannot, as one can do with a fully described genus, visualize or recognize the identity of the members of the genus." *Id.* ARIAD cannot exempt the claims of the '516 patent from the

17

requirement set forth in *Regents v. Lilly*.  As the Federal Circuit explained in *Rochester*, "the statute [35 U.S.C. § 112] applies to all types of inventions. We see no reason for the rule to be any different when non-genetic materials are at issue . . . ." *Rochester*, 358 F.3d at 925.

**B.    The '516 Patent Fails To Touch Upon, Much Less Describe, A Representative Number Of Cell Types To Cover All Cells In Which The Claimed Methods Can Be Practiced.**

The claims of the '516 patent are worded so broadly that they cover methods of reducing

**REDACTED**

despite the lack of any written description of either.  (ARIAD Op. Br. on Claim Construction at 23; fn. 28)

**REDACTED**

description or example whatsoever of reducing NF-κB activity in *any* intact cell. (ARIAD Opp. Br. at 22)  Instead, ARIAD asserts that it is not required to provide sufficient description to support "a method applicable throughout a species, genus, class, or kingdom" because of the "large number of different type[s] of cells in individual species." (ARIAD Opp. Br. at 25)

---

[17]    ARIAD agrees that the '516 patent represents that NF-κB is present in "most, if not all cell types." ARIAD Opp. Br. at 24 (citing '516 patent, col. 2, ll. 26-31).

[18]    Ex. 2, Livingston Dep. Tr. at 175:14-19; 3/26/2008 Dep. of Kathyrn Calame at 168:9-13 (DI 585, at Ex. I)

According to ARIAD, the broader the claim, the less the required description. This defies not only common sense, but also the law. *See Regents v. Lilly*, 119 F.3d at 1568.

Asserted claim 6 of the '516 patent, for example, is unlimited as to the cells encompassed

**REDACTED**

At most, the patent mentions a few select cell types from only three organisms (human, cow, and mouse), all of which are mammals. The patent, however, does not even suggest methods of "reducing NF-κB activity in cells" of these three mammals. These three examples are thus not sufficiently representative to support claims of reducing NF-κB activity in the cells of all mammals, much less the vastly broader categories of all eukaryotic cells and all cells of any type. (*See* Kadesch Dep. Tr. at 268:25-270:16 (DI 585, at Ex. K)) This lack of disclosure leaves one of skill in the art to resort to trial-and-error experimentation, not only to find cells in which the claimed methods may be practiced, but to answer the more basic question regarding in what cells NF-κB may even be found.

## IV.    CONCLUSION.

For the foregoing reasons, no genuine issue of material fact precludes entry of summary judgment of invalidity of claims 1-202 of the '516 patent for failure to satisfy the written description requirement of 35 U.S.C. § 112. Amgen respectfully submits that its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,410,516 for Lack of Adequate Written Description Under 35 U.S.C. § 112 should be granted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____/s/ Melanie K. Sharp_____
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800
(213) 680-8400

Siegmund Y. Gutman
J. Drew Diamond
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
(310) 785-4707


*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Immunex Corporation, Amgen USA Inc., Amgen Manufactu Limited, and Immunex Rhode Island Corporation*

Dated:  June 6, 2008

20

065028.1001

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on June 6, 2008, I caused to be electronically filed a true and correct copy of THE AMGEN ENTITIES' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,410,516 FOR LACK OF ADEQUATE WRITTEN DESCRIPTION UNDER 35 U.S.C. § 112 with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on June 6, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

/s/ Melanie K. Sharp
Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com