IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMGEN, INC., a Delaware corporation; )
IMMUNEX CORPORATION, a Washington )
corporation; AMGEN USA INC., a Delaware )
corporation; AMGEN MANUFACTURING, )
LIMITED, a Bermuda Corporation, and )
IMMUNEX RHODE ISLAND )
CORPORATION, a Delaware corporation, )
 )
    Plaintiffs/Counterclaim Defendants, )
 )
    v. )
 )
ARIAD PHARMACEUTICALS, INC., a )
Delaware corporation, and THE WHITEHEAD )
INSTITUTE FOR BIOMEDICAL RESEARCH, )
a Delaware corporation, *et. al.* )
 )
    Defendants/Counterclaim Plaintiffs. )

Civil Action No. 06-259 (MPT)

Public Version
Confidential Material Omitted

## THE AMGEN ENTITIES' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT OF NON-WILLFULNESS

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6681
msharp@ycst.com

HOGAN & HARTSON LLP
Siegmund Y. Gutman
J. Drew Diamond
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 785-4707

KIRKLAND & ELLIS LLP
Mark A. Pals, P.C.
Marcus E. Sernel
200 East Randolph Drive
Chicago, IL 60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
777 South Figueroa Street
Los Angeles, CA 90017-5800
(213) 680-8400

*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc., Immunex Corporation, Amgen USA, Inc., Amgen Manufacturing, Limited, and Immunex Rhode Island Corporation*

Dated: June 6, 2008

**Table of Contents**

A.    ARIAD Fails to Present Any Genuine Issue of Fact That Amgen "Acted Despite an Objectively High Likelihood That Its Actions Constituted Infringement of a *Valid* Patent"..................................................................1

B.    The PTO's Rejections of the Asserted Claims in Reexamination is Conclusive Objective Evidence That Amgen Was Not Objectively Reckless. ...........................................................................................................3

    1.    ARIAD's Arguments Directly Contradict Seagate. ...................................4

    2.    ARIAD's Reliance on Pre-Seagate Case Law is Improper. ........................6

C.    In Addition to the PTO's Rejection of the Asserted Claims of the '516 Patent in Reexamination, Record Evidence Shows That Amgen Was Not Objectively Reckless. ...............................................................................9

    1.    ARIAD's Attempt to Inject a Subjective Standard or "State of Mind" Into the Objective Seagate Test is Improper. ...................................9

    2.    ARIAD's Reliance on Amgen's Election Not to Rely on Advice of Counsel is Directly at Odds With Seagate.................................................12

D.    CONCLUSION ...................................................................................13

## Table of Authorities

**Federal Cases**

*Abbott Labs. v. Sandoz, Inc.,*
532 F. Supp. 2d 996 (N.D. Ill. 2007)..................................................................3

*Acoustical Design, Inc. v. Control Elecs. Co.,*
932 F.2d 939 (Fed. Cir. 1991) ..........................................................................7

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.,*
6 F.3d 1523 (Fed. Cir. 1993) ............................................................................7

*Black & Decker, Inc. v. Robert Bosch Tool Corp.,*
2008 WL 60501 *6-7 (Fed. Cir. Jan. 7, 2008)............................................2, 4, 5

*Comark Commc'ns, Inc. v. Harris Corp.,*
156 F.3d 1182 (Fed. Cir. 1998) ........................................................................7

*Finisar Corp. v. DirecTV Group, Inc.,*
523 F.3d 1323 (Fed. Cir. 2008) ......................................................................11

*Franklin Elec. Co. v. Dover Corp.,*
2007 WL 5067678, at *8 (W.D. Wis. November 15, 2007) .......................5, 11

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
78 F.3d 1575 (Fed. Cir. 1996) ..........................................................................7

*Honeywell Int'l v. Hamilton Sundstrand Corp.,*
370 F.3d 1131 (Fed. Cir. 2004) ......................................................................10

*In re Seagate Technology, LLC,*
497 F.3d 1360 (Fed. Cir. 2007) ..............................................................passim

*Knorr Bremse v. Dana Corp.,*
383 F.3d 1337 (Fed. Cir. 2004) ................................................................12, 13

*Lucent Tech., Inc. v. Gateway, Inc. et. al.,*
2007 U.S. Dist. LEXIS 95934, at *17-19 (S.D. Cal. Oct. 30, 2007)..........2, 6, 8

*Pivonka v. Central Garden & Pet Co.,*
Case No. 02-02394, 2008 WL 486049 (D. Colo. Feb. 19, 2008).......................8

*ResQNet.com, Inc. v. Lansa, Inc.,*
533 F.Supp.2d 397 (S.D.N.Y. 2008) .................................................................4

*Translogic Tech., Inc. v. Hitachi, Ltd.,* No.
CV 99-407-PA, 2004 WL 2260606 (D. Or. Oct. 5, 2004) .................................7

*Transmatic, Inc. v. Gulton Indus., Inc.,*
   53 F.3d 1270 (Fed. Cir. 1995) ............................................................................7

065028.1001

ARIAD has not established a genuine dispute as to whether Amgen "acted despite an *objectively high likelihood* that its actions constituted infringement of a *valid patent*." ARIAD focuses instead on the issue of infringement, and ignores invalidity -- a required element of the test for willfulness set forth in *In re Seagate*. Even if one assumed ARIAD's oversimplified and mischaracterized "facts," at best there would be only a conclusion that reasonable minds could differ on the issue of *validity* of the '516 patent. There is no dispute that in the reexamination of the '516 patent the PTO has on multiple occasions rejected all asserted claims as unpatentable over the prior art. Indeed, all asserted claims currently stand rejected as unpatentable. Arguing that Amgen was reckless in not pulling Enbrel from the market in light of claims whose validity is so clearly questionable is akin to arguing that the PTO was reckless in proceeding with its grant of reexamination and then on two separate occasions rejecting the claims in suit as unpatentable.

Thus, there is no genuine dispute, and under *Seagate*, Amgen was not willful as a matter of law.

A.    **ARIAD Fails to Present Any Genuine Issue of Fact That Amgen "Acted Despite an Objectively High Likelihood That Its Actions Constituted Infringement of a _Valid_ Patent."**

As explained in Amgen's opening brief, in order for ARIAD to prevail on its willful infringement claim, it must first show by clear and convincing evidence[1] that Amgen acted despite an "*objectively high likelihood*" that (1) its actions constituted infringement, and (2) the

---

[1] In its opposition, ARIAD attempts to shift the burden of proving no willful infringement to Amgen -- "Amgen Cannot Prove as a Matter of Law That Its Infringement Was Not Willful." (Defendant-Counterclaim-Plaintiff Memorandum of Law in Opposition to Amgen's Motion For Summary Judgment on Willfulness (DI 634) at 13 (herein after ARIAD Opp. at __)). However, the burden of proving willful infringement by clear and convincing evidence is, and always has been, the burden of the patentee. *In re Seagate*, 497 F.3d at 1371.

'516 patent is valid (and, of course, enforceable). *See In re Seagate Technology, LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"). Summary judgment must be granted unless there is a genuine dispute of material fact as to both elements.

Despite this black letter law, ARIAD's opposition fails to present any genuine issue that Amgen acted despite an "objectively high likelihood" that the '516 patent is valid. Lacking any evidence at all regarding the issue of the validity of its patent,[2] ARIAD suggests that the presumption of validity of the '516 patent should carry the day.[3] ARIAD's argument, however, would completely vitiate the *Seagate* analysis of validity. Indeed, since *every* patent is entitled to this same presumption, under ARIAD's argument, invalidity could never be a basis on which non-willfulness could be found. This makes no sense, and (not surprisingly) finds no support in the law. *See, e.g., Lucent Tech., Inc. v. Gateway, Inc. et. al.*, 2007 U.S. Dist. LEXIS 95934, at

---

[2] ARIAD attempts to divert attention away from the shortcomings in its proof by relying solely on its own view of claim construction for purposes of infringement and citing to articles and testimony purportedly relating to Amgen's "knowledge" of its alleged infringement of the '516 patent. Amgen strongly disagrees with ARIAD's bald conclusions about this alleged evidence as well as its claim that Amgen infringes the '516 patent. As explained in Amgen's opening brief, it certainly has "legitimate defenses to infringement" that preclude enhanced damages for willfulness. *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 2008 WL 60501 *6-7 (Fed. Cir. Jan. 7, 2008). Regardless, the issue of infringement under *In re Seagate* is a distinct issue from invalidity -- an issue for which ARIAD has failed to offer any evidence to meet its clear and convincing burden of proof.

[3] ARIAD also implies that the jury verdict in the *Lilly* case is evidence that the '516 patent is valid. But, as explained below, the claims asserted by ARIAD at trial (and the only claims the jury rendered a verdict on) in the *Lilly* case (claims 80, 95, and 144-145) are different that the asserted claims in this case (claims 6, 18, 70-72, and 183-184). Thus, the *Lilly* jury verdict has no applicability here.

2

*17-19 (S.D. Cal. Oct. 30, 2007) ("Although there is a presumption of validity for issued patents . . . the PTO's determination of a substantial question of patentability supports Defendants' position [of no willful infringement]"); *Abbott Labs. v. Sandoz, Inc.*, 532 F. Supp. 2d 996, 999 (N.D. Ill. 2007) (holding that an opinion by the Federal Circuit finding substantial questions of validity precluded willful infringement post-*Seagate*).

At the end of the day, ARIAD has not, and cannot, offer any evidence that Amgen acted despite an objectively high likelihood that the '516 patent is valid. In fact, as explained below, just the opposite is true. Therefore, Amgen's motion for summary judgment of non-willfulness should be granted.

### B. The PTO's Rejections of the Asserted Claims in Reexamination is Conclusive Objective Evidence That Amgen Was Not Objectively Reckless.

The PTO's grants of reexamination and its rejection (on two occasions) of the vast majority of the claims of the '516 patent, including all claims ever asserted in this case, is conclusive evidence that Amgen's continued sale of ENBREL was not objectively reckless under the standard set forth in *Seagate*. Certainly if the PTO, in reviewing two different reexamination requests, concluded that a "substantial new question of patentability exists" and further (in a detailed 100+ page office action)[4] rejected as unpatentable (*i.e.*, **invalid**) every asserted claim of the '516 patent, Amgen cannot have "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." To argue otherwise would be akin to arguing that the

---

[4] Ex. 1, June 6, 2008 Declaration of Melanie K. Sharp in Support of The Amgen Entities' Reply Brief in Support of Their Motion For Summary Judgment of Non-Willfulness and cited herein by Exhibit No.

PTO acted recklessly on multiple occasions in granting reexamination of the '516 patent and rejecting as anticipated the asserted claims of the '516 patent.

The facts surrounding the reexamination of the '516 patent are dispositive of the issue of willful infringement. At the very least, the reexaminations are conclusive proof that Amgen has "credible invalidity arguments," and thus, cannot be "objectively reckless."[5] *Black & Decker,* 2008 WL 60501 at *6-7 (holding that "credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent"). Thus, Amgen is entitled to summary judgment of non-willfulness as a matter of law.

*1.    ARIAD's Arguments Directly Contradict Seagate.*

ARIAD urges the Court to pay no attention to the reexaminations, arguing that Amgen did not know about the reexaminations until at least June 2005 and therefore "cannot rely on those proceedings" to justify its alleged infringement. (ARIAD Opp. at 18). In other words, ARIAD argues that the Court should look at what Amgen knew and when it knew it in determining willful infringement. This would be a purely subjective analysis of the type that was overruled and retired by the *en banc* Federal Circuit in *Seagate,* and thus is irrelevant to the current standard. *See, e.g., ResQNet.com, Inc. v. Lansa, Inc.*, 533 F. Supp. 2d 397, 420 (S.D.N.Y. 2008) (granting summary judgment of no willful infringement because the patent owner "relied only on subjective evidence"). Indeed, the Federal Circuit in *Seagate* unequivocally rejected ARIAD's position when it expressly held that "[t]he **state of mind** of the

---

[5]  ARIAD never contests in its opposition that Amgen has at least "credible invalidity arguments." In addition to the invalidity of the claims as anticipated, these "credible invalidity arguments" include the fact that the claims of the '516 patent are invalid for lack of written description as set forth in Amgen's co-pending motion for summary judgment. (DI 583).

4

accused infringer *is not relevant* to this objective inquiry." *In re Seagate*, 497 F.3d at 1371 (emphasis added); *see also Franklin Elec. Co. v. Dover Corp.*, 2007 WL 5067678, at *8 (W.D. Wis. November 15, 2007) (granting summary judgment of no willful infringement where plaintiff only presented evidence relating "to the defendant's knowledge and state of mind, which *Seagate* holds irrelevant to the objective inquiry"). And, for good measure, the Federal Circuit rejected it again in *Black & Decker* when it held that "credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." 2008 WL 60501 at *6-7. If what the defendant in *Black & Decker* knew and when it knew it were relevant, then "credible invalidity arguments" made in litigation (*i.e.*, after the relevant time for the subjective inquiry) could never show a pre-suit lack of objective recklessness. But they do -- this is because the first prong of the *Seagate* inquiry is purely an objective one. What Amgen knew and when it knew it simply has no place in the objective *Seagate* inquiry. Thus, ARIAD's argument in this regard fails as a matter of law.

ARIAD next claims that reexaminations are "not probative of unpatentability" because (1) requests for reexaminations are granted 91% of the time, and (2) the reexamination determinations are not final. (ARIAD Opp. at 17). ARIAD's arguments are red-herrings. First, ARIAD's argument that requests for reexaminations are granted 91% of the time, implying that the PTO improvidently granted the requests for reexamination of the '516 patent, is irrelevant to the non-willfulness inquiry. The fact remains that the PTO granted the reexamination requests and concluded that a "substantial new question of patentability exists" with respect to the '516 patent. Beyond the grant of the requests for reexamination, the PTO also twice rejected every asserted claim in this case as unpatentable over the prior art. Bald aggregate statistics regarding the frequency with which the PTO grants reexamination requests does not change the objective

evidence that the PTO went further to twice reject the claims that are asserted in the instant case.[6] *See Lucent Tech.*, 2007 LEXIS 95934, at *17-19 ("statistics suggesting that the great majority of reexamination requests are granted . . .do not persuade the Court that the PTO failed to fulfill its statutory duty").

Second, whether the reexaminations are final or not does not change the *objective* fact that the PTO granted two reexamination requests and twice rejected the asserted claims as unpatentable. In fact, all asserted claims in this case currently stand rejected as unpatentable over the prior art. ARIAD itself even canceled 95 of the rejected claims, including 13 claims previously asserted in this case. ARIAD's actions show that even it must have at least considered that the PTO was "credible" in its rejections. This is uncontroverted and indisputable evidence that Amgen was not objectively reckless, regardless of the fact that the rejections occurred after Amgen was on notice of the patent. At the very least, this evidence proves that reasonable minds could differ on the validity of the asserted claims -- the antithesis of objective recklessness.

     2.    *ARIAD's Reliance on Pre-Seagate Case Law is Improper.*

ARIAD's arguments rely on pre-*Seagate* cases that are not only inapplicable, but that were overruled (impliedly if not expressly) by *Seagate*. Indeed, in *Seagate*, the Federal Circuit expressly overruled the previous standard for willful infringement:

---

[6] In any event, while 91% of requests for reexaminations may be granted by the PTO, 74% of such granted reexaminations result in either cancelled or amended claims. (Ex. 2). Thus, the grant of a large percentage of requests for reexamination does not, as ARIAD suggests, imply that the PTO is too lenient in ordering reexaminations. ARIAD's argument does not hold water.

                                                   

> [W]e overrule the standard set out in *Underwater Devices* and hold
> that proof of willful infringement permitting enhanced damages
> requires at least a showing of objective recklessness. Because we
> **abandon the affirmative duty of due care**, we also reemphasize
> that there is no affirmative obligation to obtain opinion of counsel.

*Seagate*, 497 F.3d at 1371 (emphasis added).  Nevertheless, ARIAD repeatedly cites to cases that

apply this overruled affirmative duty of due care standard.[7]  This Court should reject ARIAD's

invitation to apply the wrong law and the wrong standard.

ARIAD cites to *Hoechst Celanese, Acoustical Design,* and *Translogic Tech.* to suggest

that reexaminations are allegedly not probative of whether Amgen "acted despite an objectively

high likelihood that its actions constituted infringement of a valid patent." (ARIAD Opp. at 17-

19).  But each of these cases applies the old, overruled subjective due care standard for willful

infringement as opposed to the new objective standard set forth in *Seagate*.  For example, the

court in *Acoustical Design* applied the old subjective due care standard and stated that the PTO's

initial rejection of claims does not "justify a **good faith belief** in the invalidity of the claims."

932 F.2d at 942 (emphasis added).  The court in *Hoechst Celanese* also applied the due care

standard, and in citing to *Acoustical Design*, simply concluded that the reexamination does not

"establish a likelihood of patent invalidity."[8]  78 F.3d at 1584.  Finally, the court in *Translogic*

---

[7] The pre-*Seagate* cases improperly relied on by ARIAD include *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996); *Acoustical Design, Inc. v. Control Elecs. Co.*, 932 F.2d 939, 942 (Fed. Cir. 1991); *Translogic Tech., Inc. v. Hitachi, Ltd.*, No. CV 99-407-PA, 2004 WL 2260606 (D. Or. Oct. 5, 2004).

[8] Moreover, the court in *Hoechst Celanese* only addressed whether the grant of a reexamination is "probative of unpatentability," not the situation presented here where the PTO has twice rejected the asserted claims as unpatentable over the prior art.

7

*Tech.* also applied the old subjective due care standard and concluded that the PTO's decision on reexamination was "relevant to the reasonableness of ***defendants' belief*** that the patent was invalid." 2004 WL 2260606, at *2-3 (emphasis added) (finding that because reexamination request was granted after the alleged willful conduct, it was irrelevant to the defendants' good faith belief in evaluating willful infringement).

Each of these cases decided willfulness on the old affirmative duty of due care standard of willful infringement, which was a subjective-based inquiry. Under the first prong of the *Seagate* test, the inquiry is a purely objective one. *See Seagate*, 497 F.3d at 1371 ("The state of mind of the accused infringer is not relevant to this objective inquiry"). In fact, under the *Seagate* test, a "credible invalidity argument" precludes a finding of willful infringement. Not surprisingly, courts post-*Seagate* have concluded that reexaminations are relevant to the *Seagate* willfulness inquiry. *Lucent Tech.*, 2007 LEXIS 95934, at *17-19 ("the PTO's determination of a substantial question of patentability supports Defendants' position, even though these orders are preliminary"); *see Pivonka v. Central Garden & Pet Co.*, Case No. 02-02394, 2008 WL 486049 (D. Colo. Feb. 19, 2008) ("The PTO's preliminary order, in an interference proceeding, determining that the claims of plaintiffs' [patent] are unpatentable as obvious, shows that the defendants have advanced a colorable challenge to the validity of the plaintiffs' patents").

Because the PTO in reexamination twice found "substantial new questions of patentability existed" and in two subsequent office actions rejected as unpatentable every claim asserted by ARIAD in this case, Amgen's invalidity arguments must ***at least*** be credible. As a result, Amgen is entitled to summary judgment of non-willfulness as a matter of law.

C.    **In Addition to the PTO's Rejection of the Asserted Claims of the '516 Patent in Reexamination, Record Evidence Shows That Amgen Was Not Objectively Reckless.**

While the PTO's rejections of the asserted claims as unpatentable over the prior art are dispositive of the willfulness issue, additional and abundant undisputed record evidence shows that Amgen was not objectively reckless as required by *Seagate*, entitling it to summary judgment of no willful infringement.   The record evidence shows that Amgen was not objectively reckless because it did not act "despite an *objectively high likelihood*" that its actions constituted infringement of a *valid patent*.   ARIAD's effort to discount this objective evidence by arguing that such evidence does not go to Amgen's subjective intent or "state of mind" is misplaced and runs contrary to an explicit holding of *Seagate*.

1.    *ARIAD's Attempt to Inject a Subjective Standard or "State of Mind" Into the Objective Seagate Test is Improper.*

ARIAD takes issue with Amgen's objective evidence of no willfulness relating to standards of commerce; however, its analysis is riddled with errors and misstatements.

First, ARIAD argues that Amgen's objective evidence of standard of commerce consisting of press articles and opinions of two independent registered patent attorneys purportedly does not show non-willfulness. (ARIAD Opp. at 14-15).   ARIAD claims that unless Amgen "read" and "justifiably relied" on such evidence, it allegedly "cannot preclude a showing of willfulness." (ARIAD Opp. at 14).   ARIAD is wrong.   First, "standards of commerce" can be objective evidence relevant to the willfulness inquiry under *Seagate*. *Seagate*, 497 F.3d at 1371 n. 5.   Also, as explained above, *Seagate* explicitly holds that Amgen's state of mind is not relevant to the objectively reckless willfulness inquiry. *See id.*   Thus, whether Amgen "read" or "justifiably relied" on articles and publications by independent parties stating the '516 patent is invalid is simply irrelevant.   These articles and publications (which universally comment that the

9

'516 patent cannot be valid) are objective evidence as to the biotech industry's opinion that the '516 patent is invalid and, thus, are relevant to the willfulness inquiry.

Second, ARIAD is wrong when it claims that the jury verdict in the *Lilly* litigation refutes Amgen's objective evidence. (ARIAD Opp. at 14-15). What a jury (which plays no part in the standards of commerce in the biotech industry) believed regarding the invalidity of the '516 patent with respect to (1) different patent claims[9], (2) different sets of facts, and (3) different parties does not refute the clear opinion of the biotech industry that the '516 patent is invalid. Indeed, the jury did not render its verdict in the *Lilly* case until May 4, 2006 -- after the PTO had already granted a reexamination request and concluded that a "substantial new question of patentability existed" with respect to the '516 patent.[10]  At most, all the *Lilly* verdict (which is inconsistent with the PTO's "verdict" of rejection) might prove is that reasonable minds might

---

[9]  While ARIAD claims that the Lilly jury upheld the "validity of the patent" (ARIAD Opp. at 11-12, 14-16), that is simply not true. The validity of each claim of a patent is determined independent of other claims, not as to the patent as a whole. *Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148 (Fed. Cir. 2004) ("Each claim defines a separate invention, whether or not written in independent form; and its validity stands or falls separately"). In *Lilly*, ARIAD ultimately only asserted (and thus the jury only rendered a verdict on) claims 80, 95, 144 and 145 during the trial (it had asserted additional claims earlier). In contrast, here ARIAD only asserts claims 6, 18, 70-72, and 183-184. Even ARIAD concedes that the *Lilly* case "concerned claims distinct from those asserted here." (ARIAD Opp. at 3 n.3). Therefore, what a jury concluded with respect to different claims of the '516 patent than asserted in this case can have no impact on the willfulness inquiry.

[10]  Moreover, ARIAD's proffered testifying expert in the *Lilly* case on the issue of validity (written description), Dr. Thomas R. Kadesch, testified at trial that the '516 patent provided an adequate written description for one of ordinary skill in the art to practice the claimed invention, and therefore is valid under Section 112. (Ex. 3 at 48-49). However, after the *Lilly* jury rendered its verdict, Dr. Kadesch expressly recanted his testimony in a separate litigation between Amgen and Roche. (Ex. 4 at 268-70). Thus, not only is the '516 patent now unenforceable because ARIAD withheld this inconsistent testimony from the PTO until pressed by Amgen in this litigation, the reliability of the jury verdict is now called into serious doubt at least as to the written description defense brought by Lilly.

differ about the invalidity of the '516 patent claims, which is not enough to avoid summary

judgment of no willful infringement.

Third, ARIAD contends that the fact that **REDACTED**

**REDACTED** the willfulness

inquiry. (ARIAD Opp. at 16). After earlier putting forth an expansive view of the scope of the

claims, and asserting that a product which blocks TNF must infringe the patent, ARIAD makes

the incredible suggestion that perhaps ENBREL is the only product which allegedly infringes the

'516 patent. But ARIAD again applies the wrong standard, **REDACTED**

**REDACTED** is "not probative of Amgen's *state of mind* during the alleged period of willful

infringement." (*Id.*) (emphasis added)  As explained many times already, state of mind is not

relevant to the "objective" inquiry under *Seagate*. 497 F.3d at 1371. **REDACTED**

**REDACTED** and the biotechnology industry's

complete rejection of the validity of the patent is evidence of the standards of commerce, and is,

therefore, objective evidence of non-willfulness.

Finally, ARIAD argues that the date ARIAD filed its counterclaims is irrelevant to the

willfulness inquiry, claiming that "the relevant inquiry under *Seagate* relates to *Amgen's*

*knowledge only*." (ARIAD Opp. at 13) (emphasis added).  ARIAD is again wrong on the law --

*Seagate* explicitly holds that Amgen's state of mind is not relevant to the objectively reckless

willfulness inquiry. *See In re Seagate*, 497 F.3d at 1371; *see also Franklin Elec.*, 2007 WL

5067678, at *8.  Indeed, ARIAD knew of the same references that it now argues are proof that

Amgen was "objectively reckless," but took almost a year after Amgen filed this declaratory

judgment action to develop any sort of infringement contention. *See Finisar Corp. v. DirecTV*

*Group, Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008) (applying doctrine of judicial estoppel against

Finisar to confirm on appeal the absence of willful infringement, where Finisar defeated laches defense by disclaiming knowledge of any claim against DirecTV). ARIAD's attempt to impose a double standard fails -- its actions are certainly objective evidence of non-willfulness.

>    2.    *ARIAD's Reliance on Amgen's Election Not to Rely on Advice of Counsel is Directly at Odds With Seagate.*

ARIAD finally takes significant liberties with the holding of *Seagate* to contend that Amgen's election not to rely on the advice of counsel weighs against a finding of summary judgment. ARIAD's argument, at best, misstates *Seagate* and runs directly counter to the express holding of the case.

ARIAD claims that *Seagate* holds that "the 'failure to proffer any favorable advice,' although 'not dispositive of the willfulness inquiry' is nevertheless 'crucial to the analysis.'" (ARIAD Opp. at 19). This is a misstatement of the law. *Seagate* holds:

> Because we abandon the affirmative duty of care, we also reemphasize that ***there is no affirmative obligation to obtain opinion of counsel.***

*Seagate*, 497 F.3d at 1371 (emphasis added). Moreover, *Seagate* reiterated the Federal Circuit's holding in *Knorr-Bremse v. Dana Corp.*, that "invoking the attorney client privilege or work product protection does not give rise to an adverse inference." *Id.* at 1370 (citing *Knorr Bremse*, 383 F.3d 1337, 1343 (Fed. Cir. 2004).

So where does ARIAD's argument come from? Incredibly, ARIAD extracts its quote from, and bases its argument on, *Seagate's* background discussion of past Federal Circuit opinions relating to willful infringement, and specifically a discussion of the old "duty of due care standard." *See Seagate*, 497 F. 3d at 1369. Immediately thereafter, *Seagate* explains the problems with this approach, expressly overrules the "duty of due care standard" and concludes

12

that "there is no affirmative obligation to obtain an opinion of counsel." *Id.* at 1369-71. ARIAD's argument and reading of *Seagate* is disingenuous at best.

Moreover, ARIAD's argument that Amgen's election not to rely on the advice of counsel is somehow "crucial" evidence of willful infringement runs directly contrary to *Knorr-Bremse's* prohibition of adverse inferences where a party elects not to rely on the advice of counsel. ARIAD effectively asks this Court to infer that Amgen's decision not to rely on the advice of counsel is somehow evidence that Amgen's alleged infringement was willful, despite the fact that Amgen is under "no affirmative obligation to obtain an opinion of counsel." ARIAD's contention simply does not comport with the law or the facts, and therefore, should be rejected.

**D.    CONCLUSION**

For the foregoing reasons, Amgen is entitled to judgment as a matter of law that Amgen's alleged infringement, if proved, was not "*objectively reckless*" and therefore was not willful.

13

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*
Melanie K. Sharp (No. 2501)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801

P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6681
msharp@ycst.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601-6636
(312) 861-2000

Robert G. Krupka, P.C.
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA  90017-5800
(213) 680-8400

Siegmund Y. Gutman
J. Drew Diamond
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA  90067
Dated:  June 6, 2008          (310) 785-4707


*Attorneys for Plaintiffs/Counterclaim Defendants Amgen, Inc.,*
*Immunex Corporation, Amgen USA Inc., Amgen Manufacturing,*
*Limited, and Immunex Rhode Island Corporation*

DB02:6879239.1                                                                    065028.1001

## CERTIFICATE OF SERVICE

I, Melanie K. Sharp, Esquire, hereby certify that on June 6, 2008, I caused to be electronically filed a true and correct copy of The Amgen Entities' Reply in Support of Their Motion For Summary Judgment Of Non-Willfulness with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John G. Day
Steven J. Balick
Tiffany Geyer Lydon
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801

I further certify that on June 6, 2008, I caused a copy of the foregoing document, to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY E-MAIL (by agreement of counsel):

David Greenwald
David R. Marriot
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

/s/ Melanie K. Sharp
Melanie K. Sharp (No. 2501)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com

DB02:6879239.1

065028.1001