IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN, INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, and IMMUNEX RHODE ISLAND CORPORATION,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ARIAD PHARMACEUTICALS, INC., and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: C. A. No. 06-259-MPT<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| ARIAD PHARMACEUTICALS, INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE, and THE WHITEHEAD INSTITUTE FOR BIOMEDICAL RESEARCH,<br><br>                    Counterclaim Plaintiffs,<br><br>          v.<br><br>AMGEN INC., IMMUNEX CORPORATION, AMGEN USA INC., AMGEN MANUFACTURING LIMITED, IMMUNEX RHODE ISLAND CORPORATION, and WYETH,<br><br>                    Counterclaim Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM ORDER**

**INTRODUCTION**

This is a patent case. A detailed recitation of the convoluted procedural posture

of this case is unnecessary. A brief recitation follows. On April 20, 2006, Amgen, Inc., and related entities (collectively "Amgen"), filed a Complaint for Declaratory Judgment of Patent Invalidity and Non-Infringement of U.S. Patent No. 6,410,516 ("the '516 patent"). An amended complaint was filed on April 13, 2007. On April 14, 2007, ARIAD Pharmaceuticals, Inc., and others (collectively "ARIAD"), filed an answer to the amended complaint and a counterclaim alleging infringement of the '516 patent. On May 3, 2007, Amgen filed an a answer to ARIAD's counterclaim which included, among others, an affirmative defense of unenforceability based on purported inequitable conduct during the prosecution of the application that issued as the '516 patent and purported inequitable conduct during the reexamination of the '516 patent. On February 12, 2008, Amgen filed an amended answer to ARIAD's counterclaim adding to its unenforceability defense additional alleged inequitable conduct during the reexamination of the '516 patent. The parties briefed various issues to the court, including claim construction. The court issued its claim construction opinion on September 19, 2008.

Currently before the court is Amgen's motion for summary judgment of non-infringement.

**LEGAL STANDARDS**

**Summary Judgment**

Summary Judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a

judgment as a matter of law."[1] Once there has been adequate time for discovery, Rule 56(c) mandates judgment against the party that "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[2] When a party fails to make such a showing, "there can be no 'genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[3] The moving party is therefore entitled to judgment as a matter of law because "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.[4] A dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

The moving party bears the initial burden of identifying portions of the record which demonstrate the absence of a genuine issue of material fact.[6] However, a party may move for summary judgment with or without supporting affidavits.[7] Therefore, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence supporting the nonmoving party's case."[8]

If the moving party has demonstrated an absence of material fact, the

---

[1] Fed. R. Civ. P. 56(c).
[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[3] *Id.* at 323.
[4] *Id.*
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Celotex*, 477 U.S. at 323.
[7] *Id.*
[8] *Id.* at 325.

nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial."[9] If the nonmoving party bears the burden of proof at trial, he "must go beyond the pleadings in order to survive a motion for summary judgment."[10] That party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[11] At the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."[12] Further, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[13] The threshold inquiry therefore is "determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[14] A genuine issue of material fact is not created by the mere statement of the party, who has the burden of proof, that a fact is challenged.[15]

Although Amgen has the burden to prove no genuine issue of material fact exists,[16] ARIAD has the burden of proving infringement by a preponderance of the evidence.[17]

---

[9] Fed. R. Civ. P. 56(c).
[10] *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[11] *Anderson*, 477 U.S. at 248.
[12] *Id.* at 249.
[13] *Id.*
[14] *Id.* at 250.
[15] *Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*, 731 F.2d 831 (Fed. Cir. 1984).
[16] *Gayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000); *LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp 2d 189, 193 (D. Del. 2006).
[17] *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).

**Infringement**

To determine infringement, the court must first ascertain the scope and meaning of the asserted claims by construing those terms.[18] Second, the properly construed claims must be compared to the allegedly infringing method, device or product.[19] To establish literal infringement, every claim limitation or claim element must be found in the accused subject matter.[20] Therefore, establishing that the accused method or product does not satisfy one claim limitation supports a finding of non-infringement.[21]

**Indirect Infringement: Inducement and Contributory Infringement**

35 U.S.C. § 271(b) provides that whoever actively induces infringement of a patent is liable as an infringer. To establish inducement, the patentee must show that: 1) a direct infringement has occurred; and, 2) the accused infringer knowingly induced infringement or had the requisite intent.[22] Mere knowledge of potential or actual infringement is not enough. Liability for inducement is premised on purposeful, culpable expression and conduct.[23] "Proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."[24] Generally, though, "[i]ntent is a factual determination particularly within the province of the trier of fact."[25]

---

[18] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc).
[19] *Id.* at 976.
[20] *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 40 (1997).
[21] *Id.*
[22] *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1378 (Fed. Cir. 2004).
[23] *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913 (2005).
[24] *Hewlett-Packard Co v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990).
[25] *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1379 (Fed. Cir. 2005) (citing *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1567 (Fed. Cir. 1988).

Contributory infringement occurs when one "sells within the United States . . . a combination or composition . . . constituting a material part of the invention knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ."[26] For contributory infringement, a showing that direct infringement exists; the accused product is a non-staple, that is, it has "no substantial noninfringing uses;" the infringer engaged in conduct that contributed to another's direct infringement; and the infringer had knowledge of the patent and infringement are required. [27]

## POSITIONS OF THE PARTIES

Amgen moves for summary judgment of non-infringement of asserted claims 6, 18, 70-72 and 183-184 of the '516 patent based on three independent grounds. First, it argues that if the court construes the claim limitation "reducing NF-κB activity in [the] cells" as requiring that the action to reduce be taken inside cells, it cannot infringe because its accused product, Enbrel, acts outside of the cell. Second, Amgen contends that ARIAD made certain disclaimers of claim scope to the PTO during the ongoing reexamination proceeding of the '516 patent. Amgen maintains that under any claim construction consistent with those disclaimers, summary judgment of non-infringement is warranted because, at most, Enbrel functions in a manner purportedly disclaimed. Third, and finally, Amgen states that ARIAD cannot support a finding

---

[26] 35 U.S.C. § 271(c).
[27] *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004).

indirect infringement by Amgen as there is no evidence establishing the intent element of inducement and, since Enbrel has substantial non-infringing uses, contributory infringement cannot be shown.

ARIAD responds to Amgen's first argument by insisting that it is based on an improper construction of the claim limitation "reducing NF-κB activity in [the] cells." Notably, ARIAD makes no argument that the administration of Enbrel infringes under Amgen's proposed construction, rather ARIAD asserts that the claims cover intracellular and extracellular methods of reducing NF-κB activity in cells.[28] Next, ARIAD contends that statements made by counsel for ARIAD and an expert retained during the reexamination do not disclaim a construction of the asserted claims that includes extracellular methods of reducing NF-κB activity, and, therefore, administration of Enbrel falls within the scope of the asserted claims. Lastly, ARIAD argues that Amgen's contentions regarding induced infringement relies upon a misinterpretation of the applicable law and, under a correct application of that law, the evidence is sufficient to support a finding of intent to induce. Because it is genuinely disputed that Engrel has any non-infringing approved use, summary judgment is inappropriate with respect to its contributory infringement claims.

## DISCUSSION

ARIAD asserts that Amgen's Enbrel product infringes seven claims of the '516 patent, including independent claim 6 and its dependent claims 70-72, and independent claim 18 and its dependent claims 183-84. Each of the claims at issue require the

---

[28] ARIAD acknowledges that "available evidence indicates that Enbrel acts extracellularly."

7

limitation "reducing NF-κB activity in [the] cells."[29] The court construed that limitation to mean: "taking action inside cells to directly inhibit (interfere or block) an NF-κB activity."[30] ARIAD presents no argument supporting infringement of the asserted claims of the '516 patent under the court's construction of that limitation.[31] Likewise, ARIAD's expert on infringement, Dr. Kathryn Calame ("Calame") based her opinion on "ARIAD's proposed claim construction, as set forth in the expert report of Dr. Jeffrey Ravetch." Calame did not offer an alternative infringement opinion based upon the claim construction adopted by the court. Moreover, the evidence of record establishes that Enbrel acts outside of cells, rather than inside the cells.

NF-κB is an intracellular messenger found in the cytoplasm of many eucaryotic

---

[29] Claim 6: A method for diminishing induced NF-κB-mediated intracellular signaling comprising *reducing NF-κB activity in cells* such that NF-κB-mediated intracellular signaling is diminished. (emphasis added).

Claim 70: The method of claim 6, carried out on mammalian cells.

Claim 71: The method of claim 6, carried out on human cells.

Claim 72: The method of claim 70 or 71, carried out on immune cells.

Claim 18: A method for reducing Interleukin-1 or Tumor Necrosis Factor-α activity in mammalian cells comprising *reducing NF-κB activity in the cells* so as to reduce intracellular signaling caused by Interleukin-1 or Tumor Necrosis Factor-α in the cells. (emphasis added).

Claim 183: The method of claim 18, carried out on human cells.

Claim 184: The method of claim 18 or 183, carried out on immune cells.

[30] The court also construed "NF-κB activity" to mean: "the ability of NFκB to act as an intracellular messenger by being released from IκB; translocating into the nucleus; and regulating the transcription of particular genes by binding to specific DNA recognition sequences in those genes," i.e., activities that occur inside a cell.

[31] The section of ARIAD's brief in opposition to Amgen's motion addressing Amgen's first argument is restricted to disputing that this claim element is limited to intracellular methods of reducing NF-κB activity and that "Amgen admits that whether it is entitled to summary judgment on this ground is entirely contingent upon a ruling from this Court adopting the constructions of the asserted claims that Amgen has proposed."

cells and is involved in, *inter alia*, the regulation of the inflammatory / immune response.[32] Many extracellular stimuli, including cytokines, can induce NF-κB activity.[33] Tumor necrosis factor-alpha ("TNF-α") is one such cytokine which plays a role in immune response and the induction of NF-κB.[34] The accused product, Enbrel, is a drug approved to treat several immune diseases which binds to free TNF-α thereby preventing TNF-α from interacting with receptors on the surface of target cells and inducing NF-κB activity.[35]

ARIAD's infringement expert, Calame, testified that Enbrel only acts extracellularly, or outside a cell, and that Enbrel never enters the cell:

> Q. You agree with me that Enbrel's impact on activity within cells is derived from its binding of TNF outside of the cell?
>
> A. That I agree with.
>
> Q. Okay. So, if TNF induces whatever activities inside a cell, it's your understanding that binding up of TNF would reduce those activities; correct?
>
> A. That would be my understanding.[36]
>
> * * * *
>
> Q. Now, you agree with me that your understanding of the way Enbrel works is Enbrel never goes inside of a cell; correct?
>
> A. That is my understanding.

---

[32] D.I. 639, Ex. 25, ¶¶ 24-25 (Expert Report of Jeffrey V. Ravetch, M.D., Ph. D.).
[33] D.I. 639, Ex. 25, ¶27; D.I. 590, Ex. A at 16 (Declaration of Alisa Erika Koch, M.D.). Cytokines are soluble proteins cells released into intercellular fluid that act to signal or communicate with target cells and may interact with receptors on a target cell's surface causing certain events to then occur inside the cell.
[34] D.I. 639, Ex. 25, ¶¶ 27, 31; D.I. 590, Ex. A at 16-17.
[35] D.I. 590, Ex. A at 31; D.I. 589, Ex. B at 223:13-17 (Calame Dep.) ("Q. [T]he way Enbrel works is to prevent this inducing stimuli, TNF-alpha from inducing intracellular signaling inside the cell via the NF-kappaB pathway?  A. That is my understanding.").
[36] D.I. 589, Ex. B at 144:5-13.

> Q. Enbrel merely interacts with TNF-alpha outside of cells?
>
> * * * *
>
> A. No. It reacts with the – yes, right. And it keeps – it competitively takes the TNF-alpha so that it can't react with its receptor on the cell, yes.
>
> Q. But Enbrel only interacts with TNF-alpha outside of cells as opposed to inside cells; correct?
>
> A. Enbrel reacts with soluble TNF-alpha, correct.
>
> Q. And that's outside of a cell?
>
> A. Yes. However, the machinery that's set in motion is an intracellular response.[37]

Finally, while making clear that she was not testifying about claim construction, Calame acknowledged that she could not think of an infringement argument should the court adopt Amgen's proposed construction of the claim limitation "reducing NF-κB activity in [the] cells."

> Q. Let's look at, specifically, the construction for reducing NF-kappaB activity in the cell . . . .
>
> A. Yes.
>
> Q. You can see there that [Amgen's] proposal is that it requires taking action inside the cell to directly inhibit, interfere or block an NF-kappaB activity. Do you see that?
>
> A. Yes.
>
> Q. My question to you is: Assuming that this proposal of Amgen concerning the claim construction is adopted by the Court, and the claims require action be taken inside a cell to directly inhibit, interfere or block [a]n NF-kappaB activity, would you agree with me that a patient taking

---

[37] D.I. 589, Ex. B at 146:3-21. Calame also testified that Enbrel does not directly interact with NF-κB: "Q. We agree that Enbrel does not directly interact with NF-kappaB in any way; correct? A. Molecularly, of course we agree on that." D.I. 589, Ex. B at 241:7-10.

Enbrel would not infringe the claims of the patent?

\* \* \* \*

A. With the big caveat that I have not analyzed the claim construction arguments in detail, that you should ask Jeff Ravetch, I do understand that if the Court said that it only – the claim construction was such that it had to happen inside the cell, then there would be more difficulty. It's still – you know, we all agree that things are happening inside the cell as a result of something on the exterior of the cell binding to the receptor. But if the Court decided that the only activity of Enbrel had to be inside the cell, then that would be a difficulty, I agree. But, please, do understand that I am not rendering a definitive claims construction conclusion here.

Q. I understand that you're not providing any opinions regarding claim construction. I am just trying to ask you to take these proposed claim constructions and confirm for me that if the claims require taking action inside the cell to reduce NF-kappaB activity, you agree with me that a patient taking Enbrel doesn't do that; right?

A. I think that we've discussed that my understanding is Enbrel works outside the cell.

Q. Okay. So there would be no infringement in that situation?

A. Well, I can't think how there would be.[38]

The evidence demonstrates that the use of Enbrel does not satisfy the limitation "reducing NF-κB activity in [the] cells," as the court has construed that term because Enbrel's action occurs extracellularly rather than intracellularly. Therefore, neither independent claims 6 and 18 of the '516 patent, nor the remaining asserted claims that depend therefrom, are directly infringed by the use of Enbrel.[39] Because there is no

---

[38] D.I. 589, Ex. B at 271:3-272:25.
[39] *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (In order to prevail on a claim of literal infringement, "the patentee must show that the accused products contain every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement.") (citations omitted); *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed . . . .").

direct infringement, there can be no indirect infringement.[40] Furthermore, Calame offered no opinion concerning infringement under the doctrine of equivalents and ARIAD's counsel confirmed that ARIAD is not pursuing any theories beyond the literal infringement contentions set forth by Calame's report.[41] Because there is no genuine issue of material fact concerning ARIAD's infringement claims against Amgen, Amgen's motion must be granted.[42]

**CONCLUSION**

For the reasons stated above:

It is ORDERED AND ADJUDGED that the Amgen Entities' Motion for Summary Judgment of Noninfringement of U.S. Patent No. 6,410,516 (D.I. 587) is **GRANTED**.

September 19, 2008
Wilmington, Delaware

UNITED STATES MAGISTRATE JUDGE

---

[40] *Joy Technologies, Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.").

[41] During her deposition, Calame was asked "Now, you have not offered any opinions in this case under what's called the Doctrine of Equivalen[ts]; is that correct?" Calame answered "I don't even know what that its." D.I. 589, Ex. B at 273:2-5. After further colloquy, Counsel for ARIAD stated that "I will stipulate that we're asserting only the direct contributory inducement infringement theories that are addressed in her report." *Id.*, Ex. B at 274:10-13.

[42] In light of this determination, it is unnecessary for the court to address the parties' arguments concerning Amgen's alternative bases for its motion.